# EXHIBIT CC

# DARREN CHAKER
## Expungement & Record Sealing

**HOME**

**SEARCH**

**RECENT POSTS**
- Bloggers Rights and Jail
- Bill Cosby Arrest by Darren Chaker
- Seal Record in Federal Court
- Arizona Juvenile Record Sealing
- California Juvenile Record Sealing
- Arizona Record Sealing
- Criminal and Civil Records Are Public Records
- When Good Faith is Not Enough for Probable Cause
- California Expungement Law
- Florida Criminal Record Sealing
- Florida Civil Record Sealing
- California CANRA
- California Background Checks
- Seal Texas Ticket
- Non-Custodial Arrest Can Be Expunged

**ARCHIVES**
- January 2016
- August 2015
- November 2014
- September 2014
- August 2013
- April 2013
- March 2013
- December 2012
- November 2012

**CATEGORIES**

## Bloggers Rights and Jail

**23 01 2016 10:05**

A federal appeal concerning **Darren Chaker**, the First Amendment and bloggers rights, is now pending where **Cato Institute**, **ACLU of San Diego**, **Electronic Frontier Foundation**, **First Amendment Coalition**, and **Brechner First Amendment Project** at University of Florida filed a joint amicus brief in his support wanting the court to reverse a decision from a San Diego federal judge



who found Mr. Chaker violated probation by posting a blog about a police officer. A compelling **opening brief** was filed by **Federal Defenders of San Diego** Inc. The amicus brief was authored by the Washington D.C. office of **Wilmer Cutler Pickering Hale and Dorr**, who is consistently ranked as an international top **20 law firm**.

Mr. Chaker was on probation for a white collar crime. The record shows Mr. Chaker's bankruptcy attorney fraudulently filed a bankruptcy petition without Mr. Chaker's knowledge. The report states in part, "In my opinion Chaker's attorney did not exercise a reasonable standard of care in filing a Second Bankruptcy Case without Chaker's consent and signature. Indeed, in my opinion such conduct is fraudulent." See **expert report**, page 7.  Despite the conduct of his bankruptcy attorney, Mr. Chaker was found guilty of only a single charge at trial. That case is also on appeal.

While on probation, it was alleged Mr. Chaker made a false statement about a Nevada Attorney General investigator ("police officer"). "Specifically, Mr. Chaker wrote…an investigator with the Nevada Office of the Attorney General, had previously been "forced out" of the Las Vegas Police Department." says First Amendment law professor **Clay Calvert** at the University of Florida's Marion B. Brechner First Amendment Project.

During the probation revocation hearing, "At no point did the probation officer or government contend that the blogposts constituted stalking under the condition, nor did the court make any findings as to stalking.  Instead, the focus was on whether the statement was harassment and defamation." See **Opening Brief**, page 12.

The court record shows the police officer made multiple complaints to various law enforcement agencies, but none arrested Mr. Chaker. The court "had reviewed a police report prepared by the Las Vegas police department after [the police officer] reported Mr. Chaker's blogposts, and noted that the police ultimately did not forward any charges for prosecution concerning the [police officer's] allegations." **Opening Brief**, page 7.  It was only when the probation officer was contacted is when Mr. Chaker was put in jail.

As the **ACLU of San Diego** states, "even if the defamation condition is valid, the court did not require the government to prove that Mr. Chaker made a false statement of fact, subjectively believed his statement to be false, or acted with reckless disregard of its truth." At the hearing, Mr. Chaker admitted he posted the blog after doing online research. It was never proven what Mr. Chaker posted was "a false statement of fact." Although the police officer was flown to San Diego and in court, the government did not call her as a witness. The court found Mr. Chaker violated probation, and an appeal ensued.

**Cato Institute** stated, "Public officials are appropriate objects of criticism and the protection of their feelings is not the appropriate province of the courts. Chaker's words don't even rise to the standard that must be met to constitute defamation of a public figure. Chaker didn't act with "actual malice" or reckless disregard for the truth when he published his blogpost, which is the mental requirement necessary to sustain such a charge." The **Electronic Frontier Foundation** said the government's position would,

- Arizona Record Sealing
- bill-cosby-arrest
- blogger-jail
- bloggers-rights
- brechner-first-amendment
- California Expungement
- California-Seal-Juvenile-Record
- CANRA-California
- central-district-of-california
- Darren-Chaker
- David-Gingras-Attorney
- disqualify-district-attorney
- eff-blog
- eff-blogger
- Expungement
- federal-protective-order
- federal-record-sealing
- Illegal Search
- Jaburg-Wilk
- Juvenile Records
- Maria-Speth
- mcmillan-academy-of-law
- mcmillan-law-firm-la-mesa
- ninth-circuit-first-amendment
- san-diego-first-amendment
- scott-mcmillan-la-mesa
- Seal Florida Record
- Seal Ticket
- Seal-Juvenile-Record
- Texas Record Sealing
- viewpoint-discrimination

59 BLOGTOPSITES

popular blogs

"eviscerate a half-century of First Amendment protection of political speech criticizing government officials."

Probation conditions are typically tailored to protect the public from future crime not online comments one takes offense at or believes are defamatory. It is well established speech "may not be suppressed simply because it is offensive." Dworkin v. Hustler Magazine, Inc., 867 F.2d 1188, 1199 (9th Cir. 1989). Mr. Chaker was never sued for defamation by the police officer.

Mr. Chaker is only one of 4,708,100 people are on probation or parole per a Bureau of Justice Statistics report. People under supervised release are not second class citizens where the First Amendment may be marginalized or discarded unless the speech are in an unprotected class – like true threats or inciting criminal conduct. For government to regulate speech, it must be "integral to criminal conduct." United States v. Meredith, 685 F.3d 814, 819, 2012 U.S. App. LEXIS 13012, 7, 2012-2 U.S. Tax Cas. (CCH) P50,421, 110 A.F.T.R.2d (RIA) 5157 (9th Cir. Cal. 2012) [case cited at page 28 of opening brief] In this case, two words "forced out" out of a 421 word blog were found to be false and Mr. Chaker's probation was ultimately revoked because of it.

The final brief in this matter will be filed January 22, 2016.

blogger-jail, bloggers-rights, brechner-first-amendment, Darren-Chaker, eff-blog, eff-blogger, mcmillan-law-firm-la-mesa, ninth-circuit-first-amendment, san-diego-first-amendment, scott-mcmillan-la-mesa, viewpoint-discrimination | Tags: bloggers-rights, brechner-first-amendment, california-probation, cato-institute, darren-chaker, darren-chaker-aclu, eff-blog, eff-blogger, first-amendment-appeal, nevada-attorney-general, viewpoint-discrimination

## Bill Cosby Arrest by Darren Chaker

15 01 2016 21:48

Bill Cosby Arrested

By Darren Chaker: Bill Cosby filed a habeas petition, see, habeas-darren-chaker , equivalent to a motion to dismiss criminal charges, asking the court to dismiss the case based upon a former agreement not to prosecute. The court papers filed also ask to disqualify the District Attorney from the case. Possibly, the defense will raise at a later point the long delay prejudiced the defense. In short, government should bring charges sooner than later.

In United States v. Crouch, 84 F.3d 1497, 1514 (5th Cir.1996) (en banc), the court held that 'for preindictment delay to violate the due process clause it must not only cause the accused substantial, actual prejudice, but the delay must also have been intentionally undertaken by the government for the purpose of gaining some tactical advantage over the accused in the contemplated prosecution or for some other impermissible, bad faith purpose.' An '[i]ntentional delay for the purpose of gaining tactical advantage would include delay for the purpose of rendering unavailable evidence favorable to the defense or which would tend to undercut the government's case.'Id. at 1514 n. 23.

Actual prejudice is the standard for a motion to dismiss, and the inability to obtain the information through alternate means. U.S. v. Marion, 1971, 92 S.Ct. 455, 466, 404 U.S. 307, 325–326, 30 L.Ed.2d 468. A defendant is entitled to the benefit of "presumptive prejudice" due to the length of the delay in his case. Doggett v. United States, 505 U.S. 647, 656 (1992). According to the Supreme Court, a delay of one year is generally considered "presumptively prejudicial." Id. at n. 1. Defendant was not prejudiced by preindictment and pretrial delay of 21 months where he was aware of government investigation. U.S. v. Hooper, C.A.7th, 1979, 596 F.2d 219.

Considering an army of top tier law firms, especially mega firm Quinn Emanuel , every possible angle will be looked at and litigated.

bill-cosby-arrest, disqualify-district-attorney | Tags: bill-cosby-arrest, bill-cosby-habeas, bill-cosby-motion, bill-cosby-rape, darren-chaker, disqualify-district-attorney, mcmillan-law-firm-la-mesa, motion-to-disqualify-prosecutor, scott-mcmillan-la-mesa

## Seal Record in Federal Court




29 08 2015 11:34



Criminal file sealed, Darren Chaker, seal records in federal court.

Federal court motion to seal or protective order, **Darren Chaker** looks how district courts have identified as one of them the need to avoid "jeopardizing ongoing or future investigations," *United States v. Milken*, 780 F. Supp. 123, 127 (1991), and "[t]he need for confidentiality of the investigation," *United States v. Park*, 619 F. Supp. 2d 89, 94 (S.D.N.Y. 2009). *United States v. Huntley*, 943 F. Supp. 2d 383, 386, 2013 U.S. Dist. LEXIS 65057, *7, 2013 WL 1881536 (E.D.N.Y. 2013) The Government will routinely seek to seal records to protect the integrity of the Government's ongoing investigations. See *United States v. Haller*, 837 F.2d at 87 (closure of paragraph of plea agreement appropriate because it was "essential to protect the secrecy of sensitive matters affecting a grand jury proceeding and an ongoing criminal investigation")

"If release [of information] is likely to cause persons in the particular or future cases to resist involvement where cooperation is desirable, that effect should be weighed against the presumption of access." *Id.* (citations [21] omitted); *cf. In re City of New York*, 607 F.3d 923, 941 (2d Cir. 2010) (citations omitted) (purpose of the law enforcement privilege is, among other things, "to preserve the confidentiality of sources, to protect witness and law enforcement personnel, *to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation*"). (emphasis added) Typically, law enforcement makes every effort to keep the identity of people involved and the investigation itself confidential. *McIntyre v. United States*, 447 F. Supp. 2d 54, 57, 2006 U.S. Dist. LEXIS 63217, *1 (D. Mass. 2006) ("Disclosing a government informant's identity is not an act embraced within the discretion granted to agents of the Federal Bureau of Investigation.")

There is little doubt releasing details of a pending investigation can jeopardize not only the investigation, but alos the informant. The California Supreme Court found in *People v. Seibel* (1990) 219 Cal.App.3d 1279, 1289, "And in the big-time drug business, to inform is to sign one's death warrant."]; *People v. Pacheco* (1972) 27 Cal.App.3d 70, 80 ["It does not take a lively imagination to realize that [disclosure of an informant's identity] might constitute a death warrant for the informer". (emphasis added)

"The Government seeks a protective order limiting the dissemination of the discovery materials it has produced, and will be producing, to Defendants. In particular, the Government's proposed protective order seeks to prevent Defendants from making the discovery materials available to the public, including the media."*United States v. Smith*, 985 F. Supp. 2d 506, 516, 2013 U.S. Dist. LEXIS 177988, *12, 2013 WL 6576791 (S.D.N.Y. 2013)

With the above in mind, there is little doubt federal courts will continue to protect the existence of a pending investigation being leaked and use proper court orders to keep such under the cloak of secrecy.

central-district-of-california, Darren-Chaker, federal-protective-order, federal-record-sealing | Tags: darren-chaker, darren-chaker-aclu, federal-court-seal-record, federal-protective-order, federal-record-sealing, motion-to-seal-record, protect-confidential-informant, protect-pending-investigation

## Arizona Juvenile Record Sealing

**29**
**11**
2014
17:55



Darren-Chaker, after conference on post-conviction relief

Arizona court order to seal records, **Darren Chaker https://plus.google.com/+DarrenChaker/** , it is common to include to seal a juvenile record. Some convictions are set aside but do not entitle a person to sealing. Pursuant to **A.R.S. § 8-349**, an applicant is eligible to have his records destroyed, provided that various conditions are satisfied. One of the provisions that must be satisfied is that the person may not have "been convicted of a felony offense." A.R.S. § 8-349(E)(2). **A.R.S. § 8-348** provides that an applicant is eligible to have his adjudications set aside, again, provided certain conditions are satisfied. "A person may not apply to set aside the adjudication if the person… has been convicted of a criminal offense." A.R.S. § 8-348(C)(1).

While a conviction may be subsequently set aside, that set aside does not negate the fact that a person has been convicted of a felony offense. See *Russell v. Royal Maccabees Life Ins. Co.*, 193 Ariz. 464, 467-471, 27, 974 P.2d 443, 446-450 (App. 1998). "If the court grants the application, the court shall set aside the judgment of guilt, dismiss the accusations or information and order that the person be released from all penalties and disabilities resulting from the conviction other than those imposed by the department of transportation… except that the conviction may be used as a conviction if it would be admissible had it not been set aside and may be pleaded and proved in any subsequent prosecution of such person by the state …or used by the department of transportation… as if the judgment of guilt had not been set aside." Id. at ¶14 (emphasis in the original).

The statute is clear regarding a felony conviction. There are no exceptions, including no exception for the circumstance in which a felony conviction was set aside. "The primary rule of statutory construction is to find and  *7 give effect to legislative intent." *Mail Boxes, Etc., U.S.A. v. Industrial Comm'n*, 181 Ariz. 119, 121, 888 P.2d 777, 779 (1995). As the Arizona Supreme Court has stated, "If a statute is clear and unambiguous, we apply it without using other means of statutory construction." *Aros v. Beneficial Arizona, Inc.*, 194 Ariz. 62, 66, 977 P.2d 784, 788 (1999) (en banc) (citations omitted); *UNUM Life Ins. Co. of America v. Craig*, 200 Ariz. 327, 330, 26 P.3d 510, 513 (2001) (en banc). A.R.S. §§ 8-348 and 8-349 are undeniably clear: they do not apply to anyone who has been convicted of a felony.

The cases are equally clear on the effect of a set aside: the set aside does not remove the fact of a conviction in *Arizona. State v. Barr*, Ariz. 445, 449, 175 p.3d 694, 698 (App. 2008); *Russell v. Royal Maccabees Life Ins. Co., supra*, 217 Ariz. at 467-468, 974 P.2d at 446-447; accord **State v. Green**, 173 Ariz. 464, 469, 844 P.2d 631, 636 (App. 1992), vacated in part, 174 Ariz. 586, 852 P.2d 401 (1993) (noting statute "specifically authorizes the conviction to be used as a prior conviction in subsequent prosecutions"); see also *State v. Key*, 128 Ariz. 419, 421, 626 P.2d 149, 151 (App. 1981) (noting statute permits a person to be released of all penalties and disabilities "with the exception that the conviction may be proved as a prior conviction in a subsequent criminal action").

Moreover, there is nothing in the statute that bestows upon the Juvenile Court the authority to grant requests pursuant to A.R.S. §§ 8-348 and 8-349 when a felony conviction has been set aside since the person "[h]as been convicted of a criminal offense." A.R.S. § 8-348(C)(1); see also A.R.S. §§ 8-349(D)(2) and (E)(2). Hence, a Court's order granting an applicant's application for destruction of records and setting aside his adjudications would be error since he would not be entitled to such order. Given the above, if you need an attorney to pursue a legal matter, contact an attorney and do not rely on the this article or any information on this blog as it is not updated or intended to be construed as legal advice.

**Arizona Record Sealing**, **Darren-Chaker**, **Expungement**, **Juvenile Records**, **Seal-Juvenile-Record** | Tags: **arizona-expunge**, **arizona-juvenile-record**, **arizona-record-sealing**, **darren-chaker**, **seal-court-record**, **seal-juvenile-record**

### California Juvenile Record Sealing

**15 09 2014 08:27** 

California law, says **Darren Chaker**, "'has been consistently interpreted to vest the juvenile court with exclusive authority to determine when a release of juvenile court records to a third party is appropriate.'" In re R.G., 79 Cal.App.4th 1408, 1414, 94 Cal.Rptr.2d 818 (2000)(emphasis added). The Juvenile Court is in the best position to determine whether disclosure is in the best interests of the minor. See Cal. Welf. & Inst. Code § 827 (a); **T.N.G. v. Superior Court**, 4 Cal. 3d 767, 781 (1971). Long-established, black letter California precedent required notice and hearing before plaintiff s Juvenile Court records were released to defendants. California Rule of Court 1433(b). "The 'petitioner seeking access to juvenile court records must first show good cause.' [Citation.] In addition, '[t]he minor and other interested parties must be given notice and an opportunity to be heard.'" **In re R. G.**, 79 Cal.App.4th at 1416. An example of the notice plaintiff should have gotten is found at AER 223 et seq.



California-Record-Sealing, Seal-Juvenile-Record, Darren-Chaker

The first obligation of a petitioner seeking Juvenile Court records is adequately to identify the information sought. In Cimarusti v. Superior Court (Department of the Youth Authority), the Court of Appeal held that:

Petitioners first need to make clear and specific the type of information they seek from the records to assist the designated court to perform its in camera review of the records.Cimarusti, 79 Cal.App.4th 799, 806, 94 Cal.Rptr.2d 336 (2000); see also **Foster v Superior Court**, 107 Cal. App. 3d 218, 165 Cal. Rptr. 701 (1980) (request properly denied as overly broad). In addition to specifically identifying the type of information sought, the petitioner seeking disclosure of juvenile records must show the "records in question will disclose information or evidence of substantial relevance to the pending litigation …." California Rule of Court **1423** (emphasis added). This Rule of Court "sets forth the proper balancing test for the juvenile court to undertake." In re R. G., supra, 79 Cal.App.4th at 1414-15. Further, "Any balancing must be guided by the principle that [f]irst, and foremost, the court's discretion must be directed at determining what is in the best interests of the minors, for that obviously is its primary concern at all times in the juvenile proceeding.'" Id. at 1417.

If the Juvenile Court decides to release records, it "should made a record of its findings adequate for review of its ruling." **In re Keisha T.**, supra, 38 Cal.App.4th at 241. Of course, the minor then has the right to appeal. Id. at 226 ("the minors appeal from the court order").

**California Expungement**, **California-Seal-Juvenile-Record**, **Darren-Chaker**, **Juvenile Records** | Tags: **california-juvenile-record**, **criminal-record-seal**, **criminal-record-sealing**, **darren-chaker**, **juvenile-record-sealing**, **TNG-v-Superior-Court**

### Arizona Record Sealing

**16 08 2013 04:26** 

Arizona law allows for record sealing or expungement. **Darren Chaker** cites to *Phoenix Newspapers, Inc. v. United States District Court*, 156 F.3d 940, 949 (9th Cir. 1998), the Ninth Circuit held that criminal proceedings and documents may not be closed to the public without violating the First Amendment unless three substantive requirements are met: "1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest." *Id.* at 949, quoting *Oregonian Publishing Co. v. United States District Court*, 920 F.2d 1462, 1464 (9th Cir. 1990).

One case I am aware of is Arizona Attorney **David Gingras** was **arrested** for sexual molestation of an underage girl. The charges were eventually dismissed due to a technicality. The young girl who was a victim passed a polygraph test and probable cause

was found to have **Jaburg Wilk** attorney to stand trial. Nonetheless, **Attorney Gingras** appears to have never petitioned the court to seal the record based on showing he was wrongfully arrested. See **Docket**.

Furthermore, the court ordering closure must "make specific factual findings," rather than "bas[ing] its decision on conclusory assertions alone." *Id.* at 949, quoting *Oregonian Publishing Co. v. United States District Court*, 920 F.2d 1462, 1464 (9th Cir. 1990).

**13-4051**. Entry on records; stipulation; court order

A. Any person who is wrongfully arrested, indicted or otherwise charged for any crime may petition the superior court for entry on all court records, police records and any other records of any other agency relating to such arrest or indictment a notation that the person has been cleared.

B. After a hearing on the petition, if the judge believes that justice will be served by such entry, the judge shall issue the order requiring the entry that the person has been cleared on such records, with accompanying justification therefor, and shall cause a copy of such order to be delivered to all law enforcement agencies and courts. The order shall further require that all law enforcement agencies and courts shall not release copies of or provide access to such records to any person except on order of the court.

C. Any person who has notice of such order and fails to comply with the court order issued pursuant to this section shall be liable to the person for damages from such failure.

Another example of a public record in criminal court can be seen in Rule 26.6(e), Ariz. R. Crim. P., which states that presentence reports and other reports prepared under Rule 26 "are matters of public record unless otherwise provided by the court or made confidential by law." A.R.S. § 39-121 provides:

Public records and other matters in the custody of any officer shall be open to inspection by any person at all times during office hours.

Arizona imposes a presumption in favor of disclosure of public records. *A.H. Belo Corp. v. Mesa Police Dept.*, 202 Ariz. 184, 186, ¶ 5, 42 P.3d 615, 617 (App. 2002); see also *Phoenix Newspapers, Inc. v. Purcell*, 187 Ariz. 74, 81, 927 P.2d 340, 347 (App. 1996) [It is well-settled that Arizona evinces a general "open access" policy toward public records]. The public naturally has an interest in public records, regardless of whether the member of the public seeking them has any need for those records. *Bolm v. Custodian of Records, Tucson Police Department*, 193 Ariz. 35, 39, ¶ 10, 969 P.2d 200, 204 (App. 1998).

In ***Carlson v. Pima County***, 141 Ariz. 487, 491, 687 P.2d 1242, 1246 (1984), the Arizona Supreme Court recognized the statutory policy favoring disclosure, but also stated that "where the countervailing interests of confidentiality, privacy or the best interests of the state should be appropriately invoked to prevent inspection," a public official or custodian could refuse to allow public inspection of particular records. To overcome the presumption of disclosure, the party that seeks nondisclosure of public records bears the burden of showing "the probability that specific, material harm will result from disclosure." *Mitchell v. Superior Court*, 142 Ariz. 332, 335, 690 P.2d 51, 54 (1984). See also ***Scottsdale Unified School District v. KPNX Broadcasting Co.***, 191 Ariz. 297, 300, ¶ 9, 955 P.2d 534, 537 (1998).

If the defendant has not met his burden of showing "the probability that specific, material harm will result from disclosure." *Mitchell v. Superior Court*, 142 Ariz. 332, 335, 690 P.2d 51, 54 (1984), then the motion to seal must be denied.



David Gingras, sex offense, ripoffreport attorney.

Arizona Record Sealing, David-Gingras-Attorney, Jaburg-Wilk, Maria-Speth | Tags: arizona-expungement, arizona-record-sealing, darren-chaker, david-gingras, jaburg-wilk, maria-speth, Martha-Sandweiss, who-is-darren-chaker

**Criminal and Civil Records Are Public Records**





Article by Darren-Chaker

Criminal records are public records, says Darren Chaker. When trying obtain record sealing or expungement of a criminal record, it is important to note a common law right of access by the public and media to criminal judicial proceedings, which pre-dates the Constitution, has long been recognized by Anglo-American courts. See *Richmond Newspapers v, Virginia*, 448 U.S. 555, 596 (1980). After years of conflict among the federal courts, the United States Supreme Court, when faced squarely with the issue, held that a First Amendment Constitutional right to access to criminal trials existed. *Id*: Posey-Gelber, Constitutional law Contemporaneotis Access to Judicial Records in Civil Trials, – *In Re Reporters Committee for Freedom of the Press*, 773 F.2d 1325 (1985). 9 Whittier L. Rev. 67, 68 (1987). In recognizing a First Amendment right of access in criminal matters, Chief Justice Burger, in a plurality opinion, reasoned that criminal trials have historically been presumptively open to the public. *Richmond Newspapers*, 448 U.S. at 564-69. In dicta, the Court in Richmond Newspapers noted "that historically both civil and criminal trials have been presumptively open." *Id*. At 580 n. 17. After *Richmond Newspapers*, the Supreme Court decided several other cases which expanded the right of access of the media and public in other areas relating to criminal proceedings. See *Globe Newspapers v. Superior Court*, 457 U.S. 596 (1982); *Press Enterprise Co. v. Superior Court*, 464 U.S. 501 (1982).

Additionally, Darren Chaker notes several federal circuit courts have held that a constitutional right of access attaches in certain civil proceedings. *See* Bechamps, Sealed Out of Court Documents: Wlien Does The Public Have A Right To Know? 66 Notre Dame L. Rev. 117,133 (1990); *Westmoreland v. Columbia Broadcasting System*. 752 F.2d 16 (2d Cir. 1984), cert, denied, 472 U.S. 1017 (1985); *Publkker Indus., Inc. v. Cohen*. 733 F.2d 1059 (3d Cir. 1984); In re Continental 111. Sec. Litig. 732 F.2d 1302 (7th Cir. 1984); *Brown & Williamson Tobacco Corp. v. FTC* 710 F.2d 1165 (6th Cir. 1983), cert, denied 465 U.S. 1100(1980).

Allowing such access "enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system." *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 508 (1984) ( "Press-Enterprise I"). As former Chief Justice Burger wrote, "[p]eople in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Richmond Newspapers, Inc.*, 448 U.S. at 572.

Indeed, open access to judicial proceedings is not just a beneficial practice; in many instances, it is a constitutional mandate. Court proceedings related to criminal trials in particular are subject to a First Amendment right of access – a right that "permits the public to participate in and serve as a check upon the judicial process – an essential component in our structure of self-government." *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606 (1982); see also *Richmond Newspapers, Inc.*, 448 U.S. at 596 (Brennan, J., concurring) (citation and internal quotation marks omitted) ("The knowledge that every criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power[.]").

Thus the above factors weigh against record sealing unless it can be proven requirements under state law have been met. These requirements often include proof of factual innocence. For example, California "[Penal Code] section 851.8 is for the benefit of those defendants who have not committed a crime. It permits those petitioners who can show that the state should never have subjected them to the compulsion of the criminal law — because no objective factors justified official action — to purge the official records of any reference to such action. . . …" (*People v. Matthews* (1992) 7 Cal.App.4th 1052, 1056.) ws a person to seal and destroy records based upon a showing of factual innocence. Many states, like Nevada, Arizona, and Texas, have similar statutes and it is wise to seek the advice of an attorney in your state if record sealing and destruction is available to you.

Darren Chaker and record sealing.

California Expungement, Darren-Chaker, Expungement, Texas Record Sealing | Tags: 851.8, arizona-expunge, arizona-record-sealing, california-expungement, california-record-sealing, caliornia-penal-code-851.8, court-file-public-record, darren-chaker, nevada-record-sealing, texas-expunge, www.viewpointdiscrimination.com

## When Good Faith is Not Enough for Probable Cause

14 03 2013 11:02

**Darren Chaker** agrees that the good faith exception to the **exclusionary rule** does not apply to police reliance upon inaccurate computer records unless substantial evidence shows that the error was made by court officials rather than law enforcement. Too often police in Los Angeles to San Diego illegally obtained information it wants to use against the defendant. As the below points out, court's take a flexible but dim view on Fourth Amendment violations.

Under the good faith exception established by the United States Supreme Court in *United States v. Leon* (1984) 468 U.S. 897, evidence seized in violation of the Fourth Amendment may be exempt from exclusion if "the officer's conduct is objectively reasonable." (*United States v. Leon, supra*, 468 U.S. 897, 919.) The Court based its ruling in large part on its perception that future Fourth Amendment violations were unlikely to be deterred by exclusion of relevant evidence obtained through erroneous issuance of a search warrant by a magistrate. (*Id.* at pp. 916-17.) The Court noted that judges and magistrates were not adjuncts to law enforcement and could not be expected to alter their behavior in response to exclusion of evidence. (Ibid.)

In keeping with this reasoning, federal and California courts have drawn a key distinction in analyzing where the good-faith exception applies, requiring suppression where errors leading to Fourth Amendment violations were made by a police or law enforcement department, rather than by the judicial or legislative branches. (*Miranda v. Superior Court* (1993) 13 Cal.App.4th 1628, 1634.) These courts have concluded that "application of the exclusionary rule depends on the source of the error or misconduct that led to the unconstitutional search." (*People v. Willis, supra*, 28 Cal.4th 22, 35.) Suppression is required for errors arising within a law enforcement department because "even if an officer acts in good faith reliance on ... information communicated to him through official channels, law enforcement officials are collectively responsible for keeping those channels free of outdated, incomplete, and inaccurate ... information." (*In re Arron C.* (1997) 59 Cal.App.4th 1365, 1369, quotation marks and citation omitted, ellipses in original.) Suppression of unconstitutionally seized evidence will deter law enforcement officials from making such mistakes in the future.

In contrast, where Fourth Amendment violations occur due to errors by judicial staff, including court clerks, exclusion of the illegally obtained evidence is seen as serving no deterrent purpose. (*Arizona v. Evans* (1995) 514 U.S. 1.) In *Arizona v. Evans*, an officer had arrested the defendant and seized marijuana from his car upon learning during a traffic stop that there was an outstanding misdemeanor warrant out for his arrest. (*Id.* at p. 4.) In fact, the misdemeanor warrant had been quashed 17 days earlier; the sheriff's office still had a record of the warrant because of a failure by a judicial clerk to inform the sheriff that it had been quashed. (*Id.* at p. 5.) Thus, the arrest and search incident to arrest were unauthorized and unconstitutional.

In concluding that the exclusionary remedy was not warranted, the Supreme Court noted that testimony at the suppression hearing established that errors by the judicial clerk were rare, occurring once every three or four years. (*Id.* at p. 15.) Thus, there was no reason to believe that court employees were inclined to carelessness affecting people's Fourth Amendment rights. (*Ibid.*) Most significantly, the Court did not believe that excluding the discovered evidence would deter future errors by court clerks. (*Ibid.*)

This same distinction has been emphasized in the context of Fourth Amendment violations

arising, as in the instant case, from erroneous computer records. Thus, courts require suppression of evidence obtained through reliance on erroneous records maintained by law enforcement officials, but generally admit evidence obtained because of officers' reliance on faulty records maintained solely by judicial personnel. (See, e.g., *People v. Willis*, supra, 28 Cal.4th 22, 36; *People v. Ramirez*, supra, 34 Cal.3d 541, 552; *People v. Downing* (1995) 33 Cal.App.4th 1641, 1645.)

**Illegal Search**, mcmillan-law-firm-la-mesa, scott-mcmillan-la-mesa | Tags: 2013-darren-chaker, clerical-error-search, consent-search, darren-chaker, mcmillan-law-firm-la-mesa, scott-mcmillan-la-mesa, search-clerical-error
No comments

## California Expungement Law

**12**
**12**
2012
08:53



Darren Chaker, blogger, in Century City, Los Angeles.

California Penal Code section 1203.4, **Darren Chaker** writes, allows for expungement of a conviction. Pursuant to **section 1203.4**, subdivision (a), a probationer is entitled as a matter of right to have the plea or verdict changed to not guilty, to have the proceedings **expunged** from the record, and to have the accusations dismissed, if he or she has either (1) fulfilled the conditions of probation of the entire probationary period or, (2) been discharged prior to the termination of the probation period. (*People v. Bradus* (2007) 149 Cal.App.4th 636, 641; *People v. Lewis* (2006) 146 Cal.App.4th 294, 297.) In other words, "'[I]f the petitioner establishes either of the necessary factual predicates, the trial court is required to grant the requested relief.'" (*People v. Lewis*, supra, 146 Cal.App.4th at p. 294, quoting *People v. Hawley* (1991) 228 Cal.App.3d 247, 249-250, italics original.)

In *People v. Lewis*, the court noted that:

It was apparently intended that when a defendant has satisfied the terms of probation, the trial court should have no discretion but to carry out its part of the bargain with the defendant.

(*People v. Lewis*, supra, 146 Cal.App.4th at p. 294; see *In re Griffin* (1967) 67 Cal.2d 343, 347, fn. 3 ["On application of a defendant who meets the requirements of section 1203.4 the court not only can but must proceed in accord with that statute."].) The court also reiterated the concept that:

" 'The expunging of the record of conviction is, in essence, a form of legislatively authorized certification of complete rehabilitation based on a prescribed showing of exemplary conduct during the entire period of probation.'"

(*People v. Lewis*, supra, 146 Cal.App.4th at p. 294, quoting *People v. Chandler* (1988) 203 Cal.App.3d 782, 788-789, quoting *People v. Turner* (1961) 193 Cal.App.2d. 243, 247; see *People v. Field* (1995) 31 Cal.App.4th 1778, 1787 [relief under section 1203.4 is intended to reward an individual who successfully completes probation]; *People v. Johnson* (1955) 134 Cal.App.2d 140, 143 ["The obvious purpose is to secure law compliance through an attempt at helpful cooperation rather than by coercion or punishment."].)

**Section 1203.4**, subdivision (a), also authorizes a trial court to grant relief in any case in which the court determines relief is proper "in its discretion and the interests of justice." (See *People v. Chandler*, supra, 203 Cal.App.3d at p. 733, fn. 2, citing *People v. Butler* (1980) 105 Cal.App. 3d 585, 587.) The court's decision to grant or deny relief is discretionary in this third situation. (*People v. Field*, supra, 31 Cal.App.4th at p. 1786; *People v. Butler*, supra, 105 Cal.App. 3d at p. 587.) Generally, the complaining party must establish " 'that the court exercised its discretion in an arbitrary, capricious or patently absurd manner ...'" (See *People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125, quoting *People v. Jordan* (1986) 42 Cal.3d 308, 316; see also Denham v. Superior Court (1970) 2 Cal.3d 557, 566.) Put differently, an abuse of discretion occurs when an appellant can

show that the lower court's decision falls outside the bounds of reason. (*See People v. Bradford* (1997) 15 Cal.4th 1229, 1315; *People v. Parmar* (2001) 86 Cal.App.4th 781, 792.).

California Expungement, Darren-Chaker | Tags: 1203.4, darren-chaker, Los-Angeles-Expunge, Orange-County-Expunge, PC-1203-4, ticket-expunge
No comments

### Florida Criminal Record Sealing

**06**
**12**
2012
08:28

Record sealing under Florida law, says Darren Chaker, can occur if a person pleads guilty, nolo contendere or is found guilty by a jury but the sentencing judge withholds adjudication of guilt, there has been no conviction. *See* Fla.R.Evid. 90.610, FS. § 948.01; *Delaney v. State*, 190 So.2d 578 (1966), appeal dism'd 387. U.S. 426 (1967).

Moreover, when records relating to a person's criminal history have been expunged/sealed, the person is restored to the status the person had before the criminal proceedings. See F.S. §948.01: *Walley v. Florida Game & Fresh Water Fish Comm.*, 501 So.2d 671 (1st DCA 1987). The person's status before charges were brought was that the person had not been convicted of the crime in question and therefore the expunged/sealed record would not be admissible. *See Id*.

To qualify to have a record expunged/sealed, requires that the person who, is the subject, must (1) never previously have been adjudicated guilty of a crime; (2) not have been adjudicated guilty of any charges stemming from the arrest to which the expungement/sealing petition pertains. Darren concludes if all records relating to a defendant's case are sealed pursuant to Florida law, then the defendant may lawfully deny or fail to acknowledge the events covered by the sealed records. See F.S. § 943.058 (1991). Fla.R.Evid. 90.610 requires evidence that a person has been convicted of a crime to be admitted.

Only evidence of a criminal conviction is admissible; a witness may not be interrogated as to former arrest or other accusations of crimes. Questions regarding past criminal records or convictions should not be asked unless counsel has knowledge of a conviction and a certified copy of the judgment of conviction in counsel's possession. A review of Florida court decisions hold that when a trial court withholds adjudication of guilt *there is no conviction*. See *Roberts v. State of Florida*, 450 So.2d 1126 (Fla. 4th DCA 1984); *Accredited Surety and Casualty Company, Inc. v. State of Florida*, 318 So.2d 554 (Fla. 1st DCA 1975); *Bernhardt v. State*, 288 So.2d 490 (Fla. 1974); *State v. Gazda*, 257 So.2d 242, 243 (Fla. 1971); *Weathers v. State*, 56 So.2d 536 (Fla. 1952); *Daughtrey v. State*, 35 So. 397 (Fla. 1903); *Parker v. State*, 563 So.2d 1130 (Fla.5th DCA 1990); *Garron v. State*, 528 So.2d 353 (Fla.1988); *Duffell v. South Walton*, 501 So.2d 1352 (Fla. 1st DCA 1986); *Clinger v. State*, 53 So.2d 315 (Fla.5th DCA 1988); and 14 Fla. Jur. 2d, Criminal Law 3(1979).

Darren-Chaker, Expungement, Seal Florida Record | Tags: criminal-record-sealing, darren-chaker, darren-chaker-2012, darren-chaker-aclu, darren-chaker-ripoff, expunge-florida, florida-record-sealing
No comments

Design by
Andreas Hultgren