1   Scott A. McMillan, CBN 212506
    **THE MCMILLAN LAW FIRM, APC**
2   4670 Nebo Drive, Suite 200
    La Mesa, California 91941-5230
3   (619) 464-1500 x 14
    Fax: (619) 828-7399
4
    Attorney for Plaintiff,
5   Scott A. McMillan and The McMillan Law Firm, APC

6

7

8                  UNITED STATES DISTRICT COURT

9                SOUTHERN DISTRICT OF CALIFORNIA

10

11  SCOTT A. MCMILLAN, an individual,        Civil Case No.: 3:16-cv-2186-WQH-
    THE MCMILLAN LAW FIRM, APC, a            MDD
12  California professional corporation,
                                             First Amended Complaint for
13          Plaintiffs,                       1.      Racketeer Influenced and
                                             Corrupt Organizations Act (18
14          vs.                              U.S.C. §§ 1962(c))
                                             2.      Racketeer Influenced and
15  DARREN D. CHAKER an individual,          Corrupt Organizations Act (18
    and as trustee of PLATINUM               U.S.C. §§ 1962(d))
16  HOLDINGS GROUP TRUST, dba                3.      Civil Extortion
    COUNTER FORENSICS; NICOLE
17  CHAKER, an individual, and as trustee of
    THE NICOLE CHAKER REVOCABLE                  DEMAND FOR JURY TRIAL
18  LIVING TRUST, U/A dated August 18,
    2010, VANIA CHAKER, an individual
19  and as beneficiary of The Island
    Revocable Trust under Declaration of
20  Trust dated June 2, 2015, MARCUS
    MACK as trustee of The Island
21  Revocable Trust under Declaration of
    Trust dated June 2, 2015,
22
            Defendants.
23

24

25

26

27

28

Plaintiffs allege as follows:

**JURISDICTION**

1. This Court has jurisdiction over the subject matter of the causes of action in this complaint by virtue of:

a. federal question jurisdiction pursuant to 28 U.S.C. § 1331, involving an action pursuant to 18 U.S.C. § 1964(c), the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"). This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §1332;

b. supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), involving claims that are so related to claims in the action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution; and

2. This Court has jurisdiction over the person of the Defendant Darren Chaker because Defendant transacts business within this judicial district, and Defendant is amenable to service of process within the meaning of Federal Rule of Civil Procedure Rules 4(e), 4(f), and 18 U.S.C. § 1965(b).

3. Further, this District Court, the Hon. Larry A. Burns, District Judge presiding, has jurisdiction over Defendant because Defendant is under an order of supervised release according to the terms of sentence of Defendant's conviction for bankruptcy fraud, *United States v. Chaker*, U.S.D.C., So. Dist. California, Case No. 3:15-cr-07012-LAB.

4. Venue is proper in this district pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391 because Defendants transacts business in this district or, alternatively, this district is where a substantial part of the events or omissions giving rise to the claim occurred.

**THE PARTIES**

5. Plaintiff, SCOTT A. MCMILLAN (hereinafter referred to as "Plaintiff McMillan"), is a resident of the State of California, County of San Diego. Plaintiff is a California licensed attorney, and is engaged in intra-state, and interstate commerce in the course of his practice. Plaintiff McMillan also operates a law school, the McMillan

1  Academy of Law, a Caliornia corporation, which is unaccredited, but registered with the

2  Committee of Bar Examiners, State Bar of California. Plaintiff McMillan has a property

3  interest in the right to practice his profession as a licensed attorney.

4     6.  Plaintiff, THE MCMILLAN LAW FIRM, APC, a California professional

5  corporation, (hereinafter referred to as "Plaintiff TMLF") has its principal place of

6  business in the County of San Diego, State of California. Plaintiff McMillan operates

7  Plaintiff TMLF.  TMLF has a property interest in its "goodwill" as such term is defined at

8  California Business and Professions Code sections 14100 and 14102.

9     7.  Defendant, DARREN CHAKER (a.k.a. Darren Del Nero a.k.a. Darren Del

10  Nero-Chaker a.k.a. Darren Shaker, a.k.a. D. David Hunter) (hereinafter referred to as

11  "Defendant DARREN"), is presently a resident of the State of California, County of San

12  Diego. Defendant DARREN conducts business through and holds assets as trustee in

13  PLATINUM HOLDINGS GROUP TRUST, a self-settled trust.  Plaintiff is further

14  informed and believes that Defendant DARREN conducts business under the pseudonym

15  or doing-business-as "COUNTER FORENSICS." Defendant DARREN  was deemed a

16  vexatious litigant in Superior Court of California, County of San Diego Case Nos. 591421

17  (December 2, 1997) and GIC757326 (June 22, 2001).

18     8.  Defendant VANIA CHAKER, also know as Valentina Chanel,  (hereinafter

19  referred to as "Defendant VANIA") is presently a resident of the State of California,

20  County of San Diego, and is Defendant's Darren's sister.  On one or more occasions,

21  VANIA has participated in the acts set forth herein, providing assistance to Defendant

22  DARREN in committing predicate acts. Plaintiff is informed and believes that Defendant

23  VANIA conducts business through and holds assets as beneficiary in a self-settled trust,

24  which shall be referred to herein as THE ISLAND REVOCABLE TRUST, dated June 2,

25  2005. Defendant Marcus Mack is sued solely in his capacity as Trustee of the THE

26  ISLAND REVOCABLE TRUST, dated June 2, 2005.

27     9.  Defendant NICOLE CHAKER  (hereinafter referred to as "Defendant

28  NICOLE"), is the mother of Defendant DARREN and Defendant VANIA. On one or

1   more occasions, Defendant NICOLE has participated in the acts set forth herein,

2   providing assistance to Defendant DARREN in committing predicate acts. Plaintiff is

3   informed and believes that Defendant NICOLE conducts business through and holds

4   assets as trustee in a trust, which shall be referred to herein as THE NICOLE CHAKER

5   REVOCABLE LIVING TRUST, U/A dated August 18, 2010.  Defendant NICOLE is

6   sued both invidiually and as trustee of said trust.

7                    **DEFENDANTS' ENTERPRISE AND PREDICATE ACTS**

8            10.  Plaintiffs are informed and believe, and based thereon allege that Defendant

9   VANIA is an attorney, currently licensed to practice law in the State of California.

10  Defendant VANIA has lived at various times in California and the Pennsylvania.

11  Defendant VANIA, as a profession, both individually on her own account and to assist

12  Defendants DARREN and NICOLE, engaged in litigation based on meritless or outright

13  false claims, typically relying upon the Fair Credit Reporting Act, 15 U.S.C. § 1681, and

14  on at least one occasion bringing a claim for personal injury, deriving income from such

15  fraudulent activity.  As part of her pattern of racketeering activity, Defendant VANIA has

16  attempted and sometimes succeeded in collecting unlawful debts, i.e., a claim based on

17  false or meritless legal claims, and derived income from such false claims and unlawful

18  threats of suit.  For instance in *Vania Chaker v. Monarch Group Management, Inc.*,

19  U.S.D.C. So. Dist. of Cal., Case No. 06cv1534W(AJB), Defendant VANIA brought a

20  class action complaint for violation of the Fair Debt Collections Practices Act, 15 U.S.C.

21  § 1692, et seq. and the California Rosenthal Fair Debt Collection Practices Act, arising

22  from her landlord's service of a three day notice to pay rent or quit on her.  Defendant

23  VANIA has brought three other cases based on allegations of violations of the Fair Debt

24  Collection Practices Act, e.g., *Vania Chaker v. Collection Company of America*, U.S.D.C.

25  So. Dist. of Cal., Case No. 05cv390 BEN(AJB) [unpaid T-mobile cellular phone

26  charges]; *Vania Chaker v. Allied Interstate, Inc.*, U.S.D.C. So. Dist. of Cal., Case No.

27  05cv0212 LAB(RBB)[unpaid DirectTV bills]; *Vania Chaker v. CAMCO*, U.S.D.C. So.

28  Dist. of Cal., Case No. 04cv1735 W(RBB).

11.  Plaintiffs are informed and believe, and based thereon allege that Defendant VANIA did not solely file such suits in the Southern District of California, but also assisted in cases in the Central District of California, appearing as attorney in the suit brought by Defendant DARREN *subnom* (Darren Del Nero) and Defendant NICOLE alleging defendant's violations of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692, et seq..  Specifically, Defendants DARREN and NICOLE brought suit against Midland Credit Management Inc., in the case of *Del Nero & Chaker, et al., v. Midland Credit Management Inc*., U.S.D.C. Cen. Dist. of Cal., Case No. 2:04-cv-01040-ABC-SH. Defendant DARREN  and his attorneys were sanctioned $155,979.09 after the court found that Defendant DARREN  brought suit in bad faith and for the purpose of harassment.  (*Del Nero v. Midland Credit Management Corp. et al*., 2:04-cv-01040-ABC-SH.(Attorneys fee award later vacated against Chaker's counsel.) The Court issued an order to show cause re contempt for Defendant VANIA's conduct during the jury trial, and barred her from the courtroom during the remainder of the trial. The court's basis for the order was that Defendant VANIA attempted to aid a witness in answering counsel's questions. [ECF 91.] Defendant VANIA also represented Defendant DARREN *subnom* (Darren Del Nero) in  *Darren Del Nero v. Reliable Adjustment Bureau Inc et al*, U.S.D.C. Cen. Dist. of Cal., Case No. 2:04-cv-00969-FMC-JWJ, another case alleging violations of 15 U.S.C., § 1681.  In each of those instances, in a likely effort to avoid Defendant DARREN's prefiling order as a vexatious litigant, Defendant VANIA initially appeared on Defendant DARREN's behalf, then substituted out to allow Defendant DARREN to prosecute the case *in propria persona*.  Defendant VANIA engaged in such transitory representation of Defendant DARREN to assist him avoiding the bar of the prefiling orders placed resulting from his designation as a vexatious litigant.

12.  As to Defendant DARREN, Plaintiffs are informed and believe, and based thereon allege that Defendant DARREN holds himself out to the public as operating a business called COUNTER FORENSICS.  The COUNTER FORENSICS web page described its services as follows:

"Founded in 2006, the origination of CounterForensics.com can be traced to the cyber security and forensics background of our consultant, Darren Chaker. Mr. Chaker (www.DarrenChaker.com) previously worked in law enforcement, and as a security contractor in the Middle East. More recently, Mr. Chaker managed electronic discovery (e-discovery) for a leading multinational law firm conducting large-scale digital forensic investigations, and provided electronic discovery services involving civil, corporate and criminal matters. Mr. Chaker also implemented security enforcement protocols and systems with Military Grade Communications for use between international offices to discuss sensitive matters. Mr. Chaker has additional expertise in matters involving:

• Software piracy;

• Sexual harassment via e-mail, instant messaging and other forms of electronic communications;

• Monitoring employee activity;

• Employee sabotage;

• Intrusion detection;

• Recovery of deleted files;

• Lost password recovery and cracking of locked files;

• Discovery of hidden and deleted e-mails and pictures;

• Internet usage and unauthorized software installed on a company machine; and

Removal of viruses, pictures, software and other data items which may be hidden from the user.

See **Exhibit 6**,

https://web.archive.org/web/20150208142616/http://www.counterforensics.com/ (Accessed on August 23, 2016.)

13.   At various times relevant to the facts stated herein, Defendant DARREN has resided in California, Nevada and Texas, and engaged in transactions and acts affecting

interstate commerce:

14.  Defendant DARREN  has, as a profession, engaged in litigation based on meritless or outright false claims, typically relying upon the Fair Credit Reporting Act, 15 U.S.C. § 1681, and on at least one occassion bringing a claim for personal injury, deriving income from such fraudulent activity.  As part of his pattern of racketeering activity, Defendant DARREN  has attempted and sometimes succeeded in collecting unlawful debts, i.e., a claim based on false or meritless legal claims, and derived income from such false claims and unlawful threats of suit.

15.  In another 2005 case, attorney's fees of $42,934.84 were awarded against Defendant DARREN  for filing a baseless lawsuit. (*Chaker v. Richland* (C.D. Cal. 2005) CV 05-7851-RSWL; *See also Chaker v. Imperial Collection Services* (C.D. Cal. 2004) CV 04-2728-PA (alleging claims under the FDCPA found to be without merit); and *Del Nero v. Riddle & Associates PC, et al.* (C.D. Cal. 2003) CV 03-6511-GHK (same).) In a 2007 case, Defendant DARREN  and his attorneys were sanctioned $155,979.09 after the court found that Defendant DARREN  brought suit in bad faith and for the purpose of harassment.  (*Del Nero v. Midland Credit Management Corp. et al*. (C.D. Cal. 2007) CV 04-1040 GPS.)  In a 2009 case, Defendant DARREN  was ordered to pay $136,316.14 for bad faith due to Defendant DARREN  falsely claiming identity theft.  (*Chaker v. Nathan Enterprises Corp.* (C.D. Cal.  2009)  CV 04-2726-RSWL.)

16.  Defendant DARREN filed other suits based allegations of violations of Fair Credit Reporting Act, 15 U.S.C. § 1681, i.e., *Darren Chaker-Del Nero v. Afni, Inc.*, U.S.D.C. Cen. Dist. of Cal., Case No. 2:08-cv-03405-ODW-SS; *Darren D Chaker v. First City Bank Credit Union*, U.S.D.C. Cen. Dist. of Cal., Case No. 2:04-cv-02727-GPS-RZ; *Darren D Chaker v. Factual Data Corporation*, U.S.D.C. Cen. Dist. of Cal., Case No.  2:04-cv-02729-JFW-AJW; *Darren D Chaker v. European Auto House*, U.S.D.C. Cen. Dist. of Cal., Case No. 2:04-cv-02731-R-PJW; *Darren Chaker v. Arrow Financial Services* LLC, U.S.D.C. Cen. Dist. of Cal., Case No. 2:04-cv-07050-FMC-FMO.

17.   Defendants have a pattern of attacking the attorneys which oppose them, i.e., in *Darren D Chaker v. Felipa R. Richland, et al.*, U.S.D.C. Cen. Dist. of Cal., Case No. 2:05-cv-07851-RSWL-PLA, Defendant DARREN sued attorney Richland and her law office, and her client Nathan Enterprises Corp. for alleged violations of the  Fair Credit Reporting Act, 15 U.S.C. § 1681.  Plaintiff is informed and believes and based thereon alleges that during her defense of the both cases, Ms. Richland was stalked, her property vandalized.  Ultimately, Ms. Richland and her client prevailed, with Defendant DARREN held liable for costs and attorneys fees. [ECF 25, 26.]

18.   Defendant DARREN, subnom *Darren Chaker Del-Nero*, brought additional suits in the United States District Court for the District of Nevada based on allegations of violation of the Fair Credit Billing Act, 15 U.S.C. § 1666, e.g.,  *Chaker-Delnero v. Nevada Federal Credit Union, et al*, U.S.D.C. District of Nevada., Case No., 2:06-cv-00008-BES-GWF; for violations of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692, *Chaker-Delnero v. Butler & Hailey, et al*, U.S.D.C. District of Nevada., Case No. 2:06-cv-00022-KJD-LRL, *Chaker-Delnero v. Clark County Collection Service, LLC*, U.S.D.C. District of Nevada, 2:06-cv-00123-JCM-PAL, and *Chaker-Delnero v. Collectco*, U.S.D.C. District of Nevada, 2:06-cv-00244-RLH-GWF.  In each of these cases, docket entries reflect a voluntary dismissal. Plaintiff is informed and believes that in those cases, the Defendants paid a sum to "buy their peace" rather than to spend attorneys fees litigating the case, despite the lack of the merit to Defendant DARREN's claims.

19.   Defendant DARREN, subnom *Darren Chaker*, brought additional suit in the United States District Court for the Southern District of Texas (Houston) based on allegations of violation of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692, *Chaker v. The CMI Group*,  U.S.D.C. Southern District of Texas (Houston), 4:07-cv-01802F [Time Warner Communications.] In that case, the docket entries reflect a voluntary dismissal. Plaintiff is informed and believes that in that case, the Defendants paid a sum to "buy its peace" rather than to spend attorneys fees litigating the case,

1    despite the lack of the merit to Defendant DARREN's claims.

2          20.  Defendant DARREN, subnom *David Hunter*, brought additional suit in the

3    United States District Court for the District of Arizona, entitled *Hunter v. Receivables*

4    *Performance Management, LLC*, U.S.D.C. District of Arizona, 2:10-cv-00665-MHM

5    [Sprint cellular phone service].  Within that suit Defendant DARREN attached letters

6    claiming an address at 11881 S. Fortuna Road, #223, Yuma, AZ 85367 [Exhibit B, ECF

7    1-3.] In that case, the docket entries reflect a voluntary dismissal. Plaintiff is informed

8    and believes that in that case, the Defendant paid a sum to "buy its peace" rather than to

9    spend attorneys fees litigating the case, despite the lack of the merit to Defendant

10   DARREN's claims.

11                                      **SEX TRAFFICKING**

12         21.  Plaintiff is informed and believes and based thereon alleges that Defendant

13   DARREN also engaged, within the last ten years, in human trafficking, and derived

14   income from such activity.

15         22.  Defendant DARREN's record of arrests and prosecutions (RAP) reveals

16   arrests for insufficient funds/check, attempting to prevent/dissuade victim/witness,

17   receiving known stolen property, vehicle theft, first degree burglary, grand theft, and

18   being in possession of an assault weapon. He was convicted of invading/looking into a

19   tanning booth (1997), and possession of an assault weapon (2006). Such crimes were

20   punishable by a year or more incarceration.

21                                     **FALSE STATEMENTS**

22         23.  Defendant DARREN also obtained mortgages on real estate through false

23   statements, and thereafter rather than paying the mortgages, Defendant DARREN kept the

24   rents from such properties to fund his enterprises, and when his mortgagors sought to

25   recover their real property collateral, Defendant DARREN filed false bankruptcy petitions

26   in order to stall or avoid the foreclosure and continue to collect rental income.

27         a.  Defendant DARREN used the ill-gotten proceeds of his enterprise to fund his

28             lifestyle and further his illegal activities including through the purchase of

computers, paying for travel, development of various domain names and online presences to the detriment of Plaintiff herein.

b.  In order to dissuade those members of law enforcement and attorneys in private practice who would challenge Defendant DARREN's criminal conduct, including Plaintiff herein, Defendant DARREN used various means and threats, including harassment, stalking, defaming others, vandalizing property, hacking computers, spoofing emails, and identity theft.

c.  Defendant DARREN has used the proceeds of his racketeering activity to purchase computers, equipment, and Internet access services in order to engage in his and Defendants VANIA and NICOLE's frauds, and efforts to dissuade those who oppose their illegal conduct, including Plaintiff herein.

d.  On March 22, 2012, Defendant DARREN was indicted in *United States v. Darren David Chaker*, Case No. 4:12CR00168-001, and thereafter granted pre-trial release under supervision with U.S. Pretrial Services.  The Indictment, attached as **Exhibit 1**, alleges a portion of Defendants' scheme, which Plaintiff incorporates by reference here.

e.  While on supervision with U.S. Pretrial Services, through false statements to a United States officer, he violated his terms of release by failing to disclose to U.S. Pretrial Services and the Court the fact that he procured a U.S. Passport using the alias "D. David Hunter."

f.  On December 17, 2013, Defendant DARREN suffered a Judgment in a Criminal Case in the case entitled *United States v. Darren David Chaker*, Case No. 4:12CR00168-001, in the United States District Court for the Southern District of Texas (Houston), for Bankruptcy Fraud, 18 U.S.C § 157(3).  On April 14, 2016, that conviction was affirmed by the United States Court of Appeals for the Fifth Circuit, case number 14-20026, as reported in  *United States v. Chaker*, 820 F.3d 204, 206 (5th Cir. 2016). He was sentenced to a total term of 15 months, and was additionally sentenced to three years supervised release, as part of the special

conditions of supervision was ordered:

"The defendant shall provide the probation officer access to any requested financial information. If a fine or restitution amount has been imposed, the defendant is prohibited from incurring new credit charges or opening additional lines of credit without approval of the probation officer.

The defendant is prohibited from possessing a credit access device, such as a credit card, unless first authorized by the probation officer.

The defendant is required to participate in anger management counseling as deemed necessary and approved by the probation officer. The defendant will incur costs associated with such program, based on ability to pay as determined by the probation officer.

The defendant is required to participate in a mental health program as deemed necessary and approved by the probation officer. The defendant will incur costs associated with such program, based on ability to pay as determined by the probation officer.

The defendant may not stalk and/or harrass other individuals to include, but not limited to, posting personal information of others or defaming a person's character on the internet."

(ECF 312, 4:12CR00168-001)

24.   On November 7, 2016, the district court in *United States v. Darren David Chaker*, U.S. District Court, Southern District of California, Case No. 3:15-cr-07012-LAB, struck the condition "The defendant may not stalk and/or harrass other individuals to include, but not limited to, posting personal information of others or defaming a person's character on the internet."

## DEFENDANTS' HISTORY OF EXTORTION AND WITNESS TAMPERING

25.   Defendants rely on keeping their past conduct, criminal convictions, lawsuits, and generally bad reputation out of public view.  To accomplish this the defendants regularly use pseudonyms, attempt to seal documents and proceedings which may alert the public to information about Defendants that if known, would provide a defense or would affect a fact-finder's view on their credibility.

26.   Defendant DARREN falsely, and in order to gain credibility with unknowing law enforcement and laypersons, holds himself out as a former law enforcement officer or government security employee, including at various times claiming an "Ex-cop" or to be an employee of the "Diplomatic Security Service."

27. **Victim Zaya**: Plaintiffs are informed and believe that, in accordance with Defendants' common plan and scheme, Defendant DARREN committed one or more acts of extortion against Nadine Zaya:

a.  Plaintiff is informed and believes, and based thereon alleges, that Defendant DARREN formerly had a dating relationship with Nadine Zaya. At some point between August and October 2002, Defendant DARREN and Zaya, traveled from Southern California to Scottsdale, Arizona. Petitioner took Zaya to a gun store, where he purchased the Rifle, a licensed reproduction of a Fabrique Nationale FAL (FN-FAL) battle weapon. At the gun store, petitioner told Zaya he once owned "the exact same gun" but his mother had taken it away from him.

b.  After Defendant DARREN  purchased the Rifle, he made Zaya take pictures of him with it. He also made Zaya pose with the Rifle. Defendant DARREN then took Zaya to a firing range, where he fired the Rifle and showed her how to shoot, hold, and load it. When Zaya held the Rifle, Defendant DARREN reassured her, "It's okay. Look, it's fun. . . . You're going to be okay. I'm an ex-cop. I know how to shoot a gun." Shortly thereafter, petitioner and Zaya returned to California with the Rifle.

c.  On October 14, 2002, Laguna Beach police officers visited Defendant DARREN's apartment to investigate allegations that he had sexually exploited a minor. A police officer entered the apartment, knocked on a bedroom door, and identified himself as a police officer. After some delay, Defendant DARREN emerged from the bedroom and told the officer the room belonged to him. He refused, however, to permit the police officers to search it. Defendant DARREN called Zaya after the police officers left the apartment. He expressed concern that the fully-assembled Rifle would be considered an illegal weapon.  Defendant DARREN told Zaya he was going to remove parts from the Rifle to "make it legal" and asked her to keep the parts.  The next day, the police officers returned to Defendant DARREN's  apartment with a search warrant. During the search, an

officer found the Rifle in petitioner's bedroom closet. He noticed the Rifle had a detachable magazine and a pistol grip, but that it was missing its bolt carrier group. The officers also found unloaded magazines and pictures of petitioner posing with the Rifle at a firing range. In the pictures, the Rifle contained the bolt and the magazine.

d.  On November 18, 2002, the District Attorney of Orange County filed a felony complaint charging defendant with one count of possession of an assault weapon (Penal Code § 12280(b))  and one count of receiving stolen property (Penal Code § 496, subd. (a)). Shortly after the People filed the complaint, defendant began writing letters to the court. In these letters, defendant claimed the police had illegally seized privileged documents from his apartment. He also criticized the judges presiding over his case and the attorneys assigned to represent him. On July 30, 2003 -- after defendant had written six letters to various judges -- the court ordered defendant to stop. The court notified defendant it would "not take action on personal communications from a represented defendant when his case is pending before this court." (*People v. Chaker*, No. G037362, 2008 Cal. App. Unpub. LEXIS 999, at *4-5 (Ct. App. Feb. 4, 2008).)

e.  Plaintiffs are informed and believe that in July 2005, the Superior Court of California, County of San Diego issued a restraining order against Darren D. Chaker pursuant to the Domestic Violence Protection Act (Fam. Code, § 6200 et. seq. (the Act)), requiring him to stay away from Nadine Zaya for a five-year period. He appealed from that order on various grounds, contending in part that Zaya's evidence was insufficient to support its issuance; the Court of Appeals of California, Fourth District, Division One, however, rejected his arguments and affirmed the order.

f.  On June 15, 2006, Zaya filed a request for a temporary restraining order under the Act against Chaker.  In her request, Zaya stated under penalty of perjury that Chaker made threatening calls to her and told her he would harm her or her family

if she testified in a pending criminal matter against him. (*Zaya v. Chaker* (Oct. 19, 2007, D049874) [nonpub. opn.].)

g.  Thereafter, on or about July 19, 2006, and then again on or about December 8, 2006, Defendant DARREN sent nude photos of Zaya to Zaya's brother's employer, which had been taken by Defendant DARREN.

28.  **Victims Frantz:** Plaintiffs are informed and believe that the following is true regarding Defendant DARREN's efforts to extort San Diego attorneys James Frantz, Jodi Frantz, and Charles Kim:

a.  On or about December 2010, Jodi and James Frantz retained Charles Kim to represent them in a civil protective action. Jodi Frantz sought a restraining order against Defendant DARREN, in *Hautaluoma v. Chaker*, San Diego Superior Court Case No. 717794.

b.  Prior to the extortion attempt against James Frantz, Jodi Frantz, and Charles Kim, Plaintiffs are informed and believe that Defendants engaged in acts of vandalism to the property of James Frantz and Jodi Frantz, which they believed to have been perpetrated and intended by Defendant DARREN to intimidate James Frantz and Jodi Frantz and send a message.

c.  In the preceding months to the extortion attempt, Jodi Franz was the victim of financial fraud in the summer of 2010. Ms. Frantz had caused two of her then current credit cards to be de-activated by the issuers due to fraud alerts. The recent event happened in the week preceding the extortion attempt, while she was on vacation. Although Ms. Frantz believed Chaker is responsible for the fraud, she had no evidence.  Ms. Franz reported the thefts to her credit card issuers. She had unauthorized charges on credit accounts from Bank of America, Union Bank, and Nordstrom.  In the summer of 2010, Mr. Frantz also had his identity stolen, and used for credit card fraud. Although Mr. Frantz believed Chaker was responsible for the fraud, he had no evidence.

d.  On December 22, 2010, at 2:54 a.m., Defendant DARREN caused a fax to be

1  sent to the office of Charles Kim. The fax included an inappropriate reference to

2  the death of James Patrick Frantz II (the son of James and Jodi Frantz). Also,

3  Defendant DARREN faxed a complete copy of a County of San Diego

4  Investigative report #10-01098 which documented the medical examiners death

5  investigation in that case. The fax  referenced the social security number of Jodi

6  Frantz and Dr. Christine Miller who treated Jodi Frantz. The fax contained threats

7  to publish the social security numbers and "embarrassing" medical information if

8  Attorney Kim did not agree to Chaker's demands. Also included was an apparent

9  threat to file complaints with the state bar association against Charles Kim and

10  James Frantz if they did not comply with his demands.

11  29. **Victims Mateo**: Nicole Mateo was in a relationship with Defendant

12  DARREN, which resulted in the birth of a daughter.  Plaintiff is informed and believes

13  that following the efforts to obtain child support, Defendant DARREN initiated a

14  campaign of harassment against Wendy Mateo and her husband Steven Mateo.  Steven

15  Mateo is a deputy constable with the Harris County Constable Office, in Spring, Texas.

16  The Mateo's hired an attorney by the name of Cynthia Tracy to address Defendant

17  DARREN's conduct.  In response, Defendant DARREN initiated a harassment campaign

18  that included sending sexually explicit photos of Nicole Mateo to the employers of the

19  Mateos, obtaining the email passwords of various Mateo accounts, and sending emails

20  containing sexually explicit material through such accounts.  The Mateo's attorney,

21  Cynthia Tracy, was targeted in a blog post that also made false and defamatory statements

22  about her.  Ultimately, Attorney Tracy declined to continue to represent the Mateos due to

23  the aggravation and the expense of dealing with Defendant DARREN.

24

25  **DEFENDANTS' EFFORTS DIRECTED AT PLAINTIFF HEREIN**

26  30.  Plaintiff operates a website called FEARNOTLAW.COM, and has operated

27  that site since 2005.  Fearnotlaw.com maintains tens of thousands of unpublished

28  decisions from California's court of appeals.  The unpublished decisions were taken

1   directly from the court of appeals website and posted *en masse*, at various times.  There

2   was no intentional targeting of Darren Chaker or any other subject of the decisions.

3       31.  Defendant DARREN in this case initially contacted Plaintiff to demand

4   removal of decisions posted concerning his cases that had been decided by the Court of

5   Appeals. One of those decisions was *Zaya v. Chaker*, California Court of Appeal Case

6   No. D049874.  In *Zaya v. Chaker*, the Court of Appeal affirmed a trial court's imposition

7   of a five year restraining order against Mr. Chaker imposed pursuant to the Domestic

8   Violence Protection Act, Fam. Code, 6200 *et. seq*.  Defendant DARREN Chaker's letter

9   to Plaintiff on November 23, 2010 contained Ms. Zaya's original petition, which alleged

10  that Mr. Chaker posted bogus sex-service advertisements on Craigslist falsely attributed

11  to Ms. Zaya, and had threatened to post compromising photos and videos of Ms. Zaya

12  online if she testified against him in his felony assault-weapon case. Plaintiff did not

13  remove any of the appellate decisions from Fearnotlaw.com.

14      32.  Defendant DARREN  thereafter initiated a campaign of harassment and

15  vandalism against Plaintiff McMillan and his family.  Usually during the holidays,

16  Plaintiff's family's cars would be vandalized.  Plaintiff's brother had the words

17  "fearnotlaw" scratched on the trunk of his BMW.  In another instance, the driver's side

18  mirror of Plaintiff's brother's truck was smashed.  On that instance, a neighbor that heard

19  the noise, saw a black SUV driving rapidly away.  Defendant DARREN  owns a Black

20  Dodge Durango.  Plaintiff is informed and believes, and based thereon alleges, that

21  Defendant VANIA Chaker accompanied Defendant DARREN during that vandalism.

22      33.  Other members of Plaintiff McMillan's family were attacked as well.

23  Plaintiff's mother's car had acid poured on the trunk.  Plaintiff's father's car had its tires

24  slashed.  After each event, Mr. Chaker would send Plaintiff an e-mail wishing him

25  "happy holidays" or making some other statement.  It was clear to Plaintiff that Darren

26  Chaker was acknowledging the vandalism by his timing of his emails, and attempting to

27  send a message and intimidate Plaintiff.

28      34.  At one point, on or about November 23, 2010, Defendants came to Plaintiff's

home and delivered a letter to his mail box signed by Defendant DARREN.  The letter

once again demanded that Plaintiff remove the posts concerning Defendant DARREN 's

cases from Fearnotlaw.com.  Thereafter, Defendant DARREN  sent Plaintiff McMillan e-

mails referring to his dogs – which indicated to Plaintiff that he had come to his house

and looked into his back yard.

35.  Because of Defendants' activities, Plaintiff McMillan and his family members

installed security cameras around their houses.  Plaintiff McMillan also installed security

cameras on the outside of the commercial building in La Mesa where Plaintiff TMLF has

its offices.

36.  Defendant DARREN  also began posting matters about Plaintiffs on the

Internet.  Initially, he used his own domain names.  Later, he began using Plaintiff's name

under Google's "blogspot" service.  Through the years, clients have contacted Plaintiff

McMillan to let him know that they have seen the Defendant DARREN 's posts

concerning Plaintiff on the Internet.  Chaker's posts were troubling to Plaintiffs' clients.

37.  Postings on Internet gripe sites and consumer review sites began appearing,

the posters made negative comments, but used a pseudonym.  Plaintiffs are informed and

believe based upon the timing and the circumstances that Defendants were posting those

comments.

38.  Because Defendant DARREN  had posted about Plaintiff on the Internet,

others that had conflicts with Defendant DARREN  contacted Plaintiff for advice and

representation in dealing with Defendant DARREN .  Plaintiff has provided that

representation pro-bono, and advanced the expenses.

39.  Plaintiff ultimately represented Wendy Mateo, one of the Defendant

DARREN's victims, in *Chaker v. Mateo*, San Diego Superior Court case,

37-2010-00094816-CU-DF-CTL, Hon. Timothy B. Taylor, Judge presiding.  Wendy

Mateo is the mother of Nicole Mateo.  Plaintiff is informed and believes that Nicole

Mateo had a brief relationship with Darren Chaker, which resulted in the birth of their

daughter.  Plaintiff began representing Ms. Wendy Mateo, the grandmother of Darren

1   Chaker's child during the pendency of Darren Chaker's appeal of the judgment in the

2   *Chaker v. Mateo* case.  That appeal resulted in the published decision of *Chaker v. Mateo*,

3   209 Cal. App. 4th 1138 (2012).   Following that appeal, the Superior Court awarded

4   Plaintiffs attorneys fees.  Those attorneys fees awarded have been the subject of judgment

5   debtor examinations and orders from Judge Taylor as discussed below.

6        40.  Thereafter, Plaintiff began representing *Susan A.* in a paternity case filed in

7   the San Diego Superior Court entitled *Chaker v. A* (the "Paternity Case").   Ms. A had

8   also been in a relationship with Mr. Chaker. Ms. A. sets out her experience with Chaker

9   in her declaration dated July 11, 2013, a true and correct copy of which is attached hereto

10  as **Exhibit 'A'** (**Under Seal**). Mr. Chaker claims that Ms. A.'s child, L, is the product of

11  that relationship.   Ms. A. disputes that Mr. Chaker is the father, biological or otherwise,

12  of her child L.

13       a.  On July 12, 2013, Plaintiff McMillan filed a document in the Paternity Case,

14       which included statement from Leesa Fazal, State of Nevada Office of the

15       Attorney General, who had provided her confidential investigative report for

16       submission in the Paternity Case, signed on July 11, 2013.  (**Exhibit 2, Submitted**

17       **Under Seal**).

18       b.  On July 22, 2013, at 8:45 a.m., Officer Fazal appeared in San Diego Superior

19       Court, according to Plaintiff's subpoena to testify in the Paternity Case regarding

20       the facts alleged in the above mentioned Declaration. Officer Fazal and Plaintiff

21       McMillan appeared before the Superior Court, Judge Gerald Jessop, presiding.

22       The court did not have time to hear the case in the morning, and ordered Ms. Fazal

23       and Mr. Chaker back to court later that afternoon. As they exited the court,

24       Defendant DARREN followed Ms. Fazal and Plaintiff McMillan a short distance,

25       and walked at a quick pace with his mobile telephone in his hand and appeared to

26       take video of them while laughing loudly.   At that time, Ms. Fazal had not yet

27       testified, and Defendant DARREN's behavior was purposefully threatening and an

28       apparent effort to intimidate Officer Fazal, prior to her testimony.

c.  When Plaintiff McMillan and Officer Fazal returned they were accompanied by licensed private investigator Richard Rivero.  Following the hearing Defendant VANIA approached Richard Rivero in a rapid manner, within a couple feet, and asked him what he was doing there and demanded his name.  Although he had not been called to testify, Rivero responded that he was a witness, he would speak to Defendant VANIA in the presence of court personnel, and attempted to pass her. Defendant VANIA blocked his and Plaintiff McMillan and Officer Fazal's exit, so Plaintiff, Rivero and Fazal returned to the court room, and Defendant VANIA followed.  Thereafter, the courtroom deputy ordered Defendant VANIA to leave, and to leave Rivero, Plaintiff McMillan and Ms. Fazal alone.  The courtroom deputy allowed Rivero, Plaintiff McMillan and Ms. Fazal, and shortly therafter, confirmed that Defendant VANIA was not awaiting them outside the courtroom.

d.  Plaintiff McMillan, Officer Fazal and Rivero exited the courtroom, then entered the elevator to descend to the lobby.  After exiting the elevator and entering the lobby.  Defendant DARREN blocked the doorway exit and in a loud and commanding voice demanded that Officer Fazal be arrested for being armed.  He wanted to place her under citizen's arrest.   Officer Fazal was escorted to the side while the  deputies determined that there were no grounds to arrest.    While they waited, the Defendant VANIA entered the location and brushed by Rivero as she entered the elevator.

e.  Rivero left the building with Officer Fazal, Rivero then noted Defendant VANIA's black SUV following him at a high speed.  Rivero pulled to the side. Defendant VANIA stopped her SUV in the middle of the street adjacent to Rivero's vehicle.  Rivero felt that Defendant VANIA was attempting to intimidate him. Rivero noticed Defendant DARREN hunched down in the passenger's seat so as to not be identified.  Such chase was intended, and did intimidate Officer FAZAL in that it gave her additional concern regarding participating in the legal proceedings.

f.  On July 24, 2013, and thereafter during the pendency of the Paternity Case, Plaintiff provided the United States materials and information regarding Defendant DARREN, specifically that Defendant DARREN had a "go kit" which included a passport under his identity "David Hunter". Which information Plaintiff understands resulted in the revocation of Defendant DARREN 's pre-trial release. During Defendant DARREN's resulting incarceration, the *Chaker v. A* case was dormant.

g.  During his incarceration, Darren Chaker's mother, Nicole Chaker appeared at least once at a hearing in that case.

h.  Plaintiff is informed and believes, and based thereon alleges that, in that interim period Defendant DARREN was incarcerated, also during that time, i.e., on or about January 21, 2014, Plaintiff received at least one letter from Mr. Chaker that appeared to have been sent via Defendant NICOLE. (**Exhibit 4, Submitted Under Seal**).  The letter contained the following threat:

"You never considered the fact that due to your conduct your client may suffer. I should remind you the First Amendment is a 2 way street and I have the right to express my opinion as well."

i.  On February 2, 2014 Defendant NICOLE filed documents in the paternity case on behalf Defendant DARREN, including executing a declaration in his name. Within the letter to the Court attached to the declaration, Defendant NICOLE repeats the implied threats to reveal Susan A's applications for government benefits. (**Exhibit 5, Submitted Under Seal**).

j.  Because Mr. Chaker was designated a vexatious litigant, his case was dismissed for his failure to obtain a pre-filing order.  Mr. Chaker has exhausted his appeals in that matter.

41.  On or about September 18, 2014, during the pendency of the Paternity Case, Plaintiff McMillan received an e-mail from Darren Chaker, a true and correct copy of which is attached hereto as (**Under Seal) Exhibit 'B'.**  Within that letter, Mr. Chaker

threatens further actions against Plaintiffs unless he convinced his client Susan A to grant

him concessions in the paternity case.  Plaintiff has  excerpted the relevant portions below

(with redactions and substitutions to protect the privacy of third parties):

9/18/14

Time Sensitive – Reply Required by 8PM Today

Confidential Settlement Communication – California Evidence Code § 1142

Dear Scott, S, and C,

This is a request to settle pending claims against C, and Susan A. First, allow me to clarify this letter is constitutionally protected communication.  " 'As a general rule, even if subject to some exceptions, what you may do in a certain event you may threaten to do, that is, give warning of your intention to do in that event, and thus allow the other person the chance of avoiding the consequences' "]. Equally well established is the fact that "[o]ne legitimate purpose of a demand letter is to intimidate." (Subrin & Main, The Integration of Law and Fact in an Uncharted Parallel Procedural Universe (2004) 79 Notre Dame L.Rev. 1981, 2003 (hereafter Subrin & Main).)

As you know the pending case concerning my son, L, Chaker v. A, San Diego Superior Court Case No. D543061 and, thankfully to Scott the case was stayed, in lieu of filing a motion to dismiss – since I had no right to personally appear in the case while in custody. Scott, I do thank you for the stay and that is why I never opposed the motion while in custody.

* **

To keep it simple, here's my offer:

* * *

　　**\* I will remove all blogs I have control over concerning Scott or his firm, and <u>am able to remove the complaintsboard.com posting</u> and if unable to remove pissedconsumer.com**, I will pay up to $500 to have SEO performed to push down the links as I know these sites continue to hurt the practice. (I understand I have negative comments about me, however I do not need to impress clients with my reputation. **I can assure you at least one client a year doesn't call due to reviews – costing you and your family money**.)

　　\* No blogs concerning S or C's company, have been posted, but various items have been set to self-publish in the event I am unable to access the blog and push back the self-publish date another two weeks.

In short I am agreeing to things a court would not order, but am trying to be amicable.

Scott, you once said to me "I win every time we go to court". I think you mischaracterize what winning is to me. In court, it is not the court ruling. It's the time spent away from your office. Taking up your time and associate's time. Taking food out of your kids mouth. Staying up late, or

1

2

3

4

5

6

ignoring kids and wife while spending time on litigating the instant case. Costing you clients – at least one person a year doesn't call you based on my blogs – which have been updated recently, scott-mcmillan-law.blogspot.com. Your reputation and past performance, likely increases the likelihood of opposing counsel's decision to fight a pending case longer - which costs you more time and money. **Out of court, I have a few more victories than you and will always prevail in that respect, and win by having you and family spending money on cameras, watching the monitors, looking out the window, and drawing drapes – of course there's no proof I have not done a thing nor do I admit such, but if you think I am responsible, indeed I win every day.**

\* \* \*

7

8

(**Exhibit 'B', Filed Under Seal**)

9

**Hacking Twitter and Unauthorized Access to Plaintiff McMillan's Paypal Account**

10

42.  Plaintiffs believe that Defendant DARREN  Chaker has attempted to hack into Plaintiff's twitter and paypal accounts.  Specifically,

11

12

13

14

15

16

a.  On October 22, 2014, Plaintiff McMillan received a notice from Paypal of "unusual activity" on his account.  Plaintiff hadn't attempted to sign in to his Paypal account at that time.  A true and correct copy of that email is attached hereto as **Exhibit 'C'**.  Due to the timing of the notice, Plaintiff is informed and believes that it was Darren Chaker that hacked into Plaintiff's account.

17

18

19

20

b.  On November 19, 2014, Plaintiff received a notice of a "suspicious sign in detected on [his] twitter account."  Plaintiff hadn't attempted to sign in to his twitter account.  A true and correct copy of that email is attached hereto as **Exhibit 'D'**.  Due to the timing of the notice, Plaintiff is informed and believes that it was Darren Chaker that hacked his account.

21

22

23

24

25

26

27

43.  Following that threat of September 18, 2014, Mr. Chaker began posting information on the scott-mcmillan-law.blogspot.com site that he operated that, among other things, Plaintiff had molested his daughter. The first such statement appeared on Thanksgiving Day, i.e., Thursday, November 27, 2014.   A copy of that post is attached hereto as **Exhibit 'E.'**   Plaintiff  had not authorized Defendants to use Plaintiff's name in any manner.  Plaintiff had not molested his daughter.  That webpage has since been removed.

28

44.  In order to improve the likelihood of the search engines indexing his site to

Plaintiff's name, Defendant DARREN optimized that page, **Exhibit 'E'**, for search engines with "labels" including "4760-Nebo, attorney-sex-offender, el-cajon-sex-offender, la-mesa-sex-offender. Rebecca-McMillan, scott-mcmillan-law, www.mcmillanlaw.us."

45.  Mr. Chaker also operated a Blogger site at http://mcmillanlawfirm.blogspot.com/.  Plaintiff had not authorized Defendant DARREN to use the firm's name in this manner.  He published similarly false, scandalous, libelous material on that site.

46.  On or about November 28, 201[4], Defendant DARREN  Chaker posted on the Blogger site at scott-mcmillan-law.blogspot.com, a post entitled "Maura Larkins Linked to Sex Abuse."  Within that post Chaker repeats his false statements about Plaintiff, and also recited a completely fabricated association between Plaintiff  and Ms. Larkins, who is another individual with whom Mr. Chaker has conflict. A true and correct copy of that post is attached hereto as **Exhibit 'G'**.

**Spoofing Emails**

47.  On December 3, 2014, Plaintiff received a "spoofed" or bogus email that purported to have been sent from Plaintiff's own e-mail address "scott@mcmillanlaw.us"

a.  The email stated:

"Scott McMillan and family are child molesters per a recent report, http://scott-mcmillan-law.blogspot.com/2014/11/scott-mcmillan-la-mesa.html"

b.  A true and correct copy of the email is attached as **Exhibit 'H.'**

c.  A true and correct copy of the email with the header is attached as **'I'.**

**Google Places**

48.  On December 4, 2014, a "Darren C." posted a 2 star review for the McMillan Law Firm, APC on Google places, wherein he stated:

"I wish I knew of his interests in children, http://scott-mcmillan-law.blogspot.com/2014/11/scott-mc."

a.  A screen shot of Plaintiff's administration page for Google Places is attached

hereto as **Exhibit 'J'**.

b.  That post was later deleted.   In light of the timing of that e-mail, the use of the name "Darren C.", and that the identical content was posted on his blogspot sites, Defendant DARREN was the poster.

49.  Defendant DARREN. Chaker sent e-mails to many members of the local legal community, accusing Plaintiff of molesting his  daughter.  A copy of one such email dated December 6, 2014 is attached hereto as **Exhibit 'K'**.  That e-mail was sent to Andrew Griffin, an attorney for an opposing party in a bankruptcy case where Plaintiff represented a creditor, who in turn, forwarded the e-mail to Plaintiff on December 8, 2014.

50.  On December 22, 2014, at 1:57 a.m., Defendant DARREN sent Plaintiff an e-mail with the subject line "Pending Paternity Case". A copy of that email is attached hereto as **Exhibit 'L.'**

51.  On December 23, 2014, at approximately 10:08 a.m., Plaintiff received an e-mail from Defendant DARREN  Chaker entitled "Request to See Son."  A copy of that email is attached hereto as **Exhibit 'M'.**

**Threats to E-mail Colleagues in the San Diego East County Community**

52.  On December 23, 2014, Plaintiff received an e–mail from Defendant DARREN where he stated:

"Mr. McMillan, the reported conduct I have found is very improper and disgusting. I have been forced to notify numerous members of the bar about my blog concerning your firm, most recently the Foothills Bar Association, and will start naming your daughter, I believe a former Ms. El Cajon, as the likely victim. I hope you have ceased your conduct and notice to hundreds of people has done the public some good.

Dear XXXXXX,

Sex offender. As a member of the bar and likely parent, I would hope notice of a report concerning La Mesa Attorney Scott McMillan, who also operates McMillan Academy of Law without a single applicant/graduate, http://campus.lawdragon.com/schools/mcmillan-academy-of-law/ was reported to take part in sexual molestation of a minor. See, http://scott-mcmillan-law.blogspot.com/2014/11/scott-mcmillan-la-mesa.html

The report provides great detail and hope you pass this email along, as I

have distributed it to 200 attorneys in San Diego. Scott McMillan is also a documented family friend of Kenneth Bourke who was also arrested for child molestation – see report - http://scott-mcmillan-law.blogspot.com/2014/09/scott-mcmillan-molest-la-mesa.html
Happy Holidays to all.
Darren Chaker"

a. A copy of that email is attached hereto as **Exhibit 'N'**.

53. On or about June 8, 2015, Google removed the scott-mcmillan-attorney.

blogspot.com site, which defendants had created without Plaintiffs authorization.

54. On or about June 16, 2015, Google removed the mcmillanlawfirm.

blogspot.com site, which defendants had created without Plaintiffs authorization.

## COMPLAINTSBOARD.COM

55. Since 2011 and through the present, a person that Plaintiff McMillan believes

to be Defendant DARREN  based on identical content posted on his website and Mr.

Chaker's statements above of September 18, 2014 that he is "**able to remove the**

**complaintsboard.com posting**", has posted derogatory and defamatory statements about

Plaintiff on the Internet at:

http://www.complaintsboard.com/complaints/the-mcmillan-law-firm-la-mesa-c571484.ht

ml#comments

a. A true and correct copy of that post as published is attached hereto as **Exhibit**

**'O.'**

b. The poster is identified as "Tracy Law Houston."  Cynthia Tracy, Attorney at

Law, P.C., a family law attorney in Houston, Texas, formerly represented Nicole

Mateo in the custody and child support case against Darren Chaker.

56. Despite the removal of the blogspot sites, on August 23, 2015, a poster using

the name and search term "scott-mcmillan-la-mesa" posted the following as a comment to

the post at http://www. complaintsboard.com/complaints/the-mcmillan-law-firm-la-mesa-

c571484.html#comments

a. "I located the police report about Scott McMillan, La Mesa, Attorney reportedly molesting children. I also found he operates his own law school out of a small, run down office near the train tracks, but in the same breath says he's a leading law firm. With this reputation, I cannot imagine such is true."

b.  Attached as an image to the comment, he re-posted his November 27, 2014 post, i.e., the content at Exhibit 'B' herein, the repost of which is attached at **Exhibit 'P.'**

57.  On September 16, 2015, a poster using the name and search term "mcmillan-law-firm-la-mesa" posted the following as a comment to the post at http://www.complaintsboard.com/complaints/the-mcmillan-law-firm-la-mesa-c571484.html#comments

a.  "Scott McMillan, McMillan Law Firm, sued the hardworking Sheriff over his Facebook Account. The law settled for about nothing. It is unfortunate law enforcement need to pay out money to defend such nuisance lawsuits, when that money should be going to hiring more officers, and buying newer equipment. With about 60 loses in the Court of Appeal docket, astonishing he is still in office."

b.  That case – *Karras v. Gore*, U.S. D.C. So. Dist. Cal., 14cv2564-BEN-KSC – was settled for a payment of attorneys fees plus the token $20. Thus, the above statement is false, as the Sheriff paid attorneys fees and agreed to change practices.

c.  Attached as an image to the comment, he posted a partial news article, a copy of which is attached as **Exhibit 'Q.'**

58.  Also on September 16, 2015, a poster using the name and search term "mcmillan-law-firm-la-mesa" posted the following as a comment to the post at http://www.complaintsboard.com/complaints/the-mcmillan-law-firm-la-mesa-c571484.html#comments

a.  "McMillan Academy of Law, run by Scott McMillan appears to have not had a single student go through his law firm, where the class is shared in the same space as the attorney, oh and also Dean McMillan (also an attorney working out of same office. According to LawDragon, no one has ever graduated or even applied to that law school."

b.  Attached as an image to the comment, he posted a webpage print-out, a copy of which is attached as **Exhibit 'R.'**

59.  Also on September 16, 2015, a poster using the name and search term "mcmillan-law-firm-la-mesa" posted the following as a comment to the post at http://www.complaintsboard.com/complaints/the-mcmillan-law-firm-la-mesa-c571484.html#comments

a.  "McMillan sued by Yelp! for posting his own reviews. Read the story in detail, sad set of circumstances, especially when you need to create your own reviews." In truth and in fact, Plaintiffs had not posted their "own reviews."  Plaintiffs had represented Julian McMillan, who had been sued by Yelp.

b.  Attached as an image to the comment, he posted a news article, a copy of which is attached as **Exhibit 'S.'** Plaintiff did not post his own reviews. Indeed, in that case, Plaintiff was not accused by Yelp of posting comments. Rather, Plaintiff represented another attorney, Julian McMillan, in the case. Chaker edited out the part that would have otherwise explained that Plaintiff was not the Defendant DARREN  in that action, but rather just the attorney.  Contrary to Defendants' suggestion, Plaintiff was partially successful at the time of the posting of the article. Plaintiff won a motion to change venue, and counsel for Yelp paid Plaintiffs attorneys fees.

60.  Most recently, on February 9, 2016, a poster using the name and search term "mcmillan-law-firm" posted the following as a comment to the post at http://www.complaintsboard.com/complaints/the-mcmillan-law-firm-la-mesa-c571484.html#comments

a.  "Williams v. The Superior Court of San Diego County/Nordstrom, Inc., Court of Appeal Case Number D068765. shows Scott McMillan, McMillan Law Firm in Las Mesa, LOST ANOTHER case. This one where Nordstrom is vigorously defending itself against allegations of attorney, law professor, and law school dean (Yes, Scott McMillan is all three of those titles since he runs a law school, McMillan Academy of Law, out of two story office near the train tracks. Despite not a single student has graduated, or appears to have attended, no one has taken the bar exam either. Nonetheless, this is another example of Scott McMillan losing another case - although he claims to be a "leading" San Diego attorney."

b.  Attached as an image to the comment, the docket form , a copy of which is attached as **Exhibit 'T.'**

c.  This statement is also false, as the court of appeals allowed the appeal to proceed in light of the law regarding final, appealable orders.

d.  Further, the Court entered an order of stipulated reversal of such appeal.

61.  On or about March 27, 2016, Plaintiff McMillan identified a post using

Plaintiff TMLF's logo and created in a manner that suggested it was posted by Plaintiff or someone else from his firm.  Plaintiff did not authorize Defendant DARREN or anyone else to use the McMillan Law Firm's logo in this manner.  The latest entry was posted on or about December 17, 2015.  Specifically, a poster using the name and search term "scott-mcmillan-law-firm-la-mesa" setup a bogus page entitled "The McMillan Law Firm Customer Care Service" using The McMillan Law Firm, APC logo at http://www.complaintsboard.com/the-mcmillan-law-firm-b121166

> a.   A true and correct copy of that page is attached hereto as **Exhibit 'U.'** Notably, the bogus "customer care service" repeats the same false allegations as previously made by Chaker. i.e., that Plaintiff molested his  daughter.
>
> b.  On December 8, 2015 – Plaintiff's birthday – Mr. Chaker emailed Plaintiff the following statement:
>
> Good afternoon Scott,
>
> I have been unable to locate a TM/Copyright for the domain mcmillanlaw.us or for your law firm with the USPTO or U.S. Copyright Office. If there is such, kindly advise prior to 7PM today. If I do not receive a response, it will be presumed there is no such TM/Copyright. Prior to posting additional material, I will extend this courtesy to you.
>
> Also, I have updated the material on http://scott-mcmillan-law.blogspot.de/p/scott-mcmillan-attorney-la-mesa.html
>
> I have also copied Maura Larkins on this email.
>
> Best regards,
>
> Darren"
>
> c.  A true and correct copy of the email dialog that occurred December 8, 2014, are attached as **Exhibit 'V'.**
>
> **d.**  Plaintiffs had not authorized the use of their name, the logo, or creation of a customer care site on Complaintsboard.com.

62.  Following Mr. Chaker's posts to complaintsboard.com, individuals solicited Plaintiffs purporting to be able to have the ability to remove the posts.  They wanted to charge Plaintiffs  $4,800 to remove defendants posts.

## PISSEDCONSUMER.COM

63. Since 2011 and through the present and as late as February, 2016, a person using a pseudonym, that Plaintiff McMillan believe to be Defendant DARREN, or the other defendnats, based on the content and Defendant DARREN's statements above of September 18, 2014 referring to the "pissedconsumer.com" website, has posted derogatory and defamatory statements about Plaintiff on the Internet at the website domain "PISSEDCONSUMER.COM":

64. A Google search of "scott mcmillan site:pissedconsumer.com" returns some 3200 results. Most of those results appear to have been posted in 2015 and 2016. Plaintiffs believe that defendants have posted all of those entries. They have done so either anonymously or using some variation of the key words: "The Mcmillan Law Firm - La-Mesa-Attorney-Scott-McMillan"

65. Unlike Complaintsboard.com, Pissedconsumer.com does not remove the information posted by persons such as Defendant DARREN. Specifically, the terms of service of Pissedconsumer states:

> "5. Removal of Information
> By posting information on PC, *you understand and agree that the material will not be removed even at your request.* You shall remain solely responsible for the content of your postings on PC."

http://www.pissedconsumer.com/tos.txt.

66. The Pissedconsumer.com post that Chaker started on November 3, 2011, is attached hereto as **Exhibit 'W'**. Within that post he misrepresents Plaintiff's win/loss ratio.

67. On August 23, 2015, Defendant DARREN made the false allegation, accusing Plaintiff of child molestation, a copy is attached hereto as **Exhibit 'X'**.

68. On December 4, 2015, Defendant DARREN posted a review entitled "The Mcmillan Law Firm - Scott McMillan Law Firm - La Mesa - Malpractice" which falsely accuses Plaintiff of malpractice, attached hereto as **Exhibit 'Y.'** Chaker falsely states that an appeal in *Williams v. Nordstrom, Inc.* was to be dismissed, and termed it "malpractice." In fact, the appeal was not dismissed and ultimately resulted in a

1   stipulated order of reversal.

2      69.  On February 11, 2016, Defendant DARREN posted a review "The Mcmillan

3   Law Firm - Scott McMillan Law Firm La Mesa," which is attached hereto as **Exhibit 'Z.'**

4   Chaker made statements that were knowingly false as he stated that the "the Court of

5   Appeal DENIED the petition after forcing the defendant incur huge amounts of attorney

6   fees."  In fact, the defendant did not file a response. Chaker had no basis to suggest that

7   attorneys fees were incurred resulting from the filing of the petition.  Chaker further

8   falsely stated Plaintiff's record as "almost 80 under his belt and a hand full of wins."

9                                **Current Posts**

10     70.  To date Defendant DARREN continues to post material on his website in a

11  manner that is intended to optimize his websites to respond to search engine indexes with

12  his  name.  Specifically, he continues to use the tags "mcmillan-associates-la-mesa",

13  "scott-mcmillan-la-mesa":

14     71.  On March 29, 2016, Plaintiff accessed

15  http://darren-chaker.blogspot.com/search/label/scott-mcmillan-la-mesa and retrieved the

16  attached article, a true and correct copy of which is attached hereto as **Exhibit 'AA'**

17  which incorporates the use of the tags.

18     72.  On March 29, 2016, Plaintiff accessed http://darrenchaker.us/ and retrieved

19  the attached article bearing a date of December 8, 2015, a true and correct copy is

20  attached hereto as **Exhibit 'BB'**, which incorporates the use of the tags.

21     73.  On March 29, 2016, Plaintiff McMillan accessed http://darrenchaker.org/ and

22  retrieved the attached article bearing a date of January 23, 2016, a true and correct copy is

23  attached hereto as **Exhibit 'CC'**, which incorporates the use of the tags.

24                        **Defendant DARREN's Use of Pseudonyms**

25     74.  Plaintiff is informed and believe that Darren Chaker also uses the pseudonym

26  "Luis Perdomo."  On March 29, 2016, Plaintiff accessed

27  https://plus.google.com/1048021677 37415969641/posts/HySqAKY7jYR and retrieved

28  the attached page, a true and correct copy is attached hereto as **Exhibit 'DD'**,

incorporating the same allegations and artwork published by Defendant DARREN

Chaker.

**Defendant DARREN admits that he knows that he is barred**

**from posting defamatory material.**

75.  On January 22, 2016, Defendant DARREN  Chaker appeared for a judgment

debtors exam. He had been previously ordered to produce the names of the domains that

he holds.   On the record in the *Chaker v. Mateo* case, he admitted that he had such logins

and that his use of those could result in the revocation of his supervised release.

[Transcript, p. 9] Defendant DARREN was also ordered to provide the identifying

information as to Internet domains that he owns.  A copy of relevant portions of the

transcript is attached hereto as **Exhibit 'EE'.**

76.  Defendant DARREN did not appear as ordered on March 11, 2016, in the

Superior Court to provide the information.  As recited in the transcript of January 22,

2016, Defendant DARREN was aware that he was required to appear at the continued

examination. [**Exh. EE, page 31**]

77. On March 11, 2016 Defendant DARREN failed to appear for his continued

judgment debtor's examination.  Judge Taylor issued a bench warrant for his appearance,

which remains outstanding.  A copy of that bench warrant is attached hereto as **Exhibit**

**'FF'.**

78.  On March 11, 2016 the Superior Court in the *Chaker v. Mateo* case has

ordered the appointment of a receiver to take possession of Mr. Chaker's personal

property, including his domain names for ultimate sale in order to satisfy the judgment.

Despite orders to do so, Defendant DARREN has not complied with the orders of the

Superior Court.

**Defendant DARREN has created false accounts with Plaintiff's name**

79.  Defendant DARREN created accounts using Plaintiff's name and the name of

the McMillan Law Firm.  One of those accounts is on Slideshare.net, and reflected on

**Exhibit 'GG'.**  Plaintiff surmise that he has prepared that account in order to upload his

1   defamatory material that he intends to falsely attribute to him.  Plaintiff believes that

2   Defendant DARREN made that account because it is associated by Slideshare with an

3   account under the name of David Gingras, another attorney who successfully represented

4   a victim of Defendants and whom Chaker has also targeted for harassment.

5   **Defendants have inflicted damage upon both Plaintiffs and their clients.**

6   80.  Attorneys rely upon their reputation in the community and before the courts

7   that they practice in.  Defendant DARREN's outrageous lies which he has published have

8   injured Plaintiffs' practice.  Opposing counsel in other, unrelated cases have mentioned

9   the existence of the posts. Clients have mentioned the existence of the posts and their

10  content.   Plaintiff McMillan believes that jurors that Plaintiff has tried cases in front of

11  have accessed the posts and taken them into account in determining the cases.  Thus,

12  Defendants' threats made on September 18, 2014 have borne out. Plaintiffs have invested

13  substantial time in developing Plaintiff McMillan's reputation as a zealous advocate for

14  his clients, and remaining consistent to the duties of an attorney as set forth in Business

15  and Professions Code section 6068, and particularly that set forth in subsection (h):

16  "Never to reject, for any consideration personal to himself or herself, the

17  cause of the defenseless or the oppressed."

18  (Bus. & Prof. Code 6068(h).)

19  81.  Susan A. has been, prior to representation by Plaintiffs herein, defenseless to

20  and oppressed by Defendants.

21  82.  Wendy Mateo was defenseless to and was oppressed by Defendants.

22  83.  Plaintiff understood that Defendants could resort to attacks of Plaintiff

23  McMillan's  character when Plaintiff continued to represent Susan A. despite Defendants

24  threats to engage in libel against him. Defendants then performed on their threats, and

25  have engaged in the forewarned attacks against Plaintiff –  and later Plaintiff's family

26  members – following January 21, 2014, and September 18, 2014.

27

28

**FIRST CLAIM FOR RELIEF**

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1962(c)

(Against Darren Chaker)

84.   Plaintiffs reallege and incorporate paragraphs 1-83 as though fully set forth herein.

85.   Defendant DARREN Chaker is a "person" cappable of holding a legal or beneficial interest in property within the meaning of 18 U.S.C. § 1961(3).

86.   Defendant DARREN Chaker listed above has violated 18 U.S.C. § 1962(c) by commission of the following multiple acts.

**Chaker Enterprise**

87.   Plaintiffs allege that during all the time material herein that DARREN Chaker, an individual, along with other individuals, including, but not limited to, Defendants VANIA Chaker and NICOLE Chaker constitutes the "Enterprise."

88.   Plaintiffs allege that the Enterprise constitutes a RICO 'enterprise' as that term is defined pursuant to 18 U.S.C § 1961(4).  As described above, the members of the Enterprise have functioned together as a continuing unit with a common purpose to obtain the Plaintiffs' property under fear induced by falsely imputing a deformity, disgrace, or crimes, and by threats to do an unlawful injury to the person or property, as described in Cal Penal Code section 519, all in violation of Cal. Penal Code section 523 (extortion).

89.   The Enterprise exists separate and apart and distinct from the conducting of the pattern of racketeering as the Defendant, an individual, is one of a number of other individuals which comprise the Enterprise.  The alleged Enterprise herein also satisfies the three "structural features" of *Boyle v. United States*, *i.e.*, the group had a purpose; relationships with each other; and longevity sufficient to permit the associates to pursue the enterprise's purposes.

90.   Here, the FAC describes how the members of the Enterprise, since at least year 2004 and continuously up to the present time, worked together to file meritless lawsuits under the Fair Credit Reporting Act (para. 10-11; 14; 16; 19); and worked

together for Defendant DARREN Chaker to file baseless lawsuits under the Fair Credit Billing Act and other statutes (para. 18).  In year 2004, Defendant VANIA Chaker represented Defendant DARREN Chaker in a federal lawsuit in which DARREN, acting *subnom* as Darren Del Nero, and his mother and enterprise member Defendant NICOLE Chaker brought a baseless action against Midland Credit Management Inc. (para. 11). DARREN and his attorney Defendant VANIA Chaker were sanctioned for bringing the suit in bad faith and for the purpose of harassment (para. 11, supra).  Morevoer, Defendant VANIA Chaker also temporarily represented Defendant DARREN Chaker *subnom* in another case in year 2004 so that Defendant DARREN could avoid the bar of prefiling orders placed resulting from his designation as a vexatious litigant (para. 11, supra).

91.  The common purpose of the Enterprise members was to assist each other in the filing of false and meritless lawsuits under federal debt collection statutes; assist each other in the filing of lawsuits against attorneys who opposed them (para. 17, 78), and to conduct a campaign of harassment, defamation, and extortion against attorneys, such as the Plaintiffs, who represented parties adverse to the interests of the Enterprise members (para. 29-83).  Enterprise members also assisted each other in committing vandalism against Plaintiff's property (para. 31).

92.  Further proof of these relationships, in addition to the familial relationships, is described for example, in para. 40, in which during the Plaintiffs' representation of Susan A. in a lawsuit for paternity brought by Defendant DARREN, Defendant VANIA blocked the entrance of the courtroom of a licensed private investigator (Rivero) hired by Plaintiff while DARREN blocked the doorway exit (para. 40 a-d); and VANIA and DARREN together chased Rivero in a black SUV in an effort to intimidate him (para. 40-e). Another example is described in para. 40g-i, in which Defendant NICOLE, who is not an attorney but was counseled by Defendant VANIA, appeared at a hearing in the Susan A. case while Defendant DARREN was incarcerated.  Also, on or about January 21, 2014, Defendant NICOLE sent an intimidating letter to Plaintiffs and filed documents in the

case and executed a declaration to which was attached the threatening letter.

93. The Enterprise was engaged in, and its activities affected, interstate commerce as its members stole the identity of credit card holders (para. 28, the Frantzes). Enterprise members also threatened attorneys who worked in interstate commerce and represented victims (such as Plaintiff). Also see Charles Kim, para. 28(d); Defendant DARREN filed false bankruptcy petitions to avoid foreclosures and collect rental income (para. 23); Defendant DARREN began using Plaintiff's name on internet postings (para. 36, 45); Defendant DARREN hacked into Plaintiffs' Paypal and Twitter accounts in which payments were made in interstate commerce (para. 42); Defendant DARREN unlawfully posted information on defendant's internet "blogspot.com" account which was defamatory thereby causing Plaintiffs, who operate in interstate commerce, to suffer a loss of income (para. 43, 46, 83); and Enterprise members posted derogatory and defamatory statements on the internet at different websites (see, e.g., para. 55 - complaintsboard.com, para. 63 - pissedconsumer.com) which affected Plaintiff's business, which operated in interstate commerce.  Plaintiffs thus allege that these activities engaged in by said defendants injured Plaintiffs' business and/or property interests in connection with their business activities that affect federal interstate and/or foreign commerce.

## The Pattern of Racketeering

94. From in or about 2004 and continuing up through the present time, Defendant DARREN Chaker, a person associated with, or employed by the Enterprise, did knowingly and unlawfully conduct or participate, directly or indirectly, in the affairs of the Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1) and § 1961(5); all in violation of 18 U.S.C. §1962(c).

95. The RICO Defendant DARREN worked with other Enterprise members with the "intent to extort" property from Plaintiffs as described in Cal. Penal Code, Sections 518 and 523, *i.e.*, to obtain under threat of fear Plaintiff's intangible property right to adequately represent victims in his practice of law and prosecute his case on behalf of his

clients free of threats, thereby directly and proximately causing tangible harm to his business and concrete financial losses.  For example, Defendant DARREN has caused the sending of writings, usually by email, with the intent to extort Plaintiffs intangible right to represent his client by threatening further actions against Plaintiffs unless Plaintiff worked to have Plaintiffs' client provide concessions to Defendant in federal litigation (see para. 40 Susan A. paternity case).  Defendant intended to extort property from Plaintiffs, i.e., the right to practice his legal practice by engaging in threats of violence if Plaintiffs continued to collect and publish legal decisions through the website FEARNOTLAW.COM.

96.  Plaintiffs allege that these activities engaged in by Defendant DARREN injured Plaintiffs' business and/or property interests, and proximately and directly caused tangible harm to Plaintiffs' business, including proximately causing concrete financial losses.

97.  Plaintiffs allege that these activities constitute acts involving extortion in violation of California Penal Code sections 518, 519, and 523, acts punishable by imprisonment for more than one year, and thus racketeering activity as defined in 18 U.S.C. § 1961(1)(A).

**18 U.S.C. § 1961(5) Pattern of Racketeering Activity**

98.  Plaintiffs allege that the course of conduct engaged in by RICO defendant DARREN Chaker constitutes both continuity and relatedness of the racketeering activity, thereby constituting a pattern of racketeering activity, as that term is defined in 18 U.S.C. § 1961(5).  Plaintiffs allege that the relatedness criterion is satisfied as the predicate acts were related to each other, and related to the activities and purposes of the Enterprise. Plaintiffs allege the "continuity" of the pattern of racketeering activity is both closed-ended inasmuch as a series of related predicate offenses extended over at least ten years (a substantial period of time).  The racketeering acts of extortion also are "open-ended" inasmuch as the racketeering activities of extortion themselves carry a specific threat of repetition extending indefinitely into the future.  Moreover, the FAC describes that the

extortionate conduct toward attorneys who represented clients against him was the "regular way the enterprise conducted its business" (see para. 28d, para. 79, extortion of attorney David Gringas) and thus constitute continuing racketeering activity.  Defendant DARREN continues in this year 2016 to post defamatory materials on his website to cause Plaintiffs injury (para. 70-73, Exhs. AA-CC).

**Racketeering Acts of Extortion**

**Racketeering Act One**

99.   On or about November 23, 2010, Defendant DARREN, within the Southern District of California, with intent to extort money or other proprty from Plaintiffs, sent and delivered to Plaintiff a letter demanding Plaintiff remove posts concerning Defendant DARREN's cases from FEARNOTLAW.COM.  Subsequently, DARREN sent e-mails to Plaintiff making implicit threats against Plaintiff's property (dogs) (para. 34).  Defendant DARREN's letter and e-mails were writings which expressly, or implied, a threat specified in Section 519(1), *i.e.*, to do an unlawful injury to the person or property of the individual threatened.  These acts constituted extortion as the Defendant obtained from Plaintiffs their intangible property right to practice law and publish court decisions on the internet, all in violation of section 523 and 519, thereby causing tangible harm and direct injury to Plaintiffs' business.

100.   Section 523 provides that violations of that section are punishable in the same manner as if such money or property were actually obtained by means of such threat.  Violations of section 523 are felony violations as described in section 520.

<u>Racketeering Act Two</u>

101.   On or about November 28, 2011, during the pendency of representation by Plaintiff of Maura Larkins, Defendant DARREN, within the Southern District of California, with intent to extort money or other property from Plaintiffs, posted on Plaintiffs' scott-mcmillan-law.blogspot.com site defamatory statements about Plaintiff and recited a completely fabricated association between Plaintiff and Ms. Larkins (para. 46, Exh. G). These were writings which expressly and implied a threat as specified in Section 519(3), i.e.,,

1   to expose or impute to Plaintiff a defamatory, disgrace, or crime.  These acts constituted

2   extortion as the Defendant obtained from Plaintiff his intangible property right to practice

3   law free of threats and to practice in accordance with the California Rules of Professional

4   Conduct, all in violation of section 523 and 519, thereby causing tangible harm and direct

5   injury to Plaintiffs' business.

6                              Racketeering Act Three

7          102. On or about January 21, 2014, during the pendency of the Susan A.  paternity

8   case, Defendant DARREN, within the Southern District of California, with intent to extort

9   money or other property from Plaintiffs, through his mother Defendant NICOLE, sent and

10  delivered to Plaintiff McMillan a letter (Exhibit 4) threatening that Plaintiff's "client will

11  suffer" due to Plaintiff's representation of Suan A. (para. 40).  Defendant's letter was a

12  writing which expressly and impliedly made a threat as specified in section 519(1), i.e., to

13  do an unlawful activity to the person or property of the individual by threatening that unless

14  Plaintiff complied, Plaintiff's client would suffer.  These acts constituted extortion as the

15  Defendant obtained from Plaintiff his intangible property right to practice law free of threats,

16  and to practice in accordance with the California Rules of Professional Conduct, all in

17  violation of sections 523 and 519, thereby causing tangible harm and direct injury to

18  Plaintiffs' business.

19                              Racketeering Act Four

20         103. On or about September 18, 2014, during the pendency of the Susan A. paternity

21  case, 2010, Defendant DARREN, within the Southern District of California, with intent to

22  extort money or other property from Plaintiffs, sent and delivered to Plaintiff an e-mail

23  (Exhibit B) demanding Plaintiff to convince Susan A. to grant him concessions in the

24  paternity case (para. 41).  Defendant's e-mails were writings which expressly and impliedly

25  made a threat as specified in section 519(1), i.e., to do an unlawful injury to the person or

26  property of the individual by threatening that unless Plaintiff complied, the Plaintiff would

27  lose "clients," and would "take food out of [Plaintiff's kids mouths]," and Plaintiff would

28  incur other pecuniary losses.  These acts constituted extortion as the Defendant obtained from

Plaintiff his intangible property right to practice law free of threats, and to practice in accordance with the California Rules of Professional Conduct, all in violation of sections 523 and 519, thereby causing tangible harm and direct injury to Plaintiffs' business.

Racketeering Act Five

104.  On or about September 18, 2014, during the pendency of the Susan A. paternity case, 2010, Defendant DARREN, within the Southern District of California, with intent to extort money or other property from Plaintiffs, sent delivered to Plaintiff an e-mail (Exhibit B) demanding Plaintiff convince Susan A. to grant him concessions in the paternity case (para. 41).  Defendant's e-mails were writings which expressly and impliedly made a threat as specified in section 519(1), i.e., that unless Plaintiff settled the case Defendant would continue his malicious blogs on coomplaintsboard.com and pissedconsumer.com. These acts constituted extortion as the Defendant deprived Plaintiff of his intangible property right to practice law free of threats and in accordance with the California Rules of Professional Conduct, all in violation of section 523 and 519, thereby causing tangible harm and direct injury to Plaintiffs' business.

Racketeering Act Six

105.  On or about November 27, 2014, during the pendency of the Susan A. paternity case, Defendant DARREN, within the Southern District of California, with intent to extort money or other property from Plaintiffs, began posting defamatory material on the scott-mcmillan-law.blogspot.com site falsely stating that Plaintiff had molested his daughter (see para. 43, Exh. E).  The defamatory postings were writings which expressly and impliedly made a threat as specified in section 519(3), i.e., that unless Plaintiff settled the case Defendant would expose and impute to Plaintiffs a defamatory, disgrace, or crime.  These acts constituted extortion as the Defendant obtained from Plaintiff his intangible property right to practice law free of threats and to practice in accordance with the California Rules of Professional Conduct, all in violation of sections 523 and 519, thereby casuing tangible harm and direct injury to Plaintiffs' business.

### Racketeering Act Seven

106.   On or about December 6, 2014, during the representation by Plaintiff of a creditor in a bankruptcy proceeding, Defendant DARREN, within the Southern District of California, with the intent to extort money or other property from Plaintiffs, sent an e-mail to an attorney who represented an opposing party, in which DARREN falsely accused Plaintiff of molesting his daughter (see para. 49, Exh. K).  The opposing attorney forwarded the e-mail to Plaintiff on December 8, 2014.  The defamatory e-mails were writings which expressly and impliedly made a threat specified in section 519(3), i.e., it exposed and imputed to Plaintiffs a deformity, disgrace, or crime.  These acts constituted extortion as the Defendant obtained from Plaintiff his intangible property right to practice law free of threats, and to practice in accordance with the California Rules of Professional Conduct, all in violation of sections 523 and 519, thereby causing tangible harm and direct injury to Plaintiffs' business.

### Racketeering Act Eight

107.  On or about December 23, 2014, during the representation by Plaintiff of clients engaged in litigation in San Diego East Count Community, including clients adverse to the interests of Defendant DARREN, such as Susan A. and Wendy Mateo, with the Southern District of California, with intent to extort money or other property from Plaintiffs, sent an e-mail to 200 attorneys in San Diego (see para. 52, Exh. N).  The defamatory e-mails were writings which expressly and impliedly made a threat as specified in section 519(3), i.e., it exposed and imputed to Plaintiffs a deformity, disgrace, or crime.  These acts constituted extortion as the Defendant obtained from Plaintiff his intangible property right to practice law free of threats, and to practice in accordance with the California Rules of Professional Conduct, all in violation of sections 523 and 519, thereby causing tangible harm and direct injury to Plaintiffs' business.

### Racketeering Act Nine

108.   From 2011 to the present, during the representation by Plaintiff of clients engaged in litigation in this district and elsewhere, including clients adverse to the interests

of Defendant DARREN, such as Susan A. and Wendy Mateo, Defendant DARREN, within the Southern District of California, with intent to extort money or other property from Plaintiffs, posted defamatory and derogatory comments, including false comments that Plaintiff was a sex offender on the internet at complaintsboard.com.  See para. 55-62; Exhs. O-V.  The defamatory postings were writings which expressly and impliedly made a threat as specified in section 519(3), i.e., it exposed and imputed to Plaintiffs a deformity, disgrace, or crime.   These acts constituted extortion as the Defendant deprived Plaintiff of his intangible property right to practice law free of threats, and in accordance with the California Rules of Professional Conduct, all in violation of sections 523 and 519, thereby causing tangible harm and direct injury to Plaintiffs' business.

<u>Racketeering Act Ten</u>

109.   From 2011 to the present, during the representation by Plaintiff of clients engaged in litigation in this, including clients adverse to the interests of Defendant DARREN, within the Southern District of California, with intent to extort money or other property from Plaintiffs, posted defamatory and derogatory comments, including false comments that Plaintiff engaged in child molestation, on the internet at pissedconsumer.com. See para. 63-69; Exhs. W-Z.  These defamatory postings were writings which expressly and impliedly made a threat as specified in section 519(3), i.e., it exposed and imputed to Plaintiffs a deformity, disgrace, or crime. These acts constituted extortion as the Defendant obtained from Plaintiff his intangible property right to practice law free of threats, and to practice in accordance with the California Rules of Professional Conduct, all in violation of sections 523 and 519, thereby causing tangible harm and direct injury to Plaintiffs' business.

**RELIEF SOUGHT**

110. Plaintiffs are entitled to recover, pursuant to 18 U.S.C. § 1964(c), treble damages in an amount to be determined by offer of proof at time of trial.  Plaintiffs are also entitled to recover attorneys' fees and costs of this litigation, as well as damages arising from lost profits and/or lost business opportunities proximately caused by RICO defendants' violations of the RICO Act.

111.  Plaintiff requests injunctive relief to prevent prevent and restrain violations of section 1962 by issuing appropriate orders, including, but not limited to: ordering Defendants divest themselves of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of Defendants, including, but not limited to, prohibiting Defendants from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons, including Plaintiff herein.

112.  Plaintiffs requests that the Court revoke Defendant DARREN Chaker's supervised release, and order him to remove the posts, or execute such documents that would compel the removal of those posts, all of which he has published in contempt of the Court's order for supervised release.

113.  Plaintiffs requests that the Court also issue an order to DARREN Chaker requiring him to request the removal of his posts from the Internet forums in a form that may be published to the third parties, i.e., Pissedconsumer.com and Complaintsboard.com, that have published defendants' harrassing and defamatory posts. Plaintiff request that the Court make a finding that such posts are contrary to the conditions of Defendant DARREN's supervised release and thereby unlawful.  With such a finding, and an order that Chaker remove those post, those sites would willingly do so.

114.  Plaintiffs requests that the Court also issue an order with findings such that can be published to those search engines that have indexed the posts, i.e., Google, Yahoo, and Bing, and findings that such posts were placed by Defendant DARREN contrary to the Judgment in this case and the Court's terms of Defendant DARREN 's supervised released.  And that Defendant DARREN be ordered to request the removal of such posts from such search indices. Plaintiff's hope and expectation is that those third parties would be persuaded to remove the posts from the respective index.

**SECOND CLAIM FOR RELIEF**

(Against All Defendants, Racketeer Influenced and Corrupt Organizations Act,

18 U.S.C. § 1962(d))

115.  Plaintiffs repeat and reallege the averments contained in paragraphs 1-83, and 85 through 114 as though fully set forth herein.

116.  Plaintiffs allege that commencing in 2004, and during and continuing at all times to the present, RICO defendants conspired to violate section 1962(c), i.e., each defendant agreed that a conspirator (DARREN) would conduct or participate in the affairs of the Enterprise through a pattern of racketeering, including acts involving extortion in violation of California state law, as more fully described in the First Claim for Relief. Plaintiffs allege that the conspiratorial objective of that mutual agreement was intended to obtain Plaintiffs' interests in property, thereby causing tangible harm and direct injury to Plaintiffs, and that such conspiratorial conduct constitutes contravention of RICO § 1962(d).

117.  Defendants are members of the RICO § 1962(d) conspiracy at and during the time frame the criminal activities were committed that constitute the RICO § 1961(5) pattern of racketeering activity. Proof of the agreement of VANIA and NICOLE that a conspirator (DARREN) would engage in multiple acts of racketeering are described in paragraphs 10-11; 14; 16; 18; and 19, i.e., since at least year 2004 and continuously to the present time, the three defendants agreed that they together would file meritless lawsuits under the Fair Credit Reporting Act, the Fair Debt Collections Practices Act and other litigation (para. 18). As described above in para. 40, during the Plaintiffs' representation of Susan A. in a lawsuit for paternity brought by DARREN, VANIA assisted DARREN in the intimidation of a licensed private investigator (Rivero) hired by Plaintiff. Also, as described in para. 40g-i, NICOLE, who is not an attorney but was counseled by VANIA, appeared at a hearing in the Susan A. case while DARREN was incarcerated. Also, on or about January 21, 2014, Nicole sent an intimidating letter to Plaintiffs and filed documents in the case and executed a declaration to which was attached the threatening letter. See Exhs. 4 and 5.

118.  The above allegations are sufficient to show that NICOLE, VANIA and

1   DARREN agreed with each other so that at least one of the conspirators (here, DARREN)

2   would commit multiple acts of racketeering activity, i.e., extortion in violation of Cal. Penal

3   Codes 519 and 523.

4        119.   RICO recovery is being sought as described in the First Claim for Relief.

5

6                          **THIRD CLAIM FOR RELIEF**

7                (Civil Extortion - Against Defendants DARREN and NICOLE)

8        120.   Plaintiffs repeat and reallege the averments contained in paragraphs 1-83, and

9   84 through 114, and 116 through 119, as though fully set forth herein.

10       121.   Defendants conduct was unlawful as a matter of law, in that Defendant

11   DARREN had been forbidden from types of expressive conduct by the terms of his Pre-Trial

12   release, the terms of his confinement and Bureau of Prisons regulations, and the terms of his

13   supervised release.  Defendant NICOLE was aware of these restrictions.

14       122.   Extortion is the obtaining of property from another, with his consent, or the

15   obtaining of an official act of a public officer, induced by a wrongful use of force or fear, or

16   under color of official right. (Penal Code § 518.)

17       123.   Defendants attempted to obtain property from Plaintiffs, i.e., the right to

18   continue to practice law consistent with the California Business and Professions Code, and

19   the California Rules of Professional Conduct, with respect to the advocacy on behalf of

20   Susan A..

21       124.  Defendants attempted to obtain property from Plaintiffs, i.e., the right to collect

22   on a debt due and owing by virtue of the fee award in the *Chaker v. Mateo* action.

23       125.   Defendants attempted to obtain property from Plaintiffs, i.e., the right to

24   continue to collect and publish cases through the website FEARNOTLAW.COM.

25       126.  Defendants attempted to obtain an official act of a public officer, i.e., a judge,

26   through Plaintiffs' clients acquiesence.

27       127.  Defendants wrongfully attempted to induce fear as that term is used in Penal

28   Code section 519, which provides in pertinent part under the heading "threats":

"Fear, such as will constitute extortion, may be induced by a threat of any of the following:

    1.  To do an unlawful injury to the person or property of the individual threatened or of a third person.

    2.  To accuse the individual threatened, or a relative of his or her, or a member of his or her family, of a crime.

    3.  To expose, or to impute to him, her, or them a deformity, disgrace, or crime.

    4.  To expose a secret affecting him, her, or them.

                    * * *

(Penal Code § 519)

128.  Defendants threats were both express, and were implied by the contents of the various writings and the surrounding circumstances.

129.  Defendants transmitted the threats comprising extortion.

130.  The Statutes of Limitations regarding the bringing of the present claims have been tolled due to Defendants' absence from the State of California according to California Code of Civil Procedure section 351:

"If, when the cause of action accrues against a person, he is out of the state, the action may be commenced within the term herein limited, after his return to the state, and if, after the cause of action accrues, he departs from the state, the time of his absence is not part of the time limited for the commencement of the action."

(Cal. Civ. Proc. Code § 351.)

131.  As a direct and proximate result of the acts of Defendants as alleged in the Third Cause of Action above, Plaintiffs were injured.  Plaintiff McMillan suffered economic damage, expense, and humiliation, including, but not limited to, emotional upset, anxiety, mental suffering, and damage to his reputation.  Plaintiff McMillan also suffered loss of time. Plaintiff McMillan is therefore entitled to compensatory damages in an amount which will compensate for him all the detriment proximately caused  by Defendants' acts, whether foreseeable or not,  according to proof at time of trial, in accordance with Civ. Code § 3333.

1   132.  Plaintiff TMLF was damaged by the loss of goodwill resulting from the false
2   statements published by Defendants' "making good" on the threats.  Plaintiff TMLF was
3   damaged by the lost advertising expenses which were negated by the false statements
4   published by defendants.

5   133.  Defendants' conduct was malicious, oppressive and/or fraudulent within the
6   meaning of California Civil Code § 3294, thereby entitling Plaintiffs to an award of punitive
7   damages in an amount according to proof at time of trial.

- o O o -

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief as follows:

1.  For an Order enjoining Defendants, their agents, and those acting in concert or conspiracy with them, temporarily during the pendency of this action and permanently thereafter from and further violation of 18 U.S.C. §§ 1961 et seq.;

2.  For compensatory damages according to proof;

3.  For an award of treble damages pursuant to 18 U.S.C. § 1964;

4.  For attorneys' fees pursuant to 18 U.S.C. § 1964 or as otherwise provided by law;

5.  For punitive and exemplary damages pursuant to Cal. Civil Code § 3294 or as otherwise provided by law;

6.  For an award of costs of suit;

7.  For an award of pre-judgment interest and post-judgment interest in the maximum amount permitted by law;

8.  For such other and further relief as the Court deems just and proper.

Dated: December 5, 2016                   The McMillan Law Firm, A.P.C.

                                          /s/ Scott A. McMillan

                    BY:      _____

                                          Scott A. McMillan
                                          Attorney, In Propria Persona, and on behalf of
                                          Plaintiff The McMillan Law Firm, A.P.C.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all causes of action so determinable.

Dated: December 5, 2016                   The McMillan Law Firm, A.P.C.

                                          /s/ Scott A. McMillan

                    BY:      _____

                                          Scott A. McMillan
                                          Attorney, In Propria Persona, and on behalf of
                                          Plaintiff The McMillan Law Firm, A.P.C.

# CERTIFICATE OF SERVICE

I am admitted to the United States District Court for the Southern District of California. I am employed in San Diego County, California, and not a party to the within-entitled action. My business address is 4670 Nebo Drive, Suite 200, La Mesa, CA 91941-5230.

On December 5, 2016, I served the following documents:

FIRST AMENDED COMPLAINT

**By Electronic Submission:** I served the above listed document(s) described via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service though the court's transmission facilities.

Additional parties who are not registered CM/ECF users according to the court's NEF, were served via the following means:

**By Mail**:

Nicole Chaker
5924 Stadium Street
San Diego, CA 92192

Arthur J. McKeon III
Gilbert, Kelly, Croley & Jennett LLP
550 South Hope Street, 22nd Floor
Los Angeles, California 90071-2627

A copy of such documents were placed in an envelope, addressed as set forth above, such envelopes were deposited in the U.S. Mail, postage prepaid.

Dated:        December 5, 2016

/s/ Scott A. McMillan
_____