STEPHEN J. ERIGERO (SBN 121616)
E. LACEY  RICE (SBN 266748)
EDUARDO A. BRAVO (SBN 327967)
**ROPERS MAJESKI PC**
445 South Figueroa St, 30th Floor
Los Angeles, CA  90071
Telephone:  213.312.2000
Facsimile:   213.312.2001
Email:      stephen.erigero@ropers.com
Email:      lacy.rice@ropers.com
Email:      eduardo.bravo@ropers.com

Attorneys for Defendant
DARREN D. CHAKER

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

SCOTT A. MCMILLAN, an individual;
THE MCMILLAN LAW FIRM, APC,
a California professional corporation,

Plaintiffs,

v.

DARREN D. CHAKER, an individual,
and as trustee of PLATINUM
HOLDINGS GROUP TRUST, dba
COUNTER FORENSICS; NICOLE
CHAKER, an individual, and as trustee
of THE NICOLE CHAKER
REVOCABLE LIVING TRUST, U/A
dated August 18, 2010, VANIA
CHAKER, an individual and as
beneficiary of The Island Revocable
Trust under,

Defendants.

Case No. 3:16-cv-2186-WQH-MDD

*Hon. William O.  Hayes
Courtroom 14B*

**DECLARATION OF EDUARDO
A. BRAVO IN SUPPORT OF
DEFENDANT DARREN D.
CHAKER'S MOTION TO SEAL
PORTIONS OF PLAINTIFF
SCOTT A. MCMILLAN'S
COMPLAINT AND FIRST
AMENDED COMPLAINT**

**[*Filed Concurrently with Notice of
Motion, Memorandum of Points and
Authorities, Request for Judicial
Notice and (Proposed) Order]***

**DATE:  AUGUST 3, 2020**

***NO ORAL ARGUMENT UNLESS
REQUESTED BY THE COURT***

Action Filed:   August 29, 2016
Trial Date:     None

ROPERS MAJESKI | A Professional Corporation
Los Angeles

## DECLARATION OF EDUARDO A. BRAVO

I, EDUARDO A. BRAVO, declare as follows:

1.     I am an attorney licensed to practice law before all court in the State of California and the United States District Court, Southern District of California.  I am an associate with the law firm of Ropers, Majeski, Kohn & Bentley, counsel of record for Defendant DARREN D. CHAKER ("Defendant") in the matter entitled *Scott A. McMillan et al. v. Darren D. Chaker, et al.*  I make this declaration in support of Defendant's Motion to Seal Portions of Complaint and First Amended Complaint ("FAC").  Except as otherwise indicated, I have personal knowledge of the matter set forth below, and could competently testify thereto if called to do so.

2.     On September 27, 2017, Plaintiffs SCOTT A. MCMILLAN, ("McMillan") and THE MCMILLAN LAW FIRM, APC's (collectively, Plaintiffs") filed their related complaint in the Superior Court of the State of California, County of San Diego, Case No. 37-2017-00036344-CU-NP-CTL, in the matter *Scott A. McMillan et al. v. Darren D. Chaker, et. al.*, alleging two causes of action against Defendant: (1) Civil Extortion; and (2) Unfair Competition, Bus. & Prof. Code section 17200.

3.     On or about August 29, 2016, Plaintiffs filed their Complaint in the United States District Court, Southern District of California, alleging three causes of action against Defendant: (1) Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1962(c); (2) Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1962(d); and (3) Civil Extortion.  Attached hereto as Exhibit "A" is a true and correct copy of Plaintiffs' Complaint.

4.     On or about December 5, 2016, Plaintiffs filed their FAC in the United States District Court, Southern District of California, alleging the same causes of action as in the Complaint.  Attached hereto as Exhibit "B" is a true and correct copy of Plaintiffs' FAC.

5.     On or about June 29, 2018, the court in Superior Court of the State of

ROPERS
MAJESKI

A Professional Corporation
Los Angeles

California, County of San Diego, Case No. 37-2017-00036344-CU-NP-CTL, in the matter *Scott A. McMillan et al. v. Darren D. Chaker, et. al*., published a Minute Order granting in part Defendant's motion to seal portions of the state court compliant related to Defendant's paternity case. Attached hereto as "Exhibit C" is a true and correct copy of the court's Minute Order.

6.      In a good faith effort to meet and confer on the matters set forth in the instant Motion, my office sent a letter on May 26, 2020 by e-mail to counsel for Plaintiffs stating Defendant's intention to seal portions of the Complaint and FAC. Attached hereto as Exhibit "D" is a true and correct copy of this correspondence.

7.      On May 26, 2020, Plaintiffs' counsel Scott A. McMillan responded to the issues laid out in the initial meet and confer letter dated May 26, 2020. Attached hereto as Exhibit "E" is a true and correct copy of this correspondence.

8.      Despite these meet and confer efforts, the parties have not reached an agreement resolving the issues raised in the instant Motion.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 25th day of June, 2020 in Los Angeles, California.

_____
EDUARDO A. BRAVO

A Professional Corporation
Los Angeles

ROPERS
MAJESKI

# EXHIBIT A

1  Scott A. McMillan, CBN 212506
   **THE McMILLAN LAW FIRM, APC**
2  4670 Nebo Drive, Suite 200
   La Mesa, California 91941-5230
3  (619) 464-1500 x 14
   Fax: (619) 828-7399
4
   Attorney for Plaintiff,
5  Scott A. McMillan and The McMillan Law Firm, APC

6

7

8                UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10

11 SCOTT A. MCMILLAN, an individual,        Civil Case No.: **'16CV2186 JM    MDD**
   THE MCMILLAN LAW FIRM, APC, a
12 California professional corporation,     Complaint for
                                            1.      Racketeer Influenced and
13        Plaintiffs,                        Corrupt Organizations Act (18
                                            U.S.C. §§ 1962(c))
14        vs.                               2.      Racketeer Influenced and
                                            Corrupt Organizations Act (18
15 DARREN D. CHAKER an individual,          U.S.C. §§ 1962(d))
   and as trustee of PLATINUM              3.      Civil Extortion
16 HOLDINGS GROUP TRUST, dba
   COUNTER FORENSICS; NICOLE
17 CHAKER, an individual, and as trustee of       DEMAND FOR JURY TRIAL
   NICOLE CHAKER TRUST ONE,
18 VANIA CHAKER, an individual and as
   trustee of VANIA CHAKER TRUST
19 ONE,

20        Defendants.

21

22

23

24

25

26

27

28

Plaintiffs allege as follows:

**JURISDICTION**

1.  This Court has jurisdiction over the subject matter of the causes of action in this complaint by virtue of:

a.  federal question jurisdiction pursuant to 28 U.S.C. § 1331, involving an action pursuant to 18 U.S.C. § 1964(c), the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"). This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §1332;

b.  supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), involving claims that are so related to claims in the action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution; and

2.  This Court has jurisdiction over the person of the Defendant Darren Chaker because Defendant transacts business within this judicial district, and Defendant is amenable to service of process within the meaning of Federal Rule of Civil Procedure Rules 4(e), 4(f), and 18 U.S.C. § 1965(b).

3.  Further, this District Court, the Hon. Larry A. Burns, District Judge presiding, has jurisdiction over Defendant because Defendant is under an order of supervised release according to the terms of sentence of Defendant's conviction for bankruptcy fraud, *United States v. Chaker*, U.S.D.C., So. Dist. California, Case No. 3:15-cr-07012-LAB.

4.  Venue is proper in this district pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391 because Defendants transacts business in this district or, alternatively, this district is where a substantial part of the events or omissions giving rise to the claim occurred.

**THE PARTIES**

5.  Plaintiff, SCOTT A. MCMILLAN (hereinafter referred to as "Plaintiff McMillan"), is a  resident of the State of California, County of San Diego.  Plaintiff is a California licensed attorney, and is engaged in intra-state, and interstate commerce in the course of his practice.  Plaintiff McMillan also operates a law school, the McMillan

1      Academy of Law, a Caliornia corporation, which is unaccredited, but registered with the

2      Committee of Bar Examiners, State Bar of California.

3          6. Plaintiff, THE MCMILLAN LAW FIRM, APC, a California professional

4      corporation, (hereinafter referred to as "Plaintiff TMLF") has its principal place of

5      business in the County of San Diego, State of California. Plaintiff McMillan operates

6      Plaintiff TMLF.

7          7. Defendant, DARREN CHAKER (a.k.a. Darren Del Nero a.k.a. Darren Del

8      Nero-Chaker a.k.a. Darren Shaker, a.k.a. D. David Hunter) (hereinafter referred to as

9      "Defendant DARREN"), is presently a resident of the State of California, County of San

10     Diego. Defendant DARREN conducts business through and holds assets as trustee in

11     PLATINUM HOLDINGS GROUP TRUST, a self-settled trust. Plaintiff is further

12     informed and believes that Defendant DARREN conducts business under the pseudonym

13     or doing-business-as "COUNTER FORENSICS." Defendant DARREN was deemed a

14     vexatious litigant in Superior Court of California, County of San Diego Case Nos. 591421

15     (December 2, 1997) and GIC757326 (June 22, 2001).

16         8. Defendant VANIA CHAKER (hereinafter referred to as "Defendant VANIA")

17     is presently a resident of the State of California, County of San Diego, and is Defendant's

18     Darren's sister. On one or more occasions, VANIA has participated in the acts set forth

19     herein, providing assistance to Defendant DARREN in committing predicate acts.

20     Plaintiff is informed and believes that Defendant VANIA conducts business through and

21     holds assets as trustee in a trust of an unknown name, which shall be referred to herein as

22     VANIA CHAKER TRUST ONE, a self-settled trust. Plaintiff intends to amend the name

23     of that trust at such time as it becomes known to Plaintiff herein, and substitute the true

24     name for that trust at that time.

25         9. Defendant NICOLE CHAKER (hereinafter referred to as "Defendant

26     NICOLE"), is the mother of Defendant DARREN and Defendant VANIA. On one or

27     more occasions, Defendant NICOLE has participated in the acts set forth herein,

28     providing assistance to Defendant DARREN in committing predicate acts. Plaintiff is

1  informed and believes that Defendant NICOLE conducts business through and holds

2  assets as trustee in a trust of an unknown name, which shall be referred to herein as

3  NICOLE CHAKER TRUST ONE, a self-settled trust.  Plaintiff intends to amend the

4  name of that trust at such time as it becomes known to Plaintiff herein, and substitute the

5  true name for that trust at that time.

6                 **DEFENDANTS' ENTERPRISE AND PREDICATE ACTS**

7       10.  Plaintiffs are informed and believe, and based thereon allege that Defendant

8  VANIA is an attorney, currently licensed to practice law in the State of California.

9  Defendant VANIA has lived at various times in California and the Pennsylvania.

10  Defendant VANIA, as a profession, both individually on her own account and to assist

11  Defendants DARREN and NICOLE, engaged in litigation based on meritless or outright

12  false claims, typically relying upon the Fair Credit Reporting Act, 15 U.S.C. § 1681, and

13  on at least one occassion bringing a claim for personal injury, deriving income from such

14  fraudulent activity.  As part of her pattern of racketeering activity, Defendant VANIA has

15  attempted and sometimes succeeded in collecting unlawful debts, i.e., a claim based on

16  false or meritless legal claims, and derived income from such false claims and unlawful

17  threats of suit.  For instance in *Vania Chaker v. Monarch Group Management, Inc.*,

18  U.S.D.C. So. Dist. of Cal., Case No. 06cv1534W(AJB), Defendant VANIA borught a

19  class action complaint for violation of the Federal Fair Debt Collections Practices Act, 15

20  U.S.C. § 1692, et seq. and the California Rosenthal Fair Debt Collection Practices Act,

21  arising from her landlord's service upon her of a three day notice to pay rent or quit.

22  Within the U.S. District Court for the Southern District of California, Defendant VANIA

23  has brought three other cases based on allegations of violations of the Fair Debt

24  Collection Practices Act, e.g., *Vania Chaker v. Collection Company of America*, U.S.D.C.

25  So. Dist. of Cal., Case No. 05cv390 BEN(AJB) [unpaid T-mobile cellular phone

26  charges]; *Vania Chaker v. Allied Interstate, Inc.*, U.S.D.C. So. Dist. of Cal., Case No.

27  05cv0212 LAB(RBB)[unpaid DirectTV bills]; *Vania Chaker v. CAMCO*, U.S.D.C. So.

28  Dist. of Cal., Case No. 04cv1735 W(RBB).

11. Plaintiffs are informed and believe, and based thereon allege that Defendant VANIA did not solely file such suits in the U.S. District Court for the Southern District of California, but also assisted in cases in the Central District of California, appearing as attorney in the suit brought by Defendant DARREN *subnom* (Darren Del Nero) and Defendant NICOLE alleging defendant's violations of the Federal Fair Debt Collections Practices Act, 15 U.S.C. § 1692, et seq.. Specifically, Defendants DARREN and NICOLE brought suit against Midland Credit Management Inc., in the case of *Del Nero & Chaker, et al., v. Midland Credit Management Inc*., U.S.D.C. Cen. Dist. of Cal., Case No. 2:04-cv-01040-ABC-SH. Defendant DARREN and his attorneys were sanctioned $155,979.09 after the court found that Defendant DARREN brought suit in bad faith and for the purpose of harassment. (*Del Nero v. Midland Credit Management Corp. et al*., 2:04-cv-01040-ABC-SH.(Attorneys fee award later vacated against Chaker's counsel.) The Court issued an order to show cause re contempt for Defendant VANIA's conduct during the jury trial, and barred her from the courtroom during the remainder of the trial. The court's basis for the order was that Defendant VANIA attempted to aid a witness in answering counsel's questions. [ECF 91.] Defendant VANIA also represented Defendant DARREN *subnom* (Darren Del Nero) in *Darren Del Nero v. Reliable Adjustment Bureau Inc et al*, U.S.D.C. Cen. Dist. of Cal., Case No. 2:04-cv-00969-FMC-JWJ, another case alleging violations of 15 U.S.C., § 1681. In each of those instances, in a likely effort to avoid Defendant DARREN's prefiling order as a vexatious litigant, Defendant VANIA initially appeared on Defendant DARREN's behalf, then substituted out to allow Defendant DARREN to prosecute the case *in propria persona*. Defendant VANIA engaged in such transitory representation of Defendant DARREN to assist him avoiding the bar of the prefiling orders placed resulting from his designation as a vexatious litigant.

12. As to Defendant DARREN, Plaintiffs are informed and believe, and based thereon allege that Defendant DARREN holds himself out to the public as operating a business called COUNTER FORENSICS. The COUNTER FORENSICS web page described its services as follows:

Case 3:16-cv-02186-WQH-MDD Document 118-2 Filed 06/25/20 PageID.4057 Page 10 of
Case 3:16-cv-02186-WQH-MDD Document 118-2 Filed 06/25/20 PageID.4057 Page 10 of
100

1    "Founded in 2006, the origination of CounterForensics.com can be traced to

2    the cyber security and forensics background of our consultant, Darren

3    Chaker. Mr. Chaker (www.DarrenChaker.com) previously worked in law

4    enforcement, and as a security contractor in the Middle East. More recently,

5    Mr. Chaker managed electronic discovery (e-discovery) for a leading

6    multinational law firm conducting large-scale digital forensic

7    investigations, and provided electronic discovery services involving civil,

8    corporate and criminal matters. Mr. Chaker also implemented security

9    enforcement protocols and systems with Military Grade Communications

10    for use between international offices to discuss sensitive matters. Mr.

11    Chaker has additional expertise in matters involving:

12    • Software piracy;

13    • Sexual harassment via e-mail, instant messaging and other forms of electronic

14    communications;

15    • Monitoring employee activity;

16    • Employee sabotage;

17    • Intrusion detection;

18    • Recovery of deleted files;

19    • Lost password recovery and cracking of locked files;

20    • Discovery of hidden and deleted e-mails and pictures;

21    • Internet usage and unauthorized software installed on a company machine; and

22    Removal of viruses, pictures, software and other data items which may be hidden

23    from the user.

24    See **Exhibit 6**,

25    https://web.archive.org/web/20150208142616/http://www.counterforensics.com/

26    (Accessed on August 23, 2016.)

27    13.  At various times relevant to the facts stated herein, Defendant DARREN has

28    resided in California, Nevada and Texas, and engaged in transactions and acts affecting

Case 3:16-cv-02186-WQH-MDD Document 118-2 Filed 06/25/20 PageID.4058 Page 31 of
Case 3:16-cv-02186-WQH-MDD Document 118-2 Filed 06/25/20 PageID.4058 Page 31 of
100

interstate commerce:

14. Defendant DARREN has, as a profession, engaged in litigation based on meritless or outright false claims, typically relying upon the Fair Credit Reporting Act, 15 U.S.C. § 1681, and on at least one occassion bringing a claim for personal injury, deriving income from such fraudulent activity. As part of his pattern of racketeering activity, Defendant DARREN has attempted and sometimes succeeded in collecting unlawful debts, i.e., a claim based on false or meritless legal claims, and derived income from such false claims and unlawful threats of suit.

15. In another 2005 case, attorney's fees of $42,934.84 were awarded against Defendant DARREN for filing a baseless lawsuit. (*Chaker v. Richland* (C.D. Cal. 2005) CV 05-7851-RSWL; *See also Chaker v. Imperial Collection Services* (C.D. Cal. 2004) CV 04-2728-PA (alleging claims under the FDCPA found to be without merit); and *Del Nero v. Riddle & Associates PC, et al.* (C.D. Cal. 2003) CV 03-6511-GHK (same).) In a 2007 case, Defendant DARREN and his attorneys were sanctioned $155,979.09 after the court found that Defendant DARREN brought suit in bad faith and for the purpose of harassment. (*Del Nero v. Midland Credit Management Corp. et al*. (C.D. Cal. 2007) CV 04-1040 GPS.) In a 2009 case, Defendant DARREN was ordered to pay $136,316.14 for bad faith due to Defendant DARREN falsely claiming identity theft. (*Chaker v. Nathan Enterprises Corp.* (C.D. Cal. 2009) CV 04-2726-RSWL.)

16. Defendant DARREN filed other suits based allegations of violations of Fair Credit Reporting Act, 15 U.S.C. § 1681, i.e., *Darren Chaker-Del Nero v. Afni, Inc.*, U.S.D.C. Cen. Dist. of Cal., Case No. 2:08-cv-03405-ODW-SS; *Darren D Chaker v. First City Bank Credit Union*, U.S.D.C. Cen. Dist. of Cal., Case No. 2:04-cv-02727-GPS-RZ; *Darren D Chaker v. Factual Data Corporation*, U.S.D.C. Cen. Dist. of Cal., Case No. 2:04-cv-02729-JFW-AJW; *Darren D Chaker v. European Auto House*, U.S.D.C. Cen. Dist. of Cal., Case No. 2:04-cv-02731-R-PJW; *Darren Chaker v. Arrow Financial Services* LLC, U.S.D.C. Cen. Dist. of Cal., Case No. 2:04-cv-07050-FMC-FMO.

17.   Defendants have a pattern of attacking the attorneys which oppose them, i.e.,
in *Darren D Chaker v. Felipa R. Richland, et al.*, U.S.D.C. Cen. Dist. of Cal., Case No.
2:05-cv-07851-RSWL-PLA, Defendant DARREN sued attorney Richland and her law
office, and her client Nathan Enterprises Corp. for alleged violations of the  Fair Credit
Reporting Act, 15 U.S.C. § 1681.  Plaintiff is informed and believes and based thereon
alleges that during her defense of the both cases, Ms. Richland was stalked, her property
vandalized.  Ultimately, Ms. Richland and her client prevailed, with Defendant DARREN
held liable for costs and attorneys fees. [ECF 25, 26.]

18.   Defendant DARREN, subnom *Darren Chaker Del-Nero*, brought additional
suits in the United States District Court for the District of Nevada based on allegations of
violation of the Fair Credit Billing Act, 15 U.S.C. § 1666, e.g.,  *Chaker-Delnero v.
Nevada Federal Credit Union, et al*, U.S.D.C. District of Nevada., Case No.,
2:06-cv-00008-BES-GWF; for violations of the Fair Debt Collections Practices Act, 15
U.S.C. § 1692, *Chaker-Delnero v. Butler & Hailey, et al*, U.S.D.C. District of Nevada.,
Case No. 2:06-cv-00022-KJD-LRL, *Chaker-Delnero v. Clark County Collection Service,
LLC*, U.S.D.C. District of Nevada, 2:06-cv-00123-JCM-PAL, and *Chaker-Delnero v.
Collectco*, U.S.D.C. District of Nevada, 2:06-cv-00244-RLH-GWF.  In each of these
cases, docket entries reflect a voluntary dismissal. Plaintiff is informed and believes that
in those cases, the Defendants paid a sum to "buy their peace" rather than to spend
attorneys fees litigating the case, despite the lack of the merit to Defendant DARREN's
claims.

19.   Defendant DARREN, subnom *Darren Chaker*, brought additional suit in the
United States District Court for the Southern District of Texas (Houston) based on
allegations of violation of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692,
*Chaker v. The CMI Group*,  U.S.D.C. Southern District of Texas (Houston),
4:07-cv-01802F [Time Warner Communications.] In that case, the docket entries reflect a
voluntary dismissal. Plaintiff is informed and believes that in that case, the Defendants
paid a sum to "buy its peace" rather than to spend attorneys fees litigating the case,

1  despite the lack of the merit to Defendant DARREN's claims.

2      20.  Defendant DARREN, subnom *David Hunter*, brought additional suit in the

3  United States District Court for the District of Arizona, entitled *Hunter v. Receivables*

4  *Performance Management, LLC*, U.S.D.C. District of Arizona, 2:10-cv-00665-MHM

5  [Sprint cellular phone service].  Within that suit Defendant DARREN attached letters

6  claiming an address at 11881 S. Fortuna Road, #223, Yuma, AZ 85367 [Exhibit B, ECF

7  1-3.] In that case, the docket entries reflect a voluntary dismissal. Plaintiff is informed

8  and believes that in that case, the Defendant paid a sum to "buy its peace" rather than to

9  spend attorneys fees litigating the case, despite the lack of the merit to Defendant

10  DARREN's claims.

11                          **SEX TRAFFICKING**

12      21.  Plaintiff is informed and believes and based thereon alleges that Defendant

13  DARREN also engaged, within the last ten years, in human trafficking, and derived

14  income from such activity.

15      22.  Defendant DARREN's record of arrests and prosecutions (RAP) reveals

16  arrests for insufficient funds/check, attempting to prevent/dissuade victim/witness,

17  receiving known stolen property, vehicle theft, first degree burglary, grand theft, and

18  being in possession of an assault weapon. He was convicted of invading/looking into a

19  tanning booth (1997), and possession of an assault weapon (2006). Such crimes were

20  punishable by a year or more incarceration.

21      23.  Defendant DARREN also obtained mortgages on real estate through false

22  statements, and thereafter rather than paying the mortgages, Defendant DARREN kept the

23  rents from such properties to fund his enterprises, and when his mortgagors sought to

24  recover their real property collateral, Defendant DARREN filed false bankruptcy petitions

25  in order to stall or avoid the foreclosure and continue to collect rental income.

26      a.  Defendant DARREN used the ill-gotten proceeds of his enterprise to fund his

27          lifestyle and further his illegal activities including through the purchase of

28          computers, paying for travel, development of various domain names and online

_____

Complaint                                          9

1   presences to the detriment of Plaintiff herein.

2   b.  In order to dissuade those members of law enforcement and attorneys in private

3   practice who would challenge Defendant DARREN's criminal conduct, including

4   Plaintiff herein, Defendant DARREN used various means and threats, including

5   harassment, stalking, defaming others, vandalizing property, hacking computers,

6   spoofing emails, and identity theft.

7   c.  Defendant DARREN has used the proceeds of his racketeering activity to

8   purchase computers, equipment, and Internet access services in order to engage in

9   his and the other Defendants VANIA and NICOLE's frauds, and efforts to

10  dissuade those who oppose their illegal conduct, including Plaintiff herein.

11  d.  On March 22, 2012, Defendant DARREN was indicted in *United States v.*

12  *Darren David Chaker*, Case No. 4:12CR00168-001, and thereafter granted pre-

13  trial release under supervision with U.S. Pretrial Services.  The Indictment,

14  attached as **Exhibit 1**, alleges a portion of Defendants' scheme, which Plaintiff

15  incorporates by reference here.

16  e.  While on supervision with U.S. Pretrial Services, through false statements to a

17  United States officer, he violated his terms of release by failing to disclose to U.S.

18  Pretrial Services and the Court the fact that he procured a U.S. Passport using the

19  alias "D. David Hunter."

20  f.  On December 17, 2013, Defendant DARREN suffered a Judgment in a

21  Criminal Case in the case entitled *United States v. Darren David Chaker*, Case No.

22  4:12CR00168-001, in the  United States District Court for the Southern District of

23  Texas (Houston), for Bankruptcy Fraud, 18 U.S.C § 157(3).  On April 14, 2016,

24  that conviction was affirmed by the United States Court of Appeals for the Fifth

25  Circuit, case number 14-20026, as reported in  *United States v. Chaker*, 820 F.3d

26  204, 206 (5th Cir. 2016). He was sentenced to a total term of 15 months, and was

27  additionally sentenced to three years supervised release, as part of the special

28  conditions of supervision was ordered:

---

Complaint                                                    10

"The defendant shall provide the probation officer access to any requested financial information. If a fine or restitution amount has been imposed, the defendant is prohibited from incurring new credit charges or opening additional lines of credit without approval of the probation officer.

The defendant is prohibited from possessing a credit access device, such as a credit card, unless first authorized by the probation officer.

The defendant is required to participate in anger management counseling as deemed necessary and approved by the probation officer. The defendant will incur costs associated with such program, based on ability to pay as determined by the probation officer.

The defendant is required to participate in a mental health program as deemed necessary and approved by the probation officer. The defendant will incur costs associated with such program, based on ability to pay as determined by the probation officer.

The defendant may not stalk and/or harrass other individuals to include, but not limited to, posting personal information of others or defaming a person's character on the internet."

(ECF 312, 4:12CR00168-001)

**DEFENDANTS' PRIOR ACTS OF EXTORTION AND WITNESS TAMPERING**

24. Defendants rely on keeping their past conduct, criminal convictions, lawsuits, and generally bad reputation out of public view. To accomplish this the defendants regularly use pseodynms, attempt to seal documents and proceedings which may alert the public to information about Defendants that if known, would provide a defense or would affect a fact-finder's view on their credibility.

25. Defendant DARREN falsely, and in order to gain credibility with unknowing law enforcement and laypersons, holds himself out as a former law enforcement officer or government security employee, including at various times claiming an "Ex-cop" or to be an employee of the "Diplomatic Security Service."

26. **Victim Zaya**: Plaintiffs are informed and believe that, in accordance with Defendants' common plan and scheme, Defendant DARREN committed one or more acts of extortion against Nadine Zaya:

a. Plaintiff is informed and believes, and based thereon alleges, that Defendant DARREN formerly had a dating relationship with Nadine Zaya. At some point between August and October 2002, Defendant DARREN and Zaya, traveled from

1   Southern California to Scottsdale, Arizona. Petitioner took Zaya to a gun store,

2   where he purchased the Rifle, a licensed reproduction of a Fabrique Nationale

3   FAL (FN-FAL) battle weapon.8 At the gun store, petitioner told Zaya he once

4   owned "the exact same gun" but his mother had taken it away from him.

5   b.  After Defendant DARREN  purchased the Rifle, he made Zaya take pictures of

6   him with it. He also made Zaya pose with the Rifle. Defendant DARREN then

7   took Zaya to a firing range, where he fired the Rifle and showed her how to shoot,

8   hold, and load it. When Zaya held the Rifle, Defendant DARREN reassured her,

9   "It's okay. Look, it's fun. . . . You're going to be okay. I'm an ex-cop. I know how

10  to shoot a gun." Shortly thereafter, petitioner and Zaya returned to California with

11  the Rifle.

12  c.  On October 14, 2002, Laguna Beach police officers visited Defendant

13  DARREN's apartment to investigate allegations that he had sexually exploited a

14  minor. A police officer entered the apartment, knocked on a bedroom door, and

15  identified himself as a police officer. After some delay, Defendant DARREN

16  emerged from the bedroom and told the officer the room belonged to him. He

17  refused, however, to permit the police officers to search it. Defendant DARREN

18  called Zaya after the police officers left the apartment. He expressed concern that

19  the fully-assembled Rifle would be considered an illegal weapon.  Defendant

20  DARREN told Zaya he was going to remove parts from the Rifle to "make it

21  legal" and asked her to keep the parts.  The next day, the police officers returned to

22  Defendant DARREN's  apartment with a search warrant. During the search, an

23  officer found the Rifle in petitioner's bedroom closet. He noticed the Rifle had a

24  detachable magazine and a pistol grip, but that it was missing its bolt carrier group.

25  The officers also found unloaded magazines and pictures of petitioner posing with

26  the Rifle at a firing range. In the pictures, the Rifle contained the bolt and the

27  magazine.

28  d.  On November 18, 2002, the District Attorney of Orange County filed a felony

---

Complaint                                                        12

complaint charging defendant with one count of possession of an assault weapon
(Penal Code § 12280(b)) and one count of receiving stolen property (Penal Code §
496, subd. (a)). Shortly after the People filed the complaint, defendant began
writing letters to the court. In these letters, defendant claimed the police had
illegally seized privileged documents from his apartment. He also criticized the
judges presiding over his case and the attorneys assigned to represent him. On July
30, 2003 -- after defendant had written six letters to various judges -- the court
ordered defendant to stop. The court notified defendant it would "not take action
on personal communications from a represented defendant when his case is
pending before this court." (*People v. Chaker*, No. G037362, 2008 Cal. App.
Unpub. LEXIS 999, at \*4-5 (Ct. App. Feb. 4, 2008).)

e. Plaintiffs are informed and believe that in July 2005, the Superior Court of
California, County of San Diego issued a restraining order against Darren D.
Chaker pursuant to the Domestic Violence Protection Act (Fam. Code, § 6200 et.
seq. (the Act)), requiring him to stay away from Nadine Zaya for a five-year
period. He appealed from that order on various grounds, contending in part that
Zaya's evidence was insufficient to support its issuance; the Court of Appeals of
California, Fourth District, Division One, however, rejected his arguments and
affirmed the order.

f. On June 15, 2006, Zaya filed a request for a temporary restraining order under
the Act against Chaker. In her request, Zaya stated under penalty of perjury that
Chaker made threatening calls to her and told her he would harm her or her family
if she testified in a pending criminal matter against him. (*Zaya v. Chaker* (Oct. 19,
2007, D049874) [nonpub. opn.].)

g. Thereafter, on or about July 19, 2006, and then again on or about December 8,
2006, Defendant DARREN sent nude photos of Zaya to Zaya's brother's
employer, which had been taken by Defendant DARREN.

27. **Victims Frantz:** Plaintiffs are informed and believe that the following is true

regarding Defendant DARREN's efforts to extort San Diego attorneys James Frantz, Jodi Frantz, and Charles Kim:

a. On or abut December 2010, Jodi and James Frantz retained Charles Kim to represent them in a civil protective action. Jodi Frantz sought a restraining order against Defendant DARREN, in *Hautaluoma v. Chaker*, San Diego Superior Court Case No. 717794.

b. Prior to the extortion attempt against James Frantz, Jodi Frantz, and Charles Kim, Plaintiffs are informed and believe that Defendants engaged in acts of vandalism to the property of James Frantz and Jodi Frantz, which they believed to have been perpetrated and intended by Defendant DARREN to intimidate James Frantz and Jodi Frantz and send a message.

c. In the preceding months to the extortion attempt, Jodi Franz was the victim of financial fraud in the summer of 2010. Ms. Frantz had caused two of her then current credit cards be de-activated by the issuers due to fraud alerts. The recent event happened in the week preceding the extortion attempt, while she was on vacation. Although Ms. Frantz believed Chaker is responsible for the fraud, she believed that she had no evidence. Ms. Franz reported the thefts to her credit card issuers. She had unauthorized charges on credit accounts from Bank of America, Union Bank, and Nordstrom. In the Summer of 2010, Mr. Frantz had also had his identity stolen, and used for credit card fraud. Although Mr. Frantz believed Chaker was responsible for the fraud, he believed that he had no evidence.

d. On December 22, 2010, at 2:54 a.m., Defendant DARREN caused to be sent a fax to the office of Charles Kim. The fax included inappropriate reference to the death of James Patrick Frantz II (the son of James and Jodi Frantz). Also faxed was a complete copy of the County of San Diego Investigative report #1 0-01098 that documented the medical examiners death investigation in that case. The fax reference the social security number of Jodi Frantz, and Medical Doctor (Dr. Christine Miller) who treated Jodi Frantz. The fax appears to threaten to publish

the social security number and "embarrassing" medical information if Attorney

Kim did not agree to Chaker's demands. Also included was an apparent implied

threat to file complaints with the state bar association against Charles Kim and

James Frantz if they did not comply with his demands.

28. **Victims Mateo**: Nicole Mateo was in a relationship with Defendant

DARREN, which resulted in the birth of a daughter. Plaintiff is informed and believes

that following the efforts to obtain child support, Defendant DARREN initiated a

campaign of harassment against Wendy Mateo and her husband Steven Mateo. Steven

Mateo is a deputy constable with the Harris County Constable Office, in Spring, Texas.

The Mateo's hired an attorney by the name of Cynthia Tracy to address Defendant

DARREN's conduct. In response, Defendant DARREN initiated a harassment campaign

that included sending sexually explicit photos of Nicole Mateo to the employers of the

Mateos, obtaining the email passwords of various Mateo accounts, and sending emails

containing sexually explicit material through such accounts. The Mateo's attorney,

Cynthia Tracy, was targetted by a blog page that also made false and defamatory

statements about her. Ultimately, Attorney Tracy declined to continue to represent the

Mateos due to the aggravation and the expense of dealing with Defendant DARREN.


## DEFENDANTS' EFFORTS DIRECTED AT PLAINTIFF HEREIN

29. Plaintiff operates a website called FEARNOTLAW.COM, and has operated

that site since 2005. Fearnotlaw has maintains tens of thousands of unpublished decisions

from California's court of appeals. The unpublished decisions were taken directly from

the court of appeals website and posted *en masse*, at various times. There was no

intentional targeting of Darren Chaker or any other subject of the decisions.

30. Defendant DARREN in this case initially contacted Plaintiff to demand

removal of decisions posted concerning his cases that had been decided by the Court of

Appeals. One of those decisions was *Zaya v. Chaker*, California Court of Appeal Case

No. D049874. In *Zaya v. Chaker*, the Court of Appeal affirmed a trial court's imposition

1   of a five year restraining order against Mr. Chaker imposed pursuant to the Domestic

2   Violence Protection Act, Fam. Code, 6200 *et. seq*.  Defendant DARREN  Chaker's letter

3   to Plaintiff of November 23, 2010 contained Ms. Zaya's original petition, which alleged

4   that Mr. Chaker posted bogus sex-service advertisements on Craigslist falsely attributed

5   to Ms. Zaya, and had threatened to post compromising photos and videos of Ms. Zaya

6   online if she testified against him in his felony assault-weapon case. Plaintiff did not

7   remove any of the appellate decisions from Fearnotlaw.

8        31.  Defendant DARREN  thereafter initiated a campaign of harassment and

9   vandalism against Plaintiff McMillan and his family.  Usually during the holidays,

10  Plaintiff's family's cars would be vandalized.  Plaintiff's brother had the words

11  "fearnotlaw" scratched on the trunk of his BMW.  In another instance, the driver's side

12  mirror of Plaintiff's brother's truck was smashed.  On that instance, a neighbor that heard

13  the noise, saw a black SUV driving rapidly away.  Defendant DARREN  owns a Black

14  Dodge Durango.  Plaintiff is informed and believes, and based thereon alleges, that

15  Defendant VANIA Chaker accompanied Defendant DARREN during that vandalism.

16       32.  Other members of Plaintiff McMillan's family were attacked as well.

17  Plaintiff's mother's car had acid poured on the trunk.  Plaintiff's father's car had its tires

18  slashed.  After each event, Mr. Chaker would send Plaintiff an e-mail wishing him

19  "happy holidays" or making some other statement.  It was clear to Plaintiff that Darren

20  Chaker was acknowledging the vandalism by his timing of his emails, and attempting to

21  send a message and intimidate Plaintiff.

22       33.  At one point, on or about November 23, 2010, Defendants came to Plaintiff's

23  home and delivered a letter to his mail box signed by Defendant DARREN.  The letter

24  once again demanded that Plaintiff remove the posts concerning Defendant DARREN 's

25  cases from Fearnotlaw.  Thereafter, Defendant DARREN  sent Plaintiff McMillan e-mails

26  referring to his dogs – which indicated to Plaintiff that he had come to his house and

27  looked into his back yard.

28       34.  Because of Defendants' activities, Plaintiff McMillan and his family members

1    installed security cameras around their houses.  Plaintiff McMillan also installed security

2    cameras on the outside of the commercial building in La Mesa where Plaintiff TMLF has

3    its offices.

4          35.  Defendant DARREN  also began posting matters about Plaintiffs on the

5    Internet.  Initially, he used his own domain names.  Later, he began using Plaintiff's name

6    under Google's "blogspot" service.  Through the years, clients have contacted Plaintiff

7    McMillan to let him know that they have seen the Defendant DARREN 's posts

8    concerning Plaintiff on the Internet.  Chaker's posts were troubling to Plaintiffs' clients.

9          36.  Postings on Internet gripe sites and consumer review sites began appearing,

10    the posters made negative comments, but used a pseudonym.  Plaintiffs are informed and

11    believe based upon the timing and the circumstances that Defendants were posting those

12    comments.

13          37.  Because Defendant DARREN  had posted about Plaintiff on the Internet,

14    others that had conflicts with Defendant DARREN  contacted Plaintiff for advice and

15    representation in dealing with Defendant DARREN .  Plaintiff has provided that

16    representation pro-bono, and advanced the expenses.

17          38.  Plaintiff ultimately represented Wendy Mateo, one of the Defendant

18    DARREN's victims, in *Chaker v. Mateo*, San Diego Superior Court case,

19    37-2010-00094816-CU-DF-CTL, Hon. Timothy B. Taylor, Judge presiding.  Wendy

20    Mateo is the mother of Nicole Mateo.  Plaintiff is informed and believes that Nicole

21    Mateo had a brief relationship with Darren Chaker, which resulted in the birth of their

22    daughter.  Plaintiff began representing Ms. Wendy Mateo, the grandmother of Darren

23    Chaker's child during the pendency of Darren Chaker's appeal of the judgment in the

24    *Chaker v. Mateo* case.  That appeal resulted in the published decision of *Chaker v. Mateo*,

25    209 Cal. App. 4th 1138 (2012).   Following that appeal, the Superior Court awarded

26    Plaintiffs attorneys fees.  Those attorneys fees awarded have been the subject of judgment

27    debtor examinations and orders from Judge Taylor as discussed below.

28          39.  Thereafter, Plaintiff began representing *Susan A*. in a paternity case filed in

the San Diego Superior Court entitled *Chaker v. A* (the "Paternity Case").   Ms. A had also been in a relationship with Mr. Chaker. Ms. A. sets out her experience with Chaker in her declaration dated July 11, 2013, a true and correct copy of which is attached hereto as **Exhibit 'A' (Under Seal)**. Mr. Chaker claims that Ms. A.'s child, L, is the product of that relationship.   Ms. A. disputes that Mr. Chaker is the father, biological or otherwise, of her child L.

a. On July 12, 2013, Plaintiff McMillan filed a document in the Paternity Case, which included statement from Leesa Fazal, State of Nevada Office of the Attorney General, who had provided her confidential investigative report for submission in the Paternity Case, signed on July 11, 2013.  (**Exhibit 2, Submitted Under Seal**).

b. On July 22, 2013, at 8:45 a.m., Officer Fazal appeared in San Diego Superior Court, according to Plaintiff's subpoena to testify in the Paternity Case regarding the facts alleged in the above mentioned Declaration. Officer Fazal and Plaintiff McMillan appeared before the Superior Court, Judge Gerald Jessop, presiding. The court did not have time to hear the case in the morning, and ordered Ms. Fazal and Mr. Chaker back to court later that afternoon. As they exited the court, Defendant DARREN followed Ms. Fazal and Plaintiff McMillan a short distance, and walked at a quick pace with his mobile telephone in his hand and appeared to take video of them while laughing loudly.   At that time, Ms. Fazal had not yet testified, and Defendant DARREN's behavior was purposefully threatening and an apparent effort to intimidate Officer Fazal, prior to her testimony.

c. When Plaintiff McMillan and Officer Fazal returned they were accompanied by licensed private investigator Richard Rivero.  Following the hearing Defendant VANIA approached Richard Rivero in a rapid manner, within a couple feet, and asked him what he was doing there and demanded his name.  Although he had not been called to testify, Rivero responded that he was a witness, he would speak to Defendant VANIA in the presence of court personnel, and attempted to pass her.

1   Defendant VANIA blocked his and Plaintiff McMillan and Officer Fazal's exit, so

2   Plaintiff, Rivero and Fazal returned to the court room, and Defendant VANIA

3   followed.  Thereafter, the courtroom deputy ordered Defendant VANIA to leave,

4   and to leave Rivero, Plaintiff McMillan and Ms. Fazal alone.  The courtroom

5   deputy allowed Rivero, Plaintiff McMillan and Ms. Fazal, and shortly therafter,

6   confirmed that Defendant VANIA was no awaiting them outside the courtroom.

7   d.  Plaintiff McMillan, Officer Fazal and Rivero exited the courtroom, then entered

8   the elevator to descend to the lobby.  After exiting the elevator and entering the

9   lobby.  Defendant DARREN blocked the doorway exit and in a loud and

10  commanding voice demanded that Officer Fazal be arrested for being armed.  He

11  wanted to place her under citizen's arrest.   Officer Fazal was escorted to the side

12  while the  deputies determined that there were no grounds to arrest.    While they

13  waited, the Defendant VANIA entered the location and brushed by Rivero as she

14  entered the elevator.

15  e.  Rivero left the building with Officer Fazal, Rivero then noted Defendant

16  VANIA's black SUV following him at a high speed.  Rivero pulled to the side.

17  Defendant VANIA stopped her SUV in the middle of the street adjacent to

18  Rivero's vehicle.  Rivero felt that Defendant VANIA was attempting to intimidate

19  him. Rivero noticed Defendant DARREN hunched down in the passenger's seat so

20  as to not be identified.  Such chase was intended, and did intimidate Officer

21  FAZAL in that it gave her additional concern regarding participating in the legal

22  proceedings.

23  f.  On July 24, 2013, and thereafter during the pendency of the Paternity Case,

24  Plaintiff provided the United States materials and information regarding Defendant

25  DARREN, specifically that Defendant DARREN had a "go kit" which included a

26  passport under his identity "David Hunter". Which information Plaintiff

27  understands resulted in the revocation of Defendant DARREN 's pre-trial release.

28  During Defendant DARREN's resulting incarceration, the *Chaker v. A* case was

---

Complaint                                                                    19

1   dormant.

2   g.  During his incarceration, Darren Chaker's mother Nicole Chaker appeared at

3   least once at a hearing in that case.

4   h.  Plaintiff is informed and believes, and based thereon alleges that in that interim

5   period Defendant DARREN was incarcerated. Also during that time, i.e., on or

6   about January 21, 2014, Plaintiff received at least one letter from Mr. Chaker that

7   appeared to have been sent via Defendant NICOLE. (**Exhibit 4, Submitted Under**

8   **Seal**).  The letter contained the following threat:

9   "You never considered the fact that due to your conduct your client may

10  suffer. I should remind you the First Amendment is a 2 way street and I

11  have the right to express my opinion as well."

12  i.  On February 2, 2014 Defendant NICOLE filed documents in the paternity case

13  on behalf Defendant DARREN, including executing a declaration in his name.

14  Within the letter to the Court attached to the declaration, Defendant NICOLE

15  repeats the implied threats to reveal Susan A's applications for government

16  benefits. (**Exhibit 5, Submitted Under Seal**).

17  j.  Because Mr. Chaker was designated a vexatious litigant, his case was dismissed

18  for his failure to obtain a pre-filing order.  Mr. Chaker has exhausted his appeals in

19  that matter.

20  40.  On or about September 18, 2014, during the pendency of the Paternity Case,

21  Plaintiff McMillan received an e-mail from Darren Chaker, a true and correct copy of

22  which is attached hereto as **(Under Seal) Exhibit 'B'.**   Within that letter, Mr. Chaker

23  threatens further actions against Plaintiffs unless he convinced his client Susan A to grant

24  him concessions in the paternity case.  Plaintiff has  excerpted the relevant portions below

25  (with redactions and substitutions to protect the privacy of third parties):

26  9/18/14

27  Time Sensitive – Reply Required by 8PM Today

28  Confidential Settlement Communication – California Evidence Code §
    1142

1  Dear Scott, S, and C,

2  This is a request to settle pending claims against C, and Susan A. First, allow me to clarify this letter is constitutionally protected communication. "

3  'As a general rule, even if subject to some exceptions, what you may do in a certain event you may threaten to do, that is, give warning of your intention

4  to do in that event, and thus allow the other person the chance of avoiding the consequences' "]. Equally well established is the fact that "[o]ne

5  legitimate purpose of a demand letter is to intimidate." (Subrin & Main, The Integration of Law and Fact in an Uncharted Parallel Procedural Universe

6  (2004) 79 Notre Dame L.Rev. 1981, 2003 (hereafter Subrin & Main).)

7  As you know the pending case concerning my son, L, Chaker v. A, San Diego Superior Court Case No. D543061 and, thankfully to Scott the case

8  was stayed, in lieu of filing a motion to dismiss – since I had no right to personally appear in the case while in custody. Scott, I do thank you for the

9  stay and that is why I never opposed the motion while in custody.

          * **

10  To keep it simple, here's my offer:
          * * *

11

12

13      * **I will remove all blogs I have control over concerning Scott or his firm, and am able to remove the complaintsboard.com posting and if

14  unable to remove pissedconsumer.com**, I will pay up to $500 to have SEO performed to push down the links as I know these sites continue to hurt the

15  practice. (I understand I have negative comments about me, however I do not need to impress clients with my reputation. **I can assure you at least

16  one client a year doesn't call due to reviews – costing you and your family money**.)

17      * No blogs concerning S or C's company, have been posted, but various items have been set to self-publish in the event I am unable to

18  access the blog and push back the self-publish date another two weeks.

19  In short I am agreeing to things a court would not order, but am trying to be amicable.

20  Scott, you once said to me "I win every time we go to court". I think you

21  mischaracterize what winning is to me. In court, it is not the court ruling. It's the time spent away from your office. Taking up your time and

22  associate's time. Taking food out of your kids mouth. Staying up late, or ignoring kids and wife while spending time on litigating the instant case.

23  Costing you clients – at least one person a year doesn't call you based on my blogs – which have been updated recently,

24  scott-mcmillan-law.blogspot.com. Your reputation and past performance, likely increases the likelihood of opposing counsel's decision to fight a

25  pending case longer - which costs you more time and money. **Out of court, I have a few more victories than you and will always prevail in that

26  respect, and win by having you and family spending money on cameras, watching the monitors, looking out the window, and drawing

27  drapes – of course there's no proof I have not done a thing nor do I admit such, but if you think I am responsible, indeed I win every day.**
          * * *

28

1   (**Exhibit 'B', Filed Under Seal**)

2    **Hacking Twitter and Unauthorized Access to Plaintiff McMillan's Paypal Account**

3       41.  Plaintiffs believe that Defendant DARREN  Chaker has attempted to hack into

4   Plaintiff's twitter and paypal accounts.  Specifically,

5       a. On October 22, 2014, Plaintiff McMillan received a notice from Paypal of

6       "unusual activity" on his account.  Plaintiff hadn't attempted to sign in to his

7       Paypal account at that time.  A true and correct copy of that email is attached

8       hereto as **Exhibit 'C'**.  Due to the timing of the notice, Plaintiff is informed and

9       believes that it was Darren Chaker that hacked into Plaintiff's account.

10      b. On November 19, 2014, Plaintiff received a notice of a "suspicious sign in

11      detected on [his] twitter account."  Plaintiff hadn't attempted to sign in to his

12      twitter account.  A true and correct copy of that email is attached hereto as **Exhibit**

13      **'D'**.  Due to the timing of the notice, Plaintiff is informed and believes that it was

14      Darren Chaker that hacked his account.

15      42.  Following that threat of September 18, 2014, Mr. Chaker began posting

16  information on the scott-mcmillan-attorney.blogspot.com site that he operated that,

17  among other things, Plaintiff had molested his daughter. The first such statement

18  appeared on Thanksgiving Day, i.e., Thursday, November 27, 2014.   A copy of that post

19  is attached hereto as **Exhibit 'E.'**   Plaintiff  had not authorized Defendants to use

20  Plaintiff's name in any manner.  Plaintiff had not molested his daughter.  That webpage

21  has since been removed.

22      43.  In order to improve the likelihood of the search engines indexing his site to

23  Plaintiff's name, Defendant DARREN optimized that page, **Exhibit 'E'**, for search

24  engines with "labels" including "4760-Nebo, attorney-sex-offender, el-

25  cajon-sex-offender, la-mesa-sex-offender. Rebecca-McMillan, scott-mcmillan-law,

26  www.mcmillanlaw.us."

27      44.  Mr. Chaker also operated a Blogger site at

28  http://mcmillanlawfirm.blogspot.com/.  Plaintiff had not authorized Defendant DARREN

1   to use the firm's name in this manner.  He published similarly false, scandalous, libelous

2   material on that site.

3       45.   On or about November 28, 2011, Defendant DARREN  Chaker posted on the

4   Blogger site at scott-mcmillan-attorney.blogspot.com, a post entitled "Maura Larkins

5   Linked to Sex Abuse."  Within that post Chaker repeats his false statements about

6   Plaintiff, and also recited a completely fabricated association between Plaintiff  and Ms.

7   Larkins, who is another individual with whom Mr. Chaker has conflict. A true and correct

8   copy of that post is attached hereto as **Exhibit 'G'**.

9   **Spoofing Emails**

10      46.   On December 3, 2014, Plaintiff received a "spoofed" or bogus email that

11  purported to have been sent from Plaintiff's own e-mail address "scott@mcmillanlaw.us"

12      a.   The email stated:

13      "Scott McMillan and family are child molesters per a recent report,
    http://scott-mcmillan-law.blogspot.com/2014/11/scott-mcmillan-
14  la-mesa.html"

15      b.   A true and correct copy of the email is attached as **Exhibit 'H.'**

16      c.   A true and correct copy of the email with the header is attached as **'I'.**

17  **Google Places**

18      47.   On December 4, 2014, a "Darren C." posted a 2 star review for the McMillan

19  Law Firm, APC on Google places, wherein he stated:

20
        "I wish I knew of his interests in children, http://scott-mcmillan-
21  law.blogspot.com/2014/11/scott-mc."

22      a.   A screen shot of Plaintiff's administration page for Google Places is attached

23  hereto as **Exhibit 'J'**.

24      b.   That post was later deleted.   In light of the timing of that e-mail, the use of the

25  name "Darren C.", and that the identical content was posted on his blogspot sites,

26  Defendant DARREN was the poster.

27      48.   Defendant DARREN. Chaker sent e-mails to many members of the local legal

28  community, accusing Plaintiff of molesting his  daughter.  A copy of one such email

Complaint             23

1    dated December 6, 2014 is attached hereto as **Exhibit 'K'**.  That e-mail was sent to

2    Andrew Griffin, an attorney for an opposing party in a bankruptcy case where Plaintiff

3    represented a creditor, who in turn, forwarded the e-mail to Plaintiff on December 8,

4    2014.

5         49.  On December 22, 2014, at 1:57 a.m., Defendant DARREN sent Plaintiff an e-

6    mail with the subject line "Pending Paternity Case". A copy of that email is attached

7    hereto as **Exhibit 'L.'**

8         50.  On December 23, 2014, at approximately 10:08 a.m., Plaintiff received an e-

9    mail from Defendant DARREN  Chaker entitled "Request to See Son."  A copy of that

10   email is attached hereto as **Exhibit 'M'.**

11        **Threats to E-mail Colleagues in the San Diego East County Community**

12        51.  On December 23, 2014, Plaintiff received an e–mail from Defendant

13   DARREN where he stated:

14        "Mr. McMillan, the reported conduct I have found is very improper and
         disgusting. I have been forced to notify numerous members of the bar about
15       my blog concerning your firm, most recently the Foothills Bar Association,
         and will start naming your daughter, I believe a former Ms. El Cajon, as the
16       likely victim. I hope you have ceased your conduct and notice to hundreds
         of people has done the public some good.
17
         Dear XXXXXX,
18
         Sex offender. As a member of the bar and likely parent, I would hope notice
19       of a report concerning La Mesa Attorney Scott McMillan, who also
         operates McMillan Academy of Law without a single applicant/graduate,
20       http://campus.lawdragon.com/schools/mcmillan-academy-of-law/ was
         reported to take part in sexual molestation of a minor. See,
21       http://scott-mcmillan-law.blogspot.com/2014/11/scott-mcmillan-la-mesa.ht
         ml
22
         The report provides great detail and hope you pass this email along, as I
23       have distributed it to 200 attorneys in San Diego. Scott McMillan is also a
         documented family friend of Kenneth Bourke who was also arrested for
24       child molestation – see report -
         http://scott-mcmillan-law.blogspot.com/2014/09/scott-mcmillan-molest-la-
25       mesa.html
         Happy Holidays to all.
26       Darren Chaker"

27        a.  A copy of that email is attached hereto as **Exhibit 'N'**.

28        52.  On or about June 8, 2015, Google removed the scott-mcmillan-attorney.

_____

Complaint                                                           24

1    blogspot.com site, which defendants had created without Plaintiffs authorization.

2        53.  On or about June 16, 2015, Google removed the mcmillanlawfirm.

3    blogspot.com site, which defendants had created without Plaintiffs authorization.

4                          **COMPLAINTSBOARD.COM**

5        54.  Since 2011 and through the present, a person that Plaintiff McMillan believes

6    to be Defendant DARREN  based on identical content posted on his website and Mr.

7    Chaker's statements above of September 18, 2014 that he is "**able to remove the**

8    **complaintsboard.com posting**", has posted derogatory and defamatory statements about

9    Plaintiff on the Internet at:

10   http://www.complaintsboard.com/complaints/the-mcmillan-law-firm-la-mesa-c571484.ht

11   ml#comments

12       a.  A true and correct copy of that post as published is attached hereto as **Exhibit**

13       **'O.'**

14       b.  The poster is identified as "Tracy Law Houston."  Cynthia Tracy, Attorney at

15       Law, P.C., a family law attorney in Houston, Texas, formerly represented Nicole

16       Mateo in the custody and child support case against Darren Chaker.

17       55.  Despite the removal of the blogspot sites, on August 23, 2015, a poster using

18   the name and search term "scott-mcmillan-la-mesa" posted the following as a comment to

19   the post at http://www. complaintsboard.com/complaints/the-mcmillan-law-firm-la-mesa-

20   c571484.html#comments

21       a.  "I located the police report about Scott McMillan, La Mesa, Attorney reportedly
         molesting children. I also found he operates his own law school out of a small, run
22       down office near the train tracks, but in the same breath says he's a leading law
         firm. With this reputation, I cannot imagine such is true."
23       b.  Attached as an image to the comment, he re-posted his November 27, 2014

24       post, i.e., the content at Exhibit 'B' herein, the repost of which is attached at

25       **Exhibit 'P.'**

26       56.  On September 16, 2015, a poster using the name and search term

27   "mcmillan-law-firm-la-mesa" posted the following as a comment to the post at

28   http://www.complaintsboard.com/complaints/the-mcmillan-law-firm-la-mesa-c571484.ht

ml#comments

    a. "Scott McMillan, McMillan Law Firm, sued the hardworking Sheriff over his Facebook Account. The law settled for about nothing. It is unfortunate law enforcement need to pay out money to defend such nuisance lawsuits, when that money should be going to hiring more officers, and buying newer equipment. With about 60 loses in the Court of Appeal docket, astonishing he is still in office."

    b. That case – *Karras v. Gore*, U.S. D.C. So. Dist. Cal., 14cv2564-BEN-KSC – was settled for a payment of attorneys fees plus the token $20. Thus, the above statement is false, as the Sheriff paid attorneys fees and agreed to change practices.

    c. Attached as an image to the comment, he posted a partial news article, a copy of which is attached as **Exhibit 'Q.'**

    57. Also on September 16, 2015, a poster using the name and search term "mcmillan-law-firm-la-mesa" posted the following as a comment to the post at http://www.complaintsboard.com/complaints/the-mcmillan-law-firm-la-mesa-c571484.ht ml#comments

    a. "McMillan Academy of Law, run by Scott McMillan appears to have not had a single student go through his law firm, where the class is shared in the same space as the attorney, oh and also Dean McMillan (also an attorney working out of same office. According to LawDragon, no one has ever graduated or even applied to that law school."

    b. Attached as an image to the comment, he posted a webpage print-out, a copy of which is attached as **Exhibit 'R.'**

    58. Also on September 16, 2015, a poster using the name and search term "mcmillan-law-firm-la-mesa" posted the following as a comment to the post at http://www.complaintsboard.com/complaints/the-mcmillan-law-firm-la-mesa-c571484.ht ml#comments

    a. "McMillan sued by Yelp! for posting his own reviews. Read the story in detail, sad set of circumstances, especially when you need to create your own reviews." In truth and in fact, Plaintiffs had not posted their "own reviews." Plaintiffs had represented Julian McMillan, who had been sued by Yelp.

    b. Attached as an image to the comment, he posted a news article, a copy of which is attached as **Exhibit 'S.'** Plaintiff did not post his own reviews. Indeed, in that

1    case, Plaintiff was not accused by Yelp of posting comments. Rather, Plaintiff

2    represented another attorney, Julian McMillan, in the case. Chaker edited out the

3    part that would have otherwise explained that Plaintiff was not the Defendant

4    DARREN  in that action, but rather just the attorney.  Contrary to Defendants'

5    suggestion, Plaintiff was partially successful at the time of the posting of the

6    article. Plaintiff won a motion to change venue, and counsel for Yelp paid

7    Plaintiffs attorneys fees.

8        59.  Most recently, on February 9, 2016, a poster using the name and search term

9    "mcmillan-law-firm" posted the following as a comment to the post at

10   http://www.complaintsboard.com/complaints/the-mcmillan-law-firm-la-mesa-c571484.ht

11   ml#comments

12       a.  "Williams v. The Superior Court of San Diego County/Nordstrom, Inc., Court
         of Appeal Case Number D068765. shows Scott McMillan, McMillan Law Firm in
13       Las Mesa, LOST ANOTHER case. This one where Nordstrom is vigorously
         defending itself against allegations of attorney, law professor, and law school dean
14       (Yes, Scott McMillan is all three of those titles since he runs a law school,
         McMillan Academy of Law, out of two story office near the train tracks. Despite
15       not a single student has graduated, or appears to have attended, no one has taken
         the bar exam either. Nonetheless, this is another example of Scott McMillan losing
16       another case - although he claims to be a "leading" San Diego attorney."

17       b.  Attached as an image to the comment, the docket from , a copy of which is

18       attached as **Exhibit 'T.'**

19       c.  This statement is also false, as the court of appeals allowed the appeal to

20       proceed in light of the law regarding final, appealable orders.

21       d.  Further, the Court entered an order of stipulated reversal of such appeal.

22       60.  On or about March 27, 2016, Plaintiff McMillan identified a post using

23   Plaintiff TMLF's logo and created in a manner that suggested it was posted by Plaintiff or

24   someone else from his  firm.  Plaintiff did not authorize Defendant DARREN or anyone

25   else to use the McMillan Law Firm's logo in this manner.  The latest entry was posted on

26   or about December 17, 2015.  Specifically, a poster using the name and search term

27   "scott-mcmillan-law-firm-la-mesa" setup a bogus page entitled "The McMillan Law Firm

28   Customer Care Service" using The McMillan Law Firm, APC logo at

1  http://www.complaintsboard.com/the-mcmillan-law-firm-b121166

2      a.   A true and correct copy of that page is attached hereto as **Exhibit 'U.'**

3  Notably, the bogus "customer care service" repeats the same false allegations as

4  previously made by Chaker. i.e., that Plaintiff molested his daughter.

5      b.  On December 8, 2015 – Plaintiff's birthday – Mr. Chaker emailed Plaintiff the

6  following statement:

7  Good afternoon Scott,

8  I have been unable to locate a TM/Copyright for the domain
   mcmillanlaw.us or for your law firm with the USPTO or U.S. Copyright
9  Office. If there is such, kindly advise prior to 7PM today. If I do not receive
   a response, it will be presumed there is no such TM/Copyright. Prior to
10 posting additional material, I will extend this courtesy to you.

11 Also, I have updated the material on
   http://scott-mcmillan-law.blogspot.de/p/scott-mcmillan-attorney-la-mesa.ht
12 ml

13 I have also copied Maura Larkins on this email.

14 Best regards,

15 Darren"

16     c.  A true and correct copy of the email dialog that occurred December 8, 2014, are

17 attached as **Exhibit 'V'.**

18     **d.**  Plaintiffs had not authorized the use of their name, the logo, or creation of a

19 customer care site on Complaintsboard.com.

20     61.  Following Mr. Chaker's posts to complaintsboard.com, individuals solicited

21 Plaintiffs purporting to be able to have the ability to remove the posts.  They wanted to

22 charge Plaintiffs  $4,800 to remove defendants posts.

23                            **PISSEDCONSUMER.COM**

24     62.  Since 2011 and through the present and as late as February, 2016, a person

25 using a pseudonym, that Plaintiff McMillan believe to be Defendant DARREN, or the

26 other defendnats, based on the content and Defendant DARREN's statements above of

27 September 18, 2014 referring to the "pissedconsumer.com" website, has posted

28 derogatory and defamatory statements about Plaintiff on the Internet at the website

---

domain "PISSEDCONSUMER.COM":

63. A Google search of "scott mcmillan site:pissedconsumer.com" returns some 3200 results. Most of those results appear to have been posted in 2015 and 2016. Plaintiffs believe that defendants have posted all of those entries. They have done so either anonymously or using some variation of the key words: "The Mcmillan Law Firm - La-Mesa-Attorney-Scott-McMillan"

64. Unlike Complaintsboard.com, Pissedconsumer.com does not remove the information posted by persons such as Defendant DARREN. Specifically, the terms of service of Pissedconsumer states:

"5. Removal of Information
By posting information on PC, *you understand and agree that the material will not be removed even at your request*. You shall remain solely responsible for the content of your postings on PC."

http://www.pissedconsumer.com/tos.txt.

65. The Pissedconsumer.com post that Chaker started on November 3, 2011, is attached hereto as **Exhibit 'W'**. Within that post he misrepresents Plaintiff's win/loss ratio.

66. On August 23, 2015, Defendant DARREN made the false allegation, accusing Plaintiff of child molestation, a copy is attached hereto as **Exhibit 'X'**.

67. On December 4, 2015, Defendant DARREN posted a review entitled "The Mcmillan Law Firm - Scott McMillan Law Firm - La Mesa - Malpractice" which falsely accuses Plaintiff of malpractice, attached hereto as **Exhibit 'Y.'** Chaker falsely states that an appeal in *Williams v. Nordstrom, Inc.* was to be dismissed, and termed it "malpractice." In fact, the appeal was not dismissed and ultimately resulted in a stipulated order of reversal.

68. On February 11, 2016, Defendant DARREN posted a review "The Mcmillan Law Firm - Scott McMillan Law Firm La Mesa," which is attached hereto as **Exhibit 'Z.'** Chaker made statements that were knowingly false as he stated that the "the Court of Appeal DENIED the petition after forcing the defendant incur huge amounts of attorney fees." In fact, the defendant did not file a response. Chaker had no basis to suggest that

attorneys fees were incurred resulting from the filing of the petition.  Chaker further falsely stated Plaintiff's record as "almost 80 under his belt and a hand full of wins."

**Current Posts**

69.  To date Defendant DARREN continues to post material on his website in a manner that is intended to optimize his websites to respond to search engine indexes with his  name.  Specifically, he continues to use the tags "mcmillan-associates-la-mesa", "scott-mcmillan-la-mesa":

70.  On March 29, 2016, Plaintiff accessed http://darren-chaker.blogspot.com/search/label/scott-mcmillan-la-mesa and retrieved the attached article, a true and correct copy of which is attached hereto as **Exhibit 'AA'** which incorporates the use of the tags.

71.  On March 29, 2016, Plaintiff accessed http://darrenchaker.us/ and retrieved the attached article bearing a date of December 8, 2015, a true and correct copy is attached hereto as **Exhibit 'BB'**, which incorporates the use of the tags.

72.  On March 29, 2016, Plaintiff McMillan accessed http://darrenchaker.org/ and retrieved the attached article bearing a date of January 23, 2016, a true and correct copy is attached hereto as **Exhibit 'CC'**, which incorporates the use of the tags.

**Defendant DARREN's Use of Pseudonyms**

73.  Plaintiff is informed and believe that Darren Chaker also uses the pseudonym "Luis Perdomo."  On March 29, 2016, Plaintiff accessed https://plus.google.com/1048021677 37415969641/posts/HySqAKY7jYR and retrieved the attached page, a true and correct copy is attached hereto as **Exhibit 'DD'**, incorporating the same allegations and artwork published by Defendant DARREN Darren Chaker.

**Defendant DARREN admits that he knows that he is barred
from posting defamatory material.**

74.  On January 22, 2016, Defendant DARREN  Chaker appeared for a judgment debtors exam. He had been previously ordered to produce the names of the domains that

1    he holds. On the record in the *Chaker v. Mateo* case, he admitted that he had such logins

2    and that his use of those could result in the revocation of his supervised release.

3    [Transcript, p. 9] Defendant DARREN was also ordered to provide the identifying

4    information as to Internet domains that he owns. A copy of relevant portions of the

5    transcript is attached hereto as **Exhibit 'EE'**.

6      75. Defendant DARREN did not appear as ordered on March 11, 2016, in the

7    Superior Court to provide the information. As recited in the transcript of January 22,

8    2016, Defendant DARREN was aware that he was required to appear at the continued

9    examination. [**Exh. EE, page 31**]

10      76. On March 11, 2016 Defendant DARREN failed to appear for his continued

11    judgment debtor's examination. Judge Taylor issued a bench warrant for his appearance,

12    which remains outstanding. A copy of that bench warrant is attached hereto as **Exhibit**

13    **'FF'.**

14      77. On March 11, 2016 the Superior Court in the *Chaker v. Mateo* case has

15    ordered the appointment of a receiver to take possession of Mr. Chaker's personal

16    property, including his domain names for ultimate sale in order to satisfy the judgment.

17    Despite orders to do so, Defendant DARREN has not complied with the orders of the

18    Superior Court.

19      **Defendant DARREN has created false accounts with Plaintiff's name**

20      78. Defendant DARREN created accounts using Plaintiff's name and the name of

21    the McMillan Law Firm. One of those accounts is on Slideshare.net, and reflected on

22    **Exhibit 'GG'.** Plaintiff surmise that he has prepared that account in order to upload his

23    defamatory material that he intends to falsely attribute to him. Plaintiff believes that

24    Defendant DARREN made that account because it is associated by Slideshare with an

25    account under the name of David Gingras, another attorney who successfully represented

26    a victim of Defendants and whom Chaker has also targeted for harassment.

27      **Defendants have inflicted damage upon both Plaintiffs and their clients.**

28      79. Attorneys rely upon their reputation in the community and before the courts

that they practice in.  Defendant DARREN's outrageous lies which he has published have

injured Plaintiffs' practice.  Opposing counsel in other, unrelated cases have mentioned

the existence of the posts. Clients have mentioned the existence of the posts and their

content.   Plaintiff McMillan believes that jurors that Plaintiff has tried cases in front of

have accessed the posts and taken them into account in determining the cases.  Thus,

Defendants threats made on September 18, 2014 have borne out. Plaintiffs have invested

substantial time in developing Plaintiff McMillan's reputation as a zealous advocate for

his  clients, and remaining consistent to the duties of an attorney as set forth in Business

and Professions Code section 6068, and particularly that set forth in subsection (h):

> "Never to reject, for any consideration personal to himself or herself, the
>
> cause of the defenseless or the oppressed."

(Bus. & Prof. Code 6068(h).)

80.  Susan A. has been, prior to representation by Plaintiffs herein, defenseless and

oppressed by Defendants.

81.  Wendy Mateo was defenseless and was oppressed by Defendants.

82.  Plaintiff understood that Defendants could resort to attacks of Plaintiff

McMillan's  character when Plaintiff continued to represent Susan A despite Defendants

threats to engage in libel against him. Defendants then performed on their threats, and has

engaged in the forewarned attacks against Plaintiff – and later Plaintiff's family members

– following January 21, 2014, and September 18, 2014.

**FIRST CLAIM FOR RELIEF**

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1962(c)

(Against All Defendants)

83.  Plaintiffs repeat and reallege the averments contained in paragraphs 1-82 as

though fully set forth herein.

84.  On July 22, 2013 Defendants DARREN and VANIA used threats and violence

in an attempt to intimidate a witness to the Paternity Case.

85.  On January 21, 2014, Defendants DARREN and NICOLE  committed

1  extortion under 18 U.S.C. § 1961(1), by threatening to reveal alleged reporting

2  discrepancies to tax authorities contained in private and confidential tax information that

3  he had obtained regarding her.  On January 21, 2014, Defendant DARREN was

4  incarcerated outside the State of California, and was unable to send the extortionate letter,

5  which was sent by certified mail, from San Diego.

6  86.  On or about September 14, 2014, while Defendant DARREN was under

7  home release Bureau of Prisons custody, Defendant DARREN committed extortion under

8  18 U.S.C. § 1961(1) by threatening to stalk and defame Plaintiff if he continued to

9  represent Susan A in the Paternity Case consistent with Plaintiff's professional duties

10  owed to his client. Defendant DARREN  was engaged in threatening behavior, i.e, to

11  defame and harass Plaintiff to deprive Plaintiff of his peace of mind, his enjoyment of the

12  proceeds of the goodwill attributable to his name and reputation, if Plaintiff did not

13  consent to Defendant DARREN 's unlawful demands.

14  87.  Defendants are an "enterprise" under U.S.C. § 1961(4).

15  88.  Defendants have engaged in a pattern of racketeering activity as that term is

16  used in U.S.C. § 1961(5).

17  89. Defendants have violated 18 U.S.C. § 1962, which states:

18  "(c) It shall be unlawful for any person employed by or associated with any

19  enterprise engaged in, or the activities of which affect, interstate or foreign

20  commerce, to conduct or participate, directly or indirectly, in the conduct of

21  such enterprise's affairs through a pattern of racketeering activity or

22  collection of unlawful debt."

23  90.  The above conduct caused injury to Plaintiffs' property and business. It made

24  it difficult for Plaintiffs to obtain clients and to recruit employees, the conduct impaired

25  Plaintiffs' reputation in the legal community,  caused lost income that Plaintiffs expected

26  to be paid, and were not, and caused Plaintiff McMillan vexation and diverted his

27  attention from his personal and professional obligations.

28  91.  The above violations were made in furtherance of financial gain.

92. Defendants had a discernable structure apart from the predicate acts, i.e., they are biologically related.

93. The acts of Defendants herein were intended to unlawfully compel the targets of the Defendants to take actions which were against their own interests, in order to avoid the dissemination of information that was false, that was private, and that would stigmatize the Defendants' targets, including Plaintiffs herein.

94. The acts of Defendants as described herein, were willful and malicious in that Defendant DARREN intentionally and deliberately retained monies owed to Plaintiff, and in order to avoid the negative consequences of Plaintiffs' advocacy, Defendants and each of them engaged in extra-judicial conduct intended to dissuade Plaintiff from representing his clients Wendy Mateo and Susan A.

95. As a result of Defendants bad acts and as Defendants' objective in committing such acts, Plaintiffs were damaged including but not limited to damages from losing prospective clients and the revenue expected from them, Plaintiffs' trademarks are impaired as a result, and other damages. Plaintiffs' damages were severe and extensive, resulting in losses to Plaintiffs in an amount according to proof at trial.

96. Plaintiffs requests damages in an amount not less than $2,000,000, in an amount to be trebled and attorneys fees according to 18 U.S.C. § 1964(c).

97. Plaintiff requests injunctive relief to prevent prevent and restrain violations of section 1962 by issuing appropriate orders, including, but not limited to: ordering Defendants divest themselves of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of Defendants, including, but not limited to, prohibiting Defendants from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons, including Plaintiff herein.

98. Plaintiffs requests that the Court revoke Defendant DARREN Chaker's supervised release, and order him to remove the posts, or execute such documents that

1  would compel the removal of those posts, all of which he has published in contempt of
2  the Court's order for supervised release.

3     99.  Plaintiffs requests that the Court also issue an order to Darren Chaker
4  requiring him to request the removal of his posts from the Internet forums in a form that
5  may be published to the third parties, i.e., Pissedconsumer.com and
6  Complaintsboard.com, that have published defendants' harrassing and defamatory posts.
7  Plaintiff request that the Court make a finding that such posts are contrary to the
8  conditions of Defendant DARREN's supervised release and thereby unlawful.  With such
9  a finding, and an order that Chaker remove those post, those sites would willingly do so.

10    100.  Plaintiffs requests that the Court also issue an order with findings such that
11  can be published to those search engines that have indexed the posts, i.e., Google, Yahoo,
12  and Bing, and findings that such posts were placed by Defendant DARREN contrary to
13  the Judgment in this case and the Court's terms of Defendant DARREN 's supervised
14  released.   And that Defendant DARREN be ordered to request the removal of such posts
15  from such search indices. Plaintiff's hope and expectation is that those third parties would
16  be persuaded to remove the posts from the respective index.

17                    **SECOND CLAIM FOR RELIEF**

18        (Against All Defendants, Racketeer Influenced and Corrupt Organizations Act,

19                      18 U.S.C. § 1962(d))

20    101.  Plaintiffs repeat and reallege the averments contained in paragraphs 1-82,
21  and 84 through 100 as though fully set forth herein.

22    102.  Defendants knowingly agreed to facilitate a scheme that included the
23  operation of a RICO enterprise.

24    103.   The conspiracy was inter-familial.

25                    **THIRD CLAIM FOR RELIEF**

26        (Civil Extortion - Against Defendants DARREN and NICOLE)

27    104.  Plaintiffs repeat and reallege the averments contained in paragraphs 1-82,
28  and 84 through 100, and 102 through 103, as though fully set forth herein.

                                Complaint                              35

105.  Defendants conduct was unlawful as a matter of law, in that Defendant DARREN had been forbidden from types of expressive conduct by the terms of his Pre-Trial release, the terms of his confinement and Bureau of Prisons regulations, and the terms of his supervised release.  Defendant NICOLE was aware of these restrictions.

106.  Extortion is the obtaining of property from another, with his consent, or the obtaining of an official act of a public officer, induced by a wrongful use of force or fear, or under color of official right. (Penal Code § 518.)

107.  Defendants attempted to obtain property from Plaintiffs, i.e., the right to continue to practice law consistent with the California Business and Professions Code, and the California Rules of Professional Conduct, with respect to the advocacy on behalf of Susan A..

108.  Defendants attempted to obtain property from Plaintiffs, i.e., the right to collect on a debt due and owing by virtue of the fee award in the *Chaker v. Mateo* action.

109.  Defendants attempted to obtain property from Plaintiffs, i.e., the right to continue to collect and publish cases through the website FEARNOTLAW.COM.

110.  Defendants attempted to obtain an official act of a public officer, i.e., a judge, through Plaintiffs' clients acquiesence.

111.  Defendants wrongfully attempted to induce fear as that term is used in Penal Code section 519, which provides in pertinent part under the heading "threats":

"Fear, such as will constitute extortion, may be induced by a threat of any of the following:

1.  To do an unlawful injury to the person or property of the individual threatened or of a third person.

2.  To accuse the individual threatened, or a relative of his or her, or a member of his or her family, of a crime.

3.  To expose, or to impute to him, her, or them a deformity, disgrace, or crime.

4.  To expose a secret affecting him, her, or them.

* * *

(Penal Code § 519)

112.  Defendants threats were both express, and were implied by the contents of the various writings and the surrounding circumstances.

113.  Defendants transmitted the threats comprising extortion.

114.  The Statutes of Limitations regarding the bringing of the present claims have been tolled due to Defendants' absence from the State of California according to California Code of Civil Procedure section 351:

> "If, when the cause of action accrues against a person, he is out of the state, the action may be commenced within the term herein limited, after his return to the state, and if, after the cause of action accrues, he departs from the state, the time of his absence is not part of the time limited for the commencement of the action."

(Cal. Civ. Proc. Code § 351.)

115.  As a direct and proximate result of the acts of Defendants as alleged in the Third Cause of Action above, Plaintiffs were injured.  Plaintiff McMillan suffered economic damage, expense, and humiliation, including, but not limited to, emotional upset, anxiety, mental suffering, and damage to his reputation.  Plaintiff McMillan also suffered loss of time.  Plaintiff McMillan is therefore entitled to compensatory damages in an amount which will compensate for him all the detriment proximately caused  by Defendants' acts, whether foreseeable or not,  according to proof at time of trial, in accordance with Civ. Code § 3333.

116.  Plaintiff TMLF was damaged by the loss of goodwill resulting from the false statements published by Defendants' "making good" on the threats.  Plaintiff TMLF was damaged by the lost advertising expenses which were negated by the false statements published by defendants.

117.  Defendants' conduct was malicious, oppressive and/or fraudulent within the meaning of California Civil Code § 3294, thereby entitling Plaintiffs to an award of punitive damages in an amount according to proof at time of trial.

- o O o -

Complaint

# PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

1.  For an Order enjoining Defendants, their agents, and those acting in concert or conspiracy with them, temporarily during the pendency of this action and permanently thereafter from and further violation of 18 U.S.C. §§ 1961 et seq.;

2.  For compensatory damages according to proof;

3.  For an award of treble damages pursuant to 18 U.S.C. § 1964;

4.  For attorneys' fees pursuant to 18 U.S.C. § 1964 or as otherwise provided by law;

5.  For punitive and exemplary damages pursuant to Cal. Civil Code § 3294 or as otherwise provided by law;

6.  For an award of costs of suit;

7.  For an award of pre-judgment interest and post-judgment interest in the maximum amount permitted by law;

8.  For such other and further relief as the Court deems just and proper.

Dated: August 24, 2016                    The McMillan Law Firm, A.P.C.

                                          /s/ Scott A. McMillan

                    BY:     _____

                                          Scott A. McMillan
                                          Attorney, In Propria Persona, and on behalf of
                                          Plaintiff The McMillan Law Firm, A.P.C.

# DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all causes of action so determinable.

Dated: August 24, 2016                    The McMillan Law Firm, A.P.C.

                                          /s/ Scott A. McMillan

                    BY:     _____

                                          Scott A. McMillan
                                          Attorney, In Propria Persona, and on behalf of
                                          Plaintiff The McMillan Law Firm, A.P.C.

# EXHIBIT B

1   Scott A. McMillan, CBN 212506
    **THE MCMILLAN LAW FIRM, APC**
2   4670 Nebo Drive, Suite 200
    La Mesa, California 91941-5230
3   (619) 464-1500 x 14
    Fax: (619) 828-7399
4
    Attorney for Plaintiff,
5   Scott A. McMillan and The McMillan Law Firm, APC
6
7
8                   UNITED STATES DISTRICT COURT
9                 SOUTHERN DISTRICT OF CALIFORNIA
10
11  SCOTT A. MCMILLAN, an individual,        Civil Case No.: 3:16-cv-2186-WQH-
    THE MCMILLAN LAW FIRM, APC, a            MDD
12  California professional corporation,
                                             First Amended Complaint for
13          Plaintiffs,                       1.    Racketeer Influenced and
                                             Corrupt Organizations Act (18
14          vs.                              U.S.C. §§ 1962(c))
                                             2.    Racketeer Influenced and
15  DARREN D. CHAKER an individual,          Corrupt Organizations Act (18
    and as trustee of PLATINUM              U.S.C. §§ 1962(d))
16  HOLDINGS GROUP TRUST, dba                3.    Civil Extortion
    COUNTER FORENSICS; NICOLE
17  CHAKER, an individual, and as trustee of         DEMAND FOR JURY TRIAL
    THE NICOLE CHAKER REVOCABLE
18  LIVING TRUST, U/A dated August 18,
    2010, VANIA CHAKER, an individual
19  and as beneficiary of The Island
    Revocable Trust under Declaration of
20  Trust dated June 2, 2015, MARCUS
    MACK as trustee of The Island
21  Revocable Trust under Declaration of
    Trust dated June 2, 2015,
22
            Defendants.
23
24
25
26
27
28

Plaintiffs allege as follows:

**JURISDICTION**

1. This Court has jurisdiction over the subject matter of the causes of action in this complaint by virtue of:

a. federal question jurisdiction pursuant to 28 U.S.C. § 1331, involving an action pursuant to 18 U.S.C. § 1964(c), the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"). This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §1332;

b. supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), involving claims that are so related to claims in the action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution; and

2. This Court has jurisdiction over the person of the Defendant Darren Chaker because Defendant transacts business within this judicial district, and Defendant is amenable to service of process within the meaning of Federal Rule of Civil Procedure Rules 4(e), 4(f), and 18 U.S.C. § 1965(b).

3. Further, this District Court, the Hon. Larry A. Burns, District Judge presiding, has jurisdiction over Defendant because Defendant is under an order of supervised release according to the terms of sentence of Defendant's conviction for bankruptcy fraud, *United States v. Chaker*, U.S.D.C., So. Dist. California, Case No. 3:15-cr-07012-LAB.

4. Venue is proper in this district pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391 because Defendants transacts business in this district or, alternatively, this district is where a substantial part of the events or omissions giving rise to the claim occurred.

**THE PARTIES**

5. Plaintiff, SCOTT A. MCMILLAN (hereinafter referred to as "Plaintiff McMillan"), is a resident of the State of California, County of San Diego. Plaintiff is a California licensed attorney, and is engaged in intra-state, and interstate commerce in the course of his practice. Plaintiff McMillan also operates a law school, the McMillan

1    Academy of Law, a Caliornia corporation, which is unaccredited, but registered with the

2    Committee of Bar Examiners, State Bar of California. Plaintiff McMillan has a property

3    interest in the right to practice his profession as a licensed attorney.

4        6.  Plaintiff, THE MCMILLAN LAW FIRM, APC, a California professional

5    corporation, (hereinafter referred to as "Plaintiff TMLF") has its principal place of

6    business in the County of San Diego, State of California. Plaintiff McMillan operates

7    Plaintiff TMLF.  TMLF has a property interest in its "goodwill" as such term is defined at

8    California Business and Professions Code sections 14100 and 14102.

9        7.  Defendant, DARREN CHAKER (a.k.a. Darren Del Nero a.k.a. Darren Del

10   Nero-Chaker a.k.a. Darren Shaker, a.k.a. D. David Hunter) (hereinafter referred to as

11   "Defendant DARREN"), is presently a resident of the State of California, County of San

12   Diego. Defendant DARREN conducts business through and holds assets as trustee in

13   PLATINUM HOLDINGS GROUP TRUST, a self-settled trust.  Plaintiff is further

14   informed and believes that Defendant DARREN conducts business under the pseudonym

15   or doing-business-as "COUNTER FORENSICS." Defendant DARREN  was deemed a

16   vexatious litigant in Superior Court of California, County of San Diego Case Nos. 591421

17   (December 2, 1997) and GIC757326 (June 22, 2001).

18       8.  Defendant VANIA CHAKER, also know as Valentina Chanel,  (hereinafter

19   referred to as "Defendant VANIA") is presently a resident of the State of California,

20   County of San Diego, and is Defendant's Darren's sister.  On one or more occasions,

21   VANIA has participated in the acts set forth herein, providing assistance to Defendant

22   DARREN in committing predicate acts. Plaintiff is informed and believes that Defendant

23   VANIA conducts business through and holds assets as beneficiary in a self-settled trust,

24   which shall be referred to herein as THE ISLAND REVOCABLE TRUST, dated June 2,

25   2005. Defendant Marcus Mack is sued solely in his capacity as Trustee of the THE

26   ISLAND REVOCABLE TRUST, dated June 2, 2005.

27       9.  Defendant NICOLE CHAKER  (hereinafter referred to as "Defendant

28   NICOLE"), is the mother of Defendant DARREN and Defendant VANIA. On one or

more occasions, Defendant NICOLE has participated in the acts set forth herein, providing assistance to Defendant DARREN in committing predicate acts. Plaintiff is informed and believes that Defendant NICOLE conducts business through and holds assets as trustee in a trust, which shall be referred to herein as THE NICOLE CHAKER REVOCABLE LIVING TRUST, U/A dated August 18, 2010. Defendant NICOLE is sued both invidiually and as trustee of said trust.

## DEFENDANTS' ENTERPRISE AND PREDICATE ACTS

10. Plaintiffs are informed and believe, and based thereon allege that Defendant VANIA is an attorney, currently licensed to practice law in the State of California. Defendant VANIA has lived at various times in California and the Pennsylvania. Defendant VANIA, as a profession, both individually on her own account and to assist Defendants DARREN and NICOLE, engaged in litigation based on meritless or outright false claims, typically relying upon the Fair Credit Reporting Act, 15 U.S.C. § 1681, and on at least one occasion bringing a claim for personal injury, deriving income from such fraudulent activity. As part of her pattern of racketeering activity, Defendant VANIA has attempted and sometimes succeeded in collecting unlawful debts, i.e., a claim based on false or meritless legal claims, and derived income from such false claims and unlawful threats of suit. For instance in *Vania Chaker v. Monarch Group Management, Inc.*, U.S.D.C. So. Dist. of Cal., Case No. 06cv1534W(AJB), Defendant VANIA brought a class action complaint for violation of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692, et seq. and the California Rosenthal Fair Debt Collection Practices Act, arising from her landlord's service of a three day notice to pay rent or quit on her. Defendant VANIA has brought three other cases based on allegations of violations of the Fair Debt Collection Practices Act, e.g., *Vania Chaker v. Collection Company of America*, U.S.D.C. So. Dist. of Cal., Case No. 05cv390 BEN(AJB) [unpaid T-mobile cellular phone charges]; *Vania Chaker v. Allied Interstate, Inc.*, U.S.D.C. So. Dist. of Cal., Case No. 05cv0212 LAB(RBB)[unpaid DirectV bills]; *Vania Chaker v. CAMCO*, U.S.D.C. So. Dist. of Cal., Case No. 04cv1735 W(RBB).

11.  Plaintiffs are informed and believe, and based thereon allege that Defendant VANIA did not solely file such suits in the Southern District of California, but also assisted in cases in the Central District of California, appearing as attorney in the suit brought by Defendant DARREN *subnom* (Darren Del Nero) and Defendant NICOLE alleging defendant's violations of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692, et seq..  Specifically, Defendants DARREN and NICOLE brought suit against Midland Credit Management Inc., in the case of *Del Nero & Chaker, et al., v. Midland Credit Management Inc*., U.S.D.C. Cen. Dist. of Cal., Case No. 2:04-cv-01040-ABC-SH. Defendant DARREN  and his attorneys were sanctioned $155,979.09 after the court found that Defendant DARREN  brought suit in bad faith and for the purpose of harassment.  (*Del Nero v. Midland Credit Management Corp. et al*., 2:04-cv-01040-ABC-SH.(Attorneys fee award later vacated against Chaker's counsel.) The Court issued an order to show cause re contempt for Defendant VANIA's conduct during the jury trial, and barred her from the courtroom during the remainder of the trial. The court's basis for the order was that Defendant VANIA attempted to aid a witness in answering counsel's questions. [ECF 91.] Defendant VANIA also represented Defendant DARREN *subnom* (Darren Del Nero) in  *Darren Del Nero v. Reliable Adjustment Bureau Inc et al*, U.S.D.C. Cen. Dist. of Cal., Case No. 2:04-cv-00969-FMC-JWJ, another case alleging violations of 15 U.S.C., § 1681.  In each of those instances, in a likely effort to avoid Defendant DARREN's prefiling order as a vexatious litigant, Defendant VANIA initially appeared on Defendant DARREN's behalf, then substituted out to allow Defendant DARREN to prosecute the case *in propria persona*.  Defendant VANIA engaged in such transitory representation of Defendant DARREN to assist him avoiding the bar of the prefiling orders placed resulting from his designation as a vexatious litigant.

12.  As to Defendant DARREN, Plaintiffs are informed and believe, and based thereon allege that Defendant DARREN holds himself out to the public as operating a business called COUNTER FORENSICS.  The COUNTER FORENSICS web page described its services as follows:

1  "Founded in 2006, the origination of CounterForensics.com can be traced to

2  the cyber security and forensics background of our consultant, Darren

3  Chaker. Mr. Chaker (www.DarrenChaker.com) previously worked in law

4  enforcement, and as a security contractor in the Middle East. More recently,

5  Mr. Chaker managed electronic discovery (e-discovery) for a leading

6  multinational law firm conducting large-scale digital forensic

7  investigations, and provided electronic discovery services involving civil,

8  corporate and criminal matters. Mr. Chaker also implemented security

9  enforcement protocols and systems with Military Grade Communications

10  for use between international offices to discuss sensitive matters. Mr.

11  Chaker has additional expertise in matters involving:

12  • Software piracy;

13  • Sexual harassment via e-mail, instant messaging and other forms of electronic

14  communications;

15  • Monitoring employee activity;

16  • Employee sabotage;

17  • Intrusion detection;

18  • Recovery of deleted files;

19  • Lost password recovery and cracking of locked files;

20  • Discovery of hidden and deleted e-mails and pictures;

21  • Internet usage and unauthorized software installed on a company machine; and

22  Removal of viruses, pictures, software and other data items which may be hidden

23  from the user.

24  See **Exhibit 6**,

25  https://web.archive.org/web/20150208142616/http://www.counterforensics.com/

26  (Accessed on August 23, 2016.)

27  13.  At various times relevant to the facts stated herein, Defendant DARREN has

28  resided in California, Nevada and Texas, and engaged in transactions and acts affecting

interstate commerce:

14.  Defendant DARREN has, as a profession, engaged in litigation based on meritless or outright false claims, typically relying upon the Fair Credit Reporting Act, 15 U.S.C. § 1681, and on at least one occassion bringing a claim for personal injury, deriving income from such fraudulent activity.  As part of his pattern of racketeering activity, Defendant DARREN has attempted and sometimes succeeded in collecting unlawful debts, i.e., a claim based on false or meritless legal claims, and derived income from such false claims and unlawful threats of suit.

15.  In another 2005 case, attorney's fees of $42,934.84 were awarded against Defendant DARREN for filing a baseless lawsuit. (*Chaker v. Richland* (C.D. Cal. 2005) CV 05-7851-RSWL; *See also Chaker v. Imperial Collection Services* (C.D. Cal. 2004) CV 04-2728-PA (alleging claims under the FDCPA found to be without merit); and *Del Nero v. Riddle & Associates PC, et al.* (C.D. Cal. 2003) CV 03-6511-GHK (same).) In a 2007 case, Defendant DARREN and his attorneys were sanctioned $155,979.09 after the court found that Defendant DARREN brought suit in bad faith and for the purpose of harassment.  (*Del Nero v. Midland Credit Management Corp. et al*. (C.D. Cal. 2007) CV 04-1040 GPS.)  In a 2009 case, Defendant DARREN was ordered to pay $136,316.14 for bad faith due to Defendant DARREN falsely claiming identity theft.  (*Chaker v. Nathan Enterprises Corp.* (C.D. Cal.  2009)  CV 04-2726-RSWL.)

16.  Defendant DARREN filed other suits based allegations of violations of Fair Credit Reporting Act, 15 U.S.C. § 1681, i.e., *Darren Chaker-Del Nero v. Afni, Inc.*, U.S.D.C. Cen. Dist. of Cal., Case No. 2:08-cv-03405-ODW-SS; *Darren D Chaker v. First City Bank Credit Union*, U.S.D.C. Cen. Dist. of Cal., Case No. 2:04-cv-02727-GPS-RZ; *Darren D Chaker v. Factual Data Corporation*, U.S.D.C. Cen. Dist. of Cal., Case No.  2:04-cv-02729-JFW-AJW; *Darren D Chaker v. European Auto House*, U.S.D.C. Cen. Dist. of Cal., Case No. 2:04-cv-02731-R-PJW; *Darren Chaker v. Arrow Financial Services* LLC, U.S.D.C. Cen. Dist. of Cal., Case No. 2:04-cv-07050-FMC-FMO.

17.  Defendants have a pattern of attacking the attorneys which oppose them, i.e., in *Darren D Chaker v. Felipa R. Richland, et al.*, U.S.D.C. Cen. Dist. of Cal., Case No. 2:05-cv-07851-RSWL-PLA, Defendant DARREN sued attorney Richland and her law office, and her client Nathan Enterprises Corp. for alleged violations of the  Fair Credit Reporting Act, 15 U.S.C. § 1681.  Plaintiff is informed and believes and based thereon alleges that during her defense of the both cases, Ms. Richland was stalked, her property vandalized.  Ultimately, Ms. Richland and her client prevailed, with Defendant DARREN held liable for costs and attorneys fees. [ECF 25, 26.]

18.  Defendant DARREN, subnom *Darren Chaker Del-Nero*, brought additional suits in the United States District Court for the District of Nevada based on allegations of violation of the Fair Credit Billing Act, 15 U.S.C. § 1666, e.g.,  *Chaker-Delnero v. Nevada Federal Credit Union, et al*, U.S.D.C. District of Nevada., Case No., 2:06-cv-00008-BES-GWF; for violations of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692, *Chaker-Delnero v. Butler & Hailey, et al*, U.S.D.C. District of Nevada., Case No. 2:06-cv-00022-KJD-LRL, *Chaker-Delnero v. Clark County Collection Service, LLC*, U.S.D.C. District of Nevada, 2:06-cv-00123-JCM-PAL, and *Chaker-Delnero v. Collectco*, U.S.D.C. District of Nevada, 2:06-cv-00244-RLH-GWF.  In each of these cases, docket entries reflect a voluntary dismissal. Plaintiff is informed and believes that in those cases, the Defendants paid a sum to "buy their peace" rather than to spend attorneys fees litigating the case, despite the lack of the merit to Defendant DARREN's claims.

19.  Defendant DARREN, subnom *Darren Chaker*, brought additional suit in the United States District Court for the Southern District of Texas (Houston) based on allegations of violation of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692, *Chaker v. The CMI Group*,  U.S.D.C. Southern District of Texas (Houston), 4:07-cv-01802F [Time Warner Communications.] In that case, the docket entries reflect a voluntary dismissal. Plaintiff is informed and believes that in that case, the Defendants paid a sum to "buy its peace" rather than to spend attorneys fees litigating the case,

1    despite the lack of the merit to Defendant DARREN's claims.

2        20. Defendant DARREN, subnom *David Hunter*, brought additional suit in the

3    United States District Court for the District of Arizona, entitled *Hunter v. Receivables*

4    *Performance Management, LLC*, U.S.D.C. District of Arizona, 2:10-cv-00665-MHM

5    [Sprint cellular phone service]. Within that suit Defendant DARREN attached letters

6    claiming an address at 11881 S. Fortuna Road, #223, Yuma, AZ 85367 [Exhibit B, ECF

7    1-3.] In that case, the docket entries reflect a voluntary dismissal. Plaintiff is informed

8    and believes that in that case, the Defendant paid a sum to "buy its peace" rather than to

9    spend attorneys fees litigating the case, despite the lack of the merit to Defendant

10   DARREN's claims.

11                                     **SEX TRAFFICKING**

12       21. Plaintiff is informed and believes and based thereon alleges that Defendant

13   DARREN also engaged, within the last ten years, in human trafficking, and derived

14   income from such activity.

15       22. Defendant DARREN's record of arrests and prosecutions (RAP) reveals

16   arrests for insufficient funds/check, attempting to prevent/dissuade victim/witness,

17   receiving known stolen property, vehicle theft, first degree burglary, grand theft, and

18   being in possession of an assault weapon. He was convicted of invading/looking into a

19   tanning booth (1997), and possession of an assault weapon (2006). Such crimes were

20   punishable by a year or more incarceration.

21                                    **FALSE STATEMENTS**

22       23. Defendant DARREN also obtained mortgages on real estate through false

23   statements, and thereafter rather than paying the mortgages, Defendant DARREN kept the

24   rents from such properties to fund his enterprises, and when his mortgagors sought to

25   recover their real property collateral, Defendant DARREN filed false bankruptcy petitions

26   in order to stall or avoid the foreclosure and continue to collect rental income.

27       a. Defendant DARREN used the ill-gotten proceeds of his enterprise to fund his

28       lifestyle and further his illegal activities including through the purchase of

computers, paying for travel, development of various domain names and online
presences to the detriment of Plaintiff herein.

b.  In order to dissuade those members of law enforcement and attorneys in private
practice who would challenge Defendant DARREN's criminal conduct, including
Plaintiff herein, Defendant DARREN used various means and threats, including
harassment, stalking, defaming others, vandalizing property, hacking computers,
spoofing emails, and identity theft.

c.  Defendant DARREN has used the proceeds of his racketeering activity to
purchase computers, equipment, and Internet access services in order to engage in
his and Defendants VANIA and NICOLE's frauds, and efforts to dissuade those
who oppose their illegal conduct, including Plaintiff herein.

d.  On March 22, 2012, Defendant DARREN was indicted in *United States v.
Darren David Chaker*, Case No. 4:12CR00168-001, and thereafter granted pre-
trial release under supervision with U.S. Pretrial Services.  The Indictment,
attached as **Exhibit 1**, alleges a portion of Defendants' scheme, which Plaintiff
incorporates by reference here.

e.  While on supervision with U.S. Pretrial Services, through false statements to a
United States officer, he violated his terms of release by failing to disclose to U.S.
Pretrial Services and the Court the fact that he procured a U.S. Passport using the
alias "D. David Hunter."

f.  On December 17, 2013, Defendant DARREN suffered a Judgment in a
Criminal Case in the case entitled *United States v. Darren David Chaker*, Case No.
4:12CR00168-001, in the United States District Court for the Southern District of
Texas (Houston), for Bankruptcy Fraud, 18 U.S.C § 157(3).  On April 14, 2016,
that conviction was affirmed by the United States Court of Appeals for the Fifth
Circuit, case number 14-20026, as reported in  *United States v. Chaker*, 820 F.3d
204, 206 (5th Cir. 2016). He was sentenced to a total term of 15 months, and was
additionally sentenced to three years supervised release, as part of the special

conditions of supervision was ordered:

"The defendant shall provide the probation officer access to any requested financial information. If a fine or restitution amount has been imposed, the defendant is prohibited from incurring new credit charges or opening additional lines of credit without approval of the probation officer.

The defendant is prohibited from possessing a credit access device, such as a credit card, unless first authorized by the probation officer.

The defendant is required to participate in anger management counseling as deemed necessary and approved by the probation officer. The defendant will incur costs associated with such program, based on ability to pay as determined by the probation officer.

The defendant is required to participate in a mental health program as deemed necessary and approved by the probation officer. The defendant will incur costs associated with such program, based on ability to pay as determined by the probation officer.

The defendant may not stalk and/or harrass other individuals to include, but not limited to, posting personal information of others or defaming a person's character on the internet."

(ECF 312, 4:12CR00168-001)

24. On November 7, 2016, the district court in *United States v. Darren David Chaker*, U.S. District Court, Southern District of California, Case No. 3:15-cr-07012-LAB, struck the condition "The defendant may not stalk and/or harrass other individuals to include, but not limited to, posting personal information of others or defaming a person's character on the internet."

## DEFENDANTS' HISTORY OF EXTORTION AND WITNESS TAMPERING

25. Defendants rely on keeping their past conduct, criminal convictions, lawsuits, and generally bad reputation out of public view. To accomplish this the defendants regularly use pseudonyms, attempt to seal documents and proceedings which may alert the public to information about Defendants that if known, would provide a defense or would affect a fact-finder's view on their credibility.

26. Defendant DARREN falsely, and in order to gain credibility with unknowing law enforcement and laypersons, holds himself out as a former law enforcement officer or government security employee, including at various times claiming an "Ex-cop" or to be an employee of the "Diplomatic Security Service."

27. **Victim Zaya**: Plaintiffs are informed and believe that, in accordance with Defendants' common plan and scheme, Defendant DARREN committed one or more acts of extortion against Nadine Zaya:

a. Plaintiff is informed and believes, and based thereon alleges, that Defendant DARREN formerly had a dating relationship with Nadine Zaya. At some point between August and October 2002, Defendant DARREN and Zaya, traveled from Southern California to Scottsdale, Arizona. Petitioner took Zaya to a gun store, where he purchased the Rifle, a licensed reproduction of a Fabrique Nationale FAL (FN-FAL) battle weapon. At the gun store, petitioner told Zaya he once owned "the exact same gun" but his mother had taken it away from him.

b. After Defendant DARREN  purchased the Rifle, he made Zaya take pictures of him with it. He also made Zaya pose with the Rifle. Defendant DARREN then took Zaya to a firing range, where he fired the Rifle and showed her how to shoot, hold, and load it. When Zaya held the Rifle, Defendant DARREN reassured her, "It's okay. Look, it's fun. . . . You're going to be okay. I'm an ex-cop. I know how to shoot a gun." Shortly thereafter, petitioner and Zaya returned to California with the Rifle.

c. On October 14, 2002, Laguna Beach police officers visited Defendant DARREN's apartment to investigate allegations that he had sexually exploited a minor. A police officer entered the apartment, knocked on a bedroom door, and identified himself as a police officer. After some delay, Defendant DARREN emerged from the bedroom and told the officer the room belonged to him. He refused, however, to permit the police officers to search it. Defendant DARREN called Zaya after the police officers left the apartment. He expressed concern that the fully-assembled Rifle would be considered an illegal weapon.  Defendant DARREN told Zaya he was going to remove parts from the Rifle to "make it legal" and asked her to keep the parts.  The next day, the police officers returned to Defendant DARREN's  apartment with a search warrant. During the search, an

officer found the Rifle in petitioner's bedroom closet. He noticed the Rifle had a detachable magazine and a pistol grip, but that it was missing its bolt carrier group. The officers also found unloaded magazines and pictures of petitioner posing with the Rifle at a firing range. In the pictures, the Rifle contained the bolt and the magazine.

d.  On November 18, 2002, the District Attorney of Orange County filed a felony complaint charging defendant with one count of possession of an assault weapon (Penal Code § 12280(b))  and one count of receiving stolen property (Penal Code § 496, subd. (a)). Shortly after the People filed the complaint, defendant began writing letters to the court. In these letters, defendant claimed the police had illegally seized privileged documents from his apartment. He also criticized the judges presiding over his case and the attorneys assigned to represent him. On July 30, 2003 -- after defendant had written six letters to various judges -- the court ordered defendant to stop. The court notified defendant it would "not take action on personal communications from a represented defendant when his case is pending before this court." (*People v. Chaker*, No. G037362, 2008 Cal. App. Unpub. LEXIS 999, at *4-5 (Ct. App. Feb. 4, 2008).)

e.  Plaintiffs are informed and believe that in July 2005, the Superior Court of California, County of San Diego issued a restraining order against Darren D. Chaker pursuant to the Domestic Violence Protection Act (Fam. Code, § 6200 et. seq. (the Act)), requiring him to stay away from Nadine Zaya for a five-year period. He appealed from that order on various grounds, contending in part that Zaya's evidence was insufficient to support its issuance; the Court of Appeals of California, Fourth District, Division One, however, rejected his arguments and affirmed the order.

f.  On June 15, 2006, Zaya filed a request for a temporary restraining order under the Act against Chaker.  In her request, Zaya stated under penalty of perjury that Chaker made threatening calls to her and told her he would harm her or her family

if she testified in a pending criminal matter against him. (*Zaya v. Chaker* (Oct. 19, 2007, D049874) [nonpub. opn.].)

g.   Thereafter, on or about July 19, 2006, and then again on or about December 8, 2006, Defendant DARREN sent nude photos of Zaya to Zaya's brother's employer, which had been taken by Defendant DARREN.

28.   **Victims Frantz:** Plaintiffs are informed and believe that the following is true regarding Defendant DARREN's efforts to extort San Diego attorneys James Frantz, Jodi Frantz, and Charles Kim:

a.   On or about December 2010, Jodi and James Frantz retained Charles Kim to represent them in a civil protective action. Jodi Frantz sought a restraining order against Defendant DARREN, in *Hautaluoma v. Chaker*, San Diego Superior Court Case No. 717794.

b.   Prior to the extortion attempt against James Frantz, Jodi Frantz, and Charles Kim, Plaintiffs are informed and believe that Defendants engaged in acts of vandalism to the property of James Frantz and Jodi Frantz, which they believed to have been perpetrated and intended by Defendant DARREN to intimidate James Frantz and Jodi Frantz and send a message.

c.   In the preceding months to the extortion attempt, Jodi Franz was the victim of financial fraud in the summer of 2010. Ms. Frantz had caused two of her then current credit cards to be de-activated by the issuers due to fraud alerts. The recent event happened in the week preceding the extortion attempt, while she was on vacation. Although Ms. Frantz believed Chaker is responsible for the fraud, she had no evidence.  Ms. Franz reported the thefts to her credit card issuers. She had unauthorized charges on credit accounts from Bank of America, Union Bank, and Nordstrom.  In the summer of 2010, Mr. Frantz also had his identity stolen, and used for credit card fraud. Although Mr. Frantz believed Chaker was responsible for the fraud, he had no evidence.

d.   On December 22, 2010, at 2:54 a.m., Defendant DARREN caused a fax to be

1    sent to the office of Charles Kim. The fax included an inappropriate reference to

2    the death of James Patrick Frantz II (the son of James and Jodi Frantz). Also,

3    Defendant DARREN faxed a complete copy of a County of San Diego

4    Investigative report #10-01098 which documented the medical examiners death

5    investigation in that case. The fax  referenced the social security number of Jodi

6    Frantz and Dr. Christine Miller who treated Jodi Frantz. The fax contained threats

7    to publish the social security numbers and "embarrassing" medical information if

8    Attorney Kim did not agree to Chaker's demands. Also included was an apparent

9    threat to file complaints with the state bar association against Charles Kim and

10   James Frantz if they did not comply with his demands.

11       29. **Victims Mateo**: Nicole Mateo was in a relationship with Defendant

12   DARREN, which resulted in the birth of a daughter.  Plaintiff is informed and believes

13   that following the efforts to obtain child support, Defendant DARREN initiated a

14   campaign of harassment against Wendy Mateo and her husband Steven Mateo.  Steven

15   Mateo is a deputy constable with the Harris County Constable Office, in Spring, Texas.

16   The Mateo's hired an attorney by the name of Cynthia Tracy to address Defendant

17   DARREN's conduct.  In response, Defendant DARREN initiated a harassment campaign

18   that included sending sexually explicit photos of Nicole Mateo to the employers of the

19   Mateos, obtaining the email passwords of various Mateo accounts, and sending emails

20   containing sexually explicit material through such accounts.  The Mateo's attorney,

21   Cynthia Tracy, was targeted in a blog post that also made false and defamatory statements

22   about her.  Ultimately, Attorney Tracy declined to continue to represent the Mateos due to

23   the aggravation and the expense of dealing with Defendant DARREN.

24

25          **DEFENDANTS' EFFORTS DIRECTED AT PLAINTIFF HEREIN**

26       30.  Plaintiff operates a website called FEARNOTLAW.COM, and has operated

27   that site since 2005.  Fearnotlaw.com maintains tens of thousands of unpublished

28   decisions from California's court of appeals.  The unpublished decisions were taken

---

*16-cv-2186*                      First Amended Complaint                      15

directly from the court of appeals website and posted *en masse*, at various times. There was no intentional targeting of Darren Chaker or any other subject of the decisions.

31. Defendant DARREN in this case initially contacted Plaintiff to demand removal of decisions posted concerning his cases that had been decided by the Court of Appeals. One of those decisions was *Zaya v. Chaker*, California Court of Appeal Case No. D049874. In *Zaya v. Chaker*, the Court of Appeal affirmed a trial court's imposition of a five year restraining order against Mr. Chaker imposed pursuant to the Domestic Violence Protection Act, Fam. Code, 6200 *et. seq.* Defendant DARREN Chaker's letter to Plaintiff on November 23, 2010 contained Ms. Zaya's original petition, which alleged that Mr. Chaker posted bogus sex-service advertisements on Craigslist falsely attributed to Ms. Zaya, and had threatened to post compromising photos and videos of Ms. Zaya online if she testified against him in his felony assault-weapon case. Plaintiff did not remove any of the appellate decisions from Fearnotlaw.com.

32. Defendant DARREN thereafter initiated a campaign of harassment and vandalism against Plaintiff McMillan and his family. Usually during the holidays, Plaintiff's family's cars would be vandalized. Plaintiff's brother had the words "fearnotlaw" scratched on the trunk of his BMW. In another instance, the driver's side mirror of Plaintiff's brother's truck was smashed. On that instance, a neighbor that heard the noise, saw a black SUV driving rapidly away. Defendant DARREN owns a Black Dodge Durango. Plaintiff is informed and believes, and based thereon alleges, that Defendant VANIA Chaker accompanied Defendant DARREN during that vandalism.

33. Other members of Plaintiff McMillan's family were attacked as well. Plaintiff's mother's car had acid poured on the trunk. Plaintiff's father's car had its tires slashed. After each event, Mr. Chaker would send Plaintiff an e-mail wishing him "happy holidays" or making some other statement. It was clear to Plaintiff that Darren Chaker was acknowledging the vandalism by his timing of his emails, and attempting to send a message and intimidate Plaintiff.

34. At one point, on or about November 23, 2010, Defendants came to Plaintiff's

1   home and delivered a letter to his mail box signed by Defendant DARREN.  The letter

2   once again demanded that Plaintiff remove the posts concerning Defendant DARREN 's

3   cases from Fearnotlaw.com.  Thereafter, Defendant DARREN  sent Plaintiff McMillan e-

4   mails referring to his dogs – which indicated to Plaintiff that he had come to his house

5   and looked into his back yard.

6        35.  Because of Defendants' activities, Plaintiff McMillan and his family members

7   installed security cameras around their houses.  Plaintiff McMillan also installed security

8   cameras on the outside of the commercial building in La Mesa where Plaintiff TMLF has

9   its offices.

10        36.  Defendant DARREN  also began posting matters about Plaintiffs on the

11   Internet.  Initially, he used his own domain names.  Later, he began using Plaintiff's name

12   under Google's "blogspot" service.  Through the years, clients have contacted Plaintiff

13   McMillan to let him know that they have seen the Defendant DARREN 's posts

14   concerning Plaintiff on the Internet.  Chaker's posts were troubling to Plaintiffs' clients.

15        37.  Postings on Internet gripe sites and consumer review sites began appearing,

16   the posters made negative comments, but used a pseudonym.  Plaintiffs are informed and

17   believe based upon the timing and the circumstances that Defendants were posting those

18   comments.

19        38.  Because Defendant DARREN  had posted about Plaintiff on the Internet,

20   others that had conflicts with Defendant DARREN  contacted Plaintiff for advice and

21   representation in dealing with Defendant DARREN .  Plaintiff has provided that

22   representation pro-bono, and advanced the expenses.

23        39.  Plaintiff ultimately represented Wendy Mateo, one of the Defendant

24   DARREN's victims, in *Chaker v. Mateo*, San Diego Superior Court case,

25   37-2010-00094816-CU-DF-CTL, Hon. Timothy B. Taylor, Judge presiding.  Wendy

26   Mateo is the mother of Nicole Mateo.  Plaintiff is informed and believes that Nicole

27   Mateo had a brief relationship with Darren Chaker, which resulted in the birth of their

28   daughter.  Plaintiff began representing Ms. Wendy Mateo, the grandmother of Darren

Chaker's child during the pendency of Darren Chaker's appeal of the judgment in the *Chaker v. Mateo* case. That appeal resulted in the published decision of *Chaker v. Mateo*, 209 Cal. App. 4th 1138 (2012). Following that appeal, the Superior Court awarded Plaintiffs attorneys fees. Those attorneys fees awarded have been the subject of judgment debtor examinations and orders from Judge Taylor as discussed below.

40. Thereafter, Plaintiff began representing *Susan A.* in a paternity case filed in the San Diego Superior Court entitled *Chaker v. A* (the "Paternity Case"). Ms. A had also been in a relationship with Mr. Chaker. Ms. A. sets out her experience with Chaker in her declaration dated July 11, 2013, a true and correct copy of which is attached hereto as **Exhibit 'A' (Under Seal)**. Mr. Chaker claims that Ms. A.'s child, L, is the product of that relationship. Ms. A. disputes that Mr. Chaker is the father, biological or otherwise, of her child L.

a. On July 12, 2013, Plaintiff McMillan filed a document in the Paternity Case, which included statement from Leesa Fazal, State of Nevada Office of the Attorney General, who had provided her confidential investigative report for submission in the Paternity Case, signed on July 11, 2013. (**Exhibit 2, Submitted Under Seal**).

b. On July 22, 2013, at 8:45 a.m., Officer Fazal appeared in San Diego Superior Court, according to Plaintiff's subpoena to testify in the Paternity Case regarding the facts alleged in the above mentioned Declaration. Officer Fazal and Plaintiff McMillan appeared before the Superior Court, Judge Gerald Jessop, presiding. The court did not have time to hear the case in the morning, and ordered Ms. Fazal and Mr. Chaker back to court later that afternoon. As they exited the court, Defendant DARREN followed Ms. Fazal and Plaintiff McMillan a short distance, and walked at a quick pace with his mobile telephone in his hand and appeared to take video of them while laughing loudly. At that time, Ms. Fazal had not yet testified, and Defendant DARREN's behavior was purposefully threatening and an apparent effort to intimidate Officer Fazal, prior to her testimony.

1    c. When Plaintiff McMillan and Officer Fazal returned they were accompanied by

2    licensed private investigator Richard Rivero.  Following the hearing Defendant

3    VANIA approached Richard Rivero in a rapid manner, within a couple feet, and

4    asked him what he was doing there and demanded his name.  Although he had not

5    been called to testify, Rivero responded that he was a witness, he would speak to

6    Defendant VANIA in the presence of court personnel, and attempted to pass her.

7    Defendant VANIA blocked his and Plaintiff McMillan and Officer Fazal's exit, so

8    Plaintiff, Rivero and Fazal returned to the court room, and Defendant VANIA

9    followed.  Thereafter, the courtroom deputy ordered Defendant VANIA to leave,

10   and to leave Rivero, Plaintiff McMillan and Ms. Fazal alone.  The courtroom

11   deputy allowed Rivero, Plaintiff McMillan and Ms. Fazal, and shortly therafter,

12   confirmed that Defendant VANIA was not awaiting them outside the courtroom.

13   d.  Plaintiff McMillan, Officer Fazal and Rivero exited the courtroom, then entered

14   the elevator to descend to the lobby.  After exiting the elevator and entering the

15   lobby.  Defendant DARREN blocked the doorway exit and in a loud and

16   commanding voice demanded that Officer Fazal be arrested for being armed.  He

17   wanted to place her under citizen's arrest.   Officer Fazal was escorted to the side

18   while the  deputies determined that there were no grounds to arrest.   While they

19   waited, the Defendant VANIA entered the location and brushed by Rivero as she

20   entered the elevator.

21   e.  Rivero left the building with Officer Fazal, Rivero then noted Defendant

22   VANIA's black SUV following him at a high speed.  Rivero pulled to the side.

23   Defendant VANIA stopped her SUV in the middle of the street adjacent to

24   Rivero's vehicle.  Rivero felt that Defendant VANIA was attempting to intimidate

25   him. Rivero noticed Defendant DARREN hunched down in the passenger's seat so

26   as to not be identified.  Such chase was intended, and did intimidate Officer

27   FAZAL in that it gave her additional concern regarding participating in the legal

28   proceedings.

f.  On July 24, 2013, and thereafter during the pendency of the Paternity Case, Plaintiff provided the United States materials and information regarding Defendant DARREN, specifically that Defendant DARREN had a "go kit" which included a passport under his identity "David Hunter". Which information Plaintiff understands resulted in the revocation of Defendant DARREN 's pre-trial release. During Defendant DARREN's resulting incarceration, the *Chaker v. A* case was dormant.

g.  During his incarceration, Darren Chaker's mother, Nicole Chaker appeared at least once at a hearing in that case.

h.  Plaintiff is informed and believes, and based thereon alleges that, in that interim period Defendant DARREN was incarcerated, also during that time, i.e., on or about January 21, 2014, Plaintiff received at least one letter from Mr. Chaker that appeared to have been sent via Defendant NICOLE. (**Exhibit 4, Submitted Under Seal**).  The letter contained the following threat:

"You never considered the fact that due to your conduct your client may

suffer. I should remind you the First Amendment is a 2 way street and I

have the right to express my opinion as well."

i.  On February 2, 2014 Defendant NICOLE filed documents in the paternity case on behalf Defendant DARREN, including executing a declaration in his name. Within the letter to the Court attached to the declaration, Defendant NICOLE repeats the implied threats to reveal Susan A's applications for government benefits. (**Exhibit 5, Submitted Under Seal**).

j.  Because Mr. Chaker was designated a vexatious litigant, his case was dismissed for his failure to obtain a pre-filing order.  Mr. Chaker has exhausted his appeals in that matter.

41.  On or about September 18, 2014, during the pendency of the Paternity Case, Plaintiff McMillan received an e-mail from Darren Chaker, a true and correct copy of which is attached hereto as **(Under Seal) Exhibit 'B'.**  Within that letter, Mr. Chaker

threatens further actions against Plaintiffs unless he convinced his client Susan A to grant

him concessions in the paternity case. Plaintiff has excerpted the relevant portions below

(with redactions and substitutions to protect the privacy of third parties):

9/18/14

Time Sensitive – Reply Required by 8PM Today

Confidential Settlement Communication – California Evidence Code § 1142

Dear Scott, S, and C,

This is a request to settle pending claims against C, and Susan A. First, allow me to clarify this letter is constitutionally protected communication. " 'As a general rule, even if subject to some exceptions, what you may do in a certain event you may threaten to do, that is, give warning of your intention to do in that event, and thus allow the other person the chance of avoiding the consequences' "]. Equally well established is the fact that "[o]ne legitimate purpose of a demand letter is to intimidate." (Subrin & Main, The Integration of Law and Fact in an Uncharted Parallel Procedural Universe (2004) 79 Notre Dame L.Rev. 1981, 2003 (hereafter Subrin & Main).)

As you know the pending case concerning my son, L, Chaker v. A, San Diego Superior Court Case No. D543061 and, thankfully to Scott the case was stayed, in lieu of filing a motion to dismiss – since I had no right to personally appear in the case while in custody. Scott, I do thank you for the stay and that is why I never opposed the motion while in custody.

* **

To keep it simple, here's my offer:
* * *

    **\* I will remove all blogs I have control over concerning Scott or his firm, and <u>am able to remove the complaintsboard.com posting and if unable to remove pissedconsumer.com</u>,** I will pay up to $500 to have SEO performed to push down the links as I know these sites continue to hurt the practice. (I understand I have negative comments about me, however I do not need to impress clients with my reputation. **I can assure you at least one client a year doesn't call due to reviews – costing you and your family money.**)

    \* No blogs concerning S or C's company, have been posted, but various items have been set to self-publish in the event I am unable to access the blog and push back the self-publish date another two weeks.

In short I am agreeing to things a court would not order, but am trying to be amicable.

Scott, you once said to me "I win every time we go to court". I think you mischaracterize what winning is to me. In court, it is not the court ruling. It's the time spent away from your office. Taking up your time and associate's time. Taking food out of your kids mouth. Staying up late, or

ignoring kids and wife while spending time on litigating the instant case. Costing you clients – at least one person a year doesn't call you based on my blogs – which have been updated recently, scott-mcmillan-law.blogspot.com. Your reputation and past performance, likely increases the likelihood of opposing counsel's decision to fight a pending case longer - which costs you more time and money. **Out of court, I have a few more victories than you and will always prevail in that respect, and win by having you and family spending money on cameras, watching the monitors, looking out the window, and drawing drapes – of course there's no proof I have not done a thing nor do I admit such, but if you think I am responsible, indeed I win every day.**

\* \* \*

(**Exhibit 'B', Filed Under Seal**)

**Hacking Twitter and Unauthorized Access to Plaintiff McMillan's Paypal Account**

42. Plaintiffs believe that Defendant DARREN Chaker has attempted to hack into Plaintiff's twitter and paypal accounts. Specifically,

a. On October 22, 2014, Plaintiff McMillan received a notice from Paypal of "unusual activity" on his account. Plaintiff hadn't attempted to sign in to his Paypal account at that time. A true and correct copy of that email is attached hereto as **Exhibit 'C'**. Due to the timing of the notice, Plaintiff is informed and believes that it was Darren Chaker that hacked into Plaintiff's account.

b. On November 19, 2014, Plaintiff received a notice of a "suspicious sign in detected on [his] twitter account." Plaintiff hadn't attempted to sign in to his twitter account. A true and correct copy of that email is attached hereto as **Exhibit 'D'**. Due to the timing of the notice, Plaintiff is informed and believes that it was Darren Chaker that hacked his account.

43. Following that threat of September 18, 2014, Mr. Chaker began posting information on the scott-mcmillan-law.blogspot.com site that he operated that, among other things, Plaintiff had molested his daughter. The first such statement appeared on Thanksgiving Day, i.e., Thursday, November 27, 2014. A copy of that post is attached hereto as **Exhibit 'E.'** Plaintiff had not authorized Defendants to use Plaintiff's name in any manner. Plaintiff had not molested his daughter. That webpage has since been removed.

44. In order to improve the likelihood of the search engines indexing his site to

Plaintiff's name, Defendant DARREN optimized that page, **Exhibit 'E'**, for search engines with "labels" including "4760-Nebo, attorney-sex-offender, el-cajon-sex-offender, la-mesa-sex-offender. Rebecca-McMillan, scott-mcmillan-law, www.mcmillanlaw.us."

45.   Mr. Chaker also operated a Blogger site at http://mcmillanlawfirm.blogspot.com/.  Plaintiff had not authorized Defendant DARREN to use the firm's name in this manner.  He published similarly false, scandalous, libelous material on that site.

46.   On or about November 28, 201[4], Defendant DARREN  Chaker posted on the Blogger site at scott-mcmillan-law.blogspot.com, a post entitled "Maura Larkins Linked to Sex Abuse."  Within that post Chaker repeats his false statements about Plaintiff, and also recited a completely fabricated association between Plaintiff  and Ms. Larkins, who is another individual with whom Mr. Chaker has conflict. A true and correct copy of that post is attached hereto as **Exhibit 'G**'.

**Spoofing Emails**

47.   On December 3, 2014, Plaintiff received a "spoofed" or bogus email that purported to have been sent from Plaintiff's own e-mail address "scott@mcmillanlaw.us"

a.   The email stated:

> "Scott McMillan and family are child molesters per a recent report, http://scott-mcmillan-law.blogspot.com/2014/11/scott-mcmillan-la-mesa.html"

b.   A true and correct copy of the email is attached as **Exhibit 'H.'**

c.   A true and correct copy of the email with the header is attached as **'I'.**

**Google Places**

48.   On December 4, 2014, a "Darren C." posted a 2 star review for the McMillan Law Firm, APC on Google places, wherein he stated:

> "I wish I knew of his interests in children, http://scott-mcmillan-law.blogspot.com/2014/11/scott-mc."

a.   A screen shot of Plaintiff's administration page for Google Places is attached

1    hereto as **Exhibit 'J'**.

2    b.  That post was later deleted.   In light of the timing of that e-mail, the use of the

3    name "Darren C.", and that the identical content was posted on his blogspot sites,

4    Defendant DARREN was the poster.

5    49.  Defendant DARREN. Chaker sent e-mails to many members of the local legal

community, accusing Plaintiff of molesting his  daughter.  A copy of one such email

6

7    dated December 6, 2014 is attached hereto as **Exhibit 'K'**.  That e-mail was sent to

8    Andrew Griffin, an attorney for an opposing party in a bankruptcy case where Plaintiff

9    represented a creditor, who in turn, forwarded the e-mail to Plaintiff on December 8,

10   2014.

11   50.  On December 22, 2014, at 1:57 a.m., Defendant DARREN sent Plaintiff an e-

12   mail with the subject line "Pending Paternity Case". A copy of that email is attached

13   hereto as **Exhibit 'L.'**

14   51.  On December 23, 2014, at approximately 10:08 a.m., Plaintiff received an e-

15   mail from Defendant DARREN  Chaker entitled "Request to See Son."  A copy of that

16   email is attached hereto as **Exhibit 'M'.**

17   **Threats to E-mail Colleagues in the San Diego East County Community**

18   52.  On December 23, 2014, Plaintiff received an e–mail from Defendant

19   DARREN where he stated:

20   "Mr. McMillan, the reported conduct I have found is very improper and
     disgusting. I have been forced to notify numerous members of the bar about
21   my blog concerning your firm, most recently the Foothills Bar Association,
     and will start naming your daughter, I believe a former Ms. El Cajon, as the
22   likely victim. I hope you have ceased your conduct and notice to hundreds
     of people has done the public some good.
23
     Dear XXXXXX,
24
     Sex offender. As a member of the bar and likely parent, I would hope notice
25   of a report concerning La Mesa Attorney Scott McMillan, who also
     operates McMillan Academy of Law without a single applicant/graduate,
26   http://campus.lawdragon.com/schools/mcmillan-academy-of-law/ was
     reported to take part in sexual molestation of a minor. See,
27   http://scott-mcmillan-law.blogspot.com/2014/11/scott-mcmillan-la-mesa.ht
     ml
28
     The report provides great detail and hope you pass this email along, as I

1   have distributed it to 200 attorneys in San Diego. Scott McMillan is also a
    documented family friend of Kenneth Bourke who was also arrested for
2   child molestation – see report -
    http://scott-mcmillan-law.blogspot.com/2014/09/scott-mcmillan-molest-la-
3   mesa.html
    Happy Holidays to all.
4   Darren Chaker"

5       a. A copy of that email is attached hereto as **Exhibit 'N'**.

6       53. On or about June 8, 2015, Google removed the scott-mcmillan-attorney.

7   blogspot.com site, which defendants had created without Plaintiffs authorization.

8       54. On or about June 16, 2015, Google removed the mcmillanlawfirm.

9   blogspot.com site, which defendants had created without Plaintiffs authorization.

10                          **COMPLAINTSBOARD.COM**

11      55. Since 2011 and through the present, a person that Plaintiff McMillan believes

12  to be Defendant DARREN  based on identical content posted on his website and Mr.

13  Chaker's statements above of September 18, 2014 that he is "**able to remove the**

14  **complaintsboard.com posting**", has posted derogatory and defamatory statements about

15  Plaintiff on the Internet at:

16  http://www.complaintsboard.com/complaints/the-mcmillan-law-firm-la-mesa-c571484.ht

17  ml#comments

18      a. A true and correct copy of that post as published is attached hereto as **Exhibit**

19      **'O.'**

20      b. The poster is identified as "Tracy Law Houston."  Cynthia Tracy, Attorney at

21      Law, P.C., a family law attorney in Houston, Texas, formerly represented Nicole

22      Mateo in the custody and child support case against Darren Chaker.

23      56. Despite the removal of the blogspot sites, on August 23, 2015, a poster using

24  the name and search term "scott-mcmillan-la-mesa" posted the following as a comment to

25  the post at http://www. complaintsboard.com/complaints/the-mcmillan-law-firm-la-mesa-

26  c571484.html#comments

27      a. "I located the police report about Scott McMillan, La Mesa, Attorney reportedly
        molesting children. I also found he operates his own law school out of a small, run
28      down office near the train tracks, but in the same breath says he's a leading law
        firm. With this reputation, I cannot imagine such is true."

b.  Attached as an image to the comment, he re-posted his November 27, 2014

post, i.e., the content at Exhibit 'B' herein, the repost of which is attached at

**Exhibit 'P.'**

57.  On September 16, 2015, a poster using the name and search term

"mcmillan-law-firm-la-mesa" posted the following as a comment to the post at

http://www.complaintsboard.com/complaints/the-mcmillan-law-firm-la-mesa-c571484.ht

ml#comments

a.  "Scott McMillan, McMillan Law Firm, sued the hardworking Sheriff over his Facebook Account. The law settled for about nothing. It is unfortunate law enforcement need to pay out money to defend such nuisance lawsuits, when that money should be going to hiring more officers, and buying newer equipment. With about 60 loses in the Court of Appeal docket, astonishing he is still in office."

b.  That case – *Karras v. Gore*, U.S. D.C. So. Dist. Cal., 14cv2564-BEN-KSC –

was settled for a payment of attorneys fees plus the token $20. Thus, the above

statement is false, as the Sheriff paid attorneys fees and agreed to change practices.

c.  Attached as an image to the comment, he posted a partial news article, a copy of

which is attached as **Exhibit 'Q.'**

58.  Also on September 16, 2015, a poster using the name and search term

"mcmillan-law-firm-la-mesa" posted the following as a comment to the post at

http://www.complaintsboard.com/complaints/the-mcmillan-law-firm-la-mesa-c571484.ht

ml#comments

a.  "McMillan Academy of Law, run by Scott McMillan appears to have not had a single student go through his law firm, where the class is shared in the same space as the attorney, oh and also Dean McMillan (also an attorney working out of same office. According to LawDragon, no one has ever graduated or even applied to that law school."

b.  Attached as an image to the comment, he posted a webpage print-out, a copy of

which is attached as **Exhibit 'R.'**

59.  Also on September 16, 2015, a poster using the name and search term

"mcmillan-law-firm-la-mesa" posted the following as a comment to the post at

http://www.complaintsboard.com/complaints/the-mcmillan-law-firm-la-mesa-c571484.ht

ml#comments

a. "McMillan sued by Yelp! for posting his own reviews. Read the story in detail, sad set of circumstances, especially when you need to create your own reviews." In truth and in fact, Plaintiffs had not posted their "own reviews." Plaintiffs had represented Julian McMillan, who had been sued by Yelp.

b. Attached as an image to the comment, he posted a news article, a copy of which is attached as **Exhibit 'S.'** Plaintiff did not post his own reviews. Indeed, in that case, Plaintiff was not accused by Yelp of posting comments. Rather, Plaintiff represented another attorney, Julian McMillan, in the case. Chaker edited out the part that would have otherwise explained that Plaintiff was not the Defendant DARREN in that action, but rather just the attorney. Contrary to Defendants' suggestion, Plaintiff was partially successful at the time of the posting of the article. Plaintiff won a motion to change venue, and counsel for Yelp paid Plaintiffs attorneys fees.

60. Most recently, on February 9, 2016, a poster using the name and search term "mcmillan-law-firm" posted the following as a comment to the post at http://www.complaintsboard.com/complaints/the-mcmillan-law-firm-la-mesa-c571484.html#comments

a. "Williams v. The Superior Court of San Diego County/Nordstrom, Inc., Court of Appeal Case Number D068765. shows Scott McMillan, McMillan Law Firm in Las Mesa, LOST ANOTHER case. This one where Nordstrom is vigorously defending itself against allegations of attorney, law professor, and law school dean (Yes, Scott McMillan is all three of those titles since he runs a law school, McMillan Academy of Law, out of two story office near the train tracks. Despite not a single student has graduated, or appears to have attended, no one has taken the bar exam either. Nonetheless, this is another example of Scott McMillan losing another case - although he claims to be a "leading" San Diego attorney."

b. Attached as an image to the comment, the docket form , a copy of which is attached as **Exhibit 'T.'**

c. This statement is also false, as the court of appeals allowed the appeal to proceed in light of the law regarding final, appealable orders.

d. Further, the Court entered an order of stipulated reversal of such appeal.

61. On or about March 27, 2016, Plaintiff McMillan identified a post using

1   Plaintiff TMLF's logo and created in a manner that suggested it was posted by Plaintiff or

2   someone else from his firm.  Plaintiff did not authorize Defendant DARREN or anyone

3   else to use the McMillan Law Firm's logo in this manner.  The latest entry was posted on

4   or about December 17, 2015.  Specifically, a poster using the name and search term

5   "scott-mcmillan-law-firm-la-mesa" setup a bogus page entitled "The McMillan Law Firm

6   Customer Care Service" using The McMillan Law Firm, APC logo at

7   http://www.complaintsboard.com/the-mcmillan-law-firm-b121166

8          a.   A true and correct copy of that page is attached hereto as **Exhibit 'U.'**

9          Notably, the bogus "customer care service" repeats the same false allegations as

10         previously made by Chaker. i.e., that Plaintiff molested his  daughter.

11         b.  On December 8, 2015 – Plaintiff's birthday – Mr. Chaker emailed Plaintiff the

12         following statement:

13         Good afternoon Scott,

14         I have been unable to locate a TM/Copyright for the domain
           mcmillanlaw.us or for your law firm with the USPTO or U.S. Copyright
15         Office. If there is such, kindly advise prior to 7PM today. If I do not receive
           a response, it will be presumed there is no such TM/Copyright. Prior to
16         posting additional material, I will extend this courtesy to you.

17         Also, I have updated the material on
           http://scott-mcmillan-law.blogspot.de/p/scott-mcmillan-attorney-la-mesa.ht
18         ml

19         I have also copied Maura Larkins on this email.

20         Best regards,

21         Darren"

22         c.  A true and correct copy of the email dialog that occurred December 8, 2014, are

23         attached as **Exhibit 'V'.**

24         **d.**   Plaintiffs had not authorized the use of their name, the logo, or creation of a

25         customer care site on Complaintsboard.com.

26         62.  Following Mr. Chaker's posts to complaintsboard.com, individuals solicited

27  Plaintiffs purporting to be able to have the ability to remove the posts.  They wanted to

28  charge Plaintiffs  $4,800 to remove defendants posts.

**PISSEDCONSUMER.COM**

63. Since 2011 and through the present and as late as February, 2016, a person using a pseudonym, that Plaintiff McMillan believe to be Defendant DARREN, or the other defendnats, based on the content and Defendant DARREN's statements above of September 18, 2014 referring to the "pissedconsumer.com" website, has posted derogatory and defamatory statements about Plaintiff on the Internet at the website domain "PISSEDCONSUMER.COM":

64. A Google search of "scott mcmillan site:pissedconsumer.com" returns some 3200 results. Most of those results appear to have been posted in 2015 and 2016. Plaintiffs believe that defendants have posted all of those entries. They have done so either anonymously or using some variation of the key words: "The Mcmillan Law Firm - La-Mesa-Attorney-Scott-McMillan"

65. Unlike Complaintsboard.com, Pissedconsumer.com does not remove the information posted by persons such as Defendant DARREN. Specifically, the terms of service of Pissedconsumer states:

> "5. Removal of Information
> By posting information on PC, *you understand and agree that the material will not be removed even at your request.* You shall remain solely responsible for the content of your postings on PC."

http://www.pissedconsumer.com/tos.txt.

66. The Pissedconsumer.com post that Chaker started on November 3, 2011, is attached hereto as **Exhibit 'W'**. Within that post he misrepresents Plaintiff's win/loss ratio.

67. On August 23, 2015, Defendant DARREN made the false allegation, accusing Plaintiff of child molestation, a copy is attached hereto as **Exhibit 'X'**.

68. On December 4, 2015, Defendant DARREN posted a review entitled "The Mcmillan Law Firm - Scott McMillan Law Firm - La Mesa - Malpractice" which falsely accuses Plaintiff of malpractice, attached hereto as **Exhibit 'Y.'** Chaker falsely states that an appeal in *Williams v. Nordstrom, Inc.* was to be dismissed, and termed it "malpractice." In fact, the appeal was not dismissed and ultimately resulted in a

1    stipulated order of reversal.

2        69.  On February 11, 2016, Defendant DARREN posted a review "The Mcmillan

3    Law Firm - Scott McMillan Law Firm La Mesa," which is attached hereto as **Exhibit 'Z.'**

4    Chaker made statements that were knowingly false as he stated that the "the Court of

5    Appeal DENIED the petition after forcing the defendant incur huge amounts of attorney

6    fees." In fact, the defendant did not file a response. Chaker had no basis to suggest that

7    attorneys fees were incurred resulting from the filing of the petition. Chaker further

8    falsely stated Plaintiff's record as "almost 80 under his belt and a hand full of wins."

9                                      **Current Posts**

10       70.  To date Defendant DARREN continues to post material on his website in a

11   manner that is intended to optimize his websites to respond to search engine indexes with

12   his  name.  Specifically, he continues to use the tags "mcmillan-associates-la-mesa",

13   "scott-mcmillan-la-mesa":

14       71.  On March 29, 2016, Plaintiff accessed

15   http://darren-chaker.blogspot.com/search/label/scott-mcmillan-la-mesa and retrieved the

16   attached article, a true and correct copy of which is attached hereto as **Exhibit 'AA'**

17   which incorporates the use of the tags.

18       72.  On March 29, 2016, Plaintiff accessed http://darrenchaker.us/ and retrieved

19   the attached article bearing a date of December 8, 2015, a true and correct copy is

20   attached hereto as **Exhibit 'BB'**, which incorporates the use of the tags.

21       73.  On March 29, 2016, Plaintiff McMillan accessed http://darrenchaker.org/ and

22   retrieved the attached article bearing a date of January 23, 2016, a true and correct copy is

23   attached hereto as **Exhibit 'CC'**, which incorporates the use of the tags.

24                          **Defendant DARREN's Use of Pseudonyms**

25       74.  Plaintiff is informed and believe that Darren Chaker also uses the pseudonym

26   "Luis Perdomo." On March 29, 2016, Plaintiff accessed

27   https://plus.google.com/1048021677 37415969641/posts/HySqAKY7jYR and retrieved

28   the attached page, a true and correct copy is attached hereto as **Exhibit 'DD'**,

1    incorporating the same allegations and artwork published by Defendant DARREN

2    Chaker.

**Defendant DARREN admits that he knows that he is barred**

**from posting defamatory material.**

5    75. On January 22, 2016, Defendant DARREN  Chaker appeared for a judgment

6    debtors exam. He had been previously ordered to produce the names of the domains that

7    he holds.   On the record in the *Chaker v. Mateo* case, he admitted that he had such logins

8    and that his use of those could result in the revocation of his supervised release.

9    [Transcript, p. 9] Defendant DARREN was also ordered to provide the identifying

10   information as to Internet domains that he owns.  A copy of relevant portions of the

11   transcript is attached hereto as **Exhibit 'EE'.**

12   76.  Defendant DARREN did not appear as ordered on March 11, 2016, in the

13   Superior Court to provide the information.  As recited in the transcript of January 22,

14   2016, Defendant DARREN was aware that he was required to appear at the continued

15   examination. [**Exh. EE, page 31**]

16   77. On March 11, 2016 Defendant DARREN failed to appear for his continued

17   judgment debtor's examination.  Judge Taylor issued a bench warrant for his appearance,

18   which remains outstanding.  A copy of that bench warrant is attached hereto as **Exhibit**

19   **'FF'.**

20   78.  On March 11, 2016 the Superior Court in the *Chaker v. Mateo* case has

21   ordered the appointment of a receiver to take possession of Mr. Chaker's personal

22   property, including his domain names for ultimate sale in order to satisfy the judgment.

23   Despite orders to do so, Defendant DARREN has not complied with the orders of the

24   Superior Court.

**Defendant DARREN has created false accounts with Plaintiff's name**

26   79.  Defendant DARREN created accounts using Plaintiff's name and the name of

27   the McMillan Law Firm.  One of those accounts is on Slideshare.net, and reflected on

28   **Exhibit 'GG'.**  Plaintiff surmise that he has prepared that account in order to upload his

1    defamatory material that he intends to falsely attribute to him.  Plaintiff believes that

2    Defendant DARREN made that account because it is associated by Slideshare with an

3    account under the name of David Gingras, another attorney who successfully represented

4    a victim of Defendants and whom Chaker has also targeted for harassment.

5              **Defendants have inflicted damage upon both Plaintiffs and their clients.**

6              80.  Attorneys rely upon their reputation in the community and before the courts

7    that they practice in.  Defendant DARREN's outrageous lies which he has published have

8    injured Plaintiffs' practice.  Opposing counsel in other, unrelated cases have mentioned

9    the existence of the posts. Clients have mentioned the existence of the posts and their

10   content.   Plaintiff McMillan believes that jurors that Plaintiff has tried cases in front of

11   have accessed the posts and taken them into account in determining the cases.  Thus,

12   Defendants' threats made on September 18, 2014 have borne out. Plaintiffs have invested

13   substantial time in developing Plaintiff McMillan's reputation as a zealous advocate for

14   his clients, and remaining consistent to the duties of an attorney as set forth in Business

15   and Professions Code section 6068, and particularly that set forth in subsection (h):

16              "Never to reject, for any consideration personal to himself or herself, the

17              cause of the defenseless or the oppressed."

18   (Bus. & Prof. Code 6068(h).)

19              81.  Susan A. has been, prior to representation by Plaintiffs herein, defenseless to

20   and oppressed by Defendants.

21              82.  Wendy Mateo was defenseless to and was oppressed by Defendants.

22              83.  Plaintiff understood that Defendants could resort to attacks of Plaintiff

23   McMillan's  character when Plaintiff continued to represent Susan A. despite Defendants

24   threats to engage in libel against him. Defendants then performed on their threats, and

25   have engaged in the forewarned attacks against Plaintiff –  and later Plaintiff's family

26   members – following January 21, 2014, and September 18, 2014.

27

28

**FIRST CLAIM FOR RELIEF**

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1962(c)

(Against Darren Chaker)

84.   Plaintiffs reallege and incorporate paragraphs 1-83 as though fully set forth herein.

85.   Defendant DARREN Chaker is a "person" cappable of holding a legal or beneficial interest in property within the meaning of 18 U.S.C. § 1961(3).

86.   Defendant DARREN Chaker listed above has violated 18 U.S.C. § 1962(c) by commission of the following multiple acts.

**Chaker Enterprise**

87.   Plaintiffs allege that during all the time material herein that DARREN Chaker, an individual, along with other individuals, including, but not limited to, Defendants VANIA Chaker and NICOLE Chaker constitutes the "Enterprise."

88.   Plaintiffs allege that the Enterprise constitutes a RICO 'enterprise' as that term is defined pursuant to 18 U.S.C § 1961(4).  As described above, the members of the Enterprise have functioned together as a continuing unit with a common purpose to obtain the Plaintiffs' property under fear induced by falsely imputing a deformity, disgrace, or crimes, and by threats to do an unlawful injury to the person or property, as described in Cal Penal Code section 519, all in violation of Cal. Penal Code section 523 (extortion).

89.   The Enterprise exists separate and apart and distinct from the conducting of the pattern of racketeering as the Defendant, an individual, is one of a number of other individuals which comprise the Enterprise.  The alleged Enterprise herein also satisfies the three "structural features" of *Boyle v. United States*, *i.e.*, the group had a purpose; relationships with each other; and longevity sufficient to permit the associates to pursue the enterprise's purposes.

90.   Here, the FAC describes how the members of the Enterprise, since at least year 2004 and continuously up to the present time, worked together to file meritless lawsuits under the Fair Credit Reporting Act (para. 10-11; 14; 16; 19); and worked

1   together for Defendant DARREN Chaker to file baseless lawsuits under the Fair Credit

2   Billing Act and other statutes (para. 18).  In year 2004, Defendant VANIA Chaker

3   represented Defendant DARREN Chaker in a federal lawsuit in which DARREN, acting

4   *subnom* as Darren Del Nero, and his mother and enterprise member Defendant NICOLE

5   Chaker brought a baseless action against Midland Credit Management Inc. (para. 11).

6   DARREN and his attorney Defendant VANIA Chaker were sanctioned for bringing the

7   suit in bad faith and for the purpose of harassment (para. 11, supra).  Morevoer,

8   Defendant VANIA Chaker also temporarily represented Defendant DARREN Chaker

9   *subnom* in another case in year 2004 so that Defendant DARREN could avoid the bar of

10  prefiling orders placed resulting from his designation as a vexatious litigant (para. 11,

11  supra).

12      91.  The common purpose of the Enterprise members was to assist each other in

13  the filing of false and meritless lawsuits under federal debt collection statutes; assist each

14  other in the filing of lawsuits against attorneys who opposed them (para. 17, 78), and to

15  conduct a campaign of harassment, defamation, and extortion against attorneys, such as

16  the Plaintiffs, who represented parties adverse to the interests of the Enterprise members

17  (para. 29-83).  Enterprise members also assisted each other in committing vandalism

18  against Plaintiff's property (para. 31).

19      92.  Further proof of these relationships, in addition to the familial relationships, is

20  described for example, in para. 40, in which during the Plaintiffs' representation of Susan

21  A. in a lawsuit for paternity brought by Defendant DARREN, Defendant VANIA blocked

22  the entrance of the courtroom of a licensed private investigator (Rivero) hired by Plaintiff

23  while DARREN blocked the doorway exit (para. 40 a-d); and VANIA and DARREN

24  together chased Rivero in a black SUV in an effort to intimidate him (para. 40-e).

25  Another example is described in para. 40g-i, in which Defendant NICOLE, who is not an

26  attorney but was counseled by Defendant VANIA, appeared at a hearing in the Susan A.

27  case while Defendant DARREN was incarcerated.  Also, on or about January 21, 2014,

28  Defendant NICOLE sent an intimidating letter to Plaintiffs and filed documents in the

1   case and executed a declaration to which was attached the threatening letter.

2       93.  The Enterprise was engaged in, and its activities affected, interstate commerce

3   as its members stole the identity of credit card holders (para. 28, the Frantzes). Enterprise

4   members also threatened attorneys who worked in interstate commerce and represented

5   victims (such as Plaintiff). Also see Charles Kim, para. 28(d); Defendant DARREN filed

6   false bankruptcy petitions to avoid foreclosures and collect rental income (para. 23);

7   Defendant DARREN began using Plaintiff's name on internet postings (para. 36, 45);

8   Defendant DARREN hacked into Plaintiffs' Paypal and Twitter accounts in which

9   payments were made in interstate commerce (para. 42); Defendant DARREN unlawfully

10  posted information on defendant's internet "blogspot.com" account which was

11  defamatory thereby causing Plaintiffs, who operate in interstate commerce, to suffer a

12  loss of income (para. 43, 46, 83); and Enterprise members posted derogatory and

13  defamatory statements on the internet at different websites (see, e.g., para. 55 -

14  complaintsboard.com, para. 63 - pissedconsumer.com) which affected Plaintiff's

15  business, which operated in interstate commerce.  Plaintiffs thus allege that these

16  activities engaged in by said defendants injured Plaintiffs' business and/or property

17  interests in connection with their business activities that affect federal interstate and/or

18  foreign commerce.

19                          **The Pattern of Racketeering**

20      94.  From in or about 2004 and continuing up through the present time, Defendant

21  DARREN Chaker, a person associated with, or employed by the Enterprise, did

22  knowingly and unlawfully conduct or participate, directly or indirectly, in the affairs of

23  the Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C.

24  § 1961(1) and § 1961(5); all in violation of 18 U.S.C. §1962(c).

25      95.  The RICO Defendant DARREN worked with other Enterprise members with

26  the "intent to extort" property from Plaintiffs as described in Cal. Penal Code, Sections

27  518 and 523, *i.e.*, to obtain under threat of fear Plaintiff's intangible property right to

28  adequately represent victims in his practice of law and prosecute his case on behalf of his

clients free of threats, thereby directly and proximately causing tangible harm to his

business and concrete financial losses.  For example, Defendant DARREN has caused the

sending of writings, usually by email, with the intent to extort Plaintiffs intangible right to

represent his client by threatening further actions against Plaintiffs unless Plaintiff

worked to have Plaintiffs' client provide concessions to Defendant in federal litigation

(see para. 40 Susan A. paternity case).  Defendant intended to extort property from

Plaintiffs, i.e., the right to practice his legal practice by engaging in threats of violence if

Plaintiffs continued to collect and publish legal decisions through the website

FEARNOTLAW.COM.

96.   Plaintiffs allege that these activities engaged in by Defendant DARREN

injured Plaintiffs' business and/or property interests, and proximately and directly caused

tangible harm to Plaintiffs' business, including proximately causing concrete financial

losses.

97.   Plaintiffs allege that these activities constitute acts involving extortion in

violation of California Penal Code sections 518, 519, and 523, acts punishable by

imprisonment for more than one year, and thus racketeering activity as defined in 18

U.S.C. § 1961(1)(A).

**18 U.S.C. § 1961(5) Pattern of Racketeering Activity**

98.   Plaintiffs allege that the course of conduct engaged in by RICO defendant

DARREN Chaker constitutes both continuity and relatedness of the racketeering activity,

thereby constituting a pattern of racketeering activity, as that term is defined in 18 U.S.C.

§ 1961(5).  Plaintiffs allege that the relatedness criterion is satisfied as the predicate acts

were related to each other, and related to the activities and purposes of the Enterprise.

Plaintiffs allege the "continuity" of the pattern of racketeering activity is both closed-

ended inasmuch as a series of related predicate offenses extended over at least ten years

(a substantial period of time).  The racketeering acts of extortion also are "open-ended"

inasmuch as the racketeering activities of extortion themselves carry a specific threat of

repetition extending indefinitely into the future.  Moreover, the FAC describes that the

extortionate conduct toward attorneys who represented clients against him was the "regular way the enterprise conducted its business" (see para. 28d, para. 79, extortion of attorney David Gringas) and thus constitute continuing racketeering activity. Defendant DARREN continues in this year 2016 to post defamatory materials on his website to cause Plaintiffs injury (para. 70-73, Exhs. AA-CC).

**Racketeering Acts of Extortion**

**Racketeering Act One**

99. On or about November 23, 2010, Defendant DARREN, within the Southern District of California, with intent to extort money or other proprty from Plaintiffs, sent and delivered to Plaintiff a letter demanding Plaintiff remove posts concerning Defendant DARREN's cases from FEARNOTLAW.COM. Subsequently, DARREN sent e-mails to Plaintiff making implicit threats against Plaintiff's property (dogs) (para. 34). Defendant DARREN's letter and e-mails were writings which expressly, or implied, a threat specified in Section 519(1), *i.e.*, to do an unlawful injury to the person or property of the individual threatened. These acts constituted extortion as the Defendant obtained from Plaintiffs their intangible property right to practice law and publish court decisions on the internet, all in violation of section 523 and 519, thereby causing tangible harm and direct injury to Plaintiffs' business.

100. Section 523 provides that violations of that section are punishable in the same manner as if such money or property were actually obtained by means of such threat. Violations of section 523 are felony violations as described in section 520.

<u>Racketeering Act Two</u>

101. On or about November 28, 2011, during the pendency of representation by Plaintiff of Maura Larkins, Defendant DARREN, within the Southern District of California, with intent to extort money or other property from Plaintiffs, posted on Plaintiffs' scott-mcmillan-law.blogspot.com site defamatory statements about Plaintiff and recited a completely fabricated association between Plaintiff and Ms. Larkins (para. 46, Exh. G). These were writings which expressly and implied a threat as specified in Section 519(3), i.e.,,

1   to expose or impute to Plaintiff a defamatory, disgrace, or crime.  These acts constituted
2   extortion as the Defendant obtained from Plaintiff his intangible property right to practice
3   law free of threats and to practice in accordance with the California Rules of Professional
4   Conduct, all in violation of section 523 and 519, thereby causing tangible harm and direct
5   injury to Plaintiffs' business.

6   <u>Racketeering Act Three</u>

7       102. On or about January 21, 2014, during the pendency of the Susan A.  paternity
8   case, Defendant DARREN, within the Southern District of California, with intent to extort
9   money or other property from Plaintiffs, through his mother Defendant NICOLE, sent and
10  delivered to Plaintiff McMillan a letter (Exhibit 4) threatening that Plaintiff's "client will
11  suffer" due to Plaintiff's representation of Suan A. (para. 40).  Defendant's letter was a
12  writing which expressly and impliedly made a threat as specified in section 519(1), i.e., to
13  do an unlawful activity to the person or property of the individual by threatening that unless
14  Plaintiff complied, Plaintiff's client would suffer.  These acts constituted extortion as the
15  Defendant obtained from Plaintiff his intangible property right to practice law free of threats,
16  and to practice in accordance with the California Rules of Professional Conduct, all in
17  violation of sections 523 and 519, thereby causing tangible harm and direct injury to
18  Plaintiffs' business.

19  <u>Racketeering Act Four</u>

20      103.  On or about September 18, 2014, during the pendency of the Susan A. paternity
21  case, 2010, Defendant DARREN, within the Southern District of California, with intent to
22  extort money or other property from Plaintiffs, sent and delivered to Plaintiff an e-mail
23  (Exhibit B) demanding Plaintiff to convince Susan A. to grant him concessions in the
24  paternity case (para. 41).  Defendant's e-mails were writings which expressly and impliedly
25  made a threat as specified in section 519(1), i.e., to do an unlawful injury to the person or
26  property of the individual by threatening that unless Plaintiff complied, the Plaintiff would
27  lose "clients," and would "take food out of [Plaintiff's kids mouths]," and Plaintiff would
28  incur other pecuniary losses.  These acts constituted extortion as the Defendant obtained from

Plaintiff his intangible property right to practice law free of threats, and to practice in accordance with the California Rules of Professional Conduct, all in violation of sections 523 and 519, thereby causing tangible harm and direct injury to Plaintiffs' business.

### Racketeering Act Five

104.  On or about September 18, 2014, during the pendency of the Susan A. paternity case, 2010, Defendant DARREN, within the Southern District of California, with intent to extort money or other property from Plaintiffs, sent delivered to Plaintiff an e-mail (Exhibit B) demanding Plaintiff convince Susan A. to grant him concessions in the paternity case (para. 41).  Defendant's e-mails were writings which expressly and impliedly made a threat as specified in section 519(1), i.e., that unless Plaintiff settled the case Defendant would continue his malicious blogs on coomplaintsboard.com and pissedconsumer.com.  These acts constituted extortion as the Defendant deprived Plaintiff of his intangible property right to practice law free of threats and in accordance with the California Rules of Professional Conduct, all in violation of section 523 and 519, thereby causing tangible harm and direct injury to Plaintiffs' business.

### Racketeering Act Six

105.  On or about November 27, 2014, during the pendency of the Susan A. paternity case, Defendant DARREN, within the Southern District of California, with intent to extort money or other property from Plaintiffs, began posting defamatory material on the scott-mcmillan-law.blogspot.com site falsely stating that Plaintiff had molested his daughter (see para. 43, Exh. E).  The defamatory postings were writings which expressly and impliedly made a threat as specified in section 519(3), i.e., that unless Plaintiff settled the case Defendant would expose and impute to Plaintiffs a defamatory, disgrace, or crime.  These acts constituted extortion as the Defendant obtained from Plaintiff his intangible property right to practice law free of threats and to practice in accordance with the California Rules of Professional Conduct, all in violation of sections 523 and 519, thereby casuing tangible harm and direct injury to Plaintiffs' business.

<u>Racketeering Act Seven</u>

106. On or about December 6, 2014, during the representation by Plaintiff of a creditor in a bankruptcy proceeding, Defendant DARREN, within the Southern District of California, with the intent to extort money or other property from Plaintiffs, sent an e-mail to an attorney who represented an opposing party, in which DARREN falsely accused Plaintiff of molesting his daughter (see para. 49, Exh. K). The opposing attorney forwarded the e-mail to Plaintiff on December 8, 2014. The defamatory e-mails were writings which expressly and impliedly made a threat specified in section 519(3), i.e., it exposed and imputed to Plaintiffs a deformity, disgrace, or crime. These acts constituted extortion as the Defendant obtained from Plaintiff his intangible property right to practice law free of threats, and to practice in accordance with the California Rules of Professional Conduct, all in violation of sections 523 and 519, thereby causing tangible harm and direct injury to Plaintiffs' business.

<u>Racketeering Act Eight</u>

107. On or about December 23, 2014, during the representation by Plaintiff of clients engaged in litigation in San Diego East Count Community, including clients adverse to the interests of Defendant DARREN, such as Susan A. and Wendy Mateo, with the Southern District of California, with intent to extort money or other property from Plaintiffs, sent an e-mail to 200 attorneys in San Diego (see para. 52, Exh. N). The defamatory e-mails were writings which expressly and impliedly made a threat as specified in section 519(3), i.e., it exposed and imputed to Plaintiffs a deformity, disgrace, or crime. These acts constituted extortion as the Defendant obtained from Plaintiff his intangible property right to practice law free of threats, and to practice in accordance with the California Rules of Professional Conduct, all in violation of sections 523 and 519, thereby causing tangible harm and direct injury to Plaintiffs' business.

<u>Racketeering Act Nine</u>

108. From 2011 to the present, during the representation by Plaintiff of clients engaged in litigation in this district and elsewhere, including clients adverse to the interests

1   of Defendant DARREN, such as Susan A. and Wendy Mateo, Defendant DARREN, within

2   the Southern District of California, with intent to extort money or other property from

3   Plaintiffs, posted defamatory and derogatory comments, including false comments that

4   Plaintiff was a sex offender on the internet at complaintsboard.com.  See para. 55-62; Exhs.

5   O-V.  The defamatory postings were writings which expressly and impliedly made a threat

6   as specified in section 519(3), i.e., it exposed and imputed to Plaintiffs a deformity, disgrace,

7   or crime.    These acts constituted extortion as the Defendant deprived Plaintiff of his

8   intangible property right to practice law free of threats, and in accordance with the California

9   Rules of Professional Conduct, all in violation of sections 523 and 519, thereby causing

10  tangible harm and direct injury to Plaintiffs' business.

11                                 Racketeering Act Ten

12      109.  From 2011 to the present, during the representation by Plaintiff of clients

13  engaged in litigation in this, including clients adverse to the interests of Defendant

14  DARREN, within the Southern District of California, with intent to extort money or other

15  property from Plaintiffs, posted defamatory and derogatory comments, including false

16  comments that Plaintiff engaged in child molestation, on the internet at pissedconsumer.com.

17  See para. 63-69; Exhs. W-Z.  These defamatory postings were writings which expressly and

18  impliedly made a threat as specified in section 519(3), i.e., it exposed and imputed to

19  Plaintiffs a deformity, disgrace, or crime. These acts constituted extortion as the Defendant

20  obtained from Plaintiff his intangible property right to practice law free of threats, and to

21  practice in accordance with the California Rules of Professional Conduct, all in violation of

22  sections 523 and 519, thereby causing tangible harm and direct injury to Plaintiffs' business.

23                                 **RELIEF SOUGHT**

24      110.  Plaintiffs are entitled to recover, pursuant to 18 U.S.C. § 1964(c), treble damages

25  in an amount to be determined by offer of proof at time of trial.  Plaintiffs are also entitled

26  to recover attorneys' fees and costs of this litigation, as well as damages arising from lost

27  profits and/or lost business opportunities proximately caused by RICO defendants' violations

28  of the RICO Act.

1     111.  Plaintiff requests injunctive relief to prevent prevent and restrain violations of

2   section 1962 by issuing appropriate orders, including, but not limited to: ordering Defendants

3   divest themselves of any interest, direct or indirect, in any enterprise; imposing reasonable

4   restrictions on the future activities or investments of Defendants, including, but not limited

5   to, prohibiting Defendants from engaging in the same type of endeavor as the enterprise

6   engaged in, the activities of which affect interstate or foreign commerce; or ordering

7   dissolution or reorganization of any enterprise, making due provision for the rights of

8   innocent persons, including Plaintiff herein.

9     112.  Plaintiffs requests that the Court revoke Defendant DARREN Chaker's

10  supervised release, and order him to remove the posts, or execute such documents that would

11  compel the removal of those posts, all of which he has published in contempt of the Court's

12  order for supervised release.

13     113.  Plaintiffs requests that the Court also issue an order to DARREN Chaker

14  requiring him to request the removal of his posts from the Internet forums in a form that may

15  be published to the third parties, i.e., Pissedconsumer.com and Complaintsboard.com, that

16  have published defendants' harrassing and defamatory posts. Plaintiff request that the Court

17  make a finding that such posts are contrary to the conditions of Defendant DARREN's

18  supervised release and thereby unlawful.  With such a finding, and an order that Chaker

19  remove those post, those sites would willingly do so.

20     114.  Plaintiffs requests that the Court also issue an order with findings such that can

21  be published to those search engines that have indexed the posts, i.e., Google, Yahoo, and

22  Bing, and findings that such posts were placed by Defendant DARREN contrary to the

23  Judgment in this case and the Court's terms of Defendant DARREN 's supervised released.

24   And that Defendant DARREN be ordered to request the removal of such posts from such

25  search indices. Plaintiff's hope and expectation is that those third parties would be persuaded

26  to remove the posts from the respective index.

27

28

**SECOND CLAIM FOR RELIEF**

(Against All Defendants, Racketeer Influenced and Corrupt Organizations Act,

18 U.S.C. § 1962(d))

115.  Plaintiffs repeat and reallege the averments contained in paragraphs 1-83, and 85 through 114 as though fully set forth herein.

116.  Plaintiffs allege that commencing in 2004, and during and continuing at all times to the present, RICO defendants conspired to violate section 1962(c), i.e., each defendant agreed that a conspirator (DARREN) would conduct or participate in the affairs of the Enterprise through a pattern of racketeering, including acts involving extortion in violation of California state law, as more fully described in the First Claim for Relief. Plaintiffs allege that the conspiratorial objective of that mutual agreement was intended to obtain Plaintiffs' interests in property, thereby causing tangible harm and direct injury to Plaintiffs, and that such conspiratorial conduct constitutes contravention of RICO § 1962(d).

117.  Defendants are members of the RICO § 1962(d) conspiracy at and during the time frame the criminal activities were committed that constitute the RICO § 1961(5) pattern of racketeering activity. Proof of the agreement of VANIA and NICOLE that a conspirator (DARREN) would engage in multiple acts of racketeering are described in paragraphs 10-11; 14; 16; 18; and 19, i.e., since at least year 2004 and continuously to the present time, the three defendants agreed that they together would file meritless lawsuits under the Fair Credit Reporting Act, the Fair Debt Collections Practices Act and other litigation (para. 18). As described above in para. 40, during the Plaintiffs' representation of Susan A. in a lawsuit for paternity brought by DARREN, VANIA assisted DARREN in the intimidation of a licensed private investigator (Rivero) hired by Plaintiff. Also, as described in para. 40g-i, NICOLE, who is not an attorney but was counseled by VANIA, appeared at a hearing in the Susan A. case while DARREN was incarcerated. Also, on or about January 21, 2014, Nicole sent an intimidating letter to Plaintiffs and filed documents in the case and executed a declaration to which was attached the threatening letter. See Exhs. 4 and 5.

118.  The above allegations are sufficient to show that NICOLE, VANIA and

1    DARREN agreed with each other so that at least one of the conspirators (here, DARREN)

2    would commit multiple acts of racketeering activity, i.e., extortion in violation of Cal. Penal

3    Codes 519 and 523.

4         119.   RICO recovery is being sought as described in the First Claim for Relief.

5

6                              **THIRD CLAIM FOR RELIEF**

7              (Civil Extortion - Against Defendants DARREN and NICOLE)

8         120.   Plaintiffs repeat and reallege the averments contained in paragraphs 1-83, and

9    84 through 114, and 116 through 119, as though fully set forth herein.

10        121.   Defendants conduct was unlawful as a matter of law, in that Defendant

11   DARREN had been forbidden from types of expressive conduct by the terms of his Pre-Trial

12   release, the terms of his confinement and Bureau of Prisons regulations, and the terms of his

13   supervised release.  Defendant NICOLE was aware of these restrictions.

14        122.   Extortion is the obtaining of property from another, with his consent, or the

15   obtaining of an official act of a public officer, induced by a wrongful use of force or fear, or

16   under color of official right. (Penal Code § 518.)

17        123.   Defendants attempted to obtain property from Plaintiffs, i.e., the right to

18   continue to practice law consistent with the California Business and Professions Code, and

19   the California Rules of Professional Conduct, with respect to the advocacy on behalf of

20   Susan A..

21        124.  Defendants attempted to obtain property from Plaintiffs, i.e., the right to collect

22   on a debt due and owing by virtue of the fee award in the *Chaker v. Mateo* action.

23        125.   Defendants attempted to obtain property from Plaintiffs, i.e., the right to

24   continue to collect and publish cases through the website FEARNOTLAW.COM.

25        126.  Defendants attempted to obtain an official act of a public officer, i.e., a judge,

26   through Plaintiffs' clients acquiesence.

27        127.  Defendants wrongfully attempted to induce fear as that term is used in Penal

28   Code section 519, which provides in pertinent part under the heading "threats":

"Fear, such as will constitute extortion, may be induced by a threat of any of the following:

    1.  To do an unlawful injury to the person or property of the individual threatened or of a third person.

    2.  To accuse the individual threatened, or a relative of his or her, or a member of his or her family, of a crime.

    3.  To expose, or to impute to him, her, or them a deformity, disgrace, or crime.

    4.  To expose a secret affecting him, her, or them.

* * *

(Penal Code § 519)

128.  Defendants threats were both express, and were implied by the contents of the various writings and the surrounding circumstances.

129.  Defendants transmitted the threats comprising extortion.

130.  The Statutes of Limitations regarding the bringing of the present claims have been tolled due to Defendants' absence from the State of California according to California Code of Civil Procedure section 351:

"If, when the cause of action accrues against a person, he is out of the state, the action may be commenced within the term herein limited, after his return to the state, and if, after the cause of action accrues, he departs from the state, the time of his absence is not part of the time limited for the commencement of the action."

(Cal. Civ. Proc. Code § 351.)

131.  As a direct and proximate result of the acts of Defendants as alleged in the Third Cause of Action above, Plaintiffs were injured.  Plaintiff McMillan suffered economic damage, expense, and humiliation, including, but not limited to, emotional upset, anxiety, mental suffering, and damage to his reputation. Plaintiff McMillan also suffered loss of time. Plaintiff McMillan is therefore entitled to compensatory damages in an amount which will compensate for him all the detriment proximately caused  by Defendants' acts, whether foreseeable or not,  according to proof at time of trial, in accordance with Civ. Code § 3333.

1    132.  Plaintiff TMLF was damaged by the loss of goodwill resulting from the false

2    statements published by Defendants' "making good" on the threats.  Plaintiff TMLF was

3    damaged by the lost advertising expenses which were negated by the false statements

4    published by defendants.

5    133.  Defendants' conduct was malicious, oppressive and/or fraudulent within the

6    meaning of California Civil Code § 3294, thereby entitling Plaintiffs to an award of punitive

7    damages in an amount according to proof at time of trial.

8                                    - o O o -

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

1. For an Order enjoining Defendants, their agents, and those acting in concert or conspiracy with them, temporarily during the pendency of this action and permanently thereafter from and further violation of 18 U.S.C. §§ 1961 et seq.;

2. For compensatory damages according to proof;

3. For an award of treble damages pursuant to 18 U.S.C. § 1964;

4. For attorneys' fees pursuant to 18 U.S.C. § 1964 or as otherwise provided by law;

5. For punitive and exemplary damages pursuant to Cal. Civil Code § 3294 or as otherwise provided by law;

6. For an award of costs of suit;

7. For an award of pre-judgment interest and post-judgment interest in the maximum amount permitted by law;

8. For such other and further relief as the Court deems just and proper.

Dated: December 5, 2016                    The McMillan Law Firm, A.P.C.

                                           /s/ Scott A. McMillan

                    BY:    _____

                                           Scott A. McMillan
                                           Attorney, In Propria Persona, and on behalf of
                                           Plaintiff The McMillan Law Firm, A.P.C.

# DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all causes of action so determinable.

Dated: December 5, 2016                    The McMillan Law Firm, A.P.C.

                                           /s/ Scott A. McMillan

                    BY:    _____

                                           Scott A. McMillan
                                           Attorney, In Propria Persona, and on behalf of
                                           Plaintiff The McMillan Law Firm, A.P.C.

# CERTIFICATE OF SERVICE

I am admitted to the United States District Court for the Southern District of California. I am employed in San Diego County, California, and not a party to the within-entitled action. My business address is 4670 Nebo Drive, Suite 200, La Mesa, CA 91941-5230.

On December 5, 2016, I served the following documents:

FIRST AMENDED COMPLAINT

**By Electronic Submission:** I served the above listed document(s) described via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service though the court's transmission facilities.

Additional parties who are not registered CM/ECF users according to the court's NEF, were served via the following means:

**By Mail**:

Nicole Chaker
5924 Stadium Street
San Diego, CA 92192

Arthur J. McKeon III
Gilbert, Kelly, Croley & Jennett LLP
550 South Hope Street, 22nd Floor
Los Angeles, California 90071-2627

A copy of such documents were placed in an envelope, addressed as set forth above, such envelopes were deposited in the U.S. Mail, postage prepaid.

Dated:        December 5, 2016

/s/ Scott A. McMillan
_____

# EXHIBIT C

**SUPERIOR COURT OF CALIFORNIA,**
**COUNTY OF SAN DIEGO**
**CENTRAL**

**MINUTE ORDER**

DATE: 06/29/2018          TIME: 08:30:00 AM          DEPT:  C-65

JUDICIAL OFFICER PRESIDING: Joan M. Lewis
CLERK:  Calvin Beutler, Lori Urie
REPORTER/ERM: Not Reported
BAILIFF/COURT ATTENDANT:  J. Arnold

CASE NO: **37-2017-00036344-CU-NP-CTL**   CASE INIT.DATE: 09/27/2017
CASE TITLE: **McMillan vs Chaker [IMAGED]**
CASE CATEGORY: Civil - Unlimited          CASE TYPE: Non-PI/PD/WD tort - Other

---

**EVENT TYPE**: Motion Hearing (Civil)

---

**APPEARANCES**

Scott A McMillan, counsel, present for Plaintiff(s).
David G Molinari, specially appearing for counsel Zachariah Moura, present for Defendant(s).
Michael A Weismantel, specially appearing for counsel JOHN M HOCHHAUSLER, present for Defendant(s).

---

The Court hears oral argument and CONFIRMS the tentative ruling as follows:

Defendant Darren D. Chaker, an individual and as trustee of Platinum Holdings Group Trust dba Counter Forensics has brought a motion to seal portions of the complaint and for a protective order.

The motion to seal is granted in part.

The Court believes the addresses for the Defendant listed in the documents found at Ex. FF (the Biometric Identification and driver licenses) should be redacted.

The Court also believes that the complaint at page 23, line 27 to page 24, line 1 should be sealed as it appears this is language quoted from a paternity case and should not be available for public review. See Family Code Sec. 7643.

In finding that these items should be sealed, the Court concludes the matters that are being sealed involve an overriding interest (privacy rights/confidentiality of paternity records) that overcomes the right of public access to this portion of the record; this overriding interest supports sealing the record; there exists a substantial probability that the overriding interest will be prejudiced if these records are not sealed; that the proposed sealing has been narrowly tailored and that no less restrictive means exist to achieve the overriding interest.

The request to seal anything beyond the above is denied.

---

DATE: 06/29/2018                      MINUTE ORDER                              Page 1
DEPT:  C-65                                                              Calendar No. 8

CASE TITLE: McMillan vs Chaker [IMAGED]          CASE NO: **37-2017-00036344-CU-NP-CTL**

Plaintiff's counsel is directed to submit a copy of the entire complaint by July 5, 2018 – with the above-mentioned redactions – so the Clerk may replace the sealed portions of the complaint in the public file with the redacted version.

The request that the Court order Plaintiff to cease and desist from engaging in certain conduct is denied.

In ruling on this motion, the Court took judicial notice as requested.

*Joan M. Lewis*

_____

Judge Joan M. Lewis

# EXHIBIT D

LOS ANGELES | 445 South Figueroa Street
Boston | Suite 3000
Las Vegas | Los Angeles, CA 90071-1619
New York | Telephone (213) 312-2000
Paris | Facsimile (213) 312-2001
Redwood City | www.rmkb.com
San Francisco |
San Jose |
Seattle |



Stephen Erigero
(213) 312-2013
stephen.erigero@ropers.com

E. Lacey Rice
(213) 312-2058
lacey.rice@rmkb.com

Eduardo A. Bravo
(213) 312-2048
eduardo.bravo@ropers.com

May 26, 2020

*__Via Electronic Mail__*

Scott A. McMillan, Esq.
THE MCMILLAN LAW FIRM, APC
4670 Nebo Drive, Suite 200
La Mesa, California 91941-5230
Email: scott@mcmillanlaw.us

Re:   *Scott A. McMillan & The McMillan Law Firm, APLC v. Darren D. Chaker*
USDC - Southern District Case No. 3:16-cv-2186-WQH-MDD
Our File No. 13579-9841L

Dear Mr. McMillan:

We write in an effort to meet-and-confer regarding Defendant Darren D. Chaker's contemplated Motion to Seal Portions of Plaintiffs' Complaint and First Amended Complaint (the "Motion") in the above-mentioned Federal Action. We propose that we meet and confer by phone, pursuant to United States District Court, Sothern District of California *Civil Local Rule 26.1(a)*, for the purpose of determining whether an agreement can be reached to resolve the foregoing matters of concern.

The Motion is directed at portions of Plaintiffs' Complaint and First Amended Complaint ("FAC") that include reference to a California sealed paternity case ("The Paternity Case") involving Defendant. Paragraphs 39, 40, and 49 of the Complaint and paragraphs 40, 41, and 50 of the FAC all refer to the Paternity Case involving Defendant. Compelling privacy concerns exist to seal these paragraphs of the Complaint and FAC. *Pintos v. Pacific Creditors Ass'n*, 605 F.3d 665, 677-678 (9th Cir. 2010). To exemplify this point, it is telling that the Paternity Case was sealed and not subject to public inspection and that Plaintiffs' were not parties to the Paternity Case. In addition, in the parallel state court case, the California Superior Court previously granted a similar motion to seal portions of the complaint that made reference to the same Paternity Case. For the foregoing reasons, there should be no reference to Defendant's Paternity Case and paragraphs 39, 40, and 49 of the Complaint and paragraphs 40, 41, and 50 of the FAC should be sealed.

We request that Plaintiffs stipulate to sealing paragraphs 39, 40, and 49 of the Complaint and paragraphs 40, 41, and 50 of the FAC. We are generally available to meet-and-confer telephonically on May 27, 2020 and May 28, 2020 (all day). Please let us know when you are available.



Scott A. McMillan, Esq.
Re:  *McMillan v. Chaker*
May 26, 2020                                                                                                  Page 2

        We look forward to hearing from you.

                        Sincerely,

                        ROPERS, MAJESKI, KOHN & BENTLEY

                        Stephen J. Erigero
                        E. Lacey Rice
                        Eduardo A. Bravo

SJE/ELR/EAB/jc

# EXHIBIT E

**Cecchini, Jennie**

| | |
|---|---|
| **From:** | Scott A McMillan <scott@mcmillanlaw.us> |
| **Sent:** | Tuesday, May 26, 2020 4:10 PM |
| **To:** | Erigero, Stephen J. |
| **Cc:** | Cecchini, Jennie; Rice, Lacey; Bravo, Eduardo A.; Rich, Linda; Cederquist, Kimberly; Arriola, Anthony |
| **Subject:** | Re: Meet-&-Confer Re McMillan v. Chaker |

This was brought up at the Ninth Circuit and denied.

On Tue, May 26, 2020 at 4:05 PM Erigero, Stephen J. <stephen.erigero@ropers.com> wrote:

Scott,


This was litigated in State Court and we are only asking to have the decision of the State Court on redaction/ motion to seal apply to the Federal pleading which remains in the court record even after judgment. If I am missing something let us know. Otherwise we can agree to disagree and let the judge decide if our client is not entitled to relief.


Steve




**From:** Scott A McMillan [mailto:scott@mcmillanlaw.us]
**Sent:** Tuesday, May 26, 2020 3:39 PM
**To:** Cecchini, Jennie <jennie.cecchini@ropers.com>
**Cc:** Erigero, Stephen J. <stephen.erigero@ropers.com>; Rice, Lacey <lacey.rice@ropers.com>; Bravo, Eduardo A. <eduardo.bravo@ropers.com>; Rich, Linda <linda.rich@ropers.com>; Cederquist, Kimberly <kimberly.cederquist@ropers.com>; Arriola, Anthony <anthony.arriola@ropers.com>
**Subject:** Re: Meet-&-Confer Re McMillan v. Chaker


Counsel,


We have been over this.  Please stop attempting to relitigate matters already determined.

Scott McMillan


On Tue, May 26, 2020 at 3:33 PM Cecchini, Jennie <jennie.cecchini@ropers.com> wrote:

Dear Mr. McMillan,


Attached please find correspondence dated May 26, 2020, regarding the above-referenced matter.


**Jennie Cecchini**
**Ropers Majeski Kohn & Bentley PC**
Secretary
445 South Figueroa Street, Suite 3000 • Los Angeles • CA • 90071-1608
Office: (213) 312-2000 • Direct: (213) 312-2064

Jennie.cecchini@ropers.com

