1  STEPHEN J. ERIGERO (SBN 121616)
2  **ROPERS MAJESKI PC**
   445 South Figueroa Street, Suite 3100
3  Los Angeles, California 90071
   Telephone:  213.312.2000
   Facsimile:  213.312.2001
4  Email:       stephen.erigero@ropers.com

5  Attorneys for Defendant-Appellants
   DARREN D. CHAKER
6

7

8              **UNITED STATES DISTRICT COURT**

9              **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  SCOTT A. MCMILLAN, an individual;        Case No. 3:16-cv-2186-WQH-MDD
    THE MCMILLAN LAW FIRM, APC,
12  a California professional corporation,    *Hon. William Q. Hayes*
                                              *Courtroom 14B*
13              Plaintiffs – Appellants,
                                              **DEFENDANT-APPELLEE**
14       v.                                   **DARREN D. CHAKER'S NOTICE**
                                              **OF LODGING DOCUMENTS**
15  DARREN D. CHAKER, an individual,
    and as trustee of PLATINUM               **[***Filed Concurrently with Sur-Reply***
16  HOLDINGS GROUP TRUST, dba                ***and (Proposed) Order]***
    COUNTER FORENSICS; NICOLE
17  CHAKER, an individual, and as trustee     **DATE:  SEPTEMBER 12, 2022**
    of THE NICOLE CHAKER
18  REVOCABLE LIVING TRUST, U/A              ***NO ORAL ARGUMENT UNLESS***
    dated August 18, 2010, VANIA            ***REQUESTED BY THE COURT***
19  CHAKER, an individual and as
    beneficiary of The Island Revocable
20  Trust under,                              Action Filed:   August 29, 2016
                                              Trial Date:     None
21              Defendants – Appellees.
                                              **[PART 1 OF 2 - 1-1189]**
22

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Defendant-Appellant DARREN D. CHAKER ("Defendant-Appellant") hereby lodges a copy of the case file for United States District Court, Southern District of California, case file designated 3:16-cv-2186-WQH-MDD, which is attached hereto as Exhibit "A" with the Index of the documents. The case file has been highlighted to identify, pursuant to this Court's order of September 9, 2022, the identifying characteristics contained therein which Defendant-Appellee seeks to be redacted from the Record.

Dated: September 23, 2022                    ROPERS MAJESKI PC

By: _____
STEPHEN J. ERIGERO
Attorneys for Defendant/Appellee
Darren D. Chaker

ROPERS
M A J E S K I

A Professional Corporation
Los Angeles

4867-4131-5886.1

- 2 -

# INDEX

| File/Document Name (As Obtained from PACER) | Beginning Page Number in Exhibit A |
|---|---|
| 01 - Objections | 1 |
| 01 - ORDER of USCA as to Notice of Cross Appeal to 9th Circuit filed by Scott A | 8 |
| 01 - ORDER The Motion to File Documents Under Seal filed by Defendant Darren D C | 10 |
| 01 - RESPONSE in Opposition re Ex Parte MOTION to Continue Hearing Date and Opp | 18 |
| 01 - Summons Issued Counsel receiving this notice electronically should print th | 23 |
| 01 - USCA Time Schedule Order as to Notice of Appeal to 9th Circuit filed by Sc | 26 |
| 1 - DECLARATION re MOTION for Extension of Time to File DEFENDANT NICOLE CHAKER | 28 |
| 1 - RESPONSE in Opposition re MOTION for Extension of Time to File DEFENDANT NI | 113 |
| 02 - Ex Parte MOTION to Continue Hearing Date and Opposition Date on Motion for | 121 |
| 02 - Exhibit V | 129 |
| 02 - Objections | 133 |
| 02 - ORDER of USCA as to Notice of Cross Appeal to 9th Circuit filed by Nicole | 143 |
| 02 - RESPONSE in Opposition re MOTION to File Documents Under Seal with Certifi | 145 |
| 02 - USCA Case Number 17-56676 for Notice of Appeal to 9th Circuit filed by Sco | 159 |
| 2 - Declaration of Scott A McMillan | 160 |
| 2 - MOTION for Extension of Time to File DEFENDANT NICOLE CHAKER'S NOTICE OF MOT | 201 |
| 03 - CERTIFICATE OF SERVICE by Vania Chaker re Response in Support of Motion (B | 205 |
| 03 - Declaration of Scott A McMillan in Opposition | 208 |
| 03 - Exhibit W | 214 |
| 03 - NOTICE OF APPEAL to the 9th Circuit as to Order Order Order by Scott A M | 225 |
| 03 - REPLY to Response to Motion re MOTION to Strike MOTION to Dismiss Plainti | 231 |
| 03 - USCA Time Schedule Order as to Notice of Cross Appeal to 9th Circuit filed | 243 |
| 3 - Memo of Points and Authorities | 245 |
| 3 - Proof of Service | 256 |
| 04 - Exhibit X | 258 |
| 04 - NOTICE of Appearance by Eduardo Bravo on behalf of Darren D Chaker (Bravo E | 265 |

4862-2515-2053.1

| | |
|---|---|
| 04 - Objections | 266 |
| 04 - ORDER The Clerk of Court is directed to close this case Signed by Judge Wil | 273 |
| 04 - REPLY TO RESPONSE TO MOTION (DKT # ) - Originally e-filed as RESPONSE in S | 274 |
| 04 - USCA Case Number 18-55358 for Notice of Cross Appeal to 9th Circuit filed | 283 |
| 4 - DECLARATION re MOTION for Extension of Time to File DEFENDANT NICOLE CHAKER | 284 |
| 05 - Exhibit Y | 369 |
| 05 - NOTICE of Appearance by Emily L Rice on behalf of Darren D Chaker (Rice Emi | 376 |
| 05 - Objections | 377 |
| 05 - ORDER The motion to seal previously filed documents is granted with respect | 387 |
| 05 - Supplemental Declaration of Vania Chaker | 392 |
| 05 - USCA Time Schedule Order as to Notice of Cross Appeal to 9th Circuit filed | 405 |
| 5 - MOTION for Extension of Time to File DEFENDANT NICOLE CHAKER'S NOTICE OF MOT | 407 |
| 06 - Evidentiary Objections to Declaration of Timothy J Wing | 411 |
| 06 - Exhibit Z | 420 |
| 06 - NOTICE of Appearance of E LACEY RICE by Stephen J Erigero on behalf of Darr | 427 |
| 06 - ORDER Defendant Darren Chaker's motion to dismiss the First Amended Complai | 428 |
| 06 - ORDER Re Stipulation To Extend Time To Respond To First Amended Complaint ( | 444 |
| 06 - USCA Case Number 18-55343 for Notice of Cross Appeal to 9th Circuit filed | 445 |
| 07 - CERTIFICATE OF SERVICE by Scott A McMillan re Notice of Cross Appeal to 9t | 446 |
| 07 - Evidentiary Objections to Declaration of Joshua Van Noord | 448 |
| 07 - Exhibit AA | 453 |
| 07 - NOTICE of Appearance by Timothy W Kenna on behalf of Nicole Chaker (Kenna T | 457 |
| 07 - NOTICE of Appearance of EDUARDO A BRAVO by Stephen J Erigero on behalf of D | 459 |
| 07 - OBJECTION by Darren D Chaker re Complaint Objection to Plaintiffs' Claim o | 460 |
| 08 - Evidentiary Objections to Declaration of Scott McMillan | 465 |
| 08 - Exhibit BB | 474 |
| 08 - Joint MOTION for Extension of Time to File ResponseReply to Plaintiffs' Fir | 478 |

| | |
|---|---|
| 08 - MOTION to File Documents Under Seal (With attachments)(Erigero Stephen) (an | 481 |
| 08 - NOTICE OF CROSS APPEAL to the 9th Circuit as to Order Order Order by Sco | 483 |
| 08 - REPLY to Response to Motion re MOTION to Seal a Previously Filed Document | 513 |
| 09 - Exhibit CC | 523 |
| 09 - Memo of Points and Authorities | 534 |
| 09 - NOTICE OF CROSS APPEAL to the 9th Circuit as to Order Order by Nicole Cha | 542 |
| 09 - Proof of Service Proof of Service | 564 |
| 09 - Proposed Order | 565 |
| 09 - Response to Plaintiffs' Evidentiary Objections to Declaration of Vania Cha | 569 |
| 10 - Declaration of Eduardo A Bravo | 572 |
| 10 - Exhibit DD | 672 |
| 10 - RE-DOCKETED BY THE USDC CLERK AS NOTICE OF CROSS APPEAL TO THE 9TH CIRCUIT | 674 |
| 10 - Reply iso Request for Judicial Notice | 696 |
| 10 - RESPONSE in Opposition re MOTION to Seal a Previously Filed Document re A | 698 |
| 10 - RESPONSE re MOTION to Dismiss Plaintiffs First Amended Complaint Response | 716 |
| 11 - Declaration of Scott A McMillan in support of request for judicial notice | 724 |
| 11 - Declaration of Scott A McMillan | 1169 |
| 11 - Exhibit EE | 1176 |
| 11 - NOTICE NOTICE OF CHANGE OF FIRM NAME by Nicole Chaker (Smith Rebecca) (4320 | 1190 |
| 11 - ORDER IT IS HEREBY ORDERED that Defendant Nicole Chaker's motion for an ex | 1194 |
| 11 - Request for Judicial Notice | 1199 |
| 12 - Certificate of Service | 1202 |
| 12 - Exhibit 3 | 1204 |
| 12 - Exhibit GG | 1207 |
| 12 - MANDATE of USCA affirming the decision of the USDC as to Notice of Cross A | 1210 |
| 12 - MOTION for Sanctions pursuant to or alternatively the Court's Inherent Pow | 1216 |
| 12 - NOTICE REQUEST FOR RULING ON DEFENDANT DARREN D CHAKERS OBJECTION TO PLAINT | 1220 |
| 13 - Certificate of Service | 1222 |
| 13 - Exhibit 9 | 1225 |
| 13 - Memo of Points and Authorities | 1228 |

| | |
|---|---|
| 13 - ORDER Granting Motion to Substitute Attorney Attorney John M Hochhausler t | 1255 |
| 13 - ORDER The motions to dismiss (Dkt #s  ) are denied as moot Signed by Judge | 1257 |
| 14 - Declaration of Darren D Chaker | 1259 |
| Doc 1 - COMPLAINT with Jury Demand against All Defendants ( Filing fee $ 400 receip | 1262 |
| Doc 1-1 - Civil Cover Sheet | 1300 |
| Doc 1-2 - Exhibit C | 1302 |
| Doc 1-3 - Exhibit D | 1305 |
| Doc 1-4 - Exhibit E | 1307 |
| Doc 1-5 - Exhibit G | 1309 |
| Doc 1-6 - Exhibit H | 1311 |
| Doc 1-7 - Exhibit I | 1313 |
| Doc 1-8 - Exhibit J | 1315 |
| Doc 1-9 - Exhibit K | 1317 |
| Doc 1-10 - Exhibit L | 1320 |
| Doc 1-11 - Exhibit M | 1322 |
| Doc 1-19 - Exhibit U | 1324 |

# EXHIBIT "A"

1   **GILBERT, KELLY, CROWLEY & JENNETT LLP**
TIMOTHY W. KENNA, A PROFESSIONAL CORPORATION / Bar No. 64280
2   t.kenna@gilbertkelly.com
ARTHUR J. MC KEON III / Bar No. 082540
3   ajm@gilbertkelly.com
REBECCA J. SMITH / Bar No. 150428
4   rjs@gilbertkelly.com
401 B Street, Suite 2210
5   San Diego, California 92101
(619) 687-3000; FAX: (213) 615-7100
6
**Mailing Address:**
7   550 South Hope Street, 22nd Floor
Los Angeles, California 90071-2627
8
Attorneys for Defendant
9   NICOLE CHAKER

10              **UNITED STATES DISTRICT COURT**

11             **SOUTHERN DISTRICT OF CALIFORNIA**

12

13   SCOTT A. MCMILLAN, an individual,
THE MCMILLAN LAW FIRM, APC, a
14   California professional corporation,

15           Plaintiffs,
      vs.
16

17   DARREN D. CHAKER an individual, and
as trustee of PLATINUM HOLDINGS
18   GROUP TRUST, dba COUNTER
FORENSICS; NICOLE CHAKER, an
19   individual, and as trustee of NICOLE
CHAKER REVOCABLE LIVING
20   TRUST, VANIA CHAKER, an individual
and as beneficiary of The Island
21   Revocable Trust under Declaration of
Trust dated June 2, 2015, MARCUS MAC
22   as trustee of The Island Revocable Trust
under Declaration of Trust dated June 2,
23   2015,

24          Defendants.

25

26

27

28

    ) Case No. 3:16-CV-02186-WQH-MD
    )
    ) Judge: William Q. Hayes
    ) Courtroom 14B
    )
    ) Magistrate Hon. Mitchell D. Dembin
    ) Courtroom 11th Floor
    )
    ) **DEFENDANT NICOLE**
    ) **CHAKER'S EVIDENTIARY**
    ) **OBJECTIONS TO SCOTT**
    ) **MCMILLAN'S DECLARATION IN**
    ) **SUPPORT OF PLAINTIFFS'**
    ) **OPPOSITION TO DEFENDANT**
    ) **NICOLE CHAKER'S MOTION TO**
    ) **DISMISS AND ANTI-SLAPP**
    ) **MOTION**
    )
    ) (Defendant's Objection to Plaintiffs'
    ) Request for Juridical Notice, Reply to
    ) Opposition to Anti-SLAPP Motion,
    ) and Reply to Opposition to 12(b)(6)
    ) motion filed concurrently herewith)

[PER CHAMBERS, NO ORAL
ARGUMENT UNLESS ORDERED
BY COURT]

Date: February 6, 2017
Dept: 14B
Complaint Filed: August 29, 2016

Gilbert, Kelly
Crowley & Jennett LLP
Attorneys at Law

DEFENDANT NICOLE CHAKER'S OBJECTION TO DECLARATION OF SCOTT MCMILLIAN IN SUPPORT
OF ITS OPPOSITION TO DEFENDANT'S ANTI-SLAPP MOTION
4231450.1  48811-00002 TWK                       3:16-cv-02186-WQH-MD

1

Defendant Nicole Chaker hereby objects to portions of the Declaration of

Scott A. McMillian filed in support of Plaintiffs' Oppsoition to Defendant Nicole

Chaker's Anti-SLAPP Motion as set forth more fully below:

| **Matter to Which Objection is Made** | **Grounds for Objection** |
|---|---|
| Paragraph 4 of Scott A. McMillan's Declaration in Support of Request for Judicial Notice in connection Opposition to Nicole Chaker's Anti-SLAPP and 12(b)(6) Motions, page 7, lines 12 through 24 | Conclusory, Irrelevant and Not factual in nature. The declarant statements are not as to any facts relevant to a determination of the motion, but rather is a recitation of procedural matters and an interpretation of the contents of other pleadings. |
| Paragraph 7 of Scott A. McMillian's Declaration In Support of Opposition to Nicole Chaker's Anti-SLAPP and 12(b)(6) Motions, page 2, lines 25 through 27. | Lack of personal knowledge vague. Federal Rules of Evidence (FRE) 802 and 602 |
| Paragraph 10 of Scott A. McMillian's Declaration In Support of Opposition to Nicole Chaker's Anti-SLAPP and 12(b)(6) Motions, page 4, lines 2 through 6 | No foundation and speculation. FRE 702 and 703. No basis for personal knowledge. Lacks foundation/speculation. FRE 602. Hearsay. FRE 801-802. Best Evidence Rule. FRE 1002. |
| Paragraph 20 of Scott A. McMillian's Declaration In Support of Opposition to Nicole Chaker's Anti-SLAPP and | Lack of personal knowledge. FRE 802. Lacks foundation/speculation. FRE 602. Irrelevant. FRE 401 and 402. |

Gilbert, Kelly
Crowley & Jennett LLP
Attorneys at Law

-2-
DEFENDANT NICOLE CHAKER'S OBJECTION TO DECLARATION OF SCOTT MCMILLIAN IN SUPPORT
OF ITS OPPOSITION TO DEFENDANT'S ANTI-SLAPP MOTION
4231450.1  48811-00002                                                        3:16-cv-02186-WQH-MD

2

| | |
|---|---|
| 12(b)(6) Motions, page 5, lines 25 through 28 and page 6 lines 1 through 5. | |
| Exhibit 10 to the Declaration of Scott A. McMillian's Declaration In Support of Opposition to Nicole Chaker's Anti-SLAPP and 12(b)(6) Motions, referenced at page 6, line 5. | Lack of foundation.  Improper document of which to take judicial notice.  (See Nicole Chaker's Objection to Plaintiffs' Request for Judicial Notice) |
| Paragraph 26 of Scott A. McMillian's Declaration In Support of Opposition to Nicole Chaker's Anti-SLAPP and 12(b)(6) Motions, page 8, lines 15 through 20. | No foundation and speculation.  FRE 702 and 703.    No basis for personal knowledge.  Lacks foundation/speculation. FRE 602.  Hearsay.  FRE 801-802.  Best Evidence Rule.  FRE 1002. |
| Paragraph 27 of Scott A. McMillian's Declaration In Support of Opposition to Nicole Chaker's Anti-SLAPP and 12(b)(6) Motions, page 8, lines 21 through 26 | Lack of personal knowledge.  FRE 802.  Lacks foundation/speculation.  FRE 602.  Irrelevant.  FRE 401 and 402. |
| Exhibit 13 to Scott A. McMillian's Declaration In Support of Opposition to Nicole Chaker's Anti-SLAPP and 12(b)(6) Motions, referenced at paragraph 27, page 8, line 26. | Lack of foundation.  Improper document of which to take judicial notice.  (See Nicole Chaker's Objection to Plaintiffs' Request for Judicial Notice) |

Gilbert, Kelly
Crowley & Jennett LLP
Attorneys at Law

-3-

DEFENDANT NICOLE CHAKER'S OBJECTION TO DECLARATION OF SCOTT MCMILLIAN IN SUPPORT
OF ITS OPPOSITION TO DEFENDANT'S ANTI-SLAPP MOTION

4231450.1  48811-00002

3:16-cv-02186-WQH-MD

3

| | | |
|---|---|---|
| 1 | Paragraph 28 of Scott A. McMillian's | Lack of personal knowledge.  FRE 802. |
| 2 | Declaration In Support of Opposition to | Lacks foundation/speculation.  FRE 602. |
| 3 | Nicole Chaker's Anti-SLAPP and | Irrelevant.  FRE 401 and 402. |
| 4 | 12(b)(6) Motions, page 8, lines 27 | |
| 5 | through 28 and page 9, lines 1 through 7. | |
| 6 | | |
| 7 | Exhibit 14 to Scott A. McMillian's | Lack of foundation.  Improper document |
| 8 | Declaration In Support of Opposition to | of which to take judicial notice.  (See |
| 9 | Nicole Chaker's Anti-SLAPP and | Nicole Chaker's Objection to Plaintiffs' |
| 10 | 12(b)(6) Motions, referenced at page 9, | Request for Judicial Notice) |
| 11 | paragraph 28, line 7. | |
| 12 | | |
| 13 | Paragraph 29 of Scott A. McMillian's | Lack of personal knowledge.  FRE 802. |
| 14 | Declaration In Support of Opposition to | Lacks foundation/speculation.  FRE 602. |
| 15 | Nicole Chaker's Anti-SLAPP and | Irrelevant.  FRE 401 and 402. |
| 16 | 12(b)(6) Motions, page 9, lines 8 through | |
| 17 | 17. | |
| 18 | | |
| 19 | Exhibit 15 to Scott A. McMillian's | Lack of foundation.  Improper document |
| 20 | Declaration In Support of Opposition to | of which to take judicial notice.  (See |
| 21 | Nicole Chaker's Anti-SLAPP and | Nicole Chaker's Objection to Plaintiffs' |
| 22 | 12(b)(6) Motions, referenced at page 9, | Request for Judicial Notice) |
| 23 | line 17. | |
| 24 | Paragraph 30 of Scott A. McMillan's | No foundation and speculation.  FRE 702 |
| 25 | Declaration In Support of Opposition to | and 703.   No basis for personal |
| 26 | Nicole Chaker's Anti-SLAPP and | knowledge.  Lacks |
| 27 | 12(b)(5) Motions, page 9, lines 18 | foundation/speculation. FRE 602. |
| 28 | | |

Gilbert, Kelly
Crowley & Jennett LLP
Attorneys at Law

-4-

DEFENDANT NICOLE CHAKER'S OBJECTION TO DECLARATION OF SCOTT MCMILLIAN IN SUPPORT OF ITS OPPOSITION TO DEFENDANT'S ANTI-SLAPP MOTION

4231450.1   48811-00002

3:16-cv-02186-WQH-MD

4

| | |
|---|---|
| through 28. | Hearsay.  FRE 801-802 |
| | |
| Exhibit 15 referenced in Scott A. McMillian's Declaration In Support of Opposition to Nicole Chaker's Anti-SLAPP and 12(b)(6) Motions, referenced at page 9, paragraph 30, line 28 | Lack of foundation.  Improper document of which to take judicial notice.  (See Nicole Chaker's Objection to Plaintiffs' Request for Judicial Notice) |
| | |
| Paragraph 31 of Scott A. McMillian's Declaration In Support of Opposition to Nicole Chaker's Anti-SLAPP and 12(b)(6) Motions, page 10, lines 1 through 5. | No foundation and speculation.  FRE 702 and 703.   No basis for personal knowledge.  Lacks foundation/speculation. FRE 602. Hearsay.  FRE 801-802. |
| | |
| Exhibit 17 referenced in Scott A. McMillian's Declaration In Support of Opposition to Nicole Chaker's Anti-SLAPP and 12(b)(6) Motions, referenced at page 10, paragraph 31, line 4 | Lack of foundation.  Improper document of which to take judicial notice.  (See Nicole Chaker's Objection to Plaintiffs' Request for Judicial Notice) |
| | |
| Paragraph 32 of Scott A. McMillian's Declaration In Support of Opposition to Nicole Chaker's Anti-SLAPP and 12(b)(6) Motions, page 10, lines 6 through 8 | Lack of Foundation, Speculation, unsupported lay opinion testimony |

Gilbert, Kelly
Crowley & Jennett LLP
Attorneys at Law

-5-

DEFENDANT NICOLE CHAKER'S OBJECTION TO DECLARATION OF SCOTT MCMILLIAN IN SUPPORT
OF ITS OPPOSITION TO DEFENDANT'S ANTI-SLAPP MOTION
4231450.1  48811-00002                                                      3:16-cv-02186-WQH-MD

5

| | |
|---|---|
| 1  Paragraph 38 of Scott A. McMillian's | Lack of Foundation, Speculation, |
| 2  Declaration In Support of Opposition to | unsupported lay opinion testimony |
| 3  Nicole Chaker's Anti-SLAPP and | |
| 4  12(b)(6) Motions, page 13, lines 6-10 | |
| 5 | |
| 6  Paragraph 34 of Scott A. McMillian's | No foundation and speculation.  FRE 702 |
| 7  Declaration In Support of Opposition to | and 703.   No basis for personal |
| 8  Nicole Chaker's Anti-SLAPP and | knowledge.  Lacks |
| 9  12(b)(6) Motions, page 10, lines 22 | foundation/speculation. FRE 602. |
| 10  through 24 | Hearsay.  FRE 801-802. |
| 11 | |
| 12  Paragraph 38 of Scott A. McMillian's | No foundation and speculation.  FRE 702 |
| 13  Declaration In Support of Opposition to | and 703.   No basis for personal |
| 14  Nicole Chaker's Anti-SLAPP and | knowledge.  Lacks |
| 15  12(b)(6) Motions, page 13, lines 6 | foundation/speculation. FRE 602. |
| 16  through 10. | Hearsay.  FRE 801-802. |
| 17 | |
| 18  Paragraph 39 of Scott A. McMillian's | Lack of Foundation, Speculation, |
| 19  Declaration In Support of Opposition to | unsupported lay opinion testimony, |
| 20  Nicole Chaker's Anti-SLAPP and | unsupported expert testimony.  FRE 702 |
| 21  12(b)(6) Motions, page 13, lines 11 to 19. | and 703.  No basis for personal |
| 22 | knowledge.  Lacks |
| 23 | foundation/speculation.  FRE 602. |
| 24 | |
| 25  Paragraph 41 of Scott A. McMillian's | Lack of Foundation, Speculation, |
| 26  Declaration In Support of Opposition to | unsupported lay opinion testimony, |
| 27  Nicole Chaker's Anti-SLAPP and | unsupported expert testimony.  FRE 702 |
| 28 | |

Gilbert, Kelly
Crowley & Jennett LLP
Attorneys at Law

-6-
DEFENDANT NICOLE CHAKER'S OBJECTION TO DECLARATION OF SCOTT MCMILLIAN IN SUPPORT
OF ITS OPPOSITION TO DEFENDANT'S ANTI-SLAPP MOTION
4231450.1  48811-00002                                              3:16-cv-02186-WQH-MD

6

| | |
|---|---|
| 1 | 12(b)(6) Motions, page 13, lines 23 to 28 | and 703.  No basis for personal |
| 2 | and page 14, lines 1 through 8. | knowledge.  Lacks |
| 3 | | foundation/speculation.  FRE 602. |
| 4 | | |
| 5 | Paragraph 42 of Scott A. McMillian's | Lack of Foundation, Speculation, |
| 6 | Declaration In Support of Opposition to | unsupported lay opinion testimony, |
| 7 | Nicole Chaker's Anti-SLAPP and | unsupported expert testimony.  FRE 702 |
| 8 | 12(b)(6) Motions, page 14, lines 9 | and 703.  No basis for personal |
| 9 | through 28 and page 15 line 1 through 2. | knowledge.  Lacks |
| 10 | | foundation/speculation.  FRE 602. |
| 11 | | |
| 12 | Paragraph 50 of Scott A. McMillian's | Conclusory, Irrelevant and Not factual in |
| 13 | Declaration In Support of Opposition to | nature.  The declarant statements are not |
| 14 | Nicole Chaker's Anti-SLAPP and | as to any facts relevant to a determination |
| 15 | 12(b)(6) Motions, page 18 lines, 2 | of the motion, but rather is a recitation of |
| 16 | through 5. | procedural matters and an interpretation |
| 17 | | of the contents of other pleadings. |
| 18 | | |

1  12(b)(6) Motions, page 13, lines 23 to 28 and 703.  No basis for personal
2  and page 14, lines 1 through 8. knowledge.  Lacks
3  foundation/speculation.  FRE 602.
4
5  Paragraph 42 of Scott A. McMillian's Lack of Foundation, Speculation,
6  Declaration In Support of Opposition to unsupported lay opinion testimony,
7  Nicole Chaker's Anti-SLAPP and unsupported expert testimony.  FRE 702
8  12(b)(6) Motions, page 14, lines 9 and 703.  No basis for personal
9  through 28 and page 15 line 1 through 2. knowledge.  Lacks
10  foundation/speculation.  FRE 602.
11
12  Paragraph 50 of Scott A. McMillian's Conclusory, Irrelevant and Not factual in
13  Declaration In Support of Opposition to nature.  The declarant statements are not
14  Nicole Chaker's Anti-SLAPP and as to any facts relevant to a determination
15  12(b)(6) Motions, page 18 lines, 2 of the motion, but rather is a recitation of
16  through 5. procedural matters and an interpretation
17  of the contents of other pleadings.
18
19  Dated:  January 30, 2017            GILBERT, KELLY, CROWLEY & JENNETT
20                                      LLP
21
22  By:  /s/ ARTHUR J. MCKEON, III
23       ARTHUR J. MCKEON, III
         REBECCA J. SMITH
24       Attorneys for Defendant
         NICOLE CHAKER
25
26
27
28

Gilbert, Kelly
Crowley & Jennett LLP
Attorneys at Law

-7-

DEFENDANT NICOLE CHAKER'S OBJECTION TO DECLARATION OF SCOTT MCMILLIAN IN SUPPORT
OF ITS OPPOSITION TO DEFENDANT'S ANTI-SLAPP MOTION

4231450.1  48811-00002

3:16-cv-02186-WQH-MD

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JUN 18 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| SCOTT A. MCMILLAN and THE MCMILLAN LAW FIRM, APC,<br><br>                    Plaintiffs - Appellants,<br><br>   v.<br><br>DARREN D. CHAKER, an individual, and as trustee of PLATINUM HOLDINGS GROUP TRUST, DBA Counter Forensics; et al.,<br><br>                  Defendants - Appellees. | No. 18-55358<br><br>D.C. No. 3:16-cv-02186-WQH-MDD<br>U.S. District Court for Southern California, San Diego<br><br>**ORDER** |

A review of the docket demonstrates that counsel has failed to file the opening brief in this case.

Pursuant to Ninth Circuit Rule 42-1, this appeal is dismissed for failure to prosecute. Counsel for appellants is directed to notify his/her client immediately in writing regarding this dismissal.

This order served on the district court shall, 21 days after the date of the order, act as the mandate of this court.

FOR THE COURT:

MOLLY C. DWYER
CLERK OF COURT

By: Estela Urrutia
Deputy Clerk
Ninth Circuit Rule 27-7

Case 3:16-cv-02186-WQH-MDD   Document 1241   Filed 09/23/20   PageID.44253   Page 17 of 1196

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT A. MCMILLAN, an individual; THE MCMILLAN LAW FIRM, APC, a California professional corporation, | Case No.:  3:16-cv-02186-WQH-MDD |
| **Plaintiffs,** | **ORDER** |
| v. | |
| DARREN D. CHAKER, an individual and as trustee of PLATINUM HOLDINGS GROUP TRUST dba COUNTER FORENSICS; NICOLE CHAKER, an individual and as trustee of THE NICOLE CHAKER REVOCABLE LIVING TRUST, U/A dated August 18, 2010; VANIA CHAKER, an individual and as beneficiary of The Island Revocable Trust under Declaration of Trust dated June 2, 2015; MARCUS MACK, as trustee of The Island Revocable Trust under Declaration of Trust dated June 2, 2015, | |
| **Defendants.** | |

1

HAYES, Judge:

The matter before the Court is the Motion to File Documents Under Seal filed by Defendant Darren D. Chaker. (ECF No. 118).

**PROCEDURAL BACKGROUND**

On August 29, 2016, Plaintiffs Scott A. McMillan and The McMillan Law Firm, APC initiated this action by filing a Complaint against Defendants Darren D. Chaker, an individual and as trustee of Platinum Holdings Group Trust dba Counter Forensics; Vania Chaker, an individual and as trustee of Vania Chaker Trust One; and Nicole Chaker, an individual and as trustee of Nicole Chaker Trust One. (ECF No. 1). Plaintiffs brought the following three causes of action: (1) violation of Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1962(c), against all Defendants; (2) violation of RICO, 18 U.S.C. § 1962(d), against all Defendants; and (3) civil extortion against Defendants Darren Chaker and Nicole Chaker. *See id*. at 32-37. Plaintiffs sought injunctive relief; compensatory, treble, punitive, and exemplary damages; attorneys' fees; costs; pre-judgment interest and post-judgment interest; and "other and further relief as the Court deems just and proper." *Id*. at 38.

On August 30, 2016, Plaintiffs filed a Motion to File Documents Under Seal. (ECF No. 5). Plaintiffs requested to file under seal documents "which contain[] confidential personal information of third parties and other confidential documents." *Id*. at 2. Specifically, Plaintiffs requested to file the following five documents under seal: (1) Opposition to Application for Reissuance of Request for Order (Exhibit 2); (2) Letter from Chaker to McMillan (Exhibit 4); (3) Declaration of Petitioner (Exhibit 5); (4) Declaration of Respondent (Exhibit A); and (5) Email from Chaker to McMillan (Exhibit B). *See id*. On September 1, 2016, the Court issued an Order denying the Motion to File Documents Under Seal filed by Plaintiffs (ECF No. 5). (ECF No. 8). The Court stated that "Plaintiffs may file an amended motion to file [ ] documents under seal on or before September 12, 2016." *Id*. at 3.

2

On September 7, 2016, Plaintiffs filed an Amended Motion to File Documents Under Seal. (ECF No. 10). Plaintiffs requested to file the same five documents under seal as previously requested in the original Motion to File Documents Under Seal (ECF No. 5) because the documents "contain confidential personal information of third parties." *See* ECF No. 10 at 4. On September 14, 2016, the Court issued an Order granting the Amended Motion to File Documents Under Seal filed by Plaintiffs (ECF No. 10). (ECF No. 12).

On November 14, 2016, Defendant Darren Chaker filed a Motion to Dismiss Plaintiffs' Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 14). On November 15, 2016, Defendant Darren Chaker filed a Motion to Change Venue. (ECF No. 15). On the same day, Defendant Darren Chaker filed a Motion to Dismiss Plaintiffs' Complaint pursuant to California's Anti-SLAPP Statute. (ECF No. 16).

On December 5, 2016, Plaintiffs filed an Amended Complaint against Defendants Darren Chaker, an individual and as trustee of Platinum Holdings Group Trust dba Counter Forensics; Vania Chaker, an individual and as beneficiary of The Island Revocable Trust under Declaration of Trust dated June 2, 2015; Marcus Mack, as trustee of The Island Revocable Trust under Declaration of Trust dated June 2, 2015; and Nicole Chaker, an individual and as trustee of the Nicole Chaker Revocable Living Trust, U/A dated August 18, 2010. (ECF No. 25). Plaintiffs brought the following three causes of action: (1) violation of RICO, 18 U.S.C. §1962(c), against Defendant Darren Chaker; (2) violation of RICO, 18 U.S.C. § 1962(d), against all Defendants; and (3) civil extortion against Defendants Darren Chaker and Nicole Chaker. *See id*. at 33-46. Plaintiffs sought injunctive relief; compensatory, treble, punitive, and exemplary damages; attorneys' fees; costs; pre-judgment interest and post-judgment interest; and "other and further relief as the Court deems just and proper." *Id*. at 47.

On December 16, 2016, Defendant Nicole Chaker filed a Motion to Strike and a Motion to Dismiss Plaintiffs' third cause of action of the Amended Complaint pursuant to California Code of Civil Procedure § 425.15(b). (ECF No. 36).

On January 23, 2017, the Court issued an Order denying as moot the Motions to Dismiss filed by Defendant Darren Chaker (ECF Nos. 14, 16). (ECF No. 46).

On February 17, 2017, Defendant Darren Chaker filed a Motion to Strike portions of the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(f). (ECF No. 55). On the same day, Defendant Darren Chaker filed a Motion to Dismiss Plaintiffs' Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 56).

On the same day, the Court issued an Order denying the Motion to Change Venue filed by Defendant Darren Chaker (ECF No. 15). (ECF No. 57).

On March 3, 2017, Defendant Vania Chaker filed a Motion to Dismiss Plaintiffs' Amended Complaint for insufficient service of process pursuant to Federal Rule of Civil Procedure 12(b)(5) or, in the alternative, to Quash Defective Service. (ECF No. 59). On March 28, 2017, Defendant Darren Chaker filed a Motion for Sanctions pursuant to Federal Rule of Civil Procedure 11. (ECF No. 66).

On May 22, 2017, Defendant Darren Chaker filed a Motion to Seal. (ECF No. 78). Defendant Darren Chaker requested to seal Exhibit FF to Plaintiffs' Complaint and Amended Complaint because Exhibit FF "contains private, personal, and confidential information . . . and potentially exposes [Defendant] Darren [Chaker] to identity theft." (ECF No. 78-1 at 5). Defendant Darren Chaker further requested to seal Exhibit C to Plaintiffs' Response in opposition to Defendant Darren Chaker's Motion for Sanctions because Exhibit C "has personal information . . . ." *Id.*

On August 28, 2017, the Order issued an Order stating, in relevant part,

> IT IS HEREBY ORDERED that Defendant Darren Chaker's motion to dismiss the First Amended Complaint is granted. (ECF No. 56). The First Amended Complaint (ECF No. 25) is dismissed without prejudice as to Defendant Darren Chaker. Accordingly, Defendant Darren Chaker's motion

to strike portions of the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(f) is denied as moot. (ECF No. 55).

IT IS HEREBY ORDERED that Defendant Darren Chaker's motion for sanctions is denied. (ECF No. 66)[.]

IT IS HEREBY ORDERED that Defendant Nicole Chaker's motion to dismiss the First Amended Complaint is granted. (ECF No. 35). The First Amended Complaint (ECF No. 25) is dismissed without prejudice as to Defendant Nicole Chaker. Defendant Nicole Chaker's anti-SLAPP motion to strike and for attorneys' fees and costs is denied as moot. (ECF No. 36).

IT IS HEREBY ORDERED that Defendant Vania Chaker's motion to quash the service of process is granted. (ECF No. 59). The Court quashes service upon Defendant Vania Chaker and grants Plaintiffs sixty (60) days from the date any amended complaint is filed upon which to perfect service upon Vania Chaker in accordance with the requirements of Federal Rule of Civil Procedure 4.

IT IS FURTHER ORDERED that the First Amended Complaint (ECF No. 25) is dismissed without prejudice as to Defendant Vania Chaker. Plaintiffs shall file any motion for leave to file an amended complaint pursuant to Local Rule 7.1 and within thirty (30) days of the date this Order is issued.

(ECF No. 83 at 15-16).

On October 2, 2017, the Court issued an Order stating, in relevant part,

IT IS HEREBY ORDERED that the motion [to seal] is GRANTED with respect to the request to seal and denied as to all other requests. (ECF No. 78). The Clerk of Court shall seal the following previously filed documents: (1) Exhibit FF to the Original Complaint (ECF No. 1-30); (2) Exhibit FF to the First Amended Complaint (ECF No. 25-29); (3) Exhibit C attached to the declaration of Plaintiff Scott McMillan in support of his opposition to Defendant's motion for sanctions (ECF No. 75-1 at 121-141); and, (4) Exhibits 1, 2, 4, 5, 6, 7, and 8 attached to Plaintiffs' response in opposition to the motion to seal (ECF Nos. 80-2, 80-3, 80-5, 80-6, 80-7, 80-8, 80-9).

(ECF No. 84 at 5).

On October 10, 2017, the Court issued an Order directing the Clerk of the Court to close the case.  (ECF No. 86).

On November 5, 2017, Plaintiffs filed a Notice of Appeal as to the Court's October 10, 2017 Order (ECF No. 86) and "the prior adverse rulings."  (ECF No. 87 at 2).

On December 12, 2017, Defendant Nicole Chaker filed a Motion for Extension of Time to File a Cross-Appeal pursuant to Federal Rule of Appellate Procedure 4(a)(5).  (ECF No. 90).  On March 8, 2018, the Court issued an Order granting the Motion for Extension of Time to File a Cross-Appeal filed by Defendant Nicole Chaker (ECF No. 90).  (ECF No. 99).

On March 13, 2018, Defendant Nicole Chaker filed a Notice of Cross-Appeal as to the Court's August 28, 2017 Order (ECF No. 83) and the Court's October 10, 2017 Order (ECF No. 86).  (ECF No. 101).  On March 16, 2018, Plaintiffs filed a Notice of Cross-Appeal as to the Court's March 8, 2018 Order (ECF No. 99) and "the prior adverse rulings."  (ECF No. 102 at 2).

On February 18, 2020, the Court of Appeals affirmed this Court's rulings.  (ECF No. 117).

On June 25, 2020, Defendant Darren Chaker filed a Motion to File Documents Under Seal.  (ECF No. 118).[1]  On July 20, 2020, Plaintiffs filed a Response in opposition.  (ECF No. 123).  The record reflects that no Reply has been filed.

### STANDARD OF REVIEW

"[C]ourts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents."  *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)).  Courts "start with a strong presumption in

---

[1] Defendant Darren Chaker requests judicial notice of the June 29, 2018 minute order entered in *Scott A. McMillan v. Darren D. Chaker, et. al.*, No. 37-2017-00036344-CU-NP-CTL (Ex. C to Bravo Decl., ECF No. 118-2 at 92-94).  *See* ECF No. 118-3.  The Court has not considered this minute order in resolving this Order.

favor of access to court records" "based on the need for federal courts, although
independent—indeed, particularly because they are independent—to have a measure of
accountability and for the public to have confidence in the administration of justice." *Id.*

"[A] party seeking to seal a judicial record then bears the burden of overcoming this
strong presumption by meeting the 'compelling reasons' standard." *Id.* (quoting
*Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006)). "That is,
the party must articulate[ ] compelling reasons supported by specific factual findings, . . .
that outweigh the general history of access and the public policies favoring disclosure,
such as the public interest in understanding the judicial process." *Kamakana*, 447 F.3d at
1178-79 (first alteration in original) (citation omitted). The presumed right to access to
court proceedings and documents can be overcome "only by an overriding right or interest
based on findings that closure is essential to preserve higher values and is narrowly
tailored to serve that interest." *Oregonian Pub. Co. v. U.S. Dist. Court for Dist. of Oregon*,
920 F.2d 1462, 1465 (9th Cir. 1990). The Court of Appeals in *Chrysler* stated, in relevant
part,

> Under this stringent standard, a court may seal records only when it finds "a
> compelling reason and articulate[s] the factual basis for its ruling, without
> relying on hypothesis or conjecture." . . . The court must then "conscientiously
> balance[ ] the competing interests of the public and the party who seeks to
> keep certain judicial records secret." . . . What constitutes a "compelling
> reason" is "best left to the sound discretion of the trial court." . . . Examples
> include when a court record might be used to "gratify private spite or promote
> public scandal," to circulate "libelous" statements, or "as sources of business
> information that might harm a litigant's competitive standing."

*Chrysler*, 809 F.3d at 1096-97 (first and third alterations in original) (citations omitted)
(first quoting *Kamakana*, 447 F.3d at 1179, then quoting *Nixon*, 435 U.S. at 599).

## DISCUSSION

Defendant Darren Chaker requests to seal portions of the Complaint (ECF No. 1)
and Amended Complaint (ECF No. 25) which "include reference to a California sealed
paternity case . . . involving Defendant Darren [] Chaker [ ]." (ECF No. 118-1 at 2)

(emphasis omitted).  Specifically, Defendant Darren Chaker requests to seal paragraphs 39, 40, and 49 of the Complaint (ECF No. 1) and paragraphs 40, 41, and 50 of the Amended Complaint (ECF No. 25).  *See id.*  Plaintiffs contend that there is no compelling reason to seal paragraphs 39, 40, and 49 of the Complaint (ECF No. 1) and paragraphs 40, 41, and 50 of the Amended Complaint (ECF No. 25).  Plaintiffs assert that the paragraphs contain allegations against Defendant Darren Chaker regarding extortion and do not contain records from or confidential information about the paternity case.  Plaintiffs assert that the paragraphs only mention the existence of the paternity case itself and that Plaintiff was an attorney in that matter.  Plaintiffs contend that the paragraphs were not filed for an improper purpose.

In this case, Defendant Darren Chaker "bears the burden of overcoming th[e] strong presumption [in favor of access to court records] by meeting the 'compelling reasons' standard." *Chrysler*, 809 F.3d at 1096 (quoting *Kamakana*, 447 F.3d at 1178).  The Court concludes that Defendant Darren Chaker fails to overcome the strong presumption in favor of public access with respect to the allegations of Plaintiffs' Complaint (ECF No. 1) and Amended Complaint (ECF No. 25).

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to File Documents Under Seal filed by Defendant Darren D. Chaker (ECF No. 118) is DENIED.

Dated:  August 14, 2020

Hon. William Q. Hayes
United States District Court

1
2  **SULLIVAN, KRIEGER, TRUONG,**
   **SPAGNOLA & KLAUSNER, LLP**
   Eliot F. Krieger, State Bar No. 159647
3  *ekrieger@sullivankrieger.com*
4  Charles T. Spagnola, P.C., State Bar No. 144983
   *cspagnola@sullivankrieger.com*
5  444 West Ocean Boulevard, Suite 1700
6  Long Beach, CA 90802
   Telephone: (562) 597-7070
7
8  Attorneys for Defendant DARREN D. CHAKER,
   individually, and as trustee of PLATINUM HOLDINGS
   GROUP TRUST
9

10             **UNITED STATES DISTRICT COURT**

11        **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

12 SCOTT A. MCMILLAN, an individual,      ) Case No. 3:16-CV-02186-WQH-MD
   THE MCMILLAN LAW FIRM, APC, a          )
13 California professional corporation,   ) Judge: Hon. William Q. Hayes
                                          ) Magistrate: Hon. Mitchell D. Dembin
14            Plaintiffs,                 )
                                          ) **OPPOSITION TO PLAINTIFF'S**
15        v.                              ) **EX PARTE APPLICATION TO**
                                          ) **CONTINUE HEARING DATE**
16 DARREN D. CHAKER an individual, and    ) **AND OPPOSITION DATE ON**
   as trustee of PLATINUM HOLDINGS        ) **MOTION FOR SANCTIONS**
17 GROUP TRUST, dba COUNTER               )
   FORENSICS; NICOLE CHAKER, an           ) Opposition Date for Motion for
18 individual, and as trustee of NICOLE   ) Sanctions: April 17, 2017
   CHAKER TRUST ONE, VANIA                )
19 CHAKER, an individual and as trustee of ) Hearing Date: May 1, 2017
   VANIA CHAKER TRUST ONE,                )
20                                        )
             Defendants.                  ) Complaint Filed: August 29, 2016
21                                        )
                                          )
22                                        ) **[PER CHAMBERS ORDER, NO**
                                          ) **ORAL ARGUMENT UNLESS**
23                                        ) **ORDERED BY COURT]**
                                          )
24                                        )
                                          )
25                                        )
                                          )
26 _____ )
27
28

1    Defendant, DARREN D. CHAKER an individual, and as trustee of PLATINUM
2  HOLDINGS GROUP TRUST, dba COUNTER FORENSICS (referred to herein as
3  "Defendant" or "Darren"), submits this Opposition to Plaintiff SCOTT A.
4  MCMILLAN, an individual, THE MCMILLAN LAW FIRM, APC, a California
5  professional corporation's (referred to herein as "Plaintiffs" or "McMillan"), Ex Parte
6  Application to enlarge the time to file their Opposition to Darren's Motion for Sanctions
7  pursuant to Fed. R. Civ. P. 11.

8

9  **I    INTRODUCTION**

10    Defendant's Motion for Sanctions was filed on March 28, 2017, and based on the
11  hearing date, the opposition would be due on April 17, 2017, three weeks after filing
12  and service. The complaint that formed the basis for Darren's sanctions motion alleges
13  spurious and outright false allegations entirely unrelated to the alleged claims, and
14  concerns fictional misconduct that occurred up to seven years before McMillan and
15  Darren even met. In light of the egregious, offensive and disingenuous language in the
16  Complaint, it is in the interests of justice to end this matter sooner rather than later and
17  deny Plaintiffs' Ex Parte Application.

18

19  **II    ARGUMENT**
20  **A. <u>No Good Cause Was Stated to Grant an Extension</u>**
21    As stated in Darren's Motion for Sanctions, McMillan's RICO claims are
22  frivolous and the Court can infer that McMillan's intent was to harass since the facts
23  demonstrate he has a motive to harass. **In re Grantham Bros.**, 922 F.2d 1438, 1443
24  (9th Cir. 1991).
25    Although McMillan chronicles the various matters he has and that he "is behind
26  on other work," and lists some briefs he is working on (including one that was filed on
27  March 23, 2017, five days before our motion was filed), under Fed. R. Civ. Pro. 6(b),
28  the Court has the discretion to find that good cause has not been asserted.  In this case,

McMillan merely lists the sort of work that attorneys do, with no reason stated why those matters get priority over this one. As cited by Plaintiffs, the Court may use its discretion to grant or deny the extension as "a district court has the inherent power to control the disposition of the cases on its docket in a manner which will promise the economy of time and effort for itself, for counsel, and for litigants," <u>Filtrol Corp. v. Kelleher</u>, 467 F. 2d 242,244 (9th Cir. 1972) (citation and internal quotation marks omitted). In this case, given the nature of the Complaint filed by Plaintiffs, coupled with the baseless assertions set forth in the Complaint, this Court should use its discretion to deny this accommodation requested by Plaintiffs.

## B. **Darren's Previous Request is Distinguishable**

McMillan states in his declaration that he had previously agreed to an extension requested by Darren to file a motion to dismiss on January 25, 2017. At that time, Darren's prior counsel had declared a conflict and Darren would have been deprived of counsel had he not obtained an agreement to extend the time to file a motion to dismiss the complaint. Further, this occurred at no fault of Darren. Had McMillan not granted the extension, this Court would have been compelled to do so at the request of new counsel. In effect, McMillan agreed to do something that, as an attorney, he knew the court would have done, sua sponte. As it was, Darren's new counsel had just one week from the time the substitution of attorney was signed by the court, on February 8, 2017 (ECF 54) to February 17, 2017, the date the motion to dismiss was filed.

This situation is distinguishable in that without any extension of time, McMillan has three weeks respond to Darren's Motion for Sanctions, which should have been more than sufficient. Given that this entire matter wastes judicial resources in support of McMillan's effort to pursue a personal vendetta, any extension that prolongs this matter should be denied.

## III.    CONCLUSION

For the foregoing reasons, while Defendant understands and respects that the Court has the full discretion to grant or deny the extension request and control its own calendar, it urges the court to deny Plaintiffs' Ex Parte application to enlarge time to allow them more than three weeks to respond to Defendant's Motion for Sanctions.

DATED:      April 12, 2017               Respectfully Submitted,

                              **SULLIVAN, KRIEGER, TRUONG,
                              SPAGNOLA & KLAUSNER, LLP**

                              By:   /s/ Eliot F. Krieger
                                    Eliot F. Krieger, SBN 159647
                                    *ekrieger@sullivankrieger.com*
                                    Charles T. Spagnola, P.C., SBN 144983
                                    *cspagnola@sullivankrieger.com*
                                    444 West Ocean Boulevard, Suite 1700
                                    Long Beach, CA 90802
                                    Telephone: (562) 597-7070

                              *Attorneys for Defendant Darren Chaker  and as
                              trustee of PLATINUM HOLDINGS GROUP
                              TRUST, dba COUNTER FORENSICS*

OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION TO CONTINUE HEARING DATE OF DEFENDANT
DARREN CHAKER'S  MOTION FOR SANCTIONS

# **CERTIFICATE OF SERVICE**

I, Charles Spagnola, an attorney, certify that on the 12th day of April, 2017, I filed the foregoing document with the Clerk of the Court for the United States District Court, Southern District of California by using the Court's CM/ECF system, which will send notifications of such filing to all counsel of record.


s/ Charles Spagnola

Charles Spagnola

4

OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION TO CONTINUE HEARING DATE OF DEFENDANT DARREN CHAKER'S MOTION FOR SANCTIONS

22

AO 441    Summons in a Civil Action

# United States District Court
## SOUTHERN DISTRICT OF CALIFORNIA

Scott A. McMillan, an individual; The McMillan Law
Firm, APC, a California professional corporation

*Plaintiff*

**V.**

See Attachment

*Defendant*

Civil Action No.   16cv2186-JM-MDD

## SUMMONS IN A CIVIL ACTION

To:  *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) - or 60 days if you are the United States or a United States agency, or an office or employee of the United States described in Fed. R. Civ. P. 12(a)(2) or (3) - You must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Scott A McMillan
4670 Nebo Drive, Suite 200
La Mesa, CA 91941
(619)464-1500

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Date:        8/29/16



John Morrill
*CLERK OF COURT*
S/              J. Gutierrez
*Signature of Clerk or Deputy Clerk*

AO 441     Summons in a Civil Action                                                                                    (Page 2)

**Civil Action No.**   16cv2186-JM-MDD                          Date Issued:          8/29/16

# PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4(1))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____.

I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____; or

I left the summons at the individual's residence or place of abode with *(name)* _____

_____, a person of suitable age and discretion who resides there,

on *(date)* _____, and mailed a copy to the individual's last known address; or

I served the summons on *(name of the individual)* _____, who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____; or

I returned the summons unexecuted because _____; or

Other *(specify)*:


My fees are $ _____ for travel and $ _____ for services, for a total of $ _____.

I declare under penalty of perjury that this information is true.


Date:  _____                    _____
                                                                          *Server's Signature*

                                                                _____
                                                                          *Printed name and title*

                                                                _____
                                                                          *Server's address*

### NOTICE OF RIGHT TO CONSENT TO TRIAL BY A UNITED STATES MAGISTRATE JUDGE

IN ACCORDANCE WITH THE PROVISION OF 28 USC 636(C) YOU ARE HEREBY NOTIFIED THAT A U.S. MAGISTRATE JUDGE OF THIS DISTRICT MAY, UPON CONSENT OF ALL PARTIES, CONDUCT ANY OR ALL PROCEDDINGS, INCLUDING A JURY OR NON-JURY TRIAL, AND ORDER THE ENTRY OF A FINAL JUDGMENT.

YOU SHOULD BE AWARE THAT YOUR DECISION TO CONSENT OR NOT CONSENT IS ENTIRELY VOLUNTARY AND SHOUL BE COMMUNICATED SOLELY TO THE CLERK OF COURT.  ONLY IF ALL PARTIES CONSENT WILL THE JUDGE OR MAGISTRATE JUDGE WHOM THE CASE HAS BEEN ASSIGNED BE INFORMED OF YOUR DECISION.

JUDGMENTS OF THE U.S. MAGISTRATE JUDGES ARE APPEALABLE TO THE U.S. COURT OF APPEALS IN ACCORDANCE WITH THIS STATUTE AND THE FEDERAL RULES OF APPELLATE PROCEDURE.

AO 441    Summons in a Civil Action                                                                (Page 3)

# United States District Court

## SOUTHERN DISTRICT OF CALIFORNIA

## (ATTACHMENT)

**Civil Action No.**   16cv2186-JM-MDD

Darren N. Chaker, an individual, and as trustee of Platinum Holdings Group Trust  doing business as Counter Forensics; Nicole Chaker  an individual, and as trustee of Nicole Chaker Trust One; Vania Chaker  an individual, and as trustee of Nicole Chaker Trust One; Vania Chaker, an individual and as trustee of Vania Chaker Trust One

Case 3:16-cv-02186-WQH-MDD Document 137-1 Filed 09/23/22 PageID.4249 Page 32 of
1196
Case 3:16-cv-02186-WQH-MDD Document 89-1 Filed 11/06/17 PageID.753 Page 1 of 2

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| **FILED** |
| --- |
| NOV 06 2017 |
| MOLLY C. DWYER, CLERK<br>U.S. COURT OF APPEALS |

SCOTT A. MCMILLAN; THE
MCMILLAN LAW FIRM, APC,

               Plaintiffs - Appellants,

   v.

DARREN D. CHAKER, an
individual, and as trustee of
PLATINUM HOLDINGS GROUP
TRUST, DBA Counter Forensics;
VANIA CHAKER, an individual and
as beneficiary of The Island
Revocable Trust under Declaration of
Trust dated June 2, 2015; NICOLE
CHAKER, an individual, and as
trustee of THE NICOLE CHAKER
REVOCABLE LIVING TRUST,
U/A dated August 18, 2010,

               Defendants - Appellees.

No. 17-56676

D.C. No. 3:16-cv-02186-WQH-MDD
U.S. District Court for Southern
California, San Diego

**TIME SCHEDULE ORDER**

The parties shall meet the following time schedule.

| | |
| --- | --- |
| **Thu., January 4, 2018** | Appellant's opening brief and excerpts of record shall be served and filed pursuant to FRAP 32 and 9th Cir. R. 32-1. |
| **Mon., February 5, 2018** | Appellee's answering brief and excerpts of record shall be served and filed pursuant to FRAP 32 and 9th Cir. R. 32-1. |

Case 3:16-cv-02186-WQH-MDD   Document 123-1   Filed 09/23/22   PageID.4250   Page 34 of
1196
Case 3:16-cv-02186-WQH-MDD   Document 89-1   Filed 11/06/17   PageID.3752   Page 2 of 2

**The optional appellant's reply brief shall be filed and served within 21 days of service of the appellee's brief, pursuant to FRAP 32 and 9th Cir. R. 32-1.**

**Failure of the appellant to comply with the Time Schedule Order will result in automatic dismissal of the appeal. See 9th Cir. R. 42-1.**

FOR THE COURT:

MOLLY C. DWYER
CLERK OF COURT

By: John Brendan Sigel
Deputy Clerk
Ninth Circuit Rule 27-7

1  **FREEMAN MATHIS & GARY, LLP**
   TIMOTHY W. KENNA, A PROFESSIONAL CORPORATION / Bar No. 64280
2  t.kenna@gilbertkelly.com
   ARTHUR J. MC KEON III / Bar No. 082540
3  ajm@gilbertkelly.com
   REBECCA J. SMITH / Bar No. 150428
4  rjs@gilbertkelly.com
   401 B Street, Suite 2210
5  San Diego, California 92101
   (619) 687-3000; FAX: (213) 615-7100
6
   **Mailing Address:**
7  550 South Hope Street, 22nd Floor
   Los Angeles, California 90071-2627
8
   Attorneys for Defendant
9  NICOLE CHAKER

10              **UNITED STATES DISTRICT COURT**

11             **SOUTHERN DISTRICT OF CALIFORNIA**

12

13  SCOTT A. MCMILLAN, an individual,      ) Case No. 3:16-CV-02186-WQH-MD
    THE MCMILLAN LAW FIRM, APC, a          )
14  California professional corporation,    ) Judge: William Q. Hayes
                                           ) Courtroom 14B
15              Plaintiffs,                 )
         vs.                               ) Magistrate Hon. Mitchell D. Dembin
16                                         ) Courtroom 11th Floor
    DARREN D. CHAKER an individual,        )
17  and as trustee of PLATINUM             ) **DECLARATION OF REBECCA J.**
    HOLDINGS GROUP TRUST, dba             ) **SMITH IN SUPPORT OF**
18  COUNTER FORENSICS; NICOLE             ) **DEFENDANT NICOLE**
    CHAKER, an individual, and as trustee  ) **CHAKER'S NOTICE OF MOTION**
19  of THE NICOLE CHAKER                  ) **FOR EXTENSION OF TIME TO**
    REVOCABLE LIVING TRUST, U/A           ) **FILE CROSS-APPEAL (FRAP**
20  dated August 18, 2010, VANIA          ) **4(a)(5))**
    CHAKER, an individual and as          )
21  beneficiary of The Island Revocable    ) (Notice of Motion, Memorandum of
    Trust under Declaration of Trust dated ) Points and Authorities In Support Of
22  June 2, 2015, MARCUS MACK as          ) Motion To Extend Time For Filing
    trustee of The Island Revocable Trust  ) Notice of Cross-Appeal, and Proposed
23  under Declaration of Trust dated June 2,) Order filed and served concurrently
    2015,                                  ) herewith)
24                                         )
               Defendants.                 ) Date:  January 15, 2018
25  _____   ) Dept:  14B
                                           )
26

27

28

         DECLARATION OF REBECCA J. SMITH IN SUPPORT OF NICOLE
         CHAKER'S MOTION TO EXTEND TIME TO FILE CROSS-APPEAL

I, REBECCA J. SMITH, declare:

1.      I am an attorney duly licensed to practice law in the State of California, including this court, and a partner in the law offices of Freeman Mathis & Gray LLP, attorneys of record for Defendant Nicole Chaker in the above entitled action.  I have personal knowledge of the facts set forth herein and could competently testify thereto if called upon to do so.

2.      This declaration is submitted in support of Defendant Nicole Chaker's Motion For Extension Of Time By Which To File Cross-Appeal.

3.      Attorney Timothy W. Kenna, Arthur J. McKeon, III and I represented Nicole Chaker as defendant in this action brought by Scott A. McMillan and The McMillan Law Firm.

4.      On Ms. Chaker's behalf my firm filed both a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and an anti-SLAPP motion under California Code of Civil Procedure § 425.16.

5.      On August 28, 2017, the court ruled on Nicole Chaker's Motion, granting the motion to dismiss in its entirety and finding that the anti-SLAPP motion was moot based on the granting of the 12(b)(6) motion and not addressing the anti-SLAPP motion substantively.  (A true and correct copy of the Court's Order (ECF 83) is attached hereto, designated as exhibit "A" and incorporated herein by this reference.)

6.      In the court's August 28,2017, order the court provided plaintiffs with thirty (30) days to file a motion for leave to amend.  A motion for leave to amend was not filed and accordingly, on October 10, 2017, the court ordered the case closed.  (A true and correct copy of the case closure notice (ECF 86) is attached hereto, designated as exhibit "B" and incorporated herein by this reference.)

7.      On November 5, 2017, plaintiffs filed a notice of appeal.  Timothy W. Kenna and I did not receive service of the Notice of Appeal by electronic or any other service.

8.    Generally, our office procedure and my procedure is when a notification is received from the court or another party in an action which would require some action or response on behalf of our office, that all appropriate dates are placed on my calendar.  Because we did not receive a notice of appeal, neither myself, nor my secretary, or Timothy Kenna and his secretary calendared a final date for the filing of a Cross-Appeal.

9.    On November 9, 2017, I received a letter from the 9th Circuit Court of Appeal advising Appellant that the notice of appeal had been received in the Clerk's office of the United States Court of Appeal.  At the same time, I received a notice from the 9th Circuit Court that I was not registered for electronic filing and a copy of the scheduling order.  (A true and correct copy of the notices and letters received from the 9th Circuit Court are attached hereto, designated as exhibit "C" and incorporated herein by this reference.)

10.    Upon receipt of the above notices from the 9th Circuit Court, my office examined the district court's website to ascertain whether a notice of appeal had been filed.  Upon reviewing PACER we determined that a notice of appeal had in fact been filed.  This was the first notice we had of a notice of appeal having been filed.  Because this notice had not been served and was obtained from the court's website, it inadvertently wasn't processed in order to have all relevant associated dates placed on the attorney's calendar.  (A true and correct copy of the notice of appeal (ECF 87 is attached hereto, designated as exhibit "D" and incorporated herein by this reference.)

11.    Our office had been retained to represent the interest of Nicole Chaker in the underlying matter through her insurance carrier.  Accordingly, our office, specifically, attorney Timothy W. Kenna then notified Nicole Chaker's insurance carrier that an Appeal had been filed and provided a copy to the insurance carrier and requested that our office be again appointed to represent Ms. Chaker.

Freeman Mathis
& Gary, LLP
Attorneys at Law

DECLARATION OF REBECCA J. SMITH IN SUPPORT OF NICOLE CHAKER'S MOTION TO EXTEND TIME TO FILE CROSS-APPEAL

12.     In addition to filing the Notice of Appeal, plaintiffs have now filed a
separate state court action, San Diego Superior Court Case No. 37-2017-00036344-
U-NP-CTL attempting to set forth causes of action for Civil Extortion and Unfair
Competition, Business & Profession Code Section 17200 based on the same
allegations which had been alleged in the action dismissed by the court.  (A true and
correct copy of the state court action, without the exhibits is attached hereto,
designated as exhibit "E" and incorporated herein by this reference.)  Counsel from
my office also undertook to communicate with Ms. Chaker's insurance carrier
regarding this new state court action which had been filed.

13.     Because of the numerous issues arising in regard to the appeal of the
first action and plaintiff's refiling of a second state court action, there was some
delay in obtaining confirmation from the insurance carrier that my firm had been
retained to represent Nicole Chaker in the appeal.

14.     Once we were notified that we had been retained to represent Nicole
Chaker in the appeal, we reviewed the notice of appeal and relevant case authority to
determine whether a cross-appeal was required under the circumstances of the case.
While it appears that all issues have been appealed by plaintiffs including both the
granting of the motion to dismiss and the court's failure to make a determination on
the anti-SLAPP motion, because of the nature of plaintiffs' notice of appeal, there is
some small area of question as to the issues appealed.  Accordingly, in an abundance
of caution a determination was made to file a cross-appeal on Nicole Chaker's
behalf.

15.     A notice of cross-appeal has been prepared on behalf of Nicole Chaker
and is attached hereto, designated as exhibit "F" and incorporated herein by this
reference.

Freeman Mathis
& Gary, LLP
Attorneys at Law

DECLARATION OF REBECCA J. SMITH IN SUPPORT OF NICOLE
CHAKER'S MOTION TO EXTEND TIME TO FILE CROSS-APPEAL

1   I declare under penalty of perjury that the foregoing is true and correct.

2   Executed on this 12th day of December, 2017, at San Diego, California.

3

4   _____

5   REBECCA J. SMITH

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Freeman Mathis
& Gary, LLP**
Attorneys at Law

**DECLARATION OF REBECCA J. SMITH IN SUPPORT OF NICOLE
CHAKER'S MOTION TO EXTEND TIME TO FILE CROSS-APPEAL**

Case 3:16-cv-02186-WQH-MDD Document 127-1 Filed 09/23/22 PageID.4256 Page 40 of
Case 3:16-cv-02186-WQH-MDD Document 91-1 Filed 12/12/17 PageID.3764 Page 6 of 89
1196

# Exhibit "A"

Case 3:16-cv-02186-WQH-MDD   Document 93-1   Filed 08/28/17   PageID.3508   Page 1 of 36

1

2

3

4

5

6

7

8                        **UNITED STATES DISTRICT COURT**

9                        **SOUTHERN DISTRICT OF CALIFORNIA**

10   SCOTT A. MCMILLAN, an                  CASE NO. 16cv2186-WQH-MDD
     individual; THE MCMILLAN LAW
11   FIRM, APC, a California professional   ORDER
     corporation,
12
                              Plaintiffs,
13              v.

14   DARREN D. CHAKER, an individual,
     and as trustee of PLATINUM
15   HOLDINGS GROUP TRUST doing
     business as Counter Forensics, *et al.*,
16
                              Defendants.

17   HAYES, Judge:

18          The matters before the Court are the motion to dismiss and the motion to strike

19   Plaintiffs' third cause of action filed by Defendant Nicole Chaker (ECF Nos. 35, 36);

20   the motion to dismiss and motion to strike filed by Defendant Darren D. Chaker (ECF

21   Nos. 55, 56); the motion to dismiss or alternatively to quash service filed by Defendant

22   Vania Chaker (ECF No. 59); and, the motion for sanctions by Defendant Darren Chaker

23   (ECF No. 66).

24   **I. BACKGROUND**

25          On December 5, 2016, Plaintiffs Scott A. McMillan and The McMillan Law

26   Firm, APC filed the First Amended Complaint ("FAC") against Defendant Darren D.

27   Chaker, an individual and as trustee of Platinum Holdings Group Trust, dba Counter

28   Forensics; Defendant Nicole Chaker, an individual and as trustee of The Nicole Chaker

Case 3:16-cv-02186-WQH-MDD   Document 127-1   Filed 08/23/22   PageID.5458   Page 42 of 86
Case 3:16-cv-02186-WQH-MDD   Document 83-1   Filed 08/18/17   PageID.3648   Page 2 of 36
1196

1    Revocable Living Trust, U/A dates August 18, 2010; Defendant Vania Chaker, an

2    individual and as beneficiary of The Island Revocable Trust under Declaration of Trust

3    dated June 2, 2015; and Defendant Marcus Mack, as trustee of the Island Revocable

4    Trust under Declaration of Trust dates June 2, 2015.  (ECF No. 25).  The FAC alleges

5    two causes of action under the Racketeer Influenced and Corrupt Organizations

6    ("RICO") Act pursuant to 18 U.S.C. § 1962(c) and (d) and a civil extortion cause of

7    action under California law.

8    **II. ALLEGATIONS OF THE FIRST AMENDED COMPLAINT ("FAC")**

9        Plaintiff Scott McMillan is a California licensed attorney practicing law and

10   operating an unaccredited law school.  (ECF No. 25 at ¶5).  Plaintiff McMillan Law

11   Firm, APC is a corporation operated by Scott McMillan. *Id.* ¶ 6.  Defendants Vania and

12   Nicole Chaker are Defendant Darren Chaker's sister and mother, respectively.

13       Plaintiffs allege that Defendants constitute a RICO enterprise functioning

14   together "as a continuing unit with a common purpose to obtain the Plaintiffs' property

15   under fear induced by falsely imputing a deformity, disgrace, or crimes, and by threats

16   to do an unlawful injury to the person or property . . . all in violation of Cal. Penal Code

17   section 523 (extortion)." *Id.* ¶ 88.  "The common purpose of the Enterprise members

18   was to assist each other in the filing of false and meritless lawsuits under federal debt

19   collection statutes; assist each other in the filing of lawsuits against attorneys who

20   opposed them . . . and to conduct a campaign of harassment, defamation, and extortion

21   against attorneys, such as the Plaintiffs, who represented parties adverse to the interests

22   of the Enterprise members . . . ." *Id.* ¶ 91.  "Enterprise member also assisted each other

23   in committing vandalism against Plaintiff's property." *Id.*

24       Defendant Darren Chaker is alleged to have committed multiple acts of

25   racketeering activity through acts involving extortion in violation of California Penal

26   Code sections 518, 519, and 523. *Id.* ¶¶ 94-109.  Plaintiffs allege that Darren Chaker

27   sent threatening letters and communications; posted defamatory and fabricated

28   statements online; sent letters threatening Plaintiffs' clients; and sent defamatory emails

to other attorneys and colleagues of Plaintiff McMillan. *Id.* Plaintiffs allege that these acts constitute extortion because Defendant "obtained from Plaintiff his intangible property right to practice law free of threats, and to practice in accordance with the California Rules of Professional Conduct" and "obtained from Plaintiffs their intangible property right to practice law and publish court decisions on the internet." *Id.* at ¶¶ 99-109.

Plaintiffs bring the first cause of action for a violation of RICO, 18 U.S.C. § 1962(c) against Defendant Darren Chaker. *Id.* ¶¶ 84-114. Plaintiffs bring a second cause of action for conspiracy to violate RICO, 18 U.S.C. § 1962(d) against all Defendants. *Id.* ¶¶ 115-119. Plaintiffs bring a third cause of action for civil extortion under California law against Defendants Darren Chaker and Nicole Chaker. *Id.* ¶¶ 120-133.

## III. LEGAL STANDARD ON RULE 12(B)(6)

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a) provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)). When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a

1 complaint to survive a m otion to dism iss, the non-conclusory factual content, and

2 reasonable inferences from that content, must be plausibly suggestive of a claim

3 entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir.

4 2009) (internal quotation marks omitted).

5 **IV. MOTIONS TO DISMISS BY DARREN CHAKER AND NICOLE CHAKER**

6 **(ECF Nos. 35, 56)**

7 Defendant Darren Chaker contends that the FAC should be dism issed with

8 prejudice for failure to state a claim. Defendant Darren Chaker contends that the RICO

9 cause of action pursuant to 18 U.S.C. §1962(c) must be dismissed because Plaintiffs fail

10 to adequately allege facts to support the predicate act of extortion. (ECF No. 56-1 at

11 10). Defendant Darren Chaker contends that Plaintiffs fail to state a claim for extortion

12 because Plaintiffs do not allege facts to show that Defendant Darren Chaker obtained

13 property from Plaintiffs. *Id.* at 13. Defendant Darren Ch aker further contends that

14 Plaintiffs lack standing because the FAC fails to allege cognizable damages. *Id.* at 18.

15 Defendant Darren Chaker contends that the second cause of action for RICO

16 conspiracy, 18 U.S.C. § 1962(d), fails for the same reasons as the first cause of action.

17 Defendant Darren Chaker contends that the Court should decline to exercise

18 supplemental jurisdiction over the state law claim. *Id.* at 19-20.

19 Defendant Nicole Chaker also contends the FAC should be dismissed for failure

20 to state a claim.[1] (ECF No. 35). Defendant Nicole Chaker contends that her alleged

21 conduct is prote cted by the Noerr-Pennington doctrine. (ECF No. 35-1 at 13-16).

22 Defendant Nicole Chaker contends that the RICO causes of action should be dismissed

23 because Plaintiffs fail to adequately plead an enterprise with an effect on interstate

24 commerce, a pattern of racketeering, c ognizable damages, or sufficient conduct or

25 _____

26 [1] Defendant Nicole Chaker files a request for judicial notice of document in the record of a district court case from t he United States District Court for the Central

27 District of California. (ECF No. 35-3). Plaintiffs' also file a request for judicial notice of court documents in other cases. (ECF No. 45-1). The Court denies the request for

28 judicial notice as unnecessary. *See, e.g., Asvesta v. Petroutsas*, 580 F.3d 1000, 1010 n. 12 (9th Cir. 2009) (denying request for judicial notice where judicial notice would be "unnecessary").

participation in enterprise affairs. *Id.* at 18-25.  Defendant Nicole Chaker contends that the claim under § 1962(d) necessarily fails if the § 1962(c) claim is dismissed.  *Id.* at 24.  Defendant Nicole Chaker contends that  Plaintiffs do not sufficiently allege any cognizable injury to support the cause of action for civil extortion. *Id.* at 25.  Defendant Nicole Chaker contends that she is      "protected  by the litigation privilege under California Civil Code § 47."  *Id.* at 29.

Plaintiffs  contend that the FAC sufficien tly alleges extortion pursuant to the California Penal Code as a predicate act for the RICO claims  (ECF No. 60).  Plaintiffs contend that Defendant Darren Chaker "has obtained the Plaintiffs' property, i.e. the right to publicity, the goodwill in the business the Plaintiff's ability to practice law, the Plaintiff's identity and the Plaintiffs' logo." *Id.* at 14-15.  Plaintiffs further contend that the FAC alleges cognizable damages in the form of injury to a business or property. *Id.* at 20-21.  Plaintiffs contend that federa l law, state law, and California state courts define "property" broadly to include the damage to intangible property interests alleged in the complaint.  *Id.* at 20-26.  Plaintiffs contend that intangible property rights were obtained by Defendant Darren Chaker.  *Id.* at 26-30.  Plaintiffs contend that the Court should exercise its supplemental jurisdiction over the state law claim of civil extortion.  *Id.* at 30-31.  Plaintiffs contend that the Noerr-Pennington doctrine has no applicability to this case.  (ECF No. 43 at 25).  Plainti ffs contend that Defendant Nicole Chaker is not  protected by the litigation privilege und er  California Civil Code section 47.  Plaintiffs  contend that the FAC adequate ly alleges that Def endant  Nicole Chaker conspired to violate § 1962(c).  *Id.* at 20.  Plaintiffs contend that the FAC adequately alleges a civil extortion claim.  *Id.* at 22-23.

**A. RICO, 18 U.S.C. § 1962(c)**

"The Racketeer Influenced and Corrupt Organizations ('RICO') Act . . . provides for both criminal and civil liability." *Odom v. Microsoft Corp.*, 486 F.3d 541, 545 (9th Cir. 2007) (citing Pub. L. No. 91-452, § 901 84 Stat. 922 (1970) (codified at 18 U.S.C. §§ 1961-1968)).  "Under RICO's civil enforcement mechanism, 'any person injured in

his business or property by reason of a violation of [18 U.S.C. § 1962] may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, incl uding a reasonable attorney's fee . . . .'"

*Canyon Cty v. Sygenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008)(citing 18 U.S.C. § 1964(c)). "Subsections 1962(a) through (c) prohibit certain 'pattern[s] of racketeering activity' in relation to an 'enterprise.'" *United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't, AFL-CIO*, 770 F.3d 834, 837 (9th Cir. 2014). "To have standing under § 1964(c), a civil RICO plaintiff must show: (1) that his alleged harm qualifies as injury to his business or property; and (2) that his harm was 'by reason of' the RICO violation, which requires the plaintiff to establish proximate causation." *Id.* (citing *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).

Section 1962(c) provides,

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). "The elements of a civil RICO claim are as follows: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property." *United Bhd. of Carpenters*, 770 F.3d at 837 (citing *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005)).

"A 'pattern of racketeering activity' requires at least two predicate acts of racketeering activity, as defined in 18 U.S.C. § 1961(1) within a period of ten years." *Canyon Cty*, 519 F.3d at 972. "Racketeering activity" as defined by statute includes "any act or threat involving . . . extortion, . . . which is chargeable under State law." 18 U.S.C. § 1961(1)(A). To constitute a predicate act of extortion for purposes of a RICO cause of action, the alleged act must satisfy the generic definition of extortion – "obtaining something of value from another with his consent induced by the wrongful

1  use of force, fear, or threats." *United Bhd. of Carpenters*, 770 F.3d at 843 (citing

2  *United States v. Nardello*, 393 U.S. 286 (1969)).

3        In *Scheidler v. National Organization for Women, Inc.*, the Supreme Court

4  considered whether the use or threat of force, violence or fear to cause a party to "'give

5  up' property rights, namely, 'a woman's right to seek medical services from a clinic, the

6  right of the doctors, nurses or other clinic staff to perform their jobs, and the right of the

7  clinics to provide medical services free from wrongful threats, violence, coercion and

8  fear" constituted Hobbs Act extortion or a state extortion offense for purposes of a

9  RICO predicate act. 537 U.S. 393, 400-01 (2003) The Court determined that although

10 "[t]here was no dispute . . . that petitioners interfered with, disrupted, and in some

11 instances completely deprived, respondents of their ability to exercise their property

12 rights . . . . such acts did not constitute extortion because petitioners did not 'obtain'

13 respondents' property." *Id.* at 404-05. The Court further stated, "Petitioners may have

14 deprived or sought to deprive respondents of their exclusive control of their business

15 assets, but they did not acquire any such property. Petitioners neither pursued nor

16 received 'something of value from' respondents that they could exercise, transfer or

17 sell." *Id.* (citing *Nardello*, 393 U.S. at 290)).

18        In this case, Plaintiffs allege that the requisite predicate acts are multiple acts of

19 extortion in violation of California Penal Code sections 518, 519, and 523.[2] An act of

20 extortion which is chargeable under state law can constitute racketeering activity

21 sufficient to support a RICO claim. *See* 18 U.S.C. § 1961(1)(A). However, to plead

22 extortion as a predicate act, Plaintiffs must allege facts to show that the act involved

23 "obtaining something of value from another." *United Bhd. of Carpenters*, 770 F.3d at

24 843; *Scheidler*, 537 U.S. at 410 ("[W]here as here the Model Penal Code and a majority

25 of States recognize the crime of extortion as requiring a party to obtain or to seek to

26 _____

27        [2] Plaintiffs allege the cause of action pursuant to 18 U.S.C. § 1962(c) solely
28 against Defendant Darren Chaker. Plaintiffs do not allege the cause of action pursuant
   to 18 U.S.C. § 1962(c) against Defendant Nicole Chaker. (ECF No. 25 at 33; ECF No.
   43 at 6).

1    obtain property, as the Hobbs Act requires, the state extortion offense for purposes of

2    RICO must have a similar requirement.").   Plaintiffs allege that various acts by

3    Defendant Darren Chaker constitute state extortion offenses and predicate acts under

4    RICO because Defendant Darren Chaker obtained from Plaintiffs the "intangible right

5    to practice law and publish decisions on the internet" and the "intangible property right

6    to practice law free of threats, and to practice in accordance with the California Rules

7    of Professional Conduct."  (ECF No. 25 at ¶¶ 99-109).  The Court concludes that these

8    factual allegations are insufficient to establish that Defendant Darren Chaker obtained

9    something of value from Plaintiffs.  *Scheidler*, 537 U.S. at 410.  Because Plaintiffs fail

10   to sufficiently allege a predicate act, Plaintiffs fail to state a claim pursuant to 18 U.S.C.

11   § 1962(c).  *See, e.g.*, *United Bhd. of Carpenters*, 770 F.3d at 837 (stating that a plaintiff

12   must properly allege a predicate act to   state a claim under RICO).  The motion to

13   dismiss the cause of action under 18 U.S.C. § 1962(c) filed by Defendant Darren Chaker

14   is granted.

15       **B. RICO Conspiracy, 18 U.S.C. § 1962(d)**

16       Plaintiffs bring a RICO conspiracy cause of action against all Defendants and

17   allege that

18       commencing in 2004 and during and continuing at all times to the present,
     RICO defendants conspired to violate section 1962(c), i.e. each defendant
19       agreed that a conspirator (DARREN) would conduct or participate in the
     affairs of the Enterprise through a pattern of racketeering, including acts
20       involving extortion in violation of California state law, as more fully
     described in the First Claim for Relief.
21
22   (ECF No. 25 at ¶ 116).

         A civil RICO cause of action is available for a violation of 18 U.S.C. § 1962(d).
23
     *See* 18 U.S.C. § 1964(c).  Pursuant to 18 U.S.C. § 1962(d), it is "unlawful for any
24
     person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this
25
     section."  18 U.S.C. § 1962(d).  In *Howard v. Am. Online Inc.*, the Ninth Circuit Court
26
     of Appeals held that "Plaintiffs cannot claim that a conspiracy to violate RICO existed
27
     if they do not adequately plead a substantive violation of RICO."  208 F.3d 741, 751
28
     (9th Cir. 2000).  The Court has determined that Plaintiffs did not adequately plead a

substantive violation of 18 U.S.C § 1962( c). The m otions to dism iss the RICO conspiracy cause of action under 18 U.S .C. § 1962(d) filed by Defendants Nicole Chaker and Darren Chaker are granted.

**C. Civil Extortion Under State Law**

The civil extortion cause of action a lleged by Plaintiffs against Defendants Darren Chaker and Nicole Chaker does not arise under federal law. The FAC states that this case is properly in federal court based on federal question jurisdiction[3] and that this Court has supplemental jurisdiction over the remaining state law claim pursuant to 28 U.S.C. § 1367(a) because it is "so related to the claims in the action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." (ECF No. 25 at 2). The federal supplem ental jurisdiction statute provides:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have s upplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the sam e case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). "The district courts m ay decline to exercise supplem ental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c).

Having dismissed the only federal claim s asserted against Defendant Darren Chaker and Nicole Chaker, the Court declines to exercise supplemental jurisdiction over this state law claim pursuant to 28 U.S.C. § 1367(c). *See San Pedro Hotel Co., Inc. v. City of Los Angeles*, 159 F.3d 470, 478 (9th Cir. 1998). The motions to dismiss the civil extortion cause of action f iled by Defendants Nicole Chaker and Darren Chaker are granted.

**V. MOTIONS TO STRIKE BY DARREN CHAKER AND NICOLE CHAKER**

---

[3] Plaintiffs also allege, "This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332." (ECF No. 25 at ¶ 1). Plaintiffs have failed to allege sufficient facts to establish diversity jurisdiction and this statem ent appears to be in reference to 28 U.S.C. § 1331.

**(ECF Nos. 55, 36)**

Defendant Darren Chaker filed a motion to strike portions of the FAC pursuant to Federal Rule of Civil Procedure 12(f). (ECF No. 55). The Court has dismissed the FAC as to Darren Chaker. Accordingly, the Court denies as moot Defendant Darren Chaker's motion to strike. (ECF No. 55).

Defendant Nicole Chaker filed an anti-SLAPP motion to strike the third cause of action pursuant to California Code of Civil Procedure section 425.16 and for an award of attorney's fees pursuant to California Code of Civil Procedure section 425.16(c). (ECF No. 36). As a result of the Court's decision to decline supplemental jurisdiction over the state law civil extortion claim, the Court does not reach the merits of this motion. The Court denies as moot Defendant Nicole Chaker's anti-SLAPP motion to strike and for attorney's fees and costs. (ECF No. 36).

## VI. MOTION TO DISMISS OR QUASH SERVICE BY VANIA CHAKER (ECF No. 59)

"Specially Appearing Defendant" Vania Chaker moves the Court pursuant to Rule 12(b)(5) for an order dismissing the complaint or alternatively, for an order quashing defective service. (ECF No. 59). Defendant Vania Chaker contends that Plaintiffs failed to serve her prior to the Court's February 27, 2017 deadline for service. *Id.* at 4. Defendant Vania Chaker contends that Plaintiffs failed to serve her by personal service on February 6, 2017 at 6:02 p.m. as represented to the Court by Plaintiffs. *Id.* at 3. Defendant Vania Chaker contends that she has "strong and convincing" evidence that Plaintiff's purported proof of service is fabricated because Defendant Vania Chaker was not at this location at that time.[4] *Id.* at 3-5. Defendant Vania Chaker further

---

[4] Defendant Vania Chaker requests judicial notice of decision of the California Court of Appeal, Fourth District, Division 1. (ECF No. 59-3). Plaintiffs object to the request for judicial notice. (ECF No. 64-5). The Court does not rely on this material in reaching its decision and denies the request for judicial notice. *See, e.g., Asvesta v. Petroutsas*, 580 F.3d 1000, 1010 n. 12 (9th Cir. 2009) (denying request for judicial notice where judicial notice would be "unnecessary"). Additionally, Defendant Vania Chaker filed evidentiary objections to declarations filed by Plaintiffs. (ECF Nos. 69-2, 69-3, 69-4). The Court has reviewed and considered these objections. A ruling on

1   contends that the Summons filed by Plaintiffs incorrectly names Vania Chaker as an

2   individual and as trustee of Vania Chaker Trust.  *Id.* at 3.  Defendant Vania Chaker

3   contends she should be dism issed from this action because Plain tiffs have failed to

4   complete service despite two extensions of time and have failed to establish good cause

5   for another extension of time.  *Id.* at 7.

6       Plaintiffs contend that Defendant Vania Chaker was properly served on Feburary

7   6, 2017.  Plaintiffs contend that the evid ence offered in support of Defendant Vania

8   Chaker's motion is not credible and does not establish that she was not home at the time

9   stated in the proof of service filed with the Court.[5]  (ECF No. 64).  Plaintiffs contend

10  that the Court should find service proper based on the substantial compliance doctrine.

11  *Id.* at 5-6.  Plaintiffs request that the Court deny this motion and order Defendant Vania

12  Chaker to respond to the complaint within ten days.  Plaintiffs request that, if the Court

13  grants any portion of the motion, the Court extend time for service, designate counsel

14  for Vania Chaker as agent for service of process, and order that her counsel accept the

15  service by email.  *Id.* at 8.

16      **A. Legal Standard**

17      "Without a proper basis for jurisdiction, or in the absence of service of process,

18  the district court has no power to render any judgment against the defendant's person

19  or property unless the defendant has consente d to jurisdiction or waived the lack of

20  process."  *S.E.C. v. Ross*, 504 F.3d 1130, 1138 (9th Cir.  2007).  "A federal court is

21  without personal jurisdiction over a defendant unless the defendant has been served in

22  accordance with Fed.R.Civ.P. 4."  *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986),

23  amended, 807 F.2d 1514 (9th Cir. 1987) (citing *Jackson v. Hayakawa*, 682 F.2d 1344,

24  1347 (9th Cir. 1982)).  Federal Rule of Civil Procedure 12(b)(5) authorizes a defendant

25  to move to dismiss the complaint for insufficient service of process.  Fed. R. Civ. P.

26  ─────────────

27  these objections is not necessary to resolve this motion.

28  [5] Plaintiffs filed evidentiary objections to the declaration filed by Vania Chaker
    in support of her motion.  (ECF No. 64-4).  The Court has revi ewed and considered
    these objections.  A ruling on these objections is not necessary to resolve this motion.

12(b)(5). Once a party challenges service, the plaintiff bears the burden to show that service was valid under Rule 4. *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). The court has discretion to dismiss an action or quash service if there is insufficiency of process or insufficiency of service *See SHJ v. Issaquah School District No. 411*, 470 F.3d 1288, 1293 (9th Cir. 2006) (citing *Stevens v. Security Pac. Nat'l Bank*, 538 F.2d 1387, 1389 (9th Cir. 1976)).

Under Federal Rule of Civil Procedure 4(e), a plaintiff may serve an individual within a judicial district of the United States by (1) following state law service requirements, or (2) service may be effected upon an individual by (A) delivering a copy of the summons and complaint to the individual personally, (B) by leaving a copy of each "at the individual's dwelling or usual place of abode" with someone of suitable age and discretion who resides there; or (C) by delivering a copy of each to an "agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e).

California Code of Civil Procedure section 415.20(a) states,

> In lieu of personal delivery of a copy of the summons and complaint to the person to be served...a summons may be served by leaving a copy of the summons and complaint during usual office hours in his or her office, or if no physical address is known, at his or her usual mailing address... with the person who is apparently in charge thereof, and by thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left....

Cal. Code of Civ. P. § 415.20(a).

If a party receives sufficient notice of the complaint, Rule 4 is to be "liberally construed" to uphold service. *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1404 (9th Cir. 1994). "However, 'neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction without substantial compliance with Rule 4.'" *Travelers Cas. & Sur. Co. of Am. v. Brenneke*, 551 F.3d 1132, 1135 (9th Cir. 2009) (citing *Benny*, 799 F.2d at 492 (citation and quotes omitted)).

**B. Discussion**

Plaintiffs filed their original complaint on August 29, 2016 (ECF No. 1) and the

- 12 -

16cv2186-WQH-MDD

1   FAC on December 5, 2016 (ECF No. 25).  On December 20, 2016, this Court issued an

2   order granting Plaintiffs a second extension of time in which to complete service upon

3   Defendant Vania Chaker.  (ECF No. 38).  The Order stated, "Plaintiffs' new deadline

4   to achieve service on Vania Chaker is Monday, February 27, 2017."  *Id.*

5          On February 27, 2017, Plaintiffs filed Proof of Service of Summons in the

6   Complaint.  (ECF No. 58).  The document states that Defendant Vania Chaker was

7   served by personal service on February 6, 2017 at 6:02 p.m. in San Diego by a

8   registered process server. (ECF No. 58).  Defendant Vania Chaker asserts she was not

9   served on February 6, 2017. Defendant Vania Chaker provides receipts from purchases

10  she made in Manhattan Beach, California around the time of service on February 6,

11  2017 to establish that she was not in San Diego at this time and date.

12         In a declaration filed in support of Plaitiffs' opposition, the process server states

13  that on February 6, 2017 around 6 p.m., he observed Vania Chaker at the address stated

14  in the proof of service document.  He states that he

15         jogged up towards the driveway, calling out "Hey you, Vania" or words
       to that effect. When I made the statement Ms. Chaker was in speaking
16     distance to me, and my voice was sufficiently elevated to provide her
       notice that I was attempting to contact her. However, upon hearing my
17     shout, Ms. Chaker, who had exited from the garage . . . made a dash for
       the front floor of the house. . . . Ms Chaker entered the house and closed
18     the door behind her. . . .I called out service by stating "your served Vania
       Chaker", and I tossed the papers over the fence, . . . I was not able to
19     actually 'touch' her with the papers as she was behind a closed gate, and
       I did not intend to go off the public sidewalk onto private property.
20     However I was within 10 yards of her, and as close as I could get in light
       of the barrier imposed by her fence.
21
22  (ECF No. 64-1 at 4).

23         Based on the statements offered in the declaration by the process server, the

24  Court cannot conclude that Plaintiffs delivered a copy of the summons and complaint

25  to Defendant Vania Chaker personally.  *See* Fed. R. Civ. P. 4(e).  Plaintiffs further

26  contend that the Court should uphold service as proper under the substantial compliance

27  doctrine.  In *Travelers Cas. & Sur. Co. of Am. v. Brenneke*, the Ninth Circuit Court of

28  Appeals held,

           Sufficient service may be found where there is a good faith effort to

1  comply with the requirem ents of Rule  4(e)(2) which has resulted in placement of the s ummons and co mplaint within the defendant's immediate proximity and further com pliance with Rule 4(e)(2) is only prevented by the defendant's knowing  and intentional actions to evade service.

551 F.3d at 1136.  While Plaintiffs assert that Defendant Vania Chaker has attempted to evade service and that the process server left the papers in her proximity, Defendant Vania Chaker provides evidence that she wa s not present at the address when the alleged service was com pleted.  The Court  concludes that Plaintiffs have failed to satisfy their burden to dem onstrate that service upon Defendant Vania Chaker was proper under Rule 4.  *See id.* at 1135 ("neither actual notice nor simply nam ing the defendant in the com plaint will provide  personal jurisdiction without substantial compliance with Rule 4.").  Th e Court grants Defendant Vania Chaker's m otion to quash service of process.  *See Issaquah School District No. 411*, 470 F.3d at 1293

However, the Court has dete rmined that Plaintiffs did not adequately plead a substantive violation of 18 U .S.C § 1962(c).  A ccordingly, Plaintiffs' claim for a conspiracy to violate RICO pursuant to 18 U.S.C. § 1962(d) necessarily fails. *See supra* Part IV.B; *Howard*, 208 F.3d at 751. Conspiracy to violate RICO pursuant to 18 U.S.C. § 1962(d) is the only cause of action allege d against Defendant Vania Chaker.  The Court dismisses the FAC without prejudice as to Defendant Vania Chaker.  (ECF No. 25).

**VII. MOTION FOR SANCTIONS BY DARREN CHAKER (ECF No. 66)**

Defendant Darren Chaker filed a motion for sanctions against Plaintiffs pursuant to Rule 11 of the Federal Rules of Civil Procedure, or alternatively, the Court's inherent power. (ECF No. 66).  Defendant Darren Chaker contends that sanctions are warranted because (1) the allegations in the FAC  are "factually baseless from an objective perspective, and were included in the FA C for an im proper purpose"; (2) Plaintiffs' RICO claims are frivolous; and (3) Plainti ffs' RICO claim s were brought "for the improper purpose of naming Darren's mother . . . and sister . . . as Defendants . . . solely to harass Darren and his family." *Id.* at 2.

1    Plaintiffs contend that the motion is without merit and that the allegations of the

2   FAC are proper, non-frivolous, and sufficiently supported by facts.  (ECF No. 75).

3    Rule 11 of the Federal Rules of Civil Procedure provides in part,

4   b) Representations to the Court. By  presenting to the co urt a pleading,
    written motion, or other paper--whether by signing, filing, submitting, or
5   later advocating it--an attorney or unrepresented party certifies that to the
    best of the person's knowledge, information, and belief, formed after an
6   inquiry reasonable under the circumstances:

7   (1) it is not being presented for any improper purpose, such as to harass,
    cause unnecessary delay, or needlessly increase the cost of litigation;
8
9   (2) the claim s, defenses, and other  legal contentions are warranted by
    existing law or by a nonfrivolous argument for extending, modifying, or
    reversing existing law or for establishing new law;
10
11  (3) the factual contentions have evidentiary support or, if specifically so
    identified,  will likely have evidentiary support after a reasonable
    opportunity for further investigation or discovery;...
12
13  Fed. R. Civ. P. 11(b)(3).  When a "com    plaint is the prim ary focus of Rule 11

14  proceedings,  a district cour t must conduct a two-prong analysis to determ  ine (1)

15  whether the complaint is legally or factually baseless from an objective perspective, and

16  (2) if the attorney has conducted a reasonable and competent inquiry before signing and

17  filing it." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (quotation

18  omitted).  "As shorthand for this test, we use the word 'frivolous' to denote a filing that

19  is both baseless and m ade without a reasonable and competent inquiry." *Holgate v.*

20  *Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) (quotation omitted).

21    After reviewing the motion and the submissions of the parties, the Court finds

22  that the record in this case does not support the imposition of sanctions at this stage in

23  the proceedings.  The motion for sanctions is denied.  (ECF No. 66).

24  **VIII. CONCLUSION**

25    IT IS HEREBY ORDERED that Defendant Darren Chaker's motion to dismiss

26  the First Amended Complaint is granted. (ECF No. 56).  The First Amended Complaint

27  (ECF  No. 25) is dism  issed  without prejudice as to Defendant Darren Chaker.

28  Accordingly,  Defendant Darren Chaker's    motion  to strike portions of the First

Amended Complaint pursuant to Federal Ru le of Civil Procedure 12(f) is denied as

- 15 -                                    16cv2186-WQH-MDD

1   moot.  (ECF No. 55).

2       IT IS HEREBY ORDERED that Defendant Darren Chaker's motion for sanctions
3   is denied.  (ECF No. 66)

4       IT IS HEREBY ORDERED that Defendant Nicole Chaker's motion to dismiss
5   the First Amended Complaint is granted. (ECF No. 35).  The First Amended Complaint
6   (ECF No. 25) is dismissed without prejudice as to Defendant Nicole Chaker.  Defendant
7   Nicole Chaker's anti-SLAPP motion to strike and for attorneys' fees and costs is denied
8   as moot.  (ECF No. 36).

9       IT IS HEREBY ORDERED that Defendant Vania Chaker's motion to quash the
10  service of process is granted.  (ECF No. 59). The Court quashes service upon Defendant
11  Vania Chaker and grants Plaintiffs sixty (60) days from the date any amended
12  complaint is filed upon which to perfect service upon Vania Chaker in accordance with
13  the requirements of Federal Rule of Civil Procedure 4.

14      IT IS FURTHER ORDERED that the First Amended Complaint (ECF No. 25)
15  is dismissed without prejudice as to Defendant Vania Chaker.  Plaintiffs shall file any
16  motion for leave to file an amended complaint pursuant to Local Rule 7.1 and within
17  thirty (30) days of the date this Order is issued.

18  DATED:  August 28, 2017

19                          _William Q. Hayes_
                           **WILLIAM Q. HAYES**
20                          United States District Judge

21

22

23

24

25

26

27

28

Case 3:16-cv-02186-WQH-MDD   Document 94-7   Filed 12/12/17   PageID.3781   Page 23 of 85

# Exhibit "B"

Case 3:16-cv-02186-WQH-MDD Document 137-1 Filed 09/23/22 PageID.4274 Page 58 of
1196
Case 3:16-cv-02186-WQH-MDD Document 86-1 Filed 12/22/17 PageID.3845 Page 51 of 85

1

2

3

4

5

6

7

8  **UNITED STATES DISTRICT COURT**

9  **SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SCOTT A. MCMILLAN, an individual; THE MCMILLAN LAW FIRM, APC, a California professional corporation, | CASE NO. 16cv2186-WQH-MDD |
| Plaintiffs, | ORDER |
| v. | |
| DARREN D. CHAKER, an individual, and as trustee of PLATINUM HOLDINGS GROUP TRUST doing business as Counter Forensics, *et al.*, | |
| Defendants. | |

HAYES, Judge:

On August 28, 2017, the Court granted a motion to dismiss and dismissed the First Amended Complaint without prejudice. The Order stated, "Plaintiffs shall file any motion for leave to file an amended complaint pursuant to Local Rule 7.1 and within (30) days of the date this Order is issued." (ECF No. 83). The docket reflects that no motion for leave to file an amended complaint was filed within this period. The Clerk of Court is directed to close this case.

DATED: October 10, 2017

William Q. Hayes

**WILLIAM Q. HAYES**
United States District Judge

# Exhibit "C"



Office of the Clerk
**United States Court of Appeals for the Ninth Circuit**
Post Office Box 193939
San Francisco, California 94119-3939
415-355-8000

Molly C. Dwyer
Clerk of Court

November 06, 2017

---

No.:            17-56676
D.C. No.:       3:16-cv-02186-WQH-MDD
Short Title:    Scott McMillan, et al v. Darren Chaker, et al

---

Dear Appellant/Counsel

A copy of your notice of appeal/petition has been received in the Clerk's office of the United States Court of Appeals for the Ninth Circuit. The U.S. Court of Appeals docket number shown above has been assigned to this case. You must indicate this Court of Appeals docket number whenever you communicate with this court regarding this case.

Please furnish this docket number immediately to the court reporter if you place an order, or have placed an order, for portions of the trial transcripts. The court reporter will need this docket number when communicating with this court.

**The due dates for filing the parties' briefs and otherwise perfecting the appeal have been set by the enclosed "Time Schedule Order," pursuant to applicable FRAP rules. These dates can be extended only by court order. Failure of the appellant to comply with the time schedule order will result in automatic dismissal of the appeal. 9th Cir. R. 42-1.**

**Appellants who are filing pro se should refer to the accompanying information sheet regarding the filing of informal briefs.**



UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

NOV 06 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| SCOTT A. MCMILLAN; THE MCMILLAN LAW FIRM, APC, | No. 17-56676 |
| Plaintiffs - Appellants, | D.C. No. 3:16-cv-02186-WQH-MDD U.S. District Court for Southern California, San Diego |
| v. | **TIME SCHEDULE ORDER** |
| DARREN D. CHAKER, an individual, and as trustee of PLATINUM HOLDINGS GROUP TRUST, DBA Counter Forensics; VANIA CHAKER, an individual and as beneficiary of The Island Revocable Trust under Declaration of Trust dated June 2, 2015; NICOLE CHAKER, an individual, and as trustee of THE NICOLE CHAKER REVOCABLE LIVING TRUST, U/A dated August 18, 2010, | |
| Defendants - Appellees. | |

The parties shall meet the following time schedule.

**Thu., January 4, 2018**   Appellant's opening brief and excerpts of record
shall be served and filed pursuant to FRAP 32 and
9th Cir. R. 32-1.

**Mon., February 5, 2018**   Appellee's answering brief and excerpts of record
shall be served and filed pursuant to FRAP 32 and
9th Cir. R. 32-1.

54

The optional appellant's reply brief shall be filed and served within 21 days of service of the appellee's brief, pursuant to FRAP 32 and 9th Cir. R. 32-1.

Failure of the appellant to comply with the Time Schedule Order will result in automatic dismissal of the appeal. See 9th Cir. R. 42-1.

FOR THE COURT:

MOLLY C. DWYER
CLERK OF COURT

By: John Brendan Sigel
Deputy Clerk
Ninth Circuit Rule 27-7



Molly C. Dwyer
Clerk of Court

Office of the Clerk
**United States Court of Appeals for the Ninth Circuit**
Post Office Box 193939
San Francisco, California 94119-3939
415-355-8000

---

## ATTENTION
## YOU ARE NOT REGISTERED FOR ELECTRONIC FILING

---

You are listed as counsel of record in this new appeal/petition but you are not registered for electronic filing with this Court. See Ninth Circuit Rule 25-5.

Until you register for electronic filing or provide the Court with proof of an exemption, you will not receive further notice of filings from the Court in this case, including important scheduling orders and orders requiring a response. Failure to respond to a Court order or otherwise meet an established deadline can result in the dismissal of the appeal for failure to prosecute by the Clerk pursuant to Ninth Circuit Rule 42-1, or other action adverse to your client.

Please register for electronic filing with the Court immediately or file a notice/motion to withdraw as counsel from this appeal.

To register for electronic filing, and for more information about Ninth Circuit CM/ECF, visit our website at http://www.ca9.uscourts.gov/cmecf/#section-registration.

17-56676

Rebecca Jo Smith
Freeman Mathis & Gary, LLP
550 S. Hope Street
22nd Floor
Los Angeles, CA 90071

neopost™
11/06/2017
US POSTAGE
$00.60<sup>0</sup>

ZIP 9411
041L11231

2017 NOV -8 PM 3: 19

**LEGAL MAIL**

9007182633 C035

CLERK, U.S. COURT OF APPEALS
FOR THE NINTH CIRCUIT
P.O. BOX 193939
SAN FRANCISCO, CALIFORNIA 94119-3939

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE $300

58

Case 3:16-cv-02186-WQH-MDD   Document 127-1   Filed 09/23/22   PageID.4282   Page 66 of
Case 3:16-cv-02186-WQH-MDD   Document 94-7   Filed 12/12/17   PageID.3796   Page 92 of 85
1196

# Exhibit "D"

1   Scott A. McMillan, SBN 212506
  The McMillan Law Firm, APC
2   4670 Nebo Drive, Suite 200
  La Mesa, California 91941-5230
3   (619) 464-1500
  Email: scott@mcmillanlaw.us
4
  Attorney for Plaintiffs, SCOTT A. MCMILLAN, an individual, and THE
5   MCMILLAN LAW FIRM, APC, a California Professional Corporation

6

7

8                 UNITED STATES DISTRICT COURT

9             SOUTHERN DISTRICT OF CALIFORNIA

10   SCOTT A. MCMILLAN, an       Case No. 3:16-CV-02186-WQH-MDD
    individual, THE MCMILLAN LAW
11   FIRM, APC, a California Professional   Judge: Hon. William Q. Hayes
    Corporation,                Courtroom: 14B
12
13     Plaintiffs,

14     v.                     **NOTICE OF APPEAL;**
                            **STATEMENT OF**
15   DARREN D. CHAKER an individual,   **REPRESENTATION [9TH Cir. R. 3-**
    and as trustee of PLATINUM       **2]**
16   HOLDINGS GROUP TRUST, dba
    COUNTER FORENSICS; NICOLE
17   CHAKER, an individual, and as
    trustee of THE NICOLE CHAKER
18   REVOCABLE LIVING TRUST, U/A
    dated August 18, 2010, VANIA
19   CHAKER, an individual and as
    beneficiary of The Island Revocable
20   Trust under Declaration of Trust dated
    June 2, 2015, MARCUS MACK as
21   trustee of The Island Revocable Trust
    under Declaration of Trust dated June
22   2, 2015,

23     Defendants.

24

25

26

27

28

1   Notice is hereby given that Plaintiffs Scott A. McMillan and The McMillan

2   Law Firm, APC ("Plaintiffs"), hereby appeal to the United States Court of Appeal

3   for the Ninth Circuit from the order closing this case entered on October 10, 2017

4   [ECF 86], a copy of which is attached hereto, and the prior adverse rulings.

5   Dated: November 5, 2017                    Respectfully submitted,

6

7                                              /s/ Scott A. McMillan
                                               Scott A. McMillan, SBN 212506
8                                              Attorneys for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case 3:16-cv-02186-WQH-MDD   Document 137-1   Filed 08/23/22   PageID.4285   Page 69 of
Case 3:16-cv-02186-WQH-MDD   Document 86   Filed 10/10/17   PageID.3788   Page 1 of 5
1196

1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT A. MCMILLAN, an individual; THE MCMILLAN LAW FIRM, APC, a California professional corporation, | CASE NO. 16cv2186-WQH-MDD |
| | ORDER |
| Plaintiffs, | |
| v. | |
| DARREN D. CHAKER, an individual, and as trustee of PLATINUM HOLDINGS GROUP TRUST doing business as Counter Forensics, *et al.*, | |
| Defendants. | |

HAYES, Judge:

On August 28, 2017, the Court granted a motion to dismiss and dismissed the First Amended Complaint without prejudice. The Order stated, "Plaintiffs shall file any motion for leave to file an amended complaint pursuant to Local Rule 7.1 and within (30) days of the date this Order is issued." (ECF No. 83). The docket reflects that no motion for leave to file an amended complaint was filed within this period. The Clerk of Court is directed to close this case.

DATED: October 10, 2017

*William Q. Hayes*

**WILLIAM Q. HAYES**
United States District Judge

# NOTICE OF REPRESENTATION
## [Ninth Circuit Rule 3-2]

| | |
|---|---|
| The McMillan Law Firm, APC<br>Plaintiff - Appellant | Scott A. McMillan, CBN 212506<br>The McMillan Law Firm, APC<br>4670 Nebo Drive, Suite 200,<br>La Mesa, CA 91941<br>(619) 464-1500 x 14 |
| Scott A. McMillan<br>Plaintiff - Appellant | Scott A. McMillan, CBN 212506<br>The McMillan Law Firm, APC<br>4670 Nebo Drive, Suite 200,<br>La Mesa, CA 91941<br>(619) 464-1500 x 14 |
| Darren D. Chaker<br>an individual, and as trustee of<br>PLATINUM HOLDINGS GROUP<br>TRUST<br><br>Defendant - Appellee | Represented by<br>Charles Thomas Spagnola<br>Sullivan Krieger Truong Spagnola &<br>Klausner, LLP<br>444 W. Ocean Blvd., Suite 1700<br>Long Beach, CA 90802<br>562-597-7070<br>Fax: 562-597-7772<br>Email:<br>cspagnola@sullivankrieger.com<br><br>Eliot Franklin Krieger<br>Sullivan Krieger Truong Spagnola &<br>Klausner, LLP<br>444 W. Ocean Blvd., Suite 1700<br>Long Beach, CA 90802<br>562-597-7070<br>Fax: 562-597-7772<br>Email: ekrieger@sullivankrieger.com<br><br>Adam M Tamburelli<br>Sullivan, Krieger, Truong, Spagnola &<br>Klausner, LLP<br>444 West Ocean Boulevard<br>Suite 1700<br>Long Beach, CA 90802<br>562-597-7070<br>Email:<br>atamburelli@sullivankrieger.com |

| | |
|---|---|
| 1 | Vania Chaker | Represented by |
| 2 | an individual and as beneficiary of The Island Revocable Trust under | Ryan G. Baker |
| 3 | Declaration of Trust dated June 2, 2015 | Baker Marquart, LLP 2029 Century Park East |
| 4 | | Suite 1600 Los Angeles, CA 90067 |
| 5 | Defendant - Appellee | (424) 652-7800 Fax: (424) 652-7850 |
| 6 | | Email: rbaker@bakermarquart.com |
| 7 | Nicole Chaker an individual, and as trustee of | Represented by |
| 8 | The Nicole Chaker Revocable Living Trust, U/A dated August 18, | Rebecca Jo Smith Freeman Mathis & Gary, LLP |
| 9 | 2010 | 550 S. Hope St. 22nd Floor |
| 10 | Defendant - Appellee | Los Angeles, CA 90071 213-615-7008 |
| 11 | | Fax: 216-615-7100 Email: rjs@gilbertkelly.com |
| 12 | | |
| 13 | | Timothy W Kenna Freeman Mathis & Gary, LLP |
| 14 | | 550 South Hope Street 22nd Floor |
| 15 | | Los Angeles, CA 90071 (213)615-7116 |
| 16 | | Fax: (213)615-7100 Email: t.kenna@gilbertkelly.com |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

3:16-CV-02186                    NOTICE OF APPEAL                                        5

**CERTIFICATE OF SERVICE**

I am admitted to the United States District Court for the Southern District of California. I am employed in San Diego County, California. My business address is 4670 Nebo Drive, Suite 200, La Mesa, CA 91941-5230.

On November 5, 2017, I caused service of the following documents:

NOTICE OF APPEAL; STATEMENT OF REPRESENTATION [9TH Cir. R. 3-2].

By Electronic Submission: I served the above listed document(s) described via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service though the court's transmission facilities.

I certify that the foregoing is true and correct.

Dated: November 5, 2017

/s/ Scott A. McMillan
_____

Scott A. McMillan

3:16-CV-02186                    NOTICE OF APPEAL                    6

Case 3:16-cv-02186-WQH-MDD   Document 127-1   Filed 09/23/22   PageID.4289   Page 73 of
1196
Case 3:16-cv-02186-WQH-MDD   Document 94-7   Filed 12/12/17   PageID.3797   Page 93 of 99

# Exhibit "E"

Case 3:16-cv-02186-WQH-MDD   Document 97-1   Filed 09/23/22   PageID.4290   Page 74 of
Case 3:16-cv-02186-WQH-MDD   Document 47-1   Filed 12/13/17   PageID.3798   Page 40 of 85
1196

1  Scott A. McMillan, CBN 212506
   **THE MCMILLAN LAW FIRM, APC**
2  4670 Nebo Drive, Suite 200
   La Mesa, California 91941-5230
3  (619) 464-1500 x 14
   Fax: (619) 828-7399
4
   Attorney for Plaintiff,
5  Scott A. McMillan and The McMillan Law Firm, APC

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**09/27/2017** at 04:23:46 PM

Clerk of the Superior Court
By Erika Engel,Deputy Clerk

6

7

8                  CALIFORNIA SUPERIOR COURT

9                   COUNTY OF SAN DIEGO

10

11  SCOTT A. MCMILLAN, an individual,        Civil Case No.:  37-2017-00036344-CU-NP-CTL
    THE MCMILLAN LAW FIRM, APC, a
12  California professional corporation,      Complaint for Damages and Injunctive
                                             Relief arising from
13          Plaintiffs,                       1.   Civil Extortion
                                             2.   Unfair Competition, Bus. & Prof.
14          vs.                                    Code section 17200

15  DARREN D. CHAKER an individual, and           DEMAND FOR JURY TRIAL
    as trustee of PLATINUM HOLDINGS
16  GROUP TRUST, dba COUNTER
    FORENSICS; NICOLE CHAKER, an
17  individual, and as trustee of THE NICOLE
    CHAKER REVOCABLE LIVING TRUST,
18  U/A dated August 18, 2010, VANIA
    CHAKER, an individual and as beneficiary
19  of The Island Revocable Trust under
    Declaration of Trust dated June 2, 2015,
20  MARCUS MACK as trustee of The Island
    Revocable Trust under Declaration of
21  Trust dated June 2, 2015, and DOES 1
    through X, inclusive,

22          Defendants.

23

24

25

26

27

28

1    Plaintiffs allege as follows:

2        1.   On August 28, 2017, the United States District Court for the Southern District

3    of California entered an order of dismissal of the action *Scott McMillan, et al., v. Darren*

4    *Chaker, et al.*, U.S.D.C So. Dist. Case No. 3:16-cv-2186 ("Federal Action") entered an

5    order granting a motion to dismiss the federal claim for Racketeering, and declined to

6    exercise supplemental jurisdiction over the supplemental state claims. [ECF 83.]   28

7    U.S.C. section 1367, subdivision (d) tolls the applicable statute of limitations for such

8    claims during the pendency of the Federal Action.   The Federal Action was filed on August

9    29, 2016.

10                                    **THE PARTIES**

11       2.  Plaintiff, SCOTT A. MCMILLAN (hereinafter referred to as "Plaintiff

12   McMillan"), is a  resident of the State of California, County of San Diego.  Plaintiff is a

13   California licensed attorney, and is engaged in intra-state, and interstate commerce in the

14   course of his practice.  Plaintiff McMillan also operates a law school, the McMillan

15   Academy of Law, a California corporation, which is unaccredited, but registered with the

16   Committee of Bar Examiners, State Bar of California. Plaintiff McMillan has a property

17   interest in the right to practice his profession as a licensed attorney.

18       3.  Plaintiff, THE MCMILLAN LAW FIRM, APC, a California professional

19   corporation, (hereinafter referred to as "Plaintiff TMLF") has its principal place of

20   business in the County of San Diego, State of California. Plaintiff McMillan operates

21   Plaintiff TMLF.  TMLF has a property interest in its "goodwill" as such term is defined at

22   California Business and Professions Code sections 14100 and 14102.

23       4.  Defendant, DARREN CHAKER (a.k.a. Darren Del Nero a.k.a. Darren Del Nero-

24   Chaker a.k.a. Darren Shaker, a.k.a. D. David Hunter) (hereinafter referred to as "Defendant

25   DARREN"), is presently a resident of the State of California, County of San Diego.

26   Defendant DARREN conducts business through and holds assets as trustee in PLATINUM

27   HOLDINGS GROUP TRUST, a self-settled trust.  Plaintiff is further informed and believes

28   that Defendant DARREN conducts business under the pseudonym or doing-business-as

_____

                                    Complaint                              2

1  "COUNTER FORENSICS." Defendant DARREN was deemed a vexatious litigant in

2  Superior Court of California, County of San Diego Case Nos. 591421 (December 2, 1997)

3  and GIC757326 (June 22, 2001).

4       5.  Defendant VANIA CHAKER, also know as Valentina Chanel,  (hereinafter

5  referred to as "Defendant VANIA") is presently a resident of the State of California,

6  County of San Diego, and is Defendant's Darren's sister.  On one or more occasions,

7  VANIA has participated in the acts set forth herein, providing assistance to Defendant

8  DARREN in committing predicate acts. Plaintiff is informed and believes that Defendant

9  VANIA conducts business through and holds assets as beneficiary in a self-settled trust,

10  which shall be referred to herein as THE ISLAND REVOCABLE TRUST, dated June 2,

11  2005. Defendant Marcus Mack is sued solely in his capacity as Trustee of the THE

12  ISLAND REVOCABLE TRUST, dated June 2, 2005.

13      6.  Defendant NICOLE CHAKER  (hereinafter referred to as "Defendant NICOLE"),

14  is the mother of Defendant DARREN and Defendant VANIA. On one or more occasions,

15  Defendant NICOLE has participated in the acts set forth herein, providing assistance to

16  Defendant DARREN in committing predicate acts. Plaintiff is informed and believes that

17  Defendant NICOLE conducts business through and holds assets as trustee in a trust, which

18  shall be referred to herein as THE NICOLE CHAKER REVOCABLE LIVING TRUST, U/A

19  dated August 18, 2010.  Defendant NICOLE is sued both individually and as trustee of said

20  trust.

21      7.  Plaintiffs do not know the true names of Defendants DOES I-X, inclusive, and

22  therefore sues them by those fictitious names. Plaintiffs will amend this complaint to

23  allege their true names and capacities when ascertained. Plaintiffs are informed and believe,

24  and on the basis of that information and belief, alleges that each of those fictitiously named

25  Defendants were in some manner proximately responsible for the events and occurrences

26  alleged in this complaint, and that Plaintiff's injuries and damages as alleged herein were

27  proximately caused by the acts of these Defendants.

28      8.  Plaintiff is informed and believes, and on the basis of that information and belief,

---

Complaint                                                                3

1  alleges that at all times mentioned in this complaint, Defendants were the agents and

2  employees of their co-defendants, and in doing the things alleged in this complaint were

3  acting within the course and scope of that agency and employment.

4      9.  Plaintiffs are informed and believe, and based thereon alleges that Defendants

5  and each of them, including DOES 1 through X, inclusive, were the co-employers, agents,

6  servants, employees, successors, assignees, transferees, trustees, and/or joint venturers of

7  its co-defendants, and each was, as such, acting within the course, scope and authority of

8  said agency, employment and/or joint venture and was acting with the consent, permission

9  and authorization of each of the remaining Defendants.  Also, Defendants, when acting as a

10 principal, may have been negligent in the selection and hiring of each and every other

11 Defendant as agent, employee and/or joint venturer.  All actions of each Defendant as

12 alleged herein were ratified and approved by every other Defendant or its officers or

13 managing agents.

14      **DEFENDANTS' ENTERPRISE AND PRIOR ACTIONS IN CONCERT**

15     10.  Defendants rely on keeping their past conduct, criminal convictions, lawsuits,

16 and generally bad reputation out of public view.  To accomplish this the defendants

17 regularly use pseudonyms, attempt to seal documents and proceedings which may alert the

18 public to information about Defendants that if known, would provide a defense or would

19 affect a fact-finder's view on their credibility.

20     11.  Defendant DARREN falsely, and in order to gain credibility with unknowing law

21 enforcement and laypersons, holds himself out as a former law enforcement officer or

22 government security employee, including at various times claiming an "Ex-cop" or to be an

23 employee of the "Diplomatic Security Service."

24     12.  Plaintiffs are informed and believe, and based thereon allege that Defendant

25 VANIA is an attorney, currently licensed to practice law in the State of California.

26 Defendant VANIA has lived at various times in California and the Pennsylvania.  Defendant

27 VANIA, as a profession, both individually on her own account and to assist Defendants

28 DARREN and NICOLE, engaged in litigation based on meritless or outright false claims,

Complaint                                    4

1   typically relying upon the Fair Credit Reporting Act, 15 U.S.C. § 1681, and on at least one

2   occasion bringing a claim for personal injury, deriving income from such fraudulent

3   activity. As part of her pattern of racketeering activity, Defendant VANIA has attempted

4   and sometimes succeeded in collecting unlawful debts, i.e., a claim based on false or

5   meritless legal claims, and derived income from such false claims and unlawful threats of

6   suit. For instance in *Vania Chaker v. Monarch Group Management, Inc.*, U.S.D.C. So.

7   Dist. of Cal., Case No. 06cv1534W(AJB), Defendant VANIA brought a class action

8   complaint for violation of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692, et

9   seq. and the California Rosenthal Fair Debt Collection Practices Act, arising from her

10   landlord's service of a three day notice to pay rent or quit on her. Defendant VANIA has

11   brought three other cases based on allegations of violations of the Fair Debt Collection

12   Practices Act, e.g., *Vania Chaker v. Collection Company of America*, U.S.D.C. So. Dist.

13   of Cal., Case No. 05cv390 BEN(AJB) [unpaid T-mobile cellular phone charges]; *Vania*

14   *Chaker v. Allied Interstate, Inc.*, U.S.D.C. So. Dist. of Cal., Case No. 05cv0212

15   LAB(RBB)[unpaid DirectTV bills]; *Vania Chaker v. CAMCO*, U.S.D.C. So. Dist. of Cal.,

16   Case No. 04cv1735 W(RBB).

17        13. Plaintiffs are informed and believe, and based thereon allege that Defendant

18   VANIA did not solely file such suits in the Southern District of California, but also assisted

19   in cases in the Central District of California, appearing as attorney in the suit brought by

20   Defendant DARREN *subnom* (Darren Del Nero) and Defendant NICOLE alleging

21   defendant's violations of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692, et

22   seq.. Specifically, Defendants DARREN and NICOLE brought suit against Midland Credit

23   Management Inc., in the case of *Del Nero & Chaker, et al., v. Midland Credit*

24   *Management Inc.*, U.S.D.C. Cen. Dist. of Cal., Case No. 2:04-cv-01040-ABC-SH.

25   Defendant DARREN and his attorneys were sanctioned $155,979.09 after the court found

26   that Defendant DARREN brought suit in bad faith and for the purpose of harassment. (*Del*

27   *Nero v. Midland Credit Management Corp. et al.*, 2:04-cv-01040-ABC-SH.(Attorneys

28   fee award later vacated against Chaker's counsel.) The Court issued an order to show cause

---

Complaint                 5

1  re contempt for Defendant VANIA's conduct during the jury trial, and barred her from the

2  courtroom during the remainder of the trial. The court's basis for the order was that

3  Defendant VANIA attempted to aid a witness in answering counsel's questions. [ECF 91.]

4  Defendant VANIA also represented Defendant DARREN *subnom* (Darren Del Nero) in

5  *Darren Del Nero v. Reliable Adjustment Bureau Inc et al*, U.S.D.C. Cen. Dist. of Cal.,

6  Case No. 2:04-cv-00969-FMC-JWJ, another case alleging violations of 15 U.S.C., § 1681.

7  In each of those instances, in a likely effort to avoid Defendant DARREN's prefiling order

8  as a vexatious litigant, Defendant VANIA initially appeared on Defendant DARREN's

9  behalf, then substituted out to allow Defendant DARREN to prosecute the case *in propria*

10  *persona*.  Defendant VANIA engaged in such transitory representation of Defendant

11  DARREN to assist him avoiding the bar of the prefiling orders placed resulting from his

12  designation as a vexatious litigant.

13      14.  As to Defendant DARREN, Plaintiffs are informed and believe, and based

14  thereon allege that Defendant DARREN holds himself out to the public as operating a

15  business called COUNTER FORENSICS.  The COUNTER FORENSICS web page described

16  its services as follows:

17        "Founded in 2006, the origination of CounterForensics.com can be traced to
        the cyber security and forensics background of our consultant, Darren
18      Chaker. Mr. Chaker (www.DarrenChaker.com) previously worked in law
        enforcement, and as a security contractor in the Middle East. More recently,
19      Mr. Chaker managed electronic discovery (e-discovery) for a leading
        multinational law firm conducting large-scale digital forensic investigations,
20      and provided electronic discovery services involving civil, corporate and
        criminal matters. Mr. Chaker also implemented security enforcement
21      protocols and systems with Military Grade Communications for use between
        international offices to discuss sensitive matters. Mr. Chaker has additional
22      expertise in matters involving:
        • Software piracy;
23      • Sexual harassment via e-mail, instant messaging and other forms of electronic
        communications;
24      • Monitoring employee activity;
        • Employee sabotage;
25      • Intrusion detection;
        • Recovery of deleted files;
26      • Lost password recovery and cracking of locked files;
        • Discovery of hidden and deleted e-mails and pictures;
27      • Internet usage and unauthorized software installed on a company machine; and
        Removal of viruses, pictures, software and other data items which may be hidden
28      from the user.
        See **Exhibit 6**,

---

1  https://web.archive.org/web/20150208142616/http://www.counterforensics.com/

2  (Accessed on August 23, 2016.)

3      15.  At various times relevant to the facts stated herein, Defendant DARREN has

4  resided in California, Nevada and Texas, and engaged in transactions and acts affecting

5  interstate commerce:

6      16.  Defendant DARREN has, as a profession, engaged in litigation based on

7  meritless or outright false claims, typically relying upon the Fair Credit Reporting Act, 15

8  U.S.C. § 1681, and on at least one occassion bringing a claim for personal injury, deriving

9  income from such fraudulent activity.  As part of his pattern of racketeering activity,

10  Defendant DARREN has attempted and sometimes succeeded in collecting unlawful debts,

11  i.e., a claim based on false or meritless legal claims, and derived income from such false

12  claims and unlawful threats of suit.

13      17.  In another 2005 case, attorney's fees of $42,934.84 were awarded against

14  Defendant DARREN for filing a baseless lawsuit. (*Chaker v. Richland* (C.D. Cal. 2005)

15  CV 05-7851-RSWL; *See also Chaker v. Imperial Collection Services* (C.D. Cal. 2004)

16  CV 04-2728-PA (alleging claims under the FDCPA found to be without merit); and *Del*

17  *Nero v. Riddle & Associates PC, et al.* (C.D. Cal. 2003) CV 03-6511-GHK (same).) In a

18  2007 case, Defendant DARREN and his attorneys were sanctioned $155,979.09 after the

19  court found that Defendant DARREN brought suit in bad faith and for the purpose of

20  harassment.  (*Del Nero v. Midland Credit Management Corp. et al.* (C.D. Cal. 2007) CV

21  04-1040 GPS.)  In a 2009 case, Defendant DARREN was ordered to pay $136,316.14 for

22  bad faith due to Defendant DARREN falsely claiming identity theft.  (*Chaker v. Nathan*

23  *Enterprises Corp.* (C.D. Cal.  2009)  CV 04-2726-RSWL.)

24      18.  Defendant DARREN filed other suits based allegations of violations of Fair

25  Credit Reporting Act, 15 U.S.C. § 1681, i.e., *Darren Chaker-Del Nero v. Afni, Inc.*,

26  U.S.D.C. Cen. Dist. of Cal., Case No. 2:08-cv-03405-ODW-SS; *Darren D Chaker v. First*

27  *City Bank Credit Union*, U.S.D.C. Cen. Dist. of Cal., Case No. 2:04-cv-02727-GPS-RZ;

28  *Darren D Chaker v. Factual Data Corporation*, U.S.D.C. Cen. Dist. of Cal., Case No.

---

Complaint                                                                 7

1    2:04-cv-02729-JFW-AJW; *Darren D Chaker v. European Auto House*, U.S.D.C. Cen.

2    Dist. of Cal., Case No. 2:04-cv-02731-R-PJW; *Darren Chaker v. Arrow Financial*

3    *Services* LLC, U.S.D.C. Cen. Dist. of Cal., Case No. 2:04-cv-07050-FMC-FMO.

4        19.  Defendants have a pattern of attacking the attorneys which oppose them in their

5    racketeering activities, i.e., in *Darren D Chaker v. Felipa R. Richland, et al.*, U.S.D.C.

6    Cen. Dist. of Cal., Case No. 2:05-cv-07851-RSWL-PLA, Defendant DARREN sued

7    attorney Richland and her law office, and her client Nathan Enterprises Corp. for alleged

8    violations of the  Fair Credit Reporting Act, 15 U.S.C. § 1681.  Plaintiff is informed and

9    believes and based thereon alleges that during her defense of the both cases, Ms. Richland

10   was stalked, and her property vandalized.  Ultimately, Ms. Richland and her client prevailed,

11   with Defendant DARREN held liable for costs and attorneys fees. [ECF 25, 26.]

12       20.  Defendant DARREN, subnom *Darren Chaker Del-Nero*, brought additional

13   suits in the United States District Court for the District of Nevada based on allegations of

14   violation of the Fair Credit Billing Act, 15 U.S.C. § 1666, e.g.,  *Chaker-Delnero v. Nevada*

15   *Federal Credit Union, et al*, U.S.D.C. District of Nevada., Case No.,

16   2:06-cv-00008-BES-GWF; for violations of the Fair Debt Collections Practices Act, 15

17   U.S.C. § 1692, *Chaker-Delnero v. Butler & Hailey, et al*, U.S.D.C. District of Nevada.,

18   Case No. 2:06-cv-00022-KJD-LRL, *Chaker-Delnero v. Clark County Collection Service,*

19   *LLC*, U.S.D.C. District of Nevada, 2:06-cv-00123-JCM-PAL, and *Chaker-Delnero v.*

20   *Collectco*, U.S.D.C. District of Nevada, 2:06-cv-00244-RLH-GWF.  In each of these cases,

21   docket entries reflect a voluntary dismissal. Plaintiff is informed and believes that in those

22   cases, the Defendants paid a sum to "buy their peace" rather than to spend attorneys fees

23   litigating the case, despite the lack of the merit to Defendant DARREN's claims.

24       21.  Defendant DARREN, subnom *Darren Chaker*, brought additional suit in the

25   United States District Court for the Southern District of Texas (Houston) based on

26   allegations of violation of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692,

27   *Chaker v. The CMI Group*,  U.S.D.C. Southern District of Texas (Houston),

28   4:07-cv-01802F [Time Warner Communications.] In that case, the docket entries reflect a

---

Complaint                                                    8

1   voluntary dismissal. Plaintiff is informed and believes that in that case, the Defendants paid

2   a sum to "buy its peace" rather than to spend attorneys fees litigating the case, despite the

3   lack of the merit to Defendant DARREN's claims.

4      22.  Defendant DARREN, subnom *David Hunter*, brought additional suit in the

5   United States District Court for the District of Arizona, entitled *Hunter v. Receivables*

6   *Performance Management, LLC*, U.S.D.C. District of Arizona, 2:10-cv-00665-MHM

7   [Sprint cellular phone service].  Within that suit Defendant DARREN attached letters

8   claiming an address at 11881 S. Fortuna Road, #223, Yuma, AZ 85367 [Exhibit B, ECF 1-

9   3.] In that case, the docket entries reflect a voluntary dismissal. Plaintiff is informed and

10  believes that in that case, the Defendant paid a sum to "buy its peace" rather than to spend

11  attorneys fees litigating the case, despite the lack of the merit to Defendant DARREN's

12  claims.

13                 **SEX TRAFFICKING AND HISTORY OF CRIMINAL PROSECUTIONS**

14     23.  Plaintiff is informed and believes and based thereon alleges that Defendant

15  DARREN also engaged, within the last ten years, in human trafficking, and derived income

16  from such activity.   As reflected in Exhibit A, which will be filed under seal herein,

17  Plaintiffs represented a victim of DARREN's sex trafficking enterprise in court

18  proceedings initiated by DARREN, and as a consequence were subjected to the extortion,

19  and reprisal described herein by Defendants.

20     24.  Defendant DARREN's record of arrests and prosecutions (RAP) reveals arrests

21  for insufficient funds/check, attempting to prevent/dissuade victim/witness, receiving

22  known stolen property, vehicle theft, first degree burglary, grand theft, and being in

23  possession of an assault weapon. He was convicted of invading/looking into a tanning booth

24  (1997), and possession of an assault weapon (2006). Such crimes were punishable by a year

25  or more incarceration.

26     25.  Plaintiff is informed and believes, and based thereon alleges that Defendant

27  NICOLE has suffered a felony conviction in the State of California.

28               **FALSE STATEMENTS IN ORDER TO OBTAIN MONEY OR PROPERTY**

---

26.  Defendant DARREN also obtained mortgages on real estate through false statements, and thereafter rather than paying the mortgages, Defendant DARREN kept the rents from such properties to fund his enterprises, and when his mortgagors sought to recover their real property collateral, Defendant DARREN filed false bankruptcy petitions in order to stall or avoid the foreclosure and continue to collect rental income.

a.  Defendant DARREN used the ill-gotten proceeds of his enterprise to fund his lifestyle and further his illegal activities including through the purchase of computers, paying for travel, development of various domain names and online presences to the detriment of Plaintiff herein.

b.  In order to dissuade those members of law enforcement and attorneys in private practice who would challenge Defendant DARREN's criminal conduct, including Plaintiff herein, Defendant DARREN used various means and threats, including harassment, stalking, defaming others, vandalizing property, hacking computers, spoofing emails, and identity theft.

c.  Defendant DARREN has used the proceeds of his racketeering activity to purchase computers, equipment, and Internet access services in order to engage in his and Defendants VANIA and NICOLE's frauds, and efforts to dissuade those who oppose their illegal conduct, including Plaintiff herein.

d.  On March 22, 2012, Defendant DARREN was indicted in *United States v. Darren David Chaker*, Case No. 4:12CR00168-001, and thereafter granted pre-trial release under supervision with U.S. Pretrial Services.  The Indictment, attached as **Exhibit 1**, alleges a portion of Defendants' scheme, which Plaintiff incorporates by reference here.

e.  While on supervision with U.S. Pretrial Services, through false statements to a United States officer, he violated his terms of release by failing to disclose to U.S. Pretrial Services and the Court the fact that he procured a U.S. Passport using the alias "D. David Hunter."

f.  On December 17, 2013, Defendant DARREN suffered a Judgment in a Criminal

---

Complaint                                                                                          10

Case in the case entitled *United States v. Darren David Chaker*, Case No.

4:12CR00168-001, in the United States District Court for the Southern District of

Texas (Houston), for Bankruptcy Fraud, 18 U.S.C § 157(3).  On April 14, 2016, that

conviction was affirmed by the United States Court of Appeals for the Fifth Circuit,

case number 14-20026, as reported in  *United States v. Chaker*, 820 F.3d 204, 206

(5th Cir. 2016). He was sentenced to a total term of 15 months, and was additionally

sentenced to three years supervised release, as part of the special conditions of

supervision was ordered:

"The defendant shall provide the probation officer access to any requested
financial information. If a fine or restitution amount has been imposed, the
defendant is prohibited from incurring new credit charges or opening
additional lines of credit without approval of the probation officer.

The defendant is prohibited from possessing a credit access device, such as a
credit card, unless first authorized by the probation officer.

The defendant is required to participate in anger management counseling as
deemed necessary and approved by the probation officer. The defendant will
incur costs associated with such program, based on ability to pay as
determined by the probation officer.

The defendant is required to participate in a mental health program as deemed
necessary and approved by the probation officer. The defendant will incur
costs associated with such program, based on ability to pay as determined by
the probation officer.

The defendant may not stalk and/or harrass other individuals to include, but
not limited to, posting personal information of others or defaming a person's
character on the internet."

(ECF 312, 4:12CR00168-001)

27.  On November 7, 2016, the district court in *United States v. Darren David

Chaker*, U.S. District Court, Southern District of California, Case No.

3:15-cr-07012-LAB, struck the condition "The defendant may not stalk and/or harrass

other individuals to include, but not limited to, posting personal information of others or

defaming a person's character on the internet."

## DEFENDANTS' HISTORY OF EXTORTION AND WITNESS TAMPERING

28.  **Victim Zaya**: Plaintiffs are informed and believe that, in accordance with

Defendants' common plan and scheme, Defendant DARREN committed one or more acts

1    of extortion against Nadine Zaya:

2        a.  Plaintiff is informed and believes, and based thereon alleges, that Defendant

3    DARREN formerly had a dating relationship with Nadine Zaya. At some point

4    between August and October 2002, Defendant DARREN and Zaya, traveled from

5    Southern California to Scottsdale, Arizona. Petitioner took Zaya to a gun store,

6    where he purchased the Rifle, a licensed reproduction of a Fabrique Nationale FAL

7    (FN-FAL) battle weapon. At the gun store, petitioner told Zaya he once owned "the

8    exact same gun" but his mother had taken it away from him.

9        b.  After Defendant DARREN purchased the Rifle, he made Zaya take pictures of

10   him with it. He also made Zaya pose with the Rifle. Defendant DARREN then took

11   Zaya to a firing range, where he fired the Rifle and showed her how to shoot, hold,

12   and load it. When Zaya held the Rifle, Defendant DARREN reassured her, "It's okay.

13   Look, it's fun. . . . You're going to be okay. I'm an ex-cop. I know how to shoot a

14   gun." Shortly thereafter, petitioner and Zaya returned to California with the Rifle.

15       c.  On October 14, 2002, Laguna Beach police officers visited Defendant

16   DARREN's apartment to investigate allegations that he had sexually exploited a

17   minor. A police officer entered the apartment, knocked on a bedroom door, and

18   identified himself as a police officer. After some delay, Defendant DARREN

19   emerged from the bedroom and told the officer the room belonged to him. He

20   refused, however, to permit the police officers to search it. Defendant DARREN

21   called Zaya after the police officers left the apartment. He expressed concern that

22   the fully-assembled Rifle would be considered an illegal weapon.  Defendant

23   DARREN told Zaya he was going to remove parts from the Rifle to "make it legal"

24   and asked her to keep the parts.  The next day, the police officers returned to

25   Defendant DARREN's  apartment with a search warrant. During the search, an

26   officer found the Rifle in petitioner's bedroom closet. He noticed the Rifle had a

27   detachable magazine and a pistol grip, but that it was missing its bolt carrier group.

28   The officers also found unloaded magazines and pictures of petitioner posing with

---

Complaint                                                    12

the Rifle at a firing range. In the pictures, the Rifle contained the bolt and the
magazine.

d.  On November 18, 2002, the District Attorney of Orange County filed a felony
complaint charging defendant with one count of possession of an assault weapon
(Penal Code § 12280(b))  and one count of receiving stolen property (Penal Code §
496, subd. (a)). Shortly after the People filed the complaint, defendant began writing
letters to the court. In these letters, defendant claimed the police had illegally seized
privileged documents from his apartment. He also criticized the judges presiding
over his case and the attorneys assigned to represent him. On July 30, 2003 -- after
defendant had written six letters to various judges -- the court ordered defendant to
stop. The court notified defendant it would "not take action on personal
communications from a represented defendant when his case is pending before this
court." (*People v. Chaker,* No. G037362, 2008 Cal. App. Unpub. LEXIS 999, at
*4-5 (Ct. App. Feb. 4, 2008).)

e.  Plaintiffs are informed and believe that in July 2005, the Superior Court of
California, County of San Diego issued a restraining order against Darren D. Chaker
pursuant to the Domestic Violence Protection Act (Fam. Code, § 6200 et. seq. (the
Act)), requiring him to stay away from Nadine Zaya for a five-year period. He
appealed from that order on various grounds, contending in part that Zaya's evidence
was insufficient to support its issuance; the Court of Appeals of California, Fourth
District, Division One, however, rejected his arguments and affirmed the order.

f.  On June 15, 2006, Zaya filed a request for a temporary restraining order under
the Act against Chaker.  In her request, Zaya stated under penalty of perjury that
Chaker made threatening calls to her and told her he would harm her or her family if
she testified in a pending criminal matter against him. (*Zaya v. Chaker* (Oct. 19,
2007, D049874) [nonpub. opn.].)

g.  Thereafter, on or about July 19, 2006, and then again on or about December 8,
2006, Defendant DARREN sent nude photos of Zaya to Zaya's brother's employer,

---

Complaint                                                                    13

1   which had been taken by Defendant DARREN.

2   29.  **Victims Frantz:** Plaintiffs are informed and believe that the following is true

3   regarding Defendant DARREN's efforts to extort San Diego attorneys James Frantz, Jodi

4   Frantz, and Charles Kim:

5   a.  On or about December 2010, Jodi and James Frantz retained Charles Kim to

6   represent them in a civil protective action. Jodi Frantz sought a restraining order

7   against Defendant DARREN, in *Hautaluoma v. Chaker*, San Diego Superior Court

8   Case No. 717794.

9   b.  Prior to the extortion attempt against James Frantz, Jodi Frantz, and Charles Kim,

10   Plaintiffs are informed and believe that Defendants engaged in acts of vandalism to

11   the property of James Frantz and Jodi Frantz, which they believed to have been

12   perpetrated and intended by Defendant DARREN to intimidate James Frantz and Jodi

13   Frantz and send a message.

14   c.  In the preceding months to the extortion attempt, Jodi Franz was the victim of

15   financial fraud in the summer of 2010. Ms. Frantz had caused two of her then

16   current credit cards to be de-activated by the issuers due to fraud alerts. The recent

17   event happened in the week preceding the extortion attempt, while she was on

18   vacation. Ms. Frantz believed Chaker is responsible for the fraud.  Ms. Franz

19   reported the thefts to her credit card issuers. She had unauthorized charges on credit

20   accounts from Bank of America, Union Bank, and Nordstrom.  In the summer of

21   2010, Mr. Frantz also had his identity stolen, and used for credit card fraud. Mr.

22   Frantz believed Chaker was responsible for the fraud.

23   d.  On December 22, 2010, at 2:54 a.m., Defendant DARREN caused a fax to be sent

24   to the office of Charles Kim. The fax included an inappropriate reference to the

25   death of James Patrick Frantz II (the son of James and Jodi Frantz). Also, Defendant

26   DARREN faxed a complete copy of a County of San Diego Investigative report

27   #10-01098 which documented the medical examiners death investigation in that

28   case. The fax  referenced the social security number of Jodi Frantz and Dr. Christine

---

Complaint                                                    14

Miller who treated Jodi Frantz. The fax contained threats to publish the social

security numbers and "embarrassing" medical information if Attorney Kim did not

agree to Chaker's demands. Also included was an apparent threat to file complaints

with the state bar association against Charles Kim and James Frantz if they did not

comply with his demands.

30. **Victims Mateo**: Nicole Mateo was in a relationship with Defendant DARREN,

which resulted in the birth of a daughter. Plaintiff is informed and believes that following

the efforts to obtain child support, Defendant DARREN initiated a campaign of harassment

against Wendy Mateo and her husband Steven Mateo. Steven Mateo is a deputy constable

with the Harris County Constable Office, in Spring, Texas. The Mateo's hired an attorney by

the name of Cynthia Tracy to address Defendant DARREN's conduct. In response,

Defendant DARREN initiated a harassment campaign that included sending sexually

explicit photos of Nicole Mateo to the employers of the Mateos, obtaining the email

passwords of various Mateo accounts, and sending emails containing sexually explicit

material through such accounts. The Mateo's attorney, Cynthia Tracy, was targeted in a

blog post that also made false and defamatory statements about her. Ultimately, Attorney

Tracy declined to continue to represent the Mateos due to the aggravation and the expense

of dealing with Defendant DARREN.

### DEFENDANTS' EFFORTS DIRECTED AT PLAINTIFF HEREIN

31. Plaintiff operates a website called FEARNOTLAW.COM, and has operated that

site since 2005. Fearnotlaw.com maintains tens of thousands of unpublished decisions

from California's court of appeals. The unpublished decisions were taken directly from the

website of the court of appeals and posted *en masse*, at various times. There was no

intentional targeting of Darren Chaker or any other subject of the decisions.

32. Defendant DARREN in this case initially contacted Plaintiff to demand removal

of decisions posted concerning his cases that had been decided by the Court of Appeals.

One of those decisions was *Zaya v. Chaker*, California Court of Appeal Case No.

D049874. In *Zaya v. Chaker*, the Court of Appeal affirmed a trial court's imposition of a

1 five year restraining order against Mr. Chaker imposed pursuant to the Domestic Violence

2 Protection Act, Fam. Code, 6200 *et. seq.*   Defendant DARREN Chaker's letter to Plaintiff

3 on November 22, 2010 contained Ms. Zaya's original petition, which alleged that Mr.

4 Chaker posted bogus sex-service advertisements on Craigslist falsely attributed to Ms.

5 Zaya, and had threatened to post compromising photos and videos of Ms. Zaya online if she

6 testified against him in his felony assault-weapon case. Plaintiff did not remove any of the

7 appellate decisions from Fearnotlaw.com.

8    33.  On or about Monday, November 22, 2010, Mr. Chaker had a letter personally

9 delivered to Plaintiff Scott McMillan's mailbox, at his home.  It was not in an envelope.  He

10 addressed it to both Plaintiff Scott McMilla as "Scott" and his wife "Rebeca".  A true and

11 correct copy of that letter is attached hereto as **Exhibit 3**.

12    a.  In the first paragraph of his letter of November 22, 2010, Mr. Chaker states:

13         "We all have a First Amendment right to post online what we like

14      within reason. *We also have the First Amendment right to re-publish public*

15      *records and make statements couched in opinion based upon facts.* We

16      share in common public records in criminal and civil court both as a pro-per

17      plaintiff and defendant-including restraining orders despite yours was

18      dismissed. We also share that we have both filed about the same amount of

19      pro-per lawsuits–mine filed between 1994-96. Of course, I don't think any

20      less of you since its common for people to have a public record. In fact,

21      roughly 1 in 5 Californians have some kind of arrest record. *Another*

22      *attorney with a public record is Lisa Laqua who unsuccessfully sued my*

23      *mother while representing a convicted felon with an active warrant for his*

24      *arrest at the time. Laqua had public records which contained lawsuit and*

25      *restraining order info too. Just Google "Lisa Laqua" which her blog*

26      *should be first or see http:/ /lisalaqua.blogspot.com/. . ."*

27 [Exhibit 3, letter of November 22, 2010 (emphasis added).]

28    34.   In closing, Mr. Chaker then stated that Plaintiff  take action by a specific

_____

Complaint                                                     16

deadline:

> "I encourage you to consider the attached, and/or pull the public
> record to see the facts for yourself and if you believe the link should be
> removed or allow all the facts to be disclosed to please do so. Again, you
> have no obligations to comply, however, if you do, *please act on this request*
> *by this Tuesday no later than 3:30PM PST.*
> www.fearnotlaw.com/articles/article15009.html

[Exhibit 3, letter of November 22, 2010 (emphasis added).]

35.   Plaintiff accessed the website "http:/ /lisalaqua.blogspot.com/" following his
receipt of that letter in 2010.  The website stated numerous scandalous allegations about
Ms. Laqua.  Thus, in reading Defendant DARREN's letter of November 22, 2010, Plaintiff
reasonably understood that Defendant was threatening that if Plaintiff did not abide by his
demands by 3:30 p.m. on November 23, 2010. Plaintiff could expect to see scandalous
material posted about himself.

36.   Defendant DARREN  thereafter initiated a campaign of harassment and
vandalism against Plaintiff McMillan and his family.  Usually during the holidays,
Plaintiff's family's cars would be vandalized.  Plaintiff's brother had the words "fearnotlaw"
scratched on the trunk of his BMW.  In another instance, the driver's side mirror of
Plaintiff's brother's truck was smashed.  On that instance, a neighbor that heard the noise,
saw a black SUV driving rapidly away.  Defendant DARREN  owned at the time of the
incident  a Black Dodge Durango.  Plaintiff is informed and believes, and based thereon
alleges, that Defendant VANIA Chaker accompanied Defendant DARREN  during that
vandalism.

37.   Other members of Plaintiff McMillan's family were attacked as well.
Plaintiff's mother's car had acid poured on the trunk.  Plaintiff's father's car had its tires
slashed.  After each event, Mr. Chaker would send Plaintiff an e-mail wishing him "happy
holidays" or making some other statement.  It was clear to Plaintiff that Darren Chaker was
acknowledging the vandalism by his timing of his emails, and attempting to send a message

---

Complaint                                                                17

Case 3:16-cv-02186-WQH-MDD   Document 37-1   Filed 09/23/22   PageID.4307   Page 91 of
1196
Case 3:16-cv-02186-WQH-MDD   Document 27-1   Filed 12/12/17   PageID.3315   Page 97 of 85

and intimidate Plaintiff.

38.   Thereafter, Defendant DARREN  sent Plaintiff McMillan e-mails referring to his dogs – which indicated to Plaintiff that he had come to his house and looked into his back yard.

39.   Because of Defendants' activities, Plaintiff McMillan and his family members installed security cameras around their houses.  Plaintiff McMillan also installed security cameras on the outside of the commercial building in La Mesa where Plaintiff TMLF has its offices.

40.   Defendant DARREN  also began posting matters about Plaintiffs on the Internet.  These posts were false, scandalous, and libelous.  They included the false accusations that Plaintiffs had lost every appeal that Plaintiffs had filed, and that Plaintiff was a fraud.  Initially, Defendant DARREN published such false allegations and scandalous statements on websites occupying domains that Defendant DARREN owned.

41.   On June 17, 2011, Defendant DARREN notified Plaintiff that he was operating a Blogger site at scott-mcmillan-law.blogspot.com.  Plaintiff Scott McMillan had not authorized him to use his name.

42.   Since 2011 and through the present, derogatory and defamatory statements about Plaintiffs have been posted on the internet at http://www.complaintsboard.com/complaints/the-mcmillan-law-firm-la-mesa-c571484.ht ml#comments.  Many of these statements are identical to statements Defendant DARREN posted on his own websites.

43.   Since 2011, someone has posted derogatory and defamatory statements about Plaintiffs on the internet at the website domain pissedconsumer.com.  Based on the content, which is similar to what Defendant DARREN posted on his own website, Plaintiffs are informed and believe and thereon allege the poster to be Defendant DARREN.

44.   Through the years, clients have contacted Plaintiff McMillan to let him know that they have seen the Defendant DARREN 's posts concerning Plaintiff on the Internet. Chaker's posts were troubling to Plaintiffs' clients.

Complaint

18

45.  Because Defendant DARREN  had posted about Plaintiff on the Internet, others

that had conflicts with Defendant DARREN  contacted Plaintiff for advice and

representation in dealing with Defendant DARREN .  Plaintiff has provided that

representation pro-bono, and advanced the expenses.

46.  Plaintiff ultimately represented Wendy Mateo, one of the Defendant

DARREN's victims, in *Chaker v. Mateo*, San Diego Superior Court case,

37-2010-00094816-CU-DF-CTL, Hon. Timothy B. Taylor, Judge presiding.  Wendy Mateo

is the mother of Nicole Mateo.  Plaintiff is informed and believes that Nicole Mateo had a

brief relationship with Darren Chaker, which resulted in the birth of their daughter.

Plaintiff began representing Ms. Wendy Mateo, the grandmother of Darren Chaker's child

during the pendency of Darren Chaker's appeal of the judgment in the *Chaker v. Mateo*

case.  That appeal resulted in the published decision of *Chaker v. Mateo*, 209 Cal. App. 4th

1138 (2012).   Following that appeal, the Superior Court awarded Plaintiffs attorneys fees.

Those attorneys fees awarded have been the subject of judgment debtor examinations and

orders from Judge Taylor as discussed below.

47.  Thereafter, Plaintiff began representing *Susan A*. in a paternity case filed in the

San Diego Superior Court entitled *Chaker v. A* (the "Paternity Case").   Ms. A had also

been in a relationship with Mr. Chaker. Ms. A. sets out her experience with Chaker in her

declaration dated July 11, 2013, a true and correct copy of which is referenced herein as

**Exhibit 'A'**, to be filed under seal in this court. Mr. Chaker claims that Ms. A.'s child, **L**, is

the product of that relationship.   Ms. A. disputes that Mr. Chaker is the father, biological or

otherwise, of her child **L**.

48.  On July 12, 2013, Plaintiff McMillan filed a document in the Paternity Case,

which included statement from Leesa Fazal, State of Nevada Office of the Attorney

General, who had provided her confidential investigative report for submission in the

Paternity Case, signed on July 11, 2013.   A true and correct copy of which is referenced

herein as **Exhibit '2'**, to be filed under seal in this court.

49.  On July 22, 2013, at 8:45 a.m., Officer Fazal appeared in San Diego Superior

---

Complaint                                                                19

Case 3:16-cv-02186-WQH-MDD   Document 917-1   Filed 09/23/22   PageID.480p   Page 93 of
Case 3:16-cv-02186-WQH-MDD   Document 917-1   Filed 12/13/17   PageID.9614   Page 93 of 85
1196

1    Court, according to Plaintiff's subpoena to testify in the Paternity Case regarding the facts

2    alleged in the above mentioned Declaration. Officer Fazal and Plaintiff McMillan appeared

3    before the Superior Court, Judge Gerald Jessop, presiding.  The court did not have time to

4    hear the case in the morning, and ordered Ms. Fazal and Mr. Chaker back to court later that

5    afternoon. As they exited the court, Defendant DARREN followed Ms. Fazal and Plaintiff

6    McMillan a short distance, and walked at a quick pace with his mobile telephone in his hand

7    and appeared to take video of them while laughing loudly.   At that time, Ms. Fazal had not

8    yet testified, and Defendant DARREN's behavior was purposefully threatening and an

9    apparent effort to intimidate Officer Fazal, prior to her testimony.

10           50.  When Plaintiff McMillan and Officer Fazal returned they were accompanied by

11   licensed private investigator Richard Rivero.  Following the hearing Defendant VANIA

12   approached Richard Rivero in a rapid manner, within a couple feet, and asked him what he

13   was doing there and demanded his name.  Although he had not been called to testify, Rivero

14   responded that he was a witness, he would speak to Defendant VANIA in the presence of

15   court personnel, and attempted to pass her. Defendant VANIA blocked his and Plaintiff

16   McMillan and Officer Fazal's exit, so Plaintiff, Rivero and Fazal returned to the court

17   room, and Defendant VANIA followed.  Thereafter, the courtroom deputy ordered

18   Defendant VANIA to leave, and to leave Rivero, Plaintiff McMillan and Ms. Fazal alone.

19   The courtroom deputy allowed Rivero, Plaintiff McMillan and Ms. Fazal, and shortly

20   therafter, confirmed that Defendant VANIA was not awaiting them outside the courtroom.

21           51.  Plaintiff McMillan, Officer Fazal and Rivero exited the courtroom, then entered

22   the elevator to descend to the lobby.  After exiting the elevator and entering the lobby.

23   Defendant DARREN blocked the doorway exit and in a loud and commanding voice

24   demanded that Officer Fazal be arrested for being armed.  He wanted to place her under

25   citizen's arrest.   Officer Fazal was escorted to the side while the  deputies determined that

26   there were no grounds to arrest.    While they waited, the Defendant VANIA entered the

27   location and brushed by Rivero as she entered the elevator.

28           52.  Rivero left the building with Officer Fazal, Rivero then noted Defendant

---

Complaint                                    20

VANIA's black SUV following him at a high speed.  Rivero pulled to the side.  Defendant VANIA stopped her SUV in the middle of the street adjacent to Rivero's vehicle.  Rivero felt that Defendant VANIA was attempting to intimidate him. Rivero noticed Defendant DARREN hunched down in the passenger's seat so as to not be identified.  Such chase was intended, and did intimidate Officer FAZAL in that it gave her additional concern regarding participating in the legal proceedings.

53.  On July 24, 2013, and thereafter during the pendency of the Paternity Case, Plaintiff and his client provided the United States materials and information regarding Defendant DARREN, specifically that Defendant DARREN had a "go kit" which included a passport under his identity "David Hunter". Which information Plaintiff understands resulted in the revocation of Defendant DARREN 's pre-trial release.  During Defendant DARREN's resulting incarceration, the *Chaker v. A* case was dormant.

54.  During his incarceration, Darren Chaker's mother, Nicole Chaker appeared at least once at a hearing in that case.

55.  Plaintiff is informed and believes, and based thereon alleges that, in that interim period Defendant DARREN was incarcerated, such custody began on or about August of 2013 through September of 2014, also during that time, i.e., on or about January 21, 2014, Plaintiff received at least one letter from Mr. Chaker that were drafted by Defendant NICOLE at Defendant DARREN'S request.

56.  On or about February 2014, while Defendant DARREN was incarcerated, Defendant NICOLE sent Plaintiffs' and his client's mother Candy C.  each a copy of the same letter. A true and correct copy of which is referenced herein as **Exhibit '4'**, to be filed under seal in this court.  The letter contained the following demands and threats:

        **A.**    **Demand against McMillan, Susan A., Candy C.:**

> "In short, while in custody, I would like to speak to my son, starting with five minutes by phone, at least once a week, which means, I immediately would need a phone number at all time in order to contact him. I made a similar request to you last August and you chose to ignore it."

¶ 2. First and Second Sentences.

**B.     Threat - Implied against client Susan and mother Candice:**

"Information came to my attention, that her mother Candice was claiming her and L-- from her taxes, when they were both in my care for 2 years and that does not include the long list of items my sister and mother have gotten them on daily basis, let alone all the restaurants they were taken to, plenty of receipts and pictures that will reflect so. Susan's sixteen year old son, J-----n, was also deducted by Candice when he lived full time with his paternal grandparents and father in Riverside."

**C.     Threat - implied against client Susan and mother Candice:**

"I am putting Candy "C" C-- on notice so she could save all of Susan A—'s "government aid applications" six of them, in 4 states, which are signed under the penalty of perjury, all receipts which conflict greatly with what we have to present. Susan failed to list her mother's alleged support in six different applications for government aid, actually they both lied to the IRS, for years."

**D.     Demand against Scott McMillan:**

Attorney McMillan, additional information came to my attention about your negative opinion of me, established attorneys and the ACLU, on the internet. I will ask you to immediately remove any detrimental opinion by you and your friends.

**E.     Threat against Scott McMillan and Susan A.**

"You never considered the fact that due to your conduct your client may suffer. I should remind you the First Amendment is a 2 way street and I have the right to express my opinion as well."

**F.     Threat against Candy C----**

"I am copying Candy "C" C---- on this letter to place her on notice once again, to retain any and all writings, including, but not limited to receipts used to allegedly support Susan and L---, text messages, electronic email, phone

records, IRS filings in several states, or other items she believes will aid in
her deposition in this case and on a pending civil action that will be filed in
the coming months. Of course your client has been on notice to retain all of
the above since May 2013, and trust she has not deleted any 'writing" or lost"
her phone as such is against the law and basis for an adverse inference."

    **G.    Demand**

"This offer is open until February 21, 2014."

            * * *

57.  Plaintiff read the content of the letter that is **Exhibit 4** as implying a threat to
further defame Plaintiffs and make scandalous statements about Plaintiffs, and as a threat
against both Plaintiffs' client Susan A. and her mother Candy C. to report alleged
wrongdoing by them to government authorities. Plaintiffs' client did not agree to settle the
case with Mr. Chaker, and so Plaintiffs did not accede to these threats that Nicole Chaker
directed to Plaintiffs, Susan A., and Candice C. in Defendant DARREN's name.

58.  As a result of the threat against plaintiffs, Plaintiffs spent time and resources,
which could have spent working on cases for paying clients, and monitoring the Internet for
further scandalous postings. This caused the Plaintiff TMLF to lose revenue.   Plaintiff
Scott McMillan found it vexing and upsetting.

59.  On February 26, 2014, still while Defendant DARREN was incarcerated,
Defendant NICOLE filed documents in the paternity case on behalf Defendant DARREN,
including executing a declaration in his name, and signing his signature.  Defendant
NICOLE is not admitted to practice to the California Bar.   Within the letter to the Court
attached to the declaration, Defendant NICOLE repeats the implied threats to reveal Susan
A's applications for government benefits.   A true and correct copy of which is referenced
herein as **Exhibit '5'**, to be filed under seal in this court. Specifically, Defendant NICOLE
in Mr. Chaker's name purports to report Susan A. for making false claims, by stating:

    Respondent has now, after placing me . . .  on six applications for governemnt
    [sic] aid (all signed under penalty of perjury), now attests in her declaration I

1    am not the father in an effort to give Attorney McMillan's motion merit.

2    [**Exhibit 5**, page 2, to be filed under seal.]

3        60.  On or about September 18, 2014, during the pendency of the Paternity Case,

4    Plaintiff McMillan received an e-mail from Darren Chaker, a true and correct copy of

5    which is referenced herein as **Exhibit 'B'**, to be filed under seal in this court.   Within that

6    letter, Mr. Chaker threatens further actions against Plaintiffs unless he convinced his client

7    Susan A to grant him concessions in the paternity case.  Plaintiff has  excerpted the relevant

8    portions below (with redactions and substitutions to protect the privacy of third parties):

9    9/18/14
        Time Sensitive – Reply Required by 8PM Today

10                Confidential Settlement Communication – California Evidence
Code §1142

11

12           Dear Scott, S, and C,

13           This is a request to settle pending claims . . . .

14                First, allow me to clarify this letter is constitutionally
protected communication. " 'As a general rule, even if subject to some
exceptions, what you may do in a certain event you may threaten to do, that is,
give warning of your intention to do in that event, and thus allow the other
person the chance of avoiding the consequences' "].  Equally well established
is the fact that "[o]ne legitimate purpose of a demand letter is to intimidate."
(Subrin & Main, The Integration of Law and Fact in an Uncharted Parallel
Procedural Universe (2004) 79 Notre Dame L.Rev. 1981, 2003 (hereafter
Subrin & Main).)

18           To keep it simple, here's my offer:

20             • [Mr. Chaker requested concessions in the paternity action,
including obtaining partial custody of the child of whom he claimed to be the
father.]
        . . .

22             • I will remove all blogs I have control over concerning Scott
or his firm, and am able to remove the complaintsboard.com posting and if
unable to remove pissedconsumer.com, I will pay up to $500 to have SEO
performed to push down the links as I know these sites continue to hurt the
practice. (I understand I have negative comments about me, however I do not
need to impress clients with my reputation. I can assure you at least one
client a year doesn't call due to reviews – costing you and your family
money.)

26             • No blogs concerning S or C's company, have been posted, but
various items have been set to self-publish in the event I am unable to access
the blog and push back the self-publish date another two weeks.

28           In short I am agreeing to things a court would not order, but am trying
to be amicable.

Complaint            24

Scott, you once said to me "I win every time we go to court". I think you mischaracterize what winning is to me. In court, it is not the court ruling. It's the time spent away from your office. Taking up your time and associate's time. Taking food out of your kids mouth. Staying up late, or ignoring kids and wife while spending time on litigating the instant case.  Costing you clients – at least one person a year doesn't call you based on my blogs – which have been updated recently, scott-mcmillan-law.blogspot.com. Your reputation and past performance, likely increases the likelihood of opposing counsel's decision to fight a pending case longer - which costs you more time and money.  Out of court, I have a few more victories than you and will always prevail in that respect, and win by having you and family spending money on cameras, watching the monitors, looking out the window, and drawing drapes – of course there's no proof I have not done a thing nor do I admit such, but if you think I am responsible, indeed I win every day.

Indeed, an adversary has the right to "inflict hard blows on their opponents ... " (Caro v. Smith (1997) 59 Cal.App.4th 725, 739; see also People v. Kalnoki (1992) 7 Cal.App.4th Supp. 8, 11-12.)  However, it's not my intent to be an adversary, but to resolve and put things behind us and move forward. I hope calmer heads prevail and things are looked at both in a business sense and in a common sense perspective.

* * *

**(Exhibit 'B', To Be Filed Under Seal)**

61.  Defendant DARREN's September 18, 2014 e-mail quoted above confirmed Plaintiffs' belief that Darren Chaker was responsible for derogatory remarks posted about Plaintiffs on complaintsboard.com and pissedconsumer.com, set forth in more detail below, in that he was then offering to remove or attempt to remove his posts from those sites.

62.  Plaintiffs' client did not agree to settle the case with Mr. Chaker, and so Plaintiffs did not accede to these threats.

**Hacking Twitter and Unauthorized Access to Plaintiff McMillan's Paypal Account**

63.  Plaintiffs are informed and believe, and based thereon allege that Defendant DARREN Chaker thereafter attempted to hack into Plaintiff's twitter and paypal accounts. Specifically,

a.  On October 22, 2014, Plaintiff McMillan received a notice from Paypal of "unusual activity" on his account.  Plaintiff hadn't attempted to sign in to his Paypal account at that time.  A true and correct copy of that email is attached hereto as **Exhibit 'C'**.  Due to the timing of the notice, Plaintiff is informed and believes that it was Darren Chaker that hacked into Plaintiff's account.

b.  On November 19, 2014, Plaintiff received a notice of a "suspicious sign in detected on [his] twitter account."  Plaintiff hadn't attempted to sign in to his twitter account.  A true and correct copy of that email is attached hereto as **Exhibit 'D'**.  Due to the timing of the notice, Plaintiff is informed and believes that it was Darren Chaker that hacked his account.

64.  Following that threat of September 18, 2014, Mr. Chaker began posting information on the scott-mcmillan-law.blogspot.com site that he operated that, among other things, Plaintiff had molested his daughter.   Such statement was grossly false, scandalous, and libelous.  The first such statement appeared on Thanksgiving Day, i.e., Thursday, November 27, 2014.   A copy of that post is attached hereto as **Exhibit 'E.'**  Plaintiff  had not authorized Defendants to use Plaintiff's name in any manner.  Plaintiff had not molested his daughter.  That webpage has since been removed.

65.  In order to improve the likelihood of the search engines indexing his site to Plaintiff's name, Defendant DARREN optimized that page, **Exhibit 'E'**, for search engines with "labels" including "4760-Nebo, attorney-sex-offender, el-cajon-sex-offender, la-mesa-sex-offender. Rebecca-McMillan, scott-mcmillan-law, www.mcmillanlaw.us."

66.  Mr. Chaker also operated a Blogger site at http://mcmillanlawfirm.blogspot.com/.  Plaintiff had not authorized Defendant DARREN to use the firm's name in this manner.  He published similarly false, scandalous, libelous material on that site.

67.  On or about November 28, 201[4], Defendant DARREN Chaker posted on the Blogger site at scott-mcmillan-law.blogspot.com, a post entitled "Maura Larkins Linked to Sex Abuse."  Within that post Chaker repeats his false statements about Plaintiff, and also recited a completely fabricated association between Plaintiff  and Ms. Larkins, who is another individual with whom Mr. Chaker has conflict. A true and correct copy of that post is attached hereto as **Exhibit 'G'**.

**Spoofing Emails**

68.  On December 3, 2014, Plaintiff received a "spoofed" or bogus email that

---

1  purported to have been sent from Plaintiff's own e-mail address "scott@mcmillanlaw.us"

2       a.  The email stated:

3  "Scott McMillan and family are child molesters per a recent report,
   http://scott-mcmillan-law.blogspot.com/2014/11/scott-mcmillan-
4  la-mesa.html"

5       b.  A true and correct copy of the email is attached as **Exhibit 'H.'**

6       c.  A true and correct copy of the email with the header is attached as **'I'.**

7                              **Google Places**

8       69.  On December 4, 2014, a "Darren C." posted a 2 star review for the McMillan

9  Law Firm, APC on Google places, wherein he stated:

10
   "I wish I knew of his interests in children, http://scott-mcmillan-
11 law.blogspot.com/2014/11/scott-mc."

12      a.  A screen shot of Plaintiff's administration page for Google Places is attached

13 hereto as **Exhibit 'J'.**

14      b.  That post was later deleted.   In light of the timing of that e-mail, the use of the

15 name "Darren C.", and that the identical content was posted on his blogspot sites,

16 Defendant DARREN was the poster.

17      70.  Defendant DARREN. Chaker sent e-mails to many members of the local legal

18 community, accusing Plaintiff of molesting his  daughter.  A copy of one such email dated

19 December 6, 2014 is attached hereto as **Exhibit 'K'**.  That e-mail was sent to Andrew

20 Griffin, an attorney for an opposing party in a bankruptcy case where Plaintiff represented a

21 creditor, who in turn, forwarded the e-mail to Plaintiff on December 8, 2014.

22      71.  On December 22, 2014, at 1:57 a.m., Defendant DARREN sent Plaintiff an e-

23 mail with the subject line "Pending Paternity Case". A copy of that email is attached hereto

24 as **Exhibit 'L.'**

25      72.  On December 23, 2014, at approximately 10:08 a.m., Plaintiff received an e-

26 mail from Defendant DARREN  Chaker entitled "Request to See Son."  A copy of that

27 email is attached hereto as **Exhibit 'M'.**

28       **Threats to E-mail Colleagues in the San Diego East County Community**

───────────────────────────

                              Complaint                              27

73. On December 23, 2014, Plaintiff received an e–mail from Defendant DARREN where he stated:

> "Mr. McMillan, the reported conduct I have found is very improper and disgusting. I have been forced to notify numerous members of the bar about my blog concerning your firm, most recently the Foothills Bar Association, and will start naming your daughter, I believe a former Ms. El Cajon, as the likely victim. I hope you have ceased your conduct and notice to hundreds of people has done the public some good.
>
> Dear XXXXXX,
>
> Sex offender. As a member of the bar and likely parent, I would hope notice of a report concerning La Mesa Attorney Scott McMillan, who also operates McMillan Academy of Law without a single applicant/graduate, http://campus.lawdragon.com/schools/mcmillan-academy-of-law/ was reported to take part in sexual molestation of a minor. See, http://scott-mcmillan-law.blogspot.com/2014/11/scott-mcmillan-la-mesa.html
>
> The report provides great detail and hope you pass this email along, as I have distributed it to 200 attorneys in San Diego. Scott McMillan is also a documented family friend of Kenneth Bourke who was also arrested for child molestation – see report - http://scott-mcmillan-law.blogspot.com/2014/09/scott-mcmillan-molest-la-mesa.html
> Happy Holidays to all.
> Darren Chaker"

    a. A copy of that email is attached hereto as **Exhibit 'N'**.

74. On or about June 8, 2015, Google removed the scott-mcmillan-attorney. blogspot.com site, which defendants had created without Plaintiffs' authorization.

75. On or about June 16, 2015, Google removed the mcmillanlawfirm. blogspot.com site, which defendants had created without Plaintiffs' authorization.

## COMPLAINTSBOARD.COM

76. Since 2011 and through the present, a person that Plaintiff McMillan believes to be Defendant DARREN based on identical content posted on his website and Mr. Chaker's statements above of September 18, 2014 that he is "**able to remove the complaintsboard.com posting**", has posted derogatory and defamatory statements about Plaintiff on the Internet at:

http://www.complaintsboard.com/complaints/the-mcmillan-law-firm-la-mesa-c571484.html#comments

---

1      a.  A true and correct copy of that post as published is attached hereto as **Exhibit**

2      **'O.'**

3      b.  The poster is identified as "Tracy Law Houston."  Cynthia Tracy, Attorney at Law,

4      P.C., a family law attorney in Houston, Texas, formerly represented Nicole Mateo in

5      the custody and child support case against Darren Chaker.

6      77.  Despite the removal of the blogspot sites, on August 23, 2015, a poster using

7   the name and search term "scott-mcmillan-la-mesa" posted the following as a comment to

8   the post at http://www. complaintsboard.com/complaints/the-mcmillan-law-firm-la-mesa-

9   c571484.html#comments

10      a.  "I located the police report about Scott McMillan, La Mesa, Attorney reportedly molesting children. I also found he operates his own law school out of a small, run

11      down office near the train tracks, but in the same breath says he's a leading law firm. With this reputation, I cannot imagine such is true."

12      b.  Attached as an image to the comment, he re-posted his November 27, 2014 post,

13      i.e., the content at Exhibit 'B' herein, the repost of which is attached at **Exhibit 'P.'**

14      78.  On September 16, 2015, a poster using the name and search term

15   "mcmillan-law-firm-la-mesa" posted the following as a comment to the post at

16   http://www.complaintsboard.com/complaints/the-mcmillan-law-firm-la-mesa-c571484.ht

17   ml#comments

18      a.  "Scott McMillan, McMillan Law Firm, sued the hardworking Sheriff over his Facebook Account. The law settled for about nothing. It is unfortunate law

19      enforcement need to pay out money to defend such nuisance lawsuits, when that money should be going to hiring more officers, and buying newer equipment. With

20      about 60 loses in the Court of Appeal docket, astonishing he is still in office."

21      b.  That case – *Karras v. Gore*, U.S. D.C. So. Dist. Cal., 14cv2564-BEN-KSC – was

22      settled for a payment of attorneys fees plus the token $20. Thus, the above statement

23      is false, as the Sheriff paid attorneys fees and agreed to change practices.

24      c.  Attached as an image to the comment, he posted a partial news article, a copy of

25      which is attached as **Exhibit 'Q.'**

26      79.  Also on September 16, 2015, a poster using the name and search term

27   "mcmillan-law-firm-la-mesa" posted the following as a comment to the post at

28   http://www.complaintsboard.com/complaints/the-mcmillan-law-firm-la-mesa-c571484.ht

---

Complaint             29

ml#comments

    a.  "McMillan Academy of Law, run by Scott McMillan appears to have not had a single student go through his law firm, where the class is shared in the same space as the attorney, oh and also Dean McMillan (also an attorney working out of same office. According to LawDragon, no one has ever graduated or even applied to that law school."

    b.  Attached as an image to the comment, he posted a webpage print-out, a copy of which is attached as **Exhibit 'R.'**

    80.  Also on September 16, 2015, a poster using the name and search term "mcmillan-law-firm-la-mesa" posted the following as a comment to the post at http://www.complaintsboard.com/complaints/the-mcmillan-law-firm-la-mesa-c571484.html#comments

    a.  "McMillan sued by Yelp! for posting his own reviews. Read the story in detail, sad set of circumstances, especially when you need to create your own reviews."  In truth and in fact, Plaintiffs had not posted their "own reviews."  Plaintiffs had represented Julian McMillan, who had been sued by Yelp.

    b.  Attached as an image to the comment, he posted a news article, a copy of which is attached as **Exhibit 'S.'** Plaintiff did not post his own reviews. Indeed, in that case, Plaintiff was not accused by Yelp of posting comments. Rather, Plaintiff represented another attorney, Julian McMillan, in the case. Chaker edited out the part that would have otherwise explained that Plaintiff was not the Defendant DARREN  in that action, but rather just the attorney.  Contrary to Defendants' suggestion, Plaintiff was partially successful at the time of the posting of the article. Plaintiff prevailed in a motion to change venue, and counsel for Yelp paid Plaintiffs attorneys fees.

    81.  On February 9, 2016, a poster using the name and search term "mcmillan-law-firm" posted the following as a comment to the post at http://www.complaintsboard.com/complaints/the-mcmillan-law-firm-la-mesa-c571484.html#comments

    a.  "Williams v. The Superior Court of San Diego County/Nordstrom, Inc., Court of

Complaint

30

Appeal Case Number D068765. shows Scott McMillan, McMillan Law Firm in Las Mesa, LOST ANOTHER case. This one where Nordstrom is vigorously defending itself against allegations of attorney, law professor, and law school dean (Yes, Scott McMillan is all three of those titles since he runs a law school, McMillan Academy of Law, out of two story office near the train tracks. Despite not a single student has graduated, or appears to have attended, no one has taken the bar exam either. Nonetheless, this is another example of Scott McMillan losing another case - although he claims to be a "leading" San Diego attorney."

b. Attached as an image to the comment, the docket form , a copy of which is attached as **Exhibit 'T.'**

c. This statement is also false, as the court of appeals allowed the appeal to proceed in light of the law regarding final, appealable orders.

d. Further, the Court entered an order of stipulated reversal of such appeal.

82. On or about March 27, 2016, Plaintiff McMillan identified a post using Plaintiff TMLF's logo and created in a manner that suggested it was posted by Plaintiff or someone else from his firm. Plaintiff did not authorize Defendant DARREN or anyone else to use the McMillan Law Firm's logo in this manner. The latest entry was posted on or about December 17, 2015. Specifically, a poster using the name and search term "scott-mcmillan-law-firm-la-mesa" setup a bogus page entitled "The McMillan Law Firm Customer Care Service" using The McMillan Law Firm, APC logo at http://www.complaintsboard.com/the-mcmillan-law-firm-b121166

a. A true and correct copy of that page is attached hereto as **Exhibit 'U.'** Notably, the bogus "customer care service" repeats the same false allegations as previously made by Chaker. i.e., that Plaintiff molested his daughter.

b. This had been preceded by an email on December 8, 2014 – Plaintiff's birthday – wherein Mr. Chaker emailed Plaintiff the following statement:

Good afternoon Scott,

I have been unable to locate a TM/Copyright for the domain mcmillanlaw.us or for your law firm with the USPTO or U.S. Copyright Office. If there is such, kindly advise prior to 7PM today. If I do not receive a response, it will be presumed there is no such TM/Copyright. Prior to posting additional material, I will extend this courtesy to you.

Also, I have updated the material on http://scott-mcmillan-law.blogspot.de/p/scott-mcmillan-attorney-la-mesa.html

---

Complaint                                                                      31

I have also copied Maura Larkins on this email.

Best regards,

Darren"

c.  A true and correct copy of the email dialog that occurred December 8, 2014, are attached as **Exhibit 'V'.**

**d.**  Plaintiffs had not authorized the use of their name, the logo, or creation of a customer care site on Complaintsboard.com.

83.  Following Mr. Chaker's posts to complaintsboard.com, individuals solicited Plaintiffs purporting to be able to have the ability to remove the posts.  Such third parties solicited Plaintiffs to remove defendants' posts for a charge of $4,800.

## PISSEDCONSUMER.COM

84.  Since 2011 and through the present and as late as February, 2016, a person using a pseudonym, that Plaintiff McMillan believe to be Defendant DARREN, or the other defendants, based on the content and Defendant DARREN's statements above of September 18, 2014 referring to the "pissedconsumer.com" website, has posted derogatory and defamatory statements about Plaintiff on the Internet at the website domain "PISSEDCONSUMER.COM":

85.  A Google search of "scott mcmillan site:pissedconsumer.com" returns some 3200 results.  Most of those results appear to have been posted in 2015 and 2016. Plaintiffs believe that defendants have posted all of those entries.  They have done so either anonymously or using some variation of the key words: "The Mcmillan Law Firm - La-Mesa-Attorney-Scott-McMillan"

86.  Unlike Complaintsboard.com, Pissedconsumer.com does not remove the information posted by persons such as Defendant DARREN.  Specifically, the terms of service of Pissedconsumer states:

"5. Removal of Information
By posting information on PC, *you understand and agree that the material will not be removed even at your request.* You shall remain solely responsible for the content of your postings on PC."

---

Complaint                                                                32

1  http://www.pissedconsumer.com/tos.txt.

2      87.  The Pissedconsumer.com post that Chaker started on November 3, 2011, is
3  attached hereto as **Exhibit 'W'**.  Within that post he misrepresents Plaintiff's win/loss
4  ratio.

5      88.  On August 23, 2015, Defendant DARREN made the false allegation accusing
6  Plaintiff of child molestation, a copy is attached hereto as **Exhibit 'X'**.

7      89.  On December 4, 2015, Defendant DARREN posted a review entitled "The
8  Mcmillan Law Firm - Scott McMillan Law Firm - La Mesa - Malpractice" which falsely
9  accuses Plaintiff of malpractice, attached hereto as **Exhibit 'Y.'**  Chaker falsely states that
10  an appeal in *Williams v. Nordstrom, Inc.* was to be dismissed, and termed it "malpractice."
11  In fact, the appeal was not dismissed and ultimately resulted in a stipulated order of
12  reversal.

13      90.  On February 11, 2016, Defendant DARREN posted a review "The Mcmillan
14  Law Firm - Scott McMillan Law Firm La Mesa," which is attached hereto as **Exhibit 'Z.'**
15  Chaker made statements that were knowingly false as he stated that the "the Court of Appeal
16  DENIED the petition after forcing the defendant incur huge amounts of attorney fees."  In
17  fact, the defendant did not file a response. Chaker had no basis to suggest that attorneys
18  fees were incurred resulting from the filing of the petition.  Chaker further falsely stated
19  Plaintiff's record as "almost 80 under his belt and a hand full of wins."

20                                    **Current Posts**

21      91.  To date Defendant DARREN continues to post material on his website in a
22  manner that is intended to optimize his websites to respond to search engine indexes with
23  his  name.  Specifically, he continues to use the tags "mcmillan-associates-la-mesa",
24  "scott-mcmillan-la-mesa":

25      92.  On March 29, 2016, Plaintiff accessed
26  http://darren-chaker.blogspot.com/search/label/scott-mcmillan-la-mesa and retrieved the
27  attached article, a true and correct copy of which is attached hereto as **Exhibit 'AA'** which
28  incorporates the use of the tags.

---

                                    Complaint                                    33

93.  On March 29, 2016, Plaintiff accessed http://darrenchaker.us/ and retrieved the

attached article bearing a date of December 8, 2015, a true and correct copy is attached

hereto as **Exhibit 'BB'**, which incorporates the use of the tags.

94.  On March 29, 2016, Plaintiff McMillan accessed http://darrenchaker.org/ and

retrieved the attached article bearing a date of January 23, 2016, a true and correct copy is

attached hereto as **Exhibit 'CC'**, which incorporates the use of the tags.

**Defendant DARREN's Use of Pseudonyms**

95.  Plaintiff is informed and believe that Darren Chaker also uses the pseudonym

"Luis Perdomo."  On March 29, 2016, Plaintiff accessed

https://plus.google.com/1048021677 37415969641/posts/HySqAKY7jYR and retrieved

the attached page, a true and correct copy is attached hereto as **Exhibit 'DD'**, incorporating

the same allegations and artwork published by Defendant DARREN Chaker.

**Defendant DARREN admits that he knew that he was then barred**

**from posting defamatory material.**

96.  On January 22, 2016, Defendant DARREN Chaker appeared for a judgment

debtors exam. He had been previously ordered to produce the names of the domains that he

holds.   On the record in the *Chaker v. Mateo* case, he admitted that he had such logins and

that his use of those could, at that time, result in the revocation of his supervised release.

[Transcript, p. 9] Defendant DARREN was also ordered to provide the identifying

information as to Internet domains that he owns.  A copy of relevant portions of the

transcript is attached hereto as **Exhibit 'EE'**.

97.  Defendant DARREN did not appear as ordered on March 11, 2016, in the

Superior Court to provide the information.  As recited in the transcript of January 22, 2016,

Defendant DARREN was aware that he was required to appear at the continued examination.

[**Exh. EE, page 31**]

98. On March 11, 2016 Defendant DARREN failed to appear for his continued

judgment debtor's examination.  Judge Taylor issued a bench warrant for his appearance,

which remains outstanding.  A copy of that bench warrant is attached hereto as **Exhibit**

---

Complaint                                                                                            34

1    '**FF**'.

2        99.  On March 11, 2016 the Superior Court in the *Chaker v. Mateo* case has

3    ordered the appointment of a receiver to take possession of Mr. Chaker's personal

4    property, including his domain names for ultimate sale in order to satisfy the judgment.

5    Despite orders to do so, Defendant DARREN has not complied with the orders of the

6    Superior Court.

7            **Defendant DARREN has created false accounts with Plaintiff's name**

8        100.  Defendant DARREN created accounts using Plaintiff's name and the name of

9    the McMillan Law Firm.  One of those accounts is on Slideshare.net, and reflected on

10   **Exhibit 'GG'.**  Plaintiff surmise that he has prepared that account in order to upload his

11   defamatory material that he intends to falsely attribute to him.  Plaintiff believes that

12   Defendant DARREN made that account because it is associated by Slideshare with an

13   account under the name of David Gingras, another attorney who successfully represented a

14   victim of Defendants and whom Chaker has also targeted for harassment.

15        **Defendants have inflicted damage upon both Plaintiffs and their clients.**

16        101.  Attorneys rely upon their reputation in the community and before the courts

17   that they practice in.  Defendant DARREN's outrageous lies which he has published have

18   injured Plaintiffs' practice.  Opposing counsel in other, unrelated cases have mentioned the

19   existence of the posts. Clients have mentioned the existence of the posts and their content.

20   Plaintiff McMillan believes that jurors that Plaintiff has tried cases in front of have

21   accessed the posts and taken them into account in determining the cases.  Thus, Defendants'

22   threats made on September 18, 2014 have borne out. Plaintiffs have invested substantial

23   time in developing Plaintiff McMillan's reputation as a zealous advocate for his clients, and

24   remaining consistent to the duties of an attorney as set forth in Business and Professions

25   Code section 6068, and particularly that set forth in subsection (h):

26        "Never to reject, for any consideration personal to himself or herself, the

27        cause of the defenseless or the oppressed."

28   (Bus. & Prof. Code 6068(h).)

---

Complaint                                                                35

1    102.  Susan A. has been, prior to representation by Plaintiffs herein, defenseless to

2    and oppressed by Defendants.

3    103.  Wendy Mateo was defenseless to and was oppressed by Defendants.

4    104.  Plaintiff understood that Defendants could resort to attacks of Plaintiff

5    McMillan's  character when Plaintiff continued to represent Susan A. despite Defendants

6    threats to engage in libel against him. Defendants then performed on their threats, and have

7    engaged in the forewarned attacks against Plaintiff –  and later Plaintiff's family members –

8    following January 21, 2014, and September 18, 2014.

9                            **FIRST CLAIM FOR RELIEF**

10   (Civil Extortion - Against Defendants DARREN, NICOLE, VANIA, and DOES 1 through X)

11   105.  Plaintiffs repeat and reallege the averments contained in paragraphs 1-92, as

12   though fully set forth herein.

13   106.  Plaintiffs are informed, believe and thereon allege that Defendants were

14   involved in a conspiracy and/or conspired to commit the foregoing acts.

15   107.  Each of the Defendants were co-conspirators with one another, and agreed

16   verbally or orally, or through their actions, to jointly commit extortion against the

17   Plaintiffs. Defendants, and each of them, knowingly and intentionally did the acts and things

18   alleged in this Complaint pursuant to, and in furtherance of, such agreement. Defendants did

19   these acts, repeatedly and, with knowledge of the fact that they were, among other things,

20   illegal.

21   108.  Defendants, and each of them,  in pursuance of a common plan or design to

22   commit the tortious conduct described above, actively took part in it, or furthered it by

23   cooperation or request, or otherwise lent aid or encouragement to Defendant DARREN,

24   and are thereby equally liable to Plaintiffs.

25   109.  Defendants, and each of them knew that the foregoing conduct constituted a

26   breach of legal duty, but nonetheless assisted Defendant DARREN, and are thereby equally

27   liable to Plaintiffs.

28   110.  Defendants, and each of them breached their duties to Plaintiffs, while

---

assisting Defendant DARREN in accomplishing the tortious conduct, and are thereby equally liable to Plaintiffs.

111.  Defendants conduct was unlawful as a matter of law, in that Defendant DARREN had been forbidden from types of expressive conduct by the terms of his Pre-Trial release, the terms of his confinement and Bureau of Prisons regulations, and the terms of his supervised release.  Defendant NICOLE was aware of these restrictions.

112.  Defendant NICOLE's conduct filing legal documents under Defendant DARREN'S name comprised the unlawful practice of law, prohibited by Bus. & Prof. Code section 6126. A non-attorney's "[D]oing and performing services in a court of justice in any matter depending therein" is the unauthorized practice of law and therefore a criminal offense.  (See, *People v. Starski* (2017) 7 Cal. App. 5th 215, 230.)

113.  Extortion is the obtaining of property from another, with his consent, or the obtaining of an official act of a public officer, induced by a wrongful use of force or fear, or under color of official right. (Penal Code § 518.)

114.  Defendants attempted to obtain property from Plaintiffs, i.e., the right to continue to practice law consistent with the California Business and Professions Code, and the California Rules of Professional Conduct, with respect to the advocacy on behalf of Susan A.

115.  Defendants attempted to obtain property from Plaintiffs, i.e., the right to collect on a debt due and owing by virtue of the fee award in the *Chaker v. Mateo* action.

116.  Defendants attempted to obtain property from Plaintiffs, i.e., the right to continue to collect and publish cases through the website FEARNOTLAW.COM.

117.  Defendants obtained – without consent – the use of Plaintiffs' name, have used Plaintiff TMLF's logo, and have damaged the goodwill associated with Plaintiffs' herein.

118.  Defendants attempted to obtain an official act of a public officer, i.e., a judge, through Plaintiffs' clients acquiesence.

119.  Defendants wrongfully attempted to induce fear as that term is used in Penal

---

Complaint                                                    37

Code section 519, which provides in pertinent part under the heading "threats":

> "Fear, such as will constitute extortion, may be induced by a threat of any of
> the following:
>> 1.  To do an unlawful injury to the person or property of the
>> individual threatened or of a third person.
>> 2.  To accuse the individual threatened, or a relative of his or
>> her, or a member of his or her family, of a crime.
>> 3.  To expose, or to impute to him, her, or them a deformity,
>> disgrace, or crime.
>> 4.  To expose a secret affecting him, her, or them.
>> * * *

(Penal Code § 519)

120.  An attempt to extort, successful or not, is a criminal offense forbidden by the
California Penal Code:

> Every person who attempts, by means of any threat, such as is specified in
> Section 519 of this code, to extort money or other property from another is
> punishable by imprisonment . . . or by fine . . . or by both such fine and
> imprisonment.

Cal. Penal Code § 524.

121.  Defendants' threats were both express, and were implied by the contents of the
various writings and the surrounding circumstances.

122.  Defendants transmitted the threats comprising extortion.

123.  Plaintiff TMLF was damaged by the loss of goodwill resulting from the false
statements published by Defendants' "making good" on the threats.  Plaintiff TMLF was
damaged by the lost advertising expenses which were negated by the false statements
published by defendants.

124.  The Statutes of Limitations regarding the bringing of the present claims have
been tolled due to Defendants' absence from the State of California according to California
Code of Civil Procedure section 351:

> "If, when the cause of action accrues against a person, he is out of the state,
> the action may be commenced within the term herein limited, after his return
> to the state, and if, after the cause of action accrues, he departs from the
> state, the time of his absence is not part of the time limited for the
> commencement of the action."

(Cal. Civ. Proc. Code § 351.)

125.  As a direct and proximate result of the acts of Defendants as alleged in the

First Cause of Action above, Plaintiffs were injured.  Plaintiff McMillan suffered economic damage, expense, and humiliation, including, but not limited to, emotional upset, anxiety, mental suffering, and damage to his reputation.  Plaintiff McMillan also suffered loss of time.  Plaintiff McMillan is therefore entitled to compensatory damages in an amount which will compensate for him all the detriment proximately caused  by Defendants' acts, whether foreseeable or not,  according to proof at time of trial, in accordance with Civ. Code § 3333.

126.  Defendants' conduct was malicious, oppressive and/or fraudulent within the meaning of California Civil Code § 3294, thereby entitling Plaintiffs to an award of punitive damages in an amount according to proof at time of trial.

/ / /

/ / /

/ / /

**SECOND CAUSE OF ACTION**

**UNFAIR COMPETITION**

**Business and Professions Code §§ 17200, et seq.**

(By all Plaintiffs against All Defendants)

127.  Plaintiffs reallege and incorporate by reference paragraphs 1-103, and 105 to 126, inclusive.

128.  California Business & Professional Code §17200 defines unfair competition as "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code".  Defendants' conduct therefore constitutes unfair competition as defined by the California Business & Professional Code §17200.

129.  Plaintiffs have lost money and property due to the Defendants' acts and practices.  Thus, Plaintiffs have standing under California Business & Professional Code §17204.  In accordance to §17203, Plaintiffs seek injunctive relief to compel Defendants to cease the practices, and for restitution of the use of the names and likenesses of Plaintiffs herein.

130.  Plaintiffs requests that the Court also issue an order to DARREN Chaker requiring him to request the removal of his posts from the Internet forums in a form that may be published to the third parties, i.e., Pissedconsumer.com and Complaintsboard.com, that have published defendants' harrassing and defamatory posts. With such a finding, and an order that Chaker remove those post, those sites would willingly do so.

131.  Plaintiffs requests that the Court also issue an order with findings such that can be published to those search engines that have indexed the posts, i.e., Google, Yahoo, and Bing, and findings that such posts were placed by Defendant DARREN contrary to the Judgment in this case.   And that Defendant DARREN be ordered to request the removal of such posts from such search indices. Plaintiff's hope and expectation is that those third parties would be persuaded to remove the posts from the respective index.

---

Complaint                                                                                    40

# PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

1. For an Order enjoining Defendants, their agents, and those acting in concert or conspiracy with them, temporarily during the pendency of this action and permanently thereafter from and further violation of the Unfair Competition Law, including such acts taken in reprisal for the refusal to abide by the acts of extortion described herein.

2. That the Court appoint a receiver or special master.

3. For compensatory damages according to proof;

4. For punitive and exemplary damages pursuant to Cal. Civil Code § 3294 or as otherwise provided by law;

5. For an award of costs of suit;

6. For an award of pre-judgment interest and post-judgment interest in the maximum amount permitted by law;

7. For such other and further relief as the Court deems just and proper.

Dated: September 27, 2017          The McMillan Law Firm, A.P.C.

/s/ Scott A. McMillan

BY:          _____

Scott A. McMillan
Attorney, In Propria Persona, and on behalf of
Plaintiff The McMillan Law Firm, A.P.C.

# DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all causes of action so determinable.

Dated: September 27, 2017          The McMillan Law Firm, A.P.C.

/s/ Scott A. McMillan

BY:          _____

Scott A. McMillan
Attorney, In Propria Persona, and on behalf of
Plaintiff The McMillan Law Firm, A.P.C.

---

Complaint          41

Case 3:16-cv-02186-WQH-MDD   Document 91-1   Filed 12/12/17   PageID.3839   Page 81 of 89

# Exhibit "F"

Case 3:16-cv-02186-WQH-MDD   Document 127-1   Filed 09/23/22   PageID.4632   Page 116 of
Case 3:16-cv-02186-WQH-MDD   Document 117   Filed 12/21/21   PageID.3463   Page 1 of 89
1196

**GILBERT, KELLY, CROWLEY & JENNETT LLP**
TIMOTHY W. KENNA, A PROFESSIONAL CORPORATION / Bar No. 64280
t.kenna@gilbertkelly.com
ARTHUR J. MC KEON III / Bar No. 082540
ajm@gilbertkelly.com
REBECCA J. SMITH / Bar No. 150428
rjs@gilbertkelly.com
401 B Street, Suite 2210
San Diego, California 92101
(619) 687-3000; FAX: (213) 615-7100

**Mailing Address:**
550 South Hope Street, 22nd Floor
Los Angeles, California  90071-2627

Attorneys for Defendant
NICOLE CHAKER

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT A. MCMILLAN, an individual, THE MCMILLAN LAW FIRM, APC, a California professional corporation, | Case No. 3:16-CV-02186-WQH-MD |
| Plaintiffs, | Judge:  William Q. Hayes Courtroom 14B |
| vs. | Magistrate Hon. Mitchell D. Dembin Courtroom 11th Floor |
| DARREN D. CHAKER an individual, and as trustee of PLATINUM HOLDINGS GROUP TRUST, dba COUNTER FORENSICS; NICOLE CHAKER, an individual, and as trustee of THE NICOLE CHAKER REVOCABLE LIVING TRUST, U/A dated August 18, 2010, VANIA CHAKER, an individual and as beneficiary of The Island Revocable Trust under Declaration of Trust dated June 2, 2015, MARCUS MACK as trustee of The Island Revocable Trust under Declaration of Trust dated June 2, 2015, | **NOTICE OF CROSS-APPEAL** |
| Defendants. | |

TO THE COURT, ALL INTERESTED PARTIES AND TO THEIR

RESPECTIVE ATTORNEYS OF RECORD:

Gilbert, Kelly
Crowley & Jennett LLP
Attorneys at Law

NICOLE CHAKER'S MOTION TO EXTEND TIME BY WHICH TO FILE CROSS-APPEAL

4578054.1  48811-00002 TWK                                      3:16-CV-02186-WQH-MD

109

1      Notice is hereby given that defendant Nicole Chaker, hereby files this cross-

2  appeal in the above named case to the United States District Court for the Ninth

3  Circuit from the Order Closing the Case (ECF 86) and more specifically, the Order

4  denying defendant Nicole Chaker's Motion to Strike Pursuant to California Code of

5  Civil Procedure 425.16 and motion for attorney's fees and costs as moot in light of

6  the granting of defendant Nicole Chaker's motion to dismiss.

7  Dated:  December 12, 2017      GILBERT, KELLY, CROWLEY & JENNETT
LLP

8

9                  By: _____

10                  TIMOTHY W. KENNA
REBECCA J. SMITH

11                  Attorneys for Defendant
NICOLE CHAKER

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CERTIFICATE OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 550 South Hope Street, 22nd Floor, Los Angeles, CA 90071-2627.

On December 12, 2017, I served the within document(s) described as:

DECLARATION OF REBECCA J. SMITH IN SUPPORT OF DEFENDANT NICOLE CHAKER'S NOTICE OF MOTION FOR EXTENSION OF TIME TO FILE CROSS-APPEAL (FRAP 4(a)(5))

on the interested parties in this action as stated on the attached service list:

☒ **(BY ELECTRONIC SUBMISSION):** I served the above listed document(s) described via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service though the court's transmission facilities.

☒ **(BY U.S. MAIL)**: By placing a true copy of the foregoing document(s) in a sealed envelope addressed as set forth on the attached mailing list. I placed each such envelope for collection and mailing following ordinary business practices. I am readily familiar with this Firm's practice for collection and processing of correspondence for mailing. Under that practice, the correspondence would be deposited with the United States Postal Service on that same day, with postage thereon fully prepaid at San Diego, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on December 12, 2017, at Los Angeles, California.

I declare under penalty of perjury that the foregoing is true and correct.

ELIZABETH RUBIO
(Type or print name)

_(Signature)_

Freeman Mathis
& Gary, LLP
Attorneys at Law

CERTIFICATE OF SERVICE

1    **CERTIFICATE OF SERVICE**

2

3    SCOTT A MCMILLAN
     THE MCMILLAN LAW FIRM, APC
4    4670 NEBO DRIVE
     SUITE 200
5    LA MESA, CA 91941-5230
     Phone: (619)464-1500
6    Fax: (619)828-7399
     Email: scott4670@gmail.com
7
     Scott A. McMillan,
8    The McMillan Law Firm, APC
     (Plaintiff)
9
     TIMOTHY J. GRANT
10   FREDRICKSON, MAZEIKA & GRANT, LLP
     5720 OBERLIN DRIVE
11   SAN DIEGO, CA 92121
     Phone: 858-642-2002
12   Fax: 858-642-2001
     Email: tgrant@fmglegal.com
13
     Darren D. Chaker (Defendant)
14

15
     RYAN G. BAKER
16   BAKER MARQUART LLP
     2029 CENTURY PARK EAST
17   SUITE 1600
     LOS ANGELES, CA 90067
18   Phone: 424-652-7800
     Fax: 424-652-7850
19   Email: rbaker@bakermarquart.com

20   Vania Chaker (Defendant)

21

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE

Scott A. McMillan, SBN 212506
The McMillan Law Firm, APC
4670 Neo Drive, Suite 200
La Mesa, California 91941-5230
(619) 464-1500 x 14
Email: scott@mcmillanlaw.us

Attorney for Plaintiff, SCOTT A. MCMILLAN, an individual, THE MCMILLAN
LAW FIRM, APC, a California Professional corporation

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT A. MCMILLAN, an individual, THE MCMILLAN LAW FIRM, APC, a California Professional corporation, | Case No. 3:16-CV-02186-WQH-MDD |
| Plaintiffs, | Judge: Hon. William Q. Hayes Courtroom: 14B |
| v. | **PLAINTIFFS' OPPOSITION TO DEFENDANT NICOLE CHAKER'S NOTICE OF MOTION FOR EXTENSION OF TIME TO FILE CROSS-APPEAL (FRAP 4(a)(5))** ]. |
| DARREN D. CHAKER an individual, and as trustee of PLATINUM HOLDINGS GROUP TRUST, dba COUNTER FORENSICS; NICOLE CHAKER, an individual, and as trustee of THE NICOLE CHAKER REVOCABLE LIVING TRUST, U/A dated August 18, 2010, VANIA CHAKER, an individual and as beneficiary of The Island Revocable Trust under Declaration of Trust dated June 2, 2015, MARCUS MACK as trustee of The Island Revocable Trust under Declaration of Trust dated June 2, 2015, | Hearing Date (no oral argument): January 15, 2018 Dept. 14B |
| Defendants. | |

## I.    INTRODUCTION

Defendant Nicole Chaker seeks an extension to file a cross-appeal, despite the Motion being untimely, and providing no discernable "excusable neglect" to warrant an extension. The sole basis for Defendant's request for an extension relies on the argument of lack of notice of Plaintiffs' appeal. [ECF 90-1 pg 3.] However, because (1) the Notice of Appeal was filed via the Court's ECF system, (2) defense counsel are registered for ECF filings and thus receive Notification of Electronic Filing ("NEF") emails [See Exhibit A], (3) said counsel has never before claimed an issue with receiving notices via the NEF system, and (4) defense counsel obtained the Notice of Appeal from the Court website by November 9, 2017, Plaintiffs' actual filing deadline, it is unclear how Defendant or her counsel can legitimately claim to have lacked notice of Plaintiffs' appeal. Defendant fails to argue "excusable neglect" and the Motion should be denied.

## II.    RELEVANT PROCEDURAL HISTORY

On August 28, 2016, Plaintiffs initiated this case by filing their complaint. [ECF 1.]

On October 5, 2017, Defendants submitted a proposed judgment, to which Plaintiffs objected, as it was misleading by implying the motions to dismiss were granted on their merits. [Exhibit D.]

On December 5, 2016, Plaintiffs filed their First Amended Complaint. [ECF 25.]

On December 16, 2016, Defendant Nicole Chaker filed a motion to dismiss [ECF 35] and motion to strike. [ECF 36.]

On February 17, 2017, Defendant Darren Chaker filed a motion to dismiss [ECF 56] and motion to strike. [ECF 55.]

On March 3, 2017, Defendant Vania Chaker filed a motion to dismiss or, in the alternative, quash service. [ECF 59.]

---

Case 3:16-cv-02186-WQH-MDD Document 127-1 Filed 09/03/22 PageID.4838 Page 122 of
1196
Case 3:16-cv-02186-WQH-MDD Document 92-1 Filed 12/29/17 PageID.3637 Page 3 of 3

1   On August 28, 2017, this Court entered an order (1) granting without

2   prejudice Defendant Darren Chaker's motion to dismiss (motion to strike denied as

3   moot), (2) granting without prejudice Defendant Nicole Chaker's motion to

4   dismiss (anti-slapp motion to strike denied as moot), and (3) granting Defendant

5   Vania Chaker's motion to quash service. [ECF 83.]

6   On October 10, 2017, this Court entered an order closing this case. [ECF

7   86.]

8   On November 5, 2017, Plaintiffs filed their Notice of Appeal in this Court.

9   [ECF 87.] Also on November 5, 2017, Plaintiffs' firm received NEF receipt emails

10  listing the individuals served with the Notice of Appeal, which included

11  Defendant's counsel. [McMillan Dec. Exh. A.]

12  On December 12, 2017, Defendant Nicole Chaker filed a motion for an

13  extension of time to file a cross-appeal. [ECF 90.]

14  **III.   ARGUMENT**

15  **A.   Defense Counsel Received Notice of Plaintiffs' Notice of Appeal.**

16  Defense counsel states that:

17  7. On November 5, 2017, plaintiffs filed a notice of appeal.
18  Timothy W. Kenna and I did not receive service of the
    Notice of Appeal by electronic or any other service.

19  [Smith Declaration ¶ 7.]

20  On November 5, 2017 at 1:56 PM, as a result of electronically filing the

21  Notice of Appeal through the EM/ECF system, as has been Plaintiffs' practice

22  throughout this case, Plaintiffs received notification emails of the filing for

23  Document No. 87. [Exhibit A.] Listed in those emails were the following recipients

24  of the NEF, which included, among others:

25  3:16-cv-02186-WQH-MDD Notice has been electronically mailed to:
    * * *
26  Rebecca Jo Smith &nbsp &nbsp rjs@gilbertkelly.com
    * * *
27  Timothy W Kenna &nbsp &nbsp t.kenna@gilbertkelly.com,
    charlenec@gilbertkelly.com"

28

---

[Exhibit A.]

The Electronic Case Filing Administrative Polices and Procedures Manual for the United States District Court for the Southern District of California states:

> d. Service
>
> ***
>
> 2. Service of Documents
>
> Whenever a document is electronically filed in accordance with these procedures, the CM/ECF system will generate a "Notice of Electronic Filing" (NEF) to the filing party, the assigned judge and any registered user in the case. The NEF will constitute service of the document for purposes of the Federal Rules of Civil, Criminal and Appellate Procedure. Registration as a CM/ECF user constitutes consent to electronic service through the court's transmission facilities.
>
> Each registered user of the CM/ECF system is responsible for assuring that the user's e-mail account is monitored regularly, and that e-mail notices are opened in a timely manner.

[McMillan Dec. Exh. B, PDF pg. 12, doc. pg. 9.]

Defense counsel registered for the CM/ECF system to be notified as recipients. [McMillan Dec. Exh. C.] According to the record, Ms. Smith was assigned on December 16, 2016, and Mr. Kenna was assigned on January 26, 2017. [*Id.*] The Notice of Appeal was filed on November 5, 2017, and the NEF emails reflect that they were listed as recipients of the notice of the appeal. As such, defense counsel, and therefore Defendant, had notice of Plaintiffs' filing of the Notice of Appeal on November 5, 2017.

That said, defense counsel states that they were only notified of the Notice of Appeal by way of the mailed filings from the Clerk of the Ninth Circuit Court of appeals on November 9, 2017, and thereafter obtained the Notice of Appeal documents from Pacer. [Smith Dec. ¶ 9-10.] Even by that date, which Plaintiffs do not contend is the actual date of notice, Defendant's arguments fail because she and her counsel had notice in time to file the cross-appeal.

Defense counsel argues that because they missed the email notification for Plaintiff's filing of the Notice of Appeal and then failed to calendar the filing they, themselves, downloaded, Defendant should be allowed to file her cross-appeal after the deadline to do so has passed. [See Smith Dec. ¶ 8-10.] As noted above, "Each registered user of the CM/ECF system is responsible for assuring that the user's e-mail account is monitored regularly, and that e-mail notices are opened in a timely manner." [McMillan Dec. Exh. C pg. 12.]

> But they needed to show something. Was this a class action that bristled with client "consultation difficulties"? *See Marx v. Loral Corp.*, 87 F.3d 1049, 1053-54 (9th Cir. 1996). Was the client distracted by a divorce and job change, and had he lost his lawyer to boot? *See Laurino*, 279 F.3d at 753. Was the rule confusing or notice of the deadline unusual? *See Pioneer*, 507 U.S. at 398. No, no and no. The action was not complicated; the lawyer worked at a large, sophisticated law firm; and the rule is as clear as legal rules get:
>
> In a civil case, except as provided in Rules 4(a)(1)(B), 4(a)(4), and 4(c), the notice of appeal required by Rule 3 must be filed with the district clerk within 30 days after the judgment or order appealed from is entered.

*Pincay v. Andrews* (9th Cir. 2004) 389 F.3d 853, 862 (Kozinski, dissent.)

Thus, defense counsel's arguments regarding their failure to see the email are not persuasive.

**B.      There is Neither Good Cause Nor Excusable Neglect to Save the Untimeliness of the Motion.**

Defendant's excuse for the untimeliness of her cross-appeal and Motion for extension to file the cross-appeal also fail. Defendant quotes and attempts to apply the four-factor test in *Pioneer*, which states: "(1) the danger of prejudice to the nonmovant; (2) the length of the delay and the impact on the judicial proceedings; (3) the reason for the delay and (4) whether the movant acted in good faith." [Memo pg. 5 citing *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. P'ship* (1993) 507 U.S. 380.] Indeed, Defendant walks through all four factors, likely in the hopes that by showing at least three of the four weigh in favor of granting the Motion, the Court will ignore the single most important factor: the reason for the delay.

PLS' OPP. TO DEF. NICOLE CHAKER'S NOTICE OF MOTN
*3:16-CV-02186*      FOR EXT OF TIME TO FILE CROSS-APPEAL (FRAP 4(a)(5))      5

Case 3:16-cv-02186-WQH-MDD Document 127-1 Filed 09/03/22 PageID.4341 Page 125 of
1196
Case 3:16-cv-02186-WQH-MDD Document 127-1 Filed 12/23/22 PageID.3860 Page 6 of 8

1   In the typical case, the first two *Pioneer* factors will favor the moving
2   party: "Delay always will be minimal in actual if not relative terms, and
    the prejudice to the non-movant will often be negligible, since the Rule
3   requires a 4(a)(5) motion to be filed within thirty days of the last day for
    filing a timely notice of appeal." *Lowry v. McDonnell Douglas Corp.*,
4   211 F.3d 457, 463 (8th Cir.), cert. denied, 531 U.S. 929, 148 L. Ed. 2d
    248, 121 S. Ct. 309 (2000). And rarely in the decided cases is the
5   absence of good faith at issue. *See id.* **But despite the flexibility of
    "excusable neglect" and the existence of the four-factor test in which**
6   **three of the factors usually weigh in favor of the party seeking the
    extension, we and other circuits have focused on the third factor:**
7   **"the reason for the delay, including whether it was within the
    reasonable control of the movant."** *Pioneer*, 507 U.S. at 395. We have
8   noted that the equities will rarely if ever favor a party who "fails to
    follow the clear dictates of a court rule" and held that where "the rule is
9   entirely clear, **we continue to expect that a party claiming excusable
    neglect will, in  the ordinary course, lose under the *Pioneer* test**."

10  *Silivanch v. Celebrity Cruises, Inc.* (2d Cir. 2003) 333 F.3d 355, 366-367

11  (emphasis added.)

12  Indeed, "the four *Pioneer* factors do not carry equal weight; the excuse given

13  for the late filing must have the greatest import. While prejudice, length of delay,

14  and good faith might have more relevance in a close case, the reason-for- delay

15  factor will always be critical to the inquiry." *Id.* at fn. 7, citing *Graphic*

16  *Communications Int'l Union, Local 12- N v. Quebecor Printing Providence, Inc.*

17  (1st Cir. 2001) 270 F.3d 1, 5-6.

18  Even in decisions for the Ninth Circuit, such as *Pincay v. Andrews* (9th Cir.

19  2004) 389 F.3d 853, which refused to draw a hard line on what constitutes

20  excusable neglect, the facts of this case do not meet the type of neglect experienced

21  in either *Pioneer* or *Pincay*.

22  In *Pioneer*, the respondents' attorney was provided with a complete copy of

23  the case file and was assured that no bar date had been set to file claims. The

24  Supreme Court found that the Bankruptcy Court had inappropriately penalized

25  respondents for their counsel's error, since counsel had asked the attorney

26  providing the case file about the impending deadlines, which were admittedly

27  ambiguous and would have confused even a person experienced in bankruptcy.

28  *Pioneer* 507 U.S. 380, 386-387.

PLS' OPP. TO DEF. NICOLE CHAKER'S NOTICE OF MOTN
*3:16-CV-02186*   FOR EXT OF TIME TO FILE CROSS-APPEAL (FRAP 4(a)(5))          6

1      In *Pincay*, the appellee relied upon his paralegal to calculate the deadline

2  filing deadline, but the paralegal misread the rule, and calendared the date for filing

3  the notice of appeal as 60 days instead of the actual 30 days. The apellee in that

4  case characterized the reason for his delay in filing as "the failure of a 'carefully

5  designed' calendaring system operated by experienced paralegals that heretofore

6  had worked flawlessly." *Pincay* 389 F.3d 853, 859. This Court disagreed, stating

7  that the calendaring system hadn't failed, as "the wrong date was calendared with

8  meticulous efficiency and accuracy...At bottom, what the

9  sophisticated-calendaring-system excuse comes down to is that the lawyer didn't

10  bother to read the rule; instead, he relied on what a calendaring clerk told him." *Id*.

11  at 862.

12      Here, defense counsel argues that the following constitutes "excusable

13  neglect or good cause":

14      8. Generally, our office procedure and my procedure is when a

15  notification is received from the court or another party in an action which would require some action or response on behalf of our office, that all

16  appropriate dates are placed on my calendar. Because we did not receive a notice of appeal, neither myself, nor my secretary, or Timothy Kenna

17  and his secretary calendared a final date for the filing of a Cross-Appeal.

18  [Smith Dec. ¶ 8.]

19      This is unpersuasive because (1) defense counsel are registered to receive

20  NEF emails in relation to this case [Exhibit C], (2) NEF emails were sent on

21  November 5, 2017 following Plaintiffs' filing of the Notice of Appeal, wherein

22  defense counsel was listed as being recipients of the notification [Exhibit A], and

23  (3) defense counsel also obtained the Notice of Appeal from the Court's website on

24  November 9, 2017, but then inexplicably failed to calendar the dates immediately

25  after downloading the Notice of Appeal. [Smith Dec. ¶ 8, 10.]

26      That defense counsel had to wait for the insurance carrier to respond

27  regarding representation is irrelevant and similarly unpersuasive as "excusable

28  neglect" to warrant the untimely filing. [Memo pg. 9.] Whether insurance will

1  cover an appeal is not a factor, and Defendant provides no authority to that effect.

2  In addition, Defendant could have filed the notice of appeal pro-se and later sorted

3  out insurance coverage.

4      Although Plaintiffs stand on their assertion that defense counsel received the

5  November 5, 2017 notice as stated in the NEF emails attached as Exhibit A,

6  counsel admitted to having notice by November 9, 2017 when they received

7  paperwork from the Ninth Circuit, and when they obtained the Notice of Appeal

8  from the Court's website. [Smith Dec. ¶ 10.] Counsel still had, at that time, over 30

9  days to contact the insurance carrier and receive a response regarding

10  representation before the December 11, 2017 filing deadline. Indeed, Defendant's

11  moving papers are notably silent regarding the date on which defense counsel

12  contacted the insurance carrier. This is likely because the communications were

13  made inexcusably near the deadline such that the insurance carrier could not

14  respond within a reasonable time.

15  **IV.   CONCLUSION**

16      In light of the foregoing, Defendant Nicole Chaker's Motion to Extend Time

17  to File a Cross-Appeal should be denied.

18

19  DATED: December 29, 2017

20                                          /s/ Scott A. McMillan

21

22                                          _____

23                                          Scott A. McMillan, SBN 212506
                                            The McMillan Law Firm, APC

24

25

26

27

28

1   Scott A. McMillan, SBN 212506
    The McMillan Law Firm, APC
2   4670 Neo Drive, Suite 200
    La Mesa, California 91941-5230
3   (619) 464-1500
    Email: scott@mcmillanlaw.us
4
    Attorney for Plaintiff, SCOTT A. MCMILLAN, an individual, THE MCMILLAN
5   LAW FIRM, APC, a California Professional corporation
6
7
8                    UNITED STATES DISTRICT COURT
9                  SOUTHERN DISTRICT OF CALIFORNIA
10  SCOTT A. MCMILLAN, an                Case No. 3:16-CV-02186-WQH-MDD
    individual, THE MCMILLAN LAW
11  FIRM, APC, a California Professional  Judge: Hon. William Q. Hayes
    corporation,                         Courtroom: 14B
12
13              Plaintiffs,              PLAINTIFFS' EX-PARTE
                                         APPLICATION TO CONTINUE
14         v.                            HEARING DATE AND
                                         OPPOSITION DATE ON MOTION
15  DARREN D. CHAKER an individual,      FOR SANCTIONS FILED BY
    and as trustee of PLATINUM           DARREN CHAKER [ECF 66].
16  HOLDINGS GROUP TRUST, dba
    COUNTER FORENSICS; NICOLE            **Opposition Date for Motion for**
17  CHAKER, an individual, and as        **Sanctions**:
    trustee of NICOLE CHAKER TRUST       April 17, 2017
18  ONE, and VANIA CHAKER, an
    individual and as trustee of VANIA   **Hearing date for Motion for**
19  CHAKER TRUST ONE,                    **Sanctions (no oral argument):**
                                         May 1, 2017
20              Defendants.
21
22                      **INTRODUCTION**
23         Plaintiffs hereby move this Court under F.R.Civ.P. 6(b)(1) for an Order
24  continuing the hearing date of May 1, 2017 and thereby enlarging the time to file the
25  opposition to Defendant Darren Chaker's motion for sanctions styled "Motion for
26  Sanctions pursuant to Fed. R. Civ. P. 11, or, alternatively, the Court's Inherent
27  Power." [ECF 66].  The sanctions motion was filed on March 28, 2017.  Pursuant to
28  Local Civil Rule 7.1(e)(2), the opposition briefs are due on Monday, April 17, 2017.

On January 25, 2017, as a courtesy and in order to avoid the necessity of the court ruling on a contested application, undersigned entered into a joint motion with Mr. Chaker's former attorney to extend the time for Mr. Chaker to file his motion to dismiss the complaint. [ECF 48]. That same courtesy has not been extended to Plaintiffs.

On March 30, 2017, Undersigned contacted Defendant Darren Chaker's attorneys to request a stipulation for an agreed order providing such relief. [McMillan Dec., ¶ 9.]

Darren's Chaker's attorney Eliot F. Krieger acknowledged the request, but made the following statement, which requires this application:

"Dear Mr. McMillian:

I have consulted with our client and we will not be agreeable to continue

the hearing date three weeks.

Thank you,

Eliot F. Krieger, P.C."

[McMillan Dec., ¶ 9.]

Plaintiffs have also provided notice of the request, as required by Local Civil Rule 7.1(g)(2), to Defendant Nicole Chaker's and Defendant Vania Chaker's respective counsel. [McMillan Dec., ¶ 10.]

Plaintiffs request a two week or, if possible, a three week enlargement of time to file the oppositions, from April 17, 2017, to May 1, 2017, or to May 8, 2017.

# I. GOOD CAUSE

Good cause exists sufficient enough for the Court to grant Plaintiffs' extension request. As set forth in the accompanying declaration, Scott McMillan has been occupied with a number of appellate matters, has another pending brief that is due in the District Court in an unrelated case, and is behind on other work. [McMillan Dec., ¶ ¶3-5.] Further, Plaintiffs' consulting attorney has returned from an extended overseas trip and is also back-logged with work.[McMillan Dec., ¶ 6.]

## II.    EXERCISE OF DISCRETION

A. Federal. Rule of Civil Procedure 6(b)

Pursuant to Federal Rule of Civil Procedure 6(b),

> (a) Computing Time. The following rules apply in computing any time period specified in these rules, in any local rule or court order, or in any statute that does not specify a method of computing time.
>
> * * *
>
> (b) Extending Time.
>
> (1) In General. When an act may or must be done within a specified time, the court may, for good cause, extend the time:
>
>> (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or
>>
>> (B) on motion made after the time has expired if the party failed to act because of excusable neglect.

Fed. R. Civ. P. 6(b).

"This rule, like all the Federal Rules of Civil Procedure, '[is] to be liberally construed to effectuate the general purpose of seeing that cases are tried on the merits.'" *Ahanchian v. Xenon Pictures, Inc., 624 F.3d 1253, 1258-59* (9th Cir. 2010) (quoting *Rodgers v. Watt*, 722 F.2d 456, 459 (9th Cir.1983)); see also Fed. R. Civ. P. 1 ("[The Federal Rules] should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding."). With respect to the distinction between Rule 6(b)(1), and Rule 6(b)(2), in *Lujan v. National Wildlife Federation*, the Supreme Court noted that Rule 6(b)(1) allows a court to grant an extension if a "request" is made before the time for filing expires. *Id.*, 497 U.S. 871, 896 n.5, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). By contrast, the Court emphasized that post-deadline extensions may be granted only "for cause shown" and "upon motion." *Id.* at 896, 110 S. Ct. 3177.

If the prescribed time period has not expired, a party must show "good cause" for an extension. Fed. R. Civ. P. 6(b)(1)(A). "[R]equests for extensions of time made before the applicable deadline has passed should 'normally . . . be granted in the absence of bad faith on the part of the party seeking relief or prejudice to the adverse party.'" *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1259 (9th Cir. 2010) (citation omitted).

Here, the time has not expired for filing of the opposition.

"A district court has inherent power to control the disposition of the causes on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants." *Filtrol Corp. v. Kelleher*, 467 F.2d 242, 244 (9th Cir. 1972) (citation and internal quotation marks omitted).

## CONCLUSION

In light of these various factors, Plaintiff respectfully asks this Court to grant a 14 day, if not a 21 day extension, of the time period for filing the oppositions to the motion.

DATED: April 11, 2017          /s/ Scott A. McMillan

_____

SCOTT A. MCMILLAN, SBN 212506
The McMillan Law Firm, APC

DECLARATION OF COUNSEL

I, Scott A. McMillan, declare as follows:

1. I am an attorney admitted to practice in the District Court for the Southern District of California, am a plaintiff herein, and I am the principal of The McMillan Law Firm, APC, plaintiff in this case. The facts that I state below are of my own personal knowledge and if called before this court, I could and would testify competently to the following:

2. On March 28, 2017, Defendant Darren Chaker filed a motion for sanctions styled "Motion for Sanctions pursuant to Fed. R. Civ. P. 11, or, alternatively, the Court's Inherent Power" [ECF 66].

3. Since March 28, 2017, and the preceding weeks, I've been occupied in the briefing of several matters pending in the California Court of Appeal, Fifth District, arising from summary judgment rulings entered in a wrongful death case entitled *Ochoa, et al., v. Setton Pistachio of Terra Bella, Inc.*, Superior Court of California, County of Tulare, Case No. VCU 255716. The first related appeal is *Ochoa et al. v. Setton Pistachio of Terra Bella, Inc. et al.*, Fifth District No. F073978. The opening brief and appendix was filed on March 23, 2017. The second related appeal is *Ochoa et al. v. Dole Food Company, et al.*, Fifth District No. F073844, and the opening brief and appendix was filed on April 11, 2017. The third related appeal is *Ochoa et al. v. T.M. Duche Nut Co., Inc.*, Fifth District No. F074947 , which was filed third in sequence. The TM Duche appeal was stayed on February 6, 2017, following the parties tentative settlement, which was the result of negotiations occuring in January 2017.

4. On April 6, 2017, I argued before the Ninth Circuit Court of Appeals in Pasadena in *Lycurgan, Inc. v. Bureau of Alcohol, Tobacco etc*, Ninth Circuit Case No. 14-56550, and *Lycurgan, Inc. v. Todd Jones*, Ninth Circuit Case No. 16-55341. I had spent some days in preparation for that argument.

*3:16-CV-02186*  APPLICATION TO ENLARGE TIME FOR OPPOSITION  1

1   5.  Besides those appellate matters, I've had a number of other motions and

2   hearings.  As a result of those appellate matters, I am back-logged.

3

4   6.  The consulting attorney who has been assisting me in this matter has been

5   out of town traveling in China during the last couple weeks.  He just returned back

6   from his trip, and similarly back-logged.

7   7.  I request, at a minimum, a two week continuance, and preferably a three

8   week continuance, as I've got a backlog of work from the spate of appellate matters

9   that had been deferred following my busy trial schedule between October of 2016

10  through February 2017.

11  8.  On March 28, 2017, at 4:16 p.m., I sent counsel for Defendant Darren

12  Chaker an e-mail stating as follows:

13  Counsel,

14  I've had a crushing schedule over the past few months that I'm still
    crawling out from under.  In the absence of a stipulation to move the
15  hearing, I will be requesting the court to continue the hearing and
    briefing schedule on Mr. Chaker's Rule 11 motion for three weeks.
16
17  Please advise me whether you consent to this, and will join in a joint
    motion for an agreed order to that effect.

18  Thank you,

19  Scott McMillan

20
    9. On March 30, 2017, I received a response from Eliot F. Kreiger, counsel for
21
    Darren Chaker stating:
22
    "Dear Mr. McMillian:
23
24  I have consulted with our client and we will not be agreeable to continue

25  the hearing date three weeks.

26  Thank you,

27  Eliot F. Krieger, P.C."

28

---

*3:16-CV-02186*        APPLICATION TO ENLARGE TIME FOR OPPOSITION        2

10.  Today, I copied my request and the response to the counsel for Nicole Chaker and Vania Chaker, according to Local Civil Rule 7.1.

11.  On January 25, 2017, as a courtesy and in order to avoid the necessity of the court ruling on a contested application, I entered into a joint motion with Mr. Chaker's former attorney to extend the time for Mr. Chaker to file his motion to dismiss the complaint. [ECF 48].  At that time, Mr. Chaker was changing attorneys, and the court signed a substitution allowing that change on February 8, 2017. [ECF 54.]

12.  I was disappointed that my earlier courtesy has been repaid with Mr. Chaker and his new counsel's refusal to enter into a joint motion for a similar extension.

13.  I know of no reasons that the legitimate interests of the defendants or their counsel would be affected by the relief sought.

I declare under the penalty of perjury under the laws of the United States, within the meaning of 28 U.S.C. 1746, that the foregoing is true and correct and that this declaration was executed in the City of La Mesa, County of San Diego, State of California on April 11, 2017.

/s/ Scott A. McMillan

BY: _____

Scott A. McMillan

# CERTIFICATE OF SERVICE

I am admitted to the United States District Court for the Southern District of California. I am employed in San Diego County, California. My business address is 4670 Nebo Drive, Suite 200, La Mesa, CA 91941-5230.

On April 11, 2017, I served the following documents:

PLAINTIFFS' EX-PARTE APPLICATION TO CONTINUE HEARING DATE AND OPPOSITION DATE ON MOTION FOR SANCTIONS FILED BY DARREN CHAKER [ECF 66].

**By Electronic Submission:** I served the above listed document(s) described via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service though the court's transmission facilities.

I certify that the foregoing is true and correct.

Dated: April 11, 2017

/s/ Scott A. McMillan

_____

*3:16-CV-02186*   APPLICATION TO ENLARGE TIME FOR OPPOSITION   4

# EXHIBIT V



Scott A McMillan <scott@mcmillanlaw.us>

## Online Posting of Your Law Firm

Darren Chaker <darrenchaker@gmail.com>
To: Scott A McMillan <scott@mcmillanlaw.us>

Mon, Dec 8, 2014 at 2:42 PM

"I do not, and have never consented to service of any papers" means via email. Apologize for the typo due to using phone.

On Mon, Dec 8, 2014 at 2:41 PM, Darren Chaker <darrenchaker@gmail.com> wrote:

So kind to have replied so expeditiously. I am not aware of money owed to you, but of course am aware of litigation concerning my son. As to my son, do you intend to pursue the vexatious litigant motion? Do you intend to present live testimony be it with me or another person? If so, will you accept service for Susan's mother?

Last, as previously informed:

1I   >I do not reside at La Jolla Crossroads;

2   > I do not, and have never consented to service of any papers, other than a Notice to Consumer (which I request is sent via email since I am unable to check mail often, thus would be unable to reply to timely unless notified by email) in the event of a subpoena being issued for records requiring such notice. Kindly refrain from placing a tracking code on any papers to capture my IP as such is rather childish and am not an amateur.

Enjoy your day,

Darren

On Mon, Dec 8, 2014 at 2:20 PM, Scott A McMillan <scott@mcmillanlaw.us> wrote:
Mr. Chaker,

Your emails are not welcome. Do not contact me unless it is directly related to the subject of the Adcock case or the payment of your fees that are owed.

Scott McMillan

On Mon, Dec 8, 2014 at 2:04 PM, Darren Chaker <darrenchaker@gmail.com> wrote:

Greetings again Scott,

Exh V
1 of 3

As a point clarification "your law firm"[1] means the content on your website mcmillan.us.


Enjoy your afternoon,


Darren


On Mon, Dec 8, 2014 at 1:59 PM, Darren Chaker <darrenchaker@gmail.com> wrote:

Good afternoon Scott,


I have been unable to locate a TM/Copyright for the domain mcmillanlaw.us or for your law firm with the USPTO or U.S. Copyright Office. If there is such, kindly advise prior to 7PM today. If I do not receive a response, it will be presumed there is no such TM/Copyright. Prior to posting additional material, I will extend this courtesy to you.


Also, I have updated the material on

http://scott-mcmillan-law.blogspot.de/p/scott-mcmillan-attorney-la-mesa.html


I have also copied Maura Larkins on this email.


Best regards,


Darren


–
Darren Chaker
1140 Wall Street, #77
La Jolla, CA 92038

Confidentiality Notice: This message, along with any attachments and/or replies thereto, are covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521, and are may be legally privileged. The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, copying, or retransmission of this message is in violation of 18 U.S.C. 2511(1) of the ECPA and is strictly prohibited. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.

Exh V
2 of 3

\_

Darren Chaker
1140 Wall Street, #77
La Jolla, CA 92038

Confidentiality Notice: This message, along with any attachments and/or replies thereto, are covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521, and are may be legally privileged. The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, copying, or retransmission of this message is in violation of 18 U.S.C. 2511(1) of the ECPA and is strictly prohibited. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.

\_

Darren Chaker
1140 Wall Street, #77
La Jolla, CA 92038

Confidentiality Notice: This message, along with any attachments and/or replies thereto, are covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521, and are may be legally privileged. The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, copying, or retransmission of this message is in violation of 18 U.S.C. 2511(1) of the ECPA and is strictly prohibited. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.

\_

Darren Chaker
1140 Wall Street, #77
La Jolla, CA 92038

Confidentiality Notice: This message, along with any attachments and/or replies thereto, are covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521, and are may be legally privileged. The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, copying, or retransmission of this message is in violation of 18 U.S.C. 2511(1) of the ECPA and is strictly prohibited. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.

1  **GILBERT, KELLY, CROWLEY & JENNETT LLP**
   TIMOTHY W. KENNA, A PROFESSIONAL CORPORATION / Bar No. 64280
2  t.kenna@gilbertkelly.com
   ARTHUR J. MC KEON III / Bar No. 082540
3  ajm@gilbertkelly.com
   REBECCA J. SMITH / Bar No. 150428
4  rjs@gilbertkelly.com
   401 B Street, Suite 2210
5  San Diego, California 92101
   (619) 687-3000; FAX: (213) 615-7100
6
   **Mailing Address:**
7  550 South Hope Street, 22nd Floor
   Los Angeles, California  90071-2627
8
   Attorneys for Defendant
9  NICOLE CHAKER

10            **UNITED STATES DISTRICT COURT**

11           **SOUTHERN DISTRICT OF CALIFORNIA**

12

13  SCOTT A. MCMILLAN, an individual,      ) Case No. 3:16-CV-02186-WQH-MD
    THE MCMILLAN LAW FIRM, APC, a          )
14  California professional corporation,   ) Judge:  William Q. Hayes
                                           ) Courtroom 14B
15           Plaintiffs,                   )
        vs.                                ) Magistrate Hon. Mitchell D. Dembin
16                                         ) Courtroom 11th Floor
    DARREN D. CHAKER an individual, and    )
17  as trustee of PLATINUM HOLDINGS        ) **DEFENDANT NICOLE**
    GROUP TRUST, dba COUNTER              ) **CHAKER'S OBJECTION TO**
18  FORENSICS; NICOLE CHAKER, an          ) **PLAINTIFFS' REQUEST FOR**
    individual, and as trustee of NICOLE  ) **JUDICIAL NOTICE IN SUPPORT**
19  CHAKER REVOCABLE LIVING               ) **OF PLAINTIFFS' OPPOSITION**
    TRUST, U/A dated August 18, 2010,     ) **TO DEFENDANT NICOLE**
20  VANIA CHAKER, an individual and as    ) **CHAKER'S MOTION TO**
    beneficiary of The Island Revocable Trust ) **DISMISS AND ANTI-SLAPP**
21  under Declaration of Trust dated June 2, ) **MOTION**
    2015, MARCUS MACK as trustee of The   )
22  Island Revocable Trust under Declaration ) (Defendant Nicole Chaker's
    of Trust dated June 2, 2015           ) Evidentiary Objections, Reply to
23                                         ) Opposition to Anti-SLAPP Motion and
             Defendants.                   ) Reply to Opposition to 12(b)(6)
24  _____ ) Motion filed concurrently herewith)

25                                         [PER CHAMBERS, NO ORAL
                                           ARGUMENT UNLESS ORDERED
26                                         BY COURT]

27                                         Date:   February 6, 2017
                                           Dept:   14B
28                                         Complaint Filed:  August 29, 2016

Gilbert, Kelly
Crowley & Jennett LLP
Attorneys at Law

DEFENDANT NICOLE CHAKER'S OBJECTION TO PLAINTIFFS' REQUEST FOR JURIDICAL NOTICE IN
SUPPORT OF ITS OPPOSITION TO DEFENDANT'S ANTI-SLAPP MOTION
4231449.1  48811-00002 TWK                                    3:16-CV-02186-WQH-MD

133

1    Defendant Nicole Chaker ("Nicole") objects to Plaintiffs' Request for Judicial

2 Notice filed in support of its Opposition to Defendant Nicole's Motion to Dismiss

3 pursuant to FRCP 12(b)(5) and Anti-SLAPP motion and specifically as to the request

4 for judicial notice as to the following:

5    1. Civil Minutes for Order to Show Cause Re Contempt in United States

6       District Court for the Central District of California (Western Division Los

7       Angeles) *Del Nero v. Midland Credit Management*, Case No. CV-04-1040

8       GPS (SHx), dated March 22, 2005 (hereinafter "Midland Case") – Exhibit

9       B to Scott McMillan's Declaration (Docket No. 45-2, 45-1, 47 and 47-1);

10   2. Civil Minutes for Order to Show Cause Re Contempt as to Vania Chaker in

11      Midland case.  Exhibit C to Docket No. 45-2, 45-1, 47 and 47-1;

12   3. Finding of Facts and Conclusions of Law Pursuant to FRCP 52 and LR 52-

13      1 in Midland case, dated July 6, 2005.  Exhibit D to Docket No. 45-2, 45-1,

14      47 and 47-1;

15   4. Judgement in the Midland Action.  Exhibit E to Docket No. 45-2, 45-1, 47

16      and 47-1;

17   5. Civil Minutes for Defendants' Motion for Attorneys' Fees and Related

18      Non-Taxable Costs in Midland case, dated November 27,2006.  Exhibit F

19      to Docket No. 45-2, 45-1, 47 and 47-1;

20   6. Order Awarding Attorneys' Fees and Costs to Defendants in Midland case,

21      dated February 20, 2007.  Exhibit G to Docket No. 45-2, 45-1, 47 and 47-1;

22   7. Judgment for Defendants in Midland case.  Exhibit H to Docket No. 45-2,

23      45-1, 47 and 47-1;

24   8. Plaintiff's Exhibit:  Transcript of Ninth Circuit Oral Argument recorded

25      October 23, 2008 in Midland Case.  Exhibit I to Docket No. 45-2, 45-1, 47

26      and 47-1;

27   9. Mandate on June 6, 2009 from US Court of Appeals for the 9th Circuit in

28      Midland case.  Exhibit J to Docket No. 45-2, 45-1, 47 and 47-1.

Gilbert, Kelly
Crowley & Jennett LLP
Attorneys at Law

-2-

DEFENDANT NICOLE CHAKER'S OBJECTION TO PLAINTIFFS' REQUEST FOR JURIDICAL NOTICE IN
SUPPORT OF ITS OPPOSITION TO DEFENDANT'S ANTI-SLAPP MOTION

4231449.1  48811-00002                                    3:16-CV-02186-WQH-MD

134

10. Plaintiff's Exhibit: Municipal Court Order on February 26, 2010 of Stay Recommendation of Midland Funding LLC v. Kenneth Nedro in the Midland Case, dated March 8, 2010. Exhibit K to Docket No. 45-2, 45-1, 47 and 47-1;

11. Defendants' Notice of Motion and Motion for Award of Attorneys' Fees and Costs in Midland case, dated March 1, 2010. Exhibit L to Docket No. 45-2, 45-1, 47 and 47-1;

12. Plaintiff's Exhibit: Certain excerpts from Defendants' Answering Brief from Hyde & Swigart's appeal before the Ninth Circuit in the Midland Case, dated March 8, 2010. Exhibit M to Docket No. 47.1;

13. Hyde & Swigart's Opposition to Defendant's Motion for Attorneys' Fees and Costs in Midland case dated March 8, 2010. Exhibit N to Docket 45-2, 45-1, 47 and 47-1;

14. Declaration of A. Topor in Support of Defendatns' Motion for Award of Attorneys' Fees and Costs in Case No. 2:04-cv-01040-ABC-SH, dated March 18, 2010 and accompanying exhibits to such declaration. Exhibit O to Docket No. 45-2, 45-1, 47 and 47-1

This objection is based on the fact that Plaintiffs have overreached in its request for judicial notice by asking this Court to take notice of facts that are not appropriate for judicial notice, are subject to reasonable dispute as they are neither generally known within the territorial jurisdiction of the trial court nor capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonable questioned, and to the extent Plaintiffs are asking the Court to take judicial notice "for the truth of these statements" in these filing, Nicole objects and respectfully asserts that those requests must be denied because they are not supported by law.

Gilbert, Kelly
Crowley & Jennett LLP
Attorneys at Law

-3-

1  Dated:  January 30, 2017          GILBERT, KELLY, CROWLEY & JENNETT
                                      LLP
2

3
                                      By:  /s/ ARTHUR J. MCKEON, III
4                                          ARTHUR J. MCKEON, III
                                           REBECCA J. SMITH
5                                          Attorneys for Defendant
                                           NICOLE CHAKER
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gilbert, Kelly
Crowley & Jennett LLP
Attorneys at Law

-4-
DEFENDANT NICOLE CHAKER'S OBJECTION TO PLAINTIFFS' REQUEST FOR JURIDICAL NOTICE IN
SUPPORT OF ITS OPPOSITION TO DEFENDANT'S ANTI-SLAPP MOTION
4231449.1  48811-00002                              3:16-CV-02186-WQH-MD

Case 3:16-cv-02186-WQH-MDD   Document 127-1   Filed 09/23/22   PageID.4360   Page 14 of
Case 3:16-cv-02186-WQH-MDD   Document 52-1   Filed 01/30/17   PageID.2680   Page 5 of 10
1196

1.  **The Documents and Facts Contained Within Such Documents Do Not Meet the Requirements for Matters of Which The Court May Take Judicial Notice**

Federal Rules of Evidence (FRE), Rule 201(b) contains two different tests for determining whether a proposition of fact has attained a sufficiently high degree of certainty that it would be consonant with fair procedure to dispense with formal proof. The first test is whether the fact that is proposed for judicial notice is not subject to reasonable dispute because it is generally known within the territorial jurisdiction of the trial court. See, *Cochran v. NYP Holdings, Inc.*, 210 F.3d 1036, 1038 (9th Cir. 2000), adopting trial court's opinion, *Cochran v. NYP Holdings, Inc.*, 58 F.Supp.2d 1113, 1122 n. 5 (C.D.Cal. 1998) (trial court may take judicial notice that particular subject has been covered extensively in newspapers and other news media within trial court's territorial jurisdiction).

The second test is whether the fact that is proposed for judicial notice is not subject to reasonable dispute because it is capable of accurate and ready determination by reference to sources the accuracy of which cannot reasonably be questioned. See, *American Stores Co. v. Commissioner*, 170 F.3d 1267, 1270 (10th Cir. 1999)(unpublished IRS rulings issued to private taxpayers are inappropriate for judicial notice; adjudicative facts they contain are not capable of accurate and ready determination because such rulings are not widely available), cert. denied, 528 U.S. 875, 120 S.Ct. 182, 145 L.Ed.2d 153 (1099).

Both tests have a common requirement: the restriction that the fact proposed for judicial notice must not be subject to reasonable dispute. Thus, if the fact is subject to reasonable dispute, it does not matter that it is generally known within the community or that it is capable of accurate and ready determination by resort to impeccable sources, it is still not properly a subject for judicial notice. See, *United States v. Boyd*, 289 F.3d 1254, 1259-60 (10th Cir. 2002)(techniques of narcotics collection and preservation are too varied to permit judicial notice of fact that approximately 50 gram sample of cocaine will diminish in weight by 3.34 grams

-5-

**Gilbert, Kelly**
**Crowley & Jennett LLP**
Attorneys at Law

DEFENDANT NICOLE CHAKER'S OBJECTION TO PLAINTIFFS' REQUEST FOR JURIDICAL NOTICE IN SUPPORT OF ITS OPPOSITION TO DEFENDANT'S ANTI-SLAPP MOTION

4231449.1   48811-00002                                                          3:16-CV-02186-WQH-MD

137

Case 3:16-cv-02186-WQH-MDD   Document 127-1   Filed 09/23/22   PageID.4361   Page 145 of
1196
Case 3:16-cv-02186-WQH-MDD   Document 121   Filed 01/30/17   PageID.2681   Page 6 of 10

1  over eight month period for purposes of harmonizing two measurements of weight of

2  same sample of cocaine that yielded different results).

3    Thus, when the adjudicative fact proposed for judicial notice fails to satisfy

4  either of these two tests of indisputability, judicial notice is not appropriate. See, *Lee*

5  *v. County of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001)(trial court erred in

6  taking judicial notice of facts recited in record of extradition hearing that occurred in

7  another court record since they were reasonably disputed by allegations in plaintiff's

8  complaint and court record is not indisputable source of factual information.).

9    The advisory committee notes to FRE 201 "explain that '[a] high degree of

10  indisputability is the essential prerequisite' to taking judicial notice of adjudicative

11  facts and that 'the tradition [of taking judicial notice] has been one of caution in

12  requiring that the matter be beyond reasonable controversy.' " *Rivera v. Philip*

13  *Morris, Inc.*, 395 F.3d 1142, 1151 (9th Cir. 2005) (quoting FRE 201(a) & (b)

14  advisory committee's notes). "Because the effect of judicial notice is to deprive a

15  party of an opportunity to use rebuttal evidence, cross-examination, and argument to

16  attack contrary evidence, caution must be used in determining that a fact is beyond

17  controversy under Rule 201(b)." Id. (quoting *Wright v. Brooke Group Ltd.*, 114

18  F.Supp.2d 797, 816 (N.D. Iowa 2000)). FRE 201 "was intended to obviate the need

19  for formal fact-finding as to certain facts that are undisputed and easily verified."

20  *Walker v. Woodford*, 454 F.Supp.2d 1007, 1022 (S.D. Cal. 2006). The fact to be

21  judicially noticed must be one that only an unreasonable person would insist on

22  disputing. (*Walker*)   A court may not "take judicial notice of any matter that is in

23  dispute."  (*Walker,* see *Lee* at 689-90 .)

24  **2.  Plaintiffs' Request to Judicially Notice Pleadings From Another Action Must**

25  **Be Limited To the Fact That The Pleadings Were Filed**

26    Plaintiffs ask this Court to take judicial notice of a wide array of facts that are

27  inappropriate for judicial notice. For each of its requests, Plaintiff appears to rely on

28  the argument that a court may take judicial notice of pleadings in other cases, citing

**Gilbert, Kelly**
**Crowley & Jennett LLP**
Attorneys at Law

DEFENDANT NICOLE CHAKER'S OBJECTION TO PLAINTIFFS' REQUEST FOR JURIDICAL NOTICE IN
SUPPORT OF ITS OPPOSITION TO DEFENDANT'S ANTI-SLAPP MOTION

4231449.1  48811-00002                                3:16-CV-02186-WQH-MD

Case 3:16-cv-02186-WQH-MDD   Document 127-1   Filed 09/23/22   PageID.4362   Page 146 of
1196
Case 3:16-cv-02186-WQH-MDD   Document 52-1   Filed 01/30/17   PageID.2689   Page 7 of 10

1  to *Burbank-Glendale-Pasadena Airport Authority v. City of Burbank*, 136 F.3d 1360

2  (9th Cir. 1998)  While the court in such case granted a party's request for juridical

3  notice of pleadings in a related state court action, the court did not address for what

4  purpose the request for juridical notice had been made and provided no analysis of

5  why the request had been granted, merely granting and saying that it must deal with

6  one further administrative matter.

7       Neither this case, nor any other case provides authority for the proposition that

8  a court may take judicial notice of the substantive facts in such documents as proof

9  of these matters.  When judicially noticing materials from another action, however,

10 courts are careful not to blindly accept as true the statements made in those materials.

11 Rather, the courts will limit the judicial notice to the existence of the documents, and

12 nothing more. See *Lee* at 690 ("On a Rule 12(b)(6) motion to dismiss, when a court

13 takes judicial notice of another court's opinion, it may do so not for the truth of the

14 facts recited therein, but for the existence of the opinion, which is not subject to

15 reasonable dispute over its authenticity"); *Liberty Mut. Ins. Co. v. Rotches Pork*

16 *Packers, Inc.*, 969 F.2d 1384, 1388-1389 (2d Cir. 1992) (a court may take judicial

17 notice of a document filed in another court to establish the fact of that litigation and

18 related filings, not for the truth of the matters asserted in the other litigation); cf.

19 *Taylor v. Charter Medical Corp.,* 162 F.3d 827, 829-830 (5th Cir. 1998) (a court

20 cannot take judicial notice of factual findings of another court, because such findings

21 do not constitute facts "not subject to reasonable dispute" within the meaning of Rule

22 201); *General Elec. Capital Corp. v. Lease Resolution Corp*., 128 F.3d 1074, 1082

23 n.6 (7th Cir. 1997) ("courts generally cannot take notice of findings of fact from

24 other proceedings for the truth asserted therein because these findings are disputable

25 and usually are disputed."); *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir.

26 1994) (district court erred in noticing findings of fact from related court proceeding).

27       While plaintiffs request for judicial notice does not specifically set forth for

28 what purpose the requested documents are being sought to be placed before the

Gilbert, Kelly
Crowley & Jennett LLP
Attorneys at Law

DEFENDANT NICOLE CHAKER'S OBJECTION TO PLAINTIFFS' REQUEST FOR JURIDICAL NOTICE IN
SUPPORT OF ITS OPPOSITION TO DEFENDANT'S ANTI-SLAPP MOTION

4231449.1  48811-00002                                    3:16-CV-02186-WQH-MD

Case 3:16-cv-02186-WQH-MDD   Document 127-1   Filed 09/23/22   PageID.4363   Page 147 of
1196
Case 3:16-cv-02186-WQH-MDD   Document 52-1   Filed 01/30/17   PageID.2684   Page 8 of 10

1 court, from the oppositions to the two motions of defendant Nicole, it is clear that

2 plaintiff is seeking to have statements and matters within those documents accepted

3 as truth.  While the authenticity and existence of a particular order, motion, pleading

4 or judicial proceeding, which is a matter of public record, is judicially noticeable,

5 veracity and validity of its contents (the underlying arguments made by the parties,

6 disputed facts, and conclusions of applicable facts or law) are not."); *Velazquez v.*

7 *GMAC Mortg. Corp.*, 605 F.Supp.2d 1049, 1057 (CD. Cal. 2008) ("a court may take

8 judicial notice of the undisputed matters of public record, e.g., the fact that a hearing

9 took place, but it may not take judicial notice of disputed facts stated in public

10 records"); *Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1354-55 (7th

11 Cir. 1995) (holding that district court properly refused to take judicial notice of

12 corporation's Form 10-K to determine disputed fact).  Accordingly, Plaintiffs' request

13 to have the Court take judicial notice of Exhibits B, C, D, E, F, G, H, I, J, K, L, M, N

14 and O of Scott McMillan's declaration for the truth of matters in those pleadings is

15 inappropriate, unsupported by law, and should be denied. Judicial notice must be

16 limited to the fact that these documents were filed

17 **3.  Plaintiffs' Request For Judicial Notice Is Improper Because The Facts**

18 **Sought To Be Noticed Are Not Relevant To the Issues in Dispute**

19 The fact that matters sought to be proved are not reasonably disputable (and

20 thus subject to judicial notice) does not make them admissible. FRE 201 deals only

21 with judicial notice of "adjudicative facts"--i.e., facts in the case that normally go to

22 the trier of fact (facts relating to the parties, their properties their actions, etc.) Courts

23 decline to take judicial notice of facts that are irrelevant to the matters at issue.

24 *Adriana Int'l Corp. v. Lewis & Co.*, 913 F.2d 1406, 1410 n.2 (9th Cir. 1990)

25 (declining to judicially notice another action brought by the defendant in the case

26 because it had no relevance to the appeal or the underlying action). Similarly, when

27 facts are inconsequential to the analysis in the case, or the facts sought to be

28 judicially noticed "add nothing" to the issue, a court will decline judicial notice of

Gilbert, Kelly
Crowley & Jennett LLP
Attorneys at Law

DEFENDANT NICOLE CHAKER'S OBJECTION TO PLAINTIFFS' REQUEST FOR JURIDICAL NOTICE IN
SUPPORT OF ITS OPPOSITION TO DEFENDANT'S ANTI-SLAPP MOTION

4231449.1  48811-00002                                    3:16-CV-02186-WQH-MD

Case 3:16-cv-02186-WQH-MDD   Document 127-1   Filed 09/23/22   PageID.4364   Page 148 of
1196
Case 3:16-cv-02186-WQH-MDD   Document 52-1   Filed 01/30/17   PageID.2689   Page 9 of 10

1 those facts. *Boulder Creek Co. v. Maruko, Inc*., 772 F.Supp. 1150, 1151 (CD. Cal.

2 1991). Even if a fact has some relevance, a court may refuse to judicially notice it if

3 it would not influence its decision. *Badillo v. City of Stockton*, 956 F.2d 884, 887 n.l

4 (9th Cir. 1992) (although election results are judicially noticeable, judicial notice was

5 properly denied where the results would not influence the court's decision).

6 **4.  When Offered To Prove The Facts Stated, Court Records Are Hearsay**

7 　　　　Plaintiffs have attempted to have this Court take judicial notice of documents

8 from another court to establish the truth of matters stated within them.  As such the

9 documents would be admissible as evidence only if they satisfied some hearsay

10 exception.  Plaintiffs have asserted no such exception in their request for judicial

11 notice.  Courts have repeatedly held that in regard to judicial notice, the court can

12 notice the existence and legal effect of court documents, but not that statements in

13 them or true and cannot notice the truth of hearsay.  (*Hoag v. Diedjomaho*, 200

14 Cal.App.4th 1008 (2011); *People v. Rualcava*, 2013 IL App (2d) 120396, 997 N.E.2d

15 809, 819 (App. Ct. 2nd District 2013)   There is a fundamental rule that the court

16 cannot notice the truth of testimony or judicial findings of fact.  (J*orgens v. Ohio*

17 *Dept. of Rehabilitation and Corrections,* 492 Fed. Appx. 567, 569 (6th Cir. 2012); *In*

18 *re Oracle Corp. Securities Litigation,* 627 F.3d 376, 385 (9th Cir., 2010)  While the

19 court may take juridical notice to show the acts of the parties in a litigation, such as a

20 complaint being filed, return of service or that stipulations were entered into.  (*Sullo*

21 *Investments, LLC v. Moreau*, 151 Conn. App. 372, 95 A.3d 114, 1147 (2014) ; Perry

22 v. Schaumann, App. 1986, 716 P.2d 1368, 1371) this is not what plaintiffs have

23 requested in their request for judicial notice.

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

-9-
DEFENDANT NICOLE CHAKER'S OBJECTION TO PLAINTIFFS' REQUEST FOR JURIDICAL NOTICE IN
SUPPORT OF ITS OPPOSITION TO DEFENDANT'S ANTI-SLAPP MOTION

4231449.1  48811-00002                                            3:16-CV-02186-WQH-MD

## 5. <u>Conclusion</u>

Based on the inappropriateness of the requests for judicial notice, defendant Nicole Chaker respectfully requests that this court deny plaintiffs' request for judicial notice of the contents of the documents set forth in the request for judicial notice and attached to Scott McMillan's Declaration in support of the Request for Judicial Notice as Exhibits B, C, D, E, F, G, H, I, J, K, L, M, N, and O.

Dated:  January 30, 2017         GILBERT, KELLY, CROWLEY & JENNETT LLP


By:  /s/ ARTHUR J. MCKEON, III

ARTHUR J. MCKEON, III
REBECCA J. SMITH
Attorneys for Defendant
NICOLE CHAKER

Gilbert, Kelly
Crowley & Jennett LLP
Attorneys at Law

4231449.1  48811-00002

3:16-CV-02186-WQH-MD

UNITED STATES COURT OF APPEALS

# FILED

FOR THE NINTH CIRCUIT

APR 23 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| SCOTT A. MCMILLAN and THE MCMILLAN LAW FIRM, APC, | No.  17-56676 |
| | 18-55343 |
| Plaintiffs-Appellants/Cross-Appellees, | D.C. No. |
| | 3:16-cv-02186-WQH-MDD |
| | Southern District of California, |
| v. | San Diego |
| DARREN D. CHAKER, DBA Counter Forensics, an individual, and as trustee of PLATINUM HOLDINGS GROUP TRUST; et al., | ORDER |
| Defendants-Appellees/Cross-Appellants. | |

Before:  Peter L. Shaw, Appellate Commissioner.

Plaintiffs' motion (Docket Entry No. 15) to file portions of Volume 8 of the excerpts of record under seal is granted.  Defendants' request (contained in Docket No. 25) to maintain the remaining materials in Volume 8 under seal is granted. Plaintiffs' opposed request (contained in the motion to seal) for a protective order is denied without prejudice to renewal before the district court.  Because the declaration to plaintiffs' motion to seal contains detailed references to the sealed materials in Volume 8, the motion to seal itself will be maintained under seal.

The Clerk will publicly file the first brief on cross appeal and Volumes 1 through 7 of the excerpts of record, and will file Volume 8 under seal.

SVG/Sealed Documents

The existing briefing schedule will continue in effect.

1  Scott A. McMillan, SBN 212506
   The McMillan Law Firm, APC
2  4670 Nebo Drive, Suite 200
   La Mesa, California 91941-5230
3  (619) 464-1500
   Email: scott@mcmillanlaw.us
4
   Attorney for Plaintiffs, SCOTT A. MCMILLAN, an individual, and THE
5  MCMILLAN LAW FIRM, APC, a California Professional Corporation

6

7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11  SCOTT A. MCMILLAN, an                Case No. 3:16-CV-02186-WQH-MDD
    individual, THE MCMILLAN LAW
12  FIRM, APC, a California Professional  Judge: Hon. William Q. Hayes
    Corporation,                         Courtroom: 14B
13
      Plaintiffs,
14
      v.
15
    DARREN D. CHAKER an individual,      PLAINTIFFS' MEMORANDUM
16  and as trustee of PLATINUM           OF POINTS AND AUTHORITIES
    HOLDINGS GROUP TRUST, dba            IN OPPOSITION TO DEFENDANT
17  COUNTER FORENSICS; NICOLE            DARREN D. CHAKER'S MOTION
    CHAKER, an individual, and as        TO SEAL.
18  trustee of THE NICOLE CHAKER
    REVOCABLE LIVING TRUST, U/A
19  dated August 18, 2010, VANIA         Hearing Date: August 3, 2020
    CHAKER, an individual and as
20  beneficiary of The Island Revocable  Complaint Filed: August 29, 2016
    Trust under Declaration of Trust dated
21  June 2, 2015, MARCUS MACK as
    trustee of The Island Revocable Trust [NO ORAL ARGUMENTS UNLESS
22  under Declaration of Trust dated June ORDERED BY COURT]
    2, 2015,
23
      Defendants.
24

25

26

27

28

1

Table of Contents

2

3   I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4

5   II.   RELEVANT PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . 2

6

7   III.  LEGAL STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

8

9   IV.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

10        A.    There is no Compelling Reason to Seal ¶¶ 39, 40, and 49 of the

11              Complaint and ¶¶ 40, 41 and 50 of the FAC. . . . . . . . . . . . . . . . . . 3

12              1.    The Subject Paragraphs Have No Content from the Paternity

13                    Case Itself that Would Outweigh Public Policy Favoring

14                    Disclosure

15                    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

16              2.    The Subject Paragraphs, as part of both the Complaint and

17                    FAC, Were Not Filed for an Improper Purpose . . . . . . . . . . . 7

18              3.    Sealing Creates a Burden and the Court Should Deny

19                    Defendant's Motion as No Compelling Reasons Exist to Meet

20                    the Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

21

22   V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

23

24

25

26

27

28

# Table of Authorities

## Federal Decisional Authority

*Angioscore, Inc. v. Trireme Med., Inc.* (N.D.Cal. Jan. 6, 2015, No. 12-cv-03393-YGR) 2015 U.S.Dist.LEXIS 1118, at *5-6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Hagestad v. Tragesser* (9th Cir. 1995) 49 F.3d 1430 . . . . . . . . . . . . . . . . . . . . . . 3

*Hardaway v. District Of Columbia Housing Authority,* 843 F.3d 973(D.C. Cir. 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Kamakana v. City & County of Honolulu* (9th Cir. 2006) 447 F.3d 1172 . . . 3, 7, 8

*Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978) . . . . . . . . . . . 8

*Pintos v. Pacific Creditors Ass'n*, 605 F.3d 665 (9th Cir. 2010) . . . . . . . . . . . . . 5

*St. Alphonsus Med. Ctr. - Nampa, Inc. v. St. Luke's Health Sys.* (D.Idaho July 3, 2014, No. 1:12-CV-00560- BLW) 2014 U.S.Dist.LEXIS 93985 . . . . . . . . . . 2, 3

*Angioscore, Inc. v. Trireme Med., Inc.* (N.D.Cal. Jan. 6, 2015, No. 12-cv-03393-YGR) 2015 U.S.Dist.LEXIS 1118, at *5-6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Hagestad v. Tragesser* (9th Cir. 1995) 49 F.3d 1430 . . . . . . . . . . . . . . . . . . . . . . 3

*Hardaway v. District Of Columbia Housing Authority,* 843 F.3d 973(D.C. Cir. 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Kamakana v. City & County of Honolulu* (9th Cir. 2006) 447 F.3d 1172 . . . 3, 7, 8

*Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978) . . . . . . . . . . . 8

*Pintos v. Pacific Creditors Ass'n*, 605 F.3d 665 (9th Cir. 2010) . . . . . . . . . . . . . 6

*St. Alphonsus Med. Ctr. - Nampa, Inc. v. St. Luke's Health Sys.* (D.Idaho

July 3, 2014, No. 1:12-CV-00560- BLW) 2014 U.S.Dist.LEXIS 93985 . . . . . . 3, 4

## Federal Statutes

18 U.S.C. §1962(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. §1962(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## Federal Rules

Civil Local Rule 79.2(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. Rules of Civ. Proc. Rule 26(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. Rules of Civ. Proc. Rule 5.2(d)-(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**State Statutes**

Cal. Evid. Code § 1119. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Cal. Fam. Code §7643(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-6

Cal. Fam. Code §7643(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-6

**State Cases**

*Chaker v. Davis*, (S.D.Cal. Oct. 26, 2012, No. 96cv0314) 2012 U.S.Dist.LEXIS 155556.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

# I.    INTRODUCTION

Defendant Darren Chaker ("Defendant") has a long history of using litigation and other methods to intimidate, threaten, and harass his opponents. Defendant now protests that paragraphs 39, 40 and 49 of the Complaint (ECF 1); and paragraphs 40, 41, and 50 of the First Amended Complaint ("FAC") (ECF 25) should be filed under seal. The original complaint in this case was filed on August 29, 2016, and ¶¶ 40, 41, and 50 of the FAC filed December 5, 2017 are identical to ¶¶ 39, 40 and 49 of the Complaint.

It has now been almost four years since Defendant has been served with the Complaint and almost three years since the FAC was filed and served. After several analysis-heavy motions to dismiss, strike, and apply sanctions, now Defendant belatedly objects. In both instances, Defendant claims that personal information protected by statute was disclosed in the filings, and so the above listed paragraphs should be filed under seal. Defendant relies on Civil Local Rule 79.2(c) and Fed. Rules of Civ. Proc. Rule 5.2(d)-(e), and 26(c) to request seal or a protective order.

Plaintiffs' allegations in the paragraphs at issue supports Plaintiffs' extortion claims against Defendants. With respect to the paternity proceedings, the extortionate efforts by Defendants which are a subject of this case, took place in connection with the paternity case, i.e., *Chaker v. A* (the "Paternity Case").  Paragraphs 39, 40, 49 of the Complaint and ¶¶ 40, 41 and 50 of the FAC all concern Defendant's actions directed at Plaintiff to intimidate and extort Plaintiff; as well as Defendant's intimidating actions directed at Plaintiff's client through Defendant's correspondence with Plaintiff; and intimidating conduct to witnesses *in the presence* of Plaintiff. They do not at all reveal defendant's personal, private or familial information. All the exhibits containing sensitive information from the Paternity Case were already filed under seal. Defendants now attempt to use Family Code to seal portions of the complaint that actually do not have to do with the Paternity Case, but rather the facts that led to Plaintiff's claim.

Plaintiffs request that Defendant's motion be denied. There is no compelling reason that overcomes the public policies favoring disclosure. Defendant is wasting the Court's time and creating an unneeded burden upon counsel and the Court. Plaintiffs also request the Court deny this motion to avoid potential challenges to authenticity, which Defendant had already tried in this case and will certainly attempt in the matter now pending in San Diego Superior Court.

## II.    RELEVANT PROCEDURAL HISTORY

On August 29, 2016, Plaintiffs filed their original Complaint. (ECF No. 1), asserting three Causes of Action against Defendant: (1) Racketeer Influences and Corrupt Organizations Act (18 U.S.C. §1962(c)); (2) Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §1962(d)); and (3) Civil Extortion.

On December 5, 2017, Plaintiffs filed their First Amended Complaint. (ECF No. 25), asserting the same causes of action against Defendant.

On May 22, 2017,  Defendant filed ECF No. 78, Motion to Seal re: Exhibit FF to the Complaint and the FAC; and Exhibit C attached to the declaration of Plaintiff Scott McMillan in support of his opposition to Defendant's motion for sanctions (ECF No. 75-1 at 121-141). Plaintiff opposed this motion (ECF No. 80). The court granted the motion (ECF No. 84). Defendant had the opportunity to, but did not include the subject paragraphs at issue in their ECF No. 78 motion.

On February 17, 2017, Defendant filed a 12(b)(6) motion (ECF 56, 56-1). On March 13, 2017, Plaintiff filed his opposition (ECF 60).

On August 28, 2017, the Court granted defendant's motion to dismiss the First Amended Complaint without prejudice and the matter was closed on October 10, 2017 (ECF No. 86).

## III.   LEGAL STANDARD

There is a "strong presumption" in favor of access, and a party seeking to seal judicial materials must identify "compelling reasons" that outweigh the "public interest in understanding the public process." (*St. Alphonsus Med. Ctr. - Nampa, Inc.*

1  *v. St. Luke's Health Sys.* (D.Idaho July 3, 2014, No. 1:12-CV-00560- BLW) 2014

2  U.S.Dist.LEXIS 93985, at *9) (citing *Kamakana v. City & County of Honolulu*, 447

3  F.3d 1172, 1178 (9th Cir. 2006) ("*Kamakana*"). Further:

> Documents "submitted in connection with dispositive motions, the party
> seeking to seal the record must demonstrate "compelling reasons" that
> would overcome the public's right to view public records and
> documents, including judicial records. Id. (citing *Kamakana v. City &
> County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006)).A "party
> seeking to seal judicial records must show that 'compelling reasons
> supported by specific factual findings ... outweigh the general history of
> access and the public policies favoring disclosure.'" *Id.* (quoting
> *Kamakana*, 447 F.3d at 1178-79 (9th Cir. 2006)). The trial court must
> weigh relevant factors including the "public interest in understanding
> the judicial process and whether disclosure of the material could result
> in improper use of the material for scandalous or libelous purposes or
> infringement upon trade secrets." *Id.* at 1179-1181 n. 6 (quoting
> *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995)). While the
> decision to grant or deny a motion to seal is within the trial court's
> discretion, the trial court must articulate its reasoning in deciding a
> motion to seal. *Id.* at 1179.

*Angioscore, Inc. v. Trireme Med., Inc.* (N.D.Cal. Jan. 6, 2015, No. 12-cv-03393-
YGR) 2015 U.S.Dist.LEXIS 1118, at *5-6.

## IV. ARGUMENT

    **A.**     **There is no Compelling Reason to Seal ¶¶ 39, 40, and 49 of the Complaint and ¶¶ 40, 41 and 50 of the FAC.**

    Paragraphs ¶ 39, 40, and 49 of the Complaint and ¶¶ 40, 41 and 50 of the FAC (referred to collectively as "subject paragraphs")  are allegations against Defendant for extortion around the time to and connected to the Paternity Case. However, they are not records from the Paternity Case itself and no confidential information about the paternity case was disclosed in any of the stated paragraphs. The exhibits accompanying the paragraphs were already filed under seal.

    Defendant must show a compelling interest that outweighs the public interest in understanding the public process, and overcome the strong presumption in favor of access. (*St. Alphonsus Med. Ctr. - Nampa, Inc. v. St. Luke's Health Sys.* (D.Idaho

1  July 3, 2014, No. 1:12-CV-00560-BLW) 2014 U.S.Dist.LEXIS 93985, at *9). Indeed,

2  Defendant argues that his family's private life is confidential and the public has little

3  to no right to access facts concerning Defendant's relationship with his child.

4  Defendant also argues that the records of the Paternity Case are sealed per statute and

5  so this Court should seal the subject paragraphs because the Paternity Case is

6  referenced.

7     However, Defendant fails to point out that the only things about the Paternity

8  Case the subject paragraphs mention are the existence of the case and that Plaintiff

9  was an attorney in that matter. There is no mention of any facts of that case other than

10  what is accessible to the public already, as the Paternity Case can be found under the

11  court's index search. The documents referenced from the Paternity Case were already

12  filed as exhibits under seal.

13    Because the subject paragraphs are paramount to the composition of the

14  allegations of extortion and do not actually discuss the Paternity Case itself, the

15  sealing of all the subject paragraphs would be an overbroad measure to protect

16  Defendant's information. Defendant mischaracterized the content of the paragraphs

17  to try to fall under California's Family Code §7643(a), which reads, in part:

18

19     all papers and records, other than the final judgment, pertaining to the action
       or proceeding, whether part of the permanent record of the court or of a file in
20     a public agency or elsewhere, are subject to inspection and copying only in
       exceptional cases upon an order of the court for good cause shown.

21

22  Cal. Fam. Code §7643(a).

       Moreover, Defendant's assertion that "Plaintiffs were not parties to Defendant
23
    Chaker's Paternity Case and have no right to obtain records therefrom" is incorrect.
24
    Defendants cite to Cal. Fam. Code §7643(b)(1) which provides that "papers and
25
    records pertaining to the action or proceeding that are part of the permanent record
26
    of the court are subject to inspection and copying by the parties to the action, their
27
    attorneys...". Plaintiff McMillan was an attorney in the Paternity Case. Defendant
28

_3:16-CV-02186_          Opposition to Motion to Seal              4

knows this, yet still makes this incorrect statement to the Court.

Nevertheless, the events involving Plaintiff, his client and the witnesses that are alleged in the subject paragraph are not "papers and records" of the Paternity Case. They are events that occurred surrounding the Paternity Case but that are separate and apart from the papers and records that required a filing under seal. This Court should not allow Defendant to send threatening letters and intimidate Plaintiff, his client and witnesses, then hide them under the veil of the paternity matter.

There is no authority for the proposition that events that occurred surrounding paternity proceedings are "confidential" beyond what is stated in Cal. Fam. Code §§ 7643(a)-(b)(1). There is no authority for the proposition that the conduct that forms the basis of the underlying complaint, i.e., an extortionate demand, becomes confidential simply because it is has some connection to a paternity proceeding. Had the Legislature intended to attach confidentiality to communications made in the course of a paternity proceeding it would have stated as much in the Evidence Code or elsewhere in the Family Code. The Legislature made such pronouncements in connection with mediation communications. (Cal. Evid. Code § 1119.)

For the compelling reason standard, Defendant cites to *Pintos v. Pacific Creditors Ass'n*, 605 F.3d 665 (9th Cir. 2010) in that a party seeking to seal must (1) show compelling reasons, (2) supported by specific factual findings, and (3) the factual findings outweigh the public policies favoring disclosure. Defendant's reasons for requesting the seal are inaccurate and insufficient to meet the standard. Accordingly, there is no compelling reason to seal the subject paragraphs.

1.  The Subject Paragraphs Have No Content from the Paternity Case Itself that Would Outweigh Public Policy Favoring Disclosure

Defendant cites *Hardaway v. District Of Columbia Housing Authority,* 843 F.3d 973(D.C. Cir. 2016)("*Hardaway*") to support their contentions that: (1)

Opposition to Motion to Seal

defendant has a strong privacy interest in keeping the details of his relationship with his child private and (2) the public has no need to access information describing Defendant's relationship with his inner-family members.

However, the subject paragraphs do not mention any of those details. The nature of a paternity matter is common knowledge and not at all unique to Defendant. Defendant's paternity matter's existence can be found in the court's index search, which is already accessible to the public. Here, the subject paragraphs focus on defendant's intimidating and extortionist actions towards Plaintiff, his client, and witnesses that occurred outside the record. Any papers or records were already filed under seal in compliance with Cal. Fam. Code §§ 7643(a)-(b)(1).

In *Hardaway*, the lower court incorrectly assumed all documents were not medical records, when, <u>one</u> document containing a doctor's prescription of the appellant's disability had been docketed.(*Id.* at 980, emphasis added). This matter is distinguished from *Hardaway* in that Plaintiff here filed the pertinent documents from the Paternity Case under seal already.  Because the subject paragraphs do not discuss details and records from the Paternity Case and everything that did was filed as exhibits under seal, there is nothing to outweigh public policy favoring disclosure here.

The California Superior Court instructed that only a very small portion of the complaint be sealed:

> "The Court also believes that the complaint at page 23, line 27 to page 24, line 1 should be sealed as it appears this is language quoted from a paternity case and should not be available for public review. See Family Code Sec. 7643."

[Defendants' Request For Judicial Notice.]

That portion read:

> "Respondent has now, after placing me . . . on six applications for governemnt [sic] aid (all signed under penalty of perjury), now attests

1   in her declaration I am not the father in an effort to give Attorney

2   McMillan's motion merit. [Exhibit 5, page 2, to be filed under seal.]"

3   [State Court, First Amended Complaint.]

4        It is important for any other persons that are in the same position as the

5   Plaintiffs here be able to review and identify the patterns by which Darren Chaker

6   operates.  Sealing documents that are presumptively public, and for which there is a

7   legitimate cause for public interest, such as these encourages future misconduct.

8        2.   The Subject Paragraphs, as part of both the Complaint and FAC, Were

9             Not Filed for an Improper Purpose

10        Defendant claims that Plaintiff has used his pleadings to exact a "vendetta"

11   against Defendant (Memo 5:23-24), then cites to *Kamakana* to support their

12   contention that Plaintiff used the pleadings to "gratify private spite, promote public

13   scandal, [or] circulate libelous statements." (*Kamakana* at 1179). But "the mere fact

14   that the production of records may lead to a litigant's embarrassment, incrimination,

15   or exposure to further litigation will not, without more, compel the court to seal its

16   records." (*Id*). Plaintiff did not incorporate the subject paragraphs for an improper

17   purpose (McMillan Dec. ¶4), and that the subject paragraphs may cast Defendant in

18   a negative light is not sufficient to conclude otherwise.

19        In *Kamakana*, the court referred to the magistrate judge's determination that

20   deposition testimony on confidential informants and criminal investigations was

21   "years old" and "largely resulted in criminal indictments which were made public

22   over three years ago". (*Id.* at 1182), Only home addresses and social security numbers

23   met the "compelling reason" standard (*Id*.). The court determined that the City simply

24   made conclusory statements about the content of the documents which did not rise

25   up to the level of "compelling reasons" sufficiently specific to bar the public access

26   to the documents. (*Id.*)

27        *Kamakana* is similar to this matter in that the content of the subject paragraphs

28   surrounds a confidential matter (the Paternity Case); contains information that led to

criminal prosecution of Defendant that is public record; and Defendant is making conclusory statements about the content of the paragraphs detailing his personal and familial information, when they in fact do not. Plaintiff does not reveal the "intimate details" of Defendant's family, and documents pertaining to the Paternity Case were filed under seal. There is no "vendetta" in incorporating Defendant's acts of extortion, some which were made in writing, and some to which there were witnesses to the events, as part of the allegations of the complaint. Defendant cannot just conclude the allegations made are for improper purposes because he does not like the allegations. In *Kamakana*, the appellate court affirmed the district court's decision to deny the motion to seal. The court should therefore deny defendant's motion to seal in this matter.

3. <u>Sealing Creates a Burden and the Court Should Deny Defendant's Motion as No Compelling Reasons Exist to Meet the Standard</u>

Courts have inherent supervisory power over its own records and files, even where a right of public access exists. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978). Sealing creates an administrative burden to manage for the attorneys and for the Court. (McMillan Dec. ¶5 ). As discussed above, Plaintiff did not detail anything confidential about the Paternity Case itself. Plaintiff attached documents acquired as an attorney of record during the course of the Paternity Case as exhibits under seal. Thus, there is no compelling reason to move forward with sealing what are very serious allegations against Defendant that are backed up by proof. They have nothing to do with the Paternity Case except that Defendant's illegal acts were committed during the pendency of the Paternity Case or in the courtroom while outside the record.

Moreover, Defendant has a long history of demanding as many documents that refer to him being sealed such that even a Texas judge addressed it:

> THE COURT: Okay, the sealing thing. Mr. Chaker I don't really understand why you get the right to seal everything but you want to publicize everybody else's personal information. I just -- I just throw that

1    out there. (TXSD Case No. 4:12-cr-00168 ECF 337, pg. 45:4-8)

2  (ECF 75-1 ¶ 35, citing to Exhibit A, pg. 45:4-8 [page 66 of ECF 75-1]).

3       In fact, Defendant previously asked this Court in 2012 to seal the entire file

4  from a 1996 case, *Chaker v. Davis*, Case No. 96-cv-0314; the request was denied.

5  (McMillan Dec. ¶ 3, Exhibit 1).

6       It is evident that Defendant's request to seal or for a protective order is made

7  in a capricious effort to continue to reduce the amount of information of how he

8  harms people, but what Defendant did that is now before the Court rightfully and

9  should be accessible to the public.

10  **V.    CONCLUSION**

11       For the foregoing reasons, Plaintiffs requests that Defendant's motion be

12  denied.

13

14                                      Respectfully submitted,

15  Date: July 20, 2020                 THE MCMILLAN LAW FIRM, APC

16                                      /s/ Scott A. McMillan

17                                      Scott A. McMillan, Plaintiff In Pro
                                        Per, Attorney for Plaintiff The
18                                      McMillan Law Firm, APC

19

20

21

22

23

24

25

26

27

28

1    **CERTIFICATE OF SERVICE**

2        I am admitted to the United States District Court for the Southern District of

3    California. I am employed in San Diego County, California. My business address

4    is 4670 Nebo Drive, Suite 200, La Mesa, CA 91941-5230.

5        On July 20, 2020, I caused service of the following documents:

6    1.    **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO**

7          **SEAL.**

8    **2.    DECLARATION OF SCOTT A. MCMILLAN IN SUPPORT OF**

9          **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO**

10         **SEAL.**

11    **By Electronic Submission:** I served the above listed document(s) described via

12   the United States District Court's Electronic Filing Program on the designated

13   recipients via electronic transmission through the CM/ECF system on the Court's

14   website. The Court's CM/ECF system will generate a Notice of Electronic Filing

15   (NEF) to the filing party, the assigned judge, and any registered users in the case.

16   The NEF will constitute service of the document(s). Registration as a CM/ECF

17   user constitutes consent to electronic service though the court's transmission

18   facilities.

19        I declare under penalty of perjury under the laws of the State of California

20   that the foregoing is true and correct. Executed on July 20, 2020, at the City of San

21   Diego, County of San Diego, California.

22        Dated: July 20, 2020

23

24                                    /s/ Scott A. McMillan
                                      _____
25                                    Scott A. McMillan

26

27

28



Office of the Clerk
**United States Court of Appeals for the Ninth Circuit**
Post Office Box 193939
San Francisco, California 94119-3939
415-355-8000

Molly C. Dwyer
Clerk of Court

November 06, 2017

---

No.:             17-56676
D.C. No.:        3:16-cv-02186-WQH-MDD
Short Title:     Scott McMillan, et al v. Darren Chaker, et al

---

Dear Appellant/Counsel

A copy of your notice of appeal/petition has been received in the Clerk's office of the United States Court of Appeals for the Ninth Circuit. The U.S. Court of Appeals docket number shown above has been assigned to this case. You must indicate this Court of Appeals docket number whenever you communicate with this court regarding this case.

Please furnish this docket number immediately to the court reporter if you place an order, or have placed an order, for portions of the trial transcripts. The court reporter will need this docket number when communicating with this court.

**The due dates for filing the parties' briefs and otherwise perfecting the appeal have been set by the enclosed "Time Schedule Order," pursuant to applicable FRAP rules. These dates can be extended only by court order. Failure of the appellant to comply with the time schedule order will result in automatic dismissal of the appeal. 9th Cir. R. 42-1.**

**Appellants who are filing pro se should refer to the accompanying information sheet regarding the filing of informal briefs.**

Scott A. McMillan, SBN 212506
The McMillan Law Firm, APC
4670 Neo Drive, Suite 200
La Mesa, California 91941-5230
(619) 464-1500 x 14
Email: scott@mcmillanlaw.us

Attorney for Plaintiff, SCOTT A. MCMILLAN, an individual, THE MCMILLAN
LAW FIRM, APC, a California Professional corporation

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT A. MCMILLAN, an individual, THE MCMILLAN LAW FIRM, APC, a California Professional corporation, <br><br> Plaintiffs, <br><br> v. <br><br> DARREN D. CHAKER an individual, and as trustee of PLATINUM HOLDINGS GROUP TRUST, dba COUNTER FORENSICS; NICOLE CHAKER, an individual, and as trustee of THE NICOLE CHAKER REVOCABLE LIVING TRUST, U/A dated August 18, 2010, VANIA CHAKER, an individual and as beneficiary of The Island Revocable Trust under Declaration of Trust dated June 2, 2015, MARCUS MACK as trustee of The Island Revocable Trust under Declaration of Trust dated June 2, 2015, <br><br> Defendants. | Case No. 3:16-CV-02186-WQH-MDD <br><br> Judge: Hon. William Q. Hayes <br> Courtroom: 14B <br><br> **DECLARATION OF SCOTT A. MCMILLAN IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT NICOLE CHAKER'S NOTICE OF MOTION FOR EXTENSION OF TIME TO FILE CROSS-APPEAL (FRAP 4(a)(5)) ].** <br><br> Hearing Date (no oral argument): <br> January 15, 2018 <br> Dept. 14B |

Case 3:16-cv-02186-WQH-MDD   Document 127-1   Filed 09/23/22   PageID.4394   Page 168 of
1196
Case 3:16-cv-02186-WQH-MDD   Document 92-1   Filed 12/29/17   PageID.3664   Page 2 of 41

# DECLARATION OF SCOTT A. MCMILLAN

I, Scott A. McMillan, declare as follows:

1.  I am an attorney admitted to practice in the District Court for the Southern District of California, I am a plaintiff herein, and I am the principal of The McMillan Law Firm, APC, Plaintiff in this case. The facts that I state below are of my own personal knowledge and if called before this court, I could and would testify competently to the following:

2. I submit this declaration in support of Plaintiffs' opposition to Defendant Nicole Chaker's Motion for an Extension of Time to File Cross-Appeal.

3.  On November 5, 2017, I filed Plaintiffs' Notice of Appeal. I immediately received an "Notice of Electronic Filing" email reflecting the filing. Others accounts listed for receipt of online service also received the same email. A true and correct copy of the NEF emails sent to myself and, by way of example, two of my associates, are attached as **Exhibit A**.

4.  A true and correct copy of the Electronic Case Filing Administrative Policies and Procedures Manual for this Court, dated January 20, 2017, is attached as **Exhibit B**.[1]

5.  A true and correct copy of the attorney list for this case, as accessed via the ECF website on December 29, 2017, is attached as **Exhibit C**.

6. With regard to the judgment in this case, Defendants submitted a proposed judgment to the Court on October 5, 2017. However, I objected to it, as the proposed judgment was misleading in that it failed to address the nature of the dismissals, implying that they were terminated based on the merits. A true and

---

[1] Downloaded from https://www.casd.uscourts.gov/CMECF/SitePages/PoliciesAndProcedures.aspx, last accessed December 29, 2017.

DECLARATION OF SCOTT A. MCMILLAN IN SUPP. OF PLS'
OPPOSITION TO MTN. EXT. TIME TO FILE CROSS-APPEAL

1    correct copy of the email exchange is attached as **Exhibit D**.

2

3         I declare under the penalty of perjury under the laws of the United States,

4    within the meaning of 28 U.S.C. 1746, that the foregoing is true and correct and

5    that this declaration was executed in the City of La Mesa, County of San Diego,

6    State of California on December 29, 2017.

7                                              /s/ Scott A. McMillan

8                                    BY:   _____

9                                              Scott A. McMillan

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case 3:16-cv-02186-WQH-MDD   Document 127-1   Filed 09/23/22   PageID.4386   Page 170 of
1196
Case 3:16-cv-02186-WQH-MDD   Document 92-1   Filed 12/29/17   PageID.3686   Page 4 of 41

# Exhibit

# A



**Scott A McMillan <scott@mcmillanlaw.us>**

---

## Activity in Case 3:16-cv-02186-WQH-MDD McMillan et al v. Chaker et al Notice of Appeal to 9th Circuit

---

efile_information@casd.uscourts.gov <efile_information@casd.uscourts.gov>      Sun, Nov 5, 2017 at 1:56 PM
To: efile_information@casd.uscourts.gov

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

**U.S. District Court**

**Southern District of California**

### Notice of Electronic Filing

The following transaction was entered by McMillan, Scott on 11/5/2017 at 1:56 PM PST and filed on 11/5/2017
**Case Name:**    McMillan et al v. Chaker et al
**Case Number:**    3:16-cv-02186-WQH-MDD
**Filer:**    Scott A. McMillan
    The McMillan Law Firm, APC
**WARNING: CASE CLOSED on 10/10/2017**
**Document Number:** 87

**Docket Text:**
**NOTICE OF APPEAL to the 9th Circuit as to [84] Order on Motion to Seal, [86] Order Dismissing Case, [83] Order on Motion to Dismiss,,,,,,, Order on Motion to Strike,,,,,,,,,,,, Order on Motion to Dismiss for Failure to State a Claim,,,,,,,,,,,, Order on Motion for Sanctions,,,,, by Scott A. McMillan, The McMillan Law Firm, APC. ( Filing fee $ 505 receipt number 0974-10604196.) (Notice of Appeal electronically transmitted to US Court of Appeals.) (McMillan, Scott)**

**3:16-cv-02186-WQH-MDD Notice has been electronically mailed to:**

Adam M Tamburelli     atamburelli@sullivankrieger.com, ltom@sullivankrieger.com

Charles Thomas Spagnola     cspagnola@sullivankrieger.com, ltom@sullivankrieger.com

Eliot Franklin Krieger     ekrieger@sullivankrieger.com, ltom@sullivankrieger.com

Rebecca Jo Smith     rjs@gilbertkelly.com

Ryan G. Baker     rbaker@bakermarquart.com, bgrace@bakermarquart.com, calendar@bakermarquart.com, canstett@bakermarquart.com, file@bakermarquart.com

Scott A McMillan     scott4670@gmail.com, anicemarie2@aol.com, brho01@gmail.com, cmk@slksf.com, dimitri4670@gmail.com, dmercado4670@gmail.com, jgarchie@tmlf.us, jmarshall4670@gmail.com, jvannoord@tmlf.us, lbrady@tmlf.us, mkaroomi4670@gmail.com, mvolk4670@gmail.com, ravimor4670@gmail.com, sam0661@gmail.com,

sconnell4670@gmail.com, scott@mcmillanlaw.us, tmlf-group@tmlf.us

Timothy W Kenna &nbsp &nbsp t.kenna@gilbertkelly.com, charlenec@gilbertkelly.com

**3:16-cv-02186-WQH-MDD Electronically filed documents must be served conventionally by the filer to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1106146653 [Date=11/5/2017] [FileNumber=11280138-
0] [80f9ac2828c2c2169287219c00eace203234345ac96086ed9e8f936d3e0e783771
375c356ea785b48d2b1fd658a2aafdf0d63be4bab1d9825b83d40b6ca08041]]



Lauren Hanley-Brady <lbrady@tmlf.us>

---

## Activity in Case 3:16-cv-02186-WQH-MDD McMillan et al v. Chaker et al Notice of Appeal to 9th Circuit

efile_information@casd.uscourts.gov    <efile_information@casd.uscourts.gov>       Sun, Nov 5, 2017 at 1:56 PM
To: efile_information@casd.uscourts.gov

---

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. T o avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

U.S. District Court

Southern District of California

## Notice of Electronic Filing

The following transaction was entered by McMillan, Scott on 11/5/2017 at 1:56 PM PST and filed on 11/5/2017
Case Name:       McMillan et al v. Chaker et al
Case Number:     3:16-cv-02186-WQH-MDD
Filer:           Scott A. McMillan
                 The McMillan Law Firm, APC
WARNING: CASE CLOSED on 10/10/2017
Document Number: 87

Docket T ext:
NOTICE OF APPEAL to the 9th Circuit as to [84] Order on Motion to Seal, [86] Order Dismissing Case, [83] Order on Motion to Dismiss,,,,,, Order on Motion to Strike,,,,,,,,,,,, Order on Motion to Dismiss for Failure to State a Claim,,,,,,,,,,,, Order on Motion for Sanctions,,,,, by Scott A. McMillan, The McMillan Law Firm, APC. ( Filing fee $ 505 receipt number 0974-10604196.) (Notice of Appeal electronically transmitted to US Court of Appeals.) (McMillan, Scott)

3:16-cv-02186-WQH-MDD Notice has been electronically mailed to:

Adam M Tamburelli     atamburelli@sullivankrieger.com, ltom@sullivankrieger.com

Charles Thomas Spagnola     cspagnola@sullivankrieger.com, ltom@sullivankrieger.com

Eliot Franklin Krieger     ekrieger@sullivankrieger.com, ltom@sullivankrieger.com

Rebecca Jo Smith     rjs@gilbertkelly.com

Ryan G. Baker     rbaker@bakermarquart.com, bgrace@bakermarquart.com, calendar@bakermarquart.com, canstett@bakermarquart.com, file@bakermarquart.com

Scott A McMillan     scott4670@gmail.com, anicemarie2@aol.com, brho01@gmail.com, cmk@slksf.com, dimitri4670@gmail.com, dmercado4670@gmail.com, jgarchie@tmlf.us, jmarshall4670@gmail.com, jvannoord@tmlf.us, lbrady@tmlf.us, mkaroomi4670@gmail.com, mvolk4670@gmail.com, ravimor4670@gmail.com, sam0661@gmail.com, sconnell4670@gmail.com, scott@mcmillanlaw.us, tmlf-group@tmlf.us

Timothy W Kenna     t.kenna@gilbertkelly.com, charlenec@gilbertkelly.com

3:16-cv-02186-WQH-MDD Electronically filed documents must be served conventionally by the filer to:

The following document(s) are associated with this transaction:

Document description:   Main Document
Original filename:  n/a
Electronic document Stamp:
[STAMP dcecfStamp_ID=1106146653 [Date=11/5/2017] [FileNumber=11280138-
0] [80f9ac2828c2c2169287219c00eace203234345ac96086ed9e8f936d3e0e783771
375c356ea785b48d2b1fd658a2aafdf0d63be4bab1d9825b83d40b6ca08041]]



Jessica Marshall <jmarshall4670@gmail.com>

---

## Activity in Case 3:16-cv-02186-WQH-MDD McMillan et al v  .  Chaker et al Notice of Appeal to 9th Circuit

efile_information@casd.uscourts.gov    <efile_information@casd.uscourts.gov>    Sun, Nov 5, 2017 at 1:56 PM
To: efile_information@casd.uscourts.gov

---

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail
because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of
record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed
electronically , if receipt is required by law or directed by the filer . PACER access fees apply to all other users. T o
avoid later charges, download a copy of each document during this first viewing. However , if the referenced
document is a transcript, the free copy and 30 page limit do not apply .

U.S. District Court

Southern District of California

Notice of Electronic Filing

The following transaction was entered by McMillan, Scott on 11/5/2017 at 1:56 PM PST and filed on 11/5/2017
Case Name:     McMillan et al v. Chaker et al
Case Number:     3:16-cv-02186-WQH-MDD
Filer:     Scott A. McMillan
       The McMillan Law Firm, APC
WARNING: CASE CLOSED on 10/10/2017
Document Number:   87

Docket T ext:
NOTICE OF APPEAL to the 9th Circuit as to [84] Order on Motion to Seal, [86] Order
Dismissing Case, [83] Order on Motion to Dismiss,,,,,, Order on Motion to Strike,,,,,,,,,,,,
Order on Motion to Dismiss for Failure to State a Claim,,,,,,,,,,,, Order on Motion for
Sanctions,,,,, by Scott A. McMillan, The McMillan Law Firm, APC. ( Filing fee $ 505 receipt
number 0974-10604196.) (Notice of Appeal electronically transmitted to US Court of
Appeals.) (McMillan, Scott)

3:16-cv-02186-WQH-MDD Notice has been electronically mailed to:

Adam M Tamburelli     atamburelli@sullivankrieger.com, ltom@sullivankrieger.com

Charles Thomas Spagnola     cspagnola@sullivankrieger.com, ltom@sullivankrieger.com

Eliot Franklin Krieger     ekrieger@sullivankrieger.com, ltom@sullivankrieger.com

Rebecca Jo Smith     rjs@gilbertkelly.com

Ryan G. Baker     rbaker@bakermarquart.com, bgrace@bakermarquart.com, calendar@bakermarquart.com,
canstett@bakermarquart.com, file@bakermarquart.com

Scott A McMillan     scott4670@gmail.com, anicemarie2@aol.com, brho01@gmail.com, cmk@slksf.com,
dimitri4670@gmail.com, dmercado4670@gmail.com, jgarchie@tmlf.us, jmarshall4670@gmail.com, jvannoord@tmlf.us,
lbrady@tmlf.us, mkaroomi4670@gmail.com, mvolk4670@gmail.com, ravimor4670@gmail.com, sam0661@gmail.com,
sconnell4670@gmail.com, scott@mcmillanlaw.us, tmlf-group@tmlf.us

Timothy W Kenna     t.kenna@gilbertkelly.com, charlenec@gilbertkelly.com

3:16-cv-02186-WQH-MDD Electronically filed documents must be served conventionally by the filer to:

The following document(s) are associated with this transaction:

Document description:   Main Document
Original filename:  n/a
Electronic document Stamp:
[STAMP dcecfStamp_ID=1106146653 [Date=11/5/2017] [FileNumber=11280138-
0] [80f9ac2828c2c2169287219c00eace203234345ac96086ed9e8f936d3e0e783771
375c356ea785b48d2b1fd658a2aafdf0d63be4bab1d9825b83d40b6ca08041]]

Case 3:16-cv-02186-WQH-MDD   Document 92-1   Filed 12/29/17   PageID.3879   Page 1 of 41

# Exhibit

# B

Case 3:16-cv-02186-WQH-MDD   Document 92-1   Filed 12/29/17   PageID.3874   Page 2 of 41



# Electronic Case Filing
## Administrative Policies and Procedures Manual

## United States District Court
## for the Southern District of California

Edward J. Schwartz United States Courthouse
221 West Broadway
San Diego, California 92101

James M. Carter and Judith N. Keep United States Courthouse
333 West Broadway
San Diego, California 92101

Office of the Clerk
333 West Broadway, Suite 420
San Diego, California 92101
(619) 557-5600
casd.uscourts.gov

January 20, 2017

# Electronic Case Filing
## Administrative Policies and Procedures
### Table of Contents

**Section 1: The Electronic Filing System**

a.    Authorization for Electronic Filing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

b.    Scope of Electronic Filing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

c.    The Official Record and Maintenance of Original Paper Documents . . .  2

d.    Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

e.    System Availability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

f.    Registration and Attorney Responsibilities . . . . . . . . . . . . . . . . . . . . . . . .  4

g.    Logins and Passwords . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

h.    Privacy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

i.    Technical Specifications . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

**Section 2: Electronic Filing and Service of Documents**

a.    Filing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

b.    Pro Se Litigants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

c.    Case Initiating Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

d.    Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

e.    Courtesy Copies for Judicial Officers . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

f.    Signatures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

g.      Motions, Applications or Other Requests for Ruling by the Court . . . .   12
        .

h.      Proposed Orders and Orders . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13
        . .

i.      Ex Parte Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14
        .

j.      Sealed and Juvenile Documents . . . . . . . . . . . . . . . . . . . . . . . . . . .   14
        .

k.      Exhibits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16
        .

l.      Hyperlinks . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17
        .

m.      Technical Failures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17
        .

n.      Correcting Filing or Docket Errors . . . . . . . . . . . . . . . . . . . . . . . . . .   17
        .

o.      Transcripts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18
        .

p.      Exceptions to Electronic Filing . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19
        .

# Southern District of California Electronic Case Filing Administrative Policies and Procedures

# Section 1: The Electronic Filing System

### a.   Authorization for Electronic Filing

Pursuant to General Order No. 550, beginning on November 1, 2006, the U.S. District Court for the Southern District of California will require attorneys and others who have obtained permission of the court in civil and criminal cases to file documents with the court electronically, over the Internet, through its Case Management/Electronic Case Filing (CM/ECF) system.  The court expects all attorneys practicing in this District to participate in electronic filing to the extent practicable.

Electronic transmission of a document to the CM/ECF system, together with the transmission of a Notice of Electronic Filing from the court, constitutes filing of the document for purposes of Rule 5(d) of the Federal Rules of Civil Procedure and Rule 49(d) of the Federal Rules of Criminal Procedure, and constitutes entry of the document on the docket kept by the Clerk of Court under Rules 58 and 79 of the Federal Rules of Civil Procedure.  The following court policies govern electronic filing in this district unless, due to extraordinary circumstances, in a particular case, a judicial officer determines that these policies should be modified in the interest of justice.

### b.   Scope of Electronic Filing

Except as prescribed by local rule, order, or other procedure, the court has designated all cases to be assigned to the Electronic Filing System.  Unless otherwise expressly provided in these rules or in exceptional circumstances preventing a registered user from filing electronically, all petitions, motions, memoranda of law, or other pleadings and documents required to be filed with the court by a registered user in connection with a case assigned to the Electronic Filing System must be electronically filed.

Case initiating documents in civil cases, including but not limited to the civil Complaint and Notice of Removal, must be filed electronically. All sealed case initiating documents in civil cases must be filed in paper format. All case initiating documents in criminal cases, including the criminal Complaint, Information, Indictment and Superseding Information or Indictment, must be filed in paper format at the Clerk's Office. All subsequent documents must be filed by registered users electronically except as provided in these rules or as ordered by the court.

## c. <u>The Official Record and Maintenance of Original Paper Documents</u>

The official court record will be the electronic file maintained on the court's servers. This includes information transmitted to the Court in electronic format, as well as documents filed in paper form, scanned, and made a part of the electronic record to the extent permitted by the court's policies. The official record will also include any documents or exhibits that may be impractical to scan. The electronic file maintained on the court's servers must contain a reference to any such documents filed with the court. For cases initiated prior to the implementation of the Electronic Filing System, the official court record will include both the pre-implementation paper file maintained by the Clerk, as well as the post-implementation electronic files maintained on the court's servers. The Clerk's Office will not maintain a paper court file in any case initiated on or after the effective date of these procedures except as otherwise provided in these procedures.

If an original pleading has some intrinsic value, the filing party must retain the original paper document for a period of five years from the date the document is signed, or for one year after the expiration of all time periods for appeal, whichever period is greater, and must provide the original paper document to the court upon request.

## d. <u>Definitions</u>

**CASE MANAGEMENT/ELECTRONIC CASE FILING SYSTEM**, referred to in these procedures as the system or CM/ECF, means the Internet-based system for filing documents and maintaining court case files in the United States District Court for the Southern District of California.

**DOCUMENT** means pleadings, motions, exhibits, declarations, affidavits, memoranda, papers, orders, notices, and any other filing by or with the court.

**ELECTRONIC FILING** means uploading a document directly from the registered user's computer in "Portable Document Format" (.pdf), using the CM/ECF system to file that document in the court's case file. Individual .pdf documents must not exceed ten (10) megabytes (MB) in size. Pacific Time applies to all filings. Sending a document or pleading to the court via e-mail other than as described below does not constitute "electronic filing."

**NOTICE OF ELECTRONIC FILING**, referred to in these procedures as NEF, is a notice automatically generated by the CM/ECF system at the time a document is filed with the court. The notice sets forth the time of filing, the name of the attorney and/or party filing the document, the type of document, the text of the docket entry, the name of the party and/or attorney receiving the notice, and an electronic link (hyperlink) to the filed document which allows recipients to retrieve the document automatically.

**.pdf** refers to Portable Document Format, a proprietary file format developed by Adobe Systems, Inc. A document file created with a word processor, or a paper document which has been scanned, must be converted to Portable Document Format to be electronically filed with the court. Converted files contain the extension ".pdf". Documents which exist only in paper form may be scanned into .pdf for electronic filing. The Court recommends scanner settings at 400 pixels per inch (ppi). Electronic documents must be converted to .pdf directly from a word processing program (e.g., Microsoft Word® or Corel WordPerfect®).

**REGISTERED USER** is an individual who has been issued a login and password by the court to electronically file documents.

**PACER** (Public Access to Court Electronic Records) is an automated system that allows a subscriber to view, print and download court case file information over the Internet for a fee.

e.   **System Availability**

The CM/ECF system is designed to provide service 24 hours a day. The parties, however, are encouraged to file documents in advance of filing deadlines and during normal business hours.  The Clerk's Office has established a Help Desk (866-233-7983) to respond to questions regarding CM/ECF and the registration process. The Help Desk will be staffed business days from 8:30 a.m. to 4:30 p.m. Information can also be obtained on the court web site at www.casd.uscourts.gov.

f.   **Registration and Attorney Responsibilities**

Registration in the CM/ECF system for the purpose of electronic service of pleadings and other papers is mandatory for attorneys.

All attorneys in good standing must register for the CM/ECF system by completing the on-line registration form on the court web site at www.casd.uscourts.gov.

Registration constitutes consent to electronic service of documents by e-mail, as provided by the Federal Rules of Civil Procedure. An attorney may register up to two (2) additional e-mail addresses.

Upon confirmation of the e-mail address, the attorney's login and password will be sent by e-mail.  An attorney whose e-mail address, mailing address, telephone or fax number has changed must update the information through the CM/ECF utility menu and file a timely notification of the changes.  Attorneys employed by federal, state, and local government agencies are responsible for updating their attorney information upon their appointment and separation from their respective agency.

Electronic filing through CM/ECF is required for all attorneys beginning November 1, 2006, except as otherwise provided herein.

A filing party must maintain an electronic mailbox of sufficient capacity, with the appropriate e-mail permissions, to receive electronic notice of case-related transmissions.

If an attorney fails to file electronically and does so without leave of court, he or she must also file a "Notice of Non-Compliance with Mandatory Electronic Filing" setting forth the reason(s) for filing in non-electronic form.

After leave to appear pro hac vice has been granted, attorneys will have five (5) days to register for electronic filing.

An attorney may apply to the court for permission to file documents in paper form. Effective November 1, 2006, attorneys must show good cause to file and serve using non-electronic filing. Permission for non-electronic filing may be withdrawn at any time by the court and the attorney may be required to file documents using the CM/ECF system.

## g.  Logins and Passwords

Each attorney who completes registration will be issued one login and password. Documents filed under an attorney's login and password will constitute that attorney's signature for purposes of the Local Rules and Federal Rules of Civil and Criminal Procedure, including Rule 11 of the Federal Rules of Civil Procedure. Therefore, only one password will be issued and the attorney should not permit the password to be used by anyone other than an authorized agent. The attorney is responsible for all documents filed with his or her password.

If a registered user believes the security of an existing password has been compromised, the user must immediately notify the Clerk's Office and change the password through the CM/ECF system utility menu.

## h.  Privacy

Unless otherwise ordered by the court, parties must refrain from including, or must partially redact where inclusion is necessary, the following personal identifiers from all pleadings and documents filed with the court, including exhibits thereto:

1.  Social Security numbers. If an individual's Social Security number must be included in a pleading or document, only the last four (4) digits of that number should be used.

2.      Names of minor children.  If the involvement of a minor child must be
        mentioned, only the initials of that child should be used.

3.      Dates of birth.  If an individual's date of birth must be included in a
        pleading or document, only the year should be used.

4.      Financial account numbers.  If financial account numbers are relevant,
        only the last four digits of these numbers should be used.

5.      Home address.  In criminal cases, if a home address must be included
        only the city and state should be listed.

The responsibility for redacting personal identifiers rests solely with the
parties.  The Clerk's Office will not review each document for compliance with this
rule.  A party filing a redacted document must retain the complete unredacted
document for the duration of the case, including any period of appeal, unless
instructed by the Court to file the complete unredacted document under seal.

Pursuant to General Order 514-C, Social Security cases will be excluded from
electronic public access except for access by judiciary employees, the United States
Attorney or its representatives and the litigants in those cases.

Without a court order, the court will not provide public electronic access to
the following documents:

a.      Sealed documents.

b.      Unexecuted warrants of any kind.

c.      Pretrial bail reports and bond supporting documents.  Only the
        conditions of release will be available to the public electronically.

d.      Pre-Sentence reports and all sentencing materials including the
        statement of reasons related to the judgment of conviction.
        Only the judgment of conviction will be available to the public
        electronically.

e.      Juvenile records.

Case 3:16-cv-02186-WQH-MDD   Document 92-1   Filed 12/29/17   PageID.3889   Page 2 of 41

    f.     Magistrate information sheets and financial affidavits submitted by an accused.

    g.    Pleadings and reports related to the competency or mental health of a defendant.

    h.    All abstracts of judgment so captioned in the document.

    I.     Applications for a writ of garnishment, a writ of garnishment, and a Clerk's notice of garnishment that are so captioned in the document.

    j.     Applications for a writ of execution, a writ of execution, and a Clerk's notice of execution that are so captioned in the document.

    k.    Civil settlement documents that contain personal identifiers listed above.  It is the attorney's obligation to obtain an order sealing such documents.

## i.    <u>Technical Specifications</u>

Current technical specifications for CM/ECF can be found at the court's official web site,  www.casd.uscourts.gov.  Specifications may change periodically.  Registered users may refer to the web site for the most current requirements.

# Section 2: Electronic Filing and Service of Documents

a.   <u>**Filing**</u>

Electronically filed documents must meet the requirements of Fed. R. Civ. P. 10 (Form of Pleadings), and Local Civil Rule 5.1, as if they had been submitted on paper. Documents filed electronically are also subject to any page limitations set forth by Court order or by Local Civil Rule 7.1, Local Civil Rule 8.2, and Local Criminal Rule 47.1.

Unless otherwise expressly provided in these rules or in exceptional circumstances preventing a registered user from filing electronically, all  applications, motions, memoranda of law, or other pleadings and documents required to be filed with the Court by a registered user in connection with a case assigned to the Electronic Filing System must be electronically filed.

Unless otherwise authorized by the court, E-mailing a document to the Clerk's Office or to the assigned judge does not constitute "filing" of the document.

The court may, upon the motion of a party or upon its own motion, strike any inappropriately filed document.

b.   <u>**Pro Se Litigants**</u>

Unless otherwise authorized by the court, all documents submitted for filing to the Clerk's Office by parties appearing without an attorney must be in legible, paper form.  The Clerk's Office will scan and electronically file the document.

A pro se party seeking leave to electronically file documents must file a motion and demonstrate the means to do so properly by stating their equipment and software capabilities in addition to agreeing to follow all rules and policies in the CM/ECF Administrative Policies and Procedures Manual.  If granted leave to electronically file, the pro se party must register as a user with the Clerk's Office and as a subscriber to PACER within five (5) days.

A pro se party must seek leave to electronically file documents in each case filed.  If an attorney enters an appearance on behalf of a pro se party, the attorney

must advise the Clerk's Office to terminate the login and password for the pro se party.

c.   **Case Initiating Documents**

Case initiating documents in civil cases, including but not limited to the civil Complaint and Notice of Removal, must be filed electronically.  All sealed case initiating documents in civil cases must be filed in paper format.  All case initiating documents in criminal cases, including but not limited to the criminal Complaint, Information, Indictment and Superseding Information or Indictment, must be filed in paper format at the Clerk's Office.

d.   **Service**

1.   **Summons**

The Clerk's Office will issue each summons, and the service of a summons must be effected pursuant to Rule 4 of the Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure.

After a summons has been served, or a waiver of service via summons has been received, the serving registered user must promptly scan the return of service or waiver and electronically file it.  Non-registered filers may file the return of service or waiver with the Clerk's Office.

2.   **Service of Documents**

Whenever a document is electronically filed in accordance with these procedures, the CM/ECF system will generate a "Notice of Electronic Filing" (NEF) to the filing party, the assigned judge and any registered user in the case.  The NEF will constitute service of the document for purposes of the Federal Rules of Civil, Criminal and Appellate Procedure.  Registration as a CM/ECF user constitutes consent to electronic service through the court's transmission facilities.

Each registered user of the CM/ECF system is responsible for assuring that the user's e-mail account is monitored regularly, and that e-mail notices are opened in a timely manner.

A certificate of service is required when a party electronically files a document.  The certificate must state the manner in which service or notice was accomplished on each party.  If the certificate of service is signed by someone other than a registered user, the filing party must scan and electronically file the original signed document as set forth in Section 2.f.2 below.

Any document that is not filed electronically must be served as a paper copy.

A party who is not a registered participant of CM/ECF is entitled to service of a paper copy of any electronically filed document.  The filing party must serve the non-registered party with the document according to the Federal Rules of Civil Procedure.

A non-registered filing party who files document(s) with the Clerk's Office for scanning and entry to CM/ECF must serve paper copies on all non-registered parties to the case.  There will be some delay in the scanning, electronic filing and subsequent electronic noticing to registered users.  If time is an issue, non-registered filers must provide a paper copy of the document(s) to all parties.

e.    **Courtesy Copies for Judicial Officers**

Unless otherwise ordered by the court, parties must deliver to the Clerk's Office or mail directly to the judge's chambers, within 24 hours after filing, any criminal or civil case filing which exceeds 20 pages in length including attachments and exhibits.  In addition, where a party makes multiple filings in a case on the same day, and those filings cumulatively exceed 20 pages, a courtesy copy must be provided to the assigned judicial officer.  If the nature of the filing is such that the need for a judge's immediate attention is anticipated or desired, a courtesy copy must be delivered on the same day as the filing.  A copy of the Notice of Electronic Filing must precede the first page of the courtesy copy. Courtesy copies are to be addressed to the attention of the assigned judicial officer.

f.   **Signatures**

1.   **Registered Users**

The registered user log-in and password required to submit documents to the CM/ECF system will serve as that registered user's signature for purposes of Rule 11 of the Federal Rules of Civil Procedure and for all other purposes under the Federal Rules of Civil, Criminal and Appellate Procedure and the Local Rules of this court. The name of the CM/ECF registered user under whose log-in and password the document is submitted must be preceded by a "s/" and typed in the space where the signature would otherwise appear. The correct format for an attorney signature is as follows:

s/Adam Attorney_____
Attorney for (Plaintiff/Defendant)
E-mail: adam_attorney@lawfirm.com

2.   **Non-Registered Signatories**

If the original document requires the signature of a non-registered signatory, the filing party must scan and electronically file the original document. The electronically filed document maintained on the court's servers will constitute the official version of that record. The filing party must retain the original document for a period of five years from the date the document is signed, or for one year after the expiration of all time periods for appeal, whichever period is greater, and must provide the original paper document to the Court upon request.

3.   **Criminal Defendants**

A document required to be filed electronically which contains the signature of a defendant in a criminal case must be electronically filed as a scanned document in .pdf. The filing party is required to verify the legibility of the scanned document before electronically filing it with the court. The filing party must retain the original paper document for a period of five years from the date the document is signed, or for one year after the expiration of all time periods for appeal, whichever period is greater, and must provide the original paper document to the Court upon request.

4.    **Stipulations and Other Documents Requiring Multiple Signatures**

All stipulations must be filed as joint motions.  The filer of a joint motion need not obtain a hearing date prior to filing the joint motion.  At the time a joint motion is filed, the filer must e-mail a proposed order to the e-mail address of the assigned judicial officer pursuant to the procedures set forth in section 2.h below.

The filer of any joint motion or other document requiring more than one signature must certify that the content of the document is acceptable to all persons required to sign the document by obtaining either physical signatures or authorization for the electronic signatures of all parties on the document.  Physical, facsimile or electronic signatures are permitted.  The filer must electronically file the document indicating the signatories as "s/Jane Doe," "s/John Smith," etc., for each electronic signature.

Except as otherwise ordered, parties will have one business day to file an Objection to Electronic Filing if they object to contents of the joint motion or document that contains their signature.  The assigned judicial officer will prepare an order, or enter a text order on the docket, following the filing of a joint motion.

g.    **Motions, Applications, or Other Requests for Ruling by the Court**

1.    Pursuant to Local Civil Rule 7.1.b and Local Civil Rule 7.1.e, all hearing dates for any motion, application, or other requests for ruling by the Court must be obtained from the law clerk of the judge to whom the case is assigned before any motion, application, or other requests for ruling by the Court are filed electronically.

2.    Any supporting memorandum of points and authorities, declarations, and exhibits associated with motions, applications, or other requests for ruling by the Court, must be filed as attachments to the motion in the CM/ECF system.

3. Civil and criminal motions, and responses thereto, must be filed according to the deadlines set forth in Local Civil Rule 7.1 and Local Criminal Rule 47.1.

4. A party wishing to file a motion or response on shortened time must file a motion for an order shortening time as required by the Local Rules. Counsel must e-mail a proposed order to the assigned judicial officer at the address indicated in section 2.h below.

5. The Court may, upon its own motion, strike any inappropriately filed document.

## h. <u>Proposed Orders and Orders</u>

Registered users SHOULD NOT FILE OR SUBMIT proposed orders within the electronic filing system. At the time of filing any joint motion, motion for continuance or extension of time, motion for an order shortening time, or similar non-dispositive procedural motion, the filer must also e-mail a separate proposed order to the assigned judicial officer at the e-mail address provided below, with a copy of the e-mail and proposed order also being sent to opposing counsel.

The proposed order must be in editable word processing format (i.e. WordPerfect or Microsoft Word), and not in .pdf format. The proposed order should not contain the name and law firm information of the filing party, and should not contain the word "proposed" in the caption.

The e-mail subject line should include the case number, followed by a short description of the attachment (i.e., 10cv1234 – Order Granting Motion for Continuance). **These e-mail addresses are not to be utilized to communicate with the Court unless otherwise permitted or when communications are solicited by the Court.** Opposing counsel will have one business day to e-mail chambers any objections to the proposed order.

Case 3:16-cv-02186-WQH-MDD   Document 127-1   Filed 12/23/22   PageID.3390   Page 28 of 41

### U.S. District Judges

| | |
|---|---|
| efile_moskowitz@casd.uscourts.gov | efile_bencivengo@casd.uscourts.gov |
| efile_burns@casd.uscourts.gov | efile_curiel@casd.uscourts.gov |
| efile_sabraw@casd.uscourts.gov | efile_bashant@casd.uscourts.gov |
| efile_hayes@casd.uscourts.gov | efile_enright@casd.uscourts.gov |
| efile_houston@casd.uscourts.gov | efile_huff@casd.uscourts.gov |
| efile_benitez@casd.uscourts.gov | efile_miller@casd.uscourts.gov |
| efile_sammartino@casd.uscourts.gov | efile_whelan@casd.uscourts.gov |
| efile_anello@casd.uscourts.gov | efile_lorenz@casd.uscourts.gov |
| efile_battaglia@casd.uscourts.gov | |

### U.S. Magistrate Judges

| | |
|---|---|
| efile_adler@casd.uscourts.gov | efile_dembin@casd.uscourts.gov |
| efile_stormes@casd.uscourts.gov | efile_crawford@casd.uscourts.gov |
| efile_major@casd.uscourts.gov | efile_bartick@casd.uscourts.gov |
| efile_lewis@casd.uscourts.gov | efile_burkhardt@casd.uscourts.gov |
| efile_gallo@casd.uscourts.gov | efile_schopler@casd.uscourts.gov |
| efile_skomal@casd.uscourts.gov | efile_brooks@casd.uscourts.gov |

i. ***Ex Parte* Documents**

Ordinary Ex Parte motions, for which notice is to be provided to all parties, should be filed electronically.  Ex Parte documents for which no notice is to be provided to opposing parties should be filed in paper format under seal.  Ex Parte documents filed in the system will be served on all parties.

j. **Sealed and Juvenile Documents**

All sealed documents in criminal cases and cases involving juveniles must be filed and served in paper format.  Sealed documents in civil cases are to be filed electronically in CM/ECF and served in paper format.

Case 3:16-cv-02186-WQH-MDD   Document 127-1   Filed 09/23/22   PageID.3591   Page 195 of 41

Any document submitted for filing under seal in civil cases must be accompanied by a motion authorizing such filing. In civil cases the motion to seal will be filed as a public document using the appropriate CM/ECF event located under the "Sealed Documents" category. The proposed document to be filed under seal must be lodged electronically using the "Sealed Lodged Proposed Document" event located under the "Sealed Documents" category.

If the motion to seal is granted, the judge will issue an order authorizing the electronic filing by the Clerk's Office of the lodged proposed document under seal. If the motion to seal is denied, the document will remain lodged under seal without further consideration absent contrary direction from the Court.

Electronic filing is not permitted in sealed cases. Documents intended for filing in sealed cases must be submitted in <u>paper format</u>. Ex Parte documents for which no notice is to be provided to opposing parties should be filed in <u>paper format</u> under seal.

1. Procedures for E-filing Sealed Documents in Civil Cases

   a. To e-file any sealed document in a civil case, including motions, responses, replies, declarations, etc., a filer must first e-file a motion to seal using the "Motion to File Document(s) Under Seal" event located in the civil events menu under "Sealed Documents." The motion will be a public entry on the docket and the document will be available to the public. All parties in the case will receive notice of the electronic filing. The proposed sealed documents should not be attached to this public filing.

   b. After filing the Motion to File Document(s) Under Seal, the filershall immediately submit the proposed sealed documents in CM/ECF using the "Sealed Lodged Proposed Document" event located under the "Sealed Documents" category. The proposed document must include the notation "UNDER SEAL" in the caption. The proposed sealed documents will be unavailable for viewing by any attorney or member of the public. However, the docket text associated with the entry will be available for viewing by attorneys and the public. The docket entry will not contain

specific information identifying the nature of the proposed sealed document. All parties in the case will receive notice of the electronic filing, however, the document itself will be unavailable. Counsel must serve copies on opposing counsel in a conventional manner.

c.   Counsel must e-mail a separate proposed order in word processing format to the assigned judicial officer at the e-mail address provided above in Section 2.h. If the order is also to be filed under seal, it must so state.

d.   If counsel believes the motion for leave to file documents under seal itself should be filed under seal, counsel shall follow the same process to obtain leave to file that motion under seal.

k.   **Exhibits**

Exhibits must be submitted electronically in CM/ECF as attachments. If the entire exhibit exceeds ten (10) megabytes, it must be submitted in multiple segments, not to exceed ten (10) megabytes each.

Pursuant to Local Civil Rule 5.1.e, except where compliance is impracticable, exhibits must be paged in consecutive numerical order. Each document containing exhibits must have, as a cover page to the exhibits, a table of contents indicating the page number of each of the succeeding exhibits.

The filing party is required to verify the legibility of the scanned exhibits prior to electronically filing them with the court. Parties should scan documents in black and white, unless color is a critical feature of the information.

Original exhibits must be retained by the submitting party for the duration of the case, including any period of appeal.

A party may seek leave of the court to allow the non-electronic filing of exhibits when they are not convertible to electronic form (e.g. videotapes, maps, etc.). If leave is granted, the filing party must prepare a cover page in pleading format to be submitted with the exhibits. The cover page must contain a table of contents indicating the page number of each of the succeeding exhibits. The

caption will state what document, if any, the exhibits are supporting. The actual exhibits must be tabbed and bound if appropriate.

Evidentiary and trial exhibits must be submitted directly to the appropriate courtroom deputy clerk and will not be filed with the court.

l.  **Hyperlinks**

In order to preserve the integrity of the court record, attorneys wishing to insert hyperlinks in court filings should continue to use the traditional citation method for the cited authority, in addition to the hyperlink. The Judiciary's policy on hyperlinks is that a hyperlink contained in a filing is no more than a convenient mechanism for accessing material cited in the document. A hyperlink reference is extraneous to any filed document and is not part of the court's record.

m.  **Technical Failures**

A registered user whose filing is made untimely as the result of a technical failure may seek appropriate relief from the court.

n.  **Correcting Filing or Docket Errors**

1.  Once a document is submitted and becomes part of the case docket, corrections to the docket may be made only by the Clerk's Office. The CM/ECF system will not permit the filing party to make changes to the document or docket entry once the transaction has been accepted.

2.  The filing party should not attempt to re-file an incorrectly filed document.

3.  The filing party must contact the Clerk's Office CM/ECF Help Desk as soon as an error has been discovered and provide the case number and document number. If appropriate, the Clerk's Office will make a docket entry indicating the document was filed in error. The filing party will be advised if the document needs to be re-filed.

4.  If the Clerk's Office discovers filing or docketing errors, the filer will be advised of what further action, if any, is required to address the error.

However, if the error is minor, the Clerk's Office may correct the error, with or without notifying the parties.

5.      In the event it appears a document has been filed in the wrong case, the Clerk's Office will docket an entry indicating this possible error and notify the filing party.  If it is confirmed as an error, the party will be directed to re-file the document in the correct case.  The Clerk's Office will not delete any documents filed by a party unless ordered by the court.

o.      **Transcripts**

The Judicial Conference has adopted a policy regarding electronic access to court transcripts.  The following procedures apply as to transcripts:

Transcripts filed by contract court reporters or official transcribers will be submitted to the Clerk's Office in .pdf through e-mail to a designated e-mail address.  The e-mail address for contract court reporters and official transcribers is ecftranscripts@casd.uscourts.gov.

Transcripts will be electronically filed and available for viewing at the Clerk's Office public terminal, but may NOT be copied or reproduced by the Clerk's Office for a period of 90 days.  Registered users who have purchased the transcript during the 90 day period will be provided remote electronic access to the transcript in CM/ECF.  The court reporter or official transcriber will notify the Clerk's Office when a registered user in a case has purchased the transcript so that access to the transcript can be given to the purchaser through the court's CM/ECF system.

Within 7 calendar days of the filing of the official transcript in CM/ECF, each party wishing to redact a transcript must electronically file a "Notice of Intent to Request Redaction."  If no such notice is filed within the allotted time, the court will assume redaction of personal data identifiers from the transcript is not necessary.  If redaction is requested, within 21 calendar days from the e-filing of the transcript with the Clerk, or longer by order of the Court, the parties must submit to the court reporter or official transcriber a redaction request statement indicating by page and line where personal identifiers appear in the transcript and how they are to be redacted.  The responsibility for redacting personal identifiers rests solely with counsel and the parties.  Personal identifiers are Social Security numbers, financial

account numbers, names of minor children, dates of birth, and in criminal cases, home addresses.

p.  **Exceptions to Electronic Filing**

The following documents must be submitted in paper form:
1. Abstract of Judgment
2. Sealed Documents in Criminal Cases and Cases Involving Juveniles
3. Sealed Civil Complaint and Sealed Notice of Removal
4. Indictment, Information, and Waiver of Indictment
5. Criminal Complaint
6. Financial Affidavit in Support of Request for Appointment of Counsel
7. Bond Documents
8. Affidavits Related to Criminal Complaints
9. Application for and Affidavit Supporting Warrants Issued
10. Writs Issued
11. Application and Order for Pen Registers, Trap and Trace
12. Application for and Affidavit Supporting Wiretap Orders and 15-day Reports
13. Application for and Affidavit Supporting Trackers
14. Application and Order under 18 U.S.C. § 2703(d)
15. Reports of Medical or Mental Evaluations of Criminal Case Defendants
16. Plea Agreement
17. Letter to Sentencing Judge Recommending Downward Departure Under USSG § 5K1.1
18. Stipulation of Fact and Joint Motion for Release of Material Witnesses (in Alien Smuggling Cases)
19. Grand Jury Matters, including:
    a. Minute Sheets
    b. Grand Jury Returns
    c. Voting Slips
    d. Orders Appointing Alternate Jurors
    e. Motions and Orders to Quash Subpoenas
    f. Motions and Orders to Enforce Subpoenas
    g. Motions and Orders for Immunity
    h. Motions and Orders for Appointment of Counsel

Case 3:16-cv-02186-WQH-MDD   Document 92-1   Filed 12/29/17   PageID.3596   Page 34 of 41

       i.     Fed. R. Crim. P. Rule 6(e) Notices and Applications for Criminal Contempt Information

       j.     Grand Jury Transcripts

20.   Civil Miscellaneous Cases Filed by Unregistered Attorneys

21.   Any other document or filing that the court orders not to be electronically filed, imaged or maintained in the CM/ECF system.

Case 3:16-cv-02186-WQH-MDD   Document 127-1   Filed 09/23/22   PageID.4417   Page 201 of
1196
Case 3:16-cv-02186-WQH-MDD   Document 92-1   Filed 12/29/17   PageID.3597   Page 33 of 41

# Exhibit

# C

3:16-cv-02186-WQH-MDD McMillan et al v. Chaker et al
William Q. Hayes, presiding
Mitchell D. Dembin, referral
Date filed: 08/29/2016
Date terminated: 10/10/2017
Date of last filing: 12/12/2017

# Attorneys

Ryan G. Baker
Baker Marquart, LLP
2029 Century Park East
Suite 1600
Los Angeles, CA 90067                    Vania Chaker
(424) 652-7800         representing     TERMINATED: 08/28/2017
(424) 652-7850 (fax)                     (Defendant)
rbaker@bakermarquart.com
 Assigned: 03/03/2017
 LEAD ATTORNEY
 ATTORNEY TO BE NOTICED


Timothy J. Grant
Fredrickson, Mazeika & Grant, LLP
5720 Oberlin Drive
San Diego, CA 92121
858-642-2002                             Darr en D. Chaker
858-642-2001 (fax)     representing     TERMINATED: 08/28/2017
tgrant@fmglegal.com                      (Defendant)
 Assigned: 12/12/2016
 TERMINATED: 02/08/2017
 LEAD ATTORNEY
 ATTORNEY TO BE NOTICED


Peter Stephen Gr egorovic
Fredrickson Mazeika & Grant LLP
5720 Oberlin Drive
San Diego, CA 92121
(858)642-2002                            Darr en D. Chaker
(858)642-2001 (fax)    representing     TERMINATED: 08/28/2017
Pgregorovic@fmglegal.com                 (Defendant)
 Assigned: 11/14/2016
 TERMINATED: 02/01/2017
 LEAD ATTORNEY
 ATTORNEY TO BE NOTICED


Timothy W Kenna          representing     Nicole Chaker
Freeman Mathis & Gary, LLP               1640 CAmino Del Rio N Ste 180
550 South Hope Street                    Post Office Box 882134
22nd Floor                               San Diego, CA 92168
Los Angeles, CA 90071

(213)615-7116
(213)615-7100 (fax)
t.kenna@gilbertkelly.com
  Assigned: 01/26/2017
  ATTORNEY TO BE NOTICED

TERMINATED: 08/28/2017
(Defendant)

Eliot Franklin Krieger
Sullivan Krieger Truong Spagnola & Klausner, LLP
444 W. Ocean Blvd., Suite 1700
Long Beach, CA 90802
562-597-7070
562-597-7772 (fax)
ekrieger@sullivankrieger.com
  Assigned: 04/21/2017
  ATTORNEY TO BE NOTICED

representing

Darren D. Chaker
TERMINATED: 08/28/2017
(Defendant)

Scott A McMillan
The McMillan Law Firm
4670 Nebo Drive
Suite 200
La Mesa, CA 91941
(619)464-1500
(206)600-5095 (fax)
scott4670@gmail.com
  Assigned: 08/29/2016
  LEAD ATTORNEY
  ATTORNEY TO BE NOTICED

representing

The McMillan Law Firm, APC
(Plaintiff)

Scott A. McMillan
4670 Nebo Drive
Suite 200
La Mesa, CA 91941-5230
(619) 464-1500
(Plaintiff)

Rebecca Jo Smith
Freeman Mathis & Gary, LLP
550 S. Hope St.
22nd Floor
Los Angeles, CA 90071
213-615-7008
216-615-7100 (fax)
rsmith@fmglaw.com
  Assigned: 12/16/2016
  LEAD ATTORNEY
  ATTORNEY TO BE NOTICED

representing

Nicole Chaker
1640 CAmino Del Rio N Ste 180
Post Office Box 882134
San Diego, CA 92168
TERMINATED: 08/28/2017
(Defendant)

Nicole Chaker
TERMINATED: 12/05/2016
(Defendant)

Charles Thomas Spagnola
Sullivan Krieger Truong Spagnola & Klausner, LLP
444 W. Ocean Blvd., Suite 1700
Long Beach, CA 90802
562-597-7070
562-597-7772 (fax)                    representing        Darr en D. Chaker
cspagnola@sullivankrieger.com                             TERMINATED: 08/28/2017
 Assigned: 02/08/2017                                     (Defendant)
 LEAD ATTORNEY
 ATTORNEY TO BE NOTICED


Adam M T ambur elli
Sullivan, Krieger, Truong, Spagnola & Klausner, LLP
444 West Ocean Boulevard
Suite 1700                                                Darr en D. Chaker
Long Beach, CA 90802                   representing        TERMINATED: 08/28/2017
562-597-7070                                              (Defendant)
atamburelli@sullivankrieger.com
 Assigned: 02/17/2017
 ATTORNEY TO BE NOTICED

---

| PACER Service Center |
|:---:|
| Transaction Receipt |
| 12/29/2017 13:01:19 |

# Exhibit

# D



Lauren Hanley-Brady <lbrady@tmlf.us>

---

## Fwd: 3:16cv02186 Judgment Granting the Motions to Dismiss
2 messages

---

Scott A McMillan  <scott@mcmillanlaw.us>                                    Fri, Oct 6, 2017 at 7:36 AM
To: Lauren Hanley-Brady <lbrady@tmlf.us>

> ---------- Forwarded message ----------
> From: Scott A McMillan  <scott@mcmillanlaw.us>
> Date: Fri, Oct 6, 2017 at 7:36 AM
> Subject: Re: 3:16cv02186 Judgment Granting the Motions to Dismiss
> To: Celia Flippin <cflippin@sktlawyers.com>
> Cc: "efile_hayes@casd.uscourts.gov" <efile_hayes@casd.uscourts.gov>, Christopher Wong <cwong@sktlawyers.com>,
> "scott4670@gmail.com" <scott4670@gmail.com>
>
>
> Dear Judge Hayes,
>
> The proposed judgment does not address the nature of the dismissal.  As written, the judgment is misleading and will be
> used to suggest that the matter was terminated based upon the merits.
>
> Unless the court has a form at hand which reflects the court declining to exercise supplemental jurisdiction, we will be
> proposing another judgment.
>
> Since the order of dismissal, on September 27, 2017, we filed a state proceeding in the San Diego Superior Court on the
> extortion claim entitled McMillan Law Firm, APC, et al., v. Chaker, et al., San Diego Superior Court case Number 37-2017-
> 00036344-CU-NP-CTL.
>
> Thank you,
>
> Scott McMillan
>
>
> Scott A. McMillan
> The McMillan Law Firm, APC
> 4670 Nebo Drive, Suite 200
> La Mesa, CA 91941-5230
> Direct (619) 393-1751 // Main (619)464-1500 x 14 // Cel (619)274-0884 // FAX (619) 828-7399
> e-mail: scott@mcmillanlaw.us
> www.mcmillanlaw.us
>
>
> On Thu, Oct 5, 2017 at 3:25 PM, Celia Flippin <cflippin@sktlawyers.com> wrote:
>
>> Dear Judge Hayes:
>>
>>
>> Attached please find a proposed judgment in the matter entitled Scott A. McMillan, et al. v.
>> Darren D. Chaker, et al., USDC Case No. 3:16cv02186.
>>
>>
>> Opposing counsel, Scott A McMillan, is being copied on this email.

Regards,

Celia Flippin

Legal Assistant

Sullivan Krieger Truong Spagnola & Klausner, LLP

444 W. Ocean Blvd., Ste. 1700

Long Beach, CA 90802

Ph. (562) 597-7070

Fax (562) 597-7772

---

Lauren Hanley-Brady   <lbrady@tmlf.us>                    Wed, Dec 13, 2017 at 2:26 PM
To: Matthew Hodroff <mhodroff@tmlf.us>

--------- Forwarded message ----------
From: Scott A McMillan   <scott@mcmillanlaw.us>
Date: Fri, Oct 6, 2017 at 7:36 AM
[Quoted text hidden]

**FREEMAN MATHIS & GARY, LLP**
TIMOTHY W. KENNA, A PROFESSIONAL CORPORATION / Bar No. 64280
t.kenna@gilbertkelly.com
ARTHUR J. MC KEON III / Bar No. 082540
ajm@gilbertkelly.com
REBECCA J. SMITH / Bar No. 150428
rjs@gilbertkelly.com
401 B Street, Suite 2210
San Diego, California 92101
(619) 687-3000; FAX: (213) 615-7100

**Mailing Address:**
550 South Hope Street, 22nd Floor
Los Angeles, California 90071-2627

Attorneys for Defendant
NICOLE CHAKER

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT A. MCMILLAN, an individual, THE MCMILLAN LAW FIRM, APC, a California professional corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>DARREN D. CHAKER an individual, and as trustee of PLATINUM HOLDINGS GROUP TRUST, dba COUNTER FORENSICS; NICOLE CHAKER, an individual, and as trustee of THE NICOLE CHAKER REVOCABLE LIVING TRUST, U/A dated August 18, 2010, VANIA CHAKER, an individual and as beneficiary of The Island Revocable Trust under Declaration of Trust dated June 2, 2015, MARCUS MACK as trustee of The Island Revocable Trust under Declaration of Trust dated June 2, 2015,<br><br>Defendants. | Case No. 3:16-CV-02186-WQH-MD<br><br>Judge: William Q. Hayes<br>Courtroom 14B<br><br>Magistrate Hon. Mitchell D. Dembin<br>Courtroom 11th Floor<br><br>**DEFENDANT NICOLE CHAKER'S NOTICE OF MOTION FOR EXTENSION OF TIME TO FILE CROSS-APPEAL (FRAP 4(a)(5))**<br><br>(Memorandum of Points and Authorities and Declaration of Rebecca J. Smith and [Proposed] Order, filed and served concurrently herewith)<br><br>Date: January 15, 2018<br>Dept: 14B<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |

NICOLE CHAKER'S NOTICE OF MOTION TO EXTEND TIME BY WHICH TO
FILE CROSS APPEAL

TO THE COURT, ALL INTERESTED PARTIES AND TO THEIR RESPECTIVE ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 15, 2018 in Courtroom 14B of the above entitled court, before THE HONORABLE William Q. Hayes, presiding, at 333 West Broadway, San Diego, CA 92102, defendant Nicole Chaker will and hereby does move this court for an order extending the time by which defendant Nicole Chaker has to file a Notice of Cross-Appeal pursuant to Rule 4(a)(5) of the Federal Rules of Appellate Procedure, up to and including fourteen (14) days after granting of the motion pursuant to FRAP 4(a)(5)(C) or any other date permitted by the court.

This motion is made pursuant to Federal Rules of Appellate Procedure ("FRAP") 4(a)(5) on the grounds that the failure to timely file the notice of appeal was based on excusable neglect and good cause and no prejudice will result to the other parties in this appeal by virtue of allowing a cross-appeal to now be filed. This motion is based on this notice, the Memorandum of Points and Authorities and Declaration of Rebecca J. Smith, filed and served concurrently herewith and such other oral and documentary evidence as may be presented at the hearing on this motion.

**NO ORAL ARGUMENT WILL BE MADE IN THIS CASE UNLESS SPECIFICALLY REQUESTED BY THE COURT.**

Dated: December 12, 2017     FREEMAN MATHIS & GARY, LLP

By: _Rebecca J. Smith_ _____
TIMOTHY W. KENNA
REBECCA J. SMITH
Attorneys for Defendant
NICOLE CHAKER

NICOLE CHAKER'S NOTICE OF MOTION TO EXTEND TIME BY WHICH TO FILE CROSS-APPEAL
Page | 2

# **CERTIFICATE OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 550 South Hope Street, 22nd Floor, Los Angeles, CA 90071-2627.

On December 12, 2017, I served the within document(s) described as:

DEFENDANT NICOLE CHAKER'S NOTICE OF FOR EXTENSION OF TIME TO FILE CROSS-APPEAL (FRAP 4(A)(5))

on the interested parties in this action as stated on the attached service list:

☒ **(BY ELECTRONIC SUBMISSION):** I served the above listed document(s) described via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service though the court's transmission facilities.

☒ **(BY U.S. MAIL)**: By placing a true copy of the foregoing document(s) in a sealed envelope addressed as set forth on the attached mailing list. I placed each such envelope for collection and mailing following ordinary business practices. I am readily familiar with this Firm's practice for collection and processing of correspondence for mailing. Under that practice, the correspondence would be deposited with the United States Postal Service on that same day, with postage thereon fully prepaid at San Diego, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on December 12, 2017, at Los Angeles, California.

I declare under penalty of perjury that the foregoing is true and correct.

ELIZABETH RUBIO  
(Type or print name)

_(Signature)_

Freeman Mathis & Gary, LLP  
Attorneys at Law

CERTIFICATE OF SERVICE

4583800.1 48811-00002 TWK

3:16-CV-02186-WQH-MD

# CERTIFICATE OF SERVICE

SCOTT A MCMILLAN
THE MCMILLAN LAW FIRM, APC
4670 NEBO DRIVE
SUITE 200
LA MESA, CA 91941-5230
Phone: (619)464-1500
Fax: (619)828-7399
Email: scott4670@gmail.com

Scott A. McMillan,
The McMillan Law Firm, APC
(Plaintiff)

TIMOTHY J. GRANT
FREDRICKSON, MAZEIKA & GRANT, LLP
5720 OBERLIN DRIVE
SAN DIEGO, CA 92121
Phone: 858-642-2002
Fax: 858-642-2001
Email: tgrant@fmglegal.com

Darren D. Chaker (Defendant)


RYAN G. BAKER
BAKER MARQUART LLP
2029 CENTURY PARK EAST
SUITE 1600
LOS ANGELES, CA 90067
Phone: 424-652-7800
Fax: 424-652-7850
Email: rbaker@bakermarquart.com

Vania Chaker (Defendant)

Freeman Mathis
& Gary, LLP
Attorneys at Law

1  Ryan G. Baker (Bar No. 214036)
     rbaker@bakermarquart.com
2  Brian T. Grace (Bar No. 307826)
     bgrace@bakermarquart.com
3  BAKER MARQUART LLP
   2029 Century Park East, Sixteenth Floor
4  Los Angeles, California 90067
   Telephone:  (424) 652-7800
5  Facsimile:  (424) 652-7850

6  *Attorneys for Specially Appearing*
7  *Defendant Vania Chaker*

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10

11  SCOTT A. MCMILLAN, an individual,   CASE NO. 3:16-CV-02186-WQH-
12  THE MCMILLAN LAW FIRM, APC,   MDD
    a California professional corporation,
                                        **CERTIFICATE OF SERVICE**
13
             Plaintiffs,
14
                                        The Hon. William Q. Hayes
15          vs.
                                        Date: April 10, 2017
16  DARREN D. CHAKER, an individual,    Courtroom: 14B
    and as trustee of PLATINUM          Complaint Filed: August 29, 2016
17  HOLDINGS GROUP TRUST, dba
    COUNTER FORENSICS; NICOLE
18  CHAKER, an individual, and as trustee
    of THE NICOLE CHAKER TRUST,
19  U/A dated August 18, 2010, VANIA
    CHAKER, and individual and as
20  beneficiary of The Island Revocable
    Trust under Declaration of Trust dated
21  June 2, 2015, MARCUS MACK as
    trustee of The Island Revocable Trust
22  under Declaration of Trust dated June 2,
    2015,
23
             Defendants.
24

25

26

27

28

CERTIFICATE OF SERVICE

CERTIFICATE OF SERVICE

I am admitted to the United States District Court for the Southern District of California. I am employed in Los Angeles County, California. My business address is 2029 Century Park East, Sixteenth Floor, Los Angeles, CA 90067.

On April 3, 2017, I served the following documents:

- **SPECIALLY APPEARING DEFENDANT VANIA CHAKER'S REPLY IN SUPPORT OF HER MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT, OR IN THE ALTERNATIVE, TO QUASH DEFECTIVE SERVICE**

- **SUPPLEMENTAL DECLARATION OF VANIA CHAKER**

- **EVIDENTIARY OBJECTIONS TO DECLARATION OF TIMOTHY J. WING**

- **EVIDENTIARY OBJECTIONS TO DECLARATION OF JOSHUA VAN NOORD**

- **EVIDENTIARY OBJECTIONS TO DECLARATION OF SCOTT MCMILLAN**

- **RESPONSE TO PLAINTIFFS' EVIDETNIARY OBJECTIONS TO DECLARATION OF VANIA CHAKER**

- **REPLY IN SUPPORT OF REQUEST FOR JUDICIAL NOTICE**

By Electronic Submission: I served the above listed document(s) described via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service through the court's transmission facilities. ///

BAKER MARQUART LLP
2029 CENTURY PARK EAST, 16TH FLOOR
LOS ANGELES, CA 90067
Tel: (424) 652-7800 • Fax: (424) 652-7850

CERTIFICATE OF SERVICE

I certify that the foregoing is true and correct.

DATED: April 4, 2017                    BAKER MARQUART LLP

/s/ Ryan G. Baker
Ryan G. Baker
Brian T. Grace
*Attorneys for Specially Appearing*
*Defendant Vania Chaker*

CERTIFICATE OF SERVICE

Scott A. McMillan, SBN 212506
The McMillan Law Firm, APC
4670 Nebo Drive, Suite 200
La Mesa, California 91941-5230
(619) 464-1500
Email: scott@mcmillanlaw.us

Attorney for Plaintiffs, SCOTT A. MCMILLAN, an individual, and THE
MCMILLAN LAW FIRM, APC, a California Professional Corporation

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT A. MCMILLAN, an individual, THE MCMILLAN LAW FIRM, APC, a California Professional Corporation, <br><br> Plaintiffs, <br><br> v. <br><br> DARREN D. CHAKER an individual, and as trustee of PLATINUM HOLDINGS GROUP TRUST, dba COUNTER FORENSICS; NICOLE CHAKER, an individual, and as trustee of THE NICOLE CHAKER REVOCABLE LIVING TRUST, U/A dated August 18, 2010, VANIA CHAKER, an individual and as beneficiary of The Island Revocable Trust under Declaration of Trust dated June 2, 2015, MARCUS MACK as trustee of The Island Revocable Trust under Declaration of Trust dated June 2, 2015, <br><br> Defendants. | Case No. 3:16-CV-02186-WQH-MDD <br><br> Judge: Hon. William Q. Hayes <br> Courtroom: 14B <br><br> **DECLARATION OF SCOTT A. MCMILLAN IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT DARREN D. CHAKER'S MOTION TO SEAL.** <br><br> Hearing Date: August 3, 2020 <br><br> Complaint Filed: August 29, 2016 <br><br> [NO ORAL ARGUMENTS UNLESS ORDERED BY COURT] |

1    I, Scott McMillan, do declare as follows,

2    1.    I am an attorney, licensed to practice in the State of California. If

3  called before this Court, except as to those matters which I state on information

4  and belief, I could and would testify as follows from my own personal knowledge:

5    2.    I submit this declaration in support of Plaintiffs' Opposition to

6  Defendant Darren Chaker's ("Defendant") Motion to Seal Paragraphs 39, 40, 49 of

7  the Complaint (ECF No. 1) and Paragraphs 40, 41, and 50 of the First Amended

8  Complaint ("FAC") (ECF No. 25) (referred to collectively as "subject

9  paragraphs").

10   3.    Defendant has a long history of requesting sealing–often belatedly.

11 For example, in 2012, Defendant requested the Hon. Judge Willam Q. Hayes to

12 seal the case file from a 1996 case. *Chaker v. Davis*, Case No. 96-cv-0314; the

13 request was denied. A true and correct copy of the Order denying the request to

14 seal is attached as **Exhibit 1**.

15   4.    Plaintiffs did not incorporate the subject paragraphs for an improper

16 purpose – both are used to support Plaintiff's allegations in both the complaint and

17 the FAC, as is outlined in the accompanying memorandum of points and

18 authorities.

19   5.    Sealing documents creates an administrative burden to manage for the

20 attorneys and for the Court. In addition, Defendant, despite demanding whenever

21 he can that documents pertaining to him be sealed, challenged the authenticity of

22 Plaintiffs' sealed exhibits to the FAC with motions to strike and sanctions.

23 Defendant has had almost four years in which to look over the Complaint and over

24 two-and-a-half years to look over the FAC. Had the issues with the subject

25 paragraphs been timely raised contemporaneously with the filing of the FAC, or

26 when Defendant brought the motion to file under seal (ECF No. 78),the parties

27 could have met and conferred and/or Plaintiff's opposition could have included

28

---

1    the arguments now set forth before the court.

2         I declare within the meaning of 28 U.S.C. § 1746, under penalty of perjury,

3    that the foregoing is true and correct, and that this declaration was executed on

4    July 20, 2020, in the city of La Mesa, County of San Diego, State of California,

5    United States.

6

7

8

9                                              /s/ Scott A. McMillan
                                               Scott A. McMillan
10                                             Attorneys for Plaintiffs

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF SCOTT A. MCMILLAN IN SUPPORT OF
                    PLAINTIFFS' OPPOSITION TO MOTION TO SEAL                    3

# EXHIBIT

# 1

FILED

12 OCT 26 AM 11:43

CLERK, U.S. DIST. COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: MJ          DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

DARREN CHAKER,

　　　　　　　　　　　　Plaintiff,

　　vs.

OFFICER J. DAVIS,

　　　　　　　　　　　　Defendant.

CASE NO. 96cv0314

ORDER

HAYES, Judge:

　　On February 5, 1996, Plaintiff initiated this action by filing a Complaint in San Diego County Superior Court. On February 22, 1996, Defendant removed the action to this Court, alleging federal question jurisdiction. (ECF No. 1). On August 13, 1996, the Court dismissed the case for lack of prosecution by Plaintiff. (ECF No. 15).

　　On July 30, 2012, Plaintiff filed a motion to seal the entire record of this case, along with an ex parte application to file the motion under seal. Plaintiff contends that good cause exists to seal the motion and entire record in this case because the documents disclose and reference records that have been sealed by state court and local authorities. Plaintiff contends that he has a significant privacy interest in having the records sealed because "the file acts as a record of arrest that Plaintiff is allowed to deny."

## RULING OF THE COURT

　　"Historically, courts have recognized a 'general right to inspect and copy public records and documents, including judicial records and documents.'" *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) *quoting Nixon v. Warner Communs., Inc.*,

- 1 -

96cv0314
Exh
1 of 2

1  435 U.S. 589, 597 & n.7 (1978). "A party seeking to seal a judicial record then bears the

2  burden of overcoming this strong presumption by meeting the compelling reasons standard.

3  That is, the party must articulate compelling reasons supported by specific factual findings...

4  that outweigh the general history of access and the public policies favoring disclosure, such

5  as the public interest in understanding the judicial process." *Kamakana*, 447 F.3d at 1178-79

6  (citations and quotation marks omitted). The presumed right to access to court proceedings

7  and documents can be overcome "only by an overriding right or interest 'based on findings that

8  closure is essential to preserve higher values and is narrowly tailored to serve that interest.'"

9  *Oregonian Publishing Co. v. United States District Court*, 920 F.2d 1462, 1465 (9th Cir. 1990)

10 *quoting Press-Enterprise Co. v. Superior Court*, 446 U.S. 501, 510 (1985).

11        "Under the compelling reasons standard, a  district court must weigh relevant factors,

12 base its decision on a compelling reason, and articulate the factual basis for its ruling, without

13 relying on hypothesis or conjecture." *Pintos v. Pacific Creditors Ass'n*, 605 F.3d 665, 659 (9th

14 Cir. 2010)(quotations omitted). "'Relevant factors' include the 'public interest in

15 understanding the judicial process and whether disclosure of the material could result in

16 improper use of the material for scandalous or libelous purposes or infringement upon trade

17 secrets.'" *Id.* at 659 n.6.

18        Plaintiff initiated this lawsuit, failed to prosecute the case, and the case was closed.

19 Plaintiff delayed sixteen years before filing any request for the record to be sealed. The Court

20 finds that the strong presumption against sealing judicial proceedings outweighs Plaintiff's

21 privacy interests in sealing the entire record in this case. Accordingly, the motion to seal the

22 record and ex parte application to file the motion under seal are DENIED. The motion to seal

23 the record and ex parte application to file the motion under seal shall be filed in the public

24 record. The entire record in this case shall remain public.

25        IT IS SO ORDERED.

26

27 DATED: 10/19/12

28                                        WILLIAM Q. HAYES
                                         UNITED STATES DISTRICT COURT

- 2 -

96cv0314
Exh 1
2 of 2

# EXHIBIT W

# The Mcmillan Law Firm – La-Mesa-Attorney-Scott-McMillan

### 4 of 4  The Mcmillan Law Firm Reviews

San Diego, California  Nov 03, 2011  563 views  18 comments

The-McMillan-Law-Firm, Scott McMillan, 4670 Nebo Drive, La Mesa, CA 91941 operates his firm and claims to be a "leading" litigation attorney. But http://www.scott-mcmillan-law.blogspot.com shows Scott McMillan misrepesents to the public he is "leading" in any area other than losses. 50 LOSSES, one win, and this attorney represents to the public his firm is a "leading" firm in San Diego! (?) If The McMillan Law Firm is a "leading" firm and has lost every case on appeal, then who's the worst law firm?

I am tiered of attorneys alleging they have a high success rates and misrepresents to the public standing within the legal community to tempt clients to walk through his door. This might just be such the case with Scott-McMillan-La-Mesa

Scott McMillan also operates the McMillan-Academy-of-Law www.maol.info - but from my research on CalBar.org appears to not have a single graduate per the state bar who has passed the bar exam recently. Scott McMillan runs his 'law school' out of his office 50 feet from train tracks (not the ideal place to study nor prestigious school). Have not found a single graduate who has passed the bar exam. Scott McMillan also went to an unaccredited law school, which was located behind a car dealership at the time.

In sum, watch out who you hire before they represent you. Make sure the attorney has a winning, or decent, track record.

Comment

---

**More Review Details**

Product or service
Attorney

Exh W
1 of 10

Review category
Lawyers

Review rating
5 out of 5

## review #272611 by 👤McMillanLawFirm

| Share | 🐦 | 0 | f | 0 | Helpful? | No | 11 | Yes | 137 |
| | ✓ | 1 | ✓ | 1 | | ✓ | 11 | ✓ | 137 |

| | Had the same issue | Yes | 44 |
| | | ✓ | 44 |

**Former-Client**  Aug 23, 2015 #1023465  📍El Cajon, California
I agree. I found this blog post about Scott McMillan

58⬆ 0⬇    Reply

**The-McMillan-Law-Firm-La-Mesa**  Oct 28, 2014 #891895  📍La Mesa, California
Scott-McMillan, The-McMillan-Law-Firm, family friend and child molester, any of McMillan's friends or couple of happy clients want to stick up for him? Would you want to associate yourself with a child molester? See, http://scott-mcmillan-law.blogspot.com/2014/09/scott-mcmillan-molest-la-mesa.html

109⬆ 0⬇    Reply

**The-McMillan-Law-Firm**  Oct 28, 2014 #891891  📍La Mesa, California
Friends and a couple of happy clients can't argue with the below:
Scott McMillan, The McMillan Law Firm a liar, in polite terms (mischaracterizing), see http://scott-mcmillan-law.blogspot.com
Unethical Conduct by Scott McMillan After Suing Neighbor
Scott McMillan sues his neighbor and loses in the trial court and on appeal. The Court of Appeal found he, in short, lied in his legal papers by 'mischaracterizing' events in the trial court. Legal malpractice, poor performance, default notices, dismissed cases, and a graduate of an unaccredited law school located in a strip mall, oh, and Dean of his own law school McMillan Academy of Law. La Mesa Attorney Scott McMillan, http://www.scottmcmillan.us/ 4670 Nebo Dr

Court of Appeal, Fourth District, Division 1, California.
Scott A. McMILLAN et al., Plaintiffs and Appellants, v. SCME
MORTGAGE BROKERS, INC., Defendant and Respondent.
No. D052572. | (Super.Ct.No. GIE023637). | March 13, 2009. "The
McMillans first contend that the court erred in finding that SCME
prevailed on their cause of action for injunctive relief, arguing that
only a defendant in whose favor a dismissal of the entire action is
given qualifies as the prevailing party under section 1032,
subdivision (a)(4). This argument, however, mischaracterizes the
court's ruling. The trial court did not declare SCME to be the
prevailing party in the entire action, but merely noted that SCME did
prevail in the action to the extent that the...

**108↑ 0↓**    Reply

---

**Anonymous**   Aug 06, 2013 #694605
I hired Scott to represent me against a terrible person and he won
that case for me. In fact, he did such a great job that our case made
news on many websites. He kicked a@#$ for me and for that, I am
grateful. The case he won for me gave me many sleepless nights
until he took it over. There is no way I can thank him enough.

**2↑ 17↓**    Reply

---

**Perfect**   May 17, 2013 #652668   ♀San Diego, California
On the money. Guy is suck a donkey.

**132↑ 0↓**    Reply

---

**Anonymous** to Perfect   May 17, 2013 #652700   ♀San Diego, California
Scott is such a ***. He wastes judicial resources by filing
unsupported garbage and is the most unprofessional
attorney in San Diego. His record speaks for itself.

**49↑ 0↓**    Reply

---

**Richard** to Anonymous   Jun 30, 2013 #671877   ♀San Diego,
California
What part of his record? The six figure fee
awards? The published opinions slapping  Darren
Chaker? The 7 figure jury verdicts?

Yes. The record does speak for itself.

**35↑ 8↓**    Reply

Exh W
3 of 10



**Phoenix** to Richard    Jul 31, 2014 #845267
Indeed, the record does speak for itself - a few wins and over a hundred losses!!!! See,
http://scott-mcmillan-law.blogspot.com/

**84↑ 0↓**



**Michael** to Perfect    Jun 30, 2013 #671874    ♀University Park, Texas
Why are you posting as anonymous? Do you owe one of Scott's client's money? Pay your debts!

**1↑** **14↓**    Reply

**Phoenix** to Michael    Aug 02, 2014 #850277    ♀El Cajon, California
Owe Scott McMillan of La Mesa, not! Just saw the string stating how great he is, and no doubt he has won a few cases, (literally) but saw his loss record on http://scott-mcmillan-law.blogspot.com/ so can't imagine he is that great. I saw he lost an additional dozen cases in the last year alone in the Court of Appeal, and won one. If his track record in the Court of Appeal is that bad, I can't imagine how it is at the trial level!

**77↑ 0↓**    Reply



**reciprocity 1** to Michael    Dec 08, 2015 #1075975    ♀La Mesa, California
Before an attorney takes a case he KNOWS the client has money to satisfy a potential judgment. An attorney who takes a case without knowing such simply wastes his time and money hoping the judgment gets paid! Pro Bono work doesn't feed the kids or pay the mortgage Scott! 🙂

**11↑ 0↓**    Reply



**reciprocity 1** to reciprocity 1    Dec 08, 2015 #1075984    ♀La Mesa, California
oops, meant an attorney should know if a DEFENDANT is able to pay a judgment. It looks like Scott McMillan has some

Exh W
4 of 10

great money he is owed – but being
owed isn't paying the bills!
Happy Hunting Scott! ☺))))

24↑ 0↓

---

**Legit Consumer**   Nov 15, 2012 #569388   📍San Diego, California
Why is this review posted under so many different products? Looks
like it's some punk trying to harass a business. Juvenile ***.
Complain to the proper agency if you have a legitimate complaint,
***.

1↑ 3↓   Reply

---

**LJ**   Nov 15, 2012 #569315
Um, ever heard of spell check? I just bumped into this critique by
accident and feel compelled to respond.
Scott McMillan and his staff represented my family's estate and
kicked ***. Scott is a renaissance man, not to be defined by the law
school he went to or his audacity to dream big. He's a great lawyer,
has a great track record, and his office is conveniently located in the
heart of the quaint village of La Mesa, yes, next to the trolley tracks.
You won't go wrong if you hire Scott and his crew. They're smart,
committed, and, most importantly, care more about people than
fancy cars and cuff links.

2↑ 14↓   Reply

---

**Anonymous** to LJ   May 19, 2015 #986259
Hahahahahaha! ^

0↑ 0↓   Reply

---

**joethenormalguy**   Jan 30, 2012 #418921
☺ I think the writer of this complaint is just another attorney in the
San Diego Area who has met his match with Scott McMillan. Attorney
McMillan and his staff are professional, courteous, and competent. I
have used their services and am generally happy with their
performance. They know the law and are comfortable in the court
room. While I have not met the perfect lawyer, this firm is to receive
very high marks in every aspect of their practice of law.

2↑ 1↓   Reply



**MickeyMouseCalifornia** to joethenormalguy    May 19, 2013 #653312
I have to disagree...If there is NO money in any case an attorney takes on...the issue is DEAD! Whether it is Scott McMillan or his associates or any other Attorney. NO matter what Attorney's are NOT about Principle they are about the $$$$$$$ !

**83↑ 0↓**    Reply

**Phoenix** to MickeyMouseCalifornia    Jul 31, 2014 #849209
I agree, you cannot argue with the fact Scott McMillan & Associates of La Mesa have won a few cases, but lost over a hundred!! See http://scott-mcmillan-law.blogspot.com/
Also, you cannot argue with the fact Scott operates the McMillan Academy of Law out of his office. Per the State Bar, not a single student has taken the test or passed.

**98↑ 0↓**    Reply

**You May Also Like**



"Tobey West, Tobias I.A. West, Todd West, Todd Goodman owner of Family 1st Home Preservations, Legal Affiliates Group, Loan Educators, Family First Home Preservation Services. Tobey uses the alias Todd..."

Exh W
6 of 10



"She is coming up on my credit report and I have never used her. I would like this off my credit report or I will call the police..."



"Leavenworth Lawyer Gary A. Nelson engaged in the following dastardly conduct thereby creating the "Nelson Maneuver." "The Nelson Maneuver" Get a Law Degree and turn it into a..."



"I purchased a pair of the concerto nightstands. The gentleman in the store was very nice and accommodating. Unfortunately, I can't say the same about their customer service line. I..."



"I just got off the phone with the owner of Fake your job Dot com. What lousy, non-existent customer service they gave me. For one... they don't even have SET..."



"Investigativeguy John Mattes uncovered a great federal program last year designed to help the unemployed.The program provided free gas cards for the unemployed so they could look for work. Does..."



"TAKE BACK FREE ENTERPRISE........BOYCOTT SANDERS THE COMMIE AND HILLERY THE AMBASSADOR KILLER.......... VOTE FOR TRUMP.........TAKE YOUR COUNTRY BACK SAVE IT FOR YOUR CHILDREN.. WE HAVE SHOWNDemocracy definitely works the United States..."

Exh W
8 of 10



"I was acquitted of a felony charge, unlawful use of a weapon. While this in and of itself is worth celebrating, less positive is the fact that my arrest..."



"My FREE canvas ended up costing me $36 then arrived in a cardboard box with NO packaging. The frame is broken & Canvas is ripped. The board is actually broken at..."

---

### Reviews from San Diego, California

*Justfly Dot Com* - Justfly.com - NO "Broken website, consumer charged? Ridiculous."

*Sprint* - HORRIBLE SERVICE

*MJM Engines* - Terrible, Don't get an engine rebuild from them

*Nutrisystem* - The worst customer experience ever with cancellation fees

*Flagship Credit Acceptance* - Horrible company

**Featured reviews**

*Food Network* - Giada a Playboy Bunny

*Poshmark* allowed a person to send cosmetics that were were used back to me.

*Kohls* - POOR Packing, Completely Shattered Shipment

Review about *Centurylink* Internet from Albuquerque, New Mexico

*Telus Mobility* - Telus Signal weak, 3 dots!

**Recently Discussed Reviews**

*Verizon* - Collection agency for $6.24 bogus charge
1 minute ago

*National American Miss* - Selection Letter
2 minutes ago

Review about *RelayRides* Car Rental from Naperville, Illinois
3 minutes ago

*Aarp* - Review in Insurance category from Overland Park, Kansas
4 minutes ago

Michelle Rose of *Concord Hospital* is under investigation
5 minutes ago

Scott A. McMillan, SBN 212506
The McMillan Law Firm, APC
4670 Nebo Drive, Suite 200
La Mesa, California 91941-5230
(619) 464-1500
Email: scott@mcmillanlaw.us

Attorney for Plaintiffs, SCOTT A. MCMILLAN, an individual, and THE
MCMILLAN LAW FIRM, APC, a California Professional Corporation

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT A. MCMILLAN, an individual, THE MCMILLAN LAW FIRM, APC, a California Professional Corporation, | Case No. 3:16-CV-02186-WQH-MDD |
| | Judge: Hon. William Q. Hayes |
| Plaintiffs, | Courtroom: 14B |
| v. | **NOTICE OF APPEAL; STATEMENT OF REPRESENTATION [9TH Cir. R. 3-2]** |
| DARREN D. CHAKER an individual, and as trustee of PLATINUM HOLDINGS GROUP TRUST, dba COUNTER FORENSICS; NICOLE CHAKER, an individual, and as trustee of THE NICOLE CHAKER REVOCABLE LIVING TRUST, U/A dated August 18, 2010, VANIA CHAKER, an individual and as beneficiary of The Island Revocable Trust under Declaration of Trust dated June 2, 2015, MARCUS MACK as trustee of The Island Revocable Trust under Declaration of Trust dated June 2, 2015, | |
| Defendants. | |

1        Notice is hereby given that Plaintiffs Scott A. McMillan and The McMillan

2    Law Firm, APC ("Plaintiffs"), hereby appeal to the United States Court of Appeal

3    for the Ninth Circuit from the order closing this case entered on October 10, 2017

4    [ECF 86], a copy of which is attached hereto, and the prior adverse rulings.

5    Dated: November 5, 2017                  Respectfully submitted,

7                            /s/ Scott A. McMillan

8                            Scott A. McMillan, SBN 212506
                        Attorneys for Plaintiffs

1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

SCOTT A. MCMILLAN, an individual; THE MCMILLAN LAW FIRM, APC, a California professional corporation,

               Plaintiffs,

    v.

DARREN D. CHAKER, an individual, and as trustee of PLATINUM HOLDINGS GROUP TRUST doing business as Counter Forensics, *et al.*,

               Defendants.

CASE NO. 16cv2186-WQH-MDD

ORDER

HAYES, Judge:

      On August 28, 2017, the Court granted a motion to dismiss and dismissed the First Amended Complaint without prejudice. The Order stated, "Plaintiffs shall file any motion for leave to file an amended complaint pursuant to Local Rule 7.1 and within (30) days of the date this Order is issued." (ECF No. 83). The docket reflects that no motion for leave to file an amended complaint was filed within this period. The Clerk of Court is directed to close this case.

DATED: October 10, 2017

                              *William Q. Hayes*

                         **WILLIAM Q. HAYES**
                         United States District Judge

- 1 -

16cv2186-WQH-MDD

NOTICE OF REPRESENTATION
[Ninth Circuit Rule 3-2]

| | |
|---|---|
| The McMillan Law Firm, APC<br>Plaintiff - Appellant | Scott A. McMillan, CBN 212506<br>The McMillan Law Firm, APC<br>4670 Nebo Drive, Suite 200,<br>La Mesa, CA 91941<br>(619) 464-1500 x 14 |
| Scott A. McMillan<br>Plaintiff - Appellant | Scott A. McMillan, CBN 212506<br>The McMillan Law Firm, APC<br>4670 Nebo Drive, Suite 200,<br>La Mesa, CA 91941<br>(619) 464-1500 x 14 |
| Darren D. Chaker<br>an individual, and as trustee of<br>PLATINUM HOLDINGS GROUP<br>TRUST<br><br>Defendant - Appellee | Represented by<br>Charles Thomas Spagnola<br>Sullivan Krieger Truong Spagnola &<br>Klausner, LLP<br>444 W. Ocean Blvd., Suite 1700<br>Long Beach, CA 90802<br>562-597-7070<br>Fax: 562-597-7772<br>Email:<br>cspagnola@sullivankrieger.com<br><br>Eliot Franklin Krieger<br>Sullivan Krieger Truong Spagnola &<br>Klausner, LLP<br>444 W. Ocean Blvd., Suite 1700<br>Long Beach, CA 90802<br>562-597-7070<br>Fax: 562-597-7772<br>Email: ekrieger@sullivankrieger.com<br><br>Adam M Tamburelli<br>Sullivan, Krieger, Truong, Spagnola &<br>Klausner, LLP<br>444 West Ocean Boulevard<br>Suite 1700<br>Long Beach, CA 90802<br>562-597-7070<br>Email:<br>atamburelli@sullivankrieger.com |

Vania Chaker
an individual and as beneficiary of The
Island Revocable Trust under
Declaration of Trust dated June 2,
2015

Defendant - Appellee

Represented by

Ryan G. Baker
Baker Marquart, LLP
2029 Century Park East
Suite 1600
Los Angeles, CA 90067
(424) 652-7800
Fax: (424) 652-7850
Email: rbaker@bakermarquart.com

Nicole Chaker
an individual, and as trustee of
The Nicole Chaker Revocable
Living Trust, U/A dated August 18,
2010

Defendant - Appellee

Represented by

Rebecca Jo Smith
Freeman Mathis & Gary, LLP
550 S. Hope St.
22nd Floor
Los Angeles, CA 90071
213-615-7008
Fax: 216-615-7100
Email: rjs@gilbertkelly.com

Timothy W Kenna
Freeman Mathis & Gary, LLP
550 South Hope Street
22nd Floor
Los Angeles, CA 90071
(213)615-7116
Fax: (213)615-7100
Email: t.kenna@gilbertkelly.com

*3:16-CV-02186*                    NOTICE OF APPEAL                    5

# CERTIFICATE OF SERVICE

I am admitted to the United States District Court for the Southern District of California. I am employed in San Diego County, California. My business address is 4670 Nebo Drive, Suite 200, La Mesa, CA 91941-5230.

On November 5, 2017, I caused service of the following documents:

NOTICE OF APPEAL; STATEMENT OF REPRESENTATION [9TH Cir. R. 3-2].

By Electronic Submission: I served the above listed document(s) described via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service though the court's transmission facilities.

I certify that the foregoing is true and correct.

Dated: November 5, 2017

/s/ Scott A. McMillan
_____

Scott A. McMillan

1  **GILBERT, KELLY, CROWLEY & JENNETT LLP**
   TIMOTHY W. KENNA, A PROFESSIONAL CORPORATION / Bar No. 64280
2  t.kenna@gilbertkelly.com
   ARTHUR J. MC KEON III / Bar No. 082540
3  ajm@gilbertkelly.com
   REBECCA J. SMITH / Bar No. 150428
4  rjs@gilbertkelly.com
   401 B Street, Suite 2210
5  San Diego, California 92101
   (619) 687-3000; FAX: (213) 615-7100
6
   **Mailing Address:**
7  550 South Hope Street, 22nd Floor
   Los Angeles, California 90071-2627
8
   Attorneys for Defendant
9  NICOLE CHAKER

10                **UNITED STATES DISTRICT COURT**

11            **SOUTHERN DISTRICT OF CALIFORNIA**

12

13  SCOTT A. MCMILLAN, an individual,          ) Case No. 3:16-CV-02186-WQH-MD
    THE MCMILLAN LAW FIRM, APC, a              )
14  California professional corporation,       ) Judge: William Q. Hayes
                                               ) Courtroom 14B
15              Plaintiffs,                     )
            vs.                                 ) Magistrate Hon. Mitchell D. Dembin
16                                             ) Courtroom 11th Floor
    DARREN D. CHAKER, an individual,           )
17  and as trustee of PLATINUM                 ) **DEFENDANT NICOLE**
    HOLDINGS GROUP TRUST, dba                  ) **CHAKER'S REPLY TO**
18  COUNTER FORENSICS; NICOLE                  ) **PLAINTIFFS' OPPOSITION TO**
    CHAKER, an individual, and as trustee of   ) **SPECIAL MOTION TO STRIKE**
19  THE NICOLE CHAKER REVOCABLE               ) **PLAINTIFFS' THIRD CAUSE OF**
    LIVING TRUST, U/A dated August 18,         ) **ACTION OF FIRST AMENDED**
20  2010, VANIA CHAKER, an individual          ) **COMPLAINT**
    and as beneficiary of The Island           )
21  Revocable Trust under Declaration of       ) (Defendant's Objection to Plaintiffs'
    Trust dated June 2, 2015, MARCUS           ) Request for Judicial Notice;
22  MACK as trustee of The Island Revocable    ) Objections to McMillan's Declaration
    Trust under Declaration of Trust dated     ) and Reply to Opposition to 12(b)(6)
23  June 2, 2015,                              ) motion filed concurrently herewith)
                                               )
24              Defendants.                    ) [PER CHAMBERS, NO ORAL
                                               ) ARGUMENT UNLESS ORDERED
25  _____   ) BY COURT]
                                               )
26                                               Date: February 6, 2017
                                                 Dept: 14B
27                                               Complaint Filed: August 29, 2016

28
                                  1

**Gilbert, Kelly**
**Crowley & Jennett LLP**
Attorneys at Law

4229798.1  48811-00002 TWK `                          3:16-CV-02186-WQH-MD

# **TABLE OF CONTENTS**

1.    Introduction ................................................................................1

2.    The Anti-SLAPP Motion of Defendant Nicole Chaker is Directed
      Against the State Law Claim Set Forth In The Third Cause of
      Action Only ..............................................................................1

3.    Mere Allegations of Extortion Does Not Take the Cause of
      Action Outside of an Anti-SLAPP Motion ....................................2

4.    Nicole Has Sustained Her Burden...................................................5

5.    Plaintiffs Cannot Meet Their Burden .............................................7

6.    CONCLUSION ...........................................................................9

Gilbert, Kelly
Crowley & Jennett LLP
Attorneys at Law

# TABLE OF AUTHORITIES

**Federal Cases**

*Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 63 F.Supp.2d 1127 (N.D. Cal. 1999) .......................................................................... 4

*Hilton v. Hallmark* Cards, 599 F.3d 894 (9th Cir. 2010) .......................... 4

*Summit Media, LLC v. City of Los Angeles*, 530 F.Supp.2d 1084 (C.D. Cal. 2008). ........................................................................................... 4

*United States ex rel Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963 (9th Cir. 1999) ................................................................... 4

**State Cases**

*Blanchard v. DirectTV, Inc.*, 123 Cal.App.4th 903 (2004) ...................... 5

*Cross v. Cooper*, 197 Cal.App.4th 357 (2011) ....................................... 5

*Flately v. Mauro*, 39 Cal.4th 299 (2006) ................................... 4, 5, 6, 10

*Fox Searchlight Pictures, Inc. v. Paladino,* 89 Cal.App.4h 294 (2001) ... 5

*Kashian v. Harriman,* 98 Cal.App.4th 892 (2002) .................................. 5

*Malin v. Singer*, 217 Cal.App.4th 1283 (2013) ...................................... 6

*Mendoza v. Hamzeh*, 215 Cal.App.4th 799 (2013) ................................. 6

*Navellier v. Sletten,* 29 Cal.4th 82 (2002) ........................................... 10

*Paul for Council v. Hanyecz*, 85 Cal.App.4th 1356 (2001) ..................... 5

*Rusheen v. Cohen*, 37 Cal.4th 1048 (2006) .......................................... 10

*Seltzer v. Barnes*, 182 Cal.App.4th 953 (2010) ...................................... 5

*Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.*, 106 Cal.App.4th 1219 (2003) ................................................ 10

*Wallace v. McCubbin*, 196 Cal.App.4th 1169. (2011) ........................... 10

**State Statutes**

Code of Civil Procedure §425.16 ........................................................... 4

Gilbert, Kelly
Crowley & Jennett LLP
Attorneys at Law

-ii-

DEFENDANT NICOLE CHAKER'S REPLY TO PLAINTIFFS' OPPOSITION TO SPECIAL MOTION TO STRIKE

4229798.1  48811-00002

3:16-CV-02186-WQH-MD

233

Case 3:16-cv-02186-WQH-MDD Document 127-1 Filed 09/23/22 PageID.4457 Page 241 of
1196
Case 3:16-cv-02186-WQH-MDD Document 51-1 Filed 01/30/17 PageID.2657 Page 4 of 12

Defendant Nicole Chaker (hereinafter referred to as "Nicole") submits the her reply to Plaintiffs' opposition to Nicole's Special Motion to Strike Plaintiffs' Third Cause of Action of the First Amended Complaint (Anti-SLAPP Motion).

## 1. Introduction

First having filed a 48 page First Amended Complaint (FAC) with voluminous exhibits totally approximately 214 pages and approximately 130 additional pages of sealed exhibits, Plaintiffs have now filed an opposition to defendant Nicole Chaker's Anti-SLAPP motion which includes over 600 pages of exhibits which they have requested the court to consider. Despite the overabundance of information thrown at defendant and the court, defendant need not reiterate its position set forth in her motions and supporting documents, but rather, need only reply to the fallacy of four arguments made by plaintiffs in their opposition. First, the anti-SLAPP motion of defendant Nicole Chaker is directed against only the state law claim set forth in the third cause of action. Second, the fact that the cause of action alleged against Nicole Chaker is for extortion, does not take the cause of action outside of an Anti-SLAPP Motion. Third, Nicole has sustained her burden to establish that the acts complained of by plaintiff were in furtherance of her right of petition or free speech and neither Scott McMillan's declaration, nor the documents he has attempted to submit to the court alter this conclusion. Finally, Plaintiffs cannot establish a probability of prevailing on their claim against Nicole because the claim is barred by the litigation privilege.

## 2. The Anti-SLAPP Motion of Defendant Nicole Chaker is Directed Against the State Law Claim Set Forth In The Third Cause of Action Only

Plaintiffs' argue that defendant has somehow attempted to direct the anti-SLAPP motion at the RICO causes of action. It is not. Plaintiff alludes to a statement in the motion that "Conclusory allegations of 'extortion,' even if those allegations are couched in terms of a RICO action do no deprive Nicole's action of

1

Gilbert, Kelly
Crowley & Jennett LLP
Attorneys at Law

4229798.1  48811-00002 TWK `

3:16-CV-02186-WQH-MD

Case 3:16-cv-02186-WQH-MDD   Document 127-1   Filed 09/03/22   PageID.4458   Page 242 of
1196
Case 3:16-cv-02186-WQH-MDD   Document 131-1   Filed 01/30/17   PageID.2654   Page 6 of 12

1 | their protected status.  (Motion at 9)  When read in context, it is clear that defendant
2 | is merely asserting that the gravamen of the claim controls the application of the
3 | Anti-SLAPP law.  Specifically, a plaintiff cannot hide allegations within a cause of
4 | action that would not be subject to Anti-SLAPP to avoid their being considered in
5 | addressing a cause of action which is subject to the Anti-SLAPP statute.

6 | The Ninth Circuit has held that California's anti-SLAPP statute, California
7 | Code of Civil Procedure §425.16 ["CCP §425.16], applies to state-law claims
8 | brought in federal district court. (*United States ex rel Newsham v. Lockheed Missiles*
9 | *& Space Co.*, 190 F.3d 963, 971 (9th Cir. 1999) ["*Lockheed*"]; see also *Summit*
10 | *Media, LLC v. City of Los Angeles*, 530 F.Supp.2d 1084, 1094 (C.D. Cal. 2008).)  A
11 | federal-court defendant may file a special motion to strike state-law claims regardless
12 | of whether those claims are in federal court based on diversity jurisdiction or are
13 | pendent to federal-question claims. (*Hilton v. Hallmark* Cards, 599 F.3d 894, 900 n.2
14 | (9th Cir. 2010) - "[W]e have long held that the anti-SLAPP statute applies to state
15 | law claims that federal courts hear pursuant to their diversity jurisdiction" (citing
16 | *Lockheed* at 970-73); *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 63
17 | F.Supp.2d 1127 (N.D. Cal. 1999)  -"[I]t appears that under the Erie analysis set forth
18 | in *Lockhee*d the anti-SLAPP statute may be applied to state law claims, which, as in
19 | this case, are asserted pendent to federal question claims".) No further inquiry need
20 | be made.  This court has jurisdiction to hear the anti-SLAPP motion as to extortion
21 | claim of plaintiffs' FAC.

22 | **3. Mere Allegations of Extortion Does Not Take the Cause of Action Outside of**
23 | **an Anti-SLAPP Motion**

24 | Plaintiffs take the position that because the allegations against Nicole concern
25 | improper threats of extortion that the Anti-SLAPP motion is inappropriate.
26 | Plaintiffs' opposition is based virtually entirely on *Flately v. Mauro*, 39 Cal.4th 299
27 | (2006).  ["*Flately*"] (Opposition pp 9,-12).  *Flatley* held that where the defendant
28 | concedes, or the evidence conclusively establishes that the assertedly protected

Gilbert, Kelly
Crowley & Jennett LLP
Attorneys at Law

-2-

DEFENDANT NICOLE CHAKER'S REPLY TO PLAINTIFFS' OPPOSITION TO SPECIAL MOTION TO
STRIKE

4229798.1  48811-00002

3:16-CV-02186-WQH-MD

235

1   speech or petition activity was illegal as a matter of law that such activity will not

2   support an anti-SLAPP motion. (*Flately* at 320.)   In *Flately*, the defendant lawyer

3   admitted writing letters and making calls to the plaintiff and his attorney that, when

4   taken together threatened to accuse the plaintiff of a variety of crimes and disgrace

5   him in the public media unless he paid a large sum of money. (*Flately* at 306-307.)

6   In reaching its conclusion, the *Flately* court relied on *Paul for Council v. Hanyecz*,

7   85 Cal.App.4th 1356 (2001), a case in which the defendants admitted money

8   laundering, but argued that their laundering of campaign contributions was protected

9   under CCP§ 425.15 because they were acting in furtherance of their constitutional

10  right to free speech.  In relying on that case, the *Flatley* court underscored the limited

11  nature of its holding:

12      We emphasize that our conclusion that [the defendant's] communications
        constituted criminal extortion as a matter of *law are based on the specific and*
13      *extreme circumstances of this case.  (Flately* at 332.)

14  Courts have interpreted the ruling in *Flatle*y as carving out a very <u>limited exception</u>

15  to CCP§ 425.16, applicable only when the party opposing the anti-SLAPP motion

16  has established that there is no factual dispute between the parties regarding the

17  criminal conduct. (See *Cross v. Cooper*, 197 Cal.App.4th 357 (2011); *Seltzer v.*

18  *Barnes*, 182 Cal.App.4th 953 (2010).)   In this case, defendant has not conceded that

19  she engaged in illegal extortion and there is nothing in the pleadings or any of the

20  exhibits or other documentary evidence that conclusively establishes extortion.

21      Contrary to Plaintiffs' argument, California appellate authority specifically

22  provides that "conduct that would otherwise come within the scope of the anti-

23  SLAPP statute does not lose its coverage simply because it is alleged to have been

24  unlawful or unethical.  (*Kashian v. Harriman,* 98 Cal.App.4th 892 (2002); *Fox*

25  *Searchlight Pictures, Inc. v. Paladino,* 89 Cal.App.4h 294 (2001).)  Indeed,

26  *Blanchard v. DirectTV, Inc*., 123 Cal.App.4th 903 (2004), ["*Blanchard"*] involved

27  the application of the Anti-SLAPP statute to allegations of extortion against the

28  defendant, DirectTV. Thus, contrary to Plaintiffs' assertion here, allegations of

Gilbert, Kelly
Crowley & Jennett LLP
Attorneys at Law

DEFENDANT NICOLE CHAKER'S REPLY TO PLAINTIFFS' OPPOSITION TO SPECIAL MOTION TO STRIKE

1  extortion do not automatically preclude application of the anti-SLAPP statute where

2  the underlying activity was done in anticipation or in connection with litigation.

3       Plaintiffs also cite to the case of *Mendoza v. Hamzeh*, 215 Cal.App.4th 799

4  (2013) ["*Mendoza*"].  In that case, plaintiff filed an action against an attorney

5  asserting civil extortion arising out a demand letter sent by the attorney in which the

6  attorney indicated that he was in the process of uncovering fraud, conversion and

7  breach of contract and that damages exceeded $75,000.  The letter further went on to

8  say that if the plaintiff did not agree to cooperate with the investigation and repay the

9  damage they would file a legal action as well as reporting the activities to the

10  Attorney General, IRS and other entities.  As in *Flately*, in *Mendoza* it was the threat

11  to report a crime unless payment was made that the court found illegal as a matter of

12  law.  Nothing close to *Flately* or *Mendoza* is alleged to have occurred here in regard

13  to Nicole.  The facts of this case much more clearly approximate those set forth in

14  *Malin v. Singer*, 217 Cal.App.4th 1283 (2013) in which the court found that the

15  "letter" in question did not fall under the "narrow exception articulated in Flately."

16  (*Mali*n at 1299)  As in *Malin* the letters to which Plaintiffs refer make no overt threat.

17       While Plaintiffs make sweeping arguments within their opposition that Nicole

18  somehow made threats against individuals, when distilled to actual supportable facts

19  against Nicole, Plaintiffs' position is seen for what it is – smoke and mirrors.

20  Plaintiffs have asserted that while Darren Chaker was in custody, his mother Nicole,

21  continued his activity of extortionate threats.  (McMillan Dec. ¶ 32)  What were

22  these extortionate threats?  It is alleged that Nicole Chaker accessed court records

23  and obtain copies of documents from a divorce file.  (McMillan Dec. ¶ 33)  While a

24  statement is made that obtaining family court records to be published in a public

25  forum to apply pressure or retaliate against a victim is consistent with the previous

26  conduct of Mr. Chaker (McMillan Decl.¶ 34), there is no evidence or allegations

27  submitted that Nicole engaged in this behavior.  Plaintiffs assert that McMillan

28  received a letter while Mr. Chaker was incarcerated and that the letter was ostensible

DEFENDANT NICOLE CHAKER'S REPLY TO PLAINTIFFS' OPPOSITION TO SPECIAL MOTION TO STRIKE

3:16-CV-02186-WQH-MD

1 from Mr. Chaker. (McMillan Decl. ¶ 35) Plaintiffs has indicated that he "read the

2 content of the letter . . . as implying a threat to further defame me and make

3 scandalous statements about me, and as a threat against both my client Susan A and

4 her mother Candy C." (McMillan Decl. ¶ 36) So far, none of these allegations

5 attribute any overt act to Nicole. What is particular telling is that Plaintiffs entire

6 premise of the claim against Nicole is that it is "apparent" that Nicole Chaker wrote

7 letters for Darren. McMillan bases his conclusion and apparently his entire claim

8 against Nicole on the "fact" that he knows Nicole's and Darren's handwriting and

9 can make a determination as to which individual wrote letters. This is not the subject

10 matter of "lay opinion" and even if it was it is unsupported. Further, Mr. McMillan

11 is clearly not a handwriting expert and accordingly, such "testimony" within the

12 declaration could not be expert opinion.

13 **4. Nicole Has Sustained Her Burden**

14     A fatal flaw exists in plaintiffs' FAC - there are no allegations within the

15 complaint which attribute any acts to Nicole other than those associated with her

16 involvement in litigation. In plaintiffs' opposition to Nicole's motion, plaintiffs have

17 "added" new assertions as to Nicole which they contend support their position that

18 she engaged in extortion and that the acts alleged were not in furtherance of Nicole's

19 right of petition or free speech. Plaintiffs, however, have not cured the fatal defects.

20 In fact, plaintiff McMillan's declaration has not included any assertions against

21 Nicole which can be interpreted to be extortion and/or which is outside of her

22 involvement in litigation. Specifically, the first accusation made against Nicole in

23 Scott McMillan's declaration is found at paragraph 32, 10 pages into his declaration.

24 As it relates to Nicole, plaintiff McMillan's declaration includes six (6) paragraphs

25 which purport to outline the activity undertaken by Nciole. None of these statements

26 are admissible as any type of fact or evidence against Nicole.

27 • Nicole continued Darren's activities of gathering information about and making

28     extortionate threats concerning the paternity case against his client Susan A

Gilbert, Kelly
Crowley & Jennett LLP
Attorneys at Law

1    (McMillan Decl. ¶ 32)  There are no "facts" included in this statement and no

2    foundation for the statement made which support an activity by Nicole;

3  •  Nicole accessed court records and made purchases of documents within Candy

4    C's divorce file.  (McMillan Decl. ¶ 33)  Plaintiffs try to tie this activity to some

5    nefarious action by drawing the unsupported conclusion that "[o]btaining family

6    records to be published in a public form, to apply pressure or retaliate against a

7    victim is consistent with the previous conduct of Mr. Chaker."   There are no

8    assertions that Nicole the general statement is applicable to Nicole or that she

9    engaged in such activity.

10  •  While letters written were ostensibly from Darren Chaker, it is "apparent" that

11    Nicole wrote and sent letters on behalf of Darren.  (McMillan Decl. ¶ 38)  While

12    the allegations specifically indicate that the letters were from Mr. Chaker,

13    Plaintiffs have drawn the unsupported conclusion that because Mr. Chaker was

14    incarcerated and the envelopes were sent from a zipcode "near" Nicole, that she

15    must have sent them.  This statement within the declaration is unsupported, lacks

16    foundation, and is a "conclusion" not a fact;

17  •  Paragraph 39 of the declaration is probably one of the most awkward of

18    statements in Mr. McMillan's declaration, indicating that he knows Nicole wrote

19    the letters because he knows Darren and Nicole's handwriting and therefore he

20    has unilaterally drawn such conclusion.   This portion of Mr. McMillan's appears

21    to be his expert opinion, however, Mr. McMillan is not an expert.

22  •  Nicole sent a letter over Darren's signature to the judge in the Susan A. litigation.

23    (McMillan Decl. ¶ 41)  Mr. McMillan states under penalty of perjury that he

24    knows Nicole wrote and sent the letter because of the handwriting.  As with

25    paragraph 39, this portion of the declaration appears to be Mr. McMillan's expert

26    opinion, although he is not an expert.

27  •  Nicole sent a letter to Chief Judge of the Fifth Circuit Court of Appeals in the

28    United States v. Chaker, case no. 14-20026.  (McMillan Decl. 42)  Plaintiffs have

Gilbert, Kelly
Crowley & Jennett LLP
Attorneys at Law

DEFENDANT NICOLE CHAKER'S REPLY TO PLAINTIFFS' OPPOSITION TO SPECIAL MOTION TO STRIKE

4229798.1  48811-00002                                                3:16-CV-02186-WQH-MD

1  attached a copy of the letter as an exhibit.[1]  The letter is signed by Darren Chaker.

2  While Plaintiffs asserts that all of the 21 pages of letters submitted to the court

3  were prepared and sent by Nicole, there is only one document prepared by Nicole

4  and that letter is a complaint to Darren's attorney that she has not done what was

5  requested by Darren in filing motions in the case.  This letter does not constitute

6  extortion and clearly is an action taken between Nicole and Darren's attorney in

7  regard to strategy for litigation.

8      Plaintiffs also appear to be making the assertion that since Nicole failed to contest

9  the allegations of the FAC that she cannot sustain her burden.  Nicole's motion to

10  strike clearly dispels this unsubstantiated conclusion.  Nicole specifically disputes the

11  allegations that she knew the contents of any of the letters or participated in their

12  preparation and emphasizes that the only connection she had to any of the filed

13  documents was her signing a proof of service.

14  **5.  <u>Plaintiffs Cannot Meet Their Burden</u>**

15      The anti-SLAPP statute provides that causes of action arising from protected

16  petitioning activity shall be subject to a special motion to strike unless the court

17  determines that the plaintiff has established that there is a probability that the

18  plaintiff will prevail on the claim.  Plaintiffs fail in sustaining this burden.  First, the

19  defendant would refer the court to her objection to the declaration of Scott A.

20  McMillan submitted in support of this reply and the objection to the request for

21  judicial notice made by plaintiffs in support of their opposition, which illustrates that

22  virtually all of the extrinsic evidence the plaintiffs' would now request the court to

23  look at is inadmissible.    To meet its burden under the second step of

24  CCP§ 425.15's two part test, plaintiffs must provide that the complaint is both

25  legally sufficient and supported by a sufficient prima facie showing of facts to

26  _____

27  [1] Defendant Nicole Chaker has concurrently filed an objection to McMillan's request for judicial notice.

28

Gilbert, Kelly
Crowley & Jennett LLP
Attorneys at Law

-7-

DEFENDANT NICOLE CHAKER'S REPLY TO PLAINTIFFS' OPPOSITION TO SPECIAL MOTION TO STRIKE

4229798.1  48811-00002

3:16-CV-02186-WQH-MD

240

Case 3:16-cv-02186-WQH-MDD   Document 127-1   Filed 09/23/22   PageID.4464   Page 249 of
Case 3:16-cv-02186-WQH-MDD   Document 51-1   Filed 01/30/17   PageID.2646   Page 11 of 12
1196

1   sustain a favorable judgment if plaintiffs' evidence is credited.  (*Navellier v. Sletten,*

2   29 Cal.4th 82, 88-89  (2002).)  The evidence put forward at this stage must be

3   admissible.  (*Wallace v. McCubbin*, 196 Cal.App.4th 1169 (2011).)  Significantly,

4   courts have held that declarations may not be based upon information and eleif and

5   documents submitted without the proper foundation are not to be considered.

6   (*Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.*, 106

7   Cal.App.4th 1219 (2003).)

8       Second, the claim against Nicole is barred by the litigation privilege.  A plaintiff

9   cannot establish a probability of prevailing if the litigation privilege precludes a

10  defendant's liability on the claim.  To effect its purposes—access to the courts

11  without fear of later harassment by derivative tort actions, encouraging open

12  communication and zealous advocacy, promoting complete and truthful testimony,

13  giving finality to judgments, and avoiding endless litigation—the litigation privilege

14  "is absolute and applies regardless of malice," and " 'has been given broad

15  application.' " (*Rusheen v. Cohen*, 37 Cal.4th 1048, 1063 (2006).)  Plaintiffs have

16  failed to identify either in their pleading or though admissible evidence any conduct

17  of Nicole which was not a communication or act done in a judicial proceeding or to

18  achieve the objects of the litigation.

19      Third, Plaintiffs' opposition appears to rely heavily (if not solely) on the *Flately*

20  case, stating that *Flately* squarely held that the litigation privilege did not save an

21  anti-SLAPP motion from being dismissed when allegedly extortionate statements

22  were made in a settlement demand letter. While the *Flately* court did reject the

23  defendant's contention that because some forms of illegal litigation-related activity

24  may be privileged under the litigation privilege, that activity is necessarily protected

25  under the anti-SLAPP statute (*Flately* at 626.), such language must be read in

26  connection with the balance of the reasoning in the case.  The Supreme Court

27  concluded in the *Flately* case that a letter and related telephone calls constituted

28  criminal extortion **as a matter of law**.  Having determined that extortion was

-8-

Gilbert, Kelly
Crowley & Jennett LLP
Attorneys at Law

DEFENDANT NICOLE CHAKER'S REPLY TO PLAINTIFFS' OPPOSITION TO SPECIAL MOTION TO
STRIKE

4229798.1  48811-00002                                              3:16-CV-02186-WQH-MD

241

1    established **as a matter of law**, the court went on to indicate that the allegedly

2    protected speech or petition activity **was illegal as a matter of law**. (*Flately* at 320.)

3    The *Flately* court however specifically indicated that its conclusion in that case was

4    based "on the specific and extreme circumstances of this case." (*Flately* at 332.)

5    Here, Plaintiffs claims against Nicole are vigorously disputed and accordingly, the

6    holding which Plaintiffs attempt to apply in their Opposition is inapplicable and the

7    litigation privilege may be applied to the activity alleged against Nicole in the FAC.

8    **6. <u>CONCLUSION</u>**

9        Despite voluminous allegations within the FAC directed against Darren

10    Chaker, the allegations and admissible evidence as to Nicole relates only to non-

11    specific and innocuous conduct, all of which is privileged and cannot serve as the

12    basis for any lawsuit against Nicole. Despite Plaintiffs' position that the extortion

13    cause of action Nicole seeks to have stricken is not subject to an anti-SLAPP motion,

14    Plaintiffs are incorrect. Since Nicole has sustained her burden to establish that the

15    acts complained of by plaintiffs were in furtherance of her right of petition or free

16    speech and Plaintiffs cannot meet their burden of demonstrating a probability of

17    prevailing on their claims, defendant Nicole Chaker respectfully requests that this

18    court grant this motion and strike the third cause of action of Plaintiffs First

19    Amended Complaint without leave to amend.

20

21    Dated: January 30, 2017        GILBERT, KELLY, CROWLEY & JENNETT

                                        LLP

22

23                    By: <u>/s/ ARTHUR J. MCKEON, III</u>

24                       ARTHUR J. MCKEON, III

                      REBECCA J. SMITH

25                       Attorneys for Defendant

                      NICOLE CHAKER

26

27

28

Gilbert, Kelly
Crowley & Jennett LLP
Attorneys at Law

-9-

DEFENDANT NICOLE CHAKER'S REPLY TO PLAINTIFFS' OPPOSITION TO SPECIAL MOTION TO STRIKE

4229798.1 48811-00002                           3:16-CV-02186-WQH-MD

242

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

MAR 20 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

---

SCOTT A. MCMILLAN; THE
MCMILLAN LAW FIRM, APC,

                Plaintiffs - Appellants,

   v.

DARREN D. CHAKER, an
individual, and as trustee of
PLATINUM HOLDINGS GROUP
TRUST, DBA Counter Forensics;
VANIA CHAKER, an individual and
as beneficiary of The Island
Revocable Trust under Declaration of
Trust dated June 2, 2015; NICOLE
CHAKER, an individual, and as
trustee of THE NICOLE CHAKER
REVOCABLE LIVING TRUST,
U/A dated August 18, 2010,

                Defendants - Appellees.

No. 18-55358

D.C. No. 3:16-cv-02186-WQH-MDD
U.S. District Court for Southern
California, San Diego

**TIME SCHEDULE ORDER**

---

The parties shall meet the following time schedule.

| | |
|---|---|
| **Fri., May 18, 2018** | Appellants' opening brief and excerpts of record shall be served and filed pursuant to FRAP 32 and 9th Cir. R. 32-1. |
| **Mon., June 18, 2018** | Appellees' answering brief and excerpts of record shall be served and filed pursuant to FRAP 32 and 9th Cir. R. 32-1. |

**The optional appellants' reply brief shall be filed and served within 21 days of service of the appellees' brief, pursuant to FRAP 32 and 9th Cir. R. 32-1.**

**Failure of the appellants to comply with the Time Schedule Order will result in automatic dismissal of the appeal. See 9th Cir. R. 42-1.**

FOR THE COURT:

MOLLY C. DWYER
CLERK OF COURT

By: Ruben Talavera
Deputy Clerk
Ninth Circuit Rule 27-7

Case 3:16-cv-02186-WQH-MDD   Document 127-1   Filed 09/23/22   PageID.4468   Page 252 of
Case 3:16-cv-02186-WQH-MDD   Document 90-1   Filed 12/12/17   PageID.3849   Page 1 of 11
1196

1  **FREEMAN MATHIS & GARY, LLP**
   TIMOTHY W. KENNA, A PROFESSIONAL CORPORATION / Bar No. 64280
2  t.kenna@gilbertkelly.com
   ARTHUR J. MC KEON III / Bar No. 082540
3  ajm@gilbertkelly.com
   REBECCA J. SMITH / Bar No. 150428
4  rjs@gilbertkelly.com
   401 B Street, Suite 2210
5  San Diego, California 92101
   (619) 687-3000; FAX: (213) 615-7100
6
   **Mailing Address:**
7  550 South Hope Street, 22nd Floor
   Los Angeles, California  90071-2627
8
   Attorneys for Defendant
9  NICOLE CHAKER

10             **UNITED STATES DISTRICT COURT**

11           **SOUTHERN DISTRICT OF CALIFORNIA**

12

13  SCOTT A. MCMILLAN, an individual,      ) Case No. 3:16-CV-02186-WQH-MD
    THE MCMILLAN LAW FIRM, APC, a          )
14  California professional corporation,   ) Judge:  William Q. Hayes
                                           ) Courtroom 14B
15             Plaintiffs,                 )
         vs.                               ) Magistrate Hon. Mitchell D. Dembin
16                                         ) Courtroom 11th Floor
    DARREN D. CHAKER an individual,        )
17  and as trustee of PLATINUM             ) **DEFENDANT NICOLE**
    HOLDINGS GROUP TRUST, dba              ) **CHAKER'S MEMORANDUM OF**
18  COUNTER FORENSICS; NICOLE              ) **POINTS AND AUTHORITIES IN**
    CHAKER, an individual, and as trustee  ) **SUPPORT OF MOTION FOR**
19  of THE NICOLE CHAKER                   ) **EXTENSION OF TIME TO FILE**
    REVOCABLE LIVING TRUST, U/A            ) **CROSS-APPEAL**
20  dated August 18, 2010, VANIA           )
    CHAKER, an individual and as           ) (Notice of Motion, Declaration of
21  beneficiary of The Island Revocable    ) Rebecca J. Smith, and [Proposed]
    Trust under Declaration of Trust dated ) Order filed and served concurrently
22  June 2, 2015, MARCUS MACK as           ) herewith)
    trustee of The Island Revocable Trust  )
23  under Declaration of Trust dated June 2,) Date:    January 15, 2018
    2015,                                  ) Dept:   14B
24                                         )
              Defendants.                  )
25  _____    )

26

27

28

   NICOLE CHAKER'S POINTS AND AUTHORITIES IN SUPPORT OF
   MOTION TO EXTEND TIME TO FILE CROSS-APPEAL
   _____
   NICOLE CHAKER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO
   3:16-CV-02186-WQH-MD

**Freeman Mathis**
**& Gary, LLP**
Attorneys at Law

4581869.1  48811-00002 TWK

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## **1.  INTRODUCTION AND PROCEDURAL BACKGROUND**

In an abundance of caution, defendant Vania Chaker desires to file a cross-appeal in the present matter now before the Ninth Circuit Court of Appeals. Plaintiffs Scott A. McMillan, an attorney, and his law firm, The McMillan Law Firm, APC, (collectively "McMillan" or "Plaintiff") have sued Darren Chaker ("Darren") and his mother, Nicole and his sister Vania Chaker ("Vania").  The First Amended Complaint ("FAC") raised three factual scenarios.  First, Plaintiff complained about Darren's internet posting and blogs about him.  He did not allege that Vania and Nicole participated in the internet posting and blog activity.  Second, Plaintiff alleged that Darren and Nicole filed "lawsuits" alleging violation of the Fair Debt Collection Practices Act.  It was also alleged that Nicole and Darren filed a personal injury lawsuit.  Lastly, the FAC alleges a number of issues with respect to a paternity lawsuit filed by Darren alleging he was the biological father of the child in question.

In response to the FAC, Nicole Chaker filed both a motion to dismiss pursuant to FRCP 12(b)(6) and an anti-SLAPP Motion.  The FRCP 12(b)(6) motion was directed at both claims in the FAC – the Cause of Action for violation of the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c)-(d) ("RICO" or "1962(c)" and "1962(d)")[1], the claim for civil extortion.  The anti-SLAPP motion made pursuant to California Code of Civil Procedure § 426.16 was directed to the Pendent State Law Claims in that such arose out of Nicole Chaker's protected Activity.  On August 28, 2017, the court rendered its opinion on the motions stating:

> IT IS HEREBY ORDERED that ***Defendant*** Nicole Chaker's motion to
> dismiss the First Amended Complaint is granted.  (EOF No. 35).  The First
> Amended Complaint (ECOF No. 25) is dismissed without prejudice as to

---

[1] Two causes of action under the RICO statutes

Freeman Mathis
& Gary, LLP
Attorneys at Law

Case 3:16-cv-02186-WQH-MDD   Document 127-11   Filed 09/23/22   PageID.4470   Page 25 of 41
Case 3:16-cv-02186-WQH-MDD   Document 90-11   Filed 12/12/17   PageID.3846   Page 3 of 10
1196

1    ***Defendant*** Nicole Chaker.  ***Defendant*** Nicole Chaker's anti-SLAPP Motion to

2    strike and for ***attorney's fees*** and costs is denied as moot.  (ECF No. 35.)

3    (ECF 83)

4    The court in such order further indicated that "Plaintiffs shall file any motion for

5    leave to file an amended complaint pursuant to Local Rule 7.1 and within thirty (30)

6    days of the date this Order is issued."  No motion for leave to file an amended

7    complaint having been filed, on October 10, 2017, the court issued an order directing

8    the Clerk of the Court to close the case, specifically stating:

9        On August 28, 2017, the Court granted a motion to dismiss and dismissed the

10       First Amended Complaint without prejudice.  The Order stated, "Plaintiffs

11       shall file any motion for leave to file an amended complaint pursuant to Local

12       Rule 7.1 and within (30) days of the date this Order is issued."  (EOF No. 83).

13       The docket reflects that no motion for leave to file an amended complaint was

14       filed within this period.  The Clerk of Court is directed to close this case.

15       (ECF 86)

16       Subsequently on November 5, 2017, plaintiffs filed a Notice of Appeal

17   indicating: "Notice is hereby given that Plaintiffs Scott A. McMillan and the

18   McMillan Law Firm, APC ("Plaintiffs"), hereby appeal to the United States Court of

19   Appeal for the Ninth Circuit from the order closing this case entered on October 10,

20   2017 [ECF 86], a copy of which is attached hereto, and the prior adverse ruling."

21   (ECF 87) While the document indicated that the parties had been served by the

22   electronic submission through the United States Courts Electronic Filing Program,

23   defense counsel did not receive the Notice of Appeal by electornic service.

24       On or about November 9, 2017 defense counsel did receive a letter from the

25   court of appeal to appellant's counsel acknowledging that the Clerk's office of the

26   United States Court of Appeals for the Ninth Circuit had received a copy of the

27   notice of appeal, a copy of the scheduling order and a request from the Ninth Circuit

28   Court for my office to register for electronic filing if we were to represent Nicole

NICOLE CHAKER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO
EXTEND TIME BY WHICH TO FILE CROSS-APPEAL

1  Chaker as Appellee in the Appeal.  This was the first notification that defense

2  counsel had received of the notice.

3         Upon receipt of the documents from the Ninth Circuit Court, defense counsel

4  contacted the insurance carrier for Nicole Chaker which had retained defense counsel

5  in the underlying trial court action, to determine whether they would be retained to

6  represent Nicole Chaker in the pending appeal.  Unfortunately, there was some delay

7  in obtaining notification from the insurance carrier and once notification was

8  received that defense counsel had been retained to represent Ms. Chaker in the

9  Appeal, the time for filing a cross-appeal had expired.  Accordingly, counsel on

10 behalf of Ms. Chaker now seeks an extension of time by which to file a Notice of

11 Cross-Appeal.  The Notice of Cross-Appeal has been attached to this motion as an

12 exhibit and can be filed immediately upon permission from the Court.

13        There is no prejudice in this delay in filing the cross-appeal as counsel for Ms.

14 Chaker believes that it will be able to address all issues as Appellee in Plaintiff's

15 Appeal.  Rather, the cross-appeal is being filed in an abundance of caution by

16 counsel for Ms. Chaker in the event the Appellate Court reverses the order on the

17 motion to dismiss, to ensure that the Ninth Circuit Court specifically addresses the

18 anti-SLAPP motion of Ms. Chaker, which the lower court denied and determined to

19 be moot after the granting of the motion to dismiss.

20 **2.   THE COURT SHOULD FIND THAT THE LATE FILING OF THE**

21 **      CROSS-APPEAL WAS DUE TO COUNSEL FOR NICOLE CHAKER'S**

22 **      EXCUSABLE NEGLGECT AND EXTEND THE TIME FOR FILING THE**

23 **      CROSS APPEAL.**

24        The District Court may, upon a motion filed no later than 30 days after the

25 deadline for filing a notice of appeal, extend the time for filing an appeal, if the

26 moving party shows "excusable neglect or good cause."  (FRAP 4(a)(5)(ii).)  The

27 instant Motion is timely because it is filed on or about December 12, 2017 and 30

28 days after expiration of the original time to appeal is December 19, 2017.

Freeman Mathis
& Gary, LLP
Attorneys at Law

---

NICOLE CHAKER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO
EXTEND TIME BY WHICH TO FILE CROSS-APPEAL

1      The district court enjoys a wide latitude in determining excusable neglect.

2  (*Alpine State Bank v. Ohio Casualty Ins. Co.* (7th Cir., Ill. Aug. 23, 1991) 941 F.2d

3  544.)  Neglect is excusable within the meaning of the Federal Rules in unique

4  circumstances.  For purposes of excusable neglect, courts are permitted to accept late

5  filings caused by inadvertence, mistake or carelessness, as well as by intervening

6  circumstances beyond party's control.  (*United States v. Hopper* (2nd Cir. N.Y. Nov.

7  17, 1993) 9 F.3d 257.)  Although inadvertence, ignorance of rules, or mistakes

8  construing rules do not usually constitute excusable neglect, it is clear that excusable

9  neglect is somewhat elastic concept and is not limited strictly to omissions caused by

10  circumstances beyond control of movant. (*City of Chanute v Williams Natural Gas*

11  *Co.* (1994, CA10 Kan) 31 F3d 1041)

12      In *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380 (1993)

13  the Supreme Court articulated the standard for finding excusable neglect in the

14  bankruptcy context.  The court has applied the Pioneer standard for finding excusable

15  neglect outside of the bankruptcy context, including specific application in the

16  context of a Rule 4(a)(5) motion.  (*In re Diet Drugs Prods. Liab. Litig.*, 401 F.3d 143

17  (3rd Cir., 2005) The determination of whether neglect is excusable is at bottom an

18  equitable one, taking account of all relevant circumstances surrounding the party's

19  omission.  *Pioneer* 50 U.S. at 395.  *Pioneer* provides four factors to consider when

20  making this equitable determination: (1) the danger of prejudice to the nonmovant;

21  (2) the length of the delay and the impact on the judicial proceedings; (3) the reason

22  for the delay and (4) whether the movant acted in good faith.

23      A.    There Is No Prejudice to Plaintiffs

24      Plaintiffs filed their notice of appeal on November 5, 2017.  At that time, the

25  notice of appeal did not provide the issues which were subject to the appeal.  Rather,

26  the notice of appeal indicated that plaintiff was appealing from the order closing the

27  case after the granting of a motion to dismiss and all other adverse rulings.  From this

28  statement, it may only be concluded that the court's entire order as to all defendants'

Freeman Mathis
& Gary, LLP
Attorneys at Law

NICOLE CHAKER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO
EXTEND TIME BY WHICH TO FILE CROSS-APPEAL

249

motions are the matters from which plaintiff appeals.  If this is the case, there is no
need for a cross-appeal.  However, as stated herein, it is unclear exactly the matters
from which plaintiff appeals.  Accordingly, in an abundance of caution, defendant
Nicole Chaker seeks to file a cross-appeal in order to ensure that the Ninth Circuit
Court addresses not only the granting of the motions to dismiss, but also the denial
by the district court as to the anti-SLAPP motion as moot.  Since this issue is
presumably within plaintiffs' appeal and could be addressed by Ms. Chaker as
Appellee there is no prejudice in allowing Ms. Chaker to file the Notice of Cross-
Appeal at this time.

   An appellee who wants to defend a favorable judgment generally need not file
a cross-appeal.  A cross-appeal is required only when Appellee wants a substantive
change in the district court's judgment.  (*Levine v. Vilsak* (9th Cir., 2009) 587 F.3d
986.)  In the present action, Ms. Chaker does want to defend the favorable judgment;
however, she also wants to address the issues of the District's court determination
that the anti-SLAPP motion was moot.  It appears that this is an issue which is raised
by plaintiffs' appeal; however, it is unclear.  Since this is unclear, in order to protect
all of Ms. Chaker's rights, Ms. Chaker seeks to file a cross-appeal in order to ensure
that the issue of the trial court's ruling on the anti-SLAPP motion may be addressed
in the appealate court.

   B.    The Length Of The Delay Is Minimal And Will Not Impact Judicial
         Proceedings.

   The Notice of Appeal was filed on November 5, 2017.  Accordingly, Ms.
Chaker had, pursuant to the rules, up to and including November 19, 2017, by which
to file a Notice of Cross-Appeal.  Ms. Chaker is filing the present motion on
December 12, 2017, and has the Notice of Cross-Appeal ready to be filed as soon as
this court grants permission.  Accordingly, the request was made in less than 30 days

/ / /

/ / /

NICOLE CHAKER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO
EXTEND TIME BY WHICH TO FILE CROSS-APPEAL

Case 3:16-cv-02186-WQH-MDD   Document 127-1   Filed 09/23/22   PageID.4470   Page 258 of
1196
Case 3:16-cv-02186-WQH-MDD   Document 90-1   Filed 12/12/17   PageID.3850   Page 7 of 11

1  from the notice that the cross-appeal was due and the Notice of Cross-Appeal is

2  ready to be filed within 30 days of the date on which it should have been filed.  The

3  time is minimal.

4        At the present time, Appellant's opening brief is scheduled for January 4, 2018

5  and Appellee's answer brief is due on or before February 5, 2018.  Since it appears

6  that the issues to be briefed are either same or so closely related, the adding of the

7  cross-appeal should not increase the time for filing of briefs significantly and an

8  extension of 30 to 45 days for the filing of the briefs would be all that is necessary

9  (with appellant and cross-appellants briefs due on or about February 5, 2018 and

10  responses to such briefs due on or about March 5.)

11        C.      The Delay Rose As A Result of Excusable Neglect

12        In the present action, counsel for Nicole Chaker was not initially served with

13  the notice of appeal, which was filed on November 5, 2017.  Accordingly, having not

14  received the formal notification, the time for filing of a cross-appeal (14 days

15  thereafter) was not automatically made in the attorney's calendar as is set forth more

16  fully in the declaration of Rebecca J. Smith.  On or about November 9, 2017, counsel

17  for Ms. Chaker did receive documents from the Ninth Circuit Court regarding the

18  appeal.  Such documents were reviewed on November 13, 2017 and a determination

19  was made that plaintiffs had in fact filed a notice of appeal.  Counsel for Ms. Chaker,

20  who had initially been retained by Ms. Chaker's insurance carrier, then contacted

21  Ms. Chaker's insurance carrier to advise that an appeal had been filed and to request

22  that counsel be appointed again to represent Ms. Chaker in the Appeal.  There was

23  some delay in obtaining permission from the insurer for Ms. Chaker and by the time

24  permission had been received, the statutory time for filing a cross-appeal had run.

25        In the circumstances in the present matter two issues give rise to the excusable

26  neglect claimed.  First, counsel for Ms. Chaker did not receive notice of the appeal in

27  a timely manner.  Defense counsel believes that this may have been due to the fact

28  that the case had been closed prior to the filing of the notice of appeal, but is unsure.

Freeman Mathis
& Gary, LLP
Attorneys at Law

Case 3:16-cv-02186-WQH-MDD   Document 12711   Filed 09/23/22   PageID.44475   Page 259 of
1196
Case 3:16-cv-02186-WQH-MDD   Document 90-11   Filed 12/12/17   PageID.3851   Page 3 of 11

1  Because such a notice was not received, the normal and customary procedure for

2  calendaring "responsive" dates was not employed.  Specifically, when a notice from

3  the court or another party in an action is received, the attorney provides his secretary

4  or assistant with a list of all pertinent dates to be calendared on the attorney's

5  calendar.  When a notice of appeal was not received, no date 14 days after the notice

6  of appeal was placed on the attorneys' calendar.  Subsequently when counsel for Ms.

7  Chaker did receive notification from the Ninth Circuit Court, the receipt of such

8  document did not trigger the calendar of responsive dates.

9  Secondarily, counsel for Ms. Chaker had been retained by Ms. Chaker's insurance

10 carrier.  Upon receiving the documents from the Ninth Circuit Court, counsel for Ms.

11 Chaker notified the insurance carrier and requested that they be appointed to

12 represent Ms. Chaker in the appellate matter also.  There was some delay in

13 receiving a response from the insurance carrier.  This may be due to the fact that in

14 addition to filing the Notice of Appeal, plaintiff has also filed an action in San Diego

15 Superior Court addressing the same issues.  An acknowledgement that defense

16 counsel had been retained to represent Ms. Chaker was not communicated to defense

17 counsel until after the time for filing the Notice of Cross-Appeal had expired.

18    D.    Chaker's Counsel Has Acted In Good Faith

19    Counsel for Nicole Chaker have acted in good faith in bringing this motion

20 and seeking to file a late Cross-Appeal.  The need for the Cross-Appeal is premised

21 on the fact that it is unclear from Plaintiffs' Notice of Appeal, exactly what is being

22 appealed.  Plaintiffs have indicated that they are appealing from the court's order

23 closing the case and the prior adverse rulings.  Accordingly, it appears that plaintiff

24 is appealing from the courts entire order of August 28, 2017 in which the court

25 granted the motions to dismiss as to Ms. Chaker and found that anti-SLAPP motion

26 moot based on the dismissal.  If both of these issues – the court's granting of the

27 motion to dismiss and not ruling on the anti-SLAPP motion are both addressed in

28 plaintiffs' appeal, then there is no need for a cross-appeal.  However, if the notice of

Freeman Mathis
& Gary, LLP
Attorneys at Law

Case 3:16-cv-02186-WQH-MDD   Document 127-1   Filed 09/23/22   PageID.4476   Page 260 of
1196
Case 3:16-cv-02186-WQH-MDD   Document 90-11   Filed 12/12/17   PageID.3852   Page 9 of 11

1 appeal of the plaintiffs is limited to addressing the issues on the motion to dismiss

2 only, then a cross-appeal is necessary in order that the court of appeal review and

3 determine the anti-SLAPP motion also.

4      In the circumstances in the present matter two issues give rise to the excusable

5 neglect claimed.  First, counsel for Ms. Chaker did not receive notice of the appeal in

6 a timely manner.  Defense counsel believes that this may have been due to the fact

7 that the case had been closed prior to the filing of the notice of appeal, but is unsure.

8 Because such a notice was not received, the normal and customary procedure for

9 calendaring "responsive" dates was not employed.  Second,  counsel for Ms. Chaker

10 had been retained by Ms. Chaker's insurance carrier and there was some delay in

11 receiving a response from the insurance carrier as to whether defense counsel would

12 be retained to represent Ms. Chaker in the Appeal.  Counsel for Chaker has now

13 moved expeditiously to seek to file the cross-appeal in order that both of the

14 foregoing issues be placed before the court.

15

16 Dated:  December 12, 2017     FREEMAN MATHIS & GARY, LLP

17

18      By: _____

19      TIMOTHY W. KENNA
     REBECCA J. SMITH

20      Attorneys for Defendant
     NICOLE CHAKER

21

22

23

24

25

26

27

28

Freeman Mathis
& Gary, LLP
Attorneys at Law

---

NICOLE CHAKER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO
EXTEND TIME BY WHICH TO FILE CROSS-APPEAL

# **CERTIFICATE OF SERVICE**

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 550 South Hope Street, 22nd Floor, Los Angeles, CA 90071-2627.

On December 12, 2017, I served the within document(s) described as:

DEFENDANT NICOLE CHAKER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR EXTENSION OF TIME TO FILE CROSS-APPEAL

on the interested parties in this action as stated on the attached service list:

☒ **(BY ELECTRONIC SUBMISSION):** I served the above listed document(s) described via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service though the court's transmission facilities.

☒ **(BY U.S. MAIL)**: By placing a true copy of the foregoing document(s) in a sealed envelope addressed as set forth on the attached mailing list.  I placed each such envelope for collection and mailing following ordinary business practices.  I am readily familiar with this Firm's practice for collection and processing of correspondence for mailing.  Under that practice, the correspondence would be deposited with the United States Postal Service on that same day, with postage thereon fully prepaid at San Diego, California, in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on December 12, 2017, at Los Angeles, California.

I declare under penalty of perjury that the foregoing is true and correct.

ELIZABETH RUBIO
_____            _____
(Type or print name)                         (Signature)

Freeman Mathis
& Gary, LLP
Attorneys at Law

CERTIFICATE OF SERVICE

Case 3:16-cv-02186-WQH-MDD   Document 137-1   Filed 09/23/22   PageID.4478   Page 262 of
1196
Case 3:16-cv-02186-WQH-MDD   Document 96-1   Filed 12/23/22   PageID.3954   Page 1 of 21

# CERTIFICATE OF SERVICE

SCOTT A MCMILLAN
THE MCMILLAN LAW FIRM, APC
4670 NEBO DRIVE
SUITE 200
LA MESA, CA 91941-5230
Phone: (619)464-1500
Fax: (619)828-7399
Email: scott4670@gmail.com

Scott A. McMillan,
The McMillan Law Firm, APC
(Plaintiff)

TIMOTHY J. GRANT
FREDRICKSON, MAZEIKA & GRANT, LLP
5720 OBERLIN DRIVE
SAN DIEGO, CA 92121
Phone: 858-642-2002
Fax: 858-642-2001
Email: tgrant@fmglegal.com

Darren D. Chaker (Defendant)


RYAN G. BAKER
BAKER MARQUART LLP
2029 CENTURY PARK EAST
SUITE 1600
LOS ANGELES, CA 90067
Phone: 424-652-7800
Fax: 424-652-7850
Email: rbaker@bakermarquart.com

Vania Chaker (Defendant)

Freeman Mathis
& Gary, LLP
Attorneys at Law

CERTIFICATE OF SERVICE

4583800.1  48811-00002  TWK

255

3:16-CV-02186-WQH-MD

1   Scott A. McMillan, SBN 212506
    The McMillan Law Firm, APC
2   4670 Neo Drive, Suite 200
    La Mesa, California 91941-5230
3   (619) 464-1500 x 14
    Email: scott@mcmillanlaw.us
4
    Attorney for Plaintiff, SCOTT A. MCMILLAN, an individual, THE MCMILLAN
5   LAW FIRM, APC, a California Professional corporation

6

7

8                    UNITED STATES DISTRICT COURT

9                 SOUTHERN DISTRICT OF CALIFORNIA

10  SCOTT A. MCMILLAN, an               Case No. 3:16-CV-02186-WQH-MDD
    individual, THE MCMILLAN LAW
11  FIRM, APC, a California Professional  Judge: Hon. William Q. Hayes
    corporation,                         Courtroom: 14B
12
13    Plaintiffs,
                                         **PROOF OF SERVICE**
14
    v.
15                                       Hearing Date (no oral argument):
    DARREN D. CHAKER an individual,      January 15, 2018
16  and as trustee of PLATINUM           Dept. 14B
    HOLDINGS GROUP TRUST, dba
17  COUNTER FORENSICS; NICOLE
    CHAKER, an individual, and as trustee
18  of THE NICOLE CHAKER
    REVOCABLE LIVING TRUST, U/A
19  dated August 18, 2010, VANIA
    CHAKER, an individual and as
20  beneficiary of The Island Revocable
    Trust under Declaration of Trust dated
21  June 2, 2015, MARCUS MACK as
    trustee of The Island Revocable Trust
22  under Declaration of Trust dated June
    2, 2015,
23
      Defendants.
24

25

26

27

28

**PROOF OF SERVICE**

I am admitted to the United States District Court for the Southern District of California. I am employed in San Diego County, California. My business address is 4670 Nebo Drive, Suite 200, La Mesa, CA 91941-5230.

On December 29, 2017, I caused service of the following documents:

1.  **PLAINTIFFS' OPPOSITION TO DEFENDANT NICOLE CHAKER'S NOTICE OF MOTION FOR EXTENSION OF TIME TO FILE CROSS-APPEAL (FRAP 4(a)(5))** ]

2.  **DECLARATION OF SCOTT A. MCMILLAN; EXHIBITS**

**By Electronic Submission:** I served the above listed document(s) described via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service though the court's transmission facilities.

I certify that the foregoing is true and correct.

Dated: December 29, 2017

/s/ Scott A. McMillan

_____

# EXHIBIT X

# The Mcmillan Law Firm - Scott McMillan La Mesa Attorney

### 3 of 4  The Mcmillan Law Firm Reviews

📍La Mesa, California   Aug 23, 2015   73 views   0 comments   **100% FULL**

Several reports concerning McMillan and Associates attorney Scott McMillan have circulated about child molestation.McMillan Academy of Law is also next to the train track in east San Diego, but Scott McMillan manages to teach students the law in the small two room office how to become attorneys.

However, the California State Bar did not state one person has graduated from the school. Given the fact many attorneys let ethics slide, I do not feel this is such the case here.

Please be vigilent and reports conduct you believe is out of the ordinary.Understand it may take years for police to investigate such a case and start the investigation.

**Comment**

**More Review Details**

Website          ★★★★

Staff            ★★★★

Customer service ★★

Reason of review:
Poor customer service

Monetary loss:
$25000

Review category
Lawyers

Exh X
1 of 6

259

Review rating
5 out of 5

## review #687705 by anonymous

Author wants to be contacted by the company.

| Share | | 0 | | 0 | Helpful? | No | 0 | Yes | 18 |
|---|---|---|---|---|---|---|---|---|---|
| | ✓ | 1 | ✓ | 1 | | ✓ | 0 | ✓ | 18 |

| | Had the same issue | Yes | 6 |
|---|---|---|---|
| | | ✓ | 6 |



Post a comment to start a discussion.

**You May Also Like**



"During the period May 2013 to May 2014 I used the legal services of a Pakistani citizen in Dubai. His name is Shakeel A. Mian and he is from the..."



"Another of, literally dozens of appeals and writs filed by McMillan-Law-Firm in La Mesa, Scott McMillan and Michelle Volk, where the Court of Appeal DENIED the petition after forcing the..."



"Leavenworth Lawyer Gary A. Nelson engaged in the following dastardly conduct thereby creating the "Nelson Maneuver." "The Nelson Maneuver" Get a Law Degree and turn it into a..."

Exh X
3 of 6



"A few weeks ago, I bought from a seller on eBay, who I trusted, and bought from. I bought HAUNTED PSYCHOKINESIS RING MOVE MATTER WITH YOUR MIND! from her, for..."



"I also had a bad experience with one of these ready pac salads. I was tossng my salad after just adding the extra ingredients that come with salad bowl...."



"I ordered a blouse that did not arrive to the dimensions advertised, Customer Service did not respond at all. I submitted a formal complaint about this already. I ordered an..."

Exh X
4 of 6



"I have the feeling that, whoever created this app, initially had a good team of programmers but then fired them all, to save money, after the app was launched. ..."



"I Rakesh Khanna have bought a jeans at levi's store at 2nd floor ambience mall today 28 march 2016 at 04:14 pm....before the payement I told the manager that I..."

**Reviews from La Mesa, California**

*San Diego Auto Connection* – Bait and Switch

*CJS CD Keys* – SCAM COMPANY

*Walmart/Tasharina*

*The Mcmilian Law Firm* - Scott McMillan Law Firm La Mesa

*Luminess Airbrush* – Luminous Air

Exh X
5 of 6

## Featured reviews

*Food Network* – Giada a Playboy Bunny

*Poshmark* allowed a person to send cosmetics that were were used back to me.

*Kohls* – POOR Packing, Completely Shattered Shipment

Review about *Centurylink* Internet from Albuquerque, New Mexico

*Telus Mobility* – Telus Signal weak, 3 dots!

## Recently Discussed Reviews

*Home Depot* - Review in Supermarkets and Malls category from Chandler, Arizona
1 minute ago

*Pampered Touch Salon* - Sabrina Turgeon is a crackhead psycho ***
1 minute ago

*Verizon* - Collection agency for $6.24 bogus charge
4 minutes ago

*National American Miss* - Selection Letter
6 minutes ago

Review about *RelayRides* Car Rental from Naperville, Illinois
6 minutes ago

Exh X
6 of 6

AO 458 (Rev. 06/09) Appearance of Counsel

# UNITED STATES DISTRICT COURT
### for the
#### SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SCOTT A. MCMILLAN, et al. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Case No. 3:16-cv-2186-WQH-MDD |
| DARREN D. CHAKER, et al. | ) | |
| *Defendant* | ) | |

## APPEARANCE OF COUNSEL

To:     The clerk of court and all parties of record

I am admitted or otherwise authorized to practice in this court, and I appear in this case as counsel for:

Defendant DARREN D. CHAKER

Date: July 17, 2020

/s/ Eduardo A. Bravo
*Attorney's signature*

EDUARDO A. BRAVO  327967
*Printed name and bar number*

ROPERS MAJESKI PC
445 South Figueroa Street, Suite 3000
Los Angeles, California 90071
*Address*

eduardo.bravo@ropers.com
*E-mail address*

(213) 312-2000
*Telephone number*

(213) 312-2001
*FAX number*


American LegalNet, Inc.
www.FormsWorkFlow.com

1 | **GILBERT, KELLY, CROWLEY & JENNETT LLP**
TIMOTHY W. KENNA, A PROFESSIONAL CORPORATION / Bar No. 64280
2 | t.kenna@gilbertkelly.com
ARTHUR J. MC KEON III / Bar No. 082540
3 | ajm@gilbertkelly.com
REBECCA J. SMITH / Bar No. 150428
4 | rjs@gilbertkelly.com
401 B Street, Suite 2210
5 | San Diego, California 92101
(619) 687-3000; FAX: (213) 615-7100
6 |
**Mailing Address:**
7 | 550 South Hope Street, 22nd Floor
Los Angeles, California 90071-2627
8 |
Attorneys for Defendant
9 | NICOLE CHAKER

10 | **UNITED STATES DISTRICT COURT**

11 | **SOUTHERN DISTRICT OF CALIFORNIA**

12 |

13 | SCOTT A. MCMILLAN, an individual,
THE MCMILLAN LAW FIRM, APC, a
14 | California professional corporation,

15 |        Plaintiffs,
16 |    vs.

17 | DARREN D. CHAKER an individual, and
as trustee of PLATINUM HOLDINGS
18 | GROUP TRUST, dba COUNTER
FORENSICS; NICOLE CHAKER, an
19 | individual, and as trustee of NICOLE
CHAKER REVOCABLE LIVING
20 | TRUST, VANIA CHAKER, an individual
and as beneficiary of The Island
21 | Revocable Trust under Declaration of
Trust dated June 2, 2015, MARCUS MAC
22 | as trustee of The Island Revocable Trust
under Declaration of Trust dated June 2,
23 | 2015,

24 |        Defendants.

| Case No. 3:16-CV-02186-WQH-MD |

Judge: William Q. Hayes
Courtroom 14B

Magistrate Hon. Mitchell D. Dembin
Courtroom 11th Floor

**DEFENDANT NICOLE
CHAKER'S EVIDENTIARY
OBJECTIONS TO SCOTT
MCMILLAN'S DECLARATION IN
SUPPORT OF PLAINTIFFS'
OPPOSITION TO DEFENDANT
NICOLE CHAKER'S MOTION TO
DISMISS AND ANTI-SLAPP
MOTION**

(Defendant's Objection to Plaintiffs'
Request for Juridical Notice, Reply to
Opposition to Anti-SLAPP Motion,
and Reply to Opposition to 12(b)(6)
motion filed concurrently herewith)

25 | [PER CHAMBERS, NO ORAL
ARGUMENT UNLESS ORDERED
26 | BY COURT]

27 | Date: February 6, 2017
Dept: 14B
28 | Complaint Filed: August 29, 2016

**Gilbert, Kelly
Crowley & Jennett LLP**
Attorneys at Law

DEFENDANT NICOLE CHAKER'S OBJECTION TO DECLARATION OF SCOTT MCMILLIAN IN SUPPORT
OF ITS OPPOSITION TO DEFENDANT'S ANTI-SLAPP MOTION

4231450.1  48811-00002 TWK

3:16-cv-02186-WQH-MD

266

Case 3:16-cv-02186-WQH-MDD Document 137-1 Filed 09/30/22 PageID.4490 Page 274 of
1196
Case 3:16-cv-02186-WQH-MDD Document 131-1 Filed 01/30/17 PageID.2649 Page 2 of 4

1     Defendant Nicole Chaker hereby objects to portions of the Declaration of

2 Scott A. McMillian filed in support of Plaintiffs' Oppsoition to Defendant Nicole

3 Chaker's Anti-SLAPP Motion as set forth more fully below:

| **Matter to Which Objection is Made** | **Grounds for Objection** |
|---|---|
| Paragraph 4 of Scott A. McMillan's Declaration in Support of Request for Judicial Notice in connection Opposition to Nicole Chaker's Anti-SLAPP and 12(b)(6) Motions, page 7, lines 12 through 24 | Conclusory, Irrelevant and Not factual in nature. The declarant statements are not as to any facts relevant to a determination of the motion, but rather is a recitation of procedural matters and an interpretation of the contents of other pleadings. |
| Paragraph 7 of Scott A. McMillian's Declaration In Support of Opposition to Nicole Chaker's Anti-SLAPP and 12(b)(6) Motions, page 2, lines 25 through 27. | Lack of personal knowledge vague. Federal Rules of Evidence (FRE) 802 and 602 |
| Paragraph 10 of Scott A. McMillian's Declaration In Support of Opposition to Nicole Chaker's Anti-SLAPP and 12(b)(6) Motions, page 4, lines 2 through 6 | No foundation and speculation. FRE 702 and 703. No basis for personal knowledge. Lacks foundation/speculation. FRE 602. Hearsay. FRE 801-802. Best Evidence Rule. FRE 1002. |
| Paragraph 20 of Scott A. McMillian's Declaration In Support of Opposition to Nicole Chaker's Anti-SLAPP and | Lack of personal knowledge. FRE 802. Lacks foundation/speculation. FRE 602. Irrelevant. FRE 401 and 402. |

Gilbert, Kelly
Crowley & Jennett LLP
Attorneys at Law

4231450.1  48811-00002

3:16-cv-02186-WQH-MD

1  12(b)(6) Motions, page 5, lines 25
2  through 28 and page 6 lines 1 through 5.
3
4  Exhibit 10 to the Declaration of Scott A.          Lack of foundation.  Improper document
5  McMillian's Declaration In Support of              of which to take judicial notice.  (See
6  Opposition to Nicole Chaker's Anti-                Nicole Chaker's Objection to Plaintiffs'
7  SLAPP and 12(b)(6) Motions, referenced            Request for Judicial Notice)
8  at page 6, line 5.
9
10  Paragraph 26 of Scott A. McMillian's             No foundation and speculation.  FRE 702
11  Declaration In Support of Opposition to          and 703.    No basis for personal
12  Nicole Chaker's Anti-SLAPP and                   knowledge.  Lacks
13  12(b)(6) Motions, page 8, lines 15               foundation/speculation. FRE 602.
14  through 20.                                       Hearsay.  FRE 801-802.  Best Evidence
15                                                    Rule.  FRE 1002.
16
17  Paragraph 27 of Scott A. McMillian's             Lack of personal knowledge.  FRE 802.
18  Declaration In Support of Opposition to          Lacks foundation/speculation.  FRE 602.
19  Nicole Chaker's Anti-SLAPP and                   Irrelevant.  FRE 401 and 402.
20  12(b)(6) Motions, page 8, lines 21
21  through 26
22
23  Exhibit 13 to Scott A. McMillian's               Lack of foundation.  Improper document
24  Declaration In Support of Opposition to          of which to take judicial notice.  (See
25  Nicole Chaker's Anti-SLAPP and                   Nicole Chaker's Objection to Plaintiffs'
26  12(b)(6) Motions, referenced at                  Request for Judicial Notice)
27  paragraph 27, page 8, line 26.
28

Gilbert, Kelly
Crowley & Jennett LLP
Attorneys at Law

-3-
DEFENDANT NICOLE CHAKER'S OBJECTION TO DECLARATION OF SCOTT MCMILLIAN IN SUPPORT
OF ITS OPPOSITION TO DEFENDANT'S ANTI-SLAPP MOTION
4231450.1  48811-00002                                                    3:16-cv-02186-WQH-MD

268

| | |
|---|---|
| 1  Paragraph 28 of Scott A. McMillian's | Lack of personal knowledge.  FRE 802. |
| 2  Declaration In Support of Opposition to | Lacks foundation/speculation.  FRE 602. |
| 3  Nicole Chaker's Anti-SLAPP and | Irrelevant.  FRE 401 and 402. |
| 4  12(b)(6) Motions, page 8, lines 27 | |
| 5  through 28 and page 9, lines 1 through 7. | |
| 6 | |
| 7  Exhibit 14 to Scott A. McMillian's | Lack of foundation.  Improper document |
| 8  Declaration In Support of Opposition to | of which to take judicial notice.  (See |
| 9  Nicole Chaker's Anti-SLAPP and | Nicole Chaker's Objection to Plaintiffs' |
| 10  12(b)(6) Motions, referenced at page 9, | Request for Judicial Notice) |
| 11  paragraph 28, line 7. | |
| 12 | |
| 13  Paragraph 29 of Scott A. McMillian's | Lack of personal knowledge.  FRE 802. |
| 14  Declaration In Support of Opposition to | Lacks foundation/speculation.  FRE 602. |
| 15  Nicole Chaker's Anti-SLAPP and | Irrelevant.  FRE 401 and 402. |
| 16  12(b)(6) Motions, page 9, lines 8 through | |
| 17  17. | |
| 18 | |
| 19  Exhibit 15 to Scott A. McMillian's | Lack of foundation.  Improper document |
| 20  Declaration In Support of Opposition to | of which to take judicial notice.  (See |
| 21  Nicole Chaker's Anti-SLAPP and | Nicole Chaker's Objection to Plaintiffs' |
| 22  12(b)(6) Motions, referenced at page 9, | Request for Judicial Notice) |
| 23  line 17. | |
| 24  Paragraph 30 of Scott A. McMillan's | No foundation and speculation.  FRE 702 |
| 25  Declaration In Support of Opposition to | and 703.   No basis for personal |
| 26  Nicole Chaker's Anti-SLAPP and | knowledge.  Lacks |
| 27  12(b)(5) Motions, page 9, lines 18 | foundation/speculation. FRE 602. |
| 28 | |

Gilbert, Kelly
Crowley & Jennett LLP
Attorneys at Law

-4-

DEFENDANT NICOLE CHAKER'S OBJECTION TO DECLARATION OF SCOTT MCMILLIAN IN SUPPORT
OF ITS OPPOSITION TO DEFENDANT'S ANTI-SLAPP MOTION

4231450.1  48811-00002                                                                    3:16-cv-02186-WQH-MD

269

Case 3:16-cv-02186-WQH-MDD Document 137-1 Filed 09/23/22 PageID.4493 Page 277 of
1196
Case 3:16-cv-02186-WQH-MDD Document 137-1 Filed 01/30/17 PageID.2646 Page 5 of 7

| | | |
|---|---|---|
| 1 | through 28. | Hearsay. FRE 801-802 |
| 2 | | |
| 3 | Exhibit 15 referenced in Scott A. | Lack of foundation. Improper document |
| 4 | McMillian's Declaration In Support of | of which to take judicial notice. (See |
| 5 | Opposition to Nicole Chaker's Anti- | Nicole Chaker's Objection to Plaintiffs' |
| 6 | SLAPP and 12(b)(6) Motions, referenced | Request for Judicial Notice) |
| 7 | at page 9, paragraph 30, line 28 | |
| 8 | | |
| 9 | Paragraph 31 of Scott A. McMillian's | No foundation and speculation. FRE 702 |
| 10 | Declaration In Support of Opposition to | and 703. No basis for personal |
| 11 | Nicole Chaker's Anti-SLAPP and | knowledge. Lacks |
| 12 | 12(b)(6) Motions, page 10, lines 1 | foundation/speculation. FRE 602. |
| 13 | through 5. | Hearsay. FRE 801-802. |
| 14 | | |
| 15 | Exhibit 17 referenced in Scott A. | Lack of foundation. Improper document |
| 16 | McMillian's Declaration In Support of | of which to take judicial notice. (See |
| 17 | Opposition to Nicole Chaker's Anti- | Nicole Chaker's Objection to Plaintiffs' |
| 18 | SLAPP and 12(b)(6) Motions, referenced | Request for Judicial Notice) |
| 19 | at page 10, paragraph 31, line 4 | |
| 20 | | |
| 21 | Paragraph 32 of Scott A. McMillian's | Lack of Foundation, Speculation, |
| 22 | Declaration In Support of Opposition to | unsupported lay opinion testimony |
| 23 | Nicole Chaker's Anti-SLAPP and | |
| 24 | 12(b)(6) Motions, page 10, lines 6 | |
| 25 | through 8 | |
| 26 | | |
| 27 | | |
| 28 | | |

Gilbert, Kelly
Crowley & Jennett LLP
Attorneys at Law

-5-
DEFENDANT NICOLE CHAKER'S OBJECTION TO DECLARATION OF SCOTT MCMILLIAN IN SUPPORT
OF ITS OPPOSITION TO DEFENDANT'S ANTI-SLAPP MOTION
4231450.1  48811-00002                                      3:16-cv-02186-WQH-MD

270

| | |
|---|---|
| 1   Paragraph 38 of Scott A. McMillian's | Lack of Foundation, Speculation, |
| 2   Declaration In Support of Opposition to | unsupported lay opinion testimony |
| 3   Nicole Chaker's Anti-SLAPP and | |
| 4   12(b)(6) Motions, page 13, lines 6-10 | |
| 5 | |
| 6   Paragraph 34 of Scott A. McMillian's | No foundation and speculation. FRE 702 |
| 7   Declaration In Support of Opposition to | and 703. No basis for personal |
| 8   Nicole Chaker's Anti-SLAPP and | knowledge. Lacks |
| 9   12(b)(6) Motions, page 10, lines 22 | foundation/speculation. FRE 602. |
| 10  through 24 | Hearsay. FRE 801-802. |
| 11 | |
| 12  Paragraph 38 of Scott A. McMillian's | No foundation and speculation. FRE 702 |
| 13  Declaration In Support of Opposition to | and 703. No basis for personal |
| 14  Nicole Chaker's Anti-SLAPP and | knowledge. Lacks |
| 15  12(b)(6) Motions, page 13, lines 6 | foundation/speculation. FRE 602. |
| 16  through 10. | Hearsay. FRE 801-802. |
| 17 | |
| 18  Paragraph 39 of Scott A. McMillian's | Lack of Foundation, Speculation, |
| 19  Declaration In Support of Opposition to | unsupported lay opinion testimony, |
| 20  Nicole Chaker's Anti-SLAPP and | unsupported expert testimony. FRE 702 |
| 21  12(b)(6) Motions, page 13, lines 11 to 19. | and 703. No basis for personal |
| 22 | knowledge. Lacks |
| 23 | foundation/speculation. FRE 602. |
| 24 | |
| 25  Paragraph 41 of Scott A. McMillian's | Lack of Foundation, Speculation, |
| 26  Declaration In Support of Opposition to | unsupported lay opinion testimony, |
| 27  Nicole Chaker's Anti-SLAPP and | unsupported expert testimony. FRE 702 |
| 28 | |

Gilbert, Kelly
Crowley & Jennett LLP
Attorneys at Law

-6-

DEFENDANT NICOLE CHAKER'S OBJECTION TO DECLARATION OF SCOTT MCMILLIAN IN SUPPORT
OF ITS OPPOSITION TO DEFENDANT'S ANTI-SLAPP MOTION

4231450.1  48811-00002

3:16-cv-02186-WQH-MD

271

| | |
|---|---|
| 1 | 12(b)(6) Motions, page 13, lines 23 to 28 |
| 2 | and page 14, lines 1 through 8. |

and 703. No basis for personal knowledge. Lacks foundation/speculation. FRE 602.

5  Paragraph 42 of Scott A. McMillian's
6  Declaration In Support of Opposition to
7  Nicole Chaker's Anti-SLAPP and
8  12(b)(6) Motions, page 14, lines 9
9  through 28 and page 15 line 1 through 2.

Lack of Foundation, Speculation, unsupported lay opinion testimony, unsupported expert testimony. FRE 702 and 703. No basis for personal knowledge. Lacks foundation/speculation. FRE 602.

12  Paragraph 50 of Scott A. McMillian's
13  Declaration In Support of Opposition to
14  Nicole Chaker's Anti-SLAPP and
15  12(b)(6) Motions, page 18 lines, 2
16  through 5.

Conclusory, Irrelevant and Not factual in nature. The declarant statements are not as to any facts relevant to a determination of the motion, but rather is a recitation of procedural matters and an interpretation of the contents of other pleadings.

19  Dated: January 30, 2017

GILBERT, KELLY, CROWLEY & JENNETT LLP

By: /s/ ARTHUR J. MCKEON, III
    ARTHUR J. MCKEON, III
    REBECCA J. SMITH
    Attorneys for Defendant
    NICOLE CHAKER

Gilbert, Kelly
Crowley & Jennett LLP
Attorneys at Law

-7-

DEFENDANT NICOLE CHAKER'S OBJECTION TO DECLARATION OF SCOTT MCMILLIAN IN SUPPORT
OF ITS OPPOSITION TO DEFENDANT'S ANTI-SLAPP MOTION

4231450.1  48811-00002

3:16-cv-02186-WQH-MD

272

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

SCOTT A. MCMILLAN, an individual; THE MCMILLAN LAW FIRM, APC, a California professional corporation,

                                        Plaintiffs,

    v.

DARREN D. CHAKER, an individual, and as trustee of PLATINUM HOLDINGS GROUP TRUST doing business as Counter Forensics, *et al.*,

                                        Defendants.

CASE NO. 16cv2186-WQH-MDD

ORDER

HAYES, Judge:

On August 28, 2017, the Court granted a motion to dismiss and dismissed the First Amended Complaint without prejudice. The Order stated, "Plaintiffs shall file any motion for leave to file an amended complaint pursuant to Local Rule 7.1 and within (30) days of the date this Order is issued." (ECF No. 83). The docket reflects that no motion for leave to file an amended complaint was filed within this period. The Clerk of Court is directed to close this case.

DATED: October 10, 2017

*William Q. Hayes*

**WILLIAM Q. HAYES**
United States District Judge

- 1 -                                                    16cv2186-WQH-MDD

1  Ryan G. Baker (Bar No. 214036)
   rbaker@bakermarquart.com
2  Brian T. Grace (Bar No. 307826)
   bgrace@bakermarquart.com
3  BAKER MARQUART LLP
   2029 Century Park East, Sixteenth Floor
4  Los Angeles, California 90067
   Telephone:  (424) 652-7800
5  Facsimile:  (424) 652-7850

6  *Attorneys for Specially Appearing*
7  *Defendant Vania Chaker*

8              UNITED STATES DISTRICT COURT

9             SOUTHERN DISTRICT OF CALIFORNIA

10

11 SCOTT A. MCMILLAN, an individual,    CASE NO. 3:16-CV-02186-WQH-
   THE MCMILLAN LAW FIRM, APC,         MDD
12 a California professional corporation,
                                       **SPECIALLY APPEARING**
13          Plaintiffs,                **DEFENDANT VANIA CHAKER'S**
                                       **REPLY IN SUPPORT OF HER**
14        vs.                          **MOTION TO DISMISS**
                                       **PLAINTIFFS' FIRST AMENDED**
15                                     **COMPLAINT, OR IN THE**
   DARREN D. CHAKER, an individual,    **ALTERNATIVE, TO QUASH**
16 and as trustee of PLATINUM          **DEFECTIVE SERVICE**
   HOLDINGS GROUP TRUST, dba
17 COUNTER FORENSICS; NICOLE           [Filed concurrently with the
   CHAKER, an individual, and as trustee Supplemental Declaration of Vania
18 of THE NICOLE CHAKER TRUST,         Chaker; Evidentiary Objections to the
   U/A dated August 18, 2010, VANIA    Declarations of Timothy J. Wang,
19 CHAKER, and individual and as       Joshua Van Noord, and Scott McMillan;
   beneficiary of The Island Revocable Response to Plaintiffs' Objections to the
20 Trust under Declaration of Trust dated Declaration of Specially Appearing
   June 2, 2015, MARCUS MACK as        Defendant Vania Chaker; and Specially
21 trustee of The Island Revocable Trust Appearing Defendant's Reply in Support
   under Declaration of Trust dated June 2, of Request for Judicial Notice]
22 2015,
                                       The Hon. William Q. Hayes
23          Defendants.
                                       Date: April 10, 2017
24                                     Courtroom: 14B
                                       Complaint Filed: August 29, 2016
25
                                       **[PER CHAMBERS ORDER, NO**
26                                     **ORAL ARGUMENT UNLESS THE**
                                       **COURT ORDERS]**
27

28

---

SPECIALLY APPEARING DEFENDANT VANIA CHAKER'S REPLY ISO MOTION TO DISMISS/QUASH

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

For years, Plaintiffs Scott A. McMillan and his 2-attorney law firm, The McMillan Law Firm, APC, have pursued a bizarre vendetta against defendant Darren Chaker.  McMillan's latest "firm announcement," dated October 4, 2012 states: "Darren Chaker, a vexatious litigant with a criminal history, failed in his appeal of the dismissal of his SLAPP suit against the Firm's client Wendy Mateo." Apparently unsatisfied with his prior efforts to aggravate Mr. Chaker, McMillan, a practicing attorney for 16 years, now seeks to escalate his prolonged feud with a nonsensical tome masquerading as a RICO action.    Because he needs co-conspirators to allege RICO, McMillan has added Mr. Chaker's mother and sister, specially appearing defendant Vania Chaker.  However, plaintiffs have not served Vania Chaker in the allotted time.  Accordingly, she should be dismissed from this action.

Procedurally proper service is fundamental to a federal court's exercise of jurisdiction over a defendant.  *Omni Captial Inter., Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 97-8 (1987).  "[I]n the absence of proper service of process, the district court has no power to render any judgment against the defendant's person or property unless the defendant has consented to jurisdiction or waived the lack of process."  *S.E.C. v. Ross*, 504 F.3d 1130, 1138-39 (9th Cir. 2007).

Plaintiffs claim they personally served defendant Vania Chaker on February 6, 2017, at 6:02 p.m.  But Ms. Chaker was not home at the time of that purported service.   She provided evidence that she was in Los Angeles County and not at her home when plaintiffs claim to have effected service.   In response to plaintiffs' attempts to draw negative inferences from her previously filed declaration, Ms. Chaker located additional evidence reflecting her whereabouts the evening of February 6.  (Supplemental Declaration of Vania Chaker ("Supp. Chaker Decl."), ¶¶

BAKER MARQUART LLP
2029 CENTURY PARK EAST, 16TH FLOOR
Los Angeles, CA 90067
Tel: (424) 652-7800 ● Fax: (424) 652-7850

SPECIALLY APPEARING DEFENANT'S REPLY ISO OF HER MOTION TO DISMISS OR IN THE ALTERNATIVE QUASH DEFECTIVE SERVICE

3-8.) The additional evidence includes a receipt from a Beverly Hills restaurant, at which Ms. Chaker ate dinner at approximately 6 p.m., as well as the paper receipt evidencing her 8:04 p.m. purchase from the Manhattan Beach Pottery Barn, along with a receipt for a subsequent purchase at 8:32 p.m. from another store in Manhattan Beach. (Id., ¶¶ 4-7, Exs. A-C.) To remove any doubt that she in fact made those purchases, Ms. Chaker submits the relevant portions of her credit card statement. (Id., ¶ 8, Ex. D.) Ms. Chaker was not served in this action.

Moreover, the "proof" plaintiffs offer that Ms. Chaker was properly served is no proof at all.[1] Timothy J. Wing, the process server who purports he served Ms. Chaker on February 6, 2017, saw a person that night in the driveway he believed to be female wearing a jacket and "hoodie." (Declaration of Timothy J. Wing ("Wing Decl."), ¶ 13-15.) Mr. Wing *assumed* that person was Ms. Chaker. (Id.) He then called out to that person "your [sic] served Vania Chaker" and tossed the FAC and summons over the property's fence even though, by his own admission, the person was no longer present. (Id., ¶ 14.) This does not qualify as proper personal service under the Federal Rules nor does it constitute substantial compliance with the personal service requirements. It is no surprise that Ms. Chaker only learned that plaintiffs claimed to have served her when another person provided her with a copy of the false proof of service filed on February 27, 2017. (Chaker Decl. at ¶ 9.)

Mr. McMillan is no ordinary litigant. He has practiced law for over 16 years, runs his own law firm and claims to be the dean of a law school. He obtained extensions for service on two separate occasions and had more than ample time to effectuate service, yet he failed to do so within the time permitted by this Court. Plaintiffs' false proof of service, filed on the last day of the time for service, should

---

[1] Ms. Chaker has submitted evidentiary objections to the declarations Plaintiffs submitted in support of their opposition.

BAKER MARQUART LLP
2029 CENTURY PARK EAST, 16TH FLOOR
LOS ANGELES, CA 90067
Tel: (424) 652-7800 • Fax: (424) 652-7850

SPECIALLY APPEARING DEFENDANT'S REPLY
ISO OF HER MOTION TO DISMISS OR IN THE
ALTERNATIVE QUASH DEFECTIVE SERVICE

1  not permit them to avoid the consequences of their inaction.  This Court should

2  dismiss Ms. Chaker from this case.

3  **II.    LEGAL ARGUMENT**

4      **A)    <u>Proper Service of Process is an Important Jurisdictional</u>**

5          **<u>Requirement.</u>**

6      It is well established that "[b]efore a federal court may exercise jurisdiction

7  over a defendant, the procedural requirement of service of summons must be

8  satisfied." *Omni Capital*, 484 U.S. at 108.  "Service of process, under longstanding

9  tradition in our system of justice, is fundamental to any procedural imposition on a

10  named defendant."  *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S.

11  344, 350 (1999).  Without proper service of process (or waiver of service by the

12  defendant), the district court has no power to adjudicate the rights of the parties.

13  *S.E.C. v. Ross*, 504 F.3d at 1138-39.   Accordingly, failure to timely serve a

14  defendant pursuant to the Federal Rules provides grounds for dismissal.  *Townsel v.*

15  *Contra Costa County, Cal.*, 820 F.2d 319, 320 (9th Cir. 1987).

16      **B)    <u>Strong and Convincing Evidence Demonstrates that Ms. Chaker</u>**

17          **<u>was Never Served.</u>**

18      A signed return of service, which generally constitutes *prima facie* evidence

19  of valid service, can be overcome by strong and convincing evidence demonstrating

20  a failure to serve.  *SEC v. Internet Solutions for Business Inc.,* 509 F.3d 1161, 1163

21  (9th Cir. 2007).  Evidence that the defendant was not at the location of purported

22  service, coupled with the defendant's sworn testimony, constitutes strong and

23  convincing evidence to rebut the presumption of service.  *See Durukan Am., LLC v.*

24  *Rain Trading, Inc.*, 787 F.3d 1161, 1164 (7th Cir. 2015).  In *Durukan*, the

25  "combined evidence of employment records showing [defendant's] expected

26  presence at a distant worksite and his sworn affidavit asserting that he was actually

27  at that site is more than sufficient to contradict the affidavits of service..." *Id.*

28

BAKER MARQUART LLP
2029 CENTURY PARK EAST, 16TH FLOOR
LOS ANGELES, CA 90067
Tel: (424) 652-7800 • Fax: (424) 652-7850

3

SPECIALLY APPEARING DEFENDANT'S REPLY
ISO OF HER MOTION TO DISMISS OR IN THE
ALTERNATIVE QUASH DEFECTIVE SERVICE

1    Plaintiffs contend that Ms. Chaker's evidence in support of her Motion to

2    Dismiss was "untrustworthy" because it did not explain where she was at exactly

3    6:02 p.m., February 6, 2017. (Opp. at 4-5.) Plaintiffs also question the validity of

4    the Pottery Barn receipt Ms. Chaker submitted because she received it via e-mail.

5    (Id. at 4.) Initially, Ms. Chaker's statement was clear: "On February 6, 2017, at 6:02

6    p.m., I was not at my home in San Diego. I was in Los Angeles County that

7    evening." In any event, Ms. Chaker, has again searched her records to locate

8    additional evidence of her whereabouts the evening of February 6. At 6:02 p.m., she

9    was hundreds of miles from where plaintiffs claim she was personally served.

10   (Supp. Chaker Decl., ¶ 4.)

11   Plaintiffs' process server, Timothy J. Wing, asserts that he personally served

12   Ms. Chaker at her home in San Diego on February 6, 2017, at 6:02 p.m. (Wing

13   Decl., ¶¶ 13-15.) But Ms. Chaker was in Los Angeles at that time preparing to eat

14   dinner. (Supp. Chaker Decl., ¶ 4.) From approximately 6:00 to 6:30 p.m., Ms.

15   Chaker dined at the Cheesecake Factory in Beverly Hills, California. (Id.) Her

16   receipt shows she placed her order at 6:08 p.m. and paid at 6:38 p.m. (Id., Ex. A.)

17   After dinner, she drove south to Manhattan Beach where she stopped to purchase a

18   few items for her home. Her first purchase was at the Pottery Barn at 8:04 p.m.

19   (Id.; Chaker Decl., ¶ 5.) She then walked next door to Williams Sonoma and

20   purchased two items at 8:32 p.m. (Supp. Chaker Decl., ¶ 6.) Ms. Chaker's receipts[2]

21   and accompanying credit card statement confirm that she made these purchases.

22   (Id., Exs. B-D.)

23   This evidence directly contradicts plaintiffs' proof of service. Accordingly,

24

25   _____

26   [2] In addition to the automatically generated e-mail receipt from the Pottery Barn that Plaintiffs have taken issue with, Ms. Chaker was able to locate the paper receipt

27   she received from the store for the purchase. (Supp. Chaker Decl., Ex. B.)

28

BAKER MARQUART LLP
2029 CENTURY PARK EAST, 16TH FLOOR
LOS ANGELES, CA 90067
Tel: (424) 652-7800 • Fax: (424) 652-7850

SPECIALLY APPEARING DEFENDANT'S REPLY
ISO OF HER MOTION TO DISMISS OR IN THE
ALTERNATIVE QUASH DEFECTIVE SERVICE

4

1   any presumption of validity created by their proof of service has been rebutted.

2   **C)**     **Plaintiffs' Attempts to Serve Ms. Chaker Did Not Substantially**

3          **Comply with the Federal Rules of Civil Procedure and Do Not**

4          **Qualify as Valid Service.**

5          A defendant must be served in accordance with Rule 4(e) of the Federal Rules

6   of Civil Procedure, or there is no personal jurisdiction.  *Beecher v. Wallace*, 381

7   F.2d 372 (9th Cir. 1967.)  These procedural requirements for service exist to protect

8   a defendant's due process rights and ensure that notice is reasonably calculated "to

9   apprise interested parties of the pendency of the action and afford them an

10  opportunity to present their objections."  *S.E.C. v. Ross*, 504 F.3d at 1138.

11  However, the Ninth Circuit has recognized that procedurally improper or invalid

12  service may still be deemed valid if the plaintiffs substantially complied with Rule 4

13  requirements.  *Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982).  In order

14  to prove substantial compliance, the plaintiffs must show that: "(a) the party that had

15  to be served personally received actual notice [within 90 days], (b) the defendant

16  would suffer no prejudice from the defect in service, (c) there is a justifiable excuse

17  for the failure to serve properly, *and* (d) the plaintiff would be severely prejudiced if

18  his complaint were dismissed."  *Borzeka v. Heckler*, 739 F.2d 444, 447 (9th Cir.

19  1984) (emphasis added).

20         Here, plaintiffs have not carried that burden.  Neither their "evidence" nor the

21  case law supports a finding of substantial compliance with Rule 4 because Ms.

22  Chaker did not receive actual notice from plaintiffs' service attempts and plaintiffs

23  offer no justifiable excuse for failing to server her properly.

24         Plaintiffs rely on *Travelers Cas. and Sur. Co. of Am. v. Brenneke*, 551 F.3d

25  1132, 1136 (9th Cir. 2009), and *Errion v. Connell*, 236 F.2d 447, 457 (9th Cir.

26  1956), to argue that Mr. Wing's service attempt on February 6, 2017, substantially

27  complied with Rule 4.  (Opp. at. 6.)  That reliance is misplaced.  In *Travelers*, the

28

BAKER MARQUART LLP
2029 CENTURY PARK EAST, 16TH FLOOR
LOS ANGELES, CA 90067
Tel: (424) 652-7800 • Fax: (424) 652-7850

SPECIALLY APPEARING DEFENDANT'S REPLY
ISO OF HER MOTION TO DISMISS OR IN THE
ALTERNATIVE QUASH DEFECTIVE SERVICE

1   service substantially complied because the defendant answered to his name when

2   called by the process server, the process server successfully served the defendant in

3   the past so he could be identified, and the process server saw the defendant through

4   a window and pointed to him and said "you have been served" before placing the

5   documents on the defendant's doorstep in plain view. *Id.* at 1134. Moreover, the

6   defendant offered no evidence to rebut the process server's factual statements. *Id.* at

7   1136. Similarly, in *Errion*, the process server saw the defendant, spoke to her, and

8   when she ducked behind a door, told her brother he was serving her. The process

9   server then threw the papers through a hole in the screen door. *Id.* at 457.

10      In stark contrast, Mr. Wing testifies that he saw someone in Ms. Chaker's

11  driveway he believed to be female wearing a jacket and "hoodie." (Wing Decl., ¶

12  13-15.) Mr. Wing assumed that person was Ms. Chaker even though he had never

13  seen her before. (Id.) He then called out to that person "your [sic] served Vania

14  Chaker" and tossed the FAC and summons over the property's fence. (Id., ¶ 14.)

15  Nothing from Mr. Wing's testimony suggests that the person he saw was aware he

16  threw the papers over the fence. Of course, that person was not Ms. Chaker, in any

17  event. Moreover, unlike the defendant in *Travelers*, Ms. Chaker has provided strong

18  evidence that she was not at home when Mr. Wing purportedly served her.

19      Plaintiffs also offer the testimony of Joshua Van Noord in an apparent attempt

20  to satisfy Rule 4 based on a handful of service attempts. Mr. Van Noord declares

21  that he attempted to serve Ms. Chaker twice in November 2016 and again on March

22  26, 2017, a month after this Court's deadline for service and the day plaintiffs filed

23  their opposition. (Declaration of Joshua Van Noord ("Van Noord Decl."), ¶¶ 5-13.)

24  But such efforts to serve obviously do not constitute service. On November 27, Mr.

25  Van Noord yelled "Hello?!" outside Ms. Chaker's property and "placed the service

26  packet consisting of a complaint, civil case cover sheet, and the second-amended

27  summons over the locked fence onto the driveway." (Id., ¶ 11.) On March 26, he

28

BAKER MARQUART LLP
2029 CENTURY PARK EAST, 16TH FLOOR
LOS ANGELES, CA 90067
Tel: (424) 652-7800 • Fax: (424) 652-7850

SPECIALLY APPEARING DEFENDANT'S REPLY
ISO OF HER MOTION TO DISMISS OR IN THE
ALTERNATIVE QUASH DEFECTIVE SERVICE

knocked on Ms. Chaker's door and waited for 45 minutes within sight of her driveway.  (Id., ¶ 13.)   These attempts clearly fall short of substantial compliance with Rule 4.

Plaintiffs did not substantially comply with the Rule 4 requirements. Plaintiffs have not served Ms. Chaker.

**D)**   **The Court Should Exercise Discretion to Dismiss Ms. Chaker from this Action, Because Plaintiffs Failed to Serve Her Before the February 27, 2017 Deadline.**

When a plaintiff fails to properly serve a defendant within the time allotted by Federal Rule of Civil Procedure 4(m), the court has discretion to dismiss the action against that defendant.  *Stevens v. Sec. Pac. Nat. Bank*, 538 F.2d 1387, 1389 (9th Cir. 1976) ("The choice between dismissal and quashing service of process is in the district court's discretion.")

At plaintiffs' request, this Court has previously extended the time for service twice.  (Dkt. 20; 38.)   Yet plaintiffs have not properly served Ms. Chaker and failed to do so by this Court's February 27, 2017 deadline.  Plaintiff McMillan – who is an experienced litigator and owns his own law firm (and, according to his website, is also the dean of a law school) – understands the Federal Rules.  He should be held accountable.

Plaintiffs' false proof of service, filed the last day of the service window, cannot save their meritless RICO action against Ms. Chaker.  The date of the alleged proof is also telling.  If plaintiffs were having such a difficult time serving Ms. Chaker, as they claim, they would not have waited over three weeks to file the proof of service.   The evidence suggests that plaintiffs simply ran out of time again and filed a false proof of service hoping to keep their action alive.  The Court should not reward litigants like McMillan who should clearly know better.  No more extensions are warranted and this Court should dismiss the FAC against Ms. Chaker with

BAKER MARQUART LLP
2029 CENTURY PARK EAST, 16TH FLOOR
LOS ANGELES, CA 90067
Tel: (424) 652-7800 ● Fax: (424) 652-7850

7

SPECIALLY APPEARING DEFENDANT'S REPLY
ISO OF HER MOTION TO DISMISS OR IN THE
ALTERNATIVE QUASH DEFECTIVE SERVICE

prejudice.

## III.   CONCLUSION

For the foregoing reasons, Specially Appearing Defendant Vania Chaker respectfully requests that the Court dismiss plaintiffs' FAC without leave to amend. In the alternative, she requests that the Court quash plaintiffs' purported service.

DATED: April 3, 2017                       BAKER MARQUART LLP

/s/ Ryan G. Baker
Ryan G. Baker
Brian T. Grace
*Attorneys for Specially Appearing*
*Defendant Vania Chaker*

SPECIALLY APPEARING DEFENANT'S REPLY
ISO OF HER MOTION TO DISMISS OR IN THE
ALTERNATIVE QUASH DEFECTIVE SERVICE

8

282



Office of the Clerk
**United States Court of Appeals for the Ninth Circuit**
Post Office Box 193939
San Francisco, California 94119-3939
415-355-8000

Molly C. Dwyer
Clerk of Court

March 20, 2018

| | |
|---|---|
| No.: | 18-55358 |
| D.C. No.: | 3:16-cv-02186-WQH-MDD |
| Short Title: | Scott McMillan, et al v. Darren Chaker, et al |

Dear Appellants/Counsel

A copy of your notice of appeal/petition has been received in the Clerk's office of the United States Court of Appeals for the Ninth Circuit. The U.S. Court of Appeals docket number shown above has been assigned to this case. You must indicate this Court of Appeals docket number whenever you communicate with this court regarding this case.

Please furnish this docket number immediately to the court reporter if you place an order, or have placed an order, for portions of the trial transcripts. The court reporter will need this docket number when communicating with this court.

**The due dates for filing the parties' briefs and otherwise perfecting the appeal have been set by the enclosed "Time Schedule Order," pursuant to applicable FRAP rules. These dates can be extended only by court order. Failure of the appellant to comply with the time schedule order will result in automatic dismissal of the appeal. 9th Cir. R. 42-1.**

**Appellants who are filing pro se should refer to the accompanying information sheet regarding the filing of informal briefs.**

1 | **FREEMAN MATHIS & GARY, LLP**
2 | TIMOTHY W. KENNA, A PROFESSIONAL CORPORATION / Bar No. 64280
   | t.kenna@gilbertkelly.com
   | ARTHUR J. MC KEON III / Bar No. 082540
3 | ajm@gilbertkelly.com
   | REBECCA J. SMITH / Bar No. 150428
4 | rjs@gilbertkelly.com
   | 401 B Street, Suite 2210
5 | San Diego, California 92101
   | (619) 687-3000; FAX: (213) 615-7100
6 |
   | **Mailing Address:**
7 | 550 South Hope Street, 22nd Floor
   | Los Angeles, California  90071-2627
8 |
   | Attorneys for Defendant
9 | NICOLE CHAKER

10 | **UNITED STATES DISTRICT COURT**

11 | **SOUTHERN DISTRICT OF CALIFORNIA**

12 |

| | |
|---|---|
| SCOTT A. MCMILLAN, an individual, THE MCMILLAN LAW FIRM, APC, a California professional corporation, | Case No. 3:16-CV-02186-WQH-MD |
| | Judge:  William Q. Hayes Courtroom 14B |
| Plaintiffs, | Magistrate Hon. Mitchell D. Dembin Courtroom 11th Floor |
| vs. | |
| DARREN D. CHAKER an individual, and as trustee of PLATINUM HOLDINGS GROUP TRUST, dba COUNTER FORENSICS; NICOLE CHAKER, an individual, and as trustee of THE NICOLE CHAKER REVOCABLE LIVING TRUST, U/A dated August 18, 2010, VANIA CHAKER, an individual and as beneficiary of The Island Revocable Trust under Declaration of Trust dated June 2, 2015, MARCUS MACK as trustee of The Island Revocable Trust under Declaration of Trust dated June 2, 2015, | **DECLARATION OF REBECCA J. SMITH IN SUPPORT OF DEFENDANT NICOLE CHAKER'S NOTICE OF MOTION FOR EXTENSION OF TIME TO FILE CROSS-APPEAL (FRAP 4(a)(5))** |
| | (Notice of Motion, Memorandum of Points and Authorities In Support Of Motion To Extend Time For Filing Notice of Cross-Appeal, and Proposed Order filed and served concurrently herewith) |
| Defendants. | Date:   January 15, 2018 |
| | Dept:   14B |

DECLARATION OF REBECCA J. SMITH IN SUPPORT OF NICOLE CHAKER'S MOTION TO EXTEND TIME TO FILE CROSS-APPEAL

Freeman Mathis
& Gary, LLP
Attorneys at Law

Case 3:16-cv-02186-WQH-MDD   Document 137-1   Filed 09/23/22   PageID.4508   Page 292 of
1196
Case 3:16-cv-02186-WQH-MDD   Document 91-1   Filed 12/12/17   PageID.3750   Page 2 of 85

1        I, REBECCA J. SMITH, declare:

2        1.    I am an attorney duly licensed to practice law in the State of California,

3 including this court, and a partner in the law offices of Freeman Mathis & Gray LLP,

4 attorneys of record for Defendant Nicole Chaker in the above entitled action.  I have

5 personal knowledge of the facts set forth herein and could competently testify thereto

6 if called upon to do so.

7        2.    This declaration is submitted in support of Defendant Nicole Chaker's

8 Motion For Extension Of Time By Which To File Cross-Appeal.

9        3.    Attorney Timothy W. Kenna, Arthur J. McKeon, III and I represented

10 Nicole Chaker as defendant in this action brought by Scott A. McMillan and The

11 McMillan Law Firm.

12       4.    On Ms. Chaker's behalf my firm filed both a Motion to Dismiss

13 pursuant to Federal Rules of Civil Procedure 12(b)(6) and an anti-SLAPP motion

14 under California Code of Civil Procedure § 425.16.

15       5.    On August 28, 2017, the court ruled on Nicole Chaker's Motion,

16 granting the motion to dismiss in its entirety and finding that the anti-SLAPP motion

17 was moot based on the granting of the 12(b)(6) motion and not addressing the anti-

18 SLAPP motion substantively.  (A true and correct copy of the Court's Order (ECF

19 83) is attached hereto, designated as exhibit "A" and incorporated herein by this

20 reference.)

21       6.    In the court's August 28,2017, order the court provided plaintiffs with

22 thirty (30) days to file a motion for leave to amend.  A motion for leave to amend

23 was not filed and accordingly, on October 10, 2017, the court ordered the case

24 closed.  (A true and correct copy of the case closure notice (ECF 86) is attached

25 hereto, designated as exhibit "B" and incorporated herein by this reference.)

26       7.    On November 5, 2017, plaintiffs filed a notice of appeal.  Timothy W.

27 Kenna and I did not receive service of the Notice of Appeal by electronic or any

28 other service.

Freeman Mathis
& Gary, LLP
Attorneys at Law

DECLARATION OF REBECCA J. SMITH IN SUPPORT OF NICOLE
CHAKER'S MOTION TO EXTEND TIME TO FILE CROSS-APPEAL

4582458.1  48811-00002 TWK       Page | 2       3:16-CV-02186-WQH-MD
285

8.     Generally, our office procedure and my procedure is when a notification is received from the court or another party in an action which would require some action or response on behalf of our office, that all appropriate dates are placed on my calendar.  Because we did not receive a notice of appeal, neither myself, nor my secretary, or Timothy Kenna and his secretary calendared a final date for the filing of a Cross-Appeal.

9.     On November 9, 2017, I received a letter from the 9th Circuit Court of Appeal advising Appellant that the notice of appeal had been received in the Clerk's office of the United States Court of Appeal.  At the same time, I received a notice from the 9th Circuit Court that I was not registered for electronic filing and a copy of the scheduling order.  (A true and correct copy of the notices and letters received from the 9th Circuit Court are attached hereto, designated as exhibit "C" and incorporated herein by this reference.)

10.   Upon receipt of the above notices from the 9th Circuit Court, my office examined the district court's website to ascertain whether a notice of appeal had been filed.  Upon reviewing PACER we determined that a notice of appeal had in fact been filed.  This was the first notice we had of a notice of appeal having been filed. Because this notice had not been served and was obtained from the court's website, it inadvertently wasn't processed in order to have all relevant associated dates placed on the attorney's calendar.  (A true and correct copy of the notice of appeal (ECF 87 is attached hereto, designated as exhibit "D" and incorporated herein by this reference.)

11.   Our office had been retained to represent the interest of Nicole Chaker in the underlying matter through her insurance carrier.  Accordingly, our office, specifically, attorney Timothy W. Kenna then notified Nicole Chaker's insurance carrier that an Appeal had been filed and provided a copy to the insurance carrier and requested that our office be again appointed to represent Ms. Chaker.

Freeman Mathis
& Gary, LLP
Attorneys at Law

DECLARATION OF REBECCA J. SMITH IN SUPPORT OF NICOLE
CHAKER'S MOTION TO EXTEND TIME TO FILE CROSS-APPEAL

12.     In addition to filing the Notice of Appeal, plaintiffs have now filed a separate state court action, San Diego Superior Court Case No. 37-2017-00036344-U-NP-CTL attempting to set forth causes of action for Civil Extortion and Unfair Competition, Business & Profession Code Section 17200 based on the same allegations which had been alleged in the action dismissed by the court.  (A true and correct copy of the state court action, without the exhibits is attached hereto, designated as exhibit "E" and incorporated herein by this reference.)  Counsel from my office also undertook to communicate with Ms. Chaker's insurance carrier regarding this new state court action which had been filed.

13.     Because of the numerous issues arising in regard to the appeal of the first action and plaintiff's refiling of a second state court action, there was some delay in obtaining confirmation from the insurance carrier that my firm had been retained to represent Nicole Chaker in the appeal.

14.     Once we were notified that we had been retained to represent Nicole Chaker in the appeal, we reviewed the notice of appeal and relevant case authority to determine whether a cross-appeal was required under the circumstances of the case. While it appears that all issues have been appealed by plaintiffs including both the granting of the motion to dismiss and the court's failure to make a determination on the anti-SLAPP motion, because of the nature of plaintiffs' notice of appeal, there is some small area of question as to the issues appealed.  Accordingly, in an abundance of caution a determination was made to file a cross-appeal on Nicole Chaker's behalf.

15.     A notice of cross-appeal has been prepared on behalf of Nicole Chaker and is attached hereto, designated as exhibit "F" and incorporated herein by this reference.

Freeman Mathis
& Gary, LLP
Attorneys at Law

DECLARATION OF REBECCA J. SMITH IN SUPPORT OF NICOLE
CHAKER'S MOTION TO EXTEND TIME TO FILE CROSS-APPEAL

1  I declare under penalty of perjury that the foregoing is true and correct.

2  Executed on this 12th day of December, 2017, at San Diego, California.

3

4  _____

5  REBECCA J. SMITH

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF REBECCA J. SMITH IN SUPPORT OF NICOLE
CHAKER'S MOTION TO EXTEND TIME TO FILE CROSS-APPEAL

Case 3:16-cv-02186-WQH-MDD Document 91-1 Filed 12/22/17 PageID.3764 Page 96 of 95

# Exhibit "A"

Case 3:16-cv-02186-WQH-MDD Document 83-1 Filed 02/22/17 PageID.3569 Page 1 of 35

1

2

3

4

5

6

7

8 **UNITED STATES DISTRICT COURT**

9 **SOUTHERN DISTRICT OF CALIFORNIA**

10 SCOTT A. MCMILLAN, an
individual; THE MCMILLAN LAW | CASE NO. 16cv2186-WQH-MDD
11 FIRM, APC, a California professional | ORDER
corporation,
12

13                        Plaintiffs,

      v.

14 DARREN D. CHAKER, an individual,
and as trustee of PLATINUM
15 HOLDINGS GROUP TRUST doing
business as Counter Forensics, *et al.*,
16
                      Defendants.

17 HAYES, Judge:

18       The matters before the Court are the motion to dismiss and the motion to strike

19 Plaintiffs' third cause of action filed by Defendant Nicole Chaker (ECF Nos. 35, 36);

20 the motion to dismiss and motion to strike filed by Defendant Darren D. Chaker (ECF

21 Nos. 55, 56); the motion to dismiss or alternatively to quash service filed by Defendant

22 Vania Chaker (ECF No. 59); and, the motin for sanctions by Defendant Darren Chaker

23 (ECF No. 66).

24 **I. BACKGROUND**

25       On December 5, 2016, Plaintiffs Scott A. McMillan and The McMillan Law

26 Firm, APC filed the First Amended Complaint ("FAC") against Defendant Darren D.

27 Chaker, an individual and as trustee of Platinum Holdings Group Trust, dba Counter

28 Forensics; Defendant Nicole Chaker, an individual and as trustee of The Nicole Chaker

Case 3:16-cv-02186-WQH-MDD   Document 183-1   Filed 02/22/17   PageID.3566   Page 6 of 86

1   Revocable Living Trust, U/A dates Augus t 18, 2010; Defendant Vania Chaker, an

2   individual and as beneficiary of The Island Revocable Trust under Declaration of Trust

3   dated June 2, 2015; and Defe ndant Marcus Mack, as trustee of the Island Revocable

4   Trust under Declaration of Trust dates June 2, 2015. (ECF No. 25). The FAC alleges

5   two causes of action under the Racketeer Influenced and Corrupt Organizations

6   ("RICO") Act pursuant to 18 U.S.C. § 1962(c) and (d) and a civil extortion cause of

7   action under California law.

8   **II. ALLEGATIONS OF THE FIRST AMENDED COMPLAINT ("FAC")**

9      Plaintiff Scott McMillan is a Californi a licensed attorney practicing law and

10  operating an unaccredited law schoo l. (ECF No. 25 at ¶5). Plaintiff McMillan Law

11  Firm, APC is a corporation operated by Scott McMillan. *Id.* ¶ 6. Defendants Vania and

12  Nicole Chaker are Defendant Darren Chaker's sister and mother, respectively.

13     Plaintiffs allege that Defendants c onstitute a RICO enterprise functioning

14  together "as a continuing unit with a common purpose to obtain the Plaintiffs' property

15  under fear induced by falsely imputing a deformity, disgrace, or crimes, and by threats

16  to do an unlawful injury to the person or property . . . all in violation of Cal. Penal Code

17  section 523 (extortion)." *Id.* ¶ 88. "The common purpose of the Enterprise members

18  was to assist each other in the filing of false and meritless lawsuits under federal debt

19  collection statutes; assist each other in th e filing of lawsuits against attorneys who

20  opposed them . . . and to conduct a campaign of harassment, defamation, and extortion

21  against attorneys, such as the Plaintiffs, who represented parties adverse to the interests

22  of the Enterprise members . . . ." *Id.* ¶ 91. "Enterprise member also assisted each other

23  in committing vandalism against Plaintiff's property." *Id.*

24     Defendant Darren Chaker is allege d to have com mitted multiple acts of

25  racketeering activity through acts involving extortion in violation of California Penal

26  Code sections 518, 519, and 523. *Id.* ¶¶ 94-109. Plaintiffs allege that Darren Chaker

27  sent threatening letters and com munications; posted defam atory and fabricated

28  statements online; sent letters threatening Plaintiffs' clients; and sent defamatory emails

1  to other attorneys and colleagues of Plaintiff McMillan. *Id.* Plaintiffs allege that these

2  acts constitute extortion because Defendant "obtained from Plaintiff his intangible

3  property right to practice law free of threats, and to practice in accordance with the

4  California Rules of Professional Conduct" and "obtained from Plaintiffs their intangible

5  property right to practice law and publish court decisions on the internet." *Id.* at ¶¶ 99-

6  109.

7      Plaintiffs bring the first cause of action for a violation of RICO, 18 U.S.C. §

8  1962(c) against Defendant Darren Chaker. *Id.* ¶¶ 84-114. Plaintiffs bring a second

9  cause of action for conspiracy to violate RICO, 18 U.S.C. § 1962(d) against all

10 Defendants. *Id.* ¶¶ 115-119. Plaintiffs bring a third cause of action for civil extortion

11 under California law against Defendants Darren Chaker and Nicole Chaker. *Id.* ¶¶ 120-

12 133.

13 **III. LEGAL STANDARD ON RULE 12(B)(6)**

14     Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state

15 a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal Rule of

16 Civil Procedure 8(a) provides that "[a] pleading that states a claim for relief must

17 contain . . . a short and plain statement of the claim showing that the pleader is entitled

18 to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) is appropriate where

19 the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable

20 legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

21     "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

22 requires more than labels and conclusions, and a formulaic recitation of the elements

23 of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

24 (quoting Fed. R. Civ. P. 8(a)). When considering a motion to dismiss, a court must

25 accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662,

26 679 (2009). However, a court is not "required to accept as true allegations that are

27 merely conclusory, unwarranted deductions of fact, or unreasonable inferences."

28 *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a

1   complaint to survive a m otion to dismiss, the non-conclusory factual content, and

2   reasonable inferences from that content, must be plausibly suggestive of a claim

3   entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir.

4   2009) (internal quotation marks omitted).

5   **IV. MOTIONS TO DISMISS BY DARREN CHAKER AND NICOLE CHAKER**

6   **(ECF Nos. 35, 56)**

7   　　Defendant Darren Chaker contends that the FAC should be dism issed with

8   prejudice for failure to state a claim. Defendant Darren Chaker contends that the RICO

9   cause of action pursuant to 18 U.S.C. §1962(c) must be dismissed because Plaintiffs fail

10  to adequately allege facts to support the predicate act of extortion. (ECF No. 56-1 at

11  10). Defendant Darren Chaker contends that Plaintiffs fail to state a claim for extortion

12  because Plaintiffs do not allege facts to show that Defendant Darren Chaker obtained

13  property from Plaintiffs. *Id.* at 13. Defendant Darren Ch aker further contends that

14  Plaintiffs lack standing because the FAC fails to allege cognizable damages. *Id.* at 18.

15  Defendant Darren Chaker contends that　the second cause of action for RICO

16  conspiracy, 18 U.S.C. § 1962(d), fails for the same reasons as the first cause of action.

17  Defendant Darren Chaker contends that　the Court should decline to exercise

18  supplemental jurisdiction over the state law claim. *Id.* at 19-20.

19  　　Defendant Nicole Chaker also contends the FAC should be dismissed for failure

20  to state a claim.[1] (ECF No. 35). Defendant Nicole Chaker contends that her alleged

21  conduct is prote cted by the Noerr-Pennington doctrine. (ECF No. 35-1 at 13-16).

22  Defendant Nicole Chaker contends that the RICO causes of action should be dismissed

23  because Plaintiffs fail to adequately plead an enterprise with an effect on interstate

24  commerce, a pattern of racketeering, c ognizable damages, or sufficient conduct or

25  _____

26  　　　[1] Defendant Nicole Chaker files a request for judicial notice of document in the
record of a district court case from t he United States District Court for the Central

27  District of California. (ECF No. 35-3). Plaintiffs' also file a request for judicial notice
of court documents in other cases. (ECF No. 45-1). The Court denies the request for

28  judicial notice as unnecessary. *See, e.g.*, *Asvesta v. Petroutsas*, 580 F.3d 1000, 1010
n. 12 (9th Cir. 2009) (denying request for judicial notice where judicial notice would
be "unnecessary").

participation in enterprise affairs. *Id.* at 18-25. Defendant Nicole Chaker contends that the claim under § 1962(d) necessarily fails if the § 1962(c) claim is dismissed. *Id.* at 24. Defendant Nicole Chaker contends that Plaintiffs do not sufficiently allege any cognizable injury to support the cause of action for civil extortion. *Id.* at 25. Defendant Nicole Chaker contends that she is "protected by the litigation privilege under California Civil Code § 47." *Id.* at 29.

Plaintiffs contend that the FAC sufficiently alleges extortion pursuant to the California Penal Code as a predicate act for the RICO claims (ECF No. 60). Plaintiffs contend that Defendant Darren Chaker "has obtained the Plaintiffs' property, i.e. the right to publicity, the goodwill in the business the Plaintiff's ability to practice law, the Plaintiff's identity and the Plaintiffs' logo." *Id.* at 14-15. Plaintiffs further contend that the FAC alleges cognizable damages in the form of injury to a business or property. *Id.* at 20-21. Plaintiffs contend that federal law, state law, and California state courts define "property" broadly to include the damage to intangible property interests alleged in the complaint. *Id.* at 20-26. Plaintiffs contend that intangible property rights were obtained by Defendant Darren Chaker. *Id.* at 26-30. Plaintiffs contend that the Court should exercise its supplemental jurisdiction over the state law claim of civil extortion. *Id.* at 30-31. Plaintiffs contend that the Noerr-Pennington doctrine has no applicability to this case. (ECF No. 43 at 25). Plaintiffs contend that Defendant Nicole Chaker is not protected by the litigation privilege under California Civil Code section 47. Plaintiffs contend that the FAC adequately alleges that Defendant Nicole Chaker conspired to violate § 1962(c). *Id.* at 20. Plaintiffs contend that the FAC adequately alleges a civil extortion claim. *Id.* at 22-23.

**A. RICO, 18 U.S.C. § 1962(c)**

"The Racketeer Influenced and Corrupt Organizations ('RICO') Act . . . provides for both criminal and civil liability." *Odom v. Microsoft Corp.*, 486 F.3d 541, 545 (9th Cir. 2007) (citing Pub. L. No. 91-452, § 901 84 Stat. 922 (1970) (codified at 18 U.S.C. §§ 1961-1968)). "Under RICO's civil enforcement mechanism, 'any person injured in

his business or property by reason of a violation of [18 U.S.C. § 1962] may sue therefor

in any appropriate United States district court and shall recover threefold the damages

he sustains and the cost of the suit, including a reasonable attorney's fee . . . .'"

*Canyon Cty v. Sygenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008) (citing 18 U.S.C.

§ 1964(c)). "Subsections 1962(a) through (c) prohibit certain 'pattern[s] of racketeering

activity' in relation to an 'enterprise.'" *United Bhd. of Carpenters & Joiners of Am. v.*

*Bldg. & Const. Trades Dep't, AFL-CIO*, 770 F.3d 834, 837 (9th Cir. 2014). "To have

standing under § 1964(c), a civil RICO plaintiff must show: (1) that his alleged harm

qualifies as injury to his business or property; and (2) that his harm was 'by reason of'

the RICO violation, which requires the plaintiff to establish proximate causation." *Id.*

(citing *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992); *Sedima,*

*S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).

Section 1962(c) provides,

> It shall be unlawful for any person employed by or associated with any
> enterprise engaged in, or the activities of which affect, interstate or foreign
> commerce, to conduct or participate, directly or indirectly, in the conduct
> of such enterprise's affairs through a pattern of racketeering activity or
> collection of unlawful debt.

18 U.S.C. § 1962(c). "The elements of a civil RICO claim are as follows: (1) conduct

(2) of an enterprise (3) through a pattern (4) of racketeering activity (known as

'predicate acts') (5) causing injury to plaintiff's business or property." *United Bhd. of*

*Carpenters*, 770 F.3d at 837 (citing *Living Designs, Inc. v. E.I. Dupont de Nemours &*

*Co.*, 431 F.3d 353, 361 (9th Cir. 2005)).

"A 'pattern of racketeering activity' requires at least two predicate acts of

racketeering activity, as defined in 18 U.S.C. § 1961(1) within a period of ten years."

*Canyon Cty*, 519 F.3d at 972. "Racketeering activity" as defined by statute includes

"any act or threat involving . . . extortion, . . . which is chargeable under State law."

18 U.S.C. § 1961(1)(A). To constitute a predicate act of extortion for purposes of a

RICO cause of action, the alleged act must satisfy the generic definition of extortion –

"obtaining something of value from another with his consent inducted by the wrongful

1    use of force, fear, or threats."   *United Bhd. of Carpenters*, 770 F.3d at 843 (citing

2    *United States v. Nardello*, 393 U.S. 286 (1969)).

3        In *Scheidler v. National Organization for Women, Inc.*, the Supreme Court

4    considered whether the use or threat of force, violence or fear to cause a party to "'give

5    up' property rights, namely, 'a woman's right to seek medical services from a clinic, the

6    right of the doctors, nurses or other clinic staff to perform their jobs, and the right of the

7    clinics to provide medical services free from wrongful threats, violence, coercion and

8    fear" constituted Hobbs Act extortion or a  state extortion offense for purposes of a

9    RICO predicate act.  537 U.S. 393, 400-01 (2003) The Court determined that although

10   "[t]here was no dispute . . . that petitione rs interfered with, disrupted, and in som e

11   instances completely deprived, respondents of their ability to exercise their property

12   rights . . . . such acts did not constitute extortion because petitioners did not 'o btain

13   respondents' property." *Id.* at 404-05.  The Court further stated, "Petitioners may have

14   deprived or sought to deprive respondents of their exclusive control of their business

15   assets, but they did not acquire any such   property.  Petitioners neither pursued nor

16   received 'something of value from' respondents that they could exercise, transfer or

17   sell." *Id.* (citing *Nardello*, 393 U.S. at 290)).

18       In this case, Plaintiffs allege that the requisite predicate acts are multiple acts of

19   extortion in violation of California Penal Code sections 518, 519, and 523.[2]  An act of

20   extortion  which is chargeable under stat e law can constitute racketeering activity

21   sufficient to support a RICO claim.  *See* 18 U.S.C. § 1961(1)(A).  However, to plead

22   extortion as a predicate act, Plaintiffs m ust allege facts to show that the act involved

23   "obtaining something of value from another." *United Bhd. of Carpenters*, 770 F.3d at

24   843; *Scheidler*, 537 U.S. at 410 ("[W]here as here the Model Penal Code and a majority

25   of States recognize the crime of extortion as requiring a party to obtain or to seek to

26   _____

27       [2] Plaintiffs allege the cause of ac tion pursuant to 18 U.S.C. § 1962(c) solely
against Defendant Darren Chaker.  Plaintiffs do not allege the cause of action pursuant
28   to 18 U.S.C. § 1962(c) against Defendant Nicole Chaker.  (ECF No. 25 at 33; ECF No.
43 at 6).

1   obtain property, as the Hobbs Act requires, the state extortion offense for purposes of

2   RICO must have a similar requirement."). Plaintiffs allege that various acts by

3   Defendant Darren Chaker constitute state extortion offenses and predicate acts under

4   RICO because Defendant Darren Chaker obtained from Plaintiffs the "intangible right

5   to practice law and publish decisions on the internet" and the "intangible property right

6   to practice law free of threats, and to practice in accordance with the California Rules

7   of Professional Conduct." (ECF No. 25 at ¶¶ 99-109). The Court concludes that these

8   factual allegations are insufficient to establish that Defendant Darren Chaker obtained

9   something of value from Plaintiffs. *Scheidler*, 537 U.S. at 410. Because Plaintiffs fail

10  to sufficiently allege a predicate act, Plaintiffs fail to state a claim pursuant to 18 U.S.C.

11  § 1962(c). *See, e.g.*, *United Bhd. of Carpenters*, 770 F.3d at 837 (stating that a plaintiff

12  must properly allege a predicate act to state a claim under RICO). The motion to

13  dismiss the cause of action under 18 U.S.C. § 1962(c) filed by Defendant Darren Chaker

14  is granted.

15     **B. RICO Conspiracy, 18 U.S.C. § 1962(d)**

16     Plaintiffs bring a RICO conspiracy cause of action against all Defendants and

17  allege that

18     commencing in 2004 and during and continuing at all times to the present,
       RICO defendants conspired to violate section 1962(c), i.e. each defendant
19     agreed that a conspirator (DARREN) would conduct or participate in the
       affairs of the Enterprise through a pattern of racketeering, including acts
20     involving extortion in violation of California state law, as more fully
       described in the First Claim for Relief.

21  (ECF No. 25 at ¶ 116).

22     A civil RICO cause of action is available for a violation of 18 U.S.C. § 1962(d).

23  *See* 18 U.S.C. § 1964(c). Pursuant to 18 U.S.C. § 1962(d), it is "unlawful for any

24  person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this

25  section." 18 U.S.C. § 1962(d). In *Howard v. Am. Online Inc.*, the Ninth Circuit Court

26  of Appeals held that "Plaintiffs cannot claim that a conspiracy to violate RICO existed

27  if they do not adequately plead a substantive violation of RICO." 208 F.3d 741, 751

28  (9th Cir. 2000). The Court has determined that Plaintiffs did not adequately plead a

- 8 -

16cv2186-WQH-MDD

Case 3:16-cv-02186-WQH-MDD   Document 137-1   Filed 09/23/22   PageID.4521   Page 305 of
1196

substantive violation of 18 U.S.C § 1962( c). The motions to dismiss the RICO conspiracy cause of action under 18 U.S.C. § 1962(d) filed by Defendants Nicole Chaker and Darren Chaker are granted.

### C. Civil Extortion Under State Law

The civil extortion cause of action alleged by Plaintiffs against Defendants Darren Chaker and Nicole Chaker does not arise under federal law. The FAC states that this case is properly in federal court based on federal question jurisdiction[3] and that this Court has supplemental jurisdiction over the remaining state law claim pursuant to 28 U.S.C. § 1367(a) because it is "so related to the claims in the action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." (ECF No. 25 at 2). The federal supplemental jurisdiction statute provides:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c).

Having dismissed the only federal claims asserted against Defendant Darren Chaker and Nicole Chaker, the Court declines to exercise supplemental jurisdiction over this state law claim pursuant to 28 U.S.C. § 1367(c). *See San Pedro Hotel Co., Inc. v. City of Los Angeles*, 159 F.3d 470, 478 (9th Cir. 1998). The motions to dismiss the civil extortion cause of action filed by Defendants Nicole Chaker and Darren Chaker are granted.

## V. MOTIONS TO STRIKE BY DARREN CHAKER AND NICOLE CHAKER

---

[3] Plaintiffs also allege, "This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332." (ECF No. 25 at ¶ 1). Plaintiffs have failed to allege sufficient facts to establish diversity jurisdiction and this statement appears to be in reference to 28 U.S.C. § 1331.

**(ECF Nos. 55, 36)**

Defendant Darren Chaker filed a motion to strike portions of the FAC pursuant to Federal Rule of Civil Procedure 12(f). (ECF No. 55). The Court has dismissed the FAC as to Darren Chaker. Accordingly, the Court denies as moot Defendant Darren Chaker's motion to strike. (ECF No. 55).

Defendant Nicole Chaker filed an anti-SIAPP motion to strike the third cause of action pursuant to California Code of Civil Procedure section 425.16 and for an award of attorney's fees pursuant to California Code of Civil Procedure section 425.16(c). (ECF No. 36). As a result of the Court's decision to decline supplemental jurisdiction over the state law civil extortion claim, the Court does not reach the merits of this motion. The Court denies as moot Defendant Nicole Chaker's anti-SLAPP motion to strike and for attorney's fees and costs. (ECF No. 36).

## VI. MOTION TO DISMISS OR QUASH SERVICE BY VANIA CHAKER (ECF No. 59)

"Specially Appearing Defendant" Vania Chaker moves the Court pursuant to Rule 12(b)(5) for an order dismissing the complaint or alternatively, for an order quashing defective service. (ECF No. 59). Defendant Vania Chaker contends that Plaintiffs failed to serve her prior to the Court's February 27, 2017 deadline for service. *Id.* at 4. Defendant Vania Chaker contends that Plaintiffs failed to serve her by personal service on February 6, 2017 at 6:02 p.m. as represented to the Court by Plaintiffs. *Id.* at 3. Defendant Vania Chaker contends that she has "strong and convincing" evidence that Plaintiff's purported proof of service is fabricated because Defendant Vania Chaker was not at this location at that time.[4] *Id.* at 3-5. Defendant Vania Chaker further

---

[4] Defendant Vania Chaker requests judicial notice of decision of the California Court of Appeal, Fourth District, Division 1. (ECF No. 59-3). Plaintiffs object to the request for judicial notice. (ECF No. 64-5). The Court does not rely on this material in reaching its decision and denies the request for judicial notice. *See, e.g., Asvesta v. Petroutsas*, 580 F.3d 1000, 1010 n. 12 (9th Cir. 2009) (denying request for judicial notice where judicial notice would be "unnecessary"). Additionally, Defendant Vania Chaker filed evidentiary objections to declarations filed by Plaintiffs. (ECF Nos. 69-2, 69-3, 69-4). The Court has reviewed and considered these objections. A ruling on

1  contends that the Summons filed by Plaintiffs incorrectly names Vania Chaker as an

2  individual and as trustee of Vania Chaker Trust.  *Id.* at 3.  Defendant Vania Chaker

3  contends she should be dismissed from this action because Plaintiffs have failed to

4  complete service despite two extensions of time and have failed to establish good cause

5  for another extension of time.  *Id.* at 7.

6      Plaintiffs contend that Defendant Vania Chaker was properly served on Feburary

7  6, 2017.  Plaintiffs contend that the evidence offered in support of Defendant Vania

8  Chaker's motion is not credible and does not establish that she was not home at the time

9  stated in the proof of service filed with the Court.[5]  (ECF No. 64).  Plaintiffs contend

10  that the Court should find service proper based on the substantial compliance doctrine.

11  *Id.* at 5-6.  Plaintiffs request that the Court deny this motion and order Defendant Vania

12  Chaker to respond to the complaint within ten days.  Plaintiffs request that, if the Court

13  grants any portion of the motion, the Court extend time for service, designate counsel

14  for Vania Chaker as agent for service of process, and order that her counsel accept the

15  service by email.  *Id.* at 8.

16      **A. Legal Standard**

17      "Without a proper basis for jurisdiction, or in the absence of service of process,

18  the district court has no power to render any judgment against the defendant's person

19  or property unless the defendant has consented to jurisdiction or waived the lack of

20  process."  *S.E.C. v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007).  "A federal court is

21  without personal jurisdiction over a defendant unless the defendant has been served in

22  accordance with Fed.R.Civ.P. 4."  *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986),

23  amended, 807 F.2d 1514 (9th Cir. 1987) (citing *Jackson v. Hayakawa*, 682 F.2d 1344,

24  1347 (9th Cir. 1982)).  Federal Rule of Civil Procedure 12(b)(5) authorizes a defendant

25  to move to dismiss the complaint for insufficient service of process.  Fed. R. Civ. P.

26  _____

27  these objections is not necessary to resolve this motion.

28  [5] Plaintiffs filed evidentiary objections to the declaration filed by Vania Chaker in support of her motion.  (ECF No. 64-4).  The Court has reviewed and considered these objections.  A ruling on these objections is not necessary to resolve this motion.

12(b)(5). Once a party challenges service, the plaintiff bears the burden to show that service was valid under Rule 4. *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). The court has discretion to dismiss an action or quash service if there is insufficiency of process or insufficiency of service *See SHJ v. Issaquah School District No. 411*, 470 F.3d 1288, 1293 (9th Cir. 2006) (citing *Stevens v. Security Pac. Nat'l Bank*, 538 F.2d 1387, 1389 (9th Cir. 1976)).

Under Federal Rule of Civil Procedure 4(e), a plaintiff may serve an individual within a judicial district of the United States by (1) following state law service requirements, or (2) service may be effected upon an individual by (A) delivering a copy of the summons and complaint to the individual personally, (B) by leaving a copy of each "at the individual's dwelling or usual place of abode" with someone of suitable age and discretion who resides there; or (C) by delivering a copy of each to an "agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e).

California Code of Civil Procedure section 415.20(a) states,

> In lieu of personal delivery of a copy of the summons and complaint to the person to be served...a summons may be served by leaving a copy of the summons and complaint during usual office hours in his or her office, or if no physical address is known, at his or her usual mailing address... with the person who is apparently in charge thereof, and by thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left....

Cal. Code of Civ. P. § 415.20(a).

If a party receives sufficient notice of the complaint, Rule 4 is to be "liberally construed" to uphold service. *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1404 (9th Cir. 1994). "However, 'neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction without substantial compliance with Rule 4.'" *Travelers Cas. & Sur. Co. of Am. v. Brenneke*, 551 F.3d 1132, 1135 (9th Cir. 2009) (citing *Benny*, 799 F.2d at 492 (citation and quotes omitted)).

**B. Discussion**

Plaintiffs filed their original complaint on August 29, 2016 (ECF No. 1) and the

- 12 -

16cv2186-WQH-MDD

1   FAC on December 5, 2016 (ECF No. 25). On December 20, 2016, this Court issued an

2   order granting Plaintiffs a second extension of time in which to complete service upon

3   Defendant Vania Chaker. (ECF No. 38). The Order stated, "Plaintiffs' new deadline

4   to achieve service on Vania Chaker is Monday, February 27, 2017." *Id.*

5       On February 27, 2017, Plaintiffs filed Proof of Service of Summons in the

6   Complaint. (ECF No. 58). The document states that Defendant Vania Chaker was

7   served by personal service on February 6, 2017 at 6:02 p.m. in San Diego by a

8   registered process server. (ECF No. 58). Defendant Vania Chaker asserts she was not

9   served on February 6, 2017. Defendant Vania Chaker provides receipts from purchases

10  she made in Manhattan Beach, California around the time of service on February 6,

11  2017 to establish that she was not in San Diego at this time and date.

12      In a declaration filed in support of Plaitiffs' opposition, the process server states

13  that on February 6, 2017 around 6 p.m., he observed Vania Chaker at the address stated

14  in the proof of service document. He states that he

15          jogged up towards the driveway, calling out "Hey you, Vania" or words
            to that effect. When I made the st atement Ms. Chaker was in speaking
16          distance to me, and my voice was sufficiently elevated to provide her
            notice that I was attempting to contact her. However, upon hearing my
17          shout, Ms. Chaker, who had exited from the garage . . . made a dash for
            the front floor of the house. . . . Ms Chaker entered the  house and closed
18          the door behind her. . . . I called out service by stating "your served Vania
            Chaker", and I tossed the papers over  the fence, . . . I was  not able to
19          actually 'touch' her with the papers as she was behind a closed gate, and
            I  did not intend to go off the public      sidewalk onto private property.
20          However I was within 10 yards of her, and as close as I could get in light
            of the barrier imposed by her fence.
21
22  (ECF No. 64-1 at 4).

23      Based on the statements offered in the   declaration by the process server, the

24  Court cannot conclude that Plaintiffs delivered a copy of the summons and complaint

25  to Defendant Vania Chaker personally. *See* Fed. R. Civ. P. 4(e). Plaint iffs further

26  contend that the Court should uphold service as proper under the substantial compliance

27  doctrine. In *Travelers Cas. & Sur. Co. of Am. v. Brenneke*, the Ninth Circuit Court of

28  Appeals held,

        Sufficient service m ay be found wher e there is a good faith effort to

- 13 -                           16cv2186-WQH-MDD

comply with the requirements of Rule 4(e)(2) which has resulted in placement of the summons and complaint within the defendant's immediate proximity and further compliance with Rule 4(e)(2) is only prevented by the defendant's knowing and intentional actions to evade service.

551 F.3d at 1136. While Plaintiffs assert that Defendant Vania Chaker has attempted to evade service and that the process server left the papers in her proximity, Defendant Vania Chaker provides evidence that she was not present at the address when the alleged service was completed. The Court concludes that Plaintiffs have failed to satisfy their burden to demonstrate that service upon Defendant Vania Chaker was proper under Rule 4. *See id.* at 1135 ("neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction without substantial compliance with Rule 4."). The Court grants Defendant Vania Chaker's motion to quash service of process. *See Issaquah School District No. 411*, 470 F.3d at 1293

However, the Court has determined that Plaintiffs did not adequately plead a substantive violation of 18 U.S.C § 1962(c). Accordingly, Plaintiffs' claim for a conspiracy to violate RICO pursuant to 18 U.S.C. § 1962(d) necessarily fails. *See supra* Part IV.B; *Howard*, 208 F.3d at 751. Conspiracy to violate RICO pursuant to 18 U.S.C. § 1962(d) is the only cause of action alleged against Defendant Vania Chaker. The Court dismisses the FAC without prejudice as to Defendant Vania Chaker. (ECF No. 25).

## VII. MOTION FOR SANCTIONS BY DARREN CHAKER (ECF No. 66)

Defendant Darren Chaker filed a motion for sanctions against Plaintiffs pursuant to Rule 11 of the Federal Rules of Civil Procedure, or alternatively, the Court's inherent power. (ECF No. 66). Defendant Darren Chaker contends that sanctions are warranted because (1) the allegations in the FAC are "factually baseless from an objective perspective, and were included in the FAC for an improper purpose"; (2) Plaintiffs' RICO claims are frivolous; and (3) Plaintiffs' RICO claims were brought "for the improper purpose of naming Darren's mother . . . and sister . . . as Defendants . . . solely to harass Darren and his family." *Id.* at 2.

1  Plaintiffs contend that the motion is without merit and that the allegations of the

2  FAC are proper, non-frivolous, and sufficiently supported by facts. (ECF No. 75).

3  Rule 11 of the Federal Rules of Civil Procedure provides in part,

4  b) Representations to the Court. By presenting to the court a pleading,
   written motion, or other paper--whether by signing, filing, submitting, or
5  later advocating it--an attorney or unrepresented party certifies that to the
   best of the person's knowledge, information, and belief, formed after an
6  inquiry reasonable under the circumstances:

7  (1) it is not being presented for any improper purpose, such as to harass,
   cause unnecessary delay, or needlessly increase the cost of litigation;
8
   (2) the claims, defenses, and other legal contentions are warranted by
9  existing law or by a nonfrivolous argument for extending, modifying, or
   reversing existing law or for establishing new law;
10
   (3) the factual contentions have evidentiary support or, if specifically so
11 identified, will likely have evidentiary support after a reasonable
   opportunity for further investigation or discovery;...
12
   Fed. R. Civ. P. 11(b)(3). When a "complaint is the primary focus of Rule 11
13
   proceedings, a district court must conduct a two-prong analysis to determine (1)
14
   whether the complaint is legally or factually baseless from an objective perspective, and
15
   (2) if the attorney has conducted a reasonable and competent inquiry before signing and
16
   filing it." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (quotation
17
   omitted). "As shorthand for this test, we use the word 'frivolous' to denote a filing that
18
   is both baseless and made without a reasonable and competent inquiry." *Holgate v.*
19
   *Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) (quotation omitted).
20
21 After reviewing the motion and the submissions of the parties, the Court finds

22 that the record in this case does not support the imposition of sanctions at this stage in

   the proceedings. The motion for sanctions is denied. (ECF No. 66).
23
   **VIII. CONCLUSION**
24
25 IT IS HEREBY ORDERED that Defendant Darren Chaker's motion to dismiss

   the First Amended Complaint is granted. (ECF No. 56). The First Amended Complaint
26
   (ECF No. 25) is dismissed without prejudice as to Defendant Darren Chaker.
27
   Accordingly, Defendant Darren Chaker's motion to strike portions of the First
28
   Amended Complaint pursuant to Federal Rule of Civil Procedure 12(f) is denied as

- 15 -                                                        16cv2186-WQH-MDD

1   moot.  (ECF No. 55).

2   IT IS HEREBY ORDERED that Defendant Darren Chaker's motion for sanctions

3   is denied.  (ECF No. 66)

4   IT IS HEREBY ORDERED that Defendant Nicole Chaker's motion to dismiss

5   the First Amended Complaint is granted. (ECF No. 35).  The First Amended Complaint

6   (ECF No. 25) is dismissed without prejudice as to Defendant Nicole Chaker.  Defendant

7   Nicole Chaker's anti-SLAPP motion to strike and for attorneys' fees and costs is denied

8   as moot.  (ECF No. 36).

9   IT IS HEREBY ORDERED that Defendant Vania Chaker's motion to quash the

10   service of process is granted.  (ECF No.59). The Court quashes service upon Defendant

11   Vania Chaker and grants Plaintiffs sixty (60) days from the date any amended

12   complaint is filed upon which to perfect service upon Vania Chaker in accordance with

13   the requirements of Federal Rule of Civil Procedure 4.

14   IT IS FURTHER ORDERED that the First Amended Complaint (ECF No. 25)

15   is dismissed without prejudice as to Defendant Vania Chaker.  Plaintiffs shall file any

16   motion for leave to file an amended complaint pursuant to Local Rule 7.1 and within

17   thirty (30) days of the date this Order is issued.

18   DATED:  August 28, 2017

19   _William Q. Hayes_

20   **WILLIAM Q. HAYES**
     United States District Judge

21

22

23

24

25

26

27

28

Case 3:16-cv-02186-WQH-MDD   Document 127-1   Filed 09/23/22   PageID.4529   Page 313 of
Case 3:16-cv-02186-WQH-MDD   Document 91-1   Filed 12/12/17   PageID.3781   Page 23 of 89
1196

# Exhibit "B"

Case 3:16-cv-02186-WQH-MDD Document 137-1 Filed 09/22/22 PageID.4580 Page 314 of
Case 3:16-cv-02186-WQH-MDD Document 96 Filed 10/10/17 PageID.3629 Page 1 of 1
1196

1<br/>2<br/>3<br/>4<br/>5<br/>6<br/>7

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT A. MCMILLAN, an individual; THE MCMILLAN LAW FIRM, APC, a California professional corporation, | CASE NO. 16cv2186-WQH-MDD |
| | ORDER |
| Plaintiffs, | |
| v. | |
| DARREN D. CHAKER, an individual, and as trustee of PLATINUM HOLDINGS GROUP TRUST doing business as Counter Forensics, *et al.*, | |
| Defendants. | |

HAYES, Judge:

On August 28, 2017, the Court granted a motion to dismiss and dismissed the First Amended Complaint without prejudice. The Order stated, "Plaintiffs shall file any motion for leave to file an amended complaint pursuant to Local Rule 7.1 and within (30) days of the date this Order is issued." (ECF No. 83). The docket reflects that no motion for leave to file an amended complaint was filed within this period. The Clerk of Court is directed to close this case.

DATED: October 10, 2017

*William Q. Hayes*

**WILLIAM Q. HAYES**
United States District Judge

# Exhibit "C"



Office of the Clerk
**United States Court of Appeals for the Ninth Circuit**
Post Office Box 193939
San Francisco, California 94119-3939
415-355-8000

Molly C. Dwyer
Clerk of Court

November 06, 2017

No.:          17-56676
D.C. No.:     3:16-cv-02186-WQH-MDD
Short Title:  Scott McMillan, et al v. Darren Chaker, et al

Dear Appellant/Counsel

A copy of your notice of appeal/petition has been received in the Clerk's office of
the United States Court of Appeals for the Ninth Circuit. The U.S. Court of
Appeals docket number shown above has been assigned to this case. You must
indicate this Court of Appeals docket number whenever you communicate with
this court regarding this case.

Please furnish this docket number immediately to the court reporter if you place an
order, or have placed an order, for portions of the trial transcripts. The court
reporter will need this docket number when communicating with this court.

**The due dates for filing the parties' briefs and otherwise perfecting the appeal
have been set by the enclosed "Time Schedule Order," pursuant to applicable
FRAP rules. These dates can be extended only by court order. Failure of the
appellant to comply with the time schedule order will result in automatic
dismissal of the appeal. 9th Cir. R. 42-1.**

**Appellants who are filing pro se should refer to the accompanying
information sheet regarding the filing of informal briefs.**



UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

NOV 06 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

SCOTT A. MCMILLAN; THE
MCMILLAN LAW FIRM, APC,

                  Plaintiffs - Appellants,

   v.

DARREN D. CHAKER, an
individual, and as trustee of
PLATINUM HOLDINGS GROUP
TRUST, DBA Counter Forensics;
VANIA CHAKER, an individual and
as beneficiary of The Island
Revocable Trust under Declaration of
Trust dated June 2, 2015; NICOLE
CHAKER, an individual, and as
trustee of THE NICOLE CHAKER
REVOCABLE LIVING TRUST,
U/A dated August 18, 2010,

             Defendants - Appellees.

No. 17-56676

D.C. No. 3:16-cv-02186-WQH-MDD
U.S. District Court for Southern
California, San Diego

**TIME SCHEDULE ORDER**

The parties shall meet the following time schedule.

| | |
|---|---|
| **Thu., January 4, 2018** | Appellant's opening brief and excerpts of record shall be served and filed pursuant to FRAP 32 and 9th Cir. R. 32-1. |
| **Mon., February 5, 2018** | Appellee's answering brief and excerpts of record shall be served and filed pursuant to FRAP 32 and 9th Cir. R. 32-1. |

The optional appellant's reply brief shall be filed and served within 21 days of service of the appellee's brief, pursuant to FRAP 32 and 9th Cir. R. 32-1.

Failure of the appellant to comply with the Time Schedule Order will result in automatic dismissal of the appeal. See 9th Cir. R. 42-1.

FOR THE COURT:

MOLLY C. DWYER
CLERK OF COURT

By: John Brendan Sigel
Deputy Clerk
Ninth Circuit Rule 27-7



Molly C. Dwyer
Clerk of Court

Office of the Clerk
**United States Court of Appeals for the Ninth Circuit**
Post Office Box 193939
San Francisco, California 94119-3939
415-355-8000

---

## ATTENTION
## YOU ARE NOT REGISTERED FOR ELECTRONIC FILING

---

You are listed as counsel of record in this new appeal/petition but you are not registered for electronic filing with this Court. See Ninth Circuit Rule 25-5.

Until you register for electronic filing or provide the Court with proof of an exemption, you will not receive further notice of filings from the Court in this case, including important scheduling orders and orders requiring a response. Failure to respond to a Court order or otherwise meet an established deadline can result in the dismissal of the appeal for failure to prosecute by the Clerk pursuant to Ninth Circuit Rule 42-1, or other action adverse to your client.

Please register for electronic filing with the Court immediately or file a notice/motion to withdraw as counsel from this appeal.

To register for electronic filing, and for more information about Ninth Circuit CM/ECF, visit our website at http://www.ca9.uscourts.gov/cmecf/#section-registration.

Case 3:16-cv-02186-WQH-MDD Document 191 Filed 12/12/13 PageID.6783 Page 30 of 99

17-56676

Rebecca Jo Smith
Freeman Mathis & Gary, LLP
550 S. Hope Street
22nd Floor
Los Angeles, CA 90071

Case 3:16-cv-02186-WQH-MDD Document 127-1 Filed 09/23/22 PageID.4537 Page 321 of
1196
Case 3:16-cv-02186-WQH-MDD Document 127-1 Filed 12/12/17 PageID.3783 Page 31 of 89




$00.60

neopost™
11/06/2017
US POSTAGE

ZIP 9411
041L11231430



LEGAL MAIL

2017 NOV -8 PM 3: 19

9007132633 C035

CLERK, U.S. COURT OF APPEALS
FOR THE NINTH CIRCUIT
P.O. BOX 193939
SAN FRANCISCO, CALIFORNIA 94119-3939

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE $300

# Exhibit "D"

1   Scott A. McMillan, SBN 212506
    The McMillan Law Firm, APC
2   4670 Nebo Drive, Suite 200
    La Mesa, California 91941-5230
3   (619) 464-1500
    Email: scott@mcmillanlaw.us
4
    Attorney for Plaintiffs, SCOTT A. MCMILLAN, an individual, and THE
5   MCMILLAN LAW FIRM, APC, a California Professional Corporation

6

7

8                          UNITED STATES DISTRICT COURT

9                        SOUTHERN DISTRICT OF CALIFORNIA

10  SCOTT A. MCMILLAN, an                    Case No. 3:16-CV-02186-WQH-MDD
    individual, THE MCMILLAN LAW
11  FIRM, APC, a California Professional     Judge: Hon. William Q. Hayes
    Corporation,                             Courtroom: 14B
12
13    Plaintiffs,

14  v.                                       NOTICE OF APPEAL;
                                             STATEMENT OF
15  DARREN D. CHAKER an individual,          REPRESENTATION [9TH Cir. R. 3-
    and as trustee of PLATINUM              2]
16  HOLDINGS GROUP TRUST, dba
    COUNTER FORENSICS; NICOLE
17  CHAKER, an individual, and as
    trustee of THE NICOLE CHAKER
18  REVOCABLE LIVING TRUST, U/A
    dated August 18, 2010, VANIA
19  CHAKER, an individual and as
    beneficiary of The Island Revocable
20  Trust under Declaration of Trust dated
    June 2, 2015, MARCUS MACK as
21  trustee of The Island Revocable Trust
    under Declaration of Trust dated June
22  2, 2015,

23    Defendants.

24

25

26

27

28

                                       316

1        Notice is hereby given that Plaintiffs Scott A. McMillan and The McMillan

2  Law Firm, APC ("Plaintiffs"), hereby appeal to the United States Court of Appeal

3  for the Ninth Circuit from the order closing this case entered on October 10, 2017

4  [ECF 86], a copy of which is attached hereto, and the prior adverse rulings.

5  Dated: November 5, 2017           Respectfully submitted,

6

7                          /s/ Scott A. McMillan

8                          Scott A. McMillan, SBN 212506
                                 Attorneys for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case 3:16-cv-02186-WQH-MDD Document 127-1 Filed 09/08/22 PageID.4541 Page 325 of
1196
Case 3:16-cv-02186-WQH-MDD Document 86 Filed 10/10/17 PageID.3785 Page 1 of 1

1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**
9                   **SOUTHERN DISTRICT OF CALIFORNIA**
10

| | |
|---|---|
| SCOTT A. MCMILLAN, an individual; THE MCMILLAN LAW FIRM, APC, a California professional corporation, | CASE NO. 16cv2186-WQH-MDD |
| | ORDER |
| Plaintiffs, | |
| v. | |
| DARREN D. CHAKER, an individual, and as trustee of PLATINUM HOLDINGS GROUP TRUST doing business as Counter Forensics, *et al.*, | |
| Defendants. | |

17  HAYES, Judge:

18          On August 28, 2017, the Court granted a  motion to dismiss and dismissed the

19  First Amended Complaint without prejudice.  The Order stated, "Plaintiffs shall file any

20  motion for leave to file an amended complaint pursuant to Local Rule 7.1 and within

21  (30) days of the date this Order is issued."  (ECF No. 83).  The docket reflects that no

22  motion for leave to file an amended complaint was filed within this period.  The Clerk

23  of Court is directed to close this case.

24  DATED:  October 10, 2017

25                              *William Q. Hayes*

26                              **WILLIAM Q. HAYES**
                               United States District Judge

27
28

NOTICE OF REPRESENTATION
[Ninth Circuit Rule 3-2]

| | |
|---|---|
| The McMillan Law Firm, APC<br>Plaintiff - Appellant | Scott A. McMillan, CBN 212506<br>The McMillan Law Firm, APC<br>4670 Nebo Drive, Suite 200,<br>La Mesa, CA 91941<br>(619) 464-1500 x 14 |
| Scott A. McMillan<br>Plaintiff - Appellant | Scott A. McMillan, CBN 212506<br>The McMillan Law Firm, APC<br>4670 Nebo Drive, Suite 200,<br>La Mesa, CA 91941<br>(619) 464-1500 x 14 |
| Darren D. Chaker<br>an individual, and as trustee of<br>PLATINUM HOLDINGS GROUP<br>TRUST<br><br>Defendant - Appellee | Represented by<br>Charles Thomas Spagnola<br>Sullivan Krieger Truong Spagnola &<br>Klausner, LLP<br>444 W. Ocean Blvd., Suite 1700<br>Long Beach, CA 90802<br>562-597-7070<br>Fax: 562-597-7772<br>Email:<br>cspagnola@sullivankrieger.com<br><br>Eliot Franklin Krieger<br>Sullivan Krieger Truong Spagnola &<br>Klausner, LLP<br>444 W. Ocean Blvd., Suite 1700<br>Long Beach, CA 90802<br>562-597-7070<br>Fax: 562-597-7772<br>Email: ekrieger@sullivankrieger.com<br><br>Adam M Tamburelli<br>Sullivan, Krieger, Truong, Spagnola &<br>Klausner, LLP<br>444 West Ocean Boulevard<br>Suite 1700<br>Long Beach, CA 90802<br>562-597-7070<br>Email:<br>atamburelli@sullivankrieger.com |

1

2  Vania Chaker
    an individual and as beneficiary of The
3   Island Revocable Trust under
    Declaration of Trust dated June 2,
    2015

4

5   Defendant - Appellee

6

7   Nicole Chaker
    an individual, and as trustee of
8   The Nicole Chaker Revocable
    Living Trust, U/A dated August 18,
9   2010

10  Defendant - Appellee

Represented by

Ryan G. Baker
Baker Marquart, LLP
2029 Century Park East
Suite 1600
Los Angeles, CA 90067
(424) 652-7800
Fax: (424) 652-7850
Email: rbaker@bakermarquart.com

Represented by

Rebecca Jo Smith
Freeman Mathis & Gary, LLP
550 S. Hope St.
22nd Floor
Los Angeles, CA 90071
213-615-7008
Fax: 216-615-7100
Email: rjs@gilbertkelly.com

Timothy W Kenna
Freeman Mathis & Gary, LLP
550 South Hope Street
22nd Floor
Los Angeles, CA 90071
(213)615-7116
Fax: (213)615-7100
Email: t.kenna@gilbertkelly.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3:16-CV-02186                    NOTICE OF APPEAL                    5

# CERTIFICATE OF SERVICE

I am admitted to the United States District Court for the Southern District of California. I am employed in San Diego County, California. My business address is 4670 Nebo Drive, Suite 200, La Mesa, CA 91941-5230.

On November 5, 2017, I caused service of the following documents:

NOTICE OF APPEAL; STATEMENT OF REPRESENTATION [9TH Cir. R. 3-2].

By Electronic Submission: I served the above listed document(s) described via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service though the court's transmission facilities.

I certify that the foregoing is true and correct.

Dated: November 5, 2017

/s/ Scott A. McMillan
_____

Scott A. McMillan

Case 3:16-cv-02186-WQH-MDD Document 91-1 Filed 12/12/17 PageID.3797 Page 89 of 89

# Exhibit "E"

322

Scott A. McMillan, CBN 212506
**THE MCMILLAN LAW FIRM, APC**
4670 Nebo Drive, Suite 200
La Mesa, California 91941-5230
(619) 464-1500 x 14
Fax: (619) 828-7399

Attorney for Plaintiff,
Scott A. McMillan and The McMillan Law Firm, APC

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**09/27/2017** at 04:23:46 PM

Clerk of the Superior Court
By Erika Engel,Deputy Clerk

CALIFORNIA SUPERIOR COURT

COUNTY OF SAN DIEGO

| | |
|---|---|
| SCOTT A. MCMILLAN, an individual, THE MCMILLAN LAW FIRM, APC, a California professional corporation, <br><br> Plaintiffs, <br><br> vs. <br><br> DARREN D. CHAKER an individual, and as trustee of PLATINUM HOLDINGS GROUP TRUST, dba COUNTER FORENSICS; NICOLE CHAKER, an individual, and as trustee of THE NICOLE CHAKER REVOCABLE LIVING TRUST, U/A dated August 18, 2010, VANIA CHAKER, an individual and as beneficiary of The Island Revocable Trust under Declaration of Trust dated June 2, 2015, MARCUS MACK as trustee of The Island Revocable Trust under Declaration of Trust dated June 2, 2015, and DOES 1 through X, inclusive, <br><br> Defendants. | Civil Case No.: 37-2017-00036344-CU-NP-CTL <br><br> Complaint for Damages and Injunctive Relief arising from <br> 1.   Civil Extortion <br> 2.   Unfair Competition, Bus. & Prof. Code section 17200 <br><br> DEMAND FOR JURY TRIAL |

1  Plaintiffs allege as follows:

2      1.  On August 28, 2017, the United States District Court for the Southern District

3  of California entered an order of dismissal of the action *Scott McMillan, et al., v. Darren*

4  *Chaker, et al.*, U.S.D.C So. Dist. Case No. 3:16-cv-2186 ("Federal Action") entered an

5  order granting a motion to dismiss the federal claim for Racketeering, and declined to

6  exercise supplemental jurisdiction over the supplemental state claims. [ECF 83.]  28

7  U.S.C. section 1367, subdivision (d) tolls the applicable statute of limitations for such

8  claims during the pendency of the Federal Action.  The Federal Action was filed on August

9  29, 2016.

10                               **THE PARTIES**

11      2.  Plaintiff, SCOTT A. MCMILLAN (hereinafter referred to as "Plaintiff

12  McMillan"), is a  resident of the State of California, County of San Diego.  Plaintiff is a

13  California licensed attorney, and is engaged in intra-state, and interstate commerce in the

14  course of his practice.  Plaintiff McMillan also operates a law school, the McMillan

15  Academy of Law, a California corporation, which is unaccredited, but registered with the

16  Committee of Bar Examiners, State Bar of California. Plaintiff McMillan has a property

17  interest in the right to practice his profession as a licensed attorney.

18      3.  Plaintiff, THE MCMILLAN LAW FIRM, APC, a California professional

19  corporation, (hereinafter referred to as "Plaintiff TMLF") has its principal place of

20  business in the County of San Diego, State of California. Plaintiff McMillan operates

21  Plaintiff TMLF.  TMLF has a property interest in its "goodwill" as such term is defined at

22  California Business and Professions Code sections 14100 and 14102.

23      4.  Defendant, DARREN CHAKER (a.k.a. Darren Del Nero a.k.a. Darren Del Nero-

24  Chaker a.k.a. Darren Shaker, a.k.a. D. David Hunter) (hereinafter referred to as "Defendant

25  DARREN"), is presently a resident of the State of California, County of San Diego.

26  Defendant DARREN conducts business through and holds assets as trustee in PLATINUM

27  HOLDINGS GROUP TRUST, a self-settled trust.  Plaintiff is further informed and believes

28  that Defendant DARREN conducts business under the pseudonym or doing-business-as

1    "COUNTER FORENSICS." Defendant DARREN was deemed a vexatious litigant in

2    Superior Court of California, County of San Diego Case Nos. 591421 (December 2, 1997)

3    and GIC757326 (June 22, 2001).

4         5. Defendant VANIA CHAKER, also know as Valentina Chanel, (hereinafter

5    referred to as "Defendant VANIA") is presently a resident of the State of California,

6    County of San Diego, and is Defendant's Darren's sister. On one or more occasions,

7    VANIA has participated in the acts set forth herein, providing assistance to Defendant

8    DARREN in committing predicate acts. Plaintiff is informed and believes that Defendant

9    VANIA conducts business through and holds assets as beneficiary in a self-settled trust,

10    which shall be referred to herein as THE ISLAND REVOCABLE TRUST, dated June 2,

11    2005. Defendant Marcus Mack is sued solely in his capacity as Trustee of the THE

12    ISLAND REVOCABLE TRUST, dated June 2, 2005.

13         6. Defendant NICOLE CHAKER (hereinafter referred to as "Defendant NICOLE"),

14    is the mother of Defendant DARREN and Defendant VANIA. On one or more occasions,

15    Defendant NICOLE has participated in the acts set forth herein, providing assistance to

16    Defendant DARREN in committing predicate acts. Plaintiff is informed and believes that

17    Defendant NICOLE conducts business through and holds assets as trustee in a trust, which

18    shall be referred to herein as THE NICOLE CHAKER REVOCABLE LIVING TRUST, U/A

19    dated August 18, 2010. Defendant NICOLE is sued both individually and as trustee of said

20    trust.

21         7. Plaintiffs do not know the true names of Defendants DOES I-X, inclusive, and

22    therefore sues them by those fictitious names. Plaintiffs will amend this complaint to

23    allege their true names and capacities when ascertained. Plaintiffs are informed and believe,

24    and on the basis of that information and belief, alleges that each of those fictitiously named

25    Defendants were in some manner proximately responsible for the events and occurrences

26    alleged in this complaint, and that Plaintiff's injuries and damages as alleged herein were

27    proximately caused by the acts of these Defendants.

28         8. Plaintiff is informed and believes, and on the basis of that information and belief,

Complaint                 3

1    alleges that at all times mentioned in this complaint, Defendants were the agents and
2    employees of their co-defendants, and in doing the things alleged in this complaint were
3    acting within the course and scope of that agency and employment.

4        9.   Plaintiffs are informed and believe, and based thereon alleges that Defendants
5    and each of them, including DOES 1 through X, inclusive, were the co-employers, agents,
6    servants, employees, successors, assignees, transferees, trustees, and/or joint venturers of
7    its co-defendants, and each was, as such, acting within the course, scope and authority of
8    said agency, employment and/or joint venture and was acting with the consent, permission
9    and authorization of each of the remaining Defendants.  Also, Defendants, when acting as a
10   principal, may have been negligent in the selection and hiring of each and every other
11   Defendant as agent, employee and/or joint venturer.  All actions of each Defendant as
12   alleged herein were ratified and approved by every other Defendant or its officers or
13   managing agents.

14       **DEFENDANTS' ENTERPRISE AND PRIOR ACTIONS IN CONCERT**

15       10.   Defendants rely on keeping their past conduct, criminal convictions, lawsuits,
16   and generally bad reputation out of public view.  To accomplish this the defendants
17   regularly use pseudonyms, attempt to seal documents and proceedings which may alert the
18   public to information about Defendants that if known, would provide a defense or would
19   affect a fact-finder's view on their credibility.

20       11.   Defendant DARREN falsely, and in order to gain credibility with unknowing law
21   enforcement and laypersons, holds himself out as a former law enforcement officer or
22   government security employee, including at various times claiming an "Ex-cop" or to be an
23   employee of the "Diplomatic Security Service."

24       12.   Plaintiffs are informed and believe, and based thereon allege that Defendant
25   VANIA is an attorney, currently licensed to practice law in the State of California.
26   Defendant VANIA has lived at various times in California and the Pennsylvania.  Defendant
27   VANIA, as a profession, both individually on her own account and to assist Defendants
28   DARREN and NICOLE, engaged in litigation based on meritless or outright false claims,

_____

                                    Complaint                                    4

1   typically relying upon the Fair Credit Reporting Act, 15 U.S.C. § 1681, and on at least one

2   occasion bringing a claim for personal injury, deriving income from such fraudulent

3   activity.  As part of her pattern of racketeering activity, Defendant VANIA has attempted

4   and sometimes succeeded in collecting unlawful debts, i.e., a claim based on false or

5   meritless legal claims, and derived income from such false claims and unlawful threats of

6   suit.  For instance in *Vania Chaker v. Monarch Group Management, Inc.*, U.S.D.C. So.

7   Dist. of Cal., Case No. 06cv1534W(AJB), Defendant VANIA brought a class action

8   complaint for violation of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692, et

9   seq. and the California Rosenthal Fair Debt Collection Practices Act, arising from her

10  landlord's service of a three day notice to pay rent or quit on her.  Defendant VANIA has

11  brought three other cases based on allegations of violations of the Fair Debt Collection

12  Practices Act, e.g., *Vania Chaker v. Collection Company of America*, U.S.D.C. So. Dist.

13  of Cal., Case No. 05cv390 BEN(AJB) [unpaid T-mobile cellular phone charges]; *Vania*

14  *Chaker v. Allied Interstate, Inc.*, U.S.D.C. So. Dist. of Cal., Case No. 05cv0212

15  LAB(RBB)[unpaid DirectTV bills]; *Vania Chaker v. CAMCO*, U.S.D.C. So. Dist. of Cal.,

16  Case No. 04cv1735 W(RBB).

17         13.  Plaintiffs are informed and believe, and based thereon allege that Defendant

18  VANIA did not solely file such suits in the Southern District of California, but also assisted

19  in cases in the Central District of California, appearing as attorney in the suit brought by

20  Defendant DARREN *subnom* (Darren Del Nero) and Defendant NICOLE alleging

21  defendant's violations of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692, et

22  seq..  Specifically, Defendants DARREN and NICOLE brought suit against Midland Credit

23  Management Inc., in the case of *Del Nero & Chaker, et al., v. Midland Credit*

24  *Management Inc.*,  U.S.D.C. Cen. Dist. of Cal., Case No. 2:04-cv-01040-ABC-SH.

25  Defendant DARREN  and his attorneys were sanctioned $155,979.09 after the court found

26  that Defendant DARREN  brought suit in bad faith and for the purpose of harassment.  (*Del*

27  *Nero v. Midland Credit Management Corp. et al.*, 2:04-cv-01040-ABC-SH.(Attorneys

28  fee award later vacated against Chaker's counsel.)   The Court issued an order to show cause

---

Complaint                                                           5

1    re contempt for Defendant VANIA's conduct during the jury trial, and barred her from the

2    courtroom during the remainder of the trial. The court's basis for the order was that

3    Defendant VANIA attempted to aid a witness in answering counsel's questions. [ECF 91.]

4    Defendant VANIA also represented Defendant DARREN *subnom* (Darren Del Nero) in

5    *Darren Del Nero v. Reliable Adjustment Bureau Inc et al*, U.S.D.C. Cen. Dist. of Cal.,

6    Case No. 2:04-cv-00969-FMC-JWJ, another case alleging violations of 15 U.S.C., § 1681.

7    In each of those instances, in a likely effort to avoid Defendant DARREN's prefiling order

8    as a vexatious litigant, Defendant VANIA initially appeared on Defendant DARREN's

9    behalf, then substituted out to allow Defendant DARREN to prosecute the case *in propria*

10   *persona*. Defendant VANIA engaged in such transitory representation of Defendant

11   DARREN to assist him avoiding the bar of the prefiling orders placed resulting from his

12   designation as a vexatious litigant.

13       14. As to Defendant DARREN, Plaintiffs are informed and believe, and based

14   thereon allege that Defendant DARREN holds himself out to the public as operating a

15   business called COUNTER FORENSICS. The COUNTER FORENSICS web page described

16   its services as follows:

17       "Founded in 2006, the origination of CounterForensics.com can be traced to
         the cyber security and forensics background of our consultant, Darren
18       Chaker. Mr. Chaker (www.DarrenChaker.com) previously worked in law
         enforcement, and as a security contractor in the Middle East. More recently,
19       Mr. Chaker managed electronic discovery (e-discovery) for a leading
         multinational law firm conducting large-scale digital forensic investigations,
20       and provided electronic discovery services involving civil, corporate and
         criminal matters. Mr. Chaker also implemented security enforcement
21       protocols and systems with Military Grade Communications for use between
         international offices to discuss sensitive matters. Mr. Chaker has additional
22       expertise in matters involving:
         • Software piracy;
23       • Sexual harassment via e-mail, instant messaging and other forms of electronic
         communications;
24       • Monitoring employee activity;
         • Employee sabotage;
25       • Intrusion detection;
         • Recovery of deleted files;
26       • Lost password recovery and cracking of locked files;
         • Discovery of hidden and deleted e-mails and pictures;
27       • Internet usage and unauthorized software installed on a company machine; and
         Removal of viruses, pictures, software and other data items which may be hidden
28       from the user.
         See **Exhibit 6**,

---

Complaint                                                      6

1    https://web.archive.org/web/20150208142616/http://www.counterforensics.com/
2    (Accessed on August 23, 2016.)

3        15.  At various times relevant to the facts stated herein, Defendant DARREN has
4    resided in California, Nevada and Texas, and engaged in transactions and acts affecting
5    interstate commerce:

6        16.  Defendant DARREN has, as a profession, engaged in litigation based on
7    meritless or outright false claims, typically relying upon the Fair Credit Reporting Act, 15
8    U.S.C. § 1681, and on at least one occassion bringing a claim for personal injury, deriving
9    income from such fraudulent activity.  As part of his pattern of racketeering activity,
10   Defendant DARREN has attempted and sometimes succeeded in collecting unlawful debts,
11   i.e., a claim based on false or meritless legal claims, and derived income from such false
12   claims and unlawful threats of suit.

13       17.  In another 2005 case, attorney's fees of $42,934.84 were awarded against
14   Defendant DARREN for filing a baseless lawsuit. (*Chaker v. Richland* (C.D. Cal. 2005)
15   CV 05-7851-RSWL; *See also Chaker v. Imperial Collection Services* (C.D. Cal. 2004)
16   CV 04-2728-PA (alleging claims under the FDCPA found to be without merit); and *Del*
17   *Nero v. Riddle & Associates PC, et al.* (C.D. Cal. 2003) CV 03-6511-GHK (same).) In a
18   2007 case, Defendant DARREN and his attorneys were sanctioned $155,979.09 after the
19   court found that Defendant DARREN brought suit in bad faith and for the purpose of
20   harassment.  (*Del Nero v. Midland Credit Management Corp. et al*. (C.D. Cal. 2007) CV
21   04-1040 GPS.)  In a 2009 case, Defendant DARREN was ordered to pay $136,316.14 for
22   bad faith due to Defendant DARREN falsely claiming identity theft.  (*Chaker v. Nathan*
23   *Enterprises Corp.* (C.D. Cal.  2009)  CV 04-2726-RSWL.)

24       18.  Defendant DARREN filed other suits based allegations of violations of Fair
25   Credit Reporting Act, 15 U.S.C. § 1681, i.e., *Darren Chaker-Del Nero v. Afni, Inc.*,
26   U.S.D.C. Cen. Dist. of Cal., Case No. 2:08-cv-03405-ODW-SS; *Darren D Chaker v. First*
27   *City Bank Credit Union*, U.S.D.C. Cen. Dist. of Cal., Case No. 2:04-cv-02727-GPS-RZ;
28   *Darren D Chaker v. Factual Data Corporation*, U.S.D.C. Cen. Dist. of Cal., Case No.

---

Complaint                                                                        7

1   2:04-cv-02729-JFW-AJW; *Darren D Chaker v. European Auto House*, U.S.D.C. Cen.

2   Dist. of Cal., Case No. 2:04-cv-02731-R-PJW; *Darren Chaker v. Arrow Financial*

3   *Services* LLC, U.S.D.C. Cen. Dist. of Cal., Case No. 2:04-cv-07050-FMC-FMO.

4       19.  Defendants have a pattern of attacking the attorneys which oppose them in their

5   racketeering activities, i.e., in *Darren D Chaker v. Felipa R. Richland, et al.*, U.S.D.C.

6   Cen. Dist. of Cal., Case No. 2:05-cv-07851-RSWL-PLA, Defendant DARREN sued

7   attorney Richland and her law office, and her client Nathan Enterprises Corp. for alleged

8   violations of the  Fair Credit Reporting Act, 15 U.S.C. § 1681.  Plaintiff is informed and

9   believes and based thereon alleges that during her defense of the both cases, Ms. Richland

10  was stalked, and her property vandalized.  Ultimately, Ms. Richland and her client prevailed,

11  with Defendant DARREN held liable for costs and attorneys fees. [ECF 25, 26.]

12      20.  Defendant DARREN, subnom *Darren Chaker Del-Nero*, brought additional

13  suits in the United States District Court for the District of Nevada based on allegations of

14  violation of the Fair Credit Billing Act, 15 U.S.C. § 1666, e.g., *Chaker-Delnero v. Nevada*

15  *Federal Credit Union, et al*, U.S.D.C. District of Nevada., Case No.,

16  2:06-cv-00008-BES-GWF; for violations of the Fair Debt Collections Practices Act, 15

17  U.S.C. § 1692, *Chaker-Delnero v. Butler & Hailey, et al*, U.S.D.C. District of Nevada.,

18  Case No. 2:06-cv-00022-KJD-LRL, *Chaker-Delnero v. Clark County Collection Service,*

19  *LLC*, U.S.D.C. District of Nevada, 2:06-cv-00123-JCM-PAL, and *Chaker-Delnero v.*

20  *Collectco*, U.S.D.C. District of Nevada, 2:06-cv-00244-RLH-GWF.  In each of these cases,

21  docket entries reflect a voluntary dismissal. Plaintiff is informed and believes that in those

22  cases, the Defendants paid a sum to "buy their peace" rather than to spend attorneys fees

23  litigating the case, despite the lack of the merit to Defendant DARREN's claims.

24      21.  Defendant DARREN, subnom *Darren Chaker*, brought additional suit in the

25  United States District Court for the Southern District of Texas (Houston) based on

26  allegations of violation of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692,

27  *Chaker v. The CMI Group*,  U.S.D.C. Southern District of Texas (Houston),

28  4:07-cv-01802F [Time Warner Communications.] In that case, the docket entries reflect a

---

Complaint                                                                                           8

Case 3:16-cv-02186-WQH-MDD   Document 127-1   Filed 09/23/23   PageID.4554   Page 338 of
1196
Case 3:16-cv-02186-WQH-MDD   Document 1-1   Filed 12/12/17   PageID.5806   Page 48 of 89

1  voluntary dismissal. Plaintiff is informed and believes that in that case, the Defendants paid

2  a sum to "buy its peace" rather than to spend attorneys fees litigating the case, despite the

3  lack of the merit to Defendant DARREN's claims.

4      22.  Defendant DARREN, subnom *David Hunter*, brought additional suit in the

5  United States District Court for the District of Arizona, entitled *Hunter v. Receivables*

6  *Performance Management, LLC*, U.S.D. District of Arizona, 2:10-cv-00665-MHM

7  [Sprint cellular phone service].  Within that suit Defendant DARREN attached letters

8  claiming an address at 11881 S. Fortuna Road, #223, Yuma, AZ 85367 [Exhibit B, ECF 1-

9  3.] In that case, the docket entries reflect a voluntary dismissal. Plaintiff is informed and

10  believes that in that case, the Defendant paid a sum to "buy its peace" rather than to spend

11  attorneys fees litigating the case, despite the lack of the merit to Defendant DARREN's

12  claims.

13      **SEX TRAFFICKING AND HISTORY OF CRIMINAL PROSECUTIONS**

14      23.  Plaintiff is informed and believes and based thereon alleges that Defendant

15  DARREN also engaged, within the last ten years, in human trafficking, and derived income

16  from such activity.   As reflected in Exhibit A, which will be filed under seal herein,

17  Plaintiffs represented a victim of DARREN's sex trafficking enterprise in court

18  proceedings initiated by DARREN, and as a consequence were subjected to the extortion,

19  and reprisal described herein by Defendants.

20      24.  Defendant DARREN's record of arrests and prosecutions (RAP) reveals arrests

21  for insufficient funds/check, attempting to prevent/dissuade victim/witness, receiving

22  known stolen property, vehicle theft, first degree burglary, grand theft, and being in

23  possession of an assault weapon. He was convicted of invading/looking into a tanning booth

24  (1997), and possession of an assault weapon (2006). Such crimes were punishable by a year

25  or more incarceration.

26      25.  Plaintiff is informed and believes, and based thereon alleges that Defendant

27  NICOLE has suffered a felony conviction in the State of California.

28      **FALSE STATEMENTS IN ORDER TO OBTAIN MONEY OR PROPERTY**

---

Complaint          9

1    26.  Defendant DARREN also obtained mortgages on real estate through false

2  statements, and thereafter rather than paying the mortgages, Defendant DARREN kept the

3  rents from such properties to fund his enterprises, and when his mortgagors sought to

4  recover their real property collateral, Defendant DARREN filed false bankruptcy petitions

5  in order to stall or avoid the foreclosure and continue to collect rental income.

6    a.  Defendant DARREN used the ill-gotten proceeds of his enterprise to fund his

7    lifestyle and further his illegal activities including through the purchase of

8    computers, paying for travel, development of various domain names and online

9    presences to the detriment of Plaintiff herein.

10    b.  In order to dissuade those members of law enforcement and attorneys in private

11    practice who would challenge Defendant DARREN's criminal conduct, including

12    Plaintiff herein, Defendant DARREN used various means and threats, including

13    harassment, stalking, defaming others, vandalizing property, hacking computers,

14    spoofing emails, and identity theft.

15    c.  Defendant DARREN has used the proceeds of his racketeering activity to

16    purchase computers, equipment, and Internet access services in order to engage in

17    his and Defendants VANIA and NICOLE's frauds, and efforts to dissuade those who

18    oppose their illegal conduct, including Plaintiff herein.

19    d.  On March 22, 2012, Defendant DARREN was indicted in *United States v.*

20    *Darren David Chaker*, Case No. 4:12CR00168-001, and thereafter granted pre-

21    trial release under supervision with U.S. Pretrial Services.  The Indictment, attached

22    as **Exhibit 1**, alleges a portion of Defendants' scheme, which Plaintiff incorporates

23    by reference here.

24    e.  While on supervision with U.S. Pretrial Services, through false statements to a

25    United States officer, he violated his terms of release by failing to disclose to U.S.

26    Pretrial Services and the Court the fact that he procured a U.S. Passport using the

27    alias "D. David Hunter."

28    f.  On December 17, 2013, Defendant DARREN suffered a Judgment in a Criminal

---

Complaint                                                    10

Case in the case entitled *United States v. Darren David Chaker*, Case No.

4:12CR00168-001, in the United States District Court for the Southern District of

Texas (Houston), for Bankruptcy Fraud, 18 U.S.C § 157(3). On April 14, 2016, that

conviction was affirmed by the United States Court of Appeals for the Fifth Circuit,

case number 14-20026, as reported in *United States v. Chaker*, 820 F.3d 204, 206

(5th Cir. 2016). He was sentenced to a total term of 15 months, and was additionally

sentenced to three years supervised release, as part of the special conditions of

supervision was ordered:

"The defendant shall provide the probation officer access to any requested financial information. If a fine or restitution amount has been imposed, the defendant is prohibited from incurring new credit charges or opening additional lines of credit without approval of the probation officer.

The defendant is prohibited from possessing a credit access device, such as a credit card, unless first authorized by the probation officer.

The defendant is required to participate in anger management counseling as deemed necessary and approved by the probation officer. The defendant will incur costs associated with such program, based on ability to pay as determined by the probation officer.

The defendant is required to participate in a mental health program as deemed necessary and approved by the probation officer. The defendant will incur costs associated with such program, based on ability to pay as determined by the probation officer.

The defendant may not stalk and/or harrass other individuals to include, but not limited to, posting personal information of others or defaming a person's character on the internet."

(ECF 312, 4:12CR00168-001)

27. On November 7, 2016, the district court in *United States v. Darren David Chaker*, U.S. District Court, Southern District of California, Case No. 3:15-cr-07012-LAB, struck the condition "The defendant may not stalk and/or harrass other individuals to include, but not limited to, posting personal information of others or defaming a person's character on the internet."

## DEFENDANTS' HISTORY OF EXTORTION AND WITNESS TAMPERING

28. **Victim Zaya**: Plaintiffs are informed and believe that, in accordance with Defendants' common plan and scheme, Defendant DARREN committed one or more acts

---

Complaint                                                                    11

Case 3:16-cv-02186-WQH-MDD  Document 127-1  Filed 09/23/22  PageID.4557  Page 341 of
1196
Case 3:16-cv-02186-WQH-MDD  Document 91-1  Filed 12/21/17  PageID.3805  Page 341 of 89

of extortion against Nadine Zaya:

a.  Plaintiff is informed and believes, and based thereon alleges, that Defendant DARREN formerly had a dating relationship with Nadine Zaya. At some point between August and October 2002, Defendant DARREN and Zaya, traveled from Southern California to Scottsdale, Arizona. Petitioner took Zaya to a gun store, where he purchased the Rifle, a licensed reproduction of a Fabrique Nationale FAL (FN-FAL) battle weapon. At the gun store, petitioner told Zaya he once owned "the exact same gun" but his mother had taken it away from him.

b.  After Defendant DARREN purchased the Rifle, he made Zaya take pictures of him with it. He also made Zaya pose with the Rifle. Defendant DARREN then took Zaya to a firing range, where he fired the Rifle and showed her how to shoot, hold, and load it. When Zaya held the Rifle, Defendant DARREN reassured her, "It's okay. Look, it's fun. . . . You're going to be okay. I'm an ex-cop. I know how to shoot a gun." Shortly thereafter, petitioner and Zaya returned to California with the Rifle.

c.  On October 14, 2002, Laguna Beach police officers visited Defendant DARREN's apartment to investigate allegations that he had sexually exploited a minor. A police officer entered the apartment, knocked on a bedroom door, and identified himself as a police officer. After some delay, Defendant DARREN emerged from the bedroom and told the officer the room belonged to him. He refused, however, to permit the police officers to search it. Defendant DARREN called Zaya after the police officers left the apartment. He expressed concern that the fully-assembled Rifle would be considered an illegal weapon.  Defendant DARREN told Zaya he was going to remove parts from the Rifle to "make it legal" and asked her to keep the parts.  The next day, the police officers returned to Defendant DARREN's  apartment with a search warrant. During the search, an officer found the Rifle in petitioner's bedroom closet. He noticed the Rifle had a detachable magazine and a pistol grip, but that it was missing its bolt carrier group. The officers also found unloaded magazines and pictures of petitioner posing with

---

1    the Rifle at a firing range. In the pictures, the Rifle contained the bolt and the

2    magazine.

3    d.  On November 18, 2002, the District Attorney of Orange County filed a felony

4    complaint charging defendant with one count of possession of an assault weapon

5    (Penal Code § 12280(b))  and one count of receiving stolen property (Penal Code §

6    496, subd. (a)). Shortly after the People filed the complaint, defendant began writing

7    letters to the court. In these letters, defendant claimed the police had illegally seized

8    privileged documents from his apartment. He also criticized the judges presiding

9    over his case and the attorneys assigned to represent him. On July 30, 2003 -- after

10   defendant had written six letters to various judges -- the court ordered defendant to

11   stop. The court notified defendant it would "not take action on personal

12   communications from a represented defendant when his case is pending before this

13   court." (*People v. Chaker*, No. G037362, 2008 Cal. App. Unpub. LEXIS 999, at

14   *4-5 (Ct. App. Feb. 4, 2008).)

15   e.  Plaintiffs are informed and believe that in July 2005, the Superior Court of

16   California, County of San Diego issued a restraining order against Darren D. Chaker

17   pursuant to the Domestic Violence Protection Act (Fam. Code, § 6200 et. seq. (the

18   Act)), requiring him to stay away from Nadine Zaya for a five-year period. He

19   appealed from that order on various grounds, contending in part that Zaya's evidence

20   was insufficient to support its issuance; the Court of Appeals of California, Fourth

21   District, Division One, however, rejected his arguments and affirmed the order.

22   f.  On June 15, 2006, Zaya filed a request for a temporary restraining order under

23   the Act against Chaker.  In her request, Zaya stated under penalty of perjury that

24   Chaker made threatening calls to her and told her he would harm her or her family if

25   she testified in a pending criminal matter against him. (*Zaya v. Chaker* (Oct. 19,

26   2007, D049874) [nonpub. opn.].)

27   g.  Thereafter, on or about July 19, 2006, and then again on or about December 8,

28   2006, Defendant DARREN sent nude photos of Zaya to Zaya's brother's employer,

---

Complaint                                                      13

1   which had been taken by Defendant DARREN.

2   29. **Victims Frantz:** Plaintiffs are informed and believe that the following is true

3   regarding Defendant DARREN's efforts to extort San Diego attorneys James Frantz, Jodi

4   Frantz, and Charles Kim:

5   a. On or about December 2010, Jodi and James Frantz retained Charles Kim to

6   represent them in a civil protective action. Jodi Frantz sought a restraining order

7   against Defendant DARREN, in *Hautaluoma v. Chaker*, San Diego Superior Court

8   Case No. 717794.

9   b. Prior to the extortion attempt against James Frantz, Jodi Frantz, and Charles Kim,

10   Plaintiffs are informed and believe that Defendants engaged in acts of vandalism to

11   the property of James Frantz and Jodi Frantz, which they believed to have been

12   perpetrated and intended by Defendant DARREN to intimidate James Frantz and Jodi

13   Frantz and send a message.

14   c. In the preceding months to the extortion attempt, Jodi Franz was the victim of

15   financial fraud in the summer of 2010. Ms. Frantz had caused two of her then

16   current credit cards to be de-activated by the issuers due to fraud alerts. The recent

17   event happened in the week preceding the extortion attempt, while she was on

18   vacation. Ms. Frantz believed Chaker is responsible for the fraud.  Ms. Franz

19   reported the thefts to her credit card issuers. She had unauthorized charges on credit

20   accounts from Bank of America, Union Bank, and Nordstrom.  In the summer of

21   2010, Mr. Frantz also had his identity stolen, and used for credit card fraud. Mr.

22   Frantz believed Chaker was responsible for the fraud.

23   d. On December 22, 2010, at 2:54 a.m., Defendant DARREN caused a fax to be sent

24   to the office of Charles Kim. The fax included an inappropriate reference to the

25   death of James Patrick Frantz II (the son of James and Jodi Frantz). Also, Defendant

26   DARREN faxed a complete copy of a County of San Diego Investigative report

27   #10-01098 which documented the medical examiners death investigation in that

28   case. The fax  referenced the social security number of Jodi Frantz and Dr. Christine

---

Complaint                                                                 14

1   Miller who treated Jodi Frantz. The fax contained threats to publish the social

2   security numbers and "embarrassing" medical information if Attorney Kim did not

3   agree to Chaker's demands. Also included was an apparent threat to file complaints

4   with the state bar association against Charles Kim and James Frantz if they did not

5   comply with his demands.

6       30. **Victims Mateo**: Nicole Mateo was in a relationship with Defendant DARREN,

7   which resulted in the birth of a daughter.  Plaintiff is informed and believes that following

8   the efforts to obtain child support, Defendant DARREN initiated a campaign of harassment

9   against Wendy Mateo and her husband Steven Mateo.  Steven Mateo is a deputy constable

10  with the Harris County Constable Office, in Spring, Texas. The Mateo's hired an attorney by

11  the name of Cynthia Tracy to address Defendant DARREN's conduct.  In response,

12  Defendant DARREN initiated a harassment campaign that included sending sexually

13  explicit photos of Nicole Mateo to the employers of the Mateos, obtaining the email

14  passwords of various Mateo accounts, and sending emails containing sexually explicit

15  material through such accounts.  The Mateo's attorney, Cynthia Tracy, was targeted in a

16  blog post that also made false and defamatory statements about her.  Ultimately, Attorney

17  Tracy declined to continue to represent the Mateos due to the aggravation and the expense

18  of dealing with Defendant DARREN.

19      **DEFENDANTS' EFFORTS DIRECTED AT PLAINTIFF HEREIN**

20      31.  Plaintiff operates a website called FEARNOTLAW.COM, and has operated that

21  site since 2005.  Fearnotlaw.com maintains tens of thousands of unpublished decisions

22  from California's court of appeals.  The unpublished decisions were taken directly from the

23  website of the court of appeals and posted *en masse*, at various times.  There was no

24  intentional targeting of Darren Chaker or any other subject of the decisions.

25      32.  Defendant DARREN in this case initially contacted Plaintiff to demand removal

26  of decisions posted concerning his cases that had been decided by the Court of Appeals.

27  One of those decisions was *Zaya v. Chaker*, California Court of Appeal Case No.

28  D049874.  In *Zaya v. Chaker*, the Court of Appeal affirmed a trial court's imposition of a

---

Complaint          15

five year restraining order against Mr. Chaker imposed pursuant to the Domestic Violence

Protection Act, Fam. Code, 6200 *et. seq.*   Defendant DARREN Chaker's letter to Plaintiff

on November 22, 2010 contained Ms. Zaya's original petition, which alleged that Mr.

Chaker posted bogus sex-service advertisements on Craigslist falsely attributed to Ms.

Zaya, and had threatened to post compromising photos and videos of Ms. Zaya online if she

testified against him in his felony assault-weapon case. Plaintiff did not remove any of the

appellate decisions from Fearnotlaw.com.

   33.   On or about Monday, November 22, 2010, Mr. Chaker had a letter personally

delivered to Plaintiff Scott McMillan's mailbox, at his home.  It was not in an envelope.  He

addressed it to both Plaintiff Scott McMilla as "Scott" and his wife "Rebeca".  A true and

correct copy of that letter is attached hereto as **Exhibit 3**.

   a.  In the first paragraph of his letter of November 22, 2010, Mr. Chaker states:

      "We all have a First Amendment right to post online what we like

      within reason. *We also have the First Amendment right to re-publish public*

      *records and make statements couched in opinion based upon facts.* We

      share in common public records in criminal and civil court both as a pro-per

      plaintiff and defendant-including restraining orders despite yours was

      dismissed. We also share that we have both filed about the same amount of

      pro-per lawsuits–mine filed between 1994-96. Of course, I don't think any

      less of you since its common for people to have a public record. In fact,

      roughly 1 in 5 Californians have some kind of arrest record. *Another*

      *attorney with a public record is Lisa Laqua who unsuccessfully sued my*

      *mother while representing a convicted felon with an active warrant for his*

      *arrest at the time. Laqua had public records which contained lawsuit and*

      *restraining order info too. Just Google "Lisa Laqua" which her blog*

      *should be first or see http:/ /lisalaqua.blogspot.com/. . ."*

[Exhibit 3, letter of November 22, 2010 (emphasis added).]

   34.   In closing, Mr. Chaker then stated that Plaintiff  take action by a specific

---

Case 3:16-cv-02186-WQH-MDD Document 127-1 Filed 09/23/22 PageID.4562 Page 346 of
Case 3:16-cv-02186-WQH-MDD Document 141-1 Filed 12/12/17 PageID.3814 Page 96 of 99
1196

1    deadline:

2          "I encourage you to consider the attached, and/or pull the public

3        record to see the facts for yourself and if you believe the link should be

4        removed or allow all the facts to be disclosed to please do so. Again, you

5        have no obligations to comply, however, if you do, *please act on this request*

6        *by this Tuesday no later than 3:30PM PST.*

7        www.fearnotlaw.com/articles/article15009.html

8    [Exhibit 3, letter of November 22, 2010 (emphasis added).]

9       35. Plaintiff accessed the website "http:/ /lisalaqua.blogspot.com/" following his

10    receipt of that letter in 2010. The website stated numerous scandalous allegations about

11    Ms. Laqua. Thus, in reading Defendant DARREN's letter of November 22, 2010, Plaintiff

12    reasonably understood that Defendant was threatening that if Plaintiff did not abide by his

13    demands by 3:30 p.m. on November 23, 2010. Plaintiff could expect to see scandalous

14    material posted about himself.

15       36. Defendant DARREN thereafter initiated a campaign of harassment and

16    vandalism against Plaintiff McMillan and his family. Usually during the holidays,

17    Plaintiff's family's cars would be vandalized. Plaintiff's brother had the words "fearnotlaw"

18    scratched on the trunk of his BMW. In another instance, the driver's side mirror of

19    Plaintiff's brother's truck was smashed. On that instance, a neighbor that heard the noise,

20    saw a black SUV driving rapidly away. Defendant DARREN owned at the time of the

21    incident a Black Dodge Durango. Plaintiff is informed and believes, and based thereon

22    alleges, that Defendant VANIA Chaker accompanied Defendant DARREN during that

23    vandalism.

24       37. Other members of Plaintiff McMillan's family were attacked as well.

25    Plaintiff's mother's car had acid poured on the trunk. Plaintiff's father's car had its tires

26    slashed. After each event, Mr. Chaker would send Plaintiff an e-mail wishing him "happy

27    holidays" or making some other statement. It was clear to Plaintiff that Darren Chaker was

28    acknowledging the vandalism by his timing of his emails, and attempting to send a message

---

Complaint                     17

1    and intimidate Plaintiff.

2        38.  Thereafter, Defendant DARREN sent Plaintiff McMillan e-mails referring to

3    his dogs – which indicated to Plaintiff that he had come to his house and looked into his

4    back yard.

5        39.  Because of Defendants' activities, Plaintiff McMillan and his family members

6    installed security cameras around their houses.  Plaintiff McMillan also installed security

7    cameras on the outside of the commercial building in La Mesa where Plaintiff TMLF has

8    its offices.

9        40.  Defendant DARREN also began posting matters about Plaintiffs on the

10   Internet.  These posts were false, scandalous, and libelous.  They included the false

11   accusations that Plaintiffs had lost every appeal that Plaintiffs had filed, and that Plaintiff

12   was a fraud.  Initially, Defendant DARREN published such false allegations and scandalous

13   statements on websites occupying domains that Defendant DARREN owned.

14       41.  On June 17, 2011, Defendant DARREN notified Plaintiff that he was operating

15   a Blogger site at scott-mcmillan-law.blogspot.com.  Plaintiff Scott McMillan had not

16   authorized him to use his name.

17       42.  Since 2011 and through the present, derogatory and defamatory statements

18   about Plaintiffs have been posted on the internet at

19   http://www.complaintsboard.com/complaints/the-mcmillan-law-firm-la-mesa-c571484.ht

20   ml#comments.  Many of these statements are identical to statements Defendant DARREN

21   posted on his own websites.

22       43.  Since 2011, someone has posted derogatory and defamatory statements about

23   Plaintiffs on the internet at the website domain pissedconsumer.com.  Based on the

24   content, which is similar to what Defendant DARREN posted on his own website, Plaintiffs

25   are informed and believe and thereon allege the poster to be Defendant DARREN.

26       44.  Through the years, clients have contacted Plaintiff McMillan to let him know

27   that they have seen the Defendant DARREN 's posts concerning Plaintiff on the Internet.

28   Chaker's posts were troubling to Plaintiffs' clients.

---

Complaint                                                          18

45. Because Defendant DARREN had posted about Plaintiff on the Internet, others that had conflicts with Defendant DARREN contacted Plaintiff for advice and representation in dealing with Defendant DARREN . Plaintiff has provided that representation pro-bono, and advanced the expenses.

46. Plaintiff ultimately represented Wendy Mateo, one of the Defendant DARREN's victims, in *Chaker v. Mateo*, San Diego Superior Court case, 37-2010-00094816-CU-DF-CTL, Hon. Timothy B. Taylor, Judge presiding. Wendy Mateo is the mother of Nicole Mateo. Plaintiff is informed and believes that Nicole Mateo had a brief relationship with Darren Chaker, which resulted in the birth of their daughter. Plaintiff began representing Ms. Wendy Mateo, the grandmother of Darren Chaker's child during the pendency of Darren Chaker's appeal of the judgment in the *Chaker v. Mateo* case. That appeal resulted in the published decision of *Chaker v. Mateo*, 209 Cal. App. 4th 1138 (2012). Following that appeal, the Superior Court awarded Plaintiffs attorneys fees. Those attorneys fees awarded have been the subject of judgment debtor examinations and orders from Judge Taylor as discussed below.

47. Thereafter, Plaintiff began representing *Susan A*. in a paternity case filed in the San Diego Superior Court entitled *Chaker v. A* (the "Paternity Case"). Ms. A had also been in a relationship with Mr. Chaker. Ms. A. sets out her experience with Chaker in her declaration dated July 11, 2013, a true and correct copy of which is referenced herein as **Exhibit 'A'**, to be filed under seal in this court. Mr. Chaker claims that Ms. A.'s child, **L**, is the product of that relationship. Ms. A. disputes that Mr. Chaker is the father, biological or otherwise, of her child **L**.

48. On July 12, 2013, Plaintiff McMillan filed a document in the Paternity Case, which included statement from Leesa Fazal, State of Nevada Office of the Attorney General, who had provided her confidential investigative report for submission in the Paternity Case, signed on July 11, 2013. A true and correct copy of which is referenced herein as **Exhibit '2'**, to be filed under seal in this court.

49. On July 22, 2013, at 8:45 a.m., Officer Fazal appeared in San Diego Superior

---

Complaint

19

Court, according to Plaintiff's subpoena to testify in the Paternity Case regarding the facts
alleged in the above mentioned Declaration. Officer Fazal and Plaintiff McMillan appeared
before the Superior Court, Judge Gerald Jessop, presiding.  The court did not have time to
hear the case in the morning, and ordered Ms. Fazal and Mr. Chaker back to court later that
afternoon. As they exited the court, Defendant DARREN followed Ms. Fazal and Plaintiff
McMillan a short distance, and walked at a quick pace with his mobile telephone in his hand
and appeared to take video of them while laughing loudly.   At that time, Ms. Fazal had not
yet testified, and Defendant DARREN's behavior was purposefully threatening and an
apparent effort to intimidate Officer Fazal, prior to her testimony.

50.  When Plaintiff McMillan and Officer Fazal returned they were accompanied by
licensed private investigator Richard Rivero.  Following the hearing Defendant VANIA
approached Richard Rivero in a rapid manner, within a couple feet, and asked him what he
was doing there and demanded his name.  Although he had not been called to testify, Rivero
responded that he was a witness, he would speak to Defendant VANIA in the presence of
court personnel, and attempted to pass her. Defendant VANIA blocked his and Plaintiff
McMillan and Officer Fazal's exit, so Plaintiff, Rivero and Fazal returned to the court
room, and Defendant VANIA followed.  Thereafter, the courtroom deputy ordered
Defendant VANIA to leave, and to leave Rivero, Plaintiff McMillan and Ms. Fazal alone.
The courtroom deputy allowed Rivero, Plaintiff McMillan and Ms. Fazal, and shortly
therafter, confirmed that Defendant VANIA was not awaiting them outside the courtroom.

51.  Plaintiff McMillan, Officer Fazal and Rivero exited the courtroom, then entered
the elevator to descend to the lobby.  After exiting the elevator and entering the lobby.
Defendant DARREN blocked the doorway exit and in a loud and commanding voice
demanded that Officer Fazal be arrested for being armed.  He wanted to place her under
citizen's arrest.   Officer Fazal was escorted to the side while the  deputies determined that
there were no grounds to arrest.    While they waited, the Defendant VANIA entered the
location and brushed by Rivero as she entered the elevator.

52.  Rivero left the building with Officer Fazal, Rivero then noted Defendant

VANIA's black SUV following him at a high speed. Rivero pulled to the side. Defendant
VANIA stopped her SUV in the middle of the street adjacent to Rivero's vehicle. Rivero
felt that Defendant VANIA was attempting to intimidate him. Rivero noticed Defendant
DARREN hunched down in the passenger's seat so as to not be identified. Such chase was
intended, and did intimidate Officer FAZAL in that it gave her additional concern regarding
participating in the legal proceedings.

53. On July 24, 2013, and thereafter during the pendency of the Paternity Case,
Plaintiff and his client provided the United States materials and information regarding
Defendant DARREN, specifically that Defendant DARREN had a "go kit" which included a
passport under his identity "David Hunter". Which information Plaintiff understands
resulted in the revocation of Defendant DARREN 's pre-trial release. During Defendant
DARREN's resulting incarceration, the *Chaker v. A* case was dormant.

54. During his incarceration, Darren Chaker's mother, Nicole Chaker appeared at
least once at a hearing in that case.

55. Plaintiff is informed and believes, and based thereon alleges that, in that interim
period Defendant DARREN was incarcerated, such custody began on or about August of
2013 through September of 2014, also during that time, i.e., on or about January 21, 2014,
Plaintiff received at least one letter from Mr. Chaker that were drafted by Defendant
NICOLE at Defendant DARREN'S request.

56. On or about February 2014, while Defendant DARREN was incarcerated,
Defendant NICOLE sent Plaintiffs' and his client's mother Candy C. each a copy of the
same letter. A true and correct copy of which is referenced herein as **Exhibit '4'**, to be
filed under seal in this court. The letter contained the following demands and threats:

       **A.    Demand against McMillan, Susan A., Candy C.:**

       "In short, while in custody, I would like to speak to my son, starting with five

       minutes by phone, at least once a week, which means, I immediately would

       need a phone number at all time in order to contact him. I made a similar

       request to you last August and you chose to ignore it."

¶ 2. First and Second Sentences.

      **B.**    **Threat - Implied against client Susan and mother Candice:**

"Information came to my attention, that her mother Candice was claiming her and L-- from her taxes, when they were both in my care for 2 years and that does not include the long list of items my sister and mother have gotten them on daily basis, let alone all the restaurants they were taken to, plenty of receipts and pictures that will reflect so. Susan's sixteen year old son, J-----n, was also deducted by Candice when he lived full time with his paternal grandparents and father in Riverside."

      **C.**    **Threat - implied against client Susan and mother Candice:**

"I am putting Candy "C" C-- on notice so she could save all of Susan A—'s "government aid applications" six of them, in 4 states, which are signed under the penalty of perjury, all receipts which conflict greatly with what we have to present. Susan failed to list her mother's alleged support in six different applications for government aid, actually they both lied to the IRS, for years."

      **D.**    **Demand against Scott McMillan:**

Attorney McMillan, additional information came to my attention about your negative opinion of me, established attorneys and the ACLU, on the internet. I will ask you to immediately remove any detrimental opinion by you and your friends.

      **E.**    **Threat against Scott McMillan and Susan A.**

"You never considered the fact that due to your conduct your client may suffer. I should remind you the First Amendment is a 2 way street and I have the right to express my opinion as well.

      **F.**    **Threat against Candy C----**

"I am copying Candy "C" C---- on this letter to place her on notice once again, to retain any and all writings, including, but not limited to receipts used to allegedly support Susan and L---, text messages, electronic email, phone

---

Complaint        22

records, IRS filings in several states, or other items she believes will aid in
her deposition in this case and on a pending civil action that will be filed in
the coming months. Of course your client has been on notice to retain all of
the above since May 2013, and trust she has not deleted any 'writing" or lost"
her phone as such is against the law and basis for an adverse inference."

**G.     Demand**

"This offer is open until February 21, 2014."

* * *

57.  Plaintiff read the content of the letter that is **Exhibit 4** as implying a threat to
further defame Plaintiffs and make scandalous statements about Plaintiffs, and as a threat
against both Plaintiffs' client Susan A. and her mother Candy C. to report alleged
wrongdoing by them to government authorities. Plaintiffs' client did not agree to settle the
case with Mr. Chaker, and so Plaintiffs did not accede to these threats that Nicole Chaker
directed to Plaintiffs, Susan A., and Candice C. in Defendant DARREN's name.

58.  As a result of the threat against plaintiffs, Plaintiffs spent time and resources,
which could have spent working on cases for paying clients, and monitoring the Internet for
further scandalous postings. This caused the Plaintiff TMLF to lose revenue.   Plaintiff
Scott McMillan found it vexing and upsetting.

59.  On February 26, 2014, still while Defendant DARREN was incarcerated,
Defendant NICOLE filed documents in the paternity case on behalf Defendant DARREN,
including executing a declaration in his name, and signing his signature.  Defendant
NICOLE is not admitted to practice to the California Bar.   Within the letter to the Court
attached to the declaration, Defendant NICOLE repeats the implied threats to reveal Susan
A's applications for government benefits.  A true and correct copy of which is referenced
herein as **Exhibit '5'**, to be filed under seal in this court. Specifically, Defendant NICOLE
in Mr. Chaker's name purports to report Susan A. for making false claims, by stating:

Respondent has now, after placing me . . .  on six applications for governemnt
[sic] aid (all signed under penalty of perjury), now attests in her declaration I

---

1    am not the father in an effort to give Attorney McMillan's motion merit.

2    [**Exhibit 5**, page 2, to be filed under seal.]

3        60.  On or about September 18, 2014, during the pendency of the Paternity Case,

4    Plaintiff McMillan received an e-mail from Darren Chaker, a true and correct copy of

5    which is referenced herein as **Exhibit 'B'**, to be filed under seal in this court.   Within that

6    letter, Mr. Chaker threatens further actions against Plaintiffs unless he convinced his client

7    Susan A to grant him concessions in the paternity case.  Plaintiff has  excerpted the relevant

8    portions below (with redactions and substitutions to protect the privacy of third parties):

9    9/18/14

10            Time Sensitive – Reply Required by 8PM Today
             Confidential Settlement Communication – California Evidence
     Code §1142

11

12           Dear Scott, S, and C,

13           This is a request to settle pending claims . . . .

14           First, allow me to clarify this letter is constitutionally
     protected communication. " 'As a general rule, even if subject to some
15   exceptions, what you may do in a certain event you may threaten to do, that is,
     give warning of your intention to do in that event, and thus allow the other
16   person the chance of avoiding the consequences' "].  Equally well established
     is the fact that "[o]ne legitimate purpose of a demand letter is to intimidate."
17   (Subrin & Main, The Integration of Law and Fact in an Uncharted Parallel
     Procedural Universe (2004) 79 Notre Dame L.Rev. 1981, 2003 (hereafter
     Subrin & Main).)

18           To keep it simple, here's my offer:

19           • [Mr. Chaker requested concessions in the paternity action,
20   including obtaining partial custody of the child of whom he claimed to be the
     father.]
21           . . .
             • I will remove all blogs I have control over concerning Scott
22   or his firm, and am able to remove the complaintsboard.com posting and if
     unable to remove pissedconsumer.com, I will pay up to $500 to have SEO
23   performed to push down the links as I know these sites continue to hurt the
     practice. (I understand I have negative comments about me, however I do not
24   need to impress clients with my reputation. I can assure you at least one
     client a year doesn't call due to reviews – costing you and your family
25   money.)

26           • No blogs concerning S or C's company, have been posted, but
     various items have been set to self-publish in the event I am unable to access
27   the blog and push back the self-publish date another two weeks.

28           In short I am agreeing to things a court would not order, but am trying
     to be amicable.

---

Complaint                                                    24

Case 3:16-cv-02186-WQH-MDD  Document 127-1  Filed 09/23/22  PageID.4570  Page 354 of
1196
Case 3:16-cv-02186-WQH-MDD  Document 91-1  Filed 12/12/17  PageID.3825  Page 94 of 99

Scott, you once said to me "I win every time we go to court". I think you mischaracterize what winning is to me. In court, it is not the court ruling. It's the time spent away from your office. Taking up your time and associate's time. Taking food out of your kids mouth. Staying up late, or ignoring kids and wife while spending time on litigating the instant case.  Costing you clients – at least one person a year doesn't call you based on my blogs – which have been updated recently, scott-mcmillan-law.blogspot.com. Your reputation and past performance, likely increases the likelihood of opposing counsel's decision to fight a pending case longer - which costs you more time and money.  Out of court, I have a few more victories than you and will always prevail in that respect, and win by having you and family spending money on cameras, watching the monitors, looking out the window, and drawing drapes – of course there's no proof I have not done a thing nor do I admit such, but if you think I am responsible, indeed I win every day.

Indeed, an adversary has the right to "inflict hard blows on their opponents ... " (Caro v. Smith (1997) 59 Cal.App.4th 725, 739; see also People v. Kalnoki (1992) 7 Cal.App.4th Supp. 8, 11-12.)  However, it is not my intent to be an adversary, but to resolve and put things behind us and move forward. I hope calmer heads prevail and things are looked at both in a business sense and in a common sense perspective.

* * *

**(Exhibit 'B', To Be Filed Under Seal)**

61.  Defendant DARREN's September 18, 2014 e-mail quoted above confirmed Plaintiffs' belief that Darren Chaker was responsible for derogatory remarks posted about Plaintiffs on complaintsboard.com and pissedconsumer.com, set forth in more detail below, in that he was then offering to remove or attempt to remove his posts from those sites.

62.  Plaintiffs' client did not agree to settle the case with Mr. Chaker, and so Plaintiffs did not accede to these threats.

**Hacking Twitter and Unauthorized Access to Plaintiff McMillan's Paypal Account**

63.  Plaintiffs are informed and believe, and based thereon allege that Defendant DARREN Chaker thereafter attempted to hack into Plaintiff's twitter and paypal accounts. Specifically,

a. On October 22, 2014, Plaintiff McMillan received a notice from Paypal of "unusual activity" on his account.  Plaintiff hadn't attempted to sign in to his Paypal account at that time.  A true and correct copy of that email is attached hereto as **Exhibit 'C'**.  Due to the timing of the notice, Plaintiff is informed and believes that it was Darren Chaker that hacked into Plaintiff's account.

---

Complaint                                                                                          25

b.  On November 19, 2014, Plaintiff received a notice of a "suspicious sign in detected on [his] twitter account."  Plaintiff hadn't attempted to sign in to his twitter account.  A true and correct copy of that email is attached hereto as **Exhibit 'D'**.  Due to the timing of the notice, Plaintiff is informed and believes that it was Darren Chaker that hacked his account.

64.  Following that threat of September 18, 2014, Mr. Chaker began posting information on the scott-mcmillan-law.blogspot.com site that he operated that, among other things, Plaintiff had molested his daughter.   Such statement was grossly false, scandalous, and libelous.  The first such statement appeared on Thanksgiving Day, i.e., Thursday, November 27, 2014.   A copy of that post is attached hereto as **Exhibit 'E.'** Plaintiff  had not authorized Defendants to use Plaintiff's name in any manner.  Plaintiff had not molested his daughter.  That webpage has since been removed.

65.  In order to improve the likelihood of the search engines indexing his site to Plaintiff's name, Defendant DARREN optimized that page, **Exhibit 'E'**, for search engines with "labels" including "4760-Nebo, attorney-sex-offender, el-cajon-sex-offender, la-mesa-sex-offender. Rebecca-McMillan, scott-mcmillan-law, www.mcmillanlaw.us."

66.  Mr. Chaker also operated a Blogger site at http://mcmillanlawfirm.blogspot.com/.  Plaintiff had not authorized Defendant DARREN to use the firm's name in this manner.  He published similarly false, scandalous, libelous material on that site.

67.  On or about November 28, 201[4], Defendant DARREN Chaker posted on the Blogger site at scott-mcmillan-law.blogspot.com, a post entitled "Maura Larkins Linked to Sex Abuse."  Within that post Chaker repeats his false statements about Plaintiff, and also recited a completely fabricated association between Plaintiff  and Ms. Larkins, who is another individual with whom Mr. Chaker has conflict. A true and correct copy of that post is attached hereto as **Exhibit 'G'**.

**Spoofing Emails**

68.  On December 3, 2014, Plaintiff received a "spoofed" or bogus email that

1  purported to have been sent from Plaintiff's own e-mail address "scott@mcmillanlaw.us"

2    a.  The email stated:

3  "Scott McMillan and family are child molesters per a recent report,
   http://scott-mcmillan-law.blogspot.com/2014/11/scott-mcmillan-
4  la-mesa.html"

5    b.  A true and correct copy of the email is attached as **Exhibit 'H.'**

6    c.  A true and correct copy of the email with the header is attached as **'I'.**

7                              **Google Places**

8    69.  On December 4, 2014, a "Darren C." posted a 2 star review for the McMillan

9  Law Firm, APC on Google places, wherein he stated:

10
11  "I wish I knew of his interests in children, http://scott-mcmillan-
   law.blogspot.com/2014/11/scott-mc."

12    a.  A screen shot of Plaintiff's administration page for Google Places is attached

13  hereto as **Exhibit 'J'.**

14    b.  That post was later deleted.   In light of the timing of that e-mail, the use of the

15  name "Darren C.", and that the identical content was posted on his blogspot sites,

16  Defendant DARREN was the poster.

17    70.  Defendant DARREN. Chaker sent e-mails to many members of the local legal

18  community, accusing Plaintiff of molesting his  daughter.  A copy of one such email dated

19  December 6, 2014 is attached hereto as **Exhibit 'K'**.  That e-mail was sent to Andrew

20  Griffin, an attorney for an opposing party in a bankruptcy case where Plaintiff represented a

21  creditor, who in turn, forwarded the e-mail to Plaintiff on December 8, 2014.

22    71.  On December 22, 2014, at 1:57 a.m., Defendant DARREN sent Plaintiff an e-

23  mail with the subject line "Pending Paternity Case".  A copy of that email is attached hereto

24  as **Exhibit 'L.'**

25    72.  On December 23, 2014, at approximately 10:08 a.m., Plaintiff received an e-

26  mail from Defendant DARREN  Chaker entitled "Request to See Son."  A copy of that

27  email is attached hereto as **Exhibit 'M'.**

28              **Threats to E-mail Colleagues in the San Diego East County Community**

---

Complaint                                      27

73.  On December 23, 2014, Plaintiff received an e–mail from Defendant DARREN where he stated:

> "Mr. McMillan, the reported conduct I have found is very improper and disgusting. I have been forced to notify numerous members of the bar about my blog concerning your firm, most recently the Foothills Bar Association, and will start naming your daughter, I believe a former Ms. El Cajon, as the likely victim. I hope you have ceased your conduct and notice to hundreds of people has done the public some good.
>
> Dear XXXXXX,
>
> Sex offender. As a member of the bar and likely parent, I would hope notice of a report concerning La Mesa Attorney Scott McMillan, who also operates McMillan Academy of Law without a single applicant/graduate, http://campus.lawdragon.com/schools/mcmillan-academy-of-law/ was reported to take part in sexual molestation of a minor. See, http://scott-mcmillan-law.blogspot.com/2014/11/scott-mcmillan-la-mesa.html
>
> The report provides great detail and hope you pass this email along, as I have distributed it to 200 attorneys in San Diego. Scott McMillan is also a documented family friend of Kenneth Bourke who was also arrested for child molestation – see report - http://scott-mcmillan-law.blogspot.com/2014/09/scott-mcmillan-molest-la-mesa.html
> Happy Holidays to all.
> Darren Chaker"

a.  A copy of that email is attached hereto as **Exhibit 'N'**.

74.  On or about June 8, 2015, Google removed the scott-mcmillan-attorney. blogspot.com site, which defendants had created without Plaintiffs' authorization.

75.  On or about June 16, 2015, Google removed the mcmillanlawfirm. blogspot.com site, which defendants had created without Plaintiffs' authorization.

## COMPLAINTSBOARD.COM

76.  Since 2011 and through the present, a person that Plaintiff McMillan believes to be Defendant DARREN based on identical content posted on his website and Mr. Chaker's statements above of September 18, 2014 that he is "**able to remove the complaintsboard.com posting**", has posted derogatory and defamatory statements about Plaintiff on the Internet at:

http://www.complaintsboard.com/complaints/the-mcmillan-law-firm-la-mesa-c571484.html#comments

---

Complaint                                                                28

a.  A true and correct copy of that post as published is attached hereto as **Exhibit**
**'O.'**

b.  The poster is identified as "Tracy Law Houston."  Cynthia Tracy, Attorney at Law,
P.C., a family law attorney in Houston, Texas, formerly represented Nicole Mateo in
the custody and child support case against Darren Chaker.

77.  Despite the removal of the blogspot sites, on August 23, 2015, a poster using
the name and search term "scott-mcmillan-la-mesa" posted the following as a comment to
the post at http://www. complaintsboard.com/complaints/the-mcmillan-law-firm-la-mesa-
c571484.html#comments

a.  "I located the police report about Scott McMillan, La Mesa, Attorney reportedly
molesting children. I also found he operates his own law school out of a small, run
down office near the train tracks, but in the same breath says he's a leading law firm.
With this reputation, I cannot imagine such is true."

b.  Attached as an image to the comment, he re-posted his November 27, 2014 post,
i.e., the content at Exhibit 'B' herein, the repost of which is attached at **Exhibit 'P.'**

78.  On September 16, 2015, a poster using the name and search term
"mcmillan-law-firm-la-mesa" posted the following as a comment to the post at
http://www.complaintsboard.com/complaints/the-mcmillan-law-firm-la-mesa-c571484.ht
ml#comments

a.  "Scott McMillan, McMillan Law Firm, sued the hardworking Sheriff over his
Facebook Account. The law settled for about nothing. It is unfortunate law
enforcement need to pay out money to defend such nuisance lawsuits, when that
money should be going to hiring more officers, and buying newer equipment. With
about 60 loses in the Court of Appeal docket, astonishing he is still in office."

b.  That case – *Karras v. Gore*, U.S. D.C. So. Dist. Cal., 14cv2564-BEN-KSC – was
settled for a payment of attorneys fees plus the token $20. Thus, the above statement
is false, as the Sheriff paid attorneys fees and agreed to change practices.

c.  Attached as an image to the comment, he posted a partial news article, a copy of
which is attached as **Exhibit 'Q.'**

79.  Also on September 16, 2015, a poster using the name and search term
"mcmillan-law-firm-la-mesa" posted the following as a comment to the post at
http://www.complaintsboard.com/complaints/the-mcmillan-law-firm-la-mesa-c571484.ht

---

Complaint                                                                    29

ml#comments

    a.  "McMillan Academy of Law, run by Scott McMillan appears to have not had a single student go through his law firm, where the class is shared in the same space as the attorney, oh and also Dean McMillan (also an attorney working out of same office. According to LawDragon, no one has ever graduated or even applied to that law school."

    b.  Attached as an image to the comment, he posted a webpage print-out, a copy of which is attached as **Exhibit 'R.'**

    80.  Also on September 16, 2015, a poster using the name and search term "mcmillan-law-firm-la-mesa" posted the following as a comment to the post at http://www.complaintsboard.com/complaints/the-mcmillan-law-firm-la-mesa-c571484.ht ml#comments

    a.  "McMillan sued by Yelp! for posting his own reviews. Read the story in detail, sad set of circumstances, especially when you need to create your own reviews."  In truth and in fact, Plaintiffs had not posted their "own reviews."  Plaintiffs had represented Julian McMillan, who had been sued by Yelp.

    b.  Attached as an image to the comment, he posted a news article, a copy of which is attached as **Exhibit 'S.'** Plaintiff did not post his own reviews. Indeed, in that case, Plaintiff was not accused by Yelp of posting comments. Rather, Plaintiff represented another attorney, Julian McMillan, in the case. Chaker edited out the part that would have otherwise explained that Plaintiff was not the Defendant DARREN in that action, but rather just the attorney.  Contrary to Defendants' suggestion, Plaintiff was partially successful at the time of the posting of the article. Plaintiff prevailed in a motion to change venue, and counsel for Yelp paid Plaintiffs attorneys fees.

    81.  On February 9, 2016, a poster using the name and search term "mcmillan-law-firm" posted the following as a comment to the post at http://www.complaintsboard.com/complaints/the-mcmillan-law-firm-la-mesa-c571484.ht ml#comments

    a.  "Williams v. The Superior Court of San Diego County/Nordstrom, Inc., Court of

Complaint                                                          30

352

Appeal Case Number D068765. shows Scott McMillan, McMillan Law Firm in Las Mesa, LOST ANOTHER case. This one where Nordstrom is vigorously defending itself against allegations of attorney, law professor, and law school dean (Yes, Scott McMillan is all three of those titles since he runs a law school, McMillan Academy of Law, out of two story office near the train tracks. Despite not a single student has graduated, or appears to have attended, no one has taken the bar exam either. Nonetheless, this is another example of Scott McMillan losing another case - although he claims to be a "leading" San Diego attorney."

b. Attached as an image to the comment, the docket form , a copy of which is attached as **Exhibit 'T.'**

c. This statement is also false, as the court of appeals allowed the appeal to proceed in light of the law regarding final, appealable orders.

d. Further, the Court entered an order of stipulated reversal of such appeal.

82. On or about March 27, 2016, Plaintiff McMillan identified a post using Plaintiff TMLF's logo and created in a manner that suggested it was posted by Plaintiff or someone else from his firm. Plaintiff did not authorize Defendant DARREN or anyone else to use the McMillan Law Firm's logo in this manner. The latest entry was posted on or about December 17, 2015. Specifically, a poster using the name and search term "scott-mcmillan-law-firm-la-mesa" setup a bogus page entitled "The McMillan Law Firm Customer Care Service" using The McMillan Law Firm, APC logo at http://www.complaintsboard.com/the-mcmillan-law-firm-b121166

a. A true and correct copy of that page is attached hereto as **Exhibit 'U.'** Notably, the bogus "customer care service" repeats the same false allegations as previously made by Chaker. i.e., that Plaintiff molested his daughter.

b. This had been preceded by an email on December 8, 2014 – Plaintiff's birthday – wherein Mr. Chaker emailed Plaintiff the following statement:

Good afternoon Scott,

I have been unable to locate a TM/Copyright for the domain mcmillanlaw.us or for your law firm with the USPTO or U.S. Copyright Office. If there is such, kindly advise prior to 7PM today. If I do not receive a response, it will be presumed there is no such TM/Copyright. Prior to posting additional material, I will extend this courtesy to you.

Also, I have updated the material on http://scott-mcmillan-law.blogspot.de/p/scott-mcmillan-attorney-la-mesa.html

---

Complaint                                                                                    31

1    I have also copied Maura Larkins on this email.

2    Best regards,

3    Darren"

4    c.  A true and correct copy of the email dialog that occurred December 8, 2014, are

5    attached as **Exhibit 'V'.**

6    **d.**   Plaintiffs had not authorized the use of their name, the logo, or creation of a

7    customer care site on Complaintsboard.com.

8    83.  Following Mr. Chaker's posts to complaintsboard.com, individuals solicited

9    Plaintiffs purporting to be able to have the ability to remove the posts.  Such third parties

10   solicited Plaintiffs to remove defendants' posts for a charge of $4,800.

11

12                              **PISSEDCONSUMER.COM**

13   84.  Since 2011 and through the present and as late as February, 2016, a person

14   using a pseudonym, that Plaintiff McMillan believe to be Defendant DARREN, or the other

15   defendants, based on the content and Defendant DARREN's statements above of September

16   18, 2014 referring to the "pissedconsumer.com" website, has posted derogatory and

17   defamatory statements about Plaintiff on the Internet at the website domain

18   "PISSEDCONSUMER.COM":

19   85.  A Google search of "scott mcmillan site:pissedconsumer.com" returns some

20   3200 results.  Most of those results appear to have been posted in 2015 and 2016.

21   Plaintiffs believe that defendants have posted all of those entries.  They have done so either

22   anonymously or using some variation of the key words: "The Mcmillan Law Firm -

23   La-Mesa-Attorney-Scott-McMillan"

24   86.  Unlike Complaintsboard.com, Pissedconsumer.com does not remove the

25   information posted by persons such as Defendant DARREN.  Specifically, the terms of

26   service of Pissedconsumer states:

27       "5. Removal of Information
         By posting information on PC, *you understand and agree that the material*
28       *will not be removed even at your request.* You shall remain solely
         responsible for the content of your postings on PC."

         ──────────────────
                        Complaint                                    32

http://www.pissedconsumer.com/tos.txt.

87.  The Pissedconsumer.com post that Chaker started on November 3, 2011, is attached hereto as **Exhibit 'W'**.  Within that post he misrepresents Plaintiff's win/loss ratio.

88.  On August 23, 2015, Defendant DARREN made the false allegation accusing Plaintiff of child molestation, a copy is attached hereto as **Exhibit 'X'**.

89.  On December 4, 2015, Defendant DARREN posted a review entitled "The Mcmillan Law Firm - Scott McMillan Law Firm - La Mesa - Malpractice" which falsely accuses Plaintiff of malpractice, attached hereto as **Exhibit 'Y.'** Chaker falsely states that an appeal in *Williams v. Nordstrom, Inc.* was to be dismissed, and termed it "malpractice." In fact, the appeal was not dismissed and ultimately resulted in a stipulated order of reversal.

90.  On February 11, 2016, Defendant DARREN posted a review "The Mcmillan Law Firm - Scott McMillan Law Firm La Mesa," which is attached hereto as **Exhibit 'Z.'** Chaker made statements that were knowingly false as he stated that the "the Court of Appeal DENIED the petition after forcing the defendant incur huge amounts of attorney fees."  In fact, the defendant did not file a response. Chaker had no basis to suggest that attorneys fees were incurred resulting from the filing of the petition.  Chaker further falsely stated Plaintiff's record as "almost 80 under his belt and a hand full of wins."

### Current Posts

91.  To date Defendant DARREN continues to post material on his website in a manner that is intended to optimize his websites to respond to search engine indexes with his  name.  Specifically, he continues to use the tags "mcmillan-associates-la-mesa", "scott-mcmillan-la-mesa":

92.  On March 29, 2016, Plaintiff accessed http://darren-chaker.blogspot.com/search/label/scott-mcmillan-la-mesa and retrieved the attached article, a true and correct copy of which is attached hereto as **Exhibit 'AA'** which incorporates the use of the tags.

93. On March 29, 2016, Plaintiff accessed http://darrenchaker.us/ and retrieved the attached article bearing a date of December 8, 2015, a true and correct copy is attached hereto as **Exhibit 'BB'**, which incorporates the use of the tags.

94. On March 29, 2016, Plaintiff McMillan accessed http://darrenchaker.org/ and retrieved the attached article bearing a date of January 23, 2016, a true and correct copy is attached hereto as **Exhibit 'CC'**, which incorporates the use of the tags.

**Defendant DARREN's Use of Pseudonyms**

95. Plaintiff is informed and believe that Darren Chaker also uses the pseudonym "Luis Perdomo." On March 29, 2016, Plaintiff accessed https://plus.google.com/1048021677 37415969641/posts/HySqAKY7jYR and retrieved the attached page, a true and correct copy is attached hereto as **Exhibit 'DD'**, incorporating the same allegations and artwork published by Defendant DARREN Chaker.

**Defendant DARREN admits that he knew that he was then barred from posting defamatory material.**

96. On January 22, 2016, Defendant DARREN Chaker appeared for a judgment debtors exam. He had been previously ordered to produce the names of the domains that he holds. On the record in the *Chaker v. Mateo* case, he admitted that he had such logins and that his use of those could, at that time, result in the revocation of his supervised release. [Transcript, p. 9] Defendant DARREN was also ordered to provide the identifying information as to Internet domains that he owns. A copy of relevant portions of the transcript is attached hereto as **Exhibit 'EE'**.

97. Defendant DARREN did not appear as ordered on March 11, 2016, in the Superior Court to provide the information. As recited in the transcript of January 22, 2016, Defendant DARREN was aware that he was required to appear at the continued examination. [**Exh. EE, page 31**]

98. On March 11, 2016 Defendant DARREN failed to appear for his continued judgment debtor's examination. Judge Taylor issued a bench warrant for his appearance, which remains outstanding. A copy of that bench warrant is attached hereto as **Exhibit**

1   'FF'.

2   99.  On March 11, 2016 the Superior Court in the *Chaker v. Mateo* case has

3   ordered the appointment of a receiver to take possession of Mr. Chaker's personal

4   property, including his domain names for ultimate sale in order to satisfy the judgment.

5   Despite orders to do so, Defendant DARREN has not complied with the orders of the

6   Superior Court.

7   **Defendant DARREN has created false accounts with Plaintiff's name**

8   100.  Defendant DARREN created accounts using Plaintiff's name and the name of

9   the McMillan Law Firm.  One of those accounts is on Slideshare.net, and reflected on

10  **Exhibit 'GG'.**  Plaintiff surmise that he has prepared that account in order to upload his

11  defamatory material that he intends to falsely attribute to him.  Plaintiff believes that

12  Defendant DARREN made that account because it is associated by Slideshare with an

13  account under the name of David Gingras, another attorney who successfully represented a

14  victim of Defendants and whom Chaker has also targeted for harassment.

15  **Defendants have inflicted damage upon both Plaintiffs and their clients.**

16  101.  Attorneys rely upon their reputation in the community and before the courts

17  that they practice in.  Defendant DARREN's outrageous lies which he has published have

18  injured Plaintiffs' practice.  Opposing counsel in other, unrelated cases have mentioned the

19  existence of the posts. Clients have mentioned the existence of the posts and their content.

20  Plaintiff McMillan believes that jurors that Plaintiff has tried cases in front of have

21  accessed the posts and taken them into account in determining the cases.  Thus, Defendants'

22  threats made on September 18, 2014 have borne out. Plaintiffs have invested substantial

23  time in developing Plaintiff McMillan's reputation as a zealous advocate for his clients, and

24  remaining consistent to the duties of an attorney as set forth in Business and Professions

25  Code section 6068, and particularly that set forth in subsection (h):

26      "Never to reject, for any consideration personal to himself or herself, the

27      cause of the defenseless or the oppressed."

28  (Bus. & Prof. Code 6068(h).)

---

Complaint                                                    35

1    102. Susan A. has been, prior to representation by Plaintiffs herein, defenseless to

2    and oppressed by Defendants.

3    103. Wendy Mateo was defenseless to and was oppressed by Defendants.

4    104. Plaintiff understood that Defendants could resort to attacks of Plaintiff

5    McMillan's character when Plaintiff continued to represent Susan A. despite Defendants

6    threats to engage in libel against him. Defendants then performed on their threats, and have

7    engaged in the forewarned attacks against Plaintiff – and later Plaintiff's family members –

8    following January 21, 2014, and September 18, 2014.

9                                    **FIRST CLAIM FOR RELIEF**

10   (Civil Extortion - Against Defendants DARREN, NICOLE, VANIA, and DOES 1 through X)

11   105. Plaintiffs repeat and reallege the averments contained in paragraphs 1-92, as

12   though fully set forth herein.

13   106. Plaintiffs are informed, believe and thereon allege that Defendants were

14   involved in a conspiracy and/or conspired to commit the foregoing acts.

15   107. Each of the Defendants were co-conspirators with one another, and agreed

16   verbally or orally, or through their actions, to jointly commit extortion against the

17   Plaintiffs. Defendants, and each of them, knowingly and intentionally did the acts and things

18   alleged in this Complaint pursuant to, and in furtherance of, such agreement. Defendants did

19   these acts, repeatedly and, with knowledge of the fact that they were, among other things,

20   illegal.

21   108. Defendants, and each of them,  in pursuance of a common plan or design to

22   commit the tortious conduct described above, actively took part in it, or furthered it by

23   cooperation or request, or otherwise lent aid or encouragement to Defendant DARREN,

24   and are thereby equally liable to Plaintiffs.

25   109. Defendants, and each of them knew that the foregoing conduct constituted a

26   breach of legal duty, but nonetheless assisted Defendant DARREN, and are thereby equally

27   liable to Plaintiffs.

28   110. Defendants, and each of them breached their duties to Plaintiffs, while

---

Complaint                                                                    36

1   assisting Defendant DARREN in accomplishing the tortious conduct, and are thereby

2   equally liable to Plaintiffs.

3         111.  Defendants conduct was unlawful as a matter of law, in that Defendant

4   DARREN had been forbidden from types of expressive conduct by the terms of his Pre-

5   Trial release, the terms of his confinement and Bureau of Prisons regulations, and the

6   terms of his supervised release.  Defendant NICOLE was aware of these restrictions.

7         112.  Defendant NICOLE's conduct filing legal documents under Defendant

8   DARREN'S name comprised the unlawful practice of law, prohibited by Bus. & Prof. Code

9   section 6126. A non-attorney's "[D]oing and performing services in a court of justice in any

10  matter depending therein" is the unauthorized practice of law and therefore a criminal

11  offense.  (See, *People v. Starski* (2017) 7 Cal. App. 5th 215, 230.)

12        113.  Extortion is the obtaining of property from another, with his consent, or the

13  obtaining of an official act of a public officer, induced by a wrongful use of force or fear,

14  or under color of official right. (Penal Code § 518.)

15        114.  Defendants attempted to obtain property from Plaintiffs, i.e., the right to

16  continue to practice law consistent with the California Business and Professions Code, and

17  the California Rules of Professional Conduct, with respect to the advocacy on behalf of

18  Susan A.

19        115.  Defendants attempted to obtain property from Plaintiffs, i.e., the right to

20  collect on a debt due and owing by virtue of the fee award in the *Chaker v. Mateo* action.

21        116.  Defendants attempted to obtain property from Plaintiffs, i.e., the right to

22  continue to collect and publish cases through the website FEARNOTLAW.COM.

23        117.  Defendants obtained –  without consent –  the use of Plaintiffs' name, have

24  used Plaintiff TMLF's logo, and have damaged the goodwill associated with Plaintiffs'

25  herein.

26        118.  Defendants attempted to obtain an official act of a public officer, i.e., a judge,

27  through Plaintiffs' clients acquiesence.

28        119.  Defendants wrongfully attempted to induce fear as that term is used in Penal

Complaint                                                                                    37

Code section 519, which provides in pertinent part under the heading "threats":

> "Fear, such as will constitute extortion, may be induced by a threat of any of the following:
> 1. To do an unlawful injury to the person or property of the individual threatened or of a third person.
> 2. To accuse the individual threatened, or a relative of his or her, or a member of his or her family, of a crime.
> 3. To expose, or to impute to him, her, or them a deformity, disgrace, or crime.
> 4. To expose a secret affecting him, her, or them.
> * * *

(Penal Code § 519)

120. An attempt to extort, successful or not, is a criminal offense forbidden by the California Penal Code:

> Every person who attempts, by means of any threat, such as is specified in Section 519 of this code, to extort money or other property from another is punishable by imprisonment . . . or by fine . . . or by both such fine and imprisonment.

Cal. Penal Code § 524.

121. Defendants' threats were both express, and were implied by the contents of the various writings and the surrounding circumstances.

122. Defendants transmitted the threats comprising extortion.

123. Plaintiff TMLF was damaged by the loss of goodwill resulting from the false statements published by Defendants' "making good" on the threats. Plaintiff TMLF was damaged by the lost advertising expenses which were negated by the false statements published by defendants.

124. The Statutes of Limitations regarding the bringing of the present claims have been tolled due to Defendants' absence from the State of California according to California Code of Civil Procedure section 351:

> "If, when the cause of action accrues against a person, he is out of the state, the action may be commenced within the term herein limited, after his return to the state, and if, after the cause of action accrues, he departs from the state, the time of his absence is not part of the time limited for the commencement of the action."

(Cal. Civ. Proc. Code § 351.)

125. As a direct and proximate result of the acts of Defendants as alleged in the

Case 3:16-cv-02186-WQH-MDD Document 127-1 Filed 09/23/22 PageID.4584 Page 368 of
1196
Case 3:16-cv-02186-WQH-MDD Document 91-1 Filed 12/12/17 PageID.3638 Page 73 of 89

First Cause of Action above, Plaintiffs were injured.  Plaintiff McMillan suffered

economic damage, expense, and humiliation, including, but not limited to, emotional upset,

anxiety, mental suffering, and damage to his reputation.  Plaintiff McMillan also suffered

loss of time.  Plaintiff McMillan is therefore entitled to compensatory damages in an

amount which will compensate for him all the detriment proximately caused  by

Defendants' acts, whether foreseeable or not,  according to proof at time of trial, in

accordance with Civ. Code § 3333.

   126.  Defendants' conduct was malicious, oppressive and/or fraudulent within the

meaning of California Civil Code § 3294, thereby entitling Plaintiffs to an award of

punitive damages in an amount according to proof at time of trial.

/ / /

/ / /

/ / /

**SECOND CAUSE OF ACTION**

**UNFAIR COMPETITION**

**Business and Professions Code §§ 17200, et seq.**

(By all Plaintiffs against All Defendants)

127. Plaintiffs reallege and incorporate by reference paragraphs 1-103, and 105 to 126, inclusive.

128. California Business & Professional Code §17200 defines unfair competition as "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code". Defendants' conduct therefore constitutes unfair competition as defined by the California Business & Professional Code §17200.

129. Plaintiffs have lost money and property due to the Defendants' acts and practices. Thus, Plaintiffs have standing under California Business & Professional Code §17204. In accordance to §17203, Plaintiffs seek injunctive relief to compel Defendants to cease the practices, and for restitution of the use of the names and likenesses of Plaintiffs herein.

130. Plaintiffs requests that the Court also issue an order to DARREN Chaker requiring him to request the removal of his posts from the Internet forums in a form that may be published to the third parties, i.e., Pissedconsumer.com and Complaintsboard.com, that have published defendants' harrassing and defamatory posts. With such a finding, and an order that Chaker remove those post, those sites would willingly do so.

131. Plaintiffs requests that the Court also issue an order with findings such that can be published to those search engines that have indexed the posts, i.e., Google, Yahoo, and Bing, and findings that such posts were placed by Defendant DARREN contrary to the Judgment in this case. And that Defendant DARREN be ordered to request the removal of such posts from such search indices. Plaintiff's hope and expectation is that those third parties would be persuaded to remove the posts from the respective index.

---

# PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

1. For an Order enjoining Defendants, their agents, and those acting in concert or conspiracy with them, temporarily during the pendency of this action and permanently thereafter from and further violation of the Unfair Competition Law, including such acts taken in reprisal for the refusal to abide by the acts of extortion described herein.

2. That the Court appoint a receiver or special master.

3. For compensatory damages according to proof;

4. For punitive and exemplary damages pursuant to Cal. Civil Code § 3294 or as otherwise provided by law;

5. For an award of costs of suit;

6. For an award of pre-judgment interest and post-judgment interest in the maximum amount permitted by law;

7. For such other and further relief as the Court deems just and proper.

Dated: September 27, 2017          The McMillan Law Firm, A.P.C.

                                   /s/ Scott A. McMillan

BY:          _____

Scott A. McMillan
Attorney, In Propria Persona, and on behalf of
Plaintiff The McMillan Law Firm, A.P.C.

# DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all causes of action so determinable.

Dated: September 27, 2017          The McMillan Law Firm, A.P.C.

                                   /s/ Scott A. McMillan

BY:          _____

Scott A. McMillan
Attorney, In Propria Persona, and on behalf of
Plaintiff The McMillan Law Firm, A.P.C.

Complaint                                                                41

Case 3:16-cv-02186-WQH-MDD Document 91-1 Filed 12/12/17 PageID.3859 Page 61 of 89

# Exhibit "F"

1 | **GILBERT, KELLY, CROWLEY & JENNETT LLP**
TIMOTHY W. KENNA, A PROFESSIONAL CORPORATION / Bar No. 64280
2 | t.kenna@gilbertkelly.com
ARTHUR J. MC KEON III / Bar No. 082540
3 | ajm@gilbertkelly.com
REBECCA J. SMITH / Bar No. 150428
4 | rjs@gilbertkelly.com
401 B Street, Suite 2210
5 | San Diego, California 92101
(619) 687-3000; FAX: (213) 615-7100
6 |
**Mailing Address:**
7 | 550 South Hope Street, 22nd Floor
Los Angeles, California  90071-2627
8 |
Attorneys for Defendant
9 | NICOLE CHAKER

10 | **UNITED STATES DISTRICT COURT**

11 | **SOUTHERN DISTRICT OF CALIFORNIA**

12 |

13 | SCOTT A. MCMILLAN, an individual, ) Case No. 3:16-CV-02186-WQH-MD
THE MCMILLAN LAW FIRM, APC, a )
14 | California professional corporation, ) Judge:  William Q. Hayes
) Courtroom 14B
15 | Plaintiffs, )
vs. ) Magistrate Hon. Mitchell D. Dembin
16 | ) Courtroom 11th Floor
DARREN D. CHAKER an individual, )
17 | and as trustee of PLATINUM ) **NOTICE OF CROSS-APPEAL**
HOLDINGS GROUP TRUST, dba )
18 | COUNTER FORENSICS; NICOLE )
CHAKER, an individual, and as trustee )
19 | of THE NICOLE CHAKER )
REVOCABLE LIVING TRUST, U/A )
20 | dated August 18, 2010, VANIA )
CHAKER, an individual and as )
21 | beneficiary of The Island Revocable )
Trust under Declaration of Trust dated )
22 | June 2, 2015, MARCUS MACK as )
trustee of The Island Revocable Trust )
23 | under Declaration of Trust dated June 2, )
2015, )
24 | )
Defendants. )
25 | _____ )

26 | TO THE COURT, ALL INTERESTED PARTIES AND TO THEIR

27 | RESPECTIVE ATTORNEYS OF RECORD:

28 |

NICOLE CHAKER'S MOTION TO EXTEND TIME BY WHICH TO FILE CROSS-APPEAL

4578054.1  48811-00002 TWK                                3:16-CV-02186-WQH-MD

Notice is hereby given that defendant Nicole Chaker, hereby files this cross-appeal in the above named case to the United States District Court for the Ninth Circuit from the Order Closing the Case (ECF 86) and more specifically, the Order denying defendant Nicole Chaker's Motion to Strike Pursuant to California Code of Civil Procedure 425.16 and motion for attorney's fees and costs as moot in light of the granting of defendant Nicole Chaker's motion to dismiss.

Dated:  December 12, 2017       GILBERT, KELLY, CROWLEY & JENNETT LLP


By: _____
     TIMOTHY W. KENNA
     REBECCA J. SMITH
     Attorneys for Defendant
     NICOLE CHAKER

2

# CERTIFICATE OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 550 South Hope Street, 22nd Floor, Los Angeles, CA 90071-2627.

On December 12, 2017, I served the within document(s) described as:

DECLARATION OF REBECCA J. SMITH IN SUPPORT OF DEFENDANT NICOLE CHAKER'S NOTICE OF MOTION FOR EXTENSION OF TIME TO FILE CROSS-APPEAL (FRAP 4(a)(5))

on the interested parties in this action as stated on the attached service list:

[X] **(BY ELECTRONIC SUBMISSION):** I served the above listed document(s) described via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service though the court's transmission facilities.

[X] **(BY U.S. MAIL)**: By placing a true copy of the foregoing document(s) in a sealed envelope addressed as set forth on the attached mailing list. I placed each such envelope for collection and mailing following ordinary business practices. I am readily familiar with this Firm's practice for collection and processing of correspondence for mailing. Under that practice, the correspondence would be deposited with the United States Postal Service on that same day, with postage thereon fully prepaid at San Diego, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on December 12, 2017, at Los Angeles, California.

I declare under penalty of perjury that the foregoing is true and correct.

| ELIZABETH RUBIO | |
|---|---|
| (Type or print name) | (Signature) |

Freeman Mathis
& Gary, LLP
Attorneys at Law

CERTIFICATE OF SERVICE

4583800.1  48811-00002  TWK

3:16-CV-02186-WQH-MD

Case 3:16-cv-02186-WQH-MDD Document 127-1 Filed 09/23/22 PageID.3459 Page 375 of
Case 3:16-cv-02186-WQH-MDD Document 121-1 Filed 12/12/17 PageID.3843 Page 35 of 89
1196

# CERTIFICATE OF SERVICE

SCOTT A MCMILLAN
THE MCMILLAN LAW FIRM, APC
4670 NEBO DRIVE
SUITE 200
LA MESA, CA 91941-5230
Phone: (619)464-1500
Fax: (619)828-7399
Email: scott4670@gmail.com

Scott A. McMillan,
The McMillan Law Firm, APC
(Plaintiff)

TIMOTHY J. GRANT
FREDRICKSON, MAZEIKA & GRANT, LLP
5720 OBERLIN DRIVE
SAN DIEGO, CA 92121
Phone: 858-642-2002
Fax: 858-642-2001
Email: tgrant@fmglegal.com

Darren D. Chaker (Defendant)


RYAN G. BAKER
BAKER MARQUART LLP
2029 CENTURY PARK EAST
SUITE 1600
LOS ANGELES, CA 90067
Phone: 424-652-7800
Fax: 424-652-7850
Email: rbaker@bakermarquart.com

Vania Chaker (Defendant)

Freeman Mathis
& Gary, LLP
Attorneys at Law

# EXHIBIT Y

# The Mcmillan Law Firm - Scott McMillan Law Firm - La Mesa - Malpractice

## 2 of 4 The Mcmillan Law Firm Reviews

**La Mesa, California** **Dec 04, 2015** **82 views** **0 comments** **100% FULL**



Click here to request automatic e-mail notifications about this case.

Careers | Contact Us | Accessibility | Public Access to Records | Terms of Use | Privacy  © 2014 Judicial Council of California / Administrative Office of the Courts

Scott McMillan, La Mesa, was fined WITH his client by San Diego Superior Court for almost $16,000 and is now fighting a losing battle in the Court of Appeal Case No.D069051 where the court is on the *** of not entertaining the appeal McMillan Law Firm filed.

It is horrible Scott McMillan put his client in jeopardy of paying thousands of dollars.To make matters worse, McMillan Law Firm is suing Nordstroms who hired a Los Angeles law firm who doesn't play 'nice nice' like San Diego attorneys do.

( Vexatious-litigant 1 )  ( The Mcmillan Law Firm 1 )

**Comment**

Exh Y
1 of 6

370

**More Review Details**

Staff ☆★★★★

---

Reason of review:
Not as described

Preferred solution:
For Scott McMillan La Mesa Attorney to dislcose to clients his huge loss rate, and he graduated from an unaccredited law school.

Review category
Lawyers

Review rating
5 out of 5

---

review #744929 by anonymous

Author wants to be contacted by the company.

---

| Share | | 0 | f | 0 | Helpful? | No | 0 | Yes | 28 |
|---|---|---|---|---|---|---|---|---|---|
| | ✓ | 1 | ✓ | 1 | | ✓ | 0 | ✓ | 28 |

| | **Had the same issue** | Yes | 7 |
|---|---|---|---|
| | | ✓ | 7 |

---



Post a comment to start a discussion.

Exh Y
2 of 6

**You May Also Like**



**"Attorney Hermes Eraclides from the law firm of Eraclides Gelman Hall Indek Goodman & Waters owns a house address: 4136 Roberts Point Cir, Sarasota Florida 34242. The house was presented..."**

| | |
|---|---|
| Lexington Law 8003418441 800-3418441 Us<br>12/05/2014 Purchase | -$19.95 |
| Lexington Law 8003418441 800-3418441 Us<br>12/05/2014 Purchase | -$19.95 |
| Lexington Law 8003418441 800-3418441 Us<br>12/05/2014 Purchase | -$99.95 |
| Lexington Law 8003418441 800-3418441 Us<br>12/05/2014 Purchase | -$99.95 |
| Lexington Law 8003418441 800-3418441 Us<br>12/05/2014 Purchase | -$99.95 |

**"I cancelled my account with them back in October and they still continued charging my bank they took $340 out of my bank all at once. Before I signed up..."**

Exh Y
3 of 6



**"I am so sick and furious with myself that I called on Cordell and Cordell for anything. Cordell and Cordell is a money-making machine and that's all they care..."**



**"A few weeks ago, I bought from a seller on eBay, who I trusted, and bought from. I bought HAUNTED PSYCHOKINESIS RING MOVE MATTER WITH YOUR MIND! from her, for..."**



**"I also had a bad experience with one of these ready pac salads. I was tossng my salad after just adding the extra ingredients that come with salad bowl...."**

Exh Y
4 of 6



"Ut a nisi id ante tempus hendrerit. Ut id nisi quis enim dignissim sagittis. Nunc interdum lacus sit amet orci. Maecenas egestas arcu quis ligula mattis placerat. Nullam accumsan lorem..."



"I have been to Outback Steakhouses all over the nation. (Over 100 times from Seattle, WA to Conway, AR.) A couple of times they made a mistake but they always made..."



"The Seller Kenneth Lund sold the product as new, but when it was shipped to me it was used products out of a junk yard. Contacted Paypal. They..."

Exh Y
5 of 6

## Reviews from La Mesa, California

*San Diego Auto Connection* - Bait and Switch

*CJS CD Keys* - SCAM COMPANY

*Walmart*/Tasharina

*The Mcmillan Law Firm* - Scott McMillan Law Firm La Mesa

*Luminess Airbrush* - Luminous Air

## Featured reviews

*Food Network* - Giada a Playboy Bunny

*Poshmark* allowed a person to send cosmetics that were were used back to me.

*Kohls* - POOR Packing, Completely Shattered Shipment

Review about *Centurylink* Internet from Albuquerque, New Mexico

*Telus Mobility* - Telus Signal weak, 3 dots!

## Recently Discussed Reviews

*Home Depot* - Review in Supermarkets and Malls category from Chandler, Arizona
3 minutes ago

*Pampered Touch Salon* - Sabrina Turgeon is a crackhead psycho ***
3 minutes ago

*Verizon* - Collection agency for $6.24 bogus charge
6 minutes ago

*National American Miss* - Selection Letter
8 minutes ago

Review about *RelayRides* Car Rental from Naperville, Illinois
8 minutes ago

Exh Y
6 of 6

375

AO 458 (Rev. 06/09) Appearance of Counsel

# UNITED STATES DISTRICT COURT
for the
SOUTHERN DISTRICT OF CALIFORNIA

SCOTT A. MCMILLAN, et al. )
*Plaintiff* )
v. ) Case No. :16-cv-2186-WQH-MDD
DARREN D. CHAKER, et al. )
*Defendant* )

## APPEARANCE OF COUNSEL

To:     The clerk of court and all parties of record

I am admitted or otherwise authorized to practice in this court, and I appear in this case as counsel for:

Defendant DARREN D. CHAKER

Date: July 17, 2020                                   /s/ E. Lacey Rice
*Attorney's signature*

E. LACEY RICE  266748
*Printed name and bar number*

ROPERS MAJESKI PC
445 South Figueroa Street, Suite 3000
Los Angeles, California 90071
*Address*

lacey.rice@ropers.com
*E-mail address*

(213) 312-2000
*Telephone number*

(213) 312-2001
*FAX number*


American LegalNet, Inc.
www.FormsWorkFlow.com

Case 3:16-cv-02186-WQH-MDD   Document 54-1   Filed 01/30/17   PageID.2649   Page 1 of 10

1 | **GILBERT, KELLY, CROWLEY & JENNETT LLP**
TIMOTHY W. KENNA, A PROFESSIONAL CORPORATION / Bar No. 64280
2 | t.kenna@gilbertkelly.com
ARTHUR J. MC KEON III / Bar No. 082540
3 | ajm@gilbertkelly.com
REBECCA J. SMITH / Bar No. 150428
4 | rjs@gilbertkelly.com
401 B Street, Suite 2210
5 | San Diego, California 92101
(619) 687-3000; FAX: (213) 615-7100
6 |
**Mailing Address:**
7 | 550 South Hope Street, 22nd Floor
Los Angeles, California  90071-2627
8 |
Attorneys for Defendant
9 | NICOLE CHAKER

10 | **UNITED STATES DISTRICT COURT**

11 | **SOUTHERN DISTRICT OF CALIFORNIA**

12 |

13 | SCOTT A. MCMILLAN, an individual, ) Case No. 3:16-CV-02186-WQH-MD
THE MCMILLAN LAW FIRM, APC, a )
14 | California professional corporation, ) Judge:  William Q. Hayes
) Courtroom 14B
15 | Plaintiffs, )
vs. ) Magistrate Hon. Mitchell D. Dembin
16 | ) Courtroom 11th Floor
DARREN D. CHAKER an individual, and )
17 | as trustee of PLATINUM HOLDINGS ) **DEFENDANT NICOLE**
GROUP TRUST, dba COUNTER ) **CHAKER'S OBJECTION TO**
18 | FORENSICS; NICOLE CHAKER, an ) **PLAINTIFFS' REQUEST FOR**
individual, and as trustee of NICOLE ) **JUDICIAL NOTICE IN SUPPORT**
19 | CHAKER REVOCABLE LIVING ) **OF PLAINTIFFS' OPPOSITION**
TRUST, U/A dated August 18, 2010, ) **TO DEFENDANT NICOLE**
20 | VANIA CHAKER, an individual and as ) **CHAKER'S MOTION TO**
beneficiary of The Island Revocable Trust ) **DISMISS AND ANTI-SLAPP**
21 | under Declaration of Trust dated June 2, ) **MOTION**
2015, MARCUS MACK as trustee of The )
22 | Island Revocable Trust under Declaration ) **(**Defendant Nicole Chaker's
of Trust dated June 2, 2015 ) Evidentiary Objections, Reply to
23 | ) Opposition to Anti-SLAPP Motion and
Defendants. ) Reply to Opposition to 12(b)(6)
24 | _____ ) Motion filed concurrently herewith)

25 | [PER CHAMBERS, NO ORAL
ARGUMENT UNLESS ORDERED
26 | BY COURT]

27 | Date:   February 6, 2017
Dept:   14B
28 | Complaint Filed:  August 29, 2016

DEFENDANT NICOLE CHAKER'S OBJECTION TO PLAINTIFFS' REQUEST FOR JURIDICAL NOTICE IN
SUPPORT OF ITS OPPOSITION TO DEFENDANT'S ANTI-SLAPP MOTION
4231449.1  48811-00002  TWK                                    3:16-CV-02186-WQH-MD

Defendant Nicole Chaker ("Nicole") objects to Plaintiffs' Request for Judicial Notice filed in support of its Opposition to Defendant Nicole's Motion to Dismiss pursuant to FRCP 12(b)(5) and Anti-SLAPP motion and specifically as to the request for judicial notice as to the following:

1. Civil Minutes for Order to Show Cause Re Contempt in United States District Court for the Central District of California (Western Division Los Angeles) *Del Nero v. Midland Credit Management*, Case No. CV-04-1040 GPS (SHx), dated March 22, 2005 (hereinafter "Midland Case") – Exhibit B to Scott McMillan's Declaration (Docket No. 45-2, 45-1, 47 and 47-1);

2. Civil Minutes for Order to Show Cause Re Contempt as to Vania Chaker in Midland case.  Exhibit C to Docket No. 45-2, 45-1, 47 and 47-1;

3. Finding of Facts and Conclusions of Law Pursuant to FRCP 52 and LR 52-1 in Midland case, dated July 6, 2005.  Exhibit D to Docket No. 45-2, 45-1, 47 and 47-1;

4. Judgement in the Midland Action.  Exhibit E to Docket No. 45-2, 45-1, 47 and 47-1;

5. Civil Minutes for Defendants' Motion for Attorneys' Fees and Related Non-Taxable Costs in Midland case, dated November 27,2006.  Exhibit F to Docket No. 45-2, 45-1, 47 and 47-1;

6. Order Awarding Attorneys' Fees and Costs to Defendants in Midland case, dated February 20, 2007.  Exhibit G to Docket No. 45-2, 45-1, 47 and 47-1;

7. Judgment for Defendants in Midland case.  Exhibit H to Docket No. 45-2, 45-1, 47 and 47-1;

8. Plaintiff's Exhibit:  Transcript of Ninth Circuit Oral Argument recorded October 23, 2008 in Midland Case.  Exhibit I to Docket No. 45-2, 45-1, 47 and 47-1;

9. Mandate on June 6, 2009 from US Court of Appeals for the 9th Circuit in Midland case.  Exhibit J to Docket No. 45-2, 45-1, 47 and 47-1.

-2-

Gilbert, Kelly
Crowley & Jennett LLP
Attorneys at Law

DEFENDANT NICOLE CHAKER'S OBJECTION TO PLAINTIFFS' REQUEST FOR JURIDICAL NOTICE IN SUPPORT OF ITS OPPOSITION TO DEFENDANT'S ANTI-SLAPP MOTION

4231449.1   48811-00002

3:16-CV-02186-WQH-MD

378

1     10. Plaintiff's Exhibit:  Municipal Court Order on February 26, 2010 of Stay

2        Recommendation of Midland Funding LLC v. Kenneth Nedro in the

3        Midland Case, dated March 8, 2010.  Exhibit K to Docket No. 45-2, 45-1,

4        47 and 47-1;

5     11. Defendants' Notice of Motion and Motion for Award of Attorneys' Fees

6        and Costs in Midland case, dated March 1, 2010.  Exhibit L to Docket No.

7        45-2, 45-1, 47 and 47-1;

8     12. Plaintiff's Exhibit:  Certain excerpts from Defendants' Answering Brief

9        from Hyde & Swigart's appeal before the Ninth Circuit in the Midland

10       Case, dated March 8, 2010.  Exhibit M to Docket No. 47.1;

11    13. Hyde & Swigart's Opposition to Defendant's Motion for Attorneys' Fees

12      and Costs in Midland case dated March 8, 2010.  Exhibit N to Docket 45-2,

13      45-1, 47 and 47-1;

14    14. Declaration of A. Topor in Support of Defendatns' Motion for Award of

15      Attorneys' Fees and Costs in Case No. 2:04-cv-01040-ABC-SH, dated

16      March 18, 2010 and accompanying exhibits to such declaration.  Exhibit O

17      to Docket No. 45-2, 45-1, 47 and 47-1

18    This objection is based on the fact that Plaintiffs have overreached in its

19 request for judicial notice by asking this Court to take notice of facts that are not

20 appropriate for judicial notice, are subject to reasonable dispute as they are neither

21 generally known within the territorial jurisdiction of the trial court nor capable of

22 accurate and ready determination by resort to sources whose accuracy cannot be

23 reasonable questioned, and to the extent Plaintiffs are asking the Court to take

24 judicial notice "for the truth of these statements" in these filing, Nicole objects and

25 respectfully asserts that those requests must be denied because they are not supported

26 by law.

27

28

Gilbert, Kelly
Crowley & Jennett LLP
Attorneys at Law

-3-

1 | Dated:  January 30, 2017       GILBERT, KELLY, CROWLEY & JENNETT LLP

2

3

                                      By:  /s/ ARTHUR J. MCKEON, III

4                                         ARTHUR J. MCKEON, III
                                        REBECCA J. SMITH

5                                         Attorneys for Defendant
                                        NICOLE CHAKER

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gilbert, Kelly
Crowley & Jennett LLP
Attorneys at Law

-4-

DEFENDANT NICOLE CHAKER'S OBJECTION TO PLAINTIFFS' REQUEST FOR JURIDICAL NOTICE IN
SUPPORT OF ITS OPPOSITION TO DEFENDANT'S ANTI-SLAPP MOTION

4231449.1  48811-00002                                  3:16-CV-02186-WQH-MD

**1. The Documents and Facts Contained Within Such Documents Do Not Meet the Requirements for Matters of Which The Court May Take Judicial Notice**

Federal Rules of Evidence (FRE), Rule 201(b) contains two different tests for determining whether a proposition of fact has attained a sufficiently high degree of certainty that it would be consonant with fair procedure to dispense with formal proof. The first test is whether the fact that is proposed for judicial notice is not subject to reasonable dispute because it is generally known within the territorial jurisdiction of the trial court. See, *Cochran v. NYP Holdings, Inc.*, 210 F.3d 1036, 1038 (9th Cir. 2000), adopting trial court's opinion, *Cochran v. NYP Holdings, Inc.*, 58 F.Supp.2d 1113, 1122 n. 5 (C.D.Cal. 1998) (trial court may take judicial notice that particular subject has been covered extensively in newspapers and other news media within trial court's territorial jurisdiction).

The second test is whether the fact that is proposed for judicial notice is not subject to reasonable dispute because it is capable of accurate and ready determination by reference to sources the accuracy of which cannot reasonably be questioned. See, *American Stores Co. v. Commissioner*, 170 F.3d 1267, 1270 (10th Cir. 1999)(unpublished IRS rulings issued to private taxpayers are inappropriate for judicial notice; adjudicative facts they contain are not capable of accurate and ready determination because such rulings are not widely available), cert. denied, 528 U.S. 875, 120 S.Ct. 182, 145 L.Ed.2d 153 (1099).

Both tests have a common requirement: the restriction that the fact proposed for judicial notice must not be subject to reasonable dispute. Thus, if the fact is subject to reasonable dispute, it does not matter that it is generally known within the community or that it is capable of accurate and ready determination by resort to impeccable sources, it is still not properly a subject for judicial notice. See, *United States v. Boyd*, 289 F.3d 1254, 1259-60 (10th Cir. 2002)(techniques of narcotics collection and preservation are too varied to permit judicial notice of fact that approximately 50 gram sample of cocaine will diminish in weight by 3.34 grams

Gilbert, Kelly
Crowley & Jennett LLP
Attorneys at Law

DEFENDANT NICOLE CHAKER'S OBJECTION TO PLAINTIFFS' REQUEST FOR JURIDICAL NOTICE IN SUPPORT OF ITS OPPOSITION TO DEFENDANT'S ANTI-SLAPP MOTION

4231449.1  48811-00002                                    3:16-CV-02186-WQH-MD

Case 3:16-cv-02186-WQH-MDD   Document 127-1   Filed 09/23/22   PageID.4605   Page 389 of
1196
Case 3:16-cv-02186-WQH-MDD   Document 54-1   Filed 01/30/17   PageID.2694   Page 6 of 10

1  over eight month period for purposes of harmonizing two measurements of weight of

2  same sample of cocaine that yielded different results).

3        Thus, when the adjudicative fact proposed for judicial notice fails to satisfy

4  either of these two tests of indisputability, judicial notice is not appropriate. See, *Lee*

5  *v. County of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001)(trial court erred in

6  taking judicial notice of facts recited in record of extradition hearing that occurred in

7  another court record since they were reasonably disputed by allegations in plaintiff's

8  complaint and court record is not indisputable source of factual information.).

9        The advisory committee notes to FRE 201 "explain that '[a] high degree of

10  indisputability is the essential prerequisite' to taking judicial notice of adjudicative

11  facts and that 'the tradition [of taking judicial notice] has been one of caution in

12  requiring that the matter be beyond reasonable controversy.' " *Rivera v. Philip*

13  *Morris, Inc.*, 395 F.3d 1142, 1151 (9th Cir. 2005) (quoting FRE 201(a) & (b)

14  advisory committee's notes). "Because the effect of judicial notice is to deprive a

15  party of an opportunity to use rebuttal evidence, cross-examination, and argument to

16  attack contrary evidence, caution must be used in determining that a fact is beyond

17  controversy under Rule 201(b)." Id. (quoting *Wright v. Brooke Group Ltd.*, 114

18  F.Supp.2d 797, 816 (N.D. Iowa 2000)). FRE 201 "was intended to obviate the need

19  for formal fact-finding as to certain facts that are undisputed and easily verified."

20  *Walker v. Woodford*, 454 F.Supp.2d 1007, 1022 (S.D. Cal. 2006). The fact to be

21  judicially noticed must be one that only an unreasonable person would insist on

22  disputing. (*Walker*)   A court may not "take judicial notice of any matter that is in

23  dispute." *(Walker,* see *Lee* at 689-90 .)

24  **2.** **Plaintiffs' Request to Judicially Notice Pleadings From Another Action Must**

25      **Be Limited To the Fact That The Pleadings Were Filed**

26        Plaintiffs ask this Court to take judicial notice of a wide array of facts that are

27  inappropriate for judicial notice. For each of its requests, Plaintiff appears to rely on

28  the argument that a court may take judicial notice of pleadings in other cases, citing

-6-

Gilbert, Kelly
Crowley & Jennett LLP
Attorneys at Law

DEFENDANT NICOLE CHAKER'S OBJECTION TO PLAINTIFFS' REQUEST FOR JURIDICAL NOTICE IN
SUPPORT OF ITS OPPOSITION TO DEFENDANT'S ANTI-SLAPP MOTION

4231449.1  48811-00002

3:16-CV-02186-WQH-MD

382

to *Burbank-Glendale-Pasadena Airport Authority v. City of Burbank*, 136 F.3d 1360
(9th Cir. 1998)  While the court in such case granted a party's request for juridical
notice of pleadings in a related state court action, the court did not address for what
purpose the request for juridical notice had been made and provided no analysis of
why the request had been granted, merely granting and saying that it must deal with
one further administrative matter.

Neither this case, nor any other case provides authority for the proposition that
a court may take judicial notice of the substantive facts in such documents as proof
of these matters.  When judicially noticing materials from another action, however,
courts are careful not to blindly accept as true the statements made in those materials.
Rather, the courts will limit the judicial notice to the existence of the documents, and
nothing more. See *Lee* at 690 ("On a Rule 12(b)(6) motion to dismiss, when a court
takes judicial notice of another court's opinion, it may do so not for the truth of the
facts recited therein, but for the existence of the opinion, which is not subject to
reasonable dispute over its authenticity"); *Liberty Mut. Ins. Co. v. Rotches Pork
Packers, Inc.*, 969 F.2d 1384, 1388-1389 (2d Cir. 1992) (a court may take judicial
notice of a document filed in another court to establish the fact of that litigation and
related filings, not for the truth of the matters asserted in the other litigation); cf.
*Taylor v. Charter Medical Corp.*, 162 F.3d 827, 829-830 (5th Cir. 1998) (a court
cannot take judicial notice of factual findings of another court, because such findings
do not constitute facts "not subject to reasonable dispute" within the meaning of Rule
201); *General Elec. Capital Corp. v. Lease Resolution Corp*., 128 F.3d 1074, 1082
n.6 (7th Cir. 1997) ("courts generally cannot take notice of findings of fact from
other proceedings for the truth asserted therein because these findings are disputable
and usually are disputed."); *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir.
1994) (district court erred in noticing findings of fact from related court proceeding).

While plaintiffs request for judicial notice does not specifically set forth for
what purpose the requested documents are being sought to be placed before the

Gilbert, Kelly
Crowley & Jennett LLP
Attorneys at Law

DEFENDANT NICOLE CHAKER'S OBJECTION TO PLAINTIFFS' REQUEST FOR JURIDICAL NOTICE IN
SUPPORT OF ITS OPPOSITION TO DEFENDANT'S ANTI-SLAPP MOTION

4231449.1  48811-00002

3:16-CV-02186-WQH-MD

1  court, from the oppositions to the two motions of defendant Nicole, it is clear that

2  plaintiff is seeking to have statements and matters within those documents accepted

3  as truth.  While the authenticity and existence of a particular order, motion, pleading

4  or judicial proceeding, which is a matter of public record, is judicially noticeable,

5  veracity and validity of its contents (the underlying arguments made by the parties,

6  disputed facts, and conclusions of applicable facts or law) are not."); *Velazquez v.*

7  *GMAC Mortg. Corp.*, 605 F.Supp.2d 1049, 1057 (CD. Cal. 2008) ("a court may take

8  judicial notice of the undisputed matters of public record, e.g., the fact that a hearing

9  took place, but it may not take judicial notice of disputed facts stated in public

10  records"); *Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1354-55 (7th

11  Cir. 1995) (holding that district court properly refused to take judicial notice of

12  corporation's Form 10-K to determine disputed fact).  Accordingly, Plaintiffs' request

13  to have the Court take judicial notice of Exhibits B, C, D, E, F, G, H, I, J, K, L, M, N

14  and O of Scott McMillan's declaration for the truth of matters in those pleadings is

15  inappropriate, unsupported by law, and should be denied. Judicial notice must be

16  limited to the fact that these documents were filed

17  **3.  Plaintiffs' Request For Judicial Notice Is Improper Because The Facts**

18     **Sought To Be Noticed Are Not Relevant To the Issues in Dispute**

19         The fact that matters sought to be proved are not reasonably disputable (and

20  thus subject to judicial notice) does not make them admissible. FRE 201 deals only

21  with judicial notice of "adjudicative facts"--i.e., facts in the case that normally go to

22  the trier of fact (facts relating to the parties, their properties their actions, etc.) Courts

23  decline to take judicial notice of facts that are irrelevant to the matters at issue.

24  *Adriana Int'l Corp. v. Lewis & Co.*, 913 F.2d 1406, 1410 n.2 (9th Cir. 1990)

25  (declining to judicially notice another action brought by the defendant in the case

26  because it had no relevance to the appeal or the underlying action). Similarly, when

27  facts are inconsequential to the analysis in the case, or the facts sought to be

28  judicially noticed "add nothing" to the issue, a court will decline judicial notice of

-8-

Gilbert, Kelly
Crowley & Jennett LLP
Attorneys at Law

DEFENDANT NICOLE CHAKER'S OBJECTION TO PLAINTIFFS' REQUEST FOR JURIDICAL NOTICE IN
SUPPORT OF ITS OPPOSITION TO DEFENDANT'S ANTI-SLAPP MOTION
4231449.1  48811-00002                                                3:16-CV-02186-WQH-MD

384

1   those facts. *Boulder Creek Co. v. Maruko, Inc.*, 772 F.Supp. 1150, 1151 (CD. Cal.

2   1991). Even if a fact has some relevance, a court may refuse to judicially notice it if

3   it would not influence its decision. *Badillo v. City of Stockton*, 956 F.2d 884, 887 n.l

4   (9th Cir. 1992) (although election results are judicially noticeable, judicial notice was

5   properly denied where the results would not influence the court's decision).

6   **4.  When Offered To Prove The Facts Stated, Court Records Are Hearsay**

7          Plaintiffs have attempted to have this Court take judicial notice of documents

8   from another court to establish the truth of matters stated within them.  As such the

9   documents would be admissible as evidence only if they satisfied some hearsay

10  exception.  Plaintiffs have asserted no such exception in their request for judidical

11  notice.  Courts have repeatedly held that in regard to judicial notice, the court can

12  notice the existence and legal effect of court documents, but not that statements in

13  them or true and cannot notice the truth of hearsay.  (*Hoag v. Diedjomaho*, 200

14  Cal.App.4th 1008 (2011); *People v. Rualcava*, 2013 IL App (2d) 120396, 997 N.E.2d

15  809, 819 (App. Ct. 2nd District 2013)   There is a fundamental rule that the court

16  cannot notice the truth of testimony or judicial findings of fact.  (*Jorgens v. Ohio*

17  *Dept. of Rehabilitation and Corrections,* 492 Fed. Appx. 567, 569 (6th Cir. 2012); *In*

18  *re Oracle Corp. Securities Litigation,* 627 F.3d 376, 385 (9th Cir., 2010)  While the

19  court may take juridical notice to show the acts of the parties in a litigation, such as a

20  complaint being filed, return of service or that stipulations were entered into.  (*Sullo*

21  *Investments, LLC v. Moreau*, 151 Conn. App. 372, 95 A.3d 114, 1147 (2014) ; Perry

22  v. Schaumann, App. 1986, 716 P.2d 1368, 1371) this is not what plaintiffs have

23  requested in their request for judicial notice.

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

Gilbert, Kelly
Crowley & Jennett LLP
Attorneys at Law

-9-

DEFENDANT NICOLE CHAKER'S OBJECTION TO PLAINTIFFS' REQUEST FOR JURIDICAL NOTICE IN
SUPPORT OF ITS OPPOSITION TO DEFENDANT'S ANTI-SLAPP MOTION

4231449.1  48811-00002

3:16-CV-02186-WQH-MD

385

**5.  <u>Conclusion</u>**

Based on the inappropriateness of the requests for judicial notice, defendant Nicole Chaker respectfully requests that this court deny plaintiffs' request for judicial notice of the contents of the documents set forth in the request for judicial notice and attached to Scott McMillan's Declaration in support of the Request for Judicial Notice as Exhibits B, C, D, E, F, G, H, I, J, K, L, M, N, and O.

Dated:  January 30, 2017          GILBERT, KELLY, CROWLEY & JENNETT LLP


                                 By:  /s/ ARTHUR J. MCKEON, III
                                      ARTHUR J. MCKEON, III
                                      REBECCA J. SMITH
                                      Attorneys for Defendant
                                      NICOLE CHAKER

Gilbert, Kelly
Crowley & Jennett LLP
Attorneys at Law

-10-
DEFENDANT NICOLE CHAKER'S OBJECTION TO PLAINTIFFS' REQUEST FOR JURIDICAL NOTICE IN SUPPORT OF ITS OPPOSITION TO DEFENDANT'S ANTI-SLAPP MOTION
4231449.1  48811-00002                                    3:16-CV-02186-WQH-MD

386

FILED

17 OCT -2 PM 2: 42

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT A. MCMILLAN, an individual; THE MCMILLAN LAW FIRM, APC, a California professional corporation, | CASE NO. 16cv2186-WQH-MDD |
| Plaintiffs, | ORDER |
| v. | |
| DARREN D. CHAKER, an individual, and as trustee of PLATINUM HOLDINGS GROUP TRUST doing business as Counter Forensics, *et al.*, | |
| Defendants. | |

HAYES, Judge:

The matter before the Court is the Motion to Seal or for Protective Order filed by Defendant Darren D. Chaker. (ECF No. 78).

## I. BACKGROUND

On August 29, 2016, Plaintiffs Scott A. McMillan and The McMillan Law Firm ("Plaintiffs") initiated this action by filing a complaint alleging causes of action for violations of the Racketeer Influenced and Corrupt Organizations Act and civil extortion against Defendant Darren D. Chaker ("Defendant") and other defendants. (ECF No. 1). On December 5, 2016, Plaintiffs filed the First Amended Complaint alleging the same causes of action.[1] (ECF No. 25).

---

[1] The Court granted a motion to dismiss the First Amended Complaint on August 28, 2017. (ECF No. 83).

- 1 -                                                    16cv2186-WQH-MDD

1    On May 22, 2017, Defendant filed the Motion to Seal or for Protective Order.
2  (ECF No. 78). Defendant requests that the Court seal the following three previously
3  filed documents: (1) Exhibit FF to the Original Complaint (ECF No. 1-30); (2) Exhibit
4  FF to the First Amended Complaint (ECF No. 25-29); and (3) Exhibit C attached to the
5  declaration of Plaintiff Scott McMillan in support of his opposition to Defendant's
6  motion for sanctions (ECF No. 75-1 at 121-141). Alternatively, Defendant moves the
7  Court for a protective order pursuant to Federal Rule of Civil Procedure 5.2(e). On
8  June 12, 2017, Plaintiff filed a response in opposition. (ECF No. 80). On June 19,
9  2017, Defendant filed a reply. (ECF No. 81).

10  **II. CONTENTIONS**

11    Defendant contends that the Court should seal the three exhibits pursuant to
12  common law or Federal Rule of Civil Procedure 5.2. Defendant contends that Exhibit
13  FF to the original complaint and Exhibit FF to the first amended complaint contain
14  personal and confidential information and could expose Defendant to identify theft.
15  Defendant contends that the two Exhibits FF contain his date of birth, social security
16  number, driver's license numbers, and other personal identifying details. Defendant
17  contends that Plaintiff violated Rule 5.2 by filing Exhibit FF because Plaintiff did not
18  redact the month and date of birth and the first five digits of Defendant's social security
19  number. Defendant contends that the personal information in the exhibits is immaterial
20  to this litigation and its inclusion in the record serves no public interest. Defendant
21  contends that Exhibit C contains personal information such as addresses, dates of birth,
22  driver's license information of Defendant's sister, medical information, and other
23  personal information. Further, Defendant requests that the Court order that all counsel
24  be restrained from publicly disseminating any portion of the sealed documents in this
25  matter and that all documents shall be filed in compliance with Federal Rule of Civil
26  Procedure 5.2. (ECF No. 78-1). Defendant contends that Exhibits 1, 2, 4, 6, 7 and 8
27  to Plaintiff's opposition to this motion (ECF No. 80) should be stricken or
28  alternatively, sealed and/or fully redacted because these exhibits contain the same

- 2 -

16cv2186-WQH-MDD

1    personal information that is the subject of the motion to seal. (ECF No. 81 at 7).

2    Defendant contends that Plaintiffs should be sanctioned for knowingly refiling this

3    information in bad faith. *Id.*

4         Plaintiffs contend that there is no compelling reason to seal Exhibit FF or Exhibit

5    C. (ECF No. 80 at 7, 15). Plaintiffs contend that there are no social security numbers

6    listed in Exhibit FF and the addresses included in the exhibit are "primarily

7    thoroughfares or commercial buildings." *Id.* at 8. Plaintiffs contend that the month and

8    dates of birth can be redacted and driver's license numbers are not protected

9    information. *Id.* at 11. Plaintiffs contend that sensitive information in Exhibit C was

10   redacted prior to filing and that the exhibit does not list Defendant's personal address

11   or full date of birth. *Id.* at 15–18. Plaintiffs contend that Defendant does not have

12   standing to request the Court seal documents containing personal information about

13   Vania Chaker. *Id.* Plaintiffs contend that Exhibit FF and Exhibit C were not filed for

14   an improper purpose. Plaintiffs contend that sealing the documents is an overbroad

15   measure and "proposes that the best way to balance the interests of Defendant and the

16   public access would be to file the original exhibits under seal, and file the attached

17   proposed redacted versions on the public record." *Id.* at 8.

18   **III. LEGAL STANDARDS**

19        "Historically, courts have recognized a 'general right to inspect and copy public

20   records and documents, including judicial records and documents.'" *Kamakana v. City*

21   *and Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner*

22   *Commc'ns., Inc.*, 435 U.S. 589, 597 & n.7 (1978). "A party seeking to seal a judicial

23   record then bears the burden of overcoming this strong presumption by meeting the

24   compelling reasons standard. That is, the party must articulate compelling reasons

25   supported by specific factual findings . . . that outweigh the general history of access

26   and the public policies favoring disclosure . . . ." *Id.* at 1178–79 (citations and

27   quotation marks omitted). The presumed right to access court proceedings and

28   documents can be overcome "only by an overriding right or interest 'based on findings

1  that closure is essential to preserve higher values and is narrowly tailored to serve that

2  interest.'" *Oregonian Publ'g Co. v. United States District Court*, 920 F.2d 1462, 1465

3  (9th Cir. 1990) (quoting *Press-Enterprise Co. v. Superior Court*, 446 U.S. 501, 510

4  (1985)).

5         "Under the compelling reasons standard, the district court must weigh relevant

6  factors, base its decision on a compelling reason, and articulate the factual basis for its

7  ruling, without relying on hypothesis or conjecture." *Pintos v. Pac. Creditors Ass'n*,

8  605 F.3d 665, 679 (9th Cir. 2010) (quotations omitted). "'Relevant factors' include the

9  'public interest in understanding the judicial process and whether disclosures of the

10  material could result in improper use of the material for scandalous or libelous

11  purposes or infringement upon trade secrets.'" *Id.* at 659 n.6 (quoting *Hagestad v.*

12  *Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995)); *see also Kamakana*, 447 F.3d at 1179

13  ("In general, 'compelling reasons' sufficient to outweigh the public's interest in

14  disclosure and justify sealing court records exist when such 'court files might have

15  become a vehicle for improper purposes,' such as the use of records to gratify private

16  spite, promote public scandal, circulate libelous statements, or release trade secrets.").

17         Further, Rule 5.2 provides,

18  Unless the court orders otherwise, in an electronic or paper filing with the
   court that contains an individual's social-security number,
19  taxpayer-identification number, or birth date, the name of an individual
   known to be a minor, or a financial-account number, a party or nonparty
20  making the filing may include only:

21  (1) the last four digits of the social-security number and
   taxpayer-identification number;
22
   (2) the year of the individual's birth;
23
   (3) the minor's initials; and
24
   (4) the last four digits of the financial-account number.
25

26  Fed. R. Civ. P. 5.2(a). Rule 5.2 provides exemptions from this redaction requirement

27  for certain documents, including "the official record of a state-court proceeding." Fed.

28  R. Civ. P. 5.2(b).

# IV. RULING OF THE COURT

The Court has reviewed the three exhibits. Exhibit FF to the Original Complaint (ECF No. 1-30), Exhibit FF to the First Amended Complaint (ECF No. 25-29), and Exhibit C attached to the declaration of Plaintiff Scott McMillan in support of his opposition to Defendant's motion for sanctions (ECF No. 75-1 at 121-141) contain personal and confidential identifying information related to Defendant. The confidential information contained in these exhibits, such as addresses, financial information, driver's license information, and a possible social security number, "could become a vehicle for improper purposes" and justifies sealing the exhibits. *Kamakana*, 447 F.3d at 1179. The Court finds that Defendant has carried his burden of overcoming the strong presumption in favor of public access by articulating compelling reasons, supported by specific factual findings, for sealing the documents. Further, because Exhibits 1, 2, 4, 5, 6, 7 and 8 attached to Plaintiffs' response in opposition to the motion to seal contain most of the same personal information, the Court finds that Defendant has carried his burden to seal these exhibits as well.

IT IS HEREBY ORDERED that the motion is GRANTED with respect to the request to seal and denied as to all other requests. (ECF No. 78). The Clerk of Court shall seal the following previously filed documents: (1) Exhibit FF to the Original Complaint (ECF No. 1-30); (2) Exhibit FF to the First Amended Complaint (ECF No. 25-29); (3) Exhibit C attached to the declaration of Plaintiff Scott McMillan in support of his opposition to Defendant's motion for sanctions (ECF No. 75-1 at 121-141); and, (4) Exhibits 1, 2, 4, 5, 6, 7, and 8 attached to Plaintiffs' response in opposition to the motion to seal (ECF Nos. 80-2, 80-3, 80-5, 80-6, 80-7, 80-8, 80-9).

DATED: 9/29/17

WILLIAM Q. HAYES
United States District Judge

- 5 -

16cv2186-WQH-MDD

Ryan G. Baker (Bar No. 214036)
    rbaker@bakermarquart.com
Brian T. Grace (Bar No. 307826)
    bgrace@bakermarquart.com
BAKER MARQUART LLP
2029 Century Park East, Sixteenth Floor
Los Angeles, California 90067
Telephone:   (424) 652-7800
Facsimile:   (424) 652-7850

*Attorney for Specially Appearing
Defendant Vania Chaker*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT A. MCMILLAN, an individual, THE MCMILLAN LAW FIRM, APC, a California professional corporation, | CASE NO. 3:16-CV-02186-WQH-MDD |
| Plaintiffs, | **SUPPLEMENTAL DECLARATION OF SPECIALLY APPEARING DEFENDANT VANIA CHAKER IN SUPPORT OF HER NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT, OR, IN THE ALTERNATIVE, TO QUASH DEFECTIVE SERVICE** |
| vs. | |
| DARREN D. CHAKER, an individual, and as trustee of PLATINUM HOLDINGS GROUP TRUST, dba COUNTER FORENSICS; NICOLE CHAKER, an individual, and as trustee of THE NICOLE CHAKER TRUST, U/A dated August 18, 2010, VANIA CHAKER, and individual and as beneficiary of The Island Revocable Trust under Declaration of Trust dated June 2, 2015, MARCUS MACK as trustee of The Island Revocable Trust under Declaration of Trust dated June 2, 2015, | The Hon. William Q. Hayes

Date: April 10, 2017
Courtroom: 14B
Complaint Filed: August 29, 2016 |
| Defendants. | |

SUPPLEMENTAL DECLARATION OF VANIA CHAKER

## SUPPLEMENTAL DECLARATION OF VANIA CHAKER

I, VANIA CHAKER, declare:

1.      I am a resident of San Diego County and named as a defendant in this case.

2.      I make this supplemental declaration in support of my Motion to Dismiss Plaintiffs' First Amended Complaint, or, in the Alternative, to Quash Service (the "Motion").  Unless otherwise indicated, I make this declaration based on my own personal knowledge, and, if called to testify regarding any of the statements in this declaration, I could and would testify competently thereto.

3.      Prior to filing the Motion, I searched files for records of my activities the night of February 6, 2017.  After filing the Motion, I continued to search my records to find additional documentation reflecting my activities the evening of February 6, 2017.  Locating evidence of my activities was complicated by a couple of factors.  First, I was not aware the plaintiffs claimed to have served me until I was informed on February 27, 2017 that plaintiffs had filed a proof of service, which was three weeks after the purported service.  Second, I do not keep a copy of all purchase receipts, and the receipts I maintain are not routinely stored in a particular location.

4.      I have located further documentary evidence to refresh my recollection of my activities on the evening of February 6, 2017.  From approximately 6:00 to 6:30 p.m., I was having dinner, and located a receipt from the Cheesecake Factory, located at 364 N. Beverly Drive, Beverly Hills, California where I often dine.  Attached as Exhibit A is a true and correct copy of the receipt associated with dinner.

5.      After dinner that evening, I shopped at a Pottery Barn store, located at 3200 North Sepulveda Boulevard, Manhattan Beach, California.  I purchased an item from that Pottery Barn store at approximately 8:04 p.m.  Attached as Exhibit B is a true and correct copy of the paper receipt I received from the store.  I had previously submitted the email receipt associate with that purchase, but I was

BAKER MARQUART LLP
2029 CENTURY PARK EAST, 16TH FLOOR
LOS ANGELES, CA 90067
Tel: (424) 652-7800 ● Fax: (424) 652-7850

SUPPLEMENTAL DECLARATION OF VANIA CHAKER

1  subsequently also able to locate the physical receipt I received at the store. The last

2  four digits of my credit card as shown on the receipt have been redacted.

3      6.     After purchasing an item from the Pottery Barn store, I then purchased

4  items from Williams Sonoma, located next door to the Pottery Barn at 3200

5  Sepulveda Boulevard, Space #A-9, Manhattan Beach, CA 90266. I purchased two

6  items from Williams Sonoma at approximately 8:32 p.m. for my home.

7      7.     At the time of my Williams Sonoma purchase, the store automatically

8  generated a receipt and delivered it via email to my vaniachaker@gmail.com inbox,

9  where I received it. Exhibit C is a true and correct copy of the emailed receipt sent

10  to me showing my purchase of the two items from the Manhattan Beach Williams

11  Sonoma store to my email address. Personal credit card information has been

12  redacted.

13      8.     Attached as Exhibit D is a true and correct page from my credit card

14  statement. The page shows that on February 6, 2017, I made purchases from the

15  Manhattan Beach Pottery Barn and the Manhattan Beach Williams Sonoma.

16      I declare under penalty of perjury under the laws of the State of California

17  that the foregoing is true and correct. Executed on April 3, 2017, in Los Angeles,

18  California.

19

20                                        **VANIA CHAKER**

BAKER MARQUART LLP
2029 CENTURY PARK EAST, 16ᵀᴴ FLOOR
LOS ANGELES, CA 90067
Tel: (424) 652-7800 • Fax: (424) 652-7850

394
2

SUPPLEMENTAL DECLARATION OF VANIA
CHAKER

# EXHIBIT A

```
            The Cheesecake Factory Beverly Hills
                    364 N. Beverly Dr
                Beverly Hills, CA 90210

Check: 0333    Table:     7   #Party:   2
Server: PETER      JONES          18:07
DINING ROOM

Soda                          (18:08)        3.50
Soda                          (18:08)        3.50
Quesadilla Chicken App        (18:08)       12.50
Skinny Caesar w/Chkn          (18:08)       13.95

                  Sub Total:                33.45
                       Tax:                  2.93
18:28             Total:                    36.38

Payments:            Amt-Tend  Tip/Chg     Tally
CASH                    36.38     0.00      36.38
02/06/2017 18:38                          --------
                                           36.38


Terminal:    SRV-ENTRNC TO DIN
Cashier: PETER      JONES
```

# EXHIBIT B

POTTERYBARN

3200 North Sepulveda Blvd E-10
Manhattan Beach, CA 90266
(310) 545-2751

ASSOCIATE # 360448

*RIA RSN PNSHL TRY   3034183      22.97 F

SUBTOTAL                          $22.97
LOCAL MDSE TAX 8.750%              $2.01
APPAREL TAX 8.750%                 $0.00
TOTAL                             $24.98
VISA                              $24.98
02/06/17 20:03:13
SALE
Account VISA ************
Card Entry Mode Keyed
Result CAPTURED
Authorization Code 603278
Approved Amount USD$ 24.98

If, within 7 days of delivery for
Quick Ship upholstery or within
30 days of purchase for all other
products, you are dissatisfied for
any reason, you may return your
purchase for a refund of the
merchandise value. We cannot
accept returns on monogrammed,
personalized, special order items,
or on items damaged through normal
wear and tear. We also cannot
accept returns on final sale items
which are identified by a price
which ends in $.X7

For returns of items purchased
from your Pottery Barn gift
registry, we will gladly provide a
refund or exchange for the
merchandise within 90 days of your
event or within 90 days of
purchase, whichever is later.
All returns without an original
receipt or with a gift receipt
will be refunded in the form of a
merchandise credit card. Items
returned with a gift receipt will
be refunded or exchanged at the
original purchase price.

Prior purchases are not
eligible for price adjustments.
Mattresses are final sale and
cannot be returned or exchanged.

accept returns on final sale items
which are identified by a price
which ends in $.X7.

For returns of items purchased
from your Pottery Barn gift
registry, we will gladly provide a
refund or exchange for the
merchandise within 90 days of your
event or within 90 days of
purchase, whichever is later.
All returns without an original
receipt or with a gift receipt
will be refunded in the form of a
merchandise credit card. Items
returned with a gift receipt will
be refunded or exchanged at the
original purchase price.

Prior purchases are not
eligible for price adjustments.
Mattresses are final sale and
cannot be returned or exchanged.

We value your opinion!
Please share your Pottery Barn
experience with us at
potterybarn.com/feedback
Take note of
the last 14 digits below
You'll need them to give feedback.

10001720360760422782856

ITEMS 1
02-06-2017  08:04:06PM 6076 04 2278 2856

Thank you for shopping at
Pottery Barn

Visit us online anytime at
www.potterybarn.com

399

# EXHIBIT C

 Gmail

Vania Chaker <vaniachaker@gmail.com>

## Your Williams Sonoma Receipt
1 message

Williams Sonoma <williams-sonoma@order.williams-sonoma.com>
To: "vaniachaker@gmail.com" <vaniachaker@gmail.com>

Mon, Feb 6, 2017 at 8:32 PM

# WILLIAMS
# SONOMA
### CALIFORNIA

**SHOP | NEW | SALE | FIND A STORE**

Thank you for shopping at Williams Sonoma. As you requested, here is your electronic receipt.

```
3200 Sepulveda Blvd, Space #A-9
   Manhattan Beach, CA  90266
        (310) 546-1900

ASSOCIATE # 376437

DS: TSCN CEDARWD      3869976      5.99 T
DS: TSCN CEDARWD      3869976      5.99 T

SUBTOTAL                           $11.98
LOCAL MDSE TAX 8.750                $1.05
FOOD TAX 0.000%                     $0.00
CANDY/SNACK TAX 0.00                $0.00
APPAREL TAX 8.750%                  $0.00
T O T A L                          $13.03
V I S A                            $13.03
02/06/17 20:31:29
SALE
Account:VISA ***********
Card Entry Mode:Keyed
Result:CAPTURED
Authorization Code:867206
Approved Amount:USD$ 13.03


   At Williams-Sonoma, we take great
        pride in the quality and
    craftsmanship of our products.
   Attention to design, materials,

    safety and construction are our
     priority. Upon receipt, please
```

## RETURN TO LEARN™

*Exclusively at*
*Williams-Sonoma*

### BOOK YOUR ONE-ON-ONE APPOINTMENT

Meet with our store experts to learn tips and techniques for making the most of your new cookware and kitchen electrics.

**LEARN MORE >**

Recipes,
Cooking Guides.
Tips & More

**VIEW ALL >**

inspect your purchase and notify
us of any damage; we will arrange
for a prompt replacement.

If within 30 days, you are
dissatisfied for any reason, you
may return your purchase for a
refund of the merchandise value.
An original receipt or gift
receipt is required for all
returns and exchanges.

Returns with a gift receipt will
be refunded in the form of a
Merchandise Credit for the amount
indicated on the gift receipt.
Returns with an original receipt
will be refunded in the original
form of payment, cash and check
refunds over $100 will be issued
as a company check (may take up to
14 business days from time of
request).

We cannot accept returns on food,
monogrammed, personalized,
special-order items, custom
upholstery, items shipped direct
from the vendor, or on items
damaged through normal wear and
tear. Final sale items ending in
.97 or .99 cannot be returned.

Prior purchases are not eligible
for price adjustments.

For returns of items purchased
from your Williams-Sonoma Gift
Registry, we will gladly provide
a refund in the form of
merchandise credit  or exchange
for the merchandise
within 90 days of your
event or within 90 days of
purchase, whichever date is later.

We value your opinion!
Please share your Williams Sonoma
experience with us at
williams-sonoma.com/feedback
Take note of the last 14 digits
below. You'll need them to give
feedback.

SALE

SHOP NOW >

# EXHIBIT D

PLEASE DETACH HERE AND RETURN LOWER PORTION WITH YOUR PAYMENT

Platinum Edition® Visa®

Account Number:

Page 001 of 002



## Account Summary

| | |
|---|---|
| Previous Balance | |
| Payments | |
| Other Credits | |
| Purchases | |
| Balance Transfers | |
| Cash Advances | |
| Fees Charged | |
| Interest Charged | |
| New Balance | |
| | |
| Statement Closing Date | |
| Days in Billing Cycle | |
| | |
| Total Credit Limit | |
| Available Credit | |
| Cash Limit | |
| Available Cash | |

## Payment Information

| | |
|---|---|
| New Balance | $38.01 |
| Minimum Payment Due | $10.00 |
| Past Due Amount | $0.00 |
| Payment Due Date | |

**Late Payment Warning:** If we do not receive your minimum payment by the date listed above, you may have to pay a late fee up to $35.

**Minimum Payment Warning:** If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance. For Example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on this statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 5 months | $40 |

 **Customer Service**

Save Time and Stamps
by Paying Online!

**Smart Tips**

**Have you secured your identity from theft?**
Remember that the most common way identity thieves get their hands on your information is by going through your trash. Be sure to shred anything with sensitive information before throwing it away!

 **Transaction Detail**

| Trans Date | Post Date | Reference Number | Transaction Description | Credits (CR) and Debits |
|---|---|---|---|---|
| **Transactions** | | | | |
| 2-06 | 2-06 | | POTTERY BARN 6076 MANHATTAN BCH CA | $24.98 |
| 2-06 | 2-06 | | WILLIAMS-SONOMA 0216 MANHATTAN BCH CA | $13.03 |
| **Fees** | | | | |
| Total Fees For This Period | | | | $0.00 |
| **Interest Charged** | | | | |
| Interest Charge on Purchases | | | | $0.00 |
| Interest Charge on Cash Advances | | | | $0.00 |
| Interest Charge on Balances Transfers | | | | $0.00 |
| Total Interest For This Period | | | | $0.00 |

Your Annual Percentage Rate (APR) is the annual interest rate on your account.   (v) Variable Rate.   (f) Fixed Rate

| Charge Summary | Annual Percentage Rate (APR) | Balance Subject to Interest Rate | Days Rate Used | Interest Charge |
|---|---|---|---|---|
| Purchases | 21.49% (v) | $5.24 | 29 | $0.00 |
| Cash Advance | 21.49% (v) | $0.00 | 29 | $0.00 |

## 2017 Total Year-to-Date

| | |
|---|---|
| Total fees charged in 2017 | |
| Total interest charged in 2017 | |

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

MAR 16 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| SCOTT A. MCMILLAN; THE MCMILLAN LAW FIRM, APC, | No. 17-56676 |
| Plaintiffs - Appellants, | D.C. No. 3:16-cv-02186-WQH-MDD U.S. District Court for Southern California, San Diego |
| v. | |
| DARREN D. CHAKER, an individual, and as trustee of PLATINUM HOLDINGS GROUP TRUST, DBA Counter Forensics; VANIA CHAKER, an individual and as beneficiary of The Island Revocable Trust under Declaration of Trust dated June 2, 2015; NICOLE CHAKER, an individual, and as trustee of THE NICOLE CHAKER REVOCABLE LIVING TRUST, U/A dated August 18, 2010, | **TIME SCHEDULE ORDER** |
| Defendants - Appellees. | |

| | |
|---|---|
| SCOTT A. MCMILLAN; THE MCMILLAN LAW FIRM, APC, | No. 18-55343 |
| Plaintiffs - Appellees, | D.C. No. 3:16-cv-02186-WQH-MDD U.S. District Court for Southern California, San Diego |
| v. | |

405

NICOLE CHAKER, an individual,
and as trustee of THE NICOLE
CHAKER REVOCABLE LIVING
TRUST, U/A dated August 18, 2010,

               Defendant - Appellant.

This order vacates all brief due dates set by previously issued time schedule orders. The parties shall meet the following cross appeal time schedule.

| | |
|---|---|
| **Fri., March 23, 2018** | Mediation Questionnaire due. If your registration for Appellate ECF is confirmed after this date, the Mediation Questionnaire is due within one day of receiving the email from PACER confirming your registration. |
| **Tue., March 20, 2018** | The party(s) who filed the first appeal shall file and serve the first brief on cross-appeal pursuant to FRAP 28.1. |
| **Thu., April 19, 2018** | The party(s) who filed the second appeal shall file and serve the second brief on cross-appeal pursuant to FRAP 28.1. |
| **Mon., May 21, 2018** | The third brief on cross-appeal shall be filed and served pursuant to FRAP 28.1. |

**The optional cross appeal reply brief shall be filed and served within 21 days of service of the third brief on cross appeal, pursuant to FRAP 28.1.**

**Failure of the appellants to comply with the Time Schedule Order will result in automatic dismissal of the appeal. See 9th Cir. R. 42-1.**

                             FOR THE COURT:

                             MOLLY C. DWYER
                             CLERK OF COURT

                             By: John Brendan Sigel
                             Deputy Clerk
                             Ninth Circuit Rule 27-7

**FREEMAN MATHIS & GARY, LLP**
TIMOTHY W. KENNA, A PROFESSIONAL CORPORATION / Bar No. 64280
t.kenna@gilbertkelly.com
ARTHUR J. MC KEON III / Bar No. 082540
ajm@gilbertkelly.com
REBECCA J. SMITH / Bar No. 150428
rjs@gilbertkelly.com
401 B Street, Suite 2210
San Diego, California 92101
(619) 687-3000; FAX: (213) 615-7100

**Mailing Address:**
550 South Hope Street, 22nd Floor
Los Angeles, California  90071-2627

Attorneys for Defendant
NICOLE CHAKER

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT A. MCMILLAN, an individual, THE MCMILLAN LAW FIRM, APC, a California professional corporation, | Case No. 3:16-CV-02186-WQH-MD |
| Plaintiffs, | Judge:  William Q. Hayes Courtroom 14B |
| vs. | Magistrate Hon. Mitchell D. Dembin Courtroom 11th Floor |
| DARREN D. CHAKER an individual, and as trustee of PLATINUM HOLDINGS GROUP TRUST, dba COUNTER FORENSICS; NICOLE CHAKER, an individual, and as trustee of THE NICOLE CHAKER REVOCABLE LIVING TRUST, U/A dated August 18, 2010, VANIA CHAKER, an individual and as beneficiary of The Island Revocable Trust under Declaration of Trust dated June 2, 2015, MARCUS MACK as trustee of The Island Revocable Trust under Declaration of Trust dated June 2, 2015, | **DEFENDANT NICOLE CHAKER'S NOTICE OF MOTION FOR EXTENSION OF TIME TO FILE CROSS-APPEAL (FRAP 4(a)(5))** |
| | (Memorandum of Points and Authorities and Declaration of Rebecca J. Smith and [Proposed] Order, filed and served concurrently herewith) |
| | Date:    January 15, 2018 Dept:   14B |
| Defendants. | **NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |

NICOLE CHAKER'S NOTICE OF MOTION TO EXTEND TIME BY WHICH TO
FILE CROSS APPEAL

Case 3:16-cv-02186-WQH-MDD Document 1701 Filed 09/23/22 PageID.34681 Page 415 of
1196
Case 3:16-cv-02186-WQH-MDD Document 190 Filed 12/12/17 PageID.3798 Page 2 of 4

1      TO THE COURT, ALL INTERESTED PARTIES AND TO THEIR

2  RESPECTIVE ATTORNEYS OF RECORD:

3      PLEASE TAKE NOTICE that on January 15, 2018 in Courtroom 14B of the

4  above entitled court, before THE HONORABLE William Q. Hayes, presiding, at

5  333 West Broadway, San Diego, CA 92102, defendant Nicole Chaker will and

6  hereby does move this court for an order extending the time by which defendant

7  Nicole Chaker has to file a Notice of Cross-Appeal pursuant to Rule 4(a)(5) of the

8  Federal Rules of Appellate Procedure, up to and including fourteen (14) days after

9  granting of the motion pursuant to FRAP 4(a)(5)(C) or any other date permitted by

10  the court.

11      This motion is made pursuant to Federal Rules of Appellate Procedure

12  ("FRAP") 4(a)(5) on the grounds that the failure to timely file the notice of appeal

13  was based on excusable neglect and good cause and no prejudice will result to the

14  other parties in this appeal by virtue of allowing a cross-appeal to now be filed. This

15  motion is based on this notice, the Memorandum of Points and Authorities and

16  Declaration of Rebecca J. Smith, filed and served concurrently herewith and such

17  other oral and documentary evidence as may be presented at the hearing on this

18  motion.

19      **NO ORAL ARGUMENT WILL BE MADE IN THIS CASE UNLESS**

20  **SPECIFICALLY REQUESTED BY THE COURT.**

21  Dated: December 12, 2017     FREEMAN MATHIS & GARY, LLP

22

23      By: *Rebecca J Smith*

24      TIMOTHY W. KENNA

25      REBECCA J. SMITH
    Attorneys for Defendant
    NICOLE CHAKER

26

27

28

FREEMAN MATHIS &
GARY LLP
ATTORNEYS AT LAW

NICOLE CHAKER'S NOTICE OF MOTION TO EXTEND TIME BY WHICH
TO FILE CROSS-APPEAL
Page | 2

4578054.1  48811-00002 TWK      3:16-CV-02186-WQH-MD

408

# CERTIFICATE OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 550 South Hope Street, 22nd Floor, Los Angeles, CA 90071-2627.

On December 12, 2017, I served the within document(s) described as:

DEFENDANT NICOLE CHAKER'S NOTICE OF FOR EXTENSION OF TIME TO FILE CROSS-APPEAL (FRAP 4(A)(5))

on the interested parties in this action as stated on the attached service list:

☒ **(BY ELECTRONIC SUBMISSION):** I served the above listed document(s) described via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service though the court's transmission facilities.

☒ **(BY U.S. MAIL)**: By placing a true copy of the foregoing document(s) in a sealed envelope addressed as set forth on the attached mailing list. I placed each such envelope for collection and mailing following ordinary business practices. I am readily familiar with this Firm's practice for collection and processing of correspondence for mailing. Under that practice, the correspondence would be deposited with the United States Postal Service on that same day, with postage thereon fully prepaid at San Diego, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on December 12, 2017, at Los Angeles, California.

I declare under penalty of perjury that the foregoing is true and correct.

ELIZABETH RUBIO
(Type or print name)

_(Signature)_

Freeman Mathis
& Gary, LLP
Attorneys at Law

CERTIFICATE OF SERVICE

4583800.1  48811-00002  TWK

3:16-CV-02186-WQH-MD

Case 3:16-cv-02186-WQH-MDD Document 370-1 Filed 09/23/22 PageID.4683 Page 417 of
Case 3:16-cv-02186-WQH-MDD Document 370-1 Filed 12/12/22 PageID.3798 Page 4 of 4
1196

# CERTIFICATE OF SERVICE

SCOTT A MCMILLAN
THE MCMILLAN LAW FIRM, APC
4670 NEBO DRIVE
SUITE 200
LA MESA, CA 91941-5230
Phone: (619)464-1500
Fax: (619)828-7399
Email: scott4670@gmail.com

Scott A. McMillan,
The McMillan Law Firm, APC
(Plaintiff)

TIMOTHY J. GRANT
FREDRICKSON, MAZEIKA & GRANT, LLP
5720 OBERLIN DRIVE
SAN DIEGO, CA 92121
Phone: 858-642-2002
Fax: 858-642-2001
Email: tgrant@fmglegal.com

Darren D. Chaker (Defendant)


RYAN G. BAKER
BAKER MARQUART LLP
2029 CENTURY PARK EAST
SUITE 1600
LOS ANGELES, CA 90067
Phone: 424-652-7800
Fax: 424-652-7850
Email: rbaker@bakermarquart.com

Vania Chaker (Defendant)

4583800.1  48811-00002  TWK

Freeman Mathis
& Gary, LLP
Attorneys at Law

Ryan G. Baker (Bar No. 214036)
  rbaker@bakermarquart.com
Brian T. Grace (Bar No. 307826)
  bgrace@bakermarquart.com
BAKER MARQUART LLP
2029 Century Park East, Sixteenth Floor
Los Angeles, California 90067
Telephone:   (424) 652-7800
Facsimile:   (424) 652-7850

*Attorneys for Specially Appearing*
*Defendant Vania Chaker*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT A. MCMILLAN, an individual, THE MCMILLAN LAW FIRM, APC, a California professional corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>DARREN D. CHAKER, an individual, and as trustee of PLATINUM HOLDINGS GROUP TRUST, dba COUNTER FORENSICS; NICOLE CHAKER, an individual, and as trustee of THE NICOLE CHAKER TRUST, U/A dated August 18, 2010, VANIA CHAKER, and individual and as beneficiary of The Island Revocable Trust under Declaration of Trust dated June 2, 2015, MARCUS MACK as trustee of The Island Revocable Trust under Declaration of Trust dated June 2, 2015,<br><br>Defendants. | CASE NO. 3:16-CV-02186-WQH-MDD<br><br>**SPECIALLY APPEARING DEFENDANT VANIA CHAKER'S EVIDENTIARY OBJECTIONS TO THE DECLARATION OF TIMOTHY J. WING IN OPPOSITION TO DEFENDANT VANIA CHAKER'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT, OR, IN THE ALTERNATIVE, TO QUASH DEFECTIVE SERVICE**<br><br>The Hon. William Q. Hayes<br><br>Date: April 10, 2017<br>Courtroom: 14B<br>Complaint Filed: August 29, 2016<br><br>[PER CHAMBERS ORDER, NO ORAL ARGUMENT UNLESS ORDERED BY THE COURT] |

Specially Appearing Defendant Vania Chaker hereby submits the following Evidentiary Objections to the Declaration of Timothy J. Wing in Opposition to Specially Appearing Defendant Vania Chaker's Motion to Dismiss Plaintiffs' First Amended Complaint, or in the Alternative, to Quash Defective Service (Dkt. 59) (the "Wing Declaration"):

| ¶ | Testimony | Objections |
|---|-----------|------------|
| ¶4 | "I served the documents that had been provided to me upon Vania Chaker on February 6, 2017." | **Foundation/Lack of Personal Knowledge. (Fed. R. Evid. 602, et seq.). Argumentative and Calls for a Legal Conclusion.**<br><br>Mr. Wing's testimony lacks foundation. He has not established that he has any personal knowledge as to Vania Chaker's identity, appearance or residence.<br><br>Mr. Wing's claim that he "served" Vania Chaker is an improper legal conclusion. |
| ¶7 | "As is my usual practice, I perform surveillance on everything that may aid or hinder my service. In this instance, I saw that the complete security camera coverage of the property would result in my being seen, observed, most likely video-recorded, and most of all provided "notice" to Ms. Chaker that there was an effort to serve Ms. Chaker with papers. I expected that Ms. Chaker would maintain the video evidence of the service." | **Foundation/Lack of Personal Knowledge (Fed. R. E. 602.). Relevance (Fed. R. Evid. 402, 403.).**<br><br>Mr. Wing's testimony lacks foundation. Mr. Wing does not have personal knowledge regarding the identity of the owner(s) or occupant(s) of the house he allegedly "surveilled." Mr. Wing also has no basis to testify as to why the house had security cameras or what, if anything, the occupants of the |

BAKER MARQUART LLP<br>2029 CENTURY PARK EAST, 16TH FLOOR<br>LOS ANGELES, CA 90067<br>Tel: (424) 652-7800 • Fax: (424) 652-7850

SPECIALLY APPEARING DEFENANT VANIA CHAKER'S EVIDENTIARY OBJECTIONS TO THE DECLARATION OF TIMOTHY J. WING

| | | | |
|---|---|---|---|
| | | | house would have done had they observed Mr. Wing on the security system.<br><br>Mr. Wing's alleged surveillance practices and opinions regarding the security cameras are irrelevant to the claims and issues in this case. |
| ¶8 | | "The best evidence of my efforts and my presence at the property, and the presence of Ms. Chaker, would be the cameras that recorded our presence on February 6, 2017. The LED lighting on the cameras was on, indicating to me that there was at least a power source for the cameras. | **Foundation/Lack of Personal Knowledge (Fed. R. E. 602.) Argumentative and Calls for a Legal Conclusion. Relevance (Fed. R. Evid. 402, 403.).**<br><br>Mr. Wing's testimony lacks foundation. Mr. Wing does not know whether the cameras at the property recorded his alleged "efforts," the functionality of the cameras, whether the cameras were in working order on the date in question or what the LED lighting on the cameras signified.<br><br>Mr. Wing's testimony as to what the "best evidence" is of his efforts is an improper legal conclusion.<br><br>Mr. Wing's speculation regarding the functionality of cameras he allegedly observed is irrelevant to legal and factual issues in this motion. |
| ¶9 | | "My first attempt to deliver the summons and complaint to Vania | **Foundation/Lack of Personal Knowledge (Fed. R. E. 602.).** |

BAKER MARQUART LLP
2029 CENTURY PARK EAST, 16TH FLOOR
LOS ANGELES, CA 90067
Tel: (424) 652-7800 • Fax: (424) 652-7850

2

SPECIALLY APPEARING DEFENANT VANIA CHAKER'S EVIDENTIARY OBJECTIONS TO THE DECLARATION OF TIMOTHY J. WING

| | | |
|---|---|---|
| | Chaker occurred in the first week of the New Year, 2017. In many of my attempts I noticed the gate to the driveway was sometimes open, sometimes partly open, sometimes closed, and sometimes locked. I never did see more than one vehicle in the driveway. But, I suspected from the way the first SUV was parked that the driveway was used for two vehicles. | **Relevance (Fed. R. Evid. 402, 403.).**<br><br>Mr. Wing lacks personal knowledge as to whether the driveway was used for two vehicles. Mr. Wing's admitted "suspicion" that the driveway was also used for two vehicles lacks foundation. From his personal observations, he only ever observed one car parked in the driveway.<br><br>Mr. Wing's testimony and allegedly observations about the position of the gate and speculation about the number of cars sometimes in the driveway is irrelevant to the legal and factual issues in this motion. |
| ¶10 | "On the date of my successful service, February 6, 2017, I had gone to the address, it was in the midst of the rainy conditions that were ongoing in San Diego, at the time. I first arrived at the property about 5:45 p.m., or so, approaching from the street to the south. I parked my vehicle south of the property, facing north, which provide me a vantage point to observe that there were in fact two black SUV-type vehicles in the driveway. I was unable to see any license plates, or even if any license plates were on the vehicles, but since the gate was close, my assumption was that the vehicles belonged there. | **Foundation/Lack of Personal Knowledge (Fed. R. E. 602.). Argumentative and Calls for a Legal Conclusion. Relevance (Fed. R. Evid. 402, 403.). Vague and Ambiguous.**<br><br>Mr. Wing's testimony is irrelevant to the legal and factual issues in this case.<br><br>Mr. Wing lacks personal knowledge as to what vehicles "belonged" at the house in question. He further admittedly lacks personal knowledge as to either the license plate numbers |

BAKER MARQUART LLP<br>2029 CENTURY PARK EAST, 16TH FLOOR<br>LOS ANGELES, CA 90067<br>Tel: (424) 652-7800 • Fax: (424) 652-7850

3

SPECIALLY APPEARING DEFENANT VANIA CHAKER'S EVIDENTIARY OBJECTIONS TO THE DECLARATION OF TIMOTHY J. WING

BAKER MARQUART LLP
2029 CENTURY PARK EAST, 16TH FLOOR
LOS ANGELES, CA 90067
Tel: (424) 652-7800 • Fax: (424) 652-7850

| | | | |
|---|---|---|---|
| | | | or the make and model of the "SUV-type" vehicles he observed.  Mr. Wing also lacks personal knowledge as to whether the position of the gate "meant" anything regarding whether the SUVs "belonged" at the residence.  It is also not clear what the term "belongs" means in this context.  A visitor to a house might park her car in the driveway with the owner's permission and therefore "belong" the house.  Similarly, delivery persons or Uber drivers might park in a driveway with the owner's permission and therefore "belong" at the house.  Additionally, in paragraph 9, Mr. Wing declares that he "never did see more than one vehicle in the driveway," contradicting his prior testimony in this declaration.  Mr. Wing's testimony is not credible.  Mr. Wing's statement that February 6, 2017 was "the date of my successful service" is an improper legal conclusion. |
| ¶11 | "I parked my vehicle south of the property, across the street; southeast of the property.  As I had observed cameras covering not only the driveway but the sidewalk as well, I assumed that any vehicles traversing north-south along the street would be observed.  I had expected that I would be visible through the cameras, | **Foundation/Lack of Personal Knowledge (Fed. R. E. 602.). Relevance (Fed. R. Evid. 402, 403.).**  Mr. Wing's testimony is irrelevant to the legal and factual issues in this motion.  Mr. Wing's speculation regarding | |

4

SPECIALLY APPEARING DEFENANT VANIA CHAKER'S EVIDENTIARY OBJECTIONS TO THE DECLARATION OF TIMOTHY J. WING

| | | |
|---|---|---|
| | but I took a chance that the rain might be of assistance in providing me "cover." | which vehicles might be observed by cameras, the effect of rain on the cameras and whether he would be observed by the cameras (and what might happen if he was recorded by the cameras) is irrelevant to the factual and legal issues in this motion.

Mr. Wing's testimony lacks foundation. He has not established that the cameras he observed were functioning or capable of observing or recording him. |
| ¶13 | "Realizing my opportunity to serve Ms. Chaker, I then grabbed the documents – the summons and the First Amended Complaint, and proceeded to get out of the vehicle. I jogged up towards the driveway, calling out "Hey you, Vania", or words to that effect. When I made that statement Ms. Chaker was in speaking distance to me, and my voice was sufficiently elevated to provide her notice that I was attempting to contact her. However, upon hearing my shout, Ms. Chaker, who had exited from the garage and was opening the door to one of the SUV's, quickly closed the car door, and made a dash for the front door of the house. At the same time, the garage door began closing from what I assumed was a result of her activating the garage door remote control. Ms. Chaker entered the house and closed the door behind | **Foundation/Lack of Personal Knowledge (Fed. R. E. 602.) Relevance (Fed. R. Evid. 402, 403.). Vague and Ambiguous.**

Mr. Wing's testimony is irrelevant to the legal and factual issues in this motion.

Mr. Wing's testimony also lacks foundation and personal knowledge. Mr. Wing does not know whether the individual in the driveway was Ms. Chaker. Nor does he know whether the person in the driveway heard his allegedly "sufficiently elevated" voice over the rain, or the reasons that the woman might have had to enter the garage when an unknown man in the rain ran towards her screaming. Mr. Wing's also admits that he does not recall the words he said |

BAKER MARQUART LLP
2029 CENTURY PARK EAST, 16TH FLOOR
LOS ANGELES, CA 90067
Tel: (424) 652-7800 • Fax: (424) 652-7850

SPECIALLY APPEARING DEFENANT VANIA CHAKER'S EVIDENTIARY OBJECTIONS TO THE DECLARATION OF TIMOTHY J. WING

BAKER MARQUART LLP
2029 CENTURY PARK EAST, 16TH FLOOR
LOS ANGELES, CA 90067
Tel: (424) 652-7800 • Fax: (424) 652-7850

| | | |
|---|---|---|
| | her." | on that date. Mr. Wing also does not know why the garage door began to close or who (if anyone) activated the garage door opener.<br><br>Mr. Wing's testimony about his "sufficiently elevated" voice is vague and ambiguous. |
| ¶14 | "The person that I served, i.e., Vania Chaker, I recall by the way of description was female by dress, at mid 5-6 feet tall, more short, somewhat heavier for the height, wearing a jacket and I believe with a "hoodie." However, I was able to see for a brief time brown hair, long brown hair. I called out service by stating "your served Vania Chaker", and I tossed the papers over the fence. I returned to my vehicle after waving to all the cameras. When I drove north towards Governor Drive and pass the house, I again waved to the cameras." | **Foundation/Lack of Personal Knowledge (Fed. R. E. 602.) Argumentative and Calls for a Legal Conclusion. Relevance (Fed. R. Evid. 402, 403.).**<br><br>Mr. Wing's testimony is irrelevant to the legal and factual issues in this motion.<br><br>Mr. Wing's testimony lacks foundation. He has not established that he has personal knowledge that the person he observed and called out to was Vania Chaker.<br><br>Mr. Wing's statement that he "served" Vania Chaker by throwing papers over the fence of a residence is an improper legal conclusion. |
| ¶15 | "In light of her appearing to be in control of the premises of 5654 Scripps Street, San Diego, CA 92122, which I'm informed is her property that she has title to, the fact that she ran when I called her name, the fact that she was in control of one of the two vehicles parked in the driveway | **Foundation/Lack of Personal Knowledge (Fed. R. E. 602.) Argumentative and Calls for a Legal Conclusion. Relevance (Fed. R. Evid. 402, 403.). Argumentative and Calls for a Legal Conclusion.** |

| | behind the closed gate, I am confident that I served Vania Chaker. I was not able to actually "touch" her with the papers as she was behind a closed gate, and I did not intend to go off the public sidewalk onto private property. However, I was within 10 yards of her, and as close as I could get in light of the barrier imposed by her fence." | Mr. Wing's testimony is irrelevant to the legal and factual issues in this motion. Mr. Wing's "confidence" that he served Vania Chaker is irrelevant as to whether he properly legally served Vania Chaker. The alleged facts noted by Mr. Wing – the address, the fact that a woman allegedly fled from an unknown man running at her and screaming the rain, or the fact that the woman was "in control" (whatever Mr. Wing means by that term) of a vehicle parked in the driveway does not establish that the woman Mr. Wing observed was Vania Chaker.<br><br>Mr. Wing's testimony lacks foundation. He has not established that he has personal knowledge that the person he observed was Vania Chaker.<br><br>Mr. Wing's statement that he "served" Vania Chaker is an improper legal conclusion. |

BAKER MARQUART LLP
2029 CENTURY PARK EAST, 16TH FLOOR
LOS ANGELES, CA 90067
Tel: (424) 652-7800 • Fax: (424) 652-7850

SPECIALLY APPEARING DEFENANT VANIA CHAKER'S EVIDENTIARY OBJECTIONS TO THE DECLARATION OF TIMOTHY J. WING

1

2    DATED: April 3, 2017              BAKER MARQUART LLP

3                                      /s/ Ryan G. Baker
4                                      Ryan G. Baker
5                                      Brian T. Grace
                                       *Attorneys for Specially Appearing*
6                                      *Defendant Vania Chaker*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BAKER MARQUART LLP
2029 CENTURY PARK EAST, 16TH FLOOR
LOS ANGELES, CA 90067
Tel: (424) 652-7800 • Fax: (424) 652-7850

SPECIALLY APPEARING DEFENANT VANIA
CHAKER'S EVIDENTIARY OBJECTIONS TO THE
DECLARATION OF TIMOTHY J. WING

# EXHIBIT Z

## Reviews from La Mesa, California

*San Diego Auto Connection* - Bait and Switch

*CJS CD Keys* - SCAM COMPANY

*Walmart*/Tasharina

*The Mcmillan Law Firm* - Scott McMillan Law Firm La Mesa

*Luminess Airbrush* - Luminous Air

## Featured reviews

Review about *Apex Vitality* Miracle Bust from Woodland Hills, California

*Telus Mobility* - Telus Signal weak, 3 dots!

*Screaming Owl* - Easter dresses

*Food Network* - Giada a Playboy Bunny

*Steak N Shake* - Wouldn't honer there own advertised price.

## Recently Discussed Reviews

Review about *Luna Flooring* Carpet Installation from Upper Marlboro, Maryland
less than a minute ago

Do NOT BOOK with *Carnival Cruise Lines*!
1 minute ago

*Home Depot* - Review in Supermarkets and Malls category from Chandler, Arizona
6 minutes ago

*Pampered Touch Salon* - Sabrina Turgeon is a crackhead psycho ***
6 minutes ago

*Verizon* - Collection agency for $6.24 bogus charge
8 minutes ago

Exh Z
6 of 6

# The Mcmillan Law Firm - Scott McMillan Law Firm La Mesa

### 1 of 4  The Mcmillan Law Firm Reviews

---

📍La Mesa, California   Feb 11   25 views   0 comments

---

The Mcmillan Law Firm - Scott McMillan Law Firm La Mesa



Another of, literally dozens of appeals and writs filed by McMillan-Law-Firm in La Mesa, Scott McMillan and Michelle Volk, where the Court of Appeal DENIED the petition after forcing the defendants to incur huge amounts of attorney fees.Scott McMillan is the dean of his own law school too, but does not have a single graduate!

Possibly Scott McMillan should take a class on appeals as he has almost 80 under his belt and a hand full of wins.In my opinion, this is huge waste of judicial resources where Scott McMillan graduated from a law school behind a Ford dealership in La Mesa.

Mcmillan-law-firm-la-mesa  1

## Comment

---

**More Review Details**

Customer service

Exh Z
1 of 6

Staff ★★★★

Website ★★★★

Diversity of Products or Services ★★★★

Reliability ★★★★

Reason of review:
Other

Product or service
The Mcmillan Law Firm Legal Services

Review category
Lawyers

Review rating
4 out of 5

review #787855 by anonymous

| **Share** | 🐦 | 0 | f | 0 | **Helpful?** | No | 0 | Yes | 0 |
| | ✓ | 1 | ✓ | 1 | | ✓ | 0 | ✓ | 0 |

| | **Had the same issue** | Yes | 0 |
| | | ✓ | 0 |



Post a comment to start a discussion.

Exh Z
2 of 6

**You May Also Like**



"Howard Tanner Esq Lawyer is totally incompetent. I was scammed out of $10,000 dollars by this sleazy lawyer. I paid him his legal fees, in cash, upfront as requested by..."

| Lexington Law 8003418441 800-3418441 Us 12/05/2014 Purchase | -$19.95 |
| Lexington Law 8003418441 800-3418441 Us 12/05/2014 Purchase | -$19.95 |
| Lexington Law 8003418441 800-3418441 Us 12/05/2014 Purchase | -$99.95 |
| Lexington Law 8003418441 800-3418441 Us 12/05/2014 Purchase | -$99.95 |
| Lexington Law 8003418441 800-3418441 Us 12/05/2014 Purchase | -$99.95 |

"I cancelled my account with them back in October and they still continued charging my bank they took $340 out of my bank all at once. Before I signed up..."

Exh Z
3 of 6



**"I hired Howard Tanner Esq located at 30 Vesey St, New York, NY, Phone # (212) 962-1333 to defend me in court because I was arrested for shoplifting. I am..."**



**"A few weeks ago, I bought from a seller on eBay, who I trusted, and bought from. I bought HAUNTED PSYCHOKINESIS RING MOVE MATTER WITH YOUR MIND! from her, for..."**



**"I also had a bad experience with one of these ready pac salads. I was tossng my salad after just adding the extra ingredients that come with salad bowl...."**

Exh Z
4 of 6



"I honestly would call and complain but this place isnt worth it. Before they delivered outstanding curly cheese fries, bombass shrimps and amazing garlic bread. Now i The bacon is dry,no..."



"We brought a coach and loveseat and have had 4 repairs so far and it is still not fixed. We asked them to exchange it for better furniture and the..."



"I got two Oreos made wrong. And it devastates me because Oreos are my favorite cookies and I look forward to a perfect Oreo but I am very dissatisfied. ..."

Exh Z
5 of 6

AO 458 (Rev. 06/09) Appearance of Counsel

# UNITED STATES DISTRICT COURT
### for the
### SOUTHERN DISTRICT

| | | |
|---|---|---|
| SCOTT A. MCMILLAN, et al. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Case No. 3:16-cv-2186-WQH-MDD |
| DARREN D. CHAKER, et al. | ) | |
| *Defendant* | ) | |

## APPEARANCE OF COUNSEL

To:    The clerk of court and all parties of record

I am admitted or otherwise authorized to practice in this court, and I appear in this case as counsel for:

Defendant DARREN D. CHAKER

Date: June 29, 2020

/s/ E. Lacey Rice
*Attorney's signature*

E. LACEY RICE   266748
*Printed name and bar number*

ROPERS MAJESKI PC
445 South Figueroa Street, Suite 3000
Los Angeles, California 90071
*Address*

lacey.rice@ropers.com
*E-mail address*

(213) 312-2000
*Telephone number*

(213) 312-2001
*FAX number*



427

Case 3:16-cv-02186-WQH-MDD Document 123-1 Filed 09/23/22 PageID.4651 Page 435 of
Case 3:16-cv-02186-WQH-MDD Document 83-1 Filed 03/28/17 PageID.3519 Page 1 of 16
1196

1

2

3

4

5

6

7

8            **UNITED STATES DISTRICT COURT**

9            **SOUTHERN DISTRICT OF CALIFORNIA**

10   SCOTT A. MCMILLAN, an            CASE NO. 16cv2186-WQH-MDD
     individual; THE MCMILLAN LAW
11   FIRM, APC, a California professional   ORDER
     corporation,
12
                              Plaintiffs,
13           v.
14   DARREN D. CHAKER, an individual,
     and as trustee of PLATINUM
15   HOLDINGS GROUP TRUST doing
     business as Counter Forensics, *et al.*,
16
                              Defendants.
17   HAYES, Judge:

18           The matters before the Court are the motion to dismiss and the motion to strike

19   Plaintiffs' third cause of action filed by Defendant Nicole Chaker (ECF Nos. 35, 36);

20   the motion to dismiss and motion to strike filed by Defendant Darren D. Chaker (ECF

21   Nos. 55, 56); the motion to dismiss or alternatively to quash service filed by Defendant

22   Vania Chaker (ECF No. 59); and, the motion for sanctions by Defendant Darren Chaker

23   (ECF No. 66).

24   **I. BACKGROUND**

25           On December 5, 2016, Plaintiffs Scott A. McMillan and The McMillan Law

26   Firm, APC filed the First Amended Complaint ("FAC") against Defendant Darren D.

27   Chaker, an individual and as trustee of Platinum Holdings Group Trust, dba Counter

28   Forensics; Defendant Nicole Chaker, an individual and as trustee of The Nicole Chaker

Revocable Living Trust, U/A dates August 18, 2010; Defendant Vania Chaker, an individual and as beneficiary of The Island Revocable Trust under Declaration of Trust dated June 2, 2015; and Defendant Marcus Mack, as trustee of the Island Revocable Trust under Declaration of Trust dates June 2, 2015. (ECF No. 25). The FAC alleges two causes of action under the Racketeer Influenced and Corrupt Organizations ("RICO") Act pursuant to 18 U.S.C. § 1962(c) and (d) and a civil extortion cause of action under California law.

## II. ALLEGATIONS OF THE FIRST AMENDED COMPLAINT ("FAC")

Plaintiff Scott McMillan is a California licensed attorney practicing law and operating an unaccredited law school. (ECF No. 25 at ¶5). Plaintiff McMillan Law Firm, APC is a corporation operated by Scott McMillan. *Id.* ¶ 6. Defendants Vania and Nicole Chaker are Defendant Darren Chaker's sister and mother, respectively.

Plaintiffs allege that Defendants constitute a RICO enterprise functioning together "as a continuing unit with a common purpose to obtain the Plaintiffs' property under fear induced by falsely imputing a deformity, disgrace, or crimes, and by threats to do an unlawful injury to the person or property . . . all in violation of Cal. Penal Code section 523 (extortion)." *Id.* ¶ 88. "The common purpose of the Enterprise members was to assist each other in the filing of false and meritless lawsuits under federal debt collection statutes; assist each other in the filing of lawsuits against attorneys who opposed them . . . and to conduct a campaign of harassment, defamation, and extortion against attorneys, such as the Plaintiffs, who represented parties adverse to the interests of the Enterprise members . . . ." *Id.* ¶ 91. "Enterprise member also assisted each other in committing vandalism against Plaintiff's property." *Id.*

Defendant Darren Chaker is alleged to have committed multiple acts of racketeering activity through acts involving extortion in violation of California Penal Code sections 518, 519, and 523. *Id.* ¶¶ 94-109. Plaintiffs allege that Darren Chaker sent threatening letters and communications; posted defamatory and fabricated statements online; sent letters threatening Plaintiffs' clients; and sent defamatory emails

to other attorneys and colleagues of Plaintiff McMillan. *Id.* Plaintiffs allege that these acts constitute extortion because Defendant "obtained from Plaintiff his intangible property right to practice law free of threats, and to practice in accordance with the California Rules of Professional Conduct" and "obtained from Plaintiffs their intangible property right to practice law and publish court decisions on the internet." *Id.* at ¶¶ 99-109.

Plaintiffs bring the first cause of action for a violation of RICO, 18 U.S.C. § 1962(c) against Defendant Darren Chaker. *Id.* ¶¶ 84-114. Plaintiffs bring a second cause of action for conspiracy to violate RICO, 18 U.S.C. § 1962(d) against all Defendants. *Id.* ¶¶ 115-119. Plaintiffs bring a third cause of action for civil extortion under California law against Defendants Darren Chaker and Nicole Chaker. *Id.* ¶¶ 120-133.

## III. LEGAL STANDARD ON RULE 12(B)(6)

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a) provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)). When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a

Case 3:16-cv-02186-WQH-MDD Document 123-1 Filed 09/23/22 PageID.4654 Page 438 of
1196
Case 3:16-cv-02186-WQH-MDD Document 83-1 Filed 08/26/17 PageID.3510 Page 4 of 10

complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

## IV. MOTIONS TO DISMISS BY DARREN CHAKER AND NICOLE CHAKER (ECF Nos. 35, 56)

Defendant Darren Chaker contends that the FAC should be dismissed with prejudice for failure to state a claim. Defendant Darren Chaker contends that the RICO cause of action pursuant to 18 U.S.C. §1962(c) must be dismissed because Plaintiffs fail to adequately allege facts to support the predicate act of extortion. (ECF No. 56-1 at 10). Defendant Darren Chaker contends that Plaintiffs fail to state a claim for extortion because Plaintiffs do not allege facts to show that Defendant Darren Chaker obtained property from Plaintiffs. *Id.* at 13. Defendant Darren Chaker further contends that Plaintiffs lack standing because the FAC fails to allege cognizable damages. *Id.* at 18. Defendant Darren Chaker contends that the second cause of action for RICO conspiracy, 18 U.S.C. § 1962(d), fails for the same reasons as the first cause of action. Defendant Darren Chaker contends that the Court should decline to exercise supplemental jurisdiction over the state law claim. *Id.* at 19-20.

Defendant Nicole Chaker also contends the FAC should be dismissed for failure to state a claim.[1] (ECF No. 35). Defendant Nicole Chaker contends that her alleged conduct is protected by the Noerr-Pennington doctrine. (ECF No. 35-1 at 13-16). Defendant Nicole Chaker contends that the RICO causes of action should be dismissed because Plaintiffs fail to adequately plead an enterprise with an effect on interstate commerce, a pattern of racketeering, cognizable damages, or sufficient conduct or

---

[1] Defendant Nicole Chaker files a request for judicial notice of document in the record of a district court case from the United States District Court for the Central District of California. (ECF No. 35-3). Plaintiffs' also file a request for judicial notice of court documents in other cases. (ECF No. 45-1). The Court denies the request for judicial notice as unnecessary. *See, e.g.*, *Asvesta v. Petroutsas*, 580 F.3d 1000, 1010 n. 12 (9th Cir. 2009) (denying request for judicial notice where judicial notice would be "unnecessary").

1   participation in enterprise affairs. *Id.* at 18-25.  Defendant Nicole Chaker contends that

2   the claim under § 1962(d) necessarily fails if the § 1962(c) claim is dismissed.  *Id.* at

3   24.  Defendant Nicole Chaker contends that Plaintiffs do not sufficiently allege any

4   cognizable injury to support the cause of action for civil extortion.  *Id.* at 25.  Defendant

5   Nicole Chaker contends that she is "protected by the litigation privilege under

6   California Civil Code § 47."  *Id.* at 29.

7         Plaintiffs contend that the FAC sufficiently alleges extortion pursuant to the

8   California Penal Code as a predicate act for the RICO claims.  (ECF No. 60).  Plaintiffs

9   contend that Defendant Darren Chaker "has obtained the Plaintiffs' property, i.e. the

10   right to publicity, the goodwill in the business, the Plaintiff's ability to practice law, the

11   Plaintiff's identity and the Plaintiffs' logo."  *Id.* at 14-15.  Plaintiffs further contend that

12   the FAC alleges cognizable damages in the form of injury to a business or property.  *Id.*

13   at 20-21.  Plaintiffs contend that federal law, state law, and California state courts

14   define "property" broadly to include the damage to intangible property interests alleged

15   in the complaint.  *Id.* at 20-26.  Plaintiffs contend that intangible property rights were

16   obtained by Defendant Darren Chaker.  *Id.* at 26-30.  Plaintiffs contend that the Court

17   should exercise its supplemental jurisdiction over the state law claim of civil extortion.

18   *Id.* at 30-31.  Plaintiffs contend that the Noerr-Pennington doctrine has no applicability

19   to this case.  (ECF No. 43 at 25).  Plaintiffs contend that Defendant Nicole Chaker is

20   not protected by the litigation privilege under California Civil Code section 47.

21   Plaintiffs contend that the FAC adequately alleges that Defendant Nicole Chaker

22   conspired to violate § 1962(c).  *Id.* at 20.  Plaintiffs contend that the FAC adequately

23   alleges a civil extortion claim.  *Id.* at 22-23.

24        **A. RICO, 18 U.S.C. § 1962(c)**

25        "The Racketeer Influenced and Corrupt Organizations ('RICO') Act . . . provides

26   for both criminal and civil liability."  *Odom v. Microsoft Corp.*, 486 F.3d 541, 545 (9th

27   Cir. 2007) (citing Pub. L. No. 91-452, § 901, 84 Stat. 922 (1970) (codified at 18 U.S.C.

28   §§ 1961-1968)).  "Under RICO's civil enforcement mechanism, 'any person injured in

1 his business or property by reason of a violation of [18 U.S.C. § 1962] may sue therefor

2 in any appropriate United States district court and shall recover threefold the damages

3 he sustains and the cost of the suit, including a reasonable attorney's fee . . . .'"

4 *Canyon Cty v. Sygenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008) (citing 18 U.S.C.

5 § 1964(c)). "Subsections 1962(a) through (c) prohibit certain 'pattern[s] of racketeering

6 activity' in relation to an 'enterprise.'" *United Bhd. of Carpenters & Joiners of Am. v.*

7 *Bldg. & Const. Trades Dep't, AFL-CIO*, 770 F.3d 834, 837 (9th Cir. 2014). "To have

8 standing under § 1964(c), a civil RICO plaintiff must show: (1) that his alleged harm

9 qualifies as injury to his business or property; and (2) that his harm was 'by reason of'

10 the RICO violation, which requires the plaintiff to establish proximate causation." *Id.*

11 (citing *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992); *Sedima,*

12 *S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).

13      Section 1962(c) provides,

14     It shall be unlawful for any person employed by or associated with any
enterprise engaged in, or the activities of which affect, interstate or foreign

15     commerce, to conduct or participate, directly or indirectly, in the conduct
of such enterprise's affairs through a pattern of racketeering activity or

16     collection of unlawful debt.

17 18 U.S.C. § 1962(c). "The elements of a civil RICO claim are as follows: (1) conduct

18 (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as

19 'predicate acts') (5) causing injury to plaintiff's business or property." *United Bhd. of*

20 *Carpenters*, 770 F.3d at 837 (citing *Living Designs, Inc. v. E.I. Dupont de Nemours &*

21 *Co.*, 431 F.3d 353, 361 (9th Cir. 2005)).

22     "A 'pattern of racketeering activity' requires at least two predicate acts of

23 racketeering activity, as defined in 18 U.S.C. § 1961(1) within a period of ten years."

24 *Canyon Cty*, 519 F.3d at 972. "Racketeering activity" as defined by statute includes

25 "any act or threat involving . . . extortion, . . . which is chargeable under State law."

26 18 U.S.C. § 1961(1)(A). To constitute a predicate act of extortion for purposes of a

27 RICO cause of action, the alleged act must satisfy the generic definition of extortion –

28 "obtaining something of value from another with his consent inducted by the wrongful

1  use of force, fear, or threats." *United Bhd. of Carpenters*, 770 F.3d at 843 (citing

2  *United States v. Nardello*, 393 U.S. 286 (1969)).

3  In *Scheidler v. National Organization for Women, Inc.*, the Supreme Court

4  considered whether the use or threat of force, violence or fear to cause a party to "'give

5  up' property rights, namely, 'a woman's right to seek medical services from a clinic, the

6  right of the doctors, nurses or other clinic staff to perform their jobs, and the right of the

7  clinics to provide medical services free from wrongful threats, violence, coercion and

8  fear" constituted Hobbs Act extortion or a state extortion offense for purposes of a

9  RICO predicate act. 537 U.S. 393, 400-01 (2003). The Court determined that although

10 "[t]here was no dispute . . . that petitioners interfered with, disrupted, and in some

11 instances completely deprived, respondents of their ability to exercise their property

12 rights . . . . such acts did not constitute extortion because petitioners did not 'obtain

13 respondents' property." *Id.* at 404-05. The Court further stated, "Petitioners may have

14 deprived or sought to deprive respondents of their exclusive control of their business

15 assets, but they did not acquire any such property. Petitioners neither pursued nor

16 received 'something of value from' respondents that they could exercise, transfer or

17 sell." *Id.* (citing *Nardello*, 393 U.S. at 290)).

18 In this case, Plaintiffs allege that the requisite predicate acts are multiple acts of

19 extortion in violation of California Penal Code sections 518, 519, and 523.[2]  An act of

20 extortion which is chargeable under state law can constitute racketeering activity

21 sufficient to support a RICO claim.  *See* 18 U.S.C. § 1961(1)(A).  However, to plead

22 extortion as a predicate act, Plaintiffs must allege facts to show that the act involved

23 "obtaining something of value from another." *United Bhd. of Carpenters*, 770 F.3d at

24 843; *Scheidler*, 537 U.S. at 410 ("[W]here as here the Model Penal Code and a majority

25 of States recognize the crime of extortion as requiring a party to obtain or to seek to

---

27 [2] Plaintiffs allege the cause of action pursuant to 18 U.S.C. § 1962(c) solely
against Defendant Darren Chaker. Plaintiffs do not allege the cause of action pursuant
28 to 18 U.S.C. § 1962(c) against Defendant Nicole Chaker. (ECF No. 25 at 33; ECF No.
43 at 6).

obtain property, as the Hobbs Act requires, the state extortion offense for purposes of RICO must have a similar requirement."). Plaintiffs allege that various acts by Defendant Darren Chaker constitute state extortion offenses and predicate acts under RICO because Defendant Darren Chaker obtained from Plaintiffs the "intangible right to practice law and publish decisions on the internet" and the "intangible property right to practice law free of threats, and to practice in accordance with the California Rules of Professional Conduct." (ECF No. 25 at ¶¶ 99-109). The Court concludes that these factual allegations are insufficient to establish that Defendant Darren Chaker obtained something of value from Plaintiffs. *Scheidler*, 537 U.S. at 410. Because Plaintiffs fail to sufficiently allege a predicate act, Plaintiffs fail to state a claim pursuant to 18 U.S.C. § 1962(c). *See, e.g.*, *United Bhd. of Carpenters*, 770 F.3d at 837 (stating that a plaintiff must properly allege a predicate act to state a claim under RICO). The motion to dismiss the cause of action under 18 U.S.C.§ 1962(c) filed by Defendant Darren Chaker is granted.

### B. RICO Conspiracy, 18 U.S.C. § 1962(d)

Plaintiffs bring a RICO conspiracy cause of action against all Defendants and allege that

> commencing in 2004 and during and continuing at all times to the present, RICO defendants conspired to violate section 1962(c), i.e. each defendant agreed that a conspirator (DARREN) would conduct or participate in the affairs of the Enterprise through a pattern of racketeering, including acts involving extortion in violation of California state law, as more fully described in the First Claim for Relief.

(ECF No. 25 at ¶ 116).

A civil RICO cause of action is available for a violation of 18 U.S.C. § 1962(d). *See* 18 U.S.C. § 1964(c). Pursuant to 18 U.S.C. § 1962(d), it is "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). In *Howard v. Am. Online Inc.*, the Ninth Circuit Court of Appeals held that "Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO." 208 F.3d 741, 751 (9th Cir. 2000). The Court has determined that Plaintiffs did not adequately plead a

substantive violation of 18 U.S.C § 1962(c). The motions to dismiss the RICO conspiracy cause of action under 18 U.S.C. § 1962(d) filed by Defendants Nicole Chaker and Darren Chaker are granted.

### C. Civil Extortion Under State Law

The civil extortion cause of action alleged by Plaintiffs against Defendants Darren Chaker and Nicole Chaker does not arise under federal law. The FAC states that this case is properly in federal court based on federal question jurisdiction[3] and that this Court has supplemental jurisdiction over the remaining state law claim pursuant to 28 U.S.C. § 1367(a) because it is "so related to the claims in the action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." (ECF No. 25 at 2). The federal supplemental jurisdiction statute provides:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c).

Having dismissed the only federal claims asserted against Defendant Darren Chaker and Nicole Chaker, the Court declines to exercise supplemental jurisdiction over this state law claim pursuant to 28 U.S.C. § 1367(c). *See San Pedro Hotel Co., Inc. v. City of Los Angeles*, 159 F.3d 470, 478 (9th Cir. 1998). The motions to dismiss the civil extortion cause of action filed by Defendants Nicole Chaker and Darren Chaker are granted.

## V. MOTIONS TO STRIKE BY DARREN CHAKER AND NICOLE CHAKER

---

[3] Plaintiffs also allege, "This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332." (ECF No. 25 at ¶ 1). Plaintiffs have failed to allege sufficient facts to establish diversity jurisdiction and this statement appears to be in reference to 28 U.S.C. § 1331.

(ECF Nos. 55, 36)

Defendant Darren Chaker filed a motion to strike portions of the FAC pursuant to Federal Rule of Civil Procedure 12(f). (ECF No. 55). The Court has dismissed the FAC as to Darren Chaker. Accordingly, the Court denies as moot Defendant Darren Chaker's motion to strike. (ECF No. 55).

Defendant Nicole Chaker filed an anti-SLAPP motion to strike the third cause of action pursuant to California Code of Civil Procedure section 425.16 and for an award of attorney's fees pursuant to California Code of Civil Procedure section 425.16(c). (ECF No. 36). As a result of the Court's decision to decline supplemental jurisdiction over the state law civil extortion claim, the Court does not reach the merits of this motion. The Court denies as moot Defendant Nicole Chaker's anti-SLAPP motion to strike and for attorney's fees and costs. (ECF No. 36).

## VI. MOTION TO DISMISS OR QUASH SERVICE BY VANIA CHAKER (ECF No. 59)

"Specially Appearing Defendant" Vania Chaker moves the Court pursuant to Rule 12(b)(5) for an order dismissing the complaint or alternatively, for an order quashing defective service. (ECF No. 59). Defendant Vania Chaker contends that Plaintiffs failed to serve her prior to the Court's February 27, 2017 deadline for service. *Id.* at 4. Defendant Vania Chaker contends that Plaintiffs failed to serve her by personal service on February 6, 2017 at 6:02 p.m. as represented to the Court by Plaintiffs. *Id.* at 3. Defendant Vania Chaker contends that she has "strong and convincing" evidence that Plaintiff's purported proof of service is fabricated because Defendant Vania Chaker was not at this location at that time.[4]  *Id.* at 3-5. Defendant Vania Chaker further

---

[4] Defendant Vania Chaker requests judicial notice of decision of the California Court of Appeal, Fourth District, Division 1. (ECF No. 59-3). Plaintiffs object to the request for judicial notice. (ECF No. 64-5). The Court does not rely on this material in reaching its decision and denies the request for judicial notice. *See, e.g., Asvesta v. Petroutsas,* 580 F.3d 1000, 1010 n. 12 (9th Cir. 2009) (denying request for judicial notice where judicial notice would be "unnecessary"). Additionally, Defendant Vania Chaker filed evidentiary objections to declarations filed by Plaintiffs. (ECF Nos. 69-2, 69-3, 69-4). The Court has reviewed and considered these objections. A ruling on

contends that the Summons filed by Plaintiffs incorrectly names Vania Chaker as an

individual and as trustee of Vania Chaker Trust. *Id.* at 3. Defendant Vania Chaker

contends she should be dismissed from this action because Plaintiffs have failed to

complete service despite two extensions of time and have failed to establish good cause

for another extension of time. *Id.* at 7.

Plaintiffs contend that Defendant Vania Chaker was properly served on Feburary

6, 2017. Plaintiffs contend that the evidence offered in support of Defendant Vania

Chaker's motion is not credible and does not establish that she was not home at the time

stated in the proof of service filed with the Court.[5]  (ECF No. 64). Plaintiffs contend

that the Court should find service proper based on the substantial compliance doctrine.

*Id.* at 5-6. Plaintiffs request that the Court deny this motion and order Defendant Vania

Chaker to respond to the complaint within ten days. Plaintiffs request that, if the Court

grants any portion of the motion, the Court extend time for service, designate counsel

for Vania Chaker as agent for service of process, and order that her counsel accept the

service by email. *Id.* at 8.

**A. Legal Standard**

"Without a proper basis for jurisdiction, or in the absence of service of process,

the district court has no power to render any judgment against the defendant's person

or property unless the defendant has consented to jurisdiction or waived the lack of

process." *S.E.C. v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007). "A federal court is

without personal jurisdiction over a defendant unless the defendant has been served in

accordance with Fed.R.Civ.P. 4." *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986),

amended, 807 F.2d 1514 (9th Cir. 1987) (citing *Jackson v. Hayakawa*, 682 F.2d 1344,

1347 (9th Cir. 1982)). Federal Rule of Civil Procedure 12(b)(5) authorizes a defendant

to move to dismiss the complaint for insufficient service of process. Fed. R. Civ. P.

---

these objections is not necessary to resolve this motion.

[5] Plaintiffs filed evidentiary objections to the declaration filed by Vania Chaker
in support of her motion. (ECF No. 64-4). The Court has reviewed and considered
these objections. A ruling on these objections is not necessary to resolve this motion.

12(b)(5).  Once a party challenges service, the plaintiff bears the burden to show that service was valid under Rule 4.  *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). The court has discretion to dismiss an action or quash service if there is insufficiency of process or insufficiency of service.  *See SHJ v. Issaquah School District No. 411*, 470 F.3d 1288, 1293 (9th Cir. 2006) (citing *Stevens v. Security Pac. Nat'l Bank*, 538 F.2d 1387, 1389 (9th Cir. 1976)).

Under Federal Rule of Civil Procedure 4(e), a plaintiff may serve an individual within a judicial district of the United States by (1) following state law service requirements, or (2) service may be effected upon an individual by (A) delivering a copy of the summons and complaint to the individual personally, (B) by leaving a copy of each "at the individual's dwelling or usual place of abode" with someone of suitable age and discretion who resides there; or (C) by delivering a copy of each to an "agent authorized by appointment or by law to receive service of process."  Fed. R. Civ. P. 4(e).

California Code of Civil Procedure section 415.20(a) states,

> In lieu of personal delivery of a copy of the summons and complaint to the person to be served...a summons may be served by leaving a copy of the summons and complaint during usual office hours in his or her office, or if no physical address is known, at his or her usual mailing address... with the person who is apparently in charge thereof, and by thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left....

Cal. Code of Civ. P. § 415.20(a).

If a party receives sufficient notice of the complaint, Rule 4 is to be "liberally construed" to uphold service. *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1404 (9th Cir. 1994).  "However, 'neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction without substantial compliance with Rule 4.'" *Travelers Cas. & Sur. Co. of Am. v. Brenneke*, 551 F.3d 1132, 1135 (9th Cir. 2009) (citing *Benny*, 799 F.2d at 492 (citation and quotes omitted)).

**B. Discussion**

Plaintiffs filed their original complaint on August 29, 2016 (ECF No. 1) and the

- 12 -

16cv2186-WQH-MDD

FAC on December 5, 2016 (ECF No. 25). On December 20, 2016, this Court issued an order granting Plaintiffs a second extension of time in which to complete service upon Defendant Vania Chaker. (ECF No. 38). The Order stated, "Plaintiffs' new deadline to achieve service on Vania Chaker is Monday, February 27, 2017." *Id.*

On February 27, 2017, Plaintiffs filed Proof of Service of Summons in the Complaint. (ECF No. 58). The document states that Defendant Vania Chaker was served by personal service on February 6, 2017 at 6:02 p.m. in San Diego by a registered process server. (ECF No. 58). Defendant Vania Chaker asserts she was not served on February 6, 2017. Defendant Vania Chaker provides receipts from purchases she made in Manhattan Beach, California around the time of service on February 6, 2017 to establish that she was not in San Diego at this time and date.

In a declaration filed in support of Plaintiffs' opposition, the process server states that on February 6, 2017 around 6 p.m., he observed Vania Chaker at the address stated in the proof of service document. He states that he

> jogged up towards the driveway, calling out "Hey you, Vania" or words to that effect. When I made the statement Ms. Chaker was in speaking distance to me, and my voice was sufficiently elevated to provide her notice that I was attempting to contact her. However, upon hearing my shout, Ms. Chaker, who had exited from the garage . . . made a dash for the front floor of the house. . . . Ms. Chaker entered the house and closed the door behind her. . . . I called out service by stating "your served Vania Chaker", and I tossed the papers over the fence, . . . I was not able to actually 'touch' her with the papers as she was behind a closed gate, and I did not intend to go off the public sidewalk onto private property. However I was within 10 yards of her, and as close as I could get in light of the barrier imposed by her fence.

(ECF No. 64-1 at 4).

Based on the statements offered in the declaration by the process server, the Court cannot conclude that Plaintiffs delivered a copy of the summons and complaint to Defendant Vania Chaker personally. *See* Fed. R. Civ. P. 4(e). Plaintiffs further contend that the Court should uphold service as proper under the substantial compliance doctrine. In *Travelers Cas. & Sur. Co. of Am. v. Brenneke*, the Ninth Circuit Court of Appeals held,

Sufficient service may be found where there is a good faith effort to

comply with the requirements of Rule 4(e)(2) which has resulted in placement of the summons and complaint within the defendant's immediate proximity and further compliance with Rule 4(e)(2) is only prevented by the defendant's knowing and intentional actions to evade service.

551 F.3d at 1136.  While Plaintiffs assert that Defendant Vania Chaker has attempted to evade service and that the process server left the papers in her proximity, Defendant Vania Chaker provides evidence that she was not present at the address when the alleged service was completed.  The Court concludes that Plaintiffs have failed to satisfy their burden to demonstrate that service upon Defendant Vania Chaker was proper under Rule 4.  *See id.* at 1135 ("neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction without substantial compliance with Rule 4.").  The Court grants Defendant Vania Chaker's motion to quash service of process.  *See Issaquah School District No. 411*, 470 F.3d at 1293

However, the Court has determined that Plaintiffs did not adequately plead a substantive violation of 18 U.S.C § 1962(c).  Accordingly, Plaintiffs' claim for a conspiracy to violate RICO pursuant to 18 U.S.C. § 1962(d) necessarily fails. *See supra* Part IV.B; *Howard*, 208 F.3d at 751. Conspiracy to violate RICO pursuant to 18 U.S.C. § 1962(d) is the only cause of action alleged against Defendant Vania Chaker.  The Court dismisses the FAC without prejudice as to Defendant Vania Chaker. (ECF No. 25).

## VII. MOTION FOR SANCTIONS BY DARREN CHAKER (ECF No. 66)

Defendant Darren Chaker filed a motion for sanctions against Plaintiffs pursuant to Rule 11 of the Federal Rules of Civil Procedure, or alternatively, the Court's inherent power. (ECF No. 66).  Defendant Darren Chaker contends that sanctions are warranted because (1) the allegations in the FAC are "factually baseless from an objective perspective, and were included in the FAC for an improper purpose"; (2) Plaintiffs' RICO claims are frivolous; and (3) Plaintiffs' RICO claims were brought "for the improper purpose of naming Darren's mother . . . and sister . . . as Defendants . . . solely to harass Darren and his family." *Id.* at 2.

Plaintiffs contend that the motion is without merit and that the allegations of the FAC are proper, non-frivolous, and sufficiently supported by facts.  (ECF No. 75).

Rule 11 of the Federal Rules of Civil Procedure provides in part,

b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery;...

Fed. R. Civ. P. 11(b)(3).  When a "complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong analysis to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it."  *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (quotation omitted).  "As shorthand for this test, we use the word 'frivolous' to denote a filing that is both baseless and made without a reasonable and competent inquiry."  *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) (quotation omitted).

After reviewing the motion and the submissions of the parties, the Court finds that the record in this case does not support the imposition of sanctions at this stage in the proceedings.  The motion for sanctions is denied.  (ECF No. 66).

## VIII. CONCLUSION

IT IS HEREBY ORDERED that Defendant Darren Chaker's motion to dismiss the First Amended Complaint is granted. (ECF No. 56). The First Amended Complaint (ECF No. 25) is dismissed without prejudice as to Defendant Darren Chaker. Accordingly, Defendant Darren Chaker's motion to strike portions of the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(f) is denied as

1    moot.  (ECF No. 55).

2         IT IS HEREBY ORDERED that Defendant Darren Chaker's motion for sanctions

3    is denied.  (ECF No. 66)

4         IT IS HEREBY ORDERED that Defendant Nicole Chaker's motion to dismiss

5    the First Amended Complaint is granted.  (ECF No. 35).  The First Amended Complaint

6    (ECF No. 25) is dismissed without prejudice as to Defendant Nicole Chaker.  Defendant

7    Nicole Chaker's anti-SLAPP motion to strike and for attorneys' fees and costs is denied

8    as moot.  (ECF No. 36).

9         IT IS HEREBY ORDERED that Defendant Vania Chaker's motion to quash the

10   service of process is granted.  (ECF No. 59). The Court quashes service upon Defendant

11   Vania Chaker and grants Plaintiffs sixty (60) days from the date any amended

12   complaint is filed upon which to perfect service upon Vania Chaker in accordance with

13   the requirements of Federal Rule of Civil Procedure 4.

14        IT IS FURTHER ORDERED that the First Amended Complaint (ECF No. 25)

15   is dismissed without prejudice as to Defendant Vania Chaker.  Plaintiffs shall file any

16   motion for leave to file an amended complaint pursuant to Local Rule 7.1 and within

17   thirty (30) days of the date this Order is issued.

18   DATED:  August 28, 2017

19                          _William Q. Hayes_____

20                          **WILLIAM Q. HAYES**
                            United States District Judge

21

22

23

24

25

26

27

28

- 16 -                                    16cv2186-WQH-MDD

443

Case 3:16-cv-02186-WQH-MDD Document 1251 Filed 02/26/17 PageID.2657 Page 451 of
1196
Case 3:16-cv-02186-WQH-MDD Document 150-1 Filed 09/23/22 PageID.4667 Page 1 of 1

**FREDRICKSON, MAZEIKA & GRANT, LLP**
Timothy J. Grant, Esq. (SBN 122593)
tgrant@fmglegal.com
5720 Oberlin Drive
San Diego, CA 92121-1723
Tel:  858-642-2002; Fax:   858-642-2001

Attorneys for Defendant DARREN D. CHAKER, an individual, and as trustee of
PLATINUM HOLDINGS GROUP TRUST, dba COUNTER FORENSICS

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT

| | |
|---|---|
| SCOTT A. MCMILLAN, et al., | Case No. 3:16-CV-02186-WQH-MD |
| Plaintiffs, | Judge:  Hon. William Q. Hayes<br>Courtroom: 14B |
| v. | Magistrate: Hon. Mitchell D. Dembin<br>Courtroom: 11th Floor |
| DARREN D. CHAKER, et al., | **ORDER RE: STIPULATION TO EXTEND TIME TO RESPOND TO FIRST AMENDED COMPLAINT** |
| Defendants. | Complaint Filed:  August 29, 2016 |

## <u>ORDER</u>

IT IS HEREBY ORDERED that based upon the stipulation between the affected parties concurrently submitted herewith, and for other demonstrated good cause, the responsive pleadings to Plaintiffs' First Amended Complaint by Defendant, DARREN D. CHAKER, an individual, and as trustee of PLATINUM HOLDINGS GROUP TRUST, dba COUNTER FORENSICS, are to be filed and served no later than February 17, 2017.

Dated:  January 26, 2017

Hon. William Q. Hayes
United States District Court



Office of the Clerk
**United States Court of Appeals for the Ninth Circuit**
Post Office Box 193939
San Francisco, California 94119-3939
415-355-8000

Molly C. Dwyer
Clerk of Court

March 16, 2018

| | |
|---|---|
| Nos.: | 17-56676, 18-55343  Cross Appeals |
| D.C. No.: | 3:16-cv-02186-WQH-MDD |
| Short Title: | Scott McMillan, et al v. Nicole Chaker |

Dear Appellants/Counsel

A copy of your notice of appeal/petition has been received in the Clerk's office of the United States Court of Appeals for the Ninth Circuit. The U.S. Court of Appeals docket number shown above has been assigned to this case. You must indicate this Court of Appeals docket number whenever you communicate with this court regarding this case.

Please furnish this docket number immediately to the court reporter if you place an order, or have placed an order, for portions of the trial transcripts. The court reporter will need this docket number when communicating with this court.

**The due dates for filing the parties' briefs and otherwise perfecting the appeal have been set by the enclosed "Time Schedule Order," pursuant to applicable FRAP rules. These dates can be extended only by court order. Failure of the appellant to comply with the time schedule order will result in automatic dismissal of the appeal. 9th Cir. R. 42-1.**

1   Scott A. McMillan, SBN 212506
    The McMillan Law Firm, APC
2   4670 Nebo Drive, Suite 200
    La Mesa, California 91941-5230
3   (619) 464-1500
    Email: scott@mcmillanlaw.us
4
    Attorney for Plaintiffs, SCOTT A. MCMILLAN, an individual, and THE
5   MCMILLAN LAW FIRM, APC, a California Professional Corporation

6

7

8                   UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10  SCOTT A. MCMILLAN, an                 Case No. 3:16-CV-02186-WQH-MDD
    individual, THE MCMILLAN LAW
11  FIRM, APC, a California Professional   Judge: Hon. William Q. Hayes
    Corporation,                          Courtroom: 14B
12
13    Plaintiffs,

14    v.                                  AMENDED PROOF OF SERVICE
                                          RE: NOTICE OF CROSS APPEAL;
15  DARREN D. CHAKER an individual,       STATEMENT OF
    and as trustee of PLATINUM            REPRESENTATION [9TH Cir. R. 3-
16  HOLDINGS GROUP TRUST, dba             2]
    COUNTER FORENSICS; NICOLE
17  CHAKER, an individual, and as trustee
    of THE NICOLE CHAKER
18  REVOCABLE LIVING TRUST, U/A
    dated August 18, 2010, VANIA
19  CHAKER, an individual and as
    beneficiary of The Island Revocable
20  Trust under Declaration of Trust dated
    June 2, 2015, MARCUS MACK as
21  trustee of The Island Revocable Trust
    under Declaration of Trust dated June
22  2, 2015,

23    Defendants.

24

25

26

27

28

**AMENDED CERTIFICATE OF SERVICE**

I am admitted to the United States District Court for the Southern District of California. I am employed in San Diego County, California. My business address is 4670 Nebo Drive, Suite 200, La Mesa, CA 91941-5230.

On March 16, 2018, I caused service of the following documents:

**NOTICE OF CROSS-APPEAL; STATEMENT OF REPRESENTATION [9TH Cir. R. 3-2].**

By Electronic Submission: I served the above listed document(s) described via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service though the court's transmission facilities.

I certify that the foregoing is true and correct.

Dated: March 16, 2018

/s/ Scott A. McMillan

_____

Scott A. McMillan

---

3:16-CV-02186

AMENDED PROOF OF SERVICE RE:
NOTICE OF CROSS-APPEAL

2

1  Ryan G. Baker (Bar No. 214036)
      rbaker@bakermarquart.com
2  Brian T. Grace (Bar No. 307826)
      bgrace@bakermarquart.com
3  BAKER MARQUART LLP
   2029 Century Park East, Sixteenth Floor
4  Los Angeles, California 90067
   Telephone:  (424) 652-7800
5  Facsimile:   (424) 652-7850

6  *Attorneys for Specially Appearing*
7  *Defendant Vania Chaker*

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10

11  SCOTT A. MCMILLAN, an individual,     CASE NO. 3:16-CV-02186-WQH-
12  THE MCMILLAN LAW FIRM, APC,           MDD
    a California professional corporation,
                                          **SPECIALLY APPEARING**
13                                        **DEFENDANT VANIA CHAKER'S**
                Plaintiffs,               **EVIDENTIARY OBJECTIONS TO**
14                                        **THE DECLARATION OF JOSHUA**
           vs.                            **VAN NOORD IN OPPOSITION TO**
15                                        **DEFENDANT VANIA CHAKER'S**
    DARREN D. CHAKER, an individual,      **MOTION TO DISMISS**
16  and as trustee of PLATINUM            **PLAINTIFFS' FIRST AMENDED**
    HOLDINGS GROUP TRUST, dba             **COMPLAINT, OR, IN THE**
17  COUNTER FORENSICS; NICOLE             **ALTERNATIVE, TO QUASH**
    CHAKER, an individual, and as trustee **DEFECTIVE SERVICE**
18  of THE NICOLE CHAKER TRUST,
    U/A dated August 18, 2010, VANIA
19  CHAKER, and individual and as         The Hon. William Q. Hayes
    beneficiary of The Island Revocable
20  Trust under Declaration of Trust dated Date: April 10, 2017
    June 2, 2015, MARCUS MACK as          Courtroom: 14B
21  trustee of The Island Revocable Trust  Complaint Filed: August 29, 2016
    under Declaration of Trust dated June 2,
22  2015,                                 [PER CHAMBERS ORDER, NO
                                          ORAL ARGUMENT UNLESS
23              Defendants.               ORDERED BY THE COURT]

24

25

26

27

28

Specially Appearing Defendant Vania Chaker hereby submits the following Evidentiary Objections to the Declaration of Joshua Van Noord in Opposition to Specially Appearing Defendant Vania Chaker's Motion to Dismiss Plaintiffs' First Amended Complaint, or in the Alternative, to Quash Defective Service (Dkt. 59) (the "Van Noord Declaration"):

| ¶ | Testimony | Objections |
|---|-----------|------------|
| ¶5 | "I then proceeded to 5924 Stadium Street San Diego, CA 92192. I parked the car I was driving in, and walked up to the property. As I was walking toward the front door, a truck appeared and the driver started to shout "Get the fuck off the property now!" repeatedly. I informed the driver that I'm simply there to deliver the package as he called in my description over his cell phone. (The following day, I look at pictures of Daren Chaker found online and recalled that it was him driving the truck.) | **Foundation/Lack of Personal Knowledge. (Fed. R. Evid. 602, *et seq.*). Relevance (Fed. R. Evid. 402, 403.). Hearsay.**<br><br>The events related by Mr. Van Noord are irrelevant to the legal and factual issues in this motion.<br><br>Mr. Van Noord's testimony lacks foundation and credibility. Mr. Van Noord does not provide foundation for his claim that he viewed pictures of Daren Chaker online. He does not identify the websites he allegedly visited or provide any reason to believe that the pictures he viewed online were of Daren Chaker. Nor does he attach printouts to his declaration from the alleged websites that he visited to look for pictures of Daren Chaker. Mr. VanNoord was not able to identify the man in the truck from personal knowledge at the time the encounter allegedly occurred. His claim that he "recalled" that the man was Daren Chaker is not credible. |

BAKER MARQUART LLP
2029 CENTURY PARK EAST, 16TH FLOOR
Los Angeles, CA 90067
Tel: (424) 652-7800 • Fax: (424) 652-7850

SPECIALLY APPEARING DEFENANT VANIA CHAKER'S EVIDENTIARY OBJECTIONS TO THE DECLARATION OF JOSHUA VAN NOORD

BAKER MARQUART LLP
2029 CENTURY PARK EAST, 16TH FLOOR
Los Angeles, CA 90067
Tel: (424) 652-7800 • Fax: (424) 652-7850

| | | | The driver's alleged profane statement is hearsay not within an exception. That particular quotation is unduly prejudicial, and offered improperly to impugn the character of Mr. Daren Chaker. |
|---|---|---|---|
| ¶8 | "As I was driving away from the area I was pursued by the S.U.V. driven by the female. At one point during her pursuit I heard cars honking which indicated she drove through the red left turn signal after I passed through it while yellow." | | **Foundation/Lack of Personal Knowledge (Fed. R. E. 602.). Relevance (Fed. R. Evid. 402, 403.).** <br><br> The events related by Mr. Van Noord are irrelevant to the legal and factual issues in this motion. <br><br> Mr. Van Noord's testimony lacks foundation. Mr. Van Noord did not observe a vehicle commit a traffic infraction. Rather, he infers the infraction from car horns honking, but does not know why the horns allegedly honked. Mr. Van Noord also lacks foundation to testify as to the identity of the SUV's drivers. Mr. Van Noord does not provide any information about the SUV that might connect it to its owner, such as license plate information or the make and model of the vehicle. Mr. Van Noord use of the term "pursuit" is also inflammatory, vague and ambiguous and unduly prejudicial. |

2

SPECIALLY APPEARING DEFENANT VANIA CHAKER'S EVIDENTIARY OBJECTIONS TO THE DECLARATION OF JOSHUA VAN NOORD

| | | Mr. Van Noord's testimony is also unduly prejudicial and offered to impugn the character of the Chakers by suggesting that they violated a traffic law. |
|---|---|---|
| **¶13, Exhibit B** | "On March 27, 2017, I drove from 4670 Nebo Drive, La Mesa, CA 91941 to 5654 Scripps Street San Diego, CA 92192 to re-attempt service of a summons and arrived at 11:48 a.m. As I was knocking her front door I noticed a drape move in the bottom corner which suggested someone inside peering out. [Exhibit B] I gave 2 more knock attempts and then returned to the car. I waited within sight of her driveway for 45 minutes to see if she would come out and stand up her trash can." | **Foundation/Lack of Personal Knowledge (Fed. R. E. 602.) Relevance (Fed. R. Evid. 402, 403.).**<br><br>The events related by Mr. Van Noord are irrelevant to the legal and factual issues in this motion.<br><br>Mr. Van Noord's testimony lacks foundation. Mr. Van Noord lacks personal knowledge as to the owners or occupants of the address identified in his declaration. Mr. Van Noord also lacks personal knowledge as to what caused the drape to move or whether anyone was at home at the house.<br><br>Mr. Van Noord does not authenticate Exhibit B or relate who took the picture, the date the picture was taken or how the white text on the picture and red arrow were added to the picture. The picture in any case does not show a human being "peering out" of the window as claimed by Mr. Van Noord. House pets commonly move window curtains, and Mr. Van Noord does not know whether the curtain was moved by a human, |

SPECIALLY APPEARING DEFENANT VANIA CHAKER'S EVIDENTIARY OBJECTIONS TO THE DECLARATION OF JOSHUA VAN NOORD

BAKER MARQUART LLP
2029 CENTURY PARK EAST, 16TH FLOOR
Los Angeles, CA 90067
Tel: (424) 652-7800 • Fax: (424) 652-7850

| | | an animal or a draft. |
|---|---|---|

DATED: April 3, 2017

BAKER MARQUART LLP

/s/ Ryan G. Baker
Ryan G. Baker
Brian T. Grace
*Attorneys for Specially Appearing*
*Defendant Vania Chaker*

SPECIALLY APPEARING DEFENANT VANIA CHAKER'S EVIDENTIARY OBJECTIONS TO THE DECLARATION OF JOSHUA VAN NOORD

BAKER MARQUART LLP
2029 CENTURY PARK EAST, 16TH FLOOR
LOS ANGELES, CA 90067
Tel: (424) 652-7800 • Fax: (424) 652-7850

# EXHIBIT AA



This blog by Darren Chaker is a few words concerning the legal system. Additional blog, www.darren-chaker.info will be linked here soon.

Review Our Business at favecentral.com

Review Our Business at favecentral.com

Facebook Badge

Darren Chaker

Create Your Badge

Facebook Badge

Darren Chaker | Create Your Badge

Showing posts with label **scott-mcmillan-la-mesa**. Show all posts

Monday, August 10, 2015

## Federal First Offender Act & Deportation



While reviewing recent law concerning deportation, Darren Chaker found the Ninth Circuit Court of Appeals has held that an alien whose offense would have qualified for treatment under the Federal First Offender Act ("FFOA"), but who was convicted and had his conviction expunged under state or foreign law, may not be removed on account of that offense. See Dillingham v. INS, 267 F.3d 996 (9th Cir. 2001); Lujan-Armendariz v. INS, 222 F.3d 728 (9th Cir. 2000). To qualify for treatment under the FFOA, the defendant must (1) have been found guilty of an offense described in section 404 of the Controlled Substances Act ("CSA"), 21 U.S.C. § 844; (2) have not, prior to the commission of such an offense, been convicted of violating a federal or state law relating to controlled substances; and (3) have not previously been accorded first offender treatment under any law. See 18 U.S.C. § 3607(a); Cardenas-Uriarte v. INS, 227 F.3d 1132, 1136 (9th Cir. 2000).

A. Expungement Under State or Foreign Law

The alien's prior conviction must have already been expunged pursuant to the state or foreign expungement statute; the possibility that the alien may request and have his conviction expunged in the future is not sufficient to avoid the consequences of removal. See Chavez-Perez v. Ashcroft, 386 F.3d 1284, 1292-93 (9th Cir. 2004).

The state or foreign statute under which the conviction was expunged does not have to be an

Blog Archive

▼ 2015 (2)

Exh AA
1 of 3

identical procedural counterpart to the FFOA. See Garberding v. INS, 30 F.3d 1187, 1190-1191 (9th Cir. 1994). See also Lujan-Armendariz, 222 F.3d at 738 n.18 ("[R]elief does not depend on whether or not the state rehabilitative statute is best understood as allowing for 'vacatur,' 'set-asides,' 'deferred adjudications,' or some other procedure."). The Ninth Circuit has recognized expungements for FFOA purposes where the state court "has entered an order pursuant to a state rehabilitative statute under which the criminal proceedings have been deferred pending successful completion of probation or the proceedings have been or will be dismissed after probation." Lujan-Armendariz, 222 F.3d at 738 n. 18 (emphasis in original) (quoting Matter of Manrique, 21 I&N Dec. 58, 64 (BIA 1995)). The Ninth Circuit has not yet decided whether an alien who has received a court order deferring adjudication, but has not yet had his proceedings expunged because he has not completed his term of probation, is eligible for FFOA treatment. See id. at 748 n.28; Chavez-Perez, 386 F.3d at 1293.

**B. Offenses Described in Section 404 of the Controlled Substances Act**

Section 404 of the CSA provides that it is "unlawful for any person knowingly or intentionally to possess a controlled substance . . . ." 21 U.S.C. § 844(a). Any state or foreign possession of a controlled substances offenses, such as those set forth in sections 11350(a) and 1137 of the California Health and Safety Code ("CHSC"), are described in section 404 of the CSA and are therefore potentially eligible for FFOA treatment.

**1. Possession of Drug Paraphernalia**

The Ninth Circuit has recognized that "the plain language of the statute suggests that possession of drug paraphernalia should not be included as an offense described in section 844," since paraphernalia is not a controlled substance. Cardenas-Uriarte, 227F.3d at 1137. Nonetheless, in Cardenas-Uriarte, the Ninth Circuit determined that theapplication of the plain meaning of the statute in that instance would lead to both an absurd result and frustrate congressional intent. See id. The petitioner had initially been charged with two counts of possession, but had pleaded guilty to the lesser offense of possession of drug paraphernalia. Id. The Ninth Circuit reasoned that refusing to allow the petitioner's offense to receive treatment under the FFOA would lead to an absurd result since the petitioner would have been eligible had he refused to plea guilty and been convicted, as initially charged, of the graver offense of possession. See id. The Ninth Circuit further determined that applying the plain meaning of the FFOA would frustrate congressional intent:

Congress intended to allow those convicted of the least serious type of drug offenses to qualify under the Act. Congress would never have considered including possession of drug paraphernalia under this statute because no federal statute covers the crime of possession of drug paraphernalia. Where possession of drug paraphernalia is a less serious offense than simple possession of a controlled substance, therefore, congressional intent indicates that it should be included under the Act. See id. The Ninth Circuit therefore held that the petitioner's conviction for possession of drug paraphernalia qualified for treatment under the FFOA.

**2. Use or Being Under the Influence**

Nor is use or being under the influence an offense described in the plain language of section 404 of the CSA. See 21 U.S.C. 844. The Ninth Circuit has not yet determined whether use or FFOA. See Aguiluz-Arellano v. Gonzales, 446 F.3d 980, 984 (9th Cir. 2006) (distinguishing its holding that the petitioner's use or being under the influence was not eligible for FFOA treatment as a result of his prior controlled substance conviction from the Board's determination that the FFOA only applies to possession of a controlled substance, not to use or being under the influence offenses).

Extending the Ninth Circuit's reasoning in Cardenas-Uriarte, however, may be warranted if the application of the plain meaning of the statute frustrates congressional intent. In Lujan-Armendariz, 222 F.3d at 734-35, the Ninth Circuit described the FFOA as "a limited federal rehabilitative statute that permits first-time drug offenders who commit the least serious type of drug offense to avoid the drastic consequences which typically follow a finding of guilt in drug cases." Congressional intent may therefore be frustrated if the respondent is a first-time offender since "[d]rug use has generally been considered a less serious crime than

▼ August (1)
Federal First Offender
Act & Deportation
▶ April (1)
▶ 2014 (1)
▶ 2013 (3)
▶ 2012 (5)
▶ 2011 (5)
▶ 2010 (2)

**About Me**



**Darren Chaker**

I litigated a cutting edge **First Amendment** case for 7 of its 10 year lifespan. Chaker v. Crogan, 428 F.3d 1215 C.A.9 (Cal.),2005, Cert. denied, 547 U.S. 1128, 126 S.Ct. 2023, invalidated a statute on First Amendment grounds and overruled the California Supreme Court's unanimous decision in People v. Stanistreet, 127 Cal.Rptr.2d 633. Soon after Chaker v. Crogan, it was also used to strike down Nevada's analogous statute forcing the legislature to rewrite the law and used as the backbone authority in Gibson v. City of Kirkland, 2009 WL 584703, *2+ (W.D.Wash. Mar 03, 2009). My case is a leading case on viewpoint discrimination.

In a recent case, Chaker v. Crogan was used to vindicate people who filed a complaint against police. Those people were arrested and charged with a law Chaker v. Crogan invalidated! They sued for being arrested and charged with an unconstitutional statute, Penal Code 148.6. The federal court denied the City's motion to dismiss and the case settled. See Quadra v. City of South San Francisco, 2010 WL 55875, *1+ (N.D.Cal. Jan 04, 2010)

I love the fight and made cutting edge case law in the end. No doubt without the support of the ACLU (Ramona Ripston, Mark Rosenbaum, Peter Eliasberg, & Dan Tokaji) winning on appeal, and Joshua Rosenkranz www.orrick.com/lawyers/Bio.asp?ID=225990 assembling a small army of the best attorneys to defeat the California Attorney General's efforts to have the U.S. Supreme Court reverse the Ninth Circuit—this case would not have had a backbone to stand on.

The case has been cited over 196

Exh AA
2 of 3

possession." Flores-Arellano v. INS, 5 F.3d 360, 363 n.5 (9th Cir. 1993). See also Medina v. Ashcroft, 393 F.3d 1063, 1066 (9th Cir. 2005). Further, as in Cardenas-Uriarte, federal law does not penalize use or being under the influence of a controlled substance. See 21 U.S.C. § 801 et seq.

Posted by Darren Chaker at 12:33 AM                           

Labels: Darren-Chaker, expungement-deportation, ffoa, immigration-criminal-record, mcmillan-associates-la-mesa, ninth-circuit-deportation, san-diego-deportation, scott-mcmillan-la-mesa

Location: Newport Beach, CA, USA

---

**Home**                                              **Older Posts**

Subscribe to: Posts (Atom)

times as authority, and written about extensively.
* Police Misconduct: Law and Litigation s 2:28, Denial of First Amendment rights (2009)
* Smolla & Nimmer on Freedom of Speech s 3:11, Viewpoint discrimination—Cross-burning reprised: Commonwealth of Virginia v. Black—Heavy presumption against viewpoint discrimination (2010)
* Smolla & Nimmer on Freedom of Speech s 10:22.50, Brandenburg v. Ohio: Intent and imminence standard—Bond and Watts decisions—"True threats" (2010)
* CHAKER V. CROGAN, 5 Cardozo Pub. L. Pol'y & Ethics J. 425, 444+ (2007)

My case is active, living and breathing —forever helping people who once felt oppressed.

Darren Chaker

**View my complete profile**

## Darren-Chaker Pages

Home
Chaker v. Crogan – Recent Cases – Darren Chaker
Arms Export Control Act by Darren Chaker
Twitter Stalking Unconstitutional by Darren Chaker

**websquash** ✦➡

© Darren Chaker 2012. Awesome Inc. template. Powered by Blogger.

Exh AA
3 of 3

1  **GILBERT, KELLY, CROWLEY & JENNETT LLP**
   TIMOTHY W. KENNA / Bar No. 64280
2  t.kenna@gilbertkelly.com
   ARTHUR J. MC KEON III / Bar No. 082540
3  ajm@gilbertkelly.com
   REBECCA J. SMITH / Bar No. 150428
4  rjs@gilbertkelly.com
   401 B Street, Suite 2210
5  San Diego, California 92101
   (619) 687-3000; FAX: (213) 615-7100
6
   **Mailing Address:**
7  550 South Hope Street, 22nd Floor
   Los Angeles, California 90071-2627
8
   Attorneys for Defendant
9  NICOLE CHAKER

10              **UNITED STATES DISTRICT COURT**

11            **SOUTHERN DISTRICT OF CALIFORNIA**

12

13  SCOTT A. MCMILLAN, an individual,      ) Case No. 3:16-CV-02186-WQH-MD
    THE MCMILLAN LAW FIRM, APC, a          )
14  California professional corporation,   ) Judge: William Q. Hayes
                                           ) Courtroom 14B
15              Plaintiffs,                 )
          vs.                               ) Magistrate Hon. Mitchell D. Dembin
16                                          ) Courtroom 11th Floor
    DARREN D. CHAKER an individual, and    )
17  as trustee of PLATINUM HOLDINGS        )
    GROUP TRUST, dba COUNTER               ) **NOTICE OF APPEARANCE OF**
18  FORENSICS; NICOLE CHAKER, an           ) **TIMOTHY W. KENNA**
    individual, and as trustee of NICOLE   )
19  CHAKER TRUST ONE, VANIA                )
    CHAKER, an individual and as trustee of )
20  VANIA CHAKER TRUST ONE,                ) Complaint Filed: August 29, 2016
                                           )
21              Defendants.                 )
                                           )
22  _____    )

23  **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

24         PLEASE TAKE NOTICE that Timothy W. Kenna of Gilbert, Kelly, Crowley

25  & Jennett LLP, who is a member of the bar of This Court, hereby enters his

26  appearance in this action on behalf of Defendant Nicole Chaker. Mr. Kenna's

27  contact information is as follows:

28  / / /

Gilbert, Kelly
Crowley & Jennett LLP
Attorneys at Law

NOTICE OF APPEARANCE OF TIMOTHY W. KENNA

4230773.1  48811-00002  TWK                                        3:16-CV-02186-WQH-MD

457

**GILBERT, KELLY, CROWLEY & JENNETT LLP**
TIMOTHY W. KENNA / Bar No. 64280
401 B Street, Suite 2210
San Diego, California 92101
(619) 687-3000; FAX: (213) 615-7100

**Mailing Address:**
550 South Hope Street, 22nd Floor
Los Angeles, California 90071-2627

Other counsel of record for Nicole Chaker shall remain as counsel of record to be noticed.

Dated: January 26, 2017          GILBERT, KELLY, CROWLEY & JENNETT LLP

By:   /S/ TIMOTHY W. KENNA
      TIMOTHY W. KENNA, A P.C.
      ARTHUR J. MCKEON, III
      REBECCA J. SMITH
      Attorneys for Defendant
      NICOLE. CHAKER

Gilbert, Kelly
Crowley & Jennett LLP
Attorneys at Law

-2-
NOTICE OF APPEARANCE OF TIMOTHY W. KENNA

4230773.1   48811-00002                    3:16-CV-02186-WQH-MD

458

AO 458 (Rev. 06/09) Appearance of Counsel

# UNITED STATES DISTRICT COURT
for the
SOUTHERN DISTRICT

| | |
|---|---|
| SCOTT A. MCMILLAN, et al. | ) |
| *Plaintiff* | ) |
| v. | ) Case No. 3:16-cv-2186-WQH-MDD |
| DARREN D. CHAKER, et al. | ) |
| *Defendant* | ) |

## APPEARANCE OF COUNSEL

To:     The clerk of court and all parties of record

I am admitted or otherwise authorized to practice in this court, and I appear in this case as counsel for:

Defendant DARREN D. CHAKER

Date: June 29, 2020                                    /s/ Eduardo A. Bravo
                                                          *Attorney's signature*

                                                          EDUARDO A. BRAVO   327967
                                                          *Printed name and bar number*

                                                          ROPERS MAJESKI PC
                                                          445 South Figueroa Street, Suite 3000
                                                          Los Angeles, California 90071
                                                          *Address*

                                                          eduardo.bravo@ropers.com
                                                          *E-mail address*

                                                          (213) 312-2000
                                                          *Telephone number*

                                                          (213) 312-2001
                                                          *FAX number*



**SULLIVAN, KRIEGER, TRUONG,**
**SPAGNOLA & KLAUSNER, LLP**
Eliot F. Krieger, State Bar No. 159647
*EKrieger@SKTLawyers.com*
444 West Ocean Boulevard, Suite 1700
Long Beach, CA 90802
Telephone: (562) 597-7070

Attorneys for Defendant DARREN D. CHAKER,
individually, and as trustee of PLATINUM HOLDINGS
GROUP TRUST

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT A. MCMILLAN, an individual, THE MCMILLAN LAW FIRM, APC, a California professional corporation, | Case No. 3:16-CV-02186-WQH-MD |
| | Judge: Hon. William Q. Hayes |
| Plaintiffs, | Courtroom: 14B |
| | Magistrate: Hon. Mitchell D. Dembin |
| v. | Courtroom: 11th Floor |
| DARREN D. CHAKER an individual, and as trustee of PLATINUM HOLDINGS GROUP TRUST, dba COUNTER FORENSICS; NICOLE CHAKER, an individual, and as trustee of NICOLE CHAKER TRUST ONE, VANIA CHAKER, an individual and as trustee of VANIA CHAKER TRUST ONE, | **OBJECTION OF DEFENDANT DARREN D. CHAKER TO PLAINTIFFS' CLAIM OF RELATED CASES [CivLR 40.1]** |
| | Complaint Filed: August 29, 2016 |
| Defendants. | **[PER CHAMBERS ORDER, NO ORAL ARGUMENT UNLESS ORDERED BY COURT]** |

Defendant, DARREN D. CHAKER, individually and as trustee of PLATINUM

HOLDINGS GROUP TRUST, dba COUNTER FORENSICS ("Darren"), submits this

Objection to the unfounded assertion by Plaintiffs SCOTT A. MCMILLAN,

("McMillan") and THE MCMILLAN LAW FIRM, APC's (collectively, "Plaintiffs")

that the above-captioned case is "related" to a previously filed proceeding captioned

*United States v. Chaker*, Docket No. 3:15-cr-07012-LAB. (See Doc. No. 1-1, p. 1,

Section VIII.)

The Complaint in this case asserts three causes of action: two "RICO" claims along with a "civil extortion" claim. As set forth in the pending Motion to Dismiss and Motion to Strike (Doc. Nos. 55-56), these causes of action are meritless and fail to state a claim upon which relief can be granted.

In the meantime, Darren's Objection herein is filed to address the Plaintiffs' improper characterization of the aforementioned prior proceeding as "related." As set forth in the Local Civil Rules, "[a]n action or proceeding is related to another action or proceeding where both of them:"

> "**1.** Involve some of the same parties and are based on the same or similar claims, or
>
> **2.** Involve the same property, transaction, patent, trademark, or event, or
>
> **3.** Involve substantially the same facts and the same questions of law." (CivLR 40.1(g).)

*If* any or all of these factors are present (which they are not), counsel has specific obligations to the Court and opposing counsel:

> "Whenever counsel has reason to believe that a pending action or proceeding on file or about to be filed is related to another pending action or proceeding on file in this or any other federal or state court (whether pending, dismissed, or otherwise terminated), *counsel must promptly file and serve on all known parties to each related action or proceeding a notice of related case*, stating the title, number and filing date of each action or proceeding believed to be related, together with a brief *statement of their relationship* and the reasons why assignment to a single district judge is or is not likely to effect a saving of judicial effort and other economies. The clerk will promptly notify the court of such filing. This is a continuing duty that applies not only when counsel files a case with knowledge of a related action or proceeding but also applies after the date of filing whenever counsel learns of a related action or proceeding." (CivLR 40.1(f) (emphasis added).)

Although this case has been pending for nearly a year, other than checking a box on the Civil Cover Sheet, Plaintiffs' counsel has failed to fulfill his responsibilities regarding the filing of a Notice of Related Cases. Notably, Plaintiffs' counsel has failed to provide the requisite statement of "relationship" or provide any of the other pertinent information required by CivLR 40.1. The purportedly related case, which originated in the Southern District of Texas, Houston Division (Docket No. 4:12-cr-00168) before

1  being transferred to this district for monitoring, arose out of a Texas real estate claim and

2  involves none of the same (alleged) facts as the instant case.  Indeed, notwithstanding

3  Plaintiffs' gratuitous inclusion of allegations regarding such case, the Texas case has

4  absolutely nothing to do with Plaintiffs' instant RICO and extortion claims. (See

5  Complaint (Doc. No. 1), ¶¶ 23d-f, 24; First Amended Complaint (Doc. No. 21) ¶¶ 23d-f,

6  24.)

7       Accordingly, this Court should deny Plaintiffs' claim of "related cases" both

8  because the other identified case is in fact unrelated and due to Plaintiffs' failure to

9  comply with Local Rules regarding a Notice of Related Cases.  In addition, Plaintiffs'

10  counsel's failure to comply with their obligations regarding a Notice of Related Cases is

11  sanctionable. (See CivLR 83.1(a)[1].)  Moreover, Plaintiffs' unsubstantiated claim of

12  related cases is nothing more than an ill-conceived attempt to impugn Darren's

13  reputation (by referencing a wholly *unrelated* criminal proceeding) that improperly

14  "degrades or impugns the integrity of the court or in any manner interferes with the

15  administration of justice within the Court." (CivLR 83.4(b).)  As a result, this Court can

16  / / /

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  ――――――――――――――

24       [1] "Failure of counsel or of any party to comply with these rules, with the Federal

25  Rules of Civil or Criminal Procedure, or with any order of the court may be grounds for

26  imposition by the court of any and all sanctions authorized by statute or rule or within

27  the inherent power of the court, including, without limitation, dismissal of any actions,

28  entry of default, finding of contempt, imposition of monetary sanctions or attorneys'

fees and costs, and other lesser sanctions." (CivLR 83.1(a).)

initiate disciplinary and/or contempt proceedings against Plaintiffs' counsel and/or impose other appropriate sanctions. (CivLR 83.5(a)[2].)

DATED: August 18, 2017          Respectfully Submitted,

**SULLIVAN, KRIEGER, TRUONG, SPAGNOLA & KLAUSNER, LLP**

By: _____/s/Eliot F. Krieger_____
Eliot F. Krieger, SBN 159647
*EKrieger@SKTLawyers.com*

Attorneys for Defendant DARREN D. CHAKER individually, and as trustee of PLATINUM HOLDINGS GROUP TRUST, dba COUNTER FORENSICS

---

[2] "In the event any attorney engages in conduct which may warrant discipline or other sanctions, the court or any judge may, in addition to initiating proceedings for contempt under Title 18 U.S.C. and Rule 42, Fed. R. Crim.P., or imposing other appropriate sanctions, refer the matter to the disciplinary body of any court before which the attorney has been admitted to practice." (CivLR 83.5(a).)

## **CERTIFICATE OF SERVICE**

I certify that on the 18th day of August 2017, I filed the foregoing document with the Clerk of the Court for the United States District Court, Southern District of California by using the Court's CM/ECF system, which will send notifications of such filing to all counsel of record.

/s/ Eliot F. Krieger
Eliot F. Krieger

OBJECTION OF DEFENDANT DARREN D. CHAKER TO
PLAINTIFFS' CLAIM OF RELATED CASES [CivLR 40.1]

1  Ryan G. Baker (Bar No. 214036)
       rbaker@bakermarquart.com
2  Brian T. Grace (Bar No. 307826)
       bgrace@bakermarquart.com
3  BAKER MARQUART LLP
   2029 Park East, Sixteenth Floor
4  Los Angeles, California 90067
   Telephone:  (424) 652-7800
5  Facsimile:   (424) 652-7850

6  *Attorneys for Specially Appearing*
7  *Defendant Vania Chaker*

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10

11  SCOTT A. MCMILLAN, an individual,      CASE NO. 3:16-CV-02186-WQH-
12  THE MCMILLAN LAW FIRM, APC,            MDD
    a California professional corporation,
13                                         **SPECIALLY APPEARING**
            Plaintiffs,                     **DEFENDANT VANIA CHAKER'S**
14                                         **EVIDENTIARY OBJECTIONS TO**
            vs.                            **THE DECLARATION OF SCOTT**
15                                         **MCMILLAN IN OPPOSITION TO**
    DARREN D. CHAKER, an individual,       **DEFENDANT VANIA CHAKER'S**
16  and as trustee of PLATINUM             **MOTION TO DISMISS**
    HOLDINGS GROUP TRUST, dba             **PLAINTIFFS' FIRST AMENDED**
17  COUNTER FORENSICS; NICOLE             **COMPLAINT, OR, IN THE**
    CHAKER, an individual, and as trustee  **ALTERNATIVE, TO QUASH**
18  of THE NICOLE CHAKER TRUST,            **DEFECTIVE SERVICE**
    U/A dated August 18, 2010, VANIA
19  CHAKER, and individual and as
    beneficiary of The Island Revocable    The Hon. William Q. Hayes
20  Trust under Declaration of Trust dated
    June 2, 2015, MARCUS MACK as           Date: April 10, 2017
21  trustee of The Island Revocable Trust   Courtroom: 14B
    under Declaration of Trust dated June 2, Complaint Filed: August 29, 2016
22  2015,
                                           [PER CHAMBERS ORDER, NO
23          Defendants.                     ORAL ARGUMENT UNLESS
                                           ORDERED BY THE COURT]
24

25

26

27

28

Specially Appearing Defendant Vania Chaker hereby submits the following Evidentiary Objections to the Declaration of Scott McMillan in Opposition to Specially Appearing Defendant Vania Chaker's Motion to Dismiss Plaintiffs' First Amended Complaint, or, in the Alternative, to Quash Defective Service (Dkt. 59) (the "McMillan Declaration"):

| ¶ | Testimony | Objections |
|---|-----------|------------|
| ¶6 | "Mr. VanNoord updated me on November 26, 2016 with the alarming contact he had with Darren Chaker, and a female that I assume to have been Vania Chaker. I told him to attempt service again on November 27, 2016, but this time someone go with him." | **Foundation/Lack of Personal Knowledge. (Fed. R. Evid. 602, et seq.). Hearsay.**<br><br>Mr. McMillan's testimony lacks foundation and is unreliable. Mr. McMillan lacks personal knowledge of the contact between Mr. VanNoord and the female described in this paragraph. Mr. McMillan also provides no foundation for his "assumption" that the female in question was Vania Chaker. Mr. VaNoord's statements to Mr. McMillan about an alleged contact with Darren Chaker is hearsay not within an exception. |
| ¶7 | "Mr. Van Noord's description of the woman that he encountered who he described at paragraph 6 of his declaration of March 27, 2017, i.e., middle aged, heavy set, with dark hair, with an inappropriate laugh is consistent with my interaction with Ms. Vania Chaker, in court in the Susan A. matter. Likewise, Mr. Wing's description of the woman in his declaration of March 26, 2017 at paragraph 14, that he served who ran | **Argumentative. Misleading. Relevance (Fed. R. Evid. 402, 403.). Hearsay.**<br><br>Mr. McMillan mischaracterizes the testimony of Mr. Van Noord and Mr. Wing. That testimony speaks for itself.<br><br>Mr. McMillan's opinion and analysis of Mr. Wing's prior declaration and Mr. Van Noord's |

BAKER MARQUART LLP
2029 CENTURY PARK EAST, 16TH FLOOR
Los Angeles, CA 90067
Tel: (424) 652-7800 • Fax: (424) 652-7850

1

SPECIALLY APPEARING DEFENANT VANIA CHAKER'S EVIDENTIARY OBJECTIONS TO THE DECLARATION OF SCOTT MCMILLAN

| | | into Ms. Vania Chaker's residence is consistent with Ms. Vania Chaker's description." | description of a woman Mr. VanNoord allegedly encountered are irrelevant to the issues in this case. The fact that Mr. Van Noord's description is "consistent" with Mr. McMillan's interactions with Ms. Vania Chaker does not prove the identity of the woman Mr. VanNoord encountered. Mr. McMillan lacks personal knowledge as to whether Mr. Van Noord encountered Vania Chaker or as to the accuracy and contents of Mr. Wing's testimony. The fact that Mr. Wing's declaration testimony is "consistent" with some description of Ms. Vania Chaker is also irrelevant – it does not establish that the woman was Ms. Vania Chaker.

Mr. McMillan's description of Ms. Vania Chaker is also unduly and unnecessarily prejudicial. It is unclear what Mr. McMillan means by an "inappropriate laugh" and that detail is insufficient to establish the identity of any woman. The prejudice in this description outweighs any minimal probative value it might have.

Mr. Van Noord and Mr. Wing's descriptions of a woman in their declarations is hearsay not within an exception. |

BAKER MARQUART LLP
2029 CENTURY PARK EAST, 16TH FLOOR
LOS ANGELES, CA 90067
Tel: (424) 652-7800 • Fax: (424) 652-7850

SPECIALLY APPEARING DEFENANT VANIA CHAKER'S EVIDENTIARY OBJECTIONS TO THE DECLARATION OF SCOTT MCMILLAN

| ¶11 | "On December 13, 2016, I learned that the Chakers had gained the attention of Channel 8, and that the news station had run a story about Mr. VanNoord's service efforts. Although I was concerned that Mr. VanNoord, a very conscientious, law-abiding, and mild-mannered fellow, was accused of an attempted home invasion. Most troubling was the false statement that the "San Diego Police are looking for a man who was caught on camera trying to break into a University City woman's home." | **Foundation/Lack of Personal Knowledge (Fed. R. Evid. 602.) Relevance (Fed. R. Evid. 402, 403.). Hearsay.**<br><br>Mr. McMillan's testimony lacks foundation. He has not established that he has personal knowledge the Chakers gained the attention of Channel 8. He has not established that he has personal knowledge about Mr. Van Noord's character. He also has not established personal knowledge that the statement he quotes is false.<br><br>Mr. McMillan's opinion that Mr. VanNoord is a "mild-mannered fellow" is irrelevant as to both Mr. VanNoord's actions and Mr. VanNoord's potential criminal and legal liability.<br><br>Mr. McMillan has no personal knowledge and no foundation for the claim that the San Diego police were not looking for a man who was caught on camera trying to break into a University City woman's home. Mr. McMillan is not affiliated with the San Diego police and provides no foundation for this testimony.<br><br>Mr. McMillan's reference to a "home invasion" is both irrelevant and unduly |

BAKER MARQUART LLP<br>2029 CENTURY PARK EAST, 16TH FLOOR<br>LOS ANGELES, CA 90067<br>Tel: (424) 652-7800 • Fax: (424) 652-7850

SPECIALLY APPEARING DEFENANT VANIA CHAKER'S EVIDENTIARY OBJECTIONS TO THE DECLARATION OF SCOTT MCMILLAN

BAKER MARQUART LLP
2029 CENTURY PARK EAST, 16TH FLOOR
LOS ANGELES, CA 90067
Tel: (424) 652-7800 • Fax: (424) 652-7850

| | | | |
|---|---|---|---|
| | | | prejudicial.  Even the statement quoted from the Channel 8 story does not reference a "home invasion."<br><br>The statement quoted in this paragraph is hearsay not within an exception.  Mr. McMillan does not provide foundation for the quotation. |
| ¶12 | | "As a result of that false statement, I spent several hours contacting the news station, and the police supervisor resolving that (1) the police had determined that no crime had been committed, and (2) the news station had been duped into publishing "false news."  The news station removed its video interview of Mr. Chaker." | **Foundation/Lack of Personal Knowledge (Fed. R. Evid. 602.).  Relevance (Fed. R. Evid. 402, 403.) .  Hearsay.**<br><br>Mr. McMillan's testimony lacks foundation.  Mr. McMillan has no basis to testify about what the police did or did not determine.  Mr. McMillan also has no basis to testify as to why the news station removed its video interview (and fails to provide any foundation that an interview was actually removed).  The statement that a "news station removed its video" interview also makes no sense.  Presumably, Mr. McMillan means the video was removed from an unspecified website.  Mr. McMillan also lacks personal knowledge about whether a crime had been committed; the truth of the news reported by media entities; and whether the news station was somehow "duped." |

4

469

BAKER MARQUART LLP
2029 CENTURY PARK EAST, 16TH FLOOR
Los Angeles, CA 90067
Tel: (424) 652-7800 • Fax: (424) 652-7850

| | | | Mr. McMillan's contact with the police is irrelevant to the present motion. The testimony is also unduly prejudicial. It implies that the police have somehow formally absolved Mr. VanNoord of criminal conduct; and that the news station conducted some kind of inquiry into the accuracy of the story and determined their prior reporting to be inaccurate. Mr. McMillan has no foundation for these opinions and their prejudice far outweighs their minimal probative value.<br><br>To the extent that Mr. McMillan reports the contents of a conversation with a police supervisor, the statement is hearsay not within an exception. |
|---|---|---|---|
| ¶16 | | "I specifically engaged Mr. Wing because unlike many independent process servers, he is conscientious about his success in obtaining service of process. He is resourceful and patient. I have given Mr. Wing numerous assignments over the years, and I have not had an instance where the court found that he falsified a proof of service. Had I ever any concern that he would falsify a proof of service, I'd not engage him ever again. | **Foundation/Lack of Personal Knowledge (Fed. R. Evid. 602.) Relevance (Fed. R. Evid. 402, 403.). Improper Character Evidence (Fed. R. Evid. 404).**<br><br>Mr. McMillan's testimony lacks foundation concerning Mr. Wing's character. Mr. McMillan lacks foundation both as to the general character of process servers and Mr. Wing's specific character in relation to other process servers. Mr. McMillan's testimony supplies a prejudicial opinion that Mr. Wing is somehow inherently |

SPECIALLY APPEARING DEFENANT VANIA
CHAKER'S EVIDENTIARY OBJECTIONS TO THE
DECLARATION OF SCOTT MCMILLAN

| | | |
|---|---|---|
| | | more credible than other process servers. Mr. McMillan lacks personal knowledge as to the accuracy of Mr. Wing's proofs of service and the accuracy of the proof of service at issue here. Mr. Wing's alleged character for being conscientious cannot be used as evidence that his proof of service was accurate. |
| ¶20 | "I did not file a request for entry of default as I anticipated the filing of the proof of service would result Ms. Chaker filing a responsive motion or pleading, and the likelihood of the court setting aside the default was more probable than not. In my experience, courts are loathe to allow a default stand where the defendant seeks to contest the matter on its merits in a time reasonably near the date of the default. In sum, the effort to draft, respond to, and resolve a motion to set aside a default would be more work for everyone: opposing counsel, myself, and the court, than simply allowing Ms. Chaker an extension. As the court may note, consistent with that practice, I allowed Mr. Chaker an extension while his former counsel was transitioning out and his new counsel was entering an appearance." | **Relevance (Fed. R. Evid. 402, 403.)** Mr. McMillan's testimony is improper and is irrelevant to the present motion. Mr. McMillan's alleged strategic reasons for not requesting default are irrelevant to the claims and issues in this motion, as are the extensions granted by Mr. McMillan in this case. |
| ¶21 | "Ms. Vania Chaker certainly has known since November 28, 2016 that this lawsuit was pending against her. She and Darren pursued Mr. Van | **Foundation/Lack of Personal Knowledge (Fed. R. Evid. 602.) Argumentative. Misleading. Relevance (Fed. R. Evid. 402,** |

BAKER MARQUART LLP
2029 CENTURY PARK EAST, 16TH FLOOR
LOS ANGELES, CA 90067
Tel: (424) 652-7800 • Fax: (424) 652-7850

6

SPECIALLY APPEARING DEFENANT VANIA
CHAKER'S EVIDENTIARY OBJECTIONS TO THE
DECLARATION OF SCOTT MCMILLAN

BAKER MARQUART LLP
2029 CENTURY PARK EAST, 16TH FLOOR
LOS ANGELES, CA 90067
Tel: (424) 652-7800 • Fax: (424) 652-7850

| | | |
|---|---|---|
| | Noord in her vehicle after he tried to serve her and her mother Nicole Chaker. This was after Mr. Chaker had appeared in the case, without being served. Further, on March 7, 2017, Mr. Chaker included me in an email conversation wherein he asked "Mind if I sent to Vania?" with respect to a sanctions motion that Mr. Chaker's lawyers intend to serve me with. I believe that Mr. Chaker was including me in an email in an effort to taunt me, rather than through inadvertence. A true and correct copy of that email chain is attached hereto as Exhibit I." | 403.)<br><br>Mr. McMillan's testimony lacks foundation. He speculates that Ms. Chaker has known of this lawsuit since November without any foundation. He lacks personal knowledge that she and Darren Chaker "pursued" Mr. Van Noord.<br><br>Mr. McMillan's testimony regarding the email he received is improper and seeks to inject improper argument concerning Mr. Chaker's intentions.<br><br>Mr. McMillan's testimony regarding the email he received is irrelevant to the legal and factual issues in this motion. It is also unduly prejudicial, as Mr. McMillan testified without foundation as to Mr. Chaker's alleged improper motive sending the email. This passive aggressive character assassination is improper, irrelevant, and unduly prejudicial. |
| ¶22 | "I anticipate more of this tomfoolery from Ms. Chaker." | **Argumentative. Misleading. Relevance (Fed. R. Evid. 402, 403.). Improper Character Evidence (Fed. R. Evid. 404)**<br><br>Mr. McMillan's statement is patently argumentative and improper. Mr. McMillan's testimony is also improper character evidence. The |

SPECIALLY APPEARING DEFENANT VANIA CHAKER'S EVIDENTIARY OBJECTIONS TO THE DECLARATION OF SCOTT MCMILLAN

| | | testimony lacks foundation as to Mr. McMillan's baseless speculation as to Ms. Chaker's future actions.<br><br>Mr. McMillan's name-calling also violates the customary professional ethical rules about civility in litigation. |
|---|---|---|

DATED: April 3, 2017          BAKER MARQUART LLP

/s/ Ryan G. Baker
Ryan G. Baker
Brian T. Grace
*Attorneys for Specially Appearing*
*Defendant Vania Chaker*

BAKER MARQUART LLP
2029 CENTURY PARK EAST, 16TH FLOOR
LOS ANGELES, CA 90067
Tel: (424) 652-7800 • Fax: (424) 652-7850

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SPECIALLY APPEARING DEFENANT VANIA CHAKER'S EVIDENTIARY OBJECTIONS TO THE DECLARATION OF SCOTT MCMILLAN

# EXHIBIT BB

# COMPUTER SEARCH & SEIZURE (HTTP://DARRENCHAKER.US/)

BY DARREN CHAKER

HOME (HTTP://DARRENCHAKER.US/)

ABOUT DARREN CHAKER (HTTP://DARRENCHAKER.US/VIEWPOINT-DISCRIMINATION-FALSE-COMPLAINT)

COLORADO RECORD SEALING (HTTP://DARRENCHAKER.US/COLORADO-RECORD-SEALING)

CONSENT AND WARRANT FOR COMPUTER SEARCH (HTTP://DARRENCHAKER.US/WARRANT-COMPUTER-SEARCH)

*POSTED ON DECEMBER 8, 2015 (HTTP://DARRENCHAKER.US/EDISCOVERY-DOCUMENT-DESTRUCTION) BY DARREN CHAKER (HTTP://DARRENCHAKER.US/AUTHOR/8FGKVRWNCY/)*

## EDISCOVERY DOCUMENT DESTRUCTION (HTTP://DARRENCHAKER.US/EDISCOVERY-DOCUMENT-DESTRUCTION)



(http://darrenchaker.us/ediscovery-document-destruction)





*Darren Chaker covers ediscovery*

Darren Chaker (https://plus.google.com/+DarrenChaker) found this article (http://www.ediscoverylaw.com/2015/10/court-approves-use-of-search-terms-to-identify-materials-for-preservation/) on California ediscovery concerning document-destruction You v. Japan (http://www.edrm.net/archives/29312), No. C 15-03257 WHA, 2015 WL 5542539 (N.D. Cal. Sept. 16, 2015).

### RECENT POSTS

• eDiscovery Document Destruction (http://darrenchaker.us/ediscovery-document-destruction)

• Inadvertent Disclosure CPRA (http://darrenchaker.us/cpra)

• Ediscovery Expert Fees (http://darrenchaker.us/expert-fees-ediscovery)

• Litigation Hold Policy Avoids Sanctions (http://darrenchaker.us/litigation-hold-sanctions)

• eDiscovery Sanctions in San Diego (http://darrenchaker.us/ediscovery-sandiego)

Exh BB
1 of 3

preservation, including "interdiction of any document-destruction programs and any ongoing erasures of e-mails, voice mails, and other electronically-recorded material." In the course of its business, one defendant, the publisher of a daily newspaper, employed a proprietary application "used for laying out each edition of the newspaper." The application retained a "back catalog" of 90 days. In response to the court's order, the defendant alleged that retention of the application's contents for longer than 90 days could "slow down the system or cause it to crash" and that although it could install a new storage system, it would cost $18 million and could take up to eight months. Accordingly Defendant sought permission to employ certain search terms to be run across the application twice monthly to identify articles to be preserved. Defendant alleged that it had "already run several searches using [the proposed] terms and found they yielded duplicative results (https://www.pinterest.com/darrenchaker/)," but indicated it would use the terms "out of an abundance of caution." Defendant further explained that because the proposal "would not cease 'all ongoing erasures of electronically-stored material,'" it sought court approval for its proposed method.

Plaintiffs opposed the proposal and argued that it could lead to the destruction of "evidence (http://www.stumbleupon.com/lists/4939745957 39862160/counter-forensics-darren-chaker) of [Defendant's] state of mind in selecting and editing its articles" which could be relevant to Plaintiffs' claims of defamation and intentional infliction of emotional distress. Plaintiffs also identified an additional search term that the defendant had not proposed.

With the addition of Plaintiffs' proposed term, the court found Defendant's proposal "sufficiently broad" to identify and preserve potentially relevant articles and granted permission for Defendant's proposed preservation protocol.

POSTED IN DARREN-CHAKER (HTTP://DARRENCHAKER.US/CATEGORY/DARREN-CHAKER/), EDISCOVERY-CALIFORNIA (HTTP://DARRENCHAKER.US/CATEGORY/EDISCOVERY-CALIFORNIA/), EDISCOVERY-DELETED (HTTP://DARRENCHAKER.US/CATEGORY/EDISCOVERY-DELETED/), EDISCOVERY-SAN-DIEGO (HTTP://DARRENCHAKER.US/CATEGORY/EDISCOVERY-SAN-DIEGO/) | TAGGED DARREN-CHAKER (HTTP://DARRENCHAKER.US/TAG/DARREN-CHAKER &O DOCUMENT DESTRUCTION (HTTP://DARRENCHAKER.US/TAG/DOCUMENT-

## RECENT COMMENTS

## ARCHIVES

- December 2015 (http://darrenchaker.us/2015/12/)

- October 2015 (http://darrenchaker.us/2015/10/)

- September 2015 (http://darrenchaker.us/2015/09/)

- June 2015 (http://darrenchaker.us/2015/06/)

- May 2015 (http://darrenchaker.us/2015/05/)

- April 2015 (http://darrenchaker.us/2015/04/)

- October 2014 (http://darrenchaker.us/2014/10/)

- April 2013 (http://darrenchaker.us/2013/04/)

- March 2013 (http://darrenchaker.us/2013/03/)

- January 2013 (http://darrenchaker.us/2013/01/)

- December 2012 (http://darrenchaker.us/2012/12/)

Exh BB
2 of 3

DESTRUCTION/), EDISCOVERY-CALIFORNIA
(HTTP://DARRENCHAKER.US/TAG/EDISCOVERY-CALIFORNIA/), EDISCOVERY-DELETE
(HTTP://DARRENCHAKER.US/TAG/EDISCOVERY-DELETE/), SCOTT-MCMILLAN-LA-MESA
(HTTP://DARRENCHAKER.US/TAG/SCOTT-MCMILLAN-LA-MESA/), YOU-JAPAN
(HTTP://DARRENCHAKER.US/TAG/YOU-JAPAN/) |

POSTED ON OCTOBER 23, 2015 (HTTP://DARRENCHAKER.US/CPRA) BY DARREN CHAKER
(HTTP://DARRENCHAKER.US/AUTHOR/SFGKVRWNCY/)

# INADVERTENT DISCLOSURE CPRA (HTTP://DARRENCHAKER.US/CPRA)



Inadvertent disclosure (http://federalevidence.com/node/1606), and restraining order, Darren Chaker (http://darrenchaker.org/) posts about an article concerning Newark Unified Sch. Dist. v. Superior Court (http://www.therecorder.com/id=1202733765784/Newark-Unified-School-District-v-Superior-Court-Brazil?slreturn=20150827021409) , 2015 WL 4594095 (Cal. Ct. App. July 31, 2015). In this inadvertent document release case, the plaintiff sought injunctive relief against the defendant, requiring the return or destruction of privileged, exempt or confidential records that had been improperly released. The plaintiff sought a temporary restraining order (TRO) shortly after filing a complaint, but the defendant argued that, under a legislative law, the "disclosure" of a public record constitutes a waiver of applicable exemptions from disclosure. Examining past holdings, the court ruled that the term "waiver" did not include accidental, inadvertent disclosures, which included the electronically stored materials produced during discovery. In addition, the court found that an attorney who receives inadvertently produced documents during discovery has an ethical duty to "refrain from unnecessary review of the documents, notify opposing counsel, and return the documents upon request". The court vacated the lower court's decision to deny the TRO and ordered the defendant to refrain from dissemination of inadvertently produced privileged documents. See article here (http://www.ediscovery.com/pulse/case-law/detail/26647/#.VgeIqW7htZE).

POSTED IN CPRA (HTTP://DARRENCHAKER.US/CATEGORY/CPRA/) |TAGGED
CALIFORNIA-PUBLIC-RECORDS-ACT (HTTP://DARRENCHAKER.US/TAG/CALIFORNIA-
PUBLIC-RECORDS-ACT/), CPRA (HTTP://DARRENCHAKER.US/TAG/CPRA/), DARREN-
CHAKER (HTTP://DARRENCHAKER.US/TAG/DARREN-CHAKER-3/), INADVERTENT-
DISCLOSURE (HTTP://DARRENCHAKER.US/TAG/INADVERTENT-DISCLOSURE/), SCHOOL-
PUBLIC-RECORD (HTTP://DARRENCHAKER.US/TAG/SCHOOL-PUBLIC-RECORD/) |

POSTED ON OCTOBER 16, 2015 (HTTP://DARRENCHAKER.US/EXPERT-FEES-EDISCOVERY)
BY DARREN CHAKER (HTTP://DARRENCHAKER.US/AUTHOR/SFGKVRWNCY/)

# EDISCOVERY EXPERT FEES
(HTTP://DARRENCHAKER.US/EXPERT

## CATEGORIES

- Apparent-Authority-Consent (http://darrenchaker.us/category/apparent-authority-consent/)

- Border Search (http://darrenchaker.us/category/border-search-2/)

- Border-Privacy (http://darrenchaker.us/category/border-privacy/)

- Checkpoint-Search (http://darrenchaker.us/category/checkpoint-search/)

- Computer-Search (http://darrenchaker.us/category/computer-search/)

- Consent-to-Search-Computer (http://darrenchaker.us/category/consent-to-search-computer/)

- CPRA (http://darrenchaker.us/category/cpra/)

- Darren-Chaker (http://darrenchaker.us/category/darren-chaker/)

- ediscovery-california (http://darrenchaker.us/category/ediscovery-california/)

- ediscovery-deleted (http://darrenchaker.us/category/ediscovery-deleted/)

- ediscovery-san-diego (http://darrenchaker.us/

Exh BB
3 of 3

**FREDRICKSON, MAZEIKA & GRANT, LLP**
Timothy J. Grant, Esq. (SBN 122593)
tgrant@fmglegal.com
5720 Oberlin Drive
San Diego, CA 92121-1723
Tel: 858-642-2002; Fax: 858-642-2001

Attorneys for Defendant DARREN D. CHAKER, an individual, and as trustee of
PLATINUM HOLDINGS GROUP TRUST, dba COUNTER FORENSICS

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT

| | |
|---|---|
| SCOTT A. MCMILLAN, et al., | Case No. 3:16-CV-02186-WQH-MD |
| Plaintiffs, | Judge: Hon. William Q. Hayes<br>Courtroom: 14B |
| v. | Magistrate: Hon. Mitchell D. Dembin<br>Courtroom: 11th Floor |
| DARREN D. CHAKER, et al., | **STIPULATION TO EXTEND TIME TO RESPOND TO FIRST AMENDED COMPLAINT** |
| Defendants. | Complaint Filed: August 29, 2016 |

COMES NOW the parties to this stipulation, namely, Plaintiffs, SCOTT A. McMILLAN and THE McMILLAN LAW FIRM, APC ("PLAINTIFFS"), and Defendant, DARREN D. CHAKER, an individual, and as trustee of PLATINUM HOLDINGS GROUP TRUST, dba COUNTER FORENSICS ("CHAKER"), by and through their respective attorneys of record, who hereby stipulate and agree as follows:

1. On August 29, 2016, PLAINTIFFS filed their Complaint in the above captioned matter against CHAKER, and other Defendants;

2. CHAKER made a general appearance in the instant action via Motion for Dismiss for Failure to State a Claim on November 14, 2016, represented by Timothy J. Grant of the law firm of Fredrickson, Mazeika & Grant, LLP ("FMG");

///

3.     Plaintiffs filed their First Amended Complaint ("FAC") on December 15, 2016, thus rendering the then pending motion to dismiss filed by CHAKER moot;

4.     Based upon prior application and Order granted by the Court on December 21, 2016, the current deadline for CHAKER to respond to the FAC is January 26, 2017;

5.     Between December 2016 and January 2017, certain irreconcilable differences developed between CHAKER and his current counsel, FMG, necessitating the dissolution of the attorney-client relationship between CHAKER and FMG, and FMG's subsequent request to withdraw;

6.     CHAKER seeks to substitute FMG with new counsel selected by CHAKER (the "replacement firm"), who are expected to be approved for retention by CHAKER's liability insurers by the end of the week ending January 27, 2017, and whose substitution of attorney is expected to be on file by February 1, 2017.  That replacement firm will require additional time to bring themselves up to speed on the case, to review the nature of the allegations in the Plaintiffs' FAC and other information currently contained in FMG's litigation file, and to otherwise prepare and file what is in their view to be an appropriate response to the FAC.

7.     PLAINTIFFS have agreed as a matter of courtesy to allow the replacement firm additional time in which to prepare a response to the FAC, which response would need to be filed and served in this matter no later than February 17, 2017.

NOW, THEREFORE, subject to approval by the Court, the Parties hereby stipulate and agree that the deadline by which CHAKER must now respond to PLAINTIFFS' FAC should be continued to the date of February 17, 2017.

DATED:  January 24, 2017          THE McMILLAN LAW FIRM, APC


By:   */s/ Scott A. McMillan*
      Scott A. McMillan, Esq.
      Attorney for Plaintiffs, SCOTT A.
      McMILLAN, an individual, and THE
      McMILLAN LAW FIRM, APC

1  DATED: January 24, 2017      FREDRICKSON, MAZEIKA & GRANT, LLP

2

3                                By: __/s/ Timothy J. Grant_____
                                     Timothy J. Grant, Esq.
4                                    Attorney for Defendants, DARREN D.
                                     CHAKER, an individual, and as trustee
5                                    of PLATINUM HOLDINGS GROUP
                                     TRUST, dba COUNTER FORENSICS

6

7                        **CERTIFICATION**

8          Pursuant to Civil Local Rule 5-4.3.4(a)(2)(i), Timothy J. Grant, Esq., the ECF

9   User whose identification and password are being used to file the foregoing

10  STIPULATION TO EXTEND TIME TO RESPOND TO FIRST AMENDED

11  COMPLAINT, attests that the other signatories listed on the stipulation, and on whose

12  behalf the filing is submitted, concur in the filing's content and have authorized the

13  filing of this document.

14  DATED:     January 24, 2017      _/s/ Timothy J. Grant_____
                                       Timothy J. Grant, Esq.
15

16

17

18

19

20

21

22

23

24

25

26

27

28

STEPHEN J. ERIGERO (SBN 121616)
E. LACEY RICE (SBN 266748)
EDUARDO A. BRAVO (SBN 327967)
**ROPERS MAJESKI PC**
445 South Figueroa St, 30th Floor
Los Angeles, CA 90071
Telephone: 213.312.2000
Facsimile: 213.312.2001
Email: stephen.erigero@ropers.com
Email: lacy.rice@ropers.com
Email: eduardo.bravo@ropers.com

Attorneys for Defendant
DARREN D. CHAKER

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT A. MCMILLAN, an individual; THE MCMILLAN LAW FIRM, APC, a California professional corporation, | Case No. 3:16-cv-2186-WQH-MDD |
| Plaintiffs, | *Hon. William Q. Hayes* *Courtroom 14B* |
| v. | **DEFENDANT DARREN D. CHAKER'S NOTICE OF MOTION AND MOTION TO SEAL PORTIONS OF PLAINTIFF SCOTT A. MCMILLAN'S COMPLAINT AND FIRST AMENDED COMPLAINT** |
| DARREN D. CHAKER, an individual, and as trustee of PLATINUM HOLDINGS GROUP TRUST, dba COUNTER FORENSICS; NICOLE CHAKER, an individual, and as trustee of THE NICOLE CHAKER REVOCABLE LIVING TRUST, U/A dated August 18, 2010, VANIA CHAKER, an individual and as beneficiary of The Island Revocable Trust under, | **[*Filed Concurrently with Memorandum of Points and Authorities, Declaration of Eduardo A. Bravo, Request for Judicial Notice and (Proposed) Order]*** |
| Defendants. | **DATE: AUGUST 3, 2020** |
| | *NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT* |
| | Action Filed: August 29, 2016 Trial Date: None |

4819-0365-6385.1

Left margin vertical text: ROPERS MAJESKI | A Professional Corporation | Los Angeles

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on **August 3, 2020**, or as soon thereafter as the matter may be heard in Courtroom 14B of the above-entitled court, located at 333 West Broadway, San Diego, California 92101, Defendant DARREN D. CHAKER ("Defendant") will and hereby does move the Court for an Order sealing certain portions of Plaintiff Scott A. McMillan's ("Plaintiff") Complaint and First Amended Complaint ("FAC"), or alternatively, for a Protective Order, pursuant to Rules 5.2(d)–(e) of the Federal Rules of Civil Procedure.

This Motion is being brought following Defendant's unsuccessful meet and confer efforts requesting that Plaintiffs voluntarily stipulate to sealing at issue portions of the Complaint and FAC, as set forth in the Declaration of Eduardo A. Bravo filed herewith.

This Motion is based upon this Notice of Motion and Motion and supporting Memorandum of Points and Authorities, the Declaration of Eduardo A. Bravo, the Request for Judicial Notice, all exhibits submitted in connection with this Motion, all pleadings and papers on file in this action, and all additional evidence and oral argument (only if separately ordered by the Court) that the Court may properly receive at or before the hearing on this Motion.

DATED:  June 25, 2020                    ROPERS MAJESKI PC


By: _/s/ Eduardo A. Bravo_
STEPHEN J. ERIGERO
E. LACEY  RICE
EDUARDO A. BRAVO
Attorneys for Defendant
DARREN D. CHAKER

A Professional Corporation
Los Angeles

ROPERS
MAJESKI

4819-0365-6385.1

NOTICE OF MOTION TO SEAL PORTIONS OF PLAINTIFF'S COMPLAINT

1  Scott A. McMillan, SBN 212506
   The McMillan Law Firm, APC
2  4670 Nebo Drive, Suite 200
   La Mesa, California 91941-5230
3  (619) 464-1500
   Email: scott@mcmillanlaw.us
4
   Attorney for Plaintiffs, SCOTT A. MCMILLAN, an individual, and THE
5  MCMILLAN LAW FIRM, APC, a California Professional Corporation

6

7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10  SCOTT A. MCMILLAN, an                Case No. 3:16-CV-02186-WQH-MDD
    individual, THE MCMILLAN LAW
11  FIRM, APC, a California Professional  Judge: Hon. William Q. Hayes
    Corporation,                         Courtroom: 14B
12
13    Plaintiffs,
                                         **NOTICE OF CROSS APPEAL;
14    v.                                 STATEMENT OF
                                         REPRESENTATION [9TH Cir. R. 3-
15  DARREN D. CHAKER, an individual,     2]**
    and as trustee of PLATINUM
16  HOLDINGS GROUP TRUST, dba
    COUNTER FORENSICS; NICOLE
17  CHAKER, an individual, and as trustee
    of THE NICOLE CHAKER
18  REVOCABLE LIVING TRUST, U/A
    dated August 18, 2010, VANIA
19  CHAKER, an individual and as
    beneficiary of The Island Revocable
20  Trust under Declaration of Trust dated
    June 2, 2015, MARCUS MACK as
21  trustee of The Island Revocable Trust
    under Declaration of Trust dated June
22  2, 2015,

23    Defendants.

24

25

26

27

28

                              483

1      TO THE COURT, ALL INTERESTED PARTIES, AND TO THEIR

2  RESPECTIVE ATTORNEYS OF RECORD:

3      Notice is hereby given that Plaintiffs Scott A. McMillan and The McMillan

4  Law Firm, APC ("Plaintiffs"), hereby file this cross-appeal to the United States

5  Court of Appeal for the Ninth Circuit from the March 8, 2018 order granting

6  Defendant Nicole Chaker an extension of fourteen days to file a notice of appeal

7  pursuant to Fed. R. App. P. Rule 4(a)(5) [ECF 99], a copy of which is attached

8  hereto, and the prior adverse rulings.

9

10  Dated: March 15, 2018

11                               Respectfully submitted,

12

13                               /s/ Scott A. McMillan

14                               Scott A. McMillan, SBN 212506
                                   Attorneys for Plaintiffs

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# NOTICE OF REPRESENTATION
## [Ninth Circuit Rule 3-2]

The McMillan Law Firm, APC
Plaintiff - Appellant

Scott A. McMillan, CBN 212506
The McMillan Law Firm, APC
4670 Nebo Drive, Suite 200,
La Mesa, CA 91941
(619) 464-1500 x 14

Scott A. McMillan
Plaintiff - Appellant

Scott A. McMillan, CBN 212506
The McMillan Law Firm, APC
4670 Nebo Drive, Suite 200,
La Mesa, CA 91941
(619) 464-1500 x 14

Darren D. Chaker
an individual, and as trustee of
PLATINUM HOLDINGS GROUP
TRUST

Defendant - Appellee

Represented by
Charles Thomas Spagnola
Sullivan Krieger Truong Spagnola &
Klausner, LLP
444 W. Ocean Blvd., Suite 1700
Long Beach, CA 90802
562-597-7070
Fax: 562-597-7772
Email: cspagnola@sullivankrieger.com

John Hochhausler
Manning & Kass Ellrod, Ramirez,
Trester, LLP
801 S. Figueroa St. 15th Floor
Los Angeles, CA 90017
Ph: (213) 624-6900
Fax: (213)-624-7999
jmh@manningllp.com

Vania Chaker
an individual and as beneficiary of The
Island Revocable Trust under
Declaration of Trust dated June 2, 2015

Defendant - Appellee

Represented by

Ryan G. Baker
Baker Marquart, LLP
2029 Century Park East
Suite 1600
Los Angeles, CA 90067
(424) 652-7800
Fax: (424) 652-7850
Email: rbaker@bakermarquart.com

Nicole Chaker
an individual, and as trustee of
The Nicole Chaker Revocable
Living Trust, U/A dated August 18,
2010

Defendant - Appellee

Represented by

Rebecca Jo Smith
Freeman Mathis & Gary, LLP
550 S. Hope St.
22nd Floor
Los Angeles, CA 90071
213-615-7008
Fax: 216-615-7100
Email: rjs@gilbertkelly.com

Timothy W Kenna
Freeman Mathis & Gary, LLP
550 South Hope Street
22nd Floor
Los Angeles, CA 90071
(213)615-7116
Fax: (213)615-7100
Email: t.kenna@gilbertkelly.com

# CERTIFICATE OF SERVICE

I am admitted to the United States District Court for the Southern District of California. I am employed in San Diego County, California. My business address is 4670 Nebo Drive, Suite 200, La Mesa, CA 91941-5230.

On March 15, 2018, I caused service of the following documents:

NOTICE OF CROSS-APPEAL; STATEMENT OF REPRESENTATION [9TH Cir. R. 3-2].

By Electronic Submission: I served the above listed document(s) described via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service though the court's transmission facilities.

I certify that the foregoing is true and correct.

Dated: March 15, 2018

/s/ Scott A. McMillan

Scott A. McMillan

# Exhibit

# A

Case 3:16-cv-02186-WQH-MDD   Document 72-1   Filed 08/20/17   PageID.3914   Page 7 of 10
Case 3:16-cv-02186-WQH-MDD   Document 72-1   Filed 09/05/17   PageID.3983   Page 7 of 30
1196

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT A. MCMILLAN, an individual; THE MCMILLAN LAW FIRM, APC, a California professional corporation, | CASE NO. 16cv2186-WQH-MDD |
| | ORDER |
| Plaintiffs, | |
| v. | |
| DARREN D. CHAKER, an individual, and as trustee of PLATINUM HOLDINGS GROUP TRUST doing business as Counter Forensics, *et al.*, | |
| Defendants. | |

HAYES, Judge:

The matters before the Court are the motion to dismiss and the motion to strike Plaintiffs' third cause of action filed by Defendant Nicole Chaker (ECF Nos. 35, 36); the motion to dismiss and motion to strike filed by Defendant Darren D. Chaker (ECF Nos. 55, 56); the motion to dismiss or alternatively to quash service filed by Defendant Vania Chaker (ECF No. 59); and, the motion for sanctions by Defendant Darren Chaker (ECF No. 66).

## I. BACKGROUND

On December 5, 2016, Plaintiffs Scott A. McMillan and The McMillan Law Firm, APC filed the First Amended Complaint ("FAC") against Defendant Darren D. Chaker, an individual and as trustee of Platinum Holdings Group Trust, dba Counter Forensics; Defendant Nicole Chaker, an individual and as trustee of The Nicole Chaker

Case 3:16-cv-02186-WQH-MDD   Document 172-1   Filed 08/26/22   PageID.3913   Page 6 of 30
Case 3:16-cv-02186-WQH-MDD   Document 102-1   Filed 09/04/22   PageID.3914   Page 3 of
1196

Revocable Living Trust, U/A dates August 18, 2010; Defendant Vania Chaker, an individual and as beneficiary of The Island Revocable Trust under Declaration of Trust dated June 2, 2015; and Defendant Marcus Mack, as trustee of the Island Revocable Trust under Declaration of Trust dates June 2, 2015. (ECF No. 25). The FAC alleges two causes of action under the Racketeer Influenced and Corrupt Organizations ("RICO") Act pursuant to 18 U.S.C. § 1962(c) and (d) and a civil extortion cause of action under California law.

**II. ALLEGATIONS OF THE FIRST AMENDED COMPLAINT ("FAC")**

Plaintiff Scott McMillan is a California licensed attorney practicing law and operating an unaccredited law school. (ECF No. 25 at ¶5). Plaintiff McMillan Law Firm, APC is a corporation operated by Scott McMillan. *Id.* ¶ 6. Defendants Vania and Nicole Chaker are Defendant Darren Chaker's sister and mother, respectively.

Plaintiffs allege that Defendants constitute a RICO enterprise functioning together "as a continuing unit with a common purpose to obtain the Plaintiffs' property under fear induced by falsely imputing a deformity, disgrace, or crimes, and by threats to do an unlawful injury to the person or property . . . all in violation of Cal. Penal Code section 523 (extortion)." *Id.* ¶ 88. "The common purpose of the Enterprise members was to assist each other in the filing of false and meritless lawsuits under federal debt collection statutes; assist each other in the filing of lawsuits against attorneys who opposed them . . . and to conduct a campaign of harassment, defamation, and extortion against attorneys, such as the Plaintiffs, who represented parties adverse to the interests of the Enterprise members . . . ." *Id.* ¶ 91. "Enterprise member also assisted each other in committing vandalism against Plaintiff's property." *Id.*

Defendant Darren Chaker is alleged to have committed multiple acts of racketeering activity through acts involving extortion in violation of California Penal Code sections 518, 519, and 523. *Id.* ¶¶ 94-109. Plaintiffs allege that Darren Chaker sent threatening letters and communications; posted defamatory and fabricated statements online; sent letters threatening Plaintiffs' clients; and sent defamatory emails

Case 3:16-cv-02186-WQH-MDD Document 127-1 Filed 08/20/22 PageID.3954 Page 4 of 30
Case 3:16-cv-02186-WQH-MDD Document 122 Filed 08/26/22 PageID.3916 Page 6 of 30
1196

to other attorneys and colleagues of Plaintiff McMillan. *Id.* Plaintiffs allege that these acts constitute extortion because Defendant "obtained from Plaintiff his intangible property right to practice law free of threats, and to practice in accordance with the California Rules of Professional Conduct" and "obtained from Plaintiffs their intangible property right to practice law and publish court decisions on the internet." *Id.* at ¶¶ 99-109.

Plaintiffs bring the first cause of action for a violation of RICO, 18 U.S.C. § 1962(c) against Defendant Darren Chaker. *Id.* ¶¶ 84-114. Plaintiffs bring a second cause of action for conspiracy to violate RICO, 18 U.S.C. § 1962(d) against all Defendants. *Id.* ¶¶ 115-119. Plaintiffs bring a third cause of action for civil extortion under California law against Defendants Darren Chaker and Nicole Chaker. *Id.* ¶¶ 120-133.

## III. LEGAL STANDARD ON RULE 12(B)(6)

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a) provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)). When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a

1  complaint to survive a motion to dismiss, the non-conclusory factual content, and

2  reasonable inferences from that content, must be plausibly suggestive of a claim

3  entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir.

4  2009) (internal quotation marks omitted).

5  **IV. MOTIONS TO DISMISS BY DARREN CHAKER AND NICOLE CHAKER**

6  **(ECF Nos. 35, 56)**

7  Defendant Darren Chaker contends that the FAC should be dismissed with

8  prejudice for failure to state a claim. Defendant Darren Chaker contends that the RICO

9  cause of action pursuant to 18 U.S.C. §1962(c) must be dismissed because Plaintiffs fail

10  to adequately allege facts to support the predicate act of extortion. (ECF No. 56-1 at

11  10). Defendant Darren Chaker contends that Plaintiffs fail to state a claim for extortion

12  because Plaintiffs do not allege facts to show that Defendant Darren Chaker obtained

13  property from Plaintiffs. *Id.* at 13. Defendant Darren Chaker further contends that

14  Plaintiffs lack standing because the FAC fails to allege cognizable damages. *Id.* at 18.

15  Defendant Darren Chaker contends that the second cause of action for RICO

16  conspiracy, 18 U.S.C. § 1962(d), fails for the same reasons as the first cause of action.

17  Defendant Darren Chaker contends that the Court should decline to exercise

18  supplemental jurisdiction over the state law claim. *Id.* at 19-20.

19  Defendant Nicole Chaker also contends the FAC should be dismissed for failure

20  to state a claim.[1] (ECF No. 35). Defendant Nicole Chaker contends that her alleged

21  conduct is protected by the Noerr-Pennington doctrine. (ECF No. 35-1 at 13-16).

22  Defendant Nicole Chaker contends that the RICO causes of action should be dismissed

23  because Plaintiffs fail to adequately plead an enterprise with an effect on interstate

24  commerce, a pattern of racketeering, cognizable damages, or sufficient conduct or

25  ─────────────────

26  [1] Defendant Nicole Chaker files a request for judicial notice of document in the
record of a district court case from the United States District Court for the Central
27  District of California. (ECF No. 35-3). Plaintiffs' also file a request for judicial notice
of court documents in other cases. (ECF No. 45-1). The Court denies the request for
28  judicial notice as unnecessary. *See, e.g.*, *Asvesta v. Petroutsas*, 580 F.3d 1000, 1010
n. 12 (9th Cir. 2009) (denying request for judicial notice where judicial notice would
be "unnecessary").

1  participation in enterprise affairs. *Id.* at 18-25. Defendant Nicole Chaker contends that

2  the claim under § 1962(d) necessarily fails if the § 1962(c) claim is dismissed. *Id.* at

3  24. Defendant Nicole Chaker contends that Plaintiffs do not sufficiently allege any

4  cognizable injury to support the cause of action for civil extortion. *Id.* at 25. Defendant

5  Nicole Chaker contends that she is "protected by the litigation privilege under

6  California Civil Code § 47." *Id.* at 29.

7       Plaintiffs contend that the FAC sufficiently alleges extortion pursuant to the

8  California Penal Code as a predicate act for the RICO claims. (ECF No. 60). Plaintiffs

9  contend that Defendant Darren Chaker "has obtained the Plaintiffs' property, i.e. the

10  right to publicity, the goodwill in the business, the Plaintiff's ability to practice law, the

11  Plaintiff's identity and the Plaintiffs' logo." *Id.* at 14-15. Plaintiffs further contend that

12  the FAC alleges cognizable damages in the form of injury to a business or property. *Id.*

13  at 20-21. Plaintiffs contend that federal law, state law, and California state courts

14  define "property" broadly to include the damage to intangible property interests alleged

15  in the complaint. *Id.* at 20-26. Plaintiffs contend that intangible property rights were

16  obtained by Defendant Darren Chaker. *Id.* at 26-30. Plaintiffs contend that the Court

17  should exercise its supplemental jurisdiction over the state law claim of civil extortion.

18  *Id.* at 30-31. Plaintiffs contend that the Noerr-Pennington doctrine has no applicability

19  to this case. (ECF No. 43 at 25). Plaintiffs contend that Defendant Nicole Chaker is

20  not protected by the litigation privilege under California Civil Code section 47.

21  Plaintiffs contend that the FAC adequately alleges that Defendant Nicole Chaker

22  conspired to violate § 1962(c). *Id.* at 20. Plaintiffs contend that the FAC adequately

23  alleges a civil extortion claim. *Id.* at 22-23.

24       **A. RICO, 18 U.S.C. § 1962(c)**

25       "The Racketeer Influenced and Corrupt Organizations ('RICO') Act . . . provides

26  for both criminal and civil liability." *Odom v. Microsoft Corp.*, 486 F.3d 541, 545 (9th

27  Cir. 2007) (citing Pub. L. No. 91-452, § 901, 84 Stat. 922 (1970) (codified at 18 U.S.C.

28  §§ 1961-1968)). "Under RICO's civil enforcement mechanism, 'any person injured in

Case 3:16-cv-02186-WQH-MDD Document 102-1 Filed 03/26/18 PageID.9357 Page 50 of 130
Case 3:16-cv-02186-WQH-MDD Document 102-1 Filed 03/26/18 PageID.9357 Page 6 of 130
1196

1  his business or property by reason of a violation of [18 U.S.C. § 1962] may sue therefor

2  in any appropriate United States district court and shall recover threefold the damages

3  he sustains and the cost of the suit, including a reasonable attorney's fee . . . .'"

4  *Canyon Cty v. Sygenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008) (citing 18 U.S.C.

5  § 1964(c)). "Subsections 1962(a) through (c) prohibit certain 'pattern[s] of racketeering

6  activity' in relation to an 'enterprise.'" *United Bhd. of Carpenters & Joiners of Am. v.*

7  *Bldg. & Const. Trades Dep't, AFL-CIO*, 770 F.3d 834, 837 (9th Cir. 2014). "To have

8  standing under § 1964(c), a civil RICO plaintiff must show: (1) that his alleged harm

9  qualifies as injury to his business or property; and (2) that his harm was 'by reason of'

10  the RICO violation, which requires the plaintiff to establish proximate causation." *Id.*

11  (citing *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992); *Sedima,*

12  *S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).

13      Section 1962(c) provides,

14      It shall be unlawful for any person employed by or associated with any
enterprise engaged in, or the activities of which affect, interstate or foreign

15  commerce, to conduct or participate, directly or indirectly, in the conduct
of such enterprise's affairs through a pattern of racketeering activity or

16  collection of unlawful debt.

17  18 U.S.C. § 1962(c). "The elements of a civil RICO claim are as follows: (1) conduct

18  (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as

19  'predicate acts') (5) causing injury to plaintiff's business or property." *United Bhd. of*

20  *Carpenters*, 770 F.3d at 837 (citing *Living Designs, Inc. v. E.I. Dupont de Nemours &*

21  *Co.*, 431 F.3d 353, 361 (9th Cir. 2005)).

22      "A 'pattern of racketeering activity' requires at least two predicate acts of

23  racketeering activity, as defined in 18 U.S.C. § 1961(1) within a period of ten years."

24  *Canyon Cty*, 519 F.3d at 972. "Racketeering activity" as defined by statute includes

25  "any act or threat involving . . . extortion, . . . which is chargeable under State law."

26  18 U.S.C. § 1961(1)(A). To constitute a predicate act of extortion for purposes of a

27  RICO cause of action, the alleged act must satisfy the generic definition of extortion –

28  "obtaining something of value from another with his consent inducted by the wrongful

1  use of force, fear, or threats." *United Bhd. of Carpenters*, 770 F.3d at 843 (citing

2  *United States v. Nardello*, 393 U.S. 286 (1969)).

3  In *Scheidler v. National Organization for Women, Inc.*, the Supreme Court

4  considered whether the use or threat of force, violence or fear to cause a party to "'give

5  up' property rights, namely, 'a woman's right to seek medical services from a clinic, the

6  right of the doctors, nurses or other clinic staff to perform their jobs, and the right of the

7  clinics to provide medical services free from wrongful threats, violence, coercion and

8  fear" constituted Hobbs Act extortion or a state extortion offense for purposes of a

9  RICO predicate act. 537 U.S. 393, 400-01 (2003). The Court determined that although

10  "[t]here was no dispute . . . that petitioners interfered with, disrupted, and in some

11  instances completely deprived, respondents of their ability to exercise their property

12  rights . . . . such acts did not constitute extortion because petitioners did not 'obtain

13  respondents' property." *Id.* at 404-05. The Court further stated, "Petitioners may have

14  deprived or sought to deprive respondents of their exclusive control of their business

15  assets, but they did not acquire any such property. Petitioners neither pursued nor

16  received 'something of value from' respondents that they could exercise, transfer or

17  sell." *Id.* (citing *Nardello*, 393 U.S. at 290)).

18  In this case, Plaintiffs allege that the requisite predicate acts are multiple acts of

19  extortion in violation of California Penal Code sections 518, 519, and 523.[2]  An act of

20  extortion which is chargeable under state law can constitute racketeering activity

21  sufficient to support a RICO claim. *See* 18 U.S.C. § 1961(1)(A). However, to plead

22  extortion as a predicate act, Plaintiffs must allege facts to show that the act involved

23  "obtaining something of value from another." *United Bhd. of Carpenters*, 770 F.3d at

24  843; *Scheidler*, 537 U.S. at 410 ("[W]here as here the Model Penal Code and a majority

25  of States recognize the crime of extortion as requiring a party to obtain or to seek to

26  _____

27  [2] Plaintiffs allege the cause of action pursuant to 18 U.S.C. § 1962(c) solely
against Defendant Darren Chaker. Plaintiffs do not allege the cause of action pursuant
28  to 18 U.S.C. § 1962(c) against Defendant Nicole Chaker. (ECF No. 25 at 33; ECF No.
43 at 6).

obtain property, as the Hobbs Act requires, the state extortion offense for purposes of RICO must have a similar requirement.").  Plaintiffs allege that various acts by Defendant Darren Chaker constitute state extortion offenses and predicate acts under RICO because Defendant Darren Chaker obtained from Plaintiffs the "intangible right to practice law and publish decisions on the internet" and the "intangible property right to practice law free of threats, and to practice in accordance with the California Rules of Professional Conduct."  (ECF No. 25 at ¶¶ 99-109).  The Court concludes that these factual allegations are insufficient to establish that Defendant Darren Chaker obtained something of value from Plaintiffs.  *Scheidler*, 537 U.S. at 410.  Because Plaintiffs fail to sufficiently allege a predicate act, Plaintiffs fail to state a claim pursuant to 18 U.S.C. § 1962(c).  *See, e.g.*, *United Bhd. of Carpenters*, 770 F.3d at 837 (stating that a plaintiff must properly allege a predicate act to state a claim under RICO).  The motion to dismiss the cause of action under 18 U.S.C.§ 1962(c) filed by Defendant Darren Chaker is granted.

**B. RICO Conspiracy, 18 U.S.C. § 1962(d)**

Plaintiffs bring a RICO conspiracy cause of action against all Defendants and allege that

> commencing in 2004 and during and continuing at all times to the present, RICO defendants conspired to violate section 1962(c), i.e. each defendant agreed that a conspirator (DARREN) would conduct or participate in the affairs of the Enterprise through a pattern of racketeering, including acts involving extortion in violation of California state law, as more fully described in the First Claim for Relief.

(ECF No. 25 at ¶ 116).

A civil RICO cause of action is available for a violation of 18 U.S.C. § 1962(d).  *See* 18 U.S.C. § 1964(c).  Pursuant to 18 U.S.C. § 1962(d), it is "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."  18 U.S.C. § 1962(d).  In *Howard v. Am. Online Inc.*, the Ninth Circuit Court of Appeals held that "Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO."  208 F.3d 741, 751 (9th Cir. 2000).  The Court has determined that Plaintiffs did not adequately plead a

- 8 -

Case 3:16-cv-02186-WQH-MDD   Document 107-1   Filed 03/26/22   PageID.9972   Page 5 of 130
Case 3:16-cv-02186-WQH-MDD   Document 103-1   Filed 08/26/17   PageID.3922   Page 9 of 130
1196

1   substantive violation of 18 U.S.C § 1962(c).  The motions to dismiss the RICO

2   conspiracy cause of action under 18 U.S.C. § 1962(d) filed by Defendants Nicole

3   Chaker and Darren Chaker are granted.

**C. Civil Extortion Under State Law**

5        The civil extortion cause of action alleged by Plaintiffs against Defendants

6   Darren Chaker and Nicole Chaker does not arise under federal law.  The FAC states that

7   this case is properly in federal court based on federal question jurisdiction[3] and that this

8   Court has supplemental jurisdiction over the remaining state law claim pursuant to 28

9   U.S.C. § 1367(a) because it is "so related to the claims in the action within the Court's

10  original jurisdiction that they form part of the same case or controversy under Article

11  III of the United States Constitution."  (ECF No. 25 at 2).  The federal supplemental

12  jurisdiction statute provides:

> [I]n any civil action of which the district courts have original jurisdiction,
> the district courts shall have supplemental jurisdiction over all other
> claims that are so related to claims in the action within such original
> jurisdiction that they form part of the same case or controversy under
> Article III of the United States Constitution.

16  28 U.S.C. § 1367(a).   "The district courts may decline to exercise supplemental

17  jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all

18  claims over which it has original jurisdiction[.]"  28 U.S.C. § 1367(c).

19       Having dismissed the only federal claims asserted against Defendant Darren

20  Chaker and Nicole Chaker, the Court declines to exercise supplemental jurisdiction over

21  this state law claim pursuant to 28 U.S.C. § 1367(c).  *See San Pedro Hotel Co., Inc. v.*

22  *City of Los Angeles*, 159 F.3d 470, 478 (9th Cir. 1998). The motions to dismiss the civil

23  extortion cause of action filed by Defendants Nicole Chaker and Darren Chaker are

24  granted.

25  **V. MOTIONS TO STRIKE BY DARREN CHAKER AND NICOLE CHAKER**

26

27       [3] Plaintiffs also allege, "This Court has subject-matter jurisdiction over this action
28  pursuant to 28 U.S.C. § 1332."  (ECF No. 25 at ¶ 1).  Plaintiffs have failed to allege
    sufficient facts to establish diversity jurisdiction and this statement appears to be in
    reference to 28 U.S.C. § 1331.

- 9 -                                    16cv2186-WQH-MDD

**(ECF Nos. 55, 36)**

Defendant Darren Chaker filed a motion to strike portions of the FAC pursuant to Federal Rule of Civil Procedure 12(f). (ECF No. 55). The Court has dismissed the FAC as to Darren Chaker. Accordingly, the Court denies as moot Defendant Darren Chaker's motion to strike. (ECF No. 55).

Defendant Nicole Chaker filed an anti-SLAPP motion to strike the third cause of action pursuant to California Code of Civil Procedure section 425.16 and for an award of attorney's fees pursuant to California Code of Civil Procedure section 425.16(c). (ECF No. 36). As a result of the Court's decision to decline supplemental jurisdiction over the state law civil extortion claim, the Court does not reach the merits of this motion. The Court denies as moot Defendant Nicole Chaker's anti-SLAPP motion to strike and for attorney's fees and costs. (ECF No. 36).

## VI. MOTION TO DISMISS OR QUASH SERVICE BY VANIA CHAKER (ECF No. 59)

"Specially Appearing Defendant" Vania Chaker moves the Court pursuant to Rule 12(b)(5) for an order dismissing the complaint or alternatively, for an order quashing defective service. (ECF No. 59). Defendant Vania Chaker contends that Plaintiffs failed to serve her prior to the Court's February 27, 2017 deadline for service. *Id.* at 4. Defendant Vania Chaker contends that Plaintiffs failed to serve her by personal service on February 6, 2017 at 6:02 p.m. as represented to the Court by Plaintiffs. *Id.* at 3. Defendant Vania Chaker contends that she has "strong and convincing" evidence that Plaintiff's purported proof of service is fabricated because Defendant Vania Chaker was not at this location at that time.[4]  *Id.* at 3-5. Defendant Vania Chaker further

---

[4] Defendant Vania Chaker requests judicial notice of decision of the California Court of Appeal, Fourth District, Division 1. (ECF No. 59-3). Plaintiffs object to this request for judicial notice. (ECF No. 64-5). The Court does not rely on this material in reaching its decision and denies the request for judicial notice. *See, e.g., Asvesta v. Petroutsas*, 580 F.3d 1000, 1010 n. 12 (9th Cir. 2009) (denying request for judicial notice where judicial notice would be "unnecessary"). Additionally, Defendant Vania Chaker filed evidentiary objections to declarations filed by Plaintiffs. (ECF Nos. 69-2, 69-3, 69-4). The Court has reviewed and considered these objections. A ruling on

contends that the Summons filed by Plaintiffs incorrectly names Vania Chaker as an individual and as trustee of Vania Chaker Trust. *Id.* at 3.  Defendant Vania Chaker contends she should be dismissed from this action because Plaintiffs have failed to complete service despite two extensions of time and have failed to establish good cause for another extension of time. *Id.* at 7.

Plaintiffs contend that Defendant Vania Chaker was properly served on Feburary 6, 2017.  Plaintiffs contend that the evidence offered in support of Defendant Vania Chaker's motion is not credible and does not establish that she was not home at the time stated in the proof of service filed with the Court.[5]  (ECF No. 64).  Plaintiffs contend that the Court should find service proper based on the substantial compliance doctrine. *Id.* at 5-6.  Plaintiffs request that the Court deny this motion and order Defendant Vania Chaker to respond to the complaint within ten days.  Plaintiffs request that, if the Court grants any portion of the motion, the Court extend time for service, designate counsel for Vania Chaker as agent for service of process, and order that her counsel accept the service by email. *Id.* at 8.

**A. Legal Standard**

"Without a proper basis for jurisdiction, or in the absence of service of process, the district court has no power to render any judgment against the defendant's person or property unless the defendant has consented to jurisdiction or waived the lack of process." *S.E.C. v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007).  "A federal court is without personal jurisdiction over a defendant unless the defendant has been served in accordance with Fed.R.Civ.P. 4." *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986), amended, 807 F.2d 1514 (9th Cir. 1987) (citing *Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982)).  Federal Rule of Civil Procedure 12(b)(5) authorizes a defendant to move to dismiss the complaint for insufficient service of process.  Fed. R. Civ. P.

---

these objections is not necessary to resolve this motion.

[5] Plaintiffs filed evidentiary objections to the declaration filed by Vania Chaker in support of her motion.  (ECF No. 64-4).  The Court has reviewed and considered these objections.  A ruling on these objections is not necessary to resolve this motion.

12(b)(5). Once a party challenges service, the plaintiff bears the burden to show that service was valid under Rule 4. *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). The court has discretion to dismiss an action or quash service if there is insufficiency of process or insufficiency of service. *See SHJ v. Issaquah School District No. 411*, 470 F.3d 1288, 1293 (9th Cir. 2006) (citing *Stevens v. Security Pac. Nat'l Bank*, 538 F.2d 1387, 1389 (9th Cir. 1976)).

Under Federal Rule of Civil Procedure 4(e), a plaintiff may serve an individual within a judicial district of the United States by (1) following state law service requirements, or (2) service may be effected upon an individual by (A) delivering a copy of the summons and complaint to the individual personally, (B) by leaving a copy of each "at the individual's dwelling or usual place of abode" with someone of suitable age and discretion who resides there; or (C) by delivering a copy of each to an "agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e).

California Code of Civil Procedure section 415.20(a) states,

> In lieu of personal delivery of a copy of the summons and complaint to the person to be served...a summons may be served by leaving a copy of the summons and complaint during usual office hours in his or her office, or if no physical address is known, at his or her usual mailing address... with the person who is apparently in charge thereof, and by thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left....

Cal. Code of Civ. P. § 415.20(a).

If a party receives sufficient notice of the complaint, Rule 4 is to be "liberally construed" to uphold service. *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1404 (9th Cir. 1994). "However, 'neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction without substantial compliance with Rule 4.'" *Travelers Cas. & Sur. Co. of Am. v. Brenneke*, 551 F.3d 1132, 1135 (9th Cir. 2009) (citing *Benny*, 799 F.2d at 492 (citation and quotes omitted)).

**B. Discussion**

Plaintiffs filed their original complaint on August 29, 2016 (ECF No. 1) and the

- 12 -

16cv2186-WQH-MDD

Case 3:16-cv-02186-WQH-MDD   Document 127-1   Filed 07/26/17   PageID.997   Page 508 of 519
Case 3:16-cv-02186-WQH-MDD   Document 133-1   Filed 08/28/17   PageID.3526   Page 13 of 19
1196

FAC on December 5, 2016 (ECF No. 25). On December 20, 2016, this Court issued an order granting Plaintiffs a second extension of time in which to complete service upon Defendant Vania Chaker. (ECF No. 38). The Order stated, "Plaintiffs' new deadline to achieve service on Vania Chaker is Monday, February 27, 2017." *Id.*

On February 27, 2017, Plaintiffs filed Proof of Service of Summons in the Complaint. (ECF No. 58). The document states that Defendant Vania Chaker was served by personal service on February 6, 2017 at 6:02 p.m. in San Diego by a registered process server. (ECF No. 58). Defendant Vania Chaker asserts she was not served on February 6, 2017. Defendant Vania Chaker provides receipts from purchases she made in Manhattan Beach, California around the time of service on February 6, 2017 to establish that she was not in San Diego at this time and date.

In a declaration filed in support of Plaintiffs' opposition, the process server states that on February 6, 2017 around 6 p.m., he observed Vania Chaker at the address stated in the proof of service document. He states that he

> jogged up towards the driveway, calling out "Hey you, Vania" or words to that effect. When I made the statement Ms. Chaker was in speaking distance to me, and my voice was sufficiently elevated to provide her notice that I was attempting to contact her. However, upon hearing my shout, Ms. Chaker, who had exited from the garage . . . made a dash for the front floor of the house. . . . Ms. Chaker entered the house and closed the door behind her. . . . I called out service by stating "your served Vania Chaker", and I tossed the papers over the fence, . . . I was not able to actually 'touch' her with the papers as she was behind a closed gate, and I did not intend to go off the public sidewalk onto private property. However I was within 10 yards of her, and as close as I could get in light of the barrier imposed by her fence.

(ECF No. 64-1 at 4).

Based on the statements offered in the declaration by the process server, the Court cannot conclude that Plaintiffs delivered a copy of the summons and complaint to Defendant Vania Chaker personally. *See* Fed. R. Civ. P. 4(e). Plaintiffs further contend that the Court should uphold service as proper under the substantial compliance doctrine. In *Travelers Cas. & Sur. Co. of Am. v. Brenneke*, the Ninth Circuit Court of Appeals held,

Sufficient service may be found where there is a good faith effort to

Case 3:16-cv-02186-WQH-MDD   Document 127-1  Filed 07/06/18   PageID.9907   Page 25 of 30
Case 3:16-cv-02186-WQH-MDD   Document 133-1  Filed 08/28/17   PageID.9527   Page 14 of 19
1196

comply with the requirements of Rule 4(e)(2) which has resulted in placement of the summons and complaint within the defendant's immediate proximity and further compliance with Rule 4(e)(2) is only prevented by the defendant's knowing and intentional actions to evade service.

551 F.3d at 1136. While Plaintiffs assert that Defendant Vania Chaker has attempted to evade service and that the process server left the papers in her proximity, Defendant Vania Chaker provides evidence that she was not present at the address when the alleged service was completed. The Court concludes that Plaintiffs have failed to satisfy their burden to demonstrate that service upon Defendant Vania Chaker was proper under Rule 4. *See id.* at 1135 ("neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction without substantial compliance with Rule 4."). The Court grants Defendant Vania Chaker's motion to quash service of process. *See Issaquah School District No. 411*, 470 F.3d at 1293

However, the Court has determined that Plaintiffs did not adequately plead a substantive violation of 18 U.S.C § 1962(c). Accordingly, Plaintiffs' claim for a conspiracy to violate RICO pursuant to 18 U.S.C. § 1962(d) necessarily fails. *See supra* Part IV.B; *Howard*, 208 F.3d at 751. Conspiracy to violate RICO pursuant to 18 U.S.C. § 1962(d) is the only cause of action alleged against Defendant Vania Chaker. The Court dismisses the FAC without prejudice as to Defendant Vania Chaker. (ECF No. 25).

## VII. MOTION FOR SANCTIONS BY DARREN CHAKER (ECF No. 66)

Defendant Darren Chaker filed a motion for sanctions against Plaintiffs pursuant to Rule 11 of the Federal Rules of Civil Procedure, or alternatively, the Court's inherent power. (ECF No. 66). Defendant Darren Chaker contends that sanctions are warranted because (1) the allegations in the FAC are "factually baseless from an objective perspective, and were included in the FAC for an improper purpose"; (2) Plaintiffs' RICO claims are frivolous; and (3) Plaintiffs' RICO claims were brought "for the improper purpose of naming Darren's mother . . . and sister . . . as Defendants . . . solely to harass Darren and his family." *Id.* at 2.

Case 3:16-cv-02186-WQH-MDD   Document 127-1   Filed 03/26/18   PageID.9927   Page 24 of 38
Case 3:16-cv-02186-WQH-MDD   Document 133-1   Filed 03/28/17   PageID.9528   Page 15 of 15
1196

Plaintiffs contend that the motion is without merit and that the allegations of the FAC are proper, non-frivolous, and sufficiently supported by facts.  (ECF No. 75).

Rule 11 of the Federal Rules of Civil Procedure provides in part,

> b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery;...

Fed. R. Civ. P. 11(b)(3).  When a "complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong analysis to determine (1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it."  *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (quotation omitted).  "As shorthand for this test, we use the word 'frivolous' to denote a filing that is both baseless and made without a reasonable and competent inquiry."  *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) (quotation omitted).

After reviewing the motion and the submissions of the parties, the Court finds that the record in this case does not support the imposition of sanctions at this stage in the proceedings.  The motion for sanctions is denied.  (ECF No. 66).

## VIII. CONCLUSION

IT IS HEREBY ORDERED that Defendant Darren Chaker's motion to dismiss the First Amended Complaint is granted. (ECF No. 56). The First Amended Complaint (ECF No. 25) is dismissed without prejudice as to Defendant Darren Chaker. Accordingly, Defendant Darren Chaker's motion to strike portions of the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(f) is denied as

- 15 -

16cv2186-WQH-MDD

1   moot.  (ECF No. 55).

2       IT IS HEREBY ORDERED that Defendant Darren Chaker's motion for sanctions

3   is denied.  (ECF No. 66)

4       IT IS HEREBY ORDERED that Defendant Nicole Chaker's motion to dismiss

5   the First Amended Complaint is granted.  (ECF No. 35).  The First Amended Complaint

6   (ECF No. 25) is dismissed without prejudice as to Defendant Nicole Chaker.  Defendant

7   Nicole Chaker's anti-SLAPP motion to strike and for attorneys' fees and costs is denied

8   as moot.  (ECF No. 36).

9       IT IS HEREBY ORDERED that Defendant Vania Chaker's motion to quash the

10  service of process is granted.  (ECF No. 59). The Court quashes service upon Defendant

11  Vania Chaker and grants Plaintiffs sixty (60) days from the date any amended

12  complaint is filed upon which to perfect service upon Vania Chaker in accordance with

13  the requirements of Federal Rule of Civil Procedure 4.

14      IT IS FURTHER ORDERED that the First Amended Complaint (ECF No. 25)

15  is dismissed without prejudice as to Defendant Vania Chaker.  Plaintiffs shall file any

16  motion for leave to file an amended complaint pursuant to Local Rule 7.1 and within

17  thirty (30) days of the date this Order is issued.

18  DATED:  August 28, 2017

19                  _William Q. Hayes_

20                  **WILLIAM Q. HAYES**
                United States District Judge

21

22

23

24

25

26

27

28

# Exhibit

# B

Case 3:16-cv-02186-WQH-MDD Document 107-1 Filed 03/06/22 PageID 20029 Page 25 of 30
Case 3:16-cv-02186-WQH-MDD Document 86 Filed 10/10/17 PageID.5743 Page 1 of 1
1196

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| SCOTT A. MCMILLAN, an individual; THE MCMILLAN LAW FIRM, APC, a California professional corporation, | CASE NO. 16cv2186-WQH-MDD |
|---|---|
| Plaintiffs, | ORDER |
| v. | |
| DARREN D. CHAKER, an individual, and as trustee of PLATINUM HOLDINGS GROUP TRUST doing business as Counter Forensics, *et al.*, | |
| Defendants. | |

HAYES, Judge:

On August 28, 2017, the Court granted a motion to dismiss and dismissed the First Amended Complaint without prejudice. The Order stated, "Plaintiffs shall file any motion for leave to file an amended complaint pursuant to Local Rule 7.1 and within (30) days of the date this Order is issued." (ECF No. 83). The docket reflects that no motion for leave to file an amended complaint was filed within this period. The Clerk of Court is directed to close this case.

DATED: October 10, 2017

*William Q. Hayes*

**WILLIAM Q. HAYES**
United States District Judge

# Exhibit

# C

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT A. MCMILLAN, an individual; THE MCMILLAN LAW FIRM, APC, a California professional corporation, | Case No.: 16cv2186-WQH-MDD |
| | **ORDER** |
| Plaintiffs, | |
| v. | |
| DARREN D. CHAKER, an individual, and as trustee of PLATINUM HOLDINGS GROUP TRUST doing business as COUNTER FORENSICS; NICOLE CHAKER, an individual, and as trustee of Nicole Chaker Trust One; VANIA CHAKER, an individual and as beneficiary of The Island Revocable Trust under Declaration of Trust dated June 2, 2015; MARCUS MACK, as trustee of The Island Revocable Trust under Declaration of Trust dated June 2, 2015; NICOLE CHAKER, an individual, and as trustee of The Nicole Chaker Revocable Living Trust, U/A dated August 18, 2010 | |
| Defendants. | |

HAYES, Judge:

1    The matter before the Court is the motion for extension of time to file cross-appeal
2 filed by Defendant Nicole Chaker.  (ECF No. 90).

3    **I.    BACKGROUND**

4    On December 5, 2016, Plaintiffs Scott A. McMillan and The McMillan Law Firm,
5 APC filed the First Amended Complaint ("FAC") against Defendant Darren D. Chaker, an
6 individual and as trustee of Platinum Holdings Group Trust, dba Counter Forensics;
7 Defendant Nicole Chaker, an individual and as trustee of The Nicole Chaker Revocable
8 Living Trust, U/A dated August 18, 2010; Defendant Vania Chaker, an individual and as
9 beneficiary of The Island Revocable Trust under Declaration of Trust dated June 2, 2015;
10 and Defendant Marcus Mack, as trustee of the Island Revocable Trust under Declaration
11 of Trust dated June 2, 2015.  (ECF No. 25).  Plaintiffs brought a cause of action for a
12 violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.
13 § 1962(c) against Defendant Darren Chaker.  *Id.*  ¶¶ 84–114. Plaintiffs brought a second
14 cause of action for conspiracy to violate RICO, 18 U.S.C. § 1962(d) against all Defendants.
15 *Id.* ¶¶ 115–119.  Plaintiffs brought a third cause of action for civil extortion under
16 California law against Defendants Darren Chaker and Nicole Chaker.  *Id.* ¶¶ 120–133.

17    On August 28, 2017, the Court dismissed the First Amended Complaint without
18 prejudice and granted Plaintiffs thirty days to file any motion for leave to file an amended
19 complaint.  (ECF No. 83).  The docket reflects that Plaintiffs did not file any subsequent
20 motion for leave to file an amended complaint.  Pursuant to its August 28, 2017 Order, the
21 Court issued an order directing the Clerk of Court to close the case on October 10, 2017.
22 (ECF No. 86).

23    On November 5, 2017, Plaintiffs filed a notice of appeal to the United States Court
24 of Appeals for the Ninth Circuit.  (ECF No. 87).

25    On December 12, 2017, Defendant Nicole Chaker filed a motion for extension of
26 time to file cross-appeal.  (ECF Nos. 90, 91).  On December 29, 2017, Plaintiffs filed a
27 response in opposition.  (ECF No. 92)  On January 8, 2018, Defendant Nicole Chaker filed
28 a reply.  (ECF No. 93).

Case 3:16-cv-02186-WQH-MDD Document 127-1 Filed 05/08/18 PageID.2075 Page 25 of 30
Case 3:16-cv-02186-WQH-MDD Document 99-1 Filed 03/08/18 PageID.3983 Page 3 of 5
1196

## II.    CONTENTIONS OF THE PARTIES

Defendant moves the Court for an order extending the time to file a notice of cross-appeal by fourteen days pursuant to Federal Rule of Appellate Procedure 4(a)(5). Defendant contends that the late filing of the notice of cross-appeal is due to the excusable neglect of counsel for two reasons: (1) counsel for Defendant did not receive notice of the November 5, 2017 notice of appeal until November 9, 2017 after receiving a letter from the Ninth Circuit Court of Appeals and checking the Court website, and; (2) there was a delay in receiving confirmation from Defendant's insurance carrier that Defendant's counsel was also retained for the appeal.  Defendant contends that there is no prejudice to Plaintiff, the length of the delay is minimal and will not impact judicial proceedings, and that counsel has acted in good faith.  (ECF No. 90-1).

Plaintiff contends that the docket reflects that Defendant's counsel did receive notice of the appeal through the Court's CM/ECF system on November 5, 2017.  Plaintiff contends that even if Defendant's counsel did not receive notice until November 9, 2017, Defendant's counsel had sufficient time to file the cross-appeal.  Plaintiff contends that "neither good cause nor excusable neglect save the untimeliness of the motion."  (ECF No. 92 at 5).  Plaintiff contends that the delay in receiving confirmation from the insurance carrier is "irrelevant and similarly unpersuasive."  *Id.* at 8.

## III.    DISCUSSION

Pursuant to Rule 4(a)(3) of the Federal Rules of Appellate Procedure, "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."  Fed. R. App. P. 4(a)(3).  Federal Rule of Appellate Procedure 4 provides,

> The district court may extend the time to file a notice of appeal if:  (i) a party so moves no later than 30 days after the time prescribed by this Rule 4(a) expires; and (ii) regardless of whether its motion is filed before or during the 30 days after the time prescribed by this Rule 4(a) expires, that party shows excusable neglect or good cause.

16cv2186-WQH-MDD

Case 3:16-cv-02186-WQH-MDD   Document 127-1   Filed 05/06/22   PageID.2073   Page 25 of 30
Case 3:16-cv-02186-WQH-MDD   Document 99-1   Filed 09/08/18   PageID.5931   Page 5 of 30
1196

Fed. R. App. P. 4(a)(5)(A); *see also State of Or. v. Champion Int'l Corp.*, 680 F.2d 1300, 1301 (9th Cir. 1982). An extension under Rule 4(a)(5) may not "exceed 30 days after the prescribed time or 14 days after the date when the order granting the motion is entered, whichever is later." Fed. R. App. P. 4(a)(5)(C). Courts rely on a four-part balancing test to determine whether there has been excusable neglect warranting an extension of time to file a notice of appeal. *Pincay v. Andrews*, 289 F.3d 853, 855 (9th Cir. 2004) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993)). These factors include: "(1) the danger of prejudice to the non-moving party, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the moving party's conduct was in good faith." *Id.* (citing *Pioneer*, 507 U.S. at 395). "[T]he decision whether to grant or deny an extension of time to file a notice of appeal should be entrusted to the discretion of the district court . . . ." *Id.* at 859.

Plaintiffs filed a notice of appeal in this action on November 5, 2017. (ECF No. 87). Defendant's time to file a notice of appeal under Rule 4(a)(3) therefore expired on November 19, 2017. *See* Fed. R. App. P. 4(a)(3). The docket reflects that Defendant did not file any notice of appeal. Defendant filed a motion for an extension of the time to appeal on December 12, 2017. (ECF No. 90). This motion was filed within thirty days of November 19, 2017 and is therefore timely under Rule 4(a)(5)(A)(i). Accordingly, the Court has the discretion to grant Defendant's request upon a finding excusable neglect and good cause. *See* Fed. R. App. P. 4(a)(5)(A)(ii).

In this case, Defendant contends that an extension of time to file a cross-appeal is justified by excusable neglect. Defendant provides a declaration by Rebecca J. Smith, Defendant's counsel, stating that counsel for Defendant did not receive any notice from this Court on November 5, 2017 when the notice of appeal was filed. Smith states that counsel was not notified of the appeal until November 9, 2017 upon receipt of a letter from the Ninth Circuit Court of Appeals. Smith states that this notice inadvertently was not

4

16cv2186-WQH-MDD

properly processed by counsel's firm and the relevant dates were not properly calendared. (ECF No. 91 at 2–3). Smith further states that her office had been retained to represent Defendant in the underlying matter through her insurance carrier and that there was a delay in receiving notice from the insurance carrier that they had also been retained to represent Defendant in the appeal. *Id.* at 3–4. The Court concludes that Defendant's conduct was in good faith and that the actions of counsel constitute excusable neglect. Further, the Court concludes that there is little danger of prejudice to Plaintiff and that any delay in this case will have a minimal impact on judicial proceedings. The Court concludes that Defendant's failure to timely file the notice of appeal in this case constitutes excusable neglect and warrants an extension of time pursuant to Rule 4(a)(5).

IT IS HEREBY ORDERED that Defendant Nicole Chaker's motion for an extension of time to file a notice of cross-appeal is GRANTED. (ECF No. 90). Defendant is granted an extension of fourteen (14) days from the date of this Order to file a notice of appeal pursuant to Federal Rule of Appellate Procedure 4(a)(5).

Dated: March 8, 2018

Hon. William Q. Hayes
United States District Court

5

512

16cv2186-WQH-MDD

**SULLIVAN, KRIEGER, TRUONG,**
**SPAGNOLA & KLAUSNER, LLP**
Eliot F. Krieger, State Bar No. 159647
*EKrieger@Sullivankrieger.com*
Charles T. Spagnola, P.C., State Bar No. 144983
*CSpagnola@Sullivankrieger.com*
444 West Ocean Boulevard, Suite 1700
Long Beach, CA 90802
Telephone: (562) 597-7070

Attorneys for Defendant DARREN D. CHAKER,
individually, and as trustee of PLATINUM HOLDINGS
GROUP TRUST

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT A. MCMILLAN, an individual, THE MCMILLAN LAW FIRM, APC, a California professional corporation, | Case No. 3:16-CV-02186-WQH-MD |
| | Judge: Hon. William Q. Hayes |
| | Courtroom: 14B |
| Plaintiffs, | Magistrate: Hon. Mitchell D. Dembin |
| v. | Courtroom: 11th Floor |
| DARREN D. CHAKER an individual, and as trustee of PLATINUM HOLDINGS GROUP TRUST, dba COUNTER FORENSICS; NICOLE CHAKER, an individual, and as trustee of NICOLE CHAKER TRUST ONE, VANIA CHAKER, an individual and as trustee of VANIA CHAKER TRUST ONE, | **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT DARREN D. CHAKER'S MOTION TO SEAL OR FOR PROTECTIVE ORDER [Fed. R. Civ. P. 5.2]** |
| | Hearing Date: June 26, 2017 |
| | Courtroom: 14B |
| Defendants. | Complaint Filed: August 29, 2016 |
| | **[PER CHAMBERS ORDER, NO ORAL ARGUMENT UNLESS ORDERED BY COURT]** |

Defendant, DARREN D. CHAKER, individually and as trustee of PLATINUM

HOLDINGS GROUP TRUST, dba COUNTER FORENSICS ("Darren"), submits this

Reply Memorandum of Points and Authorities in support of his Motion to Seal pursuant

to Fed. R. Civ. P. 5.2(d), or, alternatively, for a Protective Order pursuant to Fed. R. Civ.

P. 5.2(e).

# I.   **INTRODUCTION**

The Opposition of Plaintiffs SCOTT A. MCMILLAN, ("McMillan") and THE MCMILLAN LAW FIRM, APC's (collectively, "Plaintiffs") concedes the improper inclusion of Darren's date of birth and other private information in the previously filed Exhibit FF (to the original and First Amended Complaint) and Exhibit C (to Plaintiffs' Opposition to Darren's Motion for Sanctions). (Dkt. 1-30; Dkt. 21-29, p. 3-10; Dkt. 75-1, p. 122.)  Outrageously, Plaintiffs have also exacerbated the problem by filing *additional* copies of these *same* exhibits – still only partially redacted – with their Opposition papers.[1]  Indeed, because Plaintiffs have done so despite *knowing* that the impropriety of including such information in court filings is the issue in this motion, this Court should exercise its inherent authority and issue sanctions against Plaintiffs for so blatantly thumbing their collective noses at the judicial process.

# II.   **LEGAL ANALYSIS**

## A.   **DARREN HAS A PROTECTED PRIVACY INTEREST IN HIS DRIVER'S LICENSE NUMBERS**

Plaintiffs' Opposition suggests that, simply because driver's license numbers are not specifically set forth in F.R. Civ. P. 5.2 amongst the list of mandatory redactions, they may, with impunity, include (and continue to include) such personal identification information in court filings unless or until the Court orders them to cease.  Plaintiffs' suggestion is incorrect.

The list of mandatory redactions set forth in Rule 5.2 was never intended to be an exclusive one:

---

[1] In addition, Plaintiffs have filed an additional four (4) copies of Darren's Arizona driver's license as part of their Exhibit 7 to their Opposition and a fifth, greatly enlarged copy of Darren's Arizona driver's license as part of Exhibit 8 to their Opposition.

DEFENDANT DARREN CHAKER'S REPLY MEMORANDUM
IN SUPPORT OF HIS MOTION TO SEAL OR FOR PROTECTIVE ORDER

It may also be necessary to protect information not covered by the redaction requirement – such as ***driver's license numbers*** and alien registration numbers – in a particular case.  In such cases, protection may be sought under subdivision (d) or (e)… (Notes of Advisory Committee on 2007 amendments to Fed Rules Civ Proc R 5.2 (emphasis added).)

Indeed, Rule 5.2 has provided the basis for district courts to seal and/or redact driver's license numbers. (See *Abdullah-El v. King Cty. Mun. Court*, No. 14-cv-1437RSM, 2015 U.S. Dist. LEXIS 10585, at *9 (W.D. Wash. Jan. 28, 2015) (sealing exhibits that included "sensitive personal identifying information" such as driver's license numbers); *Macias v. Cleaver*, No. 1:13-cv-01819-BAM, 2016 U.S. Dist. LEXIS 85529, at *21 (E.D. Cal. June 30, 2016) requiring redaction of, amongst other things, driver's license information after "[w]eighing the public interest involved against the individual privacy concerns").)  Other district courts have sealed and/or redacted driver's license information without specifically relying upon Rule 5.2. (See *Myles v. Cnty. of San Diego*, No. 15-cv-1985-BEN (BLM), 2017 U.S. Dist. LEXIS 8363, at *7 (S.D. Cal. Jan. 19, 2017) (ordering driver's license of police officers and third parties after "[w]eighing the public interest involved against the individual privacy concerns" as well as "safety considerations"); *Casey v. Unitek Glob. Servs*., No. 14-2671, 2015 U.S. Dist. LEXIS 15715, at *26 (E.D. Pa. Feb. 9, 2015) (ordering that exhibits containing, amongst other things, driver's license number remain under seal and that redacted exhibits be filed thereafter); but see *Acedo v. Pinedo*, No. 14cv903-JAH-MDD, 2016 U.S. Dist. LEXIS 141420, at *4 (S.D. Cal. Oct. 12, 2016) (noting that Rule 5.2 does not require redaction of driver's license number).)  Moreover, federal courts should properly consider the "interests of California privacy rights" such as driver's license information. (*Centeno v. City of Fresno*, No. 1:16-cv-00653-DAD-SAB, 2016 U.S. Dist. LEXIS 180013, at *42 (E.D. Cal. Dec. 29, 2016).)  Finally, some district courts require redaction of driver's license information as a matter of course. (See W.D. Wash. Local

Rule 5.2(a) (requiring redaction of dates of birth to the year, the names of minor children to the initials, social security number and taxpayer identification numbers, financial accounting information to the last four digits, and passport and driver license numbers).)

In sum, even if Rule 5.2 does not *require* sealing or redaction of driver's license information, as set forth above, this Court can and *should* order that such information be sealed and/or redacted. As the Opposition and the exhibits thereto have demonstrated better than any argument that Darren could have made, Plaintiffs will continue to include such sensitive personal information in court filings unless or until this Court puts a stop to such abuse.

**B.** **EXHIBIT FF TO THE COMPLAINT AND FIRST AMENDED COMPLAINT SHOULD BE STRICKEN OR ALTERNATIVELY, SEALED AND/OR FULLY REDACTED**

Exhibit FF should be stricken, or alternatively sealed and/or fully redacted. As Plaintiffs concede, although the *warrant* set forth therein may be subject to an exception as a record in a prior state court proceeding under F.R.Civ.P. 5.2(b)(3)-(4), the remaining portion of that exhibit is not. Plaintiffs do not seriously contest the warrant itself, as it states on its face, is only one page long.[2] (Dkt. 1-30; Dkt. 21-29.) The rest of Exhibit FF should have been redacted before filing to remove personal identification information such as a Social Security number, a date of birth, and a home address.[3]

---

[2] Plaintiffs concede that Exhibit FF is comprised of more than just the warrant itself: "It includes a bench warrant, instructions for service to the Sheriff, and identification material for Defendant's various identities." (Opposition, Dkt. 80, p. 7.)

[3] See Electronic Case Filing Administrative Policies and Procedures Manual, United States District Court for the Southern District of California, Section 1 h. Privacy: "Unless otherwise ordered by the court, parties must refrain from including, or must partially redact where inclusion is necessary, the following personal identifiers from all pleadings and documents filed with the court, including exhibits thereto: 1. Social Security numbers…. 2. Names of minor children…. 3. Dates of birth…. 4. Financial account numbers…. 5. Home address…."

1  Including Darren's personal identification information under the guise of the warrant is
2  nothing more than an improper attempt to bootstrap such information into the Court file.
3       Plaintiffs concede that including Darren's date of birth was improper but
4  "overlooked." (Opposition, Dkt. 80, pp. 6-7.)  By comparison, Plaintiffs cannot
5  legitimately claim to have "overlooked' the inclusion of Darren's various alleged
6  addresses and Social Security number, especially not now that they have re-published
7  Exhibit FF without redacting such personal information despite knowing full well that
8  this Court is considering the impropriety of the Social Security number and addresses.
9       As for including Darren's Social Security number for a third time in a document
10  filed in this Court, Plaintiffs claim to be baffled by the claim that Exhibit FF contains a
11  Social Security number. (Opposition, Dkt. 80, p. 4.)  Plaintiffs then misrepresent the
12  stated basis of such claim, arguing that Darren's alleged *Arizona* driver's license that
13  they improperly included as part of Exhibit FF contains no such number. (*Id*.)  In fact, as
14  plainly set forth in the Motion, it was Darren's alleged *Nevada* driver's license that
15  includes the Social Security number. (Motion, Dkt. 78-1, 5:18-19 (referencing page 10,
16  not page 11 of Exhibit FF to the FAC.)  As for the 9-digit number (set forth in a 3-2-4
17  format) on the alleged Nevada license, the most Plaintiffs say is that it does not match
18  what Plaintiffs believe is Darren's Social Security number and that they would be
19  "surprised" if it was. (Dkt. 80-1, pp. 4-5, ¶¶ 11-12.)  This is hardly a sufficient basis to
20  justify the repeated filing of such Social Security number.  Finally, Plaintiffs claim that
21  this is a no-harm, no-foul situation because the font was so small on the original Exhibit
22  FF as to make the Social Security number illegible. (Dkt. 80, p. 4.)  Even if that claim
23  was true (it is not), Plaintiffs have neutered it by including another copy of Darren's
24  alleged Nevada driver's license that has been enlarged several times over so that the
25  Social Security number is very much legible. (Dkt. 80-9, p. 5.)
26       As for the addresses listed in Exhibit FF, Plaintiffs attempt to raise factual issues
27  regarding whether such addresses are residential or commercial.  Such factual disputes –
28

1  directed at the propriety of what personal identification information should have been

2  redacted from the *pleadings* – cannot be resolved at this stage of the litigation.

3      Finally, while defendants claim that too much time has gone by since the original

4  filing, "any delay by [the party] in bringing the violation to the [other party's] attention

5  certainly is not the equivalent of a waiver." *Weakley v. Redline Recovery Servs., LLC*,

6  2011 U.S. Dist. LEXIS 423750 at *5.

7      **C.   EXHIBIT C TO THE OPPOSITION TO THE MOTION FOR**

8          **SANCTIONS SHOULD BE STRICKEN OR ALTERNATIVELY,**

9          **SEALED AND/OR FULLY REDACTED**

10      For the same reasons applicable to the "warrant," this Court should also strike or

11  alternatively, seal and/or redact Exhibit C. Notably, Darren's date of birth, addresses,

12  and the existence of a medical condition, as well as his sister's driver's license number

13  should never have been included in documents filed with the Court. Although Plaintiffs

14  suggest that Darren does not have standing to object on his sister's behalf, this Court can

15  (and should) act to protect the privacy rights of third parties. (See *Myles*, *supra*, 2017

16  U.S. Dist. LEXIS 8363, at *7; *Keith H. v. Long Beach Unified Sch. Dist.*, 228 F.R.D.

17  652, 657 (C.D. Cal. 2005) (recognizing federal court protection for constitutionally-

18  based right of privacy of third parties).)

19      Exhibit C also contains Social Security records (such as a letter from the Social

20  Security Administration) which is beyond the mere number. In *Puckett v. Dyer,* U.S.

21  Dist. LEXIS 98560 (2007), the Eastern District of California found that Social Security

22  records "may contain private, confidential information," and ordered such records to be

23  "subject to a PROTECTIVE ORDER prohibiting disclosure to anyone other than

24  Defendants; counsel and experts." Id. at *4.

25

26

27

28

1    EXHIBITS 1, 2, 4, 5, 6, 7, AND 8 TO THE OPPOSITION TO THE INSTANT
2    MOTION SHOULD BE STRICKEN OR ALTERNATIVELY, SEALED
3    AND/OR FULLY REDACTED

4        If there was any question as to whether Plaintiffs' disclosure of Darren's personal
5    identification information was intentional, the answer was made abundantly clear when
6    Plaintiffs filed their Opposition to the instant Motion.  Despite knowing full well that
7    Exhibit FF and Exhibit C had exposed Darren's personal information and were the
8    express subjects of this Motion, Plaintiffs attached and filed with this Court more copies
9    of those very exhibits while continuing to leave Darren's Social Security number,
10   addresses, and driver's license information exposed to potential identity thieves. (See
11   Exhibits 1-2 to Plaintiffs' Opposition, Dkt. 80-2 and 80-3). Moreover, Plaintiffs further
12   compounded the problem by including such information in Exhibits 4, 5, 6, 7, and 8 to
13   their Opposition hereto (See Dkt. 80-5 through 80-9).  For the same reasons applicable
14   to the previously filed Exhibit FF and Exhibit C, this Court should also strike or
15   alternatively, seal and/or redact Exhibits 1, 2, 4, 5, 6, 7 and 8 attached to Plaintiffs'
16   Opposition to the instant Motion.

17   **D.**   **PLAINTIFFS SHOULD BE SANCTIONED FOR KNOWINGLY RE-**
18        **FILING DARREN'S SENSITIVE PERSONAL IDENTIFICATION**
19        **INFORMATION IN BAD FAITH**

20       Plaintiffs' re-filing of Darren's personal identification information in the face of
21   this pending Motion demonstrates a special kind of vindictiveness that warrants
22   sanctions.  Although Darren did not request sanctions in this Motion in an attempt to put
23   this matter to rest, Plaintiffs' repeated, knowing exposure of his personal identification
24   information in their Opposition was wholly unjustified.  As the United States Supreme
25   Court has explained, "It has long been understood that 'certain implied powers must
26   necessarily result to our Courts of justice from the nature of their institution,' powers
27   "which cannot be dispensed with in a Court, because they are necessary to the exercise
28   of all others." (*Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S. Ct. 2123, 2132

(1991).) "A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process. (*Chambers*, 501 U.S. at 44-45; *A-Z Int'l v. Phillips*, 323 F.3d 1141, 1144 n.2 (9th Cir. 2003) (district court has an inherent power to sanction contempt).) Specifically, "a court may assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" (*Chambers*, 501 U.S. at 45-46.) <u>See also</u>, *Weakley v. Redline Recovery Servs., LLC*, 2011 U.S. Dist. LEXIS 423750 (finding that the Court has the inherent power to issue sanctions where the court finds counsels' conduct is tantamount to bad faith in publishing a party opponent's social security number). Now that it is evident that Plaintiffs intentionally and in bad faith included Darren's personal identification information in a fourth pleading (following the original Complaint, FAC, and Opposition to the Motion for Sanctions), if left undeterred, Plaintiffs will continue to abuse the judicial process by filing such personal identification information yet again until this Court orders them to stop. Sanctions are thus appropriately entered against Plaintiffs.

## III.  **CONCLUSION**

As set forth in the moving papers and herein, Exhibit FF to the Plaintiff's original and FAC and Exhibit C to the Opposition to Darren's Motion for Sanctions, as well as their re-filed counterparts attached as Exhibit 1 and Exhibit 2 to the Opposition herein (plus Exhibits 4-8 thereto), contain voluminous private, personal, and sensitive information which is protected by numerous federal and state statutes, as well as the California constitution. That information is entirely irrelevant to Plaintiffs' claims, and was included for the sole purpose of harassing Darren. As such, the Court should find that Exhibit FF to Plaintiffs' original and FAC, as well as Exhibit C to the Opposition to Darren's Motion for Sanctions, should be stricken from the record as immaterial and included for an improper purpose under Fed. R. Civ. P. 12(f).

However, at minimum, the Court should either seal these exhibits under Fed. R. Civ. P. 5.2(d) or its inherent authority, or enter a protective order making Darren's

DEFENDANT DARREN CHAKER'S REPLY MEMORANDUM
IN SUPPORT OF HIS MOTION TO SEAL OR FOR PROTECTIVE ORDER

private information unavailable for public inspection or review pursuant to Fed. R. Civ. P. 5.2(e).

In addition, Darren requests that this Court order that all counsel be restrained from publicly disseminating any portion of any underseal document from this case without further order of this Court and that all counsel should file all documents in compliance with Rule 5.2 and "[f]ailure to do so in the future may result in the imposition of sanctions." (*Cooke v. Borough of Keansburg* (D.N.J. Feb. 26, 2016, Civil Action No. 14-6798 (MAS) (LHG)) 2016 U.S.Dist.LEXIS 24009, at *9.). Finally, in light of Plaintiffs' bad faith conduct in repeatedly filing such personal identification information, this Court should also impose sanctions against Plaintiffs pursuant to its inherent authority to do so.

DATED: June 19, 2017                    Respectfully Submitted,

**SULLIVAN, KRIEGER, TRUONG,
SPAGNOLA & KLAUSNER, LLP**

By: _____/s/Eliot F. Krieger_____
Eliot F. Krieger, SBN 159647
*ekrieger@sullivankrieger.com*
Charles T. Spagnola, P.C., SBN 144983
*cspagnola@sullivankrieger.com*

Attorneys for Defendant DARREN D. CHAKER individually, and as trustee of PLATINUM HOLDINGS GROUP TRUST, dba COUNTER FORENSICS

## **CERTIFICATE OF SERVICE**

I certify that on the 19th day of June 2017, I filed the foregoing document with the Clerk of the Court for the United States District Court, Southern District of California by using the Court's CM/ECF system, which will send notifications of such filing to all counsel of record.

/s/ Eliot F. Krieger
Eliot F. Krieger

DEFENDANT DARREN CHAKER'S REPLY MEMORANDUM
IN SUPPORT OF HIS MOTION TO SEAL OR FOR PROTECTIVE ORDER

EXHIBIT CC

# DARREN CHAKER
## Expungement & Record Sealing

HOME

SEARCH

**RECENT POSTS**

- Bloggers Rights and Jail
- Bill Cosby Arrest by Darren Chaker
- Seal Record in Federal Court
- Arizona Juvenile Record Sealing
- California Juvenile Record Sealing
- Arizona Record Sealing
- Criminal and Civil Records Are Public Records
- When Good Faith is Not Enough for Probable Cause
- California Expungement Law
- Florida Criminal Record Sealing
- Florida Civil Record Sealing
- California CANRA
- California Background Checks
- Seal Texas Ticket
- Non-Custodial Arrest Can Be Expunged

**ARCHIVES**

- January 2016
- August 2015
- November 2014
- September 2014
- August 2013
- April 2013
- March 2013
- December 2012
- November 2012

**CATEGORIES**

## Bloggers Rights and Jail

**23 01 2016 10:05**

A federal appeal concerning **Darren Chaker**, the First Amendment and bloggers rights, is now pending where **Cato Institute, ACLU of San Diego, Electronic Frontier Foundation, First Amendment Coalition,** and **Brechner First Amendment Project** at University of Florida filed a joint amicus brief in his support wanting the court to reverse a decision from a San Diego federal judge who found Mr. Chaker violated probation by posting a blog about a police officer. A compelling **opening brief** was filed by **Federal Defenders of San Diego** Inc. The amicus brief was authored by the Washington D.C. office of **Wilmer Cutler Pickering Hale and Dorr,** who is consistently ranked as an international top **20 law firm.**



RESTRICTED SPEECH IS FREE NOT SPEECH

Mr. Chaker was on probation for a white collar crime. The record shows Mr. Chaker's bankruptcy attorney fraudulently filed a bankruptcy petition without Mr. Chaker's knowledge. The report states in part, "In my opinion Chaker's attorney did not exercise a reasonable standard of care in filing a Second Bankruptcy Case without Chaker's consent and signature. Indeed, in my opinion such conduct is fraudulent." See **expert report,** page 7. Despite the conduct of his bankruptcy attorney, Mr. Chaker was found guilty of only a single charge at trial. That case is also on appeal.

While on probation, it was alleged Mr. Chaker made a false statement about a Nevada Attorney General investigator ("police officer"). "Specifically, Mr. Chaker wrote...an investigator with the Nevada Office of the Attorney General, had previously been "forced out" of the Las Vegas Police Department." says First Amendment law professor Clay Calvert at the University of Florida's Marion B. Brechner First Amendment Project.

During the probation revocation hearing, "At no point did the probation officer or government contend that the blogposts constituted stalking under the condition, nor did the court make any findings as to stalking. Instead, the focus was on whether the statement was harassment and defamation." See **Opening Brief,** page 12.

The court record shows the police officer made multiple complaints to various law enforcement agencies, but none arrested Mr. Chaker. The court "had reviewed a police report prepared by the Las Vegas police department after [the police officer] reported Mr. Chaker's blogposts, and noted that the police ultimately did not forward any charges for prosecution concerning the [police officer's] allegations." **Opening Brief,** page 7. It was only when the probation officer was contacted is when Mr. Chaker was put in jail.

As the **ACLU of San Diego** states, "even if the defamation condition is valid, the court did not require the government to prove that Mr. Chaker made a false statement of fact, subjectively believed his statement to be false, or acted with reckless disregard of its truth." At the hearing, Mr. Chaker admitted he posted the blog after doing online research. It was never proven what Mr. Chaker posted was "a false statement of fact." Although the police officer was flown to San Diego and in court, the government did not call her as a witness. The court found Mr. Chaker violated probation, and an appeal ensued.

**Cato Institute** stated, "Public officials are appropriate objects of criticism and the protection of their feelings is not the appropriate province of the courts. Chaker's words don't even rise to the standard that must be met to constitute defamation of a public figure. Chaker didn't act with "actual malice" or reckless disregard for the truth when he published his blogpost, which is the mental requirement necessary to sustain such a charge." The **Electronic Frontier Foundation** said the government's position would,

Exh CC
1 of 10

"eviscerate a half-century of First Amendment protection of political speech criticizing government officials."

Probation conditions are typically tailored to protect the public from future crime not online comments one takes offense at or believes are defamatory. It is well established speech "may not be suppressed simply because it is offensive." **Dworkin v. Hustler Magazine**, Inc., 867 F.2d 1188, 1199 (9th Cir. 1989). Mr. Chaker was never sued for defamation by the police officer.

Mr. Chaker is only one of 4,708,100 people are on probation or parole per a Bureau of Justice Statistics report. People under supervised release are not second class citizens where the First Amendment may be marginalized or discarded unless the speech are in an unprotected class – like true threats or inciting criminal conduct. For government to regulate speech, it must be "integral to criminal conduct." United States v. Meredith, 685 F.3d 814, 819, 2012 U.S. App. LEXIS 13012, 7, 2012-2 U.S. Tax Cas. (CCH) P50,421, 110 A.F.T.R.2d (RIA) 5157 (9th Cir. Cal. 2012) [case cited at page 28 of opening brief] In this case, two words "forced out" out of a 421 word blog were found to be false and Mr. Chaker's probation was ultimately revoked because of it.

The final brief in this matter will be filed January 22, 2016.

blogger-jail, bloggers-rights, brechner-first-amendment, Darren-Chaker, eff-blog, eff-blogger, mcmillan-law-firm-la-mesa, ninth-circuit-first-amendment, san-diego-first-amendment, scott-mcmillan-la-mesa, viewpoint-discrimination | Tags: bloggers-rights, brechner-first-amendment, california-probation, cato-institute, darren-chaker, darren-chaker-aclu, eff-blog, eff-blogger, first-amendment-appeal, nevada-attorney-general, viewpoint-discrimination

## Bill Cosby Arrest by Darren Chaker

**15 01 2016 21:48** 


Bill Cosby Arrested

**By Darren Chaker:** Bill Cosby filed a habeas petition, see, **habeas-darren-chaker**, equivalent to a motion to dismiss criminal charges, asking the court to dismiss the case based upon a former agreement not to prosecute.  The court papers filed also ask to **disqualify the District Attorney** from the case. Possibly, the defense will raise at a later point the long delay prejudiced the defense. In short, government should bring charges sooner than later.

In **United States v. Crouch**, 84 F.3d 1497, 1514 (5th Cir.1996) (en banc), the court held that 'for preindictment delay to violate the due process clause it must not only cause the accused substantial, actual prejudice, but the delay must also have been intentionally undertaken by the government for the purpose of gaining some tactical advantage over the accused in the contemplated prosecution or for some other impermissible, bad faith purpose.' An '[i]ntentional delay for the purpose of gaining tactical advantage would include delay for the purpose of rendering unavailable evidence favorable to the defense or which would tend to undercut the government's case.'Id. at 1514 n. 23.

Actual prejudice is the standard for a motion to dismiss, and the inability to obtain the information through alternate means. **U.S. v. Marion**, 1971, 92 S.Ct. 455, 466, 404 U.S. 307, 325–326, 30 L.Ed.2d 468. A defendant is entitled to the benefit of "presumptive prejudice" due to the length of the delay in his case. **Doggett v. United States**, 505 U.S. 647, 656 (1992). According to the Supreme Court, a delay of one year is generally considered "presumptively prejudicial." Id. at n. 1. Defendant was not prejudiced by preindictment and pretrial delay of 21 months where he was aware of government investigation. U.S. v. Hooper, C.A.7th, 1979, 596 F.2d 219.

Considering an army of top tier law firms, especially mega firm **Quinn Emanuel** , every possible angle will be looked at and litigated.

Exh CC
2 of 10

bill-cosby-arrest, disqualify-district-attorney | Tags: bill-cosby-arrest, bill-cosby-habeas, bill-cosby-motion, bill-cosby-rape, darren-chaker, disqualify-district-attoney, mcmillian-law-firm-la-mesa, motion-to-disqualify-prosecutor, scott-mcmillian-la-mesa

## Seal Record In Federal Court





Criminal file sealed, Darren Chaker, seal records in federal court.

Federal court motion to seal or protective order, **Darren Chaker** looks how district courts have identified as one of them the need to avoid "jeopardizing ongoing or future investigations," *United States v. Milken*, 780 F. Supp. 123, 127 (1991), and "[t]he need for confidentiality of the investigation," *United States v. Park*, 619 F. Supp. 2d 89, 94 (S.D.N.Y. 2009). *United States v. Huntley*, 943 F. Supp. 2d 383, 386, 2013 U.S. Dist. LEXIS 65057, *7, 2013 WL 1881536 (E.D.N.Y. 2013) The Government will routinely seek to seal records to protect the integrity of the Government's ongoing investigations. *See United States v. Haller*, 837 F.2d at 87 (closure of paragraph of plea agreement appropriate because it was "essential to protect the secrecy of sensitive matters affecting a grand jury proceeding and an ongoing criminal investigation")

"If release [of information] is likely to cause persons in the particular or future cases to resist involvement where cooperation is desirable, that effect should be weighed against the presumption of access." *Id.* (citations [21] omitted); *cf. In re City of New York*, 607 F.3d 923, 941 (2d Cir. 2010) (citations omitted) (purpose of the law enforcement privilege is, among other things, "to preserve the confidentiality of sources, to protect witness and law enforcement personnel, *to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation*"). (emphasis added) Typically, law enforcement makes every effort to keep the identity of people involved and the investigation itself confidential. *McIntyre v. United States*, 447 F. Supp. 2d 54, 57, 2006 U.S. Dist. LEXIS 63217, *1 (D. Mass. 2006) ("Disclosing a government informant's identity is not an act embraced within the discretion granted to agents of the Federal Bureau of Investigation.")

There is little doubt releasing details of a pending investigation can jeopardize not only the investigation, but alos the informant. The California Supreme Court found in *People v. Seibel* (1990) 219 Cal.App.3d 1279, 1289, "And in the big-time drug business, to inform is to sign one's death warrant."]; *People v. Pacheco* (1972) 27 Cal.App.3d 70, 80 ["It does not take a lively imagination to realize that [disclosure of an informant's identity] might constitute a death warrant for the informer". (emphasis added)

"The Government seeks a protective order limiting the dissemination of the discovery materials it has produced, and will be producing, to Defendants. In particular, the Government's proposed protective order seeks to prevent Defendants from making the discovery materials available to the public, including the media."*United States v. Smith*, 985 F. Supp. 2d 506, 516, 2013 U.S. Dist. LEXIS 177988, *12, 2013 WL 6576791 (S.D.N.Y. 2013)

With the above in mind, there is little doubt federal courts will continue to protect the existence of a pending investigation being leaked and use proper court orders to keep such under the cloak of secrecy.

central-district-of-california, Darren-Chaker, federal-protective-order, federal-record-sealing | Tags: darren-chaker, darren-chaker-aclu, federal-court-seal-record, federal-protective-order, federal-record-sealing, motion-to-seal-record, protect-confidential-informant, protect-pending-investigation

## Arizona Juvenile Record Sealing

Exh CC
3 of 10



Darren-Chaker, after conference on post-conviction relief

Arizona court order to seal records, **Darren Chaker** **https://plus.google.com/+DarrenChaker/** , it is common to include to seal a juvenile record. Some convictions are set aside but do not entitle a person to sealing. Pursuant to **A.R.S. § 8-349,** an applicant is eligible to have his records destroyed, provided that various conditions are satisfied. One of the provisions that must be satisfied is that the person may not have "been convicted of a felony offense." A.R.S. § 8-349(E)(2). **A.R.S. § 8-348** provides that an applicant is eligible to have his adjudications set aside, again, provided certain conditions are satisfied. "A person may not apply to set aside the adjudication if the person... has been convicted of a criminal offense." A.R.S. § 8-348(C)(1).

While a conviction may be subsequently set aside, that set aside does not negate the fact that a person has been convicted of a felony offense. *See **Russell v. Royal Maccabees Life Ins. Co.**,* 193 Ariz. 464, 467-471, 27, 974 P.2d 443, 446-450 (App. 1998). "If the court grants the application, the court shall set aside the judgment of guilt, dismiss the accusations or information and order that the person be released from all penalties and disabilities resulting from the conviction other than those imposed by the department of transportation... except that the conviction may be used as a conviction if it would be admissible had it not been set aside and may be pleaded and proved in any subsequent prosecution of such person by the state ...or used by the department of transportation... as if the judgment of guilt had not been set aside." Id. at ¶14 (emphasis in the original).

The statute is clear regarding a felony conviction. There are no exceptions, including no exception for the circumstance in which a felony conviction was set aside. "The primary rule of statutory construction is to find and *7 give effect to legislative intent." *Mail Boxes, Etc., U.S.A. v. Industrial Comm'n*, 181 Ariz. 119, 121, 888 P.2d 777, 779 (1995). As the Arizona Supreme Court has stated, "If a statute is clear and unambiguous, we apply it without using other means of statutory construction." *Aros v. Beneficial Arizona, Inc.*, 194 Ariz. 62, 66, 977 P.2d 784, 788 (1999) (en banc) (citations omitted); *UNUM Life Ins. Co. of America v. Craig*, 200 Ariz. 327, 330, 26 P.3d 510, 513 (2001) (en banc). A.R.S. §§ 8-348 and 8-349 are undeniably clear: they do not apply to anyone who has been convicted of a felony.

The cases are equally clear on the effect of a set aside: the set aside does not remove the fact of a conviction in *Arizona. State v. Barr*, Ariz. 445, 449, 175 p.3d 694, 698 (App. 2008); *Russell v. Royal Maccabees Life Ins. Co., supra*, 217 Ariz. at 467-468, 974 P.2d at 446-447; accord *State v. Green*, 173 Ariz. 464, 469, 844 P.2d 631, 636 (App. 1992), vacated in part, 174 Ariz. 586, 852 P.2d 401 (1993) (noting statute "specifically authorizes the conviction to be used as a prior conviction in subsequent prosecutions"); see also *State v. Key*, 128 Ariz. 419, 421, 626 P.2d 149, 151 (App. 1981) (noting statute permits a person to be released of all penalties and disabilities "with the exception that the conviction may be proved as a prior conviction in a subsequent criminal action").

Moreover, there is nothing in the statute that bestows upon the Juvenile Court the authority to grant requests pursuant to A.R.S. §§ 8-348 and 8-349 when a felony conviction has been set aside since the person "[h]as been convicted of a criminal offense." A.R.S. § 8-348(C)(1); see also A.R.S. §§ 8-349(D)(2) and (E)(2). Hence, a Court's order granting an applicant's application for destruction of records and setting aside his adjudications would be error since he would not be entitled to such order. Given the above, if you need an attorney to pursue a legal matter, contact an attorney and do not rely on the this article or any information on this blog as it is not updated or intended to be construed as legal advice.

Arizona Record Sealing, **Darren-Chaker,** Expungement, Juvenile Records, Seal-Juvenile-Record | Tags: arizona-expunge, arizona-juvenile-record, arizona-record-sealing, **darren-chaker,** seal-court-record, seal-juvenile-record

## California Juvenile Record Sealing

**15**
**09**
2014
08:27



California law, says **Darren Chaker,** "'has been consistently interpreted to vest the juvenile court with exclusive authority to determine when a release of juvenile court records to a third party is appropriate.'" In re R.G., 79 Cal.App.4th 1408, 1414, 94 Cal.Rptr.2d 818 (2000)(emphasis added). The Juvenile Court is in the best position to determine whether disclosure is in the best interests of the minor. See Cal. Welf. & Inst. Code § 827 (a); **T.N.G. v. Superior Court,** 4 Cal. 3d 767, 781 (1971). Long-established, black letter California precedent required notice and hearing before plaintiff s Juvenile Court records were released to defendants. California Rule of Court 1433(b). "The 'petitioner seeking access to juvenile court records must first show good cause.' [Citation.] In addition, '[t]he minor and other interested parties must be given notice and an opportunity to be heard.'" **In re R. G.**, 79 Cal.App.4th at 1416. An example of the notice plaintiff should have gotten is found at AER 223 et seq.



California-Record-Sealing, Seal-Juvenile-Record, Darren-Chaker

The first obligation of a petitioner seeking Juvenile Court records is adequately to identify the information sought. In Cimarusti v. Superior Court (Department of the Youth Authority), the Court of Appeal held that:
Petitioners first need to make clear and specific the type of information they seek from the records to assist the designated court to perform its in camera review of the records.Cimarusti, 79 Cal.App.4th 799, 806, 94 Cal.Rptr.2d 336 (2000); see also **Foster v Superior Court,** 107 Cal. App. 3d 218, 165 Cal. Rptr. 701 (1980) (request properly denied as overly broad). In addition to specifically identifying the type of information sought, the petitioner seeking disclosure of juvenile records must show the "records in question will disclose information or evidence of substantial relevance to the pending litigation ...." California Rule of Court **1423** (emphasis added). This Rule of Court "sets forth the proper balancing test for the juvenile court to undertake." In re R. G., supra, 79 Cal.App.4th at 1414-15. Further, "Any balancing must be guided by the principle that [f]irst, and foremost, the court's discretion must be directed at determining what is in the best interests of the minors, for that obviously is its primary concern at all times in the juvenile proceeding.'" Id. at 1417.

If the Juvenile Court decides to release records, it "should made a record of its findings adequate for review of its ruling. **In re Keisha T.**, supra, 38 Cal.App.4th at 241. Of course, the minor then has the right to appeal. Id. at 226 ("the minors appeal from the court order").

California Expungement, California-Seal-Juvenile-Record, Darren-Chaker, Juvenile Records | Tags: california-juvenile-record, criminal-record-seal, criminal-record-sealing, darren-chaker, juvenile-record-sealing, TNG-v-Superior-Court

## Arizona Record Sealing

**16**
**08**
2013
04:26



Arizona law allows for record sealing or expungement. **Darren Chaker** cites to **Phoenix Newspapers, Inc. v. United States District Court,** 156 F.3d 940, 949 (9th Cir. 1998), the Ninth Circuit held that criminal proceedings and documents may not be closed to the public without violating the First Amendment unless three substantive requirements are met: "1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest." Id. at 949, quoting Oregonian Publishing Co. v. United States District Court, 920 F.2d 1462, 1464 (9th Cir. 1990).

One case I am aware of is Arizona Attorney **David Gingras** was **arrested** for sexual molestation of an underage girl. The charges were eventually dismissed due to a technicality. The young girl who was a victim passed a polygraph test and probable cause

was found to have Jaburg Wilk attorney to stand trial. Nonetheless, **Attorney Gingras** appears to have never petitioned the court to seal the record based on showing he was wrongfully arrested. See **Docket**.

Furthermore, the court ordering closure must "make specific factual findings," rather than "bas[ing] its decision on conclusory assertions alone." *Id.* at 949, quoting *Oregonian Publishing Co. v. United States District Court*, 920 F.2d 1462, 1464 (9th Cir. 1990).

**13-4051**. Entry on records; stipulation; court order

A. Any person who is wrongfully arrested, indicted or otherwise charged for any crime may petition the superior court for entry on all court records, police records and any other records of any other agency relating to such arrest or indictment a notation that the person has been cleared.

B. After a hearing on the petition, if the judge believes that justice will be served by such entry, the judge shall issue the order requiring the entry that the person has been cleared on such records, with accompanying justification therefor, and shall cause a copy of such order to be delivered to all law enforcement agencies and courts. The order shall further require that all law enforcement agencies and courts shall not release copies of or provide access to such records to any person except on order of the court.

C. Any person who has notice of such order and fails to comply with the court order issued pursuant to this section shall be liable to the person for damages from such failure.

Another example of a public record in criminal court can be seen in Rule 26.6(e), Ariz. R. Crim. P., which states that presentence reports and other reports prepared under Rule 26 "are matters of public record unless otherwise provided by the court or made confidential by law." A.R.S. § 39-121 provides:

Public records and other matters in the custody of any officer shall be open to inspection by any person at all times during office hours.

Arizona imposes a presumption in favor of disclosure of public records. *A.H. Belo Corp. v. Mesa Police Dept.*, 202 Ariz. 184, 186, ¶ 5, 42 P.3d 615, 617 (App. 2002); see also Phoenix Newspapers, Inc. v. Purcell, 187 Ariz. 74, 81, 927 P.2d 340, 347 (App. 1996) [It is well-settled that Arizona evinces a general "open access" policy toward public records]. The public naturally has an interest in public records, regardless of whether the member of the public seeking them has any need for those records. *Bolm v. Custodian of Records, Tucson Police Department*, 193 Ariz. 35, 39, ¶ 10, 969 P.2d 200, 204 (App. 1998).

In *Carlson v. Pima County*, 141 Ariz. 487, 491, 687 P.2d 1242, 1246 (1984), the Arizona Supreme Court recognized the statutory policy favoring disclosure, but also stated that "where the countervailing interests of confidentiality, privacy or the best interests of the state should be appropriately invoked to prevent inspection," a public official or custodian could refuse to allow public inspection of particular records. To overcome the presumption of disclosure, the party that seeks nondisclosure of public records bears the burden of showing "the probability that specific, material harm will result from disclosure." *Mitchell v. Superior Court*, 142 Ariz. 332, 335, 690 P.2d 51, 54 (1984). *See also Scottsdale Unified School District v. KPNX Broadcasting Co.*, 191 Ariz. 297, 300, ¶ 9, 955 P.2d 534, 537 (1998).

If the defendant has not met his burden of showing "the probability that specific, material harm will result from disclosure." *Mitchell v. Superior Court*, 142 Ariz. 332, 335, 690 P.2d 51, 54 (1984), then the motion to seal must be denied.



David Gingras, sex offense, ripoffreport attorney.

---

Arizona Record Sealing, David-Gingras-Attorney, Jaburg-Wilk, Maria-Speth | Tags: arizona-expungement, arizona-record-sealing, darren-chaker, david-gingras, jaburg-wilk, maria-speth, Martha-Sandweiss, who-is-darren-chaker

---

**Criminal and Civil Records Are Public Records**



**22**
**04**
2013
06:22

Darren-Chaker, sunset in California

Article by Darren-Chaker

Criminal records are public records, says Darren Chaker. When trying obtain record sealing or expungement of a criminal record, it is important to note a common law right of access by the public and media to criminal judicial proceedings, which pre-dates the Constitution, has long been recognized by Anglo-American courts. See *Richmond Newspapers v, Virginia*, 448 U.S. 555, 596 (1980). After years of conflict among the federal courts, the United States Supreme Court, when faced squarely with the issue, held that a First Amendment Constitutional right to access to criminal trials existed. *Id*: Posey-Gelber, Constitutional law Contemporaneotis Access to Judicial Records in Civil Trials, – *In Re Reporters Committee for Freedom of the Press*, 773 F.2d 1325 (1985). 9 Whittier L. Rev. 67, 68 (1987). In recognizing a First Amendment right of access in criminal matters, Chief Justice Burger, in a plurality opinion, reasoned that criminal trials have historically been presumptively open to the public. *Richmond Newspapers*, 448 U.S. at 564-69. In dicta, the Court in Richmond Newspapers noted "that historically both civil and criminal trials have been presumptively open." *Id*. At 580 n. 17. After *Richmond Newspapers*, the Supreme Court decided several other cases which expanded the right of access of the media and public in other areas relating to criminal proceedings. *See Globe Newspapers v. Superior Court*, 457 U.S. 596 (1982); *Press Enterprise Co. v. Superior Court*, 464 U.S. 501 (1982).

Additionally, Darren Chaker notes several federal circuit courts have held that a constitutional right of access attaches in certain civil proceedings. *See* Bechamps, Sealed Out of Court Documents: Wlien Does The Public Have A Right To Know? 66 Notre Dame L. Rev. 117,133 (1990); *Westmoreland v. Columbia Broadcasting System*. 752 F.2d 16 (2d Cir. 1984), cert, denied, 472 U.S. 1017 (1985); *Publkker Indus., Inc. v. Cohen*. 733 F.2d 1059 (3d Cir. 1984); In re Continental 111. Sec. Litig. 732 F.2d 1302 (7th Cir. 1984); *Brown & Williamson Tobacco Corp. v. FTC* 710 F.2d 1165 (6th Cir. 1983), cert, denied 465 U.S. 1100(1980).

Allowing such access "enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system." *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 508 (1984) ( "Press-Enterprise I"). As former Chief Justice Burger wrote, "[p]eople in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." Richmond Newspapers, Inc., 448 U.S. at 572.

Indeed, open access to judicial proceedings is not just a beneficial practice; in many instances, it is a constitutional mandate. Court proceedings related to criminal trials in particular are subject to a First Amendment right of access – a right that "permits the public to participate in and serve as a check upon the judicial process – an essential component in our structure of self-government." *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606 (1982); see also *Richmond Newspapers, Inc.*, 448 U.S. at 596 (Brennan, J., concurring) (citation and internal quotation marks omitted) ("The knowledge that every criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power[.]").

Thus the above factors weigh against record sealing unless it can be proven requirements under state law have been met. These requirements often include proof of factual innocence. For example, California "[Penal Code] section **851.8** is for the benefit of those defendants who have not committed a crime. It permits those petitioners who can show that the state should never have subjected them to the compulsion of the criminal law — because no objective factors justified official action — to purge the official records of any reference to such action. . . …" (*People v. Matthews* (1992) 7 Cal.App.4th 1052, 1056.) ws a person to seal and destroy records based upon a showing of factual innocence. Many states, like Nevada, Arizona, and Texas, have similar statutes and it is wise to seek the advice of an attorney in your state if record sealing and destruction is available to you.

Exh CC
7 of 10



Darren Chaker and
record sealing.

California Expungement, Darren-Chaker, Expungement, Texas Record Sealing | Tags: 851.8, arizona-expunge, arizona-record-sealing, california-expungement, california-record-sealing, california-penal-code-851.8, court-file-public-record, darren-chaker, nevada-record-sealing, texas-expunge, www.viewpointdiscrimination.com

## When Good Faith is Not Enough for Probable Cause

**14
03**
2013
11:12

**Darren Chaker** agrees that the good faith exception to the exclusionary rule does not apply to police reliance upon inaccurate computer records unless substantial evidence shows that the error was made by court officials rather than law enforcement. Too often police in Los Angeles to San Diego illegally obtained information it wants to use against the defendant. As the below points out, court's take a flexible but dim view on Fourth Amendment violations.

Under the good faith exception established by the United States Supreme Court in *United States v. Leon* (1984) 468 U.S. 897, evidence seized in violation of the Fourth Amendment may be exempt from exclusion if "the officer's conduct is objectively reasonable." (*United States v. Leon, supra*, 468 U.S. 897, 919.) The Court based its ruling in large part on its perception that future Fourth Amendment violations were unlikely to be deterred by exclusion of relevant evidence obtained through erroneous issuance of a search warrant by a magistrate. (*Id.* at pp. 916-17.) The Court noted that judges and magistrates were not adjuncts to law enforcement and could not be expected to alter their behavior in response to exclusion of evidence. (Ibid.)

In keeping with this reasoning, federal and California courts have drawn a key distinction in analyzing where the good-faith exception applies, requiring suppression where errors leading to Fourth Amendment violations were made by a police or law enforcement department, rather than by the judicial or legislative branches. (*Miranda v. Superior Court* (1993) 13 Cal.App.4th 1628, 1634.) These courts have concluded that "application of the exclusionary rule depends on the source of the error or misconduct that led to the unconstitutional search." (*People v. Willis, supra*, 28 Cal.4th 22, 35.) Suppression is required for errors arising within a law enforcement department because "even if an officer acts in good faith reliance on ... information communicated to him through official channels, law enforcement officials are collectively responsible for keeping those channels free of outdated, incomplete, and inaccurate ... information." (*In re Arron C.* (1997) 59 Cal.App.4th 1365, 1369, quotation marks and citation omitted, ellipses in original.) Suppression of unconstitutionally seized evidence will deter law enforcement officials from making such mistakes in the future.

In contrast, where Fourth Amendment violations occur due to errors by judicial staff, including court clerks, exclusion of the illegally obtained evidence is seen as serving no deterrent purpose. (*Arizona v. Evans* (1995) 514 U.S. 1.) In *Arizona v. Evans*, an officer had arrested the defendant and seized marijuana from his car upon learning during a traffic stop that there was an outstanding misdemeanor warrant out for his arrest. (*Id.* at p. 4.) In fact, the misdemeanor warrant had been quashed 17 days earlier; the sheriff's office still had a record of the warrant because of a failure by a judicial clerk to inform the sheriff that it had been quashed. (*Id.* at p. 5.) Thus, the arrest and search incident to arrest were unauthorized and unconstitutional.

In concluding that the exclusionary remedy was not warranted, the Supreme Court noted that testimony at the suppression hearing established that errors by the judicial clerk were rare, occurring once every three or four years. (*Id.* at p. 15.) Thus, there was no reason to believe that court employees were inclined to carelessness affecting people's Fourth Amendment rights. (Ibid.) Most significantly, the Court did not believe that excluding the discovered evidence would deter future errors by court clerks. (Ibid.)

This same distinction has been emphasized in the context of Fourth Amendment violations

Exh CC
8 of 10

arising, as in the instant case, from erroneous computer records. Thus, courts require suppression of evidence obtained through reliance on erroneous records maintained by law enforcement officials, but generally admit evidence obtained because of officers' reliance on faulty records maintained solely by judicial personnel. (*See, e.g., People v. Willis, supra,* 28 Cal.4th 22, 38; *People v. Ramirez, supra,* 34 Cal.3d 541, 552; *People v. Downing* (1995) 33 Cal.App.4th 1641, 1645.)

---

**Illegal Search, mcmillan-law-firm-la-mesa, scott-mcmillan-la-mesa** | Tags: **2013-darren-chaker, clerical-error-search, consent-search, darren-chaker, mcmillan-law-firm-la-mesa, scott-mcmillan-la-mesa, search-clerical-error No comments**

---

## California Expungement Law

**12 12 2012 09:53**



Darren Chaker, blogger, in Century City, Los Angeles.

California Penal Code section 1203.4, **Darren Chaker** writes, allows for expungement of a conviction. Pursuant to **section 1203.4**, subdivision (a), a probationer is entitled as a matter of right to have the plea or verdict changed to not guilty, to have the proceedings **expunged** from the record, and to have the accusations dismissed, if he or she has either (1) fulfilled the conditions of probation for the entire probationary period or, (2) been discharged prior to the termination of the probation period. (*People v. Bradus* (2007) 149 Cal.App.4th 636, 641; *People v. Lewis* (2006) 146 Cal.App.4th 294, 297.) In other words, "'[i]f the petitioner establishes either of the necessary factual predicates, the trial court is required to grant the requested relief.'" (*People v. Lewis, supra,* 146 Cal.App.4th at p. 294, quoting *People v. Hawley* (1991) 228 Cal.App.3d 247, 249-250, italics original.)

In *People v. Lewis,* the court noted that:

It was apparently intended that when a defendant has satisfied the terms of probation, the trial court should have no discretion but to carry out its part of the bargain with the defendant.

(*People v. Lewis, supra,* 146 Cal.App.4th at p. 294; *see In re Griffin* (1967) 67 Cal.2d 343, 347, fn. 3 ["On application of a defendant who meets the requirements of section 1203.4 the court not only can but must proceed in accord with that statute."].) The court also reiterated the concept that:

"'The expunging of the record of conviction is, in essence, a form of legislatively authorized certification of complete rehabilitation based on a prescribed showing of exemplary conduct during the entire period of probation.'"

(*People v. Lewis, supra,* 146 Cal.App.4th at p. 294, quoting *People v. Chandler* (1988) 203 Cal.App.3d 782, 788-789, quoting *People v. Turner* (1961) 193 Cal.App.2d 243, 247; *see People v. Field* (1995) 31 Cal.App.4th 1778, 1787 [relief under section 1203.4 is intended to reward an individual who successfully completes probation]; *People v. Johnson* (1955) 134 Cal.App.2d 140, 143 ["The obvious purpose is to secure law compliance through an attempt at helpful cooperation rather than by coercion or punishment."].)

**Section 1203.4**, subdivision (a), also authorizes a trial court to grant relief in any case in which the court determines relief is proper "in its discretion and the interests of justice." (*See People v. Chandler, supra,* 203 Cal.App.3d at p. 733, fn. 2, *citing People v. Butler* (1980) 105 Cal.App. 3d 585, 587.) The court's decision to grant or deny relief is discretionary in this third situation. (*People v. Field, supra,* 31 Cal.App.4th at p. 1786; *People v. Butler, supra,* 105 Cal.App. 3d at p. 587.) Generally, the complaining party must establish "'that the court exercised its discretion in an arbitrary, capricious or patently absurd manner …'" (*See People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125, quoting *People v. Jordan* (1986) 42 Cal.3d 308, 316; see also Denham v. Superior Court (1970) 2 Cal.3d 557, 566.) Put differently, an abuse of discretion occurs when an appellant can

show that the lower court's decision falls outside the bounds of reason. (*See People v. Bradford* (1997) 15 Cal.4th 1229, 1315; *People v. Parmar* (2001) 86 Cal.App.4th 781, 792.).

California Expungement, Darren-Chaker | Tags: 1203.4, darren-chaker, Los-Angeles-Expunge, Orange-County-Expunge, PC-1203-4, ticket-expunge
No comments

## Florida Criminal Record Sealing

**06
12**
2012
08:28



**Record sealing** under Florida law, says Darren Chaker, can occur if a person pleads guilty, nolo contendere or is found guilty by a jury but the sentencing judge withholds adjudication of guilt, there has been no conviction. *See* Fla.R.Evid. 90.610, FS. § 948.01; *Delaney v. State*, 190 So.2d 578 (1966), appeal dism'd 387. U.S. 426 (1967).

Moreover, when records relating to a person's criminal history have been **expunged**/sealed, the person is restored to the status the person had before the criminal proceedings. See F.S. §948.01: *Walley v. Florida Game & Fresh Water Fish Comm.*, 501 So.2d 671 (1st DCA 1987). The person's status before charges were brought was that the person had not been convicted of the crime in question and therefore the expunged/sealed record would not be admissible. *See Id.*

To qualify to have a record expunged/sealed, requires that the person who, is the subject, must (1) never previously have been adjudicated guilty of a crime; (2) not have been adjudicated guilty of any charges stemming from the arrest to which the expungement/sealing petition pertains. Darren concludes if all records relating to a defendant's case are sealed pursuant to Florida law, then the defendant may lawfully deny or fail to acknowledge the events covered by the sealed records. See **F.S. § 943.058** (1991). Fla.R.Evid. 90.610 requires evidence that a person has been convicted of a crime to be admitted.

Only evidence of a criminal conviction is admissible; a witness may not be interrogated as to former arrest or other accusations of crimes. Questions regarding past criminal records or convictions should not be asked unless counsel has knowledge of a conviction and a certified copy of the judgment of conviction in counsel's possession. A review of Florida court decisions hold that when a trial court withholds adjudication of guilt *there is no conviction. See Roberts v. State of Florida*, 450 So.2d 1126 (Fla. 4th DCA 1984); *Accredited Surety and Casualty Company, Inc. v. State of Florida*, 318 So.2d 554 (Fla. 1st DCA 1975); *Bernhardt v. State*, 288 So.2d 490 (Fla. 1974); *State v. Gazda*, 257 So.2d 242, 243 (Fla. 1971); *Weathers v. State*, 56 So.2d 536 (Fla. 1952); *Daughtrey v. State*, 35 So. 397 (Fla. 1903); *Parker v. State*, 563 So.2d 1130 (Fla.5th DCA 1990); *Garron v. State*, 528 So.2d 353 (Fla.1988); *Duffell v. South Walton*, 501 So.2d 1352 (Fla. 1st DCA 1986); *Clinger v. State*, 53 So.2d 315 (Fla.5th DCA 1988); and 14 Fla. Jur. 2d, Criminal Law 3(1979).

Darren-Chaker, Expungement, Seal Florida Record | Tags: criminal-record-sealing, darren-chaker, darren-chaker-2012, darren-chaker-aclu, darren-chaker-ripoff, expunge-florida, florida-record-sealing
No comments

Design by
Andreas Hultgren

Exh CC
10 of 10

1  STEPHEN J. ERIGERO (SBN 121616)
   E. LACEY  RICE (SBN 266748)
2  EDUARDO A. BRAVO (SBN 327967)
   **ROPERS MAJESKI PC**
3  445 South Figueroa St, 30th Floor
   Los Angeles, CA  90071
4  Telephone:  213.312.2000
   Facsimile:   213.312.2001
5  Email:      stephen.erigero@ropers.com
   Email:      lacy.rice@ropers.com
6  Email:      eduardo.bravo@ropers.com

7  Attorneys for Defendant
   DARREN D. CHAKER

8

9              **UNITED STATES DISTRICT COURT**

10           **SOUTHERN DISTRICT OF CALIFORNIA**

11

12  SCOTT A. MCMILLAN, an individual;      Case No. 3:16-cv-2186-WQH-MDD
    THE MCMILLAN LAW FIRM, APC,
13  a California professional corporation,   *Hon. William O.  Hayes*
                                            *Courtroom 14B*
14             Plaintiffs,
                                            **MEMORANDUM OF POINTS**
15       v.                                 **AND AUTHORITIES IN**
                                            **SUPPORT OF DEFENDANT**
16  DARREN D. CHAKER, an individual,        **DARREN D. CHAKER'S**
    and as trustee of PLATINUM              **MOTION TO SEAL PORTIONS**
17  HOLDINGS GROUP TRUST, dba               **OF PLAINTIFF SCOTT A.**
    COUNTER FORENSICS; NICOLE               **MCMILLAN'S COMPLAINT**
18  CHAKER, an individual, and as trustee   **AND FIRST AMENDED**
    of THE NICOLE CHAKER                    **COMPLAINT**
19  REVOCABLE LIVING TRUST, U/A
    dated August 18, 2010, VANIA            *[Filed Concurrently with Notice of*
20  CHAKER, an individual and as            *Motion, Declaration of Eduardo A.*
    beneficiary of The Island Revocable     *Bravo, Request for Judicial Notice*
21  Trust under,                            *and (Proposed) Order]*

22             Defendants.                   **DATE:  AUGUST 3, 2020**

23                                          *NO ORAL ARGUMENT UNLESS*
                                            *REQUESTED BY THE COURT*
24

25                                          Action Filed:   August 29, 2016
                                            Trial Date:      None
26

27

28

4849-8411-1041.1

ROPERS
MAJESKI

A Professional Corporation
Los Angeles

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2          Defendant DARREN D. CHAKER, individually and as trustee of

3  PLATINUM HOLDINGS GROUP TRUST, dba COUNTER FORENSICS

4  ("Defendant") hereby respectfully submits the following Memorandum of Points

5  and Authorities in support of his Motion to Seal pursuant to Federal Rule of Civil

6  Procedure 5.2(d), or alternatively, for a Protective Order pursuant to Federal Rule

7  of Civil Procedure 5.2(e).

8                **MEMORANDUM OF POINTS AND AUTHORITIES**

9  **I.     INTRODUCTION**

10          This motion is directed at portions of Plaintiffs SCOTT A. MCMILLAN,

11  ("McMillan") and THE MCMILLAN LAW FIRM, APC's (collectively,

12  "Plaintiffs") Complaint and First Amended Complaint ("FAC") [Dkt. Nos. 1, 25.]

13  This Court should enter an order sealing the portions of the Complaint and FAC

14  [Docket Nos. 1 at ¶¶ 39, 40, 49, and 25 at ¶¶ 40, 41, 50], as they include reference

15  to a California sealed paternity case (the "Paternity Case") involving Defendant

16  DARREN D. CHAKER ("Defendant").

17          This information is immaterial to the claims of the case and its inclusion in

18  the record serves no public interest.  The overriding private interests of Defendant

19  will be prejudiced if these pleadings are not sealed and the proposed sealing has

20  been narrowly tailored to achieve the privacy interests.  Accordingly, the Court

21  should either: (a) enter an order sealing portions of the Complaint and FAC

22  pursuant to Federal Rule of Civil Procedure 5.2(d) and common law, or (b) enter a

23  protective order pursuant to Federal Rules of Civil Procedure 5.2(e) and 26(c)

24  prohibiting any nonparty's remote electronic access to these portions of the

25  Complaint and FAC.

26  / / /

27  / / /

28  / / /

4849-8411-1041.1                          - 2 -

## II.   **FACTS**

Plaintiffs allege that Defendant operates a website that posts unpublished judicial decisions.  [Docket No. 25 at ¶ 30].  Defendant asked McMillan to remove certain decisions involving him and McMillan refused.  [Docket No. 25 at ¶ 31].  Defendant allegedly began harassing McMillan by, *inter alia*, posting scandalous material about McMillan on the internet [Docket No. 25 at ¶ 36], thereby allegedly harming McMillan's law practice.  [Docket No. 25 at ¶ 80].  Consequently, Plaintiffs filed the instant suit alleging civil extortion and unfair business practices.

McMillan, a California attorney, filed his original Complaint on August 29, 2016, asserting three Causes of Action against Defendant: (1) Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1962(c); (2) Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1962(d); and (3) Civil Extortion. Declaration of Eduardo Bravo ("Bravo Decl."), ¶ 3.  On December 5, 2016, Plaintiffs filed their FAC, asserting the same causes of action against Defendant. Bravo Decl., ¶ 4.  Plaintiffs included nearly identical references to Defendant's unrelated Paternity Case in each complaint [Docket No. 1 at ¶¶ 39, 40, 49, and No. 25 at ¶¶ 40, 41, 50], which Plaintiffs describe as relevant simply by virtue of the fact that McMillan was counsel for a party in the Paternity Case.  [Docket No. 25 at ¶ 39].  However, the Paternity Case is wholly unrelated to the causes of action in this matter and any document referred to in the Paternity Action bears no relevance to the allegations against Defendant in this action. Rather, Plaintiffs apparently include reference to this Paternity Case to harass Defendant by publicizing his private information.

In sum, all references to the Paternity Case contain personal, private, and familial information that is entirely irrelevant to the case at bar, and serve no interest to the public.

/ / /

/ / /

ROPERS | MAJESKI

A Professional Corporation
Los Angeles

## III.   **LEGAL STANDARD**

According to Civil Local Rule 79.2(c), "Documents to be filed under seal must be accompanied by an order sealing them."  Additionally, as it pertains to the instant motion, Fed. R. Civ. P. 5.2 provides that a Court may seal and/or redact information, as follows:

(d) FILINGS MADE UNDER SEAL. The court may order that a filing be made under seal without redaction. The court may later unseal the filing or order the person who made the filing to file a redacted version for the public record.

(e) PROTECTIVE ORDERS. For good cause, the court may by order in a case:

(1) require redaction of additional information; or

(2) limit or prohibit a nonparty's remote electronic access to a document filed with the court.

In addition, Courts have inherent supervisory power over its own records and files, even where a right of public access exists.  *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978).  Access may be denied where the court determines that court-filed documents may be used for improper purposes.  *Id*.  The compelling reason standard governs the limits on the common law right of access to judicial records.  *Pintos v. Pacific Creditors Ass'n*, 605 F.3d 665, 677-678 (9th Cir. 2010). A party seeking to seal most judicial records must: (1) show compelling reasons, (2) supported by specific factual findings, and (3) the factual findings outweigh the public policies favoring disclosure.  *Id*.  Relevant factors include: the public interest in understanding the judicial process and whether disclosure of the material could result in improper use of the material for scandalous or libelous purposes or infringement upon trade secrets.  *Id*. at 679, fn 6.

Moreover, "[i]t is well established that a federal court may consider collateral issues after an action is no longer pending."  *Cooter & Gell v. Hartmarx Corp*., 496 U.S. 384, 395(1990); *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp*., 307

ROPERS
MAJESKI

A Professional Corporation
Los Angeles

F.3d 1206, 1209 (9th Cir. 2002) (ruling on a motion to unseal documents which was filed "[a]fter the case had been dismissed.").

## IV.   LEGAL ARGUMENT

Paragraphs 39, 40, and 49 of the Complaint and paragraphs 40, 41, and 50 of the FAC all refer to the Paternity Case involving Defendant.  Defendant has compelling reasons to keep his family's private life confidential and the public has little to no right to access facts concerning Defendant's relationship with his child.  In addition, the records of the Paternity Case are sealed per statute, further diminishing any policy favoring disclosure.  Thus, this Court should seal all portions of the Complaint and FAC that reference the Paternity Case.

### A.   Compelling Reasons Exist to Seal Portions of the Complaint and FAC

Independent of Rule 5.2, the Court may order documents and/or materials filed with the Court to be sealed despite the public's common law right to inspect and copy public records and documents, including judicial records, and documents.  A party seeking to seal judicial records under common law must show that compelling reasons supported by specific factual findings outweigh the general public policies favoring disclosure.  *Pintos*, 605 F.3d at 677-678.

The factors relevant to a determination of whether the strong presumption of access is overcome include the "public interest in understanding the judicial process and whether disclosure of the material could result in improper use of the material for scandalous or libelous purposes or infringement upon trade secrets.  *Id*. at 679, fn 6.  As especially pertinent in this case, where Plaintiff has used his pleadings to exact a vendetta against Defendant, courts have specifically found that sealing records is appropriate when a party uses "records to gratify private spite, promote public scandal, [or] circulate libelous statements."  *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006).

/ / /

4849-8411-1041.1

- 5 -

ROPERS MAJESKI | A Professional Corporation | Los Angeles

1    Here, the standard is met.  Defendant has a particularly strong interest in

2    keeping his family affairs private and confidential.  The intimate details of one's

3    family are sensitive in nature and, in many cases, the most private details in one's

4    life.  California's family laws further demonstrate the private nature of such

5    information as codified in the California Family Code.

6    California Family Code section 7643(a) provides that all papers and records,

7    other than the final judgment, pertaining to the action or proceeding, whether part

8    of the permanent record of the court or of a file in any public agency, or elsewhere,

9    are subject to inspection and copying only in exceptional cases on order of the court

10    for good cause shown.  However, all paper and records pertaining to the action or

11    proceeding that are part of the permanent record of the court are subject to

12    inspection and copying by the parties to the action and their attorneys.  Cal. Fam.

13    Code § 7643(b).  Defendant's Paternity Case was sealed and not subject to public

14    inspection due to longstanding public policy considerations concerning an

15    individual's right to privacy within his or her own family.  Plaintiffs were not

16    parties to Defendant Chaker's Paternity Case and have no right to obtain records

17    therefrom.

18    In addition to the delicately private nature of any reference to the Paternity

19    Case, the public has no need to access the detailed family records of Defendant.

20    The court in *Hardaway v. District Of Columbia Housing Authority* ("*Hardaway*"),

21    reversed the district court's denial of a motion to seal all medical records and non-

22    dispositive materials, explaining  that the "public has no need for access to

23    documents that describe [plaintiff's] disability" and that the plaintiff "possesses a

24    strong privacy interest in keeping the details of her disability confidential."  843

25    F.3d 973, 981 (D.C. Cir. 2016).  Just as in *Hardaway*, here, Defendant has a strong

26    privacy interest in keeping the details of his relationship with his child private.

27    Most importantly, just as in *Hardaway*, the public has no need to access

28    information describing Defendant's relationship with his inner-family members.

ROPERS
MAJESKI

A Professional Corporation
Los Angeles

4849-8411-1041.1                        - 6 -

Access to this information serves no interest to the public.  As such, Defendant's privacy concern of references to the Paternity Case seriously outweighs any general public policy favoring disclosure.

Finally, Plaintiff has demonstrated a history of improperly referencing the same information sought to be sealed here to other complaints between the parties.[1] Bravo Decl. ¶ 2.  In a Tentative Ruling entered in the California Superior Court, County of San Diego, Case No. 37-2017-00036344-CU-NP-CTL, in the matter *Scott A. McMillan v. Darren D. Chaker, et. al.*, on June 28, 2018, the court granted in part Mr. Chaker's motion to seal similar portions of plaintiff's complaint.

Plaintiffs have never obtained leave of court to include information or documents from Defendant's Paternity Case in these proceedings.  Information and documents from the Paternity Case are highly irrelevant to Plaintiffs' claims and included for the improper purpose of harassing Defendant.  The overriding interest in the privacy rights and confidentiality of paternity records heavily outweigh the right to public access.  Defendant is requesting a simple redaction, not a complete sealing of the Complaint and FAC.  This can easily be accomplished by the Court redacting paragraphs 39, 40, and 49 of the Complaint, and 40, 41, and 50 of the FAC.  Therefore, the Court should seal these portions of the Complaint and FAC.

/ / /

/ / /

/ / /

/ / /

/ / /

---

[1] Defendant filed a Motion to Strike exhibits with reference to the Paternity Case in Plaintiff's appeal of this Court's prior ruling, which the Ninth Circuit denied. *McMillan v. Chaker*, 791 F. App'x 666, 667 (9th Cir. 2020). However, here, Defendant is simply seeking to *seal* portions of the pleadings with reference to the Paternity Case which remain part of the public record, even after judgment in Defendant's favor.  In fact, it is telling that Plaintiff filed reference to the Paternity Case under seal at the Ninth Circuit.  *McMillan v. Chaker*, No. 17-56676, Docket No. 15 (9th Cir. April 2, 2018.)

ROPERS MAJESKI

A Professional Corporation
Los Angeles

4849-8411-1041.1

- 7 -

**V.   CONCLUSION.**

For the foregoing reasons, Defendant respectfully requests that the Court grant this motion and order that paragraphs 39, 40, and 49 of the Complaint, and paragraphs 40, 41, and 50 of the FAC previously filed be sealed for good cause shown.  In the alternative, Defendant requests that the Court enter a protective order prohibiting any nonparty's remote electronic access to paragraphs 39, 40, and 49 of the Complaint, and paragraphs 40, 41, and 50 of the FAC.

DATED:  June 25, 2020                         ROPERS MAJESKI PC

By:  */s/ Eduardo A. Bravo*
    STEPHEN J. ERIGERO
    E. LACEY  RICE
    EDUARDO A. BRAVO
    Attorneys for Defendant
    DARREN D. CHAKER

- 8 -

1  **FREEMAN MATHIS & GARY, LLP**
   TIMOTHY W. KENNA, APC / Bar No. 064280
2  tkenna@fmglaw.com
   REBECCA J. SMITH / Bar No. 150428
3  rsmith@fmglaw.com
   KRISTIN A. INGULSRUD / Bar No. 294532
4  kingulsrud@fmglaw.com
   401 B. Street, Suite 2210
5  San Diego, CA 92101

6  **Mailing Address:**
   550 Hope Street, 22nd Floor
7  Los Angeles, California 90071-2627
   (213) 615-7000; FAX (213) 615-7100
8
   Attorneys for Defendant, Respondent and Cross-
9  Appellant
   NICOLE CHAKER
10

```
FILED
Mar 13 2018
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY        s/ AKR        DEPUTY
```

11              UNITED STATES DISTRICT COURT

12              SOUTHERN DISTRICT OF CALIFORNIA

13

14  SCOTT A. MCMILLAN, an individual,    ) Case No. 3:16-CV-02186 WQH-MD
    THE MCMILLAN LAW FIRM, APC, a        )
15  California professional corporation, ) Judge: William Q. Hayes
                                         ) Courtroom: 14B
16          Plaintiffs,                  )
                                         ) Magistrate Hon. Mitchell D. Dembin
17      vs.                              ) Courtroom: 11th Floor
                                         )
18  DARREN D. CHAKER, an individual and  ) **NOTICE OF CROSS-APPEAL**
    as trustee of PLATINUM HOLDINGS      )
19  GROUP TRUST, da COUNTR               )
    FORENSICS; ICOLE CHAKER, an          )
20  individual and as trustee of THE NICOLE )
    CHAKER REVOCABLE LIVING              )
21  TRUST, U/A dated August 18, 2010;    )
    VANIA CHAKER, an individual and as   )
22  beneficiary of The Island Revocable Trust )
    under Declaration Trust dated June 2, )
23  2015, MARCUS MACK as trustee of the  )
    Island Revocable Trust under Declaration )
24  of Trust dated June 2, 2015,         )
                                         )
25          Defendants.                  )
    _____ )

26      TO THE COURT, ALL INTERESTED PARTIES AND TO THEIR RESPECTIVE

27  ATTORNEYS OF RECORD:

28

NOTICE OF CROSS-APPEAL

4672313.1  11309-74924 RJS                    3:16-CV-02816-WOH-MD

Pursuant to the United States District Court's Order of March 8, 2018 granting Defendant Nicole Chaker an extension of fourteen (14) days from the date of the order to file a notice of appeal, pursuant to Federal Rule of Appellate Procedure 4(a)(5);

Notice is hereby given that defendant Nicole Chaker, hereby files this cross-appeal in the above-named case to the United States District Court for the Ninth Circuit from the Order Closing the Case (ECF 86) and more specifically, the Order denying defendant Nicole Chaker's Motion to Strike Pursuant to California Code of Civil Procedure 425.16 and motion for attorney's fees and costs as moot in light of the granting of defendant Nicole Chaker's motion to dismiss (ECF 83).  A copy of both ECF 83 and ECF86 are attached hereto as exhibits "A" and "B".

Dated:  March 13, 2018          FREEMAN MATHIS & GARY, LLP


                        By:  _Rebecca J. Smith_____
                             TIMOTHY W. KENNA, APC
                             REBECCA J. SMITH
                             KRISTIN A. INGULSRUD
                             Attorneys for Defendant
                             NICOLE CHAKER

-2-
NOTICE OF CROSS-APPEAL

Freeman Mathis
& Gary, LLP
Attorneys at Law

# REPRESENTATION STATEMENT

## Ninth Circuit Rule 3-2

Attorneys Timothy W. Kenna, Rebecca J. Smitha and Kristen A. Ingulsrud of the law offices of Freeman Mathis & Gary, LLP as referenced in the caption above, represent Defendant, Respondent and Cross-Appellant in this matter and no other party.  The following list shows all of the parties to the action below and identifies their counsel by name, firm, address, telephone number and email address, where appropriate.  (Federal Rules of Civil procedure 12(b); Circuit Rule 3-2(b).

The McMillan Law Firm
Scott A. McMillan, SBN 212506
4670 Nebo Dr., Suite 200
La Mesa, CA  91941
Ph: (619) 464-1500, Ext. 14 / Fax: (619) 828-7339
scott@mcmillanlaw.us/ scott4670@gmail.com
Attorneys for Plaintiff-Appellants Scott A. McMillan and the McMillan Law Firm, APC

Baker Marquart, LLP
Ryan G. Baker
2029 Century Park East, Suit 1600
Los Angeles, Ca  90057
Ph: (494) 652-7800 / Fax: (424) 652-7850
rbaker@bakermarquart.com
Attorney for Defendant and Respondent Vania Chaker

Manning & Kass Ellrod, Ramirez, Trester, LLP
John Hochhausler
801 S. Figueroa Street, 15th Floor
Los Angeles, CA  90017
Ph: (213) 624-6900 / Fax: (213) 624-7999
jmh@manningllp.com
Attorneys for Defendant and Respondent Darren Chaker

Sullivan Krieger Truong Spagnola 7 Klausner, LLP
Charles Thomas Spagnola
444 W. Ocean Blvd., Suite 1700
Long Beach, CA  90802
Ph: (562) 597-7070 / Fax: (562) 597-7772
cspagnola@sullivankrieger.com
Attorneys for Defendant and Respondent Darren D. Chaker

# EXHIBIT A

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

SCOTT A. MCMILLAN, an individual; THE MCMILLAN LAW FIRM, APC, a California professional corporation,

Plaintiffs,

v.

DARREN D. CHAKER, an individual, and as trustee of PLATINUM HOLDINGS GROUP TRUST doing business as Counter Forensics, *et al.*,

Defendants.

CASE NO. 16cv2186-WQH-MDD

ORDER

HAYES, Judge:

The matters before the Court are the motion to dismiss and the motion to strike Plaintiffs' third cause of action filed by Defendant Nicole Chaker (ECF Nos. 35, 36); the motion to dismiss and motion to strike filed by Defendant Darren D. Chaker (ECF Nos. 55, 56); the motion to dismiss or alternatively to quash service filed by Defendant Vania Chaker (ECF No. 59); and, the motion for sanctions by Defendant Darren Chaker (ECF No. 66).

## I. BACKGROUND

On December 5, 2016, Plaintiffs Scott A. McMillan and The McMillan Law Firm, APC filed the First Amended Complaint ("FAC") against Defendant Darren D. Chaker, an individual and as trustee of Platinum Holdings Group Trust, dba Counter Forensics; Defendant Nicole Chaker, an individual and as trustee of The Nicole Chaker

- 1 -

16cv2186-WQH-MDD

1 Revocable Living Trust, U/A dates August 18, 2010; Defendant Vania Chaker, an
2 individual and as beneficiary of The Island Revocable Trust under Declaration of Trust
3 dated June 2, 2015; and Defendant Marcus Mack, as trustee of the Island Revocable
4 Trust under Declaration of Trust dates June 2, 2015. (ECF No. 25). The FAC alleges
5 two causes of action under the Racketeer Influenced and Corrupt Organizations
6 ("RICO") Act pursuant to 18 U.S.C. § 1962(c) and (d) and a civil extortion cause of
7 action under California law.

## II. ALLEGATIONS OF THE FIRST AMENDED COMPLAINT ("FAC")

9      Plaintiff Scott McMillan is a California licensed attorney practicing law and
10 operating an unaccredited law school. (ECF No. 25 at ¶5). Plaintiff McMillan Law
11 Firm, APC is a corporation operated by Scott McMillan. *Id.* ¶ 6. Defendants Vania and
12 Nicole Chaker are Defendant Darren Chaker's sister and mother, respectively.

13      Plaintiffs allege that Defendants constitute a RICO enterprise functioning
14 together "as a continuing unit with a common purpose to obtain the Plaintiffs' property
15 under fear induced by falsely imputing a deformity, disgrace, or crimes, and by threats
16 to do an unlawful injury to the person or property . . . all in violation of Cal. Penal Code
17 section 523 (extortion)." *Id.* ¶ 88. "The common purpose of the Enterprise members
18 was to assist each other in the filing of false and meritless lawsuits under federal debt
19 collection statutes; assist each other in the filing of lawsuits against attorneys who
20 opposed them . . . and to conduct a campaign of harassment, defamation, and extortion
21 against attorneys, such as the Plaintiffs, who represented parties adverse to the interests
22 of the Enterprise members . . . ." *Id.* ¶ 91. "Enterprise member also assisted each other
23 in committing vandalism against Plaintiff's property." *Id.*

24      Defendant Darren Chaker is alleged to have committed multiple acts of
25 racketeering activity through acts involving extortion in violation of California Penal
26 Code sections 518, 519, and 523. *Id.* ¶¶ 94-109. Plaintiffs allege that Darren Chaker
27 sent threatening letters and communications; posted defamatory and fabricated
28 statements online; sent letters threatening Plaintiffs' clients; and sent defamatory emails

- 2 -

16cv2186-WQH-MDD

1  to other attorneys and colleagues of Plaintiff McMillan. *Id.* Plaintiffs allege that these

2  acts constitute extortion because Defendant "obtained from Plaintiff his intangible

3  property right to practice law free of threats, and to practice in accordance with the

4  California Rules of Professional Conduct" and "obtained from Plaintiffs their intangible

5  property right to practice law and publish court decisions on the internet." *Id.* at ¶¶ 99-

6  109.

7         Plaintiffs bring the first cause of action for a violation of RICO, 18 U.S.C. §

8  1962(c) against Defendant Darren Chaker. *Id.* ¶¶ 84-114. Plaintiffs bring a second

9  cause of action for conspiracy to violate RICO, 18 U.S.C. § 1962(d) against all

10  Defendants. *Id.* ¶¶ 115-119. Plaintiffs bring a third cause of action for civil extortion

11  under California law against Defendants Darren Chaker and Nicole Chaker. *Id.* ¶¶ 120-

12  133.

13  **III. LEGAL STANDARD ON RULE 12(B)(6)**

14         Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state

15  a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal Rule of

16  Civil Procedure 8(a) provides that "[a] pleading that states a claim for relief must

17  contain . . . a short and plain statement of the claim showing that the pleader is entitled

18  to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) is appropriate where

19  the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable

20  legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

21         "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

22  requires more than labels and conclusions, and a formulaic recitation of the elements

23  of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

24  (quoting Fed. R. Civ. P. 8(a)). When considering a motion to dismiss, a court must

25  accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662,

26  679 (2009). However, a court is not "required to accept as true allegations that are

27  merely conclusory, unwarranted deductions of fact, or unreasonable inferences." 

28  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a

1  complaint to survive a motion to dismiss, the non-conclusory factual content, and

2  reasonable inferences from that content, must be plausibly suggestive of a claim

3  entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir.

4  2009) (internal quotation marks omitted).

## IV. MOTIONS TO DISMISS BY DARREN CHAKER AND NICOLE CHAKER (ECF Nos. 35, 56)

7  Defendant Darren Chaker contends that the FAC should be dismissed with

8  prejudice for failure to state a claim. Defendant Darren Chaker contends that the RICO

9  cause of action pursuant to 18 U.S.C. §1962(c) must be dismissed because Plaintiffs fail

10  to adequately allege facts to support the predicate act of extortion. (ECF No. 56-1 at

11  10). Defendant Darren Chaker contends that Plaintiffs fail to state a claim for extortion

12  because Plaintiffs do not allege facts to show that Defendant Darren Chaker obtained

13  property from Plaintiffs. *Id.* at 13. Defendant Darren Chaker further contends that

14  Plaintiffs lack standing because the FAC fails to allege cognizable damages. *Id.* at 18.

15  Defendant Darren Chaker contends that the second cause of action for RICO

16  conspiracy, 18 U.S.C. § 1962(d), fails for the same reasons as the first cause of action.

17  Defendant Darren Chaker contends that the Court should decline to exercise

18  supplemental jurisdiction over the state law claim. *Id.* at 19-20.

19  Defendant Nicole Chaker also contends the FAC should be dismissed for failure

20  to state a claim.[1] (ECF No. 35). Defendant Nicole Chaker contends that her alleged

21  conduct is protected by the Noerr-Pennington doctrine. (ECF No. 35-1 at 13-16).

22  Defendant Nicole Chaker contends that the RICO causes of action should be dismissed

23  because Plaintiffs fail to adequately plead an enterprise with an effect on interstate

24  commerce, a pattern of racketeering, cognizable damages, or sufficient conduct or

---

26  [1] Defendant Nicole Chaker files a request for judicial notice of document in the record of a district court case from the United States District Court for the Central District of California. (ECF No. 35-3). Plaintiffs' also file a request for judicial notice of court documents in other cases. (ECF No. 45-1). The Court denies the request for judicial notice as unnecessary. *See, e.g., Asvesta v. Petroutsas*, 580 F.3d 1000, 1010 n. 12 (9th Cir. 2009) (denying request for judicial notice where judicial notice would be "unnecessary").

participation in enterprise affairs. *Id.* at 18-25. Defendant Nicole Chaker contends that the claim under § 1962(d) necessarily fails if the § 1962(c) claim is dismissed. *Id.* at 24. Defendant Nicole Chaker contends that Plaintiffs do not sufficiently allege any cognizable injury to support the cause of action for civil extortion. *Id.* at 25. Defendant Nicole Chaker contends that she is "protected by the litigation privilege under California Civil Code § 47." *Id.* at 29.

Plaintiffs contend that the FAC sufficiently alleges extortion pursuant to the California Penal Code as a predicate act for the RICO claims. (ECF No. 60). Plaintiffs contend that Defendant Darren Chaker "has obtained the Plaintiffs' property, i.e. the right to publicity, the goodwill in the business, the Plaintiff's ability to practice law, the Plaintiff's identity and the Plaintiffs' logo." *Id.* at 14-15. Plaintiffs further contend that the FAC alleges cognizable damages in the form of injury to a business or property. *Id.* at 20-21. Plaintiffs contend that federal law, state law, and California state courts define "property" broadly to include the damage to intangible property interests alleged in the complaint. *Id.* at 20-26. Plaintiffs contend that intangible property rights were obtained by Defendant Darren Chaker. *Id.* at 26-30. Plaintiffs contend that the Court should exercise its supplemental jurisdiction over the state law claim of civil extortion. *Id.* at 30-31. Plaintiffs contend that the Noerr-Pennington doctrine has no applicability to this case. (ECF No. 43 at 25). Plaintiffs contend that Defendant Nicole Chaker is not protected by the litigation privilege under California Civil Code section 47. Plaintiffs contend that the FAC adequately alleges that Defendant Nicole Chaker conspired to violate § 1962(c). *Id.* at 20. Plaintiffs contend that the FAC adequately alleges a civil extortion claim. *Id.* at 22-23.

**A. RICO, 18 U.S.C. § 1962(c)**

"The Racketeer Influenced and Corrupt Organizations ('RICO') Act . . . provides for both criminal and civil liability." *Odom v. Microsoft Corp.*, 486 F.3d 541, 545 (9th Cir. 2007) (citing Pub. L. No. 91-452, § 901, 84 Stat. 922 (1970) (codified at 18 U.S.C. §§ 1961-1968)). "Under RICO's civil enforcement mechanism, 'any person injured in

- 5 -

16cv2186-WQH-MDD

1    his business or property by reason of a violation of [18 U.S.C. § 1962] may sue therefor

2    in any appropriate United States district court and shall recover threefold the damages

3    he sustains and the cost of the suit, including a reasonable attorney's fee . . . .'"

4    *Canyon Cty v. Sygenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008) (citing 18 U.S.C.

5    § 1964(c)). "Subsections 1962(a) through (c) prohibit certain 'pattern[s] of racketeering

6    activity' in relation to an 'enterprise.'" *United Bhd. of Carpenters & Joiners of Am. v.*

7    *Bldg. & Const. Trades Dep't, AFL-CIO*, 770 F.3d 834, 837 (9th Cir. 2014). "To have

8    standing under § 1964(c), a civil RICO plaintiff must show: (1) that his alleged harm

9    qualifies as injury to his business or property; and (2) that his harm was 'by reason of'

10   the RICO violation, which requires the plaintiff to establish proximate causation." *Id.*

11   (citing *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992); *Sedima,*

12   *S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).

13       Section 1962(c) provides,

14       It shall be unlawful for any person employed by or associated with any
         enterprise engaged in, or the activities of which affect, interstate or foreign
15       commerce, to conduct or participate, directly or indirectly, in the conduct
         of such enterprise's affairs through a pattern of racketeering activity or
16       collection of unlawful debt.

17   18 U.S.C. § 1962(c). "The elements of a civil RICO claim are as follows: (1) conduct

18   (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as

19   'predicate acts') (5) causing injury to plaintiff's business or property." *United Bhd. of*

20   *Carpenters*, 770 F.3d at 837 (citing *Living Designs, Inc. v. E.I. Dupont de Nemours &*

21   *Co.*, 431 F.3d 353, 361 (9th Cir. 2005)).

22       "A 'pattern of racketeering activity' requires at least two predicate acts of

23   racketeering activity, as defined in 18 U.S.C. § 1961(1) within a period of ten years."

24   *Canyon Cty*, 519 F.3d at 972. "Racketeering activity" as defined by statute includes

25   "any act or threat involving . . . extortion, . . . which is chargeable under State law."

26   18 U.S.C. § 1961(1)(A). To constitute a predicate act of extortion for purposes of a

27   RICO cause of action, the alleged act must satisfy the generic definition of extortion –

28   "obtaining something of value from another with his consent inducted by the wrongful

- 6 -

16cv2186-WQH-MDD

1   use of force, fear, or threats." *United Bhd. of Carpenters*, 770 F.3d at 843 (citing

2   *United States v. Nardello*, 393 U.S. 286 (1969)).

3        In *Scheidler v. National Organization for Women, Inc.*, the Supreme Court

4   considered whether the use or threat of force, violence or fear to cause a party to "'give

5   up' property rights, namely, 'a woman's right to seek medical services from a clinic, the

6   right of the doctors, nurses or other clinic staff to perform their jobs, and the right of the

7   clinics to provide medical services free from wrongful threats, violence, coercion and

8   fear" constituted Hobbs Act extortion or a state extortion offense for purposes of a

9   RICO predicate act. 537 U.S. 393, 400-01 (2003). The Court determined that although

10   "[t]here was no dispute . . . that petitioners interfered with, disrupted, and in some

11   instances completely deprived, respondents of their ability to exercise their property

12   rights . . . . such acts did not constitute extortion because petitioners did not 'obtain

13   respondents' property." *Id.* at 404-05. The Court further stated, "Petitioners may have

14   deprived or sought to deprive respondents of their exclusive control of their business

15   assets, but they did not acquire any such property. Petitioners neither pursued nor

16   received 'something of value from' respondents that they could exercise, transfer or

17   sell." *Id.* (citing *Nardello*, 393 U.S. at 290)).

18        In this case, Plaintiffs allege that the requisite predicate acts are multiple acts of

19   extortion in violation of California Penal Code sections 518, 519, and 523.[2]   An act of

20   extortion which is chargeable under state law can constitute racketeering activity

21   sufficient to support a RICO claim.   *See* 18 U.S.C. § 1961(1)(A). However, to plead

22   extortion as a predicate act, Plaintiffs must allege facts to show that the act involved

23   "obtaining something of value from another." *United Bhd. of Carpenters*, 770 F.3d at

24   843; *Scheidler*, 537 U.S. at 410 ("[W]here as here the Model Penal Code and a majority

25   of States recognize the crime of extortion as requiring a party to obtain or to seek to

26   

27       [2] Plaintiffs allege the cause of action pursuant to 18 U.S.C. § 1962(c) solely
against Defendant Darren Chaker. Plaintiffs do not allege the cause of action pursuant
28   to 18 U.S.C. § 1962(c) against Defendant Nicole Chaker. (ECF No. 25 at 33; ECF No.
43 at 6).

1  obtain property, as the Hobbs Act requires, the state extortion offense for purposes of

2  RICO must have a similar requirement."). Plaintiffs allege that various acts by

3  Defendant Darren Chaker constitute state extortion offenses and predicate acts under

4  RICO because Defendant Darren Chaker obtained from Plaintiffs the "intangible right

5  to practice law and publish decisions on the internet" and the "intangible property right

6  to practice law free of threats, and to practice in accordance with the California Rules

7  of Professional Conduct." (ECF No. 25 at ¶¶ 99-109). The Court concludes that these

8  factual allegations are insufficient to establish that Defendant Darren Chaker obtained

9  something of value from Plaintiffs. *Scheidler*, 537 U.S. at 410. Because Plaintiffs fail

10 to sufficiently allege a predicate act, Plaintiffs fail to state a claim pursuant to 18 U.S.C.

11 § 1962(c). *See, e.g.*, *United Bhd. of Carpenters*, 770 F.3d at 837 (stating that a plaintiff

12 must properly allege a predicate act to state a claim under RICO). The motion to

13 dismiss the cause of action under 18 U.S.C. § 1962(c) filed by Defendant Darren Chaker

14 is granted.

15      **B. RICO Conspiracy, 18 U.S.C. § 1962(d)**

16      Plaintiffs bring a RICO conspiracy cause of action against all Defendants and

17 allege that

18      commencing in 2004 and during and continuing at all times to the present,
        RICO defendants conspired to violate section 1962(c), i.e. each defendant
19      agreed that a conspirator (DARREN) would conduct or participate in the
        affairs of the Enterprise through a pattern of racketeering, including acts
20      involving extortion in violation of California state law, as more fully
        described in the First Claim for Relief.

21

22 (ECF No. 25 at ¶ 116).

23      A civil RICO cause of action is available for a violation of 18 U.S.C. § 1962(d).

24 *See* 18 U.S.C. § 1964(c). Pursuant to 18 U.S.C. § 1962(d), it is "unlawful for any

25 person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this

26 section." 18 U.S.C. § 1962(d). In *Howard v. Am. Online Inc.*, the Ninth Circuit Court

27 of Appeals held that "Plaintiffs cannot claim that a conspiracy to violate RICO existed

28 if they do not adequately plead a substantive violation of RICO." 208 F.3d 741, 751

   (9th Cir. 2000). The Court has determined that Plaintiffs did not adequately plead a

- 8 -                                    16cv2186-WQH-MDD

substantive violation of 18 U.S.C § 1962(c).   The motions to dismiss the RICO conspiracy cause of action under 18 U.S.C. § 1962(d) filed by Defendants Nicole Chaker and Darren Chaker are granted.

### C. Civil Extortion Under State Law

The civil extortion cause of action alleged by Plaintiffs against Defendants Darren Chaker and Nicole Chaker does not arise under federal law. The FAC states that this case is properly in federal court based on federal question jurisdiction[3] and that this Court has supplemental jurisdiction over the remaining state law claim pursuant to 28 U.S.C. § 1367(a) because it is "so related to the claims in the action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." (ECF No. 25 at 2).   The federal supplemental jurisdiction statute provides:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).   "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c).

Having dismissed the only federal claims asserted against Defendant Darren Chaker and Nicole Chaker, the Court declines to exercise supplemental jurisdiction over this state law claim pursuant to 28 U.S.C. § 1367(c). *See San Pedro Hotel Co., Inc. v. City of Los Angeles*, 159 F.3d 470, 478 (9th Cir. 1998). The motions to dismiss the civil extortion cause of action filed by Defendants Nicole Chaker and Darren Chaker are granted.

## V. MOTIONS TO STRIKE BY DARREN CHAKER AND NICOLE CHAKER

---

[3] Plaintiffs also allege, "This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332." (ECF No. 25 at ¶ 1). Plaintiffs have failed to allege sufficient facts to establish diversity jurisdiction and this statement appears to be in reference to 28 U.S.C. § 1331.

- 9 -

16cv2186-WQH-MDD

1  **(ECF Nos. 55, 36)**

2      Defendant Darren Chaker filed a motion to strike portions of the FAC pursuant

3  to Federal Rule of Civil Procedure 12(f). (ECF No. 55). The Court has dismissed the

4  FAC as to Darren Chaker. Accordingly, the Court denies as moot Defendant Darren

5  Chaker's motion to strike. (ECF No. 55).

6      Defendant Nicole Chaker filed an anti-SLAPP motion to strike the third cause of

7  action pursuant to California Code of Civil Procedure section 425.16 and for an award

8  of attorney's fees pursuant to California Code of Civil Procedure section 425.16(c).

9  (ECF No. 36). As a result of the Court's decision to decline supplemental jurisdiction

10  over the state law civil extortion claim, the Court does not reach the merits of this

11  motion. The Court denies as moot Defendant Nicole Chaker's anti-SLAPP motion to

12  strike and for attorney's fees and costs. (ECF No. 36).

13  **VI. MOTION TO DISMISS OR QUASH SERVICE BY VANIA CHAKER (ECF**

14  **No. 59)**

15      "Specially Appearing Defendant" Vania Chaker moves the Court pursuant to

16  Rule 12(b)(5) for an order dismissing the complaint or alternatively, for an order

17  quashing defective service. (ECF No. 59). Defendant Vania Chaker contends that

18  Plaintiffs failed to serve her prior to the Court's February 27, 2017 deadline for service.

19  *Id.* at 4. Defendant Vania Chaker contends that Plaintiffs failed to serve her by personal

20  service on February 6, 2017 at 6:02 p.m. as represented to the Court by Plaintiffs. *Id.*

21  at 3. Defendant Vania Chaker contends that she has "strong and convincing" evidence

22  that Plaintiff's purported proof of service is fabricated because Defendant Vania Chaker

23  was not at this location at that time.[4]  *Id.* at 3-5. Defendant Vania Chaker further

24  _____

25      [4] Defendant Vania Chaker requests judicial notice of decision of the California
    Court of Appeal, Fourth District, Division 1. (ECF No. 59-3). Plaintiffs object to the

26  request for judicial notice. (ECF No. 64-5). The Court does not rely on this material
    in reaching its decision and denies the request for judicial notice. *See, e.g., Asvesta v.*

27  *Petroutsas*, 580 F.3d 1000, 1010 n. 12 (9th Cir. 2009) (denying request for judicial
    notice where judicial notice would be "unnecessary"). Additionally, Defendant Vania

28  Chaker filed evidentiary objections to declarations filed by Plaintiffs. (ECF Nos. 69-2,
    69-3, 69-4). The Court has reviewed and considered these objections. A ruling on

1   contends that the Summons filed by Plaintiffs incorrectly names Vania Chaker as an

2   individual and as trustee of Vania Chaker Trust. *Id.* at 3.   Defendant Vania Chaker

3   contends she should be dismissed from this action because Plaintiffs have failed to

4   complete service despite two extensions of time and have failed to establish good cause

5   for another extension of time. *Id.* at 7.

6       Plaintiffs contend that Defendant Vania Chaker was properly served on Feburary

7   6, 2017.   Plaintiffs contend that the evidence offered in support of Defendant Vania

8   Chaker's motion is not credible and does not establish that she was not home at the time

9   stated in the proof of service filed with the Court.[5]   (ECF No. 64).   Plaintiffs contend

10   that the Court should find service proper based on the substantial compliance doctrine.

11   *Id.* at 5-6.  Plaintiffs request that the Court deny this motion and order Defendant Vania

12   Chaker to respond to the complaint within ten days.   Plaintiffs request that, if the Court

13   grants any portion of the motion, the Court extend time for service, designate counsel

14   for Vania Chaker as agent for service of process, and order that her counsel accept the

15   service by email. *Id.* at 8.

16   **A. Legal Standard**

17       "Without a proper basis for jurisdiction, or in the absence of service of process,

18   the district court has no power to render any judgment against the defendant's person

19   or property unless the defendant has consented to jurisdiction or waived the lack of

20   process." *S.E.C. v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007).   "A federal court is

21   without personal jurisdiction over a defendant unless the defendant has been served in

22   accordance with Fed.R.Civ.P. 4." *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986),

23   amended, 807 F.2d 1514 (9th Cir. 1987) (citing *Jackson v. Hayakawa*, 682 F.2d 1344,

24   1347 (9th Cir. 1982)).   Federal Rule of Civil Procedure 12(b)(5) authorizes a defendant

25   to move to dismiss the complaint for insufficient service of process.   Fed. R. Civ. P.

26   _____

27   these objections is not necessary to resolve this motion.

28       [5] Plaintiffs filed evidentiary objections to the declaration filed by Vania Chaker in support of her motion.  (ECF No. 64-4).  The Court has reviewed and considered these objections.  A ruling on these objections is not necessary to resolve this motion.

- 11 -                    16cv2186-WQH-MDD

Case 3:16-cv-02186-WQH-MDD   Document 107-1 Filed 03/28/22   PageID.3970   Page 564 of
1196
Case 3:16-cv-02186-WQH-MDD   Document 83   Filed 08/28/17   PageID.3525   Page 12 of 16

1  12(b)(5). Once a party challenges service, the plaintiff bears the burden to show that

2  service was valid under Rule 4. *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004).

3  The court has discretion to dismiss an action or quash service if there is insufficiency

4  of process or insufficiency of service. *See SHJ v. Issaquah School District No. 411*, 470

5  F.3d 1288, 1293 (9th Cir. 2006) (citing *Stevens v. Security Pac. Nat'l Bank*, 538 F.2d

6  1387, 1389 (9th Cir. 1976)).

7  　　Under Federal Rule of Civil Procedure 4(e), a plaintiff may serve an individual

8  within a judicial district of the United States by (1) following state law service

9  requirements, or (2) service may be effected upon an individual by (A) delivering a

10  copy of the summons and complaint to the individual personally, (B) by leaving a copy

11  of each "at the individual's dwelling or usual place of abode" with someone of suitable

12  age and discretion who resides there; or (C) by delivering a copy of each to an "agent

13  authorized by appointment or by law to receive service of process." Fed. R. Civ. P.

14  4(e).

15  　　California Code of Civil Procedure section 415.20(a) states,

16  　In lieu of personal delivery of a copy of the summons and complaint to the
   person to be served...a summons may be served by leaving a copy of the
17  summons and complaint during usual office hours in his or her office, or
   if no physical address is known, at his or her usual mailing address... with
18  the person who is apparently in charge thereof, and by thereafter mailing
   a copy of the summons and complaint by first-class mail, postage prepaid
19  to the person to be served at the place where a copy of the summons and
   complaint were left....
20  
   Cal. Code of Civ. P. § 415.20(a).
21  
22  　　If a party receives sufficient notice of the complaint, Rule 4 is to be "liberally

23  construed" to uphold service. *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1404 (9th

   Cir. 1994). "However, 'neither actual notice nor simply naming the defendant in the
24
   complaint will provide personal jurisdiction without substantial compliance with Rule
25
   4.'" *Travelers Cas. & Sur. Co. of Am. v. Brenneke*, 551 F.3d 1132, 1135 (9th Cir. 2009)
26
   (citing *Benny*, 799 F.2d at 492 (citation and quotes omitted)).
27
   **B. Discussion**
28
   　　Plaintiffs filed their original complaint on August 29, 2016 (ECF No. 1) and the

- 12 -                                                    16cv2186-WQH-MDD

FAC on December 5, 2016 (ECF No. 25). On December 20, 2016, this Court issued an order granting Plaintiffs a second extension of time in which to complete service upon Defendant Vania Chaker. (ECF No. 38). The Order stated, "Plaintiffs' new deadline to achieve service on Vania Chaker is Monday, February 27, 2017." *Id.*

On February 27, 2017, Plaintiffs filed Proof of Service of Summons in the Complaint. (ECF No. 58). The document states that Defendant Vania Chaker was served by personal service on February 6, 2017 at 6:02 p.m. in San Diego by a registered process server. (ECF No. 58). Defendant Vania Chaker asserts she was not served on February 6, 2017. Defendant Vania Chaker provides receipts from purchases she made in Manhattan Beach, California around the time of service on February 6, 2017 to establish that she was not in San Diego at this time and date.

In a declaration filed in support of Plaintiffs' opposition, the process server states that on February 6, 2017 around 6 p.m., he observed Vania Chaker at the address stated in the proof of service document. He states that he

> jogged up towards the driveway, calling out "Hey you, Vania" or words to that effect. When I made the statement Ms. Chaker was in speaking distance to me, and my voice was sufficiently elevated to provide her notice that I was attempting to contact her. However, upon hearing my shout, Ms. Chaker, who had exited from the garage . . . made a dash for the front floor of the house. . . . Ms. Chaker entered the house and closed the door behind her. . . . I called out service by stating "your served Vania Chaker", and I tossed the papers over the fence, . . . I was not able to actually 'touch' her with the papers as she was behind a closed gate, and I did not intend to go off the public sidewalk onto private property. However I was within 10 yards of her, and as close as I could get in light of the barrier imposed by her fence.

(ECF No. 64-1 at 4).

Based on the statements offered in the declaration by the process server, the Court cannot conclude that Plaintiffs delivered a copy of the summons and complaint to Defendant Vania Chaker personally. *See* Fed. R. Civ. P. 4(e). Plaintiffs further contend that the Court should uphold service as proper under the substantial compliance doctrine. In *Travelers Cas. & Sur. Co. of Am. v. Brenneke*, the Ninth Circuit Court of Appeals held,

Sufficient service may be found where there is a good faith effort to

- 13 -

16cv2186-WQH-MDD

1    comply with the requirements of Rule 4(e)(2) which has resulted in
2    placement of the summons and complaint within the defendant's
     immediate proximity and further compliance with Rule 4(e)(2) is only
3    prevented by the defendant's knowing and intentional actions to evade
     service.

4    551 F.3d at 1136. While Plaintiffs assert that Defendant Vania Chaker has attempted

5    to evade service and that the process server left the papers in her proximity, Defendant

6    Vania Chaker provides evidence that she was not present at the address when the

7    alleged service was completed. The Court concludes that Plaintiffs have failed to

8    satisfy their burden to demonstrate that service upon Defendant Vania Chaker was

9    proper under Rule 4. *See id.* at 1135 ("neither actual notice nor simply naming the

10   defendant in the complaint will provide personal jurisdiction without substantial

11   compliance with Rule 4."). The Court grants Defendant Vania Chaker's motion to

12   quash service of process. *See Issaquah School District No. 411*, 470 F.3d at 1293

13       However, the Court has determined that Plaintiffs did not adequately plead a

14   substantive violation of 18 U.S.C § 1962(c). Accordingly, Plaintiffs' claim for a

15   conspiracy to violate RICO pursuant to 18 U.S.C. § 1962(d) necessarily fails. *See supra*

16   Part IV.B; *Howard*, 208 F.3d at 751. Conspiracy to violate RICO pursuant to 18 U.S.C.

17   § 1962(d) is the only cause of action alleged against Defendant Vania Chaker. The

18   Court dismisses the FAC without prejudice as to Defendant Vania Chaker. (ECF No.

19   25).

20   **VII. MOTION FOR SANCTIONS BY DARREN CHAKER (ECF No. 66)**

21       Defendant Darren Chaker filed a motion for sanctions against Plaintiffs pursuant

22   to Rule 11 of the Federal Rules of Civil Procedure, or alternatively, the Court's inherent

23   power. (ECF No. 66). Defendant Darren Chaker contends that sanctions are warranted

24   because (1) the allegations in the FAC are "factually baseless from an objective

25   perspective, and were included in the FAC for an improper purpose"; (2) Plaintiffs'

26   RICO claims are frivolous; and (3) Plaintiffs' RICO claims were brought "for the

27   improper purpose of naming Darren's mother . . . and sister . . . as Defendants . . . solely

28   to harass Darren and his family." *Id.* at 2.

- 14 -                                          16cv2186-WQH-MDD

1    Plaintiffs contend that the motion is without merit and that the allegations of the

2    FAC are proper, non-frivolous, and sufficiently supported by facts.  (ECF No. 75).

3    Rule 11 of the Federal Rules of Civil Procedure provides in part,

4    b) Representations to the Court.  By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or

5    later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an

6    inquiry reasonable under the circumstances:

7    (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

8

9    (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

10

11    (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery;...

12

13    Fed. R. Civ. P. 11(b)(3).    When a "complaint is the primary focus of Rule 11

14    proceedings, a district court must conduct a two-prong analysis to determine (1)

15    whether the complaint is legally or factually baseless from an objective perspective, and

16    (2) if the attorney has conducted a reasonable and competent inquiry before signing and

17    filing it."  *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (quotation

18    omitted).  "As shorthand for this test, we use the word 'frivolous' to denote a filing that

19    is both baseless and made without a reasonable and competent inquiry."  *Holgate v.*

20    *Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) (quotation omitted).

21    After reviewing the motion and the submissions of the parties, the Court finds

22    that the record in this case does not support the imposition of sanctions at this stage in

23    the proceedings.  The motion for sanctions is denied.  (ECF No. 66).

24    **VIII. CONCLUSION**

25    IT IS HEREBY ORDERED that Defendant Darren Chaker's motion to dismiss

26    the First Amended Complaint is granted.  (ECF No. 56).  The First Amended Complaint

27    (ECF No. 25) is dismissed without prejudice as to Defendant Darren Chaker.

28    Accordingly, Defendant Darren Chaker's motion to strike portions of the First

Amended Complaint pursuant to Federal Rule of Civil Procedure 12(f) is denied as

- 15 -                                    16cv2186-WQH-MDD

1   moot.  (ECF No. 55).

2      IT IS HEREBY ORDERED that Defendant Darren Chaker's motion for sanctions

3   is denied.  (ECF No. 66)

4      IT IS HEREBY ORDERED that Defendant Nicole Chaker's motion to dismiss

5   the First Amended Complaint is granted. (ECF No. 35).  The First Amended Complaint

6   (ECF No. 25) is dismissed without prejudice as to Defendant Nicole Chaker.  Defendant

7   Nicole Chaker's anti-SLAPP motion to strike and for attorneys' fees and costs is denied

8   as moot.  (ECF No. 36).

9      IT IS HEREBY ORDERED that Defendant Vania Chaker's motion to quash the

10   service of process is granted. (ECF No. 59). The Court quashes service upon Defendant

11   Vania Chaker and grants Plaintiffs sixty (60) days from the date any amended

12   complaint is filed upon which to perfect service upon Vania Chaker in accordance with

13   the requirements of Federal Rule of Civil Procedure 4.

14      IT IS FURTHER ORDERED that the First Amended Complaint (ECF No. 25)

15   is dismissed without prejudice as to Defendant Vania Chaker.  Plaintiffs shall file any

16   motion for leave to file an amended complaint pursuant to Local Rule 7.1 and within

17   thirty (30) days of the date this Order is issued.

18   DATED:  August 28, 2017

19

20               **WILLIAM Q. HAYES**
               United States District Judge

21

22

23

24

25

26

27

28

- 16 -

16cv2186-WQH-MDD

# EXHIBIT B

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

SCOTT A. MCMILLAN, an individual; THE MCMILLAN LAW FIRM, APC, a California professional corporation,

　　　　　　　　　Plaintiffs,

　　v.

DARREN D. CHAKER, an individual, and as trustee of PLATINUM HOLDINGS GROUP TRUST doing business as Counter Forensics, *et al.*,

　　　　　　　　　Defendants.

CASE NO. 16cv2186-WQH-MDD

ORDER

HAYES, Judge:

　　On August 28, 2017, the Court granted a motion to dismiss and dismissed the First Amended Complaint without prejudice. The Order stated, "Plaintiffs shall file any motion for leave to file an amended complaint pursuant to Local Rule 7.1 and within (30) days of the date this Order is issued." (ECF No. 83). The docket reflects that no motion for leave to file an amended complaint was filed within this period. The Clerk of Court is directed to close this case.

DATED:  October 10, 2017

　　　　　　　　　　*William Q. Hayes*
　　　　　　　　　　**WILLIAM Q. HAYES**
　　　　　　　　　　United States District Judge

16cv2186-WQH-MDD

<table>
<tr><td colspan="2">

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**
</td><td>

FOR COURT USE ONLY
</td></tr>
<tr><td colspan="2">

TITLE OF CASE (Abbreviated)
Scott A. McMillan, etc. v. Darren D. Chaker, et al.
</td><td></td></tr>
<tr><td colspan="2">

ATTORNEY(S) NAME AND ADDRESS      TELEPHONE
Timothy J. Grant, Esq. (SBN 122593)
FREDRICKSON, MAZEIKA & GRANT, LLP
5720 Oberlin Drive      Tel: (858) 642-2002
San Diego, CA 92121      Fax: (858) 642-2001
</td><td></td></tr>
<tr><td>

ATTORNEY(S) FOR:
Defendant, Darren D. Chaker, et al.
</td><td>

JUDGE: Hon. William Q. Hayes
Court Room: 14B
</td><td>

CASE No. **16CV2186 JM MDD**
</td></tr>
</table>

## DECLARATION OF SERVICE

I, the undersigned, declare: I am, and was at the time of service of the papers herein referred to, over the age of 18 years, and not a party to this action. My business address is 5720 Oberlin Drive, San Diego, California 92121.

On January 25, 2017, I served the following document(s):

1. **STIPULATION TO EXTEND TIME TO RESPOND TO FIRST AMENDED COMPLAINT;**
2. **[PROPOSED] ORDER RE: STIPULATION TO EXTEND TIME TO RESPOND TO FIRST AMENDED COMPLAINT**

on the parties in this action addressed as follows:

Scott A. McMillan, CBN 212506
**THE MCMILLAN LAW FIRM, APC**
4670 Nebo Drive, Suite 200
La Mesa, California 91941-5230
scott@mcmillanlaw.us
*Attorney for Plaintiffs*

Arthur J. McKeon, III; Rebecca J. Smith
**GILBERT, KELLY, CROWLEY & JENNETT LLP**
550 South Hope Street, 22nd Floor
Los Angeles, California 90071-2627
ajm@gilbertkelly.com; rjs@gilbertkelly.com
*Attorneys for Defendant Nicole Chaker*

[X]    **E-FILING:** By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on January 25, 2017, at San Diego, California.

/s/ Denice P. Zarate
DENICE P. ZARATE

**SULLIVAN, KRIEGER, TRUONG,**
**SPAGNOLA & KLAUSNER, LLP**
Eliot F. Krieger, State Bar No. 159647
*EKrieger@SullivanKrieger.com*
Charles T. Spagnola, P.C., State Bar No. 144983
*CSpagnola@Sullivankrieger.com*
444 West Ocean Boulevard, Suite 1700
Long Beach, CA 90802
Telephone: (562) 597-7070

Attorneys for Defendant DARREN D. CHAKER,
individually, and as trustee of PLATINUM HOLDINGS
GROUP TRUST

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT A. MCMILLAN, an individual, THE MCMILLAN LAW FIRM, APC, a California professional corporation, | ) Case No. 3:16-CV-02186-WQH-MD ) |
| Plaintiffs, | ) Judge: Hon. William Q. Hayes ) Courtroom: 14B ) ) Magistrate: Hon. Mitchell D. Dembin ) Courtroom: 11th Floor |
| v. | ) |
| DARREN D. CHAKER an individual, and as trustee of PLATINUM HOLDINGS GROUP TRUST, dba COUNTER FORENSICS; NICOLE CHAKER, an individual, and as trustee of NICOLE CHAKER TRUST ONE, VANIA CHAKER, an individual and as trustee of VANIA CHAKER TRUST ONE, | ) **[PROPOSED] ORDER RE** ) **DEFENDANT DARREN D.** ) **CHAKER'S MOTION TO SEAL** ) **OR FOR PROTECTIVE ORDER** ) **[Fed. R. Civ. P. 5.2]** ) ) Hearing Date: June 26, 2017 ) Courtroom: 14B ) |
| Defendants. | ) Complaint Filed: August 29, 2016 ) ) **[PER CHAMBERS ORDER, NO** ) **ORAL ARGUMENT UNLESS** ) **ORDERED BY COURT]** ) ) ) |

Having reviewed all the briefs related to Defendant DARREN D. CHAKER'S

("Defendant"), Motion to Seal pursuant to Fed. R. Civ. P. 5.2(d), or, alternatively, for a

Protective Order pursuant to Fed. R. Civ. P. 5.2(e), including the moving papers, the

Opposition filed by plaintiffs Scott A. McMillan and The McMillan Law Firm, APC, a

California Professional Corporation, and Defendant's Reply Brief, and all the files and records in this case, it is here ORDERED that

    1. Exhibit FF to the Plaintiff's original and FAC, and Exhibit C to the Opposition to Darren's Motion for Sanctions (Dkt. 1-30; Dkt. 21-29, p. 3-10; Dkt. 75-1) as well as their re-filed counterparts attached as Exhibit 1 and Exhibit 2 to the Opposition to the Motion to Seal (Dkt 80-2 and 80-3) and Exhibits 4-8 thereto (Dkt. 80-5 to 80-9) be stricken from the record as immaterial and included for an improper purpose under Fed. R. Civ. P. 12(f).

Or

    1. Exhibit FF to the Plaintiff's original and FAC, and Exhibit C to the Opposition to Darren's Motion for Sanctions (Dkt. 1-30; Dkt. 21-29, p. 3-10; Dkt. 75-1), as well as their re-filed counterparts attached as Exhibit 1 and Exhibit 2 to the Opposition to the Motion to Seal (Dkt 80-2 and 80-3) and Exhibits 4-8 thereto (Dkt. 80-5 to 80-9) (be sealed under Fed. R. Civ. P. 5.2(d) and this Court's inherent authority

Or

    1. Exhibit FF to the Plaintiff's original and FAC, and Exhibit C to the Opposition to Darren's Motion for Sanctions (Dkt. 1-30; Dkt. 21-29, p. 3-10; Dkt. 75-1), as well as their re-filed counterparts attached as Exhibit 1and Exhibit 2 to the Opposition to the Motion to Seal (Dkt 80-2 and 80-3) and Exhibits 4-8 thereto (Dkt. 80-5 to 80-9) be placed under a protective order making Darren's private information unavailable for public inspection or review pursuant to Fed. R. Civ. P. 5.2(e).

    2. All counsel shall be restrained from publicly disseminating any portion of any underseal document from this case without further order of this Court and that

all counsel should file all documents in compliance with Rule 5.2 and failure to do so in the future may result in the imposition of sanctions.

3. In light of Plaintiffs' bad faith conduct in repeatedly filing such personal identification, the Court orders sanctions in the amount of $_____.

IT IS SO ORDERED

_____
HONORABLE WILLAM Q. HAYES
UNITED STATES DISTRICT JUDGE

Presented by:

SULLIVAN, KRIEGER, TRUONG,
SPAGNOLA & KLAUSNER LLP

By: _____ /s/Eliot F. Krieger
Eliot F. Krieger, SBN 159647
ekrieger@sullivankrieger.com

Eliot F. Krieger
Attorneys for Defendant DARREN D. CHAKER
individually, and as trustee of
PLATINUM HOLDINGS GROUP TRUST,
dba COUNTER FORENSIC

## **CERTIFICATE OF SERVICE**

I certify that on the 19th day of June 2017, I filed the foregoing document with the Clerk of the Court for the United States District Court, Southern District of California by using the Court's CM/ECF system, which will send notifications of such filing to all counsel of record.

/s/ Eliot F. Krieger
_____
Eliot F. Krieger

1  Ryan G. Baker (Bar No. 214036)
     rbaker@bakermarquart.com
2  Brian T. Grace (Bar No. 307826)
     bgrace@bakermarquart.com
3  BAKER MARQUART LLP
   2029 Century Park East, Sixteenth Floor
4  Los Angeles, California 90067
   Telephone:  (424) 652-7800
5  Facsimile:   (424) 652-7850

6

7  *Attorneys for Specially Appearing*
   *Defendant Vania Chaker*

8

9              UNITED STATES DISTRICT COURT

10            SOUTHERN DISTRICT OF CALIFORNIA

11

12 SCOTT A. MCMILLAN, an individual,        CASE NO. 3:16-CV-02186-WQH-
   THE MCMILLAN LAW FIRM, APC,             MDD
13 a California professional corporation,
                                           **RESPONSE TO PLAINTIFFS'**
14            Plaintiffs,                   **OBJECTIONS TO SPECIALLY**
                                           **APPEARING DEFENDANT VANIA**
15        vs.                              **CHAKER'S DECLARATION IN**
                                           **SUPPORT OF HER MOTION TO**
16 DARREN D. CHAKER, an individual,        **DISMISS PLAINTIFFS' FIRST**
   and as trustee of PLATINUM              **AMENDED COMPLAINT, OR, IN**
17 HOLDINGS GROUP TRUST, dba               **THE ALTERNATIVE, TO QUASH**
   COUNTER FORENSICS; NICOLE               **DEFECTIVE SERVICE**
18 CHAKER, an individual, and as trustee
   of THE NICOLE CHAKER TRUST,
19 U/A dated August 18, 2010, VANIA        The Hon. William Q. Hayes
   CHAKER, and individual and as
20 beneficiary of The Island Revocable     Date: April 10, 2017
   Trust under Declaration of Trust dated  Courtroom: 14B
21 June 2, 2015, MARCUS MACK as            Complaint Filed: August 29, 2016
   trustee of The Island Revocable Trust
22 under Declaration of Trust dated June 2,
   2015,
23
              Defendants.
24

25

26

27

28

SPECIALLY APPEARING DEFENDANT VANIA CHAKER'S RESPONSE TO PLAINTIFFS' EVID. OBJS.

569

Specially appearing Defendant Vania Chaker ("Defendant") hereby submits her Response to Plaintiffs' Objections to the Declaration of Vania Chaker in Support of Her Motion to Dismiss Plaintiffs' First Amended Complaint, or in the Alternative, to Quash Defective Service ("Chaker Declaration") as follows:

## I. PLAINTIFFS' OBJECTION TO EXHIBIT B OF THE CHAKER DECLARATION

Plaintiffs object to Exhibit B of the Chaker Declaration ("Exhibit B"), an automatically generated receipt from the Pottery Barn located at 3200 North Sepulveda Blvd, Manhattan Beach, California delivered to the email address vaniachaker@gmail.com at 8:04 p.m., February 6, 2017. Plaintiffs claim that Exhibit B is hearsay attempting to demonstrate that Ms. Chaker made the purchase. Plaintiffs argue that Ms. Chaker's name is not on the receipt, she cannot verify that the receipt was generated "automatically," and that it is "untrustworthy." (Plaintiffs Objections, pp. 2-4.) These desparate argument should be rejected.

Exhibit B supports Ms. Chaker's sworn testimony that she was in Manhattan Beach, California on the evening of February 6, 2017, and not in San Diego where Plaintiffs contend she was personally served. Store receipts are regularly accepted as evidence that a purchase was made. *See Spann v. J.C. Penney Corp.*, 2015 WL 1526559, at *1 (C.D. Cal. Mar. 23, 2015); *American Exp. Travel Related Services Co, Inc. v. D & A Corp.*, 2007 WL 3217565, at *8 (E.D. Cal. Oct. 29, 2007).

More importantly, in her supplemental declaration, Ms. Chaker provides additional evidence demonstrating she made the purchase documented in Exhibit B. (Supplemental Declaration of Vania Chaker ("Supp. Chaker Decl."), ¶¶ 5, 9; Exs. B, D.) Ms. Chaker located the paper receipt she received from the Pottery Barn that matches the information in Exhibit B. (Id., Ex. B.) She also submits a page from her credit card statement that shows on she made the purchase shown in Exhibit B. (Id., Ex. D.)

1
SPECIALLY APPEARING DEFENDANT VANIA CHAKER'S RESPONSE TO PLAINTIFFS' EVIDENTIARY OBJECTOINS.

570

1    Based on the additional evidence supplied by Ms. Chaker, there can be no

2  dispute that she made the purchase documented in Exhibit B, in Manhattan Beach,

3  California, at 8:04 p.m., on February 6, 2017.

4

5  DATED: April 3, 2017

                                    BAKER MARQUART LLP

6

7                                   /s/ Ryan G. Baker
                                    Ryan G. Baker
8                                   Brian T. Grace
                                    *Attorneys for Specially Appearing*
9                                   *Defendant Vania Chaker*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  STEPHEN J. ERIGERO (SBN 121616)
   E. LACEY  RICE (SBN 266748)
2  EDUARDO A. BRAVO (SBN 327967)
   **ROPERS MAJESKI PC**
3  445 South Figueroa St, 30th Floor
   Los Angeles, CA  90071
4  Telephone:  213.312.2000
   Facsimile:   213.312.2001
5  Email:      stephen.erigero@ropers.com
   Email:      lacy.rice@ropers.com
6  Email:      eduardo.bravo@ropers.com

7  Attorneys for Defendant
   DARREN D. CHAKER
8

9           **UNITED STATES DISTRICT COURT**

10         **SOUTHERN DISTRICT OF CALIFORNIA**

11

12  SCOTT A. MCMILLAN, an individual;      Case No. 3:16-cv-2186-WQH-MDD
    THE MCMILLAN LAW FIRM, APC,
13  a California professional corporation,  *Hon. William O.  Hayes*
                                            *Courtroom 14B*
14              Plaintiffs,
                                            **DECLARATION OF EDUARDO**
15       v.                                 **A. BRAVO IN SUPPORT OF**
                                            **DEFENDANT DARREN D.**
16  DARREN D. CHAKER, an individual,        **CHAKER'S MOTION TO SEAL**
    and as trustee of PLATINUM              **PORTIONS OF PLAINTIFF**
17  HOLDINGS GROUP TRUST, dba               **SCOTT A. MCMILLAN'S**
    COUNTER FORENSICS; NICOLE               **COMPLAINT AND FIRST**
18  CHAKER, an individual, and as trustee   **AMENDED COMPLAINT**
    of THE NICOLE CHAKER
19  REVOCABLE LIVING TRUST, U/A             **[***Filed Concurrently with Notice of***
    dated August 18, 2010, VANIA           ***Motion, Memorandum of Points and***
20  CHAKER, an individual and as            ***Authorities, Request for Judicial***
    beneficiary of The Island Revocable    ***Notice and (Proposed) Order]***
21  Trust under,
                                            **DATE:  AUGUST 3, 2020**
22              Defendants.
                                            ***NO ORAL ARGUMENT UNLESS***
23                                          ***REQUESTED BY THE COURT***

24
                                            Action Filed:   August 29, 2016
25                                          Trial Date:     None

26

27

28

4814-8245-7025.1

## DECLARATION OF EDUARDO A. BRAVO

I, EDUARDO A. BRAVO, declare as follows:

1. I am an attorney licensed to practice law before all court in the State of California and the United States District Court, Southern District of California. I am an associate with the law firm of Ropers, Majeski, Kohn & Bentley, counsel of record for Defendant DARREN D. CHAKER ("Defendant") in the matter entitled *Scott A. McMillan et al. v. Darren D. Chaker, et al.* I make this declaration in support of Defendant's Motion to Seal Portions of Complaint and First Amended Complaint ("FAC"). Except as otherwise indicated, I have personal knowledge of the matter set forth below, and could competently testify thereto if called to do so.

2. On September 27, 2017, Plaintiffs SCOTT A. MCMILLAN, ("McMillan") and THE MCMILLAN LAW FIRM, APC's (collectively, Plaintiffs") filed their related complaint in the Superior Court of the State of California, County of San Diego, Case No. 37-2017-00036344-CU-NP-CTL, in the matter *Scott A. McMillan et al. v. Darren D. Chaker, et. al.*, alleging two causes of action against Defendant: (1) Civil Extortion; and (2) Unfair Competition, Bus. & Prof. Code section 17200.

3. On or about August 29, 2016, Plaintiffs filed their Complaint in the United States District Court, Southern District of California, alleging three causes of action against Defendant: (1) Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1962(c); (2) Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1962(d); and (3) Civil Extortion. Attached hereto as Exhibit "A" is a true and correct copy of Plaintiffs' Complaint.

4. On or about December 5, 2016, Plaintiffs filed their FAC in the United States District Court, Southern District of California, alleging the same causes of action as in the Complaint. Attached hereto as Exhibit "B" is a true and correct copy of Plaintiffs' FAC.

5. On or about June 29, 2018, the court in Superior Court of the State of

ROPERS MAJESKI

A Professional Corporation
Los Angeles

4814-8245-7025.1

- 2 -

California, County of San Diego, Case No. 37-2017-00036344-CU-NP-CTL, in the matter *Scott A. McMillan et al. v. Darren D. Chaker, et. al*., published a Minute Order granting in part Defendant's motion to seal portions of the state court compliant related to Defendant's paternity case. Attached hereto as "Exhibit C" is a true and correct copy of the court's Minute Order.

6. In a good faith effort to meet and confer on the matters set forth in the instant Motion, my office sent a letter on May 26, 2020 by e-mail to counsel for Plaintiffs stating Defendant's intention to seal portions of the Complaint and FAC. Attached hereto as Exhibit "D" is a true and correct copy of this correspondence.

7. On May 26, 2020, Plaintiffs' counsel Scott A. McMillan responded to the issues laid out in the initial meet and confer letter dated May 26, 2020. Attached hereto as Exhibit "E" is a true and correct copy of this correspondence.

8. Despite these meet and confer efforts, the parties have not reached an agreement resolving the issues raised in the instant Motion.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 25th day of June, 2020 in Los Angeles, California.

EDUARDO A. BRAVO

4814-8245-7025.1

- 3 -

ROPERS
MAJESKI

A Professional Corporation
Los Angeles

# EXHIBIT A

1 | Scott A. McMillan, CBN 212506
  | **THE MCMILLAN LAW FIRM, APC**
2 | 4670 Nebo Drive, Suite 200
  | La Mesa, California 91941-5230
3 | (619) 464-1500 x 14
  | Fax: (619) 828-7399
4 |
  | Attorney for Plaintiff,
5 | Scott A. McMillan and The McMillan Law Firm, APC
6 |
7 |
8 |                    UNITED STATES DISTRICT COURT
9 |                  SOUTHERN DISTRICT OF CALIFORNIA
10 |
11 | SCOTT A. MCMILLAN, an individual,        Civil Case No.: '16CV2186 JM  MDD
   | THE MCMILLAN LAW FIRM, APC, a
12 | California professional corporation,     Complaint for
   |                                          1.      Racketeer Influenced and
13 |           Plaintiffs,                    Corrupt Organizations Act (18
   |                                          U.S.C. §§ 1962(c))
14 |      vs.                                 2.      Racketeer Influenced and
   |                                          Corrupt Organizations Act (18
15 | DARREN D. CHAKER an individual,          U.S.C. §§ 1962(d))
   | and as trustee of PLATINUM              3.      Civil Extortion
16 | HOLDINGS GROUP TRUST, dba
   | COUNTER FORENSICS; NICOLE                     DEMAND FOR JURY TRIAL
17 | CHAKER, an individual, and as trustee of
   | NICOLE CHAKER TRUST ONE,
18 | VANIA CHAKER, an individual and as
   | trustee of VANIA CHAKER TRUST
19 | ONE,
20 |           Defendants.
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

Plaintiffs allege as follows:

**JURISDICTION**

1. This Court has jurisdiction over the subject matter of the causes of action in this complaint by virtue of:

a. federal question jurisdiction pursuant to 28 U.S.C. § 1331, involving an action pursuant to 18 U.S.C. § 1964(c), the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"). This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §1332;

b. supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), involving claims that are so related to claims in the action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution; and

2. This Court has jurisdiction over the person of the Defendant Darren Chaker because Defendant transacts business within this judicial district, and Defendant is amenable to service of process within the meaning of Federal Rule of Civil Procedure Rules 4(e), 4(f), and 18 U.S.C. § 1965(b).

3. Further, this District Court, the Hon. Larry A. Burns, District Judge presiding, has jurisdiction over Defendant because Defendant is under an order of supervised release according to the terms of sentence of Defendant's conviction for bankruptcy fraud, *United States v. Chaker*, U.S.D.C., So. Dist. California, Case No. 3:15-cr-07012-LAB.

4. Venue is proper in this district pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391 because Defendants transacts business in this district or, alternatively, this district is where a substantial part of the events or omissions giving rise to the claim occurred.

**THE PARTIES**

5. Plaintiff, SCOTT A. MCMILLAN (hereinafter referred to as "Plaintiff McMillan"), is a resident of the State of California, County of San Diego. Plaintiff is a California licensed attorney, and is engaged in intra-state, and interstate commerce in the course of his practice. Plaintiff McMillan also operates a law school, the McMillan

1  Academy of Law, a Caliornia corporation, which is unaccredited, but registered with the

2  Committee of Bar Examiners, State Bar of California.

3      6.  Plaintiff, THE MCMILLAN LAW FIRM, APC, a California professional

4  corporation, (hereinafter referred to as "Plaintiff TMLF") has its principal place of

5  business in the County of San Diego, State of California. Plaintiff McMillan operates

6  Plaintiff TMLF.

7      7.  Defendant, DARREN CHAKER (a.k.a. Darren Del Nero a.k.a. Darren Del

8  Nero-Chaker a.k.a. Darren Shaker, a.k.a. D. David Hunter) (hereinafter referred to as

9  "Defendant DARREN"), is presently a resident of the State of California, County of San

10 Diego. Defendant DARREN conducts business through and holds assets as trustee in

11 PLATINUM HOLDINGS GROUP TRUST, a self-settled trust.  Plaintiff is further

12 informed and believes that Defendant DARREN conducts business under the pseudonym

13 or doing-business-as "COUNTER FORENSICS." Defendant DARREN was deemed a

14 vexatious litigant in Superior Court of California, County of San Diego Case Nos. 591421

15 (December 2, 1997) and GIC757326 (June 22, 2001).

16     8.  Defendant VANIA CHAKER (hereinafter referred to as "Defendant VANIA")

17 is presently a resident of the State of California, County of San Diego, and is Defendant's

18 Darren's sister.  On one or more occasions, VANIA has participated in the acts set forth

19 herein, providing assistance to Defendant DARREN in committing predicate acts.

20 Plaintiff is informed and believes that Defendant VANIA conducts business through and

21 holds assets as trustee in a trust of an unknown name, which shall be referred to herein as

22 VANIA CHAKER TRUST ONE, a self-settled trust.  Plaintiff intends to amend the name

23 of that trust at such time as it becomes known to Plaintiff herein, and substitute the true

24 name for that trust at that time.

25     9.  Defendant NICOLE CHAKER (hereinafter referred to as "Defendant

26 NICOLE"), is the mother of Defendant DARREN and Defendant VANIA. On one or

27 more occasions, Defendant NICOLE has participated in the acts set forth herein,

28 providing assistance to Defendant DARREN in committing predicate acts. Plaintiff is

Complaint                                3

1  informed and believes that Defendant NICOLE conducts business through and holds

2  assets as trustee in a trust of an unknown name, which shall be referred to herein as

3  NICOLE CHAKER TRUST ONE, a self-settled trust.  Plaintiff intends to amend the

4  name of that trust at such time as it becomes known to Plaintiff herein, and substitute the

5  true name for that trust at that time.

6  **DEFENDANTS' ENTERPRISE AND PREDICATE ACTS**

7  10.  Plaintiffs are informed and believe, and based thereon allege that Defendant

8  VANIA is an attorney, currently licensed to practice law in the State of California.

9  Defendant VANIA has lived at various times in California and the Pennsylvania.

10  Defendant VANIA, as a profession, both individually on her own account and to assist

11  Defendants DARREN and NICOLE, engaged in litigation based on meritless or outright

12  false claims, typically relying upon the Fair Credit Reporting Act, 15 U.S.C. § 1681, and

13  on at least one occassion bringing a claim for personal injury, deriving income from such

14  fraudulent activity.  As part of her pattern of racketeering activity, Defendant VANIA has

15  attempted and sometimes succeeded in collecting unlawful debts, i.e., a claim based on

16  false or meritless legal claims, and derived income from such false claims and unlawful

17  threats of suit.  For instance in *Vania Chaker v. Monarch Group Management, Inc.*,

18  U.S.D.C. So. Dist. of Cal., Case No. 06cv1534W(AJB), Defendant VANIA borught a

19  class action complaint for violation of the Federal Fair Debt Collections Practices Act, 15

20  U.S.C. § 1692, et seq. and the California Rosenthal Fair Debt Collection Practices Act,

21  arising from her landlord's service upon her of a three day notice to pay rent or quit.

22  Within the U.S. District Court for the Southern District of California, Defendant VANIA

23  has brought three other cases based on allegations of violations of the Fair Debt

24  Collection Practices Act, e.g., *Vania Chaker v. Collection Company of America*, U.S.D.C.

25  So. Dist. of Cal., Case No. 05cv390 BEN(AJB) [unpaid T-mobile cellular phone

26  charges]; *Vania Chaker v. Allied Interstate, Inc.*, U.S.D.C. So. Dist. of Cal., Case No.

27  05cv0212 LAB(RBB)[unpaid DirectTV bills]; *Vania Chaker v. CAMCO*, U.S.D.C. So.

28  Dist. of Cal., Case No. 04cv1735 W(RBB).

Complaint                                          4

1      11.  Plaintiffs are informed and believe, and based thereon allege that Defendant

2  VANIA did not solely file such suits in the U.S. District Court for the Southern District of

3  California, but also assisted in cases in the Central District of California, appearing as

4  attorney in the suit brought by Defendant DARREN *subnom* (Darren Del Nero) and

5  Defendant NICOLE alleging defendant's violations of the Federal Fair Debt Collections

6  Practices Act, 15 U.S.C. § 1692, et seq..  Specifically, Defendants DARREN and

7  NICOLE brought suit against Midland Credit Management Inc., in the case of *Del Nero*

8  *& Chaker, et al., v. Midland Credit Management Inc*.,  U.S.D.C. Cen. Dist. of Cal., Case

9  No. 2:04-cv-01040-ABC-SH.  Defendant DARREN  and his attorneys were sanctioned

10  $155,979.09 after the court found that Defendant DARREN  brought suit in bad faith and

11  for the purpose of harassment.  (*Del Nero* v. *Midland Credit Management Corp. et al*.,

12  2:04-cv-01040-ABC-SH.(Attorneys fee award later vacated against Chaker's counsel.)

13  The Court issued an order to show cause re contempt for Defendant VANIA's conduct

14  during the jury trial, and barred her from the courtroom during the remainder of the trial.

15  The court's basis for the order was that Defendant VANIA attempted to aid a witness in

16  answering counsel's questions. [ECF 91.] Defendant VANIA also represented Defendant

17  DARREN *subnom* (Darren Del Nero) in  *Darren Del Nero* v. *Reliable Adjustment Bureau*

18  *Inc et al*, U.S.D.C. Cen. Dist. of Cal., Case No. 2:04-cv-00969-FMC-JWJ, another case

19  alleging violations of 15 U.S.C., § 1681.  In each of those instances, in a likely effort to

20  avoid Defendant DARREN's prefiling order as a vexatious litigant, Defendant VANIA

21  initially appeared on Defendant DARREN's behalf, then substituted out to allow

22  Defendant DARREN to prosecute the case *in propria persona*.  Defendant VANIA

23  engaged in such transitory representation of Defendant DARREN to assist him avoiding

24  the bar of the prefiling orders placed resulting from his designation as a vexatious litigant.

25      12.  As to Defendant DARREN, Plaintiffs are informed and believe, and based

26  thereon allege that Defendant DARREN holds himself out to the public as operating a

27  business called COUNTER FORENSICS.  The COUNTER FORENSICS web page

28  described its services as follows:

---

Complaint                                                 5

"Founded in 2006, the origination of CounterForensics.com can be traced to the cyber security and forensics background of our consultant, Darren Chaker. Mr. Chaker (www.DarrenChaker.com) previously worked in law enforcement, and as a security contractor in the Middle East. More recently, Mr. Chaker managed electronic discovery (e-discovery) for a leading multinational law firm conducting large-scale digital forensic investigations, and provided electronic discovery services involving civil, corporate and criminal matters. Mr. Chaker also implemented security enforcement protocols and systems with Military Grade Communications for use between international offices to discuss sensitive matters. Mr. Chaker has additional expertise in matters involving:

• Software piracy;

• Sexual harassment via e-mail, instant messaging and other forms of electronic communications;

• Monitoring employee activity;

• Employee sabotage;

• Intrusion detection;

• Recovery of deleted files;

• Lost password recovery and cracking of locked files;

• Discovery of hidden and deleted e-mails and pictures;

• Internet usage and unauthorized software installed on a company machine; and Removal of viruses, pictures, software and other data items which may be hidden from the user.

See **Exhibit 6**, https://web.archive.org/web/20150208142616/http://www.counterforensics.com/ (Accessed on August 23, 2016.)

13. At various times relevant to the facts stated herein, Defendant DARREN has resided in California, Nevada and Texas, and engaged in transactions and acts affecting

interstate commerce:

14. Defendant DARREN has, as a profession, engaged in litigation based on meritless or outright false claims, typically relying upon the Fair Credit Reporting Act, 15 U.S.C. § 1681, and on at least one occassion bringing a claim for personal injury, deriving income from such fraudulent activity. As part of his pattern of racketeering activity, Defendant DARREN has attempted and sometimes succeeded in collecting unlawful debts, i.e., a claim based on false or meritless legal claims, and derived income from such false claims and unlawful threats of suit.

15. In another 2005 case, attorney's fees of $42,934.84 were awarded against Defendant DARREN for filing a baseless lawsuit. (*Chaker v. Richland* (C.D. Cal. 2005) CV 05-7851-RSWL; *See also Chaker v. Imperial Collection Services* (C.D. Cal. 2004) CV 04-2728-PA (alleging claims under the FDCPA found to be without merit); and *Del Nero v. Riddle & Associates PC, et al.* (C.D. Cal. 2003) CV 03-6511-GHK (same).) In a 2007 case, Defendant DARREN and his attorneys were sanctioned $155,979.09 after the court found that Defendant DARREN brought suit in bad faith and for the purpose of harassment. (*Del Nero v. Midland Credit Management Corp. et al*. (C.D. Cal. 2007) CV 04-1040 GPS.) In a 2009 case, Defendant DARREN was ordered to pay $136,316.14 for bad faith due to Defendant DARREN falsely claiming identity theft. (*Chaker v. Nathan Enterprises Corp.* (C.D. Cal. 2009) CV 04-2726-RSWL.)

16. Defendant DARREN filed other suits based allegations of violations of Fair Credit Reporting Act, 15 U.S.C. § 1681, i.e., *Darren Chaker-Del Nero v. Afni, Inc.*, U.S.D.C. Cen. Dist. of Cal., Case No. 2:08-cv-03405-ODW-SS; *Darren D Chaker v. First City Bank Credit Union*, U.S.D.C. Cen. Dist. of Cal., Case No. 2:04-cv-02727-GPS-RZ; *Darren D Chaker v. Factual Data Corporation*, U.S.D.C. Cen. Dist. of Cal., Case No. 2:04-cv-02729-JFW-AJW; *Darren D Chaker v. European Auto House*, U.S.D.C. Cen. Dist. of Cal., Case No. 2:04-cv-02731-R-PJW; *Darren Chaker v. Arrow Financial Services* LLC, U.S.D.C. Cen. Dist. of Cal., Case No. 2:04-cv-07050-FMC-FMO.

---

Complaint                                                                 7

17. Defendants have a pattern of attacking the attorneys which oppose them, i.e., in *Darren D Chaker v. Felipa R. Richland, et al.*, U.S.D.C. Cen. Dist. of Cal., Case No. 2:05-cv-07851-RSWL-PLA, Defendant DARREN sued attorney Richland and her law office, and her client Nathan Enterprises Corp. for alleged violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681. Plaintiff is informed and believes and based thereon alleges that during her defense of the both cases, Ms. Richland was stalked, her property vandalized. Ultimately, Ms. Richland and her client prevailed, with Defendant DARREN held liable for costs and attorneys fees. [ECF 25, 26.]

18. Defendant DARREN, subnom *Darren Chaker Del-Nero*, brought additional suits in the United States District Court for the District of Nevada based on allegations of violation of the Fair Credit Billing Act, 15 U.S.C. § 1666, e.g., *Chaker-Delnero v. Nevada Federal Credit Union, et al*, U.S.D.C. District of Nevada., Case No., 2:06-cv-00008-BES-GWF; for violations of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692, *Chaker-Delnero v. Butler & Hailey, et al*, U.S.D.C. District of Nevada., Case No. 2:06-cv-00022-KJD-LRL, *Chaker-Delnero v. Clark County Collection Service, LLC*, U.S.D.C. District of Nevada, 2:06-cv-00123-JCM-PAL, and *Chaker-Delnero v. Collectco*, U.S.D.C. District of Nevada, 2:06-cv-00244-RLH-GWF. In each of these cases, docket entries reflect a voluntary dismissal. Plaintiff is informed and believes that in those cases, the Defendants paid a sum to "buy their peace" rather than to spend attorneys fees litigating the case, despite the lack of the merit to Defendant DARREN's claims.

19. Defendant DARREN, subnom *Darren Chaker*, brought additional suit in the United States District Court for the Southern District of Texas (Houston) based on allegations of violation of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692, *Chaker v. The CMI Group*, U.S.D.C. Southern District of Texas (Houston), 4:07-cv-01802F [Time Warner Communications.] In that case, the docket entries reflect a voluntary dismissal. Plaintiff is informed and believes that in that case, the Defendants paid a sum to "buy its peace" rather than to spend attorneys fees litigating the case,

1   despite the lack of the merit to Defendant DARREN's claims.

2       20.  Defendant DARREN, subnom *David Hunter*, brought additional suit in the

3   United States District Court for the District of Arizona, entitled *Hunter v. Receivables*

4   *Performance Management, LLC*, U.S.D.C. District of Arizona, 2:10-cv-00665-MHM

5   [Sprint cellular phone service].  Within that suit Defendant DARREN attached letters

6   claiming an address at 11881 S. Fortuna Road, #223, Yuma, AZ 85367 [Exhibit B, ECF

7   1-3.] In that case, the docket entries reflect a voluntary dismissal. Plaintiff is informed

8   and believes that in that case, the Defendant paid a sum to "buy its peace" rather than to

9   spend attorneys fees litigating the case, despite the lack of the merit to Defendant

10  DARREN's claims.

## SEX TRAFFICKING

12      21.  Plaintiff is informed and believes and based thereon alleges that Defendant

13  DARREN also engaged, within the last ten years, in human trafficking, and derived

14  income from such activity.

15      22.  Defendant DARREN's record of arrests and prosecutions (RAP) reveals

16  arrests for insufficient funds/check, attempting to prevent/dissuade victim/witness,

17  receiving known stolen property, vehicle theft, first degree burglary, grand theft, and

18  being in possession of an assault weapon. He was convicted of invading/looking into a

19  tanning booth (1997), and possession of an assault weapon (2006). Such crimes were

20  punishable by a year or more incarceration.

21      23.  Defendant DARREN also obtained mortgages on real estate through false

22  statements, and thereafter rather than paying the mortgages, Defendant DARREN kept the

23  rents from such properties to fund his enterprises, and when his mortgagors sought to

24  recover their real property collateral, Defendant DARREN filed false bankruptcy petitions

25  in order to stall or avoid the foreclosure and continue to collect rental income.

26      a.  Defendant DARREN used the ill-gotten proceeds of his enterprise to fund his

27          lifestyle and further his illegal activities including through the purchase of

28          computers, paying for travel, development of various domain names and online

1   presences to the detriment of Plaintiff herein.

2   b.  In order to dissuade those members of law enforcement and attorneys in private

3   practice who would challenge Defendant DARREN's criminal conduct, including

4   Plaintiff herein, Defendant DARREN used various means and threats, including

5   harassment, stalking, defaming others, vandalizing property, hacking computers,

6   spoofing emails, and identity theft.

7   c.  Defendant DARREN has used the proceeds of his racketeering activity to

8   purchase computers, equipment, and Internet access services in order to engage in

9   his and the other Defendants VANIA and NICOLE's frauds, and efforts to

10  dissuade those who oppose their illegal conduct, including Plaintiff herein.

11  d.  On March 22, 2012, Defendant DARREN was indicted in *United States v.*

12  *Darren David Chaker,* Case No. 4:12CR00168-001, and thereafter granted pre-

13  trial release under supervision with U.S. Pretrial Services.  The Indictment,

14  attached as **Exhibit 1**, alleges a portion of Defendants' scheme, which Plaintiff

15  incorporates by reference here.

16  e.  While on supervision with U.S. Pretrial Services, through false statements to a

17  United States officer, he violated his terms of release by failing to disclose to U.S.

18  Pretrial Services and the Court the fact that he procured a U.S. Passport using the

19  alias "D. David Hunter."

20  f.  On December 17, 2013, Defendant DARREN suffered a Judgment in a

21  Criminal Case in the case entitled *United States v. Darren David Chaker,* Case No.

22  4:12CR00168-001, in the  United States District Court for the Southern District of

23  Texas (Houston), for Bankruptcy Fraud, 18 U.S.C § 157(3).  On April 14, 2016,

24  that conviction was affirmed by the United States Court of Appeals for the Fifth

25  Circuit, case number 14-20026, as reported in  *United States v. Chaker,* 820 F.3d

26  204, 206 (5th Cir. 2016). He was sentenced to a total term of 15 months, and was

27  additionally sentenced to three years supervised release, as part of the special

28  conditions of supervision was ordered:

---

Complaint                                                        10

"The defendant shall provide the probation officer access to any requested financial information. If a fine or restitution amount has been imposed, the defendant is prohibited from incurring new credit charges or opening additional lines of credit without approval of the probation officer.

The defendant is prohibited from possessing a credit access device, such as a credit card, unless first authorized by the probation officer.

The defendant is required to participate in anger management counseling as deemed necessary and approved by the probation officer. The defendant will incur costs associated with such program, based on ability to pay as determined by the probation officer.

The defendant is required to participate in a mental health program as deemed necessary and approved by the probation officer. The defendant will incur costs associated with such program, based on ability to pay as determined by the probation officer.

The defendant may not stalk and/or harrass other individuals to include, but not limited to, posting personal information of others or defaming a person's character on the internet."

(ECF 312, 4:12CR00168-001)

## DEFENDANTS' PRIOR ACTS OF EXTORTION AND WITNESS TAMPERING

24. Defendants rely on keeping their past conduct, criminal convictions, lawsuits, and generally bad reputation out of public view. To accomplish this the defendants regularly use pseodynms, attempt to seal documents and proceedings which may alert the public to information about Defendants that if known, would provide a defense or would affect a fact-finder's view on their credibility.

25. Defendant DARREN falsely, and in order to gain credibility with unknowing law enforcement and laypersons, holds himself out as a former law enforcement officer or government security employee, including at various times claiming an "Ex-cop" or to be an employee of the "Diplomatic Security Service."

26. **Victim Zaya**: Plaintiffs are informed and believe that, in accordance with Defendants' common plan and scheme, Defendant DARREN committed one or more acts of extortion against Nadine Zaya:

a. Plaintiff is informed and believes, and based thereon alleges, that Defendant DARREN formerly had a dating relationship with Nadine Zaya. At some point between August and October 2002, Defendant DARREN and Zaya, traveled from

Southern California to Scottsdale, Arizona. Petitioner took Zaya to a gun store, where he purchased the Rifle, a licensed reproduction of a Fabrique Nationale FAL (FN-FAL) battle weapon.8 At the gun store, petitioner told Zaya he once owned "the exact same gun" but his mother had taken it away from him.

b.  After Defendant DARREN purchased the Rifle, he made Zaya take pictures of him with it. He also made Zaya pose with the Rifle. Defendant DARREN then took Zaya to a firing range, where he fired the Rifle and showed her how to shoot, hold, and load it. When Zaya held the Rifle, Defendant DARREN reassured her, "It's okay. Look, it's fun. . . . You're going to be okay. I'm an ex-cop. I know how to shoot a gun." Shortly thereafter, petitioner and Zaya returned to California with the Rifle.

c.  On October 14, 2002, Laguna Beach police officers visited Defendant DARREN's apartment to investigate allegations that he had sexually exploited a minor. A police officer entered the apartment, knocked on a bedroom door, and identified himself as a police officer. After some delay, Defendant DARREN emerged from the bedroom and told the officer the room belonged to him. He refused, however, to permit the police officers to search it. Defendant DARREN called Zaya after the police officers left the apartment. He expressed concern that the fully-assembled Rifle would be considered an illegal weapon.  Defendant DARREN told Zaya he was going to remove parts from the Rifle to "make it legal" and asked her to keep the parts.  The next day, the police officers returned to Defendant DARREN's apartment with a search warrant. During the search, an officer found the Rifle in petitioner's bedroom closet. He noticed the Rifle had a detachable magazine and a pistol grip, but that it was missing its bolt carrier group. The officers also found unloaded magazines and pictures of petitioner posing with the Rifle at a firing range. In the pictures, the Rifle contained the bolt and the magazine.

d.  On November 18, 2002, the District Attorney of Orange County filed a felony

complaint charging defendant with one count of possession of an assault weapon (Penal Code § 12280(b)) and one count of receiving stolen property (Penal Code § 496, subd. (a)). Shortly after the People filed the complaint, defendant began writing letters to the court. In these letters, defendant claimed the police had illegally seized privileged documents from his apartment. He also criticized the judges presiding over his case and the attorneys assigned to represent him. On July 30, 2003 -- after defendant had written six letters to various judges -- the court ordered defendant to stop. The court notified defendant it would "not take action on personal communications from a represented defendant when his case is pending before this court." (*People v. Chaker*, No. G037362, 2008 Cal. App. Unpub. LEXIS 999, at *4-5 (Ct. App. Feb. 4, 2008).)

e. Plaintiffs are informed and believe that in July 2005, the Superior Court of California, County of San Diego issued a restraining order against Darren D. Chaker pursuant to the Domestic Violence Protection Act (Fam. Code, § 6200 et. seq. (the Act)), requiring him to stay away from Nadine Zaya for a five-year period. He appealed from that order on various grounds, contending in part that Zaya's evidence was insufficient to support its issuance; the Court of Appeals of California, Fourth District, Division One, however, rejected his arguments and affirmed the order.

f. On June 15, 2006, Zaya filed a request for a temporary restraining order under the Act against Chaker. In her request, Zaya stated under penalty of perjury that Chaker made threatening calls to her and told her he would harm her or her family if she testified in a pending criminal matter against him. (*Zaya v. Chaker* (Oct. 19, 2007, D049874) [nonpub. opn.].)

g. Thereafter, on or about July 19, 2006, and then again on or about December 8, 2006, Defendant DARREN sent nude photos of Zaya to Zaya's brother's employer, which had been taken by Defendant DARREN.

27. **Victims Frantz:** Plaintiffs are informed and believe that the following is true

regarding Defendant DARREN's efforts to extort San Diego attorneys James Frantz, Jodi Frantz, and Charles Kim:

a.  On or abut December 2010, Jodi and James Frantz retained Charles Kim to represent them in a civil protective action. Jodi Frantz sought a restraining order against Defendant DARREN, in *Hautaluoma v. Chaker*, San Diego Superior Court Case No. 717794.

b.  Prior to the extortion attempt against James Frantz, Jodi Frantz, and Charles Kim, Plaintiffs are informed and believe that Defendants engaged in acts of vandalism to the property of James Frantz and Jodi Frantz, which they believed to have been perpetrated and intended by Defendant DARREN to intimidate James Frantz and Jodi Frantz and send a message.

c.  In the preceding months to the extortion attempt, Jodi Franz was the victim of financial fraud in the summer of 2010. Ms. Frantz had caused two of her then current credit cards be de-activated by the issuers due to fraud alerts. The recent event happened in the week preceding the extortion attempt, while she was on vacation. Although Ms. Frantz believed Chaker is responsible for the fraud, she believed that she had no evidence.  Ms. Franz reported the thefts to her credit card issuers. She had unauthorized charges on credit accounts from Bank of America, Union Bank, and Nordstrom.  In the Summer of 2010, Mr. Frantz had also had his identity stolen, and used for credit card fraud. Although Mr. Frantz believed Chaker was responsible for the fraud, he believed that he had no evidence.

d.  On December 22, 2010, at 2:54 a.m., Defendant DARREN caused to be sent a fax to the office of Charles Kim. The fax included inappropriate reference to the death of James Patrick Frantz II (the son of James and Jodi Frantz). Also faxed was a complete copy of the County of San Diego Investigative report #1 0-01098 that documented the medical examiners death investigation in that case. The fax reference the social security number of Jodi Frantz, and Medical Doctor (Dr. Christine Miller) who treated Jodi Frantz. The fax appears to threaten to publish

1    the social security number and "embarrassing" medical information if Attorney

2    Kim did not agree to Chaker's demands. Also included was an apparent implied

3    threat to file complaints with the state bar association against Charles Kim and

4    James Frantz if they did not comply with his demands.

5        28. **Victims Mateo**: Nicole Mateo was in a relationship with Defendant

6    DARREN, which resulted in the birth of a daughter. Plaintiff is informed and believes

7    that following the efforts to obtain child support, Defendant DARREN initiated a

8    campaign of harassment against Wendy Mateo and her husband Steven Mateo. Steven

9    Mateo is a deputy constable with the Harris County Constable Office, in Spring, Texas.

10   The Mateo's hired an attorney by the name of Cynthia Tracy to address Defendant

11   DARREN's conduct. In response, Defendant DARREN initiated a harassment campaign

12   that included sending sexually explicit photos of Nicole Mateo to the employers of the

13   Mateos, obtaining the email passwords of various Mateo accounts, and sending emails

14   containing sexually explicit material through such accounts. The Mateo's attorney,

15   Cynthia Tracy, was targetted by a blog page that also made false and defamatory

16   statements about her. Ultimately, Attorney Tracy declined to continue to represent the

17   Mateos due to the aggravation and the expense of dealing with Defendant DARREN.

18

19                **DEFENDANTS' EFFORTS DIRECTED AT PLAINTIFF HEREIN**

20       29. Plaintiff operates a website called FEARNOTLAW.COM, and has operated

21   that site since 2005. Fearnotlaw has maintains tens of thousands of unpublished decisions

22   from California's court of appeals. The unpublished decisions were taken directly from

23   the court of appeals website and posted *en masse*, at various times. There was no

24   intentional targeting of Darren Chaker or any other subject of the decisions.

25       30. Defendant DARREN in this case initially contacted Plaintiff to demand

26   removal of decisions posted concerning his cases that had been decided by the Court of

27   Appeals. One of those decisions was *Zaya v. Chaker*, California Court of Appeal Case

28   No. D049874. In *Zaya v. Chaker*, the Court of Appeal affirmed a trial court's imposition

Complaint                                                              15

1   of a five year restraining order against Mr. Chaker imposed pursuant to the Domestic

2   Violence Protection Act, Fam. Code, 6200 *et. seq.*   Defendant DARREN Chaker's letter

3   to Plaintiff of November 23, 2010 contained Ms. Zaya's original petition, which alleged

4   that Mr. Chaker posted bogus sex-service advertisements on Craigslist falsely attributed

5   to Ms. Zaya, and had threatened to post compromising photos and videos of Ms. Zaya

6   online if she testified against him in his felony assault-weapon case. Plaintiff did not

7   remove any of the appellate decisions from Fearnotlaw.

8        31.   Defendant DARREN thereafter initiated a campaign of harassment and

9   vandalism against Plaintiff McMillan and his family.  Usually during the holidays,

10   Plaintiff's family's cars would be vandalized.  Plaintiff's brother had the words

11   "fearnotlaw" scratched on the trunk of his BMW.  In another instance, the driver's side

12   mirror of Plaintiff's brother's truck was smashed.  On that instance, a neighbor that heard

13   the noise, saw a black SUV driving rapidly away.  Defendant DARREN owns a Black

14   Dodge Durango.  Plaintiff is informed and believes, and based thereon alleges, that

15   Defendant VANIA Chaker accompanied Defendant DARREN during that vandalism.

16        32.   Other members of Plaintiff McMillan's family were attacked as well.

17   Plaintiff's mother's car had acid poured on the trunk.  Plaintiff's father's car had its tires

18   slashed.  After each event, Mr. Chaker would send Plaintiff an e-mail wishing him

19   "happy holidays" or making some other statement.  It was clear to Plaintiff that Darren

20   Chaker was acknowledging the vandalism by his timing of his emails, and attempting to

21   send a message and intimidate Plaintiff.

22        33.   At one point, on or about November 23, 2010, Defendants came to Plaintiff's

23   home and delivered a letter to his mail box signed by Defendant DARREN.  The letter

24   once again demanded that Plaintiff remove the posts concerning Defendant DARREN 's

25   cases from Fearnotlaw.  Thereafter, Defendant DARREN sent Plaintiff McMillan e-mails

26   referring to his dogs – which indicated to Plaintiff that he had come to his house and

27   looked into his back yard.

28        34.   Because of Defendants' activities, Plaintiff McMillan and his family members

1  installed security cameras around their houses.  Plaintiff McMillan also installed security

2  cameras on the outside of the commercial building in La Mesa where Plaintiff TMLF has

3  its offices.

4      35.  Defendant DARREN  also began posting matters about Plaintiffs on the

5  Internet.  Initially, he used his own domain names.  Later, he began using Plaintiff's name

6  under Google's "blogspot" service.  Through the years, clients have contacted Plaintiff

7  McMillan to let him know that they have seen the Defendant DARREN 's posts

8  concerning Plaintiff on the Internet.  Chaker's posts were troubling to Plaintiffs' clients.

9      36.  Postings on Internet gripe sites and consumer review sites began appearing,

10  the posters made negative comments, but used a pseudonym.  Plaintiffs are informed and

11  believe based upon the timing and the circumstances that Defendants were posting those

12  comments.

13      37.  Because Defendant DARREN  had posted about Plaintiff on the Internet,

14  others that had conflicts with Defendant DARREN  contacted Plaintiff for advice and

15  representation in dealing with Defendant DARREN .  Plaintiff has provided that

16  representation pro-bono, and advanced the expenses.

17      38.  Plaintiff ultimately represented Wendy Mateo, one of the Defendant

18  DARREN's victims, in *Chaker v. Mateo*, San Diego Superior Court case,

19  37-2010-00094816-CU-DF-CTL, Hon. Timothy B. Taylor, Judge presiding.  Wendy

20  Mateo is the mother of Nicole Mateo.  Plaintiff is informed and believes that Nicole

21  Mateo had a brief relationship with Darren Chaker, which resulted in the birth of their

22  daughter.  Plaintiff began representing Ms. Wendy Mateo, the grandmother of Darren

23  Chaker's child during the pendency of Darren Chaker's appeal of the judgment in the

24  *Chaker v. Mateo* case.  That appeal resulted in the published decision of *Chaker v. Mateo*,

25  209 Cal. App. 4th 1138 (2012).   Following that appeal, the Superior Court awarded

26  Plaintiffs attorneys fees.  Those attorneys fees awarded have been the subject of judgment

27  debtor examinations and orders from Judge Taylor as discussed below.

28      39.  Thereafter, Plaintiff began representing *Susan A*. in a paternity case filed in

---

Complaint                                                                                              17

the San Diego Superior Court entitled *Chaker v. A* (the "Paternity Case").  Ms. A had also been in a relationship with Mr. Chaker. Ms. A. sets out her experience with Chaker in her declaration dated July 11, 2013, a true and correct copy of which is attached hereto as **Exhibit 'A' (Under Seal)**. Mr. Chaker claims that Ms. A.'s child, L, is the product of that relationship.   Ms. A. disputes that Mr. Chaker is the father, biological or otherwise, of her child L.

a.  On July 12, 2013, Plaintiff McMillan filed a document in the Paternity Case, which included statement from Leesa Fazal, State of Nevada Office of the Attorney General, who had provided her confidential investigative report for submission in the Paternity Case, signed on July 11, 2013.  (**Exhibit 2, Submitted Under Seal**).

b.  On July 22, 2013, at 8:45 a.m., Officer Fazal appeared in San Diego Superior Court, according to Plaintiff's subpoena to testify in the Paternity Case regarding the facts alleged in the above mentioned Declaration. Officer Fazal and Plaintiff McMillan appeared before the Superior Court, Judge Gerald Jessop, presiding. The court did not have time to hear the case in the morning, and ordered Ms. Fazal and Mr. Chaker back to court later that afternoon. As they exited the court, Defendant DARREN followed Ms. Fazal and Plaintiff McMillan a short distance, and walked at a quick pace with his mobile telephone in his hand and appeared to take video of them while laughing loudly.   At that time, Ms. Fazal had not yet testified, and Defendant DARREN's behavior was purposefully threatening and an apparent effort to intimidate Officer Fazal, prior to her testimony.

c.  When Plaintiff McMillan and Officer Fazal returned they were accompanied by licensed private investigator Richard Rivero.  Following the hearing Defendant VANIA approached Richard Rivero in a rapid manner, within a couple feet, and asked him what he was doing there and demanded his name.  Although he had not been called to testify, Rivero responded that he was a witness, he would speak to Defendant VANIA in the presence of court personnel, and attempted to pass her.

1    Defendant VANIA blocked his and Plaintiff McMillan and Officer Fazal's exit, so

2    Plaintiff, Rivero and Fazal returned to the court room, and Defendant VANIA

3    followed.  Thereafter, the courtroom deputy ordered Defendant VANIA to leave,

4    and to leave Rivero, Plaintiff McMillan and Ms. Fazal alone.  The courtroom

5    deputy allowed Rivero, Plaintiff McMillan and Ms. Fazal, and shortly therafter,

6    confirmed that Defendant VANIA was no awaiting them outside the courtroom.

7    d.  Plaintiff McMillan, Officer Fazal and Rivero exited the courtroom, then entered

8    the elevator to descend to the lobby.  After exiting the elevator and entering the

9    lobby.  Defendant DARREN blocked the doorway exit and in a loud and

10   commanding voice demanded that Officer Fazal be arrested for being armed.  He

11   wanted to place her under citizen's arrest.   Officer Fazal was escorted to the side

12   while the  deputies determined that there were no grounds to arrest.    While they

13   waited, the Defendant VANIA entered the location and brushed by Rivero as she

14   entered the elevator.

15   e.  Rivero left the building with Officer Fazal, Rivero then noted Defendant

16   VANIA's black SUV following him at a high speed.  Rivero pulled to the side.

17   Defendant VANIA stopped her SUV in the middle of the street adjacent to

18   Rivero's vehicle.  Rivero felt that Defendant VANIA was attempting to intimidate

19   him. Rivero noticed Defendant DARREN hunched down in the passenger's seat so

20   as to not be identified.  Such chase was intended, and did intimidate Officer

21   FAZAL in that it gave her additional concern regarding participating in the legal

22   proceedings.

23   f.  On July 24, 2013, and thereafter during the pendency of the Paternity Case,

24   Plaintiff provided the United States materials and information regarding Defendant

25   DARREN, specifically that Defendant DARREN had a "go kit" which included a

26   passport under his identity "David Hunter". Which information Plaintiff

27   understands resulted in the revocation of Defendant DARREN 's pre-trial release.

28   During Defendant DARREN's resulting incarceration, the *Chaker v. A* case was

1    dormant.

2    g.  During his incarceration, Darren Chaker's mother Nicole Chaker appeared at

3    least once at a hearing in that case.

4    h.  Plaintiff is informed and believes, and based thereon alleges that in that interim

5    period Defendant DARREN was incarcerated. Also during that time, i.e., on or

6    about January 21, 2014, Plaintiff received at least one letter from Mr. Chaker that

7    appeared to have been sent via Defendant NICOLE. (**Exhibit 4, Submitted Under**

8    **Seal**).  The letter contained the following threat:

9    "You never considered the fact that due to your conduct your client may

10   suffer. I should remind you the First Amendment is a 2 way street and I

11   have the right to express my opinion as well."

12   i.  On February 2, 2014 Defendant NICOLE filed documents in the paternity case

13   on behalf Defendant DARREN, including executing a declaration in his name.

14   Within the letter to the Court attached to the declaration, Defendant NICOLE

15   repeats the implied threats to reveal Susan A's applications for government

16   benefits. (**Exhibit 5, Submitted Under Seal**).

17   j.  Because Mr. Chaker was designated a vexatious litigant, his case was dismissed

18   for his failure to obtain a pre-filing order.  Mr. Chaker has exhausted his appeals in

19   that matter.

20   40.  On or about September 18, 2014, during the pendency of the Paternity Case,

21   Plaintiff McMillan received an e-mail from Darren Chaker, a true and correct copy of

22   which is attached hereto as **(Under Seal) Exhibit 'B'.**   Within that letter, Mr. Chaker

23   threatens further actions against Plaintiffs unless he convinced his client Susan A to grant

24   him concessions in the paternity case.  Plaintiff has  excerpted the relevant portions below

25   (with redactions and substitutions to protect the privacy of third parties):

26   9/18/14

27   Time Sensitive – Reply Required by 8PM Today

28   Confidential Settlement Communication – California Evidence Code §
     1142

Complaint                                         20

Dear Scott, S, and C,

This is a request to settle pending claims against C, and Susan A. First, allow me to clarify this letter is constitutionally protected communication. " 'As a general rule, even if subject to some exceptions, what you may do in a certain event you may threaten to do, that is, give warning of your intention to do in that event, and thus allow the other person the chance of avoiding the consequences' "]. Equally well established is the fact that "[o]ne legitimate purpose of a demand letter is to intimidate." (Subrin & Main, The Integration of Law and Fact in an Uncharted Parallel Procedural Universe (2004) 79 Notre Dame L.Rev. 1981, 2003 (hereafter Subrin & Main).)

As you know the pending case concerning my son, L, Chaker v. A, San Diego Superior Court Case No. D543061 and, thankfully to Scott the case was stayed, in lieu of filing a motion to dismiss – since I had no right to personally appear in the case while in custody. Scott, I do thank you for the stay and that is why I never opposed the motion while in custody.

* * *

To keep it simple, here's my offer:

* * *

**\* I will remove all blogs I have control over concerning Scott or his firm, and <u>am able to remove the complaintsboard.com posting</u> and if unable to remove pissedconsumer.com**, I will pay up to $500 to have SEO performed to push down the links as I know these sites continue to hurt the practice. (I understand I have negative comments about me, however I do not need to impress clients with my reputation. **I can assure you at least one client a year doesn't call due to reviews – costing you and your family money**.)

\* No blogs concerning S or C's company, have been posted, but various items have been set to self-publish in the event I am unable to access the blog and push back the self-publish date another two weeks.

In short I am agreeing to things a court would not order, but am trying to be amicable.

Scott, you once said to me "I win every time we go to court". I think you mischaracterize what winning is to me. In court, it is not the court ruling. It's the time spent away from your office. Taking up your time and associate's time. Taking food out of your kids mouth. Staying up late, or ignoring kids and wife while spending time on litigating the instant case. Costing you clients – at least one person a year doesn't call you based on my blogs – which have been updated recently, scott-mcmillan-law.blogspot.com. Your reputation and past performance, likely increases the likelihood of opposing counsel's decision to fight a pending case longer - which costs you more time and money. **Out of court, I have a few more victories than you and will always prevail in that respect, and win by having you and family spending money on cameras, watching the monitors, looking out the window, and drawing drapes – of course there's no proof I have not done a thing nor do I admit such, but if you think I am responsible, indeed I win every day.**

* * *

---

Complaint                                                    21

**(Exhibit 'B', Filed Under Seal)**

**Hacking Twitter and Unauthorized Access to Plaintiff McMillan's Paypal Account**

41. Plaintiffs believe that Defendant DARREN Chaker has attempted to hack into Plaintiff's twitter and paypal accounts. Specifically,

a. On October 22, 2014, Plaintiff McMillan received a notice from Paypal of "unusual activity" on his account. Plaintiff hadn't attempted to sign in to his Paypal account at that time. A true and correct copy of that email is attached hereto as **Exhibit 'C'**. Due to the timing of the notice, Plaintiff is informed and believes that it was Darren Chaker that hacked into Plaintiff's account.

b. On November 19, 2014, Plaintiff received a notice of a "suspicious sign in detected on [his] twitter account." Plaintiff hadn't attempted to sign in to his twitter account. A true and correct copy of that email is attached hereto as **Exhibit 'D'**. Due to the timing of the notice, Plaintiff is informed and believes that it was Darren Chaker that hacked his account.

42. Following that threat of September 18, 2014, Mr. Chaker began posting information on the scott-mcmillan-attorney.blogspot.com site that he operated that, among other things, Plaintiff had molested his daughter. The first such statement appeared on Thanksgiving Day, i.e., Thursday, November 27, 2014. A copy of that post is attached hereto as **Exhibit 'E.'** Plaintiff had not authorized Defendants to use Plaintiff's name in any manner. Plaintiff had not molested his daughter. That webpage has since been removed.

43. In order to improve the likelihood of the search engines indexing his site to Plaintiff's name, Defendant DARREN optimized that page, **Exhibit 'E'**, for search engines with "labels" including "4760-Nebo, attorney-sex-offender, el-cajon-sex-offender, la-mesa-sex-offender. Rebecca-McMillan, scott-mcmillan-law, www.mcmillanlaw.us."

44. Mr. Chaker also operated a Blogger site at http://mcmillanlawfirm.blogspot.com/. Plaintiff had not authorized Defendant DARREN

Complaint                                                                          22

to use the firm's name in this manner.  He published similarly false, scandalous, libelous material on that site.

45.  On or about November 28, 2011, Defendant DARREN Chaker posted on the Blogger site at scott-mcmillan-attorney.blogspot.com, a post entitled "Maura Larkins Linked to Sex Abuse."  Within that post Chaker repeats his false statements about Plaintiff, and also recited a completely fabricated association between Plaintiff and Ms. Larkins, who is another individual with whom Mr. Chaker has conflict. A true and correct copy of that post is attached hereto as **Exhibit 'G'**.

**Spoofing Emails**

46.  On December 3, 2014, Plaintiff received a "spoofed" or bogus email that purported to have been sent from Plaintiff's own e-mail address "scott@mcmillanlaw.us"

a.  The email stated:

"Scott McMillan and family are child molesters per a recent report, http://scott-mcmillan-law.blogspot.com/2014/11/scott-mcmillan-la-mesa.html"

b.  A true and correct copy of the email is attached as **Exhibit 'H.'**

c.  A true and correct copy of the email with the header is attached as **'I'**.

**Google Places**

47.  On December 4, 2014, a "Darren C." posted a 2 star review for the McMillan Law Firm, APC on Google places, wherein he stated:

"I wish I knew of his interests in children, http://scott-mcmillan-law.blogspot.com/2014/11/scott-mc."

a.  A screen shot of Plaintiff's administration page for Google Places is attached hereto as **Exhibit 'J'**.

b.  That post was later deleted.   In light of the timing of that e-mail, the use of the name "Darren C.", and that the identical content was posted on his blogspot sites, Defendant DARREN was the poster.

48.  Defendant DARREN. Chaker sent e-mails to many members of the local legal community, accusing Plaintiff of molesting his  daughter.  A copy of one such email

Complaint                                    23

dated December 6, 2014 is attached hereto as **Exhibit 'K'**. That e-mail was sent to Andrew Griffin, an attorney for an opposing party in a bankruptcy case where Plaintiff represented a creditor, who in turn, forwarded the e-mail to Plaintiff on December 8, 2014.

49. On December 22, 2014, at 1:57 a.m., Defendant DARREN sent Plaintiff an e-mail with the subject line "Pending Paternity Case". A copy of that email is attached hereto as **Exhibit 'L.'**

50. On December 23, 2014, at approximately 10:08 a.m., Plaintiff received an e-mail from Defendant DARREN Chaker entitled "Request to See Son." A copy of that email is attached hereto as **Exhibit 'M'.**

**Threats to E-mail Colleagues in the San Diego East County Community**

51. On December 23, 2014, Plaintiff received an e–mail from Defendant DARREN where he stated:

> "Mr. McMillan, the reported conduct I have found is very improper and disgusting. I have been forced to notify numerous members of the bar about my blog concerning your firm, most recently the Foothills Bar Association, and will start naming your daughter, I believe a former Ms. El Cajon, as the likely victim. I hope you have ceased your conduct and notice to hundreds of people has done the public some good.
>
> Dear XXXXXX,
>
> Sex offender. As a member of the bar and likely parent, I would hope notice of a report concerning La Mesa Attorney Scott McMillan, who also operates McMillan Academy of Law without a single applicant/graduate, http://campus.lawdragon.com/schools/mcmillan-academy-of-law/ was reported to take part in sexual molestation of a minor. See, http://scott-mcmillan-law.blogspot.com/2014/11/scott-mcmillan-la-mesa.html
>
> The report provides great detail and hope you pass this email along, as I have distributed it to 200 attorneys in San Diego. Scott McMillan is also a documented family friend of Kenneth Bourke who was also arrested for child molestation – see report - http://scott-mcmillan-law.blogspot.com/2014/09/scott-mcmillan-molest-la-mesa.html
> Happy Holidays to all.
> Darren Chaker"

a. A copy of that email is attached hereto as **Exhibit 'N'**.

52. On or about June 8, 2015, Google removed the scott-mcmillan-attorney.

1  blogspot.com site, which defendants had created without Plaintiffs authorization.

2      53.  On or about June 16, 2015, Google removed the mcmillanlawfirm.

3  blogspot.com site, which defendants had created without Plaintiffs authorization.

4                           **COMPLAINTSBOARD.COM**

5      54.  Since 2011 and through the present, a person that Plaintiff McMillan believes

6  to be Defendant DARREN  based on identical content posted on his website and Mr.

7  Chaker's  statements above of September 18, 2014 that he is "**able to remove the**

8  **complaintsboard.com posting**", has posted derogatory and defamatory statements about

9  Plaintiff on the Internet at:

10  http://www.complaintsboard.com/complaints/the-mcmillan-law-firm-la-mesa-c571484.ht

11  ml#comments

12      a.  A true and correct copy of that post as published is attached hereto as **Exhibit**

13      **'O.'**

14      b.  The poster is identified as "Tracy Law Houston."  Cynthia Tracy, Attorney at

15      Law, P.C., a family law attorney in Houston, Texas, formerly represented Nicole

16      Mateo in the custody and child support case against Darren Chaker.

17      55.  Despite the removal of the blogspot sites, on August 23, 2015, a poster using

18  the name and search term "scott-mcmillan-la-mesa" posted the following as a comment to

19  the post at http://www. complaintsboard.com/complaints/the-mcmillan-law-firm-la-mesa-

20  c571484.html#comments

21      a.  "I located the police report about Scott McMillan, La Mesa, Attorney reportedly
        molesting children. I also found he operates his own law school out of a small, run
22      down office near the train tracks, but in the same breath says he's a leading law
        firm. With this reputation, I cannot imagine such is true."
23      b.  Attached as an image to the comment, he re-posted his November 27, 2014

24      post, i.e., the content at Exhibit 'B' herein, the repost of which is attached at

25      **Exhibit 'P.'**

26      56.  On September 16, 2015, a poster using the name and search term

27  "mcmillan-law-firm-la-mesa" posted the following as a comment to the post at

28  http://www.complaintsboard.com/complaints/the-mcmillan-law-firm-la-mesa-c571484.ht

---

                              Complaint                              25

1  ml#comments

2   a. "Scott McMillan, McMillan Law Firm, sued the hardworking Sheriff over his
3  Facebook Account. The law settled for about nothing. It is unfortunate law
   enforcement need to pay out money to defend such nuisance lawsuits, when that
   money should be going to hiring more officers, and buying newer equipment. With
4  about 60 loses in the Court of Appeal docket, astonishing he is still in office."

5   b. That case – *Karras v. Gore*, U.S. D.C. So. Dist. Cal., 14cv2564-BEN-KSC –

6  was settled for a payment of attorneys fees plus the token $20. Thus, the above

7  statement is false, as the Sheriff paid attorneys fees and agreed to change practices.

8   c. Attached as an image to the comment, he posted a partial news article, a copy of

9  which is attached as **Exhibit 'Q.'**

10   57. Also on September 16, 2015, a poster using the name and search term

11  "mcmillan-law-firm-la-mesa" posted the following as a comment to the post at

12  http://www.complaintsboard.com/complaints/the-mcmillan-law-firm-la-mesa-c571484.ht

13  ml#comments

14   a. "McMillan Academy of Law, run by Scott McMillan appears to have not had a
   single student go through his law firm, where the class is shared in the same space
15  as the attorney, oh and also Dean McMillan (also an attorney working out of same
   office. According to LawDragon, no one has ever graduated or even applied to that
16  law school."

17   b. Attached as an image to the comment, he posted a webpage print-out, a copy of

18  which is attached as **Exhibit 'R.'**

19   58. Also on September 16, 2015, a poster using the name and search term

20  "mcmillan-law-firm-la-mesa" posted the following as a comment to the post at

21  http://www.complaintsboard.com/complaints/the-mcmillan-law-firm-la-mesa-c571484.ht

22  ml#comments

23   a. "McMillan sued by Yelp! for posting his own reviews. Read the story in detail,

24  sad set of circumstances, especially when you need to create your own reviews."

25  In truth and in fact, Plaintiffs had not posted their "own reviews." Plaintiffs had

26  represented Julian McMillan, who had been sued by Yelp.

27
28   b. Attached as an image to the comment, he posted a news article, a copy of which

   is attached as **Exhibit 'S.'** Plaintiff did not post his own reviews. Indeed, in that

1    case, Plaintiff was not accused by Yelp of posting comments. Rather, Plaintiff

2    represented another attorney, Julian McMillan, in the case. Chaker edited out the

3    part that would have otherwise explained that Plaintiff was not the Defendant

4    DARREN in that action, but rather just the attorney. Contrary to Defendants'

5    suggestion, Plaintiff was partially successful at the time of the posting of the

6    article. Plaintiff won a motion to change venue, and counsel for Yelp paid

7    Plaintiffs attorneys fees.

8        59.  Most recently, on February 9, 2016, a poster using the name and search term

9    "mcmillan-law-firm" posted the following as a comment to the post at

10   http://www.complaintsboard.com/complaints/the-mcmillan-law-firm-la-mesa-c571484.ht

11   ml#comments

12       a.  "Williams v. The Superior Court of San Diego County/Nordstrom, Inc., Court
         of Appeal Case Number D068765. shows Scott McMillan, McMillan Law Firm in
13       Las Mesa, LOST ANOTHER case. This one where Nordstrom is vigorously
         defending itself against allegations of attorney, law professor, and law school dean
14       (Yes, Scott McMillan is all three of those titles since he runs a law school,
         McMillan Academy of Law, out of two story office near the train tracks. Despite
15       not a single student has graduated, or appears to have attended, no one has taken
         the bar exam either. Nonetheless, this is another example of Scott McMillan losing
16       another case - although he claims to be a "leading" San Diego attorney."

17       b.  Attached as an image to the comment, the docket from , a copy of which is

18       attached as **Exhibit 'T.'**

19       c.  This statement is also false, as the court of appeals allowed the appeal to

20       proceed in light of the law regarding final, appealable orders.

21       d.  Further, the Court entered an order of stipulated reversal of such appeal.

22       60.  On or about March 27, 2016, Plaintiff McMillan identified a post using

23   Plaintiff TMLF's logo and created in a manner that suggested it was posted by Plaintiff or

24   someone else from his  firm.  Plaintiff did not authorize Defendant DARREN or anyone

25   else to use the McMillan Law Firm's logo in this manner.  The latest entry was posted on

26   or about December 17, 2015.  Specifically, a poster using the name and search term

27   "scott-mcmillan-law-firm-la-mesa" setup a bogus page entitled "The McMillan Law Firm

28   Customer Care Service" using The McMillan Law Firm, APC logo at

---

Complaint                                                                              27

http://www.complaintsboard.com/the-mcmillan-law-firm-b121166

    a.  A true and correct copy of that page is attached hereto as **Exhibit 'U.'**

Notably, the bogus "customer care service" repeats the same false allegations as previously made by Chaker. i.e., that Plaintiff molested his daughter.

    b.  On December 8, 2015 – Plaintiff's birthday – Mr. Chaker emailed Plaintiff the following statement:

Good afternoon Scott,

I have been unable to locate a TM/Copyright for the domain mcmillanlaw.us or for your law firm with the USPTO or U.S. Copyright Office. If there is such, kindly advise prior to 7PM today. If I do not receive a response, it will be presumed there is no such TM/Copyright. Prior to posting additional material, I will extend this courtesy to you.

Also, I have updated the material on http://scott-mcmillan-law.blogspot.de/p/scott-mcmillan-attorney-la-mesa.html

I have also copied Maura Larkins on this email.

Best regards,

Darren"

    c.  A true and correct copy of the email dialog that occurred December 8, 2014, are attached as **Exhibit 'V'.**

    **d.**  Plaintiffs had not authorized the use of their name, the logo, or creation of a customer care site on Complaintsboard.com.

    61.  Following Mr. Chaker's posts to complaintsboard.com, individuals solicited Plaintiffs purporting to be able to have the ability to remove the posts. They wanted to charge Plaintiffs $4,800 to remove defendants posts.

## PISSEDCONSUMER.COM

    62.  Since 2011 and through the present and as late as February, 2016, a person using a pseudonym, that Plaintiff McMillan believe to be Defendant DARREN, or the other defendnats, based on the content and Defendant DARREN's statements above of September 18, 2014 referring to the "pissedconsumer.com" website, has posted derogatory and defamatory statements about Plaintiff on the Internet at the website

domain "PISSEDCONSUMER.COM":

63.  A Google search of "scott mcmillan site:pissedconsumer.com" returns some 3200 results.  Most of those results appear to have been posted in 2015 and 2016.  Plaintiffs believe that defendants have posted all of those entries.  They have done so either anonymously or using some variation of the key words: "The Mcmillan Law Firm - La-Mesa-Attorney-Scott-McMillan"

64.  Unlike Complaintsboard.com, Pissedconsumer.com does not remove the information posted by persons such as Defendant DARREN.  Specifically, the terms of service of Pissedconsumer states:

> "5. Removal of Information
> By posting information on PC, *you understand and agree that the material will not be removed even at your request.* You shall remain solely responsible for the content of your postings on PC."

http://www.pissedconsumer.com/tos.txt.

65.  The Pissedconsumer.com post that Chaker started on November 3, 2011, is attached hereto as **Exhibit 'W'**.  Within that post he misrepresents Plaintiff's win/loss ratio.

66.  On August 23, 2015, Defendant DARREN made the false allegation, accusing Plaintiff of child molestation, a copy is attached hereto as **Exhibit 'X'**.

67.  On December 4, 2015, Defendant DARREN posted a review entitled "The Mcmillan Law Firm - Scott McMillan Law Firm - La Mesa - Malpractice" which falsely accuses Plaintiff of malpractice, attached hereto as **Exhibit 'Y.'**  Chaker falsely states that an appeal in *Williams v. Nordstrom, Inc.* was to be dismissed, and termed it "malpractice."  In fact, the appeal was not dismissed and ultimately resulted in a stipulated order of reversal.

68.  On February 11, 2016, Defendant DARREN posted a review "The Mcmillan Law Firm - Scott McMillan Law Firm La Mesa," which is attached hereto as **Exhibit 'Z.'**  Chaker made statements that were knowingly false as he stated that the "the Court of Appeal DENIED the petition after forcing the defendant incur huge amounts of attorney fees."  In fact, the defendant did not file a response. Chaker had no basis to suggest that

attorneys fees were incurred resulting from the filing of the petition.  Chaker further

falsely stated Plaintiff's record as "almost 80 under his belt and a hand full of wins."

**Current Posts**

69.  To date Defendant DARREN continues to post material on his website in a

manner that is intended to optimize his websites to respond to search engine indexes with

his  name.  Specifically, he continues to use the tags "mcmillan-associates-la-mesa",

"scott-mcmillan-la-mesa":

70.  On March 29, 2016, Plaintiff accessed

http://darren-chaker.blogspot.com/search/label/scott-mcmillan-la-mesa and retrieved the

attached article, a true and correct copy of which is attached hereto as **Exhibit 'AA'**

which incorporates the use of the tags.

71.  On March 29, 2016, Plaintiff accessed http://darrenchaker.us/ and retrieved

the attached article bearing a date of December 8, 2015, a true and correct copy is

attached hereto as **Exhibit 'BB'**, which incorporates the use of the tags.

72.  On March 29, 2016, Plaintiff McMillan accessed http://darrenchaker.org/ and

retrieved the attached article bearing a date of January 23, 2016, a true and correct copy is

attached hereto as **Exhibit 'CC'**, which incorporates the use of the tags.

**Defendant DARREN's Use of Pseudonyms**

73.  Plaintiff is informed and believe that Darren Chaker also uses the pseudonym

"Luis Perdomo."  On March 29, 2016, Plaintiff accessed

https://plus.google.com/1048021677 37415969641/posts/HySqAKY7jYR and retrieved

the attached page, a true and correct copy is attached hereto as **Exhibit 'DD'**,

incorporating the same allegations and artwork published by Defendant DARREN

Darren Chaker.

**Defendant DARREN admits that he knows that he is barred**

**from posting defamatory material.**

74.  On January 22, 2016, Defendant DARREN  Chaker appeared for a judgment

debtors exam. He had been previously ordered to produce the names of the domains that

he holds.   On the record in the *Chaker v. Mateo* case, he admitted that he had such logins and that his use of those could result in the revocation of his supervised release. [Transcript, p. 9] Defendant DARREN was also ordered to provide the identifying information as to Internet domains that he owns.  A copy of relevant portions of the transcript is attached hereto as **Exhibit 'EE'.**

75.  Defendant DARREN did not appear as ordered on March 11, 2016, in the Superior Court to provide the information.  As recited in the transcript of January 22, 2016, Defendant DARREN was aware that he was required to appear at the continued examination. [**Exh. EE, page 31**]

76. On March 11, 2016 Defendant DARREN failed to appear for his continued judgment debtor's examination.  Judge Taylor issued a bench warrant for his appearance, which remains outstanding.  A copy of that bench warrant is attached hereto as **Exhibit 'FF'.**

77.  On March 11, 2016 the Superior Court in the *Chaker v. Mateo* case has ordered the appointment of a receiver to take possession of Mr. Chaker's personal property, including his domain names for ultimate sale in order to satisfy the judgment. Despite orders to do so, Defendant DARREN has not complied with the orders of the Superior Court.

**Defendant DARREN has created false accounts with Plaintiff's name**

78.  Defendant DARREN created accounts using Plaintiff's name and the name of the McMillan Law Firm.  One of those accounts is on Slideshare.net, and reflected on **Exhibit 'GG'.**  Plaintiff surmise that he has prepared that account in order to upload his defamatory material that he intends to falsely attribute to him.  Plaintiff believes that Defendant DARREN made that account because it is associated by Slideshare with an account under the name of David Gingras, another attorney who successfully represented a victim of Defendants and whom Chaker has also targeted for harassment.

**Defendants have inflicted damage upon both Plaintiffs and their clients.**

79.  Attorneys rely upon their reputation in the community and before the courts

that they practice in.  Defendant DARREN's outrageous lies which he has published have

injured Plaintiffs' practice.  Opposing counsel in other, unrelated cases have mentioned

the existence of the posts. Clients have mentioned the existence of the posts and their

content.   Plaintiff McMillan believes that jurors that Plaintiff has tried cases in front of

have accessed the posts and taken them into account in determining the cases.  Thus,

Defendants threats made on September 18, 2014 have borne out. Plaintiffs have invested

substantial time in developing Plaintiff McMillan's reputation as a zealous advocate for

his  clients, and remaining consistent to the duties of an attorney as set forth in Business

and Professions Code section 6068, and particularly that set forth in subsection (h):

> "Never to reject, for any consideration personal to himself or herself, the
> cause of the defenseless or the oppressed."

(Bus. & Prof. Code 6068(h).)

80.  Susan A. has been, prior to representation by Plaintiffs herein, defenseless and

oppressed by Defendants.

81.  Wendy Mateo was defenseless and was oppressed by Defendants.

82.  Plaintiff understood that Defendants could resort to attacks of Plaintiff

McMillan's  character when Plaintiff continued to represent Susan A despite Defendants

threats to engage in libel against him. Defendants then performed on their threats, and has

engaged in the forewarned attacks against Plaintiff –  and later Plaintiff's family members

– following January 21, 2014, and September 18, 2014.

**FIRST CLAIM FOR RELIEF**

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1962(c)

(Against All Defendants)

83.   Plaintiffs repeat and reallege the averments contained in paragraphs 1-82 as

though fully set forth herein.

84.  On July 22, 2013 Defendants DARREN and VANIA used threats and violence

in an attempt to intimidate a witness to the Paternity Case.

85.  On January 21, 2014, Defendants DARREN and NICOLE  committed

1    extortion under 18 U.S.C. § 1961(1), by threatening to reveal alleged reporting

2    discrepancies to tax authorities contained in private and confidential tax information that

3    he had obtained regarding her.  On January 21, 2014, Defendant DARREN was

4    incarcerated outside the State of California, and was unable to send the extortionate letter,

5    which was sent by certified mail, from San Diego.

6        86.   On or about September 14, 2014, while Defendant DARREN was under

7    home release Bureau of Prisons custody, Defendant DARREN committed extortion under

8    18 U.S.C. § 1961(1) by threatening to stalk and defame Plaintiff if he continued to

9    represent Susan A in the Paternity Case consistent with Plaintiff's professional duties

10    owed to his client. Defendant DARREN  was engaged in threatening behavior, i.e, to

11    defame and harass Plaintiff to deprive Plaintiff of his peace of mind, his enjoyment of the

12    proceeds of the goodwill attributable to his name and reputation, if Plaintiff did not

13    consent to Defendant DARREN 's unlawful demands.

14        87.  Defendants are an "enterprise" under U.S.C. § 1961(4).

15        88.  Defendants have engaged in a pattern of racketeering activity as that term is

16    used in U.S.C. § 1961(5).

17        89. Defendants have violated 18 U.S.C. § 1962, which states:

18        "(c) It shall be unlawful for any person employed by or associated with any

19        enterprise engaged in, or the activities of which affect, interstate or foreign

20        commerce, to conduct or participate, directly or indirectly, in the conduct of

21        such enterprise's affairs through a pattern of racketeering activity or

22        collection of unlawful debt."

23        90.  The above conduct caused injury to Plaintiffs' property and business. It made

24    it difficult for Plaintiffs to obtain clients and to recruit employees, the conduct impaired

25    Plaintiffs' reputation in the legal community,  caused lost income that Plaintiffs expected

26    to be paid, and were not, and caused Plaintiff McMillan vexation and diverted his

27    attention from his personal and professional obligations.

28        91.  The above violations were made in furtherance of financial gain.

92. Defendants had a discernable structure apart from the predicate acts, i.e., they are biologically related.

93. The acts of Defendants herein were intended to unlawfully compel the targets of the Defendants to take actions which were against their own interests, in order to avoid the dissemination of information that was false, that was private, and that would stigmatize the Defendants' targets, including Plaintiffs herein.

94. The acts of Defendants as described herein, were willful and malicious in that Defendant DARREN intentionally and deliberately retained monies owed to Plaintiff, and in order to avoid the negative consequences of Plaintiffs' advocacy, Defendants and each of them engaged in extra-judicial conduct intended to dissuade Plaintiff from representing his clients Wendy Mateo and Susan A.

95. As a result of Defendants bad acts and as Defendants' objective in committing such acts, Plaintiffs were damaged including but not limited to damages from losing prospective clients and the revenue expected from them, Plaintiffs' trademarks are impaired as a result, and other damages. Plaintiffs' damages were severe and extensive, resulting in losses to Plaintiffs in an amount according to proof at trial.

96. Plaintiffs requests damages in an amount not less than $2,000,000, in an amount to be trebled and attorneys fees according to 18 U.S.C. § 1964(c).

97. Plaintiff requests injunctive relief to prevent prevent and restrain violations of section 1962 by issuing appropriate orders, including, but not limited to: ordering Defendants divest themselves of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of Defendants, including, but not limited to, prohibiting Defendants from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons, including Plaintiff herein.

98. Plaintiffs requests that the Court revoke Defendant DARREN Chaker's supervised release, and order him to remove the posts, or execute such documents that

1  would compel the removal of those posts, all of which he has published in contempt of

2  the Court's order for supervised release.

3        99.  Plaintiffs requests that the Court also issue an order to Darren Chaker

4  requiring him to request the removal of his posts from the Internet forums in a form that

5  may be published to the third parties, i.e., Pissedconsumer.com and

6  Complaintsboard.com, that have published defendants' harrassing and defamatory posts.

7  Plaintiff request that the Court make a finding that such posts are contrary to the

8  conditions of Defendant DARREN's supervised release and thereby unlawful.  With such

9  a finding, and an order that Chaker remove those post, those sites would willingly do so.

10       100.  Plaintiffs requests that the Court also issue an order with findings such that

11  can be published to those search engines that have indexed the posts, i.e., Google, Yahoo,

12  and Bing, and findings that such posts were placed by Defendant DARREN contrary to

13  the Judgment in this case and the Court's terms of Defendant DARREN 's supervised

14  released.   And that Defendant DARREN be ordered to request the removal of such posts

15  from such search indices. Plaintiff's hope and expectation is that those third parties would

16  be persuaded to remove the posts from the respective index.

17                          **SECOND CLAIM FOR RELIEF**

18        (Against All Defendants, Racketeer Influenced and Corrupt Organizations Act,

19                              18 U.S.C. § 1962(d))

20       101.  Plaintiffs repeat and reallege the averments contained in paragraphs 1-82,

21  and 84 through 100 as though fully set forth herein.

22       102.  Defendants knowingly agreed to facilitate a scheme that included the

23  operation of a RICO enterprise.

24       103.   The conspiracy was inter-familial.

25                          **THIRD CLAIM FOR RELIEF**

26            (Civil Extortion - Against Defendants DARREN and NICOLE)

27       104.  Plaintiffs repeat and reallege the averments contained in paragraphs 1-82,

28  and 84 through 100, and 102 through 103, as though fully set forth herein.

_____

Complaint                                                    35

105.  Defendants conduct was unlawful as a matter of law, in that Defendant DARREN had been forbidden from types of expressive conduct by the terms of his Pre-Trial release, the terms of his confinement and Bureau of Prisons regulations, and the terms of his supervised release.  Defendant NICOLE was aware of these restrictions.

106.  Extortion is the obtaining of property from another, with his consent, or the obtaining of an official act of a public officer, induced by a wrongful use of force or fear, or under color of official right. (Penal Code § 518.)

107.  Defendants attempted to obtain property from Plaintiffs, i.e., the right to continue to practice law consistent with the California Business and Professions Code, and the California Rules of Professional Conduct, with respect to the advocacy on behalf of Susan A..

108.  Defendants attempted to obtain property from Plaintiffs, i.e., the right to collect on a debt due and owing by virtue of the fee award in the *Chaker v. Mateo* action.

109.  Defendants attempted to obtain property from Plaintiffs, i.e., the right to continue to collect and publish cases through the website FEARNOTLAW.COM.

110.  Defendants attempted to obtain an official act of a public officer, i.e., a judge, through Plaintiffs' clients acquiesence.

111.  Defendants wrongfully attempted to induce fear as that term is used in Penal Code section 519, which provides in pertinent part under the heading "threats":

"Fear, such as will constitute extortion, may be induced by a threat of any of the following:

1.  To do an unlawful injury to the person or property of the individual threatened or of a third person.

2.  To accuse the individual threatened, or a relative of his or her, or a member of his or her family, of a crime.

3.  To expose, or to impute to him, her, or them a deformity, disgrace, or crime.

4.  To expose a secret affecting him, her, or them.

* * *

(Penal Code § 519)

112. Defendants threats were both express, and were implied by the contents of the various writings and the surrounding circumstances.

113. Defendants transmitted the threats comprising extortion.

114. The Statutes of Limitations regarding the bringing of the present claims have been tolled due to Defendants' absence from the State of California according to California Code of Civil Procedure section 351:

> "If, when the cause of action accrues against a person, he is out of the state, the action may be commenced within the term herein limited, after his return to the state, and if, after the cause of action accrues, he departs from the state, the time of his absence is not part of the time limited for the commencement of the action."

(Cal. Civ. Proc. Code § 351.)

115. As a direct and proximate result of the acts of Defendants as alleged in the Third Cause of Action above, Plaintiffs were injured. Plaintiff McMillan suffered economic damage, expense, and humiliation, including, but not limited to, emotional upset, anxiety, mental suffering, and damage to his reputation. Plaintiff McMillan also suffered loss of time. Plaintiff McMillan is therefore entitled to compensatory damages in an amount which will compensate for him all the detriment proximately caused by Defendants' acts, whether foreseeable or not, according to proof at time of trial, in accordance with Civ. Code § 3333.

116. Plaintiff TMLF was damaged by the loss of goodwill resulting from the false statements published by Defendants' "making good" on the threats. Plaintiff TMLF was damaged by the lost advertising expenses which were negated by the false statements published by defendants.

117. Defendants' conduct was malicious, oppressive and/or fraudulent within the meaning of California Civil Code § 3294, thereby entitling Plaintiffs to an award of punitive damages in an amount according to proof at time of trial.

- o O o -

Complaint                                                     37

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

1. For an Order enjoining Defendants, their agents, and those acting in concert or conspiracy with them, temporarily during the pendency of this action and permanently thereafter from and further violation of 18 U.S.C. §§ 1961 et seq.;

2. For compensatory damages according to proof;

3. For an award of treble damages pursuant to 18 U.S.C. § 1964;

4. For attorneys' fees pursuant to 18 U.S.C. § 1964 or as otherwise provided by law;

5. For punitive and exemplary damages pursuant to Cal. Civil Code § 3294 or as otherwise provided by law;

6. For an award of costs of suit;

7. For an award of pre-judgment interest and post-judgment interest in the maximum amount permitted by law;

8. For such other and further relief as the Court deems just and proper.

Dated: August 24, 2016          The McMillan Law Firm, A.P.C.

/s/ Scott A. McMillan

BY: _____

Scott A. McMillan
Attorney, In Propria Persona, and on behalf of
Plaintiff The McMillan Law Firm, A.P.C.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all causes of action so determinable.

Dated: August 24, 2016          The McMillan Law Firm, A.P.C.

/s/ Scott A. McMillan

BY: _____

Scott A. McMillan
Attorney, In Propria Persona, and on behalf of
Plaintiff The McMillan Law Firm, A.P.C.

Complaint        38

# EXHIBIT B

1   Scott A. McMillan, CBN 212506
    **THE MCMILLAN LAW FIRM, APC**
2   4670 Nebo Drive, Suite 200
    La Mesa, California 91941-5230
3   (619) 464-1500 x 14
    Fax: (619) 828-7399
4
    Attorney for Plaintiff,
5   Scott A. McMillan and The McMillan Law Firm, APC

6

7

8                   UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11  SCOTT A. MCMILLAN, an individual,          Civil Case No.: 3:16-cv-2186-WQH-
    THE MCMILLAN LAW FIRM, APC, a              MDD
12  California professional corporation,
                                               First Amended Complaint for
13          Plaintiffs,                         1.      Racketeer Influenced and
                                               Corrupt Organizations Act (18
14          vs.                                 U.S.C. §§ 1962(c))
                                               2.      Racketeer Influenced and
15  DARREN D. CHAKER an individual,            Corrupt Organizations Act (18
    and as trustee of PLATINUM                  U.S.C. §§ 1962(d))
16  HOLDINGS GROUP TRUST, dba                   3.      Civil Extortion
    COUNTER FORENSICS; NICOLE
17  CHAKER, an individual, and as trustee of          DEMAND FOR JURY TRIAL
    THE NICOLE CHAKER REVOCABLE
18  LIVING TRUST, U/A dated August 18,
    2010, VANIA CHAKER, an individual
19  and as beneficiary of The Island
    Revocable Trust under Declaration of
20  Trust dated June 2, 2015, MARCUS
    MACK as trustee of The Island
21  Revocable Trust under Declaration of
    Trust dated June 2, 2015,
22
            Defendants.
23

24

25

26

27

28

Plaintiffs allege as follows:

**JURISDICTION**

1. This Court has jurisdiction over the subject matter of the causes of action in this complaint by virtue of:

a. federal question jurisdiction pursuant to 28 U.S.C. § 1331, involving an action pursuant to 18 U.S.C. § 1964(c), the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"). This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §1332;

b. supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), involving claims that are so related to claims in the action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution; and

2. This Court has jurisdiction over the person of the Defendant Darren Chaker because Defendant transacts business within this judicial district, and Defendant is amenable to service of process within the meaning of Federal Rule of Civil Procedure Rules 4(e), 4(f), and 18 U.S.C. § 1965(b).

3. Further, this District Court, the Hon. Larry A. Burns, District Judge presiding, has jurisdiction over Defendant because Defendant is under an order of supervised release according to the terms of sentence of Defendant's conviction for bankruptcy fraud, *United States v. Chaker*, U.S.D.C., So. Dist. California, Case No. 3:15-cr-07012-LAB.

4. Venue is proper in this district pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391 because Defendants transacts business in this district or, alternatively, this district is where a substantial part of the events or omissions giving rise to the claim occurred.

**THE PARTIES**

5. Plaintiff, SCOTT A. MCMILLAN (hereinafter referred to as "Plaintiff McMillan"), is a resident of the State of California, County of San Diego. Plaintiff is a California licensed attorney, and is engaged in intra-state, and interstate commerce in the course of his practice. Plaintiff McMillan also operates a law school, the McMillan

---

*16-cv-2186*                    First Amended Complaint                    2

1    Academy of Law, a Caliornia corporation, which is unaccredited, but registered with the

2    Committee of Bar Examiners, State Bar of California. Plaintiff McMillan has a property

3    interest in the right to practice his profession as a licensed attorney.

4         6.  Plaintiff, THE MCMILLAN LAW FIRM, APC, a California professional

5    corporation, (hereinafter referred to as "Plaintiff TMLF") has its principal place of

6    business in the County of San Diego, State of California. Plaintiff McMillan operates

7    Plaintiff TMLF.  TMLF has a property interest in its "goodwill" as such term is defined at

8    California Business and Professions Code sections 14100 and 14102.

9         7.  Defendant, DARREN CHAKER (a.k.a. Darren Del Nero a.k.a. Darren Del

10   Nero-Chaker a.k.a. Darren Shaker, a.k.a. D. David Hunter) (hereinafter referred to as

11   "Defendant DARREN"), is presently a resident of the State of California, County of San

12   Diego. Defendant DARREN conducts business through and holds assets as trustee in

13   PLATINUM HOLDINGS GROUP TRUST, a self-settled trust.  Plaintiff is further

14   informed and believes that Defendant DARREN conducts business under the pseudonym

15   or doing-business-as "COUNTER FORENSICS." Defendant DARREN  was deemed a

16   vexatious litigant in Superior Court of California, County of San Diego Case Nos. 591421

17   (December 2, 1997) and GIC757326 (June 22, 2001).

18        8.  Defendant VANIA CHAKER, also know as Valentina Chanel,  (hereinafter

19   referred to as "Defendant VANIA") is presently a resident of the State of California,

20   County of San Diego, and is Defendant's Darren's sister.  On one or more occasions,

21   VANIA has participated in the acts set forth herein, providing assistance to Defendant

22   DARREN in committing predicate acts. Plaintiff is informed and believes that Defendant

23   VANIA conducts business through and holds assets as beneficiary in a self-settled trust,

24   which shall be referred to herein as THE ISLAND REVOCABLE TRUST, dated June 2,

25   2005. Defendant Marcus Mack is sued solely in his capacity as Trustee of the THE

26   ISLAND REVOCABLE TRUST, dated June 2, 2005.

27        9.  Defendant NICOLE CHAKER (hereinafter referred to as "Defendant

28   NICOLE"), is the mother of Defendant DARREN and Defendant VANIA. On one or

---

*16-cv-2186*                    First Amended Complaint                    3

1  more occasions, Defendant NICOLE has participated in the acts set forth herein,

2  providing assistance to Defendant DARREN in committing predicate acts. Plaintiff is

3  informed and believes that Defendant NICOLE conducts business through and holds

4  assets as trustee in a trust, which shall be referred to herein as THE NICOLE CHAKER

5  REVOCABLE LIVING TRUST, U/A dated August 18, 2010.  Defendant NICOLE is

6  sued both invididually and as trustee of said trust.

## DEFENDANTS' ENTERPRISE AND PREDICATE ACTS

8       10.  Plaintiffs are informed and believe, and based thereon allege that Defendant

9  VANIA is an attorney, currently licensed to practice law in the State of California.

10  Defendant VANIA has lived at various times in California and the Pennsylvania.

11  Defendant VANIA, as a profession, both individually on her own account and to assist

12  Defendants DARREN and NICOLE, engaged in litigation based on meritless or outright

13  false claims, typically relying upon the Fair Credit Reporting Act, 15 U.S.C. § 1681, and

14  on at least one occasion bringing a claim for personal injury, deriving income from such

15  fraudulent activity.  As part of her pattern of racketeering activity, Defendant VANIA has

16  attempted and sometimes succeeded in collecting unlawful debts, i.e., a claim based on

17  false or meritless legal claims, and derived income from such false claims and unlawful

18  threats of suit.  For instance in *Vania Chaker v. Monarch Group Management, Inc.*,

19  U.S.D.C. So. Dist. of Cal., Case No. 06cv1534W(AJB), Defendant VANIA brought a

20  class action complaint for violation of the Fair Debt Collections Practices Act, 15 U.S.C.

21  § 1692, et seq. and the California Rosenthal Fair Debt Collection Practices Act, arising

22  from her landlord's service of a three day notice to pay rent or quit on her.  Defendant

23  VANIA has brought three other cases based on allegations of violations of the Fair Debt

24  Collection Practices Act, e.g., *Vania Chaker v. Collection Company of America*, U.S.D.C.

25  So. Dist. of Cal., Case No. 05cv390 BEN(AJB) [unpaid T-mobile cellular phone

26  charges]; *Vania Chaker v. Allied Interstate, Inc.*, U.S.D.C. So. Dist. of Cal., Case No.

27  05cv0212 LAB(RBB)[unpaid DirectTV bills]; *Vania Chaker v. CAMCO*, U.S.D.C. So.

28  Dist. of Cal., Case No. 04cv1735 W(RBB).

1      11.  Plaintiffs are informed and believe, and based thereon allege that Defendant

2   VANIA did not solely file such suits in the Southern District of California, but also

3   assisted in cases in the Central District of California, appearing as attorney in the suit

4   brought by Defendant DARREN *subnom* (Darren Del Nero) and Defendant NICOLE

5   alleging defendant's violations of the Fair Debt Collections Practices Act, 15 U.S.C. §

6   1692, et seq..  Specifically, Defendants DARREN and NICOLE brought suit against

7   Midland Credit Management Inc., in the case of *Del Nero & Chaker, et al., v. Midland*

8   *Credit Management Inc*.,  U.S.D.C. Cen. Dist. of Cal., Case No. 2:04-cv-01040-ABC-SH.

9   Defendant DARREN  and his attorneys were sanctioned $155,979.09 after the court

10  found that Defendant DARREN  brought suit in bad faith and for the purpose of

11  harassment.  (*Del Nero* v. Midland Credit Management Corp. et al*.,

12  2:04-cv-01040-ABC-SH.(Attorneys fee award later vacated against Chaker's counsel.)

13  The Court issued an order to show cause re contempt for Defendant VANIA's conduct

14  during the jury trial, and barred her from the courtroom during the remainder of the trial.

15  The court's basis for the order was that Defendant VANIA attempted to aid a witness in

16  answering counsel's questions. [ECF 91.] Defendant VANIA also represented Defendant

17  DARREN *subnom* (Darren Del Nero) in  *Darren Del Nero* v. Reliable Adjustment Bureau

18  *Inc et al*, U.S.D.C. Cen. Dist. of Cal., Case No. 2:04-cv-00969-FMC-JWJ, another case

19  alleging violations of 15 U.S.C., § 1681.  In each of those instances, in a likely effort to

20  avoid Defendant DARREN's prefiling order as a vexatious litigant, Defendant VANIA

21  initially appeared on Defendant DARREN's behalf, then substituted out to allow

22  Defendant DARREN to prosecute the case *in propria persona*.  Defendant VANIA

23  engaged in such transitory representation of Defendant DARREN to assist him avoiding

24  the bar of the prefiling orders placed resulting from his designation as a vexatious litigant.

25      12.  As to Defendant DARREN, Plaintiffs are informed and believe, and based

26  thereon allege that Defendant DARREN holds himself out to the public as operating a

27  business called COUNTER FORENSICS.  The COUNTER FORENSICS web page

28  described its services as follows:

---

*16-cv-2186*                    First Amended Complaint                    5

1      "Founded in 2006, the origination of CounterForensics.com can be traced to

2      the cyber security and forensics background of our consultant, Darren

3      Chaker. Mr. Chaker (www.DarrenChaker.com) previously worked in law

4      enforcement, and as a security contractor in the Middle East. More recently,

5      Mr. Chaker managed electronic discovery (e-discovery) for a leading

6      multinational law firm conducting large-scale digital forensic

7      investigations, and provided electronic discovery services involving civil,

8      corporate and criminal matters. Mr. Chaker also implemented security

9      enforcement protocols and systems with Military Grade Communications

10     for use between international offices to discuss sensitive matters. Mr.

11     Chaker has additional expertise in matters involving:

12     • Software piracy;

13     • Sexual harassment via e-mail, instant messaging and other forms of electronic

14     communications;

15     • Monitoring employee activity;

16     • Employee sabotage;

17     • Intrusion detection;

18     • Recovery of deleted files;

19     • Lost password recovery and cracking of locked files;

20     • Discovery of hidden and deleted e-mails and pictures;

21     • Internet usage and unauthorized software installed on a company machine; and

22     Removal of viruses, pictures, software and other data items which may be hidden

23     from the user.

24     See **Exhibit 6**,

25     https://web.archive.org/web/20150208142616/http://www.counterforensics.com/

26     (Accessed on August 23, 2016.)

27      13. At various times relevant to the facts stated herein, Defendant DARREN has

28 resided in California, Nevada and Texas, and engaged in transactions and acts affecting

interstate commerce:

14. Defendant DARREN has, as a profession, engaged in litigation based on meritless or outright false claims, typically relying upon the Fair Credit Reporting Act, 15 U.S.C. § 1681, and on at least one occassion bringing a claim for personal injury, deriving income from such fraudulent activity. As part of his pattern of racketeering activity, Defendant DARREN has attempted and sometimes succeeded in collecting unlawful debts, i.e., a claim based on false or meritless legal claims, and derived income from such false claims and unlawful threats of suit.

15. In another 2005 case, attorney's fees of $42,934.84 were awarded against Defendant DARREN for filing a baseless lawsuit. (*Chaker v. Richland* (C.D. Cal. 2005) CV 05-7851-RSWL; *See also Chaker v. Imperial Collection Services* (C.D. Cal. 2004) CV 04-2728-PA (alleging claims under the FDCPA found to be without merit); and *Del Nero v. Riddle & Associates PC, et al.* (C.D. Cal. 2003) CV 03-6511-GHK (same).) In a 2007 case, Defendant DARREN and his attorneys were sanctioned $155,979.09 after the court found that Defendant DARREN brought suit in bad faith and for the purpose of harassment. (*Del Nero v. Midland Credit Management Corp. et al*. (C.D. Cal. 2007) CV 04-1040 GPS.) In a 2009 case, Defendant DARREN was ordered to pay $136,316.14 for bad faith due to Defendant DARREN falsely claiming identity theft. (*Chaker v. Nathan Enterprises Corp.* (C.D. Cal. 2009) CV 04-2726-RSWL.)

16. Defendant DARREN filed other suits based allegations of violations of Fair Credit Reporting Act, 15 U.S.C. § 1681, i.e., *Darren Chaker-Del Nero v. Afni, Inc.*, U.S.D.C. Cen. Dist. of Cal., Case No. 2:08-cv-03405-ODW-SS; *Darren D Chaker v. First City Bank Credit Union*, U.S.D.C. Cen. Dist. of Cal., Case No. 2:04-cv-02727-GPS-RZ; *Darren D Chaker v. Factual Data Corporation*, U.S.D.C. Cen. Dist. of Cal., Case No. 2:04-cv-02729-JFW-AJW; *Darren D Chaker v. European Auto House*, U.S.D.C. Cen. Dist. of Cal., Case No. 2:04-cv-02731-R-PJW; *Darren Chaker v. Arrow Financial Services* LLC, U.S.D.C. Cen. Dist. of Cal., Case No. 2:04-cv-07050-FMC-FMO.

17.  Defendants have a pattern of attacking the attorneys which oppose them, i.e., in *Darren D Chaker v. Felipa R. Richland, et al.*, U.S.D.C. Cen. Dist. of Cal., Case No. 2:05-cv-07851-RSWL-PLA, Defendant DARREN sued attorney Richland and her law office, and her client Nathan Enterprises Corp. for alleged violations of the  Fair Credit Reporting Act, 15 U.S.C. § 1681.  Plaintiff is informed and believes and based thereon alleges that during her defense of the both cases, Ms. Richland was stalked, her property vandalized.  Ultimately, Ms. Richland and her client prevailed, with Defendant DARREN held liable for costs and attorneys fees. [ECF 25, 26.]

18.  Defendant DARREN, subnom *Darren Chaker Del-Nero*, brought additional suits in the United States District Court for the District of Nevada based on allegations of violation of the Fair Credit Billing Act, 15 U.S.C. § 1666, e.g., *Chaker-Delnero v. Nevada Federal Credit Union, et al*, U.S.D.C. District of Nevada., Case No., 2:06-cv-00008-BES-GWF; for violations of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692, *Chaker-Delnero v. Butler & Hailey, et al*, U.S.D.C. District of Nevada., Case No. 2:06-cv-00022-KJD-LRL, *Chaker-Delnero v. Clark County Collection Service, LLC*, U.S.D.C. District of Nevada, 2:06-cv-00123-JCM-PAL, and *Chaker-Delnero v. Collectco*, U.S.D.C. District of Nevada, 2:06-cv-00244-RLH-GWF.  In each of these cases, docket entries reflect a voluntary dismissal. Plaintiff is informed and believes that in those cases, the Defendants paid a sum to "buy their peace" rather than to spend attorneys fees litigating the case, despite the lack of the merit to Defendant DARREN's claims.

19.  Defendant DARREN, subnom *Darren Chaker*, brought additional suit in the United States District Court for the Southern District of Texas (Houston) based on allegations of violation of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692, *Chaker v. The CMI Group*,  U.S.D.C. Southern District of Texas (Houston), 4:07-cv-01802F [Time Warner Communications.] In that case, the docket entries reflect a voluntary dismissal. Plaintiff is informed and believes that in that case, the Defendants paid a sum to "buy its peace" rather than to spend attorneys fees litigating the case,

1    despite the lack of the merit to Defendant DARREN's claims.

2        20.  Defendant DARREN, subnom *David Hunter*, brought additional suit in the

3    United States District Court for the District of Arizona, entitled *Hunter v. Receivables*

4    *Performance Management, LLC*, U.S.D.C. District of Arizona, 2:10-cv-00665-MHM

5    [Sprint cellular phone service].  Within that suit Defendant DARREN attached letters

6    claiming an address at 11881 S. Fortuna Road, #223, Yuma, AZ 85367 [Exhibit B, ECF

7    1-3.] In that case, the docket entries reflect a voluntary dismissal. Plaintiff is informed

8    and believes that in that case, the Defendant paid a sum to "buy its peace" rather than to

9    spend attorneys fees litigating the case, despite the lack of the merit to Defendant

10   DARREN's claims.

11                        **SEX TRAFFICKING**

12       21.  Plaintiff is informed and believes and based thereon alleges that Defendant

13   DARREN also engaged, within the last ten years, in human trafficking, and derived

14   income from such activity.

15       22.  Defendant DARREN's record of arrests and prosecutions (RAP) reveals

16   arrests for insufficient funds/check, attempting to prevent/dissuade victim/witness,

17   receiving known stolen property, vehicle theft, first degree burglary, grand theft, and

18   being in possession of an assault weapon. He was convicted of invading/looking into a

19   tanning booth (1997), and possession of an assault weapon (2006). Such crimes were

20   punishable by a year or more incarceration.

21                        **FALSE STATEMENTS**

22       23.  Defendant DARREN also obtained mortgages on real estate through false

23   statements, and thereafter rather than paying the mortgages, Defendant DARREN kept the

24   rents from such properties to fund his enterprises, and when his mortgagors sought to

25   recover their real property collateral, Defendant DARREN filed false bankruptcy petitions

26   in order to stall or avoid the foreclosure and continue to collect rental income.

27       a.  Defendant DARREN used the ill-gotten proceeds of his enterprise to fund his

28           lifestyle and further his illegal activities including through the purchase of

---

*16-cv-2186*                 First Amended Complaint                    9

1   computers, paying for travel, development of various domain names and online

2   presences to the detriment of Plaintiff herein.

3   b.  In order to dissuade those members of law enforcement and attorneys in private

4   practice who would challenge Defendant DARREN's criminal conduct, including

5   Plaintiff herein, Defendant DARREN used various means and threats, including

6   harassment, stalking, defaming others, vandalizing property, hacking computers,

7   spoofing emails, and identity theft.

8   c.  Defendant DARREN has used the proceeds of his racketeering activity to

9   purchase computers, equipment, and Internet access services in order to engage in

10  his and Defendants VANIA and NICOLE's frauds, and efforts to dissuade those

11  who oppose their illegal conduct, including Plaintiff herein.

12  d.  On March 22, 2012, Defendant DARREN was indicted in *United States v.*

13  *Darren David Chaker,* Case No. 4:12CR00168-001, and thereafter granted pre-

14  trial release under supervision with U.S. Pretrial Services.  The Indictment,

15  attached as **Exhibit 1**, alleges a portion of Defendants' scheme, which Plaintiff

16  incorporates by reference here.

17  e.  While on supervision with U.S. Pretrial Services, through false statements to a

18  United States officer, he violated his terms of release by failing to disclose to U.S.

19  Pretrial Services and the Court the fact that he procured a U.S. Passport using the

20  alias "D. David Hunter."

21  f.  On December 17, 2013, Defendant DARREN suffered a Judgment in a

22  Criminal Case in the case entitled *United States v. Darren David Chaker,* Case No.

23  4:12CR00168-001, in the United States District Court for the Southern District of

24  Texas (Houston), for Bankruptcy Fraud, 18 U.S.C § 157(3).  On April 14, 2016,

25  that conviction was affirmed by the United States Court of Appeals for the Fifth

26  Circuit, case number 14-20026, as reported in  *United States v. Chaker,* 820 F.3d

27  204, 206 (5th Cir. 2016). He was sentenced to a total term of 15 months, and was

28  additionally sentenced to three years supervised release, as part of the special

---

*16-cv-2186*              First Amended Complaint                    10

conditions of supervision was ordered:

"The defendant shall provide the probation officer access to any requested financial information. If a fine or restitution amount has been imposed, the defendant is prohibited from incurring new credit charges or opening additional lines of credit without approval of the probation officer.

The defendant is prohibited from possessing a credit access device, such as a credit card, unless first authorized by the probation officer.

The defendant is required to participate in anger management counseling as deemed necessary and approved by the probation officer. The defendant will incur costs associated with such program, based on ability to pay as determined by the probation officer.

The defendant is required to participate in a mental health program as deemed necessary and approved by the probation officer. The defendant will incur costs associated with such program, based on ability to pay as determined by the probation officer.

The defendant may not stalk and/or harrass other individuals to include, but not limited to, posting personal information of others or defaming a person's character on the internet."

(ECF 312, 4:12CR00168-001)

24. On November 7, 2016, the district court in *United States v. Darren David Chaker*, U.S. District Court, Southern District of California, Case No. 3:15-cr-07012-LAB, struck the condition "The defendant may not stalk and/or harrass other individuals to include, but not limited to, posting personal information of others or defaming a person's character on the internet."

## DEFENDANTS' HISTORY OF EXTORTION AND WITNESS TAMPERING

25. Defendants rely on keeping their past conduct, criminal convictions, lawsuits, and generally bad reputation out of public view. To accomplish this the defendants regularly use pseudonyms, attempt to seal documents and proceedings which may alert the public to information about Defendants that if known, would provide a defense or would affect a fact-finder's view on their credibility.

26. Defendant DARREN falsely, and in order to gain credibility with unknowing law enforcement and laypersons, holds himself out as a former law enforcement officer or government security employee, including at various times claiming an "Ex-cop" or to be an employee of the "Diplomatic Security Service."

27. **Victim Zaya**: Plaintiffs are informed and believe that, in accordance with Defendants' common plan and scheme, Defendant DARREN committed one or more acts of extortion against Nadine Zaya:

a. Plaintiff is informed and believes, and based thereon alleges, that Defendant DARREN formerly had a dating relationship with Nadine Zaya. At some point between August and October 2002, Defendant DARREN and Zaya, traveled from Southern California to Scottsdale, Arizona. Petitioner took Zaya to a gun store, where he purchased the Rifle, a licensed reproduction of a Fabrique Nationale FAL (FN-FAL) battle weapon. At the gun store, petitioner told Zaya he once owned "the exact same gun" but his mother had taken it away from him.

b. After Defendant DARREN purchased the Rifle, he made Zaya take pictures of him with it. He also made Zaya pose with the Rifle. Defendant DARREN then took Zaya to a firing range, where he fired the Rifle and showed her how to shoot, hold, and load it. When Zaya held the Rifle, Defendant DARREN reassured her, "It's okay. Look, it's fun. . . . You're going to be okay. I'm an ex-cop. I know how to shoot a gun." Shortly thereafter, petitioner and Zaya returned to California with the Rifle.

c. On October 14, 2002, Laguna Beach police officers visited Defendant DARREN's apartment to investigate allegations that he had sexually exploited a minor. A police officer entered the apartment, knocked on a bedroom door, and identified himself as a police officer. After some delay, Defendant DARREN emerged from the bedroom and told the officer the room belonged to him. He refused, however, to permit the police officers to search it. Defendant DARREN called Zaya after the police officers left the apartment. He expressed concern that the fully-assembled Rifle would be considered an illegal weapon. Defendant DARREN told Zaya he was going to remove parts from the Rifle to "make it legal" and asked her to keep the parts. The next day, the police officers returned to Defendant DARREN's apartment with a search warrant. During the search, an

1    officer found the Rifle in petitioner's bedroom closet. He noticed the Rifle had a

2    detachable magazine and a pistol grip, but that it was missing its bolt carrier group.

3    The officers also found unloaded magazines and pictures of petitioner posing with

4    the Rifle at a firing range. In the pictures, the Rifle contained the bolt and the

5    magazine.

6    d.  On November 18, 2002, the District Attorney of Orange County filed a felony

7    complaint charging defendant with one count of possession of an assault weapon

8    (Penal Code § 12280(b))  and one count of receiving stolen property (Penal Code §

9    496, subd. (a)). Shortly after the People filed the complaint, defendant began

10   writing letters to the court. In these letters, defendant claimed the police had

11   illegally seized privileged documents from his apartment. He also criticized the

12   judges presiding over his case and the attorneys assigned to represent him. On July

13   30, 2003 -- after defendant had written six letters to various judges -- the court

14   ordered defendant to stop. The court notified defendant it would "not take action

15   on personal communications from a represented defendant when his case is

16   pending before this court." (*People v. Chaker*, No. G037362, 2008 Cal. App.

17   Unpub. LEXIS 999, at *4-5 (Ct. App. Feb. 4, 2008).)

18   e.  Plaintiffs are informed and believe that in July 2005, the Superior Court of

19   California, County of San Diego issued a restraining order against Darren D.

20   Chaker pursuant to the Domestic Violence Protection Act (Fam. Code, § 6200 et.

21   seq. (the Act)), requiring him to stay away from Nadine Zaya for a five-year

22   period. He appealed from that order on various grounds, contending in part that

23   Zaya's evidence was insufficient to support its issuance; the Court of Appeals of

24   California, Fourth District, Division One, however, rejected his arguments and

25   affirmed the order.

26   f.  On June 15, 2006, Zaya filed a request for a temporary restraining order under

27   the Act against Chaker.  In her request, Zaya stated under penalty of perjury that

28   Chaker made threatening calls to her and told her he would harm her or her family

---

*16-cv-2186*                    First Amended Complaint                    13

1   if she testified in a pending criminal matter against him. (*Zaya v. Chaker* (Oct. 19,
2   2007, D049874) [nonpub. opn.].)

3   g.  Thereafter, on or about July 19, 2006, and then again on or about December 8,
4   2006, Defendant DARREN sent nude photos of Zaya to Zaya's brother's
5   employer, which had been taken by Defendant DARREN.

6   28.  **Victims Frantz:** Plaintiffs are informed and believe that the following is true
7   regarding Defendant DARREN's efforts to extort San Diego attorneys James Frantz, Jodi
8   Frantz, and Charles Kim:

9   a.  On or about December 2010, Jodi and James Frantz retained Charles Kim to
10  represent them in a civil protective action. Jodi Frantz sought a restraining order
11  against Defendant DARREN, in *Hautaluoma v. Chaker*, San Diego Superior Court
12  Case No. 717794.

13  b.  Prior to the extortion attempt against James Frantz, Jodi Frantz, and Charles
14  Kim, Plaintiffs are informed and believe that Defendants engaged in acts of
15  vandalism to the property of James Frantz and Jodi Frantz, which they believed to
16  have been perpetrated and intended by Defendant DARREN to intimidate James
17  Frantz and Jodi Frantz and send a message.

18  c.  In the preceding months to the extortion attempt, Jodi Franz was the victim of
19  financial fraud in the summer of 2010. Ms. Frantz had caused two of her then
20  current credit cards to be de-activated by the issuers due to fraud alerts. The recent
21  event happened in the week preceding the extortion attempt, while she was on
22  vacation. Although Ms. Frantz believed Chaker is responsible for the fraud, she
23  had no evidence.  Ms. Franz reported the thefts to her credit card issuers. She had
24  unauthorized charges on credit accounts from Bank of America, Union Bank, and
25  Nordstrom.  In the summer of 2010, Mr. Frantz also had his identity stolen, and
26  used for credit card fraud. Although Mr. Frantz believed Chaker was responsible
27  for the fraud, he had no evidence.

28  d.  On December 22, 2010, at 2:54 a.m., Defendant DARREN caused a fax to be

1    sent to the office of Charles Kim. The fax included an inappropriate reference to

2    the death of James Patrick Frantz II (the son of James and Jodi Frantz). Also,

3    Defendant DARREN faxed a complete copy of a County of San Diego

4    Investigative report #10-01098 which documented the medical examiners death

5    investigation in that case. The fax  referenced the social security number of Jodi

6    Frantz and Dr. Christine Miller who treated Jodi Frantz. The fax contained threats

7    to publish the social security numbers and "embarrassing" medical information if

8    Attorney Kim did not agree to Chaker's demands. Also included was an apparent

9    threat to file complaints with the state bar association against Charles Kim and

10   James Frantz if they did not comply with his demands.

11       29. **Victims Mateo**: Nicole Mateo was in a relationship with Defendant

12   DARREN, which resulted in the birth of a daughter.  Plaintiff is informed and believes

13   that following the efforts to obtain child support, Defendant DARREN initiated a

14   campaign of harassment against Wendy Mateo and her husband Steven Mateo.  Steven

15   Mateo is a deputy constable with the Harris County Constable Office, in Spring, Texas.

16   The Mateo's hired an attorney by the name of Cynthia Tracy to address Defendant

17   DARREN's conduct.  In response, Defendant DARREN initiated a harassment campaign

18   that included sending sexually explicit photos of Nicole Mateo to the employers of the

19   Mateos, obtaining the email passwords of various Mateo accounts, and sending emails

20   containing sexually explicit material through such accounts.  The Mateo's attorney,

21   Cynthia Tracy, was targeted in a blog post that also made false and defamatory statements

22   about her.  Ultimately, Attorney Tracy declined to continue to represent the Mateos due to

23   the aggravation and the expense of dealing with Defendant DARREN.

24

25       **DEFENDANTS' EFFORTS DIRECTED AT PLAINTIFF HEREIN**

26       30.  Plaintiff operates a website called FEARNOTLAW.COM, and has operated

27   that site since 2005.  Fearnotlaw.com maintains tens of thousands of unpublished

28   decisions from California's court of appeals.  The unpublished decisions were taken

---

*16-cv-2186*                     First Amended Complaint                     15

1    directly from the court of appeals website and posted *en masse*, at various times.  There

2    was no intentional targeting of Darren Chaker or any other subject of the decisions.

3          31.  Defendant DARREN in this case initially contacted Plaintiff to demand

4    removal of decisions posted concerning his cases that had been decided by the Court of

5    Appeals. One of those decisions was *Zaya v. Chaker*, California Court of Appeal Case

6    No. D049874.  In *Zaya v. Chaker*, the Court of Appeal affirmed a trial court's imposition

7    of a five year restraining order against Mr. Chaker imposed pursuant to the Domestic

8    Violence Protection Act, Fam. Code, 6200 *et. seq*.   Defendant DARREN Chaker's letter

9    to Plaintiff on November 23, 2010 contained Ms. Zaya's original petition, which alleged

10   that Mr. Chaker posted bogus sex-service advertisements on Craigslist falsely attributed

11   to Ms. Zaya, and had threatened to post compromising photos and videos of Ms. Zaya

12   online if she testified against him in his felony assault-weapon case. Plaintiff did not

13   remove any of the appellate decisions from Fearnotlaw.com.

14         32.  Defendant DARREN  thereafter initiated a campaign of harassment and

15   vandalism against Plaintiff McMillan and his family.  Usually during the holidays,

16   Plaintiff's family's cars would be vandalized.  Plaintiff's brother had the words

17   "fearnotlaw" scratched on the trunk of his BMW.  In another instance, the driver's side

18   mirror of Plaintiff's brother's truck was smashed.  On that instance, a neighbor that heard

19   the noise, saw a black SUV driving rapidly away.  Defendant DARREN  owns a Black

20   Dodge Durango.  Plaintiff is informed and believes, and based thereon alleges, that

21   Defendant VANIA Chaker accompanied Defendant DARREN during that vandalism.

22         33.  Other members of Plaintiff McMillan's family were attacked as well.

23   Plaintiff's mother's car had acid poured on the trunk.  Plaintiff's father's car had its tires

24   slashed.  After each event, Mr. Chaker would send Plaintiff an e-mail wishing him

25   "happy holidays" or making some other statement.  It was clear to Plaintiff that Darren

26   Chaker was acknowledging the vandalism by his timing of his emails, and attempting to

27   send a message and intimidate Plaintiff.

28         34.  At one point, on or about November 23, 2010, Defendants came to Plaintiff's

---

*16-cv-2186*                    First Amended Complaint                    16

1    home and delivered a letter to his mail box signed by Defendant DARREN.  The letter

2    once again demanded that Plaintiff remove the posts concerning Defendant DARREN 's

3    cases from Fearnotlaw.com.  Thereafter, Defendant DARREN sent Plaintiff McMillan e-

4    mails referring to his dogs – which indicated to Plaintiff that he had come to his house

5    and looked into his back yard.

6        35.  Because of Defendants' activities, Plaintiff McMillan and his family members

7    installed security cameras around their houses.  Plaintiff McMillan also installed security

8    cameras on the outside of the commercial building in La Mesa where Plaintiff TMLF has

9    its offices.

10        36.  Defendant DARREN also began posting matters about Plaintiffs on the

11    Internet.  Initially, he used his own domain names.  Later, he began using Plaintiff's name

12    under Google's "blogspot" service.  Through the years, clients have contacted Plaintiff

13    McMillan to let him know that they have seen the Defendant DARREN 's posts

14    concerning Plaintiff on the Internet.  Chaker's posts were troubling to Plaintiffs' clients.

15        37.  Postings on Internet gripe sites and consumer review sites began appearing,

16    the posters made negative comments, but used a pseudonym.  Plaintiffs are informed and

17    believe based upon the timing and the circumstances that Defendants were posting those

18    comments.

19        38.  Because Defendant DARREN had posted about Plaintiff on the Internet,

20    others that had conflicts with Defendant DARREN contacted Plaintiff for advice and

21    representation in dealing with Defendant DARREN .  Plaintiff has provided that

22    representation pro-bono, and advanced the expenses.

23        39.  Plaintiff ultimately represented Wendy Mateo, one of the Defendant

24    DARREN's victims, in *Chaker v. Mateo*, San Diego Superior Court case,

25    37-2010-00094816-CU-DF-CTL, Hon. Timothy B. Taylor, Judge presiding.  Wendy

26    Mateo is the mother of Nicole Mateo.  Plaintiff is informed and believes that Nicole

27    Mateo had a brief relationship with Darren Chaker, which resulted in the birth of their

28    daughter.  Plaintiff began representing Ms. Wendy Mateo, the grandmother of Darren

---

*16-cv-2186*                    First Amended Complaint                    17

1 Chaker's child during the pendency of Darren Chaker's appeal of the judgment in the

2 *Chaker v. Mateo* case. That appeal resulted in the published decision of *Chaker v. Mateo*,

3 209 Cal. App. 4th 1138 (2012). Following that appeal, the Superior Court awarded

4 Plaintiffs attorneys fees. Those attorneys fees awarded have been the subject of judgment

5 debtor examinations and orders from Judge Taylor as discussed below.

6     40. Thereafter, Plaintiff began representing *Susan A.* in a paternity case filed in

7 the San Diego Superior Court entitled *Chaker v. A* (the "Paternity Case"). Ms. A had

8 also been in a relationship with Mr. Chaker. Ms. A. sets out her experience with Chaker

9 in her declaration dated July 11, 2013, a true and correct copy of which is attached hereto

10 as **Exhibit 'A' (Under Seal)**. Mr. Chaker claims that Ms. A.'s child, L, is the product of

11 that relationship. Ms. A. disputes that Mr. Chaker is the father, biological or otherwise,

12 of her child L.

13     a. On July 12, 2013, Plaintiff McMillan filed a document in the Paternity Case,

14     which included statement from Leesa Fazal, State of Nevada Office of the

15     Attorney General, who had provided her confidential investigative report for

16     submission in the Paternity Case, signed on July 11, 2013. (**Exhibit 2, Submitted**

17     **Under Seal**).

18     b. On July 22, 2013, at 8:45 a.m., Officer Fazal appeared in San Diego Superior

19     Court, according to Plaintiff's subpoena to testify in the Paternity Case regarding

20     the facts alleged in the above mentioned Declaration. Officer Fazal and Plaintiff

21     McMillan appeared before the Superior Court, Judge Gerald Jessop, presiding.

22     The court did not have time to hear the case in the morning, and ordered Ms. Fazal

23     and Mr. Chaker back to court later that afternoon. As they exited the court,

24     Defendant DARREN followed Ms. Fazal and Plaintiff McMillan a short distance,

25     and walked at a quick pace with his mobile telephone in his hand and appeared to

26     take video of them while laughing loudly. At that time, Ms. Fazal had not yet

27     testified, and Defendant DARREN's behavior was purposefully threatening and an

28     apparent effort to intimidate Officer Fazal, prior to her testimony.

1   c.  When Plaintiff McMillan and Officer Fazal returned they were accompanied by

2   licensed private investigator Richard Rivero.  Following the hearing Defendant

3   VANIA approached Richard Rivero in a rapid manner, within a couple feet, and

4   asked him what he was doing there and demanded his name.  Although he had not

5   been called to testify, Rivero responded that he was a witness, he would speak to

6   Defendant VANIA in the presence of court personnel, and attempted to pass her.

7   Defendant VANIA blocked his and Plaintiff McMillan and Officer Fazal's exit, so

8   Plaintiff, Rivero and Fazal returned to the court room, and Defendant VANIA

9   followed.  Thereafter, the courtroom deputy ordered Defendant VANIA to leave,

10  and to leave Rivero, Plaintiff McMillan and Ms. Fazal alone.  The courtroom

11  deputy allowed Rivero, Plaintiff McMillan and Ms. Fazal, and shortly therafter,

12  confirmed that Defendant VANIA was not awaiting them outside the courtroom.

13  d.  Plaintiff McMillan, Officer Fazal and Rivero exited the courtroom, then entered

14  the elevator to descend to the lobby.  After exiting the elevator and entering the

15  lobby.  Defendant DARREN blocked the doorway exit and in a loud and

16  commanding voice demanded that Officer Fazal be arrested for being armed.  He

17  wanted to place her under citizen's arrest.   Officer Fazal was escorted to the side

18  while the  deputies determined that there were no grounds to arrest.   While they

19  waited, the Defendant VANIA entered the location and brushed by Rivero as she

20  entered the elevator.

21  e.  Rivero left the building with Officer Fazal, Rivero then noted Defendant

22  VANIA's black SUV following him at a high speed.  Rivero pulled to the side.

23  Defendant VANIA stopped her SUV in the middle of the street adjacent to

24  Rivero's vehicle.  Rivero felt that Defendant VANIA was attempting to intimidate

25  him. Rivero noticed Defendant DARREN hunched down in the passenger's seat so

26  as to not be identified.  Such chase was intended, and did intimidate Officer

27  FAZAL in that it gave her additional concern regarding participating in the legal

28  proceedings.

---

*16-cv-2186*                    First Amended Complaint                    19

f.  On July 24, 2013, and thereafter during the pendency of the Paternity Case, Plaintiff provided the United States materials and information regarding Defendant DARREN, specifically that Defendant DARREN had a "go kit" which included a passport under his identity "David Hunter". Which information Plaintiff understands resulted in the revocation of Defendant DARREN 's pre-trial release. During Defendant DARREN's resulting incarceration, the *Chaker v. A* case was dormant.

g.  During his incarceration, Darren Chaker's mother, Nicole Chaker appeared at least once at a hearing in that case.

h.  Plaintiff is informed and believes, and based thereon alleges that, in that interim period Defendant DARREN was incarcerated, also during that time, i.e., on or about January 21, 2014, Plaintiff received at least one letter from Mr. Chaker that appeared to have been sent via Defendant NICOLE. (**Exhibit 4, Submitted Under Seal**).  The letter contained the following threat:

"You never considered the fact that due to your conduct your client may suffer. I should remind you the First Amendment is a 2 way street and I have the right to express my opinion as well."

i.  On February 2, 2014 Defendant NICOLE filed documents in the paternity case on behalf Defendant DARREN, including executing a declaration in his name. Within the letter to the Court attached to the declaration, Defendant NICOLE repeats the implied threats to reveal Susan A's applications for government benefits. (**Exhibit 5, Submitted Under Seal**).

j.  Because Mr. Chaker was designated a vexatious litigant, his case was dismissed for his failure to obtain a pre-filing order.  Mr. Chaker has exhausted his appeals in that matter.

41.  On or about September 18, 2014, during the pendency of the Paternity Case, Plaintiff McMillan received an e-mail from Darren Chaker, a true and correct copy of which is attached hereto as **(Under Seal) Exhibit 'B'.**  Within that letter, Mr. Chaker

threatens further actions against Plaintiffs unless he convinced his client Susan A to grant

him concessions in the paternity case.  Plaintiff has  excerpted the relevant portions below

(with redactions and substitutions to protect the privacy of third parties):

9/18/14

Time Sensitive – Reply Required by 8PM Today

Confidential Settlement Communication – California Evidence Code § 1142

Dear Scott, S, and C,

This is a request to settle pending claims against C, and Susan A. First, allow me to clarify this letter is constitutionally protected communication.  " 'As a general rule, even if subject to some exceptions, what you may do in a certain event you may threaten to do, that is, give warning of your intention to do in that event, and thus allow the other person the chance of avoiding the consequences' "]. Equally well established is the fact that "[o]ne legitimate purpose of a demand letter is to intimidate." (Subrin & Main, The Integration of Law and Fact in an Uncharted Parallel Procedural Universe (2004) 79 Notre Dame L.Rev. 1981, 2003 (hereafter Subrin & Main).)

As you know the pending case concerning my son, L, Chaker v. A, San Diego Superior Court Case No. D543061 and, thankfully to Scott the case was stayed, in lieu of filing a motion to dismiss – since I had no right to personally appear in the case while in custody. Scott, I do thank you for the stay and that is why I never opposed the motion while in custody.

\* \*\*

To keep it simple, here's my offer:
\* \* \*


**\* I will remove all blogs I have control over concerning Scott or his firm, and am able to remove the complaintsboard.com posting and if unable to remove pissedconsumer.com**, I will pay up to $500 to have SEO performed to push down the links as I know these sites continue to hurt the practice. (I understand I have negative comments about me, however I do not need to impress clients with my reputation. **I can assure you at least one client a year doesn't call due to reviews – costing you and your family money**.)

\* No blogs concerning S or C's company, have been posted, but various items have been set to self-publish in the event I am unable to access the blog and push back the self-publish date another two weeks.

In short I am agreeing to things a court would not order, but am trying to be amicable.

Scott, you once said to me "I win every time we go to court". I think you mischaracterize what winning is to me. In court, it is not the court ruling. It's the time spent away from your office. Taking up your time and associate's time. Taking food out of your kids mouth. Staying up late, or

1    ignoring kids and wife while spending time on litigating the instant case.
     Costing you clients – at least one person a year doesn't call you based on
2    my blogs – which have been updated recently,
     scott-mcmillan-law.blogspot.com. Your reputation and past performance,
3    likely increases the likelihood of opposing counsel's decision to fight a
     pending case longer - which costs you more time and money. **Out of court,**
4    **I have a few more victories than you and will always prevail in that**
     **respect, and win by having you and family spending money on**
5    **cameras, watching the monitors, looking out the window, and drawing**
     **drapes – of course there's no proof I have not done a thing nor do I**
6    **admit such, but if you think I am responsible, indeed I win every day.**
                                    * * *

7
     (**Exhibit 'B', Filed Under Seal**)
8
     **Hacking Twitter and Unauthorized Access to Plaintiff McMillan's Paypal Account**
9
          42.  Plaintiffs believe that Defendant DARREN Chaker has attempted to hack into
10
     Plaintiff's twitter and paypal accounts.  Specifically,
11
          a.  On October 22, 2014, Plaintiff McMillan received a notice from Paypal of
12
     "unusual activity" on his account.  Plaintiff hadn't attempted to sign in to his
13
     Paypal account at that time.  A true and correct copy of that email is attached
14
     hereto as **Exhibit 'C'**.  Due to the timing of the notice, Plaintiff is informed and
15
     believes that it was Darren Chaker that hacked into Plaintiff's account.
16
          b.  On November 19, 2014, Plaintiff received a notice of a "suspicious sign in
17
     detected on [his] twitter account."  Plaintiff hadn't attempted to sign in to his
18
     twitter account.  A true and correct copy of that email is attached hereto as **Exhibit**
19
     **'D'**.  Due to the timing of the notice, Plaintiff is informed and believes that it was
20
     Darren Chaker that hacked his account.
21
          43.  Following that threat of September 18, 2014, Mr. Chaker began posting
22
     information on the scott-mcmillan-law.blogspot.com site that he operated that, among
23
     other things, Plaintiff had molested his daughter. The first such statement appeared on
24
     Thanksgiving Day, i.e., Thursday, November 27, 2014.   A copy of that post is attached
25
     hereto as **Exhibit 'E.'**   Plaintiff  had not authorized Defendants to use Plaintiff's name in
26
     any manner.  Plaintiff had not molested his daughter.  That webpage has since been
27
     removed.
28
          44.  In order to improve the likelihood of the search engines indexing his site to

1   Plaintiff's name, Defendant DARREN optimized that page, **Exhibit 'E'**, for search

2   engines with "labels" including "4760-Nebo, attorney-sex-offender, el-

3   cajon-sex-offender, la-mesa-sex-offender. Rebecca-McMillan, scott-mcmillan-law,

4   www.mcmillanlaw.us."

5       45.  Mr. Chaker also operated a Blogger site at

6   http://mcmillanlawfirm.blogspot.com/.  Plaintiff had not authorized Defendant DARREN

7   to use the firm's name in this manner.  He published similarly false, scandalous, libelous

8   material on that site.

9       46.  On or about November 28, 201[4], Defendant DARREN Chaker posted on

10   the Blogger site at scott-mcmillan-law.blogspot.com, a post entitled "Maura Larkins

11   Linked to Sex Abuse."  Within that post Chaker repeats his false statements about

12   Plaintiff, and also recited a completely fabricated association between Plaintiff  and Ms.

13   Larkins, who is another individual with whom Mr. Chaker has conflict. A true and correct

14   copy of that post is attached hereto as **Exhibit 'G'**.

15                          **Spoofing Emails**

16       47.  On December 3, 2014, Plaintiff received a "spoofed" or bogus email that

17   purported to have been sent from Plaintiff's own e-mail address "scott@mcmillanlaw.us"

18       a.  The email stated:

19       "Scott McMillan and family are child molesters per a recent report,
        http://scott-mcmillan-law.blogspot.com/2014/11/scott-mcmillan-
20       la-mesa.html"

21       b.  A true and correct copy of the email is attached as **Exhibit 'H.'**

22       c.  A true and correct copy of the email with the header is attached as **'I'.**

23                          **Google Places**

24       48.  On December 4, 2014, a "Darren C." posted a 2 star review for the McMillan

25   Law Firm, APC on Google places, wherein he stated:

26

27       "I wish I knew of his interests in children, http://scott-mcmillan-
        law.blogspot.com/2014/11/scott-mc."

28       a.  A screen shot of Plaintiff's administration page for Google Places is attached

---

*16-cv-2186*                    First Amended Complaint                    23

hereto as **Exhibit 'J'**.

b.  That post was later deleted.   In light of the timing of that e-mail, the use of the name "Darren C.", and that the identical content was posted on his blogspot sites, Defendant DARREN was the poster.

49.  Defendant DARREN. Chaker sent e-mails to many members of the local legal community, accusing Plaintiff of molesting his  daughter.  A copy of one such email dated December 6, 2014 is attached hereto as **Exhibit 'K'**.  That e-mail was sent to Andrew Griffin, an attorney for an opposing party in a bankruptcy case where Plaintiff represented a creditor, who in turn, forwarded the e-mail to Plaintiff on December 8, 2014.

50.  On December 22, 2014, at 1:57 a.m., Defendant DARREN sent Plaintiff an e-mail with the subject line "Pending Paternity Case". A copy of that email is attached hereto as **Exhibit 'L.'**

51.  On December 23, 2014, at approximately 10:08 a.m., Plaintiff received an e-mail from Defendant DARREN  Chaker entitled "Request to See Son."  A copy of that email is attached hereto as **Exhibit 'M'.**

**Threats to E-mail Colleagues in the San Diego East County Community**

52.  On December 23, 2014, Plaintiff received an e–mail from Defendant DARREN where he stated:

> "Mr. McMillan, the reported conduct I have found is very improper and disgusting. I have been forced to notify numerous members of the bar about my blog concerning your firm, most recently the Foothills Bar Association, and will start naming your daughter, I believe a former Ms. El Cajon, as the likely victim. I hope you have ceased your conduct and notice to hundreds of people has done the public some good.

> Dear XXXXXX,

> Sex offender. As a member of the bar and likely parent, I would hope notice of a report concerning La Mesa Attorney Scott McMillan, who also operates McMillan Academy of Law without a single applicant/graduate, http://campus.lawdragon.com/schools/mcmillan-academy-of-law/ was reported to take part in sexual molestation of a minor. See, http://scott-mcmillan-law.blogspot.com/2014/11/scott-mcmillan-la-mesa.html

> The report provides great detail and hope you pass this email along, as I

have distributed it to 200 attorneys in San Diego. Scott McMillan is also a documented family friend of Kenneth Bourke who was also arrested for child molestation – see report - http://scott-mcmillan-law.blogspot.com/2014/09/scott-mcmillan-molest-la-mesa.html
Happy Holidays to all.
Darren Chaker"

a.  A copy of that email is attached hereto as **Exhibit 'N'.**

53.  On or about June 8, 2015, Google removed the scott-mcmillan-attorney.

blogspot.com site, which defendants had created without Plaintiffs authorization.

54.  On or about June 16, 2015, Google removed the mcmillanlawfirm.

blogspot.com site, which defendants had created without Plaintiffs authorization.

## COMPLAINTSBOARD.COM

55.  Since 2011 and through the present, a person that Plaintiff McMillan believes

to be Defendant DARREN based on identical content posted on his website and Mr.

Chaker's statements above of September 18, 2014 that he is "**able to remove the**

**complaintsboard.com posting**", has posted derogatory and defamatory statements about

Plaintiff on the Internet at:

http://www.complaintsboard.com/complaints/the-mcmillan-law-firm-la-mesa-c571484.ht

ml#comments

a.  A true and correct copy of that post as published is attached hereto as **Exhibit**

**'O.'**

b.  The poster is identified as "Tracy Law Houston."  Cynthia Tracy, Attorney at

Law, P.C., a family law attorney in Houston, Texas, formerly represented Nicole

Mateo in the custody and child support case against Darren Chaker.

56.  Despite the removal of the blogspot sites, on August 23, 2015, a poster using

the name and search term "scott-mcmillan-la-mesa" posted the following as a comment to

the post at http://www. complaintsboard.com/complaints/the-mcmillan-law-firm-la-mesa-

c571484.html#comments

a.  "I located the police report about Scott McMillan, La Mesa, Attorney reportedly molesting children. I also found he operates his own law school out of a small, run down office near the train tracks, but in the same breath says he's a leading law firm. With this reputation, I cannot imagine such is true."

1    b.  Attached as an image to the comment, he re-posted his November 27, 2014

2    post, i.e., the content at Exhibit 'B' herein, the repost of which is attached at

3    **Exhibit 'P.'**

4    57.  On September 16, 2015, a poster using the name and search term

5    "mcmillan-law-firm-la-mesa" posted the following as a comment to the post at

6    http://www.complaintsboard.com/complaints/the-mcmillan-law-firm-la-mesa-c571484.ht

7    ml#comments

8    a.  "Scott McMillan, McMillan Law Firm, sued the hardworking Sheriff over his
     Facebook Account. The law settled for about nothing. It is unfortunate law
9    enforcement need to pay out money to defend such nuisance lawsuits, when that
     money should be going to hiring more officers, and buying newer equipment. With
10   about 60 loses in the Court of Appeal docket, astonishing he is still in office."

11   b.  That case – *Karras v. Gore*, U.S. D.C. So. Dist. Cal., 14cv2564-BEN-KSC –

12   was settled for a payment of attorneys fees plus the token $20. Thus, the above

13   statement is false, as the Sheriff paid attorneys fees and agreed to change practices.

14   c.  Attached as an image to the comment, he posted a partial news article, a copy of

15   which is attached as **Exhibit 'Q.'**

16   58.  Also on September 16, 2015, a poster using the name and search term

17   "mcmillan-law-firm-la-mesa" posted the following as a comment to the post at

18   http://www.complaintsboard.com/complaints/the-mcmillan-law-firm-la-mesa-c571484.ht

19   ml#comments

20   a.  "McMillan Academy of Law, run by Scott McMillan appears to have not had a
     single student go through his law firm, where the class is shared in the same space
21   as the attorney, oh and also Dean McMillan (also an attorney working out of same
     office. According to LawDragon, no one has ever graduated or even applied to that
22   law school."

23   b.  Attached as an image to the comment, he posted a webpage print-out, a copy of

24   which is attached as **Exhibit 'R.'**

25   59.  Also on September 16, 2015, a poster using the name and search term

26   "mcmillan-law-firm-la-mesa" posted the following as a comment to the post at

27   http://www.complaintsboard.com/complaints/the-mcmillan-law-firm-la-mesa-c571484.ht

28   ml#comments

---

*16-cv-2186*                    First Amended Complaint                    26

a.  "McMillan sued by Yelp! for posting his own reviews. Read the story in detail, sad set of circumstances, especially when you need to create your own reviews." In truth and in fact, Plaintiffs had not posted their "own reviews."  Plaintiffs had represented Julian McMillan, who had been sued by Yelp.

b.  Attached as an image to the comment, he posted a news article, a copy of which is attached as **Exhibit 'S.'** Plaintiff did not post his own reviews. Indeed, in that case, Plaintiff was not accused by Yelp of posting comments. Rather, Plaintiff represented another attorney, Julian McMillan, in the case. Chaker edited out the part that would have otherwise explained that Plaintiff was not the Defendant DARREN in that action, but rather just the attorney.  Contrary to Defendants' suggestion, Plaintiff was partially successful at the time of the posting of the article. Plaintiff won a motion to change venue, and counsel for Yelp paid Plaintiffs attorneys fees.

60.  Most recently, on February 9, 2016, a poster using the name and search term "mcmillan-law-firm" posted the following as a comment to the post at http://www.complaintsboard.com/complaints/the-mcmillan-law-firm-la-mesa-c571484.html#comments

a.  "Williams v. The Superior Court of San Diego County/Nordstrom, Inc., Court of Appeal Case Number D068765. shows Scott McMillan, McMillan Law Firm in Las Mesa, LOST ANOTHER case. This one where Nordstrom is vigorously defending itself against allegations of attorney, law professor, and law school dean (Yes, Scott McMillan is all three of those titles since he runs a law school, McMillan Academy of Law, out of two story office near the train tracks. Despite not a single student has graduated, or appears to have attended, no one has taken the bar exam either. Nonetheless, this is another example of Scott McMillan losing another case - although he claims to be a "leading" San Diego attorney."

b.  Attached as an image to the comment, the docket form , a copy of which is attached as **Exhibit 'T.'**

c.  This statement is also false, as the court of appeals allowed the appeal to proceed in light of the law regarding final, appealable orders.

d.  Further, the Court entered an order of stipulated reversal of such appeal.

61.  On or about March 27, 2016, Plaintiff McMillan identified a post using

1    Plaintiff TMLF's logo and created in a manner that suggested it was posted by Plaintiff or

2    someone else from his firm.  Plaintiff did not authorize Defendant DARREN or anyone

3    else to use the McMillan Law Firm's logo in this manner.  The latest entry was posted on

4    or about December 17, 2015.  Specifically, a poster using the name and search term

5    "scott-mcmillan-law-firm-la-mesa" setup a bogus page entitled "The McMillan Law Firm

6    Customer Care Service" using The McMillan Law Firm, APC logo at

7    http://www.complaintsboard.com/the-mcmillan-law-firm-b121166

8         a.   A true and correct copy of that page is attached hereto as **Exhibit 'U.'**

9         Notably, the bogus "customer care service" repeats the same false allegations as

10        previously made by Chaker. i.e., that Plaintiff molested his  daughter.

11        b.  On December 8, 2015 – Plaintiff's birthday – Mr. Chaker emailed Plaintiff the

12        following statement:

13        Good afternoon Scott,

14        I have been unable to locate a TM/Copyright for the domain
          mcmillanlaw.us or for your law firm with the USPTO or U.S. Copyright
15        Office. If there is such, kindly advise prior to 7PM today. If I do not receive
          a response, it will be presumed there is no such TM/Copyright. Prior to
16        posting additional material, I will extend this courtesy to you.

17        Also, I have updated the material on
          http://scott-mcmillan-law.blogspot.de/p/scott-mcmillan-attorney-la-mesa.ht
18        ml

19        I have also copied Maura Larkins on this email.

20        Best regards,

21        Darren"

22        c.  A true and correct copy of the email dialog that occurred December 8, 2014, are

23        attached as **Exhibit 'V'.**

24        **d.**   Plaintiffs had not authorized the use of their name, the logo, or creation of a

25        customer care site on Complaintsboard.com.

26        62.  Following Mr. Chaker's posts to complaintsboard.com, individuals solicited

27   Plaintiffs purporting to be able to have the ability to remove the posts.  They wanted to

28   charge Plaintiffs  $4,800 to remove defendants posts.

---

*16-cv-2186*              First Amended Complaint                    28

## PISSEDCONSUMER.COM

63. Since 2011 and through the present and as late as February, 2016, a person using a pseudonym, that Plaintiff McMillan believe to be Defendant DARREN, or the other defendnats, based on the content and Defendant DARREN's statements above of September 18, 2014 referring to the "pissedconsumer.com" website, has posted derogatory and defamatory statements about Plaintiff on the Internet at the website domain "PISSEDCONSUMER.COM":

64. A Google search of "scott mcmillan site:pissedconsumer.com" returns some 3200 results. Most of those results appear to have been posted in 2015 and 2016. Plaintiffs believe that defendants have posted all of those entries. They have done so either anonymously or using some variation of the key words: "The Mcmillan Law Firm - La-Mesa-Attorney-Scott-McMillan"

65. Unlike Complaintsboard.com, Pissedconsumer.com does not remove the information posted by persons such as Defendant DARREN. Specifically, the terms of service of Pissedconsumer states:

"5. Removal of Information
By posting information on PC, *you understand and agree that the material will not be removed even at your request.* You shall remain solely responsible for the content of your postings on PC."

http://www.pissedconsumer.com/tos.txt.

66. The Pissedconsumer.com post that Chaker started on November 3, 2011, is attached hereto as **Exhibit 'W'**. Within that post he misrepresents Plaintiff's win/loss ratio.

67. On August 23, 2015, Defendant DARREN made the false allegation, accusing Plaintiff of child molestation, a copy is attached hereto as **Exhibit 'X'**.

68. On December 4, 2015, Defendant DARREN posted a review entitled "The Mcmillan Law Firm - Scott McMillan Law Firm - La Mesa - Malpractice" which falsely accuses Plaintiff of malpractice, attached hereto as **Exhibit 'Y.'** Chaker falsely states that an appeal in *Williams v. Nordstrom, Inc.* was to be dismissed, and termed it "malpractice." In fact, the appeal was not dismissed and ultimately resulted in a

1   stipulated order of reversal.

2        69.  On February 11, 2016, Defendant DARREN posted a review "The Mcmillan

3   Law Firm - Scott McMillan Law Firm La Mesa," which is attached hereto as **Exhibit 'Z.'**

4   Chaker made statements that were knowingly false as he stated that the "the Court of

5   Appeal DENIED the petition after forcing the defendant incur huge amounts of attorney

6   fees." In fact, the defendant did not file a response. Chaker had no basis to suggest that

7   attorneys fees were incurred resulting from the filing of the petition. Chaker further

8   falsely stated Plaintiff's record as "almost 80 under his belt and a hand full of wins."

9                  **Current Posts**

10       70.  To date Defendant DARREN continues to post material on his website in a

11   manner that is intended to optimize his websites to respond to search engine indexes with

12   his name. Specifically, he continues to use the tags "mcmillan-associates-la-mesa",

13   "scott-mcmillan-la-mesa":

14       71.  On March 29, 2016, Plaintiff accessed

15   http://darren-chaker.blogspot.com/search/label/scott-mcmillan-la-mesa and retrieved the

16   attached article, a true and correct copy of which is attached hereto as **Exhibit 'AA'**

17   which incorporates the use of the tags.

18       72.  On March 29, 2016, Plaintiff accessed http://darrenchaker.us/ and retrieved

19   the attached article bearing a date of December 8, 2015, a true and correct copy is

20   attached hereto as **Exhibit 'BB'**, which incorporates the use of the tags.

21       73.  On March 29, 2016, Plaintiff McMillan accessed http://darrenchaker.org/ and

22   retrieved the attached article bearing a date of January 23, 2016, a true and correct copy is

23   attached hereto as **Exhibit 'CC'**, which incorporates the use of the tags.

24          **Defendant DARREN's Use of Pseudonyms**

25       74.  Plaintiff is informed and believe that Darren Chaker also uses the pseudonym

26   "Luis Perdomo." On March 29, 2016, Plaintiff accessed

27   https://plus.google.com/1048021677 37415969641/posts/HySqAKY7jYR and retrieved

28   the attached page, a true and correct copy is attached hereto as **Exhibit 'DD'**,

1  incorporating the same allegations and artwork published by Defendant DARREN

2  Chaker.

**Defendant DARREN admits that he knows that he is barred**

**from posting defamatory material.**

5  75. On January 22, 2016, Defendant DARREN Chaker appeared for a judgment

6  debtors exam. He had been previously ordered to produce the names of the domains that

7  he holds.   On the record in the *Chaker v. Mateo* case, he admitted that he had such logins

8  and that his use of those could result in the revocation of his supervised release.

9  [Transcript, p. 9] Defendant DARREN was also ordered to provide the identifying

10  information as to Internet domains that he owns.  A copy of relevant portions of the

11  transcript is attached hereto as **Exhibit 'EE'**.

12  76.  Defendant DARREN did not appear as ordered on March 11, 2016, in the

13  Superior Court to provide the information.  As recited in the transcript of January 22,

14  2016, Defendant DARREN was aware that he was required to appear at the continued

15  examination. [**Exh. EE, page 31**]

16  77. On March 11, 2016 Defendant DARREN failed to appear for his continued

17  judgment debtor's examination.  Judge Taylor issued a bench warrant for his appearance,

18  which remains outstanding.  A copy of that bench warrant is attached hereto as **Exhibit**

19  **'FF'**.

20  78. On March 11, 2016 the Superior Court in the *Chaker v. Mateo* case has

21  ordered the appointment of a receiver to take possession of Mr. Chaker's personal

22  property, including his domain names for ultimate sale in order to satisfy the judgment.

23  Despite orders to do so, Defendant DARREN has not complied with the orders of the

24  Superior Court.

**Defendant DARREN has created false accounts with Plaintiff's name**

26  79.  Defendant DARREN created accounts using Plaintiff's name and the name of

27  the McMillan Law Firm.  One of those accounts is on Slideshare.net, and reflected on

28  **Exhibit 'GG'.**  Plaintiff surmise that he has prepared that account in order to upload his

---

*16-cv-2186*                    First Amended Complaint                    31

defamatory material that he intends to falsely attribute to him.  Plaintiff believes that

2  Defendant DARREN made that account because it is associated by Slideshare with an

3  account under the name of David Gingras, another attorney who successfully represented

4  a victim of Defendants and whom Chaker has also targeted for harassment.

5         **Defendants have inflicted damage upon both Plaintiffs and their clients.**

6        80.  Attorneys rely upon their reputation in the community and before the courts

7  that they practice in.  Defendant DARREN's outrageous lies which he has published have

8  injured Plaintiffs' practice.  Opposing counsel in other, unrelated cases have mentioned

9  the existence of the posts. Clients have mentioned the existence of the posts and their

10  content.   Plaintiff McMillan believes that jurors that Plaintiff has tried cases in front of

11  have accessed the posts and taken them into account in determining the cases.  Thus,

12  Defendants' threats made on September 18, 2014 have borne out. Plaintiffs have invested

13  substantial time in developing Plaintiff McMillan's reputation as a zealous advocate for

14  his clients, and remaining consistent to the duties of an attorney as set forth in Business

15  and Professions Code section 6068, and particularly that set forth in subsection (h):

16        "Never to reject, for any consideration personal to himself or herself, the

17        cause of the defenseless or the oppressed."

18  (Bus. & Prof. Code 6068(h).)

19        81.  Susan A. has been, prior to representation by Plaintiffs herein, defenseless to

20  and oppressed by Defendants.

21        82.  Wendy Mateo was defenseless to and was oppressed by Defendants.

22        83.  Plaintiff understood that Defendants could resort to attacks of Plaintiff

23  McMillan's  character when Plaintiff continued to represent Susan A. despite Defendants

24  threats to engage in libel against him. Defendants then performed on their threats, and

25  have engaged in the forewarned attacks against Plaintiff –  and later Plaintiff's family

26  members – following January 21, 2014, and September 18, 2014.

27

28

# FIRST CLAIM FOR RELIEF

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1962(c)

(Against Darren Chaker)

84.   Plaintiffs reallege and incorporate paragraphs 1-83 as though fully set forth herein.

85.  Defendant DARREN Chaker is a "person" cappable of holding a legal or beneficial interest in property within the meaning of 18 U.S.C. § 1961(3).

86.  Defendant DARREN Chaker listed above has violated 18 U.S.C. § 1962(c) by commission of the following multiple acts.

## Chaker Enterprise

87.  Plaintiffs allege that during all the time material herein that DARREN Chaker, an individual, along with other individuals, including, but not limited to, Defendants VANIA Chaker and NICOLE Chaker constitutes the "Enterprise."

88.  Plaintiffs allege that the Enterprise constitutes a RICO 'enterprise' as that term is defined pursuant to 18 U.S.C § 1961(4).  As described above, the members of the Enterprise have functioned together as a continuing unit with a common purpose to obtain the Plaintiffs' property under fear induced by falsely imputing a deformity, disgrace, or crimes, and by threats to do an unlawful injury to the person or property, as described in Cal Penal Code section 519, all in violation of Cal. Penal Code section 523 (extortion).

89.  The Enterprise exists separate and apart and distinct from the conducting of the pattern of racketeering as the Defendant, an individual, is one of a number of other individuals which comprise the Enterprise.  The alleged Enterprise herein also satisfies the three "structural features" of *Boyle v. United States*, *i.e.*, the group had a purpose; relationships with each other; and longevity sufficient to permit the associates to pursue the enterprise's purposes.

90.  Here, the FAC describes how the members of the Enterprise, since at least year 2004 and continuously up to the present time, worked together to file meritless lawsuits under the Fair Credit Reporting Act (para. 10-11; 14; 16; 19); and worked

---

*16-cv-2186*                    First Amended Complaint                    33

1  together for Defendant DARREN Chaker to file baseless lawsuits under the Fair Credit

2  Billing Act and other statutes (para. 18).  In year 2004, Defendant VANIA Chaker

3  represented Defendant DARREN Chaker in a federal lawsuit in which DARREN, acting

4  *subnom* as Darren Del Nero, and his mother and enterprise member Defendant NICOLE

5  Chaker brought a baseless action against Midland Credit Management Inc. (para. 11).

6  DARREN and his attorney Defendant VANIA Chaker were sanctioned for bringing the

7  suit in bad faith and for the purpose of harassment (para. 11, supra).  Morevoer,

8  Defendant VANIA Chaker also temporarily represented Defendant DARREN Chaker

9  *subnom* in another case in year 2004 so that Defendant DARREN could avoid the bar of

10  prefiling orders placed resulting from his designation as a vexatious litigant (para. 11,

11  supra).

12      91.  The common purpose of the Enterprise members was to assist each other in

13  the filing of false and meritless lawsuits under federal debt collection statutes; assist each

14  other in the filing of lawsuits against attorneys who opposed them (para. 17, 78), and to

15  conduct a campaign of harassment, defamation, and extortion against attorneys, such as

16  the Plaintiffs, who represented parties adverse to the interests of the Enterprise members

17  (para. 29-83).  Enterprise members also assisted each other in committing vandalism

18  against Plaintiff's property (para. 31).

19      92.  Further proof of these relationships, in addition to the familial relationships, is

20  described for example, in para. 40, in which during the Plaintiffs' representation of Susan

21  A. in a lawsuit for paternity brought by Defendant DARREN, Defendant VANIA blocked

22  the entrance of the courtroom of a licensed private investigator (Rivero) hired by Plaintiff

23  while DARREN blocked the doorway exit (para. 40 a-d); and VANIA and DARREN

24  together chased Rivero in a black SUV in an effort to intimidate him (para. 40-e).

25  Another example is described in para. 40g-i, in which Defendant NICOLE, who is not an

26  attorney but was counseled by Defendant VANIA, appeared at a hearing in the Susan A.

27  case while Defendant DARREN was incarcerated.  Also, on or about January 21, 2014,

28  Defendant NICOLE sent an intimidating letter to Plaintiffs and filed documents in the

---

*16-cv-2186*          First Amended Complaint          34

1  case and executed a declaration to which was attached the threatening letter.

2      93.  The Enterprise was engaged in, and its activities affected, interstate commerce

3  as its members stole the identity of credit card holders (para. 28, the Frantzes). Enterprise

4  members also threatened attorneys who worked in interstate commerce and represented

5  victims (such as Plaintiff). Also see Charles Kim, para. 28(d); Defendant DARREN filed

6  false bankruptcy petitions to avoid foreclosures and collect rental income (para. 23);

7  Defendant DARREN began using Plaintiff's name on internet postings (para. 36, 45);

8  Defendant DARREN hacked into Plaintiffs' Paypal and Twitter accounts in which

9  payments were made in interstate commerce (para. 42); Defendant DARREN unlawfully

10  posted information on defendant's internet "blogspot.com" account which was

11  defamatory thereby causing Plaintiffs, who operate in interstate commerce, to suffer a

12  loss of income (para. 43, 46, 83); and Enterprise members posted derogatory and

13  defamatory statements on the internet at different websites (see, e.g., para. 55 -

14  complaintsboard.com, para. 63 - pissedconsumer.com) which affected Plaintiff's

15  business, which operated in interstate commerce.  Plaintiffs thus allege that these

16  activities engaged in by said defendants injured Plaintiffs' business and/or property

17  interests in connection with their business activities that affect federal interstate and/or

18  foreign commerce.

19                          **The Pattern of Racketeering**

20      94.  From in or about 2004 and continuing up through the present time, Defendant

21  DARREN Chaker, a person associated with, or employed by the Enterprise, did

22  knowingly and unlawfully conduct or participate, directly or indirectly, in the affairs of

23  the Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C.

24  § 1961(1) and § 1961(5); all in violation of 18 U.S.C. §1962(c).

25      95.  The RICO Defendant DARREN worked with other Enterprise members with

26  the "intent to extort" property from Plaintiffs as described in Cal. Penal Code, Sections

27  518 and 523, *i.e.*, to obtain under threat of fear Plaintiff's intangible property right to

28  adequately represent victims in his practice of law and prosecute his case on behalf of his

clients free of threats, thereby directly and proximately causing tangible harm to his

business and concrete financial losses.  For example, Defendant DARREN has caused the

sending of writings, usually by email, with the intent to extort Plaintiffs intangible right to

represent his client by threatening further actions against Plaintiffs unless Plaintiff

worked to have Plaintiffs' client provide concessions to Defendant in federal litigation

(see para. 40 Susan A. paternity case).  Defendant intended to extort property from

Plaintiffs, i.e., the right to practice his legal practice by engaging in threats of violence if

Plaintiffs continued to collect and publish legal decisions through the website

FEARNOTLAW.COM.

96.  Plaintiffs allege that these activities engaged in by Defendant DARREN

injured Plaintiffs' business and/or property interests, and proximately and directly caused

tangible harm to Plaintiffs' business, including proximately causing concrete financial

losses.

97.  Plaintiffs allege that these activities constitute acts involving extortion in

violation of California Penal Code sections 518, 519, and 523, acts punishable by

imprisonment for more than one year, and thus racketeering activity as defined in 18

U.S.C. § 1961(1)(A).

**18 U.S.C. § 1961(5) Pattern of Racketeering Activity**

98.  Plaintiffs allege that the course of conduct engaged in by RICO defendant

DARREN Chaker constitutes both continuity and relatedness of the racketeering activity,

thereby constituting a pattern of racketeering activity, as that term is defined in 18 U.S.C.

§ 1961(5).  Plaintiffs allege that the relatedness criterion is satisfied as the predicate acts

were related to each other, and related to the activities and purposes of the Enterprise.

Plaintiffs allege the "continuity" of the pattern of racketeering activity is both closed-

ended inasmuch as a series of related predicate offenses extended over at least ten years

(a substantial period of time).  The racketeering acts of extortion also are "open-ended"

inasmuch as the racketeering activities of extortion themselves carry a specific threat of

repetition extending indefinitely into the future.  Moreover, the FAC describes that the

1  extortionate conduct toward attorneys who represented clients against him was the

2  "regular way the enterprise conducted its business" (see para. 28d, para. 79, extortion of

3  attorney David Gringas) and thus constitute continuing racketeering activity.  Defendant

4  DARREN continues in this year 2016 to post defamatory materials on his website to

5  cause Plaintiffs injury (para. 70-73, Exhs. AA-CC).

**Racketeering Acts of Extortion**

**Racketeering Act One**

8  99.  On or about November 23, 2010, Defendant DARREN, within the Southern

9  District of California, with intent to extort money or other proprty from Plaintiffs, sent and

10  delivered to Plaintiff a letter demanding Plaintiff remove posts concerning Defendant

11  DARREN's cases from FEARNOTLAW.COM.  Subsequently, DARREN sent e-mails to

12  Plaintiff making implicit threats against Plaintiff's property (dogs) (para. 34).  Defendant

13  DARREN's letter and e-mails were writings which expressly, or implied, a threat specified

14  in Section 519(1), *i.e.*, to do an unlawful injury to the person or property of the individual

15  threatened.  These acts constituted extortion as the Defendant obtained from Plaintiffs their

16  intangible property right to practice law and publish court decisions on the internet, all in

17  violation of section 523 and 519, thereby causing tangible harm and direct injury to

18  Plaintiffs' business.

19  100.  Section 523 provides that violations of that section are punishable in the same

20  manner as if such money or property were actually obtained by means of such threat.

21  Violations of section 523 are felony violations as described in section 520.

<u>Racketeering Act Two</u>

23  101.  On or about November 28, 2011, during the pendency of representation by

24  Plaintiff of Maura Larkins, Defendant DARREN, within the Southern District of California,

25  with intent to extort money or other property from Plaintiffs, posted on Plaintiffs' scott-

26  mcmillan-law.blogspot.com site defamatory statements about Plaintiff and recited a

27  completely fabricated association between Plaintiff and Ms. Larkins (para. 46, Exh. G).

28  These were writings which expressly and implied a threat as specified in Section 519(3), i.e.,,

*16-cv-2186*                      First Amended Complaint                      37

to expose or impute to Plaintiff a defamatory, disgrace, or crime. These acts constituted extortion as the Defendant obtained from Plaintiff his intangible property right to practice law free of threats and to practice in accordance with the California Rules of Professional Conduct, all in violation of section 523 and 519, thereby causing tangible harm and direct injury to Plaintiffs' business.

<u>Racketeering Act Three</u>

102. On or about January 21, 2014, during the pendency of the Susan A. paternity case, Defendant DARREN, within the Southern District of California, with intent to extort money or other property from Plaintiffs, through his mother Defendant NICOLE, sent and delivered to Plaintiff McMillan a letter (Exhibit 4) threatening that Plaintiff's "client will suffer" due to Plaintiff's representation of Suan A. (para. 40). Defendant's letter was a writing which expressly and impliedly made a threat as specified in section 519(1), i.e., to do an unlawful activity to the person or property of the individual by threatening that unless Plaintiff complied, Plaintiff's client would suffer. These acts constituted extortion as the Defendant obtained from Plaintiff his intangible property right to practice law free of threats, and to practice in accordance with the California Rules of Professional Conduct, all in violation of sections 523 and 519, thereby causing tangible harm and direct injury to Plaintiffs' business.

<u>Racketeering Act Four</u>

103. On or about September 18, 2014, during the pendency of the Susan A. paternity case, 2010, Defendant DARREN, within the Southern District of California, with intent to extort money or other property from Plaintiffs, sent and delivered to Plaintiff an e-mail (Exhibit B) demanding Plaintiff to convince Susan A. to grant him concessions in the paternity case (para. 41). Defendant's e-mails were writings which expressly and impliedly made a threat as specified in section 519(1), i.e., to do an unlawful injury to the person or property of the individual by threatening that unless Plaintiff complied, the Plaintiff would lose "clients," and would "take food out of [Plaintiff's kids mouths]," and Plaintiff would incur other pecuniary losses. These acts constituted extortion as the Defendant obtained from

1    Plaintiff his intangible property right to practice law free of threats, and to practice in

2    accordance with the California Rules of Professional Conduct, all in violation of sections 523

3    and 519, thereby causing tangible harm and direct injury to Plaintiffs' business.

4                                    Racketeering Act Five

5        104.  On or about September 18, 2014, during the pendency of the Susan A. paternity

6    case, 2010, Defendant DARREN, within the Southern District of California, with intent to

7    extort money or other property from Plaintiffs, sent delivered to Plaintiff an e-mail (Exhibit

8    B) demanding Plaintiff convince Susan A. to grant him concessions in the paternity case

9    (para. 41).  Defendant's e-mails were writings which expressly and impliedly made a threat

10   as specified in section 519(1), i.e., that unless Plaintiff settled the case Defendant would

11   continue his malicious blogs on coomplaintsboard.com and pissedconsumer.com.  These acts

12   constituted extortion as the Defendant deprived Plaintiff of his intangible property right to

13   practice law free of threats and in accordance with the California Rules of Professional

14   Conduct, all in violation of section 523 and 519, thereby causing tangible harm and direct

15   injury to Plaintiffs' business.

16                                    Racketeering Act Six

17       105.  On or about November 27, 2014, during the pendency of the Susan A. paternity

18   case, Defendant DARREN, within the Southern District of California, with intent to extort

19   money or other property from Plaintiffs, began posting defamatory material on the scott-

20   mcmillan-law.blogspot.com site falsely stating that Plaintiff had molested his daughter (see

21   para. 43, Exh. E).  The defamatory postings were writings which expressly and impliedly

22   made a threat as specified in section 519(3), i.e., that unless Plaintiff settled the case

23   Defendant would expose and impute to Plaintiffs a defamatory, disgrace, or crime.  These

24   acts constituted extortion as the Defendant obtained from Plaintiff his intangible property

25   right to practice law free of threats and to practice in accordance with the California Rules

26   of Professional Conduct, all in violation of sections 523 and 519, thereby casuing tangible

27   harm and direct injury to Plaintiffs' business.

28

## Racketeering Act Seven

106. On or about December 6, 2014, during the representation by Plaintiff of a creditor in a bankruptcy proceeding, Defendant DARREN, within the Southern District of California, with the intent to extort money or other property from Plaintiffs, sent an e-mail to an attorney who represented an opposing party, in which DARREN falsely accused Plaintiff of molesting his daughter (see para. 49, Exh. K). The opposing attorney forwarded the e-mail to Plaintiff on December 8, 2014. The defamatory e-mails were writings which expressly and impliedly made a threat specified in section 519(3), i.e., it exposed and imputed to Plaintiffs a deformity, disgrace, or crime. These acts constituted extortion as the Defendant obtained from Plaintiff his intangible property right to practice law free of threats, and to practice in accordance with the California Rules of Professional Conduct, all in violation of sections 523 and 519, thereby causing tangible harm and direct injury to Plaintiffs' business.

## Racketeering Act Eight

107. On or about December 23, 2014, during the representation by Plaintiff of clients engaged in litigation in San Diego East Count Community, including clients adverse to the interests of Defendant DARREN, such as Susan A. and Wendy Mateo, with the Southern District of California, with intent to extort money or other property from Plaintiffs, sent an e-mail to 200 attorneys in San Diego (see para. 52, Exh. N). The defamatory e-mails were writings which expressly and impliedly made a threat as specified in section 519(3), i.e., it exposed and imputed to Plaintiffs a deformity, disgrace, or crime. These acts constituted extortion as the Defendant obtained from Plaintiff his intangible property right to practice law free of threats, and to practice in accordance with the California Rules of Professional Conduct, all in violation of sections 523 and 519, thereby causing tangible harm and direct injury to Plaintiffs' business.

## Racketeering Act Nine

108. From 2011 to the present, during the representation by Plaintiff of clients engaged in litigation in this district and elsewhere, including clients adverse to the interests

of Defendant DARREN, such as Susan A. and Wendy Mateo, Defendant DARREN, within

the Southern District of California, with intent to extort money or other property from

Plaintiffs, posted defamatory and derogatory comments, including false comments that

Plaintiff was a sex offender on the internet at complaintsboard.com.  See para. 55-62; Exhs.

O-V.  The defamatory postings were writings which expressly and impliedly made a threat

as specified in section 519(3), i.e., it exposed and imputed to Plaintiffs a deformity, disgrace,

or crime.   These acts constituted extortion as the Defendant deprived Plaintiff of his

intangible property right to practice law free of threats, and in accordance with the California

Rules of Professional Conduct, all in violation of sections 523 and 519, thereby causing

tangible harm and direct injury to Plaintiffs' business.

### Racketeering Act Ten

109.  From 2011 to the present, during the representation by Plaintiff of clients

engaged in litigation in this, including clients adverse to the interests of Defendant

DARREN, within the Southern District of California, with intent to extort money or other

property from Plaintiffs, posted defamatory and derogatory comments, including false

comments that Plaintiff engaged in child molestation, on the internet at pissedconsumer.com.

See para. 63-69; Exhs. W-Z.  These defamatory postings were writings which expressly and

impliedly made a threat as specified in section 519(3), i.e., it exposed and imputed to

Plaintiffs a deformity, disgrace, or crime. These acts constituted extortion as the Defendant

obtained from Plaintiff his intangible property right to practice law free of threats, and to

practice in accordance with the California Rules of Professional Conduct, all in violation of

sections 523 and 519, thereby causing tangible harm and direct injury to Plaintiffs' business.

### RELIEF SOUGHT

110. Plaintiffs are entitled to recover, pursuant to 18 U.S.C. § 1964(c), treble damages

in an amount to be determined by offer of proof at time of trial.  Plaintiffs are also entitled

to recover attorneys' fees and costs of this litigation, as well as damages arising from lost

profits and/or lost business opportunities proximately caused by RICO defendants' violations

of the RICO Act.

1     111.  Plaintiff requests injunctive relief to prevent prevent and restrain violations of

2  section 1962 by issuing appropriate orders, including, but not limited to: ordering Defendants

3  divest themselves of any interest, direct or indirect, in any enterprise; imposing reasonable

4  restrictions on the future activities or investments of Defendants, including, but not limited

5  to, prohibiting Defendants from engaging in the same type of endeavor as the enterprise

6  engaged in, the activities of which affect interstate or foreign commerce; or ordering

7  dissolution or reorganization of any enterprise, making due provision for the rights of

8  innocent persons, including Plaintiff herein.

9     112.  Plaintiffs requests that the Court revoke Defendant DARREN Chaker's

10  supervised release, and order him to remove the posts, or execute such documents that would

11  compel the removal of those posts, all of which he has published in contempt of the Court's

12  order for supervised release.

13     113.  Plaintiffs requests that the Court also issue an order to DARREN Chaker

14  requiring him to request the removal of his posts from the Internet forums in a form that may

15  be published to the third parties, i.e., Pissedconsumer.com and Complaintsboard.com, that

16  have published defendants' harrassing and defamatory posts. Plaintiff request that the Court

17  make a finding that such posts are contrary to the conditions of Defendant DARREN's

18  supervised release and thereby unlawful.  With such a finding, and an order that Chaker

19  remove those post, those sites would willingly do so.

20     114.  Plaintiffs requests that the Court also issue an order with findings such that can

21  be published to those search engines that have indexed the posts, i.e., Google, Yahoo, and

22  Bing, and findings that such posts were placed by Defendant DARREN contrary to the

23  Judgment in this case and the Court's terms of Defendant DARREN 's supervised released.

24   And that Defendant DARREN be ordered to request the removal of such posts from such

25  search indices. Plaintiff's hope and expectation is that those third parties would be persuaded

26  to remove the posts from the respective index.

27

28

**SECOND CLAIM FOR RELIEF**

(Against All Defendants, Racketeer Influenced and Corrupt Organizations Act,

18 U.S.C. § 1962(d))

115.  Plaintiffs repeat and reallege the averments contained in paragraphs 1-83, and 85 through 114 as though fully set forth herein.

116.  Plaintiffs allege that commencing in 2004, and during and continuing at all times to the present, RICO defendants conspired to violate section 1962(c), i.e., each defendant agreed that a conspirator (DARREN) would conduct or participate in the affairs of the Enterprise through a pattern of racketeering, including acts involving extortion in violation of California state law, as more fully described in the First Claim for Relief. Plaintiffs allege that the conspiratorial objective of that mutual agreement was intended to obtain Plaintiffs' interests in property, thereby causing tangible harm and direct injury to Plaintiffs, and that such conspiratorial conduct constitutes contravention of RICO § 1962(d).

117.  Defendants are members of the RICO § 1962(d) conspiracy at and during the time frame the criminal activities were committed that constitute the RICO § 1961(5) pattern of racketeering activity. Proof of the agreement of VANIA and NICOLE that a conspirator (DARREN) would engage in multiple acts of racketeering are described in paragraphs 10-11; 14; 16; 18; and 19, i.e., since at least year 2004 and continuously to the present time, the three defendants agreed that they together would file meritless lawsuits under the Fair Credit Reporting Act, the Fair Debt Collections Practices Act and other litigation (para. 18). As described above in para. 40, during the Plaintiffs' representation of Susan A. in a lawsuit for paternity brought by DARREN, VANIA assisted DARREN in the intimidation of a licensed private investigator (Rivero) hired by Plaintiff. Also, as described in para. 40g-i, NICOLE, who is not an attorney but was counseled by VANIA, appeared at a hearing in the Susan A. case while DARREN was incarcerated. Also, on or about January 21, 2014, Nicole sent an intimidating letter to Plaintiffs and filed documents in the case and executed a declaration to which was attached the threatening letter. See Exhs. 4 and 5.

118.  The above allegations are sufficient to show that NICOLE, VANIA and

DARREN agreed with each other so that at least one of the conspirators (here, DARREN) would commit multiple acts of racketeering activity, i.e., extortion in violation of Cal. Penal Codes 519 and 523.

    119.  RICO recovery is being sought as described in the First Claim for Relief.

### THIRD CLAIM FOR RELIEF

(Civil Extortion - Against Defendants DARREN and NICOLE)

    120.  Plaintiffs repeat and reallege the averments contained in paragraphs 1-83, and 84 through 114, and 116 through 119, as though fully set forth herein.

    121.  Defendants conduct was unlawful as a matter of law, in that Defendant DARREN had been forbidden from types of expressive conduct by the terms of his Pre-Trial release, the terms of his confinement and Bureau of Prisons regulations, and the terms of his supervised release.  Defendant NICOLE was aware of these restrictions.

    122.  Extortion is the obtaining of property from another, with his consent, or the obtaining of an official act of a public officer, induced by a wrongful use of force or fear, or under color of official right. (Penal Code § 518.)

    123.  Defendants attempted to obtain property from Plaintiffs, i.e., the right to continue to practice law consistent with the California Business and Professions Code, and the California Rules of Professional Conduct, with respect to the advocacy on behalf of Susan A..

    124.  Defendants attempted to obtain property from Plaintiffs, i.e., the right to collect on a debt due and owing by virtue of the fee award in the *Chaker v. Mateo* action.

    125.  Defendants attempted to obtain property from Plaintiffs, i.e., the right to continue to collect and publish cases through the website FEARNOTLAW.COM.

    126.  Defendants attempted to obtain an official act of a public officer, i.e., a judge, through Plaintiffs' clients acquiesence.

    127.  Defendants wrongfully attempted to induce fear as that term is used in Penal Code section 519, which provides in pertinent part under the heading "threats":

1  "Fear, such as will constitute extortion, may be induced by a threat of any of

2  the following:

3  　　1.  To do an unlawful injury to the person or property of the

4  　　individual threatened or of a third person.

5  　　2.  To accuse the individual threatened, or a relative of his or

6  　　her, or a member of his or her family, of a crime.

7  　　3.  To expose, or to impute to him, her, or them a deformity,

8  　　disgrace, or crime.

9  　　4.  To expose a secret affecting him, her, or them.

10  　　　　　　　　　* * *

11  (Penal Code § 519)

12  　　128.  Defendants threats were both express, and were implied by the contents of the

13  various writings and the surrounding circumstances.

14  　　129.  Defendants transmitted the threats comprising extortion.

15  　　130.  The Statutes of Limitations regarding the bringing of the present claims have

16  been tolled due to Defendants' absence from the State of California according to California

17  Code of Civil Procedure section 351:

18  　　"If, when the cause of action accrues against a person, he is out of the state, the
    action may be commenced within the term herein limited, after his return to the
19  　　state, and if, after the cause of action accrues, he departs from the state, the
    time of his absence is not part of the time limited for the commencement of the
20  　　action."

21  (Cal. Civ. Proc. Code § 351.)

22  　　131.  As a direct and proximate result of the acts of Defendants as alleged in the Third

23  Cause of Action above, Plaintiffs were injured.  Plaintiff McMillan suffered economic

24  damage, expense, and humiliation, including, but not limited to, emotional upset, anxiety,

25  mental suffering, and damage to his reputation. Plaintiff McMillan also suffered loss of time.

26  Plaintiff McMillan is therefore entitled to compensatory damages in an amount which will

27  compensate for him all the detriment proximately caused  by Defendants' acts, whether

28  foreseeable or not,  according to proof at time of trial, in accordance with Civ. Code § 3333.

*16-cv-2186*　　　　　　　First Amended Complaint　　　　　　　45

132.  Plaintiff TMLF was damaged by the loss of goodwill resulting from the false statements published by Defendants' "making good" on the threats.  Plaintiff TMLF was damaged by the lost advertising expenses which were negated by the false statements published by defendants.

133.  Defendants' conduct was malicious, oppressive and/or fraudulent within the meaning of California Civil Code § 3294, thereby entitling Plaintiffs to an award of punitive damages in an amount according to proof at time of trial.

- o O o -

# PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

1. For an Order enjoining Defendants, their agents, and those acting in concert or conspiracy with them, temporarily during the pendency of this action and permanently thereafter from and further violation of 18 U.S.C. §§ 1961 et seq.;

2. For compensatory damages according to proof;

3. For an award of treble damages pursuant to 18 U.S.C. § 1964;

4. For attorneys' fees pursuant to 18 U.S.C. § 1964 or as otherwise provided by law;

5. For punitive and exemplary damages pursuant to Cal. Civil Code § 3294 or as otherwise provided by law;

6. For an award of costs of suit;

7. For an award of pre-judgment interest and post-judgment interest in the maximum amount permitted by law;

8. For such other and further relief as the Court deems just and proper.

Dated: December 5, 2016      The McMillan Law Firm, A.P.C.

/s/ Scott A. McMillan

BY: _____

Scott A. McMillan
Attorney, In Propria Persona, and on behalf of
Plaintiff The McMillan Law Firm, A.P.C.

# DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all causes of action so determinable.

Dated: December 5, 2016      The McMillan Law Firm, A.P.C.

/s/ Scott A. McMillan

BY: _____

Scott A. McMillan
Attorney, In Propria Persona, and on behalf of
Plaintiff The McMillan Law Firm, A.P.C.

*16-cv-2186*      First Amended Complaint      47

# CERTIFICATE OF SERVICE

I am admitted to the United States District Court for the Southern District of California. I am employed in San Diego County, California, and not a party to the within-entitled action. My business address is 4670 Nebo Drive, Suite 200, La Mesa, CA 91941-5230.

On December 5, 2016, I served the following documents:

FIRST AMENDED COMPLAINT

**By Electronic Submission:** I served the above listed document(s) described via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service though the court's transmission facilities.

Additional parties who are not registered CM/ECF users according to the court's NEF, were served via the following means:

**By Mail**:

Nicole Chaker
5924 Stadium Street
San Diego, CA 92192

Arthur J. McKeon III
Gilbert, Kelly, Croley & Jennett LLP
550 South Hope Street, 22nd Floor
Los Angeles, California 90071-2627

A copy of such documents were placed in an envelope, addressed as set forth above, such envelopes were deposited in the U.S. Mail, postage prepaid.

Dated:          December 5, 2016

/s/ Scott A. McMillan
_____

# EXHIBIT C

# SUPERIOR COURT OF CALIFORNIA,
## COUNTY OF SAN DIEGO
## CENTRAL

## MINUTE ORDER

DATE: 06/29/2018                    TIME: 08:30:00 AM          DEPT: C-65

JUDICIAL OFFICER PRESIDING: Joan M. Lewis
CLERK: Calvin Beutler, Lori Urie
REPORTER/ERM: Not Reported
BAILIFF/COURT ATTENDANT: J. Arnold

CASE NO: **37-2017-00036344-CU-NP-CTL**  CASE INIT.DATE: 09/27/2017
CASE TITLE: **McMillan vs Chaker [IMAGED]**
CASE CATEGORY: Civil - Unlimited       CASE TYPE: Non-PI/PD/WD tort - Other

---

**EVENT TYPE**: Motion Hearing (Civil)

---

**APPEARANCES**
Scott A McMillan, counsel, present for Plaintiff(s).
David G Molinari, specially appearing for counsel Zachariah Moura, present for Defendant(s).
Michael A Weismantel, specially appearing for counsel JOHN M HOCHHAUSLER, present for Defendant(s).

---

The Court hears oral argument and CONFIRMS the tentative ruling as follows:

Defendant Darren D. Chaker, an individual and as trustee of Platinum Holdings Group Trust dba Counter Forensics has brought a motion to seal portions of the complaint and for a protective order.

The motion to seal is granted in part.

The Court believes the addresses for the Defendant listed in the documents found at Ex. FF (the Biometric Identification and driver licenses) should be redacted.

The Court also believes that the complaint at page 23, line 27 to page 24, line 1 should be sealed as it appears this is language quoted from a paternity case and should not be available for public review. See Family Code Sec. 7643.

In finding that these items should be sealed, the Court concludes the matters that are being sealed involve an overriding interest (privacy rights/confidentiality of paternity records) that overcomes the right of public access to this portion of the record; this overriding interest supports sealing the record; there exists a substantial probability that the overriding interest will be prejudiced if these records are not sealed; that the proposed sealing has been narrowly tailored and that no less restrictive means exist to achieve the overriding interest.

The request to seal anything beyond the above is denied.

---

DATE: 06/29/2018                                                              Page 1
DEPT: C-65                        MINUTE ORDER                    Calendar No. 8

CASE TITLE: McMillan vs Chaker [IMAGED]          CASE NO: **37-2017-00036344-CU-NP-CTL**

---

Plaintiff's counsel is directed to submit a copy of the entire complaint by July 5, 2018 – with the above-mentioned redactions – so the Clerk may replace the sealed portions of the complaint in the public file with the redacted version.

The request that the Court order Plaintiff to cease and desist from engaging in certain conduct is denied.

In ruling on this motion, the Court took judicial notice as requested.

*Joan M. Lewis*

_____

Judge Joan M. Lewis

# EXHIBIT D



LOS ANGELES | 445 South Figueroa Street
Boston | Suite 3000
Las Vegas | Los Angeles, CA 90071-1619
New York | Telephone (213) 312-2000
Paris | Facsimile (213) 312-2001
Redwood City | www.rmkb.com
San Francisco
San Jose
Seattle

Stephen Erigero
(213) 312-2013
stephen.erigero@ropers.com

E. Lacey Rice
(213) 312-2058
lacey.rice@rmkb.com

Eduardo A. Bravo
(213) 312-2048
eduardo.bravo@ropers.com

May 26, 2020

***Via Electronic Mail***

Scott A. McMillan, Esq.
THE MCMILLAN LAW FIRM, APC
4670 Nebo Drive, Suite 200
La Mesa, California 91941-5230
Email: scott@mcmillanlaw.us

Re:   *Scott A. McMillan & The McMillan Law Firm, APLC v. Darren D. Chaker*
      USDC - Southern District Case No. 3:16-cv-2186-WQH-MDD
      Our File No. 13579-9841L

Dear Mr. McMillan:

We write in an effort to meet-and-confer regarding Defendant Darren D. Chaker's contemplated Motion to Seal Portions of Plaintiffs' Complaint and First Amended Complaint (the "Motion") in the above-mentioned Federal Action. We propose that we meet and confer by phone, pursuant to United States District Court, Sothern District of California *Civil Local Rule 26.1(a)*, for the purpose of determining whether an agreement can be reached to resolve the foregoing matters of concern.

The Motion is directed at portions of Plaintiffs' Complaint and First Amended Complaint ("FAC") that include reference to a California sealed paternity case ("The Paternity Case") involving Defendant. Paragraphs 39, 40, and 49 of the Complaint and paragraphs 40, 41, and 50 of the FAC all refer to the Paternity Case involving Defendant. Compelling privacy concerns exist to seal these paragraphs of the Complaint and FAC. *Pintos v. Pacific Creditors Ass'n*, 605 F.3d 665, 677-678 (9th Cir. 2010). To exemplify this point, it is telling that the Paternity Case was sealed and not subject to public inspection and that Plaintiffs' were not parties to the Paternity Case. In addition, in the parallel state court case, the California Superior Court previously granted a similar motion to seal portions of the complaint that made reference to the same Paternity Case. For the foregoing reasons, there should be no reference to Defendant's Paternity Case and paragraphs 39, 40, and 49 of the Complaint and paragraphs 40, 41, and 50 of the FAC should be sealed.

We request that Plaintiffs stipulate to sealing paragraphs 39, 40, and 49 of the Complaint and paragraphs 40, 41, and 50 of the FAC. We are generally available to meet-and-confer telephonically on May 27, 2020 and May 28, 2020 (all day). Please let us know when you are available.

4839-1144-1085.1



Scott A. McMillan, Esq.
Re:  *McMillan v. Chaker*
May 26, 2020                                                                                                    Page 2

       We look forward to hearing from you.

                    Sincerely,

                    ROPERS, MAJESKI, KOHN & BENTLEY

                    Stephen J. Erigero
                    E. Lacey Rice
                    Eduardo A. Bravo

SJE/ELR/EAB/jc

# EXHIBIT E

**Cecchini, Jennie**

| | |
|---|---|
| **From:** | Scott A McMillan <scott@mcmillanlaw.us> |
| **Sent:** | Tuesday, May 26, 2020 4:10 PM |
| **To:** | Erigero, Stephen J. |
| **Cc:** | Cecchini, Jennie; Rice, Lacey; Bravo, Eduardo A.; Rich, Linda; Cederquist, Kimberly; Arriola, Anthony |
| **Subject:** | Re: Meet-&-Confer Re McMillan v. Chaker |

This was brought up at the Ninth Circuit and denied.

On Tue, May 26, 2020 at 4:05 PM Erigero, Stephen J. <stephen.erigero@ropers.com> wrote:

Scott,


This was litigated in State Court and we are only asking to have the decision of the State Court on redaction/ motion to seal apply to the Federal pleading which remains in the court record even after judgment. If I am missing something let us know. Otherwise we can agree to disagree and let the judge decide if our client is not entitled to relief.



Steve




**From:** Scott A McMillan [mailto:scott@mcmillanlaw.us]
**Sent:** Tuesday, May 26, 2020 3:39 PM
**To:** Cecchini, Jennie <jennie.cecchini@ropers.com>
**Cc:** Erigero, Stephen J. <stephen.erigero@ropers.com>; Rice, Lacey <lacey.rice@ropers.com>; Bravo, Eduardo A. <eduardo.bravo@ropers.com>; Rich, Linda <linda.rich@ropers.com>; Cederquist, Kimberly <kimberly.cederquist@ropers.com>; Arriola, Anthony <anthony.arriola@ropers.com>
**Subject:** Re: Meet-&-Confer Re McMillan v. Chaker



Counsel,


We have been over this.  Please stop attempting to relitigate matters already determined.

1

Scott McMillan

On Tue, May 26, 2020 at 3:33 PM Cecchini, Jennie <<u>jennie.cecchini@ropers.com</u>> wrote:

Dear Mr. McMillan,

Attached please find correspondence dated May 26, 2020, regarding the above-referenced matter.

**Jennie Cecchini**
**Ropers Majeski Kohn & Bentley PC**
Secretary
445 South Figueroa Street, Suite 3000 • Los Angeles • CA • 90071-1608
Office: (213) 312-2000 • Direct: (213) 312-2064

<u>Jennie.cecchini@ropers.com</u>



2

# EXHIBIT DD

Search Google+

Scott A

Home

Meet the new Google+.   Simpler, faster, better. Preview it today.   Let's Go



**Luis Perdomo**
Shared publicly  -  Dec 3, 2014

The McMillan Law Firm: Scott McMillan Suspect in Molestation



Scott McMillan Suspect in Molestation

scott-mcmillan-law.blogspot.com



Luis Perdomo

Add to circles

**90** followers | **21,407** views

| 60 | | | Add a comment... |
| --- | --- | --- | --- |

Exh DD
1 of 1

1  **FREEMAN MATHIS & GARY, LLP**
   TIMOTHY W. KENNA, APC / Bar No. 064280
2  tkenna@fmglaw.com
   REBECCA J. SMITH / Bar No. 150428
3  rsmith@fmglaw.com
   KRISTIN A. INGULSRUD / Bar No. 294532
4  kingulsrud@fmglaw.com
   401 B. Street, Suite 2210
5  San Diego, CA  92101

6  **Mailing Address:**
   550 Hope Street, 22nd Floor
7  Los Angeles, California 90071-2627
   (213) 615-7000; FAX (213) 615-7100
8
   Attorneys for Defendant, Respondent and Cross-
9  Appellant
   NICOLE CHAKER
10

11              **UNITED STATES DISTRICT COURT**

12             **SOUTHERN DISTRICT OF CALIFORNIA**

13

14  SCOTT A. MCMILLAN, an individual,    )   Case No. 3:16-CV-02186 WQH-MD
    THE MCMILLAN LAW FIRM, APC, a        )
15  California professional corporation,  )   Judge:  William Q. Hayes
                                         )   Courtroom:  14B
16          Plaintiffs,                  )
                                         )   Magistrate Hon. Mitchell D. Dembin
17      vs.                              )   Courtroom:  11th Floor
                                         )
18  DARREN D. CHAKER, an individual and  )   **NOTICE OF CROSS-APPEAL**
    as trustee of PLATINUM HOLDINGS      )
19  GROUP TRUST, da COUNTR               )
    FORENSICS; ICOLE CHAKER, an          )
20  individual and as trustee of THE NICOLE )
    CHAKER REVOCABLE LIVING              )
21  TRUST, U/A dated August 18, 2010;    )
    VANIA CHAKER, an individual and as   )
22  beneficiary of The Island Revocable Trust )
    under Declaration Trust dated June 2, )
23  2015, MARCUS MACK as trustee of the  )
    Island Revocable Trust under Declaration )
24  of Trust dated June 2, 2015,         )
                                         )
25          Defendants.                  )
    _____    )

26      TO THE COURT, ALL INTERESTED PARTIES AND TO THEIR RESPECTIVE

27  ATTORNEYS OF RECORD:

28

Freeman Mathis
& Gary, LLP
Attorneys at Law

                        NOTICE OF CROSS-APPEAL

4672313.1  11309-74924 RJS                              3:16-CV-02816-WOH-MD

1      Pursuant to the United States District Court's Order of March 8, 2018 granting

2  Defendant Nicole Chaker an extension of fourteen (14) days from the date of the

3  order to file a notice of appeal, pursuant to Federal Rule of Appellate Procedure

4  4(a)(5);

5      Notice is hereby given that defendant Nicole Chaker, hereby files this cross-

6  appeal in the above-named case to the United States District Court for the Ninth

7  Circuit from the Order Closing the Case (ECF 86) and more specifically, the Order

8  denying defendant Nicole Chaker's Motion to Strike Pursuant to California Code of

9  Civil Procedure 425.16 and motion for attorney's fees and costs as moot in light of

10  the granting of defendant Nicole Chaker's motion to dismiss (ECF 83).  A copy of

11  both ECF 83 and ECF86 are attached hereto as exhibits "A" and "B".

Dated:  March 13, 2018        FREEMAN MATHIS & GARY, LLP

By: *Rebecca J Smith*
       TIMOTHY W. KENNA, APC
       REBECCA J. SMITH
       KRISTIN A. INGULSRUD
       Attorneys for Defendant
       NICOLE CHAKER

Freeman Mathis
& Gary, LLP
Attorneys at Law

-2-
NOTICE OF CROSS-APPEAL

4672313.1  11309-74924        3:16-CV-02816-WQH-MD

Case 3:16-cv-02186-WQH-MDD Document 1271 Filed 09/23/22 PageID.4889 Page 683 of
1196
Case 3:16-cv-02186-WQH-MDD Document 1001 Filed 09/13/18 PageID.3999 Page 3 of 22

# REPRESENTATION STATEMENT

## Ninth Circuit Rule 3-2

Attorneys Timothy W. Kenna, Rebecca J. Smitha and Kristen A. Ingulsrud of the law offices of Freeman Mathis & Gary, LLP as referenced in the caption above, represent Defendant, Respondent and Cross-Appellant in this matter and no other party. The following list shows all of the parties to the action below and identifies their counsel by name, firm, address, telephone number and email address, where appropriate. (Federal Rules of Civil procedure 12(b); Circuit Rule 3-2(b).

The McMillan Law Firm
Scott A. McMillan, SBN 212506
4670 Nebo Dr., Suite 200
La Mesa, CA 91941
Ph: (619) 464-1500, Ext. 14 / Fax: (619) 828-7339
scott@mcmillanlaw.us/ scott4670@gmail.com
Attorneys for Plaintiff-Appellants Scott A. McMillan and the McMillan Law Firm, APC

Baker Marquart, LLP
Ryan G. Baker
2029 Century Park East, Suit 1600
Los Angeles, Ca 90057
Ph: (494) 652-7800 / Fax: (424) 652-7850
rbaker@bakermarquart.com
Attorney for Defendant and Respondent Vania Chaker

Manning & Kass Ellrod, Ramirez, Trester, LLP
John Hochhausler
801 S. Figueroa Street, 15th Floor
Los Angeles, CA 90017
Ph: (213) 624-6900 / Fax: (213) 624-7999
jmh@manningllp.com
Attorneys for Defendant and Respondent Darren Chaker

Sullivan Krieger Truong Spagnola 7 Klausner, LLP
Charles Thomas Spagnola
444 W. Ocean Blvd., Suite 1700
Long Beach, CA 90802
Ph: (562) 597-7070 / Fax: (562) 597-7772
cspagnola@sullivankrieger.com
Attorneys for Defendant and Respondent Darren D. Chaker

Freeman Mathis
& Gary, LLP
Attorneys at Law

-3-
NOTICE OF CROSS-APPEAL

4672313.1  11309-74924

3:16-CV-02816-WQH-MD

# EXHIBIT A

Case 3:16-cv-02186-WQH-MDD   Document 127-1   Filed 09/22/22   PageID.4991   Page 685 of 1196
Case 3:16-cv-02186-WQH-MDD   Document 100-1   Filed 09/13/18   PageID.3937   Page 5 of 22
Case 3:16-cv-02186-WQH-MDD   Document 85   Filed 08/28/17   PageID.3514   Page 1 of 16

1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT A. MCMILLAN, an individual; THE MCMILLAN LAW FIRM, APC, a California professional corporation, | CASE NO. 16cv2186-WQH-MDD |
| Plaintiffs, | ORDER |
| v. | |
| DARREN D. CHAKER, an individual, and as trustee of PLATINUM HOLDINGS GROUP TRUST doing business as Counter Forensics, *et al.*, | |
| Defendants. | |

HAYES, Judge:

The matters before the Court are the motion to dismiss and the motion to strike Plaintiffs' third cause of action filed by Defendant Nicole Chaker (ECF Nos. 35, 36); the motion to dismiss and motion to strike filed by Defendant Darren D. Chaker (ECF Nos. 55, 56); the motion to dismiss or alternatively to quash service filed by Defendant Vania Chaker (ECF No. 59); and, the motion for sanctions by Defendant Darren Chaker (ECF No. 66).

## I. BACKGROUND

On December 5, 2016, Plaintiffs Scott A. McMillan and The McMillan Law Firm, APC filed the First Amended Complaint ("FAC") against Defendant Darren D. Chaker, an individual and as trustee of Platinum Holdings Group Trust, dba Counter Forensics; Defendant Nicole Chaker, an individual and as trustee of The Nicole Chaker

- 1 -

16cv2186-WQH-MDD

Case 3:16-cv-02186-WQH-MDD Document 127-1 Filed 09/22/22 PageID.4992 Page 686 of
Case 3:16-cv-02186-WQH-MDD Document 100-1 Filed 09/22/22 PageID.3398 Page 6 of 22
Case 3:16-cv-02186-WQH-MDD Document 88 Filed 08/28/17 PageID.3515 Page 2 of 16

Revocable Living Trust, U/A dates August 18, 2010; Defendant Vania Chaker, an individual and as beneficiary of The Island Revocable Trust under Declaration of Trust dated June 2, 2015; and Defendant Marcus Mack, as trustee of the Island Revocable Trust under Declaration of Trust dates June 2, 2015. (ECF No. 25). The FAC alleges two causes of action under the Racketeer Influenced and Corrupt Organizations ("RICO") Act pursuant to 18 U.S.C. § 1962(c) and (d) and a civil extortion cause of action under California law.

## II. ALLEGATIONS OF THE FIRST AMENDED COMPLAINT ("FAC")

Plaintiff Scott McMillan is a California licensed attorney practicing law and operating an unaccredited law school. (ECF No. 25 at ¶5). Plaintiff McMillan Law Firm, APC is a corporation operated by Scott McMillan. *Id.* ¶ 6. Defendants Vania and Nicole Chaker are Defendant Darren Chaker's sister and mother, respectively.

Plaintiffs allege that Defendants constitute a RICO enterprise functioning together "as a continuing unit with a common purpose to obtain the Plaintiffs' property under fear induced by falsely imputing a deformity, disgrace, or crimes, and by threats to do an unlawful injury to the person or property . . . all in violation of Cal. Penal Code section 523 (extortion)." *Id.* ¶ 88. "The common purpose of the Enterprise members was to assist each other in the filing of false and meritless lawsuits under federal debt collection statutes; assist each other in the filing of lawsuits against attorneys who opposed them . . . and to conduct a campaign of harassment, defamation, and extortion against attorneys, such as the Plaintiffs, who represented parties adverse to the interests of the Enterprise members . . . ." *Id.* ¶ 91. "Enterprise member also assisted each other in committing vandalism against Plaintiff's property." *Id.*

Defendant Darren Chaker is alleged to have committed multiple acts of racketeering activity through acts involving extortion in violation of California Penal Code sections 518, 519, and 523. *Id.* ¶¶ 94-109. Plaintiffs allege that Darren Chaker sent threatening letters and communications; posted defamatory and fabricated statements online; sent letters threatening Plaintiffs' clients; and sent defamatory emails

- 2 -

16cv2186-WQH-MDD

Case 3:16-cv-02186-WQH-MDD  Document 127-1  Filed 09/22/82  PageID.4993  Page 687 of 22
Case 3:16-cv-02186-WQH-MDD  Document 100-1  Filed 09/12/82  PageID.3993  Page 7 of 22
Case 3:16-cv-02186-WQH-MDD  Document 83  Filed 08/28/17  PageID.3516  Page 3 of 16

1  to other attorneys and colleagues of Plaintiff McMillan. *Id.* Plaintiffs allege that these

2  acts constitute extortion because Defendant "obtained from Plaintiff his intangible

3  property right to practice law free of threats, and to practice in accordance with the

4  California Rules of Professional Conduct" and "obtained from Plaintiffs their intangible

5  property right to practice law and publish court decisions on the internet." *Id.* at ¶¶ 99-

6  109.

7       Plaintiffs bring the first cause of action for a violation of RICO, 18 U.S.C. §

8  1962(c) against Defendant Darren Chaker. *Id.* ¶¶ 84-114. Plaintiffs bring a second

9  cause of action for conspiracy to violate RICO, 18 U.S.C. § 1962(d) against all

10  Defendants. *Id.* ¶¶ 115-119. Plaintiffs bring a third cause of action for civil extortion

11  under California law against Defendants Darren Chaker and Nicole Chaker. *Id.* ¶¶ 120-

12  133.

13  **III. LEGAL STANDARD ON RULE 12(B)(6)**

14       Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state

15  a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal Rule of

16  Civil Procedure 8(a) provides that "[a] pleading that states a claim for relief must

17  contain . . . a short and plain statement of the claim showing that the pleader is entitled

18  to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) is appropriate where

19  the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable

20  legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

21       "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

22  requires more than labels and conclusions, and a formulaic recitation of the elements

23  of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

24  (quoting Fed. R. Civ. P. 8(a)). When considering a motion to dismiss, a court must

25  accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662,

26  679 (2009). However, a court is not "required to accept as true allegations that are

27  merely conclusory, unwarranted deductions of fact, or unreasonable inferences."

28  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a

Case 3:16-cv-02186-WQH-MDD   Document 1001   Filed 09/13/82   PageID.3920   Page 688 of
Case 3:16-cv-02186-WQH-MDD   Document 127   Filed 09/13/82   PageID.3904   Page 8 of 22
Case 3:16-cv-02186-WQH-MDD   Document 86   Filed 08/28/17   PageID.3517   Page 4 of 16

1  complaint to survive a motion to dismiss, the non-conclusory factual content, and

2  reasonable inferences from that content, must be plausibly suggestive of a claim

3  entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir.

4  2009) (internal quotation marks omitted).

5  **IV. MOTIONS TO DISMISS BY DARREN CHAKER AND NICOLE CHAKER**

6  **(ECF Nos. 35, 56)**

7      Defendant Darren Chaker contends that the FAC should be dismissed with

8  prejudice for failure to state a claim.  Defendant Darren Chaker contends that the RICO

9  cause of action pursuant to 18 U.S.C. § 1962(c) must be dismissed because Plaintiffs fail

10  to adequately allege facts to support the predicate act of extortion.  (ECF No. 56-1 at

11  10).  Defendant Darren Chaker contends that Plaintiffs fail to state a claim for extortion

12  because Plaintiffs do not allege facts to show that Defendant Darren Chaker obtained

13  property from Plaintiffs.  *Id.* at 13.  Defendant Darren Chaker further contends that

14  Plaintiffs lack standing because the FAC fails to allege cognizable damages.  *Id.* at 18.

15  Defendant Darren Chaker contends that the second cause of action for RICO

16  conspiracy, 18 U.S.C. § 1962(d), fails for the same reasons as the first cause of action.

17  Defendant Darren Chaker contends that the Court should decline to exercise

18  supplemental jurisdiction over the state law claim.  *Id.* at 19-20.

19      Defendant Nicole Chaker also contends the FAC should be dismissed for failure

20  to state a claim.[1]  (ECF No. 35).  Defendant Nicole Chaker contends that her alleged

21  conduct is protected by the Noerr-Pennington doctrine.  (ECF No. 35-1 at 13-16).

22  Defendant Nicole Chaker contends that the RICO causes of action should be dismissed

23  because Plaintiffs fail to adequately plead an enterprise with an effect on interstate

24  commerce, a pattern of racketeering, cognizable damages, or sufficient conduct or

25  _____

26  [1] Defendant Nicole Chaker files a request for judicial notice of document in the
record of a district court case from the United States District Court for the Central

27  District of California.  (ECF No. 35-3).  Plaintiffs' also file a request for judicial notice
of court documents in other cases.  (ECF No. 45-1).  The Court denies the request for

28  judicial notice as unnecessary.  *See, e.g., Asvesta v. Petroutsas*, 580 F.3d 1000, 1010
n. 12 (9th Cir. 2009) (denying request for judicial notice where judicial notice would
be "unnecessary").

- 4 -                                    16cv2186-WQH-MDD

participation in enterprise affairs. *Id.* at 18-25. Defendant Nicole Chaker contends that the claim under § 1962(d) necessarily fails if the § 1962(c) claim is dismissed. *Id.* at 24. Defendant Nicole Chaker contends that Plaintiffs do not sufficiently allege any cognizable injury to support the cause of action for civil extortion. *Id.* at 25. Defendant Nicole Chaker contends that she is "protected by the litigation privilege under California Civil Code § 47." *Id.* at 29.

Plaintiffs contend that the FAC sufficiently alleges extortion pursuant to the California Penal Code as a predicate act for the RICO claims. (ECF No. 60). Plaintiffs contend that Defendant Darren Chaker "has obtained the Plaintiffs' property, i.e. the right to publicity, the goodwill in the business, the Plaintiff's ability to practice law, the Plaintiff's identity and the Plaintiffs' logo." *Id.* at 14-15. Plaintiffs further contend that the FAC alleges cognizable damages in the form of injury to a business or property. *Id.* at 20-21. Plaintiffs contend that federal law, state law, and California state courts define "property" broadly to include the damage to intangible property interests alleged in the complaint. *Id.* at 20-26. Plaintiffs contend that intangible property rights were obtained by Defendant Darren Chaker. *Id.* at 26-30. Plaintiffs contend that the Court should exercise its supplemental jurisdiction over the state law claim of civil extortion. *Id.* at 30-31. Plaintiffs contend that the Noerr-Pennington doctrine has no applicability to this case. (ECF No. 43 at 25). Plaintiffs contend that Defendant Nicole Chaker is not protected by the litigation privilege under California Civil Code section 47. Plaintiffs contend that the FAC adequately alleges that Defendant Nicole Chaker conspired to violate § 1962(c). *Id.* at 20. Plaintiffs contend that the FAC adequately alleges a civil extortion claim. *Id.* at 22-23.

**A. RICO, 18 U.S.C. § 1962(c)**

"The Racketeer Influenced and Corrupt Organizations ('RICO') Act . . . provides for both criminal and civil liability." *Odom v. Microsoft Corp.*, 486 F.3d 541, 545 (9th Cir. 2007) (citing Pub. L. No. 91-452, § 901, 84 Stat. 922 (1970) (codified at 18 U.S.C. §§ 1961-1968)). "Under RICO's civil enforcement mechanism, 'any person injured in

1   his business or property by reason of a violation of [18 U.S.C. § 1962] may sue therefor

2   in any appropriate United States district court and shall recover threefold the damages

3   he sustains and the cost of the suit, including a reasonable attorney's fee . . . .'"

4   *Canyon Cty v. Sygenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008) (citing 18 U.S.C.

5   § 1964(c)). "Subsections 1962(a) through (c) prohibit certain 'pattern[s] of racketeering

6   activity' in relation to an 'enterprise.'" *United Bhd. of Carpenters & Joiners of Am. v.*

7   *Bldg. & Const. Trades Dep't, AFL-CIO*, 770 F.3d 834, 837 (9th Cir. 2014). "To have

8   standing under § 1964(c), a civil RICO plaintiff must show: (1) that his alleged harm

9   qualifies as injury to his business or property; and (2) that his harm was 'by reason of'

10   the RICO violation, which requires the plaintiff to establish proximate causation." *Id.*

11   (citing *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992); *Sedima,*

12   *S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).

13       Section 1962(c) provides,

14         It shall be unlawful for any person employed by or associated with any
enterprise engaged in, or the activities of which affect, interstate or foreign

15         commerce, to conduct or participate, directly or indirectly, in the conduct
of such enterprise's affairs through a pattern of racketeering activity or

16         collection of unlawful debt.

17   18 U.S.C. § 1962(c). "The elements of a civil RICO claim are as follows: (1) conduct

18   (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as

19   'predicate acts') (5) causing injury to plaintiff's business or property." *United Bhd. of*

20   *Carpenters*, 770 F.3d at 837 (citing *Living Designs, Inc. v. E.I. Dupont de Nemours &*

21   *Co.*, 431 F.3d 353, 361 (9th Cir. 2005)).

22       "A 'pattern of racketeering activity' requires at least two predicate acts of

23   racketeering activity, as defined in 18 U.S.C. § 1961(1) within a period of ten years."

24   *Canyon Cty*, 519 F.3d at 972. "Racketeering activity" as defined by statute includes

25   "any act or threat involving . . . extortion, . . . which is chargeable under State law."

26   18 U.S.C. § 1961(1)(A). To constitute a predicate act of extortion for purposes of a

27   RICO cause of action, the alleged act must satisfy the generic definition of extortion –

28   "obtaining something of value from another with his consent inducted by the wrongful

- 6 -

1  use of force, fear, or threats." *United Bhd. of Carpenters*, 770 F.3d at 843 (citing
2  *United States v. Nardello*, 393 U.S. 286 (1969)).

3      In *Scheidler v. National Organization for Women, Inc.*, the Supreme Court
4  considered whether the use or threat of force, violence or fear to cause a party to "'give
5  up' property rights, namely, 'a woman's right to seek medical services from a clinic, the
6  right of the doctors, nurses or other clinic staff to perform their jobs, and the right of the
7  clinics to provide medical services free from wrongful threats, violence, coercion and
8  fear" constituted Hobbs Act extortion or a state extortion offense for purposes of a
9  RICO predicate act. 537 U.S. 393, 400-01 (2003). The Court determined that although
10  "[t]here was no dispute . . . that petitioners interfered with, disrupted, and in some
11  instances completely deprived, respondents of their ability to exercise their property
12  rights . . . . such acts did not constitute extortion because petitioners did not 'obtain
13  respondents' property." *Id.* at 404-05. The Court further stated, "Petitioners may have
14  deprived or sought to deprive respondents of their exclusive control of their business
15  assets, but they did not acquire any such property. Petitioners neither pursued nor
16  received 'something of value from' respondents that they could exercise, transfer or
17  sell." *Id.* (citing *Nardello*, 393 U.S. at 290)).

18      In this case, Plaintiffs allege that the requisite predicate acts are multiple acts of
19  extortion in violation of California Penal Code sections 518, 519, and 523.[2] An act of
20  extortion which is chargeable under state law can constitute racketeering activity
21  sufficient to support a RICO claim. *See* 18 U.S.C. § 1961(1)(A). However, to plead
22  extortion as a predicate act, Plaintiffs must allege facts to show that the act involved
23  "obtaining something of value from another." *United Bhd. of Carpenters*, 770 F.3d at
24  843; *Scheidler*, 537 U.S. at 410 ("[W]here as here the Model Penal Code and a majority
25  of States recognize the crime of extortion as requiring a party to obtain or to seek to

26

---

27      [2] Plaintiffs allege the cause of action pursuant to 18 U.S.C. § 1962(c) solely
against Defendant Darren Chaker. Plaintiffs do not allege the cause of action pursuant
28  to 18 U.S.C. § 1962(c) against Defendant Nicole Chaker. (ECF No. 25 at 33; ECF No.
43 at 6).

Case 3:16-cv-02186-WQH-MDD   Document 127-1  Filed 03/28/18   PageID.4908   Page 692 of
                                                             1196
Case 3:16-cv-02186-WQH-MDD   Document 88   Filed 08/28/17   PageID.3521   Page 8 of 16

1   obtain property, as the Hobbs Act requires, the state extortion offense for purposes of

2   RICO must have a similar requirement.").   Plaintiffs allege that various acts by

3   Defendant Darren Chaker constitute state extortion offenses and predicate acts under

4   RICO because Defendant Darren Chaker obtained from Plaintiffs the "intangible right

5   to practice law and publish decisions on the internet" and the "intangible property right

6   to practice law free of threats, and to practice in accordance with the California Rules

7   of Professional Conduct." (ECF No. 25 at ¶¶ 99-109).  The Court concludes that these

8   factual allegations are insufficient to establish that Defendant Darren Chaker obtained

9   something of value from Plaintiffs. *Scheidler*, 537 U.S. at 410.  Because Plaintiffs fail

10  to sufficiently allege a predicate act, Plaintiffs fail to state a claim pursuant to 18 U.S.C.

11  § 1962(c).  *See, e.g.*, *United Bhd. of Carpenters*, 770 F.3d at 837 (stating that a plaintiff

12  must properly allege a predicate act to state a claim under RICO).   The motion to

13  dismiss the cause of action under 18 U.S.C. § 1962(c) filed by Defendant Darren Chaker

14  is granted.

15  **B. RICO Conspiracy, 18 U.S.C. § 1962(d)**

16  Plaintiffs bring a RICO conspiracy cause of action against all Defendants and

17  allege that

18  commencing in 2004 and during and continuing at all times to the present,
    RICO defendants conspired to violate section 1962(c), i.e. each defendant
19  agreed that a conspirator (DARREN) would conduct or participate in the
    affairs of the Enterprise through a pattern of racketeering, including acts
20  involving extortion in violation of California state law, as more fully
    described in the First Claim for Relief.
21
22  (ECF No. 25 at ¶ 116).

23  A civil RICO cause of action is available for a violation of 18 U.S.C. § 1962(d).

24  *See* 18 U.S.C. § 1964(c).  Pursuant to 18 U.S.C. § 1962(d), it is "unlawful for any

25  person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this

26  section." 18 U.S.C. § 1962(d).  In *Howard v. Am. Online Inc.*, the Ninth Circuit Court

27  of Appeals held that "Plaintiffs cannot claim that a conspiracy to violate RICO existed

28  if they do not adequately plead a substantive violation of RICO." 208 F.3d 741, 751

    (9th Cir. 2000).  The Court has determined that Plaintiffs did not adequately plead a

- 8 -                                                16cv2186-WQH-MDD

1  substantive violation of 18 U.S.C § 1962(c). The motions to dismiss the RICO

2  conspiracy cause of action under 18 U.S.C. § 1962(d) filed by Defendants Nicole

3  Chaker and Darren Chaker are granted.

4  **C. Civil Extortion Under State Law**

5      The civil extortion cause of action alleged by Plaintiffs against Defendants

6  Darren Chaker and Nicole Chaker does not arise under federal law. The FAC states that

7  this case is properly in federal court based on federal question jurisdiction[3] and that this

8  Court has supplemental jurisdiction over the remaining state law claim pursuant to 28

9  U.S.C. § 1367(a) because it is "so related to the claims in the action within the Court's

10 original jurisdiction that they form part of the same case or controversy under Article

11 III of the United States Constitution." (ECF No. 25 at 2). The federal supplemental

12 jurisdiction statute provides:

13     [I]n any civil action of which the district courts have original jurisdiction,
       the district courts shall have supplemental jurisdiction over all other
14     claims that are so related to claims in the action within such original
       jurisdiction that they form part of the same case or controversy under
15     Article III of the United States Constitution.

16 28 U.S.C. § 1367(a). "The district courts may decline to exercise supplemental

17 jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all

18 claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c).

19     Having dismissed the only federal claims asserted against Defendant Darren

20 Chaker and Nicole Chaker, the Court declines to exercise supplemental jurisdiction over

21 this state law claim pursuant to 28 U.S.C. § 1367(c). *See San Pedro Hotel Co., Inc. v.*

22 *City of Los Angeles*, 159 F.3d 470, 478 (9th Cir. 1998). The motions to dismiss the civil

23 extortion cause of action filed by Defendants Nicole Chaker and Darren Chaker are

24 granted.

25 **V. MOTIONS TO STRIKE BY DARREN CHAKER AND NICOLE CHAKER**

26

27     [3] Plaintiffs also allege, "This Court has subject-matter jurisdiction over this action
   pursuant to 28 U.S.C. § 1332." (ECF No. 25 at ¶ 1). Plaintiffs have failed to allege
28 sufficient facts to establish diversity jurisdiction and this statement appears to be in
   reference to 28 U.S.C. § 1331.

1  **(ECF Nos. 55, 36)**

2      Defendant Darren Chaker filed a motion to strike portions of the FAC pursuant

3  to Federal Rule of Civil Procedure 12(f). (ECF No. 55). The Court has dismissed the

4  FAC as to Darren Chaker. Accordingly, the Court denies as moot Defendant Darren

5  Chaker's motion to strike. (ECF No. 55).

6      Defendant Nicole Chaker filed an anti-SLAPP motion to strike the third cause of

7  action pursuant to California Code of Civil Procedure section 425.16 and for an award

8  of attorney's fees pursuant to California Code of Civil Procedure section 425.16(c).

9  (ECF No. 36). As a result of the Court's decision to decline supplemental jurisdiction

10  over the state law civil extortion claim, the Court does not reach the merits of this

11  motion. The Court denies as moot Defendant Nicole Chaker's anti-SLAPP motion to

12  strike and for attorney's fees and costs. (ECF No. 36).

13  **VI. MOTION TO DISMISS OR QUASH SERVICE BY VANIA CHAKER (ECF**

14  **No. 59)**

15      "Specially Appearing Defendant" Vania Chaker moves the Court pursuant to

16  Rule 12(b)(5) for an order dismissing the complaint or alternatively, for an order

17  quashing defective service. (ECF No. 59). Defendant Vania Chaker contends that

18  Plaintiffs failed to serve her prior to the Court's February 27, 2017 deadline for service.

19  *Id.* at 4. Defendant Vania Chaker contends that Plaintiffs failed to serve her by personal

20  service on February 6, 2017 at 6:02 p.m. as represented to the Court by Plaintiffs. *Id.*

21  at 3. Defendant Vania Chaker contends that she has "strong and convincing" evidence

22  that Plaintiff's purported proof of service is fabricated because Defendant Vania Chaker

23  was not at this location at that time.[4] *Id.* at 3-5. Defendant Vania Chaker further

24  

25      [4] Defendant Vania Chaker requests judicial notice of decision of the California

26  Court of Appeal, Fourth District, Division 1. (ECF No. 59-3). Plaintiffs object to the request for judicial notice. (ECF No. 64-5). The Court does not rely on this material

27  in reaching its decision and denies the request for judicial notice. *See, e.g., Asvesta v. Petroutsas*, 580 F.3d 1000, 1010 n. 12 (9th Cir. 2009) (denying request for judicial

28  notice where judicial notice would be "unnecessary"). Additionally, Defendant Vania Chaker filed evidentiary objections to declarations filed by Plaintiffs. (ECF Nos. 69-2, 69-3, 69-4). The Court has reviewed and considered these objections. A ruling on

1   contends that the Summons filed by Plaintiffs incorrectly names Vania Chaker as an

2   individual and as trustee of Vania Chaker Trust.  *Id.* at 3.  Defendant Vania Chaker

3   contends she should be dismissed from this action because Plaintiffs have failed to

4   complete service despite two extensions of time and have failed to establish good cause

5   for another extension of time.  *Id.* at 7.

6        Plaintiffs contend that Defendant Vania Chaker was properly served on Feburary

7   6, 2017.  Plaintiffs contend that the evidence offered in support of Defendant Vania

8   Chaker's motion is not credible and does not establish that she was not home at the time

9   stated in the proof of service filed with the Court.[5]  (ECF No. 64).  Plaintiffs contend

10  that the Court should find service proper based on the substantial compliance doctrine.

11  *Id.* at 5-6.  Plaintiffs request that the Court deny this motion and order Defendant Vania

12  Chaker to respond to the complaint within ten days.  Plaintiffs request that, if the Court

13  grants any portion of the motion, the Court extend time for service, designate counsel

14  for Vania Chaker as agent for service of process, and order that her counsel accept the

15  service by email.  *Id.* at 8.

16       **A. Legal Standard**

17       "Without a proper basis for jurisdiction, or in the absence of service of process,

18  the district court has no power to render any judgment against the defendant's person

19  or property unless the defendant has consented to jurisdiction or waived the lack of

20  process."  *S.E.C. v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007).  "A federal court is

21  without personal jurisdiction over a defendant unless the defendant has been served in

22  accordance with Fed.R.Civ.P. 4."  *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986),

23  amended, 807 F.2d 1514 (9th Cir. 1987) (citing *Jackson v. Hayakawa*, 682 F.2d 1344,

24  1347 (9th Cir. 1982)).  Federal Rule of Civil Procedure 12(b)(5) authorizes a defendant

25  to move to dismiss the complaint for insufficient service of process.  Fed. R. Civ. P.

26  _____

27  these objections is not necessary to resolve this motion.

28       [5] Plaintiffs filed evidentiary objections to the declaration filed by Vania Chaker
    in support of her motion.  (ECF No. 64-4).  The Court has reviewed and considered
    these objections.  A ruling on these objections is not necessary to resolve this motion.

Case 3:16-cv-02186-WQH-MDD   Document 107-1  Filed 03/28/22  PageID.9481  Page 696 of
Case 3:16-cv-02186-WQH-MDD   Document 83   Filed 08/28/17   PageID.3525   Page 12 of 16
1196

12(b)(5). Once a party challenges service, the plaintiff bears the burden to show that service was valid under Rule 4. *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). The court has discretion to dismiss an action or quash service if there is insufficiency of process or insufficiency of service. *See SHJ v. Issaquah School District No. 411*, 470 F.3d 1288, 1293 (9th Cir. 2006) (citing *Stevens v. Security Pac. Nat'l Bank*, 538 F.2d 1387, 1389 (9th Cir. 1976)).

Under Federal Rule of Civil Procedure 4(e), a plaintiff may serve an individual within a judicial district of the United States by (1) following state law service requirements, or (2) service may be effected upon an individual by (A) delivering a copy of the summons and complaint to the individual personally, (B) by leaving a copy of each "at the individual's dwelling or usual place of abode" with someone of suitable age and discretion who resides there; or (C) by delivering a copy of each to an "agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e).

California Code of Civil Procedure section 415.20(a) states,

> In lieu of personal delivery of a copy of the summons and complaint to the person to be served...a summons may be served by leaving a copy of the summons and complaint during usual office hours in his or her office, or if no physical address is known, at his or her usual mailing address... with the person who is apparently in charge thereof, and by thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left....

Cal. Code of Civ. P. § 415.20(a).

If a party receives sufficient notice of the complaint, Rule 4 is to be "liberally construed" to uphold service. *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1404 (9th Cir. 1994). "However, 'neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction without substantial compliance with Rule 4.'" *Travelers Cas. & Sur. Co. of Am. v. Brenneke*, 551 F.3d 1132, 1135 (9th Cir. 2009) (citing *Benny*, 799 F.2d at 492 (citation and quotes omitted)).

**B. Discussion**

Plaintiffs filed their original complaint on August 29, 2016 (ECF No. 1) and the

- 12 -

16cv2186-WQH-MDD

FAC on December 5, 2016 (ECF No. 25). On December 20, 2016, this Court issued an order granting Plaintiffs a second extension of time in which to complete service upon Defendant Vania Chaker. (ECF No. 38). The Order stated, "Plaintiffs' new deadline to achieve service on Vania Chaker is Monday, February 27, 2017." *Id.*

On February 27, 2017, Plaintiffs filed Proof of Service of Summons in the Complaint. (ECF No. 58). The document states that Defendant Vania Chaker was served by personal service on February 6, 2017 at 6:02 p.m. in San Diego by a registered process server. (ECF No. 58). Defendant Vania Chaker asserts she was not served on February 6, 2017. Defendant Vania Chaker provides receipts from purchases she made in Manhattan Beach, California around the time of service on February 6, 2017 to establish that she was not in San Diego at this time and date.

In a declaration filed in support of Plaintiffs' opposition, the process server states that on February 6, 2017 around 6 p.m., he observed Vania Chaker at the address stated in the proof of service document. He states that he

> jogged up towards the driveway, calling out "Hey you, Vania" or words to that effect. When I made the statement Ms. Chaker was in speaking distance to me, and my voice was sufficiently elevated to provide her notice that I was attempting to contact her. However, upon hearing my shout, Ms. Chaker, who had exited from the garage . . . made a dash for the front floor of the house. . . . Ms. Chaker entered the house and closed the door behind her. . . . I called out service by stating "your served Vania Chaker", and I tossed the papers over the fence, . . . I was not able to actually 'touch' her with the papers as she was behind a closed gate, and I did not intend to go off the public sidewalk onto private property. However I was within 10 yards of her, and as close as I could get in light of the barrier imposed by her fence.

(ECF No. 64-1 at 4).

Based on the statements offered in the declaration by the process server, the Court cannot conclude that Plaintiffs delivered a copy of the summons and complaint to Defendant Vania Chaker personally. *See* Fed. R. Civ. P. 4(e). Plaintiffs further contend that the Court should uphold service as proper under the substantial compliance doctrine. In *Travelers Cas. & Sur. Co. of Am. v. Brenneke*, the Ninth Circuit Court of Appeals held,

Sufficient service may be found where there is a good faith effort to

- 13 -

16cv2186-WQH-MDD

1   comply with the requirements of Rule 4(e)(2) which has resulted in
2   placement of the summons and complaint within the defendant's
    immediate proximity and further compliance with Rule 4(e)(2) is only
3   prevented by the defendant's knowing and intentional actions to evade
    service.

4   551 F.3d at 1136.  While Plaintiffs assert that Defendant Vania Chaker has attempted

5   to evade service and that the process server left the papers in her proximity, Defendant

6   Vania Chaker provides evidence that she was not present at the address when the

7   alleged service was completed.  The Court concludes that Plaintiffs have failed to

8   satisfy their burden to demonstrate that service upon Defendant Vania Chaker was

9   proper under Rule 4.  *See id.* at 1135 ("neither actual notice nor simply naming the

10  defendant in the complaint will provide personal jurisdiction without substantial

11  compliance with Rule 4.").  The Court grants Defendant Vania Chaker's motion to

12  quash service of process.  *See Issaquah School District No. 411*, 470 F.3d at 1293

13          However, the Court has determined that Plaintiffs did not adequately plead a

14  substantive violation of 18 U.S.C § 1962(c).  Accordingly, Plaintiffs' claim for a

15  conspiracy to violate RICO pursuant to 18 U.S.C. § 1962(d) necessarily fails.  *See supra*

16  Part IV.B; *Howard*, 208 F.3d at 751. Conspiracy to violate RICO pursuant to 18 U.S.C.

17  § 1962(d) is the only cause of action alleged against Defendant Vania Chaker.  The

18  Court dismisses the FAC without prejudice as to Defendant Vania Chaker. (ECF No.

19  25).

20  **VII. MOTION FOR SANCTIONS BY DARREN CHAKER (ECF No. 66)**

21          Defendant Darren Chaker filed a motion for sanctions against Plaintiffs pursuant

22  to Rule 11 of the Federal Rules of Civil Procedure, or alternatively, the Court's inherent

23  power. (ECF No. 66).  Defendant Darren Chaker contends that sanctions are warranted

24  because (1) the allegations in the FAC are "factually baseless from an objective

25  perspective, and were included in the FAC for an improper purpose"; (2) Plaintiffs'

26  RICO claims are frivolous; and (3) Plaintiffs' RICO claims were brought "for the

27  improper purpose of naming Darren's mother . . . and sister . . . as Defendants . . . solely

28  to harass Darren and his family." *Id.* at 2.

- 14 -                                    16cv2186-WQH-MDD

Case 3:16-cv-02186-WQH-MDD   Document 107-1   Filed 09/28/22   PageID.4915   Page 699 of
                                                                                        1196
Case 3:16-cv-02186-WQH-MDD   Document 83   Filed 08/28/17   PageID.3528   Page 15 of 16

1    Plaintiffs contend that the motion is without merit and that the allegations of the

2    FAC are proper, non-frivolous, and sufficiently supported by facts. (ECF No. 75).

3         Rule 11 of the Federal Rules of Civil Procedure provides in part,

4         b) Representations to the Court. By presenting to the court a pleading,
          written motion, or other paper--whether by signing, filing, submitting, or
5         later advocating it--an attorney or unrepresented party certifies that to the
          best of the person's knowledge, information, and belief, formed after an
6         inquiry reasonable under the circumstances:

7         (1) it is not being presented for any improper purpose, such as to harass,
          cause unnecessary delay, or needlessly increase the cost of litigation;
8
          (2) the claims, defenses, and other legal contentions are warranted by
9         existing law or by a nonfrivolous argument for extending, modifying, or
          reversing existing law or for establishing new law;
10
          (3) the factual contentions have evidentiary support or, if specifically so
11        identified, will likely have evidentiary support after a reasonable
          opportunity for further investigation or discovery;...
12
     Fed. R. Civ. P. 11(b)(3). When a "complaint is the primary focus of Rule 11
13
     proceedings, a district court must conduct a two-prong analysis to determine (1)
14
     whether the complaint is legally or factually baseless from an objective perspective, and
15
     (2) if the attorney has conducted a reasonable and competent inquiry before signing and
16
     filing it." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (quotation
17
     omitted). "As shorthand for this test, we use the word 'frivolous' to denote a filing that
18
     is both baseless and made without a reasonable and competent inquiry." *Holgate v.*
19
     *Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) (quotation omitted).
20
          After reviewing the motion and the submissions of the parties, the Court finds
21
     that the record in this case does not support the imposition of sanctions at this stage in
22
     the proceedings. The motion for sanctions is denied. (ECF No. 66).
23
     **VIII. CONCLUSION**
24
          IT IS HEREBY ORDERED that Defendant Darren Chaker's motion to dismiss
25
     the First Amended Complaint is granted. (ECF No. 56). The First Amended Complaint
26
     (ECF No. 25) is dismissed without prejudice as to Defendant Darren Chaker.
27
     Accordingly, Defendant Darren Chaker's motion to strike portions of the First
28
     Amended Complaint pursuant to Federal Rule of Civil Procedure 12(f) is denied as

                                      - 15 -                          16cv2186-WQH-MDD

1    moot.  (ECF No. 55).

2        IT IS HEREBY ORDERED that Defendant Darren Chaker's motion for sanctions

3    is denied.  (ECF No. 66)

4        IT IS HEREBY ORDERED that Defendant Nicole Chaker's motion to dismiss

5    the First Amended Complaint is granted. (ECF No. 35).  The First Amended Complaint

6    (ECF No. 25) is dismissed without prejudice as to Defendant Nicole Chaker.  Defendant

7    Nicole Chaker's anti-SLAPP motion to strike and for attorneys' fees and costs is denied

8    as moot.  (ECF No. 36).

9        IT IS HEREBY ORDERED that Defendant Vania Chaker's motion to quash the

10   service of process is granted. (ECF No. 59). The Court quashes service upon Defendant

11   Vania Chaker and grants Plaintiffs sixty (60) days from the date any amended

12   complaint is filed upon which to perfect service upon Vania Chaker in accordance with

13   the requirements of Federal Rule of Civil Procedure 4.

14       IT IS FURTHER ORDERED that the First Amended Complaint (ECF No. 25)

15   is dismissed without prejudice as to Defendant Vania Chaker.  Plaintiffs shall file any

16   motion for leave to file an amended complaint pursuant to Local Rule 7.1 and within

17   thirty (30) days of the date this Order is issued.

18   DATED:  August 28, 2017

19

20                    **WILLIAM Q. HAYES**
                      United States District Judge

21

22

23

24

25

26

27

28

Case 3:16-cv-02186-WQH-MDD   Document 100-1   Filed 03/15/18   PageID.3953   Page 21 of 22

# EXHIBIT B

1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT A. MCMILLAN, an individual; THE MCMILLAN LAW FIRM, APC, a California professional corporation, | CASE NO. 16cv2186-WQH-MDD |
| | ORDER |
| Plaintiffs, | |
| v. | |
| DARREN D. CHAKER, an individual, and as trustee of PLATINUM HOLDINGS GROUP TRUST doing business as Counter Forensics, *et al.*, | |
| Defendants. | |

HAYES, Judge:

On August 28, 2017, the Court granted a motion to dismiss and dismissed the First Amended Complaint without prejudice. The Order stated, "Plaintiffs shall file any motion for leave to file an amended complaint pursuant to Local Rule 7.1 and within (30) days of the date this Order is issued." (ECF No. 83). The docket reflects that no motion for leave to file an amended complaint was filed within this period. The Clerk of Court is directed to close this case.

DATED:  October 10, 2017

*William Q. Hayes*

**WILLIAM Q. HAYES**
United States District Judge

- 1 -                                                    16cv2186-WQH-MDD

1  Ryan G. Baker (Bar No. 214036)
      rbaker@bakermarquart.com
2  Brian T. Grace (Bar No. 307826)
      bgrace@bakermarquart.com
3  BAKER MARQUART LLP
   2029 Century Park East, Sixteenth Floor
4  Los Angeles, California 90067
   Telephone:  (424) 652-7800
5  Facsimile:   (424) 652-7850

6

7  *Attorneys for Specially Appearing*
   *Defendant Vania Chaker*

8

9            UNITED STATES DISTRICT COURT

10          SOUTHERN DISTRICT OF CALIFORNIA

11

12  SCOTT A. MCMILLAN, an individual,        CASE NO. 3:16-CV-02186-WQH-
    THE MCMILLAN LAW FIRM, APC,              MDD
13  a California professional corporation,
                                             **SPECIALLY APPEARING**
14              Plaintiffs,                   **DEFENDANT VANIA CHAKER'S**
                                             **REPLY IN SUPPORT OF REQUEST**
15         vs.                               **FOR JUDICIAL NOTICE IN**
                                             **SUPPORT OF HER MOTION TO**
16  DARREN D. CHAKER, an individual,         **DISMISS PLAINTIFFS' FIRST**
    and as trustee of PLATINUM               **AMENDED COMPLAINT, OR IN**
17  HOLDINGS GROUP TRUST, dba                **THE ALTERNATIVE, TO QUASH**
    COUNTER FORENSICS; NICOLE                **DEFECTIVE SERVICE**
18  CHAKER, an individual, and as trustee
    of THE NICOLE CHAKER TRUST,
19  U/A dated August 18, 2010, VANIA         The Hon. William Q. Hayes
    CHAKER, and individual and as
20  beneficiary of The Island Revocable      Date: April 10, 2017
    Trust under Declaration of Trust dated   Courtroom: 14B
21  June 2, 2015, MARCUS MACK as             Complaint Filed: August 29, 2016
    trustee of The Island Revocable Trust
22  under Declaration of Trust dated June 2,
    2015,
23
                Defendants.
24

25

26

27

28

## REPLY IN SUPPORT OF REQUEST FOR JUDICIAL NOTICE

Specially appearing Defendant Vania Chaker ("Defendant") submits this reply in support of her Request for Judicial Notice. (Dkt. 59-3.)  The request was made pursuant to Rule 201(b) of the Federal Rules of Evidence, in connection with Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint, or in the Alternative, to Quash Defective Service.

Defendant requested that this Court take notice of a decision by the California Court of Appeal in *Comeau v. Reese* (Superior Ct. No. GIC868475), entered July 18, 2008.  Plaintiffs incorrectly characterize Defendant's request for judicial notice as an attempt to introduce contested facts as judicially noticeable fact.  (Dkt. 64-5.)   But the court's determination in *Comeau* was not offered by the Defendant to show that Timothy J. Wing, the process server at issue here, made a false proof of service.  Rather, it was offered to alert this Court to the fact that a proof of service created by Mr. Wing has been disputed before, which is relevant to the present motion.  "The authorities are clear that it is proper for the court to consider judicially noticeable records from prior lawsuits." *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1204 (N.D. Cal. 2014).  Therefore, Defendant's Request for Judicial notice should be granted.

DATED: April 3, 2017

BAKER MARQUART LLP

/s/ Ryan G. Baker
Ryan G. Baker
Brian T. Grace

*Attorneys for Specially Appearing Defendant Vania Chaker*

---

1
SPECIALLY APPEARING DEFENDANT VANIA CHAKER'S REPLY ISO REQUEST FOR JUDICIAL NOTICE

Scott A. McMillan, SBN 212506
The McMillan Law Firm, APC
4670 Nebo Drive, Suite 200
La Mesa, California 91941-5230
(619) 464-1500
Email: scott@mcmillanlaw.us

Attorney for Plaintiffs, SCOTT A. MCMILLAN, an individual, and THE
MCMILLAN LAW FIRM, APC, a California Professional Corporation

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT A. MCMILLAN, an individual, THE MCMILLAN LAW FIRM, APC, a California Professional Corporation, <br><br> Plaintiffs, <br><br> v. <br><br> DARREN D. CHAKER an individual, and as trustee of PLATINUM HOLDINGS GROUP TRUST, dba COUNTER FORENSICS; NICOLE CHAKER, an individual, and as trustee of THE NICOLE CHAKER REVOCABLE LIVING TRUST, U/A dated August 18, 2010, VANIA CHAKER, an individual and as beneficiary of The Island Revocable Trust under Declaration of Trust dated June 2, 2015, MARCUS MACK as trustee of The Island Revocable Trust under Declaration of Trust dated June 2, 2015, <br><br> Defendants. | Case No. 3:16-CV-02186-WQH-MDD <br><br> Judge: Hon. William Q. Hayes <br> Courtroom: 14B <br><br> **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT DARREN D. CHAKER'S MOTION TO SEAL.** <br><br> Hearing Date: June 26, 2017 <br><br> Complaint Filed: August 29, 2016 <br><br> [NO ORAL ARGUMENTS UNLESS ORDERED BY COURT] |

# Table of Contents

I.    **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   **RELEVANT PROCEDURAL HISTORY** . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  **LEGAL STANDARD** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.  **ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     A.    There is no Compelling Reason to Seal Exhibit FF . . . . . . . . . . . . . 3

          1.    There are No Social Security Numbers Listed in Exhibit FF . . 4

          2.    The Addresses Listed are Primarily Thoroughfares or

                  Commercial Buildings, and, Not Being an Actual Address,

                  Cannot be Personal Information . . . . . . . . . . . . . . . . . . . . . . . . . 4

          3.    The Month and Dates of Birth Can be Redacted . . . . . . . . . . . 6

          4.    The Exhibit FF is Not Confidential . . . . . . . . . . . . . . . . . . . . . 7

          5.    Driver's License Numbers are not Protected Under Rule 5.2

                 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

          6.    Exhibit FF was Not Filed for an Improper Purpose . . . . . . . . 10

     B.    There is no Compelling Reason to Seal Exhibit C to Plaintiff's

        Opposition to Defendant Darren's Motion for Sanctions . . . . . . . . . 11

V.    **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# Table of Authorities

**Federal Decisional Authority**

*Angioscore, Inc. v. Trireme Med., Inc*. (N.D.Cal. Jan. 6, 2015, No. 12-cv-03393-YGR) 2015 U.S.Dist.LEXIS 1118, at *5-6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Chaker v. Davis* (S.D.Cal. Oct. 26, 2012, No. 96cv0314) 2012 U.S.Dist.LEXIS 155556.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Hagestad v. Tragesser* (9th Cir. 1995) 49 F.3d 1430 . . . . . . . . . . . . . . . . . . . . . . 2

*Harrell v. George* (E.D.Cal. June 23, 2011, No. CIV S-11-0253 MCE DAD PS) 2011 U.S.Dist.LEXIS 68229, at *4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Kamakana v. City & County of Honolulu* (9th Cir. 2006) 447 F.3d 1172 . . . . . . 2

*Khanna v. Inter-Con Sec. Sys.* (E.D.Cal. Nov. 10, 2009, No. 2:09-cv-2214-GEB-GGH) 2009 U.S.Dist.LEXIS 133645, at *17 . . . . . . . . . . . . 12

*Korte v. Dollar Tree Stores, Inc*. (E.D.Cal. June 11, 2013) 2013 U.S.Dist.LEXIS 82121, at *47 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Lahrichi v. Lumera Corp*. (W.D.Wash. May 22, 2007, No. C04-2124C) 2007 U.S.Dist.LEXIS 37208, at *10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*St. Alphonsus Med. Ctr. - Nampa, Inc. v. St. Luke's Health Sys.* (D.Idaho July 3, 2014, No. 1:12-CV-00560- BLW) 2014 U.S.Dist.LEXIS 93985, at *9 . . . . . . . 2, 3

**Federal Statutes**

18 U.S.C. § 2721 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

18 U.S.C. § 2725 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 13

Fed. Rules of Civ. Proc. Rule 5.2(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8, 13

**State Statutes**

Civil Code § 1798.80(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Civil Code § 1798.80-84 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**State Cases**

*Chaker v. Mateo* (2012) 209 Cal.App.4th 1138 . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**Other Authorities**

N.R.V. § 481.063  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

---

*3:16-cv-02186*    PLAINTIFFS' OPPOSITION TO MOTION TO SEAL    iv

# I.    INTRODUCTION

Defendant Darren Chaker ("Defendant") has a long history of using litigation and other methods to intimidate, threaten, and harass his opponents. Defendant now protests—for the first time—that Plaintiffs' Exhibit FF in the complaint (ECF 1) and First Amended Complaint ("FAC") (ECF 125) should be filed under seal. Exhibit FF is a filed Bench Warrant of Attachment from another case involving Defendant, filed by Plaintiff on behalf of a client. The original complaint in this case was filed on August 29, 2016, and Exhibit FF was identical to both versions of the Complaint. So, nine months after Exhibit FF first appeared, and after several analysis-heavy motions to dismiss, strike, and apply sanctions, Defendant belatedly objects. Defendant also takes issue with a rental application of his, which was attached as Exhibit C to Plaintiffs' Opposition (ECF 75-1) to Defendant's Motion for Sanctions (ECF 66). In both instances, Defendant claims that personal information protected by statute was disclosed in the filings, and so the documents should be struck or filed under seal.

Defendant relies on F.R.C.P. Rule 5.2(a) (redactions), 18 U.S.C. § 2725 (DMV may not disseminate personal information), Civil Code § 1798.80 (what businesses may and may not do with customer records), and Nevada Revised Statute 481.063 (What the Nevada DMV may or may not do with personal information) for dates of birth, non-existent social security numbers, and purported "personal" addresses. With the exception of one instance in Rule 5.2, none of the cited authorities apply.

Plaintiffs' use of both exhibits supports the allegations of criminal enterprise between the Defendants, as outlined in the FAC. Plaintiffs request that Defendant's motion be denied or, in the alternative, allow Plaintiffs to file the original two exhibits under seal, and file redacted versions of them for the public record so as to avoid imposing an unneeded burden upon counsel and the Court, as well as to

*3:16-cv-02186*                    PLAINTIFFS' OPPOSITION TO MOTION TO SEAL                    1

1  avoid potential challenges to authenticity, which Defendant has already tried this

2  case.

## II.   RELEVANT PROCEDURAL HISTORY

On March 16, 2016, in *Darren Chaker v. Wendy Mateo*, San Diego Superior
Court Case No. 37-2010-00094816-CU-DF-CTL, Plaintiffs filed, on behalf of Ms.
Mateo, a Bench Warrant of Attachment against Defendant for his failure to appear
in court for examination. (10-94816 ROA 267).

On August 29, 2016, Plaintiffs filed their original Complaint. (ECF 1).

On December 5, 2017, Plaintiffs filed their First Amended Complaint. (ECF
25).

## III.   LEGAL STANDARD

There is a "strong presumption" in favor of access, and a party seeking to
seal judicial materials must identify "compelling reasons" that outweigh the
"public interest in understanding the public process." (*St. Alphonsus Med. Ctr. -
Nampa, Inc. v. St. Luke's Health Sys.* (D.Idaho July 3, 2014, No. 1:12-CV-00560-
BLW) 2014 U.S.Dist.LEXIS 93985, at *9) (citing *Kamakana v. City & County of
Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). Further:

> Documents "submitted in connection with dispositive motions, the party
> seeking to seal the record must demonstrate "compelling reasons" that
> would overcome the public's right to view public records and
> documents, including judicial records. Id. (citing *Kamakana v. City &
> County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006)).A "party
> seeking to seal judicial records must show that 'compelling reasons
> supported by specific factual findings ... outweigh the general history of
> access and the public policies favoring disclosure.'" *Id.* (quoting
> *Kamakana*, 447 F.3d at 1178-79 (9th Cir. 2006)). The trial court must
> weigh relevant factors including the "public interest in understanding the
> judicial process and whether disclosure of the material could result in
> improper use of the material for scandalous or libelous purposes or
> infringement upon trade secrets." *Id.* at 1179-1181 n. 6 (quoting
> *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995)). While the
> decision to grant or deny a motion to seal is within the trial court's
> discretion, the trial court must articulate its reasoning in deciding a
> motion to seal. *Id.* at 1179.

1  *Angioscore, Inc. v. Trireme Med., Inc*. (N.D.Cal. Jan. 6, 2015, No. 12-cv-03393-

2  YGR) 2015 U.S.Dist.LEXIS 1118, at *5-6.

3  **IV.  ARGUMENT**

4      **A.  There is no Compelling Reason to Seal Exhibit FF**

5      Exhibit FF to the FAC is a Bench Warrant of Attachment, which was filed in

6  December of 2016. It includes a bench warrant, instructions for service to the

7  Sheriff, and identification material for Defendant's various identities. Included in

8  the exhibit are scans of government photos and identification of Defendant for his

9  aliases including "D. David Hunter", "Darren Chaker-DelNero", "Darren D. Nero",

10  "Darren D. Del Nero", and an Arizona identification card which is so illegible as to

11  be essentially useless in identifying Defendant. The Nevada driver's license

12  appears to be one of Defendant's forged documents. (McMillan Dec. ¶ 11). It is a

13  judicial record.

14      Defendant must show a compelling interest that outweighs the public

15  interest in understanding the public process, and overcome the strong presumption

16  in favor of access. (*St. Alphonsus Med. Ctr. - Nampa, Inc. v. St. Luke's Health Sys.*

17  (D.Idaho July 3, 2014, No. 1:12-CV-00560-BLW) 2014 U.S.Dist.LEXIS 93985, at

18  *9). Indeed, Defendant argues that Plaintiff failed to redact "any part of Darren's

19  date of birth or social security number" as well as "Darren's driver license

20  numbers" in Exhibit FF, and so the exhibit should be sealed. (Def Memo pg. 4, 5).

21  More specifically, Defendant states that numerous types of personal information

22  was disclosed and could be used for an improper purpose. (Def. Memo pg. 1).

23  However, Defendant does not describe what "improper purpose" he is concerned

24  about.  While certain information may warrant redaction, the majority of the

25  claimed improperly disclosed information does not warrant protection.

26      Because redaction would not render the document unreadable, the sealing of

27  the entire document would be an overbroad measure to protect Defendant's

28  *3:16-cv-02186*      PLAINTIFFS' OPPOSITION TO MOTION TO SEAL      3

1  information. (*See Korte v. Dollar Tree Stores, Inc*. (E.D.Cal. June 11, 2013) 2013
2  U.S.Dist.LEXIS 82121, at *47; *see also Lahrichi v. Lumera Corp*. (W.D.Wash.
3  May 22, 2007, No. C04-2124C) 2007 U.S.Dist.LEXIS 37208, at *10). To the
4  extent the Court will entertain such a belated objection, Plaintiff proposes that the
5  best way to balance the interests of Defendant and the public access would be to
6  file the original exhibits under seal, and file the attached proposed redacted
7  versions on the public record. (McMillan Dec. Exhibits 1-2).

8        1.   There are No Social Security Numbers Listed in Exhibit FF

9      Plaintiff is baffled by what Defendant believes to be a social security
10  number within the whole of Exhibit FF, let alone on page 10, which is a nearly-
11  illegible scan of Defendant's old-style Arizona identification card. (Def. Memo pg.
12  5). The Arizona Department of Veteran Services website features a depiction of the
13  same style of driver's license/identification card as that of Defendant in Exhibit FF.
14  (McMillan Dec. ¶ 12, Exhibit 9). Presuming the DVS website's sample is a true
15  rendition of that style of card, there is no social security number listed anywhere.
16  Indeed, it seems highly illogical that a government-issued card used for
17  identification for common things such as traveling or making purchases would
18  have that kind of sensitive information on it. In addition, even if there was a social
19  security number on the scanned identification card, the scan is of such poor quality
20  that one can barely make out the words 'identification card,' let alone any
21  information in smaller font. Without more, Plaintiff sees no information warranting
22  redaction on that page, let alone filing under seal.

23        2.   The Addresses Listed are Primarily Thoroughfares or
24             Commercial Buildings, and, Not Being an Actual Address,
25             Cannot be Personal Information

26      With the exception of the address for service on the warrant, the remaining
27  addresses discernable in Exhibit FF are, according to the April 2015 Google Maps

28  *3:16-cv-02186*      PLAINTIFFS' OPPOSITION TO MOTION TO SEAL    4

image capture, either thoroughfares, post offices, or other commercial buildings. As this case was filed in 2016, the following information was then-available:

**Exhibit FF pg. 5**: 848 N Rainbow Blvd., Las Vegas, NV 89107 is a commercial building which includes a church, Sorrento Pizza, and Go Skate Skateboard Lessons. (McMillan Dec. ¶ 6, Exhibit 4).

**Exhibit FF pg. 6**: 20000 S Maryland Blvd., Las Vegas, NV 89123 is in the middle of a major thoroughfare next to a large parking lot with no street-facing houses. (McMillan Dec. ¶ 7, Exhibit 5).

**Exhibit FF pgs. 7-8**: 311 N Robertson Blvd., Beverly Hills, CA is a post office. (McMillan Dec. ¶ 8, Exhibit 6).

**Exhibit FF pg. 9**: [illegible street number] West Lake Mead, Las Vegas, NV. As there is no non-boulevard version of "W Lake Mead" in Las Vegas, according to a Google Maps search, Plaintiff searched for 'W Lake Mead Blvd. addresses. (McMillan Dec. ¶ 9, Exhibit 7). However, the street address number is illegible in the scan, so the following are possibilities for the street number and a description of each surrounding locale:

a. 3560 W. Lake Mead Blvd - Major thoroughfare with no residential buildings nearby.

b. 8360 W. Lake Mead Blvd - Major thoroughfare with no street-facing residential buildings.

c. 8560 W. Lake Mead Blvd. - Major thoroughfare with no residential buildings nearby.

d. 8580 W. Lake Mead Blvd. - This address belongs to Roberto's Taco Shop inside a commercial lot with a Chevron gas station, among others.

This Defendant's Nevada Driver's license does not match the format published by the Nevada Department of Motor Vehicles. Per the Nevada DMV's website, Defendant's style of card was a film-based design issued prior to 2002.

*3:16-cv-02186*    PLAINTIFFS' OPPOSITION TO MOTION TO SEAL    5

(McMillan Dec. ¶ 10-11, Exhibit 8). The Nevada DMV website shows that are two strings of numbers entered right below the colored top section, with one ten-digit number on the far left, and an eight-digit number (a date: mmddyyyy) on the far right, above another number and the picture. Defendant's driver's license has an extra nine or ten digit number in the middle of the top of his card. (*Id*). Regardless of that number's purported purpose, the first three numbers do not appear to match the social security numbers of Defendant to which Plaintiff has access. (McMillan Dec. ¶ 11). But, even if that number was a social security number of Defendant, such a number should not be on that driver's license (or any valid Nevada driver's license), according to the Nevada DMV's license design history.

Other discrepancies between Defendant's driver's license and that of the DMV's sample 2002 license include (1) Defendant's card has"BLUE" for his eye color, rather than the DMV's use of "BLU", (2) the date format above Defendant's picture is 03-20-2002, whereas the DMV website indicates a date format of 04141998, and (3) the number below the date at the top right of the DMV's sample is indented, whereas Defendant's number is not. (*Id*). These differences tend to indicate that Defendant's Nevada driver's license is a forgery. (*Id*).

Plaintiffs would also point out that Defendant, as far as Plaintiffs are aware, currently resides in San Diego, California—not Nevada, Arizona, or Beverly Hills, as listed in the above addresses.

With regard to the service address listed on the warrant, that is proper information to include on a service document for the Sheriff, and, as mentioned, was previously filed in *Chaker v. Mateo*. (McMillan Dec. ¶ 13).

3.     The Month and Dates of Birth Can be Redacted

Defendant states that filing of documents with a full date of birth is not allowed under Fed. Rules of Civ. Proc. Rule 5.2(a). (Def. Memo pg. 4). This

requirement was overlooked at the time of filing, in December of 2016. As such, Plaintiffs respectfully request filing the originally-filed Exhibit FF under seal, and then allow Plaintiffs to file the proposed redacted version attached as Exhibit 1. The reason being that sealing creates an administrative burden to manage for the attorneys and for the Court. (McMillan Dec. ¶ 17, Exhibit 3). Defendant has a long history of demanding as many documents that refer to him being sealed such that even a Texas judge addressed it:

> THE COURT: Okay, the sealing thing. Mr. Chaker I don't really understand why you get the right to seal everything but you want to publicize everybody else's personal information. I just -- I just throw that out there. (TXSD Case No. 4:12-cr-00168 ECF 337, pg. 45:4-8)

(ECF 75-1 ¶ 35).

In fact, Defendant previously asked this Court in 2012 to seal the entire file from a 1996 case, *Chaker v. Davis,* Case No. 96-cv-0314; the request was denied. (McMillan Dec. ¶ 4, Exhibit 3).

Because of the sensitive nature of some of the exhibits filed with the original Complaint and the FAC, Plaintiff filed them under seal. Defendant then challenged their authenticity, resulting in much more work for the Court to manage and for Plaintiffs to defend. The fewer documents which go under seal in this case, the more smoothly the litigation may proceed. (McMillan Dec. ¶ 17).

4.    <u>The Exhibit FF is Not Confidential</u>

The documents in Exhibit FF were filed to enforce a bench warrant in *Chaker v. Mateo*. (McMillan Dec. ¶ 13). Defendant argues that because the bench warrant form instructs the *clerk* what he or she should do with his or her copy of the document after it is sent to the Sheriff's Office, the warrant and associated documents magically become confidential as to all persons, including the drafter and the record upon which it was entered. (Def. Memo pgs. 6-7).

5.    <u>Driver's License Numbers are not Protected Under Rule 5.2</u>

*3:16-cv-02186*      PLAINTIFFS' OPPOSITION TO MOTION TO SEAL    7

1      Defendant argues, without support, that Defendant's driver's license

2 numbers are protected under Fed. Rules Civ. Proc. Rule 5.2, despite listing Rule

3 5.2(a) in his memo. (Def. Memo pg. 3-4). The Rule states:

4

5      (a) Redacted Filings. Unless the court orders otherwise, in an electronic
     or paper filing with the court that contains an individual's social-security

6      number, taxpayer-identification number, or birth date, the name of an
     individual known to be a minor, or a financial-account number, a party

7      or nonparty making the filing may include only:

8          (1) the last four digits of the social-security number and
         taxpayer-identification number;

9          (2) the year of the individual's birth;

10          (3) the minor's initials; and

11          (4) the last four digits of the financial-account number.

12 (F.R.C.P. Rule 5.2(a)).

13      Nowhere in the list does it say 'driver's license number.' Defendant even

14 acknowledges "this information is not specifically addressed within Rule 5.2(a)."

15 (Def. Memo pg. 9). Defendant also argues, by incorporating the December 17,

16 2016 letter from Defendant's previous counsel to Plaintiffs, that "I am confident

17 that you are well aware that there is no real difference between the treatment of

18 confidential driver's license information and a social security number." (Eliot

19 Krieger Dec., Exhibit 1 pg. 2). Plaintiffs disagree with this notion, as it is not

20 commonplace to carry one's social security card around all the time, let alone give

21 it to strangers such as store cashiers, night club bouncers, or TSA agents (traveling)

22 for review.

23      Defendant states that California and Nevada have enacted legislation

24 specifically protecting records of the Department of Motor Vehicles. (Def. Memo

25 pg. 10). While unsure how a Nevada Statute would be persuasive in this case,

26 Plaintiff would point out that the Nevada Revised Statute § 481.063 cited by

27

28  *3:16-cv-02186*      **PLAINTIFFS' OPPOSITION TO MOTION TO SEAL**    8

Defendant applies limitations on dissemination of personal information only as to the DMV itself. (N.R.V. § 481.063). Similarly, while Defendant cites California Civil Code Section 1798.80(e) as having a "nearly identical" definition for "personal information" as the Nevada statute, the cited California definition pertains to the use of *customer records by businesses*, as evidenced by the chapter headings:

> CIVIL CODE - CIV DIVISION 3. OBLIGATIONS [1427 - 3272.9] (Heading of Division 3 amended by Stats. 1988, Ch. 160, Sec. 14.)
> PART 4. **OBLIGATIONS ARISING FROM PARTICULAR TRANSACTIONS** [1738 - 3273]  (Part 4 enacted 1872.)
> TITLE 1.81. **CUSTOMER RECORDS** [1798.80 - 1798.84]  (Title 1.81 added by Stats. 2000, Ch. 1039, Sec. 1.)[1]

(Cal. Civ. Code § 1798.80) (emphasis added).

Indeed, the remainder of the section describes the limitations upon *businesses* for disseminating *customer* records. (Cal. Civ. Code § 1798.80-84). As such, these sections do not apply to Plaintiffs because (1) Plaintiffs are not a business disseminating customer records, and (2) Plaintiffs are not the DMV.

Finally, Defendant attempts to apply 18 U.S.C. § 2725 to Plaintiff, despite directly quoting the limitation of its applicability, that it "prohibits *State Motor Vehicle Departments* from disclosing" such information as found on a driver's license, social security card, or other like-documents. (Def. Memo pg. 9) (emphasis added). Defendant also only quotes the definition section of the statute, rather than its enabling, substantive, counterpart, 18 U.S.C. § 2721. Section 2721 explains that the statute applies only to a DMV, its employees, officers, or contractors. (18 U.S.C. § 2721). Plaintiffs do not fall under these categories of prohibited persons.

6.    Exhibit FF was Not Filed for an Improper Purpose

---

[1] California Legislative Information, Civil Code 1798.80, https://leginfo.legislature.ca.gov/faces/codes_displaySection.xhtml?sectionNum=1798.80.&lawCode=CIV (last accessed 6/9/17).

1       That Defendant clings to the assertion Plaintiffs are guilty of libel in filing

2  the FAC (Def. Memo pg 8) is ironic, given the allegations of extortionate and

3  defamatory conduct alleged against Defendant in this action as part of his criminal

4  enterprise. Regardless, Plaintiffs' filing of Exhibit FF was not for an improper

5  purpose. (McMillan Dec. ¶ 5). Exhibit FF supports Plaintiffs' contention that

6  Defendant admitted he knew he was barred from posting defamatory material.

7  (FAC ¶ 75-79). Plaintiffs' claims of Defendant's defamatory conduct are included

8  in its allegations of a criminal enterprise, racketeering, and extortion. (FAC ¶ 77,

9  91, 93, 98, 101, 105-109).  The Bench Warrant of Attachment and the

10  accompanying documents in Exhibit FF go towards showing Defendant (a) cannot

11  claim he did not know about the restrictions upon his release with regard to

12  publishing defamatory statements, (b) his refusal to abide by court orders in failing

13  to appear at his examination (the bench warrant was still outstanding as of the

14  filing of the FAC per ¶ 77), and (c) his continued refusal to comply with that

15  Court's order to turn over his website domain administrative credentials, which

16  was ordered at the hearing wherein he admitted to his limitations with defamatory

17  statements. As such, Exhibit FF was filed with a proper purpose, to support a

18  contention in the FAC.

19       As such, Exhibit FF is not the kind of "nondispositive" document which

20  warranted discretionary sealing under *Harrell v. George* (E.D.Cal. June 23, 2011,

21  No. CIV S-11-0253 MCE DAD PS) 2011 U.S.Dist.LEXIS 68229, at *4). (Def.

22  Memo pg. 10). Rather, Defendant misconstrues the nature of the sealing of the

23  documents in that case, as the court merely said:

24

25         The documents plaintiff is seeking to have filed under seal are

           nondispositive materials and are not judicial records. While the

26        documents contain personal and sensitive information, such as plaintiff's

           Social Security number, Driver's License number, and college student

27        ID number, plaintiff has partially redacted that information. Nonetheless,

28  *3:16-cv-02186*        PLAINTIFFS' OPPOSITION TO MOTION TO SEAL      10

**out of an abundance of caution** plaintiff's request to have these documents filed under seal will be granted.

(*Id*).

The court gave no explanation as to what the documents were, nor why the court decided to seal them other than "out of an abundance of caution." (*Id*). The case does not stand for the notion that such information *must* be sealed despite redaction, as Defendant would have this Court believe. The same need not apply here, as there are less burdensome alternatives.

## B. There is no Compelling Reason to Seal Exhibit C to Plaintiff's Opposition to Defendant Darren's Motion for Sanctions

Exhibit C to Plaintiffs' Opposition (ECF 75) to Defendant's Motion for Sanctions (ECF 66) is a rental application signed by Defendants Darren and Vania Chaker ("Opposition Exhibit C"). Prior to filing, Plaintiffs looked for sensitive information and made redactions. In fact, Plaintiffs redacted more information than was required under Rule 5.2(a) by redacting the full social security numbers, rather than all but the last four digits.

Opposition Exhibit C, was offered to support Plaintiffs' claims of a criminal enterprise as between the Chakers:

> Defendant Vania has a history of providing false employment references for Defendant on rental and mortgage agreements he could otherwise not afford. [McMillan Dec. ¶ 28-29, 30-34, 36-37, 39-40; Exhibits A-D]. Defendant has also offered significantly contradictory testimony and statements regarding his income since 2007; because he receives disability income from Social Security, he cannot work, and therefore had no money from which he could pay the mortgage payments on the property in San Diego, let alone anywhere else.[McMillan Dec. ¶ 37.] Defendant initiated three bankruptcy actions from 2005 to2007 to avoid foreclosure and making payments, all the while claiming to have received rental income during that period. [McMillan Dec. ¶ 35, 38].

(ECF 75, pg. 20).

Both Vania and Darren Chaker signed the rental application at issue in

---

*3:16-cv-02186*     PLAINTIFFS' OPPOSITION TO MOTION TO SEAL     11

1    Opposition Exhibit C. Darren claimed employment from his sister's law firm, as

2    well as having received "pay stubs" from her law firm, which were purportedly

3    being paid to two of Darren's identities for essentially the same pay period. How

4    that didn't raise red flags is anyone's guess. Regardless, Darren frequently claims,

5    when asked by government entities—as is discussed in Plaintiffs' Opposition to the

6    Motion for Sanctions—that his only income is from either disability, social

7    security, and/or rental income. (McMillan Dec. ¶ 16). But, when it is convenient

8    for him, Defendant uses his sister's backing when signing things such as loans or

9    rental applications. (*Id*). As such, the inclusion of Opposition Exhibit C is highly

10   probative to supporting Plaintiff's claim of the criminal enterprise alleged in the

11   FAC.

12        Defendant claims that Exhibit C discloses Defendant's full date of birth.

13   (Def. Memo pg. 10). This is, again, ironic, because Defendant's date of birth is

14   never actually stated correctly on the rental agreement. (McMillan Dec. ¶ 15).

15   Instead, two different years for Defendant's date of birth appear:1927 and 1970,

16   neither of which match the date of birth for his identities which are known to

17   Plaintiffs. (*Id*). As such, Plaintiffs did not disclose Defendant's 'full date of birth'

18   in filing Opposition Exhibit C.

19        To the extent the Court is inclined to entertain Defendant's belated request,

20   Plaintiffs request the same treatment as with Exhibit FF in that Opposition Exhibit

21   C be filed under seal, and allow Plaintiffs to file a redacted version of the same

22   exhibit in its place on the public record. As for Vania Chaker's personal

23   information cited by Defendant in his motion, Defendant lacks standing to seal the

24   information of Ms. Chaker because Ms. Chaker is also a party to this action and

25   has not made a motion for sealing or redaction. (*See e.g. Khanna v. Inter-Con Sec.*

26   *Sys.* (E.D.Cal. Nov. 10, 2009, No. 2:09-cv-2214- GEB-GGH) 2009

27

28   *3:16-cv-02186*          PLAINTIFFS' OPPOSITION TO MOTION TO SEAL          12

1   U.S.Dist.LEXIS 133645, at *17) (Defendant sought to strike or dismiss plaintiff's

2   allegations against the other individual defendants, but failed to show it had

3   standing to move on behalf of the individual defendants who were not a party to

4   defendant's motion).

5        Defendant also claims that Opposition Exhibit C contains his "personal

6   address" on ECF 75-1 pgs 122 (page 2 of Opposition Exhibit C). (Def. Memo pg.

7   10). The address is 311 N. Robertson "Apt" 123. As shown in Exhibit 6, that is a

8   post office, not a residence. (McMillan Dec. ¶ 8).

9        With regard to Defendant's issues with a document disclosing the "existence

10  of a medical condition. . . Dkt. No. 75-1 pp. 134-136," Plaintiff is hard-pressed to

11  understand the objection, as Defendant has admitted to receiving disability

12  payments from Social Security since 2002 on the record in other cases. (E.g. ECF

13  75-1 pg. 110; Exhibit B, pg. 1). The remaining financial information in the exhibit

14  is (1) nearly ten years old, and (2) pertinent to supporting Plaintiffs' allegations

15  regarding defendants' alleged criminal enterprise.

16       Plaintiff reiterates its argument above that neither 18 U.S.C. § 2725 nor Fed.

17  Rule Civ. Proc. Rule 5.2 apply to driver's license numbers or home address

18  information, at least as applied to Plaintiffs. Finally, Plaintiffs argue that Defendant

19  suffers the same standing issues with Opposition Exhibit C on behalf of his sister

20  and co-defendant as with Exhibit FF.

21

22  ///

23

24  ///

25

26

27

28  *3:16-cv-02186*        PLAINTIFFS' OPPOSITION TO MOTION TO SEAL        13

**V.     CONCLUSION**

For the foregoing reasons, Plaintiffs requests that Defendant's motion be denied or, in the alternative, allow Plaintiffs to file the original Exhibits FF to the Complaint and FAC, and Opposition Exhibit C under seal, while also filing redacted versions in their stead on the public record.

Respectfully submitted,

THE MCMILLAN LAW FIRM, APC

Date: June 12, 2017

/s/ Scott A. McMillan

Scott A. McMillan, Plaintiff

Case 3:16-cv-02186-WQH-MDD Document 47-1 Filed 01/23/17 PageID.2489 Page 1 of 3
Case 3:16-cv-02186-WQH-MDD Document 1271 Filed 09/23/22 PageID.4089 Page 723 of
1196

1  Scott A. McMillan, SBN 212506
   The McMillan Law Firm, APC
2  4670 Nebo Drive, Suite 200
   La Mesa, California 91941-5230
3  (619) 464-1500
   Email: scott@mcmillanlaw.us
4
   Attorney for Plaintiffs, SCOTT A. MCMILLAN, an individual, THE
5  MCMILLAN LAW FIRM, APC, a California Professional Corporation

6

7                    **UNITED STATES DISTRICT COURT**

8                  **SOUTHERN DISTRICT OF CALIFORNIA**

9

10 | SCOTT A. MCMILLAN, an | Case No. 3:16-CV-02186-WQH-MDD |

individual, THE MCMILLAN LAW
11 FIRM, APC, a California Professional   Judge: Hon. William Q. Hayes
   corporation,                          Courtroom: 14B
12
              Plaintiffs,
13                                        PLAINTIFFS' REQUEST FOR
                                          JUDICIAL NOTICE IN SUPPORT
14         v.                             OF PLAINTIFFS' OPPOSITION TO
                                          MOTIONS TO DISMISS FILED BY
15 DARREN D. CHAKER an individual,        NICOLE CHAKER [ECF 35, 36].
   and as trustee of PLATINUM
16 HOLDINGS GROUP TRUST, dba              Hearing Date: February 6, 2017
   COUNTER FORENSICS; NICOLE             Courtroom: 14B
17 CHAKER, an individual, and as          Complaint Filed: August 29, 2016
   trustee of THE NICOLE CHAKER
18 REVOCABLE LIVING TRUST, U/A
   dated August 18, 2010, VANIA
19 CHAKER, an individual and as           Plaintiff's Opposition to Defendant
   beneficiary of The Island Revocable    Nicole Chaker's Motion to Dismiss
20 Trust under Declaration of Trust dated  Pursuant to FRCP 12(b)(6); and
   June 2, 2015, MARCUS MACK as           Opposition to Defendant Nicole
21 trustee of The Island Revocable Trust   Chaker's Special Motion to Dismiss
   under Declaration of Trust dated June   per Antislapp, or Alternatively, per
22 2, 2015,                               FRCP 12(b)(6) filed and served
                                          concurrently
23            Defendants.
                                          [PER CHAMBERS, NO ORAL
24                                        ARGUMENT UNLESS ORDERED BY
                                          COURT]
25

26 **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

27

28

1    Plaintiffs Scott A. McMillan and The McMillan Law Firm, APC

2 ("Plaintiffs"), hereby submit this Request for Judicial Notice, supporting

3 Plaintiffs' Opposition to Defendant Nicole Chaker's Motion to Dismiss Plaintiff's

4 First Amended Complaint Pursuant to Federal Rules of Civil Procedure, Rule

5 12(b)(6) [ECF 35] and Special Motion to Strike Plaintiffs' Third Cause of Action

6 of First Amended Complaint [ECF 36].

7    Plaintiffs respectfully request this Court take judicial notice of the below-

8 listed pleadings, orders, and other papers on file with the United States District

9 Court for the Central District of California and United States Court of Appeals for

10 the Ninth Circuit.

11    Plaintiffs PLS identifies the documents listed below in response to Defendant

12 Nicole Chaker's Motion To Dismiss Plaintiff's First Amended Complaint and

13 Special Motion to Strike Plaintiffs' Third Cause of Action of First Amended

14 Complaint. (McMillan Decl. 2, 4). The below-listed documents for judicial notice

15 relate, in large part, to the disposition of *Darren Del Nero, Nicole Shaker[1], et al. v.*

16 *Midland Credit Management, et al.*, Case No. CV 04-1040 ABC (Shx); the

17 judgment in favor of defendants Midland Credit Management, et al; the Court's

18 order entitling defendant to recover costs based on arguments related to the

19 conduct of the Nicole Chaker during litigation; and various transcripts and

20 declarations related to litigation. (McMillan Decl. 5).

21    "A court properly may take judicial notice of pleadings filed in other

22 actions. See *Burbank-Glendale-Pasadena Airport Authority v. City of Burbank*,

23 136 F.3d 1360, 1364 (9th Cir. 1998) (court took judicial notice of pleadings filed

24 in a related state-court action)." (*Robertson v. Wells Fargo Home Mortg.*, No.

25 10-CV-1110-BR, 2011 U.S. Dist. LEXIS 54192, at *3 (D. Or. May 20, 2011)).

26 "[O]n a motion to dismiss a court may properly look beyond the complaint to

27

28

[1]Defendant Nicole Chaker is identified as "Nicole Shaker" in CV 04-1040 ABC

Case 3:16-cv-02186-WQH-MDD Document 127-1 Filed 09/23/22 PageID.4941 Page 725 of
1196
Case 3:16-cv-02186-WQH-MDD Document 47-1 Filed 01/23/17 PageID.2176 Page 3 of 5

1  matters of public record and doing so does not convert a Rule 12(b)(6) motion to
2  one for summary judgment." *(Mack v. S. Bay Beer Distribs.*, 798 F.2d 1279, 1282
3  (9th Cir. 1986) citing *Phillips v. Bureau of Prisons*, 192 U.S. App. D.C. 357, 591
4  F.2d 966, 969 (D.C. Cir. 1979).

5      Furthermore, "[d]ocuments whose contents are alleged in a complaint and
6  whose authenticity no party questions, but which are not physically attached to the
7  pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss."
8  (*Anderson v. Clow (In re Stac Elecs. Sec. Litig.)*, (9th Cir. 1996) 89 F.3d 1399,
9  1405 n.4; citing *Fecht v. The Price Co.*, (9th Cir. 1995) 70 F.3d 1078, 1080 n.1,
10 quoting *Branch v. Tunnell* (9th Cir. 1994) 14 F.3d 449, 454).

11     According to Federal Rules of Evidence rules 201(b)(1) and 201(b)(2) and
12 *Anderson v. Clow*, Plaintiffs request that this Court take Judicial Notice of the
13 following court filings in other lawsuits and content of those court filings that are
14 attached to the contemporaneously-filed Declaration of Scott A. McMillan In
15 Support of Plaintiffs' Opposition to Defendant Nicole Chaker's Motions to
16 Dismiss [ECF 35, ECF 36][2]:

17 1.    Civil Docket for United States District Court for the Central District of
18     California (Western Division Los Angeles) Case No. 2:04-cv-01040-ABC-
19     SH. (McMillan Decl. Ex. A).

20 2.    Civil Minutes for Order to Show Cause Re Contempt in United States
21     District Court for the Central District of California (Western Division Los
22     Angeles) *Del Nero, Nicole Shaker, et al* **v.** *Midland Credit Management*,
23     Case No. CV 04-1040 GPS(SHx), dated March 22, 2005. (McMillan Decl.
24     Ex. B).

25 3.    Civil Minutes for Order to Show Cause Re Contempt As To Vania Chaker
26     in United States District Court for the Central District of California

27

28     [2] The attached pdf file is bookmarked with references to the specific exhibits
attached.

1     (Western Division Los Angeles) *Del Nero, Nicole Shaker, et al v. Midland*
2     *Credit Management,*, Case No. CV 04-1040 GPS(SHx), dated March 22,
3     2005. (McMillan Decl. Ex. C).

4  4.    Findings of Fact and Conclusions of Law Pursuant to FRCP 52 and LR 52-1
5     for United States District Court for the Central District of California
6     (Western Division Los Angeles) case *Del Nero, Nicole Shaker, et al v.*
7     *Midland Credit Management,*, Case No. CV 04-1040 GPS(SHx), dated July
8     6, 2006. (McMillan Decl. Ex. D).

9  5.    Judgment for United States District Court for the Central District of
10     California (Western Division Los Angeles) case *Del Nero, Nicole Shaker, et*
11     *al v. Midland Credit Management,*, Case No. CV 04-1040 GPS(SHx),
12     dated July 11, 2006. (McMillan Decl. Ex. E).

13  6.    Civil Minutes for Defendants' Motion for Attorneys' Fees and Related Non-
14     Taxable Costs (filed 8/10/06) in United States District Court for the Central
15     District of California (Western Division Los Angeles) case *Del Nero, Nicole*
16     *Shaker, et al v. Midland Credit Management,*, Case No. CV 04-1040
17     GPS(SHx), dated November 27, 2006. (McMillan Decl. Ex. F).

18  7.    Order Awarding Attorneys' Fees and Costs to Defendants for United States
19     District Court for the Central District of California (Western Division Los
20     Angeles) case *Del Nero, Nicole Shaker, et al v. Midland Credit*
21     *Management,*, Case No. CV 04-1040 GPS(SHx), dated February 20, 2007.
22     (McMillan Decl. Ex. G).

23  8.    Judgment for Defendants Midland Credit Management in United States
24     District Court for the Central District of California (Western Division Los
25     Angeles) case *Del Nero, Nicole Shaker, et al v. Midland Credit*
26     *Management,*, Case No. CV 04-1040 GPS(SHx), dated April 20, 2007.
27     (McMillan Decl. Ex. H).

28

9.      Plaintiff's Exhibit: Transcript of Ninth Circuit Oral Argument recorded October 23, 2008, in United States District Court for the Central District of California (Western Division Los Angeles) case *Del Nero, Nicole Shaker, et al v. Midland Credit Management,*, Case No. 2:04-cv-01040-ABC-SH. (McMillan Decl. Ex. I).

10.     Mandate on June 6, 2009 for United States Court of Appeals for the Ninth Circuit case *Del Nero et al v. Midland Credit Management et al.*, filed in United States District Court for the Central District of California (Western Division Los Angeles) case *Del Nero, Nicole Shaker, et al v. Midland Credit Management,*, Case No. 2:04-cv-01040-ABC-SH on August 14, 2009. (McMillan Decl. Ex. J).

11.     Plaintiff's Exhibit: Municipal Court Order on February 26, 2010 of Stay Recommendation of *Midland Funding LLC v. Kenneth Nedrow*, filed in United States District Court for the Central District of California (Western Division Los Angeles) case *Del Nero, Nicole Shaker, et al v. Midland Credit Management,*, Case No. 2:04-cv-01040-ABC-SH on March 8, 2010. (McMillan Decl. Ex. K).

12.     Defendants' Notice of Motion and Motion for Award of Attorneys' Fees and Costs Pursuant to 28 U.S.C. § 1927 and the Court's Inherent Authority; Memorandum of Points and Authorities in Support of Motion for United States District Court for the Central District of California (Western Division Los Angeles) case *Del Nero, Nicole Shaker, et al v. Midland Credit Management,*, Case No. 2:04-cv-01040-ABC-SH, dated March 1, 2010. (McMillan Decl. Ex. L).

13.     Plaintiff's Exhibit: Certain excerpts from Defendants' Answering Brief to Hyde & Swigart's appeal before the Ninth Circuit, United States District Court for the Central District of California (Western Division Los Angeles) case *Del Nero, Nicole Shaker, et al v. Midland Credit Management,*, Case

1  No. 2:04-cv-01040-ABC-SH, dated March 8, 2010. (McMillan Decl. Ex.
2  M).

3  14. Hyde & Swigart's Opposition to Defendant's Motion For Attorneys' Fees
4  and Costs; Points and Authorities for United States District Court for the
5  Central District of California (Western Division Los Angeles) case *Del
6  Nero, Nicole Shaker, et al v. Midland Credit Management*,, Case No. 2:04-
7  cv-01040-ABC-SH, dated March 8, 2010. (McMillan Decl. Ex. N).

8  15. Declaration of Jeffrey A. Topor in Support of Defendants' Motion for
9  Award of Attorneys' Fees and Costs Pursuant to 28 U.S.C. § 1927 and the
10 Court's Inherent Authority, Case No. 2:04-cv-01040-ABC-SH ("Topor
11 Decl."), dated March 18, 2010. (McMillan Decl. Ex. O).

12     a. Trial Exhibit 28, the Petition for Injunction Prohibiting Harassment in
13        the action *Darren D. Chaker v. Nicole Chaker, Sonia Tomina*, case
14        number BS070255 in the Superior Court of California, County of Los
15        Angeles. (Topor Decl. Ex. A)

16     b. Trial Exhibit 29, the Complaint for Restraining Order (Amended) in
17        the action *Darren David Chaker v. Sonia Tomina, Nicole Chaker*,
18        case number RCV 057124 in the Superior Court of California,
19        County of San Bernardino.

20     c. The cover page, the cited pages and the reporter's certificate to the
21        transcript of trial proceedings dated March 17, 2005. (Topor Decl. Ex.
22        C)

23     d. The cover page, the cited pages and the reporter's certificate to the
24        transcript of trial proceedings dated March 15, 2005. (Topor Decl. Ex.
25        D)

26     e. Trial Exhibits 24, 39, 40, and 41, pages from Nicole Chaker's 2003
27        Appointment Book. (Topor Decl. Ex. E)

28

f. Trial Exhibit 27, the Verified Complaint for Damages in the action *Darren D. Chaker v. Imperial Collection Services*, case number CV04-2728 PA in the United States District Court, Central District of California.(Topor Decl. Ex. F)

g. Trial Exhibit 26, the Complaint for Violating the Fair Debt Collection Practices Act and Demand For Jury Trial in the action *Darren Del Nero v. Riddle & Assocs., P.C., et al.*, case number LACC03-6511 in the United States District Court, Central District of California. (Topor Decl. Ex. G)

h. The cover page, the cited pages and the reporter's certificate to the transcript of trial proceedings dated March 16, 2005. (Topor Decl. Ex. H)

i. The cover page, the cited pages and the reporter's certificate to the transcript of trial proceedings dated March 23, 2005. (Topor Decl. Ex. I)

j. The cover page, the cited pages and the reporter's certificate to the transcript of trial proceedings dated March 22, 2005. (Topor Decl. Ex. J)

k. The cover page, the cited pages and the reporter's certificate to the transcript of trial proceedings dated March 24, 2005. (Topor Decl. Ex. K)

l. The cover page, the cited pages and the reporter's certificate to the transcript of the hearing on Defendant's Motion for Attorneys' Fees dated November 27, 2006. (Topor Decl. Ex. L)

m. Order on Defendants' Motion For Attorneys' Fees and Related Non-Taxable Costs filed by Felipa Richland, Richland & Associates, and Nathan Enterprises Corp. in the action *Darren D. Chaker v.*

1                *Felipa Richland, et al.*, case number CV 05-7851 in the United States

2                District Court, Central District of California.(Topor Decl. Ex. M)

3 16.   Civil Minutes for United States District Court Central District of California

4      case *Darren Del Nero, Nicole Shaker, et al. v. Midland Credit Management,*

5      *et al.*, Case No. CV 04-1040 ABC (Shx), dated March 30, 2010. (McMillan

6      Decl. Ex. Q).

7

8                         Respectfully submitted,

9 DATED: January 21, 2017                /s/ Scott A. McMillan

10                       SCOTT A. MCMILLAN, SBN 212506
                       Attorney for Plaintiffs Scott A. McMillan,

11                       and The McMillan Law Firm, APC,

Case 3:16-cv-02186-WQH-MDD   Document 127-1   Filed 09/23/22   PageID.4947   Page 731 of
1196
Case 3:16-cv-02186-WQH-MDD   Document 47-1   Filed 01/23/17   PageID.1767   Page 1 of 45

1   Scott A. McMillan, SBN 212506
    The McMillan Law Firm, APC
2   4670 Nebo Drive, Suite 200
    La Mesa, California 91941-5230
3   (619) 464-1500
    Email: scott@mcmillanlaw.us
4
    Attorney for Plaintiffs, SCOTT A. MCMILLAN, an individual, THE MCMILLAN
5   LAW FIRM, APC, a California Professional Corporation

6

7              UNITED STATES DISTRICT COURT

8              SOUTHERN DISTRICT OF CALIFORNIA

9

| | |
|---|---|
| SCOTT A. MCMILLAN, an individual, THE MCMILLAN LAW FIRM, APC, a California Professional corporation, | Case No. 3:16-CV-02186-WQH-MDD |
| | Judge: Hon. William Q. Hayes |
| | Courtroom: 14B |
| Plaintiffs, | |
| | DECLARATION OF SCOTT A. MCMILLAN IN SUPPORT OF PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS FILED BY NICOLE CHAKER [ECF 35, 36]. |
| v. | |
| DARREN D. CHAKER an individual, and as trustee of PLATINUM HOLDINGS GROUP TRUST, dba COUNTER FORENSICS; NICOLE CHAKER, an individual, and as trustee of THE NICOLE CHAKER REVOCABLE LIVING TRUST, U/A dated August 18, 2010, VANIA CHAKER, an individual and as beneficiary of The Island Revocable Trust under Declaration of Trust dated June 2, 2015, MARCUS MACK as trustee of The Island Revocable Trust under Declaration of Trust dated June 2, 2015, | Hearing Date: February 6, 2017 |
| | Courtroom: 14B |
| | Complaint Filed: August 29, 2016 |
| | Plaintiffs' Opposition to Defendant Nicole Chaker's Special Motion to Dismiss per Antislapp, or Alternatively, per FRCP 12(b)(6); Opposition to Defendant Nicole Chaker's Motion to Dismiss Pursuant to FRCP 12(b)(6) filed and served concurrently herewith. |
| Defendants. | |
| | [PER CHAMBERS, NO ORAL ARGUMENT UNLESS ORDERED BY COURT] |

I, Scott A. McMillan, declare:

1.  I am over the age of eighteen and party to this action.  I am the principal of plaintiff The McMillan Law Firm, APC.  If called before this court, I could and would testify from my own personal knowledge to the following:

2.  I submit this declaration in support of Plaintiffs' Request for Judicial Notice in Support of Plaintiffs' Opposition to Motions to Dismiss filed by Nicole Chaker [ECF 35, 36].

3.  On January 9, 2017, I accessed the United States District Court for the Central District of California's Case Management/Electronic Case Files system, and downloaded the following documents related to Case No. 2:04-cv-01040-ABC-SH:

 a. Civil Docket for United States District Court for the Central District of California (Western Division Los Angeles) Case No. 2:04-cv-01040-ABC-SH. A true and correct copy, as printed on January 9, 2017, is attached as **Exhibit A** hereto.

 b. Civil Minutes for Order to Show Cause Re Contempt in United States District Court for the Central District of California (Western Division Los Angeles) *Del Nero* v, *Midland Credit Management*, Case No. CV 04-1040 GPS(SHx), dated March 22, 2005. A true and correct copy is attached as **Exhibit B** hereto.

 c. Civil Minutes for Order to Show Cause Re Contempt As To Vania Chaker in United States District Court for the Central District of California (Western Division Los Angeles) *Del Nero* v, *Midland Credit Management*, Case No. CV 04-1040 GPS(SHx), dated March 22, 2005. A true and correct copy is attached as **Exhibit C** hereto.

 d. Findings of Fact and Conclusions of Law Pursuant to FRCP 52 and LR 52-1 for United States District Court for the Central District of California (Western Division Los Angeles) case *Del Nero* v, *Midland Credit Management*, Case No. CV 04-1040 GPS(SHx), dated July 6,

---

DECL. MCMILLAN IN SUPP. PLS' RFJN IN SUPP. PLS' OPPO.
DEF N. CHAKER'S MOTION TO DISMISS

1      2006. A true and correct copy is attached as **Exhibit D** hereto.

2    e.    Judgment for United States District Court for the Central District of

3      California (Western Division Los Angeles) case *Del Nero* v, *Midland*

4      *Credit Management*, Case No. CV 04-1040 GPS(SHx), dated July

5      11, 2006. A true and correct copy is attached as **Exhibit E** hereto.

6    f.    Civil Minutes for Defendants' Motion for Attorneys' Fees and Related

7      Non-Taxable Costs (filed 8/10/06) in United States District Court for

8      the Central District of California (Western Division Los Angeles) case

9      *Del Nero* v, *Midland Credit Management*, Case No. CV 04-1040

10      GPS(SHx), dated November 27, 2006. A true and correct copy is

11      attached as **Exhibit F** hereto.

12    g.    Order Awarding Attorneys' Fees and Costs to Defendants for United

13      States District Court for the Central District of California (Western

14      Division Los Angeles) case *Del Nero* v, *Midland Credit*

15      *Management*, Case No. CV 04-1040 GPS(SHx), dated February 20,

16      2007. A true and correct copy is attached as **Exhibit G** hereto.

17    h.    Judgment for Defendants Midland Credit Management in United States

18      District Court for the Central District of California (Western Division

19      Los Angeles) case *Del Nero* v. *Midland Credit Management*, Case

20      No. CV 04-1040 GPS(SHx), dated April 20, 2007. A true and correct

21      copy is attached as **Exhibit H** hereto.

22    i.    Plaintiff's Exhibit: Transcript of Ninth Circuit Oral Argument recorded

23      October 23, 2008, in United States District Court for the Central

24      District of California (Western Division Los Angeles) case *Del Nero*

25      v. *Midland Credit Management*, Case No. 2:04-cv-01040-ABC-SH.

26      A true and correct copy is attached as **Exhibit I** hereto.

27    j.    Mandate on June 6, 2009 for United States Court of Appeals for the

28      Ninth Circuit case *Del Nero* et al v. *Midland Credit Management* et

*al.*, filed in United States District Court for the Central District of
California (Western Division Los Angeles) case *Del Nero* v. *Midland*
*Credit Management*, Case No. 2:04-cv-01040-ABC-SH on August
14, 2009. A true and correct copy is attached as **Exhibit J** hereto.

k.    Plaintiff's Exhibit: Municipal Court Order on February 26, 2010 of
Stay Recommendation of *Midland Funding LLC v. Kenneth*
*Nedrow*, filed in United States District Court for the Central District of
California (Western Division Los Angeles) case *Del Nero* v. *Midland*
*Credit Management*, Case No. 2:04-cv-01040-ABC-SH on March 8,
2010. A true and correct copy is attached as **Exhibit K** hereto.

l.    Defendants' Notice of Motion and Motion for Award of Attorneys'
Fees and Costs Pursuant to 28 U.S.C. § 1927 and the Court's
Inherent Authority; Memorandum of Points and Authorities in Support
of Motion for United States District Court for the Central District of
California (Western Division Los Angeles) case *Del Nero* v. *Midland*
*Credit Management*, Case No. 2:04-cv-01040-ABC-SH, dated March
1, 2010. A true and correct copy is attached as **Exhibit L** hereto.

m.    Plaintiff's Exhibit: Certain excerpts from Defendants' Answering Brief
to Hyde & Swigart's appeal before the Ninth Circuit, United States
District Court for the Central District of California (Western Division
Los Angeles) case *Del Nero* v. *Midland Credit Management*, Case
No. 2:04-cv-01040-ABC-SH, dated March 8, 2010. A true and correct
copy is attached as **Exhibit M** hereto.

n.    Hyde & Swigart's Opposition to Defendant's Motion For Attorneys'
Fees and Costs; Points and Authorities for United States District
Court for the Central District of California (Western Division Los
Angeles) case *Del Nero* v. *Midland Credit Management*, Case No.
2:04-cv-01040-ABC-SH, dated March 8, 2010. A true and correct

---

copy is attached as **Exhibit N** hereto.

o.   Declaration of Jeffrey A. Topor in Support of Defendants' Motion for Award of Attorneys' Fees and Costs Pursuant to 28 U.S.C. § 1927 and the Court's Inherent Authority, Case No. 2:04-cv-01040-ABC-SH, dated March 18, 2010[1] ("Topor Decl."). A true and correct copy is attached as **Exhibit O** hereto.

    i.   Trial Exhibit 28, the Petition for Injunction Prohibiting Harassment in the action *Darren D. Chaker v. Nicole Chaker, Sonia Tomina*, case number BS070255 in the Superior Court of California, County of Los Angeles. (Topor Decl. Ex. A)

    ii.   Trial Exhibit 29, the Complaint for Restraining Order (Amended) in the action *Darren David Chaker v. Sonia Tomina, Nicole Chaker*, case number RCV 057124 in the Superior Court of California, County of San Bernardino.

    iii.   The cover page, the cited pages and the reporter's certificate to the transcript of trial proceedings dated March 17, 2005. (Topor Decl. Ex. C)

    iv.   The cover page, the cited pages and the reporter's certificate to the transcript of trial proceedings dated March 15, 2005. (Topor Decl. Ex. D)

    v.   Trial Exhibits 24, 39, 40, and 41, pages from Nicole Chaker's 2003 Appointment Book. (Topor Decl. Ex. E)

    vi.   Trial Exhibit 27, the Verified Complaint for Damages in the action *Darren D. Chaker v. Imperial Collection Services*, case

---

[1] Plaintiff requests the Court take further judicial notice of the exhibits attached to and authenticated by the Declaration of Jeffrey A. Topor in Support of Defendants' Motion for Award of Attorneys' Fees and Costs Pursuant to 28 U.S.C. § 1927 and the Court's Inherent Authority.

1         number CV04-2728 PA in the United States District Court,

2         Central District of California.(Topor Decl. Ex. F)

3    vii.  Trial Exhibit 26, the Complaint for Violating the Fair Debt

4         Collection Practices Act and Demand For Jury Trial in the

5         action *Darren Del Nero* v. *Riddle & Assocs., P.C., et al.*, case

6         number LACC03-6511 in the United States District Court,

7         Central District of California. (Topor Decl. Ex. G)

8    viii.  The cover page, the cited pages and the reporter's certificate to

9         the transcript of trial proceedings dated March 16, 2005. (Topor

10        Decl. Ex. H)

11    ix.  The cover page, the cited pages and the reporter's certificate to

12        the transcript of trial proceedings dated March 23, 2005. (Topor

13        Decl. Ex. I)

14    x.  The cover page, the cited pages and the reporter's certificate to

15        the transcript of trial proceedings dated March 22, 2005. (Topor

16        Decl. Ex. J)

17    xi.  The cover page, the cited pages and the reporter's certificate to

18        the transcript of trial proceedings dated March 24, 2005. (Topor

19        Decl. Ex. K)

20    xii.  The cover page, the cited pages and the reporter's certificate to

21        the transcript of the hearing on Defendant's Motion for

22        Attorneys' Fees dated November 27, 2006. (Topor Decl. Ex. L)

23    xiii.  Order on Defendants' Motion For Attorneys' Fees and Related

24        Non-Taxable Costs filed by Felipa Richland, Richland &

25        Associates, and Nathan Enterprises Corp. in the action *Darren*

26        *D. Chaker* v. *Felipa Richland, et al.*, case number CV 05-7851

27        in the United States District Court, Central District of

28        California.(Topor Decl. Ex. M)

DECL. MCMILLAN IN SUPP. PLS' RFJN IN SUPP. PLS' OPPO.
DEF N. CHAKER'S MOTION TO DISMISS

p.   Reply Memorandum of Points and Authorities in Support of
Defendants' Motion for Award of Attorneys' Fees and Costs
Pursuant to 28 U.S.C. § 1927 and the Court's Inherent Authority,
dated March 22, 2010, for Darren Del Nero, et al. v. Midland Credit
Management, et al., United States District Court Central District of
California, Case No. CV 04-1040 ABC (Shx). A true and correct copy
is attached as **Exhibit P** hereto.

q.   Civil Minutes for United States District Court Central District of
California case *Darren Del Nero, et al. v. Midland Credit*
*Management, et al.*, Case No. CV 04-1040 ABC (Shx), dated March
30, 2010. A true and correct copy is attached as **Exhibit Q** hereto.

4.   Defendant Nicole Chaker has moved to dismiss Plaintiffs' First Amended
Complaint [ECF 35] and moved to strike the third cause of action from Plaintiff's
First Amended Complaint [ECF 36]. In support of her motions, Defendant Nicole
Chaker made certain arguments regarding the litigation of *Darren Del Nero, et al.*
*v. Midland Credit Management, et al.*, Case No. CV 04-1040 ABC (Shx) [ECF
35-1]. One such argument is that the *Noerr-Pennington* doctrine immunizes the
acts of Ms. Chaker during litigation of *Darren Del Nero, et al. v. Midland Credit*
*Management, et al.* [ECF 35-1 ¶ 7]. Another argument Defendant Nicole Chaker
made was that case resulted in a settlement on Nicole Chaker's behalf, thereby
precluding her claim from being objectively baseless [ECF 35-1 ¶ 10]. Defendant
Nicole Chaker also argued that the conduct and communications described by
Plaintiffs in the First Amended Complaint is protected by California Civil
Procedure Code Section 425.16 [ECF 36-1 ¶ 13].

5.   The documents listed above for judicial notice relate, in large part, to the
disposition of *Darren Del Nero, et al. v. Midland Credit Management, et al.*,
Case No. CV 04-1040 ABC (Shx); the judgment in favor of defendants Midland
Credit Management, et al; the Court's order entitling defendant to recover costs

1    based on arguments related to the conduct of the Nicole Chaker during litigation;

2    and various transcripts and declarations related to litigation.

3        6.  In the contemporaneously-filed Plaintiffs' Objection to Defendant Nicole

4    Chaker's Request to Take Judicial Notice in Support of Motions to Dismiss [ECF

5    35-3, ECF 36-3], Plaintiffs object on the basis that the "Stipulation Regarding

6    Dismissal" is not a proper document for judicial notice; and contrary to Defendant

7    Nicole Chaker's assertion, the "Stipulation Regarding Dismissal" does not illustrate

8    a settlement on her behalf. Rather, it demonstrates the opposite, and is not relevant

9    or admissible evidence.

10       I declare under the penalty of perjury according to the laws of the United

11   States within the meaning of 28 United States Code section 1746 that the foregoing

12   is true and correct and that this declaration was executed on January 21, 2017, at

13   the City of La Mesa, County of San Diego, State of California.

15                                  /s/ Scott A. McMillan

16                                  _____
                                    Scott A. McMillan

DECL. MCMILLAN IN SUPP. PLS' RFJN IN SUPP. PLS' OPPO.
DEF N. CHAKER'S MOTION TO DISMISS

Case 3:16-cv-02186-WQH-MDD   Document 47-1   Filed 01/23/17   PageID.2184   Page 9 of 445

# EXHIBIT A

# UNITED STATES DISTRICT COURT for the CENTRAL DISTRICT OF CALIFORNIA
## (Western Division - Los Angeles)
## CIVIL DOCKET FOR CASE #: 2:04-cv-01040-ABC-SH

Darren Del Nero et al v. Midland Credit Management Inc et al
Assigned to: Judge Audrey B. Collins
Referred to: Magistrate Judge Stephen J. Hillman
Demand: $10,000
Case in other court: 9th CCA, 07-55326
Cause: 15:1692 Fair Debt Collection Act

Date Filed: 02/17/2004
Date Terminated: 07/11/2006
Jury Demand: Both
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: Federal Question

Plaintiff

Darren Del Nero
represented by Craig J Stein
The Stein Law Firm
801 S Figueroa Street
12th Floor
Los Angeles, CA 90017
213-233-2271
Fax: 213-622-1444
Email: cstein@gswllp.com
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

Joshua B Swigart
Hyde & Swigart
411 Camino Del Rio South Suite 301
San Diego, CA 92108-3551
619-233-7770
Fax: 619-297-1022
Email: josh@westcoastlitigation.com
TERMINATED: 03/29/2007
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

Robert Stempler
Consumer Law Office of Robert Stempler
APLC
555 South Sunrise Way Suite 200
PO Box 1721
Palm Springs, CA 92263-1721
760-422-2200
Fax: 760-479-5957
Email: stemplerlaw@gmail.com

TERMINATED: 04/29/2004
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

Vania M Chaker
Vania M Chaker Law Offices
P O Box 22001
San Diego, CA 92192-2001
858-583-1505
Email: vania@stanfordalumni.org
TERMINATED: 12/08/2004
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

**Plaintiff**

Nicole Shaker                          represented by  Robert Stempler
TERMINATED: 11/24/2004                                 (See above for address)
                                                       LEAD ATTORNEY
                                                       ATTORNEY TO BE NOTICED

V.

**Movant**

Vania Chaker                           represented by  John Leo Wagner
                                                       John Leo Wagner Attorney at Law
                                                       1851 East First Street Suite 1450
                                                       Santa Ana, CA 92705
                                                       714-834-1340
                                                       Email: jwagner@wagneradr.com
                                                       LEAD ATTORNEY
                                                       ATTORNEY TO BE NOTICED

V.

**Defendant**

Midland Credit Management Inc          represented by  Corinne D Orquiola
                                                       Carlson and Messer
                                                       5959 W. Centry Boulevard Suite 1214
                                                       Los Angeles, CA 90045
                                                       310-242-2200
                                                       Email: devezac@cmtlaw.com
                                                       TERMINATED: 09/18/2006
                                                       LEAD ATTORNEY
                                                       ATTORNEY TO BE NOTICED

                                                       Jack D Hull , II
                                                       Goldsmith and Hull APC
                                                       16933 Parthenia Street Suite 110

Northridge, CA 91343
818-990-6600
Fax: 818-990-6140
Email: govdept1@goldsmithcalaw.com
TERMINATED: 08/20/2004
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

Jeffrey A Topor
Simmonds and Narita LLP
44 Montgomery Street Suite 3010
San Francisco, CA 94104-4816
415-283-1000
Fax: 415-352-2625
Email: jtopor@snllp.com
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

Stephen H Turner
Lewis Brisbois Bisgaard and Smith LLP
221 North Figueroa Street Suite 1200
Los Angeles, CA 90012
213-250-1800
Fax: 213-250-7900
Email: turner@lbbslaw.com
TERMINATED: 02/09/2010
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

Tomio B Narita
Simmonds & Narita
44 Montgomery Street, Suite 3010
San Francisco, CA 94104-4816
415-283-1000
Fax: 415-352-2625
Email: tnarita@snllp.com
LEAD ATTORNEY
ATTORNEY TO BE NOTICED

John Richard Feliton , Jr.
Lewis Brisbois Bisgaard and Smith
221 North Figueroa Street, Suite 1200
Los Angeles, CA 90012
213-250-1800
TERMINATED: 02/09/2010

**Defendant**

MRC Receivables Corp                     represented by Corinne D Orquiola

(See above for address)
TERMINATED: 09/18/2006
LEAD ATTORNEY
ATTORNEYTO BE NOTICED

Jack D Hull , II
(See above for address)
LEAD ATTORNEY
ATTORNEYTO BE NOTICED

Jeffrey A Topor
(See above for address)
LEAD ATTORNEY
ATTORNEYTO BE NOTICED

Stephen H Turner
(See above for address)
TERMINATED: 02/09/2010
LEAD ATTORNEY
ATTORNEYTO BE NOTICED

Tomio B Narita
(See above for address)
LEAD ATTORNEY
ATTORNEYTO BE NOTICED

John Richard Feliton , Jr.
(See above for address)
TERMINATED: 02/09/2010

<u>Defendant</u>

Does
1-10

<u>Intervenor</u>

Hyde and Swigart                     represented by Craig J Stein
                                     (See above for address)
                                     ATTORNEYTO BE NOTICED

<u>Intervenor</u>

Robert L Hyde                        represented by Craig J Stein
                                     (See above for address)
                                     ATTORNEYTO BE NOTICED

<u>Intervenor</u>

Joshua B Swigart                     represented by Craig J Stein
                                     (See above for address)

CM/ECF - California Central District

TERMINATED: 03/28/2007
ATTORNEY TO BE NOTICED

| Date Filed | # | Docket Text |
|---|---|---|
| 02/17/2004 | 1 | COMPLAINT against defendants MRC Receivables Corp, Midland Credit Management Inc. (Filing fee $ 150.) Jury Demanded. , filed by plaintiffs Darren Del Nero, Nicole Shaker.(rrey, ) (Entered: 02/20/2004) |
| 02/17/2004 | | 20 Day Summons Issued re Complaint - (Discovery) 1 as to MRC Receivables Corp, Midland Credit Management Inc. (rrey, ) (Entered: 02/20/2004) |
| 02/17/2004 | 2 | CERTIFICATION AND NOTICE of Interested Parties filed by Plaintiffs Darren Del Nero, Nicole Shaker. (rrey, ) (Entered: 02/20/2004) |
| 02/17/2004 | 3 | NOTICE TO PARTIES OF ADR PILOT PROGRAM filed.(rrey, ) (Entered: 02/20/2004) |
| 02/17/2004 | | FAX number for Attorney Robert H Stempler is 760-422-2820. (rrey, ) (Entered: 02/20/2004) |
| 02/24/2004 | 4 | NOTICE TO COUNSEL: Counsel are advised that the Court expects strict compliance with the provisions of the Local Rules and the Federal Rules of Civil Procedure (See document for further details) by Judge Christina A. Snyder (ir, ) Modified on 2/24/2004 (ir, ). (Entered: 02/24/2004) |
| 03/03/2004 | 5 | PROOF OF SERVICE Executed upon Midland Credit Management Inc served on 2/20/2004, answer due 3/11/2004. The Summons and Complaint were served by Personal service, by State statute, upon Robin Pruitt, Person Authorized to Accept service. Due Dilligence declaration not attached. Original Summons not returned. (ir, ) (Entered: 03/08/2004) |
| 03/03/2004 | 6 | PROOF OF SERVICE Executed upon MRC Receivables Corp served on 2/20/2004, answer due 3/11/2004. The Summons and Complaint were served by Personal service, by State statute, upon Robin Pruitt, Person Authorized to accept service. Due Dilligence declaration not attached. Original Summons not returned. (ir, ) (Entered: 03/08/2004) |
| 03/08/2004 | 7 | NOTICE OF ENTRY of Order dated 2/24/2004 regarding Notice to Counsel filed by plaintiff Darren Del Nero. (jp, ) (Entered: 03/16/2004) |
| 03/10/2004 | 8 | ANSWER to Complaint 1 filed by Defendants Midland Credit Management Inc and MRC Receivables Corp.(ir, ) (Entered: 03/16/2004) |
| 03/10/2004 | 9 | CERTIFICATION of Interested Parties filed by Defendants MRC Receivables Corp, Midland Credit Management Inc. (ir, ) (Entered: 03/16/2004) |
| 03/10/2004 | 10 | DEMAND for Jury Trial filed by Defendants MRC Receivables Corp, Midland Credit Management Inc.. (ir, ) (Entered: 03/16/2004) |
| 03/18/2004 | | PLACED IN FILE - NOT USED re memorandum of points and authorities in support of motion to withdraw submitted by plaintiffs' Darren Del Nero. (bp, ) (Entered: 03/28/2005) |
| 04/29/2004 | 11 | SUBSTITUTION OF ATTORNEYE filed. Substituting attorney Vania M Chaker for Darren Del Nero in place and stead of attorney Robert H Stempler by Judge Christina A. Snyder. (ir, ) (Entered: 04/29/2004) |
| 04/29/2004 | | FAX number for Attorney Vania M Chaker is 815-377-4177. (ir, ) (Entered: 04/29/2004) |

1/9/2023 Case 3:16-cv-02186-WQH-MDD Document 727-1 Filed 09/23/22 PageID.19061 Page 745 of 445
Case 3:16-cv-02186-WQH-MDD Document 727-1 California Central District Page 21496 Page 15 of 445
1196

| 05/17/2004 | 12 | ADR PILOT PROGRAM QUESTIONNAIRE filed by attorney Vania M Chaker, Jack D Hull II on behalf of Plaintiffs Darren Del Nero, Nicole Shaker, Defendant Midland Credit Management Inc.(ir, ) (Entered: 05/27/2004) |
| --- | --- | --- |
| 05/17/2004 | 13 | REPORT of Parties Planning Meeting and Proposed Discovery Plan filed; estimated length of trial 4 Court days. (ir, ) (Entered: 05/27/2004) |
| 06/08/2004 | 14 | MINUTES: ORDER SETTING SCHEDULING CONFERENCE; This matter is set for a Scheduling Conference on 8/2/2004 11:00 AM. Parties are reminded of their obligations to disclose information and confer on a discovery plan not later than 21 days prior to the date of the Rule 16(b) scheduling conference and to report to Court not later than 14 days after they confer on a discovery plan. Court will issue an order setting forth at least the following dates: Last day for joining parties, last date to file any motion, whether or not dispositive, and last date to complete discovery. Scheduling Conferences will ordinary not be continued. Plaintiff is responsible for serving this order on any party that has not yet answered the complaint. Failure to comply may lead to the imposition of sanctions (See document for further details) IT IS SO ORDERED by Judge Christina A. Snyder Court Reporter: None present (ir) (Entered: 06/09/2004) |
| 07/15/2004 | 15 | NOTICE OF MOTION AND MOTION for Summary Judgment or in the alternative Summary Adjudication of Issues filed by Defendants MRC Receivables Corp, Midland Credit Management Inc. Motion set for hearing on 8/16/2004 at 10:00 AM before Honorable Christina A. Snyder.; Declaration of Jack D Hull, Greg Meredith and John Redding; Memorandum of Points and Authorities. Lodged Judgment, Separate Statement of Uncontroverted Facts and Conclusion of law. (ir, ) (Entered: 07/19/2004) |
| 07/15/2004 | 16 | DECLARATION of Greg Meredith in support of motion for summary judgment 15 filed by Defendants MRC Receivables Corp, Midland Credit Management Inc. (ir) (Entered: 07/19/2004) |
| 07/15/2004 | 17 | DECLARATION of John Redding in support of motion for Summary Judgment 15 filed by Defendants MRC Receivables Corp, Midland Credit Management Inc. (ir) (Entered: 07/19/2004) |
| 07/15/2004 | 18 | SEPARATE STATEMENT of Undisputed Material Facts in support of motion for Summary Judgment or in the alternative summary adjudication of Issues 15 filed by Defendants MRC Receivables Corp, Midland Credit Management Inc, Nicole Shaker.(ir) (Entered: 07/19/2004) |
| 07/22/2004 | 19 | NOTICE OF MOTION AND MOTION of Vania Chaker to Withdraw as counsel of record filed by Plaintiff Darren Del Nero. Motion set for hearing on 8/16/2004 at 10:00 AM before Honorable Christina A. Snyder. Lodged Proposed Order. (ir) (Entered: 08/02/2004) |
| 07/22/2004 | 20 | MEMORANDUM of Points and Authorities in Support of Motion to withdraw Vania Chaker as counsel of record 19 filed by Plaintiff Darren Del Nero. (ir ) (Entered: 08/02/2004) |
| 07/22/2004 | 21 | DECLARATION of Vania M Chaker in support of Vania Chaker to Withdraw as counsel of record 19 filed by Plaintiff Darren Del Nero. (ir ) (Entered: 08/02/2004) |
| 07/22/2004 | 22 | PROOF OF SERVICE filed by Plaintiff Darren Del Nero of Notice of Change of Address was served on 7/20/04. (ir) (Entered: 08/02/2004) |
| 07/22/2004 | 23 | NOTICE of Change of Address by attorney Vania M Chaker for Plaintiff Darren Del Nero, changing Address to Law Office of Vania M Chaker PO Box 22001 San Diego, CA 92192- |

| | | 2001; Telephone 858-583-1505; Fax 858-638-1926. Filed by Plaintiff Darren Del Nero (ir ) (Entered: 08/02/2004) |
|---|---|---|
| 07/22/2004 | | FAX number for Attorney Vania M Chaker is 858-638-1926. (ir ) (Entered: 08/02/2004) |
| 07/22/2004 | 24 | PROOF OF SERVICE filed by Plaintiff Darren Del Nero of Notice of motion and motion to withdraw as counsel of record 19 , memorandum of Points and Authorities in support 20 , Declaration of Vania M Chaker 21 was served on 7/20/04. (ir ) (Entered: 08/02/2004) |
| 07/28/2004 | 25 | NOTICE OF DISCREPANCY AND ORDER: by Judge Stephen J. Hillman: ORDERING Letter to Judge submitted received 7/27/04 is not to be filed but instead rejected. Denial based on Local Rule 83-2.11 Attorney or parties shall refrain from writing letters to the judge.(ir) (Entered: 08/03/2004) |
| 08/02/2004 | 26 | MINUTES: SCHEDULING CONFERENCE; ORDER TO SHOW CAUSE; Plaintiff is hereby ordered to show cause why this case should not be dismissed for lack of prosecution. A response shall be filed in writing no later than 8/16/04. Scheduling Conference is continued to Monday 8/30/04 at 11:00 am IT IS SO ORDERED by Judge Christina A. Snyder Court Reporter: None present. (ir ) (Entered: 08/05/2004) |
| 08/02/2004 | 27 | STATEMENT of Genuine Issues Opposing Defendant's MOTION for Summary Judgment MOTION for Summary Adjudication 15 filed by Plaintiffs Darren Del Nero, Nicole Shaker. (shb, ) (Entered: 08/05/2004) |
| 08/02/2004 | 28 | JOINT MEMORANDUM by Plaintiffs Opposing Defendants MOTION for Summary Judgment or Summary Adjudication AND MOTION for to STRIKE part of Declaration attached to Defendants Motion; Declaration of Plaintiffs Darren Del Nero and Nicole Shaker and Counsel Vania M Chaker and Robert Stempler filed by Plaintiffs Darren Del Nero and Nicole Shaker. Motion set for hearing on 8/16/2004 at 10:00 AM before Honorable Christina A. Snyder. (shb, ) (Entered: 08/05/2004) |
| 08/02/2004 | | JOINT MEMORANDUM by Plaintiffs Opposing Defendants MOTION for Summary Judgment or Summary Adjudication 15 AND MOTION for to STRIKE part of Declaration attached to Defendants Motion; Declaration of Plaintiffs Darren Del Nero and Nicole Shaker and Counsel Vania M Chaker and Robert Stempler filed by Plaintiffs Darren Del Nero and Nicole Shaker. Motion set for hearing on 8/16/2004 at 10:00 AM before Honorable Christina A. Snyder. (shb, ) (Entered: 08/05/2004) |
| 08/02/2004 | 111 | JOINT MEMORANDUM by Plaintiffs Opposing Defendants MOTION for Summary Judgment or Summary Adjudication AND MOTION to STRIKE part of Declaration attached to Defendants Motion; Declaration of Plaintiffs Darren Del Nero and Nicole Shaker and Counsel Vania M Chaker and Robert Stempler 15 filed by Plaintiffs Darren Del Nero, Nicole Shaker. (shb, ) (Entered: 03/29/2005) |
| 08/05/2004 | 29 | DECLARATION of Robert Stempler re In Chambers Conference, Regarding Order to Show Cause for lack of prosecution and failure to appear at scheduling conference on August 2, 2004 26 filed by Plaintiff Nicole Shaker. (shb, ) (Entered: 08/06/2004) |
| 08/11/2004 | 30 | MINUTES OF In Camera Hearing held before Judge Christina A. Snyder :, Order by Judge Christina A. Snyder Taking motion off calendar MOTION of Vania Chaker to Withdraw as Attorney 19 , MOTION for Summary Adjudication MOTION for Summary Judgment MOTION for Summary Judgment 15 , This case will be transferred to the calendar of Judge Schiavelli and motions Reset as to 19 MOTION of Vania Chaker to Withdraw as Attorney, 15 |

|            |    | MOTION for Summary Adjudication MOTION for Summary Judgment MOTION for Summary Judgment. Motion set for hearing on 9/13/2004 at 10:00 AM before Honorable George P. Schiavelli. Court Reporter: Not Present. (shb, ) (Entered: 08/11/2004) |
| 08/11/2004 | 31 | Notice of Withdrawal of MOTION for Summary Judgment 15 filed by Defendants MRC Receivables Corp, Midland Credit Management Inc. (th) (Entered: 08/12/2004) |
| 08/16/2004 | 32 | ORDER OF THE CHIEF JUDGE (# 04-26) approved by Acting Chief Judge Stephen V. Wilson. Pursuant to the recommended procedure adopted by the Court for the creation of the calendar of Judge George P. Schiavelli, this case is transfered from Judge Christina A. Snyder to the calendar of Judge George P. Schiavelli for all further proceedings. The case number will now reflect the initials of the transferee Judge CV 04-1040-GPS(SHx).(stsh, ) (Entered: 08/16/2004) |
| 08/20/2004 | 33 | Substitution of Attorney filed. Substituting attorney Stephen H Turner of Carlson Messer and Turner for Defendant Midland Credit Management Inc in place and stead of attorney Jack D Hull of Goldsmith and Hull by Judge Christina A. Snyder. (mch, ) (Entered: 08/20/2004) |
| 08/20/2004 | 34 | MINUTES OF In Chambers Conference held before Judge George P. Schiavelli: This action has been reassigned to the Honorable George P Schiavelli, United States District Judge. The magistrate judge assignment remains the same. Please substitute the initials GPS in place of the initials CAS. The case number will now read: CV04-1040 GPS (SHx). As documents are routed using the judge's initials, it is important to use the correct initials on all subsequent filings. Judge Schiavelli's courtroom deputy clerk, Krista Barrett, can be reached at (213) 894-2719. (see document for further details). The scheduling conference presently set for 8/30/04 remains on calendar for that date at 11:00 am. The motion to withdraw is set for 9/13/04 at 1:30 pm. The reference to the ADR Pilot Program is hereby withdrawn. Court Reporter: not present. (rl, ) (Entered: 08/20/2004) |
| 08/20/2004 |    | Set/Reset Deadlines as to 19 MOTION of Vania Chaker to Withdraw as Attorney. Motion set for hearing on 9/13/2004 at 01:30 PM before Honorable George P. Schiavelli. Pursuant to minute order filed 8/20/04 (rl, ) (Entered: 08/20/2004) |
| 08/30/2004 | 35 | MINUTES OF Scheduling Conference held before Judge George P. Schiavelli, Case is scheduled as follows: Discovery cut-off 10/18/2004; Opening Expert Reports 11/15/2004; Expert Rebuttal 11/30/2004; Last date to hear motions 12/20/2004; Jury Trial set for 1/17/2005 09:00 AM. Pretrial Conference set for 1/3/2005 11:30 AM; Settlement conference shall take place not later than 9/30/2004. Counsel shall submit a joint post-settlemetn conference report not later than 10/15/2004. Ms Chaker orally withdraws her motion to be relieved as counsel of record. That motion, presently set for 9/13/04 is off calendar, and shall be re-noticed if counsel wishes to proceed with it. Court Reporter: Not Present. (yc, ) (Entered: 08/31/2004) |
| 09/07/2004 | 36 | MINUTES (In Chambers) held before Judge George P. Schiavelli : The court is in receipt of a letter sent via certified mail from plaintiff. The Court rejects this correspondence which, under Local Rule 83-2.11 is an improper ex parte communication with the Court. The correspondence is to be returned to plaintiff with a copy to be sent to his counsel. (yl, ) (Entered: 09/09/2004) |
| 10/13/2004 | 37 | STIPULATION to Extend Discovery Cut-Off Date to 11/8/2004 filed by plaintiff Darren Del Nero. Lodged proposed order. (bp, ) (Entered: 10/18/2004) |

| 10/15/2004 | 38 | JOINT Report regarding mediation filed by Defendant Midland Credit Management Inc. (bp, ) (Entered: 10/20/2004) |
|---|---|---|
| 10/19/2004 | 39 | NOTICE OF MOTION AND MOTION for leave to withdraw as counsel for plaintiff Nicole Shaker filed by plaintiff Nicole Shaker. Motion set for hearing on 11/8/2004 at 01:30 PM before Honorable George P. Schiavelli. (bp, ) (Entered: 10/20/2004) |
| 10/22/2004 | 40 | ORDER Denying extension of time for discovery dates by Judge George P. Schiavelli (bp, ) (Entered: 10/25/2004) |
| 11/08/2004 | 41 | MINUTES: Motion by plaintiff attorney to withdraw as counsel of record for plaintiff Nicole Shaker. The court was informed by the parties that they are close to reaching a settlement. Court reschedules this hearing to November 22, 2004 at 1:30 p.m. If the case is settled before that date, the parties do not need to appear. If the case has not been settled by the next hearing date, the matter of plaintiff's counsel's motion to withdraw will be heard at that time. Judge George P. Schiavelli :, 39 Court Reporter: Nancy Smith-Wells. (bp, ) (Entered: 11/09/2004) |
| 11/16/2004 | 42 | NOTICE OF DISCREPANCY AND ORDER: by Judge George P. Schiavelli, ORDERING letter, proof of service submitted by Plaintiff Darren Del Nero received on 11/12/04 is not to be filed but instead rejected. Denial based on: no correspondence to judge in letter format.(bp, ) (Entered: 11/22/2004) |
| 11/17/2004 | | PLACED IN FILE - NOT USED re proposed order granting motion to withdraw as counsel of record submitted by plaintiff Darren Del Nero. (bp, ) (Entered: 11/19/2004) |
| 11/22/2004 | 43 | MINUTES held before Judge George P. Schiavelli : 39 MOTION of Robert Stempler to Withdraw as Attorney. Motion continued 12/7/2004 at 10:00 AM before Honorable George P. Schiavelli.Court Reporter: Gail Peeples. (yc, ) (Entered: 11/24/2004) |
| 11/24/2004 | 44 | STIPULATION AND ORDER by Judge George P. Schiavelli that pursuant to a settlement between the parties herein, Plaintiff Nicole Shaker agrees to dismiss all causes of action against Defendants Midland Credit Management Inc and MRC Receivables Corp with prejudice. All parties are bear their own attorneys fees and costs. (jp, ) (Entered: 11/29/2004) |
| 12/07/2004 | 45 | MINUTES: The court signs the substitution of attorney lodged this date, substituting Darren Del Nero as plaintiff in pro per. The court therefore deems moot Ms. Chaker's motion to withdraw as counsel of record. Mr. Del Nero is ordered, not later than December 13, 2004, to file with the court and serve upon opposing counsel his current telephone number. Judge George P. Schiavelli :Court Reporter: Rosalyn Adams. (bp, ) (Entered: 12/09/2004) |
| 12/08/2004 | 46 | Substitution of Attorney filed. Substituting Darren Del Nero, in pro per in place and stead of attorney Vania M Chaker by Judge George P. Schiavelli. (bp, ) (Entered: 12/09/2004) |
| 12/09/2004 | | PLACED IN FILE - NOT USED re substitution of atorney submitted by plaintiff Darren Del Nero. (bp, ) (Entered: 12/13/2004) |
| 12/10/2004 | 51 | NOTICE regarding court's decision and order thereon filed by plaintiff Darren Del Nero. (bp, ) (Entered: 12/16/2004) |
| 12/12/2004 | | PLACED IN FILE - NOT USED re substitution of atorney submitted by plaintiff Darren Del Nero. (bp, ) (Entered: 12/16/2004) |
| 12/13/2004 | 47 | MEMORANDUM of CONTENTIONS of FACT and LAW filed by defendants Midland Credit Management Inc, MRC Receivables Corp.. (bp, ) (Entered: 12/15/2004) |

| 12/13/2004 | 48 | Witness List filed by defendants' Midland Credit Management Inc, MRC Receivables Corp.. (bp, ) (Entered: 12/15/2004) |
|---|---|---|
| 12/13/2004 | 49 | Exhibit List filed by defendants Midland Credit Management Inc, MRC Receivables Corp.. (bp, ) (Entered: 12/15/2004) |
| 12/13/2004 | 50 | DECLARATION of Larissa G. Nefulda regarding plaintiff's failure to meet and confer filed by Defendants Midland Credit Management Inc, MRC Receivables Corp. (bp, ) (Entered: 12/15/2004) |
| 12/14/2004 | 52 | NOTICE OF DOCUMENT DISCREPANCIES AND ORDER by Judge George P. Schiavelli ORDERING notice regarding court's decision and order thereon submitted by Plaintiff Darren Del Nero received on 12/10/04 to be filed and processed; filed date to be the date the document was stamped Received but not Filed with the Clerk.(bp, ) (Entered: 12/16/2004) |
| 12/16/2004 | 53 | DECLARATION of LARISSA G. NEFULDA Regarding plaintiff failure to meet and confer pursuant to Local Rule 16-2 filed by Defendants Midland Credit Management Inc, MRC Receivables Corp. (jp, ) (Entered: 12/17/2004) |
| 12/21/2004 | 55 | Plaintiff's 26(A)(3) Pretrial DISCLOSURES filed by Plaintiff Darren Del Nero (shb, ) (Entered: 12/27/2004) |
| 12/22/2004 | 54 | Substitution of Attorney filed. Substituting attorney Joshua B Swigart for plaintiff Darren Del Nero in place and stead of Darren Del Nero as pro per by Judge George P. Schiavelli. (jp, ) (Entered: 12/22/2004) |
| 12/22/2004 | 57 | MEMORANDUM of CONTENTIONS of FACT and LAW filed by Plaintiff Darren Del Nero. (mch, ) (Entered: 12/29/2004) |
| 12/28/2004 | 56 | MINUTES OF IN CHAMBERS ORDER by Judge George P. Schiavelli :, Set Deadlines/Hearings: Jury Trial set for 1/18/2005 08:30 AM before Honorable George P. Schiavelli.Court Reporter: Not Present. (shb, ) (Entered: 12/29/2004) |
| 12/28/2004 | 58 | NOTICE OF DISCREPANCY AND ORDER: by Judge George P. Schiavelli, ORDERING substitution of attorney submitted by Plaintiff Darren Del Nero received on 12/23/04 is not to be filed but instead rejected. Denial based on: lacking signature of party.(bp, ) (Entered: 01/05/2005) |
| 01/03/2005 | 59 | MINUTES: Pretrial Conference. Counsel are ordered to file their pretrial documents five days before trial, including motions in limine. Trial is set for 1/18/05 as a 3-4 day trial. Judge George P. Schiavelli :Court Reporter: Rosalyn Adams. (bp, ) (Entered: 01/07/2005) |
| 01/10/2005 | 80 | FINAL PRETRIAL CONFERENCE ORDER by Judge George P. Schiavelli,(ca, ) (Entered: 01/21/2005) |
| 01/13/2005 | 60 | PROPOSED JURY INSTRUCTIONS filed by Defendants Midland Credit Management Inc, MRC Receivables Corp.. (shb, ) (Entered: 01/14/2005) |
| 01/13/2005 | 61 | Defendants Midland Credit Management, Inc and MRC Receivables Corporation's REQUEST for VOIR DIRE QUESTIONS filed by Defendants Midland Credit Management Inc, MRC Receivables Corp. (shb, ) (Entered: 01/14/2005) |
| 01/13/2005 | 62 | PROPOSED JURY INSTRUCTIONS filed by Plaintiff Darren Del Nero.(shb, ) (Entered: 01/14/2005) |

| 01/13/2005 | 63 | Defendants Midland Credit Management Inc and MRC Receivables Corporation's NOTICE OF MOTION AND MOTION IN LIMINE to Preclude Reference to and exclusing evidence of Nicole Shaker as a plaintiff and/or party in this lawsuit filed by Defendants Midland Credit Management Inc, MRC Receivables Corp.(shb, ) (Entered: 01/14/2005) |
|---|---|---|
| 01/13/2005 | 64 | Defendants Midland Credit Management Inc and MRC Receivables Corporation's NOTICE OF MOTION AND MOTION IN LIMINE to Preclude Reference to Settlement between Defendants and Nicole Shaker filed by Defendants Midland Credit Management Inc, MRC Receivables Corp.(shb, ) (Entered: 01/14/2005) |
| 01/13/2005 | 65 | Defendants Midland Credit Management, Inc and MRC Receivables Corporation's NOTICE OF MOTION AND MOTION IN LIMINE to Preclude Damages in Excess of $1,000 per action, not violation filed by Defendants Midland Credit Management Inc, MRC Receivables Corp.(shb, ) (Entered: 01/14/2005) |
| 01/14/2005 | 66 | Amended Witness List filed by defendants' Midland Credit Management Inc, MRC Receivables Corp.. (bp, ) (Entered: 01/18/2005) |
| 01/14/2005 | 67 | Amended Exhibit List filed by defendants Midland Credit Management Inc, MRC Receivables Corp.. (bp, ) (Entered: 01/18/2005) |
| 01/14/2005 | 68 | JOINT JURY INSTRUCTIONS filed by defendants' Midland Credit Management Inc, MRC Receivables Corp.. (bp, ) (Entered: 01/18/2005) |
| 01/14/2005 | 69 | PROPOSED JURY INSTRUCTIONS filed by plaintiff Darren Del Nero.. (bp, ) (Entered: 01/19/2005) |
| 01/14/2005 | 70 | NOTICE OF MOTION AND MOTION IN LIMINE 1 to Exclude impermissible character evidence of plaintiff at trial filed by plaintiff Darren Del Nero.(bp, ) (Entered: 01/19/2005) |
| 01/14/2005 | 71 | NOTICE OF MOTION AND MOTION IN LIMINE 2 to Exclude impermissible character evidencr of plaintiff at trial filed by plaintiff Darren Del Nero.(bp, ) (Entered: 01/19/2005) |
| 01/14/2005 | 72 | VERDICT SHEET filed by plaintiff Darren Del Nero. (bp, ) (Entered: 01/19/2005) |
| 01/14/2005 | 73 | TRIAL BRIEF filed by plaintiff Darren Del Nero.. (bp, ) (Entered: 01/19/2005) |
| 01/14/2005 | 74 | REQUEST FOR JURY QUESTIONNAIRE filed by plaintiff Darren Del Nero.. (bp, ) (Entered: 01/19/2005) |
| 01/14/2005 | 75 | REQUEST FOR VOIR DIRE QUESTIONS filed by plaintiff Darren Del Nero.. (bp, ) (Entered: 01/19/2005) |
| 01/18/2005 | 76 | OPPOSITION to MOTION IN LIMINE to Preclude Reference to and exclusing evidence of Nicole Shaker as a plaintiff and/or party in this lawsuit 63 filed by defendants' Midland Credit Management Inc, MRC Receivables Corp. (bp, ) (Entered: 01/20/2005) |
| 01/18/2005 | 77 | OPPOSITION to plaintiff Darren Del Nero's motion in limine to preclude reference to the availability of attorneys fees filed by defendants' Midland Credit Management Inc, MRC Receivables Corp. (bp, ) (Entered: 01/20/2005) |
| 01/18/2005 | 78 | NOTICE of request for disclosure of information obtained by plaintiffs' counsel's improper contact with defendants filed by defendants Midland Credit Management Inc, MRC Receivables Corp. (bp, ) (Entered: 01/20/2005) |

| 01/18/2005 | 79 | MINUTES: Jury Trial. Matter not called on calendar. The jury trial is hereby continued to 3/5/05 at 8:30 a.m. Court Reporter: Not present. (bp, ) (Entered: 01/21/2005) |
|---|---|---|
| 01/18/2005 | 81 | MINUTES: Jury Trial. Matter not called on calendar. The jury trial is hereby continued to 3/15/05 at 8:30 a.m. Judge George P. Schiavelli.Court Reporter: Not present. (bp, ) (Entered: 01/26/2005) |
| 02/02/2005 | 82 | NOTICE OF DISCREPANCY AND ORDER: by Judge George P. Schiavelli, ORDERING jointly submitted jury instructions submitted by Plaintiff Darren Del Nero received on 1/15/05 is not to be filed but instead rejected. Denial based on: document lacking signature of plaintiff.(bp, ) (Entered: 02/03/2005) |
| 02/03/2005 | 83 | NOTICE OF DISCREPANCY AND ORDER: by Judge George P. Schiavelli, ORDERING plaintiffs amended witness list submitted by Plaintiff Darren Del Nero received on 1/25/05 is not to be filed but instead rejected. Denial based on: no proof of service attached to document.(bp, ) (Entered: 02/10/2005) |
| 02/03/2005 | 84 | NOTICE OF DISCREPANCY AND ORDER: by Judge George P. Schiavelli, ORDERING plaintiffs amended exhibit list submitted by Plaintiff Darren Del Nero received on 2/3/05 is not to be filed but instead rejected. Denial based on: no proof of service attached to document.(bp, ) (Entered: 02/10/2005) |
| 02/03/2005 | 85 | Amended Exhibit List filed by plaintiff Darren Del Nero.. (bp, ) (Entered: 02/28/2005) |
| 02/24/2005 | 203 | AMENDED DOCUMENT filed by Defendants Midland Credit Management Inc, MRC Receivables Corp. Amendment to Witness List 48 (bp, ) (Entered: 03/16/2007) |
| 02/25/2005 | 86 | Amended Witness List filed by plaintiff Darren Del Nero.. (bp, ) (Entered: 02/28/2005) |
| 03/08/2005 | | PLACED IN FILE - NOT USED re proposed judgment submitted by defendant Midland Credit Management Inc. (bp, ) (Entered: 03/10/2005) |
| 03/08/2005 | | PLACED IN FILE - NOT USED re separate statement of uncontroverted material facts and conclusions of law submitted by defendants' Midland Credit Management Inc. (bp, ) (Entered: 03/10/2005) |
| 03/14/2005 | 87 | NOTICE OF MOTION AND MOTION IN LIMINE to Preclude all evidence obtained as the result of plaintiff's improper ex parte application communications filed by defendants' Midland Credit Management Inc, MRC Receivables Corp.(bp, ) (Entered: 03/15/2005) |
| 03/14/2005 | 88 | SUPPLEMENTAL OPPOSITION to plaintiff Daren Del Nero's motion in limine to exclude evidence of and preclude reference to lawsuits involving plaintiff filed by defendants Midland Credit Management Inc, MRC Receivables Corp. (bp, ) (Entered: 03/15/2005) |
| 03/14/2005 | 89 | REQUEST FOR JUDICIAL NOTICE filed by defendants' Midland Credit Management Inc, MRC Receivables Corp. (bp, ) (Entered: 03/15/2005) |
| 03/15/2005 | 90 | OPPOSITION to defendants' request for dislcosure of information filed by Plaintiff Darren Del Nero. (bp, ) (Entered: 03/16/2005) |
| 03/15/2005 | 92 | MINUTES: Jury Trial - 1st Day. Opening statements made by plaintiff and defendant. Witnesses called, sworn and testified. Exhibits identified, exhibits admitted. Case continued to 3/16/05 at 9:00 a.m. for further trial. Report to court regarding emails sent by plaintiff Darren Del Nero, filed 3/15/05, order filed under seal. Judge George P. Schiavelli.Court Reporter: Rosalyn Adams. (bp, ) (Entered: 03/18/2005) |

| 03/16/2005 | 91 | MINUTES: Order to Show Cause re Contempt. Court issues OSC re contempt to Ms. Vania Chaker in regard to her attempt to aid the witnesses in answering counsel's questions. Ms. Chaker's response is due 3/18/05. Ms. Chaker is ORDERED to appear at 9:00 a.m. on March 22, 2005. It is also ORDERED that Ms. Chaker may not be present in court for the remainder of this trial. Judge George P. Schiavelli.Court Reporter: Rosalyn Adams. (bp, ) (Entered: 03/17/2005) |
|---|---|---|
| 03/16/2005 | 94 | MINUTES: Jury Trial - 2nd Day. Witnesses called, sworn and testified. Exhibits identified. Mr. Turner resumes cross examination of Nicole Shaker. Court issues OSC re contempt to Ms. Vania Chaker in regard to her attempt to aid the witness in answering questions of counsel. Response due 3/18/05. Ms. Chaker Ordered to appear at 9:00 a.m. on 3/22/05. It is also Ordered that Ms. Chaker may not be present in court for the remainder of this trial. Judge George P. Schiavelli.Court Reporter: Rosalyn Adams. (bp, ) (Entered: 03/18/2005) |
| 03/16/2005 | 95 | JOINTLY SUBMITTED JURY INSTRUCTIONS filed by defendants' Midland Credit Management Inc, MRC Receivables Corp.. (bp, ) (Entered: 03/18/2005) |
| 03/16/2005 | 96 | PROPOSED JURY INSTRUCTIONS filed by defendants' Midland Credit Management Inc, MRC Receivables Corp.. (bp, ) (Entered: 03/18/2005) |
| 03/16/2005 | 97 | PROPOSED JURY INSTRUCTIONS filed by plaintiff Darren Del Nero.. (bp, ) (Entered: 03/18/2005) |
| 03/17/2005 | 98 | MEMORANDUM of Points and Authorities in Support of plaintiff's proposed jury instructions filed by plaintiff Darren Del Nero. 97 (bp, ) (Entered: 03/22/2005) |
| 03/17/2005 | 99 | NOTICE of arguments in support of jury instructions filed by defendants' Midland Credit Management Inc, MRC Receivables Corp. (bp, ) (Entered: 03/22/2005) |
| 03/17/2005 | 101 | MINUTES: Jury Trial - 3rd Day. Case continued to 3/22/05 at 9:00 a.m. for further trial. Judge George P. Schiavelli Court Reporter: Rosalyn Adams. (bp, ) (Entered: 03/23/2005) |
| 03/18/2005 | | PLACED IN FILE - NOT USED re motion to withdrawa as counsel of record submitted by plaintiff Darren Del Nero. (bp, ) (Entered: 03/28/2005) |
| 03/18/2005 | | PLACED IN FILE - NOT USED re proof of service submitted by plaintiff Darren Del Nero. (bp, ) (Entered: 03/28/2005) |
| 03/22/2005 | 100 | MINUTES: Vania Chaker present and addresses court. A response was delivered to the court, but not filed. The court orders Ms. Chaker to file a response not later than 3/25/05. A further hearing is set for 4/12/05 at 9:00 a.m. Judge George P. Schiavelli.Court Reporter: Rosalyn Adams. (bp, ) (Entered: 03/23/2005) |
| 03/22/2005 | 102 | RECEIPT OF REPORTERS TRANSCRIPT of proceedings for the following dates: 03/16/05 Court Reporter: Rosalyn Adams. (cbr, ) (Entered: 03/23/2005) |
| 03/22/2005 | 103 | TRANSCRIPT filed for proceedings held on 03/16/05. Court Reporter: Rosalyn Adams. (cbr, ) (Entered: 03/23/2005) |
| 03/22/2005 | 112 | MINUTES: Jury Trial - 4th Day. Witnesses called, sworn and testified. Exhibits identified and admitted. Plaintiff rests. Case continued to 3/23/05 at 9:00 a.m. Upom motion fo counsel and with the agreement of plaintiff and defendant, court dismisses jury and agrees to proceed with bench trial, due to plaintiff's disregard of court's rulings regarding motion in limine. Nicole |

| | | |
|---|---|---|
| | | Chaker is ordered to return 9 am on 3/23/05 held before Judge George P. Schiavelli .Court Reporter: Rosalyn Adams. (bp, ) (Entered: 03/31/2005) |
| 03/23/2005 | 104 | NOTICE OF MOTION AND MOTION for Judgment on partial findings as to plaintiff's cause of action for violation of California business and professions code section 17200 filed by defendants' Midland Credit Management Inc, MRC Receivables Corp. (bp, ) (Entered: 03/24/2005) |
| 03/23/2005 | 105 | NOTICE OF MOTION AND MOTION for Judgment on partial findings as to MRC receivables corporation filed by defendant Midland Credit Management Inc, MRC Receivables Corp. (bp, ) (Entered: 03/24/2005) |
| 03/23/2005 | 106 | NOTICE OF MOTION AND MOTION for Judgment on partial findings as to plaintiff's cause of action for violation of 15 USC 1692e(5) filed by defendants' Midland Credit Management Inc, MRC Receivables Corp. (bp, ) (Entered: 03/24/2005) |
| 03/23/2005 | 107 | NOTICE OF MOTION AND MOTION for Judgment on partial findings as to plaintiff's cause of action for violation of 15 USC 1692e(8) filed by defendants' Midland Credit Management Inc, MRC Receivables Corp. (bp, ) (Entered: 03/24/2005) |
| 03/23/2005 | 108 | MEMORANDUM of Points and Authorities in Support of plaintiff's claims for violations of the Fair Debt Collection Practices Act filed by plaintiff Darren Del Nero. (bp, ) (Entered: 03/25/2005) |
| 03/23/2005 | 113 | MINUTES: Jury Trial - 5th Day. Witnesses called, sworn and testified. Exhibits identified and admitted. Case continued to 3/24/05 at 9:00 a.m. for further trial. Judge George P. Schiavelli .Court Reporter: Rosalyn Adams. (bp, ) (Entered: 03/31/2005) |
| 03/24/2005 | 109 | MINUTES: Court Trial (6th Day). Witnesses called, sworn and testified. Exhibits identified. Exhibits admitted. Plaintiff rest, defendant rest. Case submitted. Briefs to be filed by both sides by 4/8/05 not to exceed 30 pages; response due 4/15/05 not to exceed 15 pages. All pleadings to be filed and faxed served. Judge George P. Schiavelli :Court Reporter: Rosalyn Adams. (bp, ) (Entered: 03/25/2005) |
| 03/24/2005 | 204 | JOINT Exhibit List. (bp, ) (Entered: 03/16/2007) |
| 03/29/2005 | 110 | NOTICE OF CLERICAL ERROR: Due to clerical error Re: JOINT MEMORANDUM by Plaintiffs Opposing Defendants MOTION for Summary Judgment or Summary Adjudication AND MOTION for to STRIKE part of Declaration attached to Defendants Motion; Declaration of Plaintiffs Darren Del Nero and Nicole Shaker and Counsel Vania M Chaker and Robert Stempler filed by Plaintiffs Darren Del Nero and Nicole Shaker 28 THIS DOCUMENT WAS DOCKETED USING AN INCORRECT DOCKET EVENT. IT HAS BEEN RE-DOCKETED AND THIS MOTION HAS BEEN MOOTED. (shb, ) (Entered: 03/29/2005) |
| 04/12/2005 | 114 | STIPULATION AND ORDER continuing the 4/8/05 deadline to file and serve closing statements to 4/13/05 and the 4/15/05 deadline to file and serve rebuttal statements to 4/20/05 by Judge George P. Schiavelli :(bp, ) (Entered: 04/13/2005) |
| 04/13/2005 | 116 | NOTICE: Closing argument filed by defendants' Midland Credit Management Inc. (bp, ) (Entered: 04/15/2005) |
| 04/13/2005 | 117 | NOTICE of plaintiff's closing argument filed by plaintiff Darren Del Nero. (bp, ) (Entered: 04/18/2005) |

| 04/14/2005 | 115 | MINUTES: The hearing on the order to show cause is continued to 4/26/05 at 9:00 a.m. Ms. Chaker is Ordered to be present at that time. Ms. Chaker is ordered to file her response not later than 4/22/05. The court declines to file any documents under seal. Judge George P. Schiavelli.Court Reporter: Not present. (bp, ) (Entered: 04/15/2005) |
| --- | --- | --- |
| 04/19/2005 | 118 | STATEMENT in reply to plaintiff's closing argument filed by Defendant Midland Credit Management Inc (bp, ) (Entered: 04/20/2005) |
| 04/19/2005 | 119 | NOTICE of Rebuttal Argument filed by plaintiff Darren Del Nero. (bp, ) (Entered: 04/21/2005) |
| 04/26/2005 | 120 | MINUTES: Ms. Chaker was specifically told when she called chambers on 4/22/05, that the court would not accept a late filing of her response. Therefore, an order to show cause re failure to respond timely is hereby issued. The matter is set for hearing, along with the order to show cause re contempt, on 5/10/05 at 9:00 a.m. Ms. Chaker is ordered to be present at that time. Ms. Chaker is ordered to file her response to the OSC re failure to respond not later than 5/4/05. Judge George P. Schiavelli.Court Reporter: Not present. (bp, ) (Entered: 04/28/2005) |
| 04/26/2005 | 121 | RESPONSE of Vania M. Chaker filed by Plaintiff Darren Del Nero to order to show cause 115 (bp, ) (Entered: 04/28/2005) |
| 04/26/2005 | 122 | NOTICE OF DOCUMENT DISCREPANCIES AND ORDER by Judge George P. Schiavelli ORDERING response to order to show cause submitted by Vania Shaker received on 4/25/05 to be filed and processed; filed date to be the date the document was stamped Received but not Filed with the Clerk.(bp, ) (Entered: 04/28/2005) |
| 05/04/2005 | 123 | RESPONSE filed by Plaintiff Darren Del Nero to Order to Show Cause 122 (bp, ) (Entered: 05/06/2005) |
| 05/04/2005 | 124 | RECEIPT OF REPORTERS TRANSCRIPT of proceedings for the following dates: 3/22/05 Court Reporter: Rosalyn Adams. (nm, ) (Entered: 05/06/2005) |
| 05/04/2005 | 125 | TRANSCRIPT filed for proceedings held on 3/22/05. Court Reporter: Rosalyn Adams. (nm, ) (Entered: 05/06/2005) |
| 05/10/2005 | 127 | MINUTES: Order To Show Cause re Failure to Respond Timely. At the request of Ms. Chaker the court permits the substitution of John Leo Wagner as Ms. Chaker's attorney of record. Mr. Wagner shall file a notice of substitution not later than 5/17/05. Court hears argument. Court orders that certain portions of document 123 be excised and the excised version of said document be substituted in the public file. Ms. Chaker is ordered to pay sanctions for failure to timely respond to the U.S. District Court in the amount of $200.00 Said amount is due within ten days. Judge George P. Schiavelli :Court Reporter: Rosalyn Adams. (bp, ) (Entered: 05/12/2005) |
| 05/16/2005 | 128 | NOTICE that John Leo Wagner, of the Wagner Law Firm, P.C., has been substituted as counsel of record for Vania Chaker, a non-party who has heretofore been proceeding pro se. Filed by movant Vania Chaker. (bp, ) (Entered: 05/19/2005) |
| 05/16/2005 | 130 | NOTICE OF MOTION AND MOTION for sealing certain records filed by plaintiff Darren Del Nero. Motion set for hearing on 6/20/2005 at 01:30 PM before Honorable George P. Schiavelli. Lodged lodged proposed order. (bp, ) (Entered: 05/19/2005) |
| 05/16/2005 | 131 | MEMORANDUM of Points and Authorities in Support of MOTION to Seal 130 filed by plaintiff Darren Del Nero. (bp, ) (Entered: 05/19/2005) |

| 05/17/2005 | 129 | NOTICE of excised document pursuant to court order filed by movant Vania Chaker. (bp, ) (Entered: 05/19/2005) |
| 05/26/2005 | | PLACED IN FILE - NOT USED re notice of motion for sealing certain records submitted by plaintiff Darren Del Nero. (bp, ) (Entered: 05/27/2005) |
| 05/26/2005 | | PLACED IN FILE - NOT USED re notice of motion for sealing certain records submitted by plaintiff Darren Del Nero. (bp, ) (Entered: 05/27/2005) |
| 05/26/2005 | | FINANCIAL ENTRY Re: Received $200.00 payment for sanctions from Vanie Chaker (Plaintiffs attorney) per minute order dtd 5/10/05 (yl, ) (Entered: 07/05/2005) |
| 06/15/2005 | 132 | MINUTES: The court, on its own motion, hereby advises counsel that the above-referenced motion set for hearing on 6/20/05 at 1:30 p.m. is UNDER SUBMISSION as of that date and taken off the motion calendar. Furthermore, no appearance by counsel is necessary unless ordered and the court will issue a ruling after full consideration of the submitted pleadings by Judge George P. Schiavelli : Court Reporter: not present. (bp, ) (Entered: 06/15/2005) |
| 07/06/2005 | 133 | MINUTES OF IN CHAMBERS ORDER by Judge George P. Schiavelli : On 6/15/2005, the Court took Plaintiff's Motion for Sealing Certain Records under submission. Plaintiff has moved to seal certain records that were introduced into evidence during trial (see document for details). Accordingly, the court finds that it is unecessary to seal the documents. The Court also finds the Motion deficient because plaintiff has failed to identify the records which he wishes to seal with any specificity and has failed to proved sealed copies of any documents that he proposes to seal. Accordingly, the motion is DENIED. (yl, ) (Entered: 07/06/2005) |
| 07/11/2005 | | PLACED IN FILE - NOT USED re proposed order submitted by plaintiff Darren Del Nero. (bp, ) (Entered: 07/14/2005) |
| 08/26/2005 | 134 | NOTICE of joint request for decision pursuant to L.R. 83-9.2 filed by plaintiff Darren Del Nero. (bp, ) (Entered: 08/31/2005) |
| 02/22/2006 | 135 | MINUTES: After a court trial and closing and rebuttal arguments submitted in writing, this matter was submitted to the court for decision. The court hereby rules in favor of defendants on all claims, and orders defendants to file proposed findings of fact and conclusions of law not later than 3/27/06. Said findings and conclusions shall be also submitted on a disk in WordPerfect. Judge George P. Schiavelli : Court Reporter: Not present. (bp, ) (Entered: 02/22/2006) |
| 03/24/2006 | 136 | STIPULATION for Extension of Time the time period within which defendant may complete the finding of fact and law filed by defendants' Midland Credit Management Inc, MRC Receivables Corp. Lodged proposed order. (bp, ) (Entered: 03/27/2006) |
| 03/29/2006 | 137 | ORDER: Based upon the facts, and good cause having been shown, the court hereby grans the stipulation to extend the time period from 3/27/06 to 4/4/06 within which defendant Midland Credit Management, Inc., may complete the findings of fact and law by Judge George P. Schiavelli,(bp, ) (Entered: 03/30/2006) |
| 04/07/2006 | 138 | MEMORANDUM of Law in opposition to defendant's proposed findings of fact and conclusions of law filed by plaintiff Darren Del Nero. (bp, ) (Entered: 04/17/2006) |
| 04/27/2006 | 139 | REPLY to plaintiff's memorandum of law in opposition to defendants proposed findings of fact and conclusions of law filed by Defendants Midland Credit Management Inc, MRC Receivables Corp (bp, ) (Entered: 04/28/2006) |

| 06/20/2006 | 140 | EX PARTE APPLICATION for sanctions against plaintiff Darren Del Nero for bad faith conduct by sending emails threatening physical harm upon defendants, their counsel and their counsel's families filed by defendants' Midland Credit Management Inc, MRC Receivables Corp. (bp, ) (Entered: 06/21/2006) |
|---|---|---|
| 06/21/2006 | 141 | OPPOSITION to EX PARTE APPLICATION for Order for for sanctions against plaintiff Darren Del Nero for bad faith conduct by sending emails threatening physical harm upon defendants, their counsel and their counsel's families 140 filed by plaintiff Darren Del Nero. (bp, ) (Entered: 06/28/2006) |
| 06/26/2006 | 142 | REPLY to plaintiff's opposition to EX PARTE APPLICATION for Order for for sanctions against plaintiff Darren Del Nero for bad faith conduct by sending emails threatening physical harm upon defendants, their counsel and their counsel's families 140 filed by defendants' Midland Credit Management Inc, MRC Receivables Corp. (bp, ) (Entered: 06/30/2006) |
| 07/07/2006 | 143 | MINUTES: The court has considered defendants' ex parte application, and all papers filed in support of and in opposition thereto. The application is DENIED WITHOUT PREJUDICE. Judge George P. Schiavelli :Court Reporter: Not present. (bp, ) (Entered: 07/10/2006) |
| 07/11/2006 | 144 | FINDINGS OF FACT AND CONCLUSIONS OF LAW signed by George P. Schiavelli.(bp, ) (Entered: 07/12/2006) |
| 07/11/2006 | 145 | JUDGMENT: IT IS HEREBY ORDERED, ADJUDGED AND DECREED that plaintiff shall take nothing and judgment is hereby entered for defendants on all claims for relief by Judge George P. Schiavelli, (MD JS-6, Case Terminated).(bp, ) (Entered: 07/12/2006) |
| 07/21/2006 | 146 | EX PARTE APPLICATION for Order for an order continuing the 7/26/06 deadline for defendants to file a notice of application to the clerk to tax costs, bill of costs, and a motion for attorney's fees filed by defendants' Midland Credit Management Inc, MRC Receivables Corp. Lodged proposed order. (bp, ) (Entered: 07/25/2006) |
| 07/24/2006 | 147 | MEMORANDUM of Law in in Opposition to EX PARTE APPLICATION for Order for an order continuing the 7/26/06 deadline for defendants to file a notice of application to the clerk to tax costs, bill of costs, and a motion for attorney's fees 146 filed by plaintiff Darren Del Nero. (bp, ) (Entered: 07/25/2006) |
| 07/24/2006 | 154 | REPLY to plaintiff Darren Del Nero's opposition to EX PARTE APPLICATION for Order for an order continuing the 7/26/06 deadline for defendants to file a notice of application to the clerk to tax costs, bill of costs, and a motion for attorney's fees 146 filed by defendants' Midland Credit Management Inc, MRC Receivables Corp. (bp, ) (Entered: 08/03/2006) |
| 07/25/2006 | 148 | STIPULATION AND ORDER agreeing to continue the 7/21/06 deadline for defendant's Midland Credit Management, Inc. and MRC Recievables Corporation to file a notice of application to the clerk to tax costs, bill of costs and a motion for attorney's fees against plaintiff, for twenty (20) days, or 8/10/06 by Judge George P. Schiavelli :(bp, ) (Entered: 07/25/2006) |
| 07/26/2006 | 149 | APPLICATION to Tax Costs Darren Del Nero filed by defendants' Midland Credit Management Inc, MRC Receivables Corp. Application set for hearing on 8/10/2006 at 10:00 AM before Clerk of Court. Lodged proposed bill of costs. (bp, ) (Entered: 07/27/2006) |
| 07/26/2006 | 150 | NOTICE OF MOTION AND MOTION for Attorney Fees and related non-taxable costs filed by defendants' Midland Credit Management Inc, MRC Receivables Corp. Motion set for |

| | | hearing on 8/21/2006 at 01:30 PM before Judge George P. Schiavelli. (bp, ) (Entered: 07/27/2006) |
|---|---|---|
| 07/26/2006 | 151 | DECLARATION of Stephen H. Turner in support of MOTION for Attorney Fees 150 filed by defendants' Midland Credit Management Inc, MRC Receivables Corp. (bp, ) (Entered: 07/27/2006) |
| 07/26/2006 | 152 | REQUEST FOR JUDICAL NOTICE IN SUPPORT OF MOTION for Attorney Fees 150 filed by defendants' Midland Credit Management Inc, MRC Receivables Corp. (bp, ) (Entered: 07/27/2006) |
| 07/27/2006 | 153 | MINUTES: Ex parte application. The court has considered defendants' ex parte application, and all papers filed in support of and in opposition thereto. The court has serious concerns about the manner in which the stipulation previously signed by the court may have been handled. For this reason, and for good cause shown, the order on that stipulation is hereby VACATED, and the ex parte application is GRANTED. The deadline for defendants to file a notice of application to the clerk to tax costs, a bill of costs, and motion for attorney's fees is extended to 8/10/06. Judge George P. Schiavelli :Court Reporter: Not present. (bp, ) (Entered: 07/28/2006) |
| 08/07/2006 | 156 | OPPOSITION to MOTION for Attorney Fees 150 filed by plaintiff Darren Del Nero. (bp, ) (Entered: 08/11/2006) |
| 08/08/2006 | 155 | Notice of Withdrawal of MOTION for Attorney Fees 150 filed by defendants' Midland Credit Management Inc. (bp, ) (Entered: 08/10/2006) |
| 08/10/2006 | 157 | NOTICE OF MOTION AND MOTION for Attorney Fees, MOTION for Costs filed by defendants' Midland Credit Management Inc, MRC Receivables Corp. Motion set for hearing on 9/18/2006 at 01:30 PM before Judge George P. Schiavelli. (bp, ) (Entered: 08/11/2006) |
| 08/10/2006 | 158 | REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION for Attorney Fees MOTION for Costs 157 filed by defendants' Midland Credit Management Inc, MRC Receivables Corp. (bp, ) (Entered: 08/11/2006) |
| 08/10/2006 | 159 | DECLARATION of Keith Wier, esq. in support of defendants' motion for attorneys' fees and related non-taxable costs 157 filed by defendants' Midland Credit Management Inc, MRC Receivables Corp. (bp, ) (Entered: 08/11/2006) |
| 08/10/2006 | 160 | DECLARATION of Stephen H. Turner in support of MOTION for Attorney Fees MOTION for Costs 157 filed by defendants' Midland Credit Management Inc, MRC Receivables Corp. (bp, ) (Entered: 08/11/2006) |
| 09/01/2006 | 161 | MEMORANDUM of points and authorities in Opposition to MOTION for Attorney Fees MOTION for Costs 157 filed by plaintiff Darren Del Nero. (bp, ) (Entered: 09/05/2006) |
| 09/05/2006 | 162 | MEMORANDUM of Points and Authorities in Opposition to MOTION for Attorney Fees 150 filed by plaintiff Darren Del Nero. (bp, ) (Entered: 09/06/2006) |
| 09/11/2006 | 163 | REPLY to defendants' MOTION for Attorney Fees MOTION for Costs 157 filed by defendants' Midland Credit Management Inc, MRC Receivables Corp. (bp, ) (Entered: 09/13/2006) |
| 09/11/2006 | 164 | EVIDENTIARY OBJECTIONS to declaration of Joshua B. Swigart filed by Defendants Midland Credit Management Inc, MRC Receivables Corp. (bp, ) (Entered: 09/14/2006) |

| 09/11/2006 | 165 | OBJECTIONS to the declaration of David J. McGlothin filed by Defendants Midland Credit Management Inc, MRC Receivables Corp. (bp, ) (Entered: 09/14/2006) |
|---|---|---|
| 09/11/2006 | 166 | DECLARATION of Stephen H. Turner filed in support of plaintiff's MOTION for Attorney Fees MOTION for Costs 157 filed by defendants' Midland Credit Management Inc, MRC Receivables Corp. (bp, ) (Entered: 09/14/2006) |
| 09/12/2006 | 171 | NOTICE OF DISCREPANCY AND ORDER: by Judge George P. Schiavelli, ORDERING request for approval of substitution of attorney submitted by Defendant Midland Credit Management Inc received on 9/11/06 is not to be filed but instead rejected. Denial based on: no order of substitution.(bp, ) (Entered: 09/18/2006) |
| 09/13/2006 | 167 | REQUEST to Substitute attorney John R. Feliton in place of attorney Carlson Messer and Turner filed by defendant Midland Credit Management Inc. Lodged proposed order. (bp, ) (Entered: 09/15/2006) |
| 09/13/2006 | 168 | REQUEST to Substitute attorney John R. Feliton in place of attorney Carlson Messer and Turner filed by defendant MRC Receivables Corp. Lodged proposed order. (bp, ) (Entered: 09/15/2006) |
| 09/14/2006 | 170 | DECLARATION of Darren Del Nero filed by Plaintiff Darren Del Nero. (bp, ) (Entered: 09/18/2006) |
| 09/15/2006 | 169 | MINUTES: Defendants' motion for attorney fees and non-taxable costs. The above entitled motion is hereby continued for hearing from 9/18/06 at 1:30 p.m. to 10/2/06 at 1:30 p.m. Judge George P. Schiavelli 157 . Court Reporter: Not present. (bp, ) (Entered: 09/15/2006) |
| 09/18/2006 | 172 | Substitution of Attorney filed. Substituting attorney John R Feliton, Jr for MRC Receivables Corp in place and stead of attorney Corinne de Rama Deveza and Stephen H Turner by Judge George P. Schiavelli.(bp, ) (Entered: 09/19/2006) |
| 09/18/2006 | 173 | Substitution of Attorney filed. Substituting attorney John R Feliton, Jr for Midland Credit Management Inc in place and stead of attorney Corinne de Rama Deveza and Stephen H Turner by Judge George P. Schiavelli.(bp, ) (Entered: 09/19/2006) |
| 09/19/2006 | 175 | SUPPLEMENTAL POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO MOTION for Attorney Fees 150 filed by plaintiff Darren Del Nero. (bp, ) (Entered: 09/22/2006) |
| 09/20/2006 | 174 | NOTICE of Change of Attorney Information: changing address to 411 Camino Del Rio South, Suite 301, San Diego, CA 92108 for attorney Joshua B Swigart. Filed by plaintiff Darren Del Nero (bb, ) (Entered: 09/21/2006) |
| 09/26/2006 | 177 | RESPONSE to supplemental points and authorities filed by plaintiff and plaintiffs' counsel in opposition to MOTION for Attorney Fees MOTION for Costs 157 filed by defendants' Midland Credit Management Inc, MRC Receivables Corp. (bp, ) (Entered: 09/28/2006) |
| 09/27/2006 | 176 | MINUTES: The hearing on defendants' motion for attorneys' fees is hereby continued from 10/2/06 to 11!306 at 1:30 p.m. Judge George P. Schiavelli 157 . Court Reporter: Not present. (bp, ) (Entered: 09/28/2006) |
| 10/05/2006 | 178 | NOTICE of continuance of hearing for motion to tax costs filed by defendant Midland Credit Management Inc, MRC Receivables Corp. (bp, ) (Entered: 10/10/2006) |
| 10/19/2006 | 179 | NOTICE of clarification of notice regarding hearing on cost bill and defendants' motion for |

| | | attorneys' fees and costs filed by defendants' Midland Credit Management Inc, MRC Receivables Corp. (bp, ) (Entered: 10/24/2006) |
|---|---|---|
| 11/03/2006 | 180 | NOTICE of Change of Attorney Information: Attorney John R. Feliton will no longer receive service of documents from the Clerks Office for the reason indicated in the G-06 Notice; adding Stephen H. Turner as attorney of record for Midland Credit Management, Inc. and MRC Receivables Corp. Filed by defendant Midland Credit Management Inc, MRC Receivables Corp (stsh, ) (Entered: 11/06/2006) |
| 11/06/2006 | 181 | DECLARATION of Stephen H. Turner regarding the filing of an amended declaration of Stephen H. Turner in support of defendants' MOTION for Attorney Fees MOTION for Costs 157 filed by defendants' Midland Credit Management Inc, MRC Receivables Corp. (bp, ) (Entered: 11/07/2006) |
| 11/13/2006 | 182 | MINUTES: Defendants' Midland's motion for attorneys' fees and related non-taxable costs; request for judicial notice. On the court's own motion, the above entitled matter is hereby continued for hearing from 11/13/06 at 1:30 p.m. Judge George P. Schiavelli :, Set Deadlines as to MOTION for Attorney Fees MOTION for Costs 157 .Court Reporter: Not present. (bp, ) (Entered: 11/13/2006) |
| 11/27/2006 | 183 | MINUTES OF Motion Hearing held before Judge George P. Schiavelli: Court grants Defendants' Motion for Attorneys' Fees and Related Non-Taxable Costs 157 in the amount of $137,616.69 against Plaintiff Darren Del Nero. The Court is taking the issue of whether Plaintiff's counsel should be jointly and severally liable for these fees and costs under submission. Defendants' supplemental brief regarding the additional fees and costs it incurred in briefing the present motion is limited to ten pages and is due no later than 12/4/2006. Any opposition by Plaintiff is also limited to ten papges and is due 12/11/2006. Court Reporter: Rosalyn Adams. (gk, ) (Entered: 11/28/2006) |
| 12/01/2006 | 184 | DECLARATION of Robert L. Hyde in opposition MOTION for Attorney Fees MOTION for Costs 157 filed by plaintiff Darren Del Nero. (bp, ) (Entered: 12/08/2006) |
| 12/04/2006 | 185 | DECLARATION of Brian Slome in support of MOTION for Attorney Fees MOTION for Costs 157 filed by defendants' Midland Credit Management Inc, MRC Receivables Corp. (bp, ) (Entered: 12/14/2006) |
| 12/04/2006 | 186 | DECLARATION of Stephen H. Turner in support of MOTION for Attorney Fees MOTION for Costs 157 filed by defendants' Midland Credit Management Inc, MRC Receivables Corp. (bp, ) (Entered: 12/14/2006) |
| 12/11/2006 | 190 | OPPOSITION to additional fees and costs claimed by defendant in briefing defendants' MOTION for Attorney Fees MOTION for Costs 157 filed by plaintiff Darren Del Nero. (bp, ) (Entered: 12/20/2006) |
| 12/12/2006 | 187 | Report to court regarding receipt of additional anonymous e-mail messages filed by Defendants Midland Credit Management Inc, MRC Receivables Corp. (bp, ) (Entered: 12/19/2006) |
| 12/12/2006 | 188 | DECLARATION of Stephen H. Turner in response to supplemental declaration of Robert L. Hyde in opposition to defendants' motion for attorneys' fees and costs as to plaintiff's counsel 157 filed by defendants' Midland Credit Management Inc, MRC Receivables Corp. (bp, ) (Entered: 12/19/2006) |
| 12/12/2006 | 189 | RESPONSE to supplemental declaration of Robert L. Hyde in opposition to defendants' |

| | | MOTION for Attorney Fees MOTION for Costs 157 filed by defendants' Midland Credit Management Inc, MRC Receivables Corp. (bp, ) (Entered: 12/19/2006) |
|---|---|---|
| 12/14/2006 | 191 | NOTICE of errata re: response to supplemental declaration of Robert L. Hyde in opposition to defendants' motion for attorneys fees and costs as to plaintiff's counsel filed by defendants' Midland Credit Management Inc, MRC Receivables Corp. (bp, ) (Entered: 12/21/2006) |
| 12/18/2006 | 192 | DECLARATION of Robert L. Hyde in opposition to MOTION for Attorney Fees MOTION for Costs 157 filed by plaintiff Darren Del Nero. (bp, ) (Entered: 12/26/2006) |
| 02/20/2007 | 193 | ORDER Awarding Attorneys' Fees and Costs to Defendants. Defendants counsel are awarded a total of $155,979.09 in fees and costs, which includes the $137,616.69 originally awarded as well as the supplemental fees and costs of $18,362.40. Plaintiff, Darren Del Nero, is liable for this entire amount for bringing this Fair Debt Collection Practices Act cases in bad faith and for the purpose of harassment by Judge George P. Schiavelli,(bp, ) (Entered: 02/20/2007) |
| 03/01/2007 | 194 | NOTICE OF APPEAL to 9th CCA filed by Appellants Hyde and Swigart, Robert L. Hyde, Joshua B. Swigart. Appeal of Minutes, 183 , Filed On: 11/27/06, Entered On: 11/28/06; Order, 193 Filed On: 2/20/07; Entered On: 2/20/07; Forms Given: Transcripts Designation Ordering Form; Filing fee $450, Paid, Balance Due: $5.00, Receipt number 93649. cc: Joshua B. Swigart; Stephen H. Turner. (lr, ) Modified on 3/7/2007 (lr, ). (Entered: 03/07/2007) |
| 03/01/2007 | | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals; re: Appeal to Circuit Court, 194 (lr, ) (Entered: 03/07/2007) |
| 03/01/2007 | 199 | NOTICE OF MOTION AND MOTION to Alter or Amend the order that plaintiff's counsel is jointly and severally liable for to pay $155,979.09, to defendant 193 Order, filed by plaintiff Darren Del Nero. Motion set for hearing on 4/16/2007 at 01:30 PM before Judge George P. Schiavelli. (bp, ) (Entered: 03/14/2007) |
| 03/01/2007 | 200 | MEMORANDUM of Law in Support of MOTION to Amend/Correct 193 Order, 199 filed by plaintiff Darren Del Nero. (bp, ) (Entered: 03/14/2007) |
| 03/05/2007 | 195 | NOTICE OF MOTION AND MOTION of Joshua B.Swigart to Withdraw as Attorney filed by plaintiff Darren Del Nero. Motion set for hearing on 4/9/2007 at 01:30 PM before Judge George P. Schiavelli. (bp, ) (Entered: 03/09/2007) |
| 03/05/2007 | 196 | Points and Authorities in Support of MOTION of Joshua B.Swigart to Withdraw as Attorney 195 filed by plaintiff Darren Del Nero. (bp, ) (Entered: 03/09/2007) |
| 03/05/2007 | 197 | DECLARATION of Robert L. Hyde in support of MOTION of Joshua B.Swigart to Withdraw as Attorney 195 filed by plaintiff Darren Del Nero. (bp, ) (Entered: 03/09/2007) |
| 03/05/2007 | 198 | DECLARATION of Joshua B. Swigart in support of MOTION of Joshua B.Swigart to Withdraw as Attorney 195 filed by plaintiff Darren Del Nero. (bp, ) (Entered: 03/09/2007) |
| 03/09/2007 | 205 | OBJECTION to defendant's proposed judgment in favor of defendant filed by Plaintiff Darren Del Nero. (bp, ) (Entered: 03/22/2007) |
| 03/13/2007 | 202 | MINUTES OF IN CHAMBERS ORDER held before Judge George P. Schiavelli : Retention of Exhibits. Trial exhibits 25 through 41 are ordered retained by the court until the resolution of the appeal process.Court Reporter: Not present. (bp, ) (Entered: 03/16/2007) |
| 03/15/2007 | 201 | NOTIFICATION by Circuit Court of Appellate Docket Number 07-55326, 9th CCA regarding Appeal to Circuit Court, 194 . (lr, ) (Entered: 03/15/2007) |

| 03/15/2007 | | PLACED IN FILE - NOT USED re bill of costs submitted by defendant Midland Credit Management Inc. (bp, ) (Entered: 03/16/2007) |
|---|---|---|
| 03/26/2007 | 208 | NOTICE of non-opposition to Hyde & Swigart's motoin to withdraw as counsel filed by defendants' Midland Credit Management Inc, MRC Receivables Corp. (bp, ) (Entered: 04/05/2007) |
| 03/28/2007 | 206 | MINUTES OF IN CHAMBERS ORDER held before Judge George P. Schiavelli : Counsel for plaintiff Darren Del Nero filed a motion to withdraw as counsel on 3/5/07. In light of defendants' non-opposition, the motion to withdraw is GRANTED.Court Reporter: Not present. (bp, ) (Entered: 03/29/2007) |
| 03/28/2007 | 235 | In chambers ORDER by Judge George P. Schiavelli: Granting 195 Motion to Withdraw as Attorney Granted via minute order filed 3/28/07 docket number 206 (Entered: 09/23/2009) |
| 04/02/2007 | 207 | TRANSCRIPT DESIGNATION AND ORDERING FORM For Dates: 11/27/06, 3/24/05, 3/23/05, 3/22/05, 3/17/05, 3/16/05, 3/15/05 and 1/3/05; Court Reporter: Rosalyn Adams; Court of Appeals Case Number: 07-55326; Re: Appeal to Circuit Court 194 . (et) (Entered: 04/04/2007) |
| 04/02/2007 | 209 | OPPOSITION to MOTION to Amend/Correct 193 Order, 199 filed by defendants' Midland Credit Management Inc, MRC Receivables Corp. (bp, ) (Entered: 04/05/2007) |
| 04/02/2007 | 210 | REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS OPPOSITION TO MOTION to Amend/Correct 193 Order, 199 filed by defendants' Midland Credit Management Inc, MRC Receivables Corp. (bp, ) (Entered: 04/05/2007) |
| 04/04/2007 | 211 | MINUTES OF IN CHAMBERS ORDER held before Judge George P. Schiavelli : Plaintiff's counsel, Hyde and Swigart, lodged an ex parte application for order shortening time for motion to intervene to be heard. The ex parte application is DENIED as moot. The court hereby continues the hearing on the MOTION to Amend/Correct 193 Order, 199 . Responses due by 4/19/2007 Replies due by 4/23/2007. Motion set for hearing on 4/30/2007 at 01:30 PM before Judge George P. Schiavelli. Court Reporter: Not present. (bp, ) (Entered: 04/05/2007) |
| 04/04/2007 | 212 | Substitution of Attorney filed. Substituting attorney Craig J Stein for Darren Del Nero in place and stead of Robert L. Hyde and Joshua B. Swigart by Judge George P. Schiavelli.(bp, ) (Entered: 04/16/2007) |
| 04/06/2007 | | APPEAL FEE PAID: re Appeal to Circuit Court, 194 as to Plaintiff Darren Del Nero; Receipt Number: 94813 in the amount of $5.00 (dmap.) (Entered: 04/06/2007) |
| 04/09/2007 | 213 | NOTICE OF MOTION AND MOTION to Intervene filed by intervenors' Hyde and Swigart, Robert L Hyde, Joshua B Swigart. Motion set for hearing on 4/30/2007 at 01:30 PM before Judge George P. Schiavelli. (bp, ) (Entered: 04/20/2007) |
| 04/19/2007 | 214 | MINUTES OF IN CHAMBERS ORDER held before Judge George P. Schiavelli : On 4/9/07, former plaintiff's counsel filed a motion to intervene. In light of the FPC's showing and the lack of opposition, the court hereby GRANTS this motion. Because the court is not presuaded to reconsider its 2/20/07, FPC's motion under Rule 59 is DENIED.Court Reporter: Not present. (bp, ) (Entered: 04/20/2007) |
| 04/19/2007 | 215 | JUDGMENT: IT IS HEREBY ORDERED, ADJUDGED AND DECREED that plaintiff shall take nothing and judgment is hereby entered for defendants on all claims for relief. Because the |

| | | court finds this action was brought in bad faith, Plaintiff and his counsel, Hyde & Swigart, are jointly and severally liable for defendants' attorneys' fees and costs in the amount of $155,979.09 for the reasons stated in the court's 2/20/07 order by Judge George P. Schiavelli, in favor of defendants' Midland Credit Management Inc, MRC Receivables Corp and against plaintiffs' Darren Del Nero(bp, ) (Entered: 04/20/2007) |
|---|---|---|
| 04/19/2007 | 217 | NON-OPPOSITION TO MOTION to Intervene 213 filed by defendants' Midland Credit Management Inc. (bp, ) (Entered: 05/11/2007) |
| 04/19/2007 | | PLACED IN FILE - NOT USED re proposed judgment in favor of defendants submitted by defendants' Midland Credit Management Inc. (bp, ) (Entered: 05/11/2007) |
| 04/19/2007 | | PLACED IN FILE - NOT USED re ex parte application for order shortening time for motion to intervene submitted by appellants Hyde and Swigart. (bp, ) (Entered: 05/11/2007) |
| 04/19/2007 | | PLACED IN FILE - NOT USED re proposed order granting shortening time for motoin to intervene submitted by appellants' Hyde and Swigart. (bp, ) (Entered: 05/11/2007) |
| 04/19/2007 | | PLACED IN FILE - NOT USED re declaration in support of ex parte application for order shortening time for motion to intervene submitted by appellants' Hyde and Swigart. (bp, ) (Entered: 05/11/2007) |
| 04/20/2007 | 216 | REQUEST to Substitute attorney Craig Stein in place of attorney Robert L. Hyde and Joshua B. Swigart filed by plaintiff Darren Del Nero. Lodged proposed order. (bp, ) (Entered: 04/30/2007) |
| 08/06/2007 | 218 | ORDER from 9th CCA filed as to Appeal to 9th Circuit Court of Appeals, 194 , CCA # 07-55326. Court Reporter Rosalyn Adams motion for an extension of time to file the reporter transcript is granted. This order does not waive the mandatory fee reduction. Order received in this district on 8/8/2007. (dmap) (Entered: 08/09/2007) |
| 11/01/2007 | 219 | TRANSCRIPT filed for proceedings held on 1/3/05 Court Reporter: Rosalyn Adams. (mo) (Entered: 11/08/2007) |
| 11/01/2007 | 220 | TRANSCRIPT filed for proceedings held on 3/15/05 Court Reporter: Rosalyn Adams. (mo) (Entered: 11/08/2007) |
| 11/01/2007 | 221 | TRANSCRIPT filed for proceedings held on 3/16/05 Court Reporter: Rosalyn Adams. (Pages 25-33 Sealed) (mo) (Entered: 11/08/2007) |
| 11/01/2007 | 222 | SEALED DOCUMENT - REPORTER'S TRANSCRIPT for proceedings held on 11/1/07. (mo) (kyc). (Entered: 11/08/2007) |
| 11/01/2007 | 223 | TRANSCRIPT filed for proceedings held on 3/17/05 Court Reporter: Rosalyn Adams. (mo) (Entered: 11/08/2007) |
| 11/01/2007 | 224 | TRANSCRIPT filed for proceedings held on 3/22/05 Court Reporter: Rosalyn Adams. (mo) (Entered: 11/08/2007) |
| 11/01/2007 | 225 | TRANSCRIPT filed for proceedings held on 3/23/05 Court Reporter: Rosalyn Adams. (mo) (Entered: 11/08/2007) |
| 11/01/2007 | 226 | TRANSCRIPT filed for proceedings held on 3/24/05 Court Reporter: Rosalyn Adams. (mo) (Entered: 11/08/2007) |
| 11/01/2007 | 227 | TRANSCRIPT filed for proceedings held on 11/27/06 Court Reporter: Rosalyn Adams. (mo) |

| | | (Entered: 11/08/2007) |
|---|---|---|
| 11/15/2007 | 228 | ORDER from 9th CCA filed as to Appeal to 9th Circuit Court of Appeals, 194 , CCA # 07-55326. Order received in this district on 11/20/07. The Court acknowledges receipt of appellants October 25, 2007 letter to the clerk, which is construed to be an unopposed motion to amend the time scheduling order based upon courtreporter default. Appellant's motion is granted. The court reporter shall file transcript in district court on or before November 20, 2007. The Certificate of Record shall be filed by November 30, 2007. Brief schedule set. (cbr) (Entered: 11/21/2007) |
| 11/30/2007 | 229 | CERTIFICATE OF RECORD Transmitted to USCA re Appeal to 9th Circuit Court of Appeals 194 ; Court of Appeals Case Number: 07-55326. (cbr) (Entered: 11/30/2007) |
| 02/06/2008 | 230 | ORDER from 9th CCA filed re: Notice of Appeal to 9th Circuit Court of Appeals 194 , CCA # 07-55326. Pursuant to the agreement of counsel and for good cause shown, the briefing scheduled previously set by the court is amended as follows. Brief schedule set. (cbr) (Entered: 02/13/2008) |
| 09/11/2008 | 231 | RECORD ON APPEAL sent to Circuit Court re: Appeal number, 07-55326. Record consists of 8 volumes,3 bulky documents, 10 transcripts re Notice of Appeal to 9th Circuit Court of Appeals, 194 . (dmap) Modified on 9/11/2008 (dmap). (Entered: 09/11/2008) |
| 09/11/2008 | 232 | APPEAL RECORD sealed documents sent to Circuit Court re: Appeal number, 07-55326. Three (3) documents were sent with this transmittal. Document numbers S0093, S0126 & T0222. Re: Notice of Appeal to 9th Circuit Court of Appeals, 194 . (dmap) (Entered: 09/11/2008) |
| 08/06/2009 | 233 | ORDER from 9th CCA filed re: Notice of Appeal to 9th Circuit Court of Appeals, 194 , CCA # 07-55326. The Court has received Darren Delneros Petition for Rehearing or in the Alternative to Allow Co-appellant to File his Opening Brief on the Existing Record. We order it filed. We treat Delneros petition as a motion to rehear the appeal in Hyde v. Midland Credit Management, 567 F.3d 1137 (9th Cir. 2009), and to add him as an appellant in that appeal. We have no record in this court of Delneros having properly appealed from the district courts judgment. Delnero attaches to his petition documents purporting to show that he timely filed his notice of appeal in the district court, but those documents are not in the record before us. We deny Delneros petition without prejudice to his applying to the district court for appropriate relief in that court. (dmap) (Entered: 08/07/2009) |
| 08/14/2009 | 234 | MANDATE of 9th CCA filed re: Notice of Appeal to 9th Circuit Court of Appeals, 194 , CCA # 07-55326. We reverse the district courts award of attorneys fees and cost against Hyde and Swigart. Mandate received in this district on 8/14/2009. (dmap) (Entered: 08/18/2009) |
| 01/21/2010 | 236 | MINUTES OF IN CHAMBERS ORDER Re: Case Status held before Judge Audrey B. Collins: The Court has received the Ninth Circuit's mandate in this action, reversing the Court's award of attorney's fees and costs against Hyde & Swigart. It appears to the Court that no issues remain to be adjudicated in this matter. If the parties believe otherwise, they may file a status report with the Court no later than February 8, 2010. If a status report is filed, the Court will hold a status conference on February 22, 2010 at 10:00 a.m. If no status report is filed by February 8, 2010, the Court ORDERS that the Judgment of the Ninth Circuit Court of Appeals reversing the Judgment of the District Court be filed and spread upon the minutes of the District Court. (bm) (Entered: 01/21/2010) |

1/9/2010 Case 3:16-cv-02186-WQH-MDD Document 127-1 Filed 09/23/22 PageID.2080 Page 764 of 445
Case 3:16-cv-02186-WQH-MDD Document 127-1 Filed 09/23/22 PageID.2080 Page 764 of 445
1196

| 02/03/2010 | 237 | APPLICATION to Substitute attorney Tomio B. Narita and Jeffrey A. Topor in place of attorney Stephen H. Turner and John R. Felton, Jr. filed by Defendant Midland Credit Management Inc. Application set for hearing on 2/22/2010 at 10:00 AM before Judge Audrey B. Collins. (Narita, Tomio) (Entered: 02/03/2010) |
| --- | --- | --- |
| 02/03/2010 | 238 | REQUEST to Substitute attorney Tomio B. Narita and Jeffrey A. Topor in place of attorney Stephen H. Turner and John R. Felton, Jr. filed by Defendant MRC Receivables Corp. Request set for hearing on 2/22/2010 at 10:00 AM before Judge Audrey B. Collins. (Narita, Tomio) (Entered: 02/03/2010) |
| 02/08/2010 | 239 | NOTICE OF LODGING filed re APPLICATION to Substitute attorney Tomio B. Narita and Jeffrey A. Topor in place of attorney Stephen H. Turner and John R. Felton, Jr. 237 (Attachments: # 1 Proposed Order)(Topor, Jeffrey) (Entered: 02/08/2010) |
| 02/08/2010 | 240 | NOTICE OF LODGING filed re REQUEST to Substitute attorney Tomio B. Narita and Jeffrey A. Topor in place of attorney Stephen H. Turner and John R. Felton, Jr. 238 (Attachments: # 1 Proposed Order)(Topor, Jeffrey) (Entered: 02/08/2010) |
| 02/08/2010 | 241 | STATUS REPORT filed by Defendants Midland Credit Management Inc, MRC Receivables Corp. (Topor, Jeffrey) (Entered: 02/08/2010) |
| 02/09/2010 | 242 | ORDER by Judge Audrey B. Collins: Request to Substitute Attorney Tomio B Narita and Jeffrey A Topor for MRC Receivables Corp in place and stead of Attorneys Stephen H Turner and John Richard Feliton, Jr 238 GRANTED. (ir) (Entered: 02/10/2010) |
| 02/09/2010 | 243 | ORDER by Judge Audrey B. Collins: Application to Substitute Attorneys Tomio B Narita and Jeffrey A Topor for Midland Credit Management Inc in place and stead of Attorneys Stephen H Turner and John Richard Feliton, Jr 237 GRANTED. (ir) (Entered: 02/10/2010) |
| 02/18/2010 | 244 | APPEAL RECORD RETURNED from 9th CCA Received: Volume(s): One (1) through Eight (8); Ten (10) Transcripts; Three (3) bulky documents and Three (3) sealed documents. RE: Appeal Record Sent to USCA (A-26), 231 . (dmap) (Entered: 02/19/2010) |
| 02/22/2010 | 245 | MINUTES OF STATUS CONFERENCE held before Judge Audrey B. Collins: Matter called. Court informs counsel of all papers received. Court and counsel confer regarding status of case. The Court having heard from counsel, orders counsel to e-file motion for attorney fees by no later than March 1, 2010, the opposition due March 08, 2010, any replies due March 15, 2010. The motion hearing date to be set for March 29, 2010 at 10:00 a.m. Court Reporter: Katherine Stride. (bm) (Entered: 02/24/2010) |
| 03/01/2010 | 246 | NOTICE OF MOTION AND MOTION for Sanctions pursuant to 28 USC section 1927 and the Court's inherent authority filed by Defendant MRC Receivables Corp, Midland Credit Management Inc. Motion set for hearing on 3/29/2010 at 10:00 AM before Judge Audrey B. Collins. (Narita, Tomio) (Entered: 03/01/2010) |
| 03/08/2010 | 247 | OPPOSITION to MOTION for Sanctions pursuant to 28 USC section 1927 and the Court's inherent authority 246 filed by Intervenor Hyde and Swigart. (Attachments: # 1 Supplement Ninth Circuit Oral Argument, # 2 Supplement Municipal Court Order, # 3 Supplement Excerpts)(Hyde, Robert) (Entered: 03/08/2010) |
| 03/10/2010 | 248 | NOTICE OF REASSIGNMENT OF CASE due to Unavailability of Judicial Officer filed. The previously assigned District Judge is no longer available. Pursuant to directive of the Chief District Judge and in accordance with the rules of this Court, the case has been returned to the |

| | | Clerk for reassignment. This case has been reassigned to Judge Audrey B. Collins for all further proceedings. Case number will now read CV 04-01040 ABC(SHx). (rn) (Entered: 03/10/2010) |
|---|---|---|
| 03/10/2010 | 251 | MINUTES: (In Chambers) CASE TRANSFERRED TO JUDGE COLLINS: PLEASE TAKE NOTICE that this action has been reassigned to the Honorable Audrey B. Collins, Chief United States District Judge. Please substitute the initials ABC in place of the initials GPS. The case number will now read: CV 04-1040 ABC (SHx). Henceforth, it is imperative that the initials ABC be used on all documents to prevent any delays in processing of documents. The Courtroom Deputy Clerk for Judge Collins is Angela Bridges, who may be reached at (213) 894-6500. Judge Collinss courtroom is located on the 6th floor of the Roybal Federal Building, Courtroom 680. Additional information about Judge Collins may be found on the Courts website at www.cacd.uscourts.gov, Judges Procedures & Schedules.Please be advised that all mandatory chambers copies should be delivered directly to chambers by noon of the business day following filing. The copies shall include the E-Filed Header and/or the E-Filing Confirmation sheet. Failure to comply may result in the imposition of monetary sanctions. In addition, all proposed orders should be electronically mailed in WordPerfect or Microsoft Word to the Judges generic e-mail address: abc_chambers@cacd.uscourts.gov. Lastly, please review the Judges Motion calendar located on the courts website before noticing a motion for hearing. Failure to comply may result in the motion being stricken from the record and/or in the imposition of monetary sanctions by Judge Audrey B. Collins. (ir) (Entered: 03/18/2010) |
| 03/12/2010 | 249 | STIPULATION TO EXTEND TIME FOR DEFENDANTS TO FILE REPLY BRIEF IN SUPPORT OF MOTION FOR SANCTIONS re MOTION for Sanctions pursuant to 28 USC section 1927 and the Court's inherent authority 246 filed by Defendants MRC Receivables Corp, Midland Credit Management Inc. (Attachments: # 1 Proposed Order Granting Stipulation To Extend Time For Defendants To File Reply)(Narita, Tomio) (Entered: 03/12/2010) |
| 03/15/2010 | 250 | ORDER by Judge Audrey B. Collins: Pursuant to Stipulation for Extension of Time for Defendants to File Reply Memorandum in support of their Motion for Attorneys Fees and Costs pursuant to 28 USC section 1927 and the Court's Inherent Authorities 249 of the parties and good cause having been shown, that the request for the extension is granted. Midland shall have up to 3/22/2010 to file its reply memorandum. The matter is taken OFF CALENDAR. It will be reset if necessary. (jp) (Entered: 03/16/2010) |
| 03/18/2010 | 252 | DECLARATION of Jeffrey A. Topor In Support Of MOTION for Sanctions pursuant to 28 USC section 1927 and the Court's inherent authority 246 filed by Defendants MRC Receivables Corp, Midland Credit Management Inc. (Topor, Jeffrey) (Entered: 03/18/2010) |
| 03/22/2010 | 253 | REPLY in support of MOTION for Sanctions pursuant to 28 USC section 1927 and the Court's inherent authority 246 filed by Defendants MRC Receivables Corp, Midland Credit Management Inc. (Topor, Jeffrey) (Entered: 03/22/2010) |
| 03/30/2010 | 254 | MINUTES: ORDER DENYING Motion for Fees and Costs 246 (In Chambers) IT IS SO ORDERED by Judge Audrey B. Collins. (ir) (Entered: 03/30/2010) |

| PACER Service Center |
|---|
| Transaction Receipt |

| PACER Login: | scott4670:2592391:0 | Client Code: | Chaker |
|---|---|---|---|
| Description: | Docket Report | Search Criteria: | 2:04-cv-01040-ABC-SH End date: 1/9/2017 |
| Billable Pages: | 21 | Cost: | 2.10 |

# EXHIBIT B

UNITED STATES DISTRICT COURT     P-SEND
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION
<u>CIVIL MINUTES - GENERAL</u>

Case No.   <u>CV 04-1040 GPS(SHx)</u>       Date:   <u>March 16, 2005</u>

Title:   <u>Del Nero v. Midland Credit Management</u>

=================================================================

PRESENT:     <u>THE **HONORABLE GEORGE P. SCHIAVELLI**,   JUDGE</u>

<u>Krista Barrett</u>         <u>Rosalyn Adams</u>
Courtroom Clerk         Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:     ATTORNEYS PRESENT FOR DEFENDANTS:

Robert Hyde                     Stephen H. Turner
Joshua Swigart                 Larissa G. Nefuda

PROCEEDINGS:   ORDER TO SHOW CAUSE RE CONTEMPT

Court issues OSC re contempt to Ms. Vania Chaker in regard to her attempt to aid the witness in answering counsel's questions. Ms. Chaker's response is due March 18, 2005. Ms. Chaker is ORDERED to appear at 9:00 a.m. on March 22, 2005. It is also ORDERED that Ms. Chaker may not be present in Court for the remainder of this trial.



MINUTES FORM 11                 Initials of Deputy Clerk ___
CIVIL - GEN

Case 3:16-cv-02186-WQH-MDD   Document 727-1   Filed 09/23/22   PageID.24985   Page 769 of
1196
Case 3:16-cv-02186-WQH-MDD   Document 727-1   Filed 01/28/22   PageID.2214   Page 39 of 445

# EXHIBIT C

UNITED STATES DISTRICT COURT      P SEND
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Case No.   CV 04-1040-GPS      Date: March 22, 2005

Title:   DEL NERO v. MIDLAND CREDIT MANAGEMENT INC., et al

PRESENT:     THE HONORABLE **GEORGE P. SCHIAVELLI**, JUDGE

     Krista Barrett           Rosalyn Adams
     Courtroom Clerk           Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:      ATTORNEYS PRESENT FOR DEFENDANTS:


PROCEEDINGS: OSC RE CONTEMPT AS TO VANIA CHAKER

Vania Chaker present and addresses Court.  A response was delivered to the
court, but not filed.  The Court orders Ms. Chaker to file a response not
later than March 25, 2005.  A further hearing is set April 12, 2005 at 9:00
a.m.



MINUTES FORM 11           Initials of Deputy Clerk
CIVIL - GEN

/ 0 0

# EXHIBIT D

1  STEPHEN H. TURNER, ESQ. (State Bar No. 89627)
   turners@cmtlaw.com
2  LARISSA G. NEFULDA, ESQ. (State Bar No. 201903)
   nefuldal@cmtlaw.com
3  CARLSON, MESSER & TURNER LLP
   5959 W. Century Boulevard, Suite 1214
4  Los Angeles, California 90045
   (310) 242-2200 Telephone
5  (310) 242-2222 Facsimile
6  Attorneys for Defendants MIDLAND CREDIT
   MANAGEMENT, INC. and MRC
7  RECEIVABLES CORPORATION

   FILED
   CLERK, U.S. DISTRICT COURT

   JUL 1 1 2006

   CENTRAL DISTRICT OF CALIFORNIA
   BY _____ DEPUTY

8

9              UNITED STATES DISTRICT COURT

10      CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

11  DARREN DEL NERO and          )   CASE NO.  CV04-1040 GPS (SHx)
    NICOLE SHAKER,               )
12                               )   [PROPOSED] FINDINGS OF FACT
                 Plaintiffs,     )   AND CONCLUSIONS OF LAW
13       vs.                     )   PURSUANT TO F.R.C.P. 52 AND
                                 )   L.R. 52-1
14  MIDLAND CREDIT               )
    MANAGEMENT, INC.;            )
15  MRC RECEIVABLES CORP.;       )
    and DOES 1-10,               )
16                               )
                 Defendants.     )
17                               )

18        After a Court Trial and closing and rebuttal arguments submitted in writing, the

19  Court rules in favor of Defendants MIDLAND CREDIT MANAGEMENT, INC.

20  ("Midland") and MRC RECEIVABLES CORPORATION.

21        The Court bases its decision on the following findings of fact and conclusions

22  of law:

23  I.    **Introduction**

24        In the final Joint Pre-Trial Conference Order submitted by Plaintiff and

25  Defendants, Plaintiff stated that he was pursuing four claims against Defendants. First,

26  he stated he was pursuing a claim that Defendants. . . "communicated with any person

27  other than the consumer, without the consumer's consent, in particular with the

28

DOCKETED
JUL 1 2 2006
BY

CARLSON, MESSER & TURNER LLP
5959 W. CENTURY BOULEVARD, SUITE 1214
LOS ANGELES, CALIFORNIA 90045

LODGED

1 purported debtor's mother, in violation of 15 USC § 1692c(3).[1]

2      Second, Plaintiff stated he was pursuing a claim that Defendants ... "used false,

3 deceptive or misleading representations or means to collect a debt by making false

4 representations to collect or attempt to collect the debt or to obtain information about

5 the debtor from his mother, in violation of 15 USC § 1692e".[2]

6      Third, Plaintiff stated he was pursuing a claim that Defendants ... "threatened

7 to take action that was not intended to be taken such as filing suit on a debt in violation

8 of 15 USC § 1692e(5)."[3]

9      Finally, Plaintiff stated he was pursuing the claim that Defendants

10 "communicated with another person, credit information known to be false, including

11 failing to communicate that a disputed debt is disputed, in violation of 15 USC §

12 1692e(8)."[4]

13      In addition, Plaintiff stated he intended to pursue a claim that Defendants

14 violated <u>California Business and Professions Code</u> § 17000 et. seq. That claim was

15 dismissed.

16 **II.**   **<u>Defendant Midland Credit Management, Inc. Did Not Use False, Deceptive,</u>**

17     **<u>or Misleading Representations Or Means In Connection With The</u>**

18     **<u>Collection Of A Debt By Illegally Contacting A Third Party While</u>**

19     **<u>Attempting To Collect A Debt And Therefore, Did Not Violate 15 USC §</u>**

20     **<u>1692c(b).</u>**

21      15 USC § 1692c(b) provides:

22         "Except as provided in 15 U.S.C. § 1692b of this title, without the

23         prior consent of the consumer given directly to the debt collector,

24

25

26   [1]  <u>See</u> Final Pre-Trial Conference Order, ¶¶ 7.a.viii and ix.

27   [2]  <u>See</u> Final Pre-Trial Conference Order, ¶¶ 7.a.x and xi.

28   [3]  <u>See</u> Final Pre-Trial Conference Order, ¶¶ 7.a.xii and xiii.

  [4]  <u>See</u> Final Pre-Trial Conference Order, ¶¶ 7.a.xiv and xv.

CARLSON, MESSER & TURNER LLP
5959 W. CENTURY BOULEVARD, SUITE 1214
LOS ANGELES, CALIFORNIA 90045

2   [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW
     CV04-1040 CAS (SHx)

05158.00:118469

or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a post-judgment judicial remedy, a debt collector may not communicate in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector."

The Court first notes that this claim by Plaintiff rests ~~entirely~~ largely upon the testimony of Plaintiff's mother, Ms. Nicole Chaker. The Court finds that Ms. Chaker is simply not a credible witness. Throughout her testimony Ms. Chaker provided contradictory responses to questions. First, Ms. Chaker provided contradictory responses to the questions as to whether or not she made efforts to look for phone records requested in the subpoena served upon her on March 16, 2005. When asked whether she had brought documents with her to Court, Ms. Chaker responded that she did not look for phone records because she was never asked to produce phone records.[5] Later Ms. Chaker changed her testimony and said that she had, in fact, made efforts to look for phone records but could not locate any.[6]

Ms. Chaker also provided contradictory responses to questions regarding whether or not Mr. Del Nero was a victim of crime in 1999. Ms. Chaker first testified that she was certain that Mr. Del Nero was a victim of a crime in 1999, but that she was "not at liberty to talk about it."[7] Then Ms. Chaker changed her testimony and said she was not sure whether or not Mr. Del Nero was a victim of crime in 1999.[8]

CARLSON, MESSER & TURNER LLP
5959 W. CENTURY BOULEVARD, SUITE 1214
LOS ANGELES, CALIFORNIA 90045

---

[5] Trial Transcript, March 23, 2005, p. 29, lines 11-15, p. 30, lines 11-12.

[6] Trial Transcript, March 23, 2005, p. 314, lines 13-25.

[7] Trial Transcript, March 15, 2005, p. 46, lines 5-8.

[8] Trial Transcript, March 15, 2005, p. 47, lines 2-8.

3    [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW
CV04-1040 CAS (SHx)

05158 00:118469

CARLSON, MESSER & TURNER LLP
5959 W. CENTURY BOULEVARD, SUITE 1214
LOS ANGELES, CALIFORNIA 90045

1    Ms. Chaker's specific testimony regarding alleged phone calls is not credible.

2    Ms. Chaker testified that all of the telephone calls from Midland came in on her

3    secondary line (as opposed to the telephone line that she testified as being her main

4    line"). Remarkably, despite the fact that Ms. Chaker had used that secondary telephone

5    line for the past five years and it had operated until November, 2004, Ms. Chaker

6    could not recall the telephone number.

7    Ms. Chaker's testimony also lacked credibility regarding the entries in her

8    calendar. First, there is the issue of the "post it" notes which were affixed to Ms.

9    Chaker's Day Planner. Some of the "post its" are over unused portions in the Day

10   Planner. Ms. Chaker provided no logical explanation for the use of the "post its."

11   Ms. Chaker testified that as to the telephone calls she allegedly received from

12   other collectors, she did not make notes because the telephone calls were not as

13   upsetting and, specifically that the other collectors did not ask Ms. Chaker to pay Mr.

14   Del Nero's debts. This was contradicted by Exhibit 27, which was a lawsuit brought

15   by Plaintiff against Imperial Collection Services for allegedly calling Ms. Chaker and

16   demanding that Ms. Chaker pay Plaintiff's debts.

17   Lastly, there is the nature of the alleged telephone calls themselves. Ms. Chaker

18   testified that on one occasion a representative of Midland Credit Management told her

19   that their calls cannot be traced. Curiously, Plaintiff alleged under penalty of perjury

20   in another lawsuit, Chaker v. Imperial Collection Services, Case No. CV84-2728-2A

21   [Exhibit 27] that Imperial Collection Services made the same statement. It is simply

22   not believable that two creditors would make the identical statement to Ms. Chaker in

23   less than two months.

24   In contrast to the evidence presented by Plaintiff, Defendants presented detailed,

25   specific testimony to establish that Defendants never had either of Ms. Chaker's

26   telephone numbers and, thus, could not have called Ms. Chaker.

27   Ms. Melconian provided detailed testimony regarding the collector notes and

28   what they meant with regard to whether or not Midland had any telephone number for

Mr. Del Nero's account. Specifically, she testified that the fact that the collectors notes

1  state that the account was in queue "A-8" established unequivocally that Midland did

2  not have a telephone number associated with Mr. Del Nero's account.[9] [Exhibit 16].

3  Ms. Melconian then testified that the account had later been transferred to queue "A-

4  11" which was a second skip tracing queue that established that Midland still did not

5  have a telephone number associated with Mr. Del Nero's account.[10] [Exhibit 16].

6      Lastly, Ms. Melconian provided detailed testimony as to how collectors are

7  compensated, and specifically that there would be no reason for a collector to secretly

8  hoard a telephone number for an account rather than to enter it into Midland's

9  computer system. Quite to the contrary, a collector had every reason to enter the

10  telephone number into the system. Indeed, Ms. Melconian testified that if a collector

11  spent too much time "off the dialer" (the automated dialer) a collector might be

12  adversely impacted financially.

13      Mr. Nokes testified regarding the manner in which the Midland Credit telephone

14  system operated. He testified that Midland's computer files keep a record of every

15  telephone number Midland has for every account, every out-going telephone call made

16  by Midland, and every incoming telephone call made on Midland's "800" telephone

17  line.

18      First, Mr. Nokes testified regarding the phone file. He testified that there was

19  a file for every account which lists every telephone number that is associated with that

20  account. He further testified that when he ran a query as to what telephone numbers

21  Midland had which were associated with Mr. Del Nero's account, Midland's

22  telephone/computer system reported Midland had no telephone numbers.[11] [Exhibit

23  21].

24      Then, Mr. Nokes testified regarding the audit file. He testified that if a telephone

25  number was deleted from the telephone file, such deletion would be noted in the audit

26

27     [9] Trial Transcript, p. 76, lines 23-25 - p. 77, lines 4.

28     [10] Trial Transcript, p. 90, lines 17-25.

   [11] Trial Transcript, March 24, 2005, p. 71, lines 9-25 - p. 72, lines 1-13.

CARLSON, MESSER & TURNER LLP
5959 W. CENTURY BOULEVARD, SUITE 1214
LOS ANGELES, CALIFORNIA 90045

1   file. The audit file did not report that anyone had changed or deleted any phone

2   number relating to Mr. Del Nero's account.[12] [Exhibit 22]. He testified that only the

3   top management, acting in collusion, would be able to turn off the audit file so as to

4   delete a telephone number from the telephone file and have that deletion not recorded

5   in the audit file.[13] He specifically testified in the five years he has worked for Midland,

6   he is not aware of any occasion when the audit file has been suspended or otherwise

7   turned off.[14]

8        Lastly, Mr. Nokes testified regarding the telephone accounting software. He

9   testified that it was much like the accounting software used in hospitals to record out-

10  going and incoming telephone calls. He testified that the phone file system specifically

11  recorded all incoming telephone calls made on the 800 number, but that it could not

12  report telephone calls made on local lines.[15]

13       Mr. Nokes then testified that he ran a query against every telephone number,

14  including a fax number for Mr. Del Nero and the telephone number of the "main line"

15  for Nicole Chaker. He testified the result of that query was that Midland had never

16  called any of those numbers nor had Midland received any telephone calls from those

17  numbers.[16]

18       Because Plaintiff offered no credible evidence that Defendants contacted Ms.

19  Chaker, and Defendants offered overwhelming evidence that they did not contact Ms.

20  Chaker, the Court finds, ~~as a matter of law,~~ that Defendants did not violate 15 USC

21  Section 1692c(b).

22  / / /

23  / / /

24

25       [12] Trial Transcript. March 24, 2005, p. 73, lines 1-20.

26       [13] Trial Transcript, March 24, 2005, p. 70, lines 20-25 - p. 71, lines 1-8.

27       [14] Trial Transcript, March 24, 2005, p. 77, lines 9-14.

28       [15] Trial Transcript, March 24, 2005, p. 68, lines 17-25 - p. 69, lines 1-23.

         [16] Trial Transcript, March 24, 2005, p. 75, lines 6-25 - p. 77, lines 1-3.

CARLSON, MESSER & TURNER LLP
5959 W. CENTURY BOULEVARD, SUITE 1214
LOS ANGELES, CALIFORNIA 90045

6        [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW

05158.00:118469                                CV04-1040 CAS (SHx)

**III. Defendants Did Not Use False, Deceptive Or Misleading Misrepresentations Or Means To Collect A Debt By Making False Representations To Collect Or Attempt To Collect A Debt, Or To Obtain Information About The Plaintiff From His Mother In Violation of 15 USC §1692e.**

As previously noted, Plaintiff's second claim was that the Defendants:

> ". . . used false, deceptive or misleading mis-representations or means to collect the debt by making false representations to collect or attempt to collect a debt or to obtain information about the debtor from his mother in violation of 15 USC § 1692e."

15 USC Section 1692e provides, in part:

> "A debt collector may not use any false, deceptive or misleading representation or means in connection with the collection of any debt."

Because this claim was limited to the use of false or deceptive means to collect the debt or to obtain information about Plaintiff from Plaintiff's mother, the previous portion of the findings and facts and conclusions of law are applicable here and are incorporated herein as if set forth at length. Plaintiff's only assertion as to the false or deceptive means by which Defendants allegedly sought to collect the debt or obtain information from Plaintiff's mother were telephone conversations allegedly placed by Defendants to Plaintiff's mother. Having found that no such conversations took place, the Court ~~must find there, as a matter of law,~~ *finds* Defendants did not violate 15 USC Section 1692e.

**IV. Defendant Midland Credit Management, Inc. Did Not Threaten To Take Action That Was Not Intended To be Taken And Therefore, Did Not Violate 15 USC § 1692e(5).**

15 USC § 1692e(5) provides:

> "Without limiting the general application of the foregoing, the following conduct is a violation of this section:

CARLSON, MESSER & TURNER LLP
5959 W. CENTURY BOULEVARD, SUITE 1214
LOS ANGELES, CALIFORNIA 90045

05158.00:118469

7

[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW
CV04-1040 CAS (SHx)

1    (5) The threat to take any action that cannot legally be taken or that

2        is not intended to be taken."

3    Plaintiff offered no evidence other than Defendants had not sued him. In

4    contrast, Defendants provided detailed evidence regarding the process by which the

5    decision is made to file a lawsuit against a debtor.

6    Defense witness, Ms. Melconian, testified that Plaintiff's account had been

7    transferred to "MCM Legal QUI L-01," which was the first step in the process to

8    initiate litigation against Plaintiff,[17] and that Midland files thousands of lawsuits. In

9    Exhibit 8, a letter sent by Midland Credit Management, Midland wrote:

10       "This letter is to inform you that Midland Credit

11       Management, Inc. has been authorized to forward the above-

12       referenced account to an attorney authorized to practice in

13       your State with the intent to initiate legal action to satisfy

14       this debt. However, note, no decision to forward your

15       account has been made at this time."

16   The letter clearly states that no decision had been made to sue Plaintiff. Quite

17   to the contrary, Midland specifically stated: "However, no decision to forward your

18   account has been made at this time."

19   The Court finds that Defendants never threatened to take an action which they

20   did not intend to take and therefore, ~~the Court finds~~ Defendants did not violate 15

21   USC Section 1692e(5).

22   **V.    Defendant Midland Credit Management, Inc. Did Not Fail To Report A**

23        **Disputed Debt As Disputed And Therefore, Did Not Violate 15 USC §**

24        **1692e(8).**

25   15 USC § 1692e(8) provides:

26       "Without limiting the general application of the foregoing, the

27       following conduct is a violation of this section:

28

CARLSON, MESSER & TURNER LLP
5959 W. CENTURY BOULEVARD, SUITE 1214
LOS ANGELES, CALIFORNIA 90045

---

[17] Trial Transcript, March 23, 2005, p. 90, lines 7-10.

[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW
CV04-1040 CAS (SHx)

05158.00:118469

(8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed."

Midland presented overwhelming evidence that it, in fact, had reported the debt as disputed to all three credit bureaus, including Equifax. Exhibit 20 is a copy of a computer screen from Midland's records regarding Mr. Del Nero's account. Rita Melconian testified that the "X" in the column labeled "Comm C" beginning on April 12, 2002 and continuing every month thereafter establishes that as of April 12, 2002, Midland Credit Management reported this debt to all three of the major credit reporting bureaus, including Equifax, that Mr. Del Nero, in fact, disputed this debt.[18]

This is further confirmed by the fact that Exhibit 35, which is a copy of a credit report from Trans Union dated February 11, 2003, establishes, as Mr. Del Nero admitted, that Midland Credit Management reported Mr. Del Nero's debt as disputed.

Mr. Del Nero's testimony and the credit reports are consistent with the testimony of Rita Melconian, who testified that when Midland reports that a debt is disputed, it does so electronically to all three credit bureaus at the same time.[19]

The evidence is overwhelming that Midland Credit Management reported Mr. Del Nero's debt as disputed on April 12, 2002 (one day after he disputed the debt). Consequently, the Court finds, ~~as a matter of law~~ Defendants did not violate 15 USC Section 1692e(8).

## VI. Defendant MRC Receivables Corporation Did Not Violate The Fair Debt Collection Practices Act, 15 USC § 1692, Et Seq.

Plaintiffs presented no evidence whatsoever as to any alleged wrongful activity on the part of MRC Receivables Corporation. Defendants established that MRC

---

[18] Trial Transcript, March 23, 2005, p. 93, lines 15-25 - p. 94, lines 1-25.

[19] Trial Transcript, March 23, 2005, p. 118, line 23.

CARLSON, MESSER & TURNER LLP
5959 W. CENTURY BOULEVARD, SUITE 1214
LOS ANGELES, CALIFORNIA 90045

SCANNED

9    [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW
CV04-1040 CAS (SHx)

1  Receivables Corporation has no employees, and, furthermore, that MRC Receivables

2  Corporation is not a debt collector as that term is defined by 15 USC § 1692a(6).

3  Therefore, in addition to the reasons set forth previously herein, the Court finds that,

4  ~~as a matter of law,~~ MRC Receivables Corporation did not violate 15 USC § 1692 et.

5  seq.

6  **VII.**  **Costs and Attorneys' Fees**

7       As the prevailing parties, Defendants are entitled to recover their costs

8  pursuant to Rule 54(b)(1).

9       If Defendants contend they are entitled to attorneys' fees and non-taxable

10  costs, they must file a motion pursuant to Federal Rule 54(b)(2).

11

12  DATED: ~~March 31~~ July 6, 2006

13

14

15          Hon. George P. Schiavelli

CARLSON, MESSER & TURNER LLP
5959 W. CENTURY BOULEVARD, SUITE 1214
LOS ANGELES, CALIFORNIA 90045

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE BY HAND**

STATE OF CALIFORNIA            )
                              )  ss.
COUNTY OF LOS ANGELES          )

I am employed in the County of Los Angeles, State of California.

I am over the age of 18 and not a party to the within action; my business address is 5959 W. Century Boulevard, Suite 1214, Los Angeles, California 90045.

On April 3, 2006, I served the foregoing document described as: **[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW PURSUANT TO F.R.C.P. 52 AND L.R. 52-1** on all interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

**SEE ATTACHED LIST**

☒ (BY MAIL)
I sealed such envelope(s) and placed it (them) for collection and mailing on this date following the ordinary business practices of Carlson, Messer & Turner LLP. I am "readily familiar" with the business practices of Carlson, Messer & Turner LLP for collection and processing of correspondence for mailing with the United States Postal Service. Such correspondence would be deposited with the United States Postal Service at Los Angeles, California this same day in the ordinary course of business with postage thereon fully prepaid.

☒ (VIA E-MAIL)
I delivered such document to the interested party(ies).

☐ (BY FACSIMILE)
I transmitted via telecopier machine such document to the offices of the addressees.

☒ (Federal)
I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed this 3rd day of April, 2006, at Los Angeles, California.

Sue A. Vigil

SCANNED

1  **Darren Del Nero v. Midland Credit Management, Inc.**
2  05158.00

3
4  Robert L. Hyde. Esq.                    Counsel of Record for Plaintiff,
   Joshua B. Swigart                       DARREN DEL NERO
   HYDE & SWIGART
5  110 West "C" Street, Suite 2018
   San Diego, California 92101
6  Tel: (619) 233-7770
   Fax: (619) 330-4657
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case 3:16-cv-02186-WQH-MDD   Document 727-1   Filed 09/23/22   PageID.5000   Page 784 of
1196
Case 3:16-cv-02186-WQH-MDD   Document 47-1   Filed 01/23/17   PageID.2229   Page 34 of 445

# EXHIBIT E

P Send Enter Jp 6

SCANNED

FILED
CLERK, U.S. DISTRICT COURT

JUL 1 1 2006

CENTRAL DISTRICT OF CALIFORNIA
BY                                    DEPUTY

ENTERED
CLERK, U.S. DISTRICT COURT

JUL 1 2 2006

CENTRAL DISTRICT OF CALIFORNIA
BY                                    DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DARREN DEL NERO and NICOLE SHAKER, | Case No. CV 04-1040 GPS (SHx) |
| Plaintiff, | |
| v. | JUDGMENT |
| MIDLAND CREDIT MANAGEMENT, INC.; MRC RECEIVABLES CORP.; and DOES 1-10, | |
| Defendants. | |

After a Court trial, the Court having found for Defendants Midland Credit Management, Inc. and MRC Receivables Corp., IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Plaintiff shall take nothing and judgment is hereby entered for Defendants on all claims for relief.

**IT IS SO ORDERED.**

Dated this ___7th___ day of July, 2006.

GEORGE P. SCHIAVELLI
UNITED STATES DISTRICT JUDGE

145

Case 3:16-cv-02186-WQH-MDD   Document 727-1   Filed 09/23/22   PageID 5002   Page 786 of
1196
Case 3:16-cv-02186-WQH-MDD   Document 471-1   Filed 01/28/22   PageID 2231   Page 56 of 445

# EXHIBIT F

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 04-1040-GPS(SHx): | Date | November 27, 2006 |
| Title | *Darren Del Nero et al v. Midland Credit Management Inc.* | | |

Present: The Honorable **GEORGE P. SCHIAVELLI, United States District Judge**

| Jake Yerke | Rosalyn Adams | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:

Robert Hyde                                        Stephen Turner

**Proceedings:**     Defendants' Motion for Attorneys' Fees and Related Non-Taxable Costs (filed 8/10/06)

Court and counsel present, hearing held. Court hears argument from both parties.

Court **GRANTS** Defendants' Motion for Attorneys' Fees and Related Non-Taxable Costs in the amount of $137,616.69 against Plaintiff Darren Del Nero. The Court is taking the issue of whether Plaintiff's counsel should be jointly and severally liable for these fees and costs **UNDER SUBMISSION**. Defendants' supplemental brief regarding the additional fees and costs it incurred in briefing the present motion is limited to **ten pages** and is due no later than **December 4, 2006**. Any opposition by Plaintiff is also limited to **ten pages** and is due **December 11, 2006**.

It is so ordered.

: 40

Initials of Preparer          JY



---

CV-90 (06/04)                    **CIVIL MINUTES - GENERAL**                    Page 1 of 1

Case 3:16-cv-02186-WQH-MDD   Document 47-1   Filed 01/28/17   PageID.2233   Page 58 of 445

EXHIBIT G

*P Send Enter Closed.*

SCANNED

FILED
CLERK, U S DISTRICT COURT

FEB 2 0 2007

CENTRAL DISTRICT OF CALIFORNIA
BY                                    DEPUTY

ENTERED
CLERK, U.S. DISTRICT COURT

FEB 2 0 2007

CENTRAL DISTRICT OF CALIFORNIA
BY                                    DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARREN DEL NERO AND NICOLE SHAKER, | NO. 04-1040 GPS (SHX) |
| Plaintiff, | |
| v. | **Order Awarding Attorneys' Fees and Costs to Defendants** |
| MIDLAND CREDIT MANAGEMENT, INC., MRC RECEIVABLES CORP., AND DOES 1-10, | |
| Defendants | |

On November 27, 2006, this Court held a hearing regarding Defendants' Motion For Attorneys Fees And Related Non-Taxable Costs ("Defendants' Motion"). As stated in this Court's November 27, 2006 Order, the Court **GRANTED** Defendants' Motion against Plaintiff Darren Del Nero and took the issue of whether Plaintiff's counsel should be jointly and severally liable for these fees and costs **UNDER SUBMISSION**. The Court also allowed the parties to submit supplemental briefing regarding the attorneys' fees and costs

*193*

SCANNED

that Defendants' counsel incurred since filing their Motion For Attorneys' Fees and Related

Non-Taxable Costs.[1] Having received this additional briefing, the Court rules as follows:

1. Plaintiff's present Fair Debt Collection Practices Act ("FDCPA") case was brought to trial despite the fact that Plaintiff's only supporting witness was wholly without credibility. *See* Findings of Fact and Conclusions of Law [Dkt. #144].

2. The record of the present case as well as Plaintiff's pattern of filing apparently frivolous cases asserting debt collection violations establish that the present case was brought in bad faith and for the purpose of harassment as defined in 15 U.S.C. § 1692k(a)(3). *See Darren D. Chaker[2] v. Felipa R. Richland, et. al.,* CV 05-7851 RSWL (PLAx) (C.D. Cal. 2005) (awarding attorneys' fees of $42,934.84 against Plaintiff Del Nero for filing a baseless lawsuit); *Darren D. Chaker v. Imperial Collection Services,* CV 04-2728 PA (C.D. Cal. 2004) (alleging claims under the FDCPA virtually identical to the claims found to be without merit in the present case); *Darren Del Nero v.*

---

[1] Contrary to this Court's clear Order, Plaintiff's counsel filed a Supplemental Declaration regarding the issue this Court took under submission on November 27, 2006: whether Plaintiff's counsel would be liable for fees and costs in this action. This additional briefing proved to be against counsel's interests because it provided more evidence that Plaintiff's counsel should be liable for Defendants' fees and costs.

[2] Plaintiff Darren Del Nero also goes by the name Darren D. Chaker.

SCANNED

1    *Riddle & Associates PC, et al.*, CV 03-6511 GHK (RZx) (C.D. Cal. 2003)

2    (same).

3

4

5    3.    Defendants Counsel are awarded a total of **$155,979.09** in fees and costs,

6          which includes the $137,616.69 originally awarded as well as the

7          supplemental fees and costs of $18,362.40. Plaintiff, Darren Del Nero, is

8          liable for this entire amount for bringing this Fair Debt Collection Practices

9          Act ("FDCPA") case in bad faith and for the purpose of harassment. *See* 15

10         U.S.C. § 1692k(a)(3).

11

12

13   4.    **The award of fees and costs is to be borne *jointly and severable* by**

14         **Plaintiff Darren Del Nero and his counsel, Hyde & Swigart**. The law

15         allows a court to impose fees on counsel for a party who files a FDCPA claim

16         in bad faith under § 1692k(a)(3) of the FDCPA and Rule 11 of the Federal

17         Rules of Civil Procedure. *See Terran v. Kaplan*, 109 F.3d 1428 (9th Cir.

18         1997); *Sierra v. Foster & Garbus*, 48 F.Supp.2d 393 (S.D.N.Y. 1999). The

19         Court finds that fees should be imposed on counsel in this case because

20         Plaintiff's counsel continued to file FDCPA suits on behalf of Mr. Del Nero

21         *after* the court trial in this case. In his supplemental declaration Plaintiff's

22         counsel, Mr. Hyde, states that it was not until the trial in this case that he

23         realized his client had been "less than forthcoming" about the "facts

24         surrounding the . . . trial in this matter." (Supp. Decl. Of Hyde at ¶32.) Based

25         on what Mr. Hyde learned about his client, he asserts that "had [he] known

26

27

28

1    then what [he] know[s] now, or even 1/1,00,000th [*sic*] of what [he] know[s]

2    now, about Mr. Del Nero, [he] would *never have agreed to represent him in*

3    *this case or any other matter.*" (*Id.* at ¶38.) While the Court appreciates the

4    candor of this statement, Mr. Hyde appears to have said one thing and done

5    another.  The Court trial in ths matter ended on March 24, 2005 and the

6    parties closing briefs were due on April 15, 2005. Yet despite what Plaintiff's

7    counsel stated he learned about his client during trial, his firm chose to

8    continue representing Mr. Del Nero in other FDCPA actions and even filed

9    a new complaint on November 3, 2005.[3] This filing was *months* after the trial

10   in this case where Plaintiff's counsel claims he first learned of his client's

11   numerous problems. Further, this November 2005 action also resulted in an

12   award of attorneys' fees against Plaintiff Del Nero for filing a baseless action.

13          Taken together these post-trial facts and counsel's representation of

14   Mr. Del Nero in numerous other FDCPA actions demonstrate that Plaintiff's

15   counsel participated in the filing of bad faith FDCPA actions and should

16   therefore be liable for Defendants' attorneys' fees along with Plaintiff Del

17   Nero.

**IT IS SO ORDERED.**

DATED: February _16_, 2007

_[signature]_

Hon. George P. Schiavelli
United States District Judge

_____

[3]    *Darren D. Chaker v. Felipa R. Richland, et al*, CV-05-7851 RSWL (PLAx)

# EXHIBIT H

✓ Priority
✓ Send
___ Clsd
___ Enter
✓ JS-5/JS-6
___ JS-2/JS-3

FILED
CLERK, U.S. DISTRICT COURT

APR 1 9 2007

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| DARREN DEL NERO and NICOLE SHAKER, | Case No. CV 04-1040 GPS (SHx) |
| Plaintiff, | |
| v. | **JUDGMENT** |
| MIDLAND CREDIT MANAGEMENT, INC.; MRC RECEIVABLES CORP.; and DOES 1-10, | |
| Defendants. | |

DOCKETED ON CM

APR 20 2007

BY _____ 005

After a Court trial, the Court having found for Defendants Midland Credit Management, Inc. and MRC Receivables Corp., **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that Plaintiff shall take nothing and judgment is hereby entered for Defendants on all claims for relief. Because the Court finds this action was brought in bad faith, Plaintiff and his counsel, Hyde & Swigart, are jointly and severally liable for Defendants' attorneys' fees and costs in the amount of **$155,979.09** for the reasons stated in the Court's February 20, 2007 Order.

**IT IS SO ORDERED.**

Dated this _19_ day of April, 2007.

GEORGE P. SCHIAVELLI
UNITED STATES DISTRICT JUDGE

1

Case 3:16-cv-02186-WQH-MDD   Document 471-1   Filed 01/28/22   Page ID.22401   Page 65 of 445

# EXHIBIT I

# Plaintiff's Exhibit

Transcript of Ninth Circuit Oral Argument

October 23, 2008

_____

Midland Credit Management Inc.; MRC Receivables Corp.

v.

Darren Del Nero; Nicole Shaker

04 CV-01040

**Original Transcript**

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

DARREN DEL NERO; NICOLE SHAKER,

      Plaintiffs,

vs.

                             DOCKET NO.: 07-55326

MIDLAND CREDIT MANAGEMENT INC.;
MRC RECEIVABLES CORP.,

      Defendants-Appellees,

and

ROBERT L. HYDE; JOSHUA B. SWIGART;
HYDE & SWIGART,

      Appellants.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**TRANSCRIPT OF ORAL ARGUMENT**

RECORDED ON: OCTOBER 23, 2008

TRANSCRIBED ON: FEBRUARY 17, 2010

TRANSCRIBED BY: AMY R. NEYHART
CSR NO. 12469, RPR



ESQUIRE
An Alexander Gallo Company

Telephone: 619.239.4111
Facsimile: 619.239.4117

555 West Beech St.
First Floor
San Diego, CA 92101

Case3:16-cv-02186-WQH-MDD Document247-1 Filed09/28/22 PageID.5015 Page799 of
Case3:16-cv-02186-WQH-MDD Document247-1 Filed09/28/22 PageID.5015 Page799 of
1196

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

- - - - - - - - - - - - - - - - - -

DARREN DEL NERO; NICOLE SHAKER,   )
                        )
     Plaintiffs,     )
                        )
       vs.       )
                        ) DOCKET NO.:  07-55326
MIDLAND CREDIT MANAGEMENT INC.;   )
MRC RECEIVABLES CORP.,     )
                        )
    Defendants-Appellees, )
                        )
     and       )
                        )
ROBERT L. HYDE; JOSHUA B. SWIGART; )
HYDE & SWIGART,       )
                        )
     Appellants.    )

- - - - - - - - - - - - - - - - - -

TRANSCRIPT OF ORAL ARGUMENT
RECORDED ON:  OCTOBER 23, 2008

TRANSCRIBED BY:  AMY R. NEYHART
CSR No. 12469, RPR



ESQUIRE

an Alexander Gallo Company

Toll Free: 800.300.1214
Facsimile: 619.239.4117

Suite 111
555 West Beech Street
San Diego, CA 92101
www.esquiresolutions.com

2

1          MR. SWIGART:   Thank you.

2          Good morning, your Honor.  If it please the

3     court, Josh Swigart on behalf of the appellants and

4     interveners in this case.

5          I think the key matter -- the key issue that

6     needs to be addressed by the court is the -- there's a

7     federal statute that allows attorney's fees shifting

8     provision, is that allowed against the attorneys

9     specifically when that statute is silent or otherwise

10    there isn't any type of congressional finding that

11    that's allowed.  I believe that the key case on point is

12    Pfingston vs. Ronan Engineering, the Ninth Circuit case

13    which speaks directly to this point.

14         Aside from that, I think it's important to

15    point out some of the relevant facts that give rise to

16    the order by the court.  I was the trial attorney that

17    tried this case, and I felt it had merit.  I argued this

18    case for four or five, six days.  At the conclusion of

19    the trial, the judge took it under submission and at the

20    end of 18 months came back with a ruling that I

21    ultimately lost.

22         But if you take a look at the findings of fact

23    that are lengthy, there isn't any allegations or any

24    type of conduct that the court addresses specifically

25    towards myself or any other member of my firm in trying



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.300.1214
Facsimile: 619.239.4117

Suite 111
555 West Beech Street
San Diego, CA 92101
www.esquiresolutions.com

3

1    the case that would support some type of award of the

2    full amount of attorney's fees that the defendants

3    incurred against myself --

4            HONORABLE PAEZ:  As I understand from my

5    recollection in briefing and whatnot, your firm came

6    into the case late in the game.

7            MR. SWIGART:  Yes, your Honor, that is correct.

8            HONORABLE PAEZ:  Is that right?

9            MR. SWIGART:  We substituted in just right

10   before trial.  In fact the pretrial memorandum, the

11   contention of law and fact, had already been drafted,

12   but we did sign off and finish preparing the pretrial

13   order.  That's the time that we substituted in.  That's

14   correct.

15           HONORABLE PAEZ:  You took the case to trial and

16   then there was a motion for -- a judgment under Rule

17   50(a); is that correct?

18           MR. SWIGART:  That's correct.

19           At conclusion of our case in chief, the

20   defendants made a multiple motions for directed verdict.

21   All of those were subsequently overruled and the case

22   allowed to proceed to the conclusion or --

23           HONORABLE PAEZ:  So at that point the judge

24   felt there was enough.

25           And the jury was still present at that time,



**ESQUIRE**
an Alexander Gallo Company

Toll Free: 800.300.1214
Facsimile: 619.239.4117

Suite 111
555 West Beech Street
San Diego, CA 92101
www.esquiresolutions.com

4

1    correct, or had the jury already been let go?

2          MR. SWIGART:  At that point the jury had been

3    let go and it had been converted into a bench trial,

4    your Honor.

5          HONORABLE PAEZ:  So it was just a motion for a

6    judgment at that time in front of the court?

7          MR. SWIGART:  Yes, your Honor.

8          HONORABLE PAEZ:  But even -- the judge assessed

9    the evidence and felt it was sufficient to go forward.

10         MR. SWIGART:  Yes, your Honor.

11         I think you bring up a good point.  That goes

12   right to what the Fifth Circuit said in National

13   Association of Government Employees where it said in

14   passing that how can a case be so frivolous as to

15   warrant sanctions when it was meritorious enough to go

16   to trial.

17         And not only was this case good enough to go to

18   trial -- I mean, the judge deliberated over the evidence

19   and the findings of facts for 18 months.  And it wasn't

20   until after the findings of fact had been submitted that

21   the appellees and the defendants in this case decided

22   that now they would want to seek an award of attorney's

23   fees not only against my client but against plaintiff's

24   counsel personally.

25         To move on, your Honor.  I've been thinking



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.300.1214
Facsimile: 619.239.4117

Suite 111
555 West Beech Street
San Diego, CA 92101
www.esquiresolutions.com

795

Case: Transcript of Oral Argument

5

1    about this case for two years.  I'm not that far out of

2    law school, but I remember my contracts professor saying

3    on the first day of contracts, "Look over the side of

4    the wall where you see all the state and federal

5    reporters.  Look at all the cases.  Look at all the case

6    books."  You know, in those cases half the people lose.

7            In this case unfortunately I lost.  There's no

8    specific finding that I conducted myself in any improper

9    way.  I didn't (unintelligible) perjury.  I didn't argue

10   a frivolous motion.

11           HONORABLE FLETCHER:  Let me split up, if I can,

12   the question of finding a bad faith as against the

13   client as distinct from as against you.

14           MR. SWIGART:  Yes, your Honor.

15           HONORABLE FLETCHER:  Let's focus on the finding

16   of bad faith under k(a)(3) as against your client.

17           MR. SWIGART:  Yes, your Honor.

18           HONORABLE FLETCHER:  I don't want to talk about

19   you for a moment.

20           What -- why was the judge wrong as to that?

21   That is to say, the judge says, "You know, the mother

22   who comes in, that testimony is just

23   flabbergastingly [sic] inadequate.  Those are deliberate

24   and preposterous lies."

25           I mean, he couldn't say enough bad things about



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.300.1214
Facsimile: 619.239.4117

Suite 111
555 West Beech Street
San Diego, CA 92101
www.esquiresolutions.com

6

1   the testimony of the mother, for example.

2          MR. SWIGART:  Yes, your Honor.

3          I think there were multiple claims at trial.

4   The one where the client's testimony, and that as well

5   as his mother, was contingent on prevailing, the judge

6   found my client and the witness not credible.

7          But to support a finding of bad faith, I think

8   that would be inappropriate.  Because before we went to

9   trial, there was absolutely no discovery conducted on

10  the case.  There was nothing.  There was no depositions.

11  No written discovery.  Nothing.  We just went to trial.

12         HONORABLE FLETCHER:  But your client knew his

13  own mother.  I mean, typically you don't depose your own

14  witnesses anyway.  And I doubt very much you'd depose

15  your own mother.  But my guess is that they had a

16  conversation, "What are you going to say mom?"

17         MR. SWIGART:  Absolutely, your Honor.

18         But putting aside for a moment the issue about

19  the credibility about the witnesses, the fact that we

20  had credit reports -- my client had credit reports that

21  showed that it didn't appear that the defendant was

22  accurately reporting to the credit reporting agency.

23         HONORABLE FLETCHER:  Did he have any credit

24  reports that were inaccurate as to him?

25         MR. SWIGART:  Yes, your Honor.



# ESQUIRE
an Alexander Gallo Company

Toll Free: 800.300.1214
Facsimile: 619.239.4117

Suite 111
555 West Beech Street
San Diego, CA 92101
www.esquiresolutions.com

7

1          His credit reports did not show the disputes in

2     which he submitted to the credit reporting agencies,

3     which the defendants were obligated to report back.

4          Now at trial they --

5          HONORABLE FLETCHER:  Now I read the record

6     differently, but I might have read it too quickly.

7          I thought that what you had was credit reports

8     that showed that -- for other people that when they sent

9     in they made mistakes.

10          Did you actually have for his credit reports

11     that it was -- that they had sent in but it was --

12     excuse me.

13          His credit reports that was not reported as

14     disputed?

15          MR. SWIGART:  Yes, your Honor, that is correct.

16          Those credit reports showed the fact that other

17     credit reporting -- the other original creditors had

18     reported as disputed, but in his specific case that the

19     defendant had not disputed with the credit reporting

20     agencies.  To find out at trial they presented -- the

21     defendants presented testimony and evidence that he in

22     fact had communicated with the credit reporting

23     agencies.

24          But from the view of the evidence as we took it

25     to trial, it appeared that it was a good claim.



**ESQUIRE**
an Alexander Gallo Company

Toll Free: 800.300.1214
Facsimile: 619.239.4117

Suite 111
555 West Beech Street
San Diego, CA 92101
www.esquiresolutions.com

8

1   Ultimately at trial it -- their evidence went out over

2   ours.  But to make it non meritorious or frivolous I

3   think is taking it a step too far.

4          HONORABLE PAEZ:  Let me just -- not all of the

5   claims depended upon the mother's testimony; is that

6   correct?

7          MR. SWIGART:  That's absolutely correct, your

8   Honor.

9          HONORABLE PAEZ:  The claim involving the

10  letter, the threat of litigation, right?

11         MR. SWIGART:  Absolutely.

12         HONORABLE PAEZ:  Threat of legal action.

13         MR. SWIGART:  Absolutely.

14         HONORABLE PAEZ:  That didn't depend on the

15  mother?

16         MR. SWIGART:  Absolutely not.  That claim stood

17  on its own, in fact independent of any type of witness.

18  That -- that letter was sent from the defendants and

19  could have been authenticated through the defendant's

20  witness.

21         I think, your Honor --

22         HONORABLE FLETCHER:  But the claim is -- I

23  mean, there's no dispute about that claim in a sense.

24  The letter says what it says and the issue is whether

25  the letter is a threat.



**ESQUIRE**
an Alexander Gallo Company

Toll Free: 800.300.1214
Facsimile: 619.239.4117

Suite 111
555 West Beech Street
San Diego, CA 92101
www.esquiresolutions.com

9

1    MR. SWIGART:  Absolutely, your Honor.

2    Absolutely.

3    And our position that it was a threat.  The

4    judge might have saw it differently but, you know, the

5    issue was --

6    HONORABLE PAEZ:  How the least sophisticated

7    consumer might perceive the letter?

8    MR. SWIGART:  That's correct.  That's correct.

9    And the standard, you know, is enunciated by

10   the Ninth Circuit, Baker vs. G.C. Services.  And our

11   interpretation of the case law in that letter was that

12   it was a threat to litigate a claim that they never

13   intended to do.  The judge saw it differently, but it

14   wasn't a bad faith claim asserted.  It had merit to it.

15   I recognize that the judge saw it differently.

16   I accept that.  I think there's -- if this order were to

17   stand, your Honor, it has a strong public policy

18   against --

19   HONORABLE PAEZ:  Let me ask you, why can't

20   we -- if you read the Statute 1692 k(a)(3), it

21   doesn't -- it doesn't say "lawyers" or "counsel" or

22   "attorneys."

23   MR. SWIGART:  I --

24   HONORABLE PAEZ:  It seems to be worded against

25   the counsel for the plaintiff.



ESQUIRE

an Alexander Gallo Company

Toll Free: 800.300.1214
Facsimile: 619.239.4117

Suite 111
555 West Beech Street
San Diego, CA 92101
www.esquiresolutions.com

Case 3:16-cv-02186-WQH-MDD Document 127-1 Filed 09/23/22 PageID.5024 Page 808 of 1196
Case 3:16-cv-02186-WQH-MDD Document 147-1 Filed 02/03/16 PageID.269 Page 4 of 5
Transcript of Oral Argument                                    October 29, 2008

10

1    MR. SWIGART:  It doesn't seem to be worded

2    against counsel?

3    HONORABLE PAEZ:  No, it doesn't -- it doesn't

4    have those words, does it?  It just says the court can

5    award fees.

6    MR. SWIGART:  Absolutely, your Honor.

7    If you take a look at the case we cite -- I

8    think is a seminal case -- Pfingston vs. Ronan

9    Engineering, with a False Claims Act, that's almost the

10   identical language.  The only -- the additional language

11   in the FDCPA is that it's not just for bad faith but

12   also for the purpose of harassment.

13   In the Pfingston case they found that absent

14   some type of legislative intent, some type of

15   congressional record, that it was supposed to be awarded

16   against the attorney's fee -- against specifically the

17   attorneys and it could only be awarded against the

18   client themselves if there's a finding of bad faith.

19   And I think that's exactly what we have in this case.  I

20   find nothing in the appellee's answer that would show a

21   different interpretation by the Ninth Circuit.

22   To go back just to save a little more of my

23   time.  Just as far as the policy argument, if this order

24   were to stand, not only will plaintiff's attorneys have

25   to worry about taking a case to trial and ultimately



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.300.1214
Facsimile: 619.239.4117

Suite 111
555 West Beech Street
San Diego, CA 92101
www.esquiresolutions.com

11

1    losing and perhaps not recovering anything for their

2    client, now they have to weigh in the fact that if the

3    judge subjectively doesn't like their case or like their

4    client that they might personally be on the hook for all

5    the defense attorney's fees.  And this goes against, you

6    know, the --

7              (Overlapping speakers.)

8              HONORABLE PAEZ:  -- Rule 11 and malicious

9    prosecution and whatnot.

10             MR. SWIGART:  With possibly with Rule 11, but

11   there's a procedure set out in Barber which would

12   identify certain things if the court were displeased

13   with the way the judge -- with the way the lawyer was

14   bringing the case.

15             In this case the motion was asserted by the

16   defendants.  It wasn't initiated by the judge.

17             HONORABLE PAEZ:  Okay.  Why don't you --

18   (unintelligible) hear from the other side.  You've got

19   about 45 seconds, and we'll give you enough chance to

20   respond -- enough time to respond.

21             MR. SWIGART:  Thank you.

22             MR. NARITA:  Your Honors, may it please the

23   court, I'm Tomio Narita from Simmonds & Narita, and I

24   represent the appellees, Midland Credit Management and

25   MRC Receivables.



**ESQUIRE**

an Alexander Gallo Company

Toll Free: 800.300.1214
Facsimile: 619.239.4117

Suite 111
555 West Beech Street
San Diego, CA 92101
www.esquiresolutions.com

12

1      Your Honors, when Congress passed the FDCPA and

2  they put this fee shifting provision into -- into place,

3  they told us what their intent was.  The intent is right

4  in the legislative history.  The intent is:  In order to

5  protect debt collectors from nuisance lawsuits, a court

6  may award fees under these circumstances.  So the intent

7  is clear.  The question is how can a district court best

8  effectuate that intent.

9      HONORABLE PAEZ:  Well, that's not -- well,

10 putting aside for a moment the whole bad faith question,

11 even against the plaintiffs, just go to the statute.

12     Where do you find the authority in the statute

13 to award fees against the lawyers?

14     MR. NARITA:  The statute is silent, your Honor.

15 The statute is silent.

16     HONORABLE PAEZ:  What's your best case --

17     MR. NARITA:  The best case --

18     HONORABLE PAEZ:  -- that supports us reading

19 this to encompass attorneys?

20     MR. NARITA:  Well, I think the best case is you

21 read two together, your Honor.

22     HONORABLE PAEZ:  Which two?

23     MR. NARITA:  Pfingston with Motown.

24     HONORABLE PAEZ:  Which one?

25     MR. NARITA:  You read Pfingston, which is this



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.300.1214
Facsimile: 619.239.4117

Suite 111
555 West Beech Street
San Diego, CA 92101
www.esquiresolutions.com

Case Transcript of Oral Argument 147-1   Filed 03/16/10   Page 2384-1 Page 845 1196

13

1    court's decision, with Motown from the Second Circuit.

2         Pfingston says, In the absence of any evidence

3    about what Congress' intent is, then we assume that the

4    attorney cannot be responsible where the statute is

5    silent.

6         HONORABLE PAEZ:  So why don't -- now why isn't

7    that -- why don't we -- and that's our law.  I mean,

8    that's Ninth Circuit law.

9         MR. NARITA:  If you look at the -- the Second

10   Circuit had this type of situation with the

11   (unintelligible) and in Motown that statute was also

12   silent.

13        There was nothing in the plain language of the

14   statute to tell a court whether it could be awarded

15   against an attorney or not, so the Second Circuit went

16   to the legislative history of the (unintelligible) and

17   they found something there which guided them, which is

18   when Congress passed it they said, "This is to deter

19   harassing lawsuits."

20        So given that, the Second Circuit

21   (unintelligible) look, how are we going to do that?  How

22   are we going to effectuate Congress' intent?  The

23   district court has to have the ability to -- to award

24   the fees both against the debtor and the debt collector.

25        HONORABLE PAEZ:  Well, you can always get fees



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.300.1214
Facsimile: 619.239.4117

Suite 111
555 West Beech Street
San Diego, CA 92101
www.esquiresolutions.com

14

1    against the lawyer -- sanctions against the lawyer for
2    Rule 11 violations.
3            MR. NARITA:  Correct.
4            And Rule 11 has its own procedures but --
5            HONORABLE FLETCHER:  (Unintelligible) Section
6    1927.  I mean, the various provisions you can get at a
7    lawyer who has behaved badly.
8            MR. NARITA:  That is correct.
9            HONORABLE PAEZ:  (Unintelligible) prosecution,
10   too.
11           MR. NARITA:  A separate suit would do that,
12   your Honor.  Absolutely correct.  However, we're talking
13   about whether this particular statute allows for it or
14   not.
15           You asked for my best case.  As I said, it's
16   this court's case in Pfingston which says, what do
17   you -- what do we do if there's no -- no congressional
18   intent.  You read that with Motown where it says
19   (unintelligible) we found it, and you have to read the
20   two together.  That's why I started with the legislative
21   history of the FDCPA, which is to protect debt
22   collectors from nuisance fees.
23           (Overlapping speakers.)
24           HONORABLE FLETCHER:  They're already protected
25   to some degree with attorney's fees against the client,



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.300.1214
Facsimile: 619.239.4117

Suite 111
555 West Beech Street
San Diego, CA 92101
www.esquiresolutions.com

Case 3:16-cv-02186-WQH-MSD Document 27-1 Filed 09/23/22 PageID.5029 Page 813 of
1196
Case Transcript of Oral Argument 27-1 Filed 02/23/16 Page 2 of 12, Page 806 45
#196

15

1   so that doesn't -- unless you got something very

2   specific in the legislative history that says "and in

3   order to effectuate that intent, we want attorney's fees

4   not only against the client but also against the

5   attorney whenever we find that there's been a frivolous

6   lawsuit," I can't get where you want me to get based

7   upon just a general statement that we're trying to

8   protect the debt collector against a frivolous lawsuit.

9   And that's even assuming that I'm going to go against

10  the Pfingston that says it's not and the wording of the

11  statute is not there.

12          MR. NARITA:  Right.

13          Well, I think what Pfingston says, your Honor,

14  with due respect, is unless Congress has

15  (unintelligible) some other intent, when it's silent you

16  don't go against the attorney.  And here again --

17          HONORABLE FLETCHER:  The ordinary place we look

18  for congressional indication of intent is the statute.

19          MR. NARITA:  The Second Circuit -- this is the

20  question that this panel has to struggle with.  And my

21  point --

22          HONORABLE FLETCHER:  I have to say I'm not

23  going to struggle very hard.  (Unintelligible) speak for

24  my colleagues on this.

25          HONORABLE PAEZ:  Maybe we can just focus on the



Toll Free: 800.300.1214
Facsimile: 619.239.4117

ESQUIRE
an Alexander Gallo Company

Suite 111
555 West Beech Street
San Diego, CA 92101
www.esquiresolutions.com

16

1    bad faith that Judge Fletcher was pointing to earlier.

2         MR. NARITA:  Sure.

3         HONORABLE PAEZ:  Really what -- and address my

4    earlier question, too.  The case got beyond judgment and

5    to Rule 50 or whatever it is.  By that time, yeah, there

6    was a court trial.

7         MR. NARITA:  Correct.

8         HONORABLE PAEZ:  The judge says there's enough

9    here to go forward.

10        MR. NARITA:  Exactly.

11        HONORABLE PAEZ:  Why doesn't that -- why is

12   that -- that shows to me it may have been a minimally --

13   what's the term?  Minimally persuasive, which is a term

14   used in the case law.

15        MR. NARITA:  I don't think that beating a Rule

16   52 motion insulates you from having a bad faith

17   action -- and we've cited decisions from this circuit

18   and from other circuits that say that -- because

19   sometimes it takes until the end of the case to really

20   assess the entire record as a whole and know that, Hey,

21   you know that testimony that they put on in their case

22   in chief?  It wasn't worth anything.  It wasn't true.

23        If you read the findings of fact --

24        HONORABLE FLETCHER:  It sounds as though the

25   mother's testimony became -- it was fairly obvious by



# ESQUIRE
an Alexander Gallo Company

Toll Free: 800.300.1214
Facsimile: 619.239.4117

Suite 111
555 West Beech Street
San Diego, CA 92101
www.esquiresolutions.com

807

17

1    the time she sat down that it wasn't much.

2            MR. NARITA:  This is true, and yet the district

3    court chose to give the plaintiff the opportunity to go

4    through the rest of the trial.  That was probably the

5    district court --

6            HONORABLE PAEZ:  Well, it -- after the

7    plaintiff had presented their case and called their

8    witnesses, the court could have said, "This case is

9    over.  This is nothing but a -- they're lying through

10   their teeth.  It's made up.  It's ridiculous.  Judgment

11   for the defendant."  Right then and there.

12           MR. NARITA:  Absolutely could have done that.

13           HONORABLE PAEZ:  Instead, the judge said, "No.

14   I want to hear from the defendant.  You call your

15   witnesses and you explain what happened here."

16           MR. NARITA:  That's correct, your Honor.

17           And when all was said and done --

18           HONORABLE PAEZ:  There was enough there for the

19   judge to put the -- to put the burden on you to come

20   back with evidence.

21           MR. NARITA:  I absolutely agree with you, your

22   Honor, and then the rest of the case happened.  And then

23   the district court in looking at everything he saw,

24   entered the findings of fact and said, "This is a case

25   that's factually groundless.  There is nothing" --



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.300.1214
Facsimile: 619.239.4117

Suite 111
555 West Beech Street
San Diego, CA 92101
www.esquiresolutions.com

Case 3:16-cv-02186-WQH-MDD Document 127-1 Filed 09/23/22 PageID.5032 Page 816 of
1196
Case 3:16-cv-02186-WQH-MDD Document 147-1 Filed 02/03/16 PageID.4905 Page 816 of
Transcript of Oral Argument                    1196                October 29, 2008
#217

18

1      HONORABLE PAEZ:  Just taking the mother's --

2   putting aside the negative credibility findings with

3   respect to the mother (unintelligible) testimony and

4   whatnot, they did have a claim regarding the deceptive

5   letter -- alleged deceptive letter, which didn't require

6   her testimony at all.  It required was (unintelligible)

7   take a look at this letter.

8      MR. NARITA:  That's correct.

9      HONORABLE PAEZ:  There was no -- it was

10  admissible (unintelligible) look at it.

11      You know, we're dealing with -- you judge this

12  letter from the perspective of the least sophisticated

13  consumer.  You read this letter and I -- you know, there

14  is some minimally -- it is minimally persuasive that

15  this is deceptive.

16      MR. NARITA:  But the claim, your Honor, on that

17  letter was that my clients didn't have an intent to

18  proceed with litigation, which after --

19      HONORABLE PAEZ:  Right.  And so the judge

20  required you to go forward to present your evidence on

21  that.

22      But at first blush when you look at this letter

23  and you read it, you know, the least sophisticated

24  consumer is going to think, "You're going to sue me."

25      MR. NARITA:  Well, that was the plaintiff's



# ESQUIRE
an Alexander Gallo Company

Toll Free: 800.300.1214
Facsimile: 619.239.4117

Suite 111
555 West Beech Street
San Diego, CA 92101
www.esquiresolutions.com

19

1    position.  The court let that claim go.

2         Once the court heard all the evidence -- again,

3    they found out what -- what the plaintiff had no basis

4    for alleging, which is my client did intend to sue

5    Mr. Del Nero.  He had gone through the right cues.  He

6    was sue qualify and they found that out, but he didn't

7    care.  He made that claim anyway.

8         HONORABLE FLETCHER:  Let me ask you -- let me

9    ask you the following:  I heard a moment ago when

10   Mr. Swigart was standing up that the credit reports for

11   Mr. Del Nero showed the debts as not disputed; is that

12   correct?  The credit report specific to him show the

13   debts as not disputed?

14        MR. NARITA:  Your Honor, I don't believe that's

15   in the record.  I have searched this record very

16   carefully.  I don't believe there's anything in the

17   record on that.

18        HONORABLE FLETCHER:  What they presented at

19   trial?

20        MR. NARITA:  I don't believe they were, your

21   Honor.  I don't think that's correct.  I don't

22   believe --

23        HONORABLE FLETCHER:  His credit reports never

24   show up at trial?

25        MR. NARITA:  I do not believe they did.  I --



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.300.1214
Facsimile: 619.239.4117

Suite 111
555 West Beech Street
San Diego, CA 92101
www.esquiresolutions.com

20

1   that is my best representation to you.  It's a large

2   record, but I do not believe --

3          HONORABLE FLETCHER:  And did you try the case?

4          MR. NARITA:  I did not try the case.

5          Mr. Turner, who's with me, tried the case.

6          HONORABLE FLETCHER:  Maybe he can tell me.

7          Mr. Turner?

8          MR. TURNER:  Stephen Turner, your Honor.

9          HONORABLE FLETCHER:  Would you come up -- just

10  into the mike.

11         MR. TURNER:  Certainly, your Honor.

12         I wasn't anticipating participating in the

13  argument today.  I don't have a clear recollection of

14  what was produced, what was introduced into evidence or

15  not.

16         HONORABLE FLETCHER:  Exhibits?

17         MR. TURNER:  Exhibits.

18         And I'm not going to in any way appear to be

19  trying to mislead the court.

20         HONORABLE FLETCHER:  You can't remember?

21         MR. TURNER:  I genuinely don't.

22         HONORABLE FLETCHER:  That's a fair answer.  We

23  can go back and look.

24         Okay.  Thank you.

25         MR. TURNER:  I'm sorry, your Honor.



**ESQUIRE**
an Alexander Gallo Company

Toll Free: 800.300.1214
Facsimile: 619.239.4117

Suite 111
555 West Beech Street
San Diego, CA 92101
www.esquiresolutions.com

21

1    HONORABLE FLETCHER:  That's fine.

2    MR. NARITA:  That's -- my recollection is they

3    did not make it in, but the record is --

4    (Overlapping speakers.)

5    MR. NARITA:  I was surprised to hear that

6    statement.

7    HONORABLE FLETCHER:  Yeah.  Okay.

8    MR. NARITA:  The -- further to Judge Paez's

9    point, which is does getting by a motion in essence

10   insulate you from a later finding of bad faith.  This

11   court has found to the contrary in the -- in the Credit

12   Managers Kennesaw case, which we cited to you, where the

13   plaintiff actually beat summary judgment and a Rule 52

14   motion at trial and then later, after all the evidence

15   was in, this court affirmed a ruling that the case was

16   brought in bad faith and a fee award.

17   There's several other cases from out of the

18   circuit.  I think in the FDCPA context, perhaps the

19   best -- perhaps the best example is the Chaudhry case

20   from the Fourth Circuit.

21   HONORABLE PAEZ:  Let me ask you this:  Now the

22   lawyers didn't initially file this case, but I guess

23   your claim is they continued it in bad faith, this group

24   of lawyers?

25   MR. NARITA:  Correct.



**ESQUIRE**
an Alexander Gallo Company

Toll Free: 800.300.1214
Facsimile: 619.239.4117

Suite 111
555 West Beech Street
San Diego, CA 92101
www.esquiresolutions.com

22

1       HONORABLE PAEZ:  They didn't draft the
2   complaint and file it and --
3       MR. NARITA:  You're correct.
4       HONORABLE PAEZ:  -- all that stuff.
5       MR. NARITA:  But they brought it.  They --
6       HONORABLE PAEZ:  They substituted in and they
7   continued with the case.
8       So your claim is really that they continued the
9   case in bad faith when they knew that it was frivolous.
10  Is that right?
11      MR. NARITA:  Yes.  And I believe that --
12      HONORABLE PAEZ:  So nonetheless they should be
13  saddled with all the attorney's fees from the beginning
14  to the end?
15      MR. NARITA:  That's what the district court
16  found.  It's supported by substantial evidence in the
17  record.  He was within his discretion to do that.
18      I think within the meaning of the statute, they
19  brought this case.  They brought it to trial.  I don't
20  think the word "brought" means that you --
21      HONORABLE PAEZ:  Well, malicious prosecution,
22  you pick up where the lawyer steps in.
23      MR. NARITA:  Under State law.  You know, I
24  think that the --
25      HONORABLE PAEZ:  A lawyer can be held liable



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.300.1214
Facsimile: 619.239.4117

Suite 111
555 West Beech Street
San Diego, CA 92101
www.esquiresolutions.com

813

Case 3:16-cv-02186-WQH-MDD Document 127-1 Filed 09/28/22 PageID.5037 Page 821 of
1196

Case 3:16-cv-02186-WQH-MDD Document 147-1 Filed 02/26/18 PageID.4984 Page 814 of
Transcript of Oral Argument                  October 29, 2008
#:222

23

for not only filing a case, you know, with ill motives
and whatnot, but also for continuing it when they learn
that the case is -- has no merit.

MR. NARITA:  I believe that's correct and
that's analogous to what we have here.

Within the meaning of the statute to brought --
they have brought this action.

HONORABLE FLETCHER:  Now the evidence that you
say convinced the judge that the letter was not
threatening, something they didn't intend to do, that's
not what the judge ruled.

What the judge ruled was, as I read this, this
isn't a threat.  The judge in his order didn't say, "I
find as a matter of fact they in fact intended to sue."

Am I remembering that order incorrectly?

MR. NARITA:  I think that both concepts are in
the order, but I think your Honor is correct that he
disbelieved the interpretation of what the -- the
plaintiff's interpretation of the letter --

HONORABLE FLETCHER:  At what point in the trial
do you come in with the evidence that says, "Well, we
actually did intend to sue"?

MR. NARITA:  After -- well, I mean, the
evidence was admitted after the Rule 52 motions were
denied.



# ESQUIRE
an Alexander Gallo Company

Toll Free: 800.300.1214
Facsimile: 619.239.4117

Suite 111
555 West Beech Street
San Diego, CA 92101
www.esquiresolutions.com

24

1          HONORABLE FLETCHER: And as they went to

2     trial -- as they took this case to trial, did they know

3     that you had this evidence?

4          MR. NARITA: Well, I believe it showed up in

5     the pretrial filings and the people we were going to

6     call to demonstrate that. And if they had no reasonable

7     basis for knowing what we've done or haven't done and

8     whether they're sue qualified and they've taken no

9     discovery --

10          HONORABLE FLETCHER: Well, who's sue

11     qualified -- I'm not sure sue qualified means the same

12     thing as we're actually going to bring a lawsuit.

13          I mean, what was the amount of the debt here?

14          MR. NARITA: I don't recall that, your Honor.

15     It was significant. It was certainly -- it was more

16     than $6,000.

17          And it was -- Ms. Melconian testified it was

18     more than enough to qualify to be sued. I'm using "sue

19     qualified" in a -- in a shorthand sense, but the

20     testimony of Ms. Melconian was that Midland did intend

21     to sue this debtor. That I do believe was part of the

22     judge's ruling and also just a rejecting of the

23     interpretation of the letter.

24          Again, I don't think the fact that he

25     allowed --



Toll Free: 800.300.1214
Facsimile: 619.239.4117

Suite 111
555 West Beech Street
San Diego, CA 92101
www.esquiresolutions.com

Case 3:16-cv-02186-W-JLB Document 127-1 Filed 09/23/22 PageID.5039 Page 823 of 1196
Case Transcript of Oral Argument Document 247-1 Filed 02/24/16 Page 823 PageID.3068 45
4196

25

1          HONORABLE FLETCHER:  I have to say that I find

2     that letter -- if I'm reading that letter -- I mean,

3     there are threats and there are threats.

4          I mean, I can say I am going to take you out

5     behind the shed here and I'm going to just beat the

6     daylights out of you.  That sounds like a threat.

7          MR. NARITA:  Sure.

8          HONORABLE FLETCHER:  I can also look at you,

9     look at my fist and look back at you.  That's a threat.

10    Depending on the circumstance between the two of us, I

11    could simply look at you.  That might be a threat.  That

12    letter reads to me like a threat.

13         Now, it may be that he doesn't say, "I am going

14    to sue you," but it looks to me like a threat that, Hey,

15    I'm thinking very seriously about this.

16         I mean, the judge disagreed, and the judge may

17    be right, but I don't think it's a frivolous argument

18    that that letter was a threat.

19         MR. NARITA:  Well, the judge found otherwise in

20    the sense that he found that this case had absolutely no

21    factual basis to it, and that is in his findings.

22         And under Chaudhry that is --

23         HONORABLE FLETCHER:  Factual?  I mean, the

24    letter's right in front of us.

25         MR. NARITA:  No.  I mean -- but facts combined



**ESQUIRE**

an Alexander Gallo Company

Toll Free: 800.300.1214
Facsimile: 619.239.4117

Suite 111
555 West Beech Street
San Diego, CA 92101
www.esquiresolutions.com

816

Case 3:16-cv-02186-W-OH-MRD Document 127-1 Filed 09/23/22 PageID.5040 Page 824 of
1196
Case 3:16-cv-02186-W-OH-MRD Document 117-1 Filed 02/16/18 Page 2 of Page.5040 Page 824 of
Transcript of Oral Argument       October 29, 2008

26

1    with the law, your Honor.  It's a factually groundless

2    case.  In other words, the facts presented do not amount

3    to a cause of action and Chaudhry teaches us that that

4    is -- that's the very kind of nuisance lawsuit that

5    Congress was trying to deter.

6              HONORABLE PAEZ:  Thank you.

7              Response?  You saved a little time.

8              Thank you.

9              MR. SWIGART:  Just response briefly, your

10   Honor.

11             As far as Chaudhry is concerned, if you read

12   the holding on that case, it was K(3) sanctions -- K(3)

13   fee shifting towards the plaintiff in that case, not the

14   lawyers.  It was actually Rule 11 that was imposed on

15   the lawyers in that case.

16             What we have here is not an issue of sanctions.

17   If the judge found I had some type of misconduct or

18   engaged in some type of misconduct, the judge would know

19   I had a sanction.

20             HONORABLE FLETCHER:  Yeah, the judge's order

21   mentions Rule 11 briefly, but this clearly is not a Rule

22   11 sanction, yeah.

23             MR. SWIGART:  Yes, your Honor, and I would

24   agree with that.  It's a fee shifting award under K(3).

25             And Pfingston teaches us in the Ninth Circuit,



## ESQUIRE
an Alexander Gallo Company

Toll Free: 800.300.1214
Facsimile: 619.239.4117

Suite 111
555 West Beech Street
San Diego, CA 92101
www.esquiresolutions.com

27

1    controlling case for this matter, that you can't get it

2    against lawyers, that you can only proceed against the

3    clients.

4            I'd submit, your Honor.  Thank you.

5            HONORABLE PAEZ:  Okay.  Thank you very much.

6            Thank you both sides for their argument.

7            Hyde vs. Midland Credit Management is now

8    submitted for decision.

9            (End of recording.)



ESQUIRE

an Alexander Gallo Company

Toll Free: 800.300.1214
Facsimile: 619.239.4117

Suite 111
555 West Beech Street
San Diego, CA 92101
www.esquiresolutions.com

```
 1    STATE OF CALIFORNIA )

 2                        )    SS.

 3    COUNTY OF SAN DIEGO )

 4

 5            I, Amy R. Neyhart, a certified shorthand reporter

 6    for the State of California, do hereby certify:

 7            That the foregoing audiotaped proceeding was

 8    transcribed by me to the best of my ability; that the

 9    foregoing is a true record of the testimony and

10    proceedings taken at that time.

11            I further certify that I am a disinterested

12    person and that I am in no way interested in the outcome

13    of said action.

14            In witness whereof, I have subscribed my name

15    this  8th  day of  February  , 2010.

16

17

18                                /s/ Amy R. Neyhart

                                  Amy R. Neyhart
19                                CSR No. 12469

20

21

22

23

24

25
```



Toll Free: 800.300.1214
Facsimile: 619.239.4117

Suite 111
555 West Beech Street
San Diego, CA 92101
www.esquiresolutions.com

819

| A | | | | |
|---|---|---|---|---|
| **ability** | **alleged** | **asserted** | 5:12,16,25 | **briefing** |
| 13:23 28:8 | 18:5 | 9:14 11:15 | 6:7 9:14 | 3:5 |
| **absence** | **alleging** | **assess** | 10:11,18 | **briefly** |
| 13:2 | 19:4 | 16:20 | 12:10 16:1 | 26:9,21 |
| **absent** | **allowed** | **assessed** | 16:16 21:10 | **bring** |
| 10:13 | 2:8,11 3:22 | 4:8 | 21:16,23 | 4:11 24:12 |
| **absolutely** | 24:25 | **Association** | 22:9 | **bringing** |
| 6:9,17 8:7 | **allows** | 4:13 | **badly** | 11:14 |
| 8:11,13,16 | 2:7 14:13 | **assume** | 14:7 | **brought** |
| 9:1,2 10:6 | **amount** | 13:3 | **Baker** | 21:16 22:5 |
| 14:12 17:12 | 3:2 24:13 | **assuming** | 9:10 | 22:19,19,20 |
| 17:21 25:20 | 26:2 | 15:9 | **Barber** | 23:6,7 |
| **accept** | **Amy** | **attorney** | 11:11 | **burden** |
| 9:16 | 1:21 28:5,18 | 2:16 13:4,15 | **based** | 17:19 |
| **accurately** | **analogous** | 15:5,16 | 15:6 | |
| 6:22 | 23:5 | **attorneys** | **basis** | **C** |
| **Act** | **answer** | 2:8 9:22 | 19:3 24:7 | **California** |
| 10:9 | 10:20 20:22 | 10:17,24 | 25:21 | 28:1,6 |
| **action** | **anticipating** | 12:19 | **beat** | **call** |
| 8:12 16:17 | 20:12 | **attorney's** | 21:13 25:5 | 17:14 24:6 |
| 23:7 26:3 | **anyway** | 2:7 3:2 4:22 | **beating** | **called** |
| 28:13 | 6:14 19:7 | 10:16 11:5 | 16:15 | 17:7 |
| **additional** | **APPEALS** | 14:25 15:3 | **beginning** | **care** |
| 10:10 | 1:1 | 22:13 | 22:13 | 19:7 |
| **address** | **appear** | **audiotaped** | **behalf** | **carefully** |
| 16:3 | 6:21 20:18 | 28:7 | 2:3 | 19:16 |
| **addressed** | **appeared** | **authentic...** | **behaved** | **case** |
| 2:6 | 7:25 | 8:19 | 14:7 | 2:4,11,12,17 |
| **addresses** | **appellants** | **authority** | **believe** | 2:18 3:1,6 |
| 2:24 | 1:14 2:3 | 12:12 | 2:11 19:14 | 3:15,19,21 |
| **admissible** | **appellees** | **award** | 19:16,20,22 | 4:14,17,21 |
| 18:10 | 4:21 11:24 | 3:1 4:22 | 19:25 20:2 | 5:1,5,7 |
| **admitted** | **appellee's** | 10:5 12:6 | 22:11 23:4 | 6:10 7:18 |
| 23:24 | 10:20 | 12:13 13:23 | 24:4,21 | 9:11 10:7,8 |
| **affirmed** | **argue** | 21:16 26:24 | **bench** | 10:13,19,25 |
| 21:15 | 5:9 | **awarded** | 4:3 | 11:3,14,15 |
| **agencies** | **argued** | 10:15,17 | **best** | 12:16,17,20 |
| 7:2,20,23 | 2:17 | 13:14 | 12:7,16,17 | 14:15,16 |
| **agency** | **argument** | | 12:20 14:15 | 16:4,14,19 |
| 6:22 | 1:17 10:23 | **B** | 20:1 21:19 | 16:21 17:7 |
| **ago** | 20:13 25:17 | **B** | 21:19 28:8 | 17:8,22,24 |
| 19:9 | 27:6 | 1:12 | **beyond** | 20:3,4,5 |
| **agree** | **aside** | **back** | 16:4 | 21:12,15,19 |
| 17:21 26:24 | 2:14 6:18 | 2:20 7:3 | **blush** | 21:22 22:7 |
| **allegations** | 12:10 18:2 | 10:22 17:20 | 18:22 | 22:9,19 |
| 2:23 | **asked** | 20:23 25:9 | **books** | 23:1,3 24:2 |
| | 14:15 | **bad** | 5:6 | 25:20 26:2 |
| | | | | 26:12,13,15 |



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.300.1214
Facsimile: 619.239.4117

Suite 111
555 West Beech Street
San Diego, CA 92101
www.esquiresolutions.com

| | | | | |
|---|---|---|---|---|
| **27:1** | **claims** | **congressi...** | 10:4 11:12 | **deceptive** |
| **cases** | 6:3 8:5 10:9 | 2:10 10:15 | 11:23 12:5 | 18:4,5,15 |
| 5:5,6 21:17 | **clear** | 14:17 15:18 | 12:7 13:14 | **decided** |
| **cause** | 12:7 20:13 | **consumer** | 13:23 16:6 | 4:21 |
| 26:3 | **clearly** | 9:7 18:13,24 | 17:3,5,8,23 | **decision** |
| **certain** | 26:21 | **contention** | 19:1,2 | 13:1 27:8 |
| 11:12 | **client** | 3:11 | 20:19 21:11 | **decisions** |
| **certainly** | 4:23 5:13,16 | **context** | 21:15 22:15 | 16:17 |
| 20:11 24:15 | 6:6,12,20 | 21:18 | **court's** | **defendant** |
| **certified** | 10:18 11:2 | **contingent** | 13:1 14:16 | 6:21 7:19 |
| 28:5 | 11:4 14:25 | 6:5 | **credibility** | 17:11,14 |
| **certify** | 15:4 19:4 | **continued** | 6:19 18:2 | **defendants** |
| 28:6,11 | **clients** | 21:23 22:7,8 | **credible** | 3:2,20 4:21 |
| **chance** | 18:17 27:3 | **continuing** | 6:6 | 7:3,21 8:18 |
| 11:19 | **client's** | 23:2 | **credit** | 11:16 |
| **Chaudhry** | 6:4 | **contracts** | 1:9 6:20,20 | **Defendant...** |
| 21:19 25:22 | **colleagues** | 5:2,3 | 6:22,23 7:1 | 1:10 |
| 26:3,11 | 15:24 | **contrary** | 7:2,7,10,13 | **defendant's** |
| **chief** | **collector** | 21:11 | 7:16,17,19 | 8:19 |
| 3:19 16:22 | 13:24 15:8 | **controlling** | 7:22 11:24 | **defense** |
| **chose** | **collectors** | 27:1 | 19:10,12,23 | 11:5 |
| 17:3 | 12:5 14:22 | **conversation** | 21:11 27:7 | **degree** |
| **circuit** | **combined** | 6:16 | **creditors** | 14:25 |
| 1:2 2:12 | 25:25 | **converted** | 7:17 | **Del** |
| 4:12 9:10 | **come** | 4:3 | **CSR** | 1:6 19:5,11 |
| 10:21 13:1 | 17:19 20:9 | **convinced** | 1:22 28:19 | **deliberate** |
| 13:8,10,15 | 23:21 | 23:9 | **cues** | 5:23 |
| 13:20 15:19 | **comes** | **CORP** | 19:5 | **deliberated** |
| 16:17 21:18 | 5:22 | 1:9 | | 4:18 |
| 21:20 26:25 | **communicated** | **correct** | **D** | **demonstrate** |
| **circuits** | 7:22 | 3:7,14,17,18 | **DARREN** | 24:6 |
| 16:18 | **complaint** | 4:1 7:15 | 1:6 | **denied** |
| **circumstance** | 22:2 | 8:6,7 9:8,8 | **day** | 23:25 |
| 25:10 | **concepts** | 14:3,8,12 | 5:3 28:15 | **depend** |
| **circumsta...** | 23:16 | 16:7 17:16 | **daylights** | 8:14 |
| 12:6 | **concerned** | 18:8 19:12 | 25:6 | **depended** |
| **cite** | 26:11 | 19:21 21:25 | **days** | 8:5 |
| 10:7 | **conclusion** | 22:3 23:4 | 2:18 | **Depending** |
| **cited** | 2:18 3:19,22 | 23:17 | **dealing** | 25:10 |
| 16:17 21:12 | **conduct** | **counsel** | 18:11 | **depose** |
| **claim** | 2:24 | 4:24 9:21,25 | **debt** | 6:13,14 |
| 7:25 8:9,16 | **conducted** | 10:2 | 12:5 13:24 | **depositions** |
| 8:22,23 | 5:8 6:9 | **COUNTY** | 14:21 15:8 | 6:10 |
| 9:12,14 | **Congress** | 28:3 | 24:13 | **deter** |
| 18:4,16 | 12:1 13:3,18 | **court** | **debtor** | 13:18 26:5 |
| 19:1,7 | 13:22 15:14 | 1:1 2:3,6,16 | 13:24 24:21 | **DIEGO** |
| 21:23 22:8 | 26:5 | 2:24 4:6 | **debts** | 28:3 |
| | | | 19:11,13 | |


**ESQUIRE**
an Alexander Gallo Company

Toll Free: 800.300.1214
Facsimile: 619.239.4117

Suite 111
555 West Beech Street
San Diego, CA 92101
www.esquiresolutions.com

Case 3:16-cv-02186-WQH-MDD Document 127-1 Filed 09/23/22 PageID.5045 Page 829 of 1196
Transcript of Oral Argument                                    October 23, 2008

31

| | | | |
|---|---|---|---|
| **different** 10:21 | 16:1,4 | 23:14,14 24:24 | **filing** 23:1 |
| **differently** 7:6 9:4,13 9:15 | **effectuate** 12:8 13:22 15:3 | **facts** 2:15 4:19 25:25 26:2 | **filings** 24:5 |
| **directed** 3:20 | **Employees** 4:13 | **factual** 25:21,23 | **find** 7:20 10:20 12:12 15:5 23:14 25:1 |
| **directly** 2:13 | **encompass** 12:19 | **factually** 17:25 26:1 | **finding** 2:10 5:8,12 5:15 6:7 10:18 21:10 |
| **disagreed** 25:16 | **engaged** 26:18 | **fair** 20:22 | **findings** 2:22 4:19,20 16:23 17:24 18:2 25:21 |
| **disbelieved** 23:18 | **Engineering** 2:12 10:9 | **fairly** 16:25 | **fine** 21:1 |
| **discovery** 6:9,11 24:9 | **entered** 17:24 | **faith** 5:12,16 6:7 9:14 10:11 10:18 12:10 16:1,16 21:10,16,23 22:9 | **finish** 3:12 |
| **discretion** 22:17 | **entire** 16:20 | | **firm** 2:25 3:5 |
| **disintere...** 28:11 | **enunciated** 9:9 | | **first** 5:3 18:22 |
| **displeased** 11:12 | **essence** 21:9 | **False** 10:9 | **fist** 25:9 |
| **dispute** 8:23 | **evidence** 4:9,18 7:21 7:24 8:1 13:2 17:20 18:20 19:2 20:14 21:14 22:16 23:8 23:21,24 24:3 | **far** 5:1 8:3 10:23 26:11 | **five** 2:18 |
| **disputed** 7:14,18,19 19:11,13 | | **FDCPA** 10:11 12:1 14:21 21:18 | **flabberga...** 5:23 |
| **disputes** 7:1 | | **federal** 2:7 5:4 | **Fletcher** 5:11,15,18 6:12,23 7:5 8:22 14:5 14:24 15:17 15:22 16:1 16:24 19:8 19:18,23 20:3,6,9,16 20:20,22 21:1,7 23:8 23:20 24:1 24:10 25:1 25:8,23 26:20 |
| **distinct** 5:13 | | **fee** 10:16 12:2 21:16 26:13 26:24 | |
| **district** 12:7 13:23 17:2,5,23 22:15 | **exactly** 10:19 16:10 | **fees** 2:7 3:2 4:23 10:5 11:5 12:6,13 13:24,25 14:22,25 15:3 22:13 | |
| **DOCKET** 1:8 | **example** 6:1 21:19 | | |
| **doubt** 6:14 | **excuse** 7:12 | | |
| **draft** 22:1 | **Exhibits** 20:16,17 | **felt** 2:17 3:24 4:9 | |
| **drafted** 3:11 | **explain** 17:15 | **Fifth** 4:12 | **focus** 5:15 15:25 |
| **due** 15:14 | | **file** 21:22 22:2 | **following** |

| | | | |
|---|---|---|---|
| **E** | **F** | | |
| **earlier** | **fact** 2:22 3:10,11 4:20 6:19 7:16,22 8:17 11:2 16:23 17:24 | | |

| | | | |
|---|---|---|---|
| | | | 19:9 |
| | | | **foregoing** 28:7,9 |
| | | | **forward** 4:9 16:9 18:20 |
| | | | **found** 6:6 10:13 13:17 14:19 19:3,6 21:11 22:16 25:19,20 26:17 |
| | | | **four** 2:18 |
| | | | **Fourth** 21:20 |
| | | | **frivolous** 4:14 5:10 8:2 15:5,8 22:9 25:17 |
| | | | **front** 4:6 25:24 |
| | | | **full** 3:2 |
| | | | **further** 21:8 28:11 |

| **G** |
|---|
| **game** 3:6 |
| **general** 15:7 |
| **genuinely** 20:21 |
| **getting** 21:9 |
| **give** 2:15 11:19 17:3 |
| **given** 13:20 |
| **go** 4:1,3,9,15 4:17 10:22 12:11 15:9 15:16 16:9 |



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.300.1214
Facsimile: 619.239.4117

Suite 111
555 West Beech Street
San Diego, CA 92101
www.esquiresolutions.com

Transcript of Oral Argument                    October 23, 2008

32

| | | | | |
|---|---|---|---|---|
| 17:3 18:20 | history | 26:6,20 | intended | 16:4 17:10 |
| 19:1 20:23 | 12:4 13:16 | 27:5 | 9:13 23:14 | 21:13 |
| **goes** | 14:21 15:2 | **Honors** | **intent** | **jury** |
| 4:11 11:5 | **holding** | 11:22 12:1 | 10:14 12:3,3 | 3:25 4:1,2 |
| **going** | 26:12 | **hook** | 12:4,6,8 | |
| 6:16 13:21 | **Honor** | 11:4 | 13:3,22 | **K** |
| 13:22 15:9 | 2:2 3:7 4:4 | **Hyde** | 14:18 15:3 | **Kennesaw** |
| 15:23 18:24 | 4:7,10,25 | 1:12,13 27:7 | 15:15,18 | 21:12 |
| 18:24 20:18 | 5:14,17 6:2 | | 18:17 | **key** |
| 24:5,12 | 6:17,25 | **I** | **interested** | 2:5,5,11 |
| 25:4,5,13 | 7:15 8:8,21 | **identical** | 28:12 | **kind** |
| **good** | 9:1,17 10:6 | 10:10 | **interpret...** | 26:4 |
| 2:2 4:11,17 | 12:14,21 | **identify** | 9:11 10:21 | **knew** |
| 7:25 | 14:12 15:13 | 11:12 | 23:18,19 | 6:12 22:9 |
| **Government** | 17:16,22 | **ill** | 24:23 | **know** |
| 4:13 | 18:16 19:14 | 23:1 | **interveners** | 5:6,21 9:4,9 |
| **groundless** | 19:21 20:8 | **important** | 2:4 | 11:6 16:20 |
| 17:25 26:1 | 20:11,25 | 2:14 | **introduced** | 16:21 18:11 |
| **group** | 23:17 24:14 | **imposed** | 20:14 | 18:13,23 |
| 21:23 | 26:1,10,23 | 26:14 | **involving** | 22:23 23:1 |
| **guess** | 27:4 | **improper** | 8:9 | 24:2 26:18 |
| 6:15 21:22 | **HONORABLE** | 5:8 | **issue** | **knowing** |
| **guided** | 3:4,8,15,23 | **inaccurate** | 2:5 6:18 | 24:7 |
| 13:17 | 4:5,8 5:11 | 6:24 | 8:24 9:5 | **k(a)(3)** |
| **G.C** | 5:15,18 | **inadequate** | 26:16 | 5:16 9:20 |
| 9:10 | 6:12,23 7:5 | 5:23 | | **K(3)** |
| | 8:4,9,12,14 | **inappropr...** | **J** | 26:12,12,24 |
| **H** | 8:22 9:6,19 | 6:8 | **Josh** | |
| **half** | 9:24 10:3 | **incorrectly** | 2:3 | **L** |
| 5:6 | 11:8,17 | 23:15 | **JOSHUA** | **L** |
| **happened** | 12:9,16,18 | **incurred** | 1:12 | 1:12 |
| 17:15,22 | 12:22,24 | 3:3 | **judge** | **language** |
| **harassing** | 13:6,25 | **independent** | 2:19 3:23 | 10:10,10 |
| 13:19 | 14:5,9,24 | 8:17 | 4:8,18 5:20 | 13:13 |
| **harassment** | 15:17,22,25 | **indication** | 5:21 6:5 | **large** |
| 10:12 | 16:3,8,11 | 15:18 | 9:4,13,15 | 20:1 |
| **hard** | 16:24 17:6 | **initially** | 11:3,13,16 | **late** |
| 15:23 | 17:13,18 | 21:22 | 16:1,8 | 3:6 |
| **hear** | 18:1,9,19 | **initiated** | 17:13,19 | **law** |
| 11:18 17:14 | 19:8,18,23 | 11:16 | 18:11,19 | 3:11 5:2 |
| 21:5 | 20:3,6,9,16 | **insulate** | 21:8 23:9 | 9:11 13:7,8 |
| **heard** | 20:20,22 | 21:10 | 23:11,12,13 | 16:14 22:23 |
| 19:2,9 | 21:1,7,21 | **insulates** | 25:16,16,19 | 26:1 |
| **held** | 22:1,4,6,12 | 16:16 | 26:17,18 | **lawsuit** |
| 22:25 | 22:21,25 | **intend** | **judge's** | 15:6,8 24:12 |
| **Hey** | 23:8,20 | 19:4 23:10 | 24:22 26:20 | 26:4 |
| 16:20 25:14 | 24:1,10 | 23:22 24:20 | **judgment** | **lawsuits** |
| | 25:1,8,23 | | 3:16 4:6 | |



**ESQUIRE**
an Alexander Gallo Company

Toll Free: 800.300.1214
Facsimile: 619.239.4117

Suite 111
555 West Beech Street
San Diego, CA 92101
www.esquiresolutions.com

Case 3:16-cv-02106-WQH-MDD Document 247-1 Filed 09/23/22 PageID.5047 Page 831 of
1196
Transcript of Oral Argument                                            October 23, 2008

33

| | | | | |
|---|---|---|---|---|
| 12:5 13:19 | 25:9,9,11 | **meritorious** | 1:9 11:25 | 26:4 |
| **lawyer** | **looking** | 4:15 8:2 | **multiple** | _____ |
| 11:13 14:1,1 | 17:23 | **Midland** | 3:20 6:3 | **O** |
| 14:7 22:22 | **looks** | 1:9 11:24 | _____ | **obligated** |
| 22:25 | 25:14 | 24:20 27:7 | **N** | 7:3 |
| **lawyers** | **lose** | **mike** | **name** | **obvious** |
| 9:21 12:13 | 5:6 | 20:10 | 28:14 | 16:25 |
| 21:22,24 | **losing** | **minimally** | **Narita** | **OCTOBER** |
| 26:14,15 | 11:1 | 16:12,13 | 11:22,23,23 | 1:18 |
| 27:2 | **lost** | 18:14,14 | 12:14,17,20 | **Okay** |
| **learn** | 2:21 5:7 | **misconduct** | 12:23,25 | 11:17 20:24 |
| 23:2 | **lying** | 26:17,18 | 13:9 14:3,8 | 21:7 27:5 |
| **legal** | 17:9 | **mislead** | 14:11 15:12 | **Once** |
| 8:12 | _____ | 20:19 | 15:19 16:2 | 19:2 |
| **legislative** | **M** | **mistakes** | 16:7,10,15 | **opportunity** |
| 10:14 12:4 | **malicious** | 7:9 | 17:2,12,16 | 17:3 |
| 13:16 14:20 | 11:8 22:21 | **mom** | 17:21 18:8 | **ORAL** |
| 15:2 | **Management** | 6:16 | 18:16,25 | 1:17 |
| **lengthy** | 1:9 11:24 | **moment** | 19:14,20,25 | **order** |
| 2:23 | 27:7 | 5:19 6:18 | 20:4 21:2,5 | 2:16 3:13 |
| **letter** | **Managers** | 12:10 19:9 | 21:8,25 | 9:16 10:23 |
| 8:10,18,24 | 21:12 | **months** | 22:3,5,11 | 12:4 15:3 |
| 8:25 9:7,11 | **matter** | 2:20 4:19 | 22:15,23 | 23:13,15,17 |
| 18:5,5,7,12 | 2:5 23:14 | **morning** | 23:4,16,23 | 26:20 |
| 18:13,17,22 | 27:1 | 2:2 | 24:4,14 | **ordinary** |
| 23:9,19 | **mean** | **mother** | 25:7,19,25 | 15:17 |
| 24:23 25:2 | 4:18 5:25 | 5:21 6:1,5 | **National** | **original** |
| 25:2,12,18 | 6:13 8:23 | 6:13,15 | 4:12 | 7:17 |
| **letter's** | 13:7 14:6 | 8:15 18:3 | **needs** | **outcome** |
| 25:24 | 23:23 24:13 | **mother's** | 2:6 | 28:12 |
| **Let's** | 25:2,4,16 | 8:5 16:25 | **negative** | **Overlapping** |
| 5:15 | 25:23,25 | 18:1 | 18:2 | 11:7 14:23 |
| **liable** | **meaning** | **motion** | **Nero** | 21:4 |
| 22:25 | 22:18 23:6 | 3:16 4:5 | 1:6 19:5,11 | **overruled** |
| **lies** | **means** | 5:10 11:15 | **never** | 3:21 |
| 5:24 | 22:20 24:11 | 16:16 21:9 | 9:12 19:23 | _____ |
| **litigate** | **Melconian** | 21:14 | **Neyhart** | **P** |
| 9:12 | 24:17,20 | **motions** | 1:21 28:5,18 | **PAEZ** |
| **litigation** | **member** | 3:20 23:24 | **NICOLE** | 3:4,8,15,23 |
| 8:10 18:18 | 2:25 | **motives** | 1:6 | 4:5,8 8:4,9 |
| **little** | **memorandum** | 23:1 | **Ninth** | 8:12,14 9:6 |
| 10:22 26:7 | 3:10 | **Motown** | 1:2 2:12 | 9:19,24 |
| **look** | **mentions** | 12:23 13:1 | 9:10 10:21 | 10:3 11:8 |
| 2:22 5:3,5,5 | 26:21 | 13:11 14:18 | 13:8 26:25 | 11:17 12:9 |
| 10:7 13:9 | **merit** | **move** | **non** | 12:16,18,22 |
| 13:21 15:17 | 2:17 9:14 | 4:25 | 8:2 | 12:24 13:6 |
| 18:7,10,22 | 23:3 | **MRC** | **nuisance** | 13:25 14:9 |
| 20:23 25:8 | | | 12:5 14:22 | 15:25 16:3 |



**ESQUIRE**
an Alexander Gallo company

Toll Free: 800.300.1214
Facsimile: 619.239.4117

Suite 111
555 West Beech Street
San Diego, CA 92101
www.esquiresolutions.com

Case 3:16-cv-02106-WQH-MDD   Document 127-1   Filed 09/23/22   PageID.7948   Page 832 of
Case 3:06-cv-01840-QH-WDD   Document 147-1   Filed 05/28/10   Page 220 of 71   PageID: 307 of
1186

Transcript of Oral Argument          October 23, 2008

34

| | | | | |
|---|---|---|---|---|
| 16:8,11 | plaintiff | 28:7 | 12:21,25 | 7:13,18 |
| 17:6,13,18 | 9:25 17:3,7 | proceedings | 14:18,19 | reporter |
| 18:1,9,19 | 19:3 21:13 | 28:10 | 16:23 18:13 | 28:5 |
| 21:21 22:1 | 26:13 | produced | 18:23 23:12 | reporters |
| 22:4,6,12 | plaintiffs | 20:14 | 26:11 | 5:5 |
| 22:21,25 | 1:7 12:11 | professor | reading | reporting |
| 26:6 27:5 | plaintiff's | 5:2 | 12:18 25:2 | 6:22,22 7:2 |
| Paez's | 4:23 10:24 | prosecution | reads | 7:17,19,22 |
| 21:8 | 18:25 23:19 | 11:9 14:9 | 25:12 | reports |
| panel | please | 22:21 | really | 6:20,20,24 |
| 15:20 | 2:2 11:22 | protect | 16:3,19 22:8 | 7:1,7,10,13 |
| part | point | 12:5 14:21 | reasonable | 7:16 19:10 |
| 24:21 | 2:11,13,15 | 15:8 | 24:6 | 19:23 |
| participa... | 3:23 4:2,11 | protected | recall | represent |
| 20:12 | 15:21 21:9 | 14:24 | 24:14 | 11:24 |
| particular | 23:20 | provision | Receivables | represent... |
| 14:13 | pointing | 2:8 12:2 | 1:9 11:25 | 20:1 |
| passed | 16:1 | provisions | recognize | require |
| 12:1 13:18 | policy | 14:6 | 9:15 | 18:5 |
| passing | 9:17 10:23 | public | recollection | required |
| 4:14 | position | 9:17 | 3:5 20:13 | 18:6,20 |
| people | 9:3 19:1 | purpose | 21:2 | respect |
| 5:6 7:8 24:5 | possibly | 10:12 | record | 15:14 18:3 |
| perceive | 11:10 | put | 7:5 10:15 | respond |
| 9:7 | preparing | 12:2 16:21 | 16:20 19:15 | 11:20,20 |
| perjury | 3:12 | 17:19,19 | 19:15,17 | response |
| 5:9 | preposterous | putting | 20:2 21:3 | 26:7,9 |
| person | 5:24 | 6:18 12:10 | 22:17 28:9 | responsible |
| 28:12 | present | 18:2 | RECORDED | 13:4 |
| personally | 3:25 18:20 | | 1:18 | rest |
| 4:24 11:4 | presented | Q | recording | 17:4,22 |
| perspective | 7:20,21 17:7 | qualified | 27:9 | ridiculous |
| 18:12 | 19:18 26:2 | 24:8,11,11 | recovering | 17:10 |
| persuasive | pretrial | 24:19 | 11:1 | right |
| 16:13 18:14 | 3:10,12 24:5 | qualify | regarding | 3:8,9 4:12 |
| Pfingston | prevailing | 19:6 24:18 | 18:4 | 8:10 12:3 |
| 2:12 10:8,13 | 6:5 | question | rejecting | 15:12 17:11 |
| 12:23,25 | probably | 5:12 12:7,10 | 24:22 | 18:19 19:5 |
| 13:2 14:16 | 17:4 | 15:20 16:4 | relevant | 22:10 25:17 |
| 15:10,13 | procedure | quickly | 2:15 | 25:24 |
| 26:25 | 11:11 | 7:6 | remember | rise |
| pick | procedures | | 5:2 20:20 | 2:15 |
| 22:22 | 14:4 | R | remembering | ROBERT |
| place | proceed | R | 23:15 | 1:12 |
| 12:2 15:17 | 3:22 18:18 | 1:21 28:5,18 | report | Ronan |
| plain | 27:2 | read | 7:3 19:12 | 2:12 10:8 |
| 13:13 | proceeding | 7:5,6 9:20 | reported | RPR |



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.300.1214
Facsimile: 619.239.4117

Suite 111
555 West Beech Street
San Diego, CA 92101
www.esquiresolutions.com

Transcript of Oral Argument                                    October 23, 2008

35

| | | | | |
|---|---|---|---|---|
| 1:22 | seconds | 3:12 | 28:1,6 | 24:8,10,11 |
| **Rule** | 11:19 | **significant** | **statement** | 24:18,21 |
| 3:16 11:8,10 | **Section** | 24:15 | 15:7 21:6 | 25:14 |
| 14:2,4 16:5 | 14:5 | **silent** | **STATES** | **sued** |
| 16:15 21:13 | **see** | 2:9 12:14,15 | 1:1 | 24:18 |
| 23:24 26:14 | 5:4 | 13:5,12 | **statute** | **sufficient** |
| 26:21,21 | **seek** | 15:15 | 2:7,9 9:20 | 4:9 |
| **ruled** | 4:22 | **Simmonds** | 12:11,12,14 | **suit** |
| 23:11,12 | **seminal** | 11:23 | 12:15 13:4 | 14:11 |
| **ruling** | 10:8 | **simply** | 13:11,14 | **summary** |
| 2:20 21:15 | **sense** | 25:11 | 14:13 15:11 | 21:13 |
| 24:22 | 8:23 24:19 | **situation** | 15:18 22:18 | **support** |
| | 25:20 | 13:10 | 23:6 | 3:1 6:7 |
| **S** | **sent** | **six** | **step** | **supported** |
| **saddled** | 7:8,11 8:18 | 2:18 | 8:3 | 22:16 |
| 22:13 | **separate** | **sophistic...** | **Stephen** | **supports** |
| **SAN** | 14:11 | 9:6 18:12,23 | 20:8 | 12:18 |
| 28:3 | **seriously** | **sorry** | **steps** | **supposed** |
| **sanction** | 25:15 | 20:25 | 22:22 | 10:15 |
| 26:19,22 | **Services** | **sounds** | **stood** | **sure** |
| **sanctions** | 9:10 | 16:24 25:6 | 8:16 | 16:2 24:11 |
| 4:15 14:1 | **set** | **speak** | **strong** | 25:7 |
| 26:12,16 | 11:11 | 15:23 | 9:17 | **surprised** |
| **sat** | **SHAKER** | **speakers** | **struggle** | 21:5 |
| 17:1 | 1:6 | 11:7 14:23 | 15:20,23 | **Swigart** |
| **save** | **shed** | 21:4 | **stuff** | 1:12,13 2:1 |
| 10:22 | 25:5 | **speaks** | 22:4 | 2:3 3:7,9 |
| **saved** | **shifting** | 2:13 | **subjectively** | 3:18 4:2,7 |
| 26:7 | 2:7 12:2 | **specific** | 11:3 | 4:10 5:14 |
| **saw** | 26:13,24 | 5:8 7:18 | **submission** | 5:17 6:2,17 |
| 9:4,13,15 | **shorthand** | 15:2 19:12 | 2:19 | 6:25 7:15 |
| 17:23 | 24:19 28:5 | **specifically** | **submit** | 8:7,11,13 |
| **saying** | **show** | 2:9,24 10:16 | 27:4 | 8:16 9:1,8 |
| 5:2 | 7:1 10:20 | **split** | **submitted** | 9:23 10:1,6 |
| **says** | 19:12,24 | 5:11 | 4:20 7:2 | 11:10,21 |
| 5:21 8:24,24 | **showed** | **SS** | 27:8 | 19:10 26:9 |
| 10:4 13:2 | 6:21 7:8,16 | 28:2 | **subscribed** | 26:23 |
| 14:16,18 | 19:11 24:4 | **stand** | 28:14 | |
| 15:2,10,13 | **shows** | 9:17 10:24 | **subsequently** | **T** |
| 16:8 23:21 | 16:12 | **standard** | 3:21 | **take** |
| **school** | **sic** | 9:9 | **substantial** | 2:22 10:7 |
| 5:2 | 5:23 | **standing** | 22:16 | 18:7 25:4 |
| **searched** | **side** | 19:10 | **substituted** | **taken** |
| 19:15 | 5:3 11:18 | **started** | 3:9,13 22:6 | 24:8 28:10 |
| **Second** | **sides** | 14:20 | **sue** | **takes** |
| 13:1,9,15,20 | 27:6 | **state** | 18:24 19:4,6 | 16:19 |
| 15:19 | **sign** | 5:4 22:23 | 23:14,22 | **talk** |
| | | | | 5:18 |



ESQUIRE

an Alexander Gallo Company

Toll Free: 800.300.1214
Facsimile: 619.239.4117

Suite 111
555 West Beech Street
San Diego, CA 92101
www.esquiresolutions.com

Transcript of Oral Argument                        October 23, 2008

36

| | | | | |
|---|---|---|---|---|
| 5:18 | 25:14,18 | **type** | **wasn't** | **Y** |
| **talking** | **threatening** | 2:10,24 3:1 | 4:19 9:14 | **yeah** |
| 14:12 | 23:10 | 8:17 10:14 | 11:16 16:22 | 16:5 21:7 |
| **teaches** | **threats** | 10:14 13:10 | 16:22 17:1 | 26:20,22 |
| 26:3,25 | 25:3,3 | 26:17,18 | 20:12 | **years** |
| **teeth** | **time** | **typically** | **way** | 5:1 |
| 17:10 | 3:13,25 4:6 | 6:13 | 5:9 11:13,13 | |
| **tell** | 10:23 11:20 | | 20:18 28:12 | **$** |
| 13:14 20:6 | 16:5 17:1 | **U** | **weigh** | **$6,000** |
| **term** | 26:7 28:10 | **ultimately** | 11:2 | 24:16 |
| 16:13,13 | **today** | 2:21 8:1 | **went** | |
| **testified** | 20:13 | 10:25 | 6:8,11 8:1 | **0** |
| 24:17 | **told** | **understand** | 13:15 24:1 | **07-55326** |
| **testimony** | 12:3 | 3:4 | **we'll** | 1:8 |
| 5:22 6:1,4 | **Tomio** | **unfortuna...** | 11:19 | |
| 7:21 8:5 | 11:23 | 5:7 | **we're** | **1** |
| 16:21,25 | **transcribed** | **unintelli...** | 14:12 15:7 | **11** |
| 18:3,6 | 1:21 28:8 | 5:9 11:18 | 18:11 24:12 | 11:8,10 14:2 |
| 24:20 28:9 | **TRANSCRIPT** | 13:11,16,21 | **we've** | 14:4 26:14 |
| **Thank** | 1:17 | 14:5,9,19 | 16:17 24:7 | 26:21,22 |
| 2:1 11:21 | **trial** | 15:15,23 | **whatnot** | **12469** |
| 20:24 26:6 | 2:16,19 3:10 | 18:3,6,10 | 3:5 11:9 | 1:22 28:19 |
| 26:8 27:4,5 | 3:15 4:3,16 | **UNITED** | 18:4 23:2 | **1692** |
| 27:6 | 4:18 6:3,9 | 1:1 | **whereof** | 9:20 |
| **thing** | 6:11 7:4,20 | | 28:14 | **18** |
| 24:12 | 7:25 8:1 | **V** | **witness** | 2:20 4:19 |
| **things** | 10:25 16:6 | **various** | 6:6 8:17,20 | **1927** |
| 5:25 11:12 | 17:4 19:19 | 14:6 | 28:14 | 14:6 |
| **think** | 19:24 21:14 | **verdict** | **witnesses** | |
| 2:5,14 4:11 | 22:19 23:20 | 3:20 | 6:14,19 17:8 | **2** |
| 6:3,7 8:3 | 24:2,2 | **view** | 17:15 | **2008** |
| 8:21 9:16 | **tried** | 7:24 | **word** | 1:18 |
| 10:8,19 | 2:17 20:5 | **violations** | 22:20 | **2010** |
| 12:20 15:13 | **true** | 14:2 | **worded** | 28:15 |
| 16:15 18:24 | 16:22 17:2 | **vs** | 9:24 10:1 | **23** |
| 19:21 21:18 | 28:9 | 1:8 2:12 | **wording** | 1:18 |
| 22:18,20,24 | **try** | 9:10 10:8 | 15:10 | |
| 23:16,17 | 20:3,4 | 27:7 | **words** | **4** |
| 24:24 25:17 | **trying** | | 10:4 26:2 | **45** |
| **thinking** | 2:25 15:7 | **W** | **worry** | 11:19 |
| 4:25 25:15 | 20:19 26:5 | **wall** | 10:25 | |
| **thought** | **Turner** | 5:4 | **worth** | **5** |
| 7:7 | 20:5,7,8,8 | **want** | 16:22 | **50** |
| **threat** | 20:11,17,21 | 4:22 5:18 | **written** | 16:5 |
| 8:10,12,25 | 20:25 | 15:3,6 | 6:11 | **50(a)** |
| 9:3,12 | **two** | 17:14 | **wrong** | 3:17 |
| 23:13 25:6 | 5:1 12:21,22 | **warrant** | 5:20 | **52** |
| 25:9,11,12 | 14:20 25:10 | 4:15 | | |



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.300.1214
Facsimile: 619.239.4117

Suite 111
555 West Beech Street
San Diego, CA 92101
www.esquiresolutions.com

827

Case 3:16-cv-02186-WQH-MDD   Document 127-1   Filed 09/29/22   PageID.5051   Page 835 of
1196
Case 3:04-cv-00640-QHQ-SD   Document 247-1   Filed 03/28/16   PageXX2874   Page 95 of
1126

Transcript of Oral Argument                          October 23, 2008

37

```
16:16 21:13
23:24
```


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.300.1214
Facsimile: 619.239.4117

Suite 111
555 West Beech Street
San Diego, CA 92101
www.esquiresolutions.com

Case 3:16-cv-02186-WQH-MDD   Document 47-1   Filed 01/23/17   PageID.2282   Page 167 of
445

# EXHIBIT J

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

AUG 14 2009

MOLLY C. DWYER, CLERK OF COURT
U.S. COURT OF APPEALS

DARREN DEL NERO; NICOLE SHAKER,

            Plaintiffs,

and

ROBERT L. HYDE; JOSHUA B. SWIGART; HYDE & SWIGART,

            Appellants,

V.

MIDLAND CREDIT MANAGEMENT INC.; MRC RECEIVABLES CORP,

            Defendants - Appellees.

No. 07-55326
D.C. No. CV-04-01040-GPS
Central District of California, Los Angeles

**MANDATE**



The judgment of this Court, entered 6/9/09, takes effect this date.

This constitutes the formal mandate of this Court issued pursuant to Rule 41(a) of the Federal Rules of Appellate Procedure.

FOR THE COURT:

Molly C. Dwyer
Clerk of Court

By: Synitha Walker
Deputy Clerk

# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROBERT L. HYDE; JOSHUA B.
SWIGART; HYDE & SWIGART,
                          *Appellants,*

    and

DARREN DEL NERO, NICOLE SHAKER,
                          *Plaintiffs,*

    v.

MIDLAND CREDIT MANAGEMENT,
INC.; MRC RECEIVABLES CORP.,
             *Defendants-Appellees.*

No. 07-55326

D.C. No.
CV-04-01040-GPS

OPINION

Appeal from the United States District Court
for the Central District of California
George P. Schiavelli, District Judge, Presiding

Argued and Submitted
October 23, 2008—Pasadena, California

Filed June 9, 2009

Before: William A. Fletcher and Richard A. Paez, Circuit
Judges, and Kevin Thomas Duffy,* Senior District Judge.

Opinion by Judge William A. Fletcher

---

*The Honorable Kevin Thomas Duffy, Senior United States District
Judge for the Southern District of New York, sitting by designation.

6831

---

## COUNSEL

Alison Buchanan, Hodge, Fenton, Jones & Appel, San Jose, California, Robert L. Hyde, Joshua B. Swigart, Hyde & Swigart, San Diego, California, for the appellants.

Stephen H. Turner, Lewis, Brisbois, Bisgaard & Smith, Los Angeles, California, Tomio Buck Narita, Jeffrey A. Topor, Simmonds & Narita, San Francisco, California, for the appellee.

---

## OPINION

W. FLETCHER, Circuit Judge:

Plaintiff Darren Del Nero sued Defendants-Appellees Midland Credit Management, Inc. ("Midland") and MRC Receivables Corporation ("MRC") for violations of the Fair Debt Collection Practices Act ("FDCPA") and California Business and Professions Code § 17200. Appellants Robert L. Hyde, Joshua B. Swigart and their law firm Hyde & Swigart (collec-

tively "Hyde & Swigart") represented Del Nero. Del Nero lost his suit on the merits.

The district court awarded attorney's fees and costs to Midland and MRC under the FDCPA, 15 U.S.C. § 1692k(a)(3), holding Del Nero and Hyde & Swigart jointly and severally liable for the award. Hyde & Swigart appeal the award of attorney's fees and costs. We reverse.

## I. Background

On February 17, 2004, Del Nero and his mother Nicole Shaker sued Midland and MRC alleging violations of the FDCPA and California Business and Professions Code § 172000. Attorney Robert Stempler represented both Del Nero and Shaker. Stempler subsequently withdrew and was replaced by Del Nero's sister. Shaker settled with Midland and MDC before trial, and her claims were dismissed with prejudice. Three months before trial, Hyde & Swigart replaced Del Nero's sister as his counsel.

The case was tried to the court. At the close of plaintiff's case, Midland and MRC moved for judgment on partial findings under Federal Rule of Civil Procedure 52(c). The court granted the motion in part, dismissed all of Del Nero's claims against MRC and his § 17200 claim against Midland. The trial then continued on Del Nero's remaining FDCPA claims against Midland. After the close of evidence, the court ruled for Midland.

The district court awarded attorney's fees and costs to Midland and MRC against plaintiff Del Nero and his attorneys Hyde & Swigart jointly and severally. In support of its award, the district court wrote that "Plaintiff's only supporting witness was wholly without credibility." It wrote further, "The record of the present case as well as Plaintiff's pattern of filing apparently frivolous cases asserting debt collection violations establish that the present case was brought in bad faith

and for the purpose of harassment as defined in 15 U.S.C. § 1692k(a)(3)." The court awarded attorney's fees and costs of $155,979.09 against Del Nero under § 1692k(a)(3). It awarded the same amount against Hyde & Swigart under § 1692k(a)(3) and Federal Rule of Civil Procedure 11.

Hyde & Swigart timely appealed the award of attorney's fees and costs. Del Nero has not appealed. The parties to the appeal agree that the district court erred in awarding attorney's fees and costs under Rule 11 by not following the rule's requirements. *See* Fed. R. Civ. P. 11(c)(1)(A) (2007) (requiring a 21-day safe harbor period for a party to withdraw or correct its offending statements before the court can issue sanctions on a party's motion); 11(c)(1)(B) (2007) (requiring the court to "enter an order describing the specific conduct that appears to violate [Rule 11] and directing an attorney, law firm, or party to show cause why it has not violated [Rule 11]").

For purposes of this appeal, we assume without deciding that Del Nero's "action . . . was brought in bad faith and for the purpose of harassment" within the meaning of § 1692k(a)(3). The question presented to us is thus whether attorney's fees and costs may be awarded against a plaintiff's attorney under § 1692k(a)(3).

## II.  Standard of Review

We review *de novo* the legal question whether attorney's fees and costs may be awarded against a plaintiff's attorney under § 1692k(a)(3). *See Benson v. C.I.R.*, 560 F.3d 1133, 1135 (9th Cir. 2009). Assuming attorney's fees and costs are available against an attorney under § 1692k(a)(3), we review for abuse of discretion the district court's decision to award attorney's fees and costs. *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 933 (9th Cir. 2007); *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1148 (9th Cir. 2001). "The district court's finding on the issue of bad faith and harassment is

reviewed for clear error." *Guerrero*, 499 F.3d at 933 (citing *Swanson v. S. Or. Credit Serv., Inc.*, 869 F.2d 1222, 1229 (9th Cir. 1989)).

### III. Discussion

**[1]** Section 1692k(a)(3) provides in relevant part, "On a finding by the court that an action under [the FDCPA] was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs."

**[2]** Whether attorney's fees and costs may be awarded under § 1692k(a)(3) against an attorney of an unsuccessful abusive plaintiff is an issue of first impression in this circuit. The district court relied in part on *Terran v. Kaplan*, 109 F.3d 1428 (9th Cir. 1997), but we decided *Terran* under Rule 11. 109 F.3d at 1434-35. It is therefore inapposite to the appeal now before us. For the reasons that follow, we hold that § 1692k(a)(3) does not authorize the award of attorney's fees and costs against a plaintiff's attorneys.

**[3]** We begin by analyzing the text of the statute. Section 1692k(a)(3) is silent as to who should pay attorney's fees and costs, merely stating that "the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs." The FDCPA's legislative history reveals little more than the text. Congress stated only that it included the fee shifting provision "to protect debt collectors from nuisance lawsuits." S. Rep. No. 95-382, at 5 (1977).

**[4]** In *Pfingston v. Ronan Engineering Co.*, 284 F.3d 999 (9th Cir. 2002), we held that a similar provision in the False Claims Act ("FCA") did not authorize attorney's fees against an attorney. *Id.* at 1006. The FCA provides, "[T]he court may award to the defendant its reasonable attorneys' fees and expenses if the defendant prevails in the action and the court finds that the claim of the person bringing the action was

clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment." 31 U.S.C. § 3730(d)(4). In support of our holding, we noted that Congress had purposefully borrowed the language of the FCA from 42 U.S.C. § 1988, which does not allow fee awards against attorneys. *Pfingston*, 284 F.3d at 1006 n.4 (citing S. Rep. No. 99-345, at 29 (1986) ("[The False Claims Act] standard reflects that which is found in section 1988 . . . .")).

The legislative history of the FCA's fee shifting provision indicated Congress's strong desire to deter bad faith actions under the FCA:

> The Committee added this language in order to create a strong disincentive and send a clear message to those who might consider using the private enforcement provision of this Act for illegitimate purposes. The Committee encourages courts to strictly apply this provision in frivolous or harassment suits as well as any applicable sanctions available under the Federal Rules of Civil Procedure.

S. Rep. No. 99-345, at 29 (1986). Despite Congress's clearly expressed intent to deter bad faith actions, we refused to allow awards of attorney's fees against attorneys under the FCA given "the absence of any indication that Congress intended a different result." *Pfingston*, 284 F.3d at 1006. Indeed, there is a general "presumption that an attorney is generally not liable for fees unless that prospect is spelled out." *Heckethorn v. Sunan Corp.*, 992 F.2d 240, 242 (9th Cir. 1993).

**[5]** Just as in the FCA, Congress in the FDCPA failed to indicate any intention to authorize the award of attorney's fees and costs against attorneys representing debtors. And just as we held in *Pfingston* that such awards were not authorized under the FCA, we so hold today under the FDCPA.

Midland and MRC point us to only two decisions holding otherwise. The first case is *Chaudhry v. Gallerizzo*, 174 F.3d

394 (4th Cir. 1999), in which a prevailing defendant in a FDCPA case sought sanctions against the unsuccessful plaintiffs and their attorney under 15 U.S.C. § 1692k(a)(3), Rule 11, and 28 U.S.C. § 1927. The district court awarded $5,000 in "sanctions" against the plaintiffs and $10,000 against the attorney. *Chaudhry*, 174 F.3d at 410. The Fourth Circuit affirmed the award under all three provisions without analyzing them separately.

It is clear from the Fourth Circuit's opinion that the $10,000 sanction against the attorney was fully justified under either Rule 11 or § 1927. We strongly suspect that if the Fourth Circuit had been compelled to justify the award of attorney's fees under § 1692k(a)(3) standing alone, and had thus been compelled to focus its analysis on that section, it would have come to a different conclusion with respect to § 1692k(a)(3).

Rule 11 and § 1927 are not specific to any particular statute. Rather, they apply to any civil suit in federal district court. Further, each explicitly provides for remedies against offending attorneys. *See* Rule 11(c) (1998) ("Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that [Rule 11(b)] has been violated, the court may . . . impose an appropriate sanction upon the *attorneys, law firms*, or parties that have violated [Rule 11(b)] or are responsible for the violation.") (emphasis added); § 1927 ("Any *attorney* . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct.") (emphasis added). Finally, each gives discretion to the district court to determine the amount of the sanction depending on the nature of the conduct.

By contrast, § 1692k(a)(3) is specific to the FDCPA. Further, it nowhere specifically authorizes an award against an "attorney." Finally, it does not authorize an award of a "sanc-

tion" of an indeterminate amount in the discretion of the district court; rather, it provides for an award of the entire amount of "reasonable" "attorney's fees."

The second case is *Sierra v. Foster & Garbus*, 48 F. Supp. 2d 393 (S.D.N.Y. 1999), in which the district court awarded attorney's fees against the plaintiff's attorney in a FDCPA case. The court did so without considering the question whether the award should run against the plaintiff and not against his attorney.

[6] We are not persuaded by the limited analysis in *Chaudhry* and *Sierra* that an award of attorney's fees under § 1692k(a)(3) against plaintiffs' attorneys is proper. Based on the text and legislative history of § 1692k(a)(3), on our decision in *Pfingston* under the FCA, and on the presumption against awarding attorney's fees against attorneys, we believe that the better analysis of § 1692k(a)(3) is that it authorizes attorney's fees and costs only against the offending plaintiff or plaintiffs.

## Conclusion

[7] We hold that 15 U.S.C. § 1692k(a)(3) does not authorize the award of attorney's fees and costs against a plaintiff's attorneys. We reverse the district court's award of attorney's fees and costs against Hyde & Swigart.

**REVERSED.**

# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ROBERT L. HYDE; JOSHUA B. SWIGART; HYDE & SWIGART, *Appellants*, and DARREN DEL NERO, NICOLE SHAKER, *Plaintiffs*, v. MIDLAND CREDIT MANAGEMENT, INC.; MRC RECEIVABLES CORP., *Defendants-Appellees.* | No. 07-55326 D.C. No. CV-04-01040-GPS OPINION |

Appeal from the United States District Court
for the Central District of California
George P. Schiavelli, District Judge, Presiding

Argued and Submitted
October 23, 2008—Pasadena, California

Filed June 9, 2009

Before: William A. Fletcher and Richard A. Paez, Circuit
Judges, and Kevin Thomas Duffy,* Senior District Judge.

Opinion by Judge William A. Fletcher

---

*The Honorable Kevin Thomas Duffy, Senior United States District
Judge for the Southern District of New York, sitting by designation.

6831

## COUNSEL

Alison Buchanan, Hodge, Fenton, Jones & Appel, San Jose, California, Robert L. Hyde, Joshua B. Swigart, Hyde & Swigart, San Diego, California, for the appellants.

Stephen H. Turner, Lewis, Brisbois, Bisgaard & Smith, Los Angeles, California, Tomio Buck Narita, Jeffrey A. Topor, Simmonds & Narita, San Francisco, California, for the appellee.

## OPINION

W. FLETCHER, Circuit Judge:

Plaintiff Darren Del Nero sued Defendants-Appellees Midland Credit Management, Inc. ("Midland") and MRC Receivables Corporation ("MRC") for violations of the Fair Debt Collection Practices Act ("FDCPA") and California Business and Professions Code § 17200. Appellants Robert L. Hyde, Joshua B. Swigart and their law firm Hyde & Swigart (collec-

tively "Hyde & Swigart") represented Del Nero. Del Nero lost his suit on the merits.

The district court awarded attorney's fees and costs to Midland and MRC under the FDCPA, 15 U.S.C. § 1692k(a)(3), holding Del Nero and Hyde & Swigart jointly and severally liable for the award. Hyde & Swigart appeal the award of attorney's fees and costs. We reverse.

## I.  Background

On February 17, 2004, Del Nero and his mother Nicole Shaker sued Midland and MRC alleging violations of the FDCPA and California Business and Professions Code § 172000. Attorney Robert Stempler represented both Del Nero and Shaker. Stempler subsequently withdrew and was replaced by Del Nero's sister. Shaker settled with Midland and MDC before trial, and her claims were dismissed with prejudice. Three months before trial, Hyde & Swigart replaced Del Nero's sister as his counsel.

The case was tried to the court. At the close of plaintiff's case, Midland and MRC moved for judgment on partial findings under Federal Rule of Civil Procedure 52(c). The court granted the motion in part, dismissed all of Del Nero's claims against MRC and his § 17200 claim against Midland. The trial then continued on Del Nero's remaining FDCPA claims against Midland. After the close of evidence, the court ruled for Midland.

The district court awarded attorney's fees and costs to Midland and MRC against plaintiff Del Nero and his attorneys Hyde & Swigart jointly and severally. In support of its award, the district court wrote that "Plaintiff's only supporting witness was wholly without credibility." It wrote further, "The record of the present case as well as Plaintiff's pattern of filing apparently frivolous cases asserting debt collection violations establish that the present case was brought in bad faith

and for the purpose of harassment as defined in 15 U.S.C. § 1692k(a)(3)." The court awarded attorney's fees and costs of $155,979.09 against Del Nero under § 1692k(a)(3). It awarded the same amount against Hyde & Swigart under § 1692k(a)(3) and Federal Rule of Civil Procedure 11.

Hyde & Swigart timely appealed the award of attorney's fees and costs. Del Nero has not appealed. The parties to the appeal agree that the district court erred in awarding attorney's fees and costs under Rule 11 by not following the rule's requirements. *See* Fed. R. Civ. P. 11(c)(1)(A) (2007) (requiring a 21-day safe harbor period for a party to withdraw or correct its offending statements before the court can issue sanctions on a party's motion); 11(c)(1)(B) (2007) (requiring the court to "enter an order describing the specific conduct that appears to violate [Rule 11] and directing an attorney, law firm, or party to show cause why it has not violated [Rule 11]").

For purposes of this appeal, we assume without deciding that Del Nero's "action . . . was brought in bad faith and for the purpose of harassment" within the meaning of § 1692k(a)(3). The question presented to us is thus whether attorney's fees and costs may be awarded against a plaintiff's attorney under § 1692k(a)(3).

## II. Standard of Review

We review *de novo* the legal question whether attorney's fees and costs may be awarded against a plaintiff's attorney under § 1692k(a)(3). *See Benson v. C.I.R.*, 560 F.3d 1133, 1135 (9th Cir. 2009). Assuming attorney's fees and costs are available against an attorney under § 1692k(a)(3), we review for abuse of discretion the district court's decision to award attorney's fees and costs. *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 933 (9th Cir. 2007); *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1148 (9th Cir. 2001). "The district court's finding on the issue of bad faith and harassment is

reviewed for clear error." *Guerrero*, 499 F.3d at 933 (citing *Swanson v. S. Or. Credit Serv., Inc.*, 869 F.2d 1222, 1229 (9th Cir. 1989)).

### III.   Discussion

**[1]** Section 1692k(a)(3) provides in relevant part, "On a finding by the court that an action under [the FDCPA] was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs."

**[2]** Whether attorney's fees and costs may be awarded under § 1692k(a)(3) against an attorney of an unsuccessful abusive plaintiff is an issue of first impression in this circuit. The district court relied in part on *Terran v. Kaplan*, 109 F.3d 1428 (9th Cir. 1997), but we decided *Terran* under Rule 11. 109 F.3d at 1434-35. It is therefore inapposite to the appeal now before us. For the reasons that follow, we hold that § 1692k(a)(3) does not authorize the award of attorney's fees and costs against a plaintiff's attorneys.

**[3]** We begin by analyzing the text of the statute. Section 1692k(a)(3) is silent as to who should pay attorney's fees and costs, merely stating that "the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs." The FDCPA's legislative history reveals little more than the text. Congress stated only that it included the fee shifting provision "to protect debt collectors from nuisance lawsuits." S. Rep. No. 95-382, at 5 (1977).

**[4]** In *Pfingston v. Ronan Engineering Co.*, 284 F.3d 999 (9th Cir. 2002), we held that a similar provision in the False Claims Act ("FCA") did not authorize attorney's fees against an attorney. *Id.* at 1006. The FCA provides, "[T]he court may award to the defendant its reasonable attorneys' fees and expenses if the defendant prevails in the action and the court finds that the claim of the person bringing the action was

clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment." 31 U.S.C. § 3730(d)(4). In support of our holding, we noted that Congress had purposefully borrowed the language of the FCA from 42 U.S.C. § 1988, which does not allow fee awards against attorneys. *Pfingston*, 284 F.3d at 1006 n.4 (citing S. Rep. No. 99-345, at 29 (1986) ("[The False Claims Act] standard reflects that which is found in section 1988 . . . .")).

The legislative history of the FCA's fee shifting provision indicated Congress's strong desire to deter bad faith actions under the FCA:

> The Committee added this language in order to create a strong disincentive and send a clear message to those who might consider using the private enforcement provision of this Act for illegitimate purposes. The Committee encourages courts to strictly apply this provision in frivolous or harassment suits as well as any applicable sanctions available under the Federal Rules of Civil Procedure.

S. Rep. No. 99-345, at 29 (1986). Despite Congress's clearly expressed intent to deter bad faith actions, we refused to allow awards of attorney's fees against attorneys under the FCA given "the absence of any indication that Congress intended a different result." *Pfingston*, 284 F.3d at 1006. Indeed, there is a general "presumption that an attorney is generally not liable for fees unless that prospect is spelled out." *Heckethorn v. Sunan Corp.*, 992 F.2d 240, 242 (9th Cir. 1993).

**[5]** Just as in the FCA, Congress in the FDCPA failed to indicate any intention to authorize the award of attorney's fees and costs against attorneys representing debtors. And just as we held in *Pfingston* that such awards were not authorized under the FCA, we so hold today under the FDCPA.

Midland and MRC point us to only two decisions holding otherwise. The first case is *Chaudhry v. Gallerizzo*, 174 F.3d

394 (4th Cir. 1999), in which a prevailing defendant in a FDCPA case sought sanctions against the unsuccessful plaintiffs and their attorney under 15 U.S.C. § 1692k(a)(3), Rule 11, and 28 U.S.C. § 1927. The district court awarded $5,000 in "sanctions" against the plaintiffs and $10,000 against the attorney. *Chaudhry*, 174 F.3d at 410. The Fourth Circuit affirmed the award under all three provisions without analyzing them separately.

It is clear from the Fourth Circuit's opinion that the $10,000 sanction against the attorney was fully justified under either Rule 11 or § 1927. We strongly suspect that if the Fourth Circuit had been compelled to justify the award of attorney's fees under § 1692k(a)(3) standing alone, and had thus been compelled to focus its analysis on that section, it would have come to a different conclusion with respect to § 1692k(a)(3).

Rule 11 and § 1927 are not specific to any particular statute. Rather, they apply to any civil suit in federal district court. Further, each explicitly provides for remedies against offending attorneys. *See* Rule 11(c) (1998) ("Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that [Rule 11(b)] has been violated, the court may . . . impose an appropriate sanction upon the *attorneys, law firms*, or parties that have violated [Rule 11(b)] or are responsible for the violation.") (emphasis added); § 1927 ("Any *attorney* . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct.") (emphasis added). Finally, each gives discretion to the district court to determine the amount of the sanction depending on the nature of the conduct.

By contrast, § 1692k(a)(3) is specific to the FDCPA. Further, it nowhere specifically authorizes an award against an "attorney." Finally, it does not authorize an award of a "sanc-

tion" of an indeterminate amount in the discretion of the district court; rather, it provides for an award of the entire amount of "reasonable" "attorney's fees."

The second case is *Sierra v. Foster & Garbus*, 48 F. Supp. 2d 393 (S.D.N.Y. 1999), in which the district court awarded attorney's fees against the plaintiff's attorney in a FDCPA case. The court did so without considering the question whether the award should run against the plaintiff and not against his attorney.

**[6]** We are not persuaded by the limited analysis in *Chaudhry* and *Sierra* that an award of attorney's fees under § 1692k(a)(3) against plaintiffs' attorneys is proper. Based on the text and legislative history of § 1692k(a)(3), on our decision in *Pfingston* under the FCA, and on the presumption against awarding attorney's fees against attorneys, we believe that the better analysis of § 1692k(a)(3) is that it authorizes attorney's fees and costs only against the offending plaintiff or plaintiffs.

### Conclusion

**[7]** We hold that 15 U.S.C. § 1692k(a)(3) does not authorize the award of attorney's fees and costs against a plaintiff's attorneys. We reverse the district court's award of attorney's fees and costs against Hyde & Swigart.

**REVERSED.**

Case 3:16-cv-02186-WQH-MDD   Document 127-1   Filed 09/29/22   PageID.5071   Page 855 of
1196
Case 3:16-cv-02186-WQH-MDD   Document 47-1   Filed 01/23/17   PageID.2300   Page 125 of
145

# EXHIBIT K

# Plaintiff's Exhibit

## MUNICIPAL COURT ORDER

## February 26, 2010

_____

Midland Credit Management Inc.; MRC Receivables Corp.

v.

Darren Del Nero; Nicole Shaker

04 CV-01040

# IN THE AKRON MUNICIPAL COURT
## SUMMIT COUNTY, OHIO

Midland Funding LLC,

                 Plaintiff,

vs.

Kenneth Nedrow,

                 Defendant,

)
)
)
)
)
)
)
)
)
)

Case No.: 10 CV 00903

Judge Annalisa S. Williams

**Stay Recommendation**

It is requested that this case be stayed due to a Judicial Notice served upon the Clerk of Court by William R. Ritchey, Owner/Agent of Midland Funding LLC. The Notice states in pertinent part:

> This notice is being given in order to stay all proceedings in regards to Midland Funding, LLC, due to the fraud committed upon all parties, including the Honorable Courts within Ohio, the IRS, the Secretary of State's office, and upon us, Midland funding LLC.

In order to avoid furtherance of an alleged elaborate scheme to defraud the citizens of Ohio, the Clerk of Court is the transfer this case to the Administrative Judge Report and remove this case from the docket of Judge Annalisa S. Williams.

    **IT IS SO ORDERED.**

 

                                          **JUDGE ANNALISA S. WILLIAMS**

cc:  Kathleen Hahner, Attorney for Plaintiff
      Kenneth Nedrow, Pro Se Defendant

-1-

# EXHIBIT L

1    TOMIO B. NARITA (SBN 156576)
     JEFFREY A. TOPOR (SBN 195545)
2    SIMMONDS & NARITA LLP
     44 Montgomery Street, Suite 3010
3    San Francisco, CA 94104-4816
     Telephone: (415) 283-1000
4    Facsimile:   (415) 352-2625
     tnarita@snllp.com
5    jtopor@snllp.com

6    Attorneys for Defendants
     Midland Credit Management, Inc. and
7    MRC Receivables Corporation

8

9                  UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11

12    DARREN DEL NERO and NICOLE   )    CASE NO.: CV 04-1040 GPS (SHx)
     SHAKER,                          )
13                                   )    **DEFENDANTS' NOTICE OF**
              Plaintiffs,         )    **MOTION AND MOTION FOR**
14                                   )    **AWARD OF ATTORNEYS' FEES**
              vs.              )    **AND COSTS PURSUANT TO 28**
15                                   )    **U.S.C. § 1927 AND THE COURT'S**
     MIDLAND CREDIT         )    **INHERENT AUTHORITY;**
16    MANAGEMENT, INC. MRC     )    **MEMORANDUM OF POINTS AND**
     RECEIVABLES CORP. and DOES   )    **AUTHORITIES IN SUPPORT OF**
17    1-10,                             )    **MOTION**
                                  )
18            Defendants.      )    Hearing Date:    March 29, 2010
                                  )    Time:             10:00 a.m.
19                                   )    Courtroom:       680
                                  )
20                                   )    The Honorable Audrey B. Collins
                                  )
21    —————————————— )

22

23

24

25

26

27

28

TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 29, 2010 in Courtroom 680 of this Court located at 255 East Temple Street, Los Angeles, California 90012, at 10:00 a.m., the Honorable Audrey B. Collins presiding, defendants Midland Credit Management, Inc. and MRC Receivables, Corp will and hereby do move this Court for an Order, pursuant to 28 U.S.C. § 1927, and/or this Court's inherent authority, holding Robert L. Hyde, Joshua B. Swigart, and the law firm of Hyde & Swigart jointly and severally liable for the costs and attorneys' fees incurred by defendants in this action.

The Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support of the Motion, filed herewith, the papers on file in this action as referenced herein, and upon such other argument or evidence that the Court may consider.

This motion is made following the conference between counsel pursuant to L.R. 7-3, which took place on January 19, 2010.

DATED: March 1, 2010                SIMMONDS & NARITA LLP
                                    TOMIO B. NARITA
                                    JEFFREY A. TOPOR


                                    By:   s/Tomio B. Narita
                                          Attorneys for Defendants
                                          Midland Credit Management, Inc. and
                                          MRC Receivables Corporation

DEL NERO ET AL. V. MIDLAND CREDIT MANAGEMENT ET AL. (CASE NO. CV 04-1040 GPS (SHx))
DEFENDANTS' MOTION FOR AWARD OF ATTORNEYS' FEES; MEMO IN SUPPORT                    i.

853

# **TABLE OF CONTENTS**

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   STATEMENT OF FACTS & PROCEDURAL HISTORY . . . . . . . . . . . . . 3

      A.   The Relationship Between Del Nero And Hyde & Swigart . . . . . . . 3

      B.   The Trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      C.   Post-Trial Proceedings    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

           1.   The Findings Of Fact & Conclusions Of Law . . . . . . . . . . . . 7

           2.   Midland's Motion For Attorneys' Fees . . . . . . . . . . . . . . . . 8

           3.   The February 20, 2007 Order Awarding Fees And Costs . . . 10

           4.   Hyde & Swigart's Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . 11

III.  ARGUMENT   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      A.   The Ninth Circuit's Mandate Does Not Preclude This Court
           From Awarding Midland Its Attorneys' Fees And Costs
           Pursuant To Section 1927 Or The Court's Inherent Authority . . . . 12

      B.   The Absence Of A Remand Order Does Not Preclude This
           Motion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      C.   This Motion is Timely . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

      D.   Midland Is Entitled To An Award Of Attorneys' Fees And
           Costs Pursuant To 28 U.S.C. § 1927 . . . . . . . . . . . . . . . . . . . . . 19

      E.   The Court Can Sanction Hyde & Swigart Under Its Inherent
           Powers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

DEL NERO ET AL. V. MIDLAND CREDIT MANAGEMENT ET AL. (CASE NO. CV 04-1040 GPS (SHx))      ii.
DEFENDANTS' MOTION FOR AWARD OF ATTORNEYS' FEES; MEMO IN SUPPORT

854

<div align="center">

# TABLE OF AUTHORITIES

## FEDERAL CASES

</div>

*Artese v. Academy Collection Serv., Inc.,*
2000 WL 133733 (D. Conn. Jan. 18, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*B.K.B. v. Maui Police Dep't,*
276 F.3d 1091 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20, 21, 22

*Caldwell v. Puget Sound Elec. Apprenticeship and Training Trust,*
824 F.2d 765 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Chambers v. NASCO, Inc.,*
501 U.S. 32 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Cooter & Gell v. Hartmarx Corp.,*
496 U.S. 384 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Emich Motors Corp. v. General Motors Corp.,*
15 F.R.D. 354 (N.D. Ill. 1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Exxon Chem. Patents, Inc. v. The Lubrizol Corp.,*
137 F.3d 1475 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 15

*Fink v. Gomez,*
239 F.3d 989 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22, 23

*Gomez v. Vernon,*
255 F.3d 1118 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Herrington v. County of Sonoma,*
12 F.3d 901 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Hyde v. Midland Credit Management, Inc.,*
567 F.3d 1137 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 11, 13

*In re Sanford Fork & Tool Co.,*
160 U.S. 247 (1895) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*In Re Itel Secs. Litig.,*
791 F.2d 672 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Johnson v. Commissioner of Internal Revenue,*
289 F.3d 452 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Morrison v. Mahoney,*
399 F.3d 1042 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Optyl Eyeware Fashion Int'l Corp. v. Style Cos., Ltd.,*
760 F.2d 1045 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Plaskon v. Public Hosp. Dist. No. 1 of King County,*
2008 WL 249019 (W.D. Wash. Jan. 8, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . 16

DEL NERO ET AL. V. MIDLAND CREDIT MANAGEMENT ET AL. (CASE NO. CV 04-1040 GPS (SHx))
DEFENDANTS' MOTION FOR AWARD OF ATTORNEYS' FEES; MEMO IN SUPPORT          iii.

855

*Primus Auto. Fin. Servs., Inc. v. Batarse*,
115 F.3d 644 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Ratliff v. Stewart*,
508 F.3d 225 (5th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Red Carpet Studios Division of Source Advantage, Ltd. v. Sater*,
465 F.3d 642 (6th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Religious Tech. Ctr. v. Gerbode*,
1994 WL 228607 (C.D. Cal. May 2, 1994) . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Riley v. MEBA Pension Trust*,
452 F. Supp. 117 (S.D.N.Y. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Roadway Express, Inc. v. Piper*,
447 U.S. 752 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 21, 22

*Samsung Elec. Co., Ltd. v. Rambus, Inc.*,
440 F. Supp. 2d 512 (E.D. Va. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Sprague v. Ticonic Nat'l Bank*,
307 U.S. 161 (1939) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Cote*,
51 F.3d 178 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 14

*United States v. Kellington*,
217 F.3d 1084 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Moriel-Luna*,
585 F.3d 1191 (9th Cir. 2009)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Rivera*,
844 F.2d 916 (2d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*White v. New Hampshire Dep't of Employment Security*,
455 U.S. 445 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Willy v. Coastal Corp.*,
503 U.S. 131 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## FEDERAL STATUTES

Fair Debt Collection Practices Act,
    15 U.S.C. § 1692 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
    15 U.S.C. § 1692c(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    15 U.S.C. § 1692e . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    15 U.S.C. § 1692e(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    15 U.S.C. § 1692e(8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    15 U.S.C. § 1692k(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

28 U.S.C. § 1927 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

DEL NERO ET AL. V. MIDLAND CREDIT MANAGEMENT ET AL. (CASE NO. CV 04-1040 GPS (SHx))
DEFENDANTS' MOTION FOR AWARD OF ATTORNEYS' FEES; MEMO IN SUPPORT     iv.

856

42 U.S.C. § 1988 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**OTHER AUTHORITIES**

Federal Rules of Appellate Procedure
     Rule 41(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Federal Rules of Civil Procedure
     Rule 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
     Rule 52 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
     Rule 52(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
     Rule 59(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Goelz & Watts, *Rutter Group Practice Guide:  Federal Ninth Circuit Civil
Appellate Practice* (The Rutter Group 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

DEL NERO ET AL. V. MIDLAND CREDIT MANAGEMENT ET AL. (CASE NO. CV 04-1040 GPS (SHx))
DEFENDANTS' MOTION FOR AWARD OF ATTORNEYS' FEES; MEMO IN SUPPORT     v.

857

# I.     **INTRODUCTION**

This Court previously held that plaintiff's counsel, Robert L. Hyde and Joshua B. Swigart, of Hyde & Swigart (collectively, "Hyde & Swigart") acted in bad faith in connection with their prosecution of this case. It issued an Order holding them jointly and severally liable for the attorneys fees and costs incurred by defendants, under the Fair Debt Collection Practices Act.[1]

Should Hyde & Swigart now escape responsibility for payment, just because the Ninth Circuit held, as a matter of first impression, that fees and costs cannot be awarded against counsel under the FDCPA? The answer is "no." Instead, the Court should enter an Order holding the firm responsible for the fees and costs pursuant to 28 U.S.C. § 1927 and/or the Court's inherent authority.

After sitting through a lengthy trial, the Honorable George P. Schiavelli, (now retired) entered judgment in favor of defendants Midland Credit Management, Inc. ("MCM") and MRC Receivables Corp. ("MRC") (collectively, "Midland") on the claims asserted by plaintiff Darren Del Nero. Midland sought to recover its attorneys' fees and costs, pursuant to section 1692k(a)(3) of the Act, which allows for such an award when an action is brought "in bad faith and for the purpose of harassment."

Judge Schiavelli considered extensive post-trial briefing and argument, and then awarded Midland approximately $156,000 in attorneys' fees and costs. He found that the case "was brought to trial despite the fact that Plaintiff's only supporting witness was wholly without credibility," and that the case "was brought in bad faith and for the purpose of harassment" within the meaning of section

---

[1] 15 U.S.C. § 1692, *et seq*. (the "FDCPA" or the "Act").

DEL NERO ET AL. V. MIDLAND CREDIT MANAGEMENT ET AL. (CASE NO. CV 04-1040 GPS (SHx))
DEFENDANTS' MOTION FOR AWARD OF ATTORNEYS' FEES; MEMO IN SUPPORT     1.

1692k(a)(3).  The Court also held that Hyde & Swigart were jointly and severally liable for the award.[2]  Hyde & Swigart appealed.[3]

Answering a question of first impression, the Ninth Circuit held that attorneys' fees and costs could not be imposed against a plaintiff's attorney under section 1692k(a)(3).  *See Hyde v. Midland Credit Management, Inc.*, 567 F.3d 1137, 1141-42 (9th Cir. 2009).  Accordingly, the Ninth Circuit reversed.  *See id.* at 1142.  The finding that the action was brought in bad faith and for the purpose of harassment, however, was left undisturbed.  *See id.*[4]

At the time this Court held Hyde & Swigart responsible for fees and costs under the FDCPA, there was no binding authority governing the award.  With its decision in *Hyde,* the Ninth Circuit clarified that fees and costs may not be imposed against counsel under the FDCPA.  The fact remains, however, that after observing counsel throughout an extensive trial, and upon considering detailed post-trial briefing, this Court found that Hyde & Swigart had acted in bad faith, and that it should be jointly responsible for a significant award of fees and costs.  The Ninth Circuit's decision did not impact this bad faith finding.  Nor does the Ninth Circuit's mandate prevent further proceedings here.

Midland should not be penalized for failing to anticipate the outcome of a legal issue of first impression.  By this motion, Midland respectfully requests that, consistent with Judge Schiavelli's clear finding that Hyde & Swigart acted in bad faith, the Court hold Hyde & Swigart jointly and severally liable for the attorneys'

---

[2]  The Court imposed the award against Hyde & Swigart pursuant to both section 1692k(a)(3) and Rule 11 of the Federal Rules of Civil Procedure.  Midland later conceded that the award under Rule 11 was procedurally improper.

[3]  Del Nero did not appeal.

[4]  The Ninth Circuit did not address Midland's alternative argument that the award was justified under this Court's inherent authority.

DEL NERO ET AL. V. MIDLAND CREDIT MANAGEMENT ET AL. (CASE NO. CV 04-1040 GPS (SHx))
DEFENDANTS' MOTION FOR AWARD OF ATTORNEYS' FEES; MEMO IN SUPPORT                        2.

859

fees and costs previously awarded to Midland, pursuant to 28 U.S.C. § 1927 and/or the Court's inherent authority.[5]

## II. STATEMENT OF FACTS & PROCEDURAL HISTORY

### A. The Relationship Between Del Nero And Hyde & Swigart

This action began on February 17, 2004, when Del Nero and his mother filed the complaint against Midland, alleging violations of the FDCPA and state law. *See* Complaint (Docket Entry No. 1). Attorney Robert Stempler filed the case, but he was quickly replaced by Del Nero's sister, attorney Vania Chaker. *See* Docket Entry No. 11. A few months later, Ms. Chaker moved to withdraw as her brother's counsel. *See* Docket Entry Nos. 19-21. On October 19, 2004, citing his "inability to work with Mr. Del Nero," Mr. Stempler moved to withdraw as counsel for Del Nero's mother. *See* Docket Entry No. 39.[6]

Against this backdrop, on December 22, 2004, Hyde & Swigart substituted into this case as counsel for Del Nero. *See* Docket Entry No. 54. Hyde & Swigart knew that Del Nero was not an ordinary litigant. He had an extensive criminal history that began nearly a decade before the trial in this action.[7] Del Nero had also filed numerous civil actions, including two lawsuits against his mother (his

---

[5] Alternatively, the Court should issue an order to show cause why Hyde & Swigart should not be held jointly and severally liable for the award of costs and fees, pursuant to Rule 11.

[6] Pursuant to a settlement agreement, Shaker's claims were dismissed with prejudice on November 24, 2004. *See* Docket Entry No. 44. Del Nero would later violate the court's order *in limine*, excluding any evidence at trial concerning the settlement agreement.

[7] *See* Midland's Opposition to Plaintiff's Motion in Limine to Exclude Evidence of and Preclude Reference to Lawsuits Involving Plaintiff (Docket Entry No. 76) at Ex. 1; Midland's Request for Judicial Notice in Support of its Supplemental Opposition (Docket Entry No. 89) ("RJN") at Exs. J and K; and Amended Declaration of Stephen Turner in Support of Defendant's Motion for Attorneys' Fees (Docket Entry 181) at Ex. 4.

---

DEL NERO ET AL. V. MIDLAND CREDIT MANAGEMENT ET AL. (CASE NO. CV 04-1040 GPS (SHx))
DEFENDANTS' MOTION FOR AWARD OF ATTORNEYS' FEES; MEMO IN SUPPORT                                    3.

1  co-plaintiff and key witness in this case), Nicole Shaker ("Shaker"), where he

2  sought to enjoin her from stalking and threatening him.  *See* Declaration of Jeffrey

3  A. Topor filed herewith at Ex. A (Trial Exhibit 28) and B (Trial Exhibit 29).[8]  He

4  had also been declared a vexatious litigant by the San Diego County Municipal

5  Court.[9]

6      Despite Del Nero's checkered history, Hyde & Swigart agreed to represent

7  him in no less than eight separate lawsuits filed during a two-year period

8  beginning in early 2004.  In fact, on a single day, April 19, 2004, Hyde & Swigart

9  filed five separate lawsuits on behalf of Del Nero in this Court.  *See* RJN at Exs.

10 A-G; Topor Decl. Ex. C at pp. 114-115.[10]

11     Messrs. Hyde and Swigart testified that they interviewed Del Nero at length

12 (along with his mother, his sister and his former counsel) before taking this case.[11]

13 According to Mr. Hyde, they discussed Del Nero's "general background, possible

14

15     [8]  Del Nero alleged, *inter alia*, that his mother had threatened to "finish him

16 off" and to "make him pay the highest price," and had stated that he would "be
   meeting God sooner than expected."  *Id.*

17     [9]  *See* Midland's Supplemental Opposition to Plaintiff's Motion in Limine to

18 Exclude Evidence of and Preclude Reference to Lawsuits Involving Plaintiff, Ex. 15.
   (Docket Entry No. 88.)

19

20     [10]  In one of those suits, *Chaker v. Imperial Collection Servs.*, Hyde & Swigart
   alleged – as was alleged in this action – that the defendant had improperly contacted

21 Del Nero's mother while attempting to collect Del Nero's debt.  *See* Topor Decl. Ex.

22 F (Trial Exhibit 27).  Del Nero had previously made nearly identical allegations about
   alleged collection phone calls placed to his mother in yet another lawsuit filed in

23 2003, *Del Nero v. Riddle & Associates, et al.*, Case No. LACV03-6511 GHK.  *See id.*

24 Exs. C at pp. 118, 120, G (Trial Exhibit 26).

25     [11]  *See* Swigart Declaration in Opposition to Defendants' Motion for Attorney

26 Fees (Docket Entry No. 161) ("Swigart Decl.") at ¶ 11; Supplemental Declaration of
   Robert Hyde in Support of Opposition (Docket Entry No. 189) ("Hyde Decl.") at ¶¶

27 6-11.  Defendants note that Hyde & Swigart had already been representing Del Nero

28 for nearly eight months when this alleged extensive interview process took place.

DEL NERO ET AL. V. MIDLAND CREDIT MANAGEMENT ET AL. (CASE NO. CV 04-1040 GPS (SHx))
DEFENDANTS' MOTION FOR AWARD OF ATTORNEYS' FEES; MEMO IN SUPPORT          4.

861

criminal history, previous civil actions filed, and the facts surrounding the pending" case against Midland. *Id.* at ¶ 8. Prior to trial, the firm moved *in limine* to exclude evidence about Del Nero's prior criminal record and the numerous civil lawsuits. *See* Plaintiff's Motion in Limine to Exclude Impermissible Character Evidence of Plaintiff at Trial (Docket Entry No. 70).

Based upon his initial interviews and his review of the record, Mr. Swigart quickly concluded "there were not adequate provable facts to sustain a case against" MRC. Swigart Decl. at ¶ 18. Despite this, Hyde & Swigart never moved to dismiss MRC. They continued to press claims against MRC through trial.[12]

## B. The Trial

Hyde & Swigart called Shaker to testify that MCM had impermissibly communicated with her about her son's debt. *See* Topor Decl. Exs. D at 152-181 and E (Trial Exhibits 24, 39, 40-41). When cross-examined, however, Shaker's credibility was undermined completely. At one point, Judge Schiavelli opined that Shaker was "dancing around perjury here." *Id.* Ex. D at p. 197.[13]

Shaker claimed she was "very close" to her son (*Id.* Exs. D at p. 193 and H at pp. 9, 50), but she did not know basic things about him.[14] She admitted her son

---

[12] On January 14, 2005, Hyde & Swigart filed a Verdict Sheet on behalf of Del Nero, which reflected that Del Nero was still pursuing claims against MRC. *See* Docket Entry No. 72. On March 16, 2005, after trial had started, when joint jury instructions were submitted, Hyde & Swigart were still pursuing claims against MRC. *See* Docket Entry No. 95.

[13] During Shaker's cross-examination, the Court observed Del Nero's sister, Vania Chaker, trying to coach Del Nero's mother while she was on the stand. The court ordered Vania Chaker to show cause why she should not be held in contempt "for what I perceived to have been an attempt to coach the witness." *See* Docket Entry No. 94; Topor Decl. Ex. H at pp. 78-82.

[14] For example, she did not know his phone number or address, where he went to school, what he did for a living, if he was married or if he had children. *Id.* Ex. H

DEL NERO ET AL. V. MIDLAND CREDIT MANAGEMENT ET AL. (CASE NO. CV 04-1040 GPS (SHx))
DEFENDANTS' MOTION FOR AWARD OF ATTORNEYS' FEES; MEMO IN SUPPORT                5.

862

1  had previously sought to obtain a restraining order against her, but did not know

2  that he had done this twice. *Id*. Ex. I at p. 6. Asked about the other collectors Del

3  Nero had sued, Shaker either could not remember if they had ever called her, or

4  testified that only some of Del Nero's allegations were true. *Id*. at pp. 13-15, 22-

5  23, 25-28. She also admitted that criminal charges had been filed against her

6  based on telephone calls she had made. *Id.* at pp. 34-35.

7       Hyde & Swigart also called Del Nero, who provided detailed testimony in

8  support of his claims. On cross-examination, however, Del Nero admitted that he

9  takes "a litany of medication that really inhibit my memory," including Paxil,

10  Zyprexa, Risperdal, Klonopin, Ambien and Valium. *Id*. Ex. C at p. 71. He denied

11  many of the allegations from the lawsuits he filed against his mother, claiming

12  they were made on his behalf by unidentified volunteers at Legal Aid. *Id*. at 136-

13  176.[15]

14       When Del Nero rested, Midland moved under Rule 52(c) for Judgment on

15  Partial Findings. *See* Docket Entry No. 104; Topor Decl. Ex. J at p. 81, Ex. I at

16  pp. 41-65. Mr. Swigart conceded there was no evidence as to defendant MRC

17  ("We don't know who they are. We're here against Midland Credit

18  Management"), and stated that Del Nero had "no problem stipulating to dismiss"

19  MRC. Topor Decl. Ex. I at p. 45. Del Nero also stipulated to dismiss his section

20  17200 claim with prejudice. *Id.* at pp. 45-46.

---

at pp. 17-19, 37-40, 46-50.

[15] On the second day of cross-examination, Del Nero violated the Court's order *in limine* by testifying that Midland had entered into a settlement with his mother. *Id*. Ex. J at pp. 13-25. The Court immediately dismissed the jury from the courtroom, and stated "As far as I'm concerned, it's a contempt by Mr. Del Nero." *Id.* at p. 15. After hearing argument and directing the parties to file briefs, the court tentatively granted a mistrial; the parties then stipulated that the jury would be dismissed, and that the case would proceed to conclusion as a bench trial. *Id.* at pp. 25-34.

DEL NERO ET AL. V. MIDLAND CREDIT MANAGEMENT ET AL. (CASE NO. CV 04-1040 GPS (SHx))
DEFENDANTS' MOTION FOR AWARD OF ATTORNEYS' FEES; MEMO IN SUPPORT                6.

863

For its case, Midland called Rita Melconian, who explained that MCM could not have called Del Nero at all, because it had no record of his telephone number. *See id.* at pp. 69-77. Nor did Midland have a number for Del Nero's mother.[16]

Ms. Melconian also explained that MCM did not falsely threaten to sue Del Nero. Midland regularly filed lawsuits, and when it sent Del Nero a prelegal letter, it was authorized to sue him, "intended to pursue the option" of suing him, and his account "had already passed a screen for that avenue." *Id.* Ex. I at p. 92; Ex. K at 27, 30.[17] Contrary to Del Nero's final claim, Ms. Melconian testified that once it received Del Nero's dispute letter, MCM began reporting his debt as "disputed" to all three credit reporting agencies. *Id.* Ex. I at pp. 93-94, 117-118.

### C. Post-Trial Proceedings

#### 1. The Findings Of Fact & Conclusions Of Law

On July 11, 2006, the Court issued Findings of Fact and Conclusions of Law. *See* Docket Entry No. 144. Regarding the claim that MCM impermissibly communicated with Del Nero's mother regarding his debt, Judge Schiavelli observed the claim rested "largely" upon the testimony of Shaker, whom he found was "simply not" credible. *Id.* at ¶ 3. MCM could not have called her because it did not have her phone number. *Id.* at ¶ 3. Thus, MCM did not violate section 1692c(b) of the FDCPA. *Id.* at ¶ 6.

The Court found no evidence to support the claim that MCM used a false, deceptive or misleading misrepresentation or means to collect his debt. *Id.* at ¶ 7.

---

[16] John Nokes, a manager of systems integration for MCM, also testified that MCM <u>never</u> had a telephone number for Del Nero or for his mother. *See id.* Ex. K at pp. 65-73.

[17] On April 2, 2003, MCM changed the status of Del Nero's account, by taking "the first step in moving the account towards litigation." *Id.* Ex. I at p. 90. As of April 8, 2003, "a prelegal letter was sent." *Id.*

DEL NERO ET AL. V. MIDLAND CREDIT MANAGEMENT ET AL. (CASE NO. CV 04-1040 GPS (SHx))
DEFENDANTS' MOTION FOR AWARD OF ATTORNEYS' FEES; MEMO IN SUPPORT 7.

864

1    This section 1692e claim was based on the alleged phone calls to Shaker, but the

2    Court found "that no such conversations took place." *Id.*

3         The Court further found that MCM "never threatened to take an action

4    which they did not intend to take," when it sent Del Nero a "prelegal" letter. *Id.* at

5    ¶¶ 7, 8. Section 1692e(5) was not violated. *Id.*

6         MCM also "presented overwhelming evidence that it" reported the debt as

7    disputed to the credit reporting agencies. *Id.* at ¶¶ 8-9.  The Court held that

8    section 1692e(8) was not violated. *Id.* at ¶ 9.

9         As to MRC, the Court found that Del Nero had presented no evidence of

10   wrongful activity by it, that it had no employees, and that it was not a debt

11   collector within the meaning of the FDCPA. *Id.* at ¶¶ 9-10. Judgment was entered

12   in favor of Midland and against Del Nero. *Id.* at ¶ 10 and Judgment (Docket Entry

13   No. 145).

14        2.    Midland's Motion For Attorneys' Fees

15        Midland moved to recover it attorneys' fees and costs, pursuant to section

16   1692k(a)(3) of the FDCPA. *See* Docket Entry No. 157.  Defendants' trial counsel,

17   Stephen H. Turner, submitted a declaration detailing the time spent defending the

18   case and the rates of the professionals involved, and authenticated voluminous

19   invoices describing the work performed and the costs incurred. *See* Docket Entry

20   Nos. 158-160, 166.

21        At a hearing on the fee motion on November 27, 2006, Mr. Hyde explained

22   that although it was not "the greatest case on earth," Hyde & Swigart agreed to

23   take it because they were "dying to go to trial" so they could "learn some things":

24        We took this case because **we, in all honesty, were dying to go trial**. And
          the reason we wanted to go to trial – and I'm not suggesting it didn't have
25        merit, don't get me wrong.  I thought it had merit and I still believe it had
          merit; but **we took this case because we wanted to get in front of a judge,**
26        **learn some things.  That's why both of us were here, and that's why we**
          **took the case**.  We didn't take the case because we thought it was the
27        greatest case on earth.  Like I said, I thought it had merit to it.

28

---

DEL NERO ET AL. V. MIDLAND CREDIT MANAGEMENT ET AL. (CASE NO. CV 04-1040 GPS (SHx))
DEFENDANTS' MOTION FOR AWARD OF ATTORNEYS' FEES; MEMO IN SUPPORT                    8.

865

Case 3:18-cv-02186-WQH-MDD Document 127-1 Filed 09/29/22 PageID.5089 Page 273 of 445
Case 3:18-cv-02186-WQH-MDD Document 114-7 Filed 01/13/17 PageID.2913 Page 11 of 14
1196

Topor Decl. Ex. L at p. 8. (emphasis added).  Although Hyde & Swigart claimed

they were "no longer interested and have not been interested for a couple of years

in representing" Del Nero, Midland observed that the firm had continued to

represent him <u>after</u> the trial ended, even filing a new lawsuit on his behalf. *Id*. at

pp. 11, 19.

The Court granted Midland's motion, holding Del Nero liable for

$137,616.69 of fees and costs. *See* Docket Entry No. 183; Topor Decl. Ex. L at 28.

The Court took under submission the question of whether to hold Hyde & Swigart

jointly and severally liable for this award.  It permitted supplemental briefs

regarding whether to award Midland fees and costs incurred in briefing the fee

motion.  *See* Docket Entry No. 183; Topor Decl. Ex. L at pp. 28-29.

Mr. Hyde filed a declaration that did not address the limited issue as

directed by the Court (the propriety of "fees on fees").  *See* Docket Entry No. 184.

Instead, he declared that nothing revealed to him during the interview he allegedly

conducted before substituting into the case "caused me to have any concern that

this action had either been brought in bad faith or for the purposes of harassment,"

and that "based upon all of the then-available facts and evidence," he and Mr.

Swigart determined that the action was meritorious.  *Id*. at pp. 2-5.

Mr. Hyde conceded, however, that during the trial "I became deeply

disappointed and concerned that Mr. Del Nero had apparently been less than

forthcoming" about "his representations . . . regarding his background, criminal

history, [and] previous civil actions" that he had filed "and the facts surrounding

the pending trial in this matter."  *Id*. at pp. 7-8.[18]  Mr. Hyde stated:

---

[18]  Despite these concerns, Hyde & Swigart continued to represent Del Nero.
On September 1, 2005, months after this trial ended, Hyde & Swigart filed another
lawsuit on behalf of Del Nero in the United States District Court, Central District of
California, *Darren D. Chaker v. Felipa R. Richland, et al,* Case No. CV 05-7851
RSLW.  *See* Docket Entry No. 157 a p. 9.  That court ultimately dismissed Del Nero's

DEL NERO ET AL. V. MIDLAND CREDIT MANAGEMENT ET AL. (CASE NO. CV 04-1040 GPS (SHx))
DEFENDANTS' MOTION FOR AWARD OF ATTORNEYS' FEES; MEMO IN SUPPORT                9.

866

**In short, had I known then, what I know now, or even 1/1,000,000th of what I know now, about Mr. Del Nero, I would never have agreed to represent him in this case or any other matter.**

*Id.* at p. 9.

3.  The February 20, 2007 Order Awarding Fees And Costs

On February 20, 2007, the Court issued its Order Awarding Attorneys' Fees and Costs to Defendants. *See* Docket Entry No. 193. Judge Schiavelli found that the "case was brought to trial despite the fact that Plaintiff's only supporting witness was wholly without credibility." *Id.* at ¶ 1. He found the "record of the present case as well as Plaintiff's pattern of filing apparently frivolous cases asserting debt collection violations establish that the present case was brought in bad faith and for the purpose of harassment as defined in 15 U.S.C. § 1692k(a)(3)." *Id.* at ¶ 2.

The Court held Hyde & Swigart jointly and severally liable for the fee award, finding that "fees should be imposed on counsel in this case because [they] continued to file FDCPA suits on behalf of Mr. Del Nero *after* the court trial in this case." *Id.* at ¶ 4 (italics in original). Referencing Mr. Hyde's declaration, Judge Schiavelli noted that, although Mr. Hyde claimed he would not have agreed to represent Del Nero had he been aware of Del Nero's problems, Hyde "appears to have said one thing and done another." *Id.* Specifically, the judge observed that,

The Court trial in this matter ended on March 24, 2005 and the parties closing briefs were due on April 15, 2005. Yet despite what Plaintiff's counsel stated he learned about his client during trial, his firm chose to continue representing Mr. Del Nero in other FDCPA actions and even filed a new complaint on November 3, 2005. [*Darren D. Chaker v. Felipa R. Richland, et al*, CV-05-7851 RSWL (PLAx).] This filing was *months* after the trial in this case where Plaintiff's counsel claims he first learned of his client's numerous problems. Further, this November 2005 action also resulted in an award of attorneys' fees against Plaintiff Del Nero for filing a

amended complaint and ordered him to pay $42,934.84 to the defendants. *See* Topor Decl. Ex. M. Judge Schiavelli later cited the *Richland* order in his order awarding fees. *See* Docket Entry No. 193 at ¶ 2.

DEL NERO ET AL. V. MIDLAND CREDIT MANAGEMENT ET AL. (CASE NO. CV 04-1040 GPS (SHx))
DEFENDANTS' MOTION FOR AWARD OF ATTORNEYS' FEES; MEMO IN SUPPORT          10.

867

1   baseless action. Taken together these post-trial facts and counsel's
2   representation of Mr. Del Nero in numerous other FDCPA actions
    demonstrate that Plaintiff's counsel participated in the filing of bad faith
    FDCPA actions and should therefore be liable for Defendants' attorneys'
3   fees along with Plaintiff Del Nero.

4   *Id.* (italics in original).

5       The Court awarded Midland $155,979.09, representing the sum originally

6   awarded on November 27, 2006, plus the additional fees and costs incurred in

7   litigating the fee issue. *Id.* at ¶ 3. On March 1, 2007, Hyde & Swigart moved to

8   alter or amend the February 20, 2007 order. *See* Docket Entry Nos. 199, 200.[19]

9   The Court denied the motion on April 19, 2007. *See* Docket Entry No. 214.[20]

10          4.      Hyde & Swigart's Appeal

11      Hyde & Swigart filed a notice of appeal on March 1, 2007. *See* Docket

12  Entry No. 194. On appeal, they challenged, *inter alia*, the Court's finding that the

13  case had been brought in bad faith and for the purpose of harassment. The firm

14  also argued that the Court erred by awarding attorneys' fees and costs against them

15  under section 1692k(a)(3) of the FDCPA. *See Hyde*, 567 F.3d at 1139.[21]

16      The Ninth Circuit filed its opinion on June 9, 2009. The court assumed that

17  the action "'was brought in bad faith and for the purpose of harassment' within the

18  meaning of § 1692k(a)(3)," but reversed, holding that fees and costs could not be

19  _____

20      [19] Hyde & Swigart also moved to withdraw as counsel, and to intervene; both
21  of these unopposed motions were granted. *See* Docket Entry Nos. 195-198, 206, 208,
    213, 214, 217, 235.
22
23      [20] The Court stated, *inter alia*, that Hyde & Swigart's "argument asks the Court
    to believe that, although Mr. Hyde's declaration details issues about his client that
24  came up during the trial, he did not 'know' that these presented a problem until it
    appeared attorneys' fees might be assessed against him." *Id.* at p. 2.
25
26      [21] Hyde & Swigart also argued, and Midland agreed, that the Court erred by
27  awarding fees against them pursuant to Rule 11 of the Federal Rules of Civil
    Procedure, because the Court had not complied with the notice requirements of Rule
28  11. *See id.*

_____

DEL NERO ET AL. V. MIDLAND CREDIT MANAGEMENT ET AL. (CASE NO. CV 04-1040 GPS (SHx))
DEFENDANTS' MOTION FOR AWARD OF ATTORNEYS' FEES; MEMO IN SUPPORT                    11.

868

awarded against a plaintiff's attorney under section 1692k(a)(3). *See id.* at 1139,

1141-42. The Court's opinion concluded with the word "REVERSED." *See id.* at

1142. On August 14, 2009, the Ninth Circuit filed its mandate, pursuant to Rule

41(a) of the Federal Rules of Appellate Procedure. *See* Docket Entry No. 234.

## III. <u>ARGUMENT</u>

### A. The Ninth Circuit's Mandate Does Not Preclude This Court From Awarding Midland Its Attorneys' Fees And Costs Pursuant To Section 1927 Or The Court's Inherent Authority

Hyde & Swigart may argue that the Ninth Circuit's mandate prevents this

Court from granting the relief that Midland requests. It does not. A mandate[22] has

the effect of ending the proceedings in, and removing the jurisdiction of, the

appellate court, and returning the case to the district court. *See United States v.*

*Rivera*, 844 F.2d 916, 921 (2d Cir. 1988). In other words, when the "mandate

issues, jurisdiction over [the] case revests in the district court." *United States v.*

*Cote*, 51 F.3d 178, 182 (9th Cir. 1995); *see Exxon Chem. Patents, Inc. v. The*

*Lubrizol Corp.*, 137 F.3d 1475, 1483 (Fed. Cir. 1998) ("[E]very appellate court

judgment vests jurisdiction in the district court to carry out some further

proceedings.").

Upon receipt of the Ninth Circuit's mandate, a district court "'cannot vary it

or examine it for any other purpose than execution.'" *Cote*, 51 F.3d at 181

(quoting *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255 (1895)). Although a

district court cannot act inconsistently with an appellate court's opinion, the

district court is free to consider issues not resolved by the appellate court. *See id.*

at 181-82 (second criminal trial not precluded by mandate); *see also United States*

*v. Kellington*, 217 F.3d 1084, 1094 (9th Cir. 2000) (district court free to address

issues neither expressly nor impliedly resolved by the appeal). Thus, upon

---

[22] "[T]he mandate consists of a certified copy of the judgment, a copy of the court's opinion, if any, and any direction about costs." Fed. R. App. P. 41(a).

DEL NERO ET AL. V. MIDLAND CREDIT MANAGEMENT ET AL. (CASE NO. CV 04-1040 GPS (SHx))
DEFENDANTS' MOTION FOR AWARD OF ATTORNEYS' FEES; MEMO IN SUPPORT          12.

869

remand, the district court can entertain any issues "left open" by the appellate court's mandate. *In re Sanford*, 160 U.S. at 256; *see Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939) ("While a mandate is controlling as to matters within its compass, on the remand a lower court is free as to other issues."); *accord Caldwell v. Puget Sound Elec. Apprenticeship and Training Trust*, 824 F.2d 765, 767 (9th Cir. 1987).

In other words, as the Ninth Circuit has held, the "rule of mandate allows a lower court to decide anything not foreclosed by the mandate." *Herrington v. County of Sonoma*, 12 F.3d 901, 904-05 (9th Cir. 1993). "Accordingly, unless the reversing court indicates in its mandate or opinion" that further proceedings are prohibited, they are not. *Cote*, 51 F.3d at 182; *see Exxon Chem.*, 137 F.3d at 1483 ("[T]he nature of the district court's remaining tasks is discerned not simply from the language of the judgment, but from the judgment in combination with the accompanying opinion.").

Here, neither the Ninth Circuit's mandate nor its opinion prohibited further proceedings, and this motion is wholly consistent the rulings of this Court and the decision on appeal.

**B.    The Absence Of A Remand Order Does Not Preclude This Motion**

The Ninth Circuit's opinion concluded with the word "REVERSED," but did not explicitly state whether the case was remanded. *See Hyde*, 567 F.3d at 1142. The absence of an explicit remand instruction, however, does not bar further proceedings in this Court. *See, e.g., Sprague*, 307 U.S. at 168-70 (decision that does not specifically provide for remand is not necessary incompatible with further proceedings in district court); *see also* Goelz & Watts, *Rutter Group Practice Guide:  Federal Ninth Circuit Civil Appellate Practice* (The Rutter Group 2007), at p. 12-48.13, ¶ 12:317 ("Reversals . . . generally require further district court action. . . .).

DEL NERO ET AL. V. MIDLAND CREDIT MANAGEMENT ET AL. (CASE NO. CV 04-1040 GPS (SHx))
DEFENDANTS' MOTION FOR AWARD OF ATTORNEYS' FEES; MEMO IN SUPPORT                    13.

870

Case 3:14-cv-02186-WQH-MDD Document 127-1 Filed 09/29/22 PageID.5004 Page 878 of
1195
Case 3:14-cv-01936-WQH-MDD Document 84-7 Filed 01/23/17 PageID.2923 PageID.1418 of
1195

For example, in *Cote*, the government moved to retry defendants after their convictions were reversed on appeal. The district court denied the government's motion, believing that it "lacked the authority to retry the defendants because the mandates reversing defendants' convictions did not include an order remanding the cases." *Cote*, 51 F.3d at 180-81. Though the Ninth Circuit confirmed that the district court could not conduct "a proceeding inconsistent with the reversal of the defendants' convictions," it held that just "because the mandates did not contain an order dismissing the cases or an order directing acquittal, a second trial was not necessarily prohibited." *Id.* at 181-82.

Also instructive is *Caldwell v. Puget Sound Elec. Apprenticeship & Training Trust*, 824 F.2d 765 (9th Cir. 1987), a Title VII case, where the district court awarded the plaintiffs back pay, attorneys' fees and front pay. The defendants appealed, and the parties stipulated "to stay the award of back pay and attorney's fees pending appeal." Defendants moved to stay the award of front pay pending appeal, but their motion was denied, so the front pay was provided to plaintiffs. *See id.* at 766.

On appeal, the Ninth Circuit reversed the plaintiff's award. *See id.* The Ninth Circuit's mandate, however,

> [D]id not authorize or order refunding the front pay, nor did the court remand the case for further proceedings. The disposition read *Reversed* and nothing more. The district court complied with the order of the appellate court and entered judgment for the defendants.

*Id.* The defendants subsequently filed a motion in the district court, seeking restitution of the front pay given to plaintiffs. The district court granted the motion. *See id.*

Plaintiffs appealed, arguing, *inter alia*, that the district court exceeded the scope of the appellate court's mandate. They maintained that the "opinion's silence about front pay means that restitution of the front pay goes beyond [the appellate court's] mandate." *Id.* at 767. The Ninth Circuit swiftly rejected this:

DEL NERO ET AL. V. MIDLAND CREDIT MANAGEMENT ET AL. (CASE NO. CV 04-1040 GPS (SHx))
DEFENDANTS' MOTION FOR AWARD OF ATTORNEYS' FEES; MEMO IN SUPPORT                    14.

871

This contention misunderstands the equitable nature of restitution.  Upon return of its mandate, the district court cannot give relief beyond the scope of that mandate, but it may act on 'matters left open by the mandate.' . . . Restitution, therefore, need only be consistent with the mandate, not specifically mentioned in the opinion. . . . Requiring plaintiffs to refund the front pay was entirely consistent with our mandate.

*Id.*

Even when an appellate court reverses and states that "its reversal 'was without remand for a second trial,'" further proceedings in the trial court are not foreclosed.  *See Exxon Chem.*, 137 F.3d at 1478, 1483.  In *Exxon Chem.*, Exxon brought a patent infringement action and obtained a jury verdict in its favor on a theory of literal infringement.  On appeal, the Federal Circuit rejected the claim construction advanced by Exxon, and reversed.  *See* 137 F.3d at 1477.

Exxon sought a new trial under the doctrine of equivalents, but the district court denied Exxon's motion, concluding that the appellate court's mandate precluded such relief.  On appeal, the Federal Circuit reversed again.  Its prior mandate did not prevent the district court from granting a new trial, because its earlier opinion addressed only the issue of literal infringement.  *See id.* at 1477-78.  The court also rejected the argument that, because "[t]he operative language of the judgment consisted of the single word 'reversed,'" and because the words "'and remanded'" were omitted from the judgment,[23] no further proceedings were allowed in the district court.  *See id.* at 1483.  Interpreting the mandate

entails more than examining the language of the court's judgment in a vacuum. . . . As an initial matter, every appellate court judgment vests jurisdiction in the district court to carry out some further proceedings.  In some cases, those further proceedings may be purely ministerial, as when a judgment for the plaintiff is reversed and the only matters that remain for the district court are to dismiss the complaint and enter the judgment in the docket.  Frequently, however, the disposition of a case in the court of appeals will require the district court to undertake more significant proceedings.  In either case, the nature of the district court's remaining tasks

---

[23]  In its prior opinion, after resolving the merits of the appeal, the court stated that "Lubrizol was 'entitled to a judgment of noninfringement as a matter of law,'" and that "its reversal was 'without remand for a second trial.'"  *Id.* at 1478.

DEL NERO ET AL. V. MIDLAND CREDIT MANAGEMENT ET AL. (CASE NO. CV 04-1040 GPS (SHx))
DEFENDANTS' MOTION FOR AWARD OF ATTORNEYS' FEES; MEMO IN SUPPORT                    15.

872

is discerned not simply from the language of the judgment, but from the judgment in combination with the accompanying opinion.

*Id.*

Given these authorities, there is nothing in the Ninth Circuit's mandate that prevents this Court from proceeding with the present motion.

## C. This Motion Is Timely

Hyde & Swigart has suggested that this motion is untimely, but there is no set deadline for filing this motion. They cannot rely upon the 14-day deadline set forth in Rule 54(d)(2)(B)(i) of the Federal Rules of Civil Procedure, because it does "not apply to claims for fees and expenses as . . . sanctions under 28 U.S.C. § 1927." Fed. R. Civ. P. 54(d)(2)(E); *see Plaskon v. Public Hosp. Dist. No. 1 of King County*, 2008 WL 249019, *1 (W.D. Wash. Jan. 8, 2008); *Religious Tech. Ctr. v. Gerbode*, 1994 WL 228607, *6 n.5 (C.D. Cal. May 2, 1994). Nor does that deadline apply to a motion for sanctions under the court's inherent authority. *See Plaskon*, 2008 WL 249019 at *1.[24] As one circuit court has declared, "a court's jurisdiction to issue sanctions under 28 U.S.C. § 1927 or pursuant to a court's inherent authority is **ever present**." *Red Carpet Studios Division of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 645 (6th Cir. 2006).

Given that section 1927 "is silent as to when sanctions can no longer be imposed," it is not surprising that the Supreme Court "has consistently held that federal courts retain jurisdiction over issues – such as sanctions – that are collateral to the merits." *Id.*, citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990). In *Cooter*, the high court held that a district court could entertain a Rule 11 motion even after the plaintiff had voluntarily dismissed its action. *See*

---

[24] Rule 59(e) of the Federal Rules of Civil Procedure also does not delimit the time for bringing this motion. *See Plaskon*, 2008 WL 249019, *1; *see also White v. New Hampshire Dep't of Employment Security*, 455 U.S. 445, 452-53 (1982) (holding that Fed. R. Civ. P. 59(e) deadline does not apply to motion for attorney's fees under 42 U.S.C. § 1988).

DEL NERO ET AL. V. MIDLAND CREDIT MANAGEMENT ET AL. (CASE NO. CV 04-1040 GPS (SHx))
DEFENDANTS' MOTION FOR AWARD OF ATTORNEYS' FEES; MEMO IN SUPPORT                16.

873

496 U.S. at 395; *see also Willy v. Coastal Corp.*, 503 U.S. 131 (1992) (district court can impose sanctions under Rule 11 even where subject matter jurisdiction is lacking). The *Cooter* Court emphasized the importance of allowing the district court the ability to impose sanctions for misconduct, even after the litigation has concluded:

> Baseless filing puts the machinery of justice in motion, burdening courts and individuals alike with needless expense and delay. Even if the careless litigant quickly dismisses the action, the harm triggering Rule 11's concerns has already occurred. Therefore, a litigant who violates Rule 11 merits sanctions even after a dismissal. Moreover, the imposition of such sanctions on abusive litigants is useful to deter such misconduct. If a litigant could purge his violation of Rule 11 merely by taking a dismissal, he would lose all incentive to 'stop, think and investigate more carefully before serving and filing papers.'

*Cooter*, 496 U.S. at 398. The power to sanction "is critically important to the ability of district court's to punish misconduct by the parties or counsel. That is particularly so where the misconduct can impose significant costs on the adversary of the offending party and can significantly burden the resources of the judicial system." *Samsung Elec. Co., Ltd. v. Rambus, Inc.*, 440 F. Supp. 2d 512, 522 (E.D. Va. 2006).

Because there is "no material difference between the collateral character of sanctions under Rule 11 and sanctions awarded under 28 U.S.C. § 1927 or pursuant to a court's inherent authority," the court can impose the sanctions requested here at any time. *See Red Carpet*, 465 U.S. at 645; *see also Ratliff v. Stewart*, 508 F.3d 225, 231-32 (5th Cir. 2007) (request for sanctions under § 1927, like under Rule 11, is "similarly part of a court's collateral jurisdiction"). Midland's motion is timely.

At the February 22, 2010 Status Conference, Hyde & Swigart suggested that Midland is precluded from bringing this motion because Midland did not appeal the district court's ruling. Midland, of course, prevailed in the district court so there was nothing for it to appeal. This argument makes no sense.

---

DEL NERO ET AL. V. MIDLAND CREDIT MANAGEMENT ET AL. (CASE NO. CV 04-1040 GPS (SHx)) DEFENDANTS' MOTION FOR AWARD OF ATTORNEYS' FEES; MEMO IN SUPPORT    17.

Regardless, even where a party did not raise an issue on appeal (which is not the case here – Midland argued to the Ninth Circuit that Judge Schiavelli's ruling could be affirmed on alternative grounds) the party is not precluded from raising the issue, following reversal, when it prevailed previously. *See Morrison v. Mahoney*, 399 F.3d 1042, 1046 (9th Cir. 2005).  Following reversal, it is well within the Court's discretion to allow a party to raise an issue that could have been, but was not, raised in an earlier proceeding, particularly where the issue involves a question of law, the failure to raise it earlier was not a result of bad faith and the opposing party would not be prejudiced by its consideration. *See Riley v. MEBA Pension Trust*, 452 F. Supp. 117, 120 (S.D.N.Y. 1978) (considering question where "Defendant's failure to raise the question earlier, however regrettable, did not prejudice plaintiff, since the legal question can be argued now as readily as a year ago" and there was no evidence defendant acted in bad faith in failing to raise argument earlier), *citing Emich Motors Corp. v. General Motors Corp.*, 15 F.R.D. 354, 356 (N.D. Ill. 1953).  Similarly, the Ninth Circuit recently rejected an argument that by failing to raise an argument on appeal, a party had waived the argument and could not raise it in the district court following the appellate court's reversal.  *See United States v. Moriel-Luna*, 585 F.3d 1191, 1199 n.6 (9th Cir. 2009).

Just as a party should not be allowed to escape liability by offering to pay its opponent's fees and voluntarily dismissing its action, thereby attempting to deprive the court of jurisdiction to award sanctions, counsel should not be permitted to avoid responsibility for its misconduct simply because the court elected to impose sanctions under the wrong legal provision. *Cf. Samsung Elec. Co., Ltd.*, 440 F. Supp. 2d at 522-23 (court had jurisdiction to consider request for sanctions under inherent authority and 35 U.S.C. § 285 despite defendant's offer to pay plaintiff's attorneys' fees).

DEL NERO ET AL. V. MIDLAND CREDIT MANAGEMENT ET AL. (CASE NO. CV 04-1040 GPS (SHx))
DEFENDANTS' MOTION FOR AWARD OF ATTORNEYS' FEES; MEMO IN SUPPORT                    18.

875

Whether Judge Schiavelli's undisturbed findings warrant the imposition of sanctions under section 1927 or the Court's inherent authority is a question of law that can be addressed as easily now as it could have been previously. Midland did not act in bad faith in not presenting the issue earlier, and addressing it now, using the existing record, would not prejudice Hyde & Swigart. This was no ordinary case, and Midland did not seek sanctions just because it won and the plaintiff lost. Judge Schiavelli clearly believed counsel's conduct warranted the imposition of significant sanctions. The issue can and should be addressed now.

### D. Midland Is Entitled To An Award Of Attorneys' Fees And Costs Pursuant To 28 U.S.C. § 1927

Hyde & Swigart should be held responsible for the attorneys' fees and costs incurred by Midland pursuant to 28 U.S.C. § 1927, because they recklessly and knowingly abused the judicial process. "Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Such an award is particularly appropriate in cases like this, where the record shows that attorneys have abused the judicial process. As the Supreme Court explains, section 1927

> does not distinguish between winners and losers, or between plaintiffs and defendants. The statute is indifferent to the equities of a dispute and to the values advanced by the substantive law. It is concerned only with limiting the abuse of court processes.

*Roadway Express, Inc. v. Piper*, 447 U.S. 752, 762 (1980).

Even though this Court has already held that Hyde & Swigart acted in bad faith, the Ninth Circuit confirmed in *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107 (9th Cir. 2002), that a bad faith finding is not required. Sanctions may be imposed under section 1927 against an attorney who merely acts recklessly.[25]

---

[25] *See also Gomez v. Vernon*, 255 F.3d 1118, 1134 (9th Cir. 2001) ("Section 1927 requires a finding of recklessness **or** bad faith." (emphasis added)).

DEL NERO ET AL. V. MIDLAND CREDIT MANAGEMENT ET AL. (CASE NO. CV 04-1040 GPS (SHx))
DEFENDANTS' MOTION FOR AWARD OF ATTORNEYS' FEES; MEMO IN SUPPORT     19.

876

In *B.K.B.*, after the district court denied two pretrial motions to introduce evidence governed by Rule 412 of the Federal Rules of Evidence, defense counsel misleadingly informed the court during a sidebar conference that the testimony he was about to elicit was not governed by the rule. Though the district court stopped short of finding that counsel had acted in bad faith, it concluded that eliciting the testimony – which clearly implicated Rule 412 – "was a knowing and intentional violation" of the rule, warranting sanctions under section 1927 (as well as its inherent powers). *See id.* at 1098, 1106.

The Ninth Circuit affirmed. The appellate court was "convinced that the district court clearly erred in stopping short of explicitly finding that the defendant's lawyers acted in bad faith," *id.* at 1106-07, but clarified that a finding of bad faith was not necessary. Rather, it "conclude[d] that the district court's finding of recklessness plus knowledge was sufficient." *Id.* at 1107.

Here, Judge Schiavelli expressly found that Hyde & Swigart acted in bad faith. The Ninth Circuit did not disturb this finding. That alone is sufficient to support an award under section 1927. The record is replete with evidence that Hyde & Swigart acted recklessly in pursuing this action.

For instance, the lawsuits filed by Del Nero, including this case and other cases filed for him by Hyde & Swigart, show that Del Nero often made nearly identical allegations against debt collectors. Similarly, the fact that Del Nero had twice sued his mother, and a review of allegations he made against her in those lawsuits – including that she had threatened his life – would have revealed the volatile nature of their relationship, raising serious issues about whether she should be called as a key witness to support his case. The swift withdrawal of both Mr. Stempler and Vania Chaker as Del Nero's counsel, and Mr. Stempler's later withdrawal as counsel for Del Nero's mother, should have raised a red flag. Mr. Swigart's conclusion – after the initial interview of Del Nero – that there was no basis for proceeding against MRC, shows that Hyde & Swigart acted

DEL NERO ET AL. V. MIDLAND CREDIT MANAGEMENT ET AL. (CASE NO. CV 04-1040 GPS (SHx))
DEFENDANTS' MOTION FOR AWARD OF ATTORNEYS' FEES; MEMO IN SUPPORT                    20.

877

knowingly and recklessly by continuing to pursue those claims through trial. In sum, sanctions are appropriate under section 1927.

**E.    The Court Can Sanction Hyde & Swigart Under Its Inherent Powers**

Hyde & Swigart should also be sanctioned under this Court's "inherent power," given Judge Schiavelli's finding that they "participated in filing bad faith FDCPA actions." *See* Docket Entry No. 193 at p. 4. A district court has certain "inherent" powers, including the power to "levy sanctions in response to abusive litigation practices." *See Roadway Express*, 447 U.S. at 765.[26] "The inherent powers of federal courts are those that 'are necessary to the exercise of all others.'" *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997), quoting *Roadway Express*, 447 U.S. at 764.

These inherent powers include the power to sanction an attorney for "bad faith" conduct by directing the attorney to pay the fees incurred by the opposing party. *See Roadway Express*, 447 U.S. at 765-66 ("If a court may tax counsel fees against a party who has litigated in bad faith, it certainly may assess those expenses against counsel who willfully abuse judicial processes."). Bad faith conduct, however, is not a prerequisite to the court's exercise of its inherent authority: conduct "'tantamount to bad faith' is sanctionable," also. *B.K.B.*, 276 F.3d at 1108; *accord Fink v. Gomez*, 239 F.3d 989, 993-94 (9th Cir. 2001); *Gomez v. Vernon*, 255 F.3d at 1134 (district court did not commit clear error "in finding conduct tantamount to bad faith" and imposing sanctions under its inherent authority where attorney knowingly disregarded advice of state bar counsel

---

[26]    A district court's inherent power to sanction parties or attorneys is <u>not</u> displaced by other statutes or rules that allow a court to impose sanctions, such as section 1927 or Rule 11. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 42-43 (1991). Thus, whether the Court can exercise its inherent powers now is independent of the Ninth Circuit's ruling that fees were not properly awarded under section 1692k(a)(3).

DEL NERO ET AL. V. MIDLAND CREDIT MANAGEMENT ET AL. (CASE NO. CV 04-1040 GPS (SHx))
DEFENDANTS' MOTION FOR AWARD OF ATTORNEYS' FEES; MEMO IN SUPPORT                    21.

878

regarding receipt of privileged materials, and continued to intercept such materials).

Reckless conduct, combined with an improper purpose or knowing misconduct, is sanctionable under the court's inherent powers. *See B.K.B.*, 276 F.3d at 1107-08; *see also Fink*, 239 F.3d at 994 (sanctions permitted where attorney acts with "recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose"); *In Re Itel Secs. Litig.*, 791 F.2d 672, 675 (9th Cir. 1986) (sanctions proper where counsel "willfully abused judicial process or otherwise conducted litigation in bad faith.").

The fact that Hyde & Swigart claim they believed certain of the claims were colorable, or that the claims survived the Rule 52 motion, does not change the analysis. An attorney may act in "bad faith" even when pursuing a colorable claim.[27] The Ninth Circuit has held that a finding of bad faith "does **not** require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or mala fides, **the assertion of a colorable claim will not bar the assessment of attorney's fees**. (Citation)." *In Re Itel Secs. Litig.*, 791 F.2d at 675 (emphasis supplied); *see also Fink*, 239 F.3d at 992 ("*Itel* teaches that sanctions are justified when a party acts *for an improper purpose* – even if the act consists of making a truthful statement or a non-frivolous argument or objection.").

Judge Schiavelli was free to consider Hyde & Swigart's conduct in <u>other</u> litigation when determining if their conduct in this case supported a finding of bad faith. *See Artese v. Academy Collection Serv., Inc.*, 2000 WL 133733, at *4 (D. Conn. Jan. 18, 2000); *see also Johnson v. Commissioner of Internal Revenue*, 289 F.3d 452, 456-57 (7th Cir. 2002) ("The Tax Court was not required to ignore

---

[27] Even if the entire action was not "filed" in bad faith, an award of fees may be based upon counsel's bad faith conduct during the litigation. *See Roadway Express*, 447 U.S. at 766.

DEL NERO ET AL. V. MIDLAND CREDIT MANAGEMENT ET AL. (CASE NO. CV 04-1040 GPS (SHx))
DEFENDANTS' MOTION FOR AWARD OF ATTORNEYS' FEES; MEMO IN SUPPORT        22.

879

Izen's bad conduct in other cases; indeed it would have been remiss not to consider it."). Thus, in *Itel*, although the objections filed by counsel were not frivolous, the district court properly concluded that they were asserted in bad faith and solely to gain an advantage in other pending litigation. *See Itel*, 791 F.2d at 675-76. Similarly, in *Fink*, the Ninth Circuit held that an attorney's reckless misstatements of fact and law in the case before the district court could amount to bad faith if the statements were made for the purpose of gaining a tactical advantage in a separate action. *See Fink*, 239 F.3d at 994.

Here, again, Judge Schiavelli found that Hyde & Swigart acted in bad faith, and the Ninth Circuit did not disagree. No further findings are necessary. *Cf. Optyl Eyeware Fashion Int'l Corp. v. Style Cos., Ltd.*, 760 F.2d 1045, 1051 (9th Cir. 1985) (remand of § 1927 sanctions order "would elevate form over substance" where record showed district court necessarily found bad faith). The record amply supports a finding of bad faith and sanctions under the court's inherent power.

## IV.    **CONCLUSION**

Midland respectfully requests that the Court hold Hyde & Swigart jointly and severally liable for the entire amount of ($155,979.09) its prior award of attorneys' fees and costs, pursuant to 28 U.S.C. § 1927, and/or the Court's inherent authority.

DATED: March 1, 2010
                    SIMMONDS & NARITA LLP
                    TOMIO B. NARITA
                    JEFFREY A. TOPOR


                    By:   s/Tomio B. Narita
                          Attorneys for Defendants
                          Midland Credit Management, Inc. and
                          MRC Receivables Corporation

DEL NERO ET AL. V. MIDLAND CREDIT MANAGEMENT ET AL. (CASE NO. CV 04-1040 GPS (SHx))
DEFENDANTS' MOTION FOR AWARD OF ATTORNEYS' FEES; MEMO IN SUPPORT          23.

880

# EXHIBIT M

Case 3:16-cv-08166-WQH-MDD Document 127-1 Filed 09/23/22 PageID.5105 Page 889 of
1195
Case 3:13-cv-01140-WQH-MDD Document 47-1 Filed 01/23/17 PageID.253 Page 1 of 40

# Plaintiff's Exhibit

Certain excerpts from Defendants' Answering Brief to

Hyde & Swigart's appeal before the Ninth Circuit

_____

Midland Credit Management Inc.; MRC Receivables Corp.

v.

Darren Del Nero; Nicole Shaker

04 CV-01040

had later noted his "inability to work with" Del Nero, but they saw no red flags. No discovery had been conducted in the case, but they were not concerned. They knew they could not prove any claims against MRC, but they did not move to dismiss. While they claim they did not know about Del Nero's criminal history, his other lawsuits and his status as a vexatious litigant, they moved to exclude the introduction of "impermissible character evidence" about him two months before trial.

During trial, Mr. Hyde "became deeply disappointed and concerned" about Del Nero, but appellants did not move to withdraw. Instead, they pressed forward, seeking a judgment on his behalf. At the November 27, 2006 hearing on appellees' fee motion, Mr. Hyde told the district court that he and Mr. Swigart were "no longer interested and have not been interested for a couple of years in representing" Del Nero, yet they had continued to represent Del Nero after the trial had finished, filing suit on his behalf months later in another case. They conceded that they only took the case because they were "dying" to go to trial.

Under the circumstances, the district court did not err by holding appellants jointly and severally liable for appellees' attorneys' fees and costs.

**B. The District Court Had The Inherent Power To Hold Hyde & Swigart Jointly And Severally Liable For Payment Of Costs And Attorneys' Fees**

The district court's decision to hold Hyde & Swigart jointly and severally liable for the fees and costs incurred by appellees was also justified under the

44

court's "inherent power" to levy sanctions, because the district court found that appellants "participated in filing bad faith FDCPA actions." ER at 336.[36]

A district court has certain "inherent" powers, including the power to "levy sanctions in response to abusive litigation practices." *See Roadway Express v. Piper, Inc.*, 447 U.S. 752, 765 (1980). These inherent powers include the power to sanction an attorney for "bad faith" conduct by directing the attorney to pay the fees incurred by the opposing party. *Id.* Even if the entire action was not "filed" in bad faith, an award of fees may be based upon counsel's bad faith conduct during the litigation. *Id.* at 766 ("Bad faith may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation. (Citations).").

This Court has observed that "[t]he imposition of sanctions under the inherent power of the court is proper where counsel has willfully abused judicial process or otherwise conducted litigation in bad faith." *In Re Itel Secs. Litig.*, 791 F.2d 672, 675 (9th Cir. 1986) (citations and internal quotation marks omitted). An attorney may also be sanctioned for conduct that is "tantamount to bad faith." *Fink v. Gomez*, 239 F.3d 989, 993-94 (9th Cir. 2001). Thus, inherent power sanctions may be awarded where an attorney acts with "recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Id.* at 994.

---

[36] This court may affirm on any basis supported by the record. *See Hall v. North Am. Van Lines, Inc.*, 476 F.3d 683, 686 (9th Cir. 2007).

45

The fact that Hyde & Swigart claim they believed certain of the claims were colorable, or that the claims survived the Rule 52 motion, does not change the analysis. An attorney may act in "bad faith" even when pursuing a colorable claim. This Court has held that a finding of bad faith "does **not** require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or mala fides, **the assertion of a colorable claim will not bar the assessment of attorney's fees**. (Citation)." *In Re Itel Secs. Litig.*, 791 F.2d at 675 (emphasis supplied); *see also Fink*, 239 F.3d at 992 ("*Itel* teaches that sanctions are justified when a party acts *for an improper purpose* – even if the act consists of making a truthful statement or a non-frivolous argument or objection.").

The district court may consider counsel's conduct in other litigation as part of determining whether counsel's conduct in the case before the court supports a finding of bad faith. Thus, in *Itel*, although the objections filed by counsel were not frivolous, the district court properly concluded that they were asserted in bad faith and solely to gain an advantage in other pending litigation. *See Itel*, 791 F.2d at 675-76. Similarly, in *Fink*, this Court held that an attorney's reckless misstatements of fact and law in the case before the district court may amount to bad faith if the statements are made for the purpose of gaining a tactical advantage in a separate action. *See Fink*, 239 F.3d at 994.

A district court's inherent power to sanction parties or attorneys is not

46

displaced by other statutes or rules that allow a court to impose sanctions, such as 28 U.S.C. § 1927 or Rule 11. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 42-43 (1991). Thus, whether the district court properly exercised its inherent powers is independent of whether fees were properly awarded under section 1692k(a)(3).

Even though the district court did not expressly find bad faith under its "inherent power," the case need not be remanded, since the record amply supports such a finding. A remand is not required if "a complete understanding of the issues may be had [from the record] without the aid of separate findings." *See Optyl Eyewear Fashion Intern. Corp.*, 760 F.2d at 1051 (remand of section 1927 sanctions order "would elevate form over substance" where record showed district court necessarily found bad faith).[37]

## VI. THE DISTRICT COURT CORRECTLY FOUND THAT THE ATTORNEYS' FEES AND COSTS INCURRED BY APPELLEES WERE REASONABLE

Appellants contend that the district court erred in awarding appellees $155,979.09 in attorneys' fees and costs because (1) the fee request included admittedly erroneous items, (2) counsel spent an excessive number of hours reviewing Mr. Hyde's declaration and (3) counsel's hourly rate was inflated. *See*

---

[37] If, however, this Court believes that a specific finding under the district court's inherent power is required, the matter can be remanded for that purpose. On remand, appellees submit that the district court would also have the discretion to issue an order to show cause whether appellants' conduct violated Rule 11 or 28 U.S.C. § 1927.

47

Case 3:16-cv-02186-WQH-MDD Document 127-1 Filed 09/29/22 PageID.5110 Page 894 of
Case 3:16-cv-02186-WQH-MDD Document 47-1 Filed 01/23/17 PageID.2339 Page 164 of
1196
1195

# EXHIBIT N

Robert L. Hyde, Esq. (SBN: 227183)
bob@westcoastlitigation.com
Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
**Hyde & Swigart**
411 Camino Del Rio South, Suite 301
San Diego, CA 92108-3551
Telephone:   (619) 233-7770
Facsimile:   (619) 297-1022

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Midland Credit Management Inc.; MRC Receivables Corp.**<br><br>                    Plaintiff,<br><br>v.<br><br>**Darren Del Nero; Nicole Shaker**<br><br>                    Defendant.<br><br>**Hyde & Swigart**<br><br>                    Intervenors. | Case No: 04 CV-01040<br><br>**Hyde & Swigart's Opposition to Defendant's Motion For Attorneys' Fees and Costs; Points and Authorities**<br><br>Date: March 29, 2010<br>Time: 10:00 AM<br>Location: Roybal Federal Court<br>        Court Room 680<br>        255 East Temple Street<br>        Los Angeles, CA 90012<br><br>**The Honorable Audrey B. Collins** |

**TABLE OF CONTENTS**

I.    Introduction ...................................................................................1

II.   Defense counsel continues to use misrepresentations
      to try and mislead the court...........................................................2

III.  Language cited in cases cited by Defendants is incomplete............................5

IV.   Hyde & Swigart objects to Defendants' violations of the Court's order
      regarding evidentiary issues..........................................................6

V.    Defendants are attempting to circumvent Fed. R. App. R 40.........................7

VI.   Any request by Defendants is barred pursuant to the doctrine of collateral
      estoppel, or issue preclusion........................................................10

VII.  Defendants have not met their burden under 28 U.S.C. § 1927...................10

      A.    The legal standard for 28 U.S.C. § 1927..............................................10

      B.    The court's findings of fact and conclusions of law are devoid of any
            evidence of bad faith ...........................................................12

      C.    Two of the three judges on the Ninth Circuit stated Plaintiff's case was
            meritorious ......................................................................13

      D.    The district court's order dated February 16, 2007 has been reversed,
            and nothing in it may be considered by the court ..............................14

      E.    The district court's comment in its February 16, 2007 order concerning
            bad faith was misinformed due to Defendants' repeated
            misrepresentations, as well as errors of law.......................................16

            1.    The first factor is demonstrably erroneous ...............................17

            2.    The second factor is demonstrably erroneous ...........................17

            3.    The district court's February 16, 2007 order is not based on any
                  conduct by Hyde & Swigart during the proceedings................18

      F.    On three separate occasions, the court denied Defendants' Motions for
            Judgment on Partial Findings, finding that the plaintiff had met its
            burden and presented a prima facie case............................................19

HYDE & SWIGART
San Diego, California

---

G.   The credibility of Plaintiff's witness, or lack thereof, does not reflect bad faith on the part of Hyde & Swigart..............................................21

VIII. Defendants do not meet their burden as to inherent authority.......................22

IX.   Determination of attorneys' fees and costs.....................................................23

X.    Conclusion......................................................................................................24

HYDE & SWIGART
San Diego, California

# TABLE OF AUTHORITIES

## TABLE OF CASES

*Acacia Villa v. United States*

   24 Cl. Ct. 445 (Cl. Ct. 1991) ...................................................................

*AFSCME v. County of Nassau*

   96 F.3d 644 (2nd Cir 1996) ...................................................................

*Alexander v FBI*

   (1998, DC Dist Col)186 FRD 6...................................................................

*Amarel v. Connell*

   102 F.3d 1494 (9th Cir. Cal. 1997)...................................................................

*Ass'n of Am. Physicians & Surgeons v. Brewer*

   497 F.3d 1056 (9th Cir. Ariz. 2007)...................................................................

*Atlantic C. L. R. Co. v. St. Joe Paper Co.*

   216 F.2d 832 (5th Cir. Fla. 1954) ...................................................................

*Baker Industries, Inc. v. Cerberus, Ltd.*

   764 F.2d 204 (3d Cir. N.J. 1985) ...................................................................

*Bellows v. Midland Credit Management, Inc. et al.*

   09-CV-01951 (S.D. Cal. 2009)...................................................................

*Boksa v. Keystone Chevrolet Co.*

   553 F. Supp. 958 (N.D. Ill. 1982) ...................................................................

*Bryant v. Military Depot*

   2010 U.S. App. LEXIS 3221 (5th Cir. Miss. Feb. 17, 2010)...................................................................

*Burkett v. Shell Oil Co.*

   487 F.2d 1308 (5th Cir. Ala. 1973) ...................................................................

*Butler v. Eaton*

   141 U.S. 240, 11 S. Ct. 985, 35 L. Ed. 713 (1891) ...................................................................

HYDE & SWIGART
San Diego, California

*Cal. Dep't of Soc. Servs. v. Thompson*

    321 F.3d 835 (9th Cir. Cal. 2003) ..................................................................

*Christiansburg Garment Co. v. EEOC*

    434 U.S. 412 (U.S. 1978) ..............................................................................

*CJC Holdings, Inc. v. Wright & Lato, Inc.*

    142 F.R.D. 648 (W.D. Tex. 1992) ................................................................

*Coleman v. Frierson*

    607 F. Supp. 1578 (N.D. Ill. 1985) .............................................................

*Determan v. Sandoval (In re Sandoval)*

    186 B.R. 490 (B.A.P. 9th Cir. Cal. 1995) .................................................

*Disher v. Citigroup Global Mkts., Inc.*

    486 F. Supp. 2d 790 (S.D. Ill. 2007) .........................................................

*EEOC v. Bruno's Restaurant*

    13 F.3d 285 (9th Cir. 1992) .........................................................................

*EEOC v. Tarrant Distribs., Inc.*

    750 F.2d 1249 (5th Cir. 1984) .....................................................................

*Fink v. Gomez*

    39 F. Supp. 2d 1225 (C.D. Cal. 1999) ........................................................

*Globe Grain & Milling Co. v. De Tweede Northwestern & Pacific Hypotheekbank*

    69 F.2d 418 (9th Cir. 1934) .........................................................................

*Guerrero v. RJM Acquisitions LLC*

    499 F.3d 926 (9th Cir. Haw. 2007) ............................................................

*Hedges v. Resolution Trust Corp.*

    32 F.3d 1360 (9th Cir. Ariz. 1994) .............................................................

*ICU Med., Inc. v. Alaris Med. Sys.*

    2007 U.S. Dist. LEXIS 34467 (C.D. Cal. Apr. 16, 2007) ........................

*In Campbell v. United States*

    592 F.2d 309 (6th Cir. Mich. 1979) ...........................................................

HYDE & SWIGART
San Diego, California

1   *In re Akros Installations*

2       834 F.2d 1526 (9th Cir. Cal. 1987).................................................

3   *In re Khan*

4       1995 U.S. Dist. LEXIS 4634 (N.D. Cal. Mar. 24, 1995).......................

5   *In re Lewis*

6       1990 U.S. App. LEXIS 21733 (7th Cir. Ill. Dec. 12, 1990) ................

7   *In re Lockard*

8       884 F.2d 1171 (9th Cir. 1989)..................................................

9   *In re Roete*

10      936 F.2d 963 (7th Cir. Ind. 1991) ...........................................

11  *LeBeau v. Libbey- Owens-Ford Co.*

12      799 F.2d 1152 (7th Cir. 1986).................................................

13  *Meadowbriar Home for Children v. Gunn*

14      81 F.3d 521 (5th Cir. Tex. 1996)..............................................

15  *Mendez v. County of San Bernardino*

16      540 F.3d 1109 (9th Cir. Cal. 2008) ..........................................

17  *Midland Funding LLC v. Brent*

18      644 F. Supp. 2d 961 (N.D. Ohio 2009) .....................................

19  *MGIC Indem. Corp. v. Moore*

20      952 F.2d 1120 (9th Cir. Cal. 1991)...........................................

21  *Murphy v. Hous. Auth. & Urban Redevelopment Agency*

22      158 F. Supp. 2d 438 (D.N.J. 2001) ..........................................

23  *Nat'l Asso. of Government Employees, Inc. v. Nat'l Fed. of Federal Employees*

24      844 F.2d 216 (5th Cir. 1988) .................................................

25  *O'Connell v. Champion International Corp.*

26      812 F.2d 393 (8th Cir. Minn. 1987)..........................................

27  *Pettit v. Conrail*

28      765 F. Supp. 508 (N.D. Ind. 1991) ..........................................

HYDE & SWIGART
San Diego, California

*Proctor & Gamble Co. v. Amway Corp.*

    280 F.3d 519, 525-26 (5th Cir. 2002) .................................................................

*Prosser v. Prosser*

    186 F.3d 403 (3d Cir. V.I. 1999) .....................................................................

*Ridgeway v. Montana High School Asso.*

    858 F.2d 579 (9th Cir. Mont. 1988) ................................................................

*Scott v. Churchill*

    377 F.3d 565 (6th Cir. Mich. 2004) ................................................................

*State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*

    374 F.3d 158 (2d Cir. N.Y. 2004) ...................................................................

*T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Asso.*

    809 F.2d 626 (9th Cir. Haw. 1987) ................................................................

*Topalian v. Ehrman*

    3 F.3d 931 (5th Cir. Tex. 1993) ......................................................................

*Tutor-Saliba Corp. v. City of Hailey*

    452 F.3d 1055 (9th Cir. 2006) ........................................................................

*United States v. Associated Convalescent Enters.*

    766 F.2d 1342 (9th Cir. 1985) ........................................................................

*United States v. Cote*

    51 F.3d 178 (9th Cir. 1995) ............................................................................

*United States v. Gargotto*

    510 F.2d 409 (6th Cir. 1974) ..........................................................................

*United States v. Kelley*

    482 F.3d 1047 (9th Cir. Cal. 2007) ................................................................

*United States v. Mezzanatto*

    513 U.S. 196, 115 S. Ct. 797, 130 L. Ed. 2d 697 (1995).................................

*Universal Underwriters Ins. Co. v. McMahon Chevrolet-Oldsmobile, Inc.*

    866 F.2d 1060 (8th Cir. 1989) ........................................................................

HYDE & SWIGART
San Diego, California

*Warren v. City of Carlsbad*

    58 F.3d 439 (9th Cir. 1995) ........................................................

*West Virginia v. Chas. Pfizer & Co.*

    440 F.2d 1079 (2d Cir. N.Y. 1971)..............................................

## TABLE OF STATUTES

FED. R. CIV. P. 11 ........................................................................5, 8, 19

FED. R. CIV. P. 52 ...........................................................................20, 21

15 U.S.C. § 1692 et seq. .......................................5, 8, 14, 16, 17, 19

28 U.S.C. § 1927 ..........................................................................passim

Fed. R. App. R 40 .........................................................7, 8, 9, 10, 24

## OTHER AUTHORITY

Transcript of Ninth Circuit Oral Argument ...........................1, 13, 20, 21

Defendants' Answering Motion to Ninth Circuit Appeal, pages 44-47.......3, 7, 8, 10

Municipal Court Order, Summit County, OH.........................................4

HYDE & SWIGART
San Diego, California

# I. INTRODUCTION

The Ninth Circuit has reversed the district court's previous order *in toto*. The order is now a nullity. And contrary to their current position, Defendants should have anticipated this issue would be reversed, as nearly every circuit court in the country, including the Ninth Circuit, previously addressed it and all held that attorney fee awards against attorneys are improper when the statute is silent as to who may be required to pay the award. All these cases were cited in the district court and circuit court briefing. Further, at oral argument, Defendants' counsel argued that the Ninth Circuit would have to "struggle" with balancing some of these cases. The court, quite literary, laughed at defense counsel's suggestion, stating "I have to say I'm not going to struggle very hard." *Page 15, Lines 22-23, Transcript of Oral Argument*, attached.

However, today this same counsel states that this was an issue of "first impression." It was not, and this statement by counsel is only one of dozens of statements Defendants and their counsel make to this court in an effort to excuse their bed faith conduct, mislead and deceive, and falsely demonize Hyde & Swigart in the hope that the Court will set aside the law and rule emotionally.

At the Court's January 21, 2010 hearing, Defendants requested leave to file a motion "based on the undisturbed findings made by Judge Schiavelli." *Court docket #241, Pg 2, lns 5-6*. During this hearing Hyde & Swigart voiced concerns that Defendants would use this as an opportunity to present the Court with a "do over" and delve into the evidence again. In response, the Court made it *very clear* that this would not be permitted. As the Court stated, "Anything I do is going to have to be based on the findings that are in the findings of fact and conclusions of law. *I will not make any additional findings of any kind*." However, Defendants have now ignored that order and have provided page upon page of one sided excepts from disputed evidentiary submissions, some of which were not even admitted into evidence, all taken out of context, and all without providing the plaintiff's rebuttal.

Defendants are engaging in selective revisionism and have placed Hyde & Swigart in a difficult position; rebut Defendants' attempts to rehash, distort, and point to cherry-picked evidentiary issues, or abide by the Court's order and limit argument to the findings of fact and conclusions of law, discuss only pertinent legal issues, and risk the Court being swayed by Defendants' recalcitrance.

Hyde & Swigart choose the latter. In doing so, however, we want to be clear that we object to any attempt by Defendants to rehash and distort the evidence in this case that was already presented before Judge Schiavelli by arguing now *out of context, without proper rebuttal, and without proper considerations as to credibility and admissibility of these issues.* This is all an attempt by Defendants to "poison the well" with deceptive and misleading versions of cherry-picked evidence presented out of context and without rebuttal.

## II. DEFENSE COUNSEL CONTINUES TO USE MISREPRESENTATIONS TO TRY AND MISLEAD THE COURT

Throughout the original trial, defense counsel repeatedly made misrepresentations to the court and continues to do today.[1] For example, in a conversation on November 27, 2006 between Attorney Hyde and the Honorable George P. Schiavelli, Defendants claim that "Mr. Hyde explained that although it was not "the greatest case on earth," Hyde & Swigart agreed to take it because they were 'dying to go to trial' so they could 'learn some things.' " *Defendants brief, pg. 8, lns 22-27.* Defendants do not tell the whole story and attempt to distort the conversation as an example of bad faith in the eyes Judge Schiavelli. Judge Schiavelli did not see this as bad faith at all. Instead, he completely understood Mr. Hyde's position and found it *reasonable.* In direct response to Mr. Hyde's statement, Judge Schiavelli stated, "I can certainly understand your desire to get

---

[1] As the plaintiff noted at trial, he was victim of identity theft, which explains his multiple court filings, and his criminal conviction was overturned on appeal. Further, there are other reasonable explanations for the convenient selections offered by Defendants in their brief. Defendants here offer only misleading half-truths and deceptions.

into a courtroom and into trial, if that's indeed what you wanted to do."  But of course, Defendants today do not want the Court to see the conversation honestly, and in context, preferring instead to truncate the conversation and try and mislead the Court into believing Judge Schiavelli viewed Hyde & Swigart as acting in bad faith.  Defendants did not want the Ninth Circuit to know this truth either, making this identical representation in their Answering Motion to the Appeal, on page 44; and in that instance Defendants did not even tell the Ninth Circuit that during that same conversation Mr. Hyde also argued the case had merit.  *See attached.*

Defendants also represent that "[b]ased upon his initial interviews and his review of the record, Mr. Swigart quickly concluded "there were not adequate provable facts to sustain a case against" MRC. *Swigart Decl. at ¶ 18.* Despite this, Hyde & Swigart never moved to dismiss MRC. They continued to press claims against MRC through trial." This is just more deception on the part of Defendants.

During the trial it was well established that before trial, on January 16, 2005, Hyde & Swigart sent to defense counsel a proposed stipulated dismissal of MRC. Mr. Swigart advised Defendants that it wished to dismiss MRC in part because the law had recently been modified by Prop 64, and in part because Hyde & Swigart had just been retained and felt some causes of action alleged by previous counsel were weak.  <u>Defense counsel refused to stipulate</u>.  Subsequently, at the pretrial conference, Mr. Swigart <u>again</u> asked Defendants if they would stipulate to dismissal, but <u>again</u> Defendants would not agree to stipulate.

Defense counsel's deceptive activities continues here today.  In their recent brief, Defendants falsely state that the Ninth Circuit "assumed that the action 'was brought in bad faith and for the purpose of harassment' within the meaning of § 1692k(a)(3)," implying that the Ninth Circuit found Hyde & Swigart acted in bad faith and for the purpose of harassment. *Defendants brief, pg. 11, ln 16 - Pg. 12, ln 4.  But that is not what the Ninth Circuit said at all*, and this is the same kind of distortion of evidence that defendants used previously before Judge Schiavelli, and

HYDE & SWIGART
San Diego, California

that convinced him to erroneously rule as he did in the original case. This distortion of the language in the Ninth Circuit's mandate is especially significant when one considers that two of the three judges on the Ninth Circuit's panel stated just the opposite – *that the case had merit.* (The Honorable Kevin Thomas Duffy, sitting by designation, said nothing throughout the hearing.)

What the Ninth Circuit *actually said* was, "**For purposes of this appeal**, we assume **without deciding** that Del Nero's "action … was brought in bad faith and for the purpose of harassment" within the meaning of § 1692k(a)(3)." (Boldface added.) <u>This is clearly an attempt by defense counsel to mislead this court</u>. Defendants also present other evidence, out of context, that was disputed or rebutted without providing those disputes and rebuttals to make it appear that things were said, inappropriate actions taken, or frivolous arguments argued, when they were not. It is outrageous that defense counsel continually tries to deceive the Court in the obvious desire that it will act out of vindictiveness or retribution.

Other courts have found that the defendants here systematically mislead and defraud courts, just as they did in this matter. For example, just recently, the Northern District of Ohio ruled that Midland Funding LLC and Midland Credit Management Inc. have been routinely submitting false affidavits in litigation. In *Midland Funding LLC v. Brent*, 644 F. Supp. 2d 961 (N.D. Ohio 2009), the court denied Midland's motion for summary judgment, noting that Midland routinely submitted false affidavits and averred to information on personal knowledge when no such personal knowledge existed.

And just as in this case, Midland's Brian Frary was involved there as well, and in that matter, Midland was actually *enjoined* from using these false affidavits in the future. Unfortunately the order does not force correction of the past conduct.

Just ten days ago, in Summit County, Ohio, a Municipal Court also issued a stay recommendation "due to the fraud committed [by Midland Funding LLC] upon all parties, including the Honorable Courts…." *See attached order.*

HYDE & SWIGART
San Diego, California

1    As the Central District has noted, "Whether misstatements by an officer of

2    the court result from subjective bad faith, reckless disregard for the truth, or

3    incompetence, the impact on the system is the same – the court is unable to rely on

4    the truthfulness or accuracy of those statements and must, therefore, question and

5    examine everything brought before it by that counsel." *Fink v. Gomez*, 39 F. Supp.

6    2d 1225, 1226 (C.D. Cal. 1999).

7    **III.    LANGUAGE CITED IN CASES CITED BY DEFENDANTS IS INCOMPLETE**

8    Defendants look to *Exxon Chem. Patents, Inc. v. The Lubrixol Corp.*, 137 F.

9    3d 1475 (Fed. Cir. 1998), claiming it stands for the proposition that the case

10   "revests [jurisdiction] in the district court."   But the *Exxon* court did not find

11   blanket authority for the district court to retry the issues once a judgment is

12   reversed. While every appellate court judgment vests jurisdiction back in the

13   district court to carry out *some* further proceedings, "those further proceedings may

14   be purely ministerial, as when a judgment for the plaintiff is reversed and the only

15   matters that remain for the district court are to dismiss the complaint and enter the

16   judgment in the docket." *Id.* at 1483.  Here the Ninth Circuit opinion reversed as to

17   the issues in the trial court's order, that is, bad faith, Rule 11, and 15 U.S.C. §

18   1692k(a)(3).    It also considered, and rejected, Defendants arguments about

19   remanding for further proceedings as to 28 U.S.C. § 1927 and inherent authority.

20   There is nothing left for the district court to do but to dismiss Hyde & Swigart from

21   the proceedings.

22   Defendants also claim to cite *United States v. Cote*, 51 F.3d 178, 181 (9th Cir.

23   1995), a criminal matter being considered for a new trial, claiming it states that

24   "'Accordingly, unless the reversing court indicates in its mandate or opinion' that

25   further proceedings are prohibited, they are not." But the *Cote* court said no such

26   thing.  It said, "Accordingly, unless the reversing court indicates in its mandate or

27   opinion **that a retrial is prohibited because of double jeopardy or a similar**

28   **infirmity, a second trial is appropriate**."

1    Defendants also claim *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161 (U.S.
2    1939)[2] says <u>in three pages</u> that a "decision that does not specifically provide for
3    remand is not necessary incompatible with further proceedings in district court."
4    *Defendants' Brief, pg 13, lns 22-24*. But even the most liberal reading of *Sprague*,
5    cannot agree with this. All *Sprague* says is that when a cause <u>has already been</u>
6    <u>remanded</u> by an appellate court, the district court cannot consider the questions
7    which the mandate has laid at rest, but is free as to other issues.

8    And indeed, most of Defendants's citations are just this, Defendants
9    willingness to stretch the truth in desperation. Defendants apparently believe that
10   neither Hyde & Swigart nor the Court will actually read the cases it cites.

## IV. HYDE & SWIGART OBJECTS TO DEFENDANTS' VIOLATIONS OF THE COURT'S ORDER REGARDING EVIDENTIARY ISSUES

13   Throughout their brief, in an obvious effort to convince the Court to issue
14   new findings, Defendants re-argue testimony and other evidence without placing
15   this evidence in proper context as it was originally considered. This is deceptive.

16   All of this evidence has already been argued and properly rebutted with other
17   argument and considered by Judge Schiavelli. It is impossible for the Court to now
18   reevaluate all of the evidence presented in a six day trial. If the Court were to do as
19   Defendants hope and reevaluate only a portion of the record, out of context, and
20   without rebuttal, this would be fundamentally unfair and deny Hyde & Swigart
21   their due process rights. Unlike this court, Judge Schiavelli heard **both sides** of this
22   evidence and weighed them properly and in context. He then made his findings
23   based on all the evidence, and in those findings there is absolutely no finding
24   whatsoever of bad faith or delay on the part of Hyde & Swigart. Sanctions under
25   28 U.S.C. § 1927 usually occur at the trial court level by means of delaying tactics,
26   see *United States v. Associated Convalescent Enters.*, 766 F.2d 1342, 1346-47 (9th
27   Cir. 1985). In stark contrast, here there was never any criticism of Hyde & Swigart

28   ───────────────
     [2] Defendants do include this in their Table of Cases, and never provide a complete citation.

HYDE & SWIGART
San Diego, California

1  by Judge Schiavelli during trial, nor even a claim of any delay.

2  Imposition of costs and fees under 28 U.S.C. § 1927 may be made only on a

3  finding that the attorney acted recklessly or in bad faith. *T.W. Electrical Service,*

4  *Inc. v. Pacific Electrical Contractors Asso.*, 809 F.2d 626, 638 (9th Cir. Haw. 1987).

5  And here there was one, and only one, "Findings of Fact and Conclusions of Law,"

6  and this is the Court's docket item 144. Hyde & Swigart object to, and requests the

7  Court strike, all Defendant's repeated arguments regarding selected testimony,

8  exhibits, declarations, and other evidence already considered by the trial court.

9  "A court cannot be motivated by vindictiveness or retribution when issuing

10  sanctions. Indeed, courts must fight the temptation to find all losing arguments

11  frivolous, and should only award sanctions in cases in which they are clearly

12  justified." *Prosser v. Prosser*, 186 F.3d 403, fn 4 (3d Cir. V.I. 1999). "The power to

13  assess the fees against an attorney should be exercised with restraint lest the

14  prospect thereof chill the ardor of proper and forceful advocacy on behalf of his

15  client." *Baker Industries, Inc. v. Cerberus, Ltd.*, 764 F.2d 204, 208 (3d Cir. N.J.

16  1985). "To justify the imposition of excess costs of litigation upon an attorney

17  [under 28 U.S.C. § 1927] his conduct must be of an egregious nature, stamped by

18  bad faith that is violative of recognized standards in the conduct of litigation. [28

19  U.S.C. § 1927] is directed against attorneys who willfully abuse judicial processes."

20  *Id.* That does not exist here and the record does not support such a finding.

21  **V.   DEFENDANTS ARE ATTEMPTING TO CIRCUMVENT FED. R. APP. R 40**

22  In the Opening and Reply Brief before the Ninth Circuit, Hyde & Swigart

23  argue in great detail that they did not act in bad faith and that for that reason it

24  requested the Ninth Circuit reverse the district court's February 16, 2007 order.

25  Further, in their Answering Brief before the Ninth Circuit in the previous appeal, on

26  pages 44-47,[3] subsection B, Defendants argue that "The District Court Had The

27  Inherent Power To Hold Hyde & Swigart Jointly And Severally Liable For Payment

28  [3] *Attached.*

HYDE & SWIGART
San Diego, California

1    Of Costs And Attorneys' Fees."   In this section, Defendants go on for four pages

2    arguing that if the Ninth Circuit found Hyde & Swigart were not liable pursuant to

3    15 U.S.C. § 1692k(a)(3) the Ninth Circuit should sanction Hyde & Swigart under

4    the court's inherent authority or 28 U.S.C. § 1927, or remand the case to the district

5    court for further proceedings on those same grounds.   At one point, on page 47,

6    Defendants request that "If, however, this Court believes that a specific finding

7    under the district court's inherent power is required, the matter can be remanded for

8    that purpose. On remand, appellees submit that the district court would also have

9    the discretion to issue an order to show cause whether appellants' conduct violated

10   Rule 11 or 28 U.S.C. § 1927." Ultimately the Ninth Circuit declined to remand the

11   case, instead reversing it in its entirety as to Hyde & Swigart.

12          Consequently, Defendants have already argued that the Ninth Circuit should

13   remand the case to the district court so that the district court could consider

14   sanctions pursuant to 28 U.S.C. § 1927 and the Court's Inherent Authority, and

15   indeed, in their current brief, Defendants freely agree, and even attempt to use this

16   fact to their advantage, stating, "Midland argued to the Ninth Circuit that Judge

17   Schiavelli's ruling could be affirmed on alternative grounds." *Defendants brief, pg.*

18   *18, lns 2-3.* The Ninth Circuit has heard argument from both sides, considered the

19   issues, and declined to grant Defendants request.

20          Fed. R. App. R 40 provides that a petition may be filed with a circuit court

21   within 14 days after the circuit has entered its decision if the petitioner believes the

22   circuit court "**overlooked or misapprehended**" an issue.   If the defendants here

23   believed the Ninth Circuit overlooked or misapprehended this issue in some way,

24   the procedure they must follow is outlined Fed. R. App. R 40.   And if Defendants

25   believed the Ninth Circuit did neither, but instead simply ruled against them, they

26   had the right to file for certiorari with the Supreme Court of the United States.

27   Defendants did neither, and are now trying to circumvent Fed. R. App. R 40.

28

HYDE & SWIGART
San Diego, California

In *Campbell v. United States*, 592 F.2d 309, 312 (6th Cir. Mich. 1979), the court held that "There is a remedy for a party who believes that this Court has rendered a decision which inadvertently overlooks critical facts which make its decision incorrect or unjust... [it is Fed. R. App. R 40]" The *Campbell* court went on and held that a party may not ignore Fed. R. App. R 40 and its time limitations by subsequently turning to the district court and asking the district court to amend a judgment. *Id.* See also, *United States v. Gargotto*, 510 F.2d 409, 412 (6th Cir. 1974) ("In the absence of [a petition under Fed. R. App. P. 40], those issues cannot be re-considered.")

In *Burkett v. Shell Oil Co.*, 487 F.2d 1308,1315 (5th Cir. Ala. 1973), the Fifth Circuit also addressed this same issue and held that where a party did not file a petition for rehearing within the requisite 14-day period provided for in Fed. R. App. R 40, it could not, after expiration of such period, circumvent the rule by moving in district court for reopening of case to have the issues in question heard there. ("Regardless of the caption, however, we are of the opinion that plaintiff is seeking circuitously a reargument on the merits of the [circuit decision], and that any such attempt to reargue this motion is made untimely. Rule 40(a) of the Federal Rules of Appellate Procedure."); See also, *Scott v. Churchill*, 377 F.3d 565 (6th Cir. Mich. 2004) (Courts "take a dim view" of a party's attempt to have the district court review issues previously reviewed by a circuit court where no motion for reconsideration under Federal Rule of Appellate Procedure 40 was filed.)

Defendants are correct that they previously argued these issues before the circuit court. If they were unsatisfied with the results, if they felt the court overlooked or misapprehended issues, they could have filed a motion for reconsideration within 14 days. They also could have filed a motion for clarification. See *Ass'n of Am. Physicians & Surgeons v. Brewer*, 497 F.3d 1056 (9th Cir. Ariz. 2007); *United States v. Kelley*, 482 F.3d 1047 (9th Cir. Cal. 2007). Further, they had the right to file for certiorari with the Supreme Court of the

HYDE & SWIGART
San Diego, California

1 United States. They chose not to do any of this, and are now attempting to
2 inappropriately circumvent Fed. R. App. R 40. This is impermissible.

**VI.** **ANY REQUEST BY DEFENDANTS IS BARRED PURSUANT TO THE DOCTRINE**
4 **OF COLLATERAL ESTOPPEL, OR ISSUE PRECLUSION**

5 The Supreme Court of the United States held in *Acacia Villa v. United States*,
6 24 Cl. Ct. 445 (Cl. Ct. 1991) that an issue is precluded from being litigated again
7 under the doctrine of collateral estoppel, or issue preclusion, when (1) the issues to
8 be concluded are identical to those involved in a prior action, (2) in that action the
9 issues were raised and actually litigated, (3) the determination of those issues in the
10 prior action was necessary and essential to the resulting judgment, and (4) the party
11 fully represented in the prior action. See also, *In re Lockard*, 884 F.2d 1171,
12 1174-1175 (9th Cir. 1989).

13 The issues here are clearly identical (bad faith, inherent authority, and 28
14 U.S.C. § 1927). These issues were raised by Hyde & Swigart in their opening and
15 reply briefs, and by Defendants in their opposition, (see pages 44-47 of
16 Defendants' opposition) and they were subsequently litigated and considered by the
17 Ninth Circuit as Defendants requested the court grant a remand request that request
18 was subsequently declined (In the Ninth Circuit's Mandate, the court discusses the
19 possibility of sanctions under 28 U.S.C. § 1927 at page 1141). The determination
20 of those issues in the prior action was necessary and essential to the resulting
21 judgment (Whether Hyde & Swigart were liable to Defendants was the <u>only</u> issue
22 determined by the Ninth Circuit). Finally, Defendants were fully represented in the
23 prior action. (Defendants were represented by two law firms at the appeal).

24 Defendants attempt at a second bite at the apple is issue precluded.

**VII.** **DEFENDANTS HAVE NOT MET THEIR BURDEN UNDER 28 U.S.C. § 1927**

26 **A.** **THE LEGAL STANDARD FOR 28 U.S.C. § 1927**

27 The imposition of sanctions of 28 USCS § 1927 "is highly unusual and
28 requires a clear showing of bad faith." *West Virginia v. Chas. Pfizer & Co.*, 440 F.

HYDE & SWIGART
San Diego, California

2d 1079, 1092 (2d Cir. N.Y. 1971). "The imposition of sanctions is a serious matter and should be approached with circumspection." *O'Connell v. Champion International Corp.*, 812 F.2d 393, 395 (8th Cir. Minn. 1987). An award under 28 U.S.C. § 1927 "is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158 (2d Cir. N.Y. 2004). "Sanctions under 28 U.S.C. § 1927 are punitive in nature and require "clear and convincing evidence, that every facet of the litigation was patently meritless" and "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court" " *Bryant v. Military Dep't*, 2010 U.S. App. LEXIS 3221 (5th Cir. Miss. Feb. 17, 2010), citing *Proctor & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 525-26 (5th Cir. 2002) (emphasis in original). "Such sanctions may only be awarded if a party "multiplies the proceedings … unreasonably and vexatiously," <u>a standard that focuses on the conduct of the litigation and not on the merits.</u> (underscore added.) [citations]. In our review of the record, we see nothing to suggest–let alone clear and convincing evidence–that sanctions would be appropriate under this standard." *Bryant*, *36-37.

28 U.S.C. § 1927 provides the mechanism for sanctioning conduct that occurs after commencing a case. *MGIC Indem. Corp. v. Moore*, 952 F.2d 1120, 1122 (9th Cir. Cal. 1991). The court assesses an attorney's bad faith under a subjective standard. *Id*. Any sanction under 28 U.S.C. § 1927 that does not contain specific findings of subjective bad faith is reversible error. *Id*. A finding of bad faith without evidence is clear error. *Id*. See also, *O'Connell v. Champion International Corp.*, 812 F.2d 393, 395 (8th Cir. Minn. 1987) (Section 1927 necessarily involves determining whether an attorney unreasonably and vexatiously multiplied the proceedings.)

**B. THE COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW ARE DEVOID OF ANY EVIDENCE OF BAD FAITH**

Defendants are only entitled to a § 1927 fee award if they can meet this very high standard and establish that Hyde & Swigart unreasonably and vexatiously "multiplied" the proceedings for the purposes of delay. As in *Bryant*, there is nothing to suggest – let alone provide clear and convincing evidence – that sanctions would be appropriate under this standard.

In its January 21, 2010 order, the Court cleared up Defendants' confusion about what the Court would do here. As the Court stated, "Anything I do is going to have to be based on the findings that are in the findings of fact and conclusions of law. I will not make any additional findings of any kind."

The court's findings of fact and conclusions of law are devoid of any negative comments about plaintiff's counsel. This is especially significant when one considers the fact that it was defense counsel that drafted the Findings of Fact and Conclusions of Law for the court. (This is evident by defense counsel's name in the upper left corner, the caption "Proposed" Findings of Fact and Conclusions of Law," and Judge Schiavelli's handwritten edits on the document, which are minimal.) Even when these findings were drafted, defense counsel and Judge Schiavelli did not believe plaintiff's counsel had conducted themselves improperly.

Defendants claim that they are entitled to attorneys' fees and costs "based on the undisturbed findings made by Judge Schiavelli." *Court docket 241*. However, the "undisturbed findings" do not so much as mention plaintiff's counsel, much less criticize them. They do not even hint that Hyde & Swigart acted in bad faith, even suggest – let alone provide clear and convincing evidence – that sanctions would be appropriate under this standard. This alone requires that Defendants' motion must be denied.

HYDE & SWIGART
San Diego, California

## C. TWO OF THE THREE JUDGES ON THE NINTH CIRCUIT STATED PLAINTIFF'S CASE WAS MERITORIOUS

Comments by an appellate court concerning the merits of the case before it can be considered if they refer to evidence then before the Court. *In re Khan*, 1995 U.S. Dist. LEXIS 4634 *5 (N.D. Cal. Mar. 24, 1995). An appellate decision becomes the law of the case upon the facts as then presented. *Id.*

During the Ninth Circuit oral argument, the litigants repeatedly argued as to whether the case was brought in bad faith. It was the centerpiece of their argument. See *Pages 5, 6, 9, 10, 12, 16, 21, and 22. Transcript of Oral Argument.*

In response, two of the three judges on the Ninth Circuit panel specifically commented on the merits of this case and both agreed that plaintiff's counsel had good reason to believe the case had merit. In both cases the judges were actually holding the letter in question in their hands as they spoke.

**The Honorable Judge Paez:**

"You know, we're dealing with – you judge this letter from the perspective of the least sophisticated consumer. You read this letter and I – you know, there is some minimally – it is minimally persuasive that this is deceptive." Page 18, *Lines 11-15, Transcript of Oral Argument.*

[Defense counsel then argued.]

**Judge Paez in response:**

"But at first blush when you look at this letter and you read it, you know, the least sophisticated consumer is going to think, "You're going to sue me." " *Page 18, Lines 22-24, Transcript of Oral Argument.*

**Later, the Honorable Judge Fletcher:**

"Now, it may be that he doesn't say, "I am going to sue you," but it looks to me like a threat that, Hey, I'm thinking very seriously about this. I mean, the judge disagreed, and the judge may be right, but I don't think it's a frivolous argument that that letter was a threat." *Page 25, Lines 13-18, Transcript of Oral Argument.*

HYDE & SWIGART
San Diego, California

Case 3:16-cv-02186-WQH-MDD Document 47-1 Filed 09/29/22 PageID.5132 Page 916 of 1195
Case 3:08-cv-01896-WQH-MDD Document 147-1 Filed 08/23/17 PageID.2361 Page 14 of 25
1195

1  Immediately after this comment, defense counsel stated, "Well, the judge
2  found otherwise in the sense that he found that this case had absolutely no factual
3  basis to it, and that is in his findings." Astonished at the comment, Judge Fletcher
4  stated, "Factual? I mean, the letter's right in front of us."[4]

5  In summary, two of the judges on the Ninth Circuit had the same initial
6  reaction as to the merits of this case that Hyde & Swigart did when agreed to take
7  the case as trial counsel; the case was meritorious. The standard for bad faith here
8  is *subjective*.  *MGIC Indem. Corp. v. Moore*, 952 F.2d 1120, 1122 (9th Cir. Cal.
9  1991). Judge Fletcher and Judge Paez both stated that the letter in question was
10  deceptive.  Deceptive communications by debt collectors violate 15 U.S.C. §
11  1692e. Judge Paez even used the phrase "minimally persuasive" to characterize the
12  deceptive letter in question. In another FDCPA case, *Guerrero v. RJM Acquisitions*
13  *LLC*, 499 F.3d 926 (9th Cir. Haw. 2007), the Ninth Circuit held that even
14  "minimally colorable" FDCPA claims are enough to avoid a finding of bad faith.;
15  See also, *Boksa v. Keystone Chevrolet Co.*, 553 F. Supp. 958, 962 (N.D. Ill. 1982)
16  (declining to impose fees under 28 U.S.C. § 1927 in a case in which the plaintiff's
17  position was weak but raised a minimal question of contractual and legal
18  interpretation.)

19  Even the Ninth Circuit, on reviewing the evidence Hyde & Swigart reviewed
20  in taking the case, found the case had merit.

21  **D. THE DISTRICT COURT'S ORDER DATED FEBRUARY 16, 2007 HAS BEEN**
22  **REVERSED, AND NOTHING IN IT MAY BE CONSIDERED BY THE COURT**

23  Even in its terse statement regarding Hyde & Swigart in its February 16,
24  2007 order the trial court does not state there was anything unreasonable or
25  vexatious in Hyde & Swigart's conduct as it applied to these proceedings. Section
26

27  [4] While the transcript does not effectively convey the astonished reaction of Judge Fletcher to
defense counsel's argument, it can be heard in his voice on the Ninth Circuit's audio recording of
28  the proceedings at http://www.ca9.uscourts.gov/datastore/media/2008/10/23/07-55326.wma

HYDE & SWIGART
San Diego, California

1  1927 does not allow courts to impose a sanction without specifically articulating a

2  basis for the amount. *Prosser v. Prosser*, 186 F.3d 403, 407 (3d Cir. V.I. 1999).

3  On March 1, 2007, Hyde & Swigart appealed the district court's order as it

4  applied to Hyde & Swigart. In this appeal, Hyde & Swigart made numerous

5  arguments as to the February 16, 2007 order issued by Judge Schiavelli. One of the

6  arguments was that Judge Schiavelli erred in concluding Hyde & Swigart acted in

7  bad faith in this matter. This order was subsequently reversed by the Ninth Circuit

8  in its entirety as to Hyde & Swigart. Once a decision of the district court is

9  reversed, it sets aside the lower court's decision for <u>all</u> purposes. *Cal. Dep't of Soc.*

10  *Servs. v. Thompson*, 321 F.3d 835, 847 (9th Cir. Cal. 2003).

11  The effect of reversal on a judgment is that after reversal, "'[the] decree [is]

12  no longer of any force or effect. The parties [are] in precisely the same situation as

13  though no decree had been entered.' [citations]." *Disher v. Citigroup Global Mkts.,*

14  *Inc.*, 486 F. Supp. 2d 790 (S.D. Ill. 2007). After a reversal, the order is "without

15  any validity, force, or effect." *Id.*, quoting the Supreme Court in *Butler v. Eaton*,

16  141 U.S. 240, 244, 11 S. Ct. 985, 35 L. Ed. 713 (1891). The judgment is a nullity.

17  *Id.* See also 36 C.J.S. Federal Courts § 712 (1955 & Supp. 2007) ("The effect of a

18  general and unqualified reversal of a judgment, order, or decree by [a reviewing

19  court] is to nullify it completely and to leave the cause standing as if it had never

20  been rendered[.]") (collecting cases). *Accord Universal Underwriters Ins. Co. v.*

21  *McMahon Chevrolet-Oldsmobile, Inc.*, 866 F.2d 1060, 1063 (8th Cir. 1989)

22  (reversal of a judgment "effectively annul[s] the ... judgment *in toto*," even as to

23  issues not specifically addressed by the reviewing court but the resolution of which

24  are necessarily dependent on the judgment). (Emphasis added.)

25  In summary, to reverse a judgment, means to overthrow it by contrary

26  decision, to make it void, to undo or annul it for error. See *Atlantic C. L. R. Co. v.*

27  *St. Joe Paper Co.*, 216 F.2d 832 (5th Cir. Fla. 1954) cert den (1955) 348 US 963, 99

28  L Ed 751, 75 S Ct 523 and cert den (1955) 348 US 963, 99 L Ed 751, 75 S Ct 524

HYDE & SWIGART
San Diego, California

1   and cert den (1955) 348 US 963, 99 L Ed 750, 75 S Ct 522.

2       The law of the case doctrine requires a district court to follow the appellate

3   court's resolution of an issue of law in all subsequent proceedings in the same case.

4   See *United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995).   Here the Ninth

5   Circuit's mandate has created a nullity.  No finding of bad faith on the part of Hyde

6   & Swigart exists.  For the Court to sanction Hyde & Swigart pursuant to 28 U.S.C.

7   § 1927, the Court would have to issue a new finding that Hyde & Swigart

8   unreasonably and vexatiously multiplied the proceedings in some manner and in the

9   process, acted in subjective bad faith.  Any sanction under 28 U.S.C. § 1927 that

10   does not contain such specific findings is reversible error.  *MGIC Indem. Corp. v.*

11   *Moore*, 952 F.2d 1120, 1122 (9th Cir. Cal. 1991);  See also *O'Connell v. Champion*

12   *International Corp.*, 812 F.2d 393, 395 (8th Cir. Minn. 1987).

13   **E.  THE DISTRICT COURT'S COMMENT IN ITS FEBRUARY 16, 2007 ORDER**

14        **CONCERNING BAD FAITH WAS MISINFORMED DUE TO DEFENDANTS'**

15        **REPEATED MISREPRESENTATIONS, AS WELL AS ERRORS OF LAW**

16       As argued above, the district court's February 16, 2007 order is a nullity and

17   is void.  It cannot be given any weight.  If the Court agrees with this assessment,

18   this subsection is superfluous and the Court need not consider it.

19       In the court's February 16, 2007 order, the court holds Hyde & Swigart

20   "jointly and severable [sic]" liable.  *Order, Page 3, lns 13-14*.  This is based on two

21   factors. First, "because Plaintiff's counsel continued to file FDCPA[5] suits on behalf

22   of Mr. Del Nero *after* the court trial in this case." (Emphasis the court's); Second,

23   because plaintiff's counsel "appears to have said one thing and done another" – that

24   is plaintiff's counsel continued to represent Mr. Del Nero, including filing a new

25   complaint on November 3, 2005, "months after the trial in this case where

26   Plaintiff's counsel claims he first learned of his client's numerous problems." These

27   conclusions are based on demonstrably erroneous conclusions.

28   [5] Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq.

**HYDE & SWIGART**
San Diego, California

## 1. THE FIRST FACTOR IS DEMONSTRABLY ERRONEOUS

The first factor for the court's order is based on the fact that plaintiff's counsel represented in *Darren D Chaker v. Felipa R Richland et al*, 05-cv-07851, filed November 3, 2005. However, this case was not an FDCPA matter as the court believed. It involved only one cause of action, the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq. Mr. Del Nero's Complaint and First Amended Complaint bear this out. (*Richland* court's docket entries 1 & 8.) In that matter, Richland requested attorneys' fees and costs from Hyde & Swigart as well, again claiming "bad faith." That request was denied with the court holding such a request to be "unwarranted." Consequently, even though the judge in that matter specifically said a finding of bad faith on the part of Hyde & Swigart was unwarranted in that case, the court used the decision to support "bad faith" conclusion in this case.

## 2. THE SECOND FACTOR IS DEMONSTRABLY ERRONEOUS

The second factor for the court's order was based on a chronology of events in this case and others, and on the court's *clearly erroneous misreading* of Mr. Hyde's declaration. In the court's order the judge explains that based on the judges reading of Mr. Hyde's declaration, plaintiff's counsel "said one thing and [did] another." But a careful reading of Mr. Hyde's declaration establishes that was simply not true.

The court based its conclusion on what it believed to be Mr. Hyde's use of the word "now" to indicate "March 24, 2005" or "April 15, 2005" and the fact that plaintiff's counsel filed the Richland matter *after that*, on November 3, 2005. *Order, Page 3, lns 4-14*. Because both of these dates do, indeed, come before the Richland filing on November 3, 2005, this would indicate plaintiff's counsel did say one thing and do another when Mr. Hyde said "…had I known then, what I know *now* … I would never have agreed to represent him in this case or any other matter. (Italics added). And as is apparent in his order, Judge Schiavelli found this to be a very important issue.

However, those dates are clearly <u>not</u> what Mr. Hyde referred to with the word "now." Mr. Hyde's usage is evident. All the court needs to do is read line 38 of Mr. Hyde's declaration to see that the word "now" was the date the declaration was signed, that is, November 30, 2006. This establishes that plaintiff's counsel did <u>not</u> say one thing and do another. The Richland matter was filed on November 3, 2005, over a year *before* Mr. Hyde's declaration. The district court simply made an error in its reading and basing so much of its conclusion on that statement.

Further, 28 U.S.C. § 1927 requires "a detailed finding that the proceedings were both 'unreasonable' and 'vexatious'." *Meadowbriar Home for Children v. Gunn*, 81 F.3d 521 (5th Cir. Tex. 1996). Even accepting Judge Schiavelli's reading on its face, no "unreasonable" and "vexatious" conduct is indicated.

### 3. THE DISTRICT COURT'S FEBRUARY 16, 2007 ORDER IS NOT BASED ON ANY CONDUCT BY HYDE & SWIGART DURING THE PROCEEDINGS

The reason for the court's February 16, 2007 order is very clear. "Taken together these *post-trial facts* and counsel's representation of Mr. Del Nero in numerous *other* FDCPA actions demonstrate that Plaintiff's counsel participated in the filing of bad faith FDCPA actions and should therefore be liable for Defendants' attorney' fees along with Plaintiff Del Nero." *Order, Page 3, lns 15-20.*

Clearly then, the court's order was not based on any conduct that occurred prior to when the case was concluded or on the proceedings in this case. Even accepting the court's position without considering the trial court's misreading, the only conduct the court looked to was "post-trial facts." The court is very clear on this. Closing arguments were on April 15, 2005. Counsel's representation of the plaintiff in the Richland matter began on November 3, 2005, and plaintiff's counsel filing its declaration allegedly saying of one thing and doing another was dated November 30, 2006.

28 U.S.C. § 1927 applies <u>only</u> to an attorney who unreasonably and vexatiously multiplying proceedings, and sanctions cannot be awarded for allegedly improper conduct that occurred in separate proceeding before a different court; only the court that oversees the action has power to impose sanctions for misconduct occurring before it. *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 142 F.R.D. 648 (W.D. Tex. 1992) revd on other grounds, *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 989 F.2d 791 (5th Cir. Tex. 1993). Consequently, even if the trial court's order were not a nullity, 28 U.S.C. § 1927 does not apply to these activities.

## F. ON THREE SEPARATE OCCASIONS, THE COURT DENIED DEFENDANTS' MOTIONS FOR JUDGMENT ON PARTIAL FINDINGS, FINDING THAT THE PLAINTIFF HAD MET ITS BURDEN AND PRESENTED A PRIMA FACIE CASE

Plaintiff rested his case on March 23, 2005, the 4th day of trial. At that time, Defendants moved for directed verdicts on all issues. In their motions, Defendants argued, and Plaintiff refuted, that Plaintiff had failed to establish a prima facia case with regard to 15 U.S.C. § 1692e(8), 15 U.S.C. § 1692e, and 15 U.S.C. § 1692e(5). The district court determined that the plaintiff had presented a prima facia case and denied these motions in their entirety. The trial continued.

In *National Asso. of Government Employees, Inc. v. National Federation of Federal Employees*, 844 F.2d 216 (5th Cir. 1988), the court reversed a district court's order for sanctions, noting:

> The court, in addition, denied directed verdicts both at the conclusion of the Association's evidence and at the end of the case. While this may have been a prudent precaution against possible later reversal on appeal, the court did not merely reserve judgment or grant the motion after receiving the jury's verdict. Instead it entered judgment on the verdict. As Judge William Schwarzer has stated: "One might well wonder how a case could be so frivolous as to warrant sanctions if it has sufficient merit to get to trial." (citing 26 William W. Schwarzer, Rule 11 Revisited, 101 Harv.L.Rev. 1013, 1019 & n. 27 (1988).)

HYDE & SWIGART
San Diego, California

1    The same applies here. The district court, by refusing to grant Defendants'
2    request for a judgment after Plaintiff rested, found Plaintiff's case had sufficient
3    merit to hear Defendants' arguments. By refusing to grant Defendants' directed
4    verdicts the district court was ruling that had Defendants failed to respond to
5    Plaintiff's prima facie case, the district court would enter judgment against
6    Defendants.    This issue demonstrates the case had merit in the eyes of the trial
7    court. The Second Circuit opined the same in *AFSCME v. County of Nassau*, 96 F.
8    3d 644 (2nd Cir 1996), stating:

9
10   Indeed, had the [Defendant] failed to respond to [Plaintiff's] prima facie
     case, the district court could have entered directed judgment against the
     [Defendant.] (Internal citations omitted.) **The district court therefore**
11   **erred in affording [Plaintiff's] ample prima facie case no weight** in the
     calculus under *Christiansburg. See LeBeau v. Libbey- Owens-Ford Co.*,
12   799 F.2d 1152, 1160 (7th Cir. 1986) (reversing grant of fees where EEOC
13   established prima facie case and district court denied defendant's motions
     for summary judgment and directed verdict), cert. denied, 484 U.S. 815,
14   108 S. Ct. 67, 98 L. Ed. 2d 31 (1987); EEOC v. Tarrant Distribs., Inc., 750
15   F.2d 1249, 1251 (5th Cir. 1984) (per curiam) (affirming denial of fees
16   where EEOC established prima facie case). (Bold face added.)

17
18   The Ninth Circuit questioned the idea that there was bad faith in this case
19   during oral argument, opining that when a plaintiff survives a Rule 52 directed
20   verdict this establishes the plaintiff has presented a credible case up to that point.
21   **The Honorable Judge Paez**:
22   "Maybe we can just focus on the bad faith that Judge Fletcher was pointing
23   to earlier. … Really what – and address my earlier question, too. The case got
24   beyond judgment and to Rule [52] or whatever it is. By that time, yeah, there was a
25   court trial. … The judge says there's enough here to go forward. Why doesn't that –
26   why is that – that shows to me it may have been a minimally what's the term?
27   Minimally persuasive, which is a term used in the case law." *Page 15, Line 25 -*
28   *Page 16, Line 14, Transcript of Oral Argument.*

HYDE & SWIGART
San Diego, California

1      [Defense counsel then argued.]

2      "Well, it – after the plaintiff had presented their case and called their

3 witnesses, the court could have said, "This case is over. This is nothing but a –

4 they're lying through their teeth. It's made up. It's ridiculous. Judgment for the

5 defendant." Right then and there." … "Instead, the judge said, "No. I want to hear

6 from the defendant. You call your witnesses and you explain what happened here."

7 … There was enough there for the judge to put the – to put the burden on you [the

8 defendants] to come back with evidence." *Page 17, Line 6 - 20, Transcript of Oral*

9 *Argument.* See also, Page 18, Lines 19-21, Transcript of Oral Argument

10      At oral argument Defendants argued that "I don't think that beating a Rule 52

11 motion insulates you from having a bad faith action." *Page 16, Lines 15-17,*

12 *Transcript of Oral Argument.* However, that misses the point. It is not a question

13 of being "insulated." The trial court's denial is evidence that the case had enough

14 merit in the eyes of the trial court to deny three directed verdicts.

15     **G.**  **THE CREDIBILITY OF PLAINTIFF'S WITNESS, OR LACK THEREOF, DOES**

16         **NOT REFLECT BAD FAITH ON THE PART OF HYDE & SWIGART**

17      Unintended acts will not support imposition of sanctions under 28 U.S.C.

18 § 1927. *Alexander v FBI* (1998, DC Dist Col) 186 FRD 6. In the court's findings

19 of fact and conclusions of law, the court concluded that Plaintiff's mother was not

20 credible. The fact that a trial court was not, in the end, persuaded by the plaintiff's

21 witnesses at trial does not itself support a conclusion that the plaintiff's lawsuit was

22 frivolous when brought. *EEOC v. Bruno's Restaurant*, 13 F.3d 285, 289-90 (9th Cir.

23 1992). See also *Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1060 (9th Cir.

24 2006); *Warren v. City of Carlsbad*, 58 F.3d 439, 444 (9th Cir. 1995); *Christiansburg*

25 *Garment Co. v. EEOC, 434 U.S. 412, 421-422 (U.S. 1978)* ("In applying these

26 criteria, it is important that a district court resist the understandable temptation to

27 engage in post hoc reasoning by concluding that, because a plaintiff did not

28 ultimately prevail, his action must have been unreasonable or without foundation.")

HYDE & SWIGART
San Diego, California

## VIII. DEFENDANTS DO NOT MEET THEIR BURDEN AS TO INHERENT AUTHORITY.

Recently, in *Mendez v. County of San Bernardino*, 540 F.3d 1109 (9th Cir. Cal. 2008), the Ninth Circuit again reversed Judge Schiavelli after he sanctioned an attorney. Here the Ninth Circuit clarified the district court's authority to impose sanctions under its inherent authority.

> The district court's authority to impose sanctions under its inherent powers is broad, but not limitless. Before awarding sanctions under its inherent powers … the court must make an explicit finding that counsel's conduct 'constituted or was tantamount to bad faith.' " [citations]
> …
> We have emphasized, however, that "[t]he bad faith requirement sets a high threshold." [citations] Even in a case where the district court described a litigant's arguments as "totally frivolous," "outrageous" and "inexcusable" and called his behavior "appall[ing]," we nonetheless refused to equate this characterization of conduct as synonymous with a finding of bad faith.
>
> We are also troubled by the district court's failure to give Gonzales notice that his personal appearance was required at the first order to show cause hearing. A district court may not sanction an attorney under its inherent powers if there is nothing in the local rules or norms of professional conduct "which would have placed [the attorney] on reasonable notice" that his conduct was not in conformance with the court's requirements. [citations].
> …
> We recognize that district courts enjoy "broad power" to award sanctions against attorney misconduct and that it is important for courts to have sufficient tools to control the behavior of litigants in their courtrooms. [citations] Nonetheless, the Supreme Court has cautioned that "[b]ecause inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion." [citations] "Sanctions not only may have a severe effect on the individual attorney sanctioned," potentially damaging the attorney's career, reputation and livelihood, but they "also may deter future parties from pursuing colorable claims." [citations].

*Id.*, 540 F.3d at 1131-1133.

Defendants do not even allege, much less establish, that Hyde & Swigart's conduct was not in conformance with the court's requirements. In fact, a review of

HYDE & SWIGART
San Diego, California

the court's entire record does not reveal, and Defendants do not cite, a single incidence where the judge criticized or warned Hyde & Swigart that its conduct did not conform to the court expectations. Further, Defendants never complained of any such conduct.

Hyde & Swigart firmly believe that what motivates Defendants today is what the Supreme Court cautioned of; damaging careers, reputations and livelihoods, and deterring future parties from pursuing colorable claims.

## IX. DETERMINATION OF ATTORNEYS' FEES AND COSTS

When a reviewing court reverses a district court's judgment for the prevailing party, both the underlying judgment and the taxation of costs undertaken pursuant to that judgment are reversed. *Amarel v. Connell*, 102 F.3d 1494 (9th Cir. Cal. 1997). 28 U.S.C. § 1927 does not authorize imposition of sanctions in excess of the costs reasonably incurred because of attorney's unreasonable and vexatious conduct. *In re Akros Installations*, 834 F.2d 1526 (9th Cir. Cal. 1987) (superseded by statute as stated in *In re Roete*, 936 F.2d 963 (7th Cir. Ind. 1991) and (superseded by statute as stated in *Hedges v. Resolution Trust Corp.*, 32 F.3d 1360 (9th Cir. Ariz. 1994)) and (superseded by statute as stated in *Determan v. Sandoval* (In re Sandoval), 186 B.R. 490 (B.A.P. 9th Cir. Cal. 1995)).

28 U.S.C. § 1927 creates liability only for "excess" costs, expenses and attorney's fees triggered by attorney's vexatious behavior, not for total expenses of litigation. *Coleman v. Frierson*, 607 F. Supp. 1578 (N.D. Ill. 1985). It does not involve a generalized across the board award of all attorneys' fees and costs. That is, Section 1927 is limited in its awards. It involves only *excess* costs, expenses, and attorneys' fees, and these must be reasonably incurred *because* of such conduct. *Topalian v. Ehrman*, 3 F.3d 931, 937 (5th Cir. Tex. 1993).

For the Court to find that sanctions were appropriate in this case, it first would have to identity the conduct which would trigger that award, and here there were no findings as to any misconduct. Then, assuming some misconduct could be

HYDE & SWIGART
San Diego, California

1   identified, the court would have to make a determination as to the reasonable excess

2   fees incurred by Defendants in responding to that motion or argument.  See *Murphy*

3   *v. Hous. Auth. & Urban Redevelopment Agency*, 158 F. Supp. 2d 438 (D.N.J. 2001)

4   (28 U.S.C. § 1927 does not authorize wholesale reimbursement of aggrieved party

5   for all of its attorney's fees or for total costs of litigation, but only for those fees and

6   costs associated with persistent prosecution of meritless claim.  Defendants do not

7   explain what excess fees were supposedly incurred here, because there were none.

8   **X.   CONCLUSION**

9        This case has already been decided by the Ninth Circuit and the order was

10  reversed.  Instead of asking for reconsideration or clarification pursuant to Fed. R.

11  App. R 40 within 14 days, or filing for certiorari, Defendants how waited eight

12  months and now attempt to reopen and reargue their case.

13       The burden of showing sanctions are warranted is on the defendants.  *ICU*

14  *Med., Inc. v. Alaris Med. Sys.*, 2007 U.S. Dist. LEXIS 34467 (C.D. Cal. Apr. 16,

15  2007).   However, Defendants provide nothing but character assassination with

16  regard to the plaintiff and guilt by association as to Hyde & Swigart, apparently

17  hoping the Court will provide the rest.   This kind character assassination and

18  misleading representations of the evidence and the law is what caused Judge

19  Schiavelli to rule as he did.  Defendants cannot prevail unless they establish that

20  Hyde & Swigart subjectively acted in bad faith and unreasonably and vexatiously

21  multiplied certain proceedings.  They have not met their burden.  Judge Schiavelli's

22  Findings of Fact and Conclusions of Law provide no basis at all for Hyde &

23  Swigart's alleged subjective bad faith, and does not point to any proceedings that

24  were unreasonably and vexatiously multiplied.   This is a witch hunt by angry

25  defendants.

26       Courts should generally follow earlier orders in the same case and should be

27  reluctant to change decisions already made, because encouragement of change

28  would create intolerable instability for the parties.  *Ridgeway v. Montana High*

HYDE & SWIGART
San Diego, California

*School Asso.*, 858 F.2d 579, 587 (9th Cir. Mont. 1988). However, Defendants believe that if they keep filing motion after motion, someone will eventually rule in their favor. This is unreasonably and vexatious in its own right.

Defendants have not met their burden regarding 28 U.S.C. § 1927 or inherent authority. No findings exist that Hyde & Swigart acted in any manner other then appropriately during the pendency of the trial. What Defendants want now is for the Court to interpret excerpts from the records made during a six day trial and based on those excerpts make new findings without the luxury of hearing all the evidence, testimony and argument. This is an appropriate basis to make any findings and to further award some type of "sanction" based on that limited argument.

Further, Defendants have not met their burden as to demonstrating what excess costs were reasonably incurred because of Hyde & Swigart's purported unreasonable and vexatious conduct. The only evidence or finding of fact they can point to here is that the plaintiff lost his case. Going to trial and losing on the merits does not provide a foundation for sanctions. For these reasons Defendants' motion should be denied in their entirety.

Respectfully submitted,                    **Hyde & Swigart**

Date: March 8, 2010                      By:/s/ Robert L. Hyde_____
                                              Robert L. Hyde

HYDE & SWIGART
San Diego, California

Case 3:16-cv-02186-WQH-MDD   Document 127-1   Filed 09/29/22   PageID.5144   Page 938 of
1196
Case 3:16-cv-02186-WQH-MDD   Document 47-1   Filed 01/23/17   PageID.2375   Page 193 of
445

# EXHIBIT O

1   TOMIO B. NARITA (SBN 156576)
    JEFFREY A. TOPOR (SBN 195545)
2   SIMMONDS & NARITA LLP
    44 Montgomery Street, Suite 3010
3   San Francisco, CA 94104-4816
    Telephone: (415) 283-1000
4   Facsimile:   (415) 352-2625
    tnarita@snllp.com
5   jtopor@snllp.com

6   Attorneys for Defendants
    Midland Credit Management, Inc. and
7   MRC Receivables Corporation

8

9                   UNITED STATES DISTRICT COURT

10                 CENTRAL DISTRICT OF CALIFORNIA

11

12  DARREN DEL NERO and NICOLE          )  CASE NO.: CV 04-1040 ABC (SHx)
    SHAKER,                             )
13                                      )
                                        )
14          Plaintiffs,                 )  **DECLARATION OF JEFFREY A.**
                                        )  **TOPOR IN SUPPORT OF**
15          vs.                         )  **DEFENDANTS' MOTION FOR**
                                        )  **AWARD OF ATTORNEYS' FEES**
16  MIDLAND CREDIT                      )  **AND COSTS PURSUANT TO 28**
    MANAGEMENT, INC. MRC                )  **U.S.C. § 1927 AND THE COURT'S**
17  RECEIVABLES CORP. and DOES          )  **INHERENT AUTHORITY**
    1-10,                               )
18                                      )
            Defendants.                 )
19  _____  )

20

21

22

23

24

25

26

27

28
    _____
    DEL NERO ET AL. V. MIDLAND CREDIT MANAGEMENT ET AL. (CASE NO. CV 04-1040 ABC (SHx))
    TOPOR DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR
    AWARD OF ATTORNEYS' FEES

I, Jeffrey A. Topor, declare:

1.     I am an attorney duly licensed to practice in this district court and before all courts of the State of California. I am associated with Simmonds & Narita LLP, counsel of record for defendants Midland Credit Management, Inc. and MRC Receivables Corp. in this action. I make this declaration in support of Defendants' Motion for Award of Attorneys' Fees and Costs Pursuant to 28 U.S.C. § 1927 and the Court's Inherent Authority. I have personal knowledge of the facts set forth below, and could and would testify thereto if called upon to do so.

2.     Attached hereto as **Exhibit A** is a true and correct copy of Trial Exhibit 28, the Petition for Injunction Prohibiting Harassment in the action *Darren D. Chaker v. Nicole Chaker; Sonia Tomina*, case number BS070255 in the Superior Court of California, County of Los Angeles.

3.     Attached hereto as **Exhibit B** is a true and correct copy of Trial Exhibit 29, the Complaint for Restraining Order (Amended) in the action *Darren David Chaker v. Sonia Tomina, Nicole Chaker*, case number RCV 057124 in the Superior Court of California, County of San Bernardino.

4.     Attached hereto as **Exhibit C** is a true and correct copy of the cover page, the cited pages and the reporter's certificate to the transcript of trial proceedings dated March 17, 2005.

5.     Attached hereto as **Exhibit D** is a true and correct copy of the cover page, the cited pages and the reporter's certificate to the transcript of trial proceedings dated March 15, 2005.

6.     Attached hereto as **Exhibit E** are true and correct copies of Trial Exhibits 24, 39, 40, and 41, pages from Nicole Chaker's 2003 Appointment Book.

7.     Attached hereto as **Exhibit F** is a true and correct copy of Trial Exhibit 27, the Verified Complaint for Damages in the action *Darren D. Chaker v.*

1   *Imperial Collection Services*, case number CV04-2728 PA in the United States

2   District Court, Central District of California.

3       8.    Attached hereto as **Exhibit G** is a true and correct copy of Trial

4   Exhibit 26, the Complaint for Violating the Fair Debt Collection Practices Act and

5   Demand For Jury Trial in the action Darren Del Nero *v. Riddle & Assocs., P.C., et*

6   *al.*, case number LACC03-6511 in the United States District Court, Central

7   District of California.

8       9.    Attached hereto as **Exhibit H** is a true and correct copy of the cover

9   page, the cited pages and the reporter's certificate to the transcript of trial

10  proceedings dated March 16, 2005

11      10.   Attached hereto as **Exhibit I** is a true and correct copy of the cover

12  page, the cited pages and the reporter's certificate to the transcript of trial

13  proceedings dated March 23, 2005.

14      11.   Attached hereto as **Exhibit J** is a true and correct copy of the cover

15  page, the cited pages and the reporter's certificate to the transcript of transcript of

16  trial Proceedings dated March 22, 2005.

17      12.   Attached hereto as **Exhibit K** is a true and correct copy of the cover

18  page, the cited pages and the reporter's certificate to the transcript of trial

19  proceedings dated March 24, 2005.

20      13.   Attached hereto as **Exhibit L** is a true and correct copy of the cover

21  page, the cited pages and the reporter's certificate to the transcript of the hearing

22  on Defendant's Motion for Attorneys' Fees dated November 27, 2006.

23  14.   Attached hereto as **Exhibit M** is a true and correct copy of the Order on

24  Defendants' Motion For Attorneys' Fees and Related Non-Taxable Costs filed by

25  Felipa Richland, Richland & Associates, and Nathan Enterprises Corp. in the

26  action Darren D. Chaker *v. Felipa Richland, et al.*, case number CV 05-7851 in

27  the United States District Court, Central District of California.

28

DEL NERO ET AL. V. MIDLAND CREDIT MANAGEMENT ET AL. (CASE NO. CV 04-1040 ABC (SHx))
TOPOR DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR
AWARD OF ATTORNEYS' FEES                                                    2.

924

I declare under penalty of perjury that the foregoing is true and correct.
Executed at San Francisco, California on this 18th day of March, 2010 at San
Francisco, California.

By: _____s/Jeffrey A. Topor_____
Jeffrey A. Topor

DEL NERO ET AL. V. MIDLAND CREDIT MANAGEMENT ET AL. (CASE NO. CV 04-1040 ABC (SHx))
TOPOR DECLARATION IN SUPPORT OF DEFENDANTS' MOTION FOR
AWARD OF ATTORNEYS' FEES                                                                    3.

925

Case 2:09-cv-01086-WQH-MDD Document 452-7 Filed 08/23/17 Page 1 of Page 2289 1196

Exhibit A

Case 3:16-cv-02186-WQH-MDD Document 127-1 Filed 09/29/22 PageID.5159 Page 934 of
Case 3:16-cv-02186-WQH-MDD Document 52-7 Filed 08/23/21 PageID.2875 Page 26 of
1196
1195

NAME OF PARTY OR ATTORNEY *(and state bar number, if any):*

ADDRESS WHERE YOU WANT MAIL SENT:

DARREN D. CHAKER
311 N. Robertson Blvd. #123
Beverly Hills, CA 90211

TELEPHONE NUMBER *(Optional)*:

ATTORNEY FOR *(Name)*:

FOR COURT USE ONLY

**FILED**
LOS ANGELES SUPERIOR COURT

JUN 2 6 2001

JOHN A. CLARKE, CLERK

BY YVETTE GONZALEZ, DEPUTY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 N. Hill St.
MAILING ADDRESS: Los Angeles, CA 90012
CITY AND ZIP CODE:
BRANCH NAME: Central Judicial District

PLAINTIFF(S): Darren D. CHAKER

DEFENDANT(S): Nicole CHAKER; Sonia Tomina

**PETITION FOR INJUNCTION PROHIBITING HARASSMENT**
☒ **Application for Temporary Restraining Order**

CASE NUMBER:
BS070255

**(THIS IS NOT AN ORDER)**

*Read the* Instructions for Lawsuits to Prohibit Harassment *(form CH-150) before completing this form.*

1. PERSONS TO BE PROTECTED *(List names and ages of all persons **including yourself**, if applicable, to be protected by this order and their relationship to the party seeking the orders; all named parties must sign this petition)*: **NO FEE**

   DARREN D. CHAKER; NADINE DOE

2. a. Defendant 1 *(name)*: Nicole CHAKER

   | Sex: ☐ M ☒ F | Ht: 5'8 | Wt: 200 | Hair color: BRN | Eye color: GR | Race: CAUC | Age: 60 | Date of birth: 9-21-48 |

   *(Note: If there is more than 1 defendant, complete attachment 2 (Form 169A) & attach with identifying information for each.)*

   b. Defendant's residence address *(if known)*:

   c. Defendant's work address and name of business *(if known)*:

   ☐ Continued in Attachment 2.

3. This action is filed in this county because
   a. ☐ defendant resides in this county.
   b. ☒ defendant has caused physical or emotional injury to plaintiff in this county.
   c. ☐ other *(specify)*:

4. How is it that you know defendant (i.e., landlord/tenant, neighbor, etc.)? *(Specify)*:
   Mother + former acquaintance

5. Defendant has
   a. ☒ threatened to commit acts of violence against plaintiff(s). *(Specify in item 19.)*
   b. ☐ committed acts of violence against plaintiff(s). *(Specify in item 19.)*
   c. ☐ not threatened to commit and has not committed any acts of violence.

6. Defendant has committed a series of acts that seriously alarm, annoy, or harass plaintiff(s). *(Specify in item 19.)*

7. Plaintiff(s) have actually suffered substantial emotional distress as a direct result of defendant's conduct described in item 19, and defendant's conduct would have caused a reasonable person to suffer substantial emotional distress.

8. Defendant's continuing course of conduct has been directed specifically against plaintiff and is knowing, willful, not constitutionally protected, and without legitimate purpose. (See Points and Authorities on Page four.)

*(Continued on reverse)*

Page one of four

Form Provisionally Approved by the
Los Angeles Superior Court
[Rev. January 1, 1998]   **169**
*Martin Dean's Essential Forms* ™

**PETITION FOR INJUNCTION PROHIBITING HARASSMENT**

Code of Civil Procedure, § 527.6

76P324†

| PLAINTIFF *(Name)*: | CASE NUMBER: |
|---|---|
| DEFENDANT *(Name)*: | |

### *(THIS IS NOT AN ORDER)*

15. Plaintiff(s) request that copies of orders be given to the following law enforcement agencies:

<u>Law enforcement agency</u>          <u>Address</u>

*Los Angeles Co. Sheriff*

16. a. ☐ Plaintiff has asked for restraining orders against the defendant before. *(Specify county and case number, if known.)*

b. ☐ Defendant has asked for restraining orders against plaintiff before. *(Specify county and case number, if known.)*

17. Plaintiff requests additional relief as may be proper.

18. ☒ **I request that time for service of the Order to Show Cause and accompanying papers be shortened so that they may be served no less than** *(specify number)*: **2          days before the date set for the hearing.** I need to have the order shortening time because of the facts contained in this application. *(Add additional facts if necessary)*:

19. ☒ **DESCRIPTION OF CONDUCT**
Describe in detail the most recent incidents of abuse. State what happened, the dates, and who did what to whom. Describe any injuries. *See Complaint*

☒ Continued in Attachment 19 *(Form 169A)*.

20. ☐ This petition relates to a protective order, restraining order, or a permanent injunction restraining violence or threats of violence, and therefore must be filed without payment of a filing fee under subdivision (h) of § 527 Code of Civil Procedure. *(Note: Even if you check this item, you must pay a filing fee if you have checked box "c" under item 5 on page 1, since no violence or threats of violence have been claimed. If you check this item and the court finds there has been no violence or threats of violence, you will be ordered to pay any unpaid fees, and may be guilty of perjury.)*

21. ☐ Number of pages attached: _____

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 6·1·09

DAVID D. CHAKER
(TYPE OR PRINT NAME)          ► _____ (SIGNATURE OF PLAINTIFF)

_____
(TYPE OR PRINT NAME)          ► _____ (SIGNATURE OF PLAINTIFF)

_____
(TYPE OR PRINT NAME)          ► _____ (SIGNATURE OF PLAINTIFF)

[Rev. January 1, 1998]
Martin Dean's Essential Forms ™
169          **PETITION FOR INJUNCTION PROHIBITING HARASSMENT**          Page three of four

1 | Darren D. Chaker
311 N. Robertson Blvd. #1230
2 | Beverly Hills, California 90211

3

4 | **SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES,**

5 | **CENTRAL JUDICIAL DISTRICT**

6 | DARREN DAVID CHAKER,            Case No.:

7 |          Plaintiff,            COMPLAINT FOR TEMPORARY RESTRAINING
                                   ORDER, PRELIMINARY AND PERMANENT
8 |                                INJUNCTIONS, AND DAMAGES

9 |          vs.

10

11 | NICOLE CHAKER, SONIA TOMINIA,

12 | and Does 1-10

13 |          Defendants.

14

15 | Plaintiff alleges:

16 | 1.  Plaintiff is, and at all times mentioned in this complaint

17 | was an individual;

18 | 2.  Defendants' NICOLE CHAKER and SONIA TOMINA are at all times

19 | mentioned in this complaint were the mother and estranged

20 | acquaintance.

21 | 3.  Plaintiff is unaware of the true names or identities of

22 | other persons who may be found to be Doe Defendants' but will

23 | amend this complaint when and if the identities of those persons

24 | who may have assisted, instructed, encouraged or ratified the

25 | conduct of Defendants' behavior.   When their true names and

1 capacities are ascertained, Plaintiff will amend this complaint
2 by inserting their true names and capacities herein. Plaintiff
3 is informed and believes and thereon alleges, that each of the
4 informed fictitiously named Defendant's is responsible in some
5 manner for the occurrences alleged in this complaint were
6 proximately caused by those Defendants';
7 4. Beginning on or about May 1, 2001, and continuing to the
8 present time, Defendants, and each of them, wrongfully and
9 unlawfully, have made numerous harassing phone calls to
10 Plaintiff, known associates, and have further either been
11 stalked, kept under surveillance, and harassed neighbors of
12 Plaintiff and known associates to wit Defendant driving their
13 vehicle into the driveway of Plaintiff and/or known associates
14 at early hours of the morning yelling profanity, and Defendants'
15 honking their horn for no lawful reason other than to harass,
16 annoy, and further cause a vexatious atmosphere towards
17 Plaintiff and known associates.

18 Additionally, Defendants' constantly call Plaintiff and
19 alleges that she will "finish him off" and "make him pay the
20 highest price" if he does not cease his association with
21 specific persons. As witnessed, Plaintiff has explicitly stated
22 she will do "whatever it takes" to see that Plaintiff "will not
23 live to see any children that comes from a whore." It is
24 Defendants' belief that their own culture dictates that the son
25 should not associate with any other female other than that of

1  their own culture.   In essence, Defendants' view is that any
2  other female, as stated by Defendant, is a "whore not worthy of
3  having children by" Plaintiff.
4  5.   Some of the most recent incidents of harassment alleged is
5  that on or about June 4th, 7th, 8th, and 9th, Defendants have been
6  seen constantly roaming the residences, businesses, and school
7  of Plaintiff and his known associates.   Defendant CHAKER was
8  confronted by Plaintiff and by a known associate of Plaintiff
9  and told to leave the property.   Defendant CHAKER refused and
10 demanded why Plaintiff was involved in a relationship with a
11 female that she [Defendant] did not approve of.   Defendant
12 [CHAKER] called Plaintiffs' associate a "fucking whore" and
13 stated that she will her car into the female associate of
14 Plaintiff if she did not leave Mr. Chaker alone.   Defendant
15 further stated that she will "give my life and stop at nothing
16 to destroy" Plaintiff.   Soon thereafter, Defendant CHAKER stated
17 in two voice mails that said associate of Plaintiff DEL NERO
18 would have need to leave or she [CHAKER] will back her vehicle
19 into the associate of Plaintiff.
20      Specifically, some of the comments that are sought to be
21 restrained and have continued despite all means of negations and
22 requests to cease this behavior are exemplified as memorialized
23 on tape:
24 /   /   /   /
25 /   /   /   /

COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT
INJUNCTIONS, AND DAMAGES- 3

SER 309

a.    While Plaintiff was socializing with a female, Defendant CHAKER saw the two together and commenced yelling in a public parking lot:

> "Get that cunt out of here…pussy, pussy, pussy, get
> away from that pussy…Let Father Michael[1] eat your pussy"

b.    On or about late April, Defendant CHAKER further informed her brother, Dr. Henry Chaker, of her intent to harm and/or cause great bodily injury to Plaintiff and any associate, specifically female, and as a subsequent result, Dr. Chaker left a voice mail for Plaintiff stating:

> "You mother is saying she has a bullet for [female's
> name] and that you must stay away from her or she
> does not care about the results and that she will see
> you hang if you don't stop seeing her…Darren think
> twice about defying her and remember when she tried
> to put me in jail with the Attorney General because
> of the will."

b.    In addition, Defendant TOMINA has conducted numerous stints of information gathering pertaining to how Plaintiff conducts his personal life.  In fact, said Defendant has been the "silent storm" in the back ground of this matter making numerous efforts to gain the trust of Plaintiff and then stating to the God Son of Plaintiff how she will "get Darren in trouble if he doesn't marry me."

---

[1] This person is a catholic priest. Inasmuch, neither Defendant attend said Church said priest leads.

COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTIONS, AND DAMAGES- 4

SER 310

1     Plaintiff is aware and further alleges that due to enormous

2 amount of threatening phone calls by Defendants he and

3 associates of Plaintiff has had to change phone numbers,

4 institute caller ID blocking, block incoming phone calls that

5 have caller ID blocking, add additional lighting to the

6 residence for security purposes, park vehicles inside the

7 residence's garage for fear of threats being fulfilled as it

8 pertains to tires being slashed, and as a proximate cause of

9 Defendants conduct has, will, or shall cause emotional distress

10 upon Plaintiff if the Court does not grant the relief requested.

11 Two separate police reports were made, report numbers 1604274

12 and 1603947, pertaining to the aforementioned conduct of

13 Defendants and is being actively investigated by detectives.

14     6. Additionally, on or about, June 1, 2001, Defendant had

15 called the place of employment of an associate of the

16 Plaintiff. Defendant screamed at the people of worked at this

17 doctor's office and made numerous statements that placed

18 them in fear of their life. Specifically, Defendant CHAKER

19 had said, in essence, "you are all whores and better stay away

20 from my son or I will come and finish all of you up," and

21 alleged that "the doctor is running a whore house." Said

22 Defendant further explicitly stated that if they do not

23 cease their relationship with Plaintiff they should not

24 expect to see there family. Despite the fact that each and

25 every employee demanded Defendant to cease calling and

1 would subsequently hang up the phone, Defendant CHAKER would
2 immediately call back and commence the same or similar form
3 of conduct placing said persons in great fear of their safety.

4     The office manager of this doctor's office notified the on-
5 site security of the physical description of Defendants, the
6 make, model, and license plates of vehicles Defendants may be
7 driving. Additionally, a report for making terrorist threats
8 was lodged and is under investigation at the present time. It
9 is further alleged that Defendants' have contacted several
10 members of the Church and made numerous threatening comments of
11 how Plaintiff will be meeting God sooner than expected if he
12 doesn't cease his relationships with females she does not accept
13 of. It is further alleged that the only female Defendant CHAKER
14 approves of is Defendant TOMINA. Defendant TOMINA has made
15 several allegations of unlawful misconduct, threats towards
16 associates of Plaintiff, and has stolen gifts and cards given to
17 Plaintiff by a female friend, and has been seen stalking
18 Plaintiff. Defendant TOMINA has repeatedly called female
19 associates of Plaintiff and has threatened their lives if they
20 do not cease their relationship with Plaintiff. It is retained
21 on customer service recordings that said plaintiffs' have
22 attempted to obtain phone records of Plaintiff by misleading
23 phone company employees as to their true identities and have
24 been calling numerous apartment communities and classified adds
25 in an effort to locate the whereabouts of Plaintiff.

COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT
INJUNCTION AND DAMAGES - 6

934

SER 312

1  7.  Defendant CHAKER has a criminal convictions (See Exhibit 1

2  attached hereto) for stalking and making harassing phone calls

3  in violation of Penal Code § 653m as it pertains to a former

4  relationship.  Additionally, Defendant CHAKER has been subjected

5  to numerous restraining orders (Exhibit 2) by other family

6  members as well and a former girlfriend of Plaintiff.  Defendant

7  TOMINA is currently on probation in San Diego County.  Inasmuch,

8  Plaintiff is currently engaged in civil litigation that

9  Defendants' have sworn to interfere with because Defendants fear

10  that Plaintiff will prevail in pending litigation and spend

11  money on the female associates the Defendants' despise so much

12  of.

13  8.  Defendants' threatened wrongful conduct, unless and until

14  enjoined and restrained by order of this Court, will cause great

15  and irreparable injury to Plaintiff in that the conduct of

16  Defendants' is increasing in hostility as they find their

17  threats are futile and laughable, and are gradually increasing

18  in severity whereas more persons are being called that are

19  associated with Plaintiff and threatened and in areas located

20  not just in Los Angeles County, but San Diego, and Orange County

21  as well.  Thus, it appears that Defendants' conduct is only

22  increasing in volatilivity and Plaintiff demands the Court to

23  utilize its authority to issue a temporary restraining order

24  forthwith.

25

9.  Plaintiff has no adequate remedy at law for the injuries that are being threatened in that although three police reports have been made, the judicial process to issue a complaint, hold pre-trial hearings, accept a plea bargain, and condition a sentence to stay away from Plaintiff and cease the pattern of harassment may take 3-8 months to adjudicate the criminal cases, thus it will be impossible for Plaintiff to determine the precise amount of damage that he will suffer if Defendants' conduct is not restrained or will be forced to institute a multiplicity of suits to obtain adequate compensation for his injuries.  Plaintiff has made numerous attempts, as recent as June 13, 2001, to demand the aforementioned conduct ceases, but at each avenue of peace attempted, Defendants' and each of them charge forth with their unacceptable and unmeritorious conduct and refuse to refrain or otherwise cease and desist from their threatened conduct.

10.  Although Plaintiff has not sustained any property damage by Defendants' reckless and unwarranted conduct, Defendant CHAKER still retains items of Plaintiff at her residence.  If Defendant refuses to release property of Plaintiff, then Plaintiff will amend this complaint to state the amount when the same becomes known to him or on proof of the damages.

11.  Plaintiff has made a good faith effort to inform the Defendants' of the time and place the above application for a temporary restraining order would be made, in that, I left two

telephonic messages with both Defendants informing them of the time and date I would be applying for the within named application on or about June 24, 2001 at about 8AM. The only response I received was from Defendant CHAKER who stated that if I were going to "protect the whores that I would not get a dime from any lawsuit and expect for me and the whore to go to hell together." It was further stated by Defendant CHAKER that sheis aware this information is a public record and will commence a slanderous campaign against Plaintiff by placing letters and making frivolous motions in the Court's file. As such, I do not expect said Defendant will oppose this application.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as follows:

1. For an order requiring Defendants to show cause, if any they have, why they should not be enjoined as set forth in this complaint during the pendencey of this action;

2. For a temporary restraining order, a preliminary injunction, and a permanent injunction, all enjoining Defendants, and each of them, and their agents, servants, and employees, and all persons, acting under, in concert with, or for them:

    a. From making or attempting any contact with Plaintiff or any known associate directly or indirectly of Plaintiff or any known associate in any means

including but not limited to electronic mail, telephonically, United States Postal Service, and should be further restrained to not molest, harass, attack, threaten, assault, batter, stalk, disturb the peace, keep under surveillance, or block movements in public places or thoroughfares;

b. To not destroy, alter, modify, or otherwise alter any item, property, paper, or other effects that are located at or within the dominion and control of Defendants that is owned or otherwise entitled by Plaintiff and to release such property within 90 days;

c. To stay 150 yards away from the following locations[2] that Plaintiff frequents and/or has been harassed at;

1. 1600 Block of Jamacha Way;

2. 3000 Block of Jamacha View Drive;

3. 700 Block of Washington Road;

4. 6700 Block of Alvarado Road;

5. 10000 Block of Campo Road;

6. 300 Block of North Robertson Boulevard;

7. 8300 Block of Wilshire Boulevard;

8. 9000 Block of Sunset Boulevard.

9. 9. To be directed to not contact

---

[2] None of the locations listed will interfere with Defendants' freedom of movement, are not near their place of employment, school, or otherwise hinder their daily life since they not area they frequent or attend Church at.

    d.    To be restrained from filing any motions that are not noticed, write letters to the Court, after the adjudication of this matter without going ex-parte and receiving permission from the Court to file such material and to not direct nor encourage any person to do the same since.

3. The aforementioned facts are within my personal knowledge and if called as a witness would competently testify to their truth if called as a witness.

Dated this 24th day of June, 2001

Darren D. Chaker
Plaintiff

_____

### **VERIFICATION**

    I, DARREN DAVID CHAKER, am the Plaintiff in the above-entitled action. I have read the foregoing complaint and know its contents. The same is true of my own knowledge, except as to those matters that are alleged in the complaint on information and belief, and as to those matters, I believe to be true. I declare under penalty of perjury the foregoing true and correct.

Dated this 24th day of June, 2001

Darren D. Chaker
Plaintiff

COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT
INJUNCTIONS, AND DAMAGES- 11

SER 317

## DECLARATION OF NADINE DOE

I, NADINE DOE, declare as follows;

1.   I am an associate of the Plaintiff in the instant matter and if called to testify would competently testify to the facts alleged in the complaint as being true to, especially as it pertains to the allegations when Defendant CHAKER had called my place of employment, namely a doctor's office, and literally threatened several office staff members and the doctor which dictated calling the police and notifying security.

2.   Defendants have been seen on my block at night, parked in darkened areas of the street I reside on, and on or about June 8th 2001, Defendants had literally parked her car in the driveway of my residence and commenced honking her horn and yelling profanity and how she will destroy her son and I will not get any money from a lawsuit.  Defendant CHAKER demanded that her son come outside and said that she knew he moved to be closer to my residence and that he [PLAINTIFF] does not need be around whores.   This incident lasted for several minutes and was witnessed    by    several    family    members    and    neighbors. Unfortunately, by the time the police arrived, Defendants had departed, however another report was made.

3.   Defendants have contacted my Catholic Church, which they are not members of, and threatened my safety to a Priest and Bishop of the Church if I did not stay away from the Plaintiff.

4. I am not sure if Defendants are aware of my true last name and am scared for my safety if asked to reveal such since they may attempt to locate more information about me or my family.

5. I have received and members of my family have received in excess 20-30 threatening and/or hang-up phone calls by Defendants. I and each of my family members have received several threatening phone calls from Defendants' calling myself and members of my family sluts and prostitutes and stating that I will be killed if I do not stay away from Darren. I have repetitively asked Defendants to cease calling, but they ignore my requests, as well as my families' requests and continue to do so. As a result of this conduct I have, as well as my family have, been placed in great fear of our lives based upon the conduct of Defendants ask this Court to issue the injunctive relief requested since any relationship I had with Darren prior to this insulting conduct is pointless and will not be altered by it.

I declare under penalty of perjury the foregoing is true and correct.

Dated this 24th day of June, 2001

Nadine Doe

COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTIONS, AND DAMAGES- 13

SER 319

*** THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY ***

## CALIFORNIA CRIMINAL CASE FILINGS

**Defendant: CHAKER NICOLE** AKA **CHAKER NICOLE** DEAN; DELANERO
NICOLE; SHAKER NICOLE

**Filing Date:** 4/17/1992

**Case Number:** CR130793

**Filing Type: CRIMINAL**

**County:** SAN DIEGO

**State:** CALIFORNIA

*CHAKER NICOLE CR86101*

**Defendant: CHAKER NICOLE**

**Filing Date:** 3/13/1987

**Case Number:** CR86101

**Filing Type: CRIMINAL**

**County:** SAN DIEGO

**State:** CALIFORNIA

*** THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY ***

### SAN DIEGO COUNTY SUPERIOR COURT CIVIL CASE INDEX

**CASE-NAME:** CHAKER NELLY v. **CHAKER NICOLE**

**PETITIONER:** CHAKER NELLY

**RESPONDENT: CHAKER NICOLE**

**CIVIL CASE NUMBER:** DV004162

**FILING-DATE:** 10/01/97

**DISTRICT:** SAN DIEGO

**CASE-TYPE: DOMESTIC**

EX. 1

**ACTION: DOMESTIC VIOLENCE**

*CHAKER NICOLE DEAN v. CHAKER HENRY*

**\*\*\* THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY \*\*\***

**SAN DIEGO COUNTY SUPERIOR COURT CIVIL CASE INDEX**

**CASE-NAME:** CHAKER NICOLE DEAN v. CHAKER HENRY

**PLAINTIFF: CHAKER NICOLE** DEAN

**DEFENDANT:** CHAKER HENRY

**CIVIL CASE NUMBER:** 563013

**FILING-DATE:** 04/24/86

**DISTRICT:** SAN DIEGO

**CASE-TYPE:** CIVIL

**ACTION: FALSE IMPRISONMENT**

**CASE-NAME: CHAKER NICOLE** v. CHAKER HENRY

**PLAINTIFF: CHAKER NICOLE**

**DEFENDANT:** CHAKER HENRY

**CIVIL CASE NUMBER:** 599015

**FILING-DATE:** 05/10/88

**DISTRICT:** SAN DIEGO

**CASE-TYPE:** CIVIL

**ACTION: NEGLIGENCE**

**CASE-NAME:** STAVARIDIS ANNA v. **CHAKER NICOLE**

**PLAINTIFF:** STAVARIDIS ANNA

**DEFENDANT: CHAKER NICOLE**

Ex. 2

**CIVIL CASE NUMBER:** 705533

**FILING-DATE:** 11/15/96

**DISTRICT:** SAN DIEGO

**CASE-TYPE:** CIVIL

**ACTION: PROHIBIT CIVIL HARASSMENT**

**CASE-NAME:** SPITZ MD BRADLEY L v. **CHAKER NICOLE**

**PLAINTIFF:** SPITZ MD BRADLEY L

**DEFENDANT: CHAKER NICOLE**

**CIVIL CASE NUMBER:** 714840

**FILING-DATE:** 10/14/97

**DISTRICT:** SAN DIEGO

**CASE-TYPE:** CIVIL

**ACTION: PROHIBIT CIVIL HARASSMENT**

**CASE-NAME:** DEL POZO ELIZABETH S v. **CHAKER NICOLE**

**PLAINTIFF:** DEL POZO ELIZABETH S

**DEFENDANT: CHAKER NICOLE**

**CIVIL CASE NUMBER:** 714914

**FILING-DATE:** 10/16/97

**DISTRICT:** SAN DIEGO

**CASE-TYPE:** CIVIL

**ACTION: PROHIBIT CIVIL HARASSMENT**

**CASE-NAME: CHAKER NICOLE** v. FIVECOAT AND WITH, CERTIFIED SHORTHAMD REPORTERS, INC., et. al

**PLAINTIFF: CHAKER NICOLE**

**DEFENDANT:** FIVECOAT AND WITH, CERTIFIED SHORTHAMD REPORTERS, INC.
ROSENTHAL MARY
WITH JERE

**CIVIL CASE NUMBER:** 660820

Ex. 3

SER 322

**FILING-DATE:** 02/01/93

**DISTRICT:** SAN DIEGO

**CASE-TYPE:** CIVIL

**ACTION:** FALSE IMPRISONMENT

**CASE-NAME: CHAKER NICOLE** v. MAY COMPANY, et. al

**PLAINTIFF: CHAKER NICOLE**

**DEFENDANT:** MAY COMPANY
        BANNING TOM
        DEFOE LINDA

**CIVIL CASE NUMBER:** 473793

**FILING-DATE:** 08/03/81

**DISTRICT:** SAN DIEGO

**CASE-TYPE:** CIVIL

**ACTION: FALSE IMPRISONMENT**

**CASE-NAME: CHAKER NICOLE.** v. SHAW CONSTRUCTION, et. al

**PLAINTIFF: CHAKER NICOLE.**

**DEFENDANT:** SHAW CONSTRUCTION
        BUNDY TAYLOR E
        DENNYS PLUMBING
        J & M KEYSTONE
        SWIM BILL

**CIVIL CASE NUMBER:** 697341

**FILING-DATE:** 02/16/96

**DISTRICT:** SAN DIEGO

**CASE-TYPE:** CIVIL

**ACTION: PERSONAL INJURY** (OTHER)

Ex. 4

```
 1  Darren D. Chaker
    311 N. Robertson Blvd. #1230
 2  Beverly Hills, California 90211

 3

 4      SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES,

 5                    CENTRAL JUDICIAL DISTRICT

 6
    DARREN DAVID CHAKER,             Case No.:
 7
            Plaintiff,               MEMORANDUM    OF    POINTS   AND
 8                                   AUTHORITIES   IN    SUPPORT   OF
       vs.                           PLAINTIFF'S    APPLICATION   FOR
 9                                   INJUNCTIVE RELIEF; DECLARATION;
                                     EXHIBITS
10
    NICOLE CHAKER, SONIA TOMINA,
11
            Defendants.
12

13
        COMES NOW PLAINTIFF, DARREN CHAKER, applies for a temporary
14
    restraining order restraining defendant NICOLE CHAKER and her
15
    agents, servants, or acquaintances, from following, harassing,
16
    making any form of telephonic contact with plaintiff or with
17
    plaintiff's friends, placing under surveillance, said person(s),
18
    and an order to show cause why a preliminary injunction should
19
    not be granted enjoining defendant and her agents, savants, or
20
    acquaintances, from committing the act(s) described herein
21
    during the pendency of this action.
22
    /    /    /    /
23
    /    /    /    /
24
    /    /    /    /
25
    /    /    /    /
26
```

1     This action is made on the grounds enumerated in Code of

2 Civil Procedure § 526 et seq. and on the further grounds great

3 and irreparable may or has resulted from the proximate causal

4 acts of defendant before this matter may be heard. Accordingly,

5 the attached memorandum of points and authorities, declaration,

6 and exhibits are attached hereto.

7 /    /    /    /

8 /    /    /    /

9 /    /    /    /

10 /    /    /    /

11 /    /    /    /

12 /    /    /    /

INJUNCTIVE RELIEF - 2

SER 325

## POINTS AND AUTHORITIES

### ARGUMENT

### I.

**A PRELIMINARY INJUNCTION SHOULD BE ISSUED IF AN ACT WOULD PRODUCE WASTE, OR GREAT OR IRREPARABLE INJURY TO A PARTY DURING LITIGATION, AS SHOWN BY THE COMPLAINT AND DECLARATION PLAINTIFF WILL SUFFER SUCH HARM THEREFORE THE COURT SHOULD ISSUE GRANT THE RELEIEF REQUESTED**

Where the language of a statute is clear, "'there can be no room for interpretation, and effect must be given to its plain meaning.'" ( *City and County of San Francisco* v. *Superior Court* (1982) 130 Cal.App.3d 481, 485 [181 Cal.Rptr. 775], quoting *Outboard Marine Corp.* v. *Superior Court* (1975) 52 Cal.App.3d 30, 40 [124 Cal.Rptr. 852].)

An injunction lies to prevent threatened injuries and has no application to completed wrongs for the redress of which a plaintiff is relegated to an action at law. But the general rule or the rule of injunctive relief is not without exceptions. A recognized exception to such rule is that an injunction may be granted with respect to completed acts if the wrongful acts involved are continued or repeated. *Volpicelli v. Jared Sydney Torrance Memorial Hosp.*, 109 Cal. App. 3d 242 An explicit finding of irreparable harm is not required to sustain a preliminary injunction. ( *Conover* v. *Hall* (1974) 11 Cal.3d 842, 850 [114 Cal.Rptr. 642, 523 P.2d 682].)

1    A recognized exception to such rule is that an injunction

2 may be granted with respect to "completed acts" if the wrongful

3 acts involved are continued or repeated.[1] ( *Fretz* v. *Burke* (1967)

4 247 Cal.App.2d 741, 744 [55 Cal.Rptr. 879]; *Gold* v. *Los Angeles*

5 *Democratic League* (1975) 49 Cal.App.3d 365, 372 [122 Cal.Rptr.

6 732].)

7    The concept of "irreparable injury" which authorizes the

8 interposition of a court of equity by way of injunction does not

9 concern itself entirely with injury beyond the possibility of

10 repair or beyond possible compensation in damages. Rather, by

11 definition, an injunction properly issues in any case where it

12 would be extremely difficult to ascertain the amount of

13 compensation which would afford adequate relief. Further, the

14 equitable rule is that the term "irreparable injury" means that

15 species of damages, whether great or small, that ought not to be

16 submitted to on the one hand or inflicted on the other. *Wind* v.

17 *Herbert, 186 Cal. App. 2d 276.*

18    Furthermore, the equitable rule as stated by the Supreme

19 Court in *Anderson* v. *Souza*, 38 Cal.2d 825, at 834 [243 P.2d

20 497], is that: "The term 'irreparable injury' . . . means that

21 species of damages, *whether great or small, that ought not to be*

22 *submitted to on the one hand or inflicted on the other.*"

23 _____

24 [1] There is also a fundamental right of privacy. (Cal. Const., art. I, § 1.)
Indeed, the Legislature created section 527.6 to "'protect the individual's
25 right to pursue safety, happiness and privacy as guaranteed by the California
Constitution.'" (Historical Note, 15A West's Ann. Code Civ. Proc. (1979 ed.)
26 foll. § 527.6, p. 693.)

<div align="center">INJUNCTIVE RELIEF - 4</div>

SER 327

(Emphasis added.) See *Espenscheid* v. *Bauer*, 235 Ill. 172 [85 N.E. 230]. In *Commonwealth* v. *Pittsburgh & Connelesville R.R. Co.*, 24 Pa. 159, the court said, at page 160 [ 62 Am.Dec. 372]: "The argument that there is no 'irreparable damage,' would not be so often used by wrongdoers if they would take the trouble to observe that the word 'irreparable' is a very unhappily chosen one, used in expressing the rule that an injunction may issue to prevent wrongs of a repeated and continuing character, or which occasion damages estimable only by conjecture and not by any accurate standard. . . . Besides this, where the right invaded is secured by . . . contract there is generally no question of the *amount* of damages, but simply of the *right*." (Emphasis added.) In the instant case, the wrongs complained of were obviously of "a repeated and continuing character" and the rule stated in the case last cited is clearly apposite.

In the case at bar, defendant has made numerous phone calls to plaintiff, over his objection, to female friends of plaintiff, over their objection, stalked, harassed and annoyed exclusively female friends of plaintiff.

As demonstrated by plaintiff's declaration (attached hereto and incorporated into reference as Exhibit 1), Defendants' have conducted themselves in a clear and consequential pattern of harassment for the last three months and more intensely for the last three (3) weeks. Clearly, the purpose of life is not to be inundated with harassing phone calls, being asked by female

SER 328

1    friends "why is your mother outside of my work" and "why is your

2    mother in my driveway honking her horn" or "why is your mother

3    threatening my life" but to in fact to enjoy life. Although

4    this pattern of conduct has had little effect on the social life

5    of Plaintiff, this is still conduct that is violative of the law

6    and dictates the Court ordering such conduct from being

7    restrained.

8         Furthermore, the conduct of Defendants' fits the idyllic

9    mold of the objective why the legislature created the judicial

10    authority of the aforementioned statute to allow Court's to

11    issue injunctive relief when such conduct is abridging the right

12    of others to enjoy life. Thus, once the Court finds the

13    defendant has engaged in a pattern of harassing conduct it is

14    bound to issue the temporary restraining order and as there is

15    no defense for the language and hostilities archived on **tape**

16    there should be no question that a permanent injunction should

17    be issued.

18

                                **II.**

19

     **A PRELIMINARY INJUNCTION SHOULD BE ISSUED WHERE PLAINTIFF'S**

20       **RUGHT TO RELIEF IS APPARENT FROM THE ACTS COMPLAINED OF**

21         In passing on an order made on affidavits involving the

22    decision of a question of fact, a reviewing court is bound by

23    the same rule as where oral testimony is presented for review.

24    When an issue of fact is determined on affidavits, the rule on

25    appeal is that those affidavits favoring the contentions of the

26

1   prevailing party establish not only the fact stated therein but

2   also such inferences as reasonably may be drawn therefrom, and

3   where there is a substantial conflict in the facts stated,

4   determination of the controverted facts by the trial court will

5   not be disturbed. ( *Griffith Co.* v. *San Diego College for Women*,

6   45 Cal.2d 501, 508 [289 P.2d 476, 47 A.L.R.2d 1349].)

7        An injunction may be granted when it appears by the complaint that

8   Plaintiff is entitled to the relief demanded and such relief or an relief or

9   any part thereof, consists in restraining the commission or continuance of

10  the act[2] complained of, either for a limited period or personality. (*Dingley*

11  *v. Bucker* (1909) 11 Cal.App. 181, 193) An injunction is ordered against past

12  acts only if there is evidence that they will probably recur.[3] *Rosicrucian*

13  *Fellowship v Rosicrucian Fellowship Non-Sectarian Church (1952)*

14  *39 Cal 2d 121, 245 P2d 481.* Injunctive power is not used as punishment

15  for past acts and is ordered against them only if there is evidence they will

16  probably recur. Mallon v Long Beach (1958, 2nd Dist) 164 Cal App 2d

17  178, 330 P2d 423. Injunction ancillary to relief sought in action for

18  declaratory relief is appropriate and may issue to preserve rights of

19  parties. *Knox v Wolfe (1946) 73 Cal App 2d 494, 167 P2d 3.* Courts look to the

20  substantial rights of the parties for the purpose of determining the remedy

21  to which they are entitled, irrespective of the form of the complaint under

22  which the remedy is sought. *Spect v Spect (1891) 88 C 437, 26 P 203;*

---

23  [2] Equity has power to issue mandatory injunction to remedy continuing wrong
    that can be remedied only by affirmative action by wrongdoer. *People v*

24  *Paramount Citrus Asso. (1957, 2nd Dist) 147 Cal App 2d 399, 305 P2d 135.*

25  [3] As demonstrated by the clear hatred towards Mr. Chaker and the fact that
    Defendants have been repeatedly warned on numerous occasion to cease this
    harassment, it is evident that the conduct will continue unless the Court

26  intervenes.

INJUNCTIVE RELIEF - 7

*Hansen v Hevener (1924) 69 CA 337, 231 P 361; Pascoe v Morrison (1933) 219 C 54, 25 P2d 9.*

In case at bar, Plaintiff has clearly demonstrated that (1) the act or commission of acts stated in the attached declarations, supplemental argument, and quotes from the Defendant's **own voice**[4], Defendant CHAKER's own brother warning Plaintiff of the probability that said Defendant will carry out her threats out only paints a clearer picture of the barbaric and laughable conduct of Defendants that is well within the Court's jurisdiction to issue said injunctive relief applied for as to prevent the volatility and destructive path of said parties.

### III.

**A PRELIMINARY INJUNCTION SHOULD BE ISSUED IF PLAINTIFF'S RIGHT TO RELIEF IS APPARENT FROM THE COMPLAINT AND THE RELIEF CONSISTS OF IN RESTRAINING IN THE COMMISSION OR CONTINUANCE OF THE ACT COMPLAINED OF AND CCP 527.6 IS THE APPROPRIATE STATUTORIAL AUTHORITY TO GRANT RELIEF FROM**

In order to obtain an injunction under Cal. Civ. Proc. Code § 527.6, a plaintiff must show by clear and convincing evidence that he has been harassed, which is defined as a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, or harasses the person, and which

---

[4] Duplicate copy of tape recordings of Defendants' would be a complete bar to any purported defense that said acts, allegations, or threats, did not occur and said recordings of said voice mails are lodged herein as exhibits.

INJUNCTIVE RELIEF - 8

serves no legitimate purpose. The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the plaintiff.[5] "Course of conduct" is a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose. Constitutionally protected activity is not included within the meaning of course of conduct. *Grant v. Clampitt*, 56 Cal. App. 4th 586

Section 527.6 was passed to supplement the existing common law torts of invasion of privacy and intentional infliction of emotional distress by providing quick relief to harassment victims threatened with great or irreparable injury. ( *Smith v. Silvey* (1983) 149 Cal. App. 3d 400, 405 [197 Cal. Rptr. 15].) It was enacted to protect the individual's right to pursue safety, happiness and privacy as guaranteed by the California Constitution. ( *Kobey v. Morton* (1991) 228 Cal. App. 3d 1055, 1059 [278 Cal. Rptr. 530].)

---

[5] The *Schraer* court did not hold that the requisite clear and convincing proof of a Petitioner's substantial emotional distress had to be in the form of the Petitioner's direct testimony that he or she suffered such distress. Indeed, such a holding would be inconsistent with the general rules of evidence. Relevant circumstantial evidence is admissible in California. (Evid. Code, § 351; *Hasson* v. *Ford Motor Co.* (1977) 19 Cal.3d 530, 548 [138 Cal.Rptr. 705, 564 P.2d 857, 99 A.L.R.3d 158].) Circumstantial evidence can be substantial evidence for an inference based on it. ( *Norris v. State Personnel Bd.* (1985) 174 Cal.App.3d 393, 398 [219 Cal.Rptr. 895].) For that reason, circumstantial evidence can provide the sole basis for a verdict and, in such a case, can meet the substantial evidence test on appeal. ( *Hasson* v. *Ford Motor Co.*, *supra*, 19 Cal.3d at p. 548.)

INJUNCTIVE RELIEF - 9

SER 332

Section 527.6 has been used where the victim has been stalked, threatened or otherwise seriously harassed. (See *Kobey v. Morton*, *supra*, 228 Cal. App. 3d 1055 [victim followed by private detective hired by defendant, victim's children threatened, victim threatened with legal action and physical harm, falsely accused of having AIDS and of causing the defendant's marriage to fail]

The role of the Court in a Cal. Civ. Proc. Code § 527.6 hearing does not differ from its role in other trial settings where the court is the trier of fact. It is the function of the trial court to draw inferences from the evidence and to base its findings thereon. Inferences may be drawn not only from the evidence but from the demeanor of witnesses and their manner of testifying. *Ensworth v. Mullvain*, 224 Cal. App. 3d 1105 Inasmuch, there is a fundamental right of privacy[6]. Cal. Const. art. I, § 1.

/ / / /
/ / / /
/ / / /
/ / / /

---

[6] Injunction may be granted to restrain trespass where threatened injury would be irreparable and legal remedy inadequate. *Harmon v De Turk (1917) 176 Cal 758,       169       P       680.*

INJUNCTIVE RELIEF - 10

SER 333

Once the Court finds the plaintiff has met his burden to demonstrate that defendant's is within the scope[7] of statutorial authority that defines harassment, the Court should issue the relief sought forthwith.

Injunctive relief is proper to prevent conflicting or vexatious litigation; where there exist two or more actions involving the same subject matter or the same facts or principles, restraint is necessary to prevent a multiplicity of judicial proceedings, and restraint is also necessary to avoid unseemly conflict between courts that might arise if they were free to make contradictory decisions relating to the same controversy. *Rynsburger v Dairymen's Fertilizer Cooperative, Inc. (1968, 4th Dist) 266 Cal App 2d 269, 72 Cal Rptr 102.*

Plaitiff who will suffer irreparable injury from encroachment should be granted mandatory injunction regardless of injury to defendant, except where public's rights would be adversely affected. *Christensen v Tucker (1952) 114 Cal App 2d 554, 250 P2d660.* One who performs any act violative of individual rights must find statutory warrant for authority that he attempts to

---

[7] The fact that police reports and investigations are paralleling this action, such does not bar the Court issuing the relief requested. Specifically, the Court held that "Equity will not interfere by injunction to prevent mere violation of law, but injunction may issue to restrain commission of acts which are violative of public policy, which create nuisance or assail rights of property, although such acts are crimes and punishable as such. <u>Bute v Potts (1888) 76 Cal 304, 18 P 329.</u>

INJUNCTIVE RELIEF - 11

SER 334

1   exercise, and in default of such warrant he may be enjoined.

2   Hill v Darger (1934, DC Cal) 8 F Supp 189, affd (CA9 Cal) 76 F2d

3   198.

4

5

6                              **IV.**

7        **THE COURT SHOULD ENJOIN AND RESTRAIN THE ACTIONS OF
         DEFENDANTS' TO NOT REMIT ANY LETTER TO PLAINTIFF OR ANY**
8        **ASSOCIATES OF PLAINTIFF UNDER THE GUISE OF SERVING LEGAL
         PROCESS OR REMITTING ANY COMMUNICATIONS THAT ARE MERITLESS**
9

10       Sending of threats to plaintiff's customers threatening to

11  sue them for patent infringement may be enjoined where defendant

12  has **no legal justification** for sending such threats. *Metro-*

13  *Goldwyn-Mayer Corp. v Fear (1939, CA9 Cal) 104 F2d 892.*

14

15       Here, due to the sophistication of the Defendants' and

16  their respective threats to utilize the judicial system to

17  further harass Plaintiff by writing slanderous letters and/or

18  filing unmeritorious motions, it would be easily foreseen that

19  Defendants' next  step may be to side step the Court's order by

20  writing legalistic sounding letters that are nothing more than

21  veiled threats.  Such conduct should be further restrained by

22  the Court prior to said acts being committed.

23

24

25

26

                         INJUNCTIVE RELIEF - 12

## CONCLUSION

Clearly, as demonstrative of Mr. Chaker's efforts to constantly ask Defendants' to cease their child-like and anti-heterosexual behavior has failed and now necitates action from the Court. Therefore, it submitted that Defendants' have recklessly attempted to cause harm to Plaintiff and such conduct must be restrained forthwith since diplomacy has failed.

Dated this 24th day of June, 2001            Respectfully submitted,

Darren D. Chaker
Plaintiff

| SHORT TITLE: *CHAKAL v. Tomas* | CASE NUMBER |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM
## CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURT LOCATION

> **This form is required in all new civil case filings in the Los Angeles Superior Court**

I. Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☐ YES   CLASS ACTION? ☐ YES   LIMITED CASE? ☐ YES   TIME ESTIMATED FOR TRIAL_____ ☐ HOURS/ ☐ DAYS.

II. Select the correct district and courthouse location (4 steps):

**1** After first completing the Civil Case Cover Sheet Form, find the main civil case cover sheet heading for your case in the left margin below, and, to the right in Column 1, the Civil Case Cover Sheet case type you selected.

**2** Check **one** Superior Court type of action in Column **2** which best describes the nature of this case.

**3** In Column **3**, circle the reason for the court location choice that applies to the type of action you have checked.

> **Applicable Reasons for Choosing Court Location (See Column 3 below)**

1. Class Actions must be filed in the County Courthouse, Central District.
2. May be filed in Central(Other county tort, or not PI/PD-Gen.Juris)
3. Location where cause of action arose.
4. Location where injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.

**4** Fill in the information requested on page 4 in item III; complete item IV. Sign the certificate.

| -1-<br>Civil Case Cover<br>Sheet Category No. | -2-<br>Type of Action<br>(Check only one) | -3-<br>Applicable Reasons -See<br>Above |
|---|---|---|
| **Auto Tort**<br>Auto (22) | ☐ A7100 Motor Vehicle - Personal Injury/Property Dam./Wrongful Death<br>Is this an uninsured motorist case? ☐ Yes ☐ No | 1., 2., 4. |
| **Other PI/PD/WD Tort**<br>Asbestos (04) | ☐ A6070 Asbestos Property Damage | 2. |
| | ☐ A7221 Asbestosis - Personal Injury/Wrongful Death | 2. |
| Product Liability (24) | ☐ A7260 Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| Medical Malprctice (45) | ☐ A7210 Medical Malpractice - Physicians & Surgeons | 1., 2., 4. |
| | ☐ A7240 Other Professional Health Care Malpractice | 1., 2., 4. |
| Other PI/PD/WD (23) | ☐ A7250 Premises Liability (e.g., slip and fall) | 1., 2., 4. |
| | ☐ A7230 Intentional PI/PD/WD (e.g., assault, vandalism, etc.) | 1., 2., 4. |
| | ☐ A7220 Other Personal Injury/Property Dam./Wrongful Death | 1., 2., 4. |
| **Non-PI/PD/WD Tort**<br>Business Tort (07) | ☐ A6029 Other Commercial/Business Tort (not fraud/breach of contract) | 1., 2., 3. |
| Civil Rights (08) | ☐ A6005 Civil Rights | 1., 2., 3. |
| Defamation (13) | ☐ A6010 Defamation (slander/libel) | 1., 2., 3. |
| Fraud (16) | ☐ A6013 Fraud (no contract) | 1., 2., 3. |
| Intellectual Proprty (19) | ☐ A6016 Intellectual Property | 2., 3. |
| Prof. Negligence (25) | ☐ A6017 Legal Malpractice | 1., 2., 3. |
| | ☐ A6050 Other Professional Malpractice (not medical or legal) | 1., 2., 3. |

**982.2(b)(1)A** 76C134
R7/00
*Marlin Dean's Essential Forms*™

**CIVIL CASE COVER SHEET ADDENDUM**
**CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURT LOCATION**

LASC Rule 2.0(d)
Page 1 of 4 pages

SER 337

| SHORT TITLE: | | CASE NUMBER |
|---|---|---|

| | **-1-**<br>Civil Case Cover<br>Sheet Category No. | **-2-**<br>Type of Action<br>(Check only one) | **-3-**<br>Applicable Reasons -<br>See Above |
|---|---|---|---|
| **Non-PI/PD/WD Tort (Cont.)** | Other Non-PI/PD/WD<br>Tort (35) | ☐ A6025  Other Intentional Tort Complaint (not PI/WD/PD) | 1., 2., 3. |
| | | ☐ A6026  Other Tort Complaint Case (not Intentional or PI/WD/PD) | 1., 2., 3. |
| **Employment** | Wrongful Termination<br>(35) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| | Other Employment<br>(15) | ☐ A6024  Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ A6109  Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/<br>Warranty<br>(06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not UD or wrongful eviction) | 2., 5. |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff(no fraud/negligence) | 2., 5. |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections<br>(09) | ☐ A6002  Collections Case-Seller Plaintiff | 2., 5., 6. |
| | | ☐ A6012  Other Promissory Note/Collections Case | 2., 5. |
| | Insurance Coverage<br>(18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract<br>(37) | ☐ A6009  Contractural Fraud | 1., 2., 3., 5. |
| | | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | Emnt Dom/Inv. Cond.<br>(14) | ☐ A7300  Eminent Domain/Condemnation  Number of parcels_____ | 2. |
| | Wrongful Eviction<br>(33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property<br>(26) | ☐ A6018  Mortgage Foreclosure | 2., 6. |
| | | ☐ A6032  Quiet Title | 2., 6. |
| | | ☐ A6060  Other Real Property(not em. domain, landlord/tenant, foreclosure | 2., 6. |
| **Unlawful Detainer** | Unlawful Det-Comm(31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Det-Resid (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Det-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration<br>Award (11) | ☐ A6115  Petition to Compel/Confirm Arbitration | 2., 5. |
| | Petition re Arbitration<br>Award (11) | ☐ A6115  Petition to Compel/Confirm Arbitration | 2., 5. |




| SHORT TITLE: | | CASE NUMBER |
|---|---|---|

<table>
<tr>
<td></td>
<td colspan="2">**-1-**<br>**Civil Case Cover**<br>**Sheet Category No.**</td>
<td>**-2-**<br>**Type of Action**<br>**(Check only one)**</td>
<td>**-3-**<br>**Applicable Reasons -**<br>**See Above**</td>
</tr>
<tr>
<td rowspan="12">**Judicial Review (continued)**</td>
<td rowspan="3">Writ of Mandate<br><br>(02)</td>
<td>☐ A6151</td>
<td>Writ - Administrative Mandamus</td>
<td>2., 8.</td>
</tr>
<tr>
<td>☐ A6152</td>
<td>Writ - Mandamus on Limited Court Case Matter</td>
<td>2.</td>
</tr>
<tr>
<td>☐ A6153</td>
<td>Writ - Other Limited Court Case Review</td>
<td>2.</td>
</tr>
<tr>
<td>Oth. Jud. Review (39)</td>
<td>☐ A6150</td>
<td>Other Writ /Judicial Review</td>
<td>2., 8.</td>
</tr>
</table>

| | **-1-**<br>**Civil Case Cover**<br>**Sheet Category No.** | | **-2-**<br>**Type of Action**<br>**(Check only one)** | **-3-**<br>**Applicable Reasons -**<br>**See Above** |
|---|---|---|---|---|
| **Provisionally Complex Litig.** | Antitrust/Trade Reg.<br>(03) | ☐ A6003 | Antitrust/Trade Regulation | 1., 2., 8. |
| | Cnstrction Defect (10) | ☐ A6007 | Construction defect | 1., 2., 3. |
| | Clm. Inv Mass Tort (40) | ☐ A6006 | Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litlg. (28) | ☐ A6035 | Securities Litigation Case | 1., 2., 8. |
| | Tox. Tort/Environm (30) | ☐ A6036 | Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Ins Covrage Clms from<br>Complex Case (41) | ☐ A6014 | Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement<br>of Judgment<br><br>(20) | ☐ A6141 | Sister State Judgment | 2., 9. |
| | | ☐ A6160 | Abstract of Judgment | 2., 6. |
| | | ☐ A6107 | Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140 | Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114 | Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112 | Other Enforcement of Judgment Case | 2., 8., 9. |
| **Misc. Civ. Cmplts** | RICO (27) | ☐ A6033 | Racketeering Case | 1., 2., 8. |
| | Other Complaints<br>(Not Specified Above)<br><br>(42) | ☐ A6030 | Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040 | Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011 | Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000 | Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| **Misc. Civil Petitions** | Prtnrshp/Crp. Gov.(21) | ☐ A6113 | Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions<br>(Not Specified Above)<br><br>(43) | ☒ A6121 | Civil/Workplace Harassment | 2., 3., 9. |
| | | ☐ A6190 | Election Contest | 2. |
| | | ☐ A6110 | Petition for Change of Name | 2., 7. |
| | | ☐ A6170 | Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100 | Other Civil Petition | 2., 9. |

**982.2(b)(1)A** 76C134

R7/00

*Martin Dean's Essential Forms™*

**CIVIL CASE COVER SHEET ADDENDUM**
**CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURT LOCATION**

LASC Rule 2.0(d)

Page 3 of 4 pages

961

SER 339

| SHORT TITLE: | CASE NUMBER |
|---|---|

**-4-**

III. Choose the courthouse: Enter the address of the accident, party residence or place of business, performance, or other circumstance you have circled in Column 3 as the proper reason for filing in the court location you selected.

| REASON: CHECK THE NUMBER YOU CIRCLED IN3- WHICH APPLIES IN THIS CASE | ADDRESS: |
|---|---|
| ☐1. ☐2. ☐3. ☐4. ☐5. ☐6. ☐7. ☑8. ☐9. ☐10. | Central Jud. Dist. 111 N. Hill St. |

| CITY: | STATE: | ZIP CODE: |
|---|---|---|
| Los Angeles | CA | 92012 |

IV. Certificate/Declaration of Assignment: The undersigned hereby certifies and declares that the above entitled matter is properly filed for assignment to the _____ courthouse in the _____ District of the Los Angeles Superior Court under Section 392 et seq., Code of Civil Procedure and Rule 2(b), (c) and (d) of this court for the reason checked above. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and this declaration was executed on_____ at,_____ California.

<center>(date)      (city)</center>

<center>(SIGNATURE OF ATTORNEY/FILING PARTY)</center>

# New Civil Case Filing Instructions

This addendum form is required so that the court can assign your case to the correct courthouse location in the proper district for filing and hearing. It satisfies the requirement for a certificate as to reasons for authorizing filing in the courthouse location, as set forth in Los Angeles Superior Court Local Rule 2.0. It must be completed and submitted to the court along with the Civil Case Cover Sheet and the original Complaint or Petition in ALL civil cases filed in any district (including the Central District) of the Los Angeles County Superior Court. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

<blockquote>
<b>PLEASE HAVE THE FOLLOWING DOCUMENTS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:</b>
</blockquote>

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk (Summons forms available at the Forms Counter).

3. Civil Case Cover Sheet form required by California Rule of Court 982.2(b)(1), completely filled out (Cover Sheet forms available at the Forms Counter).

4. This "Addendum to Civil Case Cover Sheet" form (Superior Court Form Number 982.2(b)(1)A, revised 7/99), completely filled out and submitted with the Civil Case Cover Sheet. *

5. Payment in full of the filing fee or an Order of the Court waiving payment of filing fees in forma pauperis (fee waiver application forms available at the Filing Window)

6. In case of a plaintiff or petitioner who is a minor under 18 years of age, an Order of the Court appointing an adult as a guardian ad litem to act on behalf of the minor (Guardian ad Litem Application and Order forms available at the Forms Counter).

7. Additional copies of documents presented for endorsement by the Clerk and return to you.

* With the exception of limited civil cases and any civil cases concerning personal injury (including wrongful death) and property damage occurring in this County, Labor Commissioner Appeals, and those types of actions required to be filed in the Central District by Local Court Rule 2(b), all civil actions may be optionally filed either in the Central District or in whichever other court location the rule would allow them to be filed. When a party elects to file a general or unlimited jurisdiction civil action in Central District which would also be eligible for filing in one or more of the other court locations, this form must still be submitted with location and assignment information completed.

---

| **982.2(b)(1)A** 76C134 | **CIVIL CASE COVER SHEET ADDENDUM** | LASC Rule 2.0(d) |
|---|---|---|
| R7/00 | **CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURT LOCATION** | Page 4 of 4 pages |
| Martin Dean's Essential Forms™ | | |



Case 2:16-cv-02186-WQH-SMD Document 127-1 Filed 09/23/22 Page 970 of 1196 Page ID 2420

Exhibit B

F I L E D
SUPERIOR COURT
COUNTY OF SAN BERNARDINO
RANCHO CUCAMONGA DISTRICT

SEP 0 6 2001

BY *Arlene Salazar*
DEPUTY

1 | Darren D. Chaker
2 | 311 N. Robertson Blvd. #1230
Beverly Hills, California 90211

3

4 | SUPERIOR COURT OF CALIFORNIA

5 | COUNTY OF SAN BERNARDINO

6

7 | DARREN DAVID CHAKER,          Case No.: RCV 057124

8 |         Plaintiff,           **COMPLAINT FOR RESTRAINING ORDER**
                                  (Amended)
9 |                              [CCP § 527.6]

10 |        vs.

11 |

12 | SONIA TOMINIA, NICOLE CHAKER,

13 |

14 |        Defendants.

15 |

16 | Plaintiff alleges:

17 | 1.    Plaintiff is, and at all times mentioned in this complaint

18 | was an individual;

19 | 2.    Defendant's NICOLE CHAKER and SONIA TOMINA are at all times

20 | mentioned in this complaint were the mother and estranged

21 | acquaintance.

22 | 3.    Plaintiff is unaware of the true names or identities of

23 | other persons who may be found to be Doe Defendants' but will

24 | amend this complaint when and if the identities of those persons

25 | who may have assisted, instructed, encouraged or ratified the

1  conduct of Defendant's behavior.   When their true names and
2  capacities are ascertained, Plaintiff will amend this complaint
3  by inserting their true names and capacities herein.   Plaintiff
4  is informed and believes and thereon alleges, that each of the
5  informed fictitiously named Defendant's is responsible in some
6  manner for the occurrences alleged in this complaint were
7  proximately caused by those Defendant's;
8  4.   Beginning on or about May 1, 2001, and continuing to the
9  present time of September 6, 2001, Defendants, and each of them,
10 wrongfully and unlawfully, have made numerous harassing phone
11 calls to Plaintiff, known associates, and have further either
12 been stalked, kept under surveillance, and harassed neighbors of
13 Plaintiff and known associates to wit Defendant driving their
14 vehicle into the driveway of Plaintiff and/or known associates
15 at early hours of the morning yelling profanity, and Defendant's
16 honking their horn for no lawful reason other than to harass,
17 annoy,  and  further  cause  a  vexatious  atmosphere  towards
18 Plaintiff and known associates.
19    Additionally, Defendants constantly call Plaintiff and/or
20 his associates and allege that they will "finish him off" and
21 "make him pay the highest price" if he does not cease his
22 association with specific persons.   As witnessed, Defendants
23 have explicitly stated they will do "whatever it takes" to see
24 that Plaintiff "will not live to see any children that comes
25 from a whore."   It is Defendants belief that their own culture

COMPLAINT FOR RESTRAINING ORDER- 2

SER 342

1  dictates that the son should not associate with any other female

2  other than that of their own culture.  In essence, Defendants

3  view is that any other female, as stated by Defendant, is a

4  "whore not worthy of having children by" Plaintiff.

5  5.    Some of the most recent incidents of harassment alleged is

6  that on or about August 24th, 25th, 27th, and September 2nd, 3rd,

7  5th, Defendants have been seen constantly roaming the residences,

8  businesses, and school of Plaintiff and his known associates.

9  Defendant CHAKER was confronted by Plaintiff and by a known

10  associate of Plaintiff and told to leave the property.

11  Defendant CHAKER refused and demanded why Plaintiff was involved

12  in a relationship with a female that she [Defendant] did not

13  approve of.  Defendant CHAKER called Plaintiffs associate a

14  "fucking whore" and stated that she will her car[1] into the female

15  associate of Plaintiff if she did not leave Mr. Chaker alone.

16  Defendant further stated that she will "give my life and stop at

17  nothing to destroy" Plaintiff and/or his associate.    Soon

18  thereafter, Defendant CHAKER stated in two voice mails that said

19  associate of Plaintiff CHAKER would have need to leave or she

20  will back her vehicle into the associate of Plaintiff.

21  Specifically, some of the comments that are sought to be

22  restrained and have continued despite all means of negotiations

23  and requests to cease this behavior, as memorialized on tape,

24  are:

25

[1] Said Defendant left this on Plaintiffs voice mail and is retained as evidence.

COMPLAINT FOR RESTRAINING ORDER- 3

SER 343

a.   While Plaintiff was socializing with a female, Defendant

CHAKER saw the two together and commenced yelling in a public

parking lot:

> "Get that cunt out of here…pussy, pussy, pussy, get
>
> away from that pussy…Let Father Michael[2] eat
>
> your pussy…watch me destroy you"

b.   On or about June 1, 2001, Defendant CHAKER further informed

her brother, Dr. Henry Chaker, of her intent to harm and/or

cause great bodily injury to Plaintiff and any associate,

specifically female, and as a subsequent result, Dr. Chaker left

a voice mail for Plaintiff stating:

> "Your mother is saying she has a bullet for [female's
>
> name] and that you must stay away from her or she
>
> does not care about the results and that she will see
>
> you hang if you don't stop seeing her…Darren think
>
> twice about defying her and remember when she tried
>
> to put me in jail with the Attorney General because
>
> of the Will."

b.   In addition, Defendant TOMINA has conducted numerous stints

of information gathering pertaining to how Plaintiff conducts

his personal life.   In fact, said Defendant has been the "silent

storm" in the back ground of this matter making numerous efforts

to gain the trust of Plaintiff and then stating to the God Son

of Plaintiff how she will "get Darren in trouble if he doesn't

---

[2] This person is a catholic priest. Inasmuch, neither Defendant attend said
Church said priest leads.

1  marry me" and that "my family will kill him he turns his back on

2  me."

3     Plaintiff is aware and further alleges that due to enormous

4  amount of threatening phone calls by Defendants received,

5  associates of Plaintiff has had to change phone numbers,

6  institute caller ID blocking, block incoming phone calls that

7  have caller ID blocking, add additional lighting to the

8  residence for security purposes, park vehicles inside the

9  residence's garage for fear of threats being fulfilled as it

10  pertains to tires being slashed, and as a proximate cause of

11  Defendant's conduct has, will, or shall cause emotional distress

12  upon Plaintiff if the Court does not grant the relief requested.

13  Two separate police reports were made, report numbers 1604274

14  and 1603947, pertaining to the aforementioned conduct of

15  Defendants and is being actively investigated by detectives.

16     6.  Additionally, on or about, June 1, 2001, Defendant had

17  called the place of employment of an associate of the

18  Plaintiff. Defendant screamed at the people of worked at this

19  doctor's office and made numerous statements that placed

20  them in fear of their life. Specifically, Defendant CHAKER

21  had said, in essence, "you are all whores and better stay away

22  from my son or I will come and finish all of you up," and

23  alleged that "the doctor is running a whore house." Said

24  Defendant further explicitly stated that if they do not

25  cease their relationship with Plaintiff they should not

COMPLAINT FOR RESTRAINING ORDER- 5

SER 345

1  expect to see there family. Despite the fact that each and

2  every employee demanded Defendant to cease calling and

3  would subsequently hang up the phone, Defendant CHAKER would

4  immediately call back and commence the same or similar form

5  of conduct placing said persons in great fear of their safety.

6  The office manager of this doctor's office notified the on-

7  site security of the physical description of Defendant's, the

8  make, model, and license plates of vehicles Defendants may be

9  driving. Additionally, a report for making terrorist threats

10  was lodged and is under investigation at the present time. It

11  is further alleged that Defendant's have contacted several

12  members of the Church and made numerous threatening comments of

13  how Plaintiff will be meeting God sooner than expected if he

14  doesn't cease his relationships with females she does not accept

15  of. It is further alleged that the only female Defendant CHAKER

16  approves of is Defendant TOMINA. Defendant TOMINA has made

17  several allegations of unlawful misconduct, threats towards

18  associates of Plaintiff, and has stolen gifts and cards given to

19  Plaintiff by a female friend, and has been seen stalking

20  Plaintiff in the late evening hours.

21  Furthermore, Defendant TOMINA has repeatedly called female

22  associates of Plaintiff and has threatened their lives if they

23  do not cease their relationship with Plaintiff. It is retained

24  on customer service recordings that said Defendants have

25  attempted to obtain phone records of Plaintiff by misleading

COMPLAINT FOR RESTRAINING ORDER- 6

1  phone company employees as to their true identities and have

2  been calling numerous apartment communities and classified adds

3  in an effort to locate the whereabouts of Plaintiff.

4  7.   Defendant CHAKER has a criminal convictions (See, Exhibits

5  attached hereto) for stalking and making harassing phone calls

6  in violation of Penal Code § 653m as it pertains to a former

7  relationship.  Additionally, Defendant CHAKER has been subjected

8  to numerous restraining orders (See attached Exhibits) by other

9  family members as well and a former girlfriend of Plaintiff.

10 Defendant TOMINA is currently on probation in San Diego County.

11 Inasmuch, Plaintiff is currently engaged in civil litigation

12 that Defendant's have sworn to interfere with because

13 Defendant's fear that Plaintiff will prevail in pending

14 litigation and spend money on the female associates the

15 Defendant's despise so much of.

16 8.   Defendants threatened wrongful conduct, unless and until

17 enjoined and restrained by order of this Court, will cause great

18 and irreparable injury to Plaintiff in that the conduct of

19 Defendants is increasing in hostility as they find their threats

20 are futile and laughable, and are gradually increasing in

21 severity whereas more persons are being called that are

22 associated with Plaintiff and threatened and in areas located

23 not just in Los Angeles County, but San Diego, and Orange County

24 as well.   Thus, it appears that Defendant's conduct is only

25 increasing in volatilivity and Plaintiff demands the Court to

COMPLAINT FOR RESTRAINING ORDER- 7

SER 347

1   utilize its authority to issue a temporary restraining order
2   forthwith.
3   9.  Plaintiff has no adequate remedy at law for the injuries
4   that are being threatened in that although three police reports
5   have been made, the judicial process to issue a complaint, hold
6   pre-trial hearings, accept a plea bargain, and condition a
7   sentence to stay away from Plaintiff and cease the pattern of
8   harassment may take 3-8 months to adjudicate the criminal cases,
9   thus it will be impossible for Plaintiff to determine the
10  precise amount of damage that he will suffer if Defendant's
11  conduct is not restrained or will be forced to institute a
12  multiplicity of suits to obtain adequate compensation for his
13  injuries.  Plaintiff has made numerous attempts, as recent as
14  June 30, 2001, to demand the aforementioned conduct ceases, but
15  at each avenue of peace attempted, Defendant's and each of them
16  charge forth with their unacceptable and unmeritorious conduct
17  and refuse to refrain or otherwise cease and desist from their
18  threatened conduct.
19  10. Although Plaintiff has not sustained any property damage by
20  Defendant's reckless and unwarranted conduct, Defendant CHAKER
21  still retains items of Plaintiff at her residence.  If said
22  Defendant refuses to release property of Plaintiff, then
23  Plaintiff will amend this complaint to state the amount when the
24  same becomes known to him or on proof of the damages.
25

COMPLAINT FOR RESTRAINING ORDER- 8

SER 348

11. Plaintiff has informed the Defendants of the time and place the above application for a temporary restraining order would be made, in that, Plaintiff has left two telephonic messages with both Defendants informing them of the time and date I would be applying for the within named application on or about July 6, 2001 at about 1:30. The only response received was from Defendant CHAKER who stated that if Plaintiff were going to "protect the whores that [Plaintiff] would not get a dime from any lawsuit and expect for me and the whore to go to hell together." It was further stated by Defendant CHAKER that she is aware this information is a public record and will commence a slanderous campaign against Plaintiff by placing letters and making frivolous motions in the Court's file. As such, I do not expect said Defendant will oppose this application.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, as follows:

1. For an order requiring Defendants to show cause, if any they have, why they should not be enjoined as set forth in this complaint during the pendencey of this action;

2. For a preliminary injunction, and a permanent injunction, all enjoining Defendants, and each of them, and their agents, servants, and employees, and all persons, acting under, in concert with, or for them:

a. From making or attempting any contact with Plaintiff or any known associate directly or indirectly of Plaintiff or any known associate in any means including but not limited to electronic mail, telephonically, United States Postal Service, and should be further restrained to not molest, harass, attack, threaten, assault, batter, stalk, disturb the peace, keep under surveillance, or block movements in public places or thoroughfares;

b. To not destroy, alter, modify, or otherwise alter any item, property, paper, or other effects that are located at or within the dominion and control of Defendants that is owned or otherwise entitled by Plaintiff and to release such property within 90 days;

c. To stay 150 yards away from the following locations[3] that Plaintiff frequents and/or has been harassed at;

1. 1600 Block of Jamacha Way;

2. 3000 Block of Jamacha View Drive;

3. 700 Block of Washington Road;

4. 6700 Block of Alvarado Road;

5. 10000 Block of Campo Road;

---

[3] None of the locations listed will interfere with Defendant's freedom of movement, are not near their place of employment, school, or otherwise hinder their daily life since they not area they frequent, are at least ten miles away from their residence's and do not attend Church the above described location.

1       6. 300 Block of North Robertson Boulevard;

2       7. 8300 Block of Wilshire Boulevard;

3       8. 9000 Block of Sunset Boulevard.

4    d.    To be restrained from filing any motions that are not

5       noticed, write letters to the Court, after the

6       adjudication of this matter without going ex-parte and

7       receiving permission from the Court to file such

8       material and to not direct nor encourage any person to

9       do the same since.

10    e.    To cease any inquiry as to Plaintiff's location or to

11       otherwise covertly obtain information about Plaintiff.

12    f.    To not instruct nor encourage any person to commit the

13

14       aforementioned acts.

15  3. The aforementioned facts are within my personal knowledge

16  and if called as a witness would competently testify to their

17  truth if called as a witness.

18

19  Dated this 26th day of August, 2001

20                           Darren D. Chaker

21                           Plaintiff

22

23

24

25

COMPLAINT FOR RESTRAINING ORDER- 11

## VERIFICATION

I, DARREN DAVID CHAKER, am the Plaintiff in the above-entitled action. I have read the foregoing complaint and know its contents. The same is true of my own knowledge, except as to those matters that are alleged in the complaint on information and belief, and as to those matters, I believe to be true.

I declare under penalty of perjury the foregoing is true and correct.

Dated this 26th day of August

Darren D. Chaker
Plaintiff

COMPLAINT FOR RESTRAINING ORDER- 12

SER 352

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address):
ADDRESS WHERE YOU WANT MAIL SENT:

Darren D. Chaker #1230    1220
311 N. Robertson Blvd. #1230    Foothill
Beverly Hills CA 90211

TELEPHONE NO.:          FAX NO.:

ATTORNEY FOR (Name):

**CH-120**

F I L E D
SUPERIOR COURT
COUNTY OF SAN BERNARDINO
RANCHO CUCAMONGA DISTRICT

AUG 2 3 2001

BY _____ DEPUTY

RECEIVED
AUG 20 2001
RANCHO
CUCAMONGA
DISTRICT

FOR COURT USE ONLY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF    San Bernardino
STREET ADDRESS:  8303 Haven Avenue
MAILING ADDRESS:  Rancho Cucamonga
CITY AND ZIP CODE:  Rancho Cucamonga Jud. Dist.
BRANCH NAME:

PLAINTIFF:  Darren D. Chaker

DEFENDANT:  Sonia Tomina, Nicole Chaker

| ORDER TO SHOW CAUSE (Harassment) | CASE NUMBER: |
|---|---|
| [X] and Temporary Restraining Order (CLETS) | **RCV 057124** |

1. To defendant (name): Sonia Tomina / Nicole Chaker

2. A court hearing has been set at the time and place indicated below:

| Date: 9/6/01 | Time: 8:30 am | Dept: R-3 | Room: |
|---|---|---|---|

3. You have the right to attend the court hearing, with or without an attorney, to give any legal reason why the orders requested in the attached petition should not be granted. NOTICE: If you do not attend the hearing, the court may grant the requested orders without further notice to you. Restraining Orders may last up to three (3) years.

## TEMPORARY RESTRAINING ORDER

**THE COURT FINDS**

4. a.  The defendant is (name): Sonia Tomina; Nicole Chaker

| Sex: [ ] M [X] F | Ht: 5 | Wt: 140 | Hair color: Brn | Eye color: Brn | Race: Cauc | Age: 29 | Date of birth: Unk |
|---|---|---|---|---|---|---|---|

b.  The protected person(s) are (list names of all persons, including yourself, if applicable, to be protected by this order):

Darren D. Chaker + Nadine Z.- 'Smith'
+ Family

**UNTIL THE TIME OF HEARING, IT IS ORDERED**

5.  The restrained person

a. [X]  shall not contact, molest, harass, attack, strike, threaten, sexually assault, batter, telephone, send any messages to, follow, stalk, destroy the personal property of, disturb the peace of, keep under surveillance, or block movements in public places or thoroughfares.

b. [X]  shall stay at least (specify):  150  yards away from the following protected persons and places:
(The addresses of these places are optional and you do not have to provide them.)

(1) [X]  Person seeking the order
(2) [X]  The other plaintiffs listed in item 4b
(3) [X]  Residence of person seeking the order
(4) [X]  Place of work of person seeking the order
(5) [ ]  The children's school or place of child care (specify):
(6) [X]  Other (specify): - Grossmont Community College
- Cuyamaca Community College
- Alvarado Hospital
- 10000 Campo Road

(Temporary Restraining Order continued on reverse)

Form Approved for Optional Use
Judicial Council of California
CH-120 [Rev. July 1, 2000]

**ORDER TO SHOW CAUSE AND
TEMPORARY RESTRAINING ORDER (CLETS)
(Harassment)**

Legal
Solutions
Plus

Code of Civil Procedure,
§ 527.6; Penal Code,
§ 273.6(a)

SER 353

| PLAINTIFF (Name): CHAKER | CASE NUMBER: |
|---|---|
| DEFENDANT (Name): TOMINA | RCV 057124 |

6. ☑ OTHER ORDERS (specify):

NOT TO INSTRUCT NOR ENCOURAGE OTHERS TO VIOLATE THIS ORDER

7. By the close of business on the date of this order, a copy of this order and any proof of service shall be given to the law enforcement agencies listed below as follows:
   a. ☑ plaintiff shall deliver.
   b. ☐ plaintiff's attorney shall deliver.
   c. ☐ the clerk of the court shall deliver.

   <u>Law enforcement agency</u>          <u>Address</u>

   ✓ San Bernardino Sheriffs Dept ✓ 4020 Civic Ctr. ✗ San Bernardino, CA
   Beverly Hills Police Dept.  1404 Dohery Dr. Beverly Hills

8. a. ☑ Application for an order shortening time is granted and the following documents shall be personally served on the defendant no fewer than (specify number): 3 days before the time set for hearing.
   b. ☐ The following documents shall be personally served on defendant within five days from the date the TRO is issued, or two days before the hearing, whichever is earlier.
      (1) Order to Show Cause (Harassment) and Temporary Restraining Order
      (2) Petition for Injunction Prohibiting Harassment (form CH-100)
      (3) Blank Response to Petition for Injunction Prohibiting Harassment (form CH-110)
      (4) Other (specify):

9. ☑ Filing fees for the filing of this action are duly waived.

Date: 8/23/01                                        _____
                                                          JUDICIAL OFFICER

This order is effective when made. It is enforceable in all 50 states, the District of Columbia, all tribal lands, and all U.S. territories, and shall be enforced as if it were an order of that jurisdiction by any law enforcement agency that has received the order, is shown a copy of the order, or has verified its existence on the California Law Enforcement Telecommunications System (CLETS). If proof of service on the restrained person has not been received, and the restrained person was not present at the court hearing, the law enforcement agency shall advise the restrained person of the terms of the order and then shall enforce it. Violations of this restraining order are subject to federal and state criminal penalties. By California state law, violation of this temporary restraining order is a misdemeanor, punishable by one year in jail, a $1,000 fine, or both, or may be punishable as a felony. Any person subject to a restraining order is prohibited from purchasing or attempting to purchase, receiving or attempting to receive, or otherwise obtaining a firearm. Such conduct is subject to a $1,000 fine and imprisonment. If a final order is entered against the restrained person after the hearing, even if the restrained person did not attend, he or she may be prohibited from possessing, transporting, or accepting a firearm under the 1994 amendments to the Gun Control Act, 18 U.S.C. § 922(g)(8). A violation of this prohibition is a separate offense.

[SEAL]                          **CLERK'S CERTIFICATE**

I certify that the foregoing Order to Show Cause and Temporary Restraining Order (CLETS) is a true and correct copy of the original on file in the court.

Date: _____    Clerk, by _____, Deputy

CH-120 [Rev. July 1, 2000]                                              Page two
                          **ORDER TO SHOW CAUSE AND**
                     **TEMPORARY RESTRAINING ORDER (CLETS)**
                                  (Harassment)

SER 354

FILED
SUPERIOR COURT
COUNTY OF SAN BERNARDINO
RANCHO CUCAMONGA DISTRICT

AUG 2 7 2003

BY _____
                    DEPUTY

1  Darren D. Chaker
   311 N. Robertson Blvd. #1230
2  Beverly Hills, CA 90211
   206.333.6880 [Tel]
3  775.822.0062 [Fax]

4

5          **SUPERIOR COURT OF CALIFORNIA**

6

7              **COUNTY OF SAN BERNARDINO**

8  DARREN DAVID CHAKER,              Case No.: RCV 057124

9          Petitioner,              **STIPULATION TO DISMISS**
                                    **RESTRAINING ORDER**
10     vs.

11 NICOLE CHAKER, SONIA TOMINA,

12         Respondent.

13

14     Petitioner, DARREN D. CHAKER, hereby requests and

15 stipulates to the dismissal of the aforementioned case.

16

17 Dated this 18th day of August, 2003

18                                 _____
                                   Darren D. Chaker
19                                 Petitioner

20

21 CC:

22 Nicole Chaker, Respondent
   POB 882134, San Diego, CA 92168

23 Sonia Tomina, Respondent
   POB 710688, Santee, CA 92072

24

25                                 IT IS SO ORDERED

26                                 _____
                                   Judge of the Superior Court
                                   CRAIG S. KAMANSKY
27                                 August 27, 2003

28

SER 355

Case 2:16-cv-02186-WQH-SMD   Document 147-1   Filed 09/03/23   Page 986 of 2364   Page.D.25912

Exhibit C

Case 3:16-cv-02186-W-JLMDD Document 127-1 Filed 09/23/22 PageID 5203 Page 987 of
Case 2:04-cv-01040-W-SMD Document 127-1 Filed 03/10/23 Page 987 of 1196 Page 25719
1196

```
1              UNITED STATES OF AMERICA

2          UNITED STATES DISTRICT COURT

3          CENTRAL DISTRICT OF CALIFORNIA

4                CENTRAL DIVISION

5                   - - -
           HONORABLE GEORGE P. SCHIAVELLI
6       UNITED STATES DISTRICT JUDGE PRESIDING
                    - - -
7
   DARREN DEL NERO, ET AL.,        )
8                                  )
              PLAINTIFF,           )
9                                  )
   VS.                             ) CV 04-1040-GPS(SHX)
10                                 )
   MIDLAND CREDIT MANAGEMENT,      )
11  INC., ET AL.,                  )
                                   )
12            DEFENDANTS.          )
   _____)
13

14

15

16      TRIAL TESTIMONY OF DARREN DEL NERO - 2ND DAY

17          LOS ANGELES, CALIFORNIA

18          THURSDAY, MARCH 17, 2005

19

20

21

22

23          ROSALYN ADAMS, CSR 11794
            OFFICIAL COURT REPORTER
            100 UNITED STATES COURTHOUSE
24          312 NORTH SPRING STREET, ROOM 410
            LOS ANGELES, CALIFORNIA 90012
25          (213) 894-2665
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

1    THEM TO CONSIDER.

2              LET'S GET THE JURY.

3              (JURORS ENTER THE COURTROOM.)

4              THE COURT:  FOR THE RECORD, THE JURORS ARE AGAIN

5    PRESENT IN THEIR SEATS.  GOOD MORNING, LADIES AND GENTLEMEN.

6    SORRY, AGAIN, WE'RE A LITTLE BIT LATE, BUT WE WERE HANDLING A

7    COUPLE OF MATTERS RELATING TO TRIAL.  WHAT HAPPENS IS, IF WE

8    CAN HANDLE THEM IN ADVANCE OF YOUR COMING DOWN, IT DOES ALLOW

9    THINGS TO MOVE MORE QUICKLY HERE BECAUSE THE LAWYERS KNOW

10   WHAT THEY WILL BE ALLOWED TO DO AND WHAT THEY WON'T BE

11   ALLOWED TO DO.

12             WE'LL RESUME WITH MR. DEL NERO ON THE STAND.

13             YOU UNDERSTAND, SIR, YOU HAVE BEEN SWORN AND YOU

14   ARE STILL UNDER OATH?

15             THE WITNESS:  YES, I DO.

16             THE COURT:  OKAY.  THANK YOU.

17             MR. SWIGART, YOU MAY RESUME THE INQUIRY.

18             MR. SWIGART:  THANK YOU, YOUR HONOR.

19

20             DIRECT EXAMINATION (CONTINUED)

21   BY MR. SWIGART:

22   Q.   GOOD MORNING, MR. DEL NERO.

23   A.   GOOD MORNING.

24   Q.   LET'S CHANGE GEARS A LITTLE BIT FROM WHERE WE LEFT OFF

25   YESTERDAY, GO RIGHT TO THE HEART OF THINGS.

1    SIR?

2    A.    MID -- MID MARCH 2003.

3    Q.    BEFORE SAINT PATRICK'S DAY?

4    A.    I DON'T KNOW.

5    Q.    SO SOMETIME MID MARCH, IDES OF MARCH?

6    A.    EXCUSE ME?

7    Q.    A REFERENCE TO JULIUS CAESAR.

8            MARCH 15TH -- DO YOU KNOW WHEN IN MARCH YOU

9    RETURNED, SIR?

10   A.    I DON'T KNOW -- I DON'T KNOW THE SPECIFIC DATE.  I TAKE

11   A LITANY OF MEDICATIONS THAT REALLY INHIBIT MY MEMORY.  SO I

12   DON'T SPECIFICALLY REMEMBER.

13   Q.    I'M SORRY, SIR.  YOU TAKE A LONG GROUP OF -- LARGE GROUP

14   OF MEDICINES THAT INHIBIT YOUR MEMORY?

15   A.    YES.

16   Q.    JUST VERY, VERY BRIEFLY, SIR, WHAT ARE THOSE

17   MEDICATIONS?

18   A.    PAXIL, 20 MILLIGRAMS; IPREXA (PHONETICALLY).  I DON'T

19   KNOW HOW MANY MILLIGRAMS THOSE ARE.  RISPERDAL, KLONOPIN,

20   AMBIEN -- JUST TO GO TO SLEEP -- VALIUM.  AND THE -- THE

21   DOSAGES FLUCTUATE DEPENDING ON HOW I FEEL.

22   Q.    I'M GOING TO TRY TO MOVE IT ALONG.  I'M NOT REALLY

23   INTERESTED IN THE DOSAGES.  I WAS JUST LOOKING FOR THE NAMES.

24            SO YOU'VE KIND OF RUN OFF MOST OF THEM?

25   A.    I'D SAY THAT'S ALL OF THEM.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

SER 227

COMPLETELY DIFFERENT DATE.

Q.   SO IT'S SIMPLY IMPOSSIBLE TO WRITE IN THE CORRECT DATE.

YOU COULDN'T HAVE INTERLINEATED IT SO YOU HAD A CLEAR RECORD

OF WHAT DAY YOU ALLEGEDLY SENT THIS LETTER; IS THAT RIGHT,

MR. DEL NERO?

A.   NO.  I COULD HAVE PHYSICALLY WRITTEN IN THE DATE.  I

DIDN'T -- AS FAR AS HAVING A COMPUTER-AID -- EXCUSE ME -- A

COMPUTER-GENERATED DATE ON IT, SINCE IT WASN'T MY COMPUTER, I

DIDN'T WANT TO GO INTO PROPERTIES AND CHANGE THE WHOLE

PROPERTIES OF A WHOLE COMPUTER SYSTEM.

Q.   IN THE OTHER LETTERS, YOU MAKE IT QUITE CLEAR YOU'RE

SENDING THEM BY PERSONAL DELIVERY, FAX, CERTIFIED MAIL.  THIS

ONE -- NO NOTATION.

         IS THAT BECAUSE THE COMPUTER PROGRAM WOULDN'T ALLOW

YOU TO DO THAT AS WELL?

A.   NO, NOT AT ALL.

Q.   WHY IS THIS OMITTED?

A.   I THOUGHT A BASIC LETTER SUCH AS THIS WOULD CURE ANY

KIND OF DISPUTE, IF THERE WAS A CONTRACT OR IF THE DEBT WAS

MINE OR IF IT WASN'T MINE.

Q.   YOU'RE PRETTY EXPERIENCED IN SUING DEBT COLLECTORS IN

OTHER CONSUMER LAWSUITS, AREN'T YOU, MR. DEL NERO?

A.   MY ATTORNEYS ARE, YES.

Q.   YOU'RE AN EXPERIENCED LITIGANT, AS A PARTY.  YOU'RE

EXPERIENCED TO THIS.

1  A.    I'M AN EXPERIENCED PLAINTIFF.

2  Q.    PLAINTIFF, YES, INDEED.  YOU'RE A LITIGANT, YOU'RE A

3  PLAINTIFF, YOU'RE A PARTY TO THIS LAWSUIT?

4  A.    CORRECT.

5  Q.    YOU'RE EXPERIENCED IN THIS?

6  A.    I'VE NEVER BEEN THROUGH A CIVIL TRIAL BEFORE, NO.

7  Q.    YOU'RE EXPERIENCED IN BEING A PLAINTIFF IN LAWSUITS, OUT

8  OF CONSUMER LAWSUITS, AREN'T YOU?

9  A.    ABSOLUTELY.

10  Q.    IN FACT, FIVE LAWSUITS WERE FILED ON ONE DAY IN

11  APRIL LAST YEAR ON YOUR BEHALF, WEREN'T THEY?

12  A.    THEY WERE.

13  Q.    BY HYDE AND SWIGART?

14  A.    YES.

15  Q.    WHAT COMPUTER DID YOU SEND THE EXHIBIT -- WHAT WAS IT

16  PREPARED ON, MR. DEL NERO?

17  A.    KINKO'S.  I BELIEVE IT WAS ON LA JOLLA VILLAGE DRIVE IN

18  SAN DIEGO.

19  Q.    WHY COULD YOU NOT USE YOUR OWN COMPUTER AT THAT POINT.

20  A.    I BELIEVE MY COMPUTER CRASHED AND WAS TAKEN TO EITHER

21  FRYE'S OR COMP USA.

22  Q.    COMING, AGAIN, NOW, MR. DEL NERO, WOULD YOU TAKE A LOOK

23  AT WHAT'S BEEN PREVIOUSLY MARKED AS EXHIBIT 11.

24  A.    OKAY.

25  Q.    AGAIN, SIMPLY, NO REFERENCE TO ANY PHONE CALLS TO YOUR

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

1    JURY WILL DISREGARD IT.

2    BY MR. TURNER:

3    Q.    SO, MR. DEL NERO, IN FACT, YOU FILED A LAWSUIT IN THE

4    CENTRAL DISTRICT OF CALIFORNIA AGAINST RIDDLE AND ASSOCIATES,

5    NC PORTFOLIO MANAGEMENT INCORPORATED, AND NCO FINANCIAL

6    SYSTEMS INCORPORATED, IN WHICH YOU ALLEGED THAT ON

7    JANUARY 30TH, A MAN CALLED YOUR MOTHER'S HOUSE AND ASKED FOR

8    PLAINTIFF?

9             MR. SWIGART:  OBJECTION, YOUR HONOR.  VAGUE AND

10   AMBIGUOUS AS TO WHAT YEAR.

11            THE COURT:  CLARIFY.

12   BY MR. TURNER:

13   Q.    I'LL CLARIFY.  I APOLOGIZE.

14            JANUARY 30, 2003?

15   A.    CORRECT.

16            MR. TURNER:  MAY I APPROACH TO GIVE THE WITNESS A

17   DOCUMENT?

18            THE COURT:  YOU MAY.

19            MR. SWIGART:  YOUR HONOR, I'LL OBJECT.  I HAVEN'T

20   SEEN THIS DOCUMENT.

21            MR. TURNER:  I'M GOING TO GIVE MR. SWIGART A COPY.

22            YOUR HONOR, I HAVE AN EXTRA COPY.

23            THE COURT:  THANK YOU.

24   BY MR. TURNER:

25   Q.    WOULD YOU TAKE A LOOK AT THE DOCUMENT THAT'S BEEN HANDED

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT**

1    TO YOU.

2              THE COURT:  ONE MOMENT.

3              COUNSEL, HAVE YOU HAD A CHANCE TO SEE IT?

4              MR. SWIGART:  WE'RE FINE.  THANK YOU, YOUR HONOR.

5              THE COURT:  YOU MAY RESUME.

6              MR. TURNER:  EXCUSE ME.  I'M SORRY, MR. SWIGART.

7    Q.   WOULD YOU TAKE A LOOK AT THIS DOCUMENT, CONSISTING OF

8    SEVEN PAGES.  TAKE A LOOK AT IT.

9    A.   (WITNESS COMPLIES).

10             OKAY.

11   Q.   NOW, HAVE YOU EVER SEEN A COPY OF THIS DOCUMENT BEFORE

12   TODAY?

13   A.   I BELIEVE SO, YES.

14   Q.   AND CAN YOU IDENTIFY WHAT THE DOCUMENT IS?

15   A.   IT'S A PHOTOCOPY OF THE LAWSUIT.

16   Q.   IT'S A PHOTOCOPY OF THE LAWSUIT FILED ON YOUR BEHALF?

17   A.   CORRECT.

18   Q.   AT ONE POINT YOU REPRESENTED THAT YOU RETAINED

19   MR. ROBERT STEMPLAR (PHONETICALLY) TO FILE THIS LAWSUIT ON

20   YOUR BEHALF?

21   A.   CORRECT.

22   Q.   IN FACT, IT WAS FILED ON YOUR BEHALF, WASN'T IT?

23   A.   YES.

24             MR. TURNER:  YOUR HONOR, I'D LIKE TO MOVE TO HAVE

25   THIS IN EVIDENCE, NEXT IN ORDER.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

Case 3:16-cv-02186-WQH-MDD Document 127-1 Filed 09/23/22 PageID.5810 Page 994 of
1196
Case 2:16-cv-01146-WQH-SMD Document 127-1 Filed 03/04/23 Page 994 of 2369 Page ID 26920

120

1    THE COURT:  IT WILL BE NO. 26, I BELIEVE.

2    ANY OBJECTION?

3    MR. SWIGART:  WE WOULD OBJECT, YOUR HONOR.  LACK OF

4 FOUNDATION.

5    THE COURT:  PARDON ME?

6    MR. SWIGART:  LACK OF FOUNDATION.

7    THE COURT:  OVERRULED.  IT IS IN EVIDENCE AS

8 EXHIBIT 26.

9    (EXHIBIT NO. 26 ADMITTED IN EVIDENCE.)

10 BY MR. TURNER:

11 Q.   LET'S TAKE A QUICK -- WE WON'T GO THROUGH ALL OF THIS,

12 MR. DEL NERO.  WE'LL GO THROUGH, QUICKLY, THE FACT IT WAS

13 FILED ON SEPTEMBER 11, 2003.

14    DOES THAT REFRESH YOUR RECOLLECTION ABOUT WHEN THIS

15 WAS FILED ON YOUR BEHALF?

16 A.   IT DOES.

17 Q.   IN FACT, IT SHOWS MR. STEMPLAR WAS YOUR COUNSEL, WAS HE

18 NOT?

19 A.   YES.

20 Q.   WE MOVE DOWN.  IT SAYS IT'S A COMPLAINT FOR VIOLATING

21 THE FAIR DEBT COLLECTION PRACTICES ACT.

22    THAT'S AN ACCURATE STATEMENT, IS IT NOT, SIR?

23 A.   YES.

24 Q.   AND DOWN HERE IN PARAGRAPH TWO, WOULD YOU TAKE A LOOK AT

25 THAT.  THIS IS AN ACTION FOR DAMAGES BROUGHT BY CONSUMER FOR

Case 3:16-cv-02186-WQH-MDD Document 127-1 Filed 09/23/22 PageID.5811 Page 995 of
1145
Case 2:04-cv-02140-WQH-SMDD Document 124-1 Filed 09/04/13 Page 461-2340 Page 265 of
1145

179

```
1              CERTIFICATE OF REPORTER

2

3    COUNTY OF LOS ANGELES      )
                                )  SS.
4    STATE OF CALIFORNIA        )

5

6

7         I, ROSALYN ADAMS, OFFICIAL COURT REPORTER, IN AND

8    FOR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT

9    OF CALIFORNIA, DO HEREBY CERTIFY THAT I REPORTED,

10   STENOGRAPHICALLY, THE FOREGOING PROCEEDINGS AT THE TIME AND

11   PLACE HEREINBEFORE SET FORTH; THAT THE SAME WAS THEREAFTER

12   REDUCED TO TYPEWRITTEN FORM BY MEANS OF COMPUTER-AIDED

13   TRANSCRIPTION; AND I DO FURTHER CERTIFY THAT THIS IS A TRUE

14   AND CORRECT TRANSCRIPTION OF MY STENOGRAPHIC NOTES.

15

16

17   DATE:  MARCH 22, 2005

18

19   _____

20   ROSALYN ADAMS, CSR 11794
     OFFICIAL COURT REPORTER
21

22

23

24

25
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

Case 2:16-cv-02105-WQH-SMD  Document 147-1  Filed 03/10/23  Page of 230-1  Page ID 26762

Exhibit D

```
 1                    UNITED STATES OF AMERICA

 2                 UNITED STATES DISTRICT COURT

 3                CENTRAL DISTRICT OF CALIFORNIA

 4                       CENTRAL DIVISION

 5                          -  -  -

 6          HONORABLE GEORGE P. SCHIAVELLI
            UNITED STATES DISTRICT JUDGE PRESIDING
 7                          -  -  -

 8   DARREN DEL NERO, ET AL.,        )
                                     )
 9              PLAINTIFF,           )
                                     )
10   VS.                            )  CV 04-1040-GPS(SHX)
                                     )
11   MIDLAND CREDIT MANAGEMENT,      )
     INC., ET AL.,                   )
12                                   )
                DEFENDANTS.          )
13   _____)

14

15

16              TRIAL PROCEEDINGS - DAY 1

17            LOS ANGELES, CALIFORNIA

18           TUESDAY, MARCH 15, 2005

19

20

21

22

23            ROSALYN ADAMS, CSR 11794
              OFFICIAL COURT REPORTER
              100 UNITED STATES COURTHOUSE
24          312 NORTH SPRING STREET, ROOM 410
              LOS ANGELES, CALIFORNIA 90012
25                 (213) 894-2665
```

COPY

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

Case 3:16-cv-02186-WQH-MDD Document 127-1 Filed 09/23/22 PageID 5214 Page 998 of
Case 2:16-cv-02186-WQH-MDD Document 127-1 Filed 09/23/23 Page ID 23843 Page 263 of
1195
152

```
 1    WE COULD HAVE JUST ONE MOMENT, YOUR HONOR.

 2             THE COURT:  OKAY.

 3                  (PAUSE IN PROCEEDINGS.)

 4       NICOLE CHAKER, PLAINTIFF'S WITNESS, SWORN

 5             THE CLERK:  PLEASE STATE YOUR NAME FOR THE RECORD

 6    AND SPELL YOUR NAME.

 7             PROSPECTIVE JUROR:  MY NAME IS NICOLE CHAKER.  IT'S

 8    N-I-C-O-L-E, AND IT'S C-H-A-K-E-R.

 9             THE COURT:  COUNSEL, YOU MAY INQUIRE.

10                  DIRECT EXAMINATION

11    BY MR. SWIGART:

12    Q.   THANK YOU, MS. CHAKER.  BEFORE WE GET INTO THE HEART OF

13    THE MATTER, I'M GOING TO ASK YOU A COUPLE OF BACKGROUND

14    QUESTIONS, IF THAT'S OKAY.

15             ARE YOU FAMILIAR WITH MR. DEL NERO?

16    A.   WHICH ONE?

17    Q.   DARREN DEL NERO?

18    A.   YES.  HE'S MY SON.

19    Q.   HE'S YOUR SON?

20    A.   YES.

21    Q.   SO VERY FEW PEOPLE ARE AS FAMILIAR AS YOU ARE WITH HIM,

22    WOULD THAT BE ACCURATE?

23    A.   I DIDN'T UNDERSTAND.

24    Q.   WE'LL STRIKE THAT.

25             WHERE DO YOU CURRENTLY RESIDE?
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

```
 1    A.    IN SAN DIEGO COUNTY, SAN DIEGO.

 2    Q.    DO YOU OWN A HOUSE THERE?

 3    A.    YES, I DO.

 4    Q.    CAN YOU REMEMBER BACK TO THE END OF MARCH 2003?

 5    A.    YES.

 6    Q.    DID ANYTHING HAPPEN WITH REGARD TO AN ALLEGED DEBT THAT

 7    WAS OWED BY MR. DEL NERO?

 8              MR TURNER:  OBJECTION.  VAGUE AND AMBIGUOUS AS TO

 9    "ALLEGED DEBT."

10              THE COURT:  SUSTAINED.  REPHRASE.

11    BY MR. SWIGART:

12    Q.    DO YOU REMEMBER RECEIVING ANY TELEPHONE CALLS FOR DARREN

13    BACK IN MARCH OF 2003?

14    A.    YES, I DID.

15    Q.    WERE ANY OF THOSE TELEPHONE CALLS FROM PEOPLE IDENTIFIED

16    AS TRYING TO COLLECT MONEY FROM MR. DEL NERO?

17    A.    YES, THERE WERE.

18    Q.    AND DO YOU REMEMBER RECEIVING ANY TELEPHONE CALLS WITH

19    REGARD TO DEBT COLLECTORS TRYING TO ASK FOR MONEY FROM

20    MR. DEL NERO -- FROM MIDLAND?

21              MR TURNER:  OBJECTION.  LEADING.

22              THE COURT:  SUSTAINED.

23    BY MR. SWIGART:

24    Q.    DO YOU REMEMBER ANY OF THE PEOPLE -- ANY OF THE

25    COLLECTION AGENCIES, THE NAMES OF THEM THAT CALLED IN
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

1    MARCH 2003?

2    A.   YES.

3    Q.   COULD YOU GIVE US THOSE NAMES.

4    A.   THEY IDENTIFIED THEMSELVES AS BEING FROM MIDLAND

5    COLLECTION.

6    Q.   YOU SAID "MIDLAND COLLECTION"?

7    A.   AGENCY -- SOMETHING LIKE THAT.

8    Q.   ANY OTHER AGENCIES?

9    A.   NO.

10    Q.   JUST MIDLAND?

11    A.   JUST MIDLAND.

12    Q.   DO YOU REMEMBER WHEN THE TELEPHONE CALLS FIRST STARTED?

13    A.   NOT EXACTLY.  I HAVE THE DATES WRITTEN DOWN AND THAT --

14    IF YOU WANT FOR ME TO REFRESH MY MEMORY, I REALLY APPRECIATE

15    IT.

16    Q.   LET ME ASK YOU A COUPLE OF QUESTIONS ABOUT THAT.  WHEN

17    TELEPHONE CALLS COME INTO YOUR HOUSE, DO YOU SOMETIMES TAKE

18    NOTES OF WHO CALLED?

19    A.   SOMETIMES I DO.  AND THAT WAS A VERY, VERY UNUSUAL

20    CIRCUMSTANCE THAT I HAD TO TAKE NOTES OF WHAT HAS HAPPENED TO

21    ME FOR SEVERAL DAYS.

22    Q.   COULD YOU GIVE ME ANY INSTANCES AS TO WHY YOU TAKE DOWN

23    CERTAIN NOTES FOR TELEPHONE CALLS, INSTEAD OF NOT TAKING

24    NOTES DOWN WHEN THE CALL CAME IN.

25    A.   OKAY.  FOR EXAMPLE, I COULDN'T REACH DARREN.  I COULDN'T

1    REACH HIM AT ALL.  AND AT THAT TIME I DIDN'T KNOW WHERE HE

2    WAS.  LATER ON, OF COURSE, I FOUND OUT, BUT I WENT THROUGH A

3    VERY, VERY BAD TIME ON THE PHONE.  AND I MIGHT HAVE TOLD YOU

4    I LIVE ALONE, AND I WAS, YOU KNOW, QUITE SHOOK UP AND

5    FRIGHTENED FOR MYSELF AND FOR MY SON.

6    Q.   WHEN MIDLAND CALLED DID YOU TAKE DOWNEY NOTES AFTER

7    THEY -- WHEN MIDLAND CALLED, DID YOU TAKE DOWNEY NOTES AS FAR

8    AS WHEN THE PHONE CALL CAME IN OR THE CONTENT OF THE

9    TELEPHONE CALL?

10            MR TURNER:  OBJECTION.  VAGUE AND AMBIGUOUS.  WE

11   HAVEN'T ESTABLISHED ABOUT MIDLAND.

12            THE COURT:  SUSTAINED.  LAY FOUNDATION.

13   BY MR. SWIGART:

14   Q.   YOU STATED EARLIER THAT YOU RECEIVED TELEPHONE CALLS

15   BACK IN MARCH 2003 FROM SOMEONE IDENTIFIED AS MIDLAND

16   COLLECTIONS; IS THAT CORRECT?

17   A.   CREDIT -- COLLECTION, YES.

18   Q.   AND DID THEY ASK FOR MR. DEL NERO?

19   A.   YES, THEY DID.

20   Q.   DO YOU REMEMBER THE FIRST TIME THAT THEY CALLED?

21   A.   LIKE I SAID, I TOOK NOTES OF THOSE TIMES, AND I DIDN'T

22   HAVE TIME TO LOOK AT THEM, THE EXACT DATES SINCE I -- YOU

23   KNOW.

24   Q.   SO YOU TOOK DOWN NOTES FROM THE FIRST TIME THEY CALLED;

25   IS THAT CORRECT?

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

1   A.   YES, I DID.

2   Q.   AND HOW DO YOU KEEP THOSE NOTES?

3   A.   I HAD AN APPOINTMENT BOOK.  AND I KEPT THE NOTES BECAUSE

4   THEY WERE PARTIALLY FOR DARREN.  SO I WANTED TO REPEAT WHAT

5   HAS HAPPENED AND WHAT OCCURRED ON THIS PHONE CONVERSATION.

6   Q.   SO IF I UNDERSTAND YOU RIGHT, THE FIRST TELEPHONE CALL

7   THAT YOU RECEIVED FROM MIDLAND, YOU TOOK DOWN NOTES IN YOUR

8   APPOINTMENT BOOK?

9   A.   YES.

10  Q.   DO YOU STILL HAVE THAT APPOINTMENT BOOK?

11  A.   YES, I DO.

12  Q.   DID YOU HAPPEN TO BRING THAT APPOINTMENT BOOK WITH YOU

13  TODAY?

14  A.   YES.

15  Q.   DO YOU HAVE IT WITH YOU?

16  A.   YES.

17  Q.   COULD I EXAMINE IT REAL QUICK, IF YOU DON'T MIND?

18       MR. SWIGART:  MAY I APPROACH, YOUR HONOR?

19       THE COURT:  YOU MAY.

20       MR TURNER:  MAY I APPROACH, YOUR HONOR?

21       THE COURT:  YOU MAY.

22       (COUNSEL APPROACHES WITNESS STAND.)

23       THE COURT:  WHAT IS NOW ON THE SCREEN?

24       MR. HYDE:  WE'RE GETTING READY TO PUBLISH THIS WITH

25  THE COURT'S PERMISSION.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

```
 1              THE COURT:  BEFORE YOU SHOW ANYTHING TO THE JURY

 2   INQUIRE OF THE COURT, BEFORE YOU SHOW ANYTHING TO THE JURY.

 3              MR. HYDE:  I DIDN'T WANT MY DESK TOP ON.

 4              THE COURT:  YOU CAN LEAVE IT ON FOR NOW.  BUT

 5   BEFORE YOU SHOW IT TO THE JURY, SHOW IT TO THE COURT:

 6              MR. HYDE:  OKAY.

 7              THE COURT:  CAN WE PROCEED, PLEASE.

 8              MR TURNER:  SURE.

 9   BY MR. SWIGART:

10   Q.  SO AFTER TAKING A LOOK AT YOUR NOTEBOOK, COULD YOU

11   RECALL THE FIRST DATE THAT MIDLAND CALLED FOR MR. DEL NERO?

12              MR TURNER:  OBJECTION.  VAGUE AS TO WHAT DATE

13   MIDLAND CALLED, YOUR HONOR.

14              THE COURT:  OVERRULED.

15              MR. SWIGART:  YOU CAN GO AHEAD AND ANSWER.

16              THE WITNESS:  IT WAS MARCH 4TH.

17   BY MR. SWIGART:

18   Q.  MARCH 4TH.  OKAY.  AND DID YOU WRITE DOWN ANY NOTES WITH

19   REGARD TO THE CONTENT OF THE TELEPHONE CALL ON MARCH 4TH?

20   A.   I SAID, "WHAT A WAY TO START THE DAY."  I CAN'T SEE.

21   I'M SORRY.  I WROTE --

22              THE COURT:  THE QUESTION IS, SIMPLY, DID YOU WRITE

23   ANY NOTES?

24              THE WITNESS:  YES, I DID.  SHALL I READ IT?

25              THE COURT:  YOU'VE ANSWERED THE QUESTION.
```

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT**

BY MR. SWIGART:

Q. THAT'S OKAY. I'LL ASK YOU A FOLLOW-UP QUESTION. AFTER REVIEWING THE NOTES, DO YOU REMEMBER WHAT THE CONTENT OF THE NOTES THAT YOU WROTE DOWN STATED?

A. SHOULD I READ THEM OR WOULD YOU WANT -- IT'S ABOUT SOME ANNOYING -- VERY ANNOYING AND SCARY CALLS FROM MIDLAND CREDIT OR COLLECTION.

Q. AND HOW DID YOU KNOW THEY WERE FROM MIDLAND COLLECTION?

A. THEY SAID SO. I NEVER HEARD ABOUT MIDLAND COLLECTION.

Q. THE FIRST CALL, YOU SAID, WAS IT THE 4TH OR THE 5TH?

A. OF MARCH.

Q. WHAT WAS THE DATE OF IT AGAIN?

A. THE 4TH OF MARCH.

Q. DO YOU REMEMBER ANYTHING ELSE OF THE TELEPHONE CALL?

A. ABOUT WHAT THEY SAID ON THE PHONE?

Q. YES.

A. WITHOUT READING, YES, I DO REMEMBER THAT VERY WELL. FOR SOME REASON THEIR FOCUS WENT FROM DARREN, ASKING -- TELLING ME THAT IT'S GOING TO BE HARD FOR HIM TO FIND A JOB. "YOU BETTER TELL HIM TO PAY UP. YOU KNOW HE OWES US MONEY." THEN HE ALSO SWITCHED ON ME, THAT "YOU'VE GOT MONEY. WHY DON'T YOU PAY FOR HIS DEBTS. WE CAN STOP BY PICK UP THE MONEY FROM YOU." AND I SAID, "WHO ARE YOU?" HE SAID, "WE KNOW EXACTLY WHAT YOU'RE DOING AND WHAT YOU DO." I LIVE ACROSS THE PLAYGROUND OF A SCHOOL AND THERE IS NO NEIGHBORS OR ANYTHING

```
 1   ELSE, YOU KNOW.  EVERY TIME I SEE A CAR THERE OR SOMEBODY

 2   SITTING IN A CAR, I WOULD, LIKE -- WAS VERY DESPONDENT AND

 3   BEING THAT I WASN'T ABLE TO REACH MY SON, I REALLY WENT

 4   THROUGH A BAD TIME.  I MEAN, I'M SURE EVERY MOTHER OR PARENT

 5   WILL IMAGINE ANYTHING POSSIBLE THAT COULD HAPPEN --

 6             THE COURT:  COULD WE GET ANOTHER QUESTION, PLEASE.

 7             MR. SWIGART:  SURE.

 8   Q.   DO YOU REMEMBER HOW MANY TIMES THEY CALLED ON MARCH 4TH?

 9   A.   THEY CALLED ONCE.  I CAN'T SEE.  (WITNESS LOOKING AT

10   NOTEBOOK).  ONE IS ON A STICKER AND THE OTHER IS WRITTEN ON

11   THE PAPER ITSELF.

12   Q.   DID THEY CALL MORE THAN ONE TIME ON MARCH 4TH?

13   A.   I BELIEVE TWICE.

14   Q.   WHEN IS THE NEXT TIMING THEY CALLED?

15   A.   THE FOLLOWING DAY.

16   Q.   SO THAT WOULD BE MARCH 5TH?

17   A.   MARCH 5TH.

18   Q.   DID YOU TAKE ANY NOTES WITH REGARD TO THAT TELEPHONE

19   CALL?

20   A.   YES.

21   Q.   DO YOU REMEMBER THE CONVERSATION THAT YOU HAD WITH

22   MIDLAND ON MARCH 5TH?

23   A.   "THIS IS JOHN" -- MIDLAND CALLED AGAIN AND AGAIN, ASKED

24   ME IN REFERENCE TO DARREN ABOUT THE DEBT.  I CAN'T REACH --

25   AND I SAID, "I CAN'T REACH HIM," YOU KNOW.
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

SER 165

1    Q.    DID THEY GIVE YOU ANY OTHER INFORMATION ABOUT THE DEBT

2    BESIDES MR. DEL NERO'S NAME ON MARCH 5TH?

3    A.    THAT HE OWES A LOT OF MONEY AND HE'S GOT TO PAY UP AND

4    HE'S GOT TO, YOU KNOW -- "WE'RE GOING TO FIND HIM, WE'RE

5    GOING TO FIND HIM," AND THINGS LIKE THAT.

6    Q.    WHAT'S THE NEXT TIME THEY CALLED AFTER THAT?

7    A.    MARCH 6TH, I HAD SEVERAL HANG UP CALLS.

8    Q.    LET ME STOP YOU THERE.

9           YOU'RE LOOKING AT TWO PAGES OF YOUR DIARY; IS THAT

10    CORRECT?

11    A.    YES.

12    Q.    THE FIRST PAGE SAYS, I GUESS, IT'S MARCH 3RD AND 4TH; IS

13    THAT CORRECT?

14    A.    MARCH 4TH AND 5TH.

15    Q.    THEN ON THE OTHER PAGE IT HAS MARCH 6TH AND 7TH; IS THAT

16    CORRECT?

17    A.    THE OTHER PAGE IS -- THE 6TH IS THE HANG-UP CALLS TO THE

18    POINT THAT I CALLED UP THE PHONE COMPANY --

19           THE COURT:  COUNSEL, SIDEBAR, PLEASE, WITH THE

20    REPORTER.

21               (SIDEBAR.)

22           THE COURT:  I WANT YOU TO GET YOUR ACT TOGETHER.

23    PART OF THE TIME -- YOU HAVE NO IDENTIFICATION THAT HAS BEEN

24    ADMITTED.  PART OF THE TIME SHE'S READING; PART OF TIME SHE'S

25    NOT KNOWING WHAT SHE'S DOING.  LET'S GET THIS CLEARED UP.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

1    MR. SWIGART:  I'M TRYING TO LAY FOUNDATION.

2        THE COURT:  YOU'RE ASKING HER, HER RECOLLECTION.

3    SHE'S JUST SITTING HERE READING THE DOCUMENT.  UNTIL IT'S IN

4    EVIDENCE, I DON'T WANT HER READING THE DOCUMENT.

5        MR. SWIGART:  I'M JUST TRYING TO LAY FOUNDATION.

6        THE COURT:  I'M TRYING TO GET THE RECORD CLEAR.

7    THIS ISN'T EVEN MARKED, THAT SHE'S READING FROM.  IT HASN'T

8    BEEN MARKED FOR IDENTIFICATION SO LET'S GET IT CLEAR.

9        MR. SWIGART:  OKAY.

10                (END SIDEBAR.)

11        MR. SWIGART:  WAS THERE AN EVIDENCE OR AN EXHIBIT

12   NOTEBOOK FOR THE WITNESS, YOUR HONOR?

13        THE COURT:  I THINK THERE'S ONE UP THERE.

14        MR. SWIGART:  I THINK I SEE ONE RIGHT THERE.

15        THE COURT:  THERE IS ONE UP THERE.

16        MR. SWIGART:  IF I COULD HAVE YOU TURN TO THE

17   NOTEBOOK IN FRONT OF YOU.  IF YOU COULD OPEN THAT UP FOR ME,

18   AND THERE'S A BUNCH OF TABS.  IF YOU COULD FLIP TO TAB NUMBER

19   14.

20        IF I COULD HAVE THIS MARKED AS COURT'S EXHIBIT -- I

21   GUESS THIS WOULD BE NUMBER 14.

22        THE COURT:  THIS IS A JOINT EXHIBIT; CORRECT?

23        MR. SWIGART:  YES.

24        THE COURT:  THAT WILL BE EXHIBIT 14.

25        MR. SWIGART:  MARK THIS FOR IDENTIFICATION.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

```
 1          THE COURT:  ALL RIGHT.  14 IS MARKED FOR I.D.

 2          (PLAINTIFF'S EXHIBIT 14 MARKED FOR IDENTIFICATION.)

 3    BY MR. SWIGART:

 4    Q.    DO YOU RECOGNIZE THIS DOCUMENT AT ALL, MS. CHAKER?

 5    A.    YES.

 6    Q.    COULD YOU DESCRIBE IT FOR ME.

 7    A.    IT'S IDENTICAL TO MY APPOINTMENT BOOK.  IT'S A

 8    PHOTOCOPY.

 9    Q.    IT'S A PHOTO COPY OF YOUR APPOINTMENT BOOK?

10    A.    YES.

11    Q.    AFTER REVIEWING THIS DOCUMENT, IS THIS A FAIR AND

12    ACCURATE DEPICTION OF THE CONTENTS THAT ARE CONTAINED IN YOUR

13    APPOINTMENT BOOK FOR THESE PARTICULAR DAYS?

14    A.    YES.

15          MR. SWIGART:  AT THIS TIME, YOUR HONOR, I WOULD

16    LIKE TO MOVE THIS INTO EVIDENCE.

17          THE COURT:  ANY OBJECTION?

18          MR TURNER:  I WOULD OBJECT, YOUR HONOR.  WE HAVEN'T

19    ESTABLISHED WHEN MIDLAND MADE THE PHONE CALLS SHE REFERRED

20    TO.

21          THE COURT:  THE OBJECTION IS TO THE BOOK, NOT THE

22    QUESTION.

23          MR TURNER:  I APOLOGIZE IN THAT REGARD, YOUR HONOR.

24    I MISUNDERSTOOD AND JUMPED THE GUN.  I DON'T OBJECT TO THE

25    BOOK, YOUR HONOR.
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

1              THE COURT:  SO EXHIBIT 14 IS IN EVIDENCE, WITHOUT

2       OBJECTION.

3              MR. SWIGART:  AT THIS TIME, YOUR HONOR, I REQUEST

4       TO PUBLISH THIS TO THE JURY.

5              THE COURT:  READ THE WHOLE BOOK?

6              MR. SWIGART:  JUST THIS PAGE, EXHIBIT 14, JUST THIS

7       PAGE.

8              THE COURT:  IT'S IN EVIDENCE.  GO AHEAD.  DO YOU

9       HAVE A COPY OVER THERE?  IT'S EASIER TO JUST PUT IT ON THE

10      SCREEN.

11      BY MR. SWIGART:

12      Q.   SO YOU TESTIFIED EARLIER THAT YOU MADE SOME NOTATIONS

13      THAT MIDLAND CALLED ON MARCH 4TH; IS THAT CORRECT?

14      A.   YES.

15      Q.   YOU ALSO SAID THEY CALLED ON MARCH 5TH.

16             IS THAT ALSO CORRECT?

17      A.   (NO AUDIBLE RESPONSE.)

18      Q.   COULD YOU TELL US WHAT SOME OF THESE NOTES ARE ON THE

19      SIDE, UNDER WHERE IT SAYS "GOALS FOR THE WEEK."

20             MR TURNER:  EXCUSE ME, YOUR HONOR.  SHE DIDN'T

21      ANSWER THE PRIOR QUESTION, ON MARCH 5TH.

22             THE COURT:  STRIKE THE TWO QUESTIONS.  ASK ANOTHER

23      QUESTION.

24             MR. SWIGART:  OKAY.  IS IT POSSIBLE TO ZOOM IN ONTO

25      THE ONE PAGE.  OKAY.  TAKING A LOOK ON --

```
 1              THE COURT:  YOU CAN SEE IT ON YOUR SCREEN THERE.

 2    EXCUSE ME FOR A SECOND.

 3    BY MR. SWIGART:

 4    Q.   ON THE LEFT-HAND COLUMN WHERE IT SAYS IN THE APPOINTMENT

 5    BOOK "GOALS FOR THE WEEK," DO YOU SEE THAT?

 6    A.   YES.

 7    Q.   THERE'S SOME WRITING UNDERNEATH THAT COLUMN.

 8              DID YOU MAKE THAT WRITING?

 9    A.   YES, I DID.

10    Q.   COULD YOU DESCRIBE FOR THE COURT AND THE JURY WHY YOU

11    MADE THOSE NOTATIONS AND WHAT THEY MEAN?

12    A.   I SAID, "WHERE IS DARREN?  I'M SO SCARED."  I SAID,

13    "WHAT ARE THESE PEOPLE?"  AND THE PHONE NUMBER I WROTE DOWN

14    IS 850-75770 -- EXCUSE ME -- 1175770.

15    Q.   HOW ABOUT THAT WORD RIGHT IN FRONT OF THE "850," CAN YOU

16    INTERPRET WHAT THAT WORD MEANS?

17    A.   I CAN'T SEE.  I GOT THE WRONG GLASSES.  "I'M SO SCARED."

18    THERE'S A WORD -- I KNOW THERE'S A WORD.  I CAN'T SEE.  I'M

19    SORRY.

20    Q.   AS FAR AS THIS NUMBER, WHERE DID YOU GET THAT NUMBER

21    FROM?

22    A.   FROM THEM.  THEY GAVE ME THAT PHONE NUMBER.  I TELL HIM

23    TO CALL UP.

24    Q.   AND HOW ABOUT THE HANDWRITING UNDERNEATH THAT PARAGRAPH

25    WHERE IT SAYS, "MARCH 5TH."
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

1    DID YOU MAKE THOSE HANDWRITTEN NOTES?

2    A.   YES, BECAUSE IT'S DARREN'S BIRTHDAY.  I WROTE "HAPPY

3    BIRTHDAY."  I ALWAYS WRITE -- "THIS IS JOHN."

4    Q.   ON MARCH 5TH YOU TESTIFIED EARLIER THAT YOU RECEIVED A

5    TELEPHONE CALL OF SOMEBODY IDENTIFYING HIMSELF AS MIDLAND; IS

6    THAT CORRECT?

7    A.   YES, MIDLAND CALLED.

8    Q.   DID YOU MAKE ANY NOTES ABOUT THE CALL IN THAT BOX?

9    A.   YES, I DID.

10   Q.   COULD YOU DESCRIBE FOR US WHAT NOTES YOU MADE WITH

11   REGARD TO THAT CALL.

12           MR TURNER:  OBJECTION.  VAGUE.

13           THE WITNESS:  I TOLD MIDLAND --

14           THE COURT:  OBJECTION.  SUSTAINED.

15           REPHRASE.

16   BY MR. SWIGART:

17   Q.   DID YOU MAKE ANY NOTES IN YOUR DIARY WITH REGARD TO THE

18   TELEPHONE CALL THAT DAY THAT YOU RECEIVED FROM MIDLAND ON

19   MARCH 5, 2003?

20   A.   I WROTE -- I TOLD MIDLAND TO STOP.  THIS IS A JOHN -- OR

21   SOMETHING.  "MIDLAND CALLED AGAIN AND AGAIN, ASK ME TO PAY

22   OFF DARREN'S DEBT.  I CAN'T REACH HIM."

23           MR TURNER:  YOUR HONOR, I MOVE TO STRIKE.  I DON'T

24   KNOW WHETHER SHE'S TESTIFYING OR IF SHE'S READING OR WHAT SHE

25   RECALLS.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

1       THE COURT:  WE'RE GOING TO HAVE TO CLARIFY.

2       WERE YOU READING THAT FROM THE BOOK?

3       THE WITNESS:  YES.

4       THE COURT:  SHE WAS READING FROM THE BOOK.  SO IT'S

5  CLEAR.

6       PROCEED.

7  BY MR. SWIGART:

8  Q.   ON MARCH 5TH, DO YOU REMEMBER IF MIDLAND ASKED YOU TO

9  PAY MR. DEL NERO'S DEBT?

10      MR TURNER:  OBJECTION.  LEADING.

11      THE COURT:  COUNSEL, LEADING.

12 BY MR. SWIGART:

13 Q.   DO YOU REMEMBER ANYTHING ELSE IN THE TELEPHONE CALL ON

14 MARCH 5TH THAT YOU RECEIVED FROM MIDLAND WITH REGARD TO

15 MR. DEL NERO?

16 A.   I WROTE DOWN SOMEWHERE, WHERE THEY DID ASK ME TO PAY HIS

17 DEBT, AND I RECALL THAT TOTALLY, VERY CLEARLY.  THEY SAID,

18 "YOU'VE GOT MONEY," YOU KNOW, "WHY DON'T YOU PAY HIS DEBT."

19 Q.   AND LET'S --

20 A.   "ASKED ME" -- YES.  "THEY CALLED AGAIN AND AGAIN, ASKED

21 ME TO PAY OFF DARREN'S DEBT.  I CAN'T REACH HIM."  I COULDN'T

22 REACH DARREN.

23 Q.   AND YOU'RE RECALLING THAT FROM READING YOUR NOTES IN THE

24 DIARY?

25 A.   THE NOTES IN THE DIARY I RECALL -- I WANTED TO RECALL

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

1    THE EXACT DATES, BUT I RECALL THE CONVERSATION VERY CLEARLY

2    ABOUT WHAT THEY DEMANDED FROM ME.  I DON'T NEED THE BOOK TO

3    REMEMBER THAT.

4    Q.   OKAY.  LET'S GO TO THE OTHER SIDE THERE OF COURT'S

5    EXHIBIT NUMBER 14, WHERE IT SAYS THE "SIXTH."

6         DID YOU RECEIVE ANY TELEPHONE CALLS FROM MIDLAND

7    COLLECTIONS WITH REGARD TO MR. DEL NERO'S ALLEGED DEBT ON

8    MARCH 6, 2003?

9    A.   I WROTE DOWN "TOO MANY HANG UP CALLS."

10   Q.   YOU DON'T KNOW FOR SURE IF YOU RECEIVED ANY CALLS FROM

11   MIDLAND?

12        MR TURNER:  OBJECTION.  LEADING.

13        THE COURT:  OVERRULED.

14        THE WITNESS:  THERE ARE A LOT OF PHONE NUMBERS, BUT

15   I DON'T KNOW IF IT IS CONNECTED WITH MIDLAND.

16   BY MR. SWIGART:

17   Q.   WHAT ABOUT ON MARCH 7, 2003, DO YOU REMEMBER RECEIVING

18   ANY TELEPHONE CALLS FROM MIDLAND COLLECTIONS WITH REGARD TO

19   AN ALLEGED DEBT BY MR. DEL NERO?

20   A.   YES.  MIDLAND LEFT ANOTHER --

21   Q.   IF WE COULD BLOW UP THAT PORTION OF THAT PAGE.  SO ON

22   THE TOP HERE, WHERE IT SAYS "M," COULD YOU INTERPRET WHAT YOU

23   WROTE THERE.

24        MR TURNER:  OBJECTION.  VAGUE.  I DON'T UNDERSTAND

25   WHAT HE MEANS BY "INTERPRET," YOUR HONOR.

```
 1              THE COURT:  OVERRULED.

 2              MR. SWIGART:  GO AHEAD.

 3              THE WITNESS:  MIDLAND LEFT ANOTHER NUMBER --

 4    800-825-8131 -- WITH ME.

 5    Q.   NOW, WHEN YOU SAY "MIDLAND," DOES IT SAY "MIDLAND"?

 6    A.   NO, IT SAYS "M."

 7    Q.   WHAT DID YOU MEAN BY WRITING DOWN "M"?

 8    A.   IN SOME PARTS I DID WRITE "MIDLAND," BUT I DIDN'T WANT

 9    TO REPEAT IT BECAUSE THE SQUARE IS TOO SMALL SO I JUST WROTE

10    "M."

11    Q.   THE "M" THAT YOU WROTE, THAT REPRESENTS MIDLAND?

12    A.   YES, IT DOES.

13    Q.   AND ON THE NEXT LINE DOWN, COULD YOU READ FOR US WHAT

14    YOU WROTE AS FAR AS THE REST OF THE MESSAGE?

15    A.   "THEY'RE WILLING TO PICK UP THE MONEY DARREN OWES FROM

16    ME.  THEY KNOW" --

17    Q.   DO YOU REMEMBER ANY OF THE OTHER CONTENTS OF THE

18    CONVERSATION --

19    A.   "THEY KNOW ALL ABOUT ME."

20              THE COURT:  WAIT.  EXCUSE ME.  YOU'VE GOT TO HAVE

21    ONE PERSON TALKING AT A TIME.  SO LET HIS QUESTION BE

22    FINISHED BEFORE YOU ANSWER, AND VICE VERSA.  THANK YOU.

23    BY MR. SWIGART:

24    Q.   DO YOU REMEMBER ANY OF THE OTHER CONVERSATION THAT YOU

25    HAD WITH MIDLAND DURING THE MARCH 7, 2003 CALL, WHERE THEY
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

1    CALLED ABOUT THE ALLEGED DEBT FOR MR. DEL NERO?

2    A.    THE CONVERSATION, AS I SAID, THAT HE'S NOT GOING TO FIND

3    A JOB.  THEY'RE GOING TO MAKE SURE, YOU KNOW, FOR HIM NOT TO

4    GET A JOB EVER AGAIN.  "YOU DON'T KNOW HOW SERIOUS THIS IS.

5    WE KNOW HOW TO HANDLE" -- YOU KNOW, JUST IN A VERY

6    THREATENING CONVERSATION.

7    Q.    DID THEY ASK YOU TO PAY THE DEBT ON THAT DATE?

8    A.    ON THE SEVEN.

9    Q.    ON MARCH 7TH?

10    A.    YES, MM-HUH.

11    Q.    AND IF YOU COULD JUST FLIP THE EXHIBIT NOTEBOOK IN FRONT

12    OF YOU TO THE NEXT PAGE, WHERE IT SAYS "TAB 15."

13              MR. SWIGART:  IF WE COULD HAVE THIS MARKED AS

14    COURT'S EXHIBIT NUMBER 15 FOR IDENTIFICATION.

15              THE COURT:  IT'S MARKED AS EXHIBIT 15 MARKED FOR

16    IDENTIFICATION.

17              (EXHIBIT 15 MARKED FOR IDENTIFICATION.)

18    BY MR. SWIGART:

19    Q.    DO YOU RECOGNIZE THIS DOCUMENT AT ALL?

20    A.    YES.  IT'S FROM MY APPOINTMENT BOOK.

21    Q.    IS IT A COPY FROM YOUR APPOINTMENT BOOK?

22    A.    YES.

23    Q.    WE JUST HAVE ONE PAGE HERE AS FAR AS AN EXHIBIT.

24              DOES THIS REPRESENT TWO PAGES IN YOUR APPOINTMENT

25    BOOK?

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

1   A.   YES, IT DOES.

2   Q.   AFTER REVIEWING THIS PHOTOCOPY OF YOUR APPOINTMENT BOOK

3   AND REVIEWING THE CONTENTS ON THERE, DOES IT REPRESENT -- IS

4   IT A FAIR AND ACCURATE COPY OF THE CONTENTS CONTAINED IN YOUR

5   APPOINTMENT BOOK AS YOU WROTE THEM, THE ORIGINAL?

6   A.   YES.

7        MR. SWIGART:  AT THIS TIME, YOUR HONOR, I'D LIKE TO

8   MOVE THIS INTO EVIDENCE.

9        THE COURT:  ANY OBJECTION?

10       MR TURNER:  NO, YOUR HONOR.

11       THE COURT:  EXHIBIT 15 IS IN EVIDENCE WITHOUT

12  OBJECTION.  THANK YOU.

13       (PLAINTIFF'S EXHIBIT 15 IN EVIDENCE.)

14       MR. SWIGART:  IF I COULD POST THIS EXHIBIT TO THE

15  JURY.

16       THE COURT:  YOU MAY.

17  Q.   LET'S TAKE A LOOK AT MARCH 10TH.  DID YOU RECEIVE ANY

18  CALLS THAT YOU CAN RECALL FROM MIDLAND COLLECTIONS WITH

19  REGARD TO MR. DEL NERO'S ALLEGED DEBT ON MARCH 10, 2003?

20  A.   I RECEIVED HANG-UP CALLS.

21  Q.   WHEN YOU SAY YOU RECEIVED "HANG-UP CALLS," WHAT DO YOU

22  MEAN BY THAT?

23  A.   LIKE, I HESITATED ABOUT -- I DIDN'T WANT TO PICK BEFORE

24  THE MACHINE PICKS IT UP.  AND THEY WILL HANG UP RIGHT BEFORE,

25  LIKE NOBODY WOULD LEAVE A MESSAGE.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

1   Q.   HAS THAT HAPPENED TO YOU IN THE PAST BEFORE THIS DATE?

2   A.   I'M SURE IT DID, BUT NOT AROUND THIS TIME.  IT SOUND --

3   I FELT UNCOMFORTABLE, A LITTLE BIT JUMPY, LIKE -- I WOULD

4   LOOK OUTSIDE THE HOUSE OR I WILL HESITATE TO LEAVE OR --

5           MR TURNER:  YOUR HONOR, MOVE TO STRIKE.

6           THE COURT:  GRANTED.

7           THE JURY WILL NOT CONSIDER THE LAST ANSWER.

8           EXCUSE ME.  THIS MIGHT BE A GOOD TIME TO TAKE THE

9   AFTERNOON BREAK.  WE'LL TAKE TEN MINUTES.  THANK YOU.

10          COULD I HAVE COUNSEL AT SIDEBAR, WITHOUT THE

11  REPORTER.

12                  (SIDEBAR NOT REPORTED.)

13                   (RECESS TAKEN.)

14          THE COURT:  BACK ON THE RECORD.  THE JURORS ARE NOT

15  PRESENT.  I UNDERSTAND THERE IS SOMETHING SOMEBODY WANTED TO

16  TAKE UP.

17          MR TURNER:  THAT'S CORRECT, YOUR HONOR.  THANK YOU.

18  UPON REFLECTING AGAIN LOOKING AT THE ORIGINAL OF THE DATE

19  BOOK --

20          THE COURT:  YES.

21          MR TURNER:  -- I BELIEVE THE ORIGINAL NEEDS TO BE

22  INTRODUCED INTO EVIDENCE, AS WELL AS A COPY, AND REQUEST THAT

23  IT BE SO AS WELL.

24          THE COURT:  ANY OBJECTION?

25          MR. SWIGART:  YES, YOUR HONOR.  WE'D OBJECT.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

1   Q.   GOING BACK TO EXHIBIT NUMBER 15 THAT WE HAVE ON THE

2   SCREEN RIGHT NOW, IF YOU CAN TAKE A LOOK AT MARCH 12, 2003.

3            DO YOU REMEMBER RECEIVING ANY TELEPHONE CALLS FROM

4   MIDLAND WITH REGARD TO MR. DEL NERO'S ALLEGED ACT -- I'M

5   SORRY -- MARCH 12, 2003?

6            THE COURT:  CAN YOU REPHRASE THE QUESTION.  I'VE

7   LOST THE QUESTION.

8            MR. SWIGART:  YES, YOUR HONOR.

9   BY MR. SWIGART:

10  Q.   LOOKING BACK ON MARCH 12, 2003, DO YOU REMEMBER

11  RECEIVING ANY TELEPHONE CALLS FROM MIDLAND?

12           MR. TURNER:  OBJECTION.  LEADING.

13           THE COURT:  OVERRULED.

14           THE WITNESS:  ON WHAT DATE?

15  BY MR. SWIGART:

16  Q.   MARCH 12, 2003.  IT'S ON THE SCREEN HERE ON THE BOTTOM

17  LEFT-HAND CORNER.

18  A.   YES.  I TOOK SOME NOTES.

19  Q.   DO YOU REMEMBER THE SUBJECT OF THE CALL AS YOU -- STRIKE

20  THAT.

21           DO YOU REMEMBER RECEIVING A TELEPHONE CALL FROM

22  MIDLAND ON MARCH 12, 2003?

23           MR TURNER:  OBJECTION.  LEADING.

24           THE WITNESS:  YES, I HAVE.

25           THE COURT:  I HAVE TO RULE ON THE OBJECTION BEFORE

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

```
 1   YOU START ANSWERING.

 2            SUSTAINED.

 3   BY MR. SWIGART:

 4   Q.   DO YOU REMEMBER RECEIVING -- CAN YOU -- DID ANYTHING

 5   HAPPEN ON MARCH 12, 2003 THAT YOU RECALL THAT IS IN ANY WAY

 6   RELATED TO THE SUBJECT OF THE LAWSUIT?

 7            MR TURNER:  OBJECTION.  LEADING.

 8            THE COURT:  OVERRULED.

 9            THE WITNESS:  YES.  I RECEIVED OTHER CALLS FROM

10   MIDLAND.

11   BY MR. SWIGART:

12   Q.   THOSE CALLS -- DO YOU REMEMBER ANY -- THE SUBJECT OF

13   THOSE CALLS?

14   A.   IT'S, AGAIN, ABOUT DARREN.

15   Q.   OKAY.  DID THEY ASK FOR DARREN, IF YOU RECALL?

16   A.   (NO AUDIBLE RESPONSE.)

17   Q.   LET ME STRIKE THAT.

18            WITH RELATIONSHIP TO THIS CALL YOU TESTIFIED

19   HAPPENED, DID YOU TAKE ANY NOTES?

20   A.   YES I HAVE.

21   Q.   DID YOU WRITE THOSE NOTES DOWN IN THE DIARY?

22   A.   YES.

23   Q.   DID YOU WRITE THEM DOWN WHERE IT SAYS "MARCH 12TH"?

24   A.   YES, I HAVE.

25   Q.   COULD YOU INTERPRET THOSE NOTES FOR US.
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

1       MR TURNER: OBJECTION. VAGUE.

2       THE COURT: SUSTAINED.

3   BY MR. SWIGART:

4   Q.   ON THE ENTRY FOR MARCH 12TH, COULD YOU READ FOR US WHAT

5   YOU WROTE DOWN.

6   A.   THAT WOULD MAKE SURE TO PREVENT DARREN -- "D" -- DARREN

7   FROM GETTING A GOOD JOB.

8   Q.   LET ME STOP YOU THERE. WHEN YOU WROTE DOWN "THEY," WHO

9   WERE YOU REFERRING TO?

10  A.   MIDLAND BECAUSE ON THE SIDE --

11  Q.   YOU TESTIFIED THAT "THEY" REFERS TO MIDLAND?

12  A.   YES.

13  Q.   THEN HOW ABOUT AFTER THAT WHERE IT SAYS -- WHERE YOU

14  SAID THAT TO PREVENT DARREN FROM GETTING A GOOD JOB.

15       WHAT DID YOU WRITE UNDERNEATH THAT?

16  A.   "CAN THEY HARM HIM?"

17  Q.   LET ME STOP YOU THERE. WHAT DID YOU MEAN BY, "CAN THEY

18  HARM HIM?" CAN THEY HARM HIM?

19  A.   WORKWISE OR PHYSICALLY -- I DIDN'T UNDERSTAND ANYBODY

20  PUSHING THAT HARD THROUGH ME TO GET TO HIM. I DIDN'T -- YOU

21  KNOW, YOU HEAR ABOUT THINGS.

22       MR TURNER: I MOVE TO STRIKE, YOUR HONOR. IT'S

23  NON-RESPONSIVE. IT'S IRRELEVANT.

24       THE COURT: DENIED.

25       PROCEED.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

1  A.  YES.

2  Q.  COULD YOU GO AHEAD AND READ WHAT YOU WROTE DOWN AS FAR

3  AS THE TELEPHONE MESSAGE WAS ON MARCH 13, 2003?

4  A.  I SAID, "MIDLAND, MORE THREATS AND INTIMIDATION,"

5  SOMETHING ABOUT BEING SUED, THAT THERE CALLS -- THERE ARE

6  CALLS ARE NOT BEING -- YOU CANNOT, LIKE, TRACE THEIR CALLS.

7  AGAIN, LAUGHING --

8  Q.  LET'S STOP THERE.

9  A.  AGAIN AND AGAIN.

10  Q.  WHEN YOU SAID "THEIR CALLS CAN'T BE TRACED," WHAT DID

11  YOU MEAN BY THAT?

12  A.  THEY WERE TELLING ME -- THEY WERE JOKING AND LAUGHING.

13  AND THEY SAID, LIKE, "DON'T WORRY," YOU KNOW, "YOU CANNOT

14  TRACE OUR CALLS," YOU KNOW.

15  Q.  ON THE RIGHT-HAND SIDE THERE, YOU WROTE DOWN "AGAIN AND

16  AGAIN."

17       WHAT DO YOU MEAN BY "AGAIN AND AGAIN"?

18  A.  LIKE, THEY CALLED, OVER AND OVER AGAIN.

19  Q.  ABOUT HOW MANY TIMES WOULD YOU ESTIMATE YOU RECEIVED

20  TELEPHONE CALLS FROM MR. DEL NERO ON MARCH 13, 2003?

21  A.  ABOUT THREE OR FOUR.

22  Q.  AND HOW ABOUT ON MARCH 14, 2003, DO YOU RECALL ANYTHING

23  THAT WOULD BE RELEVANT TO YOU TESTIFYING HERE TODAY ON

24  MARCH 14, 2003?

25  A.  ON THE 14TH, I DON'T BELIEVE -- I HAD THE PHONE COMPANY

1    Q.   AND YOU HAVE A CLOSE RELATIONSHIP WITH MR. DEL NERO?

2    A.   VERY CLOSE.

3    Q.   AND --

4    A.   AND WITH MY DAUGHTER.

5    Q.   HOW MUCH DAUGHTERS DO YOU HAVE?

6    A.   I HAVE ONE DAUGHTER.

7    Q.   SO YOU HAVE A VERY CLOSE RELATIONSHIP WITH -- MR. DEL

8    NERO IS YOUR ONLY SON?

9    A.   YES.

10    Q.   SO YOU HAVE A VERY CLOSE RELATIONSHIP WITH HIM?

11    A.   AS A MOTHER SHOULD HAVE WITH HER SON, YES.

12    Q.   I UNDERSTAND.  WAS THIS THE HOUSE THAT MR. DEL NERO GREW

13    UP IN, 5924 STADIUM STREET?

14    A.   I DIDN'T UNDERSTAND YOU.

15    Q.   IT'S MY FAULT.  I APOLOGIZE.

16        YOU SAY YOU CURRENTLY LIVE AT 5924 STADIUM STREET

17    IN SAN DIEGO?

18    A.   YES.

19    Q.   HOW LONG HAVE YOU LIVED THERE?

20    A.   FOR QUITE A FEW YEARS.

21    Q.   WAS THIS THE HOUSE THAT MR. DEL NERO GREW UP IN?

22    A.   PARTIALLY, YES.

23    Q.   THERE'S A FEW OTHER POINTS BEFORE WE GET TO THOSE NOTES,

24    MS. CHAKER.

25        WERE YOU AWARE THAT MR. DEL NERO WAS A VICTIM OF A

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

```
 1    APPROPRIATE.

 2          MR. HYDE:  YOUR HONOR, I HAVE DISCUSSED THESE

 3    ISSUES WITH MRS. CHAKER, AND HER SISTER.  AND FOR SOME

 4    REASON -- I CAN'T TELL YOU WHY -- THEY'RE VERY SECRETIVE

 5    ABOUT CERTAIN ASPECTS OF THEIR LIFE.

 6          THE COURT:  SHE'D BETTER GET UNSECRETIVE VERY FAST.

 7          MR. HYDE:  I UNDERSTAND.  I THINK YOU SHOULD BE

 8    AWARE, SOMEBODY HAS TO DRAG IT OUT OF HER.

 9          THE COURT:  I WILL SEND JURY OUT.  SHE'S DANCING

10    AROUND PERJURY HERE.

11          MR. HYDE:  I DON'T THINK SHE MEANS TO DO THAT.

12          THE COURT:  I'M NOT SUGGESTING SHE'S INTENDING TO.

13    OBVIOUSLY, SHE'S UNCOMFORTABLE.  IT'S NOT UP TO HER WHAT

14    SHE'S GOING TO TESTIFY TO AND WHAT SHE'S NOT.

15          MR. HYDE:  I AGREE, YOUR HONOR.  SHE HAS THINGS SHE

16    WANTS TO KEEP A SECRET, AND I DON'T KNOW WHY SHE'S SO

17    CONCERNED, BUT SHE'S PARANOID.

18          THE COURT:  DO I MAKE SENSE TO LET THE JURY GO FOR

19    THE EVENING NOW, AND LET ME TALK TO HER WITHOUT THE JURY

20    PRESENT.

21          MR. SWIGART:  YOUR HONOR, IF IT CAN BE CLEAR THAT

22    SHE HEAR IT FROM THE COURT TO BE BACK HERE TOMORROW MORNING

23    AT 9:00 O'CLOCK.

24          THE COURT:  WE'LL BRING HER BACK AT 9:00.  AT THIS

25    POINT SHE'S VERY CONCERNED.  SHE SEEMS UNEASY, AND I DON'T
```

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT**

1   APPROPRIATE.

2          MR. HYDE:  YOUR HONOR, I HAVE DISCUSSED THESE

3   ISSUES WITH MRS. CHAKER, AND HER SISTER.  AND FOR SOME

4   REASON -- I CAN'T TELL YOU WHY -- THEY'RE VERY SECRETIVE

5   ABOUT CERTAIN ASPECTS OF THEIR LIFE.

6          THE COURT:  SHE'D BETTER GET UNSECRETIVE VERY FAST.

7          MR. HYDE:  I UNDERSTAND.  I THINK YOU SHOULD BE

8   AWARE, SOMEBODY HAS TO DRAG IT OUT OF HER.

9          THE COURT:  I WILL SEND JURY OUT.  SHE'S DANCING

10  AROUND PERJURY HERE.

11         MR. HYDE:  I DON'T THINK SHE MEANS TO DO THAT.

12         THE COURT:  I'M NOT SUGGESTING SHE'S INTENDING TO.

13  OBVIOUSLY, SHE'S UNCOMFORTABLE.  IT'S NOT UP TO HER WHAT

14  SHE'S GOING TO TESTIFY TO AND WHAT SHE'S NOT.

15         MR. HYDE:  I AGREE, YOUR HONOR.  SHE HAS THINGS SHE

16  WANTS TO KEEP A SECRET, AND I DON'T KNOW WHY SHE'S SO

17  CONCERNED, BUT SHE'S PARANOID.

18         THE COURT:  DO I MAKE SENSE TO LET THE JURY GO FOR

19  THE EVENING NOW, AND LET ME TALK TO HER WITHOUT THE JURY

20  PRESENT.

21         MR. SWIGART:  YOUR HONOR, IF IT CAN BE CLEAR THAT

22  SHE HEAR IT FROM THE COURT TO BE BACK HERE TOMORROW MORNING

23  AT 9:00 O'CLOCK.

24         THE COURT:  WE'LL BRING HER BACK AT 9:00.  AT THIS

25  POINT SHE'S VERY CONCERNED.  SHE SEEMS UNEASY, AND I DON'T

```
1                    CERTIFICATE OF REPORTER

2

3    COUNTY OF LOS ANGELES     )
                               )  SS.
     STATE OF CALIFORNIA       )
4

5

6    I, ROSALYN ADAMS, OFFICIAL COURT REPORTER, IN AND FOR THE

7    UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF

8    CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT TO SECTION 753,

9    TITLE 28, UNITED STATES CODE, THE FOREGOING IS A TRUE AND

10   CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED

11   PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE

12   TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS

13   OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

14

15

16   DATED:  OCTOBER 11, 2007

17

18   [signature]

19   ROSALYN ADAMS, CSR 11794
     OFFICIAL COURT REPORTER
20

21

22

23

24

25
```

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT**

Case 3:16-cv-02186-WQH-MDD Document 127-1 Filed 09/23/22 PageID.5242 Page 1026 of
1196
Case 2:04-cv-01090-WBQ-LMD Document 147-1 Filed 02/08/23 PageID.2344 Page 293 of
445

Exhibit E



1020

SER 188





Case 2:16-cv-03186-WJM-MRP Document 137-1 Filed 09/23/22 PageID 5246 Page 1030 of 1196

Exhibit F

1  Robert L. Hyde
   State Bar No.: 227183
2  Joshua B. Swigart
   State Bar No.: 225557
3  **Hyde & Swigart**
   110 West 'C' Street, Suite 900
4  San Diego, CA 92101
   Telephone:   (619) 233-7770
5  Facsimile:   (619) 330-4657

6  **Attorneys for the Plaintiff**

7

                      2004 APR 19  PM 4: 21

8

9          **UNITED STATES DISTRICT COURT**

10         **CENTRAL DISTRICT OF CALIFORNIA**

10   Darren D. Chaker,                 **CV 04-2728   PA    (R__)**

11                    Plaintiff,       Case No.: _____

12   v.                                **VERIFIED COMPLAINT FOR DAMAGES**

13   Imperial Collection Services,     **_DEMAND FOR JURY TRIAL_**

14                    Defendant.

15

16                      **INTRODUCTION**

17  1.  Imperial Collection Services, (hereinafter "Plaintiff"), by his attorneys, brings this action to

18      challenge the actions of Risk Management Alternatives, Inc. (hereinafter "Defendant") with

)       regard to attempts by Defendant to unlawfully collect an alleged debt claimed to be owed

20      Defendant by Plaintiff, which caused Plaintiff damages.

21                      **JURISDICTION AND VENUE**

22  2.  Jurisdiction of this Court arises under 28 U.S.C. §1331 and pursuant to 15 U.S.C. §1692k(d), and

23      pursuant to 28 U.S.C. §1367 for supplemental state law claims.

24  3.  This action arises out of Defendant's violations of the Fair Debt Collection Practices Act, and the

25      Rosenthal Fair Debt Collection Practices Act, California Civil Code §§1788-1788.32 (RFDCPA).

26  4.  Personal jurisdiction is established because Defendant does business within this state of

27      California.

28      //

Page 1 of 7                                            Verified Complaint For Damages

                                                       **ORIGINAL**

DOCKETED ON CM

APR 2 2 2004

BY _____   019

5. Venue is proper in the County of Los Angeles because the Defendant's principal place of business is in the State of California, the Plaintiff resides in County of Los Angeles, and the violations of the law occurred in the County of Los Angeles.

### PARTIES

6. Plaintiff is a natural person who resides in the City of Los Angeles, County of Los Angeles, State of California.

7. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

8. Plaintiff is a "debtor" as that term is defined by California Civil Code §1788.2(h).

9. Defendant is a collection agency operating from an address of 2300 Clayton Road, Concord, CA 94520-2100.

10. Defendant is a "debt collector" as that term is defined by 15 U.S.C. §1692a(6).

11. Defendant is a "debt collector" as that term is defined by California Civil Code §1788.2(b).

### FACTUAL ALLEGATIONS

12. At all times relevant, Plaintiff was an individual who resided within the State of California.

13. Plaintiff is informed and believes, and thereon alleges, that at all times relevant, Defendant conducted business in the State of California.

14. Sometime before April 3, 2003, Plaintiff allegedly incurred financial obligations to Sterling Bank & Trust, FSB that were money, property, or their equivalent, which is due or owing, or alleged to be due or owing, from a natural person to another person, specifically, personal household items, and is therefore a "debt(s)" as that term is defined by California Civil Code §1788.2(d), and a "consumer debt" as that term is defined by California Civil Code §1788.2(f). These financial obligations were primarily for personal, family or household purposes and are therefore "debt(s)" as that term is defined by 15 U.S.C. §1692a(5).

15. Sometime thereafter, but before April 3, 2003, Plaintiff fell behind in the payments allegedly owed on the alleged debt.

16. Subsequently, but before April 3, 2003, the alleged debt was assigned, placed, or otherwise transferred to Defendant for collection from the Plaintiff.

//

1    17. On or about April 3, 2003, Defendant sent, and Plaintiff received, a dunning letter addressed to

2    Plaintiff's home and in the name of Defendant. *(See Plaintiff's Exhibit 1.)*

3    18. This letter to the Plaintiff, by the Defendant, was a "communication" as that term is defined by 15

4    U.S.C. §1692a(2).

5    19. This letter was the initial communication to the Plaintiff by the Defendant.

6    20. On or about April 28, 2003, Plaintiff sent a letter to Defendant in which Plaintiff stated he

7    disputed the validity and requested validation of the debt in a manner consistent with the

8    requirements in 15 U.S.C. §1692g. *(See Plaintiff's Exhibit 2.)*

9    21. On or about May 2, 2003, the Defendant telephoned the home of Plaintiff's mother and spoke

10   with his mother concerning the alleged debt.

11   22. During this conversation, the Defendant disclosed that they were calling to collect an alleged

12   debt and disclosed the account number of the alleged debt and other personal information

13   about the debt and the Plaintiff. The Defendant then demanded the mother pay the Plaintiff's

14   debt. The Plaintiff's mother refused to pay.

15   23. The actions of the Defendant during this May 2, 2003 telephone call violated 15 U.S.C. §§1692b,

16   1692b(1), 1692b(2), 1692c(b), 1692d, 1692e, 1692e(10) and 1692f.

17   24. The actions of the Defendant during this May 27, 2003 telephone call violated California Civil

18   Code §1788.12(b).

19   25. Because this communication violates the FDCPA, including, but not limited to, 15 U.S.C.

20   §§1692b, 1692b(1), 1692b(2), 1692c(b), 1692d, 1692e, 1692e(10) and 1692f, it also violates

21   California Civil Code §1788.17.

22   26. On May 5, 2003, Defendant sent, and Plaintiff received, a dunning letter addressed to Plaintiff's

23   home, and in the name of Defendant. *(See Plaintiff's Exhibit 3.)*

24   27. By sending Plaintiff's Exhibit 3 to Plaintiff, and making demand for payment before validating

25   the debt as requested by the Plaintiff, the Defendant violated 15 U.S.C. §1692g.

26   28. By sending Plaintiff's Exhibit 3 to Plaintiff, Defendant acted in a manner that was deceptive,

27   unfair, and unconscionable, violating 15 U.S.C. §§1692e, 1692e(10) and 1692f.

28   //

VERIFIED COMPLAINT FOR DAMAGES

                                        SER 295

1   29. Because this communication violates the FDCPA, including, but not limited to, 15 U.S.C.

2   §§1692e, 1692e(10), 1692f, and 1692g, it also violates California Civil Code §1788.17.

3   30. On or about May 27, 2003, the Defendant again telephoned the home of Plaintiff's mother and

4   spoke with his mother concerning the alleged debt.

5   31. During this conversation, the Defendant disclosed that they were calling to collect an alleged

6   debt owed by the Plaintiff and disclosed the account number of the alleged debt and other

7   personal information about the debt and the Plaintiff. The Defendant also asked the Plaintiff's

8   mother if Plaintiff was working. The Defendant told the mother that they she was about to

9   bring a lawsuit against the Plaintiff and that it was imperative that the Plaintiff telephone the

10   Defendant immediately to avoid this.

11   32. The actions of the Defendant during this May 27, 2003 telephone call violated 15 U.S.C. §§1692b,

12   1692b(1), 1692b(2), 1692b(3), 1692c(b), 1692d, 1692e, 1692e(4), 1692e(10) and 1692f.

13   33. Because this communication violates the FDCPA, including, but not limited to, 15 U.S.C.

14   §§1692b, 1692b(1), 1692b(2), 1692c(b), 1692d, 1692e, 1692e(4), 1692e(10) and 1692f, it also

15   violates California Civil Code §1788.17.

16   34. The actions of the Defendant during this May 27, 2003 telephone call violated California Civil

17   Code §§1788.10(e), and 1788.12(b).

18   35. On or about June 18, 2003, the Defendant again telephoned the home of Plaintiff's mother and

19   spoke with his mother concerning the alleged debt.

20   36. During this conversation, the Defendant disclosed that they were calling to collect an alleged

21   debt owed by the Plaintiff and other personal information about the debt and the Plaintiff. The

22   Defendant then demanded the mother pay the Plaintiff's debt. The Plaintiff's mother refused to

23   pay. The Defendant again told the mother that they were about to bring a lawsuit against the

24   Plaintiff. The Plaintiff's mother then demanded Defendant stop calling her.

25   37. The actions of the Defendant during this June 18, 2003 telephone call violated 15 U.S.C.

26   §§1692b, 1692b(1), 1692b(2), 1692b(3), 1692c(b), 1692d, 1692e, 1692e(4), 1692e(10) and 1692f.

27   //

28   //

VERIFIED COMPLAINT FOR DAMAGES

38. Because this communication violates the FDCPA, including, but not limited to, 15 U.S.C. §§1692b, 1692b(1), 1692b(2), 1692c(b), 1692d, 1692e, 1692e(4), 1692e(10) and 1692f, it also violates California Civil Code §1788.17.

39. The actions of the Defendant during this May 27, 2003 telephone call violated California Civil Code §§1788.10(e), and 1788.12(b).

40. On or about July 15, 2003, the Defendant again telephoned the home of Plaintiff's mother and spoke with his mother concerning the alleged debt.

41. During this conversation, the Defendant disclosed that they were calling to collect an alleged debt owed by the Plaintiff and other personal information about the debt and the Plaintiff. The Defendant then demanded the mother pay the Plaintiff's debt. The Plaintiff's mother refused to pay. The Defendant again told the mother that they were about to bring a lawsuit against the Plaintiff. The Plaintiff's mother then demanded Defendant stop calling her.

42. The actions of the Defendant during this July 15, 2003 telephone call violated 15 U.S.C. §§1692b, 1692b(1), 1692b(2), 1692b(3), 1692c(b), 1692d, 1692e, 1692e(4), 1692e(10) and 1692f.

43. Because this communication violates the FDCPA, including, but not limited to, 15 U.S.C. §§1692b, 1692b(1), 1692b(2), 1692c(b), 1692d, 1692e, 1692e(4), 1692e(10) and 1692f, it also violates California Civil Code §1788.17.

44. The actions of the Defendant during this July 15, 2003 telephone call violated California Civil Code §§1788.10(e), and 1788.12(b).

### CAUSES OF ACTION CLAIMED BY THE PLAINTIFF

### COUNT I

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

### 15 U.S.C. §1692 et seq.

45. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

46. The foregoing acts and omissions of the Defendant constitute numerous and multiple violations of the FDCPA, including, but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. §1692 et seq.

VERIFIED COMPLAINT FOR DAMAGES

47. As a result of Defendant's violations of the FDCPA, Plaintiff is entitled to statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. §1692k(a)(3) from this Defendant.

## COUNT II

### VIOLATION OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT

### §§1788-1788.32 (RFDCPA)

48. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

49. The foregoing acts and omissions of this Defendant constitute numerous and multiple violations of the RFDCPA.

50. As a result of this Defendant's violations of the RFDCPA, Plaintiff is entitled to statutory damages for a knowing or willful violation in the amount up to $1,000.00 pursuant to California Civil Code §1788.30(b), and reasonable attorney's fees and costs pursuant to California Civil Code §1788.30(c) from this Defendant.

## COUNT III

### INVASION OF PRIVACY

51. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

52. Defendants' actions toward Plaintiff were highly offensive and an unreasonable placement of Plaintiff in a false light.

53. Defendants' actions invaded the Plaintiff's right to privacy.

54. These actions were intentional, malicious, and willful and to the total disregard to the rights of the Plaintiff.

55. Plaintiff suffered damages in an amount in excess of $50,000 due to Defendants' invasion of his right to privacy.

56. Defendants had knowledge of the wrongfulness of their actions but acted with a conscience disregard for the truth. Such despicable conduct was engaged in such a manner constituting oppression, fraud, and malice.

1                          PRAYER FOR RELIEF

2 WHEREFORE, Plaintiff prays that judgment be entered against Defendant:

3               FAIR DEBT COLLECTION PRACTICES ACT

4      •  for an award of statutory damages of $1,000.00, pursuant to 15 U.S.C. §1692k(a)(2)(A);

5      •  for an award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C.

6        §1692k(a)(3);

7        ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT

8      •  for an award of statutory damages of $1,000.00, pursuant to California Civil Code

9        §1788.30(b);

10     •  for an award of costs of litigation and reasonable attorney's fees for, pursuant to California

11      Civil Code §1788.30(c);

12                    INVASION OF PRIVACY

13     •  an award of costs of litigation and reasonable attorney's fees as appropriate against each

14      and every Defendant;

15     •  an award of compensatory damages in the amount of $50,000.00 against each and every

16      Defendant;

17     •  an award of punitive damages in an amount to be determined at trial against each and every

18      Defendant;

19     •  any other relief that the court deems just and proper.

20                   TRIAL BY JURY

21     •  Pursuant to the Seventh Amendment to the Constitution of the United States of America, the

22      Plaintiff is entitled to, and demands, a trial by jury.

23 Dated: 4/16/04                     Respectfully submitted,

24

25                              HYDE & SWIGART
                              By:

26

27                              Robert L. Hyde, Esq.

28                              Attorney for the Plaintiff

VERIFICATION OF COMPLAINT AND CERTIFICATION BY PLAINTIFF

STATE OF CALIFORNIA      )
                         ) ss
COUNTY OF LOS ANGELES    )

Darren D. Chaker, having first been duly sworn and upon oath, deposes and says as follows:

1. I am the Plaintiff in this civil proceeding.

2. I have read the Civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information, and belief formed after reasonable inquiry.

3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.

4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant Direct(s), cause unnecessary delay to any Defendant Direct(s), or create a needless increase in the cost of litigation to any Defendant Direct(s), named in the Complaint.

5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.

_____
Darren D. Chaker

Subscribed and sworn to before me

this 15 day of April, 2004.

_____
Notary Public

ROBERT L. HYDE
Comm. # 1383045
NOTARY PUBLIC - CALIFORNIA
San Diego County
My Comm. Expires Nov. 3, 2006

VERIFICATION OF COMPLAINT AND CERTIFICATION BY PLAINTIFF

PO BOX 369
Concord, CA 94522

ADDRESS SERVICE REQUESTED

# Imperial Collection Services

PO BOX 369 Concord, CA 94522
Office Hours: 6:00 AM - 7:00 PM PST
1-800-210-4358

April 3, 2003

#BWNFTZF
#ICS3149616#
DARREN D CHAKER - 314961
311 N ROBERTSON BLVD # 1230
BEVERLY HILLS CA 90211-1701

Re: STERLING BANK & TRUST FSB
Reference #: 54531510039███
Debtor ID: 314961

Total: $450.47

Dear DARREN D CHAKER,

IMPERIAL COLLECTION SERVICES has been retained by STERLING BANK & TRUST FSB to collect from you the entire balance, which as of April 3, 2003 was $450.47, that you owe STERLING BANK & TRUST FSB.

Please make arrangements for payment or further collection efforts will commence.

You are directed to address all future correspondence and payments concerning this account to this address:

IMPERIAL COLLECTION SERVICES
PO BOX 369
Concord, CA 94522

**Federal law gives you thirty (30) days after you receive this letter to dispute the validity of the debt or any part of it. If you don't dispute it within that period, we'll assume that it's valid. If you do dispute it - by notifying us in writing to that effect - we will, as required by the law, obtain and mail to you proof of the debt. And if, within the same period, you request in writing the name and address of your original creditor, if the original creditor is different from the current creditor, STERLING BANK & TRUST FSB, we will furnish you with that information, too.**

The law does not require us to wait until the end of the thirty (30) day period before suing you to collect this debt. If, however, you request proof of the debt or the name and address of the original creditor within the thirty (30) day period that begins with your receipt of this letter, the law requires us to suspend our efforts (through litigation or otherwise) to collect the debt until we mail the requested information to you.

Sincerely,
DONALD BEST
Account Manager

·····························································································

***In order to credit your account properly, return this bottom portion with your payment***



Imperial Collection Services
PO BOX 369
Concord, CA 94522

Re: STERLING BANK & TRUST FSB
Reference #: 54531510039███
Debtor ID: 314961
Total: $450.47

DARREN D CHAKER
311 N ROBERTSON BLVD # 1230
BEVERLY HILLS CA 90211-1701

ICS1-4029202122-ZX03-6 2122

1032

SER 301

# DARREN D. CHAKER

April 28, 2003

Imperial Collection Services
POB 369
Concord, CA 94522

<u>SENT VIA CERTIFIED MAIL</u>
#7001 1940 0004 8850 5305

Re: Acct # 54531510039████[SS# ███-██-████]

To Whom It May Concern:

I am requesting written verification of the alleged debt I owe your company by requesting a copy of the contract. If the above account numbers are incorrect, I ask you utilize the social security number as a reference to locate any defaulted loan(s). As you know, I am entitled to dispute and obtain the verification information requested (See generally 15 USC 1692g(b).) It is my right to have the collection agency remit verified physical documentation pertaining to the alleged debt. (See, 15 USC 1692g(a)(4), *Moore v. Ingram & Assoc. 805 F.Supp (D.S.C. 1992), Masuda v. Thomas Richards & Co. 759 F.Supp. 1456 (C.D. Cal. 1991).*) Thus, please remit (1) physical documentation of the alleged debt(s) or remit (2) written verification that your company will notify the credit bureaus the debt is not verified since there is no contract obligating me to pay your company and that said information is to be removed. Simply stating, 'account in dispute' will not suffice. The account is either verified or REMOVED.

Additionally, if your company fails to provide a copy of the contract or other physical documentation, or notify the credit bureaus to remove the debt, it shall be presumed you have, either negligently or intentionally, refused to comply with the FCRA and/or the FDCPA. Furthermore, regardless if the aforementioned debt is not-valid this does <u>not</u> negate this request since a debtor has standing to complain of violations of Fair Debt Collection Practices Act (15 USCS §§ 1692 et seq.) regardless of whether valid debt exists. *Baker v G. C. Services Corp. (1982, CA9 Or) 677 F2d 775.* Inasmuch, a single violation of <u>any</u> provision of Fair Debt Collection Practices Act (15 USCS §§ 1692 et seq.) is sufficient to establish civil liability under Act, since 15 USCS § 1692k establishes civil liability for any debt collector who fails to comply with <u>any</u> provision of the Act. *Taylor v Perrin, Landry, deLaunay & Durand (1997, CA5 La) 103 F3d 1232.* Accordingly, please remit the above replies forthwith.

Accordingly, I urge you to not push this matter aside as I have kept careful logs and documentation of my efforts to remedy this matter in an amicable non-litigating manner. However, if your company refuses to notify the credit bureaus to remove this invalid debt, then I will be forced to seek legal avenues to remedy this matter. I will expect your reply within a timely manner not to exceed 30 days or other time limits set by California law and the FCRA if sooner than 30 days.

Sincerely,

Darren D. Chaker



311 N. ROBERTSON BLVD. #1230 • BEVERLY HILLS, CA • 90211

# IMPERIAL

### P. O. Box 369
### Concord, CA 94522

(800) 210-4358 Fax (925) 677-0873

May 5, 2003

Darren Chaker
311 N. Robertson #1230
Beverly Hills, CA 90211

Our Client: Sterling Bank
Account #: 5453151
Balance Owing: $450.00

**Imperial Collection Services**, acting as representative for **Sterling Bank** has agreed to accept **$180.19** to settle for the above referenced account.

This offer is contingent upon the receipt of a lump sum payment in the amount of **$180.19** due no later than **05/25/03**. Please make check(s) payable to **Sterling Bank** and remit payments to our office at the address listed above.

Upon satisfaction of terms and clearance of funds, **Sterling Bank** agrees to fully release you of any further liability in the above referenced obligation. Please contact me at **1-800-210-4358 ext. 2151** if you have any questions.

Sincerely,

Leah Jones
Account Manager

**This is an attempt to collect a debt. Any information will be used for that purpose. This communication is from a debt Collector.**

LJ121/da

Exhibit G

1  **Robert Stempler**, Cal. Bar No. 160299
   CONSUMER AND TAX LAW OFFICE OF
2  ROBERT STEMPLER, APLC
   777 East Tahquitz Canyon Way, Suite 200
3  Palm Springs, California 92262-6797

4  Telephone (760) 422-2200
   Facsimile (760) 422-2820

5

6  Counsel of Record for Plaintiff

7

8          UNITED STATES DISTRICT COURT

9          CENTRAL DISTRICT OF CALIFORNIA

10

11  DARREN DEL NERO,      )  Case No. CV **LACV03-6511GHK**

12       Plaintiff,      )  COMPLAINT FOR VIOLATING THE **(RZ**
                 )  FAIR DEBT COLLECTION PRACTICES
13     vs.        )  ACT
                 )
14  RIDDLE & ASSOCIATES, P.C.; )  and DEMAND FOR JURY TRIAL
   NCO PORTFOLIO       )
15  MANAGEMENT, INC.;    )
   NCO FINANCIAL SYSTEMS, )
16  INC.;             )
   and DOES 1 to 10;    )
17                 )
       Defendants.   )
18

19

20

21              <u>Jurisdiction and Venue</u>

22     1.   Jurisdiction of this court arises under 15 U.S.C. § 1692k(d) and 28

23  U.S.C. § 1331. Venue is proper as many of the relevant events occurred within Los

24  Angeles county, which is located within this District.

25     2.   This is an action for damages brought by a consumer for violating the

26  federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 - 1692o [hereinafter

27  "FDCPA")], a body of laws prohibiting debt collectors from engaging in abusive,

28  deceptive, and unfair practices.

Stamps:
FILED 2003 SEP 11 PM 2:39 CLERK U.S. DISTRICT COURT CENTRAL DIST. OF CALIF. LOS ANGELES BY _____

ENTERED ON ICMS SEP 1 5 2003 CV

3.      The plaintiff, DARREN DEL NERO ["plaintiff"] is a natural person residing within Los Angeles county, California.

4.      Defendants RIDDLE & ASSOCIATES, P.C. and ["Riddle"] was, at all times relevant to this complaint, a corporation, engaged primarily in the business of collecting debts, with its principal place of business in the state of Utah.

5.      Defendant NCO PORTFOLIO MANAGEMENT, INC. ["NCO Port"] was, at all times relevant to this complaint, an entity, engaged primarily in the business of collecting debts, with Riddle as its agent for purposes of the debt related to a purported debt assigned by Wells Fargo Bank that purports to be a liability of the plaintiff.

6.      Defendant NCO FINANCIAL SYSTEMS, INC. ["NCO Fin"] was, at all times relevant to this complaint, an entity related to NCO Port, engaged primarily in the business of collecting debts.

7.      The true names and capacities of the defendants sued herein as DOES 1-10, inclusive, are unknown to plaintiff, at the present time.

Facts Supporting Each Claim

8.      By certified mail letter sent on January 7, 2003, plaintiff notified Riddle that he disputed the debt Riddle was attempting to collect.

9.      In a letter dated January 14, 2003, Riddle notified plaintiff that it represented NCO Port on a debt assigned by Wells Fargo Bank.

10.     Riddle's letter indicated it was in reference to 7554979.

11.     Riddle's letter suggests that it is a firm of lawyers, but it is not signed and there no indication that a lawyer reviewed the file prior to sending the letter.

12.     Within 30 days of plaintiff's being contacted by Riddle (and NCO Port), plaintiff sent Riddle a letter requesting verification and informing Riddle (and NCO Port) that plaintiff disputed the debt.

- 2 -

13. Neither Riddle nor NCO Port sent plaintiff a verification of the purported debt.

14. After Riddle received plaintiff's letter requesting verification and informing Riddle (and NCO Port) that plaintiff disputed the debt, Riddle continued to attempt to collect the debt by trying to call plaintiff at his mother's residence.

15. On or about January 16, 2003, a woman called plaintiff's mother's house and asked for plaintiff; the caller stated that she was a collection agent of Riddle.

16. Plaintiff's mother asked the woman caller the nature of the call, and the agent of Riddle stated that it pertained to plaintiff's debt, that she wanted to propose a discount offer to settle it.

17. Plaintiff's mother asked the woman agent to stop calling her house, as plaintiff did not reside there.

18. On or about January 30, 2003, a man called plaintiff's mother's house and asked for plaintiff; the caller stated that he was an agent of Riddle.

19. The Riddle agent stated that if plaintiff paid a lump sum, that Riddle would give a 50% discount from the debt, and that he was short of his quota, and that this offer may be taken just this once.

20. Plaintiff's mother asked the man agent to stop calling her house, as plaintiff did not reside there, but the agent persisted in asking for plaintiff's location and stated that if plaintiff's mother wants the calls to stop, that plaintiff must pay off this debt and now is the perfect time to do so.

21. On or about February 7 and 13, 2003, a woman called plaintiff's mother's house and said that it was an emergency that plaintiff contact her; when plaintiff's mother asked about the nature of the emergency, the woman said that she was an agent of Riddle and that a lawsuit was going to be filed against plaintiff, if plaintiff does not call right back.

- 3 -

22. Plaintiff's mother asked why Riddle refused to respect her request that Riddle stop calling her house, when plaintiff does not live there; the agent responded that the calls are for plaintiff's benefit and he can have a good credit rating if the debt is paid.

23. Plaintiff's mother then demanded that Riddle stop calling her house or she would report it to the police, to which the agent retorted that Riddle makes the "difficult calls" with a calling card, so there is no trace on their phone bills.

24. In a letter dated February 9, 2003, plaintiff disputed a purported debt that NCO Fin was attempting to collect.

25. NCO Fin responded in a letter dated February 28, 2003, acknowledging plaintiff's February 9, 2003 request for verification of the debt, but NCO Fin failed to provide any such verification.

26. NCO Fin, despite plaintiff's dispute and verification letter, continues to report its account number 601132641 to certain credit reporting agencies, which NCO Fin purports relates to CitiBank.

### FIRST CLAIM FOR RELIEF

#### Violating the Fair Debt Collection Practices Act

##### As to All Defendants

27. Those paragraphs under the headings "Jurisdiction and Venue" and "Facts Supporting Each Claim" are incorporated by reference herein.

28. Plaintiff is a "consumer," as defined by FDCPA § 803, codified at 15 U.S.C. § 1692a(3).

29. Wells Fargo Bank and CitiBank are each a "creditor," as defined by FDCPA § 803, codified at 15 U.S.C. § 1692a(4).

30. The purported contract between plaintiff and Wells Fargo Bank and the debt that Riddle and NCO Port claim plaintiff owes is a debt, as defined by FDCPA § 803, codified at 15 U.S.C. § 1692a(5).

- 4 -

31. The purported contract between plaintiff and CitiBank and the debt that NCO Fin claims plaintiff owes is a debt, as defined by FDCPA § 803, codified at 15 U.S.C. § 1692a(5).

32. Riddle, NCO Port, and NCO Fin are each a "debt collector," as defined by FDCPA § 803, codified at 15 U.S.C. § 1692a(6).

33. The above-noted purported debts were purportedly incurred by plaintiff for personal, family, or household purposes, i.e., personal charges to a non-business credit card.

34. The defendants violated the FDCPA in the following ways:

a. Violations of § 1692c(3) by communicating with any person other than the consumer, without the consumer's consent, in particular with plaintiff's mother.

b. Violations of § 1692e for using false, deceptive, or misleading representations or means to collect a debt by making false representations of attorney involvement in reviewing the file and preparing the letter.

c. Violations of § 1692e(3) by making false representations or implications the a communication is from an attorney by making false representations of attorney involvement in reviewing the file and preparing the letter.

d. Violations of § 1692e(5) by threatening to take any action that is not intended to be taken, such as to file suit against plaintiff.

e. Violations of § 1692e(5) by threatening to take any action that cannot legally be taken, such as to remove a trade line from plaintiff's credit report for settlement of the debt.

f. Violations of § 1692e(10) by the use of any false representations or deceptive means to collect or attempt to collect any debt by

- 5 -

1   making false representations of attorney involvement in

2   reviewing the file and preparing the letter.

3   g.   Violations of § 1692g by failing to cease collection of the debt

4        after receiving written notice from plaintiff that the debt is

5        disputed and verification requested, without mailing verification

6        of the debt to the plaintiff, in that the defendants continued to

7        communicate with plaintiff, plaintiff's mother, and/or to report

8        the debt to credit reporting agencies.

9   35.   The foregoing violations of the FDCPA are among the defendants'

10  practices towards numerous consumers, such as plaintiff, for which the defendants'

11  are motivated by enhanced profits and collections without resorting to litigation.

12

13  WHEREFORE, plaintiff prays for judgment as follows:

14  1.   On the First Claim for the defendants' violating the Fair Debt

15  Collection Practices Act, pursuant to 15 U.S.C. § 1692(a), an award of actual (for

16  purposes of a default judgment, plaintiff demands damages of $5000) and statutory

17  damages, injunctive relief, costs and reasonable attorneys' fees;

18  2.   And for such other and further relief as the court deems proper.

19

20  Dated: September 9, 2003              CONSUMER AND TAX LAW OFFICE OF
                                          ROBERT STEMPLER, APLC
21

22

23                                        By: Robert Stempler,
                                          Counsel of Record for Plaintiff
24

25

26

27

28

- 6 -

SER 284

1 | <u>DEMAND FOR JURY TRIAL</u>

2 | Please take notice that the plaintiff demands trial by jury in this action.

3 |

4 | Dated: September 9, 2003        CONSUMER AND TAX LAW OFFICE OF
ROBERT STEMPLER, APLC

5 |

6 |

7 | By: Robert Stempler,
Counsel of Record for Plaintiff

- 7 -

SER 285

ex. 26

2003 SEP 11 PM 2:39
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY ___
FILED

1  **Robert Stempler**, Cal. Bar No. 160299
   CONSUMER AND TAX LAW OFFICE OF
2  ROBERT STEMPLER, APLC
   777 East Tahquitz Canyon Way, Suite 200
3  Palm Springs, California 92262-6797

4  Telephone (760) 422-2200
   Facsimile (760) 422-2820
5

6  Counsel of Record for Plaintiff

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11  DARREN DEL NERO,                    )  Case No. CV  LACV03-6511GHK
                                        )                              (RZ)
12          Plaintiff,                  )  COMPLAINT FOR VIOLATING THE
                                        )  FAIR DEBT COLLECTION PRACTICES
13      vs.                             )  ACT
                                        )
14  RIDDLE & ASSOCIATES, P.C.;          )  and DEMAND FOR JURY TRIAL
    NCO PORTFOLIO                       )
15  MANAGEMENT, INC.;                   )
    NCO FINANCIAL SYSTEMS,              )
16  INC.;                              )
    and DOES 1 to 10;                  )
17                                      )
            Defendants.                 )
18

19

20                          ENTERED ON ICMS

21                              SEP 1 5 2003

                                CV

21                      <u>Jurisdiction and Venue</u>

22      1.    Jurisdiction of this court arises under 15 U.S.C. § 1692k(d) and 28

23  U.S.C. § 1331.  Venue is proper as many of the relevant events occurred within Los

24  Angeles County, which is located within this District.

25      2.    This is an action for damages brought by a consumer for violating the

26  federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 - 1692o [hereinafter

27  "FDCPA")], a body of laws prohibiting debt collectors from engaging in abusive,

28  deceptive, and unfair practices.

                                    - 1 -

3.     The plaintiff, DARREN DEL NERO ["plaintiff"] is a natural person residing within Los Angeles county, California.

4.     Defendants RIDDLE & ASSOCIATES, P.C. and ["Riddle"] was, at all times relevant to this complaint, a corporation, engaged primarily in the business of collecting debts, with its principal place of business in the state of Utah.

5.     Defendant NCO PORTFOLIO MANAGEMENT, INC. ["NCO Port"] was, at all times relevant to this complaint, an entity, engaged primarily in the business of collecting debts, with Riddle as its agent for purposes of the debt related to a purported debt assigned by Wells Fargo Bank that purports to be a liability of the plaintiff.

6.     Defendant NCO FINANCIAL SYSTEMS, INC. ["NCO Fin"] was, at all times relevant to this complaint, an entity related to NCO Port, engaged primarily in the business of collecting debts.

7.     The true names and capacities of the defendants sued herein as DOES 1-10, inclusive, are unknown to plaintiff, at the present time.

<u>Facts Supporting Each Claim</u>

8.     By certified mail letter sent on January 7, 2003, plaintiff notified Riddle that he disputed the debt Riddle was attempting to collect.

9.     In a letter dated January 14, 2003, Riddle notified plaintiff that it represented NCO Port on a debt assigned by Wells Fargo Bank.

10.    Riddle's letter indicated it was in reference to 7554979.

11.    Riddle's letter suggests that it is a firm of lawyers, but it is not signed and there no indication that a lawyer reviewed the file prior to sending the letter.

12.    Within 30 days of plaintiff's being contacted by Riddle (and NCO Port), plaintiff sent Riddle a letter requesting verification and informing Riddle (and NCO Port) that plaintiff disputed the debt.

- 2 -

13.     Neither Riddle nor NCO Port sent plaintiff a verification of the purported debt.

14.     After Riddle received plaintiff's letter requesting verification and informing Riddle (and NCO Port) that plaintiff disputed the debt, Riddle continued to attempt to collect the debt by trying to call plaintiff at his mother's residence.

15.     On or about January 16, 2003, a woman called plaintiff's mother's house and asked for plaintiff; the caller stated that she was a collection agent of Riddle.

16.     Plaintiff's mother asked the woman caller the nature of the call, and the agent of Riddle stated that it pertained to plaintiff's debt, that she wanted to propose a discount offer to settle it.

17.     Plaintiff's mother asked the woman agent to stop calling her house, as plaintiff did not reside there.

18.     On or about January 30, 2003, a man called plaintiff's mother's house and asked for plaintiff; the caller stated that he was an agent of Riddle.

19.     The Riddle agent stated that if plaintiff paid a lump sum, that Riddle would give a 50% discount from the debt, and that he was short of his quota, and that this offer may be taken just this once.

20.     Plaintiff's mother asked the man agent to stop calling her house, as plaintiff did not reside there, but the agent persisted in asking for plaintiff's location and stated that if plaintiff's mother wants the calls to stop, that plaintiff must pay off this debt and now is the perfect time to do so.

21.     On or about February 7 and 13, 2003, a woman called plaintiff's mother's house and said that it was an emergency that plaintiff contact her; when plaintiff's mother asked about the nature of the emergency, the woman said that she was an agent of Riddle and that a lawsuit was going to be filed against plaintiff, if plaintiff does not call right back.

- 3 -

22. Plaintiff's mother asked why Riddle refused to respect her request that Riddle stop calling her house, when plaintiff does not live there; the agent responded that the calls are for plaintiff's benefit and he can have a good credit rating if the debt is paid.

23. Plaintiff's mother then demanded that Riddle stop calling her house or she would report it to the police, to which the agent retorted that Riddle makes the "difficult calls" with a calling card, so there is no trace on their phone bills.

24. In a letter dated February 9, 2003, plaintiff disputed a purported debt that NCO Fin was attempting to collect.

25. NCO Fin responded in a letter dated February 28, 2003, acknowledging plaintiff's February 9, 2003 request for verification of the debt, but NCO Fin failed to provide any such verification.

26. NCO Fin, despite plaintiff's dispute and verification letter, continues to report its account number 601132641 to certain credit reporting agencies, which NCO Fin purports relates to CitiBank.

## FIRST CLAIM FOR RELIEF

### Violating the Fair Debt Collection Practices Act

### As to All Defendants

27. Those paragraphs under the headings "Jurisdiction and Venue" and "Facts Supporting Each Claim" are incorporated by reference herein.

28. Plaintiff is a "consumer," as defined by FDCPA § 803, codified at 15 U.S.C. § 1692a(3).

29. Wells Fargo Bank and CitiBank are each a "creditor," as defined by FDCPA § 803, codified at 15 U.S.C. § 1692a(4).

30. The purported contract between plaintiff and Wells Fargo Bank and the debt that Riddle and NCO Port claim plaintiff owes is a debt, as defined by FDCPA § 803, codified at 15 U.S.C. § 1692a(5).

- 4 -

SER 289

31.     The purported contract between plaintiff and CitiBank and the debt that NCO Fin claims plaintiff owes is a debt, as defined by FDCPA § 803, codified at 15 U.S.C. § 1692a(5).

32.     Riddle, NCO Port, and NCO Fin are each a "debt collector," as defined by FDCPA § 803, codified at 15 U.S.C. § 1692a(6).

33.     The above-noted purported debts were purportedly incurred by plaintiff for personal, family, or household purposes, i.e., personal charges to a non-business credit card.

34.     The defendants violated the FDCPA in the following ways:

a.      Violations of § 1692c(3) by communicating with any person other than the consumer, without the consumer's consent, in particular with plaintiff's mother.

b.      Violations of § 1692e for using false, deceptive, or misleading representations or means to collect a debt by making false representations of attorney involvement in reviewing the file and preparing the letter.

c.      Violations of § 1692e(3) by making false representations or implications the a communication is from an attorney by making false representations of attorney involvement in reviewing the file and preparing the letter.

d.      Violations of § 1692e(5) by threatening to take any action that is not intended to be taken, such as to file suit against plaintiff.

e.      Violations of § 1692e(5) by threatening to take any action that cannot legally be taken, such as to remove a trade line from plaintiff's credit report for settlement of the debt.

f.      Violations of § 1692e(10) by the use of any false representations or deceptive means to collect or attempt to collect any debt by

- 5 -

SER 290

making false representations of attorney involvement in reviewing the file and preparing the letter.

g. Violations of § 1692g by failing to cease collection of the debt after receiving written notice from plaintiff that the debt is disputed and verification requested, without mailing verification of the debt to the plaintiff, in that the defendants continued to communicate with plaintiff, plaintiff's mother, and/or to report the debt to credit reporting agencies.

35. The foregoing violations of the FDCPA are among the defendants' practices towards numerous consumers, such as plaintiff, for which the defendants' are motivated by enhanced profits and collections without resorting to litigation.

WHEREFORE, plaintiff prays for judgment as follows:

1. On the First Claim for the defendants' violating the Fair Debt Collection Practices Act, pursuant to 15 U.S.C. § 1692(a), an award of actual (for purposes of a default judgment, plaintiff demands damages of $5000) and statutory damages, injunctive relief, costs and reasonable attorneys' fees;

2. And for such other and further relief as the court deems proper.

Dated: September 9, 2003

CONSUMER AND TAX LAW OFFICE OF
ROBERT STEMPLER, APLC

By: Robert Stempler,
Counsel of Record for Plaintiff

- 6 -

<u>DEMAND FOR JURY TRIAL</u>

Please take notice that the plaintiff demands trial by jury in this action.

Dated: September 9, 2003    CONSUMER AND TAX LAW OFFICE OF
            ROBERT STEMPLER, APLC

            By: Robert Stempler,
            Counsel of Record for Plaintiff

- 7 -

SER 292

Exhibit H

1           UNITED STATES OF AMERICA

2         UNITED STATES DISTRICT COURT

3        CENTRAL DISTRICT OF CALIFORNIA

4            CENTRAL DIVISION
                  - - -
5       HONORABLE GEORGE P. SCHIAVELLI
      UNITED STATES DISTRICT JUDGE PRESIDING
6                 - - -

7

8   DARREN DEL NERO, ET AL.,        )
                                    )
9           PLAINTIFF,              )
                                    )
10  VS.                            ) CV 04-1040-GPS(SHX)
                                    )
11  MIDLAND CREDIT MANAGEMENT,     )  **(PAGES 25-33 SEALED)**
    INC., ET AL.,                   )
12                                  )
            DEFENDANTS.             )
13  _____)

14

15

         _TRIAL PROCEEDINGS - DAY 2_
16
          LOS ANGELES, CALIFORNIA
17
        WEDNESDAY, MARCH 16, 2005
18

19

20

21

22

           ROSALYN ADAMS, CSR 11794
23          OFFICIAL COURT REPORTER
          100 UNITED STATES COURTHOUSE
24      312 NORTH SPRING STREET, ROOM 410
         LOS ANGELES, CALIFORNIA 90012
25            (213) 894-2665

```
 1    LOS ANGELES, CALIFORNIA; WEDNESDAY, MARCH 16, 2005; 9:00 A.M.

 2                          --OOO--

 3

 4

 5         THE CLERK:  IN THE MATTER OF CIVIL TRIAL, CV

 6    04-1040-GPS(SHX): DARREN DEL NERO, ET AL. V. MIDLAND CREDIT

 7    MANAGEMENT INC., ET AL., JURY TRIAL, SECOND DAY.

 8              COUNSEL, STATE YOUR APPEARANCES.

 9         MR. SWIGART:  GOOD MORNING, YOUR HONOR.  JOSH

10    SWIGART ON BEHALF OF THE PLAINTIFF, DARREN DEL NERO.

11         MR. HYDE:  GOODE MORNING, YOUR HONOR.  ROBERT HYDE

12    ON BEHALF OF THE PLAINTIFF, DARREN DEL NERO.

13         MR. TURNER:  GOOD MORNING, YOUR HONOR.  STEPHEN

14    TURNER ON BEFORE OF MIDLAND CREDIT MANAGEMENT.

15         MS. NEFULDA:  GOOD MORNING, YOUR HONOR.  LARISSA

16    NEFULDA ON BEHALF OF MIDLAND CREDIT MANAGEMENT.

17         MR. TURNER:  YOUR HONOR, MR. FRARY FROM MIDLAND

18    CREDIT MANAGEMENT IS PRESENT AS WELL.

19         THE COURT:  THE JURORS ARE ALL PRESENT, IN THEIR

20    SEATS.  GOOD MORNING, LADIES AND GENTLEMEN.  HOPE YOU'VE HAVE

21    A PLEASANT EVENING.  WE'RE READY TO RESUME.

22         PUT MS. CHAKER BACK ON THE STAND, PLEASE.

23         YOU UNDERSTAND YOU HAVE BEEN SWORN, YOU ARE STILL

24    UNDER OATH?

25         THE WITNESS:  YES.
```

```
 1    ALL THE ENTIRE STORY, BUT THAT, AGAIN, THAT WAS THE YEAR MY

 2    LITTLE SISTER DIED.  SHE WAS MUTE AND DISABLED AND SHE HAD

 3    ALL OF MY ATTENTION, AND HIS.  WE HAD WHEEL CHAIRS AND PLENTY

 4    OF THAT.  BUT IF THAT IS THE CRIME YOU'RE TALKING ABOUT, I AM

 5    A LITTLE BIT AWARE, YEAH.

 6    Q.   I WASN'T REFERRING TO ANY PARTICULAR CRIME.  I WAS JUST

 7    ASKING IF YOU WERE AWARE OF IT.

 8         WHAT WAS THE CRIME HE WAS THE VICTIM OF IN 1999?

 9    A.   WELL, THAT'S WHAT I JUST TOLD YOU.  I'M AWARE THAT THE

10    FBI WAS -- HE SEEKED (SIC) THE HELP OF THE FBI AND THEY

11    PROTECTED HIM FROM AN INDIVIDUAL.  I CAN'T RECALL EXACTLY

12    WHAT HAS HAPPENED.

13    Q.   I'M SORRY.  IT SEEMS A BIT TRAUMATIC.

14         WHAT WAS THE NAME OF INDIVIDUAL THAT HE HAD TO BE

15    PROTECTED FROM?

16    A.   I DON'T KNOW.  I DON'T KNOW.

17    Q.   YOUR UNDERSTANDING IS THAT MR. DEL NERO SOUGHT THE

18    ASSISTANCE OF THE FBI?

19    A.   MM-HUH.

20    Q.   TO PROTECT HIM FROM SOMEONE WHO WAS STALKING HIM?

21    A.   I BELIEVE SO.  I DON'T KNOW EXACTLY, YOU KNOW, THE

22    DETAILS.  LIKE I SAID, I HAD A CROSS TO BEAR AND -- I MEAN

23    DARREN AND I ARE VERY CLOSE.  LIKE WITH MY DAUGHTER, LIKE

24    WITH FRIENDS, IF THEY NEED ASSISTANCE OR HOSPITALS AND THINGS

25    LIKE THIS.  BUT I CANNOT KEEP A TAB ON HIM 24 HOURS.  I
```

```
1    IN ON THIS LINE THAT IS NOW DISCONNECTED?

2    A.   YES.

3    Q.   ON THIS PHONE LINE THAT'S BEEN DISCONNECTED, THE PHONE

4    LINE THAT YOU CAN'T REMEMBER, WAS THERE A CALLER ID BLOCKER

5    ON THAT LINE?

6    A.   I DON'T KNOW.

7    Q.   WAS THERE ANY WAY THAT WOULD PROHIBIT PHONE CALLS FROM

8    COMING IN ON THAT LINE?

9    A.   NO, NO.

10   Q.   NOW, DURING THIS TIME IN MARCH OF 2003 --

11   A.   YES.

12   Q.   -- WHAT WAS -- WHAT WAS MR. DEL NERO'S PHONE NUMBER?

13   A.   I DON'T KNOW.

14   Q.   YOU HAD NO WAY TO CALL MR. DEL NERO?

15   A.   I CAN'T RECALL HIS PHONE NUMBER, YOU KNOW, OFFHAND, LIKE

16   THAT.

17   Q.   WHAT'S MR. DEL NERO'S PHONE NUMBER NOW?

18   A.   I HAVE IT WRITTEN DOWN AT HOME.  I DON'T KNOW IT.

19   Q.   DO YOU RECALL KNOWING THE PHONE NUMBER FOR MR. DEL NERO,

20   YOUR SON, IN MARCH OF 2003?

21   A.   I CAN'T RECALL.

22   Q.   SO YOU DON'T RECALL WHETHER YOU KNEW THE PHONE NUMBER OR

23   NOT?

24   A.   NO.

25   Q.   IS IT CORRECT YOU DON'T KNOW -- YOU DON'T REMEMBER IF --
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

1   TRY THAT ONE AGAIN.

2            IS IT CORRECT YOU HAVE NO MEMORY OF WHETHER OR NOT

3   YOU KNEW MR. DEL NERO'S PHONE NUMBER IN MARCH OF 2003?

4            THE WITNESS:  CAN I EXPLAIN, YOUR HONOR?

5            THE COURT:  JUST ANSWER THE QUESTION, PLEASE.

6            THE WITNESS:  EXACTLY.  I CAN'T RECALL.

7   BY MR. TURNER:

8   Q.   OKAY.  DO YOU RECALL IF MR. DEL NERO HAD A PHONE

9   NUMBER -- IF YOU DON'T REMEMBER, DO YOU RECALL IF THE AREA

10  CODE WAS 206?

11  A.   I CAN'T RECALL.

12  Q.   DO YOU RECALL CALLING MR. DEL NERO AT ANY TIME IN

13  MARCH OF 2003?

14  A.   YES.

15  Q.   BUT YOU JUST DON'T KNOW WHAT PHONE NUMBER YOU CALLED HIM

16  AT?

17  A.   NO.

18  Q.   SO YOU RECALL -- YOU HAD A PHONE NUMBER FOR HIM AND YOU

19  COULD CALL HIM.  YOU'D HAVE TO GO LOOK AT YOUR BOOK TO

20  REMEMBER WHAT HIS PHONE NUMBER WAS.  BUT WHEN YOU LOOKED AT

21  THE BOOK, YOU COULD THEN CALL HIM IN MARCH OF 2003; IS THAT

22  CORRECT?

23  A.   THAT'S RIGHT.

24  Q.   SO WHEN DID YOU CALL HIM ABOUT THESE PHONE CALLS THAT HE

25  WAS ALLEGEDLY RECEIVING FROM MIDLAND?

```
 1    A.   WHERE DID I CALL HIM?

 2    Q.   NO.  WHEN DID YOU CALL HIM?

 3    A.   WHEN THE PHONE CALL, YOU KNOW, HAPPENED AND CAME IN.

 4    Q.   SO YOU GOT A CALL, ALLEGEDLY, FROM MIDLAND?

 5    A.   MM-HUH.

 6    Q.   YOU LOOKED AT YOUR ADDRESS BOOK AND YOU'D SEE THE NUMBER

 7    FOR YOUR SON AND YOU'D CALL HIM; IS THAT CORRECT?

 8    A.   YES.

 9    Q.   SO I BELIEVE YOUR TESTIMONY WAS THAT THE FIRST PHONE

10    CALL CAME IN ON -- WAS IT THE 3RD OF MARCH 2003?

11    A.   IS IT THE 4TH?

12    Q.   I CAN'T QUITE TELL.  WE'RE GOING TO GET TO THE NOTES A

13    LITTLE BIT LATER.

14    A.   I BELIEVE IT WAS THE 4TH.

15    Q.   EXCUSE ME.  I'M LOOKING AT THE NOTES AND I COULDN'T TELL

16    WHETHER IT STARTED ON THE THIRD OR THE 4TH.  IT SAYS THE 4TH

17    OF MARCH.

18    A.   YES, THE 4TH.  I RECEIVED THE HANG-UP CALL ON THE 3RD,

19    BUT IT WAS ON THE 4TH OF MARCH.

20    Q.   NOW, LET'S GET TO THAT HANG-UP CALL, MS. CHAKER.

21         THE FIRST PHONE CALL YOU GOT FROM MIDLAND CREDIT

22    WAS ON THE 4TH OF MARCH; IS THAT CORRECT?

23    A.   THAT'S CORRECT.

24    Q.   SO WHY DID YOU MAKE THE NOTATION ABOUT A HANG-UP CALL.

25    A.   I JUST MADE IT.
```

```
 1    CALLS WHICH WERE ALLEDGEDLY MADE BY MIDLAND CREDIT

 2    MANAGEMENT, DID IT?

 3    A.   NOT THAT I KNOW OF.

 4    Q.   IT HAD NOTHING WHATSOEVER TO DO WITH IT, DID IT?

 5    A.   YES.

 6    Q.   NOW, MRS. CHAKER, IN YOUR ADDRESS BOOK -- DO YOU HAVE

 7    ANY PHONE NUMBERS IN THAT ADDRESS BOOK?

 8    A.   YES.

 9    Q.   DO YOU HAVE A PHONE NUMBER FOR MR. DEL NERO IN THE

10    ADDRESS BOOK?

11    A.   MAYBE.

12    Q.   COULD YOU TAKE A LOOK AND SEE IF YOU HAVE A PHONE NUMBER

13    FOR HIM.

14    A.   A CELL PHONE OR A REGULAR NUMBER?

15    Q.   TELL ME EVERY PHONE NUMBER YOU HAVE FOR MR. DEL NERO IN

16    YOUR ADDRESS BOOK.

17    A.   SO FAR, I SEE ONE.

18    Q.   OKAY.

19    A.   DO YOU WANT TO HAVE IT?

20    Q.   YES, VERY MUCH.  THANK YOU, MS. CHAKER.

21         WHAT IS THE CELL PHONE NUMBER?

22    A.   IT'S 206-333-6880.

23    Q.   6-8-8-0?

24    A.   MM-HUH.

25    Q.   ARE THERE ANY OTHER TELEPHONE NUMBERS THERE FOR MR. DEL
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

Case 3:16-cv-02186-WQH-MDD Document 137-1 Filed 09/29/22 PageID.5881 Page 1065 of
1196
Case 2:06-cv-01020-MCE-KJM Document 262-1 Filed 03/23/07 PageID.28130 Page 35 of
1191
38

1   NERO?

2   A.   NOT THAT I SEE.

3   Q.   WOULD THERE BE ANY PHONE NUMBERS LISTED FOR HIM UNDER

4   THE NAME OF "DARREN CHAKER"?

5   A.   NO.  I LIST HIM ONLY UNDER "DARREN."

6   Q.   YOU LIST HIM UNDER DARREN -- EXCUSE ME -- OF COURSE.

7        SO, NOW, DOES THIS REFRESH YOUR RECOLLECTION AS TO

8   THE NUMBER YOU CALLED MR. DEL NERO AT WHEN YOU TRIED TO REACH

9   HIM?

10  A.   TO TELL YOU THE TRUTH, NO.

11  Q.   BUT THAT'S THE ONLY PHONE NUMBER YOU HAVE IN YOUR DAY

12  PLANNER; IS THAT CORRECT?

13  A.   IN THIS -- YEAH, IN THIS ONE.  BUT IT DOESN'T, YOU

14  KNOW -- PERHAPS IT IS, BUT I CANNOT DEFINITELY BE SURE.

15  Q.   SURE.  NOW, DO YOU HAVE OTHER ADDRESS BOOKS WHERE YOU

16  HAVE OTHER PHONE NUMBERS?

17  A.   PERHAPS AT HOME.

18  Q.   BUT YOU DON'T REMEMBER?

19  A.   NO.

20  Q.   SO, AS FAR AS YOU KNOW, THE ONLY ADDRESS BOOK THAT YOU

21  CAN REMEMBER TODAY FOR THE JURY IS THIS ONE THAT HAS THE ONE

22  PHONE NUMBER FOR MR. DEL NERO?

23  A.   YES.

24  Q.   DO YOU HAPPEN TO KNOW WHY MR. DEL NERO WOULD HAVE A 206

25  AREA CODE FOR HIS CELL PHONE?

Case 2:04-cv-09049-DOC-RNB Document 127-1 Filed 09/29/22 Page 1066 of 1196
Case 2:16-cv-03186-WQH-MDD Document 462-1 Filed 09/23/17 PageID.5883 Page 89 of 112

39

```
 1    A.    YOU CAN HAVE ANY PREFIX.

 2    Q.    THE ANSWER IS "NO," YOU DON'T KNOW?

 3    A.    NO.

 4    Q.    DO YOU KNOW IF MR. DEL NERO LIVED IN THE 206 AREA-CODE

 5    AREA?

 6    A.    WHERE IS THAT?

 7    Q.    IT'S IN SEATTLE, ACTUALLY.

 8    A.    I HAVE NO IDEA.

 9    Q.    YOU DON'T KNOW WHETHER HE WAS LIVING IN SEATTLE AT SOME

10    POINT IN HIS LIFE?

11    A.    IF HE WAS IN LOVE, MAYBE HE WAS LIVING THERE, I DON'T

12    KNOW -- OR DOING BUSINESS OR SOMETHING.

13    Q.    WHAT BUSINESS DOES HE DO?

14    A.    I DON'T KNOW.  HE MANAGED AN APARTMENT BUILDING, A BIG

15    UNIT; AND OTHER THINGS.

16    Q.    HE MANAGED AN EIGHT-UNIT APARTMENT BUILDING?

17    A.    MM-HUH.

18    Q.    IS THAT "YES"?

19    A.    YES.

20    Q.    AND WHERE WAS THAT APARTMENT BUILDING LOCATED?

21    A.    I DON'T KNOW.

22    Q.    WAS IT LOCATED IN SEATTLE?

23    A.    I HAVE NO IDEA.

24    Q.    WAS IT LOCATED IN SAN DIEGO?

25          MR. HYDE:  OBJECTION, YOUR HONOR.  ASKED AND
```

```
 1   ANSWERED.

 2           THE COURT:  OVERRULED.

 3           MR. TURNER:  I'LL MOVE IT ALONG, YOUR HONOR.

 4           THE COURT:  CAN WE HAVE THE ANSWER TO THE LAST

 5   QUESTION.

 6           MR. TURNER:  I'LL GET TO THE LAST QUESTION AND

 7   WE'LL MOVE ON.

 8   Q.   WAS IT IN SAN DIEGO?

 9   A.   I DON'T KNOW.

10   Q.   HOW DO YOU KNOW HE WAS THE MANAGER OF AN APARTMENT

11   BUILDING?

12   A.   I HEARD ABOUT IT, AND HE TOLD ME ABOUT IT.  HE WAS

13   DISCUSSING --

14   Q.   YOU HEARD -- I'M SORRY, I INTERRUPTED YOU.  I APOLOGIZE.

15           YOU HEARD ABOUT IT HOW, MS. CHAKER?

16   A.   FROM A FRIEND THAT WAS VISITING.  HE'S LIKE A FATHER TO

17   HIM.

18   Q.   WHO IS THAT FRIEND?

19   A.   CHRIS ROSE.  HIS NAME IS CHRIS.

20   Q.   AND HIS LAST NAME?

21   A.   ROSE.

22           THE COURT:  COULD YOU SPELL THAT FOR THE RECORD.

23   IS THAT "K" OR "C"?

24           THE WITNESS:  C-H-R-I-S, R-O-S-E.

25   BY MR. TURNER:
```

```
 1    EXACTLY RECALL.

 2    Q.   WHO WAS HIS GIRLFRIEND IN 2003?

 3    A.   I DON'T RECALL.

 4    Q.   SO -- BUT YOU DO RECALL CALLING HIM ON THE 4TH

 5    REGARDING -- ON THE 206 LINE; IS THAT CORRECT?

 6    A.   YES.

 7    Q.   WHAT DID YOU SAY TO HIM ON THE 4TH?

 8    A.   I DIDN'T.  I COULDN'T REACH HIM.

 9    Q.   SO YOU TRIED TO CALL HIM ON THE 4TH?

10    A.   I TRIED.

11    Q.   YOU TRIED TO CALL HIM ON THE 206 LINE?

12    A.   I CAN'T RECALL IF IT WAS THE 206.  I KNOW THAT THE

13    NUMBER IS HERE, BUT IT ISN'T IN MY NOTES, YOU KNOW, THAT I

14    TOOK DOWN.

15    Q.   DID YOU LEAVE A MESSAGE FOR HIM?

16    A.   I CAN'T RECALL.

17    Q.   IF YOU ABSOLUTELY HAD TO FIND OUT THE PHONE NUMBER FOR

18    THIS DISCONNECTED PHONE LINE, HOW WOULD YOU DO IT?

19    A.   BY LOOKING FOR IT.  I DON'T KNOW HOW.

20    Q.   AND WHERE WOULD YOU LOOK?  FOR THE BOXES, OR WHERE?

21    A.   IN BOXES, OR CALL UP THE PHONE COMPANY.

22    Q.   I NEED TO CLARIFY A COUPLE OF ISSUES NOW ABOUT WHERE

23    EXACTLY MR. DEL NERO LIVES.

24         I WAS STILL UNCERTAIN AS TO WHETHER OR NOT HE STILL

25    LIVES WITH YOU AT THE STADIUM STREET ADDRESS.  DOES HE?
```

1    A.  NO, HE DOESN'T.

2    Q.  DO YOU KNOW WHERE HE LIVES?

3    A.  AS FAR AS I'M CONCERNED, IN LOS ANGELES.

4    Q.  DO YOU KNOW WHERE IN LOS ANGELES?

5    A.  I'M NOT SUPPOSED TO KNOW A LOT BECAUSE HE'S ON A CERTAIN

6    PROGRAM THAT HE'S TOTALLY PROTECTED, YOU KNOW.  I SHOULD

7    RESPECT AT LEAST THAT MUCH.  I DON'T COME TO LOS ANGELES THAT

8    OFTEN.

9    Q.  I'M SORRY.  HE'S IN SOME KIND OF PROGRAM?

10   A.  YEAH.

11   Q.  AND WHAT IS THAT PROGRAM?

12   A.  I DON'T KNOW.

13   Q.  HOW DO YOU KNOW HE'S IN A PROGRAM?

14   A.  BECAUSE HE SAID, "I CAN'T GIVE YOU ADDRESSES," AND SO

15   ON.  "THE FBI HELPED ME OUT AND THEY PUT ME IN A CERTAIN

16   PROGRAM."  I DON'T UNDERSTAND HOW IT GOES.

17   Q.  HE TOLD YOU HE'S IN THE WITNESS PROTECTION PROGRAM?

18   A.  HE DIDN'T SAY THAT; AND I DIDN'T SAY THAT.

19   Q.  SO YOU DON'T KNOW ABOUT THE PROGRAM?  YOU DON'T KNOW

20   WHAT KIND OF PROGRAM IT IS?

21   A.  NO.

22   Q.  SO YOU DON'T HAVE AN ADDRESS FOR MR. DEL NERO?

23   A.  NO.

24   Q.  DID HE EVER LIVE ON ROBERTSON BOULEVARD IN LOS ANGELES?

25   A.  I DON'T KNOW.

1   Q.   DOES THE ADDRESS 311 NORTH ROBERTSON BOULEVARD, NUMBER

2   1230, SOUND FAMILIAR -- IN BEVERLY HILLS -- WHERE HE MIGHT

3   LIVE?

4   A.   THE ADDRESS SOUNDS FAMILIAR.

5   Q.   HAVE YOU EVER, SINCE MR. DEL -- DID MR. DEL NERO LIVE IN

6   THE STADIUM STREET HOUSE WHEN HE WENT TO HIGH SCHOOL?

7   A.   YES.

8   Q.   NOW, AT SOME POINT HE STOPPED GOING TO HIGH SCHOOL; IS

9   THAT CORRECT?

10  A.   THAT'S CORRECT.

11  Q.   HE GRADUATED?

12  A.   MM-HUH.

13          THE COURT:  IS THAT A "YES"?

14          THE WITNESS:  YES.

15  BY MR. TURNER:

16  Q.   AFTER HE GRADUATED, DID HE GO TO COLLEGE OR GET A JOB?

17  WHAT DID HE DO?

18  A.   HE WENT TO SCHOOL AND COLLEGES.  I DON'T KNOW THEIR

19  NAMES RIGHT NOW.

20  Q.   WHILE HE WAS GOING TO COLLEGES, DID HE LIVE AT STADIUM

21  STREET OR DID HE LIVE SOMEPLACE ELSE?

22  A.   HE LIVED SOMEPLACE ELSE, IN OTHER PLACES, YOU KNOW.

23  LIKE I SAID YESTERDAY, IF HE WANTED TO COME AND SPEND A

24  COUPLE OF DAYS THAT, YOU KNOW, MY CHILDREN ARE WELCOME.  IF

25  SOMEBODY NEEDS A PLACE, DARREN WOULD COME AS WELL.

1    Q.    I UNDERSTAND THAT'S WHAT YOU SAID YESTERDAY, MS. CHAKER.

2          TODAY YOU SAID HE DOES NOT LIVE WITH YOU.  HE'S IN

3    SOME KIND OF PROGRAM.  SO LET'S IGNORE VISITING FOR A COUPLE

4    OF DAYS.

5          AFTER HE LEFT HIGH SCHOOL, DID HE EVER LIVE WITH

6    YOU?

7    A.    I BELIEVE SO.

8    Q.    AT SOME POINT HE GOT MARRIED; IS THAT CORRECT?

9    A.    I DON'T KNOW ABOUT THAT PART OF IT.

10   Q.    YOU DON'T KNOW IF HE WAS EVER MARRIED TO A WOMAN NAMED

11   BRENDA?

12   A.    BRENDA?  NO.

13   Q.    DO YOU KNOW WHETHER OR NOT YOUR SON HAS EVER BEEN

14   MARRIED, MS. CHAKER?

15   A.    I DON'T KNOW ANY BRENDA.

16   Q.    I APPRECIATE THAT.  MAYBE I GOT THE NAME WRONG.  MAYBE

17   I'M CLEARLY MISTAKEN.

18          MY QUESTION WAS:  AS HIS MOTHER, DO YOU KNOW IF

19   HE'S EVER BEEN MARRIED?

20   A.    I'M NOT SURE OF THAT.

21   Q.    DO YOU KNOW IF HE'S CURRENTLY MARRIED?

22   A.    NO.

23   Q.    YOU DON'T KNOW?

24   A.    NO.

25   Q.    DO YOU KNOW IF HE HAS ANY CHILDREN?

```
1    A.   NO.

2    Q.   YOU DON'T KNOW?

3    A.   NO.

4    Q.   LET'S GO BACK TO 2003, MARCH, THAT KEY TIME PERIOD.

5    A.   YES.

6    Q.   WE'VE ESTABLISHED THAT THERE'S A DIFFERENCE BETWEEN

7    VISITING AND LIVING AT STADIUM STREET.

8    A.   MM-HUH.

9    Q.   WAS HE LIVING AT THE STADIUM STREET HOUSE IN 2003?

10   A.   NO.  I MEAN -- NO.

11   Q.   AND YOU DON'T KNOW WHERE HE WAS LIVING AT THAT TIME?

12   A.   NO.

13   Q.   NOW, YOU TESTIFIED BOTH YESTERDAY AND TODAY ABOUT THE

14   FACT THAT YOU HAVE A VERY CLOSE RELATIONSHIP -- THAT'S THE

15   LANGUAGE I HAVE ON THE TRANSCRIPT -- AS A MOTHER SHOULD WITH

16   HER SON.

17        AND THAT'S STILL YOUR TESTIMONY, ISN'T IT?

18   A.   IT IS.

19   Q.   AND YOU TESTIFIED HE COMES BY OFTEN AND SEES YOU; IS

20   THAT CORRECT?

21   A.   THAT'S CORRECT.

22   Q.   COMES BY THE STADIUM STREET HOUSE?

23   A.   YES.

24   Q.   CALLS YOU OFTEN; IS THAT CORRECT?

25   A.   THAT'S CORRECT.
```

Case 3:16-cv-03186-WQH-MRD Document 137-1 Filed 09/29/22 PageID 5889 Page 1073 of 1196
Case 2:20-cv-03186-WQH-MRD Document 126-1 Filed 09/13/21 PageID 25180 Page 45 of 1196

78

```
1    Q.   SO YOU TRIED TO CALL MR. DEL NERO AFTER YOU GOT THIS

2    ALLEGED PHONE CALL ON THE 4TH OF MARCH; IS THAT RIGHT?

3    A.   THAT'S RIGHT.

4    Q.   SOME PHONE NUMBER FROM SOMEPLACE?

5    A.   AND LEFT A MESSAGE.

6    Q.   ON SOME PHONE NUMBER?

7    A.   YEAH.

8    Q.   DID YOU CALL ANYBODY ELSE?

9    A.   SUCH AS WHO?  FRIEND OR --

10   Q.   YOUR DAUGHTER?

11   A.   NO.

12   Q.   YOUR DAUGHTER IS A LAWYER, ISN'T SHE?

13   A.   YES.

14   Q.   AND YOU DIDN'T CALL HER, DID YOU?

15   A.   NO, I DIDN'T.

16   Q.   DID YOU CALL ANYONE ELSE?

17        THE COURT:  EXCUSE ME.  COULD I HAVE SIDEBAR,

18   PLEASE.

19                       (SIDEBAR.)

20        THE COURT:  SHE IS TALKING TO MS. CHAKER.  I'M NOT

21   GOING TO HAVE HER IN HERE.

22        MR. TURNER:  I'M SORRY?

23        THE COURT:  I WANT MS. CHAKER OUT OF HERE NOW.  SHE

24   JUST MOUTHED TO THE WITNESS "I WAS NOT" -- AND I DIDN'T CATCH

25   IT BEFORE, BUT I'M CLEAR I SAW IT.  I WANT HER OUT OF HERE
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

1   NOW, AND AT THE NEXT BREAK I'M ORDERING HER BACK IN ON A

2   POTENTIAL CONTEMPT.

3           MR. TURNER:  WHAT DO I DO NOW?

4           THE COURT:  PARDON ME.  NO.  I'M TALKING ABOUT THE

5   DAUGHTER.  THE DAUGHTER IS MOUTHING WORDS TO HER MOTHER.

6   MS. CHAKER IS SITTING OUT IN THE GALLERY AND MAKING

7   SUGGESTIONS TO HER MOTHER, AND I'M NOT GOING TO HAVE IT.  I

8   WANT TO LET THE JURY GO RIGHT NOW.  I'M GOING TO LET THE JURY

9   GO FOR LUNCH RIGHT NOW.  I WANT HER HERE.

10                      (END SIDEBAR.)

11          THE COURT:  LADIES AND GENTLEMEN OF THE JURY,

12  SOMETHING HAS JUST COME UP THAT I NEED TO TAKE CARE OF.  I'LL

13  LET YOU TAKE AN LUNCH EARLY, UNTIL 1:15.

14              (THE JURORS EXIT THE COURTROOM.)

15          MR. TURNER:  YOUR HONOR, I WANT TO MAKE SURE WE

16  KEEP THE PAGES.

17          THE COURT:  KEEP THE PAGES.

18          MR. TURNER:  I'LL GIVE THEM TO MR. SWIGART.

19          THE COURT:  THAT'S FINE.

20          FOR THE RECORD, THE JURY IS OUT OF THE COURTROOM.

21  FOR THE RECORD, I'VE SEEN ON A COUPLE OF OCCASIONS AND IN

22  RESPONSE TO THE LAST QUESTION -- I SAW MS. CHAKER, WHO IS IN

23  THE GALLERY, WHO IS AN ATTORNEY, MOUTHING WORDS TO HER --

24          MS. CHAKER:  I'M SORRY.  I WAS, LIKE --

25          THE COURT:  SHE MOUTHED DISTINCTLY, "I WAS" -- AND

Case 3:16-cv-03186-WQH-MDD Document 127-1 Filed 09/23/22 PageID.5891 Page 1075 of 1196
Case 3:16-cv-03186-WQH-MDD Document 126-1 Filed 09/23/22 PageID.2623 Page 45 of 1196

80

1    IT WAS DIRECTLY AT YOUR MOTHER.

2          MS. CHAKER:  I DID NOT --

3          THE COURT:  QUIET.  I WILL DETERMINE LATER ON HOW

4    I'M GOING TO DEAL WITH THIS.  BUT I'VE SEEN YOU ON A COUPLE

5    OF OCCASIONS.  AND THIS WAS DIRECTLY TO HER MOTHER.  I

6    DISTINCTLY SAW IT.  I COULD READ HER LIPS SAYING, "I WAS

7    NOT" -- I DID NOT CATCH THE END OF IT.  I WILL DEAL WITH IT

8    LATER, BUT YOU ARE NOT TO BE IN THIS COURTROOM FOR THIS TRIAL

9    FROM THIS POINT ON.

10         DO YOU UNDERSTAND?

11         MS. CHAKER:  MAY I ADDRESS THE COURT?

12         THE COURT:  GO AHEAD.

13         MS. CHAKER:  I'M SORRY.  I WAS JUST SO UPSET BY THE

14   IMPLICATIONS.  I WAS IN A THIRD-WORLD COUNTRY AND --

15         THE COURT:  I DON'T CARE WHERE YOU WERE.  WHAT I'M

16   CONCERNED ABOUT IS NOT WHERE YOU WERE, IT'S THAT YOU WERE

17   MOUTHING WORDS DIRECTLY TO YOUR MOTHER.

18         MS. CHAKER:  I CAN'T SEE.

19         THE COURT:  I DIDN'T ASK YOU A QUESTION AT THIS

20   POINT.  YOU ARE EXCLUDED FROM THE TRIAL.  YOU ARE NOT TO BE

21   IN HERE AGAIN.

22         I'M ORDERING YOU BACK HERE ON THURSDAY RE CONTEMPT,

23   FOR WHAT I PERCEIVED TO HAVE BEEN AN ATTEMPT TO COACH THE

24   WITNESS.  YOU CAN FILE DOCUMENTS BY WEDNESDAY -- I'LL MAKE

25   THAT TUESDAY.  AND YOU CAN FILE WHATEVER DOCUMENTS YOU WANT

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

Case 3:16-cv-03186-WQH-MDD Document 127-1 Filed 09/23/22 PageID.5892 Page 1076 of
1196
Case 2:20-cv-02600-WQH-DD Document 262-1 Filed 09/23/22 PageID.26230 Page 46 of
462

81

```
 1    BY FRIDAY.  BUT I'M VERY CONCERNED HERE.  YOU ARE AN OFFICER

 2    OF THE COURT.

 3            MS. CHAKER:  I WAS NOT MOUTHING WORDS TO MY MOTHER.

 4            THE COURT:  I SAW IT CLEARLY.  YOU'RE ORDERED BACK

 5    HERE TUESDAY MORNING AT 9:00 A.M.  YOU CAN FILE WHATEVER YOU

 6    WANT TO IN REGARD TO A POTENTIAL CONTEMPT AND FILE PAPERS ON

 7    FRIDAY, BUT YOU ARE EXCLUDED FROM HERE.

 8            IS SHE A WITNESS?

 9            MR. SWIGART:  SHE'S NOT ON OUR LIST.

10            MR. TURNER:  NO, YOUR HONOR.

11            THE COURT:  YOU ARE NOT TO BE IN THE ROOM DURING

12    THE TRIAL.

13            DO YOU UNDERSTAND?

14            THE WITNESS:  I APOLOGIZE.  I FELT SHE WAS BEING

15    TREATED -- IT WAS PAINFUL TO SEE --

16            THE COURT:  YOU CAN PUT WHATEVER YOU WANT TO IN THE

17    PAPERS BUT, AT THIS JUNCTURE, YOU ARE NOT TO BE IN THE

18    COURTROOM AT ANY POINT DURING THE PROCEEDINGS.

19            CLEAR?

20            MS. CHAKER:  ALL RIGHT.  I VERY MUCH APOLOGIZE,

21    YOUR HONOR.

22            THE COURT:  REFERRING TO THE WITNESS -- YOU SAID

23    YOU COULDN'T SEE WHAT WAS BEING SAID?

24            THE WITNESS:  I CAN'T SEE.

25            THE COURT:  THOSE GLASSES YOU HAVE, THOSE ARE
```

Case 3:16-cv-03186-WQH-MRD Document 127-1 Filed 09/23/22 PageID.5893 Page 1077 of
Case 2:cv-03186-WQH-BLM Document 125-1 Filed 09/23/17 PageID.28230 Page 34 of
1196
1468

82

1  READING GLASSES; CORRECT?

2          THE WITNESS:  YES.

3          THE COURT:  YOU'RE SAYING YOU CAN'T SEE YOUR

4  DAUGHTER FROM HERE?

5          THE WITNESS:  I CAN SEE A FORM.  AS A MATTER OF

6  FACT, WHEN I CAME INTO THE COURT YESTERDAY, I COULDN'T EVEN

7  RECOGNIZE DARREN UNTIL I CAME RIGHT BEHIND HIM, WHEN I

8  PASSED.

9          THE COURT:  ALL RIGHT.  WELL, I'LL LET YOU FILE

10  WHATEVER YOU WANT TO ON FRIDAY, BUT I'VE SEEN YOU FORMING

11  WORDS ON A COUPLE OF OCCASIONS AND THE LAST ONE WAS VERY

12  CLEAR.

13          MS. CHAKER:  I WAS, LIKE --

14          THE COURT:  YOU'RE AN OFFICER OF THE COURT.  YOU

15  SHOULD KNOW BETTER.

16          MS. CHAKER:  I'M SORRY, YOUR HONOR.  I WASN'T --

17          THE COURT:  YOU CAN PUT WHATEVER YOU WANT TO IN THE

18  PAPERS ON FRIDAY.  YOU ARE NOW EXCLUDED.  PLEASE LEAVE.

19  THANK YOU.

20          COUNSEL, ANYTHING?

21          MR. TURNER:  NO, YOUR HONOR.

22          THE COURT:  COUNSEL?

23          MR. SWIGART:  NO, YOUR HONOR.

24          MR. TURNER:  BACK AT 1:30, SIR?

25          THE COURT:  MAYBE AT 1:15.

```
1                    CERTIFICATE OF REPORTER

2

     COUNTY OF LOS ANGELES      )
3                               )  SS.
     STATE OF CALIFORNIA        )

4

5

6    I, ROSALYN ADAMS, OFFICIAL COURT REPORTER, IN AND FOR THE

7    UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF

8    CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT TO SECTION 753,

9    TITLE 28, UNITED STATES CODE, THE FOREGOING IS A TRUE AND

10   CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED

11   PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE

12   TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS

13   OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

14

15

16   DATED:  OCTOBER 29, 2007

17

18   _____

19   ROSALYN ADAMS, CSR 11794
     OFFICIAL COURT REPORTER
20

21

22

23

24

25
```

Case 3:16-cv-02186-WQH-MDD Document 137-1 Filed 09/29/22 PageID.5295 Page 1079 of 1196
Case 2:cv-03086-qbvdd Document 267-1 Filed 09/23/17 PageID.2830 Page 40 of 1196
#1455

Exhibit I

1    UNITED STATES OF AMERICA

2    UNITED STATES DISTRICT COURT

3    CENTRAL DISTRICT OF CALIFORNIA

4    CENTRAL DIVISION

5    - - -
     HONORABLE GEORGE P. SCHIAVELLI
6    UNITED STATES DISTRICT JUDGE PRESIDING
     - - -

7    DARREN DEL NERO, ET AL.,            )

8                   PLAINTIFF,           )      **COPY**

9                                        )
     VS.                                 )  CV 04-1040-GPS(SHX)
10                                       )

11   MIDLAND CREDIT MANAGEMENT,          )
     INC., ET AL.,                       )

12                  DEFENDANTS.          )
     _____)

13

14

15        _DEL NERO V. MIDLAND CREDIT TRIAL –  DAY 5_

16              LOS ANGELES, CALIFORNIA

17           WEDNESDAY, MARCH 23, 2005

18

19

20

21

22              ROSALYN ADAMS, CSR 11794
                OFFICIAL COURT REPORTER
23              100 UNITED STATES COURTHOUSE
                312 NORTH SPRING STREET, ROOM 410
24              LOS ANGELES, CALIFORNIA 90012
                (213) 894-2665

25

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT**

4

1    LOS ANGELES, CALIFORNIA; WEDNESDAY, MARCH 23, 2005, 9:30 A.M.

2                             --000--

3

4

5               THE COURT:  BACK ON THE RECORD.  I HAVE RECEIVED

6    THIS MORNING THE VARIOUS MOTIONS FROM THE DEFENDANTS.  I

7    HAVEN'T HAD A CHANCE TO REVIEW THEM CAREFULLY.  AS I

8    UNDERSTAND, WE'RE GOING TO BE TAKING MS. CHAKER FIRST, AND

9    I'LL DO THE MOTIONS.

10              MR. TURNER:  YES, YOUR HONOR, WE'LL TAKE MS. CHAKER

11   FIRST.

12              THE COURT:  IS SHE HERE?

13              MR. HYDE:  YES, YOUR HONOR.

14              THE COURT:  MS. CHAKER, YOU UNDERSTAND YOU HAVE

15   BEEN SWORN AND YOU'RE STILL UNDER OATH?

16              THE WITNESS:  YES, YOUR HONOR.

17              THE COURT:  PLEASE HAVE A SEAT.

18              MR. TURNER:  YOUR HONOR, MAY I APPROACH THE WITNESS

19   FOR A MOMENT AND MAKE SURE I HAVE THE RIGHT EXHIBIT NUMBER?

20              THE COURT:  YOU MAY.

21              (COUNSEL APPROACHES WITNESS.)

22              MR. TURNER:  YOUR HONOR, IF I COULD APPROACH.  WHEN

23   I EXAMINED IT, I APPARENTLY MISPLACED A COPY OF THE EXHIBIT.

24   I'M SORRY.

25              THE COURT:  WHAT?

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT**

1074

1  TODAY?

2  A.    NO.

3  Q.    MS. CHAKER, PERHAPS, WE CAN MOVE THE MICROPHONE A LITTLE

4  CLOSER TO YOUR VOICE.   THANK YOU.

5          MS. CHAKER, ARE YOU AWARE THAT YOUR SON, DARREN

6  DEL NERO, HAS SUED YOU TWICE FOR RESTRAINING ORDERS?

7  A.    TWICE?

8  Q.    YES.

9  A.    NO.  I'M AWARE NOW, ONE TIME.  I DON'T KNOW ABOUT THE

10  TIME -- BUT IT WASN'T WHEN IT WAS HAPPENING.

11  Q.    WHEN DID YOU FIRST BECOME AWARE THAT MR. DEL NERO SOUGHT

12  A RESTRAINING ORDER AGAINST YOU?

13  A.    I DON'T SPECIFICALLY KNOW IF IT WAS HIM, BUT IT WAS

14  MONTHS, MONTHS AFTER THAT HAS HAPPENED BECAUSE HE WAS COMING

15  TO THE HOUSE EATING HIS FAVORITE FOOD AND STAYING THERE,

16  MONTHS LATER.

17  Q.    SO IT WOULD HAVE BEEN MONTHS AFTER -- IN WHAT YEAR, MS.

18  CHAKER?

19  A.    I BELIEVE, 2001.

20  Q.    IN FACT, YOU WERE SERVED WITH A COPY OF THAT COMPLAINT,

21  WERE YOU NOT?

22  A.    I WAS NOT.  I HAVE EXACTLY WHAT HAS HAPPENED AND

23  SOMEBODY LEFT LIKE A PROOF OF SERVICE AND I REMEMBER CHEWING

24  UP THE CLERK OF THE COURT BECAUSE OF THAT PROOF OF SERVICE,

25  AND IT WAS IN MY SON'S HANDWRITING ON THE ENVELOPE, ON MY

41

```
 1              MR. TURNER:  YOUR HONOR, THERE'S ONE QUESTION.  WAS

 2   THE ISSUE ABOUT THE ADDRESS BOOK COMING BACK OR NOT COMING

 3   BACK?

 4              THE COURT:  IS SHE EXCUSED OR DO WE STILL NEED

 5   THAT?

 6              MR. TURNER:  MAY I HAVE A MOMENT, YOUR HONOR.

 7              THE COURT:  YES.

 8              THE WITNESS:  YOUR HONOR, I HAVE A QUESTION.

 9              THE COURT:  NO, MS. CHAKER.

10              THE WITNESS:  I WOULD LIKE TO KNOW WHO'S PAYING FOR

11   MY EXPENSES.

12              THE COURT:  MS. CHAKER, THERE ARE NO QUESTIONS AT

13   THIS POINT.  YOU CAN CONSULT WITH COUNSEL, IF YOU WISH.

14              MR. TURNER:  SHE'S EXCUSED, YOUR HONOR.

15              THE COURT:  OKAY.  YOU'RE EXCUSED.

16              NEXT WITNESS FOR THE DEFENSE?

17          (MS. CHAKER LEAVES THE COURTROOM.)

18              MR. TURNER:  YOUR HONOR, I WAS UNDER THE IMPRESSION

19   YOU WERE GOING TO DO THE MOTIONS, UNLESS WE CHANGED PLANS.

20              THE COURT:  WHAT'S YOUR SCHEDULE ON YOUR WITNESSES?

21              MR. TURNER:  THEY'RE ALL HERE, YOUR HONOR.  THEY'RE

22   IN THE COURTROOM DOWN THE HALL.

23              THE COURT:  ALL RIGHT.  YOU WANT TO ARGUE THE

24   MOTIONS?  I'VE GOT THEM BEFORE ME.  I LOOKED AT THEM QUICKLY.

25   I HAVEN'T HAD A CHANCE TO LOOK IN DEPTH.
```

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT**

SER 400

```
1           MR. TURNER:  YES, YOUR HONOR, I WOULD LIKE TO

2    ARGUE.  I THINK WE STARTED, IN GENERAL, YOUR HONOR, AT THE

3    BEGINNING WITH THE MOST GENERAL.  WE HAVE TO LOOK AT THE

4    DOCUMENTS THAT CONTROLLED THIS TRIAL.  IF YOU LOOK AT THE

5    PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW, WHICH

6    WAS FILED ON THE 20TH OF DECEMBER, THE ONLY FACTUAL

7    CONTENTION SET FORTH THEREIN PERTAINED TO THE THIRD-PARTY

8    DISCLOSURE.  AND SO I AM SURPRISED THAT -- ABOUT THE BRIEF

9    THAT WAS PRESENTED AND BY THE EVIDENCE THAT WAS INTRODUCED.

10          NOW, IT IS ALSO TRUE, YOUR HONOR, THAT IN THE

11   PRETRIAL CONFERENCE ORDER -- AND WE WERE HERE ON SOME DAY,

12   THE THIRD OF JANUARY -- AND YOU SPECIFICALLY SAID FROM THE

13   BENCH THAT THIS PRETRIAL ORDER WAS GOING TO GOVERN THE TRIAL.

14   IN THIS, PLAINTIFF TALKS ABOUT THE ISSUES WHICH ARE GOING TO

15   BE PRESENTED AND MAKES REFERENCE TO THIRD-PARTY

16   COMMUNICATIONS DISCLOSURE.  THEY MAKE REFERENCE TO THE

17   FAILURE TO REPORT THE DEBT AS BEING DISPUTED OR REPORT

18   INACCURATE INFORMATION ABOUT THE DEBT.  THEY MAKE REFERENCE

19   TO THE THREATENING TO TAKE ACTION, WHICH THEY DID NOT INTEND

20   OR COULD NOT TAKE, WHICH I UNDERSTAND IS -- SPECIFICALLY

21   REFERS TO THE LAWSUIT, FILING A LAWSUIT.

22          AND LASTLY, THEY CONTEND THAT THE DEFENDANT'S --

23   AND I'M QUOTING HERE, "USED FALSE, DECEPTIVE, OR MISLEADING

24   REPRESENTATIONS OR MEANS TO COLLECT A DEBT BY MAKING FALSE

25   REPRESENTATIONS TO COLLECT OR ATTEMPTING TO COLLECT THE DEBT
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

1   OR TO OBTAIN INFORMATION ABOUT THE DEBT OR FROM HIS MOTHER."

2          SO THE ALLEGATION IS FALSE REPRESENTATIONS MADE TO

3   MS. CHAKER.  SO I THINK THAT'S WHERE WE START WITH OUR

4   ANALYSIS.  NOW, SHOULD WE TAKE THE EASY ONES FIRST, YOUR

5   HONOR, OR SHOULD I WAIT TILL YOU...

6          THE COURT:  PROCEED.

7          MR. TURNER:  I'LL START WITH THE EASY ONE.  MRC

8   RECEIVABLES NEEDS TO BE -- NEEDS TO OBTAIN JUDGMENT IN HIS

9   FAVOR.  THERE'S BEEN NO EVIDENCE ABOUT THAT.

10         THE COURT:  I SAW THAT MOTION EARLIER.  I'D LIKE TO

11  HEAR FROM THE PLAINTIFFS ON THAT.

12         MR. SWIGART:  ABSOLUTELY, YOUR HONOR.  THE LONG AND

13  SHORT OF THAT IS WE HAD FILED THIS COMPLAINT AND TOOK THIS

14  CASE TO TRIAL.  I HAVE NO PROBLEM STIPULATING TO DISMISS MRC

15  RECEIVABLES.  WE DON'T KNOW WHO THEY ARE.  WE'RE HERE AGAINST

16  MIDLAND CREDIT MANAGEMENT.  WE'LL STIPULATE TO THAT.

17         THE COURT:  PURSUANT TO STIPULATION, MRC

18  RECEIVABLES CORP. IS DISMISSED.  ACTUALLY, I THINK YOU CAN

19  ENTER JUDGMENT IN ITS FAVOR.  I WANT THAT TAKEN CARE OF.

20         MR. TURNER:  SHOULD WE SUBMIT A JUDGMENT?

21         THE COURT:  YOU CAN SUBMIT A JUDGMENT WITH RESPECT

22  TO MRC RECEIVABLES.

23         MR. TURNER:  THE NEXT ONE IS EASY.  THE 17200 NO

24  LONGER APPLIES.  WE HAVE PENDING EVIDENCE ABOUT UNFAIR

25  BUSINESS PRACTICES IF, IN FACT, THE LAW WAS CHANGED.  NO

Case 3:15-cv-03186-WQH-MRP  Document 137-1  Filed 09/23/22  PageID.5382  Page 1086 of 1196
Case 2:06-cv-01064-WQH-BVD  Document 262-1  Filed 09/13/17  PageID.5393  Page 35 of 1102

44

1    EVIDENCE PRESENTED ON THAT.  I THINK THAT APPLIES EQUALLY TO

2    BOTH DEFENDANTS -- MRC RECEIVABLES.

3            THE COURT:  MOVE THIS TO MRC RECEIVABLES?

4            MR. TURNER:  BECAUSE THEY'RE GONE, EXACTLY, YOUR

5    HONOR.  AND THEN IT CERTAINLY APPLIES TO MCM, MIDLAND CREDIT

6    MANAGEMENT.

7            THE COURT:  MR. SWIGART.

8            MR. SWIGART:  ABSOLUTELY, YOUR HONOR.  IN RESPONSE

9    TO THAT, THAT IS STATE LAW CLAIM.  OBVIOUSLY, PROP 64 PASSED,

10   AND NOW THERE'S AN ISSUE AS FAR AS RETROACTIVITY.  WE HAVE

11   LITIGATED THAT CASE SOMEWHAT EXTENSIVELY IN STATE COURT.

12   THERE IS A FOURTH CIRCUIT OPINION FOR STATE COURT SAYING THAT

13   THIS IS RETROACTIVE -- I THINK IN THE FIRST CIRCUIT COURT

14   THAT IT ISN'T.  IT HAS NOT ARRIVED AT THE SUPREME COURT YET.

15   IF YOUR HONOR WANTS TO SEE --

16           THE COURT:  I ASSUME YOU MEAN DISTRICT?

17           MR. SWIGART:  YEAH.  DISTRICT COURT.  IF YOUR HONOR

18   WANTS TO OBTAIN AN ARGUMENT, I HAVE -- I JUST RECEIVED THIS

19   MOTION THIS MORNING.  I HAVE A VERY WELL DETAILED BRIEF I

20   COULD SUBMIT TO THE COURT ON ARGUMENT WHY IT SHOULD APPLY

21   RETROACTIVELY.

22           THE COURT:  I KNOW THERE ARE EXISTING OPINIONS ON

23   COURT OF APPEAL ON 64.

24           MR. TURNER:  THERE ARE CONSISTENT OPINIONS.  I'M

25   AWARE OF THAT AS WELL, YOUR HONOR.  I'M NOT SURE -- HAVE THEY

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT**

1   ESTABLISHED THE ELEMENTS WHERE THE EVIDENCE OF 17200 APPLY?

2   I THINK NOT, REGARDLESS OF WHETHER IT APPLIES.

3            THE COURT:  IN LOOKING QUICKLY AT THIS, I GATHERED

4   YOUR ARGUMENT WAS, IN PART, THERE HAS BEEN NO LAWS FOR

5   RESTITUTION OR RECOVERY OF ANY KIND?

6            MR. TURNER:  THAT'S CORRECT.

7            MR. SWIGART:  ONE MOMENT, YOUR HONOR.

8            THE COURT:  YES.  YOU MAY.

9                (PLAINTIFF'S COUNSEL CONFER.)

10           MR. SWIGART:  YOUR HONOR, IN LIGHT OF THE CLAIM

11  YOU'RE BRINGING IN OF THE FDCPA, WE'LL DISMISS THE 17200.

12           THE COURT:  ALL RIGHT.  MR. TURNER, I DIDN'T THINK

13  YOU'D DISPUTE THAT.

14           MR. TURNER:  I'M NOT DISPUTING.  I'M LOOKING FOR A

15  JUDGMENT ON THAT.

16           MR. SWIGART:  WE'D OBJECT TO A JUDGEMENT, YOUR

17  HONOR.  WE DISMISSED -- IT'S NOT -- IF IT'S FOR A JUDGMENT IN

18  FAVOR OF THE DEFENDANT THEN WE PROBABLY WOULD LITIGATE

19  FURTHER.  IF MR. TURNER WANTS TO STIPULATE UNDER RULE 41 FOR

20  A --

21           THE COURT:  ARE YOU DISMISSING WITH OR WITHOUT

22  PREJUDICE?

23           MR. SWIGART:  WE'LL DISMISS WITH PREJUDICE, IF THEY

24  STIPULATE.

25           MR. TURNER:  WE'LL STIPULATE TO THAT, YOUR HONOR.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

1       THE COURT:  THEN WHICH COUNT IS THAT?  WAS IT THE

2  17200?  IN ANY EVENT, I'LL PUT ON THE RECORD THE 17200 CLAIMS

3  ARE DISMISSED PURSUANT TO STIPULATION WITH PREJUDICE.

4       ALL RIGHT.  NEXT.

5       MR. TURNER:  NEXT ISSUE, YOUR HONOR, IS THE THREAT

6  TO TAKE ACTION WHICH WAS EITHER NOT ALLOWED OR WAS NOT

7  INTENDED TO BE TAKEN, SPECIFICALLY, A LAWSUIT BEING FILED.

8  IF, IN FACT, PLAINTIFF HAD INTENDED TO PROCEED WITH THAT

9  THEORY, THEN PLAINTIFF NEEDED TO INTRODUCE EVIDENCE ABOUT

10  WHAT -- FROM MIDLAND ABOUT WHAT MIDLAND PRACTICES ARE IN

11  REGARD TO FILING LAWSUITS AND PROCEEDING WITH CLAIMS.

12       THE ONLY THING WE HAVE HERE ON THAT ISSUE IS

13  MR. DEL NERO AUTHENTICATING THE DOCUMENT THAT HE SAYS HE

14  RECEIVED.  IT MAKES REFERENCE TO THIS AS BEING CONSIDERED.

15  THERE'S NO EVIDENCE TO THE CONTRARY THAT IT WASN'T BEING

16  CONSIDERED.  SO THAT CLAIM HAS TO BE DROPPED FROM THE CASE.

17       MR. SWIGART:  YOUR HONOR, IN RESPONSE TO THAT, I

18  WOULD SUBMIT THE BRIEF THAT WE SUPPLIED TO THE COURT, WHICH I

19  THINK OUTLINES OUR THEORY.  THIS IS SPECIFICALLY THE E(5)

20  CLAIM THAT MR. TURNER IS REFERRING TO SUPPLEMENT THAT BRIEF,

21  IF THE COURT WILL TAKE THAT INTO CONSIDERATION.  THERE HAS

22  BEEN EVIDENCE INTRODUCED ON THIS ISSUE, AUTHENTICATED A

23  LETTER.  MR. DEL NERO SAID HE THOUGHT HE WAS GOING TO BE SUED

24  AFTER READING THAT LETTER.  IF YOU THE APPLY THE LEAST

25  SOPHISTICATED CONSUMER STANDARD --

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT**

1            THE COURT:  SLOW DOWN.

2            MR. SWIGART:  SORRY.  I APOLOGIZE.

3            THE COURT:  THAT WAS MAINLY FOR THE REPORTER.

4            MR. SWIGART:  THERE'S CLEARLY ENOUGH EVIDENCE TO

5    BRING FORTH THAT CLAIM AND TO DETERMINE IT ON ITS MERITS.  I

6    DON'T THINK THERE'S ANY REQUIREMENT THAT WE HAVE SOMEONE

7    TESTIFY FROM THE DEFENSE WHO SAYS THAT, WELL, WE DID OR DID

8    NOT INTEND TO BRING LEGAL ACTION.  THE FACTS ARE WHAT THEY

9    ARE.  HE RECEIVED A LETTER.  IT WAS THREATENING LEGAL ACTION,

10   OR HE INTERPRETED IT AS THREATENING LEGAL ACTION, AND IT'S

11   BEEN TWO YEARS AND THERE HAS BEEN NO LEGAL ACTION.  SO I

12   THINK THEY NEVER INTENDED TO TAKE THAT ACTION, AND IT WAS

13   JUST A VEIL THREAT IN ORDER TO COLLECT MONEY FROM HIM.

14           MR. TURNER:  MR. SWIGART IS CORRECT UP TO A POINT,

15   YOUR HONOR.  HE'S CORRECT THAT THERE WAS A LETTER.  THE

16   LETTER SAYS WHAT IT SAYS.  AND MR. DEL NERO SAYS WHATEVER HE

17   SAYS.  BUT THE FACT, NEVERTHELESS, REMAINS THERE IS SIMPLY NO

18   EVIDENCE THAT AT THE TIME THE LETTER WAS SENT, HIS ACTION WAS

19   NOT INTENDED TO BE TAKEN, AND I BELIEVE IT SIMPLY SAYS IT'S

20   BEING CONSIDERED.  THERE'S CERTAINLY NO EVIDENCE AS TO THAT.

21           I'VE GOT THE EXACT LANGUAGE FROM THE LETTER, BUT WE

22   DON'T HAVE -- THERE'S -- TO CLOSE THE DOOR, TO CONNECT THE

23   DOTS -- I'M USING METAPHORS HERE -- YOU HAVE TO GO TO THE

24   NEXT STEP.  CERTAINLY, MR. HYDE AND MR. SWIGART ARE AWARE OF

25   THE COLLECTION AGENCIES THAT HAVE STANDARDS AND POLICIES, YOU

DON'T COLLECT BELOW A CERTAIN AMOUNT. I'VE DEFENDED CLAIMS

IN WHICH THE AMOUNTS HAVE BEEN VERY LOW, LESS THAN $50 AND

THE LETTER WENT OUT SAYING WE'RE GETTING READY TO SUE YOU.

THAT'S ONE ISSUE. BUT HERE WE HAVE A $6,000 CLAIM IN WHICH

THERE HAS TO BE SOME SHOWING THAT, YES, THAT LETTER WAS SENT

AND IT WAS -- COULDN'T -- BECAUSE THE LAWSUIT COULDN'T BE

TAKEN OR IT WAS NO INTENT TO DO THAT. THERE'S NOTHING, THAT

LAST HURDLE --

THE COURT: DOESN'T IT GET TO BE AN ISSUE OF FACT

WHEN IT'S BEING SHOWN WHAT THE -- BASED ON MR. SWIGART'S

ARGUMENT, IT'S BEEN A COUPLE YEARS AND NOTHING WAS EVER

FILED.

MR. TURNER: NO, YOUR HONOR, FOR A COUPLE REASONS.

ONE, WHICH IS, THAT WE DON'T HAVE TO FILE THE LAWSUIT. ALL

WE HAVE TO SAY IS THAT THE -- IT IS BEING -- ALL THAT WAS

BEING SAID WAS IT'S BEING CONSIDERED TO BE SENT OUT TO A LAW

FIRM IN YOUR JURISDICTION. THAT'S ALL IT SAID. SO IF THAT,

IN FACT, WAS A CORRECT STATEMENT, IT WAS BEING CONSIDERED AND

THERE'S GOING TO BE EVIDENCE TO THE FACT THAT, YES, IT WAS,

THAT IT'S A CORRECT STATEMENT.

IF, IN FACT, THAT STATEMENT IS MADE AND THERE'S

EVIDENCE TO ESTABLISH THAT MCM, MIDLAND CREDIT MANAGEMENT,

HAD A POLICY OF NOT SUING ON DEBTS OF THIS SIZE OR NATURE OR

FOR THIS CLIENT WITHOUT DISCLOSING ANYTHING AND THE CASE NOT

INVOLVING MR. HYDE AND MR. SWIGART. I HAVE A CASE IN WHICH

1   THE COLLECTOR, THE DEFENDANT, WAS SPECIFICALLY NOT AUTHORIZED

2   TO SUE AND WROTE A LETTER THAT MAY OR MAY NOT BE INTERPRETED

3   AS IMPLYING THAT THEY WERE GOING TO.  THAT'S THE SITUATION.

4           SO WE DON'T HAVE ANY OF THAT.  ALL WE HAVE IS

5   WHETHER IT GOES OUT AND THEY NEVER INTENDED TO FILE A

6   LAWSUIT.  THEY NEVER INTENDED TO CONSIDER FILING A LAWSUIT.

7   THEY HAVEN'T CLOSED THE DOOR.  THEY HAVEN'T ESTABLISHED WHAT

8   THEY HAVE TO ESTABLISH TO PROCEED ON THAT THEORY.

9           THE COURT:  MR. SWIGART, DO YOU HAVE A CASE THAT

10  SAYS -- WHERE THERE'S A STATEMENT THAT WE'RE CONSIDERING IT,

11  AND THE MERE FACT THAT NONE IS FILED IS SUFFICIENT TO GO TO

12  THE JURY, TO GO TO THE TRIER OF FACT?

13          MR. SWIGART:  IF I CAN CLARIFY THE COURT'S POINT.

14  YOU'RE ASKING FOR A CASE PARTICULARLY ON THE ISSUE OF IF THEY

15  SOMEWHAT THREATEN SOMETHING, AND THEN THEY DIDN'T TAKE THAT

16  ACTION?

17          THE COURT:  WELL, IF THEY SAID, "WE ARE

18  CONTEMPLATING AN ACTION" --

19          MR. SWIGART:  YES.

20          THE COURT:  -- BUT DON'T TAKE THE ACTION, IS THAT

21  SUFFICIENT IN AND OF ITSELF TO TAKE THE MATTER TO THE TRIER

22  OF FACT?

23          MR. SWIGART:  IF I CAN REVIEW MY NOTES BRIEFLY,

24  YOUR HONOR.

25          THE COURT:  I UNDERSTAND YOU GOT THIS MATERIAL

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT**

Case 3:16-cv-03186-WQH-MRD Document 137-1 Filed 09/23/22 PageID.5392 Page 1092 of
Case 2:04-cv-03186-WQH-BD Document 267-1 Filed 09/23/07 PageID.4892.30 Page 30D of
1466
1116

50

| 1 | FIRST THING THIS MORNING, AND IF YOU NEED SOME TIME TO TAKE A |
| 2 | LOOK AT IT. |
| 3 | MR. SWIGART:  IF WE COULD JUST HAVE TWO MOMENTS, |
| 4 | YOUR HONOR.  WE HAVE QUITE A BIT OF CASE LAW AND A BRIEF THAT |
| 5 | WE BROUGHT SAYING -- |
| 6 | THE COURT:  YOU BROUGHT THE WHOLE LIBRARY WITH YOU. |
| 7 | I'M IMPRESSED.  COMPUTERS ARE AMAZING. |
| 8 | (COUNSEL COLLECTS DOCUMENT.) |
| 9 | MR. SWIGART:  THE CASE LAW -- WHILE MR. HYDE LOOKS |
| 10 | FOR ADDITIONAL CASE LAW -- ON PAGE 7 -- |
| 11 | THE COURT:  OF YOUR BRIEF? |
| 12 | MR. SWIGART:  YES.  I'LL READ IT, YOUR HONOR.  AT |
| 13 | LEAST THREE CASES THAT DEAL WITH THREATENING LANGUAGE |
| 14 | CONTAINED IN LETTERS, NOT ONLY TO GO TO THE TRIER OF FACT, |
| 15 | BUT AS WE -- |
| 16 | THE COURT:  EXCUSE ME, ON PAGE 7? |
| 17 | MR. SWIGART:  ON FOUR OF SEVEN, ACTUALLY. |
| 18 | THE COURT:  IF PAGE 7 IS YOUR CONCLUSION, THEN |
| 19 | THAT'S NOT WHAT YOU'RE ARGUING HERE. |
| 20 | MR. SWIGART:  THERE ARE THREE CASES THAT WE SET |
| 21 | FORTH DIFFERENT TYPE OF LEGAL THREATS OR LEGAL ACTIONS THAT |
| 22 | WERE NOT ONLY ENOUGH TO GO TO THE JURY, BUT THEY WERE FOUND |
| 23 | FOR SUMMARY JUDGMENT IN VIOLATION OF, PARTICULARLY, E(5). |
| 24 | AND MR. HYDE, I BELIEVE, HAS ANOTHER CASE AS WELL, YOUR |
| 25 | HONOR. |

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

SER 409

```
 1              THE COURT:  HOLD ON.  LET ME READ THIS.

 2              WHILE YOU'RE LOOKING, MR. TURNER, LET ME ASK YOU

 3    ABOUT THE OTHER PRONG WHICH CANNOT BE LEGALLY TAKEN.  THE

 4    PLAINTIFF, I GATHER, IS CONTENDING THERE WAS NEVER ANY SUCH

 5    DEBT TO BANK OF AMERICA.  IF THAT WERE TRUE, IT COULD BE

 6    LEGALLY TAKEN.  I'M NOT SAYING THAT EVIDENCE IS CORRECT.  I'M

 7    SAYING IT'S EVIDENCE TO GET PAST THE MOTION.

 8              MR. TURNER:  WELL, I THINK -- I DISAGREE WITH THE

 9    SUPPOSITION OR THE ASSUMPTION THAT IF THE DEBT IS NOT OWED

10    WE CAN'T -- MIDLAND CREDIT MANAGEMENT CAN'T SUE UPON IT.  IF

11    MIDLAND CREDIT MANAGEMENT BELIEVES THE DEBT IS OWED, AND

12    SUES, IT MAY OR MAY NOT PREVAIL.

13              THE COURT:  I'M NOT SAYING WHO WOULD WIN.  WHAT I'M

14    SAYING IS YOU'VE GOT ENOUGH TO AT LEAST GET PAST THE MOTIONS.

15    IN OTHER WORDS, IF THERE WAS NO DEBT, THEN LEGALLY --

16    HYPOTHETICALLY, ASSUME IT WAS NO DEBT AND MIDLAND NEVER GOT

17    AN ASSIGNMENT OF DEBT FROM BANK OF AMERICA, NOTHING EVER

18    EXISTED.  THEN THE ACTION OF FILING A LAWSUIT COULD NOT BE

19    LEGALLY TAKEN.  I'M NOT SAYING THAT'S WHAT HAPPENED.  ALL I'M

20    SAYING IS IN THE FULLNESS OF ALL THE FACTUAL DEVELOPMENTS

21    THAT I WOULD FIND THAT WAY.  BUT ALL I'M SAYING IS, IS THAT

22    ENOUGH TO GET IT PAST THE MOTION STAGE AND DEAL WITH IT ON

23    THE MERITS WHEN WE HEAR THE WITNESSES THAT YOU'RE GOING TO

24    PUT UP?

25              MR. TURNER:  NO.  I DON'T THINK THAT IS SUFFICIENT,
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

SER 410

1  IN AND OF ITSELF.  FIRST OF ALL, OF COURSE, WE HAVE EVIDENCE

2  THAT THE BANK AMERICA DEBT IS CHANGED INTO -- WAS OBTAINED BY

3  MRC RECEIVABLES.  THAT'S ALL BEEN INTRODUCED TO PLAINTIFFS IN

4  THEIR CASE.  SO WE DONT HAVE A SITUATION WHERE --

5              THE COURT:  BUT YOU'RE NOT ARGUING I HAVE TO ACCEPT

6  THAT AS TRUTH FOR PURPOSES OF THIS MOTION.  FOR PURPOSES OF

7  THIS, ARE YOU TELLING ME THAT THAT'S BEEN DEFINITIVELY

8  DETERMINED?  MR. DEL NERO CONTINUES TO DENY THAT HE EVER HAD

9  A DEBT AT BANK OF AMERICA.

10             MR. TURNER:  WELL, I THINK THERE'S A DIFFERENCE

11  THERE, YOUR HONOR.  I THINK THERE'S A DIFFERENCE BETWEEN -- A

12  DEBT COLLECTOR COMES IN AND SAYS MR. DEL NERO OWES A DEBT TO

13  A LOCAL HARDWARE STORE IN COLUMBUS, OHIO, AND, IN FACT, HAS

14  MADE THE WHOLE THING UP.  THAT IS ONE THING.  AND THAT'S ALL

15  THE EVIDENCE THAT'S PRESENTED AS WE COME TO TRIAL THAT

16  THERE'S AN ALLEGATION AND THERE'S NOTHING ELSE TO ESTABLISH

17  THAT THERE IS THIS LOCAL STORE IN COLUMBUS, OHIO.

18             HERE, WE HAVE BANK OF AMERICA EVIDENCE COMING IN

19  THAT BANK OF AMERICA LISTED THE DEBT ON A CREDIT REPORT THAT

20  COMES INTO PLAINTIFF AS BELONGING TO MR. DEL NERO.  IT THEN

21  SHOWS THAT IT IS CONNECTED OVER TO MIDLAND CREDIT MANAGEMENT,

22  AND SO WE HAVE EVIDENCE THAT BANK OF AMERICA IS OF THE

23  OPINION THE DEBT WAS OWED AND THAT MIDLAND CREDIT MANAGEMENT

24  THEN IS TRYING TO COLLECT AFTER --

25             THE COURT:  WE HAD EVIDENCE OF THE DOCUMENT OF

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

1   WHICH THAT SHOWS. I HAVE NO EVIDENCE OF WHAT BANK OF AMERICA

2   DID OR DIDN'T DO. ALL I HAVE IS MR. DEL NERO'S

3   INTERPRETATION OF A CREDIT REPORT.

4           MR. TURNER: WELL, I THINK THAT THEY HAVE NOT

5   FAILED -- I DON'T BELIEVE, YOUR HONOR, THAT ESSENTIALLY

6   SAYING THAT I DON'T OWE THIS DEBT, AND THEREFORE, YOU CAN'T

7   SUE.

8           THE COURT: I'M NOT SAYING -- I'M NOT CALLED UPON

9   AT THIS POINT TO WEIGH THE EVIDENCE.

10          MR. TURNER: CERTAINLY.

11          THE COURT: AND I DIDN'T -- AT THIS POINT WHAT

12  MR. DEL NERO APPEARS TO BE ALLEGING IS, "I NEVER OWED THAT

13  DEBT. I ADVISED MIDLAND I DIDN'T OWE IT. I ASKED TO SEE THE

14  DEBT. I ASKED TO SEE THE UNDERLYING CONTRACT. I NEVER SAW

15  IT." I AGREE WITH YOU THAT'S NOT THE BASIS FOR THE CLAIM IN

16  TERMS OF THE VERIFICATION OF THE DEBT. BUT, IN TERMS OF THIS

17  MOTION AND THIS ISSUE, ISN'T THERE AT LEAST ENOUGH EVIDENCE

18  TO GET PAST THE MOTION TO SAY THAT THERE WAS NO EVIDENCE OF

19  THE DEBT? I'LL MOVE THIS OVER INTO A VERIFICATION PRONG OF

20  THE STATUTE BECAUSE IT'S NOT. COUNSEL AGREED THAT IT'S NOT.

21          BUT ISN'T THERE AN ISSUE, AT LEAST, TO WHETHER OR

22  NOT BY NOT PROVIDING A COPY OF THE CONTRACT AT LEAST ONE

23  COULD INFER. I GRANT YOU IT'S MAKING A CONSIDERABLE STRETCH

24  THAT WAS NEVER REALLY A DEBT, AT LEAST FOR PURPOSES OF THE

25  MOTION, AND WE GO ON AND HEAR THE DEFENSE POSITION THAT THERE

1   WAS NEVER REALLY A DEBT TO BANK OF AMERICA?  I HAVE

2   NOTHING -- I'M NOT ARTICULATING THIS VERY WELL, BUT AT THIS

3   POINT, MR. DEL NERO SAYS, "I NEVER OWED ANY MONEY AT BANK OF

4   AMERICA."  THE EVIDENCE IS -- FROM HIM -- HE WAS NEVER SHOWN

5   A CONTRACT.  SO CAN'T ONE SAY -- AT LEAST ASSUME THE FACTS IN

6   FAVOR OF MR. DEL NERO FOR PURPOSES OF THIS MOTION ONLY --

7   THAT IT'S NOT CLEAR AT ALL -- AT LEAST IT GETS PAST THE

8   MOTION ON THE ISSUE OF WHETHER THERE WAS A LEGAL DEBT OR A

9   LEGAL ACTION COULD HAVE BEEN TAKEN.

10          MR. TURNER:  I DON'T THINK SO, YOUR HONOR, BUT I

11  FIND MYSELF NOW REPEATING MY ARGUMENT.  IF I FAILED THE FIRST

12  THREE TIMES, PERHAPS I HAVE NOT BEEN SUCCESSFUL.

13          THE COURT:  MOTION IS DENIED.

14          NEXT.

15          MR. TURNER:  THE NEXT MOTION PERTAINS TO THE

16  FAILURE TO REPORT THE DEBT AS BEING DISPUTED.

17          THE COURT:  ON THAT ONE, YOU ARGUED IT SHOWED UP ON

18  THE DISPUTED ONE, AND DIDN'T SHOW UP ON THE OTHER ONE,

19  THEREFORE, THE OTHER MADE A MISTAKE.  THAT'S ONE

20  INTERPRETATION OF IT.  I'M NOT SURE HOW IT JUMPED FROM THAT

21  TO A JUDGMENT AS A MATTER OF LAW.

22          MR. TURNER:  IT MIGHT BE A BIG JUMP.  BUT I WOULD

23  SAY, IT IS INTERESTING TO NOTE IN THIS REGARD AS WE GO

24  THROUGH MR. DEL NERO -- THE DOCUMENTS THAT ARE DISCLOSED

25  DURING THE PRETRIAL THAT WE HAVE THE EQUIFAX CREDIT REPORT

1  DATE IN MAY OF 2003.  AND IT'S INTERESTING TO NOTE THAT NOW

2  WHEN MR. DEL NERO ON REDIRECT SUDDENLY FOR THE FIRST TIME,

3  NEVER BEFORE IN THIS CASE, THE CREDIT REPORT FROM TRANSUNION

4  IS PRODUCED IN THE SAME MONTH.  IT'S A POINT WE'RE GOING TO

5  DISCUSS LATER IN THIS CASE, BUT I THINK THE VERY FACT THAT IF

6  THREE CREDIT BUREAUS ARE REPORTING AND NOW WE HAVE EVIDENCE

7  THAT ONE IS SHOWING IT IS DISPUTED -- I DON'T KNOW, YOUR

8  HONOR.  I DON'T THINK THEY MEANT TO PROVE THAT THE OTHER IS

9  NOT, BUT MAYBE, AGAIN, I'M ASKING YOU TO TAKE A LARGE JUMP.

10        THE COURT:  COUNSEL.

11        MR. SWIGART:  YOUR HONOR, IT'S NOT A JUMP, IT'S A

12  LEAP.  MR. TURNER IS ENTITLED TO DISCOVERY.  WE PRODUCED THE

13  DOCUMENTS THAT WERE REQUIRED TO PROVE OUR CASE, AND I BELIEVE

14  IT MADE THE PRIMA FACIE CASE.

15        THERE'S A QUESTION OF DID MIDLAND MANAGEMENT

16  ACTUALLY REPORT THIS DISPUTE TO ALL THREE CREDIT BUREAUS?  IF

17  THEY REPORTED IT TO TWO, THAT'S GREAT, BUT THEY'RE REQUIRED

18  TO REPORT IT TO ALL.  AND WE WILL -- WE'LL SHOW DURING

19  CROSS-EXAMINATION THAT THEY'VE UPDATED THIS REPORT.  AND AS

20  TIME PASSES, RECEIVING CERTAIN NOTIFICATIONS, THEY DIDN'T PUT

21  THE DISPUTE ON THERE.  THAT IS CLEARLY ENOUGH TO PASS THE

22  RULE 56.

23        THE COURT:  MR. HYDE, ARE YOU DOING AEROBICS?

24        MR. HYDE:  NO.  I WAS GOING TO SUGGEST SOMETHING TO

25  MR. SWIGART, BUT I'D BE GLAD TO SUGGEST IT THE THIS COURT.  I

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT**

1   WAS JUST GOING TO MAKE THE POINT THAT MIDLAND CREDIT

2   MANAGEMENT DOESN'T SEEM TO HAVE ANY TROUBLE GETTING THINGS ON

3   PEOPLE'S CREDIT REPORTS.  BUT NOW THEIR SUGGESTION IS THAT

4   SOMEHOW THEY'RE UNABLE TO COMMUNICATE WITH THESE PEOPLE AND

5   GET THEM TO PUT THE THINGS THAT WILL ASSIST THE CONSUMER IN

6   CLEARING UP THEIR CREDIT RECORD.  THEY HAVE AN OPPORTUNITY

7   EVERY MONTH TO FILE A REPORT WITH THE CREDIT UNIONS, AND I

8   BELIEVE THEY PROBABLY DO.  I DON'T KNOW THAT FOR SURE.  MY

9   EXPERIENCE IS THAT THEY DO THAT EVERY SINGLE MONTH.  THEY CAN

10  CLARIFY THIS EVERY SINGLE MONTH.  THIS WAS NEVER CLARIFIED.

11  FOR THEM NOW TO CLAIM THAT THERE'S SOME KIND OF ERROR, WHILE

12  THAT'S CERTAINLY A THEORY THEY CAN BRING FORWARD, I DON'T

13  THINK IT'S ANYTHING WE CAN ASSUME TOOK PLACE JUST ON MERE

14  SPECULATION.

15          MR. TURNER:  I'M WILLING TO LET GO OF THIS MOTION,

16  BUT I WOULD THINK, CANDIDLY, WITHOUT BEING UNPLEASANT, THAT

17  IN THIS CASE THAT PLAINTIFF'S COUNSEL WOULD WANT THE CASE TO

18  COME DOWN TO THE CREDIBILITY OF THE PARTIES AND THE INTEGRITY

19  OF THE PARTIES.

20          SECONDLY, I DO THINK, AGAIN, AND WE'LL RAISE THIS

21  ISSUE, HOW IS IT THAT MR. DEL NERO HAD THE ONE AND DIDN'T

22  TELL ANYONE, INCLUDING THE COURT, THAT HE HAD THE TRANSUNION

23  CREDIT REPORT THAT SHOWS EXACTLY THE OPPOSITE.  FOR PURPOSES

24  OF THIS MOTION --

25          THE COURT:  I LOOK FORWARD TO FINDING THAT OUT.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT**

1    THE MOTION IS DENIED.  I WILL TELL YOU I'M INCLINED TO HEAR

2    THE EVIDENCE DEFENSE IS GOING TO PRESENT.  AND I DON'T MEAN

3    BY THAT DENIAL TO SUGGEST, IN ANY WAY, DECISION ON THE

4    MERITS.  I'M SAYING HE SQUEAKED BY THE MOTION, BUT WE'LL SEE

5    HOW IT GOES ONCE THE DEFENSE CASE IS ON.

6            DID THAT COVER EVERYTHING?  IS THERE ANYTHING ELSE?

7            MR. TURNER:  WELL, THERE'S ONE OTHER POINT THAT

8    NEEDS TO BE CLARIFIED AND NEEDS TO BE REMEDIED, WHICH IS FROM

9    PLAINTIFF'S BRIEF.  LOOKING AT PAGE 5 OF 7, STARTING AT LINE

10   12, SECTION 3, THEY MAKE REFERENCE TO A LETTER WHICH STATES,

11   "YOU'VE CHOSEN TO IGNORE ALL OUR PREVIOUS COMMUNICATIONS

12   REGARDING THE DEBT REFERRED TO ABOVE," AND CITE THIS AS A

13   BASIS FOR LIABILITY AS TO MY CLIENT.  HOWEVER, AND THIS IS

14   COMPLETELY UNFAIR BECAUSE THIS THEORY HAS NOT BEEN PRESENTED,

15   WAS NOT IN THE PRETRIAL, CERTAINLY NOT IN THE FACTUAL

16   CONTENTIONS, AND FOR THE FIRST TIME IT'S BEEN RAISED NOW

17   AFTER PLAINTIFF HAS CLOSED.  SO IT'S UNFAIR.  HERE WE ARE ON

18   WHAT I HOPED, PERHAPS, VAINLY WAS GOING TO BE THE LAST DATE

19   OF TRIAL AND TO HAVE A NEW THEORY BEING PRESENTED, WE WOULD

20   VIGOROUSLY OPPOSE THAT.

21           MR. SWIGART:  JUST FOR CLARIFICATION, IS MR. TURNER

22   REFERRING TO THE E(10) VIOLATION THAT WE'RE ALLEGING, OR ARE

23   YOU STILL TALKING ABOUT THE E(5)?

24           THE COURT:  HE'S REFERRING TO THE E(5).

25           MR. SWIGART:  THEN, IN THAT CASE, YOUR HONOR, IF

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT**

1   IT'S E(5), THEN I THINK WE'VE ALLEGED THAT, IN FACT,

2   MR. TURNER HAS FILED A MOTION PARTICULARLY ON THAT CAUSE,

3   WHICH THE COURT HAS DENIED.

4       THE COURT:  I THINK THE ALLEGATION IS THE STATEMENT

5   YOU'RE USING TO SUPPORT IT.

6       MR. TURNER:  THAT'S CORRECT BECAUSE THE E(5) IS

7   BASED UPON THE FALSE STATEMENTS MADE TO MS. CHAKER.

8       MR. SWIGART:  NO, YOUR HONOR.  THERE IS NO STANDING

9   FOR MS. CHAKER TO HAVE AN FDCPA CLAIM.  IT WASN'T HER ALLEGED

10   DEBT.  OUR CLAIM HAS ALWAYS BEEN UNDER E(5), THAT IT WAS

11   MIDLAND DEMANDING PAYMENT FROM MR. DEL NERO, MAKING LETTERS

12   TO HIM, MAKING THE THREATS TO HIM.  THERE IS NO CAUSE OF

13   ACTION AGAINST MS. CHAKER.

14       THE COURT:  THAT'S NOT THE -- I DON'T MEAN TO

15   INTERRUPT YOU.  WELL, IN TERMS OF THE PRIOR PLEADINGS -- WE

16   MAY HAVE TO FIND THE PRETRIAL ORDER -- HAS THIS STATEMENT

17   BEEN ALLEGED PREVIOUSLY AS ONE OF THE BASES FOR YOUR CLAIM

18   UNDER E(5)?

19       MR. SWIGART:  YES, YOUR HONOR.  ON PAGE 6 OF THE

20   FILED PRETRIAL CONFERENCE ORDER, WE ALLEGED DEFENDANT, MRC

21   RECEIVABLES OR MIDLAND CREDIT, DEPENDING WHICH PARAGRAPH YOU

22   LOOK AT, INTENDED TO TAKE ACTION THAT -- WELL, TO TAKE ACTION

23   THAT WAS NOT INTENDED TO BE TAKEN, SUCH AS FILING A SUIT ON A

24   DEBT IN VIOLATION OF E(5).

25       THE COURT:  I DON'T THINK THERE'S A DISPUTE THAT

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

1   E(5) IS RAISED, OR IS THERE?

2          MR. TURNER:  THERE'S NO DISPUTE ABOUT A THREAT TO

3   TAKE ACTION IF E-5 IS RAISED, SO THAT'S NOT THE POINT.  THE

4   POINT IS THAT THIS STATED BASIS FOR WHICH E(5) IS BASED, THE

5   FALSE OR MISLEADING REPRESENTATIONS, IS -- THAT'S NOT SET

6   FORTH ANYWHERE IN THE PRETRIAL ORDER OR IN THE FACTUAL

7   CONTENTIONS.  IF WE'RE GOING TO BE BOUND BY THE FACTUAL

8   CONTENTIONS, WE'RE LEFT WITH ONLY THIRD-PARTY DISCLOSURE.

9          MR. SWIGART:  I THINK YOU MAKE A TWO-PRONG APPROACH

10  HERE, YOUR HONOR.  FIRST IS, AS FAR AS WHAT EVIDENCE -- MY

11  BRIEF, OBVIOUSLY, IS IN EVIDENCE, YOUR HONOR.  WE RELY ON

12  WHAT'S BEEN ADMITTED TO THE COURT THROUGH TESTIMONY FOR

13  DOCUMENTATION, PARTICULARLY, COURT'S EXHIBIT NO. 8, WHICH IN

14  OUR ESTIMATION, THREATENED LEGAL ACTION.  AND IF I MISQUOTED

15  THAT OR MISCITED THAT, I APOLOGIZE, YOUR HONOR.  I WAS

16  PREPARING THIS LAST NIGHT.  THAT IS WHAT WE'RE TALKING ABOUT.

17  BUT WITH REGARD TO OUR CAUSE OF ACTION --

18         THE COURT:  HERE'S WHAT I'M TRYING TO CLARIFY,

19  MAYBE I'M NOT UNDERSTANDING MR. TURNER'S ARGUMENT.  IN YOUR

20  BRIEF YOU SAY AFTER REFERRING TO E(5) AND QUOTED IT,

21  ESPECIALLY TO, I GUESS, IT'S -- YOU ALSO REFER TO 10; RIGHT?

22  WHAT IS THAT IN YOUR QUOTE OF E(5)?  ARE YOU QUOTING 1692

23  E(5) AND 10?

24         MR. SWIGART:  ACTUALLY, I BELIEVE THE SECTION 5 IS

25  A TYPO, YOUR HONOR.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT**

```
 1          THE COURT:  WHICH IS?

 2          MR. SWIGART:  THE E(5).

 3          THE COURT:  YOU JUST SAID IT WAS E(5).  YOU'VE GOT

 4   A 5 AND A 10 IN THERE.

 5          MR. SWIGART:  ON WHICH PAGE, YOUR HONOR, ARE YOU

 6   REFERRING TO?

 7          THE COURT:  PAGE 5 OF 7, LINE 13.  YOU COMMENCE IT

 8   WITH SAYING "15 U.S.C. SECTION 1692 E(5)."

 9          DOES THAT QUOTE INCLUDE REFERENCE TO 10?

10          MR. TURNER:  I'M SORRY, YOUR HONOR.  EXCUSE ME.

11          THE COURT:  YOU GOT A REFERENCE TO "5" AND YOU GOT

12   A REFERENCE TO "10" ALL IN -- I'M NOT SURE WHERE YOUR QUOTE

13   STOPS.  YOU HAVE AN OPEN QUOTE, BUT I DON'T THINK YOU HAVE A

14   CLOSED QUOTE.  I DON'T KNOW WHAT THAT IS.

15          MR. HYDE:  YOUR HONOR, I'M STILL LOST AS TO WHAT

16   PAGE WE'RE TALKING ABOUT.

17          THE COURT:  FIVE OF SEVEN IN THE BRIEF FILED TODAY,

18   LINE 13.  IF YOU LOOK AT THAT PARAGRAPH IT STARTS 15 U.S.C.

19   SECTION 1692 E(5) STATES, OPEN QUOTE, ET CETERA.  I'M NOT

20   SURE I SEE A CLOSED QUOTE THERE ANYWHERE.  AND IN THE MIDDLE

21   OF YOUR QUOTE TO E(5) YOU HAVE A REFERENCE TO (10).  I DON'T

22   KNOW WHAT THAT IS.

23          MR. SWIGART:  THE PROBLEM IS, YOUR HONOR, WE

24   PREPARED TWO BRIEFS IN ANTICIPATION OF A -- WHICH MOTION TO

25   FILE.  I HAVE ONE IN FRONT OF ME, AND I THINK THE COURT IS
```

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT**

1    LOOKING AT THE ONE WE ACTUALLY FILED.

2          THE COURT:  YEAH, THAT'S THE ONE I TEND TO LOOK AT.

3    I ALWAYS LIKE TO LOOK AT THE ONE THAT'S FILED AS OPPOSED TO

4    THE ONES THAT WEREN'T.  IT CLUTTERS THINGS UP.

5          MR. SWIGART:  WHAT DATE ARE YOU ON?

6          MR. TURNER:  MY POINT, YOUR HONOR, IS YOU RELIED

7    UPON PLAINTIFF'S REPRESENTATION IN A PRETRIAL ORDER.  IF I

8    CAN REMIND YOU -- CAN I BRING YOU MY COPY?

9          THE COURT:  THAT'S FINE.

10         MR. TURNER:  I CAN HAVE MY STICKIES REMOVED IF

11    YOU'D LIKE.

12         THE COURT:  I PROMISE NOT TO REVEAL THE SMOKING

13    GUN.  I'M JUST TAKING A LOOK AT THE PRETRIAL CONFERENCE

14    ORDER.

15         AND WHAT'S YOUR POINT, MR. TURNER?

16         MR. TURNER:  THERE'S NO REFERENCE TO E(10), YOUR

17    HONOR.  NO REFERENCE --

18         THE COURT:  RIGHT.

19         MR. TURNER:  AND THAT'S WHAT I'M TRYING TO FIGURE

20    OUT, IF THE STATEMENT IN REFERENCE TO 10 IN THAT PARAGRAPH

21    SEEMS TO BE A REFERENCE TO E(10), WHICH IS NOT ALLEGED IN THE

22    PRETRIAL CONFERENCE ORDER.  I DON'T SEE IT.  COMMENCING ON

23    PAGE 4, "PLAINTIFF PLANS TO PURSUE" -- I DO NOT SEE A

24    REFERENCE TO E(10) ANYWHERE.

25         MR. SWIGART:  YOUR HONOR, WITH REGARD TO THE FILING

1  PRETRIAL CONFERENCE REPORT, WE ALLEGE E, GENERALLY.  IT

2  INCLUDES EVERYTHING INCLUSIVE UNDER E.  THE COURT --

3          THE COURT:  ARE YOU REFERRING TO PARAGRAPH ROMAN

4  XI?

5          MR. SWIGART:  YES, EXACTLY.  WHEN CONGRESS ENACTED

6  THAT, THEY DELINEATED CERTAIN THINGS OR VIOLATIONS.  THAT IS

7  NOT AN ALL-INCLUSIVE LIST.

8          MR. TURNER:  YOUR HONOR, IT IS NOT FAIR TO LIST

9  SPECIFICALLY -- SPECIFIC PARAGRAPHS.  I MADE A REFERENCE AT

10  THE END OF THE PRETRIAL CONFERENCE ON THE 3RD OF JANUARY THAT

11  WE WERE DOWN TO THREE ISSUES.  WE WERE DOWN TO THIRD-PARTY

12  DISCLOSURE, FAILURE TO TAKE AN ACTION, AND THE FAILURE TO

13  REPORT THE DEBT AS BEING DISPUTED.  THOSE ARE THE ISSUES

14  LEFT.  NOTHING WAS SAID.  I THINK THAT'S BASED UPON THE

15  PRETRIAL ORDER.  WE HAVE PREPARED THIS CASE.  WE HAVE

16  LITIGATED THIS CASE AND NOW TO GET A NEW THEORY -- MAY I TAKE

17  MY BOOK BACK, YOUR HONOR?

18          THE COURT:  YES.

19          MR. TURNER:  IT DOESN'T -- IT'S NOT FAIR.

20          MR. SWIGART:  YOUR HONOR, THIS ISN'T A NEW THEORY.

21  I MEAN, IT'S ALL INCLUSIVE.  IF THERE'S A VIOLATION OF THE

22  LAW, IT'S FALSE AND DECEPTIVE.

23          THE COURT:  HAS SOMEONE GOT A COPY OF E(10)?

24          MR. HYDE:  I CERTAINLY DO, YOUR HONOR,

25  COINCIDENTALLY.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

1        (MR. HYDE HANDS A DOCUMENT TO THE COURT. )

2        MR. TURNER:  YOUR HONOR --

3        THE COURT:  HOLD ON FOR JUST A MINUTE.

4        OKAY.  THANKS.  GO AHEAD, MR. TURNER.

5        MR. TURNER:  THE POINT, YOUR HONOR, WHEN WE TALK

6   ABOUT 15 U.S.C. 1692(E), THEY TALK ABOUT, USED FALSE

7   DECEPTIVE OR MISLEADING MISREPRESENTATIONS OR MEANS TO

8   COLLECT A DEBT BY MAKING FALSE REPRESENTATIONS TO COLLECT OR

9   ATTEMPT TO COLLECT A DEBT OR TO OBTAIN INFORMATION ABOUT THE

10  DEBTOR FROM HIS MOTHER."  THIS IS A REFERENCE TO

11  REPRESENTATIONS TO THE MOTHER, TELL US WHERE HE IS.  YOU'VE

12  GOT TO PAY IT, ALL THIS THE SORT OF STUFF.  THEY NOW GO INTO

13  A NEW THEORY, WHICH IS SIMPLY NOT FAIR.  AND WE SEE ONGOING

14  SPECIFICITY IN THE NEXT -- YOU LOOK DOWN IN PARAGRAPH 12,

15  FINALLY, THEY DIDN'T INTEND TO FILE SUIT.  IN PARAGRAPH 14,

16  FAILING TO COMMUNICATE THE DEBT WAS DISPUTED.

17        THE COURT:  ANYTHING ELSE?

18        MR. SWIGART:  WELL, YOUR HONOR, I'D JUST LIKE TO

19  MENTION THAT IT'S NOT AN ALL INCLUSIVE LIST AND WE PREPARED

20  TOO MANY PRETRIAL CONFERENCE ORDERS.  I MEAN, WHAT MR. TURNER

21  IS ASKING ME IS TO MAKE THIS DOCUMENT 20 PAGES, INCLUDING ALL

22  THE DIFFERENT PERMUTATION.  THE LANGUAGE CLEARLY SAYS,

23  WITHOUT LENDING THE GENERAL APPLICATION, HERE'S WHAT'S FALSE

24  AND DECEPTIVE.  IT COULD BE A NUMBER OF THINGS AND, HERE,

25  WE'RE ALLEGING, AND WE'VE ALWAYS ALLEGED THAT, NOT ONLY IS

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

1  THIS STATEMENT A THREAT TO TAKE LEGAL ACTION THAT WASN'T

2  INTENDED, IT'S ALSO FALSE AND DECEPTIVE.  I MEAN, ONE IS

3  ALWAYS CONTINGENT ON THE OTHER.  IT'S NOT A DIFFERENT THEORY.

4  AND I DON'T THINK IT'S GOING TO TAKE MR. TURNER ANY

5  ADDITIONAL EVIDENCE, ANY ADDITIONAL TIME, TO TRY TO DEFEND

6  THAT CAUSE.  THEY'RE ONE IN THE SAME.

7          MR. TURNER:  YOUR HONOR, IF YOU LOOK TO THE NEXT

8  PAGE OF THE PRETRIAL ORDER, WHICH I CAN BRING BACK TO YOU.

9          THE COURT:  WHICH PAGE?

10          MR. TURNER:  PAGE 7, EVIDENCE RELIED UPON TO PROVE

11  CLAIM, "PLAINTIFF PRESENTED AT THE TIME OF TRIAL THIRD-PARTY

12  WITNESSES WHO RECEIVED NUMEROUS TELEPHONE CALLS FROM

13  DEFENDANTS AND DISCUSSED PLAINTIFFS DEBT WITH HER."  SUCH

14  COMMUNICATIONS VIOLATE SECTIONS OF FDCPA.  WE HAVE TO GO BACK

15  TO THE FACTUAL CONTENTIONS OF THIRD-PARTY DISCLOSURE.  I'M

16  NOT SAYING THAT PLAINTIFF IS BOUND BY FACTUAL CONTENTIONS,

17  ALTHOUGH, THAT IS A COLORABLE ARGUMENT.  IT'S CERTAINLY

18  BOUND -- PLAINTIFF IS CERTAINLY BOUND BY THE PRETRIAL RULE.

19          MR. SWIGART:  I AGREE, MR. TURNER.  WE'RE BOUND BY

20  THE PRETRIAL ORDER.  BUT HE CAN'T PULL JUST ONE PARAGRAPH OUT

21  OF PAGE 7 AND SAY, "WELL, THIS IS WHAT YOU SAID ONE OF YOUR

22  THEORIES WAS WHEN YOU WENT TO TRIAL."

23          THE COURT:  MOTION IS DENIED.  LET'S PROCEED.

24  LET'S TAKE A BREAK.  WHY DON'T WE TAKE TEN MINUTES.

25          MR. TURNER:  YOUR HONOR, THERE WASN'T REALLY A

1    MOTION WITH REGARD TO THAT ISSUE.  I WAS RESPONDING TO

2    THEIR -- TO PLAINTIFF'S BRIEF.

3          THE COURT:  I'M SORRY.  I THOUGHT I HAD SEEN A

4    MOTION TO HAVE THAT EXCLUDED.  THAT'S A THEORY?

5          MR. TURNER:  IT'S JUST SOMETHING THAT WAS RAISED

6    FOR THE FIRST TIME NOW.

7          THE COURT:  WHAT IS IT YOU'RE --

8          MR. TURNER:  I'M SIMPLY JUST ADDRESSING THIS ISSUE

9    TO THE COURT.

10         THE COURT:  ALL I'M TELLING YOU IS THAT I WOULD

11   CONSIDER ALL OF THE EVIDENCE THAT'S BEEN PRESENTED.

12         MR. TURNER:  THANK YOU, YOUR HONOR.

13         THE COURT:  THANK YOU.  TAKE TEN MINUTES.

14         (RECESS WAS TAKEN).

15         THE COURT:  BACK ON THE RECORD.  READY WITH THE

16   NEXT WITNESS.

17         BY MR. TURNER:  THANKS, YOUR HONOR.  MIDLAND CREDIT

18   MANAGEMENT CALLS RITA MELCONIAN.

19

20         RITA MELCONIAN, PLAINTIFF'S WITNESS, SWORN

21         THE CLERK:  PLEASE STATE YOUR NAME FOR THE RECORD

22   AND SPELL YOUR NAME.

23         THE WITNESS:  RITA MELCONIAN.  FIRST NAME, R-I-T-A,

24   LAST NAME, M-E-L-C-O-N-I-A-N.

25         THE COURT:  THANK YOU.  YOU MAY INQUIRE.

1   EVENT THAT'S RECORDED ON THE NOTES?

2   A.   THE NEXT EVENT WOULD BE SEQUENCE NO. 19.   THERE'S A CODE

3   PLACED ON THE ACCOUNT.   THIS WAS DATED APRIL 1ST, 2003, BY

4   THE COLLECTOR, IT STATES "LOTTO ACCOUNT," WHICH IS WHEN

5   SOMEBODY BASICALLY GIVES UP ON AN ACCOUNT AND RELEASES IT

6   BACK TO THE GENERAL POPULATION OF ACCOUNTS.

7   Q.   LOOK AT -- WHAT DOES SEQUENCE 20 REFER TO?

8   A.   THAT WAS APRIL 2ND, 2003.   THE ACCOUNT WAS SENT TO MCM

9   LEGAL QUE L-01, WHICH IS THE FIRST STEP IN MOVING THE ACCOUNT

10  TOWARDS LITIGATION.

11  Q.   AND THEN WHAT IS THE NEXT EVENT THAT IS RECORDED HERE ON

12  THIS ACCOUNT?

13  A.   SEQUENCE 21, DATED APRIL 8TH, 2003, THE NOTES REFLECT

14  THAT THE ACCOUNT WAS APPROVED FOR THE RECOVERY TEAM FOR

15  PLACEMENT FROM A PLACEMENT STREAM PROGRAM AND A PRELEGAL

16  LETTER WAS SENT.

17  Q.   AND I SEE DOWN HERE ON SEQUENCE 23, THE ACCOUNT IS

18  TRANSFERRED TO QUE A-11.

19       DO YOU SEE THAT?

20  A.   YES, CORRECT.

21  Q.   WHAT DOES THAT MEAN?

22  A.   WELL, THAT WAS PRECIPITATED BY SEQUENCE 22, WHICH THE

23  ACCOUNT WAS TRANSFERRED DUE TO NO ACTIVE PHONE, AND SO THEN

24  IN SEQUENCE 23, IT WAS PLACED IN A-11, ANOTHER SKIP TRACING

25  QUE, FOR ACCOUNTS THAT ARE BEING MOVED TOWARDS LITIGATION.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

1  MONEY IS COLLECTED; AND FOR ACCOUNT MANAGERS, OBVIOUSLY, THE

2  MORE MONEY THAT THEY COLLECT THE HIGHER THEIR COMMISSION WILL

3  BE.

4  Q.    NOW, ANOTHER POINT -- THANK YOU -- I WANTED TO TALK

5  ABOUT.    IN YOUR YEARS AT MIDLAND CREDIT MANAGEMENT, ARE YOU

6  AWARE OF -- DOES MIDLAND CREDIT MANAGEMENT FILE LAWSUITS IN

7  AN ATTEMPT TO COLLECT DEBTS?

8  A.    YES, ALL THE TIME.    WE HAVE AN ENTIRE DEPARTMENT

9  DEDICATED TO MANAGING THAT RELATIONSHIP WITH THE LAW FIRMS

10  BECAUSE WE DO FILE SUIT IN ALL 50 STATES.

11  Q.    NOW, IF YOU'D TURN TO EXHIBIT 20, PLEASE.

12  A.    ALREADY THERE.

13  Q.    COULD YOU LOOK AT THE FOUR PAGES OF EXHIBIT 20 AND TELL

14  ME WHAT THESE PAGES OF THIS DOCUMENT IS.

15  A.    THESE ARE PRINTOUTS OF THE COMPUTER SCREENS, BASICALLY,

16  OUTLINING OUR CREDIT REPORTING ACTIVITY FOR ACCOUNT NUMBER

17  8501175770.

18  Q.    LOOKING OVER TO THE SECOND PAGE.

19  A.    OKAY.

20  Q.    NOW, I SEE A "COM" UNDER DATE.

21  A.    YES.

22  Q.    THIS GOES IN REVERSE -- I THINK WE NEED TO GO OVER TO

23  THE LAST PAGE.    I'M SORRY.

24  A.    (WITNESS COMPLIES).

25  Q.    SO WE GO THERE, AND THERE'S A NOTE AT THE BOTTOM.

1    WHAT'S THE LAST ENTRY, IF YOU WILL, ON THE LAST PAGE?

2    A.    THAT WOULD BE JANUARY 9TH, 2002.

3    Q.    THEN UNDER "COLUMN STAT," WHAT DOES THAT REFER TO?

4    A.    THE COM CODE.

5    Q.    WHAT DOES THAT MEAN?

6    A.    THE COM CODE, BASICALLY, IF THERE'S AN X IN THAT COLUMN,

7    IT DENOTES THAT THE ACCOUNT IS BEING DISPUTED AND THAT

8    ADDITIONAL INFORMATION WOULD BE SENT TO THE CREDIT REPORTING

9    AGENCIES IN ADDITION TO WHATEVER THE STATUS IS OF THE

10   ACCOUNT.

11   Q.    SO IS IT ACCURATE TO SAY THAT UP THROUGH MARCH 13TH,

12   MIDLAND CREDIT MANAGEMENT WAS REPORTING THIS AS NOT BEING

13   DISPUTED?

14   A.    CORRECT.

15   Q.    AND THEN WE HAVE AN ENTRY DATED "20020412."

16         AND WHAT DOES THAT X CODE INDICATE THERE, THE X

17   UNDER THE COM CODE?

18   A.    BASICALLY, DENOTES THAT THE ACCOUNT IS IN DISPUTE, SO IN

19   ADDITION TO REPORTING THE ACCOUNT AS BEING SERIOUSLY PAST

20   DUE, IT'S ALSO ANNOTATED ON THE FILE THAT IT'S IN DISPUTE.

21   Q.    SO YOU SAID IT INDICATES, IT'S BEING REPORTED AS

22   DISPUTED?

23   A.    CORRECT.

24   Q.    BY THE CONSUMER?

25   A.    CORRECT.  THE CONSUMER HAS DISPUTED WITH US AND,

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT**

1    THEREFORE, WE TURN AROUND AND CHANGE THE REPORTING TO THE

2    BUREAUS TO REFLECT THAT THEY ARE, IN FACT, DISPUTING THE

3    ACCOUNT.

4    Q.    THE BUREAUS ARE THE THREE CREDIT BUREAUS?

5    A.    THAT IS CORRECT.  YOU HAVE EQUIFAX, EXPERIAN, AND

6    TRANSUNION.

7    Q.    SO IS IT ACCURATE TO SAY, THEN -- LET ME ASK THIS, HOW

8    IS THIS INFORMATION COMMUNICATED BY MIDLAND CREDIT MANAGEMENT

9    TO THE THREE CREDIT BUREAUS?

10   A.    BASICALLY, ONCE A MONTH ALL THE INFORMATION IS ON THESE

11   DATA TAPES, ELECTRONIC DATA TAPES THAT WE SUBMIT TO THE

12   CREDIT REPORTING AGENCIES AT THE SAME TIME.  THE SAME

13   INFORMATION GOES TO ALL THREE.

14   Q.    IT'S SENT OUT AT THE SAME TIME?

15   A.    CORRECT.

16   Q.    AFTER THE INFORMATION IS SENT OUT TO THE THREE CREDIT

17   BUREAUS, IS THERE -- WHAT CONTROL OVER -- WHAT CONTROL DOES

18   MIDLAND CREDIT MANAGEMENT HAVE OVER HOW THE CREDIT BUREAUS

19   REPORT THE DEBT?

20   A.    NONE.  ALL WE CAN DO IS ENSURE THAT WE SEND OUT THE

21   PROPER INFORMATION AND THEN HOW IT GETS TRANSLATED IS NOT

22   SOMETHING THAT WE CAN CONTROL.

23   Q.    SO AFTER IT'S BEEN SENT OUT AS BEING DISPUTED, IS THERE

24   ANYTHING ELSE THAT MIDLAND CREDIT MANAGEMENT CAN DO?

25   A.    NO, NOT AT ALL.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT**

1   FIRST SELECT INCORPORATED ON 1-9-02."

2   A.   CORRECT.

3   Q.   IS FIRST SELECT INCORPORATED ONE OF YOUR CLIENTS OR YOUR

4   CUSTOMERS?

5   A.   THERE ARE A RESELLER.

6   Q.   ONE OF THE RESELLERS THAT YOU SERVICE; IS THAT CORRECT?

7   A.   NOT THAT WE -- WELL, WE DON'T SERVICE ACCOUNTS FOR THEM.

8   THEY'RE RESELLERS TO OUR AFFILIATES.  WE SERVICE THE ACCOUNTS

9   FOR OUR AFFILIATE, MRC RECEIVABLES.

10  Q.   I SEE.  IS MRC RECEIVABLES OWNED BY MCM?

11  A.   NO.

12  Q.   ALL RIGHT.  LET'S TAKE A LOOK, AGAIN, TURNING THE NEXT

13  PAGE TO EXHIBIT 20.  AND LET'S GO TO THE BACK PAGE.  SINCE IT

14  SEEMS TO BE IN REVERSE CHRONOLOGICAL ORDER, IT MAKES SENSE TO

15  GO TO THE VERY LAST PAGE.

16       ACCORDING TO YOUR TESTIMONY A FEW MOMENTS AGO, THE

17  "X" UNDERNEATH THE COM CODE INDICATES THAT YOU HAVE REPORTED

18  A DEBT AS DISPUTED TO ITS CREDIT REPORTING AGENCIES; IS THAT

19  CORRECT?

20  A.   THAT IS CORRECT.

21  Q.   AND ACCORDING TO MY READING OF THIS, APRIL 12, '02 WAS

22  THE FIRST DATE THAT YOU REPORTED THIS INFORMATION TO CREDIT

23  REPORTING AGENCIES AS DISPUTED; IS THAT CORRECT?

24  A.   THAT IS CORRECT.

25  Q.   AND YOU SUBSEQUENTLY REPORTED ON EACH OF THE ADDITIONAL

1    DATES BEYOND THAT, FOR EXAMPLE, MARCH 20TH, JUNE 12TH -- EACH

2    OF THOSE DATES -- THIS INFORMATION WAS RE-REPORTED; IS THAT

3    CORRECT?

4    A.    MARCH 20TH?  MAY 20TH?

5    Q.    MAY 20TH.

6    A.    YES.

7    Q.    AND SO ACCORDING TO MY READING OF THIS -- AND CORRECT ME

8    IF I'M WRONG -- BEFORE THE DATE OF APRIL 9, 2003, YOU

9    REPORTED TO CREDIT REPORTING AGENCIES 13 TIMES, IS THAT YOUR

10   COUNT?

11   A.    BEFORE APRIL 9TH?

12   Q.    YES.

13   A.    OF WHAT YEAR?

14   Q.    OF 2003.

15   A.    2003.   THIRTEEN TIMES AS AN ACCOUNT IN DISPUTE?

16   Q.    YES.

17   A.    YES.

18   Q.    IS THAT CORRECT?

19   A.    YES.

20   Q.    AND THERE'S NOTHING ON THIS PAGE OR IN THIS DOCUMENT TO

21   INDICATE WHICH CREDIT REPORTING AGENCIES YOU REPORTED TO; IS

22   THAT CORRECT?

23   A.    WE REPORTED TO ALL THREE AT THE SAME TIME.

24           THE COURT:  JUST RESPOND TO THE QUESTION.  IS THERE

25   ANYTHING ON THIS THAT INDICATES WHEN IT WAS REPORTED?

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT**

CERTIFICATE OF REPORTER

COUNTY OF LOS ANGELES        )
                             )  SS.
STATE OF CALIFORNIA          )

     I, ROSALYN ADAMS, OFFICIAL COURT REPORTER, IN AND

FOR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT

OF CALIFORNIA, DO HEREBY CERTIFY THAT I REPORTED,

STENOGRAPHICALLY, THE FOREGOING PROCEEDINGS AT THE TIME AND

PLACE HEREINBEFORE SET FORTH; THAT THE SAME WAS THEREAFTER

REDUCED TO TYPEWRITTEN FORM BY MEANS OF COMPUTER-AIDED

TRANSCRIPTION; AND I DO FURTHER CERTIFY THAT THIS IS A TRUE

AND CORRECT TRANSCRIPTION OF MY STENOGRAPHIC NOTES.

DATE:  APRIL 8, 2005

_____
ROSALYN ADAMS / CSR 11794
OFFICIAL COURT REPORTER

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

SER 441

Case 2:20-cv-02040-WQH-DD Document 162-1 Filed 03/12/17 PageID.29680 Page 315 of
1196

Exhibit J

1    UNITED STATES OF AMERICA

2    UNITED STATES DISTRICT COURT

3    CENTRAL DISTRICT OF CALIFORNIA

4    CENTRAL DIVISION

5    - - -
     HONORABLE GEORGE P. SCHIAVELLI
6    UNITED STATES DISTRICT JUDGE PRESIDING
     - - -
7

8    DARREN DEL NERO, ET AL.,          )
                                       )    COPY
9              PLAINTIFF,              )
                                       )
10   VS.                               )   CV 04-1040-GPS(SHX)
                                       )
11   MIDLAND CREDIT MANAGEMENT,        )
     INC., ET AL.,                     )
12                                     )
               DEFENDANTS.             )
13   _____)

14

15       *TRIAL TESTIMONY OF DARREN DEL NERO - DAY 4*

16             *LOS ANGELES, CALIFORNIA*

17            *TUESDAY, MARCH 22, 2005*

18

19

20

21

22             *ROSALYN ADAMS, CSR 11794*
               *OFFICIAL COURT REPORTER*
23             *100 UNITED STATES COURTHOUSE*
               *312 NORTH SPRING STREET, ROOM 410*
24             *LOS ANGELES, CALIFORNIA 90012*
               *(213) 894-2665*
25

1        MR. DEL NERO, YOU UNDERSTAND, SIR, YOU HAVE BEEN

2   SWORN AND YOU'RE STILL UNDER OATH?

3        THE WITNESS:  YES, I DO.

4        THE COURT:  MR. TURNER.

5        MR. TURNER:  YES.  THANK YOU, YOUR HONOR.

6

7        CROSS-EXAMINATION (CONTINUED)

8   BY MR. TURNER:

9   Q.   GOOD MORNING, MR. DEL NERO.

10  A.   GOOD MORNING.

11  Q.   MR. DEL NERO, I WANT TO MOVE ON TO -- FROM THE SUBJECT

12  OF THE LAWSUIT AGAINST YOUR MOTHER IN SAN BERNARDINO TO

13  ANOTHER AREA, A COUPLE OF POINTS I WANTED TO CLARIFY ON

14  ANOTHER AREA ABOUT THE NAMES YOU USED.

15       YOU SAID THAT YOU SOMETIMES USED THE NAME CHAKER TO

16  FILE LAWSUITS, THE NAME CHAKER, AND SOMETIMES DEL NERO,

17  DEPENDING ON WHETHER OR NOT -- THE NAME OF THE DEBT THAT'S

18  TRYING TO BE COLLECTED; IS THAT CORRECT?

19  A.   CORRECT.

20  Q.   AND YOU USED THE NAME CHAKER WHEN YOU SUED YOUR MOTHER;

21  IS THAT CORRECT?

22  A.   CORRECT.

23  Q.   BUT YOUR MOTHER WASN'T TRYING TO COLLECT A DEBT FROM

24  YOU?

25  A.   CORRECT.

1          (THE ANSWER WAS READ BACK BY THE REPORTER.)

2    BY MR. TURNER:

3    Q.   I DIDN'T FULLY --

4          MR. TURNER:  I'M SORRY.  EXCUSE ME, MS. COURT

5    REPORTER.

6    Q.   I DIDN'T FULLY UNDERSTAND THE REFERENCE TO MR. HYDE AND

7    MR. SWIGART, WHAT WERE YOU SAYING ABOUT THEM, SIR?

8    A.   OH, OKAY.  FOR EXAMPLE, WITH THEIR LAWSUITS, THEY HAVE

9    ME SIGN A FORM -- I THINK IT'S A VERIFICATION -- THAT I'VE

10   READ IT.  I THINK WE WENT OVER THIS WITH ANOTHER LAWSUIT THAT

11   YOU PROVIDED ME ON THURSDAY.  AND IT SAYS THAT I'VE READ THE

12   LAWSUIT, ET CETERA.  FOR EXAMPLE, WITH LAWSUITS THAT

13   MR. STEMPLAR MAY HAVE FILED ON MY BEHALF, I DIDN'T READ EVERY

14   SINGLE SENTENCE.  IN FACT, WHEN MY -- BEFORE YOUR CLIENT

15   SETTLED WITH MY MOM, HER NAME WAS --

16         MR. TURNER:  YOUR HONOR, SIDEBAR.

17         THE COURT:  YEAH.  SIDEBAR.

18              (SIDEBAR.)

19         MR. TURNER:  THERE WAS A MOTION IN LIMINE.

20   MR. HYDE AND MR. SWIGART ARE HONORABLE MEN, HONORABLE

21   COUNSEL.  THEY DID NOT IMPOSE THAT THERE WOULD BE ANY

22   REFERENCE TO THAT, AND IT IS JEOPARDIZING MY CLIENT'S RIGHTS

23   AT THIS POINT.

24         MR. HYDE:  I'M NOT CLEAR ON WHAT THE ISSUE WAS.

25         THE COURT:  HE WASN'T MENTIONED IN THIS SETTLEMENT.

1   WHAT IS HE DOING TALKING ABOUT A SETTLEMENT IN THIS CASE?

2   　　　　MR. SWIGART:  I'VE INSTRUCTED HIM NOT TO TALK ABOUT

3   THAT, AS A COURT ORDER.

4   　　　　THE COURT:  IT'S NOW IN VIOLATION OF A COURT ORDER.

5   AS FAR AS I'M CONCERNED, WE HAVE ANOTHER CONTEMPT, AND IT

6   DOES IMPACT THE JURY.

7   　　　　MR. TURNER:  I'M GOING TO ASK FOR THE CASE TO BE

8   DISMISSED, YOUR HONOR.

9   　　　　THE COURT:  LET ME GET THE JURY OUT.

10   　　　　　　　　(END OF SIDEBAR.)

11   　　　　THE COURT:  LADIES AND GENTLEMEN, I'M GOING TO ASK

12   YOU TO GO BACK INTO THE JURY ROOM, PLEASE.

13   　　　　　　(THE JURORS EXIT THE COURTROOM.)

14   　　　　THE COURT:  FOR THE RECORD, THE JURORS ARE NO

15   LONGER PRESENT.  AS I'VE JUST INDICATED AT SIDEBAR, IT IS MY

16   UNDERSTANDING THAT IT WAS VERY CLEAR THERE WAS TO BE NO

17   REFERENCE TO ANY OTHER SETTLEMENTS IN THIS CASE.  THIS

18   WITNESS HAS JUST TESTIFIED AND SPECIFICALLY I'M LOOKING AT

19   THE TRANSCRIPT HERE TO A SETTLEMENT WITH HIS MOTHER.

20   　　　　WHY DID THAT HAPPEN?  AND I DO THINK IT PREJUDICES

21   THE DEFENSE HERE.

22   　　　　MR. SWIGART:  YOUR HONOR, I DON'T KNOW WHY IT

23   HAPPENED.  THERE'S NO EXCUSE.  I THINK IT JUST SLIPPED OUT IN

24   HIS TESTIMONY.

25   　　　　THE COURT:  WAS THE WITNESS INSTRUCTED NOT TO

1    REFERENCE IT?

2          MR. SWIGART:  WE INSTRUCTED EVERY ONE OF OUR

3    WITNESSES THAT IT WAS A MOTION IN LIMINE THAT WAS GRANTED BY

4    THE COURT.

5          MR. HYDE:  YOUR HONOR, IF I COULD BE HEARD ON THAT.

6          THE COURT:  YOU MAY.

7          MR. HYDE:  AS I MENTIONED TO YOU, I'M NOT

8    SUGGESTING WHAT HE SAID.  OBVIOUSLY --

9          THE COURT:  IT'S HERE.  IT'S ON THE TRANSCRIPT.

10         MR. HYDE:  YOUR HONOR, I'M NOT SUGGESTING -- I

11    ACTUALLY DIDN'T CATCH IT MYSELF.  MAYBE I WASN'T LISTENING AS

12    CLOSELY AS I SHOULD HAVE.  I THINK A REFERENCE TO A

13    SETTLEMENT BETWEEN MR. DEL NERO AND MS. CHAKER MAY HAVE VERY

14    WELL BEEN TAKEN BY THE JURY TO BELIEVE IT WAS BETWEEN -- WITH

15    REGARD TO THIS TRO THAT WAS FILED, NOT NECESSARILY WITH

16    REGARD TO ANY LAWSUIT.  BUT AGAIN, I DIDN'T HEAR THE WHOLE

17    THING.  SO I DON'T WANT YOU TO BELIEVE THAT I DID.

18         THE COURT:  HOLD ON.

19         IT SAYS, IN FACT, "BEFORE YOUR CLIENT SETTLED WITH

20    MY MOM.  HER NAME WAS" -- I CAN'T CATCH THE PHONETIC.  THIS

21    WASN'T A REFERENCE TO A SETTLEMENT IN A CASE WITH HIS MOTHER.

22    AS FAR AS I'M CONCERNED, IT'S A CONTEMPT BY MR. DEL NERO.

23         MR. TURNER.

24         MR. TURNER:  YOUR HONOR, AS I SAID AT SIDEBAR AND

25    I'VE SAID THROUGHOUT THIS CASE, MR. HYDE AND MR. SWIGART ARE

1  FINE LAWYERS AND FINE MEN. I DON'T JUST RESPECT THEM, I LIKE

2  THEM. THEY'RE NOT JUST LAWYERS, THEY'RE GOOD GUYS.

3        THE COURT: I'LL EXPECT TO SEE YOU ALL HAVING

4  LUNCH.

5        MR. TURNER: AT SOME POINT WE DISCUSSED HAVING

6  LUNCH AFTERWARDS, YOUR HONOR.

7        BUT MY FEELING FOR MR. DEL NERO IS VERY STRONG AND

8  FUNDAMENTALLY DIFFERENT. I'VE SAID IT IN PLEADINGS. I THINK

9  IT'S COME OUT IN THIS HEARING. THIS WAS NO MISTAKE. MR. DEL

10 NERO KNOWS HE'S GOING DOWN. THIS CASE IS GOING BADLY. WE

11 HAVE THE TESTIMONY ABOUT WHAT HE SAID ABOUT HIS MOTHER, AND

12 NOW HE WILLFULLY OBEYS YOUR ORDER. I HAVE TWO CHOICES --

13        THE COURT: "OBEYS"?

14        MR. TURNER: WILLFULLY DISOBEYS -- I'M SORRY --

15 YOUR ORDER. I MEANT "DISOBEYS" YOUR ORDER. 5THERE'S ONLY

16 ONE FAIR AND EQUITABLE RESULT. HIS CLAIM MUST BE DISMISSED.

17 WE LITIGATED THIS CASE. IT'S BEEN EXPENSIVE. IT'S BEEN A

18 HORROR. IT WAS A FIGHT THAT WE FELT WAS WORTH FIGHTING, BUT

19 MY CLIENT SHOULD NOT BE REQUIRED TO FIGHT IT TWICE. WITH

20 CONSIDERABLE, ENORMOUS EXPENSE, WE'VE GONE FORWARD TO DO

21 THIS. HE WILLFULLY DISOBEYED YOUR ORDER. HE IS A VERY

22 CLEVER MAN. HE HAS NO DESIRE TO HAVE THIS CASE GO FORWARD.

23 HE'S TRYING TO PREJUDICE THE JURY, AND HE DID. IT'S

24 THOUSANDS UPON THOUSANDS OF DOLLARS HAVE BEEN SPENT TO BE

25 READY TO LITIGATE THIS CASE. THE ANGER THAT I FEEL IS

1    IMMENSE.  IT IS NOT AT ALL DIRECTED TO OPPOSING COUNSEL; IT

2    IS TO MR. DEL NERO, A VERY EXPERIENCED LITIGANT.  WHETHER

3    IT'S A THOUSAND LAWSUITS OR IT'S 20, HE KNOWS WHAT HE'S

4    DOING.  AND HE KNEW WHAT HE WAS DOING THEN.

5         THIS CASE MUST BE DISMISSED.  JUSTICE DEMANDS THAT

6    IT BE DISMISSED, YOUR HONOR.  IT'S OVER NOW.  MR. DEL NERO

7    CAN GO ON TO HIS MANY OTHER LAWSUITS.  BUT THIS ONE IS OVER.

8    MY CLIENT SHOULDN'T BE REQUIRED TO DO THIS TWICE.  AND TO

9    ALLOW THIS TO GO FORWARD, WE'RE SIGNIFICANTLY PREJUDICED NOW.

10   THE ONLY EQUITABLE RESULT IS TO DISMISS IT THIS MORNING.

11        MR. HYDE:  YOUR HONOR?

12        THE COURT:  YEAH.  YOU MAY.

13        MR. HYDE:  I DON'T KNOW MR. DEL NERO'S MOTIVATION

14   FOR SAYING WHAT HE DID.  I WILL SAY THIS:  I BELIEVE THAT IT

15   WAS PROBABLY AN OVERSIGHT ON HIS PART.  I DON'T KNOW THAT IT

16   HAS A SERIOUS PREJUDICIAL EFFECT.  I THINK WE CAN PROBABLY

17   INSTRUCT THE JURY AS TO THE ISSUES ON IT.  OBVIOUSLY,

18   DISMISSING THE CASE IS AN EXTREME SANCTION IN A CASE LIKE

19   THIS WHERE, IN MY OPINION -- PERHAPS, YOU'D LIKE TO DISCUSS

20   IT WITH MR. DEL NERO.  I DON'T KNOW.

21        THE COURT:  I'M NOT GOING TO HOLD A CONTEMPT

22   HEARING RIGHT NOW.  WHAT I NEED TO DO -- REGARDLESS OF THE

23   REASON, IT CAME OUT.  THE JURY HAS NOW BEEN TOLD THAT THE

24   DEFENSE, WHICH HAS BEEN VIGOROUSLY CONTESTING WHETHER THERE

25   WAS ANY -- WHETHER ANY OF WHAT HAS BEEN ALLEGED OCCURRED HAS

1   NOW BEEN TOLD THAT THE DEFENSE SETTLED WITH MR. DEL NERO'S

2   MOTHER.  TOTALLY INAPPROPRIATE, TOTALLY IMPROPER.

3           I DON'T KNOW THAT -- WHAT ARE YOU SUGGESTING SHORT

4   OF DISMISSAL, THAT I RERAISE IT AND TELL THEM NOT TO THINK

5   ABOUT IT?

6           MR. HYDE:  NO, YOUR HONOR.  BUT I BELIEVE THAT --

7   AND AGAIN, BASED ON WHAT YOU JUST READ TO ME, I BELIEVE THAT

8   THE STATEMENT WAS "WHEN YOUR CLIENT SETTLED WITH MY

9   MOTHER" -- IT WASN'T WHEN YOUR CLIENT SETTLED WITH MY MOTHER

10  ON THIS PARTICULAR OCCASION.  THE FACTS ARE IN QUESTION HERE.

11  IT COULD HAVE BEEN ANY LAWSUIT.  IT COULD HAVE BEEN ANYTHING

12  THAT COULD HAVE SETTLED THIS.

13          THE COURT:  HAS THERE BEEN ANY OTHER REFERENCE TO A

14  SUIT BETWEEN -- ANYTHING INVOLVING HIS MOTHER AND MIDLAND?

15          MR. HYDE:  I DON'T THINK THERE HAS.

16          THE COURT:  NO, THERE HASN'T.  SO WHAT DO YOU THINK

17  THE JURY IS GOING TO FIGURE OUT?

18          MR. HYDE:  WELL, I DON'T THINK THERE WAS ANY

19  REFERENCE TO A LAWSUIT BETWEEN MIDLAND AND HIS MOTHER WITH

20  REGARD TO THE FACTS EITHER.  I GUESS MY POINT IS, EVEN IF THE

21  JURY --

22          THE COURT:  THE JURY HAS BEEN TOLD HIS MOTHER WAS

23  CONTACTED ABOUT HIS DEBT.  THE JURY HAS BEEN TOLD THAT SHE

24  WAS VERY UPSET.  THE JURY HAS BEEN TOLD THAT SHE WAS SO UPSET

25  SHE DIDN'T WANT TO OPEN THE DOOR, SHE WAS TERRIFIED.  SHE

```
1    FINALLY STOPPED USING THE PHONE. THE JURY HAS NOW BEEN TOLD

2    THAT SHE SETTLED HER LAWSUIT WITH MIDLAND.

3         DO YOU THINK THE JURY IS GOING TO THINK UP IN ITS

4    MIND, WELL, GEE, MAYBE THERE WAS ANOTHER LAWSUIT?

5         MR. HYDE:  I'M NOT GOING TO SPEAK FOR THE JURY.  I

6    WILL SAY --

7         THE COURT:  EXACTLY.

8         MR. HYDE:  -- THAT NO REFERENCE WAS MADE TO A

9    LAWSUIT INVOLVING MIDLAND AND NICOLE CHAKER WITH REGARD TO

10   THESE FACTS.  I DON'T KNOW IF THE JURY NECESSARILY PUTS THAT

11   TOGETHER AND SAYS, GEE, IT MUST HAVE BEEN A LAWSUIT BETWEEN

12   MIDLAND AND MS. CHAKER REGARDING THE ISSUES THAT WE'RE

13   TALKING ABOUT HERE TODAY.

14        THE COURT:  SO WHAT ARE YOU SUGGESTING?  JUST A FEW

15   MINUTES AGO IT WAS SUGGESTED THAT WE INSTRUCT THE JURY.  IF

16   WE INSTRUCT THE JURY, IT MAKES IT CLEAR FOR THIS LAWSUIT.

17        SHOULD WE CONTRIVE ANOTHER LAWSUIT AND SEE IF MAYBE

18   THEY'D SETTLE IN ANOTHER LAWSUIT?  NO.

19        MR. HYDE:  I GUESS I WOULD LEAVE THAT UP TO THE

20   RULING OF THE COURT.  I THINK THAT --

21        THE COURT:  WELL, YOU CAN EXERCISE -- IT'S BEEN

22   SUGGESTED BY THE DEFENSE, AGAIN, VIGOROUSLY, THAT THIS CASE

23   SHOULD BE DISMISSED.  I WILL TELL YOU I AM ENTERTAINING THAT

24   AT THIS POINT, GIVEN EVERYTHING THAT'S OCCURRED SO FAR.

25        NOW, WHAT ARE YOU SUGGESTING?  THIS CLEARLY
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

1   VIOLATES AN ORDER, AN ORDER YOU AGREED THAT YOU INSTRUCTED

2   MR. DEL NERO NOT TO MENTION IT.  HE'S ALREADY GONE AHEAD AND

3   DONE IT FOR WHATEVER REASON.

4           WHAT ARE YOU SUGGESTING?

5           MR. HYDE:  MY SUGGESTION IS YOU GIVE A LIMITING

6   INSTRUCTION TO THE JURY.  I CAN'T THINK OF ANY --

7           THE COURT:  AND TELL THEM WHAT?

8           MR. HYDE:  MISTRIAL WOULD BE POSSIBLE, ALSO.

9           MR. TURNER:  MAY I SPEAK?

10          THE COURT:  YOU MAY.  GO AHEAD.

11          MR. TURNER:  YOUR HONOR, WE'VE LITIGATED THIS CASE.

12  THIS IS THE SECOND TIME WE PREPARED FOR TRIAL.  MR. FRARY HAS

13  COME UP FROM SAN DIEGO.  ALL THIS TIME WE HAD WITNESSES

14  READY.  THOUSANDS, UPON THOUSANDS, UPON THOUSANDS OF DOLLARS

15  HAVE BEEN INVESTED IN THIS CASE BECAUSE WE DON'T BELIEVE

16  MR. DEL NERO FOR A MOMENT BECAUSE HE'S ABUSED THE JUDICIAL

17  PROCESS.  IT IS COMPLETELY UNFAIR TO MY CLIENT THAT AFTER HE

18  HAS OBLITERATED HIS CASE THAT HE NOW IS ABLE --

19          THE COURT:  WELL, DON'T SUGAR COAT IT.  WHAT DO YOU

20  THINK?

21          MR. TURNER:  THAT HE'S NOW ABLE TO GET A REDO.  HE

22  GETS A REDO BECAUSE HE WILLFULLY, OR NOT WILLFULLY -- I

23  BELIEVE IT'S WILLFULLY.  HE'S AN EXPERIENCED LITIGATOR.  HE

24  VIOLATED YOUR ORDER AND GETS A REDO.

25          NOW THAT WE'VE SHOWN HIM THAT HE FILED THINGS THAT

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

1    HE SAID ABOUT HIS MOTHER, HIS STAR WITNESS, HE GETS A REDO.

2    NO, NO, NO.  THERE IS ONLY ONE SOLUTION AND THAT IS THE CASE

3    NEEDS TO BE DISMISSED.  IT NEEDS TO BE DISMISSED THIS

4    MORNING.  IT IS NOT FAIR.

5              THIS IS NOT AN UNSOPHISTICATED MAN, YOUR HONOR.

6    THIS IS A MAN WHO HAS ABUSED THE JUDICIAL PROCESS SINCE THE

7    EARLY '90S.  HE TESTIFIED THAT -- WE CAN GO ON AND ON ABOUT

8    THE DIFFERENT ASPECTS ABOUT MR. DEL NERO'S COLORFUL PAST.

9    HE'S ABUSED THE PROCESS.  HE TALKED ABOUT HOW HE SUED

10   COLLECTION AGENCIES.  HE DIDN'T JUST SUE COLLECTION AGENCIES.

11   IN OTHER CASES -- IN YOUR COURTROOM WHERE HE USED HIS OTHER

12   NAME, REPRESENTED BY HYDE AND SWIGART, HE SAID THE "EUROPEAN

13   AUTO" -- SOMEONE.

14             THE COURT:  IT'S ALL RIGHT.  I'M FAMILIAR.

15             MR. TURNER:  IN THAT CASE THAT THEY IMPROPERLY

16   LOOKED AT HIS CREDIT REPORT AND IT WAS SOME MYSTERIOUS

17   APPLICATION FOR A CAR THAT HE DIDN'T DO.  HE IS A VERY

18   SOPHISTICATED MAN.  THERE'S EVERY REASON TO BELIEVE HERE,

19   YOUR HONOR, THIS MORNING HE KNEW HE WAS GOING DOWN AND HE WAS

20   GOING DOWN HARD, AND SO NOW HE WANTS A REDO.  "I'D LIKE TO

21   TRY A SECOND CHANCE.  NOW, I KNOW WHAT THEY'RE GOING TO SAY

22   ABOUT ME THIS TIME."  IT'S NOT RIGHT.  IT'S NOT LIKE THIS IS

23   SOME SIMPLE LITTLE MAN WHO GOT SOME TERRIBLE PHONE CALL FROM

24   A DEBT COLLECTOR.

25             THE COURT:  ALL RIGHT.  YOUR POINT HAS BEEN MADE.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

SER 369

1    MR. TURNER:  PROBABLY SEVERAL TIMES.

2    THE COURT:  I GET THE FEELING THAT MR. DEL NERO IS

3    PROBABLY NOT ON YOUR HOLIDAY CARD LIST.

4    MR. HYDE:  YOUR HONOR, JUST SO THE COURT IS AWARE,

5    WE KNEW FROM DAY ONE -- WE KNEW LONG BEFORE WE EVER STEPPED

6    INTO THE COURTROOM WHAT THE DEFENSE WAS GOING DO WITH

7    MR. DEL NERO.  THEY MADE IT CLEAR TO US.  THEY SENT US

8    PAPERS.  THEY TOLD US ABOUT ALL THE LAWSUITS HE HAD.  SO THE

9    IDEA THAT SOMEHOW --

10   THE COURT:  I'M NOT GOING TO MAKE A TENTATIVE

11   DECISION AS TO WHETHER MR. DEL NERO IS GOING TO WIN OR LOSE

12   THIS LAWSUIT.

13   MR. HYDE:  I UNDERSTAND, YOUR HONOR.

14   THE COURT:  THAT, TO ME, IS IRRELEVANT TO THE

15   ISSUE.  THE ISSUE IS THAT THERE WAS AN ORDER, THAT IT WOULD

16   NOT BE REFERENCE TO ANY SETTLEMENT.  I SHOULDN'T EVEN HAVE TO

17   MAKE THAT ORDER.  THAT'S IRRELEVANT TO ANYTHING.

18   SECOND, IT HAS BEEN INDICATED THAT MR. DEL NERO WAS

19   AWARE OF THAT AND WAS INSTRUCTED NOT TO GET INTO THE

20   SETTLEMENT.  OKAY.  HE DID.  WHETHER HE DID IT DELIBERATELY,

21   WHETHER HE DIDN'T DO IT DELIBERATELY IS NOT REALLY A CONCERN

22   AT THIS POINT.  I HAVE A JURY OUT THAT HAS HEARD THAT THERE

23   WAS A SETTLEMENT.  THE JURY, IN MY VIEW, WOULD PROBABLY COME

24   TO NO OTHER CONCLUSION, OTHER THAN THERE WAS A SETTLEMENT IN

25   THIS CASE, OR AT LEAST ARISING OUT OF THE FACTS IN THIS CASE,

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT**

1   AND, THEREFORE, PREJUDICES MIDLAND IN THIS CASE.

2        SO THE QUESTION IS WHAT TO DO ABOUT IT.  THE

3   EXTREME MEASURE IS, OF COURSE, DISMISSAL.  I WILL TELL YOU

4   NOW I'M SERIOUSLY ENTERTAINING THAT.  I THINK THE APPROPRIATE

5   THING TO DO NOW IS TO -- I WOULD LIKE TO TAKE A LOOK AT THE

6   ISSUES.  I'D HATE TO SEND THE JURY OUT, BUT I HAVE NO OTHER

7   ALTER -- WELL, WHAT I'D LIKE TO DO IS SPEND SOME TIME TAKING

8   A LOOK AT SOME OF THE LAW ON THIS.

9        IF WE LET THE JURY GO NOW AND RESUME AFTER LUNCH,

10   ANYBODY FIGURE THEY CAN HAVE SOMETHING TO ME IN TERMS OF A

11   BRIEF AFTER LUNCH?

12        MR. TURNER:  WE WILL HAVE A BRIEF TO YOU AFTER

13   LUNCH.

14        THE COURT:  COUNSEL?

15        MR. SWIGART:  YOUR HONOR, WE'LL DO OUR BEST TO

16   GET -- OUR LAW FIRM IS IN SAN DIEGO.  WE'RE LIVING OUT OF A

17   HOTEL ROOM RIGHT NOW.

18        THE COURT:  IF YOU COULD POSSIBLY GIVE COUNSEL

19   THE ACCESS TO THE LAW LIBRARY.

20        LET ME BRING THE JURY BACK AND INSTRUCT THEM THAT

21   WE HAVE AN ISSUE THAT'S GOING TO TAKE SOME TIME TO DEAL WITH.

22   NORMALLY, WHAT I WOULD DO IS SIMPLY GO AHEAD WITH THE JURY

23   AND REVIEW THIS OVER LUNCH, BUT I THINK THIS IS GOING TO

24   REQUIRE SOME RESEARCH BY BOTH SIDES SO I'D RATHER BREAK THEM

25   NOW.

```
 1              (JURORS BACK IN THE COURTROOM.)

 2              THE COURT:  LADIES AND GENTLEMEN OF THE JURY, WHAT

 3    HAS OCCURRED -- AND THIS IS ONE OF THE HARDEST PARTS OF THE

 4    TRIAL BECAUSE I KNOW IT'S DIFFICULT FOR YOU AND YOU WIND UP

 5    FEELING LIKE PAWNS, AND WE DON'T MEAN TO HAVE THAT HAPPEN.

 6    BUT SOMETHING HAS JUST ARISEN IN TERMS OF THE TRIAL WHICH

 7    REQUIRES CAREFUL EXAMINATION BY THE LAWYERS AND MYSELF.  I

 8    HAVE INSTRUCTED THEM TO PREPARE BRIEFS TO GET TO ME AFTER

 9    LUNCH, AND I WILL BE DOING SOME WORK ON THAT BETWEEN NOW AND

10    AFTER LUNCH AS WELL.  I KNOW IT'S FRUSTRATING FOR YOU.

11    OBVIOUSLY, I CAN'T TELL YOU WHAT'S GOING ON BECAUSE IT'S A

12    QUESTION OF LAW.  SO THAT MEANS -- AND I REALIZE YOU'VE ONLY

13    BEEN OUT HERE A SHORT TIME, BUT I'M GOING TO HAVE TO BREAK

14    UNTIL AFTER LUNCH BECAUSE THIS IS AN ISSUE THAT HAS TO BE

15    DEALT WITH BEFORE WE CAN RESUME WITH THE TRIAL.  AND SO I

16    SINCERELY APOLOGIZE.  IT WAS NOT SOMETHING WE ALL

17    ANTICIPATED, BUT IT HAS COME UP AND THE PARTIES DO WISH FOR

18    THE COURT TO DEAL WITH IT.  AND I THINK IT'S APPROPRIATE FOR

19    ME TO DEAL WITH IT BEFORE WE PROCEED.

20              SO AS I'VE SAID IN THE PAST, WHEN YOU LEAVE, WE'RE

21    NOT GOING TO BE SITTING HERE EXCHANGING DONUTS.  THEY'RE

22    GOING TO BE GOING TO THEIR RESPECTIVE OFFICES AND HITTING THE

23    BOOKS, AS WILL I.  SO WE'LL RESUME AT -- I WOULD ANTICIPATE

24    HEARING ARGUMENT FROM COUNSEL AT 1:30.  SO I'M GOING TO HAVE

25    YOU COME BACK AT 1:45.  AGAIN, IT'S WITH OUR APOLOGIES.  AND
```

1   I'M SORRY WE HAVE TO KEEP YOU IN THE DARK, BUT THAT'S PART OF

2   THE PROCESS.

3              ALL RIGHT.  WE'LL RESUME WITH THE JURY AT 1:45.

4   THANK YOU, LADIES AND GENTLEMEN, AND I APPRECIATE YOUR

5   PATIENCE.

6                   (JURORS EXIT THE COURTROOM.)

7              THE COURT:  FOR THE RECORD, THE JURY IS NO LONGER

8   PRESENT.  LADIES AND GENTLEMEN, I WILL LET YOU HIT THE BOOKS.

9   I WILL HEAR ARGUMENT AT 1:30.

10           (A LUNCH RECESS WAS TAKEN TO RESUME AT 1:30 P.M.)

11             THE COURT:  BACK ON THE RECORD IN DEL NERO VS.

12  MIDLAND CREDIT.  FOR THE RECORD, ALMOST ALL COUNSEL ARE

13  PRESENT.

14             MR. TURNER:  MS. NEFULDA IS IN ROUTE.  WE HAD SOME

15  PROBLEM WITH OUR COMPUTER.  I CAME IN ADVANCE FOR

16  MS. NEFULDA.

17             THE COURT:  COUNSEL FOR PLAINTIFF AND MR. DEL NERO

18  ARE PRESENT.  JURORS ARE NOT PRESENT.  ANYTHING ANYBODY WANTS

19  TO ADD TO THE PAPERS, OR DOES ANYBODY WISH TO BE HEARD

20  FURTHER?

21             MR. SWIGART:  WE'LL SUBMIT ON THE PAPERS, YOUR

22  HONOR.

23             THE COURT:  OKAY.  MR. TURNER.

24             MR. TURNER:  I THINK WE TRIED BRIEFLY IN THE TIME

25  ALLOWED TO PRESENT THE ARGUMENT.  I THINK WE DID THE BEST WE

1    A.    WELL, IT WAS IN THE COURT FILE.

2    Q.    WHAT DAY WAS IT FILED?  DO YOU KNOW?

3    A.    I BELIEVE IT WAS IN MAYBE FEBRUARY, JANUARY -- I THINK

4    MAYBE JANUARY OR FEBRUARY OF 2002, JUST GUESSING.

5    Q.    ARE YOU GUESSING OR YOU DON'T KNOW?

6    A.    THAT WOULD BE MY BEST APPROXIMATION OF TIME.

7    Q.    SO YOUR BEST ESTIMATE OF WHEN THIS DOCUMENT WAS FILED

8    WAS FOUR OR FIVE MONTHS AFTER THE COMPLAINT WAS FILED AND

9    AFTER YOU APPEARED IN COURT?

10   A.    CORRECT.

11           MR. TURNER:  YOUR HONOR, I DON'T THINK I HAVE ANY

12   FURTHER QUESTIONS.

13           THE COURT:  ANY REDIRECT?

14           MR. SWIGART:  NO, YOUR HONOR.  THANK YOU.

15           THE COURT:  MR. DEL NERO, YOU MAY STEP DOWN.  THANK

16   YOU.

17           THE WITNESS:  THANK YOU, YOUR HONOR.

18           THE COURT:  NEXT WITNESS.

19           MR. SWIGART:  YOUR HONOR, THE PLAINTIFF RESTS.

20           THE COURT:  THANK YOU.

21           NEXT.

22           MR. TURNER:  YOUR HONOR, WE MAKE A NUMBER OF

23   MOTIONS AT THIS TIME.  FIRST, YOUR HONOR --

24           THE COURT:  WE HAVE FIVE MINUTES LEFT, AND I HAVE A

25   MEETING TO GET TO.  DO YOU WANT TO DO IT IN THE MORNING?

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT**

# CERTIFICATE OF REPORTER

COUNTY OF LOS ANGELES        )
                            )  SS.
STATE OF CALIFORNIA          )

        I, ROSALYN ADAMS, OFFICIAL COURT REPORTER, IN AND

FOR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT

OF CALIFORNIA, DO HEREBY CERTIFY THAT I REPORTED,

STENOGRAPHICALLY, THE FOREGOING PROCEEDINGS AT THE TIME AND

PLACE HEREINBEFORE SET FORTH; THAT THE SAME WAS THEREAFTER

REDUCED TO TYPEWRITTEN FORM BY MEANS OF COMPUTER-AIDED

TRANSCRIPTION; AND I DO FURTHER CERTIFY THAT THIS IS A TRUE

AND CORRECT TRANSCRIPTION OF MY STENOGRAPHIC NOTES.

DATE: APRIL 8, 2005

_____

ROSALYN ADAMS, CSR 11794
OFFICIAL COURT REPORTER

Case 3:16-cv-02186-WQH-MDD Document 137-1 Filed 09/29/22 PageID.5349 Page 1133 of 1196
Case 2:20-cv-02040-WQH-MDD Document 262-1 Filed 09/23/37 PageID.2878 Page 1B of
#1485

Exhibit K

1

UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CENTRAL DIVISION

- - -

HONORABLE GEORGE P. SCHIAVELLI
UNITED STATES DISTRICT JUDGE PRESIDING

- - -

DARREN DEL NERO, ET AL.,          )
                                  )     COPY
              PLAINTIFF,          )
                                  )
VS.                               )   CV 04-1040-GPS(SHX)
                                  )
MIDLAND CREDIT MANAGEMENT,        )
INC., ET AL.,                     )
                                  )
              DEFENDANTS.         )
_____)


DEL NERO V. MIDLAND CREDIT TRIAL - DAY 6

LOS ANGELES, CALIFORNIA

THURSDAY, MARCH 24, 2005

ROSALYN ADAMS, CSR 11794
OFFICIAL COURT REPORTER
100 UNITED STATES COURTHOUSE
312 NORTH SPRING STREET, ROOM 410
LOS ANGELES, CALIFORNIA 90012
(213) 894-2665

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

```
 1      LOS ANGELES, CALIFORNIA; THURSDAY, MARCH 24, 2005, 9:30 A.M.

 2                              --oOo--

 3

 4

 5           THE CLERK:  MATTER OF CALENDAR ITEM NUMBER ONE,

 6      CV 04-1040-GPS(SHX): DARREN DEL NERO, ET AL. V. MIDLAND

 7      CREDIT MANAGEMENT INC., ET AL.

 8           COUNSEL, STATE YOUR APPEARANCES.

 9           MR. SWIGART:  GOOD MORNING, YOUR HONOR.  JOSH

10      SWIGART ON BEHALF OF OUR CLIENT, MR. DARREN DEL NERO, WHO IS

11      PRESENT.

12           MR. HYDE:  GOOD MORNING, YOUR HONOR.  ROBERT HYDE

13      ON BEHALF OF PLAINTIFF.

14           THE COURT:  GOOD MORNING.

15           MR. TURNER:  GOOD MORNING, YOUR HONOR.  STEPHEN

16      TURNER ON BEHALF OF DEFENDANT, MIDLAND CREDIT MANAGEMENT.

17      MR. BRIAN FRARY IS HERE AS WELL ON BEHALF OF MIDLAND CREDIT

18      MANAGEMENT.

19           MS. NEFULDA:  GOOD MORNING, YOUR HONOR.  LARISSA

20      NEFULDA ON BEHALF THE MIDLAND CREDIT MANAGEMENT.

21           THE COURT:  OKAY.  GOOD.  THANK YOU.

22           AND YOU UNDERSTAND YOU'VE BEEN SWORN AND YOU'RE

23      STILL UNDER OATH?

24           THE WITNESS:  YES, I DO.

25           THE COURT:  THANK YOU.  ALL RIGHT.
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

```
 1    Q.    LET ME ASK YOU TO CHARACTERIZE THIS SENTENCE.

 2           DO YOU THINK THAT THIS SENTENCE IS TRUE?

 3           MR. TURNER:  WHICH SENTENCE, YOUR HONOR?

 4    BY MR HYDE:

 5    Q.    THE FIRST SENTENCE.

 6           MR. TURNER:  ASKED AND ANSWERED.

 7           THE COURT:  SUSTAINED.

 8    BY MR. HYDE:

 9    Q.    LET'S GO DOWN TO THE SECOND PARAGRAPH.  IT STARTS WITH

10    "THIS LETTER IS TO INFORM YOU."  IT STATES, "THIS LETTER IS

11    TO INFORM YOU THAT MIDLAND CREDIT MANAGEMENT HAS BEEN

12    AUTHORIZED TO FORWARD THE ABOVE REFERENCED ACCOUNT TO AN

13    ATTORNEY, AUTHORIZED TO PRACTICE IN YOUR STATE WITH THE

14    INTENT TO INITIATE LEGAL ACTION TO SATISFY THIS DEBT,"

15    CORRECT?

16    A.    CORRECT.

17    Q.    DID YOU INTEND TO SUE MR. DEL NERO WHEN YOU WROTE THIS

18    LETTER?

19    A.    WE INTENDED TO PURSUE THE OPTION.  THIS WAS THE FIRST

20    STOP IN MOVING THE ACCOUNT TOWARDS LITIGATION.  IT HAD

21    ALREADY PASSED A SCREEN FOR THAT AVENUE.

22    Q.    IN THIS SENTENCE IT USES THE PHRASE "WITH THE INTENT TO

23    INITIATE LEGAL ACTION."

24           DID YOU INTEND TO INITIATE LEGAL ACTION?

25           MR. TURNER:  OBJECTION.  TAKING THE STATEMENT OUT
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

```
 1              MR. TURNER:  I OBJECT, YOUR HONOR.  THAT QUESTION
 2    HAS BEEN ASKED AND ANSWERED.
 3              THE COURT:  SUSTAINED.
 4    BY MR. HYDE:
 5    Q.   ALL RIGHT.  LET'S MOVE ON TO THE NEXT PARAGRAPH THAT
 6    SAYS, "PLEASE CONTACT OUR OFFICE TO MAKE ARRANGEMENTS TO PAY
 7    THIS DEBT AND PREVENT REFERRAL OF YOUR ACCOUNT," CORRECT?
 8    A.   CORRECT.
 9    Q.   DID HE MAKE ARRANGEMENTS TO PAY THIS DEBT?
10    A.   NO.
11    Q.   DID YOU REFER THE ACCOUNT TO AN ATTORNEY?
12    A.   WE SENT IT TO BE SCRUBBED FOR A PHONE NUMBER, AGAIN,
13    PRIOR TO DOING THAT.
14    Q.   BUT YOU DIDN'T REFER THE ACCOUNT TO AN ATTORNEY?
15    A.   NO, BECAUSE IT WAS IN THAT PROCESS.  WE HADN'T GOTTEN TO
16    THAT POINT.
17    Q.   WELL, IT'S BEEN TWO YEARS NOW SINCE YOU SENT THIS
18    LETTER.  DID IT EVER GET TO AN ATTORNEY?
19    A.   IT DID NOT GET TO AN ATTORNEY BECAUSE, AT THE TIME THAT
20    THIS WAS IN THE SCRUBBING PROCESS, WE RECEIVED THE COMPLAINT.
21    Q.   WERE YOU AUTHORIZED TO SUE ON THIS ACCOUNT?
22    A.   YES.
23    Q.   WHO AUTHORIZED YOU TO DO THAT?
24    A.   MRC.
25    Q.   HOW DO YOU KNOW THAT?  HOW DO THEY AUTHORIZE YOU TO DO
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

Case 3:15-cv-03186-WQH-MRD Document 137-1 Filed 09/23/22 PageID.5854 Page 1138 of 1196
Case 2:04-cv-03186-WQH-MRD Document 126-1 Filed 09/23/17 PageID.5853 Page 30 of 1196
#451

65

1    MR. TURNER:  MAY I CALL THE NEXT WITNESS, YOUR

2    HONOR?

3         THE COURT:  YES, YOU MAY.

4              (PAUSE IN PROCEEDINGS.)

5              (OFF THE RECORD.)

6

7    JOHN NOKES, DEFENDANTS' WITNESS, SWORN

8         CLERK:  FOR THE RECORD, PLEASE STATE YOUR NAME AND

9    SPELL YOUR FULL NAME.

10        THE WITNESS:  JOHN NOKES, N-O-K-E-S.

11        THE COURT:  THANK YOU.  YOU MAY INQUIRE.

12

13   DIRECT EXAMINATION

14   BY MR. TURNER:

15   Q.   GOOD MORNING, MR. NOKES.

16   A.   GOOD MORNING.

17   Q.   AT LAST YOU'RE HERE TO TESTIFY.  COULD YOU PLEASE TELL

18   THE COURT WHERE YOU'RE EMPLOYED.

19   A.   I'M EMPLOYED WITH MIDLAND CREDIT MANAGEMENT.

20   Q.   WHAT IS YOUR POSITION AT MIDLAND CREDIT MANAGEMENT?

21   A.   I'M A MANAGER OF SYSTEMS INTEGRATION.

22   Q.   BRIEFLY, TELL THE COURT WHAT ARE YOUR RESPONSIBILITIES

23   AS MANAGER OF SYSTEMS INTEGRATION.

24   A.   I'M RESPONSIBLE FOR THE PHONES.  I ALSO DO PROJECT

25   MANAGEMENT.

```
 1    Q.    WOULD YOU BRIEFLY -- HOW LONG HAVE YOU WORKED AT -- BEEN

 2    MANAGER OF SYSTEMS INTEGRATION?

 3    A.    ABOUT FIVE YEARS.

 4    Q.    NOW, WITH REGARD TO THE PHONE SYSTEM, CAN YOU DESCRIBE,

 5    BRIEFLY, WHAT YOUR RESPONSIBILITIES ARE?

 6    A.    I OVERSEE THE PHONES AND MAKE SURE THE PBX'S ARE

 7    WORKING, THE PHONES -- THE PHONE SWITCHES ARE WORKING AND THE

 8    AUTODIALER IS WORKING.

 9    Q.    AND WOULD YOU TELL THE COURT VERY BRIEFLY WHAT IS AN

10    AUTODIALER?

11    A.    AN AUTODIALER IS A MACHINE THAT DIALS A LIST OF PHONE

12    NUMBERS.

13    Q.    NOW, WITH REGARD TO YOUR RESPONSE, WOULD IT BE FAIR TO

14    SAY, MR. NOKES, THAT YOU'RE A "TECHY"?

15    A.    NO.  I WOULD CALL MYSELF MORE OF A SUPERVISOR OF TECHYS.

16    Q.    COULD YOU DESCRIBE THE PHONE SYSTEM A LITTLE BIT MORE

17    FOR THE COURT, PLEASE.

18    A.    WE HAVE TWO MAIN PHONE SYSTEMS:  ONE IN SAN DIEGO, ONE

19    IN PHOENIX.  THE ONE IN SAN DIEGO IS AN NEC PBX.  THE ONE IN

20    PHOENIX IS A DEFINITY.  THEY ARE STANDARD WORKHORSE PBX'S.

21    NEC, YOU KNOW, IS IN PHONES AND HOSPITALS AND CALL CENTERS.

22    DEFINITY IS A MAJOR CALL CENTER SWITCH, THE ROBUST, JUST THE

23    WORKHORSES OF INDUSTRY.

24    Q.    NOW, YOU SAID THAT AN AUTOMATED DIALER IS A MACHINE THAT

25    MAKES PHONE CALLS?
```

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT**

1    A.    YES.

2    Q.    HOW DOES IT KNOW WHAT PHONE NUMBERS TO CALL?

3    A.    EVERY NIGHT WE LOOK AT ALL OF OUR ACCOUNTS, DETERMINE

4    WHICH ACCOUNTS WE WANT DIALED.  WE TAKE THOSE NUMBERS, WE PUT

5    THEM IN A LIST AND THEN SEND IT FROM OUR MAIN MACHINE TO THE

6    AUTODIALER.

7    Q.    THEN WHAT HAPPENS THE NEXT DAY?

8    A.    THE NEXT DAY THE LIST IS PUT ON THE AUTODIALER, IT'S

9    PROCESSED AND BASICALLY, THE AUTODIALER WILL GO THROUGH EVERY

10   PHONE NUMBER CALLING.  AND WE DIAL THE NO-ANSWERS AND THE

11   BUSYS AND THE SIT TONES FROM THE PHONE COMPANY AND JUST

12   PRESENTS LIVE CALLS TO OUR ACCOUNT MANAGERS.

13   Q.    YOU SAID SIT TONE?

14   A.    SIT TONE -- IT'S A -- WHEN YOU DIAL A NUMBER YOU GET A

15   DISCONNECTED NUMBER AND GOES (UNINTELLIGIBLE SOUNDS), THAT'S

16   A SIT TONE.  SO WE DIAL THOSE PHONE COMPANY CALLS.

17   Q.    WHY DOES MIDLAND CREDIT MANAGEMENT USE AN AUTOMATED

18   DIALER?

19   A.    IT'S PURELY FOR EFFICIENCY.  WITH AN AUTODIALER, YOU

20   DON'T HAVE TO WAIT FOR -- YOU PICK UP THE PHONE, DIAL THE

21   DIGITS, WAIT FOR IT TO RING, WAIT FOR SOMEONE TO PICK UP OR

22   NOT PICK UP.  SO IT'S PURELY EFFICIENCY.  IT JUST FEEDS LIVE

23   CONNECTIONS TO OUR ACCOUNT MANAGERS.

24   Q.    JUST REAL BRIEFLY, HOW IS IT MORE EFFICIENT, AGAIN?

25   A.    IT -- WHEN IT DIALS THE PHONE NUMBERS, IT WEEDS OUT --

1  YOU DON'T HAVE TO SPEND THE TIME DIALING THE NUMBER, WAITING

2  FOR A CALL TO PICK UP.  AND ALSO, WE DIALED THE CALLS THAT

3  DON'T RESULT IN A LIVE BODY ON THE OTHER END.

4  Q.   NOW, WHAT HAPPENS WHEN A LIVE BODY COMES ON THE

5  AUTOMATED DIALER?

6         THE COURT:  IS THERE AN ALTERNATIVE TO A "LIVE

7  BODY" COMING ON?  THAT'S A STARTLING WAY TO PUT IT.

8         THE WITNESS:  A LIVE PHONE CALL --

9  BY MR. TURNER:

10  Q.   WHAT HAPPENS WHEN A LIVE -- WHEN SOMETHING, OTHER THAN A

11  DISCONNECTED NUMBER --

12         THE COURT:  YOU CAN LEAVE IT AS "LIVE BODY."  I'M

13  JUST KIDDING.  GO AHEAD.

14         THE WITNESS:  WHEN A PERSON ANSWERS THE CALL ON ONE

15  END, IT GETS TRANSFERRED TO A LIVE -- TO AN ACCOUNT MANAGER.

16  BY MR. TURNER:

17  Q.   NOW, WHAT HAPPENS WHEN A CONSUMER CALLS IN TO MIDLAND?

18  A.   A CALL -- IT DEPENDS ON WHAT PHONE NUMBER THEY CALL IN

19  ON.

20  Q.   WHAT HAPPENS IF IT COMES IN ON THE 800 NUMBER?

21  A.   IF IT COMES IN ON AN 800 NUMBER, A TOLL FREE NUMBER, IT

22  GETS ROUTED TO OUR INBOUND GROUP, AND WE'RE ABLE TO CAPTURE

23  THE NUMBER THAT WAS CALLED IN AS LONG AS THE NUMBER IS NOT

24  BLOCKED.

25  Q.   WHAT HAPPENS IF THE CALL COMES IN ON A NON-800 NUMBER?

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

1  A.   ON ONE OF OUR LOCAL LINES, THE CALL STILL COMES IN AND

2  GETS ROUTED VIA AN ATTENDANT, BUT WE'RE UNABLE TO CAPTURE THE

3  NUMBER IT WAS CALLED IN ON.

4  Q.   AND THE AREA CODE THAT MIDLAND'S OFFICE IN SAN DIEGO

5  IS -- WHAT IS THE AREA CODE?

6  A.   858.

7  Q.   NOW, WHAT HAPPENS IF THERE IS NO PHONE NUMBER FOR A

8  PARTICULAR DEBT OR ACCOUNT?

9  A.   IT'S NOT BUILT ON AUTODIALER.  IT'S NOT WORKED THROUGH

10  THE NORMAL ACCOUNT MANAGER PROCESS.

11  Q.   WHAT HAPPENS IF AN ACCOUNT DOESN'T HAVE THE PHONE

12  NUMBER?  CAN IT BE LOADED INTO THE AUTODIALER?

13  A.   NO.  THE AUTODIALER ACTUALLY WILL NOT ALLOW YOU TO PUT

14  AN ACCOUNT ON THERE WITHOUT A PHONE NUMBER.

15  Q.   WHAT SYSTEMS OR MEANS DOES MIDLAND CREDIT MANAGEMENT

16  HAVE TO STORE PHONE NUMBERS?

17  A.   WE HAVE A COUPLE FILES ON OUR MAIN SYSTEM TO STORE PHONE

18  NUMBERS.  THE MAIN FILE IS THE PHONE FILE AND IT HAS ACCOUNT

19  NUMBER AND ALL THE PHONE NUMBERS ASSOCIATED WITH THAT ACCOUNT

20  NUMBER I LISTED.  THERE'S AN AUDIT FILE FOR THAT PHONE FILE,

21  AND THERE'S ALSO A SOFTWARE PACKAGE WE HAVE, IT'S A CALL

22  ACCOUNTING, THAT KEEPS TRACK OF THE INBOUND AND OUTBOUND

23  CALLS THAT ARE OFF THE DIALER.

24        SO ANY CALL OUT OF THE COMPANY IS CAPTURED BY THIS

25  ACCOUNTING SOFTWARE, AND ANY CALL IN IS -- ANY CALL OUT

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT**

```
 1   THAT'S NOT ON THE AUTODIALER IS CAPTURED ON THIS ACCOUNTING

 2   SOFTWARE.  ANY CALL IN IS CAPTURED ON THIS ACCOUNTING

 3   SOFTWARE.  SAME SORT OF SOFTWARE THAT'S USED AT HOTELS TO

 4   CHARGE ROOMS FOR CALLS.

 5   Q.   SO IF THERE'S A PARTICULAR PHONE NUMBER ASSOCIATED WITH

 6   A PARTICULAR ACCOUNT, WHERE WOULD THAT BE STORED?

 7   A.   IN THE PHONE FILE.

 8   Q.   AND THEN -- NOW, WHAT IS AN AUDIT FILE AGAIN?

 9   A.   AUDIT FILE IS A HISTORY FILE.  IT TRACKS ALL CHANGES AND

10   DELETIONS TO THE PHONE FILE.

11   Q.   SO WHAT WOULD HAPPEN IF THERE WAS A PHONE NUMBER IN THE

12   PHONE FILE AND IT WAS THEN IN SOME WAY -- SOMEONE HAD

13   ATTEMPTED TO REMOVE IT FROM THE PHONE FILE, WHAT WOULD SHOW

14   UP IN THE AUDIT FILE?

15   A.   THE AUDIT FILE WOULD CAPTURE THE DELETION.  SO IF

16   SOMEONE WAS SOMEHOW ABLE TO DELETE IT OUT OF THE PHONE FILE,

17   THE AUDIT FILE WOULD MAKE A NOTE OF WHAT THE PHONE NUMBER

18   WAS, WHO MADE THE CHANGE, WHAT PROGRAM MADE THE CHANGE AND

19   DATE AND TIME OF THE CHANGE.

20   Q.   NOW, HOW HARD WOULD IT BE TO DELETE A PHONE NUMBER

21   WITHOUT THAT DELETION OR CHANGE APPEARING IN THE AUDIT FILE?

22   A.   NEARLY IMPOSSIBLE.  THE AUDIT FILE IS DESIGNED -- THE

23   MAIN HOST WE HAVE IS AN IBM COMPUTER.  AND IT'S DESIGNED --

24   THE AUDIT FILE IS DESIGNED SO YOU CAN'T MAKE CHANGES WITHOUT

25   IT BEING NOTICED.  THE MAIN USE -- ONE OF THE MAIN USES FOR
```

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT**

SER 454

1    THE AUDIT FILE IS ON FINANCIAL RECORDS.  SO YOU CAN'T GO IN

2    THERE AND CHANGE NUMBERS.  IT'S THE MOST BASIC LEVEL OF

3    OPERATING SYSTEM, SO YOU HAVE TO HAVE VERY SPECIAL PRIVILEGES

4    TO TURN OFF THE AUDIT FILE.

5    Q.    AND WITH THAT -- DO YOU KNOW WHAT LEVEL OF MANAGEMENT

6    WOULD HAVE THOSE PRIVILEGES?

7    A.    TO MY KNOWLEDGE, ONLY THE DIRECTOR OF OUR PROGRAMMERS

8    HAS THAT, AND OUR C.I.O.

9    Q.    I'D LIKE YOU TO TAKE A LOOK AT THE EXHIBIT BOOK IN FRONT

10   OF YOU, MR. NOKES.  PLEASE TAKE A LOOK AT EXHIBIT 21 THAT

11   CONSISTS OF THREE PAGES, SIR.

12             CAN YOU IDENTIFY THIS DOCUMENT?

13   A.    YES.  THIS IS SOME SCREEN PRINTS I DID OF A QUERY FOR A

14   SEARCH AGAINST THE PHONE FILE.  THE FIRST PAGE SHOWS -- IS

15   THE PHONE FILE AND THE NAME OF THE FILE AND WHERE IT'S

16   LOCATED ON THE SYSTEM.  THE SECOND PAGE IS THE SEARCH

17   CRITERIA.  I'M LOOKING AT THE ACCOUNT NUMBER AND I'M MAKING

18   THE ACCOUNT NUMBER EQUAL TO MR. DEL NERO'S ACCOUNT NUMBER.

19   AND THEN THE LAST PAGE IS THE RESULT, AND THERE'S NO HITS.

20   SO THERE IS NO PHONE NUMBER IN THE SYSTEM FOR THIS ACCOUNT

21   NUMBER.

22   Q.    JUST TAKE A LOOK AT THE SECOND PAGE, KIND OF QUICK THERE

23   FOR ME.  SO WE GO DOWN THERE, IT SAYS UNDER THE WORD "FIELD"

24   YOU SEE P-H-A-C-T NUMBER?

25   A.    YEAH.  THAT'S THE NAME OF THE FIELD THAT HOLDS THE

1    ACCOUNT NUMBER IN THE PHONE FILE.

2    Q.    OKAY.  AND THEN "TEST EQ" STANDS FOR WHAT?

3    A.    EQUAL.

4    Q.    AND THEN THE VALUE -- UNDER "VALUE," IS THAT THE ACCOUNT

5    NUMBER THAT YOU SEARCHED AGAINST?

6    A.    YES.

7    Q.    AND THAT IS, IN FACT, MR. DEL NERO'S ACCOUNT NUMBER?

8    A.    YES.

9    Q.    AND THEN YOU COME TO THE NEXT PAGE AND THE FACT THAT

10   THERE ARE NO PHONE NUMBERS THAT SHOW UP ON THIS PAGE

11   INDICATES WHAT TO YOU, MR. NOKES?

12   A.    THAT THERE IS NO PHONE NUMBER IN THE PHONE FILE FOR THAT

13   ACCOUNT NUMBER.

14            MR. TURNER:  YOUR HONOR, I WOULD MOVE THIS BE

15   IDENTIFIED AND ADMITTED INTO EVIDENCE AS EXHIBIT 21.

16            THE COURT:  ANY OBJECTION?

17            MR. SWIGART:  NO, YOUR HONOR.  NO OBJECTION.

18            THE COURT:  21 IS IDENTIFIED AND IS IN EVIDENCE

19   WITHOUT OBJECTION.  THANK YOU.

20                 (EXHIBIT NO. 21 IN EVIDENCE.)

21   BY MR. TURNER:

22   Q.    NOW, MR. NOKES, WOULD YOU LOOK AT WHAT'S BEEN MARKED AS

23   EXHIBIT 22 IN THE EXHIBIT BOOK.  THAT CONSISTS OF THREE

24   PAGES, SIR.

25   A.    YES.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

Case 3:16-cv-03186-WQH-MDD Document 137-1 Filed 09/23/22 PageID.5362 Page 1146 of 1196
Case 2:04-cv-09049-DOC-RNB Document 1452-1 Filed 09/23/17 PageID.5893 Page 146 of 1196
1196

73

1   Q.   CAN YOU IDENTIFY THESE THREE PAGES, THIS DOCUMENT, SIR?

2   A.   THAT'S A QUERY I DID AGAINST THE PHONE AUDIT FILE, WHICH

3   IS A HISTORY FILE AGAINST THE PHONE FILE.  AND THE FIRST PAGE

4   SHOWS THE FILE AND THE "A" AT THE END OF THE FILE NAME

5   INDICATES THAT'S OUR DESIGNATION FOR AUDIT FILES.

6        THE NEXT PAGE, ONCE AGAIN, IT TAKES -- THE FIELD IS

7   THE ACCOUNT NUMBER FIELD EQUALS, AND THEN THE ACCOUNT NUMBER,

8   WHICH IS MR. DEL NERO'S ACCOUNT NUMBER.  AND THEN THE LAST

9   PAGE IS THE RESULT, AGAIN, WHERE THERE WERE NO HITS.  SO THAT

10  TELLS ME THAT WE DID NOT CHANGE OR DELETE ANY PHONE NUMBERS

11  FROM THIS ACCOUNT NUMBER.

12  Q.   SO THE FACT THAT THERE ARE NO PHONE NUMBERS LISTED ON

13  THE LAST PAGE INDICATES TO YOU THAT THERE NEVER WAS A PHONE

14  NUMBER, MIDLAND CREDIT MANAGEMENT NEVER HAD A PHONE NUMBER

15  FOR THIS ACCOUNT?

16  A.   YES.

17       THE COURT:  INDICATED IT NEVER HAD A PHONE NUMBER

18  OR NO SUCH PHONE NUMBER WAS CHANGED?

19       THE WITNESS:  IT NEVER HAD ONE.  NO PHONE NUMBER

20  WAS EVER LOADED TO THE ACCOUNT.

21       THE COURT:  THANK YOU.

22       MR. TURNER:  YOUR HONOR, I WOULD MOVE TO HAVE

23  WHAT'S -- EXHIBIT 22 IN THE BOOK IDENTIFIED AND MOVED INTO

24  EVIDENCE.

25       THE COURT:  22 IS MARKED FOR IDENTIFICATION.  ANY

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT**

# CERTIFICATE OF REPORTER

COUNTY OF LOS ANGELES    )
                                   )  SS.
STATE OF CALIFORNIA      )

       I, ROSALYN ADAMS, OFFICIAL COURT REPORTER, IN AND

FOR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT

OF CALIFORNIA, DO HEREBY CERTIFY THAT I REPORTED,

STENOGRAPHICALLY, THE FOREGOING PROCEEDINGS AT THE TIME AND

PLACE HEREINBEFORE SET FORTH; THAT THE SAME WAS THEREAFTER

REDUCED TO TYPEWRITTEN FORM BY MEANS OF COMPUTER-AIDED

TRANSCRIPTION; AND I DO FURTHER CERTIFY THAT THIS IS A TRUE

AND CORRECT TRANSCRIPTION OF MY STENOGRAPHIC NOTES.

DATE:  APRIL 8, 2005

_____

ROSALYN ADAMS, CSR 11794
OFFICIAL COURT REPORTER

Exhibit L

Case 2:16-cv-03186-WQH-MDD   Document 137-1   Filed 09/23/22   PageID.5865   Page 1149 of
1196
Case 2:04-cv-01040-WQH-MDD   Document 126-1   Filed 08/23/17   Page 212 of 230   Page ID
#445

1   UNITED STATES OF AMERICA

2   UNITED STATES DISTRICT COURT

3   CENTRAL DISTRICT OF CALIFORNIA

4   CENTRAL DIVISION
                              - - -
5   HONORABLE GEORGE P. SCHIAVELLI
    UNITED STATES DISTRICT JUDGE PRESIDING
6                             - - -

7

8   DARREN DEL NERO, ET AL.,          )
                                      )
9             PLAINTIFF,              )
                                      )
10  VS.                              ) CV 04-1040-GPS(SHX)
                                      )
11  MIDLAND CREDIT MANAGEMENT,       )
    INC., ET AL.,                     )
12                                    )
              DEFENDANTS.             )
13  _____)

14

15

        *DEFENDANT'S MOTION FOR ATTORNEYS' FEES*
16
        REPORTER'S TRANSCRIPT OF PROCEEDINGS
17
              LOS ANGELES, CALIFORNIA
18
           MONDAY, NOVEMBER 27, 2006
19

20

21

22
              ROSALYN ADAMS, CSR 11794
23            OFFICIAL COURT REPORTER
              100 UNITED STATES COURTHOUSE
24        312 NORTH SPRING STREET, ROOM 410
           LOS ANGELES, CALIFORNIA 90012
25               (213) 894-2665

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

SER 857

1    TRIAL.

2           SO WHEN MR. STEMPLAR BROUGHT THIS CASE ORIGINALLY,

3    AND THEN EVENTUALLY DECIDED IT WAS A CONFLICT AND HANDED IT

4    OVER TO HIS SISTER, MR. DEL NERO'S SISTER --

5           THE COURT:  YES, I RECALL.

6           MR. HYDE:  YES.  AND SHE, I THINK, TRIED TO RUN

7    WITH IT FOR A WHILE AND DIDN'T REALIZE THAT THIS WAS GOING TO

8    TRIAL.  AND SHE CAME TO US WITH THIS.  AND HERE I AM -- WE

9    TOOK THIS CASE BECAUSE WE, IN ALL HONESTY, WERE DYING TO GO

10   TO TRIAL.  AND THE REASON WE WANTED TO GO TO TRIAL -- AND I'M

11   NOT SUGGESTING IT DIDN'T HAVE MERIT, DON'T GET ME WRONG.  I

12   THOUGHT IT HAD MERIT AND I STILL BELIEVE IT HAD MERIT; BUT WE

13   TOOK THIS CASE BECAUSE WE WANTED TO GET IN FRONT OF A JUDGE,

14   LEARN SOME THINGS.  THAT'S WHY BOTH OF US WERE HERE, AND

15   THAT'S WHY WE TOOK THE CASE.  WE DIDN'T TAKE THE CASE BECAUSE

16   WE THOUGHT IT WAS THE GREATEST CASE ON EARTH.  LIKE I SAID, I

17   THOUGHT I HAD MERIT TO IT.

18          THE COURT:  WHETHER OR NOT YOU WANTED TO GET TO

19   TRIAL -- AND I CAN CERTAINLY UNDERSTAND YOUR DESIRE TO GET

20   INTO A COURTROOM AND INTO TRIAL, IF THAT'S INDEED WHAT YOU

21   WANTED TO DO.

22          THE QUESTION BEFORE ME IN THIS CASE INVOLVE THE

23   MOTIVES TO THE UNDERPINNINGS IN THE CASE, NOT WHETHER OR NOT

24   YOU WANTED TO GET INTO TRIAL.

25          MR. HYDE:  I UNDERSTAND THAT, YOUR HONOR.  I THINK

1        THE THIRD POINT IS, YOUR HONOR, THAT THE CASES

2    RELIED UPON BY PLAINTIFF'S AND PLAINTIFF'S COUNSEL DEAL WITH

3    CIVIL RIGHTS VIOLATIONS.  THE STATUTE IS DIFFERENT.  THE

4    STATUTE PERTAINS TO APPLIED -- IT SAYS THAT IT GOES TO THE

5    PREVAILING PARTY.  CLEARLY, SUBSEQUENT CASE LAW SETS A

6    SOMEWHAT HIGHER BURDEN, BUT IT'S A DIFFERENT BURDEN THAN WE

7    HAVE HERE, WHERE IT IS BROUGHT IN BAD FAITH IN FOCUS OF

8    HARASSMENT.  IF THIS WERE THE CASE, A CONSUMER COULD COME IN

9    TO AN ATTORNEY AND SAY, "I'M GOING BRING THIS CASE IN BAD

10   FAITH FOR PURPOSE OF HARASSMENT," THE ATTORNEYS SAY, "BOMBS

11   AWAY.  I NEED THE TRIAL EXPERIENCE.  LET'S GO," AND THE ONLY

12   PERSON WHO WOULD BE HELD LIABLE UNDER THE STATUTE WOULD BE

13   THE CONSUMER.

14       SECOND POINT -- THE NEXT POINT WOULD BE IF SOMEHOW

15   IT DOESN'T APPLY, WHICH I THINK IT CLEARLY DOES, THE COURT

16   HAS THE INHERENT POWER TO IMPOSE SANCTIONS IN THIS CASE IF IT

17   SOMEHOW DOESN'T BELIEVE THE STATUTE ALLOWS FOR IT.

18       AS TO MR. DEL NERO'S MOTIVATION, WE'LL LET IT GO.

19   THE TENTATIVE WAS ORDER THE FEES AGAINST HIM --

20       THE COURT:  I THINK I'VE GOT IT.

21       MR. TURNER:  THAT'S WHAT I HAVE, YOUR HONOR.

22       THE COURT:  ALL RIGHT.  THE TENTATIVE, AWARDING

23   FEES OF 137,000 -- ONE MOMENT, I THINK IT'S 616, BUT LET ME

24   CHECK IT -- $137,616.69 AGAINST MR. DEL NERO WILL BE THE

25   ORDER.  WITH RESPECT TO THE AWARD AGAINST COUNSEL, THAT WILL

1    BE SUBMITTED.  I WANT TO TAKE A LOOK AT A COUPLE OF THINGS.

2              MR. TURNER:  THE DEFENDANTS ARE ALLOWED ADDITIONAL

3    FEES, YOUR HONOR, WHICH ARE DUE PROMPTLY?

4              THE COURT:  WHEN ARE YOU GOING TO GET YOUR FEE IN?

5              MR. HYDE:  WHEN WOULD BE ACCEPTABLE?  A WEEK FROM

6    TODAY?

7              THE COURT:  A WEEK FROM TODAY.  I'LL LET YOU FILE A

8    RESPONSE TO THAT, SAY, WITHIN -- IF YOU GET IT WITHIN A WEEK

9    FROM TODAY, THAT'S A MONDAY.  HAVE IT BY THE FOLLOWING

10   THURSDAY, YOU THINK?

11             MR. HYDE:  IS THAT A WEEK?  YOU MEAN THREE DAYS OR

12   A WEEK AND THREE DAYS?

13             THE COURT:  I DON'T THINK IT'S GOING TO TAKE YOU

14   THAT LONG TO ARGUE ABOUT THE FEES RELATING TO THIS,

15   PROCEEDING, DO YOU THINK?  I'LL GIVE YOU ANOTHER WEEK.

16             MR. TURNER:  THERE'S SEVERAL OTHER POINTS IN THE

17   REPLY PAPERS, EVERYTHING AFTER TODAY, YOUR HONOR, SUBSEQUENT

18   TO THE FILING OF THE MOTION.

19             THE COURT:  I DON'T THINK I NEED YOUR PAPERS, HIS

20   PAPERS, AND THE REPLY PAPERS.

21             MR. TURNER:  I WILL WAIVE THE REPLY.

22             THE COURT:  YOU JUST DID.

23             YOUR PAPERS ARE DUE WITHIN A WEEK.

24             YOUR PAPERS ARE DUE A WEEK AFTER THAT.

25             IF THERE'S SOMETHING IN THERE THAT I FEEL NEEDS

```
 1                    CERTIFICATE OF REPORTER

 2

      COUNTY OF LOS ANGELES      )
 3                               )  SS.
      STATE OF CALIFORNIA        )
 4

 5

 6    I, ROSALYN ADAMS, OFFICIAL COURT REPORTER, IN AND FOR THE

 7    UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF

 8    CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT TO SECTION 753,

 9    TITLE 28, UNITED STATES CODE, THE FOREGOING IS A TRUE AND

10    CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED

11    PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE

12    TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS

13    OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

14

15

16    DATED:  OCTOBER 24, 2007

17

18    _____

19    ROSALYN ADAMS, CSR 11794
      OFFICIAL COURT REPORTER
20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT

SER 867

Exhibit M

LODGED

2006 MAR 22 AM 11:07
CLERK, U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF
LOS ANGELES
BY

Gordon & Rees LLP
101 West Broadway
Suite 1600
San Diego, CA 92101

1   Russell P. Brown (SBN: 84505)
    GORDON & REES LLP
2   101 West Broadway, Suite 1600
    San Diego, CA 92101
3   Telephone: (619) 696-6700
    Facsimile: (619) 696-7124
4
5   Attorneys for Defendants
    FELIPA R. RICHLAND, RICHLAND & ASSOCIATES and
    NATHAN ENTERPRISES CORP.

FILED
CLERK, U.S. DISTRICT COURT
APR - 4 2006
CENTRAL DISTRICT OF CALIFORNIA
BY

ENTERED
CLERK, U.S. DISTRICT COURT
APR - 5 2006
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

|  |  |
|---|---|
| DARREN D. CHAKER, | CV 05-7851 RSWL (PLAx) |
| Plaintiff, | [PROPOSED] ORDER ON DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND RELATED NON-TAXABLE COSTS |
| v. | |
| FELIPA R. RICHLAND, RICHLAND & ASSOCIATES and NATHAN ENTERPRISES CORPORATION D/B/A ONLINE MOTORS, | [FRCP 54; LR 54-12; 15 U.S.C. § 1681n(c)] |
| Defendants. | Date:      March 13, 2006 |
|  | Time:      9:00 a.m. |
|  | Courtroom: 21 |
|  | Action Filed: September 1, 2005 |

On March 13, 2006, Defendants' Motion for Attorneys' Fees and Related
Non-Taxable Costs pursuant to Federal Rules of Civil Procedure, Rule 54, Local
Rule 54-12 and 15 U.S.C. § 1681n(c) came regularly for hearing before The
Honorable Ronald S.W. Lew in Courtroom 21 in the above-entitled Court. Russell
Brown of Gordon & Rees LLP appeared on behalf of Defendants, and Joshua
Swigart appeared on behalf of Plaintiff.

Having reviewed the papers and documents submitted in support of and in
opposition to Defendants' Motion for Attorneys' Fees and Related Non-Taxable

-1-

ORDER ON DEFENDANTS' MOTION FOR ATTORNEYS' FEES          CV 05-7851 RSWL (PLAx)
[FRCP 54; LR 54-12; 15 U.S.C. § 1681n(c)]

Costs and the arguments of counsel, and good cause appearing therefor, IT IS HEREBY ORDERED that:

1.  Defendants' Motion for Attorneys' Fees and Related Non-Taxable Costs is GRANTED; and

2.  Defendants are awarded their reasonable attorney fees in the amount of $39,875.50 and non-taxable costs in the amount of $3,059.34, for a total award of $42,934.84.

Dated: 4-4-06

RONALD S.W. LEW
United States District Judge

Gordon & Rees LLP
101 West Broadway
Suite 1600
San Diego, CA 92101

RLND\1035685\036201.1

-2-

ORDER ON DEFENDANTS' MOTION FOR ATTORNEYS' FEES
[FRCP 54; LR 54-12; 15 U.S.C. § 1681n(c)]

CV 05-7851 RSWL (PLAx)

SER 987

| UNITED STATES DISTRICT COURT | COURT USE ONLY |
|---|---|
| **CENTRAL DISTRICT DISTRICT OF CALIFORNIA, WESTERN DIVISION** | |

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address):
Russell P. Brown (SBN 84505)    (619) 696-6700
GORDON & REES LLP          Fax: (619) 696-7124
101 West Broadway, Suite 1600
San Diego, California 92101

SHORT CASE TITLE
DARREN D. CHAKER V. FELIPA R. RICHLAND, ET AL.

ATTORNEY FOR
Defendant FELIPA R. RICHLAND, RICHLAND & ASSOCIATES AND NATHAN ENTERPRISES CORP.

CASE NUMBER
CV 05-7851 RSWL (PLAx)

## PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is: 101 West Broadway, Suite 1600, San Diego, CA 92101. On March 22, 2006, I served the within documents:

**[PROPOSED] ORDER ON DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND RELATED NON-TAXABLE COSTS**

☐ By transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in United States mail in the State of California at San Diego, addressed as set forth below.

☒ by causing the document(s) above to be personally delivered to the person(s) at the address(es) set forth below.

☐ BY FEDERAL EXPRESS. I deposited said document(s) in a box or other facility regularly maintained by the express service carrier providing overnight delivery.

Joshua B. Swigart
josh@westcoastlitigation.com
Robert L. Hyde
bob@westcoastlitigation.com
Hyde & Swigart
110 West C Street, Suite 2018
San Diego, CA 92101
Tel: (619) 233-7770
Fax: (619) 330-4657
**Attorneys for Plaintiff**

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on March 22, 2006, at San Diego, California.

Jeanne Mycland-Evans

-2-

RLND\103568\1271000.1

Case 3:16-cv-02186-WQH-MDD   Document 127-1   Filed 09/23/22   PageID.5375   Page 1159 of
1196
Case 3:16-cv-02186-WQH-MDD   Document 47-1   Filed 01/23/17   PageID.2004   Page 429 of
445

# EXHIBIT P

1    TOMIO B. NARITA (SBN 156576)
     JEFFREY A. TOPOR (SBN 195545)
2    SIMMONDS & NARITA LLP
     44 Montgomery Street, Suite 3010
3    San Francisco, CA 94104-4816
     Telephone: (415) 283-1000
4    Facsimile:   (415) 352-2625
     tnarita@snllp.com
5    jtopor@snllp.com

6    Attorneys for Defendants
     Midland Credit Management, Inc. and
7    MRC Receivables Corporation

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11

12   DARREN DEL NERO and NICOLE    )   CASE NO.: CV 04-1040 ABC (SHx)
     SHAKER,                       )
13                                 )   **REPLY MEMORANDUM OF**
                                   )   **POINTS AND AUTHORITIES IN**
14          Plaintiffs,            )   **SUPPORT OF DEFENDANTS'**
                                   )   **MOTION FOR AWARD OF**
15          vs.                    )   **ATTORNEYS' FEES AND COSTS**
                                   )   **PURSUANT TO 28 U.S.C. § 1927**
16   MIDLAND CREDIT                )   **AND THE COURT'S INHERENT**
     MANAGEMENT, INC. MRC          )   **AUTHORITY**
17   RECEIVABLES CORP. and DOES    )
     1-10,                         )   Hearing Date:   Vacated
18                                 )
            Defendants.            )   The Honorable Audrey B. Collins
19                                 )
                                   )
20                                 )
                                   )
21   _____)

22

23

24

25

26

27

28

     _____
     DEL NERO ET AL. V. MIDLAND CREDIT MANAGEMENT ET AL. (CASE NO. CV 04-1040 ABC (SHx))
     REPLY ISO DEFENDANTS' MOTION FOR AWARD OF ATTORNEYS' FEES

## I. **INTRODUCTION**

Robert L. Hyde and Joshua B. Swigart of the Hyde & Swigart law firm (collectively "Hyde & Swigart") have supplied a long list of reasons why the Court should not direct them to pay the attorneys' fees and costs incurred by Defendants. None have merit.

The Court previously made a clear finding that this case was filed and pursued in bad faith, and that Hyde & Swigart should be held jointly and severally liable for all the fees and costs incurred by Midland Credit Management, Inc. and MRC Receivables, Corp. (collectively, "Midland"). Although Hyde & Swigart now pretends that the finding was never made, the record shows that it was. In fact, the firm filed extensive briefs seeking reconsideration of the ruling, but their motion was denied.

The Ninth Circuit's subsequent opinion did not address this Court's finding of bad faith, and did not disturb it. Midland was not required to seek rehearing in the Ninth Circuit. Nor does the Ninth Circuit's mandate prevent Midland's request. Hyde & Swigart has not found a procedural barrier to this motion.

Nor is there a need for the Court to make "new" findings. Rather, the Court need only rule on the legal issues presented by the motion, based on the undisturbed factual findings made by Judge Schiavelli. As a matter of law, those findings support an award of sanctions against Hyde & Swigart under 28 U.S.C. § 1927 and the Court's inherent authority. The motion should be granted.

## II. **ARGUMENT**

### A. **Midland Was Not Required To Seek Rehearing Before Filing Its Motion, Nor Is Its Motion Barred By The Doctrines Of Collateral Estoppel Or Issue Preclusion**

Hyde & Swigart argues that this motion is an impermissible end-run around Rule 40 of the Federal Rules Of Appellate Procedure, which governs petitions for

DEL NERO ET AL. V. MIDLAND CREDIT MANAGEMENT ET AL. (CASE NO. CV 04-1040 ABC (SHx))
REPLY ISO DEFENDANTS' MOTION FOR AWARD OF ATTORNEYS' FEES                    1.

1154

rehearing.  That rule provides that a petition "must state with particularity each *point of law or fact* that the petitioner believes the court has overlooked or misapprehended."[1]  Fed. R. App. P. 40(a)(2) (italics added).  Midland was not required to petition for rehearing before bringing this motion.  On its face, the Rule 40 does not authorize a petition for rehearing based on an appellate court's failure to explicitly address each issue or argument raised on appeal.  Hyde & Swigart has not cited a single case holding that the failure to file a petition for rehearing bars a losing appellee from seeking further relief in the district court.[2]

---

[1]  Hyde & Swigart maintain that the Ninth Circuit considered Midland's suggestion that it could remand the case to this Court to consider imposing sanctions under section 1927 or the Court's inherent authority.  *See* Document No. 247 at 8:12-19.  The Ninth Circuit's opinion, however, was silent as to Midland's suggestion.

[2]  None of the cases Hyde & Swigart cite at page 9 of their opposition preclude the Court from considering Midland's motion.  *Campbell v. United States*, 592 F.2d 309, 312 (6th Cir. 1979) is distinguishable because Midland does not contend that the Ninth Circuit "inadvertently overlook[ed] critical facts which makes its decision incorrect or unjust."  *United States v. Gargotto*, 510 F.2d 409, 412 (6th Cir. 1974) did not address the issue raised here.  It held that absent a petition for rehearing following a previous appeal, a party could not in a subsequent appeal "re-raise issues decided by this court."  The Ninth Circuit did not decide the issue Midland now presents to this Court.  *Burkett v. Shell Oil Co.*, 487 F.2d 1308, 1315 (5th Cir. 1973) simply held that a plaintiff could not reargue in the district court motions that the court had previously decided, even though the appellate court erroneously stated that the motions had not been decided (and therefore did not address on appeal the issues raised by those motions).  Unlike *Scott v. Churchill*, 377 F.3d 565 (6th Cir. 2004), Midland does not argue there was a misstatement of law or fact in the Ninth Circuit's opinion.  In fact, Midland is not challenging any portion of that opinion.  Neither *Association of Am. Physicians & Surgeons v. Brewer*, 497 F.3d 1056 (9th Cir. 2007), nor *United States v. Kelley*, 482 F.3d 1047 (9th Cir. 2007) held that a party must file a motion for clarification in the appellate court before seeking relief in the district court.  They granted motions for clarification, without discussing the necessity or standard for doing so.

DEL NERO ET AL. V. MIDLAND CREDIT MANAGEMENT ET AL. (CASE NO. CV 04-1040 ABC (SHx))
REPLY ISO DEFENDANTS' MOTION FOR AWARD OF ATTORNEYS' FEES                    2.

1155

1    Nor has the firm addressed any of the cases cited by Midland showing that this

2    Court has the "ever present" authority to entertain its motion.[3]

3         Hyde & Swigart also argues that Midland is collaterally estopped or

4    precluded from relitigating the issues of "(bad faith, inherent authority, and 28

5    U.S.C. § 1927)" because those issues were argued in, and decided by, the Ninth

6    Circuit.  Document No. 247 at 10:13-24.  Not so.

7         It is true that on appeal, Midland argued, as an alternative ground for

8    affirming this Court's decision, that Hyde & Swigart could be held jointly and

9    severally liable under the district court's inherent authority for the fees that had

10   been awarded.  *See* Document No. 247-3.  But there is nothing in the Ninth Circuit

11   opinion indicating that it considered the argument.  Rather, the Court discussed

12   section 1927 in the context of distinguishing a case cited by Midland.  *See Hyde v.*

13   *Midland Credit Management, Inc*., 567 F.3d 1137, 1141 (9th Cir. 2009)

14   (distinguishing *Chaudhry v. Gallerizzo*, 174 F.3d 394 (4th Cir. 1999) (affirming

15   sanctions award)).  Neither this Court nor the Ninth Circuit have previously

16

17

18

19

20

_____

21        [3] *See, e.g.,  Red Carpet Studios Division of Source Advantage, Ltd. v. Sater*,
     465 F.3d 642, 645 (6th Cir. 2006) ("a court's jurisdiction to issue sanctions under 28

22   U.S.C. § 1927 or pursuant to a court's inherent authority is **ever present**.").
     Following reversal, it is within the Court's discretion to allow a party to raise an issue

23   that could have been, but was not, raised in an earlier proceeding, particularly where,
     as here, the issue involves a question of law, the failure to raise it earlier was not a

24   result of bad faith and the opposing party would not be prejudiced by its

25   consideration.  *See Riley v. MEBA Pension Trust*, 452 F. Supp. 117, 120 (S.D.N.Y.
     1978); *see also United States v. Moriel-Luna*, 585 F.3d 1191, 1199 n.6 (9th Cir.

26   2009) (rejecting argument that by failing to raise argument on appeal, party had

27   waived argument and could not raise it in district court following reversal).

28

DEL NERO ET AL. V. MIDLAND CREDIT MANAGEMENT ET AL. (CASE NO. CV 04-1040 ABC (SHx))
REPLY ISO DEFENDANTS' MOTION FOR AWARD OF ATTORNEYS' FEES                    3.

1156

1    decided the issues of inherent authority and section 1927.  Midland's motion is not

2    barred by collateral estoppel or issue preclusion.[4]

3    **B.    The Ninth Circuit's Mandate Does Not Preclude This Court From Awarding Midland Its Attorneys' Fees And Costs Pursuant To Section 1927 Or The Court's Inherent Authority**

5    Hyde & Swigart maintains that this motion is improper because "the Ninth

6    Circuit opinion reversed as to the issues in the trial court's order, that is bad faith,

7    Rule 11, and 15 U.S.C. § 1692k(a)(3)."  Document No. 247 at 5:16-18.  While it is

8    correct that the Ninth Circuit reversed the district court's *legal conclusion* that

9    section 1692k(a)(3) authorized a fee award against plaintiff's counsel, *see* 567

10   F.3d at 1141-42, it is incorrect regarding the treatment of the district court's

11   *factual finding* of bad faith.  The Ninth Circuit did not address the propriety of that

12   finding, but rather assumed that the action "'was brought in bad faith and for the

13   purpose of harassment' within the meaning of § 1692k(a)(3)."  *See id.* at 1139.

14   Hyde & Swigart suggests the Ninth Circuit's mandate requires the Court "to

15   dismiss Hyde & Swigart from the proceedings."  Document No. 247 at 5:20-21.

16   The mandate, however, did not direct this.  The firm points to no authority

17   requiring this Court to dismiss it from the lawsuit.  The Court is free to consider

18   the issues raised by Midland's motion, which were not resolved by the appellate

19   court.  *See United States v. Cote*, 51 F.3d 178, 181-82 (9th Cir. 1995); *see also*

20   *United States v. Kellington*, 217 F.3d 1084, 1094 (9th Cir. 2000) (district court

21

22   _____

23   [4]  Hyde & Swigart contends that the question decided on appeal – whether attorneys' fees and costs could be imposed against a plaintiff's attorney under section 1692k(a)(3) – was not a question of first impression.  For this reason, it suggests that Midland "should have anticipated that this issue would be reversed, as nearly every circuit court in the country, including the Ninth Circuit" had addressed it.  *See* Document No. 247 at 1:3-6, 1:13-14.  Hyde & Swigart has not cited to a single judicial opinion that supposedly resolved the issue.  The firm also ignores the Ninth Circuit's pellucid statement that it was "an issue of first impression in this circuit." *Hyde*, 567 F.3d at 1140.

DEL NERO ET AL. V. MIDLAND CREDIT MANAGEMENT ET AL. (CASE NO. CV 04-1040 ABC (SHx))
REPLY ISO DEFENDANTS' MOTION FOR AWARD OF ATTORNEYS' FEES                    4.

1157

1   free to address issues neither expressly nor impliedly resolved by the appeal);

2   *Herrington v. County of Sonoma*, 12 F.3d 901, 904-05 (9th Cir. 1993) (holding

3   that "rule of mandate allows a lower court to decide anything not foreclosed by the

4   mandate").

5        Hyde & Swigart should not be permitted to avoid responsibility for its

6   misconduct simply because this Court imposed sanctions under the wrong legal

7   provision.  Judge Schiavelli clearly believed counsel's conduct warranted the

8   imposition of joint and several liability for significant sanctions.  The issue can

9   and should be addressed now.

10       **C.**    **The Existing Findings Show Midland Is Entitled To An Award Of Attorneys' Fees And Costs Pursuant To 28 U.S.C. § 1927**

11

12       Hyde & Swigart claims there was no finding that it acted recklessly or in

13  bad faith.  As support, the firm relies upon the Court's July 11, 2006 post-trial

14  Findings of Fact and Conclusions of Law (Document No. 144).  It is not surprising

15  there is no finding of bad faith at that earlier stage in the case, however, because

16  the parties had not even briefed the issue of sanctions when those early findings

17  were made.

18       After this Court issued the findings cited by Hyde & Swigart, Midland filed

19  its motion to recover its costs and attorney's fees.  *See* Docket 157.  Only then did

20  the parties engage in extensive briefing on the sanctions issue, which resulted in

21  the Court's February 20, 2007 Order Awarding Attorneys' Fees and Costs

22  (Document No. 193).  *See* Document No. 247 at 7:2-6, 12:12-19.[5]

23

24       [5]  Hyde & Swigart also cites to and quotes extensively from the transcript of

25  the oral argument before the Ninth Circuit.  *See* Document No. 247 at 1:8-12, 13:7-
    14:4, 20:18-21:9.  With due respect, the observations of Judges Paez and Fletcher

26  from the hearing are not part of the Ninth Circuit's opinion and are irrelevant here.

27  *In re Khan*, 1995 WL 150551, *2 (N.D. Cal. Mar. 27, 1995), which the firm cites,

28  relied upon a decision of the California Supreme Court, not federal law.

DEL NERO ET AL. V. MIDLAND CREDIT MANAGEMENT ET AL. (CASE NO. CV 04-1040 ABC (SHx))
REPLY ISO DEFENDANTS' MOTION FOR AWARD OF ATTORNEYS' FEES      5.

1158

1    In its February 20 Order, the Court explicitly found that the case "was

2    brought in bad faith and for the purpose of harassment," and, despite the firm's

3    extensive briefing in opposition to the motion, it determined that Hyde & Swigart

4    should be jointly and severally liable for the fees incurred as a result of the bad

5    faith. *See* Document No. 193 at 2:12, 3:13; *see also* Document No. 215 at 1:20-21

6    (Judgment). When making this determination, Judge Schiavelli explicitly found

7    that the firm had "participated in the filing of bad faith FDCPA actions." *See id.* at

8    4:17-18.[6] The firm subsequently filed a motion for reconsideration of the finding

9    of joint and several liability, but that motion was also rejected. *See* Document

10   Nos. 199, 200 & 214.

11   Hyde & Swigart attacks Midland for describing the factual and procedural

12   history of this case, suggesting that Midland is improperly asking this Court to

13   make additional findings. On the contrary, Midland simply pointed to portions of

14   the record, which are reflected on the existing docket, in order to enable this Court

15   to understand the context in which Judge Schiavelli found that Hyde & Swigart

16   acted in bad faith and held it jointly and severally liable for Midland's attorneys'

17   fees and costs. Midland has <u>not</u> asked this Court to make any findings. It has

18

19   _____

20   [6] Hyde & Swigart argues that the February 20 fee order was reversed "in its
     entirety," Document No. 247 at 15:7-8, and therefore the factual finding that Hyde
21   & Swigart acted in bad faith has been undone. Again, the Ninth Circuit left
     untouched Judge Schiavelli's finding of bad faith. *See* 567 F.3d at 1139. The
22   authorities cited by the firm do not apply here and are not binding. The only Ninth
23   Circuit decision the firm cites, *State of Calif. Dept. of Soc. Servs. v. Thompson*, 321
     F.3d 835 (9th Cir. 2003), is not accurately described. It held that the plaintiff, who
24   did not appeal, would be bound by any decision reversing the district court's ruling
     in an appeal brought by an intervening party. *See id.* at 847 ("Thus, if the judgment
25   of the district court is reversed, the Secretary would be bound by our decision for all
26   purposes."). None of the other cases cited address the effect of an appellate court's
     opinion that reverses a trial court's ruling on a legal issue, while assuming the trial
27   court's factual findings were correct, as is the case here.
28

DEL NERO ET AL. V. MIDLAND CREDIT MANAGEMENT ET AL. (CASE NO. CV 04-1040 ABC (SHx))
REPLY ISO DEFENDANTS' MOTION FOR AWARD OF ATTORNEYS' FEES                         6.

1159

1 simply asked the Court apply the earlier, undisturbed findings and award its

2 attorneys' fees and costs pursuant to different legal theories. *See* Document No.

3 246 at 2:19-3:2, 20:14-16, 21:4-6, 23:9-10 ("No further findings are necessary.").

4      Hyde & Swigart also accuses Midland of "selective revisionism," and

5 attempts to convince the Court that it has taken the high road by choosing not to

6 respond to Midland.[7]  Ironically, however, Hyde & Swigart then proceeds to argue

7 at length for the Court to revisit Judge Schiavelli's factual finding of bad faith.[8]

8 *See* Document No. 247 at 16:13-21:28.[9]

9

10      [7] Hyde & Swigart claims Midland wants to "'poison the well'"against the firm

11 by describing the record of <u>this</u> case, Document No. 247 at 2:10-11, but then Hyde

12 & Swigart proffers its own purported "poison" by suggesting other courts have found

that Midland has acted improperly, *see id.* at 4:15-28.  In its zeal to vilify Midland,

13 however, Hyde & Swigart sacrifices accuracy.  The February 26, 2010 Order issued

14 by an Ohio court in *Midland Funding LLC v. Nedrow*, does not state that Midland

Funding LLC committed fraud on the court.  Rather, the "Stay Recommendation"

15 notes that "William R. Ritchey, Owner/Agent of **Midland Funding LLC**" served a

16 "Judicial notice" "request[ing] that this case be stayed . . . due to the fraud committed

upon all parties, . . . **and upon us, Midland funding LLC**." *See* Document No. 247-

17 2 (emphasis added).  Nor does the case of *Midland Funding LLC v. Brent*, 644 F.

18 Supp. 2d 961 (N.D. Ohio 2009), hold that Midland "routinely submit[s] false

affidavits in litigation."  Regardless, there nothing to suggest Midland has mislead

19 this Court.

20

21      [8] In some instances Hyde & Swigart chooses to provide additional background

information without any citation to the record supporting its statements. *See, e.g.*,

22 Document No. 247 at 2:21-3:1, 3:14-21.

23      [9] It is irrelevant that Hyde & Swigart believed that the claims were colorable,

24 or that the claims survived the Rule 52 motion.  Nor is Hyde & Swigart's

interpretation of comments by two Ninth Circuit judges during oral argument relevant

25 to the analysis.  A finding of bad faith "does **not** require that the legal and factual

26 basis for the action prove totally frivolous; where a litigant is substantially motivated

by vindictiveness, obduracy, or mala fides, **the assertion of a colorable claim will**

27 **not bar the assessment of attorney's fees**. (Citation)." *In Re Itel Secs. Litig*., 791

28 (continued...)

DEL NERO ET AL. V. MIDLAND CREDIT MANAGEMENT ET AL. (CASE NO. CV 04-1040 ABC (SHx))
REPLY ISO DEFENDANTS' MOTION FOR AWARD OF ATTORNEYS' FEES    7.

1160

1   Hyde & Swigart relies almost exclusively on out-of-circuit authority, and
2   does not address the binding Ninth Circuit authorities cited by Midland.  Contrary
3   to the firm's assertion, "a clear showing of bad faith," *id.* at 10:27-28 (citing
4   Second Circuit case), is not required.

5   Nothing in the plain language of section 1927 requires a showing of bad
6   faith.  *See* 28 U.S.C. § 1927 ("Any attorney . . . who so multiplies the proceedings
7   in any case unreasonably and vexatiously may be required by the court to satisfy
8   personally the excess costs, expenses, and attorneys' fees reasonably incurred
9   because of such conduct.").  The Ninth Circuit has made clear that bad faith is not
10  required.  *See B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107 (9th Cir. 2002).
11  Rather, reckless conduct will suffice.  *See Gomez v. Vernon*, 255 F.3d 1118, 1134
12  (9th Cir. 2001).[10]

13  The Ninth Circuit did not disturb Judge Schiavelli's finding that Hyde &
14  Swigart acted in bad faith.  This Court does not need to make any further findings.
15  Based on the existing finding, Hyde & Swigart should be held responsible for the
16  attorneys' fees and costs incurred by Midland pursuant to 28 U.S.C. § 1927.

---

[9](...continued)
F.2d at 675 (emphasis supplied); *see also Fink*, 239 F.3d at 992 ("*Itel* teaches that
sanctions are justified when a party acts *for an improper purpose* – even if the act
consists of making a truthful statement or a non-frivolous argument or objection.").
Judge Schiavelli was not prohibited from taking into account Hyde & Swigart's
conduct in other litigation.  *See Artese v. Academy Collection Serv., Inc.*, 2000 WL
133733, at *4 (D. Conn. Jan. 18, 2000); *see also Johnson v. Commissioner of Internal
Revenue*, 289 F.3d 452, 456-57 (7th Cir. 2002) ("The Tax Court was not required to
ignore Izen's bad conduct in other cases; indeed it would have been remiss not to
consider it.").

[10] Hyde & Swigart's reliance on *MGIC Indem. Corp. v. Moore*, 952 F.2d 1120
(9th Cir. 1991) is misplaced.  There, unlike here, the district court "made no specific
finding of bad faith," and, as the Ninth Circuit observed, the event precipitating the
award of sanction was "as consistent with negligence as with bad faith."  *Id.* at 1122.

DEL NERO ET AL. V. MIDLAND CREDIT MANAGEMENT ET AL. (CASE NO. CV 04-1040 ABC (SHx))
REPLY ISO DEFENDANTS' MOTION FOR AWARD OF ATTORNEYS' FEES                          8.

1161

Case 3:16-cv-02180-WQH-MDD Document 637-1 Filed 09/23/22 PageID.5385 Page 1169 of
1196
Case 2:04-cv-01040-ABC-SH Document 267 Filed 08/22/17 Page 10 of 34 Page ID #:4394

**D.    The Court Can Sanction Hyde & Swigart Under Its Inherent Powers**

Hyde & Swigart relies solely on *Mendez v. County of San Bernardino*, 540 F.3d 1109 (9th Cir. 2008), to argue it should not be sanctioned under the Court's inherent authority because there is no evidence its conduct "was not in conformance with the court's requirements." Document No. 247 at 22:27-28. *Mendez* does not help Hyde & Swigart. In *Mendez*, the trial court failed to make "an express finding of bad faith." *See* 540 F.3d at 1130, 1132.[11]

Here, again, there was a finding of bad faith. Based on that finding, Hyde & Swigart should be sanctioned pursuant to the Court's inherent authority.[12] *See Roadway Express v. Piper*, 447 U.S. 752, 765-66 (1980) (court's inherent powers include power to sanction attorney for "bad faith" conduct by directing attorney to pay fees incurred by opposing party).

**E.    Midland Is Entitled To Recover The Full Amount Of Its Fees**

Finally, Hyde & Swigart argues that section 1927 authorizes the Court to award only the "excess" attorneys' fees and costs it caused Midland to incur, and

---

[11]    The trial court also failed to give counsel notice that he was required to appear at a "show cause" hearing, *see id.*, but given the lack of the requisite bad faith finding, sanctions were inappropriate regardless of counsel's failure to appear. In any event, Hyde & Swigart were given notice of the possibility that the Court might hold them jointly and severally liable for the attorneys' fees and were given an opportunity to respond.

[12]    As with section 1927, a finding of bad faith is not required; conduct "'tantamount to bad faith' is sanctionable." *B.K.B.*, 276 F.3d at 1108; *accord Fink*, 239 F.3d at 993-94; *Gomez v. Vernon*, 255 F.3d at 1134 (district court did not commit clear error "in finding conduct tantamount to bad faith" and imposing sanctions under its inherent authority). Reckless conduct, combined with an improper purpose or knowing misconduct, will also suffice. *See B.K.B.*, 276 F.3d at 1107-08; *Fink v. Gomez*, 239 F.3d 989, 94 (9th Cir. 2001); *see also In Re Itel Secs. Litig.*, 791 F.2d 672, 675 (9th Cir. 1986) (sanctions proper where counsel "willfully abused judicial process or otherwise conducted litigation in bad faith.").

1   that there were no such fees and costs incurred.[13]  But Judge Schiavelli already

2   found that the entire case was brought in bad faith.  *See* Document No. 193 at

3   2:12, 3:9; Document No. 215 at 1:20-21.  By awarding Midland $155,979.09 in

4   fees and costs, and holding Hyde & Swigart jointly and severally liable for that

5   amount, it is apparent he concluded all of these fees and costs were excess fees

6   and costs.  If the case had not been brought and litigated through trial, none of the

7   fees and costs would have been incurred.

8

9   **III.   <u>CONCLUSION</u>**

10          For the foregoing reasons, Midland respectfully requests that the Court hold

11  Hyde & Swigart jointly and severally liable for the entire amount of its attorneys'

12  fees and costs, pursuant to 28 U.S.C. § 1927, and/or the Court's inherent authority.

13

14  DATED:  March 22, 2010              SIMMONDS & NARITA LLP
                                        TOMIO B. NARITA
15                                      JEFFREY A. TOPOR

16

17
                                        By:   s/Jeffrey A. Topor
18                                            Attorneys for Defendants
                                              Midland Credit Management, Inc. and
19                                            MRC Receivables Corporation

20

21

22

23

24

25

26
    _____
27         [13]   Hyde & Swigart does not argue that there is any such limit on Court's
28  inherent authority to impose sanctions.

DEL NERO ET AL. V. MIDLAND CREDIT MANAGEMENT ET AL. (CASE NO. CV 04-1040 ABC (SHx))
REPLY ISO DEFENDANTS' MOTION FOR AWARD OF ATTORNEYS' FEES                          10.

1163

Case 3:16-cv-02186-WQH-MDD   Document 47-1   Filed 01/23/17   PageID.2016   Page 441 of 1145

# EXHIBIT Q

Case 3:16-cv-02186-WQH-MDD Document 137-1 Filed 09/23/22 PageID.5393 Page 172 of
195
Case 2:04-cv-01040-WQH-MDD Document 287-1 Filed 03/30/10 Page 1 of 4 Page ID #:470

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 04-1040 ABC (SHx) | | Date | March 30, 2010 |
|---|---|---|---|---|
| Title | Darren Del Nero, et al. v. Midland Credit Management, et al. | | | |

| Present: The Honorable | Audrey B. Collins, Chief Judge | |
|---|---|---|
| Irene Ramirez | None Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| None Present | None Present |

**Proceedings:** ORDER DENYING MOTION FOR FEES AND COSTS (In Chambers)

Pending before the Court is Defendants' motion for attorneys' fees and costs pursuant to 28 U.S.C. § 1927 and the Court's inherent authority. (Mot. (Docket # 246).) The motion seeks fees and costs from Plaintiff's counsel, Intervenor Hyde & Swigart. Intervenor filed an opposition, and Defendants filed a reply. (Opp'n (Docket # 247), Reply (Docket # 253).) Having reviewed the record and the papers submitted, the Court hereby **DENIES** the motion.

Plaintiff initially brought this case for alleged violations of the Fair Debt Collection Practices Act ("FDCPA") and California's unfair competition law. This case was previously assigned to Judge Schiavelli, who is no longer serving on the bench. Following trial, Judge Schiavelli awarded Defendants fees and costs against Intervenor under the FDCPA, 15 U.S.C. § 1692k(a)(3). The Ninth Circuit reversed, holding as a matter of first impression within the circuit that the FDCPA does not authorize an award of fees and costs against a plaintiff's attorney under Section 1692k(a)(3). Hyde v. Midland Credit Mgmt., Inc., 567 F.3d 1137, 1140 (9th Cir. 2009). The Ninth Circuit focused on that legal conclusion and made no determination with respect to Judge Schiavelli's factual finding of bad faith. See id. at 1139 (assuming without deciding that action "was brought in bad faith and for the purpose of harassment").[1] Defendants now ask this Court to rely on Judge Schiavelli's factual findings to award fees and costs against Intervenor under 28 U.S.C. § 1927 and the Court's inherent authority. Defendants are seeking roughly $156,000. (See Mot. at 23.)

## I. Section 1927

A court has discretion to award fees under Section 1927 when an attorney unreasonably and vexatiously multiplies the proceedings. See B.K.B. v. Maui Police Dept., 276 F.3d 1091, 1107 (9th Cir.

---

[1] Judge Schiavelli also awarded fees against Intervenor under Fed. R. Civ. P. 11. The parties agreed on appeal that Judge Schiavelli's reliance on Rule 11 was misplaced. See Hyde, 567 F.3d at 1139. Fees and costs were also awarded against Plaintiff himself, who did not appeal that ruling.

Case 3:16-cv-02186-WQH-MBD Document 137-1 Filed 08/23/22 PageID.5393 Page 173 of
Case 2:04-cv-01040-WQH-MBD Document 247-1 Filed 03/30/17 PageID.2018 Page 443 of
1195

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-1040 ABC (SHx) | Date | March 30, 2010 |
|---|---|---|---|

| Title | Darren Del Nero, et al. v. Midland Credit Management, et al. |
|---|---|

2002).[2] The Ninth Circuit has held that "section 1927 sanctions must be supported by a finding of subjective bad faith, which is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." Id. (quoting In re Keegan Mgmt. Co., Securities Litig., 78 F3d. 431, 436 (9th Cir. 1996), internal quotations omitted). Granting such sanctions is an extraordinary remedy, and a court should exercise its power to do so with "extreme caution." Keegan, 78 F3d. at 437.

Defendants' pending motion rests on the conclusions reached by Judge Schiavelli in awarding attorneys' fees and costs against Plaintiff and Intervenor. (February 20, 2007 Order (Docket # 193).) With respect to holding Intervenor liable for fees and costs, Judge Schiavelli focused on its representation of Plaintiff in other cases: "The Court finds that fees should be imposed on counsel in this case because Plaintiff's counsel continued to file FDCPA suits on behalf of Mr. Del Nero after the court trial in this case." (Id. at 3 (emphasis in original).) In particular, Mr. Hyde had represented to Judge Schiavelli after the trial in this case that he "would never have agreed to represent [Plaintiff] in this case or any other matter" had he known at that time that his client was "less than forthcoming" about the "facts surrounding the . . . trial in this matter." (Id. at 3-4 (emphasis omitted).) Yet Intervenor continued to represent Plaintiff in other suits and even filed a new complaint on his behalf following trial. (Id. at 4.) Judge Schiavelli further noted that Plaintiff was sanctioned in that new suit for filing a baseless action. (Id.) "Taken together these post-trial facts and counsel's representation of Mr. Del Nero in numerous other FDCPA actions demonstrate that Plaintiff's counsel participated in the filing of bad faith FDCPA actions and should therefore be liable for Defendants' attorneys' fees along with Plaintiff Del Nero." (Id.)

Intervenor argues that these findings are irrelevant because they do not relate to misconduct in this case. (See Opp'n at 18-19.) Although not cited by either party, Intervenor's position is supported by Ninth Circuit authority. The Ninth Circuit has made clear that, with respect to Section 1927, this Court does "not have power to sanction conduct that occurred in a different court in a different case." Trulis v. Barton, 107 F.3d 685, 694 (9th Cir. 1997). In that case, the Ninth Circuit refused to consider the merits of an argument for sanctions based on a purported misrepresentation made in a separate bankruptcy proceeding. Id.; see also GRiD Sys. Corp. v. John Fluke Mfg. Co., 41 F.3d 1318, 1319 (9th Cir. 1994) (per curiam) (reversing sanctions imposed based on counsel's filing of a duplicative state court action because "[counsel] did not multiply the proceedings in the case before the district court. The suit filed in state court is an entirely separate action, not subject to the sanctioning power of the district court.") Thus, to the extent that Judge Schiavelli's findings relate to misconduct in other actions,

---

[2] As an initial matter, Intervenor argues that Defendants' motion is improper because of the mandate issued in this case. The Court disagrees as the Ninth Circuit neither expressly or implicitly ruled on the merits of Defendants' pending arguments, and the mandate does not otherwise foreclose consideration of the motion. See, e.g., United States v. Cote, 51 F.3d 178, 181-82 (9th Cir. 1995).

Case 3:16-cv-02186-WQH-MDD Document 127-1 Filed 09/23/22 PageID.5390 Page 174 of
Case 3:04-cv-02186-WQH-MDD Document 127-1 Filed 09/23/22 PageID.2013 Page 449 of
1195

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 04-1040 ABC (SHx) | | Date | March 30, 2010 |
|---|---|---|---|---|
| Title | Darren Del Nero, et al. v. Midland Credit Management, et al. | | | |

they could not support this Court's imposition of sanctions under Section 1927.[3]

Some of Judge Schiavelli's findings do relate to misconduct in this case, but the Court finds that such misconduct is insufficient to impose sanctions under Section 1927. For example, Judge Schiavelli found that this case was brought to trial without sufficient evidentiary support because Plaintiff's only witness was not credible. (See February 20, 2007 Order at 2.) But there was no finding that Intervenor brought the case to trial with the required bad faith or recklessness for sanctions to be appropriate under Section 1927. Nor does the Court find the evidence in the record sufficient to make such a finding now. To the extent Judge Schiavelli's order refers to Intervenor's misrepresentation following trial that it was no longer representing Plaintiff in other cases, the Court does not find that the misrepresentation multiplied these proceedings or rises to the level of egregious misconduct for which monetary sanctions are generally reserved. The Court, of course, does not condone such behavior and admonishes Intervenor for it.

Accordingly, the Court concludes that Defendants are not entitled to fees and costs under Section 1927.

## II.   Inherent Authority

The inherent power to sanction parties is "necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991). A court may exercise that power when an attorney acts in bad faith or displays conduct tantamount to bad faith. B.K.B., 276 F.3d at 1108. Such a finding may be appropriate where, among other things, a party engages in behavior that has the effect of "delaying or disrupting the litigation or hampering enforcement of a court order." Primus Automotive Financial Servs., Inc. v. Batarse, 115 F.3d 644, 649 (9th Cir. 1997). "Because of their very potency, inherent powers must be exercised with restraint and discretion." Chambers, 501 U.S. at 44. Indeed, the Ninth Circuit has recently emphasized that the level of misconduct must meet "a high threshold" to be sanctionable. Mendez v. County of San Bernardino, 540 F.3d 1109, 1132 (9th Cir. 2008) (citing Primus, 115 F.3d at 649). "Even in a case where the district court described a litigant's arguments as 'totally frivolous,' 'outrageous' and 'inexcusable' and called his behavior 'appalling,' [the Ninth Circuit] nonetheless refused to equate this characterization of conduct as synonymous with a finding of bad faith." Id. (quoting Primus, F.3d at 649).

The Court declines to award sanctions under its inherent authority. As noted above, the conduct cited by Judge Schiavelli as giving rise to his finding that Intervenor acted in bad faith arose

---

[3] The Ninth Circuit authority cited by Defendants does not alter this conclusion as it dealt with sanctionable conduct occurring in the case in which the sanctions were sought. See In re Itel Securities Litig., 791 F.2d 672, 674 (9th Cir. 1986) (affirming sanctions imposed on counsel who "repeatedly took actions in the Itel Securities Litigation for the sole purpose of obtaining fee-related concessions in connection with other litigation.")

Case 3:16-cv-02186-WQH-MDD Document 127-1 Filed 09/23/22 PageID.5391 Page 1175 of
1196
Case 3:04-cv-01040-WQH-MDD Document 247-1 Filed 03/02/17 PageID.2624 Page 4455 of
1195

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 04-1040 ABC (SHx) | Date | March 30, 2010 |
|---|---|---|---|
| Title | Darren Del Nero, et al. v. Midland Credit Management, et al. | | |

predominantly in other cases and after the trial in this Court had concluded.[4]  It did not delay or disrupt this litigation nor hamper the enforcement of a court order.  Moreover, it appears that some of that misconduct has already resulted in monetary sanctions being levied in other cases.  (See February 20, 2007 Order at 4.)  Accordingly, the Court declines to exercise its discretion to issue sanctions in this case under its inherent authority.

**III.     Conclusion**

        For the foregoing reasons, Defendants failed to persuade the Court that Intervenor's conduct is appropriately sanctioned for fees and costs pursuant to either Section 1927 or the Court's inherent authority.  Accordingly, the motion is **DENIED**.

        **IT IS SO ORDERED.**



_____  :  _____

Initials of Preparer   IR for AB

___

        [4]  Unlike Section 1927 sanctions, the Ninth Circuit has indicated that district courts may impose sanctions under their inherent authority based on conduct taken in other actions.  Western Sys., Inc. v. Ulloa, 958 F.2d 864, 873 (9th Cir. 1992) (finding that sanctions may be imposed under the district court's inherent powers for conduct in Guam territorial court).

Scott A. McMillan, SBN 212506
The McMillan Law Firm, APC
4670 Nebo Drive, Suite 200
La Mesa, California 91941-5230
(619) 464-1500
Email: scott@mcmillanlaw.us

Attorney for Plaintiffs, SCOTT A. MCMILLAN, an individual, and THE
MCMILLAN LAW FIRM, APC, a California Professional Corporation

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT A. MCMILLAN, an individual, THE MCMILLAN LAW FIRM, APC, a California Professional Corporation, | Case No. 3:16-CV-02186-WQH-MDD |
| | Judge: Hon. William Q. Hayes |
| Plaintiffs, | Courtroom: 14B |
| v. | |
| DARREN D. CHAKER an individual, and as trustee of PLATINUM HOLDINGS GROUP TRUST, dba COUNTER FORENSICS; NICOLE CHAKER, an individual, and as trustee of THE NICOLE CHAKER REVOCABLE LIVING TRUST, U/A dated August 18, 2010, VANIA CHAKER, an individual and as beneficiary of The Island Revocable Trust under Declaration of Trust dated June 2, 2015, MARCUS MACK as trustee of The Island Revocable Trust under Declaration of Trust dated June 2, 2015, | **DECLARATION OF SCOTT A. MCMILLAN IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT DARREN D. CHAKER'S MOTION TO SEAL.** |
| | Hearing Date: June 26, 2017 |
| | Complaint Filed: August 29, 2016 |
| Defendants. | [NO ORAL ARGUMENTS UNLESS ORDERED BY COURT] |

I, Scott McMillan, do declare as follows,

1.     I am an attorney, licensed to practice in the State of California. If called before this Court, except as to those matters which I state on information and belief, I could and would testify as follows from my own personal knowledge:

2.     I submit this declaration in support of Plaintiffs' Opposition to Defendant Darren Chaker's ("Defendant") Motion to Seal Exhibit FF to the Complaint and First Amended Complaint ("FAC"), as well as Exhibit C to Plaintiffs' Opposition to Defendant's Motion for Sanctions ("Opposition Exhibit C").

3.     Plaintiffs request that Defendant's Motion be denied or, in the alternative, allow Plaintiffs to file the original Exhibit FF and Opposition Exhibit C under seal, while also allowing Plaintiffs to file redacted versions in their place on the public record. A true and correct copy of the proposed redacted Exhibit FF is attached hereto as **Exhibit 1**. A true and correct copy of the proposed redacted Opposition Exhibit C is attached hereto as **Exhibit 2**.

4.     Defendant has a long history of requesting sealing–often belatedly. For example, in 2012, Defendant requested the Hon. Judge Willam Q. Hayes to seal the case file from a 1996 case, *Chaker v. Davis*, Case No. 96-cv-0314; the request was denied. A true and correct copy of the Order denying the request to seal is attached as **Exhibit 3**.

5.     Plaintiffs did not file either Exhibit FF or Opposition Exhibit C for an improper purpose – both are used to support Plaintiff's allegations in the FAC, as is outlined in the accompanying memo and Plaintiffs' Opposition to Defendant's Motion for Sanctions.

6.     Upon Defendant's opposition to having the purported "personal" addresses on his numerous identification cards on file with the court, I (a) would point out that Defendant appears to currently live in San Diego, and (2) I looked up

DECLARATION OF SCOTT A. MCMILLAN IN SUPPORT OF
PLAINTIFFS' OPPOSITION TO MOTION TO SEAL

2

each address included in Exhibit FF only to find that none of the addresses were residential. On page 5 of Exhibit FF ("D. David Hunter"), the address of 848 N Rainbow Blvd., Las Vegas, NV 89107 is visible. Upon searching on Google Maps, which states an image capture date as April 2015 and was made prior to filing the Complaint, that location is a commercial building. The building includes a church, Sorrento Pizza, and Go Skate Skateboard Lessons, among others. A true and correct copy of my search is attached as **Exhibit 4**.

7.      On page 6 of Exhibit FF ("Darren Chaker-Del Nero"), the address of 20000 S Maryland Blvd., Las Vegas, NV 89123 is visible. The address lands in the middle of a major thoroughfare next to a large parking lot with no street-facing houses. A true and correct copy of my search results for this address is attached as **Exhibit 5.**

8.      On pages 7-8 of Exhibit FF ("Darren D. Del Nero"), for a California Interim Driver's License for "Darren D. Del Nero", the address of 311 N Robertson Blvd., Beverly Hills, CA 90211 is barely discernible.  Upon searching, I found it to be a post office. A true and correct copy of my search results for this address is attached as **Exhibit 6.**

9.      On page 9 of Exhibit FF ("Darren D. Nero"), a scan of Defendant's purported Nevada Driver's license shows the address of [difficult to read text] W. Lake Mead Las Vegas, NV [indecipherable zip code]. Based on my best guesses as to what the street numbers might be, paired with the search term of "W Lake Mead Blvd", as there is no plain 'W Lake Mead' street in Las Vegas that I could find on Google Maps, below are my findings. A true and correct copy of my searches for the below addresses is attached as **Exhibit 7**.

    a.      3560 W. Lake Mead Blvd - Major thoroughfare with no residential buildings nearby.

    b.      8360 W. Lake Mead Blvd - Major thoroughfare with no street-facing residential buildings.

1      c.      8560 W. Lake Mead Blvd. - Major thoroughfare with no residential buildings nearby.

2

3      d.      8580 W. Lake Mead Blvd. - This address belongs to Roberto's Taco Shop inside a commercial lot with a Chevron gas station, among others.

4

5      10.     Because the style of the driver's license is older, I decided to search

whether official versions of that license design was available online. The Nevada

Department of Motor Vehicles has a page on its website depicting all designs of

the Nevada driver's license over time, which, as the very end of the website page,

includes the pre-2002 design that appears to match Defendant's license in Exhibit

FF. I compared the design on the DMV's website to that of the scan of Defendant's

license and noticed some discrepancies between the two. A true and correct copy

of the DMV website page, as well as the scan of Defendant's Nevada license from

Exhibit FF for comparison are attached hereto as **Exhibit 8** (website last accessed

June 8, 2017).

    11.     Defendant's purported Nevada driver's license design indicates,

according to the DMV website, it was a film-based license issued to all Nevadans

prior to 2002. The Nevada DMV website shows that are two strings of numbers

entered right below the colored top section, with one ten-digit number on the far

left, and an eight-digit number (a date: mmddyyyy) on the far right, above another

number and the picture. Defendant's driver's license has an extra nine or ten digit

number in the middle of the top of his card. Regardless of that number's purported

purpose, the first three numbers do not appear to match the social security numbers

of Defendant to which Plaintiff has access. Other discrepancies between

Defendant's driver's license and that of the DMV's sample 2002 license include

(1) Defendant's card has "BLUE" for his eye color, rather than the DMV's use of

"BLU", (2) the date format above Defendant's picture is 03-20-2002, whereas the

DMV website indicates a date format of 04141998, and (3) the number below the

date at the top right of the DMV's sample is indented, whereas Defendant's

1  number is not. These differences tend to indicate that Defendant's identification
2  card is a forgery.

3      12.    Finally, I reviewed the Arizona identification card on page 10 of
4  Exhibit FF. Because the scan is of such poor quality, I could not search the address
5  listed on it. However, Defendant also claimed in his Memo that his full social
6  security number was disclosed on page 10 of Exhibit, which was this card. Because
7  of this claim, and because I could not read the content on the scan itself, I searched
8  online for an official version of that style of Arizona identification card/driver's
9  license to see the information it normally contained. The Arizona DMV didn't
10  have an equivalent to Nevada DMV's license design history, but the Arizona
11  Department of Veteran Services's website had a depiction of the style of card at
12  issue. I reviewed the image to determine if a social security number was included.
13  Based on the sample license on that website, there is no indication a social security
14  number was included on that card design. Frankly, I would be very surprised if any
15  State identification card or driver's license included such sensitive information,
16  given the common uses for a driver's license or identification card. A true and
17  correct copy of a screen shot of the Arizona Department of Veteran Services's
18  website with the card on it, as well as a zoomed view of the card on the website,
19  are attached hereto as **Exhibit 9**.

20      13.    With regard to the home address listed on the bench warrant in
21  Exhibit FF, that is proper information to include on a service document for the
22  Sheriff, and it was previously filed in *Darren Chaker v. Wendy Mateo*, San Diego
23  Superior Court Case No. 37-2010-00094816-CU-DF-CTL, (ROA 267).

24      14.    Defendant frequently claims, when asked by government—as is
25  alleged in the Opposition to the Motion for Sanctions—that his only income is
26  from either disability and social security and/or rental income. But, when it is
27  convenient for him, he also provides his sister's backing when signing things such

28

1  as loans or rental applications.

2      15.    In Opposition Exhibit C, Defendant claims that Plaintiffs disclosed his

3  full date of birth. In fact, Defendant's date of birth is never actually written

4  correctly, as the years 1927 and 1970 appear in the two places requiring such

5  information–neither of which match the date of birth for the identities of Defendant

6  which are known to Plaintiffs.

7      16.    Although Defendant takes issue with the disclosure of financial

8  information with regard to the "pay stubs" and social security payments from 2003,

9  those documents (1) are nearly or are over ten years old, and (2) are offered to

10  support Plaintiffs' claims of a criminal enterprise as between the Defendants. In

11  this instance, both Vania and Darren Chaker signed the rental application in the

12  exhibit. Darren claimed employment from his sister's law firm, as well as having

13  received "pay stubs" from her law firm, which were purportedly being paid to two

14  of Darren's identities. But, when questioned by the government or those seeking

15  repayment, Defendant's go-to response typically is—based on reviewing his

16  bankruptcy fraud and other cases—that he has little to no income because he

17  cannot work and only receives income from either disability, social security, or, in

18  some instances, rental properties.

19

20  ///

21

22

23

24  ///

25

26

27

28

17.     Sealing documents creates an administrative burden to manage for the attorneys and for the Court. In addition, Defendant, despite demanding whenever he can that documents pertaining to him be sealed, challenged the authenticity of Plaintiffs' sealed exhibits to the FAC with motions to strike and sanctions. Defendant has had nine months in which to look over the Complaint and its exhibits. Had the issues with the exhibit been timely raised contemporaneously with the filing of the FAC, Plaintiffs could have easily redacted the information at that time.

I declare within the meaning of 28 U.S.C. § 1746, under penalty of perjury, that the foregoing is true and correct, and that this declaration was executed on June 12, 2017, in the city of La Mesa, County of San Diego, State of California, United States.

Respectfully submitted,

Dated: June 12, 2017

/s/ Scott A. McMillan
Scott A. McMillan
Attorneys for Plaintiffs

# EXHIBIT EE

SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF SAN DIEGO
CENTRAL DIVISION, HALL OF JUSTICE
DEPARTMENT 72
HONORABLE TIMOTHY B. TAYLOR, JUDGE


DARREN CHAKER,                    CASE NO. 37-2010-00094816-
                                              CU-DF-CTL

    PLAINTIFF,

V.

WENDY MATEO, ET AL.,

    DEFENDANTS.

_____/



TRANSCRIPT OF PROCEEDINGS
FRIDAY, JANUARY 22, 2016



REPORTED BY TATIANA A. KOUPRIANOVA, CSR NO. 11759
REPORTER PRO TEMPORE
SAN DIEGO SUPERIOR COURT


Exh EE
1 of 13

Transcript of Proceedings - 1/22/2016

```
 1                A P P E A R A N C E S
 2   FOR PLAINTIFF:
 3          DARREN CHAKER  (IN PROPRIA PERSONA)
 4
     FOR DEFENDANTS:
 5
            THE MCMILLAN LAW FIRM, APC
 6          BY:  SCOTT A. MCMILLAN, ESQ.
            4670 NEBO DRIVE, SUITE 200
 7          LA MESA, CALIFORNIA  91941-5230
            (619) 464-1500
 8          SCOTT@MCMILLANLAW.US
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
```

**Transcript of Proceedings - 1/22/2016**

1    SAN DIEGO, CALIFORNIA; JANUARY 22, 2016, 3:07 P.M.

2                    * * * * * *

3         THE COURT:  LET THE RECORD REFLECT THAT WE ARE

4    PRESENT IN THE MATTER OF CHAKER VERSUS MATEO.

5    MR. CHAKER IS PERSONALLY PRESENT, AS IS MR. MCMILLAN.

6         THE COURT CALLED THIS MATTER AT 1:30.  MR. CHAKER

7    WAS SWORN.  THE PARTIES WENT INTO THE CORRIDOR, WITH

8    THE COURT REPORTER, TO CONDUCT A JUDGMENT DEBTOR

9    EXAMINATION.  THEY HAVE NOW RETURNED WITH PROBLEMS

10   THAT THEY WISH THE COURT TO RESOLVE.

11        MR. MCMILLAN:  CORRECT, YOUR HONOR.

12        THE COURT:  I THINK THAT THE IDEA OR PLAN,

13   RATHER, WAS FOR MR. MCMILLAN TO GIVE US A LIST OF

14   THOSE ISSUES, AND THEN WE CAN TRY TO RESOLVE THEM.  SO

15   WHY DON'T YOU SET FORTH A LIST, MR. MCMILLAN.

16        MR. MCMILLAN:  YOUR HONOR, MR. CHAKER HAS

17   REFUSED TO PROVIDE THE -- WELL FIRST OFF, MR. CHAKER

18   DIDN'T BRING ANY DOCUMENTS WITH HIM HERE TODAY AS HE

19   WAS REQUIRED TO IN THE ORDER COMPELLING COMPLIANCE

20   WITH THE SUBPOENA DUCES TECUM.  SO WE HAVE NO

21   DOCUMENTS, AND SOME OF THE DOCUMENTS ARE CLEARLY THOSE

22   WITHIN HIS CONTROL; NAMELY, HIS DOMAINS, HIS DOMAIN

23   NAMES, AND SITES THAT HE HAS ADMINISTRATIVE PRIVILEGES

24   TO ON THE INTERNET; HIS PHONE NUMBERS; HIS TITLE

25   DOCUMENTS ON HIS VEHICLES, WHICH APPARENTLY THERE ARE

26   TWO.  AND HE IS NOT PROVIDING ANY OF HIS OFFSHORE

27   BANKING INFORMATION, AND HE IS NOT PROVIDING THE

28   USERNAMES, AS ORDERED, ON COMPLAINTSBOARD.

**Transcript of Proceedings - 1/22/2016**

1   HAVE ADMINISTRATIVE PRIVILEGES FOR?"  SO HE WAS TO

2   BRING THAT, AND IT'S ALSO CONTAINED IN THE SUBPOENAS.

3   GOES TO THE DOMAIN NAMES, DOMAIN REGISTRATIONS.  AND

4   HE IS NOT PROVIDING THAT.

5          THE COURT:  OKAY.  ARGUMENT?

6          MR. CHAKER:  I DID PROVIDE A LIST OF DOMAINS

7   THAT I CAN THINK OF.  THOSE DOMAINS ARE OWNED BY A

8   NEVADA SPENDTHRIFT TRUST.  I PROVIDED MR. MCMILLAN

9   THAT INFORMATION.  IT WAS AT THAT TIME HE ATTEMPTED TO

10  INTERTWINE DOMAIN INFORMATION OR ADMINISTRATIVE WHICH

11  IDENTIFY THE NAMES WITH LOG-IN INFORMATION.  AND IT

12  WAS AT THAT TIME THAT I WALKED INTO COURT, AT ABOUT

13  3:00 P.M., BECAUSE I'M NOT PROVIDING LOG-IN

14  INFORMATION.  BUT INASMUCH -- NOR DO I KNOW THE LOG-IN

15  INFORMATION.  THERE'S A PASSWORD THAT WOULD INPUT A

16  RANDOM SET OF CHARACTERS.

17         BUT NONETHELESS, THE DOMAINS WERE PROVIDED,

18  AND I'D SAY THAT THE TRUST OWNS THEM.  IT HAS SINCE

19  THEIR INCEPTION.  SO I ANSWERED MR. MCMILLAN'S

20  QUESTIONS AS FAR AS WHICH DOMAINS I HAVE

21  ADMINISTRATIVE PRIVILEGES OVER.  HE THEN FOLLOWED THAT

22  UP WITH ADDITIONAL QUESTIONS, WHICH I'LL BRING UP, AS

23  I'M SURE MR. MCMILLAN WILL.  HE WANTED TO KNOW IF I

24  POSTED DEFAMATORY MATERIAL, ET CETERA, ABOUT HIM,

25  WHICH BRINGS IN ISSUES CONCERNING THE PROBATION THAT

26  I'M UNDER RIGHT NOW IN FEDERAL COURT.

27         THE COURT:  I THOUGHT WE WERE HERE TO TRY TO

28  ENFORCE A JUDGMENT.  WHY WOULD IT BE RELEVANT WHETHER

**Transcript of Proceedings - 1/22/2016**

1  YOU'LL HAVE THAT RECORD.  BUT FOR NOW, HE'S ASKED ME

2  TODAY, NOW, WHICH I'VE ALREADY ALREADY ORDERED YOU TO

3  DO, TO GIVE THE LIST OF DOMAIN NAMES, NOT THE ONES YOU

4  CAN REMEMBER, BUT THE ONES YOU CAN DO THE RESEARCH AND

5  FIND OUT THE ONES YOU LEFT OUT, AND GIVE HIM THAT ON

6  MARCH 11.  THAT'S MY ORDER.

7       MR. CHAKER:  OKAY.

8       THE COURT:  OKAY.

9       MR. CHAKER:  IF I MAY, THE SECOND PART OF

10 THAT, CONCERNING THE PASSWORDS, IS THAT MR. MCMILLAN

11 ALLEGES -- AND HE'S ALLEGED TO THE PROBATION

12 OFFICER -- THAT I POSTED DEFAMATORY MATERIAL ABOUT HIM

13 ONLINE.  SOME OF THESE WEB SITES MAY INCLUDE A WEB

14 SITE CALLED COMPLAINTSBOARD.  YOUR HONOR ORDERED ME TO

15 PRODUCE -- OR TO NOTIFY MR. MCMILLAN OF ANY USERNAMES

16 CONCERNING WHAT I MAY HAVE POSTED ABOUT MR. MCMILLAN

17 ON COMPLAINTSBOARD.  HE THEN ASKED ME FOR PASSWORD

18 INFORMATION CONCERNING IT, AND THEN HE ASKED ME TO

19 ADMIT THAT I POSTED DEFAMATORY MATERIAL, WHICH WOULD

20 THEN CREATE ISSUES WITH PROBATION.

21       I INVOKED MY FIRST AMENDMENT RIGHTS, AS WELL

22 AS FIFTH AMENDMENT.  MR. MCMILLAN MADE A POLICE REPORT

23 WITH LA MESA POLICE DEPARTMENT, ALTHOUGH I WAS NOT

24 ARRESTED ON IT.  HE ALSO MADE A REPORT TO THE U.S.

25 PROBATION OFFICE ALLEGING THAT I DEFAMED HIM, AND THAT

26 WAS ALMOST A YEAR AGO.

27       THE COURT:  IS IT A VIOLATION OF PROBATION

28 CONDITION TO COMPLY WITH ALL LAWS?

Case 3:16-cv-02186-WQH-DD Document 12-19 Filed 08/23/16 PageID.545 Page 7 of 14
1196

**Transcript of Proceedings - 1/22/2016**

```
 1        MR. CHAKER:  LAWS, NOT TO DEFAME, POST, AND
 2   THAT'S ACTUALLY THE ISSUE THAT'S NOW BEFORE THE 9TH
 3   CIRCUIT, ABOUT THE CONSTITUTIONALITY OF THAT ISSUE.
 4        THE COURT:  I'M NOT GOING TO GET IN THE WAY OF
 5   THE 9TH CIRCUIT.  I'M NOT UNDERSTANDING YOU,
 6   MR. MCMILLAN, TO BE ASKING ME TODAY FOR AN ORDER FOR
 7   PASSWORDS.
 8        MR. MCMILLAN:  NO.  I'M NOT ASKING FOR
 9   PASSWORDS.
10        THE COURT:  YOU ARE NOT ASKING ME TO ORDER
11   MR. CHAKER TO GIVE YOU PASSWORDS?
12        MR. MCMILLAN:  I'M NOT ASKING --
13        THE COURT:  AND I'M NOT ORDERING IT.  IS THAT
14   CLEAR ENOUGH?
15        MR. CHAKER:  YES, BUT ALSO TO IDENTIFY
16   ACCOUNTS WHICH LINK TO ALLEGED DEFAMATORY POSTINGS.
17        THE COURT:  I'VE ORDERED YOU TO GIVE HIM THE
18   DOMAIN NAMES, AND THAT ORDER IS CLEAR, IS CAPABLE OF
19   BEING HONORED, AND I EXPECT YOU TO HONOR IT ON
20   MARCH 11.
21        MR. CHAKER:  YES, YOUR HONOR.
22        THE COURT:  THANK YOU.  WHAT'S NEXT ON THE
23   LIST?
24        MR. MCMILLAN:  YOUR HONOR, THE USERNAMES.  AND
25   THIS WAS ON ITEMS 41 THROUGH 44, WHICH IS ALSO ON PAGE
26   44.
27        THE COURT:  41 THROUGH THROUGH 44.  IT SAYS IN
28   THE FOURTH PARAGRAPH, "THE COURT GRANTS THE MOTION AS
```

Transcript of Proceedings - 1/22/2016

```
 1   TO QUESTIONS 7, 24, 26, 34, AND 41 THROUGH 44, AND
 2   46."
 3             MR. MCMILLAN:  YES.
 4             THE COURT:  OKAY.
 5             MR. MCMILLAN:  AND WE ASKED FOR THE USERNAMES
 6   ON COMPLAINTSBOARD.
 7             THE COURT:  THE USERNAMES THAT THE PLAINTIFF
 8   -- THAT THE JUDGMENT DEBTOR, RATHER, HAS USED ON THE
 9   USER BOARDS?
10             MR. MCMILLAN:  COMPLAINTSBOARD.
11             THE COURT:  COMPLAINTSBOARD.  EXCUSE ME.
12   OKAY.  AND THAT WILL LEAD YOU TO INFORMATION REGARDING
13   COLLECTION OF THIS DEBT HOW?
14             MR. MCMILLAN:  HOLD ON, YOUR HONOR.  ACTUALLY,
15   IT WAS ON 35 THROUGH 37.  BECAUSE WE'VE BEEN -- I WAS
16   CONTACTED AND TOLD IF I WANT TO PAY $5,000 OR $4,000,
17   I THINK I NEGOTIATED IT DOWN TO, THAT THE MATERIAL
18   THAT IS POSTED ON THIS COMPLAINTSBOARD, WHICH IS
19   SIMILAR MATERIAL THAT MR. CHAKER HAS POSTED ELSEWHERE,
20   TO BE REMOVED.  SO USING IT AS A MEANS TO COLLECT
21   MONEY AND --
22             THE COURT:  OH, I SEE WHAT YOU ARE SAYING.  SO
23   YOU THINK THAT HE IS BOTH POSTING DEFAMATORY MATERIAL
24   AND SEEKING TO CHARGE YOU, PRESUMABLY, THROUGH A
25   STRAWMAN?
26             MR. MCMILLAN:  EXACTLY.
27             THE COURT:  OH.  I WONDER IF I'M ON THERE.
28             MR. CHAKER:  IF I MAY, PLEASE.
```

Transcript of Proceedings - 1/22/2016

```
 1          THE COURT:  HAVE YOU NOTICED?
 2          MR. MCMILLAN:  I HAVEN'T SEARCHED, YOUR HONOR.
 3          THE COURT:  I WOULDN'T KNOW HOW TO GO ABOUT
 4  DOING IT.
 5          MR. MCMILLAN:  MR. CHAKER CAN SHOW YOU, I'M
 6  SURE.
 7          THE COURT:  YOU KNOW WHAT?  I'M NOT
 8  INTERESTED.  PEOPLE SAY BAD THINGS ABOUT JUDGES ALL
 9  THE TIME.  I'M USED TO IT.
10          SO YOU THINK THAT HE IS BOTH POSTING IT AND
11  OFFERING FOR PAYMENT, AND SO THE INCOME STREAM FROM
12  THE PAYMENT FOR THAT IS A LINK TO COLLECTABILITY?
13          MR. MCMILLAN:  CORRECT.
14          THE COURT:  GOT IT.  RESPONSE?
15          MR. CHAKER:  COMPLAINTSBOARD IS A FREE WEB
16  SITE THAT ANYONE CAN REGISTER AND POST THEIR
17  COMPLAINTS ON.  THERE ARE COMPANIES, IF YOU ARE LISTED
18  ON IT, THAT SEARCH PEOPLE WHO ARE LISTED ON IT BY
19  SIMPLY GOING ON THE WEB SITE.  THEN THEY CONTACT THEM
20  TO REMOVE OR TO PUSH DOWN THOSE SEARCH RESULTS.
21          I'M NOT USING A STRAWMAN.  MR. MCMILLAN CAN
22  CONTACT WHATEVER COMPANY THAT CONTACTED HIM AND FIND
23  OUT WHERE THEY GOT THIS INFORMATION FROM.  THE ISSUE
24  IS -- THE POINT OF MR. MCMILLAN IS TO, ONE, FIND OUT
25  WHAT I POSTED; TWO, PROVE IT'S DEFAMATORY; THREE, GO
26  TO THE U.S. PROBATION OFFICE TO PUT ME IN JAIL.
27  AGAIN, THIS CASE IS PENDING IN THE 9TH CIRCUIT,
28  APPEALED AT ACLU.  THE LIST GOES ON.  AND, ACTUALLY,
```

Exh EE
8 of 13

**Transcript of Proceedings - 1/22/2016**

1    THE REPLY BRIEF WAS JUST FILED TODAY.

2         IF MR. MCMILLAN THINKS SOME THIRD PARTY IS

3    ACTING ON MY BEHALF TO EXTORT MONEY, GO SUBPOENA THEM,

4    FIND OUT IF THEY ARE A REAL BUSINESS.  I DON'T THINK

5    VIOLATING THE FIRST AMENDMENT OR PUTTING THE FIFTH

6    AMENDMENT IN JEOPARDY IS THE PROPER AVENUE TO GO,

7    GIVEN SPECIFICALLY THE CONDITIONS OF PROBATION, SO --

8         THE COURT:  HOW WOULD GIVING HIM THE

9    INFORMATION THAT HE IS SEEKING ON THIS ONE DO THAT?

10        MR. CHAKER:  FOR EXAMPLE, IF MR. MCMILLAN HAS

11   A POST ON COMPLAINTSBOARD THAT SAYS SOMETHING

12   DEFAMATORY AND I SAY, "MY USERNAME IS THIS," WELL,

13   "THAT USERNAME POSTED SOMETHING DEFAMATORY ABOUT ME.

14   WHILE YOU ARE ON PROBATION, I'M NOW GOING TO GO TO THE

15   PROBATION OFFICER AND GET YOU VIOLATED ON PROBATION,"

16   BECAUSE THE ANONYMITY OF USING A PSEUDONYM ONLINE HAS

17   NOW BEEN PIERCED.

18        THE COURT:  RESPONSE?

19        MR. MCMILLAN:  WELL, I WENT THROUGH IT, AND

20   YOUR HONOR PREVIOUSLY ORDERED IT ON 35 -- ACTUALLY, IT

21   WAS 36 AND 37 OF THE ITEMS AND, WELL, TIME FOR

22   RECONSIDERATION HAS PASSED, AND I BELIEVE I'VE

23   EXPLAINED MY REASONING.  IT'S THE SAME REASONING I

24   EXPLAINED AT OUR FIRST HEARING.  I BELIEVE IT'S HIS

25   METHOD OF --

26        THE COURT:  WHAT INFORMATION DO YOU HAVE

27   SUGGESTING THAT MR. CHAKER CONTROLS THE ENTITY THAT

28   CONTACTED YOU AND OFFERED, FOR PAY, TO REMOVE OR TO

**Transcript of Proceedings - 1/22/2016**

1      MR. CHAKER:  I HAVE NO NONPOSSESSORY INTEREST

2  IN ANY FIREARMS.

3      MR. MCMILLAN:  SAME QUESTION FOR THE TRUST.

4      THE COURT:  DOES THE TRUST HAVE ANY

5  NONPOSSESSORY INTEREST IN ANY FIREARMS AT THE PRESENT

6  TIME, SIR?

7      MR. CHAKER:  CORRECT.

8      THE COURT:  ANSWER YES OR NO.

9      MR. CHAKER:  IT DOES NOT.

10     THE COURT:  YOU'VE GOT YOUR ANSWER.

11     MR. MCMILLAN:  THERE WE GO.

12     THE COURT:  ANYTHING FURTHER THAT YOU WISH ME

13  TO ADDRESS, OTHER THAN SETTING A -- CONFIRMING THE

14  SETTING OF A FUTURE DATE?

15     MR. MCMILLAN:  JUST INSTRUCTING HIM TO RESPOND

16  TO THE SUBPOENA, THE SUBPOENA DUCES TECUM, THE

17  DOCUMENTS.

18     THE COURT:  THE DOCUMENTS.  YEAH.  SO MARCH --

19  REMIND ME --

20     MR. MCMILLAN:  MARCH 11.

21     THE COURT:  -- MARCH 11, 2016, AT 1:30 P.M.,

22  IN THIS DEPARTMENT.  WE ALREADY HAVE A HEARING SET.  I

23  DON'T KNOW IF THE MOVING PAPERS ARE ON FILE.  I DOUBT

24  IT.

25     MR. MCMILLAN:  NOT YET.

26     THE COURT:  BUT IT IS RESERVED, FOR A HEARING

27  ON A REQUEST TO HAVE ME IMPOSE A LIMITED-PURPOSE

28  RECEIVERSHIP FOR THE PURPOSE OF LIQUIDATING PERSONAL

**Transcript of Proceedings - 1/22/2016**

```
 1   PROPERTY TO SATISFY THE JUDGMENT.
 2         MR. MCMILLAN:  YES.
 3         THE COURT:  AT THAT SAME TIME, I AM ORDERING
 4   YOU TO APPEAR IN DEPARTMENT 72 TO PROVIDE THE
 5   INFORMATION THAT I'VE ORDERED YOU TO PROVIDE TODAY,
 6   THAT HAS NOT ALREADY BEEN PROVIDED.  SOME OF THE
 7   ORDERS THAT I MADE, YOU ANSWERED RIGHT AWAY, AS YOU
 8   JUST DID.  AND SO THERE'S SOME OUTSTANDING ISSUES
 9   WHERE YOU NEED TO DO SOME RESEARCH.  I EXPECT YOU TO
10   DO THAT AND BRING THAT AND PROVIDE THAT TO
11   MR. MCMILLAN ON MARCH 11, AT 1:30, IN THIS DEPARTMENT.
12         YOU ARE NOT PRESENTLY AT WARRANT.  DO YOU
13   PROMISE TO APPEAR AS ORDERED?
14         MR. CHAKER:  I DO.  I WOULD ONLY ASK -- IT'S
15   MY BIRTHDAY THAT WEEK.
16         THE COURT:  WHAT?
17         MR. CHAKER:  I WOULD ONLY ASK, BECAUSE MY
18   BIRTHDAY IS THAT WEEK, IF THAT HEARING DATE COULD BE
19   PUSHED OUT ANOTHER WEEK OR TWO.
20         THE COURT:  NO.  SORRY WE ARE INTERRUPTING
21   YOUR BIRTHDAY, BUT IT'S ALREADY BEEN CONTINUED.
22         MR. CHAKER:  OH, OKAY.
23         THE COURT:  YEAH.  AND SO THE CONTINUANCE
24   REQUEST IS DENIED.  THE COURT AGAIN INQUIRES, DO YOU
25   PROMISE TO APPEAR ON THAT DAY?
26         MR. CHAKER:  I DO.
27         THE COURT:  THANK YOU.  YOU ARE ORDERED TO DO
28   SO.  TO THE EXTENT THAT THERE'S A WARRANT ORDERED AND
```

**Transcript of Proceedings - 1/22/2016**

1    HELD, THAT ORDER IS SET ASIDE.  IT WILL BE RE-ISSUED
2    IF YOU FAIL TO APPEAR ON MARCH 11, AS I'M SURE YOU
3    UNDERSTAND.  DO YOU UNDERSTAND?
4          MR. CHAKER:  CORRECT.
5          THE COURT:  OKAY.  SO YOU ARE NOT PRESENTLY AT
6    WARRANT.  THERE'S NOT EVEN ONE ISSUE THAT'S HELD.
7    RIGHT NOW THERE IS NO WARRANT.  THAT SITUATION CHANGES
8    IF YOU FAIL TO APPEAR ON MARCH 11, AT 1:30, IN THIS
9    DEPARTMENT.  IS THAT CLEAR?
10         MR. CHAKER:  CORRECT.  AND --
11         THE COURT:  IS THAT CLEAR?  YES OR NO.
12         MR. CHAKER:  YES, YOUR HONOR.
13         THE COURT:  THANK YOU.
14         MR. CHAKER:  AND --
15         THE COURT:  ALL RIGHT.  NOW, AT THAT SAME
16   TIME, AT THAT SAME HOUR, I'M EXPECTING YOU TO RESPOND
17   TO THE SUBPOENA THAT I PREVIOUSLY ORDERED YOU TO
18   RESPOND TO.  YOU DON'T HAVE THE ARGUMENT ON MARCH 11
19   THAT YOU WERE UNAWARE OF MY NOVEMBER ORDER BECAUSE,
20   CLEARLY, YOU ARE NOW AWARE OF IT, AND I EXPECT YOU TO
21   READ IT AND COMPLY WITH IT.
22         IF YOU NO LONGER HAVE POSSESSION OR CONTROL OF
23   THE DOCUMENTS FOR ANY REASON, SUCH AS YOU GAVE THEM TO
24   YOUR EX-PARTNER AND SHE KEPT THEM AND THEN YOU CAN'T
25   GET THEM BACK, I EXPECT YOU TO LAY THAT OUT IN DETAIL,
26   WHAT DOCUMENTS YOU USED TO HAVE, THE REASON YOU NO
27   LONGER HAVE THEM AND NO LONGER HAVE CONTROL OF THEM.
28   IF I'M SATISFIED THAT ALL THOSE THINGS ARE SO, THAT

**Transcript of Proceedings - 1/22/2016**

1  WILL BE THE END OF IT.  BUT IF THERE'S SOMETHING OUT

2  THERE THAT YOU JUST DECIDE NOT TO GO GET, THAT I

3  CONCLUDE THAT YOU CAN READILY GET, SUCH AS SOMETHING

4  FROM THE SPENDTHRIFT TRUST IN LAS VEGAS OR WHEREVER IN

5  NEVADA IT IS, THEN THERE'D BE FURTHER PROCEEDINGS.

6  OKAY?

7         MR. CHAKER:  YES, YOUR HONOR.

8         THE COURT:  THANK YOU.  DO YOU HAVE A QUESTION

9  FOR ME?

10         MR. CHAKER:  I DO.  THE PURPOSE OF THE PHONE

11  NUMBER IS -- TO CLARIFY, THE PURPOSE OF THE PHONE

12  NUMBER IS TO NOT OBTAIN TELEPHONE RECORDS BUT TO

13  OBTAIN THE BILLING OR THE MANNER IN WHICH THE BILL IS

14  PAID?

15         THE COURT:  NO.  I'M SATISFIED THAT THE

16  PURPOSE IS REASONABLY CALCULATED TO LEAD TO

17  INFORMATION THAT WILL HELP MR. MCMILLAN COLLECT THIS

18  FINAL NON-APPEALABLE DEBT, JUDGMENT.  THAT'S ALL I'M

19  GOING TO SAY.

20         MR. CHAKER:  OKAY.

21         THE COURT:  ALL RIGHT.  ANYTHING FURTHER,

22  MR. MCMILLAN?

23         MR. MCMILLAN:  NO.  THANK YOU FOR YOUR TIME,

24  YOUR HONOR.

25         THE COURT:  I'LL SEE YOU ON MARCH 11, FELLAS.

26  THANK YOU.

27              * * * * *

28     (THE PROCEEDINGS WERE ADJOURNED AT 4:00 P.M.)