1  STEPHEN J. ERIGERO (SBN 121616)
   **ROPERS MAJESKI PC**
2  445 South Figueroa Street, Suite 3100
   Los Angeles, California 90071
3  Telephone: 213.312.2000
   Facsimile: 213.312.2001
4  Email:    stephen.erigero@ropers.com

5  Attorneys for Defendant-Appellants
   DARREN D. CHAKER
6

7

8              **UNITED STATES DISTRICT COURT**

9            **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  SCOTT A. MCMILLAN, an individual;          Case No. 3:16-cv-2186-WQH-MDD
    THE MCMILLAN LAW FIRM, APC,
12  a California professional corporation,      *Hon. William Q. Hayes*
                                                *Courtroom 14B*
13              Plaintiffs – Appellants,
                                                **DEFENDANT-APPELLEE**
14        v.                                    **DARREN D. CHAKER'S NOTICE**
                                                **OF LODGING DOCUMENTS**
15  DARREN D. CHAKER, an individual,
    and as trustee of PLATINUM                  **[*Filed Concurrently with Sur-Reply***
16  HOLDINGS GROUP TRUST, dba                   ***and (Proposed) Order]***
    COUNTER FORENSICS; NICOLE
17  CHAKER, an individual, and as trustee        **DATE: SEPTEMBER 12, 2022**
    of THE NICOLE CHAKER
18  REVOCABLE LIVING TRUST, U/A                 ***NO ORAL ARGUMENT UNLESS***
    dated August 18, 2010, VANIA                ***REQUESTED BY THE COURT***
19  CHAKER, an individual and as
    beneficiary of The Island Revocable
20  Trust under,                                 Action Filed: August 29, 2016
                                                 Trial Date:    None
21              Defendants – Appellees.
                                                 **[PART 2 OF 2 - 1190-1330]**
22

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Defendant-Appellant DARREN D. CHAKER ("Defendant-Appellant") hereby lodges a copy of the case file for United States District Court, Southern District of California, case file designated 3:16-cv-2186-WQH-MDD, which is attached hereto as Exhibit "A" with the Index of the documents. The case file has been highlighted to identify, pursuant to this Court's order of September 9, 2022, the identifying characteristics contained therein which Defendant-Appellee seeks to be redacted from the Record.

Dated:  September 23, 2022          ROPERS MAJESKI PC

By: _____
STEPHEN J. ERIGERO
Attorneys for Defendant/Appellee
Darren D. Chaker

ROPERS
MAJESKI

A Professional Corporation
Los Angeles

# INDEX

| File/Document Name (As Obtained from PACER) | Beginning Page Number in Exhibit A |
|---|---|
| 01 - Objections | 1 |
| 01 - ORDER of USCA as to Notice of Cross Appeal to 9th Circuit filed by Scott A | 8 |
| 01 - ORDER The Motion to File Documents Under Seal filed by Defendant Darren D C | 10 |
| 01 - RESPONSE in Opposition re Ex Parte MOTION to Continue Hearing Date and Opp | 18 |
| 01 - Summons Issued Counsel receiving this notice electronically should print th | 23 |
| 01 - USCA Time Schedule Order as to Notice of Appeal to 9th Circuit filed by Sc | 26 |
| 1 - DECLARATION re MOTION for Extension of Time to File DEFENDANT NICOLE CHAKER | 28 |
| 1 - RESPONSE in Opposition re MOTION for Extension of Time to File DEFENDANT NI | 113 |
| 02 - Ex Parte MOTION to Continue Hearing Date and Opposition Date on Motion for | 121 |
| 02 - Exhibit V | 129 |
| 02 - Objections | 133 |
| 02 - ORDER of USCA as to Notice of Cross Appeal to 9th Circuit filed by Nicole | 143 |
| 02 - RESPONSE in Opposition re MOTION to File Documents Under Seal with Certifi | 145 |
| 02 - USCA Case Number 17-56676 for Notice of Appeal to 9th Circuit filed by Sco | 159 |
| 2 - Declaration of Scott A McMillan | 160 |
| 2 - MOTION for Extension of Time to File DEFENDANT NICOLE CHAKER'S NOTICE OF MOT | 201 |
| 03 - CERTIFICATE OF SERVICE by Vania Chaker re Response in Support of Motion (B | 205 |
| 03 - Declaration of Scott A McMillan in Opposition | 208 |
| 03 - Exhibit W | 214 |
| 03 - NOTICE OF APPEAL to the 9th Circuit as to Order Order Order by Scott A M | 225 |
| 03 - REPLY to Response to Motion re MOTION to Strike MOTION to Dismiss Plainti | 231 |
| 03 - USCA Time Schedule Order as to Notice of Cross Appeal to 9th Circuit filed | 243 |
| 3 - Memo of Points and Authorities | 245 |
| 3 - Proof of Service | 256 |
| 04 - Exhibit X | 258 |
| 04 - NOTICE of Appearance by Eduardo Bravo on behalf of Darren D Chaker (Bravo E | 265 |

| | |
|---|---|
| 04 - Objections | 266 |
| 04 - ORDER The Clerk of Court is directed to close this case Signed by Judge Wil | 273 |
| 04 - REPLY TO RESPONSE TO MOTION (DKT # ) - Originally e-filed as RESPONSE in S | 274 |
| 04 - USCA Case Number 18-55358 for Notice of Cross Appeal to 9th Circuit filed | 283 |
| 4 - DECLARATION re MOTION for Extension of Time to File DEFENDANT NICOLE CHAKER | 284 |
| 05 - Exhibit Y | 369 |
| 05 - NOTICE of Appearance by Emily L Rice on behalf of Darren D Chaker (Rice Emi | 376 |
| 05 - Objections | 377 |
| 05 - ORDER The motion to seal previously filed documents is granted with respect | 387 |
| 05 - Supplemental Declaration of Vania Chaker | 392 |
| 05 - USCA Time Schedule Order as to Notice of Cross Appeal to 9th Circuit filed | 405 |
| 5 - MOTION for Extension of Time to File DEFENDANT NICOLE CHAKER'S NOTICE OF MOT | 407 |
| 06 - Evidentiary Objections to Declaration of Timothy J Wing | 411 |
| 06 - Exhibit Z | 420 |
| 06 - NOTICE of Appearance of E LACEY RICE by Stephen J Erigero on behalf of Darr | 427 |
| 06 - ORDER Defendant Darren Chaker's motion to dismiss the First Amended Complai | 428 |
| 06 - ORDER Re Stipulation To Extend Time To Respond To First Amended Complaint ( | 444 |
| 06 - USCA Case Number 18-55343 for Notice of Cross Appeal to 9th Circuit filed | 445 |
| 07 - CERTIFICATE OF SERVICE by Scott A McMillan re Notice of Cross Appeal to 9t | 446 |
| 07 - Evidentiary Objections to Declaration of Joshua Van Noord | 448 |
| 07 - Exhibit AA | 453 |
| 07 - NOTICE of Appearance by Timothy W Kenna on behalf of Nicole Chaker (Kenna T | 457 |
| 07 - NOTICE of Appearance of EDUARDO A BRAVO by Stephen J Erigero on behalf of D | 459 |
| 07 - OBJECTION by Darren D Chaker re Complaint Objection to Plaintiffs' Claim o | 460 |
| 08 - Evidentiary Objections to Declaration of Scott McMillan | 465 |
| 08 - Exhibit BB | 474 |
| 08 - Joint MOTION for Extension of Time to File ResponseReply to Plaintiffs' Fir | 478 |

| | |
|---|---|
| 08 - MOTION to File Documents Under Seal (With attachments)(Erigero Stephen) (an | 481 |
| 08 - NOTICE OF CROSS APPEAL to the 9th Circuit as to Order Order Order by Sco | 483 |
| 08 - REPLY to Response to Motion re MOTION to Seal a Previously Filed Document | 513 |
| 09 - Exhibit CC | 523 |
| 09 - Memo of Points and Authorities | 534 |
| 09 - NOTICE OF CROSS APPEAL to the 9th Circuit as to Order Order by Nicole Cha | 542 |
| 09 - Proof of Service Proof of Service | 564 |
| 09 - Proposed Order | 565 |
| 09 - Response to Plaintiffs' Evidentiary Objections to Declaration of Vania Cha | 569 |
| 10 - Declaration of Eduardo A Bravo | 572 |
| 10 - Exhibit DD | 672 |
| 10 - RE-DOCKETED BY THE USDC CLERK AS NOTICE OF CROSS APPEAL TO THE 9TH CIRCUIT | 674 |
| 10 - Reply iso Request for Judicial Notice | 696 |
| 10 - RESPONSE in Opposition re MOTION to Seal a Previously Filed Document re A | 698 |
| 10 - RESPONSE re MOTION to Dismiss Plaintiffs First Amended Complaint Response | 716 |
| 11 - Declaration of Scott A McMillan in support of request for judicial notice | 724 |
| 11 - Declaration of Scott A McMillan | 1169 |
| 11 - Exhibit EE | 1176 |
| 11 - NOTICE NOTICE OF CHANGE OF FIRM NAME by Nicole Chaker (Smith Rebecca) (4320 | 1190 |
| 11 - ORDER IT IS HEREBY ORDERED that Defendant Nicole Chaker's motion for an ex | 1194 |
| 11 - Request for Judicial Notice | 1199 |
| 12 - Certificate of Service | 1202 |
| 12 - Exhibit 3 | 1204 |
| 12 - Exhibit GG | 1207 |
| 12 - MANDATE of USCA affirming the decision of the USDC as to Notice of Cross A | 1210 |
| 12 - MOTION for Sanctions pursuant to or alternatively the Court's Inherent Pow | 1216 |
| 12 - NOTICE REQUEST FOR RULING ON DEFENDANT DARREN D CHAKERS OBJECTION TO PLAINT | 1220 |
| 13 - Certificate of Service | 1222 |
| 13 - Exhibit 9 | 1225 |
| 13 - Memo of Points and Authorities | 1228 |

| | |
|---|---|
| 13 - ORDER Granting Motion to Substitute Attorney Attorney John M Hochhausler t | 1255 |
| 13 - ORDER The motions to dismiss (Dkt #s  ) are denied as moot Signed by Judge | 1257 |
| 14 - Declaration of Darren D Chaker | 1259 |
| Doc 1 - COMPLAINT with Jury Demand against All Defendants ( Filing fee $ 400 receip | 1262 |
| Doc 1-1 - Civil Cover Sheet | 1300 |
| Doc 1-2 - Exhibit C | 1302 |
| Doc 1-3 - Exhibit D | 1305 |
| Doc 1-4 - Exhibit E | 1307 |
| Doc 1-5 - Exhibit G | 1309 |
| Doc 1-6 - Exhibit H | 1311 |
| Doc 1-7 - Exhibit I | 1313 |
| Doc 1-8 - Exhibit J | 1315 |
| Doc 1-9 - Exhibit K | 1317 |
| Doc 1-10 - Exhibit L | 1320 |
| Doc 1-11 - Exhibit M | 1322 |
| Doc 1-19 - Exhibit U | 1324 |

# EXHIBIT "A"

1    **GILBERT, KELLY, CROWLEY & JENNETT LLP**
     TIMOTHY W. KENNA, A PROFESSIONAL CORPORATION / Bar No. 64280
2    t.kenna@gilbertkelly.com
     ARTHUR J. MC KEON III / Bar No. 082540
3    ajm@gilbertkelly.com
     REBECCA J. SMITH / Bar No. 150428
4    rjs@gilbertkelly.com
     401 B Street, Suite 2210
5    San Diego, California 92101
     (619) 687-3000; FAX: (213) 615-7100

6

7    **Mailing Address:**
     550 South Hope Street, 22nd Floor
     Los Angeles, California 90071-2627

8

9    Attorneys for Defendant
     NICOLE CHAKER

10            **UNITED STATES DISTRICT COURT**

11          **SOUTHERN DISTRICT OF CALIFORNIA**

12

13    SCOTT A. MCMILLAN, an individual,    )    Case No. 3:16-CV-02186-WQH-MD
     THE MCMILLAN LAW FIRM, APC, a    )
14    California professional corporation,    )    Judge: William Q. Hayes
                                  )    Courtroom 14B
15            Plaintiffs,    )
                                    )    Magistrate Hon. Mitchell D. Dembin
16       vs.    )    Courtroom 11th Floor
                                    )
17    DARREN D. CHAKER an individual,    )
     and as trustee of PLATINUM    )
18    HOLDINGS GROUP TRUST, dba    )    **NOTICE OF CHANGE OF FIRM**
     COUNTER FORENSICS; NICOLE    )    **NAME**
19    CHAKER, an individual, and as trustee    )
     of THE NICOLE CHAKER    )
20    REVOCABLE LIVING TRUST, U/A    )
     dated August 18, 2010, VANIA    )
21    CHAKER, an individual and as    )
     beneficiary of The Island Revocable    )
22    Trust under Declaration of Trust dated    )
     June 2, 2015, MARCUS MACK as    )
23    trustee of The Island Revocable Trust    )
     under Declaration of Trust dated June 2,    )
24    2015,    )
                                    )
25            Defendants.    )
     _____ )

26        TO THE COURT, ALL INTERESTED PARTIES AND TO THEIR

27    RESPECTIVE ATTORNEYS OF RECORD:

28        PLEASE TAKE NOTICE that **effective April 1, 2017,** the Firm name Gilbert,

Gilbert, Kelly
Crowley & Jennett LLP
Attorneys at Law

NOTICE OF CHANGE OF FIRM NAME

4299701.1   48811-00002 TWK

1190

3:16-CV-02186-WQH-MDD

1   Kelly, Crowley & Jennett LLP shall become **FREEMAN MATHIS & GARY,**

2   **LLP**.  The addresses and telephone numbers shall remain the same.

3   Dated:  March 31, 2017      GILBERT, KELLY, CROWLEY & JENNETT
     LLP

4

5      By: _____

6      ARTHUR J. Mc KEON III

7      REBECCA J. SMITH
     Attorneys for Defendant

8      NICOLE CHAKER

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gilbert, Kelly
Crowley & Jennett LLP
Attorneys at Law

-2-
NOTICE OF CHANGE OF FIRM NAME

4299701.1  48811-00002  TWK      3:16-CV-02186-WQH-MD

1191

Case 3:16-cv-02186-WQH-MDD Document 137-2 Filed 09/23/22 PageID.5422 Page 10 of
148
Case 3:16-cv-02186-WQH-MDD Document 68 Filed 03/31/17 PageID.3028 Page 3 of 4

# PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 550 South Hope Street, 22nd Floor, Los Angeles, CA 90071-2627.

On March 31, 2017, I served the within document(s) described as:

**NOTICE OF CHANGE OF FIRM NAME**

on the interested parties in this action as stated below:

| | |
|---|---|
| **Scott A McMillan** <br> The McMillan Law Firm, APC <br> 4670 Nebo Drive <br> Suite 200 <br> La Mesa, CA 91941-5230 <br><br> Phone: (619)464-1500 <br> Fax: (619)828-7399 <br> Email: scott4670@gmail.com | **Scott A. McMillan,** <br> **The McMillan Law Firm, APC** <br> *(Plaintiff)* |
| **Timothy J. Grant** <br> Fredrickson, Mazeika & Grant, LLP <br> 5720 Oberlin Drive <br> San Diego, CA 92121 <br><br> Phone: 858-642-2002 <br> Fax: 858-642-2001 <br> Email: tgrant@fmglegal.com | **Darren D. Chaker** <br> *(Defendant)* |
| **Ryan G. Baker** <br> Baker Marquart LLP <br> 2029 Century Park East <br> Suite 1600 <br> Los Angeles, CA 90067 <br><br> Phone: 424-652-7800 <br> Fax: 424-652-7850 <br> Email: rbaker@bakermarquart.com | **Vania Chaker** <br> *(Defendant)* |

[X]  **(BY ELECTRONIC SUBMISSION):** I served the above listed document(s) described via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service though the court's transmission facilities.

Gilbert, Kelly
Crowley & Jennett LLP
Attorneys at Law

PROOF OF SERVICE

4299701.1  48811-00002  TWK

1192

3:16-CV-02186-WQH-MD

1

2 ☒ **(BY U.S. MAIL)**: By placing a true copy of the foregoing document(s) in a
sealed envelope addressed as set forth on the attached mailing list. I placed
3 each such envelope for collection and mailing following ordinary business
practices. I am readily familiar with this Firm's practice for collection and
4 processing of correspondence for mailing. Under that practice, the
correspondence would be deposited with the United States Postal Service on
5 that same day, with postage thereon fully prepaid at San Diego, California, in
the ordinary course of business. I am aware that on motion of the party
6 served, service is presumed invalid if postal cancellation date or postage meter
date is more than one day after date of deposit for mailing in affidavit.

7
Executed on March 31, 2017, at Los Angeles, California.
8
I declare under penalty of perjury that the foregoing is true and correct.
9

10    GRISELDA GREER

11     (Type or print name)           (Signature)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SCOTT A. MCMILLAN, an
individual; THE MCMILLAN
LAW FIRM, APC, a California
professional corporation,

                              Plaintiffs,

v.

DARREN D. CHAKER, an
individual, and as trustee of
PLATINUM HOLDINGS GROUP
TRUST doing business as
COUNTER FORENSICS;
NICOLE CHAKER, an individual,
and as trustee of Nicole Chaker
Trust One; VANIA CHAKER, an
individual and as beneficiary of
The Island Revocable Trust under
Declaration of Trust dated June 2,
2015; MARCUS MACK, as
trustee of The Island Revocable
Trust under Declaration of Trust
dated June 2, 2015; NICOLE
CHAKER, an individual, and as
trustee of The Nicole Chaker
Revocable Living Trust, U/A dated
August 18, 2010

                              Defendants.

Case No.:  16cv2186-WQH-MDD

**ORDER**

HAYES, Judge:

1

The matter before the Court is the motion for extension of time to file cross-appeal filed by Defendant Nicole Chaker.  (ECF No. 90).

## I.    BACKGROUND

On December 5, 2016, Plaintiffs Scott A. McMillan and The McMillan Law Firm, APC filed the First Amended Complaint ("FAC") against Defendant Darren D. Chaker, an individual and as trustee of Platinum Holdings Group Trust, dba Counter Forensics; Defendant Nicole Chaker, an individual and as trustee of The Nicole Chaker Revocable Living Trust, U/A dated August 18, 2010; Defendant Vania Chaker, an individual and as beneficiary of The Island Revocable Trust under Declaration of Trust dated June 2, 2015; and Defendant Marcus Mack, as trustee of the Island Revocable Trust under Declaration of Trust dated June 2, 2015.  (ECF No. 25).  Plaintiffs brought a cause of action for a violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) against Defendant Darren Chaker.  *Id.* ¶¶ 84–114. Plaintiffs brought a second cause of action for conspiracy to violate RICO, 18 U.S.C. § 1962(d) against all Defendants. *Id.* ¶¶ 115–119.   Plaintiffs brought a third cause of action for civil extortion under California law against Defendants Darren Chaker and Nicole Chaker.  *Id.* ¶¶ 120–133.

On August 28, 2017, the Court dismissed the First Amended Complaint without prejudice and granted Plaintiffs thirty days to file any motion for leave to file an amended complaint.  (ECF No. 83).  The docket reflects that Plaintiffs did not file any subsequent motion for leave to file an amended complaint.  Pursuant to its August 28, 2017 Order, the Court issued an order directing the Clerk of Court to close the case on October 10, 2017. (ECF No. 86).

On November 5, 2017, Plaintiffs filed a notice of appeal to the United States Court of Appeals for the Ninth Circuit.  (ECF No. 87).

On December 12, 2017, Defendant Nicole Chaker filed a motion for extension of time to file cross-appeal.  (ECF Nos. 90, 91).  On December 29, 2017, Plaintiffs filed a response in opposition.  (ECF No. 92).  On January 8, 2018, Defendant Nicole Chaker filed a reply.  (ECF No. 93).

2

16cv2186-WQH-MDD

## II.   CONTENTIONS OF THE PARTIES

Defendant moves the Court for an order extending the time to file a notice of cross-appeal by fourteen days pursuant to Federal Rule of Appellate Procedure 4(a)(5). Defendant contends that the late filing of the notice of cross-appeal is due to the excusable neglect of counsel for two reasons: (1) counsel for Defendant did not receive notice of the November 5, 2017 notice of appeal until November 9, 2017 after receiving a letter from the Ninth Circuit Court of Appeals and checking the Court website, and; (2) there was a delay in receiving confirmation from Defendant's insurance carrier that Defendant's counsel was also retained for the appeal.  Defendant contends that there is no prejudice to Plaintiff, the length of the delay is minimal and will not impact judicial proceedings, and that counsel has acted in good faith.  (ECF No. 90-1).

Plaintiff contends that the docket reflects that Defendant's counsel did receive notice of the appeal through the Court's CM/ECF system on November 5, 2017.  Plaintiff contends that even if Defendant's counsel did not receive notice until November 9, 2017, Defendant's counsel had sufficient time to file the cross-appeal.  Plaintiff contends that "neither good cause nor excusable neglect save the untimeliness of the motion." (ECF No. 92 at 5).  Plaintiff contends that the delay in receiving confirmation from the insurance carrier is "irrelevant and similarly unpersuasive."  *Id.* at 8.

## III.   DISCUSSION

Pursuant to Rule 4(a)(3) of the Federal Rules of Appellate Procedure, "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."  Fed. R. App. P. 4(a)(3).  Federal Rule of Appellate Procedure 4 provides,

> The district court may extend the time to file a notice of appeal if:  (i) a party so moves no later than 30 days after the time prescribed by this Rule 4(a) expires; and (ii) regardless of whether its motion is filed before or during the 30 days after the time prescribed by this Rule 4(a) expires, that party shows excusable neglect or good cause.

3

Fed. R. App. P. 4(a)(5)(A); *see also State of Or. v. Champion Int'l Corp.*, 680 F.2d 1300, 1301 (9th Cir. 1982). An extension under Rule 4(a)(5) may not "exceed 30 days after the prescribed time or 14 days after the date when the order granting the motion is entered, whichever is later." Fed. R. App. P. 4(a)(5)(C). Courts rely on a four-part balancing test to determine whether there has been excusable neglect warranting an extension of time to file a notice of appeal. *Pincay v. Andrews*, 289 F.3d 853, 855 (9th Cir. 2004) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993)). These factors include: "(1) the danger of prejudice to the non-moving party, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the moving party's conduct was in good faith." *Id.* (citing *Pioneer*, 507 U.S. at 395). "[T]he decision whether to grant or deny an extension of time to file a notice of appeal should be entrusted to the discretion of the district court . . . ." *Id.* at 859.

Plaintiffs filed a notice of appeal in this action on November 5, 2017. (ECF No. 87). Defendant's time to file a notice of appeal under Rule 4(a)(3) therefore expired on November 19, 2017. *See* Fed. R. App. P. 4(a)(3). The docket reflects that Defendant did not file any notice of appeal. Defendant filed a motion for an extension of the time to appeal on December 12, 2017. (ECF No. 90). This motion was filed within thirty days of November 19, 2017 and is therefore timely under Rule 4(a)(5)(A)(i). Accordingly, the Court has the discretion to grant Defendant's request upon a finding excusable neglect and good cause. *See* Fed. R. App. P. 4(a)(5)(A)(ii).

In this case, Defendant contends that an extension of time to file a cross-appeal is justified by excusable neglect. Defendant provides a declaration by Rebecca J. Smith, Defendant's counsel, stating that counsel for Defendant did not receive any notice from this Court on November 5, 2017 when the notice of appeal was filed. Smith states that counsel was not notified of the appeal until November 9, 2017 upon receipt of a letter from the Ninth Circuit Court of Appeals. Smith states that this notice inadvertently was not

properly processed by counsel's firm and the relevant dates were not properly calendared. (ECF No. 91 at 2–3). Smith further states that her office had been retained to represent Defendant in the underlying matter through her insurance carrier and that there was a delay in receiving notice from the insurance carrier that they had also been retained to represent Defendant in the appeal. *Id.* at 3–4. The Court concludes that Defendant's conduct was in good faith and that the actions of counsel constitute excusable neglect. Further, the Court concludes that there is little danger of prejudice to Plaintiff and that any delay in this case will have a minimal impact on judicial proceedings. The Court concludes that Defendant's failure to timely file the notice of appeal in this case constitutes excusable neglect and warrants an extension of time pursuant to Rule 4(a)(5).

IT IS HEREBY ORDERED that Defendant Nicole Chaker's motion for an extension of time to file a notice of cross-appeal is GRANTED. (ECF No. 90). Defendant is granted an extension of fourteen (14) days from the date of this Order to file a notice of appeal pursuant to Federal Rule of Appellate Procedure 4(a)(5).

Dated: March 8, 2018

Hon. William Q. Hayes
United States District Court

1 STEPHEN J. ERIGERO (SBN 121616)
E. LACEY RICE (SBN 266748)
2 EDUARDO A. BRAVO (SBN 327967)
**ROPERS MAJESKI PC**
3 445 South Figueroa St, 30th Floor
Los Angeles, CA 90071
4 Telephone: 213.312.2000
Facsimile: 213.312.2001
5 Email: stephen.erigero@ropers.com
Email: lacy.rice@ropers.com
6 Email: eduardo.bravo@ropers.com

7 Attorneys for Defendant
DARREN D. CHAKER

8

9 **UNITED STATES DISTRICT COURT**

10 **SOUTHERN DISTRICT OF CALIFORNIA**

11

12 SCOTT A. MCMILLAN, an individual;
THE MCMILLAN LAW FIRM, APC,
13 a California professional corporation,

14         Plaintiffs,

15    v.

16 DARREN D. CHAKER, an individual,
and as trustee of PLATINUM
17 HOLDINGS GROUP TRUST, dba
COUNTER FORENSICS; NICOLE
18 CHAKER, an individual, and as trustee
of THE NICOLE CHAKER
19 REVOCABLE LIVING TRUST, U/A
dated August 18, 2010, VANIA
20 CHAKER, an individual and as
beneficiary of The Island Revocable
21 Trust under,

22         Defendants.

23

Case No. 3:16-cv-2186-WQH-MDD

*Hon. William Q. Hayes*
*Courtroom 14B*

**REQUEST FOR JUDICIAL
NOTICE IN SUPPORT OF
DEFENDANT DARREN D.
CHAKER'S MOTION TO SEAL
PORTIONS OF PLAINTIFF
SCOTT A. MCMILLAN'S
COMPLAINT AND FIRST
AMENDED COMPLAINT**

**[***Filed Concurrently with Notice of
Motion, Memorandum of Points and
Authorities, Declaration of Eduardo
A. Bravo and (Proposed) Order]***

**DATE: AUGUST 3, 2020**

***NO ORAL ARGUMENT UNLESS
REQUESTED BY THE COURT***

Action Filed: August 29, 2016
Trial Date: None

24

25

26

27

28

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF**
**MOTION TO SEAL PORTIONS OF PLAINTIFF'S COMPLAINT**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that Defendant DARREN D. CHAKER ("Defendant") respectfully requests that the Court take judicial notice, pursuant to Rule 201 of the Federal Rules of Evidence, of the following document filed in the California Superior Court, County of San Diego in connection with Defendant's Motion to Seal Portion of Plaintiffs SCOTT A. MCMILLAN, ("McMillan") and THE MCMILLAN LAW FIRM, APC's (collectively, "Plaintiffs") Complaint and First Amended Complaint ("Motion"):

1.      Minute Order entered on June 29, 2018, in the California Superior Court, County of San Diego, Case No. 37-2017-00036344-CU-NP-CTL, in the matter *Scott A. McMillan v. Darren D. Chaker, et. al*. (the "Minute Order").

A true and correct copy of the foregoing document is attached as **Exhibit C** to the accompanying Declaration of Eduardo A. Bravo.

# I.      **ARGUMENT**

Federal Rule of Evidence 201 provides, in pertinent part, that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.." Fed. R. Evid. 201.  Courts may take judicial notice of "undisputed matters of public record including documents on file in federal or state courts." *Harris v. City of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (internal citation omitted).

/ / /

/ / /

/ / /

/ / /

/ / /

4815-0775-4433.1

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO SEAL PORTIONS OF PLAINTIFF'S COMPLAINT**

A true and correct copy of the Order granting in part Defendant's motion to seal portions of the state court complaint, entered by the Honorable Joan M. Lewis of the Superior Court of California, County of San Diego Case No. 37-2017-00036344-CU-NP-CTL, in the matter *Scott A. McMillan v. Darren D. Chaker, et. al.*, on June 28, 2018, is attached as **Exhibit C** to the accompanying Declaration of Eduardo A. Bravo.

This Order grants Defendant's motion to seal language in the state court complaint related to his prior paternity case, which "should not be available for public review." Because the Tentative Ruling addresses the same arguments based on the same facts that are at issue in Defendant's present Motion, the Tentative Ruling attached to the Declaration of Eduardo A. Bravo is directly relevant to the matters at issue in this Motion. A state court's tentative ruling is a matter of public record that this Court may take judicial notice of. *Harris*, 682 F.3d at 1132. Judicial records of California state courts are readily ascertainable and verifiable; therefore, no party can reasonable question the accuracy of this document. Judicial notice of the foregoing document is thus appropriate.

## II.    <u>CONCLUSION</u>

Pursuant to foregoing authorities, Defendant respectfully requests that this Court take judicial notice of the Superior Court of California's Tentative Ruling, which is attached to the accompanying Declaration of Eduardo A. Bravo

DATED:  June 25, 2020                          ROPERS MAJESKI PC


                                               By: */s/ Eduardo A. Bravo*
                                               STEPHEN J. ERIGERO
                                               E. LACEY  RICE
                                               EDUARDO A. BRAVO
                                               Attorneys for Defendant
                                               DARREN D. CHAKER

ROPERS
MAJESKI

A Professional Corporation
Los Angeles

- 3 -

Ha Scott A. McMillan, SBN 212506
The McMillan Law Firm, APC
4670 Nebo Drive, Suite 200
La Mesa, California 91941-5230
(619) 464-1500
Email: scott@mcmillanlaw.us

Attorney for Plaintiffs, SCOTT A. MCMILLAN, an individual, THE MCMILLAN LAW FIRM, APC, a California Professional Corporation

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT A. MCMILLAN, an individual, THE MCMILLAN LAW FIRM, APC, a California Professional corporation, | Case No. 3:16-CV-02186-WQH-MDD |
| | Judge: Hon. William Q. Hayes |
| | Courtroom: 14B |
| Plaintiffs, | |
| v. | **CERTIFICATE OF SERVICE** |
| DARREN D. CHAKER an individual, and as trustee of PLATINUM HOLDINGS GROUP TRUST, dba COUNTER FORENSICS; NICOLE CHAKER, an individual, and as trustee of THE NICOLE CHAKER REVOCABLE LIVING TRUST, U/A dated August 18, 2010, VANIA CHAKER, an individual and as beneficiary of The Island Revocable Trust under Declaration of Trust dated June 2, 2015, MARCUS MACK as trustee of The Island Revocable Trust under Declaration of Trust dated June 2, 2015, | Hearing Date: February 6, 2017 |
| | Courtroom: 14B |
| | Complaint Filed: August 29, 2016 |
| Defendants. | |

///

///

///

1202

## CERTIFICATE OF SERVICE

I, Scott A. McMillan, declare:

That I am admitted to practice in the United States District Court for the Southern District of California.  My business address is 4670 Nebo Dr., Ste. 200, San Diego, California  91941.

On **January 23, 2017**, I caused the following document(s) to be served:

- **PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS FILED BY NICOLE CHAKER [ECF 35, 36]**

- **DECLARATION OF SCOTT A. MCMILLAN IN SUPPORT OF PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS FILED BY NICOLE CHAKER [ECF 35, 36]**

- **this CERTIFICATE OF SERVICE**

**[X] BY ELECTRONIC TRANSMISSION**.  I caused the above-listed document(s) described to be served via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website.  The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge,, and any registered users in the case.  The NEF will constitute service of the document(s).  Registration as a CM/ECF user constitutes consent to electronic service through the court's transmission facilities.

Executed on January 23, 2017 in the City of La Mesa, California.

/S/ SCOTT A. MCMILLAN

SCOTT A. MCMILLAN, SBN 212506
The McMillan Law Firm, APC

*3:16-CV-02186*                    **CERTIFICATE OF SERVICE**                    2

# EXHIBIT

# 3

FILED

12 OCT 26 AM 11:43

CLERK, US DIST COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: MJ                          DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

DARREN CHAKER,

                              Plaintiff,

        vs.

OFFICER J. DAVIS,

                              Defendant.

CASE NO. 96cv0314

ORDER

HAYES, Judge:

On February 5, 1996, Plaintiff initiated this action by filing a Complaint in San Diego County Superior Court. On February 22, 1996, Defendant removed the action to this Court, alleging federal question jurisdiction. (ECF No. 1). On August 13, 1996, the Court dismissed the case for lack of prosecution by Plaintiff. (ECF No. 15).

On July 30, 2012, Plaintiff filed a motion to seal the entire record of this case, along with an ex parte application to file the motion under seal. Plaintiff contends that good cause exists to seal the motion and entire record in this case because the documents disclose and reference records that have been sealed by state court and local authorities. Plaintiff contends that he has a significant privacy interest in having the records sealed because "the file acts as a record of arrest that Plaintiff is allowed to deny."

## RULING OF THE COURT

"Historically, courts have recognized a 'general right to inspect and copy public records and documents, including judicial records and documents.'" *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) *quoting Nixon v. Warner Communs., Inc.*,

1  435 U.S. 589, 597 & n.7 (1978). "A party seeking to seal a judicial record then bears the
2  burden of overcoming this strong presumption by meeting the compelling reasons standard.
3  That is, the party must articulate compelling reasons supported by specific factual findings...
4  that outweigh the general history of access and the public policies favoring disclosure, such
5  as the public interest in understanding the judicial process." *Kamakana*, 447 F.3d at 1178-79
6  (citations and quotation marks omitted). The presumed right to access to court proceedings
7  and documents can be overcome "only by an overriding right or interest 'based on findings that
8  closure is essential to preserve higher values and is narrowly tailored to serve that interest.'"
9  *Oregonian Publishing Co. v. United States District Court*, 920 F.2d 1462, 1465 (9th Cir. 1990)
10  *quoting Press-Enterprise Co. v. Superior Court*, 446 U.S. 501, 510 (1985).

11  "Under the compelling reasons standard, a district court must weigh relevant factors,
12  base its decision on a compelling reason, and articulate the factual basis for its ruling, without
13  relying on hypothesis or conjecture." *Pintos v. Pacific Creditors Ass'n*, 605 F.3d 665, 659 (9th
14  Cir. 2010)(quotations omitted). "'Relevant factors' include the 'public interest in
15  understanding the judicial process and whether disclosure of the material could result in
16  improper use of the material for scandalous or libelous purposes or infringement upon trade
17  secrets.'" *Id.* at 659 n.6.

18  Plaintiff initiated this lawsuit, failed to prosecute the case, and the case was closed.
19  Plaintiff delayed sixteen years before filing any request for the record to be sealed. The Court
20  finds that the strong presumption against sealing judicial proceedings outweighs Plaintiff's
21  privacy interests in sealing the entire record in this case. Accordingly, the motion to seal the
22  record and ex parte application to file the motion under seal are DENIED. The motion to seal
23  the record and ex parte application to file the motion under seal shall be filed in the public
24  record. The entire record in this case shall remain public.

25  IT IS SO ORDERED.

27  DATED: 10/26/12

WILLIAM Q. HAYES
UNITED STATES DISTRICT COURT

-2-

96cv0314
Exh 3
2 of 2

# EXHIBIT GG



Scott-McMillan-La-Mesa  73

Exh GG
1 of 2



Exh GG
2 of 2

FILED

Feb 18 2020

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY      s/ AKR          DEPUTY

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

FEB 18 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| SCOTT A. MCMILLAN and THE MCMILLAN LAW FIRM, APC, | No. 17-56676 |
| Plaintiffs - Appellants, | D.C. No. 3:16-cv-02186-WQH-MDD |
| | U.S. District Court for Southern California, San Diego |
| v. | |
| DARREN D. CHAKER, an individual, and as trustee of PLATINUM HOLDINGS GROUP TRUST, DBA Counter Forensics; et al., | **MANDATE** |
| Defendants - Appellees. | |

| | |
|---|---|
| SCOTT A. MCMILLAN and THE MCMILLAN LAW FIRM, APC, | No. 18-55343 |
| Plaintiffs - Appellees, | D.C. No. 3:16-cv-02186-WQH-MDD |
| | U.S. District Court for Southern California, San Diego |
| v. | |
| NICOLE CHAKER, an individual, and as trustee of THE NICOLE CHAKER REVOCABLE LIVING TRUST, U/A dated August 18, 2010, | |
| Defendant - Appellant. | |

The judgment of this Court, entered January 27, 2020, takes effect this date.

This constitutes the formal mandate of this Court issued pursuant to Rule

41(a) of the Federal Rules of Appellate Procedure.

<div style="margin-left: 40%;">

FOR THE COURT:

MOLLY C. DWYER
CLERK OF COURT

By: Quy Le
Deputy Clerk
Ninth Circuit Rule 27-7

</div>

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

# FILED

JAN 27 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| SCOTT A. MCMILLAN; THE MCMILLAN LAW FIRM, APC, | No.    17-56676 |
| Plaintiffs-Appellants, | D.C. No. 3:16-cv-02186-WQH-MDD |
| v. | |
| DARREN D. CHAKER, DBA Counter Forensics, an individual, and as trustee of PLATINUM HOLDINGS GROUP TRUST; et al., | MEMORANDUM[*] |
| Defendants-Appellees. | |

| | |
|---|---|
| SCOTT A. MCMILLAN; THE MCMILLAN LAW FIRM, APC, | No.    18-55343 |
| Plaintiffs-Appellees, | D.C. No. 3:16-cv-02186-WQH-MDD |
| v. | |
| NICOLE CHAKER, an individual, and as trustee of THE NICOLE CHAKER REVOCABLE LIVING TRUST, U/A dated August 18, 2010, | |
| Defendant-Appellant. | |

Appeal from the United States District Court

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

for the Southern District of California
William Q. Hayes, District Judge, Presiding

Argued and Submitted January 7, 2020
Pasadena, California

Before:  WATFORD, BENNETT, and LEE, Circuit Judges.

Plaintiffs Scott McMillan and The McMillan Law Firm appeal the dismissal of their Racketeer Influenced and Corrupt Organizations Act (RICO) claims and the district court's decision that Plaintiffs failed to personally serve Vania Chaker. Defendant Nicole Chaker cross-appeals the district court's decision to decline supplemental jurisdiction over Plaintiffs' state law civil extortion claim and to deny as moot her anti-SLAPP motion to strike the state law claim and for an award of attorneys' fees.

We have jurisdiction under 28 U.S.C. § 1291, and we affirm.  We review the dismissal of Plaintiffs' RICO claims de novo, construing material facts in the complaint as true and in the light most favorable to the nonmoving parties.  *See Howard v. Am. Online Inc.*, 208 F.3d 741, 746 (9th Cir. 2000).  "A district court's refusal to exercise supplemental jurisdiction is reviewed for abuse of discretion." *Ove v. Gwinn*, 264 F.3d 817, 821 (9th Cir. 2001).

Plaintiffs' First Amended Complaint (FAC) alleges a substantive RICO violation against Darren Chaker based on the predicate act of extortion and a RICO conspiracy violation against all Defendants.  To qualify as a predicate act of

2

extortion supporting a violation of 18 U.S.C. § 1962(c), "the conduct must be capable of being generically classified as extortionate." *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 409 (2003). The generic definition of extortionate conduct is "obtaining something of value from another with his consent induced by the wrongful use of force, fear, or threats." *United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't, AFL-CIO*, 770 F.3d 834, 843 (9th Cir. 2014) (quoting *United States v. Nardello*, 393 U.S. 286, 290 (1969)).

Plaintiffs failed to allege extortionate conduct because there are no allegations that Darren Chaker obtained property from Plaintiffs that he could "exercise, transfer, or sell." *See Scheidler*, 537 U.S. at 405. Plaintiffs' claim also fails because there are no allegations to support the "with [Plaintiffs'] consent" element. *United Bhd. of Carpenters & Joiners of Am.*, 770 F.3d at 843. Indeed, the FAC expressly states that Darren Chaker used Plaintiffs' names and logo without their consent. Thus, the district court properly dismissed the substantive RICO violation claim.

The district court also properly dismissed the conspiracy claim because the "failure to adequately plead a substantive violation of RICO precludes a claim for conspiracy." *Howard*, 208 F.3d at 751. Because we conclude that the RICO conspiracy claim was properly dismissed and that was the only claim brought against Vania Chaker, we need not decide whether the district court erred by

determining that Plaintiffs failed to personally serve Vania Chaker with the FAC.

As for Nicole Chaker's cross-appeal, the district court did not abuse its discretion by refusing to exercise supplemental jurisdiction over the remaining state law claim after properly dismissing the RICO claims. *See* 28 U.S.C. § 1367(c)(3); *Ove*, 264 F.3d at 826. And without a state law claim, it was proper for the district court to decline to address the anti-SLAPP motion. *See Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010) ("[A] federal court can only entertain anti-SLAPP special motions to strike in connection with state law claims . . . ."). In any case, Nicole Chaker waived the arguments she makes on cross-appeal because she failed to raise them below. *See Broad v. Sealaska Corp.*, 85 F.3d 422, 430 (9th Cir. 1996). Nothing in her motion to dismiss or anti-SLAPP motion alerted the district court that it should retain jurisdiction over the state law claim and rule on her anti-SLAPP motion should the court dismiss the RICO claims.

The parties shall bear their own costs on appeal.

**AFFIRMED.**[1]

---

[1] We DENY Darren Chaker's Motion to Strike Volume Eight of the Excerpts of Record and All References Thereto. Dkt. No. 134.

4

**SULLIVAN, KRIEGER, TRUONG,**
**SPAGNOLA & KLAUSNER, LLP**
Eliot F. Krieger, State Bar No. 159647
*ekrieger@sullivankrieger.com*
Charles T. Spagnola, P.C., State Bar No. 144983
*cspagnola@sullivankrieger.com*
444 West Ocean Boulevard, Suite 1700
Long Beach, CA 90802
Telephone: (562) 597-7070

Attorneys for Defendant DARREN D. CHAKER,
individually, and as trustee of PLATINUM HOLDINGS
GROUP TRUST

## UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT A. MCMILLAN, an individual, THE MCMILLAN LAW FIRM, APC, a California professional corporation,<br><br>Plaintiffs,<br><br>v.<br><br>DARREN D. CHAKER an individual, and as trustee of PLATINUM HOLDINGS GROUP TRUST, dba COUNTER FORENSICS; NICOLE CHAKER, an individual, and as trustee of NICOLE CHAKER TRUST ONE, VANIA CHAKER, an individual and as trustee of VANIA CHAKER TRUST ONE,<br><br>Defendants. | Case No. 3:16-CV-02186-WQH-MD<br><br>Judge: Hon. William Q. Hayes<br>Courtroom: 14B<br><br>Magistrate: Hon. Mitchell D. Dembin<br>Courtroom: 11th Floor<br><br>**DEFENDANT DARREN D. CHAKER'S NOTICE OF MOTION AND MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11**<br><br>**Hearing Date: May 1, 2017**<br>**Courtroom: 14B**<br><br>Complaint Filed:   August 29, 2016<br><br>**[PER CHAMBERS, NO ORAL ARGUMENT UNLESS ORDERED BY COURT]** |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on May 1, 2017, or as soon as thereafter as the matter may be heard in courtroom 14B of the United States District Court, Southern District of California, the Honorable William Q. Hayes presiding, located at 333 West Broadway, San Diego, CA 92101. Defendant DARREN D. CHAKER an individual, and as trustee of PLATINUM HOLDINGS GROUP TRUST, dba COUNTER FORENSICS ("Darren") will, and hereby does, move for an order, pursuant to Rule 11 of the Federal Rules of Civil Procedure, or, alternatively, the Court's inherent power, imposing sanctions on Plaintiffs for the filing of the First Amended Complaint ("FAC") herein. The grounds for this motion are as follows:

    (a)    Many of the allegations in the FAC are factually baseless from an objective perspective, and were included in the FAC for an improper purpose;

    (b)    Plaintiffs' first and second claims for relief in the FAC, for violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961(c)-(d), are frivolous; and

    (c)    Plaintiffs' RICO claims were brought for the improper purpose of naming Darren's mother, Nicole Chaker, and sister, Vania Chaker, as Defendants in this lawsuit, solely to harass Darren and his family.

This motion is based upon this notice, the accompanying memorandum of points and authorities, declaration of Darren D. Chaker, the pleadings and records on file in this action and upon such other oral or documentary evidence as may be presented at the hearing.

Further, pursuant to Fed. R. Civ. P. 11(c)(2), I certify that I served this motion on Plaintiff Scott A. McMillan, an attorney representing himself and The McMillan Law Firm APC, via email and U.S. mail on March 7, 2017, and Plaintiffs' claims and/or allegations have not been withdrawn or voluntarily dismissed as of the date of filing of this motion, which is more than twenty-one (21) days of service of the motion upon Mr. McMillan.

DATED:     March 28, 2017                    Respectfully submitted,

                                             **SULLIVAN, KRIEGER, TRUONG,**
                                             **SPAGNOLA & KLAUSNER, LLP**

                                             By:     /s/ Eliot F. Krieger
                                                     Eliot F. Krieger, SBN 159647
                                                     *ekrieger@sullivankrieger.com*
                                                     Charles T. Spagnola, P.C., SBN 144983
                                                     *cspagnola@sullivankrieger.com*
                                                     444 West Ocean Boulevard, Suite 1700
                                                     Long Beach, CA 90802
                                                     Telephone: (562) 597-7070

                                             *Attorneys for Defendant* Darren Chaker

DEFENDANT DARREN D. CHAKER'S NOTICE OF NOTICE OF MOTION
AND MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11

1

## **CERTIFICATE OF SERVICE**

2  I, Adam M. Tamburelli, an attorney, certify that on the 28 day of March, 2017, I

3  filed the foregoing motion, along with a supporting memorandum and Declaration of

4  Darren D. Chaker, with the Clerk of the Court for the United States District Court,

5  Southern District of California by using the Court's CM/ECF system, which will send

6  notifications of such filing to all counsel of record.

7

8   /s/ Adam M. Tamburelli_____
    Adam M. Tamburelli

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT DARREN D. CHAKER'S NOTICE OF NOTICE OF MOTION
AND MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11

1 | John Hochhausler (State Bar No. 143801)
**MANNING & KASS**
2 | **ELLROD, RAMIREZ, TRESTER LLP**
801 S. Figueroa St, 15th Floor
3 | Los Angeles, California 90017-3012
Telephone: (213) 624-6900
4 | Facsimile: (213) 624-6999

5 | Attorneys for Defendant DARREN D.
CHAKER, individually, and as trustee of
6 | PLATINUM HOLDINGS GROUP
TRUST
7 |

8 | **UNITED STATES DISTRICT COURT**

9 | **SOUTHERN DISTRICT OF CALIFORNIA**

10 |

11 | SCOTT A. MCMILLAN, an individual, | Case No. #:16-CV-02186-WQH-MD
THE MCMILLAN LAW FIRM, APC,
12 | a California professional corporation, , | **REQUEST FOR RULING ON DEFENDANT DARREN D.**
13 | Plaintiffs, | **CHAKER'S OBJECTION TO PLAINTIFF'S CLAIM OF**
**RELATED CASES**
14 | v.
15 | DARREN D. CHAKER an individual, | The Hon. Hon. William Q. Hayes
and as trustee of PLATINUM
16 | HOLDINGS GROUP TRUST, dba
COUNTER FORENSICS; NICOLE
17 | CHAKER, an individual, and as trustee
of NICOLE CHAKER TRUST ONE,
18 | VANIA CHAKER, an individual and as
trustee of VANIA CHAKER TRUST
19 | ONE

20 | Defendants.

21 |

22 |     Defendant Darren D. Chaker submits this Request for Ruling on Objection to

23 | Plaintiffs' Claim of Related Cases ("Request") (Doc. No. 82). The objection was made

24 | on the grounds that Plaintiff incorrectly deemed the above-captioned case as "related"

25 | to a previously filed proceeding captioned United States v. Chaker, Case Number 3:15-

26 | CR-07012-LAB. The Court has not ruled on this objection and the case was

27 | subsequently terminated on October 10, 2017 after judgement was entered which

28 | judgment Plaintiff has appealed. Notwithstanding that the action is currently on appeal

1   to the United States Ninth Circuit Court of Appeals, Defendant renews his Request to

2   ensure that if and when the case is remanded to the Southern District of California that

3   it does not become related to the previously filed case just because Plaintiffs checked a

4   box on the civil cover sheet.

5   DATED:  March 6, 2018               **MANNING & KASS**

6                                                       **ELLROD, RAMIREZ, TRESTER LLP**

7

8                                         By:      /S/John Hochhausler

9                                                   John Hochhausler

10                                                Attorneys for Defendant DARREN D.

11                                                CHAKER, individually, and as trustee of

                                                  PLATINUM HOLDINGS GROUP

12                                                TRUST

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

John Hochhausler (State Bar No. 143801)
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
801 S. Figueroa St, 15<sup>th</sup> Floor
Los Angeles, California 90017-3012
Telephone: (213) 624-6900
Facsimile: (213) 624-6999

Attorneys for Defendant DARREN D. CHAKER, individually, and as trustee of PLATINUM HOLDINGS GROUP TRUST

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT A. MCMILLAN, an individual, THE MCMILLAN LAW FIRM, APC, a California professional corporation, , | Case No. #:16-CV-02186-WQH-MD |
| | **CERTIFICATE OF SERVICE** |
| Plaintiffs, | The Hon. Hon. William Q. Hayes |
| v. | |
| DARREN D. CHAKER an individual, and as trustee of PLATINUM HOLDINGS GROUP TRUST, dba COUNTER FORENSICS; NICOLE CHAKER, an individual, and as trustee of NICOLE CHAKER TRUST ONE, VANIA CHAKER, an individual and as trustee of VANIA CHAKER TRUST ONE | |
| Defendants. | |

I, John Hochhausler, declare:

I am a citizen of the United States and am employed in the County of Los Angeles, State of California. I am over the age of 18 years and not a party to the above-entitled action. I am an employee of Manning & Kass, Ellrod, Ramirez, Trester, LLP, 801 S. Figueroa Street, Suite 1500, Los Angeles, CA 90017. On March 1, 2018, I served a copy of **REQUEST FOR RULING ON DEFENDANT DARREN D. CHAKER'S OBJECTION TO PLAINTIFF'S CLAIM OF RELATED CASES** via

1

Case No. #:16-CV-02186-WQH-MD

**CERTIFICATE OF SERVICE**

1   electronic transmission on all counsel of record.

2       I am familiar with the United States District Court Southern District of

3   California's practice for collecting and processing electronic filings.   Under that

4   practice, documents are electronically filed with the court.  The court's CM/ECF system

5   will generate a Notice of Electronica Filing (NEF) to the filing party, the assigned

6   judge, and any registered users in the case.  The NEF will constitute service of the

7   document.  Registration as a CM/ECF user constitutes consent to electronic service

8   through the court's transmission facilities.  Under said practice, the following CM/ECF

9   users were served:

10

11  Ryan G. Baker                          Timothy W Kenna
    rbaker@bakermarquart.com,              tkenna@fmglaw.com,
12  file@bakermarquart.com,                chang@fmglaw.com
    calendar@bakermarquart.com,
13  bgrace@bakermarquart.com,
14  canstett@bakermarquart.com

15

16  Eliot Franklin Krieger                 Scott A McMillan
    ekrieger@sullivankrieger.com,          scott4670@gmail.com,
17  ltom@sullivankrieger.com               brho01@gmail.com,
18                                         mvolk4670@gmail.com,
                                           sconnell4670@gmail.com,
19                                         lbrady@tmlf.us,
                                           anicemarie2@aol.com,
20                                         sam0661@gmail.com,
21                                         dimitri4670@gmail.com,
                                           jmarshall4670@gmail.com,
22                                         mkaroomi4670@gmail.com,
23                                         cmk@slksf.com,
                                           dmercado4670@gmail.com,
24                                         jgarchie@tmlf.us,
25                                         jvannoord@tmlf.us,
                                           scott@mcmillanlaw.us,
26                                         ravimor4670@gmail.com,
27                                         tmlf-group@tmlf.us
28

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

Rebecca Jo Smith
rsmith@fmglaw.com,
erubio@fmglaw.com

Adam M Tamburelli
atamburelli@sullivankrieger.com,
tom@sullivankrieger.com

Charles Thomas Spagnola
cspagnola@sullivankrieger.com,
ltom@sullivankrieger.com

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED:  March 6, 2018

**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**


By: _____/s/ John Hochhausler_____
John Hochhausler
Attorneys for Defendant DARREN D. CHAKER, individually, and as trustee of PLATINUM HOLDINGS GROUP TRUST

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
Attorneys at Law

# EXHIBIT
# 9

 

a U.S. Marine Corps radio telegraph operator, was killed in Vietnam on May 22, 1969. He was 20 years old, and left behind a wife and two children. Click image at left to open.

  

## ADVS Monthly Update - 2017 April



We hope you will enjoy our ADVS Monthly Update for March/April 2017. Click HERE or on the thumbnail image at left, to open the full-color PDF document, which may be printed for sharing with others. Or send your friends to this web page! See you in two months with more news and photos from the Arizona Department of Veterans' Services.

But why wait? Are you friends with ADVS on Facebook? Why not? There's more news and information there, online. How about Twitter? Check out our social media connections online HERE...

## America in Times of Conflict at Chandler Public Library



April 2017: In support of Women's History Month, ADVS Director Wanda Wright participated in the Chandler Public Library's *America in Times of Conflict* series, moderating a panel entitled "She Went to War", which provides sharing of stories and leading conversations about wartime and military experience as it has impacted Arizona residents.

The series wraps up in April with a documentary, *Debt of Honor*, April 4, at the Downtown Library; as well as a book discussion on *The Sympathizer* on Saturday, April 8, at 10:30am.

The final program "Creating Peace from Conflict" will be a theatre and music performance on Saturday, April 22, 10am at the Chandler...

AZ Women Veterans Expo 2017 (b)

Find ADVS offices near you...

tucson, az

Show only results within

All ▼     miles.

SEARCH

Learn about Arizona Veterans Benefits

**Download our Benefits Booklet**

Find Veterans Service Organizations

**Download our handy VSO Directory**

Not based in Arizona?

**Visit other states' Veteran Websites** 🔗

☰     Veteran Driver License & Plates

 

Veterans may now have a VETERAN designation placed on their Arizona-issued driver license, commercial driver license, identification card, or learner permit, denoting their military service. Find more information online HERE 🔗.

--------------------

Several Military/Veteran license plates are also available from ADOT's Motor Vehicle Division. Click on each image for details.

The Veterans plate requires military/veteran documentation.



Exh 9
1 of 2



Veterans may now have a VETERAN designation placed on their Arizona-issued driver license, commercial driver license, identification card, or learner permit, denoting their military service. Find more information online HERE.

Case 3:16-cv-02186-WQH-MDD   Document 167-1   Filed 03/23/22   PageID.5958   Page 46 of
148

1 | **SULLIVAN, KRIEGER, TRUONG,**
2 | **SPAGNOLA & KLAUSNER, LLP**
3 | Eliot F. Krieger, State Bar No. 159647
*ekrieger@sullivankrieger.com*
4 | Charles T. Spagnola, P.C., State Bar No. 144983
*cspagnola@sullivankrieger.com*
5 | 444 West Ocean Boulevard, Suite 1700
6 | Long Beach, CA 90802
7 | Telephone: (562) 597-7070
8 | Attorneys for Defendant DARREN D. CHAKER,
individually, and as trustee of PLATINUM HOLDINGS
9 | GROUP TRUST

## UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT A. MCMILLAN, an individual, THE MCMILLAN LAW FIRM, APC, a California professional corporation, | Case No. 3:16-CV-02186-WQH-MD |
| | Judge: Hon. William Q. Hayes Magistrate: Hon. Mitchell D. Dembin |
| Plaintiffs, | |
| v. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT DARREN D. CHAKER'S MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11** |
| DARREN D. CHAKER an individual, and as trustee of PLATINUM HOLDINGS GROUP TRUST, dba COUNTER FORENSICS; NICOLE CHAKER, an individual, and as trustee of NICOLE CHAKER TRUST ONE, VANIA CHAKER, an individual and as trustee of VANIA CHAKER TRUST ONE, | |
| | Hearing Date: May 1, 2017 |
| | Courtroom: 14B |
| | |
| Defendants. | Complaint Filed:  August 29, 2016 |
| | **[PER CHAMBERS ORDER, NO ORAL ARGUMENT UNLESS ORDERED BY COURT]** |

# **TABLE OF CONTENTS**

I.  INTRODUCTION. ...................................................................................1

II.  SUMMARY OF THE ALLEGATIONS. ...............................................3

III.  LEGAL STANDARD. ..........................................................................5

IV.  ARGUMENT.........................................................................................7

    A.  McMillan Violated Rule 11 In Filing the FAC. ..........................9

        1.  McMillan's Baseless and Prejudicial Allegations Violate Rule 11. ...............................................................................9

            a.  Allegations Regarding "Sex Trafficking." .......................9

            b.  Allegations Regarding "Victims" Franz........................10

            c.  Allegations Regarding "Victim" Zaya. ..........................11

            d.  Plaintiffs Inappropriately Include References to Platinum Holdings Group Trust dba Counter Forensics in the FAC. ....................................................12

        2.  Plaintiffs' RICO Claims Are Frivolous and Were Made for An Improper Purpose. .........................................................13

            a.  Plaintiffs' Allegations Regarding the "Enterprise" and "Conspiracy" Are Frivolous. ...................................14

            b.  The Specific Allegations Regarding Nicole and Vania Demonstrate That the Claims Against Them Are Frivolous. ..............................................................17

    B.  Darren Requests Attorney's Fees and Costs Incurred In Bringing this Motion. ...............................................................20

    C.  Alternatively, the Court Should Sanction Plaintiffs Under Its Inherent Authority. .................................................................20

V.  CONCLUSION....................................................................................21

-ii-

DEFENDANT DARREN CHAKER'S

MEMORANDUM IN SUPPORT OF HIS MOTION FOR SANCTIONS

# <u>TABLE OF AUTHORITIES</u>

Cases

*Bus. Guides, Inc. v. Chromatic Commc'n Enters., Inc.*
   498 U.S. 533 (1991) ...................................................................................7

*Chagby v. Target Corp.*
   No. CV 08-4425, 2008 U.S. Dist. LEXIS 107738 (C.D. Cal. Oct. 27, 2008) .......8

*Chambers v. NASCO, Inc.*
   501 U.S. 32 (1991) .....................................................................................6

*Chaset v. Fleer/Skybox Int'l, LP*
   300 F.3d 1083 (9th Cir. 2002) ................................................................15

*Collie v. Kendall*
   No. 3:98-CV-1678-G, 1999 U.S. Dist. LEXIS 10435 (N.D. Tex. July 6, 1999)...6

*Copple v. Astrella & Rice, P.C.*
   442 F.Supp.2d 829 (N.D. Cal. 2006)........................................................20

*Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*
   758 F.Supp.2d 153 (E.D.N.Y. 2010) .........................................................2

*Davis v. Coca-Cola Bottling Co. Consol.*
   516 F.3d 955 (11th Cir. 2008) ..................................................................3

*Egan v. Huntington Copper Moody & Maguire, Inc.*
   No. 12 C 9034, 2015 U.S. Dist. LEXIS 47143 (N.D. Ill. Apr. 10, 2015)...........21

*Elan Microelectronics Corp. v. Apple, Inc.*
   No. C 09-01531, 2009 U.S. Dist. LEXIS 83715 (N.D. Cal. Sept. 14, 2009).........8

*Figueroa Ruiz v. Alegria*
   896 F.2d 645 (1st Cir. 1990) .....................................................................1

*Fink v. Gomez*
   239 F.3d 989 (9th Cir. 2001) .....................................................................6

*First Bank v. Hartford Underwriters Ins. Co.*
   307 F.3d 501 (6th Cir. 2002) ...................................................................21

*Holgate v. Baldwin*
   425 F.3d 671 (9th Cir. 2005) ................................................... 5, 13, 20

*In re Connetics Corp. Sec. Litig.*
   542 F.Supp.2d 996 (N.D. Cal. 2008)..........................................................7

*In re Flinn*
   139 F.R.D. 698 (S.D. Fla. 1991) .......................................................................13

*In re Grantham Bros.*
   922 F.2d 1438 (9th Cir. 1991) ................................................................. 14, 20

*In re Keegan Mgmt. Co., Sec. Litig.*
   78 F.3d 431 (9th Cir. 1996) ..............................................................................5

*In re Kunstler*
   914 F.2d 505 (4th Cir. 1990) ............................................................................6

*Kaplan v. California Pub. Emps. Ret. Sys.*
   No. C 98-1246, 1998 U.S. Dist. LEXIS 14040 (N.D. Cal. Sept. 3, 1998)............7

*Mercury Serv. v. Allied Bank*
   117 F.R.D. 147 (C.D. Cal. 1987) .....................................................................9

*Precision Specialty Metals, Inc. v. United States*
   315 F.3d 1346 (Fed. Cir. 2003) ........................................................................9

*Saratoga Sav. & Loan. Ass'n v. Tate*
   1988 U.S. Dist. LEXIS 16573 (N.D. Cal. Sept. 27, 1988)...............................20

*Segarra v. Messina*
   153 F.R.D. 22 (N.D.N.Y. 1994) .......................................................................6

*Sony Corp. v. S.W.I. Trading, Inc.*
   104 F.R.D. 535 (S.D.N.Y. 1985) .....................................................................6

*Timmons v. Linvatec Corp.*
   263 F.R.D. 582 (C.D. Cal. 2010) ....................................................................7

*Townsend v. Holman Consulting Corp.*
   914 F.2d 1136 (9th Cir. 1990) ......................................................................14

*Truesdell v. S. Cal. Permanente Med. Grp.*
   293 F.3d 1146 (9th Cir. 2002) ......................................................................10

*W. Coast Theater Corp. v. City of Portland*
   897 F.2d 1519 (9th Cir. 1990) ........................................................................6

*Westmoreland v. CBS, Inc.*
   770 F.2d 1168 (D.C. Cir. 1985) ......................................................................6

Statutes

18 U.S.C. § 1962(c) ...........................................................................................1

-iv-

DEFENDANT DARREN CHAKER'S
MEMORANDUM IN SUPPORT OF HIS MOTION FOR SANCTIONS

18 U.S.C. § 1962(c)-(d) ........................................................................1

18 U.S.C. §§ 1961-1968 ........................................................................1

Cal. Code Civ. Proc. § 425.16 ...........................................................5

Rules

Fed. R. Civ. P. 11 ................................................................................8

Fed. R. Civ. P. 11(b) .................................................................. passim

Fed. R. Civ. P. 11(b)(1) .......................................................................6

Fed. R. Civ. P. 11(c) ..........................................................................20

Fed. R. Civ. P. 12(b)(6).................................................................5, 15

Fed. R. Civ. P. 12(f) ...........................................................................16

DEFENDANT DARREN CHAKER'S

MEMORANDUM IN SUPPORT OF HIS MOTION FOR SANCTIONS

# I.    INTRODUCTION.

The primary purpose of Rule 11 of the Federal Rules of Civil Procedure is to deter frivolous litigation, and this case is emblematic of the wrongs Rule 11 is designed to address. Indeed, the deterrence value of Rule 11 is particularly important in cases such as this, which allege violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, because the "mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants, [so] courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990).

This is a lawsuit brought by a self-represented attorney, Scott A. McMillan ("McMillan"), and his law firm, The McMillan Law Firm, APC (collectively, "Plaintiffs"). A cursory examination of the allegations in the First Amended Complaint ("FAC") reveals that it is a sensationalist document, unburdened by any assertion of plausible legal theories arising out of the facts alleged, created and filed with the sole intent to put salacious allegations against Defendant Darren D. Chaker ("Darren") into the public record. More specifically, this lawsuit is McMillan's way of publicly airing his personal grievances with and deep-seated antipathy toward Darren through use of the judicial system.

Even though Plaintiffs' alleged injuries flow almost exclusively from Defendants' alleged publication of information about McMillan on the internet, and McMillan repeatedly alleges that Darren defamed him in the FAC, McMillan does not assert any defamation-type tort. Instead, he asserts three "Claims for Relief": the first two are for violations of RICO, 18 U.S.C. § 1962(c)-(d), and the third is for civil extortion pursuant to California Penal Code § 518.

However, McMillan does not and cannot state a RICO conspiracy or extortion claim, and for good reason: this is not a RICO case. Plaintiffs are

DEFENDANT DARREN CHAKER'S
MEMORANDUM IN SUPPORT OF HIS MOTION FOR SANCTIONS

improperly attempting to transform a garden variety defamation case into a RICO conspiracy case in order to bring claims against Darren's sister and mother, co-Defendants Vania Chaker ("Vania") and Nicole Chaker ("Nicole"). Instead, McMillan alleges extortion as the racketeering act underlying the RICO claims instead of defamation, because defamation is not a recognized predicate act under RICO. *Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*, 758 F.Supp.2d 153, 157 (E.D.N.Y. 2010).

McMillan makes his true intent in filing this case clear by, *inter alia*, proffering spurious and outright false allegations in the FAC entirely unrelated to the alleged claims. Many of allegations are disingenuously pleaded "on information and belief," and many concern fictional misconduct that occurred up to *seven years* before McMillan and Darren met.

Darren now seeks sanctions against McMillan for his inclusion of multiple factual contentions that lack any evidentiary support and that could not have been the product of a reasonable investigation in the FAC, as well as McMillan's disingenuous use of the RICO statute for the purpose of wrangling Darren's sister and mother into the case as alleged co-conspirators despite almost no involvement on their part at all.

McMillan is an officer of the Court, which makes his misuse of the judicial system for the purposes of exacting revenge particularly problematic. He knows, or should know, the requirements imposed by Rule 11, and should be above wasting judicial resources and damaging the integrity of the judicial system along the way to pursue a vendetta. Thus, McMillan's violation of Rule 11 warrants dismissal of the FAC with prejudice, but a minimum, the Court should strike from the FAC the unsupported allegations addressed below. Additionally, the Court should order Plaintiffs to reimburse Darren for his attorney's fees and costs incurred in making this motion.

Darren does not make these requests lightly. But here, only Rule 11 can remedy the problems created by McMillan's disregard for the truth and deter such misconduct in the future.

## II.     SUMMARY OF THE ALLEGATIONS.

The haphazard nature and structure of the FAC evinces the lack of validity of the claims therein. The FAC is a "shotgun-style" pleading, over 300 pages long with exhibits, that casts a litany of accusations against the wall with the hope that something sticks.[1] Additionally, Plaintiffs have attached voluminous exhibits to the FAC, bizarrely labeled in separate groups as 1-4, and from A-GG, with some of the intermediate numbers and letters absent.

Briefly, McMillan alleges that Darren, together with his sister Vania and mother Nicole (FAC ¶¶8-9), allegedly engaged in a RICO conspiracy as the sole members of the RICO "enterprise." (FAC ¶87). McMillan describes the alleged purpose of this "Enterprise" as follows:

> "The common purpose of the Enterprise members was to assist each other in the filing of false and meritless lawsuits under federal debt collection statutes; assist each other in the filing of lawsuits against attorneys who

------------------------------

[1] "Shotgun-style" complaints typically include a long list of general allegations (most of which are immaterial to the claims for relief) incorporated by reference into each claim for relief. These complaints impose severe burdens upon the Court. *See Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 981-982 (11th Cir. 2008) (shotgun pleadings inexorably broaden the scope of discovery and lessen the time and resources the Court has available to reach and dispose of its cases, among other problems).

DEFENDANT DARREN CHAKER'S
MEMORANDUM IN SUPPORT OF HIS MOTION FOR SANCTIONS

opposed them [], and to conduct a campaign of harassment, defamation, and
extortion against attorneys, such as the Plaintiffs, who represented parties
adverse to the interests of the Enterprise members []. Enterprise members
also assisted each other in committing vandalism against Plaintiff's
property.

(FAC ¶91).

McMillan alleges that the purported enterprise allegedly engaged in an
extremely broad range of racketeering acts that included a conspiracy to commit
extortion. (*See* FAC ¶¶87-93). There are ten separate "Racketeering Acts" alleged.
(FAC ¶¶99-110). McMillan ultimately alleges that as a result of Defendants'
conduct, or, more specifically, Darren's allegedly defamatory statements, Plaintiffs
suffered reputational injuries or injuries flowing exclusively from reputational
injuries. (*See* FAC ¶80, [damages are lost time developing McMillan's reputation];
¶¶99-109 ["intangible property right to practice law free of threats in accordance
with the California Rules of Professional Conduct"]).

Many of McMillan's material allegations in the FAC are alleged under some
form of "information and belief" (*See* FAC, Dkt. No. 25, ¶¶10-12, 17-20, 27-29, 32,
37, 39, 40, 42, 63-64, 74), or with no allegation as to how any of the Defendants are
connected to the conduct at issue. (FAC ¶¶55-60, 79). Many of the allegations fail
to state the specific date on which the conduct occurred. (FAC ¶¶10-11, 13-14, 16-
22, 25-26, 29, 32, 33, 35-38, 45, 62). Additionally, most of the alleged misconduct
did not involve Plaintiffs in any way and/or occurred long before McMillan met
Darren. (FAC ¶¶3, 10-12, 14-24, 26-28, 40(e)).

As an example of the nature of McMillan's allegations in the FAC and the
basis for this motion, McMillan alleges that Darren engaged in "sex trafficking"
and witness tampering, which is not only false, but the alleged acts have no
connection to Plaintiffs. (FAC¶¶ 21, 25-28). McMillan further alleges that Darren

-4-

has posted false and defamatory matters about Plaintiffs on the internet based on "inform[ation] and belie[f]," but there is nothing in the FAC tying Darren to the posts. (FAC ¶¶37, 48, 48, 55-69). Additionally, McMillan lists lawsuits filed by Darren and Vania against third-parties, even though Plaintiffs were not involved in those cases in any respect, and most of the lawsuits were filed 3-7 years before McMillan met Darren in 2010. (FAC ¶¶10-11, 14-20, 31).

McMillan has already had an opportunity to amend his original complaint after the defects therein were highlighted in Darren's prior motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and special motion to strike pursuant to Cal. Code Civ. Proc. § 425.16 (Dkt. Nos. 14, 16). However, he failed to cure those defects, further demonstrating the baseless nature of McMillan's claims against Defendants herein.

## III. LEGAL STANDARD.

Rule 11 permits a court to impose sanctions on an attorney when he or she has signed and submitted to the court a pleading that is not, to the attorney's knowledge, information and belief after reasonable inquiry, presented for a proper purpose, warranted by existing law or by a non-frivolous argument for altering the law, or supported or likely to be supported with evidence. Fed. R. Civ. P. 11. Awarding sanctions under Rule 11 "raises two competing concerns: the desire to avoid abusive use of the judicial process and to avoid chilling zealous advocacy." *Hudson v. Moore Business Forms, Inc.*, 836 F.2d 1156, 1159-60 (9th Cir. 1987).

Where a complaint is the primary focus of a Rule 11 motion, a court must determine that 1) the complaint is legally or factually baseless from an objective perspective and 2) the attorney has not conducted a reasonable and competent inquiry before signing and filing it. *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005); *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 434 (9th Cir. 1996). The standard is objective, examined at the time of signing. *W. Coast Theater Corp. v.*

DEFENDANT DARREN CHAKER'S

MEMORANDUM IN SUPPORT OF HIS MOTION FOR SANCTIONS

*City of Portland*, 897 F.2d 1519, 1526 (9th Cir. 1990). "The reasonable inquiry test is meant to assist courts in discovering whether an attorney, after conducting an objectively reasonable inquiry into the facts and law, would have found the complaint to be well-founded." *Holgate*, 425 F.3d at 677. Sanctions are mandatory under Rule 11 where an attorney fails to make reasonable efforts to determine that his or her pleading is well grounded in fact. *See Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1177 (D.C. Cir. 1985); *Sony Corp. v. S.W.I. Trading, Inc.*, 104 F.R.D. 535 (S.D.N.Y. 1985).

Sanctions are also appropriate where a pleading is filed for an improper purpose. Fed. R. Civ. P. 11(b)(1). An improper purpose may be inferred from the filing of frivolous papers. *See In re Kunstler*, 914 F.2d 505, 518 (4th Cir. 1990).

Notably, sanctions may be appropriate under Rule 11 **or** the court's inherent authority. A court has the inherent power to sanction a party for bad faith conduct related to initiating and conducting litigation. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991); *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001). The Supreme Court has held that courts "ordinarily should rely on the Rules rather than the inherent power," but that "if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power." *Chambers*, 501 U.S. at 50.

Finally, Courts should not give extra latitude to McMillan simply because he represents himself in this case. *See Collie v. Kendall*, No. 3:98-CV-1678-G, 1999 U.S. Dist. LEXIS 10435, at *12 (N.D. Tex. July 6, 1999) (attorney proceeding pro se should be held to the more demanding standards applicable to attorneys); *Segarra v. Messina*, 153 F.R.D. 22, 30 (N.D.N.Y. 1994) (attorney proceeding pro se treated same as other attorneys because to do otherwise would be contrary to reason for special protection of pro se litigants).

//

## IV. ARGUMENT.

"Filing a complaint in federal court is no trifling undertaking. An attorney's signature on a complaint is tantamount to a warranty that the complaint is well grounded in fact." *In re Connetics Corp. Sec. Litig.*, 542 F.Supp.2d 996, 1004 (N.D. Cal. 2008) (internal citation omitted). As specifically relevant here, the signature operates as a certification that, based on "an inquiry reasonable under the circumstances," the "factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b); accord *Bus. Guides, Inc. v. Chromatic Commc'n Enters., Inc.*, 498 U.S. 533, 542 (1991) (the "heart of Rule 11" is the message conveyed by the signer's certification that he "has conducted a reasonable inquiry into the facts and the law and is satisfied that the document is well grounded in both").

A plaintiff cannot include baseless allegations in a complaint with the hope of relying on future discovery to support them; "such fishing expeditions are not permissible under federal [] rules." *Kaplan v. California Pub. Emps. Ret. Sys.*, No. C 98-1246, 1998 U.S. Dist. LEXIS 14040, at *19-20 (N.D. Cal. Sept. 3, 1998); accord *Timmons v. Linvatec Corp.*, 263 F.R.D. 582, 585 (C.D. Cal. 2010) ("[A]llowing plaintiffs to file first and investigate later . . . would be contrary to Rule 11(b), which mandates 'an inquiry reasonable under the circumstances' into the evidentiary support for all factual contentions prior to filing a pleading.").

Especially relevant here, McMillan's repeated reliance on alleging "information and belief" as a basis to save his allegations is specifically prohibited by Rule 11, as the Advisory Committee has explained:

> Tolerance of factual contentions in initial pleadings by plaintiffs or defendants when specifically identified as made on information and belief does not relieve litigants from the obligation to conduct an appropriate

DEFENDANT DARREN CHAKER'S
MEMORANDUM IN SUPPORT OF HIS MOTION FOR SANCTIONS

investigation into the facts that is reasonable under the circumstances; it is
not a license to join parties, make claims, or present defenses without any
factual basis or justification.

Fed. R. Civ. P. 11 (1993 Advisory Committee Notes); *see*, *e.g.*, *Chagby v. Target
Corp.*, No. CV 08-4425, 2008 U.S. Dist. LEXIS 107738, at *10 n.2 (C.D. Cal. Oct.
27, 2008) (Rule 11(b)(3) "does not permit [p]laintiff to allege claims in the absence
of any facts, simply because [p]laintiff speculates that those facts will eventually
be discovered."); *Elan Microelectronics Corp. v. Apple, Inc.*, No. C 09-01531,
2009 U.S. Dist. LEXIS 83715, at *11 (N.D. Cal. Sept. 14, 2009) (A plaintiff
violates "Rule 11(b)(3) when there are no factual circumstances known to it that
would constitute a 'good reason to believe' a claim exists . . . [s]imply guessing or
speculating that there may be a claim is not enough.").

A significant number of the allegations in the FAC do not meet these
standards. As demonstrated below, those allegations are objectively baseless, and
McMillan fails to provide any support for them in the FAC. They are also belied by
information in the public record that McMillan ignores. No reasonable
investigation could have supported such contentions. Plaintiffs' violations of Rule
11(b)(3) warrant meaningful sanctions.

Moreover, McMillan's purpose for filing this action as a RICO case, and
bringing a claim for a RICO conspiracy, was for an improper purpose, to wit: to
inflict as much harm on Darren and his family as possible. As such, the frivolous
nature of claims and the improper purpose for which they were brought provide a
separate basis for sanctioning Plaintiffs.

//

//

//

//

-8-

DEFENDANT DARREN CHAKER'S
MEMORANDUM IN SUPPORT OF HIS MOTION FOR SANCTIONS

**A.   McMillan Violated Rule 11 In Filing the FAC.**

**1.   McMillan's Baseless and Prejudicial Allegations Violate Rule 11.**

Rule 11 sanctions may be imposed where the factual contentions have no evidentiary support or are knowingly false. Fed. R. Civ. P. 11(b)(3). Under certain circumstances, an isolated factual misrepresentation may serve as the basis for them. *See*, *e.g.*, *Precision Specialty Metals, Inc. v. United States*, 315 F.3d 1346, 1357 (Fed. Cir. 2003); *Mercury Serv. v. Allied Bank*, 117 F.R.D. 147 (C.D. Cal. 1987) aff'd, 907 F2d 154 (9th Cir. 1990) (sanctions are appropriate where declaration filed by defendants contained at least one false statement and several other misleading statements, thereby causing plaintiffs unnecessary work and showing disrespect for the Court).

Below are some of the many instances where McMillan has alleged purported facts against Darren and the other Defendants that are knowingly false or have no evidentiary support. Worse, most of these allegations are entirely unrelated to the claims in this case.

**a.   Allegations Regarding "Sex Trafficking."**

McMillan includes a "SEX TRAFFICKING" heading in bold, capital letters before paragraphs 21-22. Then, in paragraph 21, McMillan falsely alleges that Darren engaged in "human trafficking" within the last 10 years, and worse, makes this outrageous allegation "on information and belief." (*See* Declaration of Darren Chaker, ¶2). Not only is this allegation false, but it is: (a) not referenced anywhere else in the FAC; (b) not included in or related to the "enterprise" as he defines it in paragraphs 87-93; and (c) not included in or related to any "racketeering acts of extortion" set forth in paragraphs 99-114.

In case there is any doubt as to the scandalous purpose for these allegations, McMillan's defamatory intent is amplified by the fact that neither paragraph 21 nor

22 references "sex" trafficking, and thus the heading was intentionally misleading as to the nature of the allegations (which were false to begin with). *See Truesdell v. S. Cal. Permanente Med. Grp.*, 293 F.3d 1146, 1153 (9th Cir. 2002) ("factually misleading" allegations in a complaint are sanctionable).

### b. Allegations Regarding "Victims" Franz.

Similar to the allegations in paragraph 27 above, the allegations in paragraph 28 describe a purported interaction between Darren and individuals cleverly described as "Victims Franz." This alleged interaction, which took place in approximately 2010, did not involve Plaintiffs in any way, and the salacious allegations therein are largely based on hearsay, and, of course, are alleged on "information and belief." Moreover, most of the allegations therein are false. (*See* Declaration of Darren Chaker, ¶¶2-4).

Subsection b highlights the sensationalist nature of the allegations. Therein, McMillan spins an implausible tale under the guise of a second layer of "information and belief," of how "Victims Franz" "believed" that Darren engaged in acts of vandalism against them. This hearsay-upon-hearsay story is not backed up by any allegation that it was reported to law enforcement or that any legal action was taken. More importantly, McMillan concedes that, even if true, this subparagraph is not relevant to the case at bar by alleging that it took place "prior to the extortion attempt."

Additionally, in subsection c, McMillan proffers allegations regarding financial fraud against Mr. and Ms. Franz, which, unbelievably, *twice* states that the Franz's "have no evidence" that Darren was the perpetrator. In other words, McMillan alleges, upon his own "information and belief," that in 2010 Mr. and Ms. Franz "believed" that Darren committed financial fraud, but neither have any evidence, and no civil or criminal action was pursued. The absurdity of such an

allegation—made by an attorney, no less—is proof of its completely scandalous nature. McMillan cannot possibly have any credible basis for thinking that these allegations "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3).

Finally, all of the allegations that Darren engaged in any of the misconduct described in paragraph 28 as a form of extortion are conclusory, haphazardly strewn throughout the subparagraphs as if inserted as an afterthought. Especially as it pertains to subparagraphs a-c, McMillan does not describe the object of the extortion as anything other than "to send a message."

The allegations in paragraph 28 are so irrelevant and sensationalist that any argument that they were not included to cast a derogatory light on Darren can be immediately discarded. The allegations are factually baseless, in violation of Rule 11.

### c.     Allegations Regarding "Victim" Zaya.

This paragraph, comprising over two pages and falling within McMillan's pattern of pleading on "information and belief," is littered with salacious and exaggerated allegations regarding interactions between Darren and his ex-girlfriend, an individual described as "Victim" Zaya. This series of events allegedly took place from 2002-2007, which means *it ended over three years before McMillan first interacted with Darren and approximately ten years ago*, and is based almost exclusively on hearsay.

McMillan does not allege (nor could he) that he had any involvement with the issues alleged in this paragraph as a party, witness, counsel, or otherwise. Further, the paragraph contains no allegations of extortion or allegations related to the alleged enterprise. Instead, the paragraph contains a lengthy discussion about guns, sexual exploitation, restraining orders, information about lawsuits (without requesting the Court to take judicial notice thereof), and other irrelevant allegations

impugning Darren. Indeed, subparagraph d includes a description comprising approximately a third of a page of a separate criminal proceeding that took place in 2002 regarding Darren's alleged possession of an assault weapon, which has no possible connection with the instant case.

Although McMillan will likely argue that the allegations are relevant to how he met Darren in the first place (over *three years* after the last incident alleged), that argument carries no weight. In paragraph 31 of the FAC, McMillan describes Ms. Zaya's case as the basis for meeting Darren, and that paragraph alone contains sufficient information and allegations regarding the history of the case without the above false and irrelevant facts. It recites a summary of the relevant factual allegations, which is all that is necessary for the purposes of his claims.

**d.    Plaintiffs Inappropriately Include References to Platinum Holdings Group Trust dba Counter Forensics in the FAC.**

Darren is named as a Defendant both in his individual capacity and as trustee of Platinum Holdings Group Trust, dba Counter Forensics, based on the sole allegation that "Defendant DARREN conducts business through and holds assets as trustee" in that trust. (FAC ¶7). That is the only allegation in the entire FAC regarding that trust or its involvement in this case, or regarding Darren acting as a trustee.

Similarly, the allegations in paragraph 12, which extends over a full page in the FAC and is again made upon "information and belief," concern Darren's alleged operation of a web site called "Counter Forensics," which is named as a "dba" of Platinum Holdings Group Trust. However, McMillan: (a) makes no reference to how this is wrongful; (b) does not reference either this paragraph or "Counter Forensics" in any "Claim for Relief" or other allegation of misconduct; and (c) does not otherwise tie it to any element of the causes of action.

It is evident that McMillan included a reference to the trust and "Counter Forensics" simply to tar their names by associating them with the scandalous allegations in the FAC. Indeed, there is no basis in fact for McMillan including these allegations in the FAC, and McMillan does not even attempt to articulate a basis for including these claims. As such, Plaintiffs should be sanctioned for this misconduct, as these allegations were made for an improper purpose.

### 2. Plaintiffs' RICO Claims Are Frivolous and Were Made for An Improper Purpose.

As a basis for McMillan's allegations regarding the "enterprise" requirement under RICO, as well as his claim for RICO conspiracy, McMillan alleges that Darren, Nicole, and Vania all collaborated in the misconduct alleged. However, the FAC contains very few allegations regarding Vania, and even fewer regarding Nicole. Even accepting McMillan's allegations as true, their alleged involvement in the case is incidental at best, and their actions are only tenuously connected to the alleged "enterprise" or damages in this case. Therefore, Plaintiffs' RICO claims are frivolous.

However, even if the Court finds that Plaintiffs' RICO claims are well grounded in fact and law at this stage, the Court can easily conclude that McMillan's brought this case as a RICO action for the improper purpose of inflicting as much damage on Darren as possible by bringing his family into the case based on flimsy allegations. Therefore, Rule 11 sanctions are appropriate on this basis as well, because filing of pleading for improper purpose is not immunized from Rule 11 sanctions just because it is well-grounded in fact and law. *In re Flinn*, 139 F.R.D. 698 (S.D. Fla. 1991), aff'd, 22 F.3d 1097 (11th Cir. 1994); *see also Holgate*, 425 F.3d at 677 (The existence of a non-frivolous claim in a complaint does not immunize it from Rule 11 sanctions).

The analysis of whether a claim is frivolous and/or made for an improper purpose is intertwined, as Courts have inferred an intent to harass where the claim is patently frivolous and the situation indicates the filing party has some motive to harass. For example, the Ninth Circuit has noted that the "frivolous and improper purpose prongs of Rule 11 overlap, and 'evidence bearing on frivolousness . . . will often be highly probative of purpose'." *In re Grantham Bros.*, 922 F.2d 1438, 1443 (9th Cir. 1991) (quoting *Townsend v. Holman Consulting Corp.*, 914 F.2d 1136, 1140 (9th Cir. 1990), aff'd in part and rev'd in part, en banc, 929 F.2d 1358 (9th Cir. 1991)).

### a. Plaintiffs' Allegations Regarding the "Enterprise" and "Conspiracy" Are Frivolous.

It is illuminating to examine McMillan's specific allegations regarding the "enterprise" and "conspiracy," because those allegations reveal the frivolous nature of Plaintiffs' RICO claims. The "conspiracy" allegations are essentially derivative of the "enterprise" allegations (*see* FAC ¶¶116-117), so discussion of the "enterprise" allegations informs the entire analysis.

First, the beginning acts of this alleged enterprise occurred in approximately 2003, or **seven years** before Darren and McMillan first met. (*See* FAC ¶13, citing a case filed in 2003). Yet, McMillan alleges that "the members of the Enterprise have functioned together as a continuing unit with a common purpose to obtain the Plaintiffs' property under fear." (FAC ¶88). In other words, McMillan alleges that seven years before any Defendant met him, they formed an enterprise with a purpose of obtaining Plaintiffs' property.

That is closely related to another fatal defect in Plaintiffs' RICO claims. McMillan never describes exactly what property Defendants sought or obtained

-14-

from Plaintiffs. There are no allegations that Nicole or Vania obtained any property from McMillan, or that they demanded any property.[2] In fact, all of the claims of RICO damages in the FAC are damage to Plaintiffs' reputational or intangible interests. (*See* FAC ¶ 80, 99-109). Not only are those damages not in furtherance of the purported purpose of the "enterprise," or damages that Defendants could "obtain" from Plaintiffs, they are not cognizable damages under RICO.[3]

Curiously, the "common purpose" of the "enterprise" was stated differently only three paragraphs later in the FAC, in which McMillan alleged:

> "The common purpose of the Enterprise members was to assist each other in the filing of false and meritless lawsuits under federal debt collection statutes; assist each other in the filing of lawsuits against attorneys who opposed them [], and to conduct a campaign of harassment, defamation, and extortion against attorneys, such as the Plaintiffs, who represented parties adverse to the interests of the Enterprise members []. Enterprise members also assisted each other in committing vandalism against Plaintiff's property.

(FAC ¶88).

On its face, this description of the common purpose of the "enterprise" is so overly broad that the only logical conclusion is that McMillan designed it to encompass any acts alleged in the FAC. Indeed, the first and second stated purposes of the "enterprise" were to file false and meritless lawsuits under federal

---

[2] The only allegations of any racketeering income or proceeds are buried in paragraph 23, and Darren is the only alleged beneficiary or recipient thereof.

[3] *See*, *e.g.*, *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1087 (9th Cir. 2002). This point is argued more fully in Darren's Motion to Dismiss Plaintiffs' FAC pursuant to Fed. R. Civ. P. 12(b)(6), Docket No. 56-1.

DEFENDANT DARREN CHAKER'S
MEMORANDUM IN SUPPORT OF HIS MOTION FOR SANCTIONS

debt collection statutes and to assist each other in filing lawsuits against attorneys. However, **none** of the allegations in the FAC that relate to Plaintiffs or their clients arise out of either of these actions. Rather, the main interactions between Plaintiffs and Defendants were (1) Darren contacting McMillan regarding posts on McMillan's website (FAC ¶31); and (2) McMillan voluntarily representing two clients, *pro bono*, in two separate cases involving Darren that were **already in litigation** when McMillan entered the case. (FAC ¶¶39-40). Again, in the latter case, it was Plaintiffs that chose to involve themselves in an already-filed case that did not involve any debt collection statutes or lawsuits against attorneys, and not involving Vania or Nicole, yet somehow the "enterprise" allegedly furthered its common purpose by targeting Plaintiffs.

Since those first two stated "common purposes" of the "enterprise" do not involve any claims in the instant case, the question arises about why McMillan described it that way. As discussed below, the only logical reason for this description was so that McMillan could shoehorn Nicole and Vania into this case as part of an "enterprise," based almost exclusively on the fact that Nicole and Vania were involved in lawsuits 3-7 years before Darren and McMillan even met. There is no other valid explanation for why McMillan described the "enterprise" this way, or why he tries to tie filing unrelated lawsuits many years ago to the allegations herein.[4]

---

[4] As argued in Darren's Motion to Strike pursuant to Fed. R. Civ. P. 12(f) (Dkt. No. 55-1), there is no connection between the filing of these lawsuits and the purportedly extortionate acts alleged elsewhere. Specifically, McMillan alleges that as part of the purported "enterprise," Darren, with help of his sister Vania, an attorney, engaged in "predicate acts" of filing lawsuits from 2003-2009, with one

DEFENDANT DARREN CHAKER'S
MEMORANDUM IN SUPPORT OF HIS MOTION FOR SANCTIONS

1

2      **b.    The Specific Allegations Regarding Nicole and Vania**

3            **Demonstrate That the Claims Against Them Are**

4            **Frivolous.**

5    McMillan's allegations with respect to Nicole include:

6    • Nicole is generally alleged to have engaged in litigation based on

7      meritless or outright false claims. No facts are alleged as to why these

8      lawsuits were meritless or based on false claims, and none of the cases

9      cited involve Plaintiffs. (FAC ¶10);

10   • Nicole, with Darren, brought a lawsuit in 2004—six years before

11     McMillan and Darren met—in a case entirely unconnected to this

12     litigation. While plaintiff alleges that Darren's and Vania's conduct in that

13     action was inappropriate, no such allegations are made regarding Nicole.

14     (FAC ¶¶11, 90);

15   • Nicole attended a hearing in a paternity case in which Darren was a party

16     "at least once." There are no facts or even conclusory allegations to

17     explain the significance of her attending any hearing. (FAC ¶¶40g, 92);

18

19

20

21   case filed in 2010, all of which were based on "meritless or false claims."

22   McMillan does not allege that any of these cases involved Plaintiffs as a litigant or

23   attorney, or that Plaintiffs had any pecuniary or other interests in the cases.

24   Moreover, Defendants' alleged filing of lawsuits against third-parties that were

25   voluntarily dismissed or settled has no connection to McMillan's allegations that

26   Darren defamed McMillan and otherwise threatened him unless McMillan

27   removed certain content from his website. (FAC ¶¶30-38).

28

- McMillan also received at least one letter from Darren that "appeared to have been sent via" Nicole. There is no allegation that Nicole knew the contents of the letter, and in any event, it is not extortionate on its face. (FAC ¶40h);

- Nicole filed documents in the paternity case on behalf of Darren in which he was seeking a continuance because he could not appear in court. (FAC ¶¶40i, 92); and

McMillan's allegations with respect to Vania include:

- Like Nicole, Vania is generally alleged to have engaged in litigation based on meritless or outright false claims. No facts are alleged as to why these lawsuits were meritless or based on false claims, and none of the cases cited involve Plaintiffs. (FAC ¶¶10-11);

- Allegations, based on information and belief with absolutely no factual support, that Vania accompanied Darren during a vandalism of Plaintiffs' property. (FAC ¶¶10-11); and

- Vania blocked McMillan and third-party's exit at a courthouse, generally walked around the public courthouse in the presence of McMillan, and pulled her car up next to an investigator on the road (without saying or doing anything to the investigator). (FAC ¶40).

McMillan's own words in the section of the FAC describing the "enterprise" further illustrate the feebleness of the allegations against Nicole and Vania and McMillan's desperate attempt to manufacture a conspiracy:

"Further proof of these relationships, in addition to the familial relationships, is described for example, in para. 40, in which during the Plaintiffs' representation of Susan A. in a lawsuit for paternity brought by Defendant DARREN, Defendant VANIA blocked the entrance of the courtroom of a licensed private investigator (Rivero) hired by Plaintiff

-18-

while DARREN blocked the doorway exit (para. 40 a-d); and VANIA and
DARREN together chased Rivero in a black SUV in an effort to intimidate
him (para. 40-e). Another example is described in para. 40g-i, in which
Defendant NICOLE, who is not an attorney but was counseled by
Defendant VANIA, appeared at a hearing in the Susan A. case while
Defendant DARREN was incarcerated. Also, on or about January 21, 2014,
Defendant NICOLE sent an intimidating letter to Plaintiffs and filed
documents in the case and executed a declaration to which was attached the
threatening letter."

(FAC ¶92).

The above are the only allegations tying Nicole and Vania to this case. Those
very few, mostly unsupported, conclusory allegations led to McMillan filing this
case in federal court as a RICO case, with a cause of action for RICO conspiracy
added on, without alleging valid RICO damages. The facially frivolous nature of
these allegations as they pertain to an "enterprise" or "conspiracy" are obvious.
That aside, McMillan's improper purpose in manufacturing this RICO case
becomes even more clear when viewed in light of the fact that the majority of the
"predicate acts" involving Nicole and Vania are related to the debt collection
lawsuits filed by Darren, Nicole, and/or Vania between 2003-2009, which had
nothing to do with Plaintiffs or any other allegations in the FAC. As such, if the
Court sees through McMillan's disingenuous inclusion of those lawsuits as
"predicate acts" in furtherance of the "enterprise," or as part of the "conspiracy,"
the allegations against Nicole and Vania become even more frivolous.

In sum, the following relevant allegations form the basis of McMillan's
RICO "enterprise" and "conspiracy": Nicole—Darren's mother—allegedly mailed
a letter from Darren to Plaintiffs, appeared at a hearing in a paternity case, and
filed a document on his behalf, and Vania blocked an exit to a courthouse, and

-19-

stopped next to an investigator on a public road without saying or doing anything. McMillan has not alleged any plausible conspiracy or enterprise, and his allegations are not well-grounded in fact. His RICO claims are therefore frivolous, and further, the Court can infer McMillan's intent to harass since the situation indicates that he has a motive to harass. *In re Grantham Bros.*, 922 F.2d at 1443.

As such, Plaintiffs should be sanctioned for McMillan's bad faith in alleging a RICO claim and a conspiracy under the facts above. *See*, *e.g.*, *Holgate*, 425 F.3d at 676 (affirming Rule 11 sanctions where complaint "failed to allege evidence of a conspiracy and an act in furtherance of a conspiracy"); *Copple v. Astrella & Rice, P.C.*, 442 F.Supp.2d 829, 836-37 (N.D. Cal. 2006) (conspiracy allegations sanctionable under Rule 11 because the complaint was "devoid of any facts supporting the existence of an agreement . . . nor [did] the facts plead reasonably support the inference of an agreement"); *Saratoga Sav. & Loan. Ass'n v. Tate*, 1988 U.S. Dist. LEXIS 16573, at *11-12 (N.D. Cal. Sept. 27, 1988) (sanctions imposed where there was "[no] reasonable factual basis" for plaintiff's conspiracy claim).

**B.    Darren Requests Attorney's Fees and Costs Incurred In Bringing this Motion.**

Rule 11(c) provides that a court may impose appropriate sanctions on any attorney who violates Rule 11, and award "the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion." Fed. R. Civ. P. 11(c)(1), (2). Accordingly, Defendants seek leave to petition the court for an award of fees and costs after the court adjudicates this motion.

**C.    Alternatively, the Court Should Sanction Plaintiffs Under Its Inherent Authority.**

If, for any reason, the Court believes that McMillan's conduct amounts to bad faith but that Rule 11 is the improper vehicle for redressing this misconduct, it should exercise its inherent authority to impose sanctions upon Plaintiffs. *See Egan*

*v. Huntington Copper Moody & Maguire, Inc.*, No. 12 C 9034, 2015 U.S. Dist. LEXIS 47143, at \*2 (N.D. Ill. Apr. 10, 2015) (court imposed sanctions for false allegation of sexual assault relying on its inherent authority).

Here, although the standard for sanctions under the Court's inherent authority is "bad faith,"[5] the Court can easily find that standard satisfied based upon McMillan's purpose in making the allegations above and indeed, in bringing this lawsuit as a RICO conspiracy claim.

## V. CONCLUSION.

Darren respectfully requests that the Court to impose the following sanctions: (1) dismiss Plaintiffs' FAC; (2) require Plaintiffs' to reimburse Darren for his reasonable costs and attorney's fees incurred as a result of the violation of Rule 11(b)(3); and (3) other relief that the Court considers appropriate under Rule 11 or in its inherent authority.

DATED:  March 28, 2017          Respectfully Submitted,

**SULLIVAN, KRIEGER, TRUONG, SPAGNOLA & KLAUSNER, LLP**

By:  /s/ Eliot F. Krieger
     Eliot F. Krieger, SBN 159647
     *ekrieger@sullivankrieger.com*
     Charles T. Spagnola, P.C., SBN 144983
     *cspagnola@sullivankrieger.com*
     444 West Ocean Boulevard, Ste 1700

---

[5] *See First Bank v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 510, 517 (6th Cir. 2002) (differences between Rule 11 sanctions and inherent authority sanctions include finding for Rule 11 sanctions of "objectively unreasonable conduct" versus finding for inherent authority sanctions of bad faith).

-21-

DEFENDANT DARREN CHAKER'S
MEMORANDUM IN SUPPORT OF HIS MOTION FOR SANCTIONS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Long Beach, CA 90802
Telephone: (562) 597-7070

*Attorneys for Defendant* Darren Chaker

-22-

DEFENDANT DARREN CHAKER'S
MEMORANDUM IN SUPPORT OF HIS MOTION FOR SANCTIONS

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT A. MCMILLAN, an individual; THE MCMILLAN LAW FIRM, APC, a California professional corporation, | Case No.:  16cv2186-WQH-MDD |
| Plaintiffs, | **ORDER GRANTING MOTION TO SUBSTITUTE ATTORNEY** |
| v. | |
| DARREN D. CHAKER, an individual, and as trustee of PLATINUM HOLDINGS GROUP TRUST doing business as COUNTER FORENSICS; NICOLE CHAKER, an individual, and as trustee of Nicole Chaker Trust One; VANIA CHAKER, an individual and as beneficiary of The Island Revocable Trust under Declaration of Trust dated June 2, 2015; MARCUS MACK, as trustee of The Island Revocable Trust under Declaration of Trust dated June 2, 2015; NICOLE CHAKER, an individual, and as trustee of The Nicole Chaker Revocable Living Trust, U/A dated August 18, 2010 | |
| Defendants. | |

**TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

1

16cv2186-WQH-MDD

Defendant Darren D. Chaker as an individual and as trustee of Platinum Holding Group Trust dba Counter Forensics (hereinafter "Mr. Chaker") filed a Motion to Substitute Attorney (hereinafter "Motion").  (ECF No. 115).  Mr. Chaker's Motion included the signatures of his former counsel John Hochhausler, and his new counsel Stephen Erigero, consenting to the substitution of attorney.

The Court, being satisfied that Mr. Chaker's Motion meets all procedural requirements to substitute an attorney in the United States District Court for the District of Southern California, hereby **GRANTS** Mr. Chaker's Motion.

Therefore, Mr. Chaker's Motion is hereby **GRANTED**, and Mr. Erigero shall be substituted in as counsel for Mr. Chaker in place of Mr. Hochhausler.

**IT IS SO ORDERED**.

Dated:  March 25, 2019

Hon. William Q. Hayes
United States District Court

2

16cv2186-WQH-MDD

1
2
3
4
5
6
7
8              **UNITED STATES DISTRICT COURT**

9              **SOUTHERN DISTRICT OF CALIFORNIA**

10   SCOTT A. MCMILLAN; THE                    CASE NO. 16cv2186-WQH-MDD
     MCMILLAN LAW FIRM, APC,
11                                             ORDER
                                Plaintiffs,
12          v.
13   DARREN D. CHAKER, et al.,

14
                                Defendants.
15   HAYES, Judge:

16          The matter before the Court are the motions to dismiss filed by Defendant Darren

17   D. Chaker. (ECF Nos. 14, 16).

18          On August 29, 2016, Plaintiffs Scott A. McMillan and the McMillan Law Firm

19   initiated this action by filing a complaint against Defendants Darren D. Chaker, an

20   individual and as trustee of Platinum Holdings Group Trust, dba Counter Forensics;

21   Nicole Chaker, an individual and as trustee of Nicole Chaker Trust One; and Vania

22   Chaker, an individual and as trustee of Vania Chaker Trust. (ECF No. 1).    On

23   November 14, 2016, Defendant Darren D. Chaker filed a motion to dismiss the

24   complaint for failure to state a claim.  (ECF No. 14).  On November 15, 2016,

25   Defendant Darren D. Chaker filed a motion to dismiss pursuant to California's anti-

26   SLAPP statute, California Code of Civil Procedure section 425.16 or, alternatively,

27   under the Federal Rule of Civil Procedure 12(b)(6). (ECF No. 16).  On December 5,

28   2016, Plaintiffs filed a first amended complaint.

1    Plaintiffs have the right to file the first amended complaint pursuant to the
2    Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 15(1)(b) ("A party may amend
3    its pleading once as a matter of course within . . . 21 days after serving it, or . . . if the
4    pleading is one to which a responsive pleading is required, 21 days after service of a
5    responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f),
6    whichever is earlier."). Once filed, an amended complaint supersedes the original
7    complaint in its entirety. *See Ramirez v. Cty. of San Bernardino*, 806 F.3d 1002, 1008
8    (9th Cir. 2015). Defendant's motions to dismiss, addressing the original complaint,
9    became moot once the first amended complaint was filed.

10    IT IS HEREBY ORDERED that the motions to dismiss (ECF Nos. 14, 16) are
11    DENIED AS MOOT.

12    DATED: January 23, 2017

13    *William Q. Hayes*
      **WILLIAM Q. HAYES**
14    United States District Judge

15
16
17
18
19
20
21
22
23
24
25
26
27
28

1  **SULLIVAN, KRIEGER, TRUONG,**
   **SPAGNOLA & KLAUSNER, LLP**
2  Eliot F. Krieger, State Bar No. 159647
3  *ekrieger@sullivankrieger.com*
   Charles T. Spagnola, P.C., State Bar No. 144983
4  *cspagnola@sullivankrieger.com*
5  444 West Ocean Boulevard, Suite 1700
   Long Beach, CA 90802
6  Telephone: (562) 597-7070

7  Attorneys for Defendant DARREN D. CHAKER,
   individually, and as trustee of PLATINUM HOLDINGS
8  GROUP TRUST

9              **UNITED STATES DISTRICT COURT**

10        **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

11

12 | SCOTT A. MCMILLAN, an individual, | ) | Case No. 3:16-CV-02186-WQH-MD |
   | THE MCMILLAN LAW FIRM, APC, a | ) | |
13 | California professional corporation, | ) | Judge: Hon. William Q. Hayes |
   | | ) | Courtroom: 14B |
14 |              Plaintiffs, | ) | |
   | | ) | Magistrate: Hon. Mitchell D. Dembin |
15 |          v. | ) | Courtroom: 11th Floor |
   | | ) | |
16 | | ) | **DECLARATION OF DEFENDANT** |
17 | DARREN D. CHAKER an individual, and | ) | **DARREN D. CHAKER IN** |
   | as trustee of PLATINUM HOLDINGS | ) | **SUPPORT OF HIS MOTION FOR** |
18 | GROUP TRUST, dba COUNTER | ) | **SANCTIONS PURSUANT TO FED.** |
   | FORENSICS; NICOLE CHAKER, an | ) | **R. CIV. P. 11** |
19 | individual, and as trustee of NICOLE | ) | |
   | CHAKER TRUST ONE, VANIA | ) | **Hearing Date:** <u>MAY 1,</u> 2017 |
20 | CHAKER, an individual and as trustee of | ) | **Courtroom: 14B** |
   | VANIA CHAKER TRUST ONE, | ) | |
21 | | ) | Complaint Filed:  August 29, 2016 |
   |              Defendants. | ) | |
22 | | ) | **[PER CHAMBERS, NO ORAL** |
   | | ) | **ARGUMENT UNLESS ORDERED** |
23 | | ) | **BY COURT]** |
   | | ) | |
24 | | ) | |
25 | | ) | |
26 | ———————————————— | ) | |
27
28

I, Darren D. Chaker, declare under penalty of perjury that the following facts are true and correct to the best of my information and belief:

1.    I am a Defendant in the above entitled action. I am personally familiar with the facts contained in this Declaration.

2.    The allegations in paragraph 21 of the First Amended Complaint are false. I have never engaged in human trafficking or sex trafficking. Furthermore, I have never been charged with human trafficking or sex trafficking by any law enforcement agency, or convicted of said crimes.

3.    I did not engage in acts of vandalism to the property of James Frantz and Jodi Frantz. Furthermore, I was never charged with vandalism to that property by any law enforcement agency or convicted of the alleged crime.

4.    I did not commit "financial fraud," or any related acts, in any manner with respect to Jodi Frantz or James Frantz. Furthermore, I was never charged with financial fraud in any manner by any law enforcement agency, nor was I convicted of any such crime.

5.    I have never been charged with any criminal offense against James Frantz, Jodi Frantz, or Nadine Zaya.

6.    The criminal possession of an assault weapon charge referred to in paragraphs 22, 27(d), and 31 of the First Amended Complaint was reduced to a misdemeanor, and subsequently expunged. (*See* Court Order, attached hereto as Exhibit A).

Dated:      March 6 , 2017          _____
                                    *Darren Chaker*
                                    DARREN D. CHAKER

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

AUG 1 4 2009

ALAN CARLSON, Clerk of the Court

BY MONICA JOHNSON, DEPUTY

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF ORANGE

THE PEOPLE OF THE STATE OF

CALIFORNIA,

          Plaintiff,

    vs.

DARREN D. CHAKER,

          Defendant.

Case No.: 02HF1533

**ORDER REDUCING FELONY TO MISDEMEANOR, AND EXPUNGING CONVICTION**

It appearing to the court from the foregoing petition and from records in this case, that defendant herein is eligible for the relief provided in Penal Code section 17 and 1203.4,

IT IS HEREBY ORDERED that the felony conviction of violating Penal Code section 12280 (b) PC ~~12276.1(a)(1)~~ be reduced to a misdemeanor pursuant to Penal Code section 17, and the conviction in the above-entitled action be set-aside, a plea of not guilty be entered, and the complaint be hereby DISMISSED.

IT IS FURTHER ORDERED that pursuant to Penal Code section 11117 and 13151, the State Department of Justice is notified of the terms of this order.

DATED: 8/14/09

Hon. Gary S. Paer
Judge of the Superior Court     **GARY S. PAER**

I hereby certify the foregoing instrument consisting of ____ page(s) is a true and correct copy of the original on file in this court.

ATTEST: (DATE): 8-14-09
ALAN CARLSON, EXECUTIVE OFFICER AND CLERK OF THE
SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE

BY _____ DEPUTY

RECEIVED
JUL 13 2009
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

# EXHIBIT A

1261

1 | Scott A. McMillan, CBN 212506
**THE MCMILLAN LAW FIRM, APC**
2 | 4670 Nebo Drive, Suite 200
La Mesa, California 91941-5230
3 | (619) 464-1500 x 14
Fax: (619) 828-7399
4
5 | Attorney for Plaintiff,
Scott A. McMillan and The McMillan Law Firm, APC
6
7
8 | UNITED STATES DISTRICT COURT
9 | SOUTHERN DISTRICT OF CALIFORNIA
10
11 | SCOTT A. MCMILLAN, an individual, THE MCMILLAN LAW FIRM, APC, a California professional corporation,

Civil Case No.: '16CV2186 JM   MDD

12 | Plaintiffs,

Complaint for
1. Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1962(c))
13 | vs.
2. Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1962(d))
14 | DARREN D. CHAKER an individual, and as trustee of PLATINUM HOLDINGS GROUP TRUST, dba COUNTER FORENSICS; NICOLE CHAKER, an individual, and as trustee of NICOLE CHAKER TRUST ONE, VANIA CHAKER, an individual and as trustee of VANIA CHAKER TRUST ONE,
3. Civil Extortion

DEMAND FOR JURY TRIAL

15 |
16 |
17 |
18 |
19 | Defendants.
20
21
22
23
24
25
26
27
28

1  Plaintiffs allege as follows:

2  **JURISDICTION**

3     1.  This Court has jurisdiction over the subject matter of the causes of action in this
4  complaint by virtue of:

5        a.  federal question jurisdiction pursuant to 28 U.S.C. § 1331, involving an action
6        pursuant to 18 U.S.C. § 1964(c), the Federal Racketeer Influenced and Corrupt
7        Organizations Act ("RICO"). This Court has subject-matter jurisdiction over this
8        action pursuant to 28 U.S.C. §1332;

9        b.  supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), involving claims
10       that are so related to claims in the action within the Court's original jurisdiction
11       that they form part of the same case or controversy under Article III of the United
12       States Constitution; and

13    2.  This Court has jurisdiction over the person of the Defendant Darren Chaker
14 because Defendant transacts business within this judicial district, and Defendant is
15 amenable to service of process within the meaning of Federal Rule of Civil Procedure
16 Rules 4(e), 4(f), and 18 U.S.C. § 1965(b).

17    3.  Further, this District Court, the Hon. Larry A. Burns, District Judge presiding,
18 has jurisdiction over Defendant because Defendant is under an order of supervised release
19 according to the terms of sentence of Defendant's conviction for bankruptcy fraud,
20 *United States v. Chaker*, U.S.D.C., So. Dist. California, Case No. 3:15-cr-07012-LAB.

21    4.  Venue is proper in this district pursuant to 18 U.S.C. § 1965 and 28 U.S.C. §
22 1391 because Defendants transacts business in this district or, alternatively, this district is
23 where a substantial part of the events or omissions giving rise to the claim occurred.

24  **THE PARTIES**

25    5.  Plaintiff, SCOTT A. MCMILLAN (hereinafter referred to as "Plaintiff
26 McMillan"), is a  resident of the State of California, County of San Diego.  Plaintiff is a
27 California licensed attorney, and is engaged in intra-state, and interstate commerce in the
28 course of his practice.  Plaintiff McMillan also operates a law school, the McMillan

Complaint                           2

1263

1 Academy of Law, a Caliornia corporation, which is unaccredited, but registered with the

2 Committee of Bar Examiners, State Bar of California.

3     6. Plaintiff, THE MCMILLAN LAW FIRM, APC, a California professional

4 corporation, (hereinafter referred to as "Plaintiff TMLF") has its principal place of

5 business in the County of San Diego, State of California. Plaintiff McMillan operates

6 Plaintiff TMLF.

7     7. Defendant, DARREN CHAKER (a.k.a. Darren Del Nero a.k.a. Darren Del

8 Nero-Chaker a.k.a. Darren Shaker, a.k.a. D. David Hunter) (hereinafter referred to as

9 "Defendant DARREN"), is presently a resident of the State of California, County of San

10 Diego. Defendant DARREN conducts business through and holds assets as trustee in

11 PLATINUM HOLDINGS GROUP TRUST, a self-settled trust.  Plaintiff is further

12 informed and believes that Defendant DARREN conducts business under the pseudonym

13 or doing-business-as "COUNTER FORENSICS." Defendant DARREN was deemed a

14 vexatious litigant in Superior Court of California, County of San Diego Case Nos. 591421

15 (December 2, 1997) and GIC757326 (June 22, 2001).

16     8. Defendant VANIA CHAKER (hereinafter referred to as "Defendant VANIA")

17 is presently a resident of the State of California, County of San Diego, and is Defendant's

18 Darren's sister.  On one or more occasions, VANIA has participated in the acts set forth

19 herein, providing assistance to Defendant DARREN in committing predicate acts.

20 Plaintiff is informed and believes that Defendant VANIA conducts business through and

21 holds assets as trustee in a trust of an unknown name, which shall be referred to herein as

22 VANIA CHAKER TRUST ONE, a self-settled trust.  Plaintiff intends to amend the name

23 of that trust at such time as it becomes known to Plaintiff herein, and substitute the true

24 name for that trust at that time.

25     9. Defendant NICOLE CHAKER (hereinafter referred to as "Defendant

26 NICOLE"), is the mother of Defendant DARREN and Defendant VANIA. On one or

27 more occasions, Defendant NICOLE has participated in the acts set forth herein,

28 providing assistance to Defendant DARREN in committing predicate acts. Plaintiff is

Complaint    3

1  informed and believes that Defendant NICOLE conducts business through and holds

2  assets as trustee in a trust of an unknown name, which shall be referred to herein as

3  NICOLE CHAKER TRUST ONE, a self-settled trust.  Plaintiff intends to amend the

4  name of that trust at such time as it becomes known to Plaintiff herein, and substitute the

5  true name for that trust at that time.

6  **DEFENDANTS' ENTERPRISE AND PREDICATE ACTS**

7         10.  Plaintiffs are informed and believe, and based thereon allege that Defendant

8  VANIA is an attorney, currently licensed to practice law in the State of California.

9  Defendant VANIA has lived at various times in California and the Pennsylvania.

10  Defendant VANIA, as a profession, both individually on her own account and to assist

11  Defendants DARREN and NICOLE, engaged in litigation based on meritless or outright

12  false claims, typically relying upon the Fair Credit Reporting Act, 15 U.S.C. § 1681, and

13  on at least one occassion bringing a claim for personal injury, deriving income from such

14  fraudulent activity.  As part of her pattern of racketeering activity, Defendant VANIA has

15  attempted and sometimes succeeded in collecting unlawful debts, i.e., a claim based on

16  false or meritless legal claims, and derived income from such false claims and unlawful

17  threats of suit.  For instance in *Vania Chaker v. Monarch Group Management, Inc.*,

18  U.S.D.C. So. Dist. of Cal., Case No. 06cv1534W(AJB), Defendant VANIA borught a

19  class action complaint for violation of the Federal Fair Debt Collections Practices Act, 15

20  U.S.C. § 1692, et seq. and the California Rosenthal Fair Debt Collection Practices Act,

21  arising from her landlord's service upon her of a three day notice to pay rent or quit.

22  Within the U.S. District Court for the Southern District of California, Defendant VANIA

23  has brought three other cases based on allegations of violations of the Fair Debt

24  Collection Practices Act, e.g., *Vania Chaker v. Collection Company of America*, U.S.D.C.

25  So. Dist. of Cal., Case No. 05cv390 BEN(AJB) [unpaid T-mobile cellular phone

26  charges]; *Vania Chaker v. Allied Interstate, Inc.*, U.S.D.C. So. Dist. of Cal., Case No.

27  05cv0212 LAB(RBB)[unpaid DirectTV bills]; *Vania Chaker v. CAMCO*, U.S.D.C. So.

28  Dist. of Cal., Case No. 04cv1735 W(RBB).

Complaint                                                                    4

Case 3:16-cv-02186-WQH-MDD Document 127-2 Filed 09/23/22 PageID.5496 Page 84 of
148
Case 3:16-cv-02186-WQH-MDD Document 127-2 Filed 09/23/16 PageID.549 Page 5 of 38

11.  Plaintiffs are informed and believe, and based thereon allege that Defendant VANIA did not solely file such suits in the U.S. District Court for the Southern District of California, but also assisted in cases in the Central District of California, appearing as attorney in the suit brought by Defendant DARREN *subnom* (Darren Del Nero) and Defendant NICOLE alleging defendant's violations of the Federal Fair Debt Collections Practices Act, 15 U.S.C. § 1692, et seq..  Specifically, Defendants DARREN and NICOLE brought suit against Midland Credit Management Inc., in the case of *Del Nero & Chaker, et al., v. Midland Credit Management Inc*.,  U.S.D.C. Cen. Dist. of Cal., Case No. 2:04-cv-01040-ABC-SH.  Defendant DARREN and his attorneys were sanctioned $155,979.09 after the court found that Defendant DARREN brought suit in bad faith and for the purpose of harassment.  (*Del Nero v. Midland Credit Management Corp. et al*., 2:04-cv-01040-ABC-SH.(Attorneys fee award later vacated against Chaker's counsel.) The Court issued an order to show cause re contempt for Defendant VANIA's conduct during the jury trial, and barred her from the courtroom during the remainder of the trial. The court's basis for the order was that Defendant VANIA attempted to aid a witness in answering counsel's questions. [ECF 91.] Defendant VANIA also represented Defendant DARREN *subnom* (Darren Del Nero) in *Darren Del Nero v. Reliable Adjustment Bureau Inc et al*, U.S.D.C. Cen. Dist. of Cal., Case No. 2:04-cv-00969-FMC-JWJ, another case alleging violations of 15 U.S.C., § 1681.  In each of those instances, in a likely effort to avoid Defendant DARREN's prefiling order as a vexatious litigant, Defendant VANIA initially appeared on Defendant DARREN's behalf, then substituted out to allow Defendant DARREN to prosecute the case *in propria persona*.  Defendant VANIA engaged in such transitory representation of Defendant DARREN to assist him avoiding the bar of the prefiling orders placed resulting from his designation as a vexatious litigant.

12.  As to Defendant DARREN, Plaintiffs are informed and believe, and based thereon allege that Defendant DARREN holds himself out to the public as operating a business called COUNTER FORENSICS.  The COUNTER FORENSICS web page described its services as follows:

"Founded in 2006, the origination of CounterForensics.com can be traced to the cyber security and forensics background of our consultant, Darren Chaker. Mr. Chaker (www.DarrenChaker.com) previously worked in law enforcement, and as a security contractor in the Middle East. More recently, Mr. Chaker managed electronic discovery (e-discovery) for a leading multinational law firm conducting large-scale digital forensic investigations, and provided electronic discovery services involving civil, corporate and criminal matters. Mr. Chaker also implemented security enforcement protocols and systems with Military Grade Communications for use between international offices to discuss sensitive matters. Mr. Chaker has additional expertise in matters involving:

• Software piracy;

• Sexual harassment via e-mail, instant messaging and other forms of electronic communications;

• Monitoring employee activity;

• Employee sabotage;

• Intrusion detection;

• Recovery of deleted files;

• Lost password recovery and cracking of locked files;

• Discovery of hidden and deleted e-mails and pictures;

• Internet usage and unauthorized software installed on a company machine; and Removal of viruses, pictures, software and other data items which may be hidden from the user.

See **Exhibit 6**, https://web.archive.org/web/20150208142616/http://www.counterforensics.com/ (Accessed on August 23, 2016.)

13. At various times relevant to the facts stated herein, Defendant DARREN has resided in California, Nevada and Texas, and engaged in transactions and acts affecting

1    interstate commerce:

2        14.  Defendant DARREN has, as a profession, engaged in litigation based on

3    meritless or outright false claims, typically relying upon the Fair Credit Reporting Act, 15

4    U.S.C. § 1681, and on at least one occassion bringing a claim for personal injury, deriving

5    income from such fraudulent activity.  As part of his pattern of racketeering activity,

6    Defendant DARREN has attempted and sometimes succeeded in collecting unlawful

7    debts, i.e., a claim based on false or meritless legal claims, and derived income from such

8    false claims and unlawful threats of suit.

9        15.  In another 2005 case, attorney's fees of $42,934.84 were awarded against

10   Defendant DARREN for filing a baseless lawsuit. (*Chaker v. Richland* (C.D. Cal. 2005)

11   CV 05-7851-RSWL; *See also Chaker v. Imperial Collection Services* (C.D. Cal. 2004)

12   CV 04-2728-PA (alleging claims under the FDCPA found to be without merit); and *Del*

13   *Nero v. Riddle & Associates PC, et al.* (C.D. Cal. 2003) CV 03-6511-GHK (same).) In a

14   2007 case, Defendant DARREN and his attorneys were sanctioned $155,979.09 after the

15   court found that Defendant DARREN brought suit in bad faith and for the purpose of

16   harassment.  (*Del Nero v. Midland Credit Management Corp. et al.* (C.D. Cal. 2007) CV

17   04-1040 GPS.)  In a 2009 case, Defendant DARREN was ordered to pay $136,316.14 for

18   bad faith due to Defendant DARREN falsely claiming identity theft.  (*Chaker v. Nathan*

19   *Enterprises Corp.* (C.D. Cal.  2009)  CV 04-2726-RSWL.)

20       16.  Defendant DARREN filed other suits based allegations of violations of Fair

21   Credit Reporting Act, 15 U.S.C. § 1681, i.e., *Darren Chaker-Del Nero v. Afni, Inc.*,

22   U.S.D.C. Cen. Dist. of Cal., Case No. 2:08-cv-03405-ODW-SS; *Darren D Chaker v.*

23   *First City Bank Credit Union*, U.S.D.C. Cen. Dist. of Cal., Case No.

24   2:04-cv-02727-GPS-RZ; *Darren D Chaker v. Factual Data Corporation*, U.S.D.C. Cen.

25   Dist. of Cal., Case No.  2:04-cv-02729-JFW-AJW; *Darren D Chaker v. European Auto*

26   *House*, U.S.D.C. Cen. Dist. of Cal., Case No. 2:04-cv-02731-R-PJW; *Darren Chaker* v.

27   *Arrow Financial Services* LLC, U.S.D.C. Cen. Dist. of Cal., Case No.

28   2:04-cv-07050-FMC-FMO.

1    17.  Defendants have a pattern of attacking the attorneys which oppose them, i.e.,

2  in *Darren D Chaker v. Felipa R. Richland, et al.*, U.S.D.C. Cen. Dist. of Cal., Case No.

3  2:05-cv-07851-RSWL-PLA, Defendant DARREN sued attorney Richland and her law

4  office, and her client Nathan Enterprises Corp. for alleged violations of the  Fair Credit

5  Reporting Act, 15 U.S.C. § 1681.  Plaintiff is informed and believes and based thereon

6  alleges that during her defense of the both cases, Ms. Richland was stalked, her property

7  vandalized.  Ultimately, Ms. Richland and her client prevailed, with Defendant DARREN

8  held liable for costs and attorneys fees. [ECF 25, 26.]

9    18.  Defendant DARREN, subnom *Darren Chaker Del-Nero,* brought additional

10  suits in the United States District Court for the District of Nevada based on allegations of

11  violation of the Fair Credit Billing Act, 15 U.S.C. § 1666, e.g., *Chaker-Delnero v.*

12  *Nevada Federal Credit Union, et al*, U.S.D.C. District of Nevada., Case No.,

13  2:06-cv-00008-BES-GWF; for violations of the Fair Debt Collections Practices Act, 15

14  U.S.C. § 1692, *Chaker-Delnero v. Butler & Hailey, et al*, U.S.D.C. District of Nevada.,

15  Case No. 2:06-cv-00022-KJD-LRL, *Chaker-Delnero v. Clark County Collection Service,*

16  *LLC*, U.S.D.C. District of Nevada, 2:06-cv-00123-JCM-PAL, and *Chaker-Delnero v.*

17  *Collectco*, U.S.D.C. District of Nevada, 2:06-cv-00244-RLH-GWF.  In each of these

18  cases, docket entries reflect a voluntary dismissal. Plaintiff is informed and believes that

19  in those cases, the Defendants paid a sum to "buy their peace" rather than to spend

20  attorneys fees litigating the case, despite the lack of the merit to Defendant DARREN's

21  claims.

22    19.  Defendant DARREN, subnom *Darren Chaker,* brought additional suit in the

23  United States District Court for the Southern District of Texas (Houston) based on

24  allegations of violation of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692,

25  *Chaker v. The CMI Group*,  U.S.D.C. Southern District of Texas (Houston),

26  4:07-cv-01802F [Time Warner Communications.] In that case, the docket entries reflect a

27  voluntary dismissal. Plaintiff is informed and believes that in that case, the Defendants

28  paid a sum to "buy its peace" rather than to spend attorneys fees litigating the case,

Complaint                                                           8

1   despite the lack of the merit to Defendant DARREN's claims.

2       20.  Defendant DARREN, subnom *David Hunter*, brought additional suit in the

3   United States District Court for the District of Arizona, entitled *Hunter v. Receivables*

4   *Performance Management, LLC*, U.S.D.C. District of Arizona, 2:10-cv-00665-MHM

5   [Sprint cellular phone service].  Within that suit Defendant DARREN attached letters

6   claiming an address at 11881 S. Fortuna Road, #223, Yuma, AZ 85367 [Exhibit B, ECF

7   1-3.] In that case, the docket entries reflect a voluntary dismissal. Plaintiff is informed

8   and believes that in that case, the Defendant paid a sum to "buy its peace" rather than to

9   spend attorneys fees litigating the case, despite the lack of the merit to Defendant

10  DARREN's claims.

11                          **SEX TRAFFICKING**

12      21.  Plaintiff is informed and believes and based thereon alleges that Defendant

13  DARREN also engaged, within the last ten years, in human trafficking, and derived

14  income from such activity.

15      22.  Defendant DARREN's record of arrests and prosecutions (RAP) reveals

16  arrests for insufficient funds/check, attempting to prevent/dissuade victim/witness,

17  receiving known stolen property, vehicle theft, first degree burglary, grand theft, and

18  being in possession of an assault weapon. He was convicted of invading/looking into a

19  tanning booth (1997), and possession of an assault weapon (2006). Such crimes were

20  punishable by a year or more incarceration.

21      23.  Defendant DARREN also obtained mortgages on real estate through false

22  statements, and thereafter rather than paying the mortgages, Defendant DARREN kept the

23  rents from such properties to fund his enterprises, and when his mortgagors sought to

24  recover their real property collateral, Defendant DARREN filed false bankruptcy petitions

25  in order to stall or avoid the foreclosure and continue to collect rental income.

26      a.  Defendant DARREN used the ill-gotten proceeds of his enterprise to fund his

27          lifestyle and further his illegal activities including through the purchase of

28          computers, paying for travel, development of various domain names and online

---

Complaint                                                        9

presences to the detriment of Plaintiff herein.

b.  In order to dissuade those members of law enforcement and attorneys in private practice who would challenge Defendant DARREN's criminal conduct, including Plaintiff herein, Defendant DARREN used various means and threats, including harassment, stalking, defaming others, vandalizing property, hacking computers, spoofing emails, and identity theft.

c.  Defendant DARREN has used the proceeds of his racketeering activity to purchase computers, equipment, and Internet access services in order to engage in his and the other Defendants VANIA and NICOLE's frauds, and efforts to dissuade those who oppose their illegal conduct, including Plaintiff herein.

d.  On March 22, 2012, Defendant DARREN was indicted in *United States v. Darren David Chaker,* Case No. 4:12CR00168-001, and thereafter granted pre-trial release under supervision with U.S. Pretrial Services.  The Indictment, attached as **Exhibit 1**, alleges a portion of Defendants' scheme, which Plaintiff incorporates by reference here.

e.  While on supervision with U.S. Pretrial Services, through false statements to a United States officer, he violated his terms of release by failing to disclose to U.S. Pretrial Services and the Court the fact that he procured a U.S. Passport using the alias "D. David Hunter."

f.  On December 17, 2013, Defendant DARREN suffered a Judgment in a Criminal Case in the case entitled *United States v. Darren David Chaker,* Case No. 4:12CR00168-001, in the  United States District Court for the Southern District of Texas (Houston), for Bankruptcy Fraud, 18 U.S.C § 157(3).  On April 14, 2016, that conviction was affirmed by the United States Court of Appeals for the Fifth Circuit, case number 14-20026, as reported in  *United States v. Chaker,* 820 F.3d 204, 206 (5th Cir. 2016). He was sentenced to a total term of 15 months, and was additionally sentenced to three years supervised release, as part of the special conditions of supervision was ordered:

"The defendant shall provide the probation officer access to any requested financial information. If a fine or restitution amount has been imposed, the defendant is prohibited from incurring new credit charges or opening additional lines of credit without approval of the probation officer.

The defendant is prohibited from possessing a credit access device, such as a credit card, unless first authorized by the probation officer.

The defendant is required to participate in anger management counseling as deemed necessary and approved by the probation officer. The defendant will incur costs associated with such program, based on ability to pay as determined by the probation officer.

The defendant is required to participate in a mental health program as deemed necessary and approved by the probation officer. The defendant will incur costs associated with such program, based on ability to pay as determined by the probation officer.

The defendant may not stalk and/or harrass other individuals to include, but not limited to, posting personal information of others or defaming a person's character on the internet."

(ECF 312, 4:12CR00168-001)

## DEFENDANTS' PRIOR ACTS OF EXTORTION AND WITNESS TAMPERING

24. Defendants rely on keeping their past conduct, criminal convictions, lawsuits, and generally bad reputation out of public view. To accomplish this the defendants regularly use pseodynms, attempt to seal documents and proceedings which may alert the public to information about Defendants that if known, would provide a defense or would affect a fact-finder's view on their credibility.

25. Defendant DARREN falsely, and in order to gain credibility with unknowing law enforcement and laypersons, holds himself out as a former law enforcement officer or government security employee, including at various times claiming an "Ex-cop" or to be an employee of the "Diplomatic Security Service."

26. **Victim Zaya**: Plaintiffs are informed and believe that, in accordance with Defendants' common plan and scheme, Defendant DARREN committed one or more acts of extortion against Nadine Zaya:

a. Plaintiff is informed and believes, and based thereon alleges, that Defendant DARREN formerly had a dating relationship with Nadine Zaya. At some point between August and October 2002, Defendant DARREN and Zaya, traveled from

1   Southern California to Scottsdale, Arizona. Petitioner took Zaya to a gun store,

2   where he purchased the Rifle, a licensed reproduction of a Fabrique Nationale

3   FAL (FN-FAL) battle weapon.8 At the gun store, petitioner told Zaya he once

4   owned "the exact same gun" but his mother had taken it away from him.

5   b.  After Defendant DARREN purchased the Rifle, he made Zaya take pictures of

6   him with it. He also made Zaya pose with the Rifle. Defendant DARREN then

7   took Zaya to a firing range, where he fired the Rifle and showed her how to shoot,

8   hold, and load it. When Zaya held the Rifle, Defendant DARREN reassured her,

9   "It's okay. Look, it's fun. . . . You're going to be okay. I'm an ex-cop. I know how

10  to shoot a gun." Shortly thereafter, petitioner and Zaya returned to California with

11  the Rifle.

12  c.  On October 14, 2002, Laguna Beach police officers visited Defendant

13  DARREN's apartment to investigate allegations that he had sexually exploited a

14  minor. A police officer entered the apartment, knocked on a bedroom door, and

15  identified himself as a police officer. After some delay, Defendant DARREN

16  emerged from the bedroom and told the officer the room belonged to him. He

17  refused, however, to permit the police officers to search it. Defendant DARREN

18  called Zaya after the police officers left the apartment. He expressed concern that

19  the fully-assembled Rifle would be considered an illegal weapon.  Defendant

20  DARREN told Zaya he was going to remove parts from the Rifle to "make it

21  legal" and asked her to keep the parts.  The next day, the police officers returned to

22  Defendant DARREN's  apartment with a search warrant. During the search, an

23  officer found the Rifle in petitioner's bedroom closet. He noticed the Rifle had a

24  detachable magazine and a pistol grip, but that it was missing its bolt carrier group.

25  The officers also found unloaded magazines and pictures of petitioner posing with

26  the Rifle at a firing range. In the pictures, the Rifle contained the bolt and the

27  magazine.

28  d.  On November 18, 2002, the District Attorney of Orange County filed a felony

Complaint

12

complaint charging defendant with one count of possession of an assault weapon (Penal Code § 12280(b)) and one count of receiving stolen property (Penal Code § 496, subd. (a)). Shortly after the People filed the complaint, defendant began writing letters to the court. In these letters, defendant claimed the police had illegally seized privileged documents from his apartment. He also criticized the judges presiding over his case and the attorneys assigned to represent him. On July 30, 2003 -- after defendant had written six letters to various judges -- the court ordered defendant to stop. The court notified defendant it would "not take action on personal communications from a represented defendant when his case is pending before this court." (*People v. Chaker*, No. G037362, 2008 Cal. App. Unpub. LEXIS 999, at *4-5 (Ct. App. Feb. 4, 2008).)

e. Plaintiffs are informed and believe that in July 2005, the Superior Court of California, County of San Diego issued a restraining order against Darren D. Chaker pursuant to the Domestic Violence Protection Act (Fam. Code, § 6200 et. seq. (the Act)), requiring him to stay away from Nadine Zaya for a five-year period. He appealed from that order on various grounds, contending in part that Zaya's evidence was insufficient to support its issuance; the Court of Appeals of California, Fourth District, Division One, however, rejected his arguments and affirmed the order.

f. On June 15, 2006, Zaya filed a request for a temporary restraining order under the Act against Chaker. In her request, Zaya stated under penalty of perjury that Chaker made threatening calls to her and told her he would harm her or her family if she testified in a pending criminal matter against him. (*Zaya v. Chaker* (Oct. 19, 2007, D049874) [nonpub. opn.].)

g. Thereafter, on or about July 19, 2006, and then again on or about December 8, 2006, Defendant DARREN sent nude photos of Zaya to Zaya's brother's employer, which had been taken by Defendant DARREN.

27. **Victims Frantz:** Plaintiffs are informed and believe that the following is true

regarding Defendant DARREN's efforts to extort San Diego attorneys James Frantz, Jodi Frantz, and Charles Kim:

a. On or abut December 2010, Jodi and James Frantz retained Charles Kim to represent them in a civil protective action. Jodi Frantz sought a restraining order against Defendant DARREN, in *Hautaluoma v. Chaker,* San Diego Superior Court Case No. 717794.

b. Prior to the extortion attempt against James Frantz, Jodi Frantz, and Charles Kim, Plaintiffs are informed and believe that Defendants engaged in acts of vandalism to the property of James Frantz and Jodi Frantz, which they believed to have been perpetrated and intended by Defendant DARREN to intimidate James Frantz and Jodi Frantz and send a message.

c. In the preceding months to the extortion attempt, Jodi Franz was the victim of financial fraud in the summer of 2010. Ms. Frantz had caused two of her then current credit cards be de-activated by the issuers due to fraud alerts. The recent event happened in the week preceding the extortion attempt, while she was on vacation. Although Ms. Frantz believed Chaker is responsible for the fraud, she believed that she had no evidence. Ms. Franz reported the thefts to her credit card issuers. She had unauthorized charges on credit accounts from Bank of America, Union Bank, and Nordstrom. In the Summer of 2010, Mr. Frantz had also had his identity stolen, and used for credit card fraud. Although Mr. Frantz believed Chaker was responsible for the fraud, he believed that he had no evidence.

d. On December 22, 2010, at 2:54 a.m., Defendant DARREN caused to be sent a fax to the office of Charles Kim. The fax included inappropriate reference to the death of James Patrick Frantz II (the son of James and Jodi Frantz). Also faxed was a complete copy of the County of San Diego Investigative report #1 0-01098 that documented the medical examiners death investigation in that case. The fax reference the social security number of Jodi Frantz, and Medical Doctor (Dr. Christine Miller) who treated Jodi Frantz. The fax appears to threaten to publish

Complaint                                                                                    14

1275

Case 3:16-cv-02186-WQH-MDD Document 127-2 Filed 08/23/22 PageID.5506 Page 94 of
148
Case 3:16-cv-02186-WQH-MDD Document 17-2 Filed 08/29/18 PageID.155 Page 130 of 36

1 the social security number and "embarrassing" medical information if Attorney
2 Kim did not agree to Chaker's demands. Also included was an apparent implied
3 threat to file complaints with the state bar association against Charles Kim and
4 James Frantz if they did not comply with his demands.

5 28. **Victims Mateo**: Nicole Mateo was in a relationship with Defendant
6 DARREN, which resulted in the birth of a daughter. Plaintiff is informed and believes
7 that following the efforts to obtain child support, Defendant DARREN initiated a
8 campaign of harassment against Wendy Mateo and her husband Steven Mateo. Steven
9 Mateo is a deputy constable with the Harris County Constable Office, in Spring, Texas.
10 The Mateo's hired an attorney by the name of Cynthia Tracy to address Defendant
11 DARREN's conduct. In response, Defendant DARREN initiated a harassment campaign
12 that included sending sexually explicit photos of Nicole Mateo to the employers of the
13 Mateos, obtaining the email passwords of various Mateo accounts, and sending emails
14 containing sexually explicit material through such accounts. The Mateo's attorney,
15 Cynthia Tracy, was targetted by a blog page that also made false and defamatory
16 statements about her. Ultimately, Attorney Tracy declined to continue to represent the
17 Mateos due to the aggravation and the expense of dealing with Defendant DARREN.

18
19 **DEFENDANTS' EFFORTS DIRECTED AT PLAINTIFF HEREIN**

20 29. Plaintiff operates a website called FEARNOTLAW.COM, and has operated
21 that site since 2005. Fearnotlaw has maintains tens of thousands of unpublished decisions
22 from California's court of appeals. The unpublished decisions were taken directly from
23 the court of appeals website and posted *en masse*, at various times. There was no
24 intentional targeting of Darren Chaker or any other subject of the decisions.

25 30. Defendant DARREN in this case initially contacted Plaintiff to demand
26 removal of decisions posted concerning his cases that had been decided by the Court of
27 Appeals. One of those decisions was *Zaya v. Chaker*, California Court of Appeal Case
28 No. D049874. In *Zaya v. Chaker*, the Court of Appeal affirmed a trial court's imposition

1   of a five year restraining order against Mr. Chaker imposed pursuant to the Domestic

2   Violence Protection Act, Fam. Code, 6200 *et. seq.*   Defendant DARREN Chaker's letter

3   to Plaintiff of November 23, 2010 contained Ms. Zaya's original petition, which alleged

4   that Mr. Chaker posted bogus sex-service advertisements on Craigslist falsely attributed

5   to Ms. Zaya, and had threatened to post compromising photos and videos of Ms. Zaya

6   online if she testified against him in his felony assault-weapon case. Plaintiff did not

7   remove any of the appellate decisions from Fearnotlaw.

8          31.   Defendant DARREN thereafter initiated a campaign of harassment and

9   vandalism against Plaintiff McMillan and his family.  Usually during the holidays,

10  Plaintiff's family's cars would be vandalized.  Plaintiff's brother had the words

11  "fearnotlaw" scratched on the trunk of his BMW.  In another instance, the driver's side

12  mirror of Plaintiff's brother's truck was smashed.  On that instance, a neighbor that heard

13  the noise, saw a black SUV driving rapidly away.  Defendant DARREN owns a Black

14  Dodge Durango.  Plaintiff is informed and believes, and based thereon alleges, that

15  Defendant VANIA Chaker accompanied Defendant DARREN during that vandalism.

16         32.   Other members of Plaintiff McMillan's family were attacked as well.

17  Plaintiff's mother's car had acid poured on the trunk.  Plaintiff's father's car had its tires

18  slashed.  After each event, Mr. Chaker would send Plaintiff an e-mail wishing him

19  "happy holidays" or making some other statement.  It was clear to Plaintiff that Darren

20  Chaker was acknowledging the vandalism by his timing of his emails, and attempting to

21  send a message and intimidate Plaintiff.

22         33.   At one point, on or about November 23, 2010, Defendants came to Plaintiff's

23  home and delivered a letter to his mail box signed by Defendant DARREN.  The letter

24  once again demanded that Plaintiff remove the posts concerning Defendant DARREN 's

25  cases from Fearnotlaw.  Thereafter, Defendant DARREN sent Plaintiff McMillan e-mails

26  referring to his dogs – which indicated to Plaintiff that he had come to his house and

27  looked into his back yard.

28         34.  Because of Defendants' activities, Plaintiff McMillan and his family members

1  installed security cameras around their houses.  Plaintiff McMillan also installed security

2  cameras on the outside of the commercial building in La Mesa where Plaintiff TMLF has

3  its offices.

4      35.  Defendant DARREN also began posting matters about Plaintiffs on the

5  Internet.  Initially, he used his own domain names.  Later, he began using Plaintiff's name

6  under Google's "blogspot" service.  Through the years, clients have contacted Plaintiff

7  McMillan to let him know that they have seen the Defendant DARREN 's posts

8  concerning Plaintiff on the Internet.  Chaker's posts were troubling to Plaintiffs' clients.

9      36.  Postings on Internet gripe sites and consumer review sites began appearing,

10  the posters made negative comments, but used a pseudonym.  Plaintiffs are informed and

11  believe based upon the timing and the circumstances that Defendants were posting those

12  comments.

13      37.  Because Defendant DARREN had posted about Plaintiff on the Internet,

14  others that had conflicts with Defendant DARREN contacted Plaintiff for advice and

15  representation in dealing with Defendant DARREN .  Plaintiff has provided that

16  representation pro-bono, and advanced the expenses.

17      38.  Plaintiff ultimately represented Wendy Mateo, one of the Defendant

18  DARREN's victims, in *Chaker v. Mateo*, San Diego Superior Court case,

19  37-2010-00094816-CU-DF-CTL, Hon. Timothy B. Taylor, Judge presiding.  Wendy

20  Mateo is the mother of Nicole Mateo.  Plaintiff is informed and believes that Nicole

21  Mateo had a brief relationship with Darren Chaker, which resulted in the birth of their

22  daughter.  Plaintiff began representing Ms. Wendy Mateo, the grandmother of Darren

23  Chaker's child during the pendency of Darren Chaker's appeal of the judgment in the

24  *Chaker v. Mateo* case.  That appeal resulted in the published decision of *Chaker v. Mateo*,

25  209 Cal. App. 4th 1138 (2012).   Following that appeal, the Superior Court awarded

26  Plaintiffs attorneys fees.  Those attorneys fees awarded have been the subject of judgment

27  debtor examinations and orders from Judge Taylor as discussed below.

28      39.  Thereafter, Plaintiff began representing *Susan A*. in a paternity case filed in

---

Complaint                  17

the San Diego Superior Court entitled *Chaker v. A* (the "Paternity Case"). Ms. A had also been in a relationship with Mr. Chaker. Ms. A. sets out her experience with Chaker in her declaration dated July 11, 2013, a true and correct copy of which is attached hereto as **Exhibit 'A'** (**Under Seal**). Mr. Chaker claims that Ms. A.'s child, L, is the product of that relationship. Ms. A. disputes that Mr. Chaker is the father, biological or otherwise, of her child L.

a. On July 12, 2013, Plaintiff McMillan filed a document in the Paternity Case, which included statement from Leesa Fazal, State of Nevada Office of the Attorney General, who had provided her confidential investigative report for submission in the Paternity Case, signed on July 11, 2013. (**Exhibit 2, Submitted Under Seal**).

b. On July 22, 2013, at 8:45 a.m., Officer Fazal appeared in San Diego Superior Court, according to Plaintiff's subpoena to testify in the Paternity Case regarding the facts alleged in the above mentioned Declaration. Officer Fazal and Plaintiff McMillan appeared before the Superior Court, Judge Gerald Jessop, presiding. The court did not have time to hear the case in the morning, and ordered Ms. Fazal and Mr. Chaker back to court later that afternoon. As they exited the court, Defendant DARREN followed Ms. Fazal and Plaintiff McMillan a short distance, and walked at a quick pace with his mobile telephone in his hand and appeared to take video of them while laughing loudly. At that time, Ms. Fazal had not yet testified, and Defendant DARREN's behavior was purposefully threatening and an apparent effort to intimidate Officer Fazal, prior to her testimony.

c. When Plaintiff McMillan and Officer Fazal returned they were accompanied by licensed private investigator Richard Rivero. Following the hearing Defendant VANIA approached Richard Rivero in a rapid manner, within a couple feet, and asked him what he was doing there and demanded his name. Although he had not been called to testify, Rivero responded that he was a witness, he would speak to Defendant VANIA in the presence of court personnel, and attempted to pass her.

---

1    dormant.

2    g.  During his incarceration, Darren Chaker's mother Nicole Chaker appeared at

3    least once at a hearing in that case.

4    h.  Plaintiff is informed and believes, and based thereon alleges that in that interim

5    period Defendant DARREN was incarcerated. Also during that time, i.e., on or

6    about January 21, 2014, Plaintiff received at least one letter from Mr. Chaker that

7    appeared to have been sent via Defendant NICOLE. (**Exhibit 4, Submitted Under**

8    **Seal**).  The letter contained the following threat:

9    "You never considered the fact that due to your conduct your client may

10   suffer. I should remind you the First Amendment is a 2 way street and I

11   have the right to express my opinion as well."

12   i.  On February 2, 2014 Defendant NICOLE filed documents in the paternity case

13   on behalf Defendant DARREN, including executing a declaration in his name.

14   Within the letter to the Court attached to the declaration, Defendant NICOLE

15   repeats the implied threats to reveal Susan A's applications for government

16   benefits. (**Exhibit 5, Submitted Under Seal**).

17   j.  Because Mr. Chaker was designated a vexatious litigant, his case was dismissed

18   for his failure to obtain a pre-filing order.  Mr. Chaker has exhausted his appeals in

19   that matter.

20   40.  On or about September 18, 2014, during the pendency of the Paternity Case,

21   Plaintiff McMillan received an e-mail from Darren Chaker, a true and correct copy of

22   which is attached hereto as **(Under Seal) Exhibit 'B'.**   Within that letter, Mr. Chaker

23   threatens further actions against Plaintiffs unless he convinced his client Susan A to grant

24   him concessions in the paternity case.  Plaintiff has  excerpted the relevant portions below

25   (with redactions and substitutions to protect the privacy of third parties):

26   9/18/14

27   Time Sensitive – Reply Required by 8PM Today

28   Confidential Settlement Communication – California Evidence Code §
     1142

Dear Scott, S, and C,

This is a request to settle pending claims against C, and Susan A. First, allow me to clarify this letter is constitutionally protected communication.  " 'As a general rule, even if subject to some exceptions, what you may do in a certain event you may threaten to do, that is, give warning of your intention to do in that event, and thus allow the other person the chance of avoiding the consequences' "]. Equally well established is the fact that "[o]ne legitimate purpose of a demand letter is to intimidate." (Subrin & Main, The Integration of Law and Fact in an Uncharted Parallel Procedural Universe (2004) 79 Notre Dame L.Rev. 1981, 2003 (hereafter Subrin & Main).)

As you know the pending case concerning my son, L, Chaker v. A, San Diego Superior Court Case No. D543061 and, thankfully to Scott the case was stayed, in lieu of filing a motion to dismiss – since I had no right to personally appear in the case while in custody. Scott, I do thank you for the stay and that is why I never opposed the motion while in custody.

* **

To keep it simple, here's my offer:
* * *

　　* **I will remove all blogs I have control over concerning Scott or his firm, and <u>am able to remove the complaintsboard.com posting</u> and if unable to remove pissedconsumer.com**, I will pay up to $500 to have SEO performed to push down the links as I know these sites continue to hurt the practice. (I understand I have negative comments about me, however I do not need to impress clients with my reputation. **I can assure you at least one client a year doesn't call due to reviews – costing you and your family money**.)

　　* No blogs concerning S or C's company, have been posted, but various items have been set to self-publish in the event I am unable to access the blog and push back the self-publish date another two weeks.

In short I am agreeing to things a court would not order, but am trying to be amicable.

Scott, you once said to me "I win every time we go to court". I think you mischaracterize what winning is to me. In court, it is not the court ruling. It's the time spent away from your office. Taking up your time and associate's time. Taking food out of your kids mouth. Staying up late, or ignoring kids and wife while spending time on litigating the instant case. Costing you clients – at least one person a year doesn't call you based on my blogs – which have been updated recently, scott-mcmillan-law.blogspot.com. Your reputation and past performance, likely increases the likelihood of opposing counsel's decision to fight a pending case longer - which costs you more time and money. **Out of court, I have a few more victories than you and will always prevail in that respect, and win by having you and family spending money on cameras, watching the monitors, looking out the window, and drawing drapes – of course there's no proof I have not done a thing nor do I admit such, but if you think I am responsible, indeed I win every day.**
* * *

Complaint                                                           21

1  (**Exhibit 'B', Filed Under Seal**)

2  **Hacking Twitter and Unauthorized Access to Plaintiff McMillan's Paypal Account**

3  41.  Plaintiffs believe that Defendant DARREN Chaker has attempted to hack into

4  Plaintiff's twitter and paypal accounts.  Specifically,

5  a.  On October 22, 2014, Plaintiff McMillan received a notice from Paypal of

6  "unusual activity" on his account.  Plaintiff hadn't attempted to sign in to his

7  Paypal account at that time.  A true and correct copy of that email is attached

8  hereto as **Exhibit 'C'**.  Due to the timing of the notice, Plaintiff is informed and

9  believes that it was Darren Chaker that hacked into Plaintiff's account.

10  b.  On November 19, 2014, Plaintiff received a notice of a "suspicious sign in

11  detected on [his] twitter account."  Plaintiff hadn't attempted to sign in to his

12  twitter account.  A true and correct copy of that email is attached hereto as **Exhibit**

13  **'D'**.  Due to the timing of the notice, Plaintiff is informed and believes that it was

14  Darren Chaker that hacked his account.

15  42.  Following that threat of September 18, 2014, Mr. Chaker began posting

16  information on the scott-mcmillan-attorney.blogspot.com site that he operated that,

17  among other things, Plaintiff had molested his daughter. The first such statement

18  appeared on Thanksgiving Day, i.e., Thursday, November 27, 2014.   A copy of that post

19  is attached hereto as **Exhibit 'E.'**   Plaintiff  had not authorized Defendants to use

20  Plaintiff's name in any manner.  Plaintiff had not molested his daughter.  That webpage

21  has since been removed.

22  43.  In order to improve the likelihood of the search engines indexing his site to

23  Plaintiff's name, Defendant DARREN optimized that page, **Exhibit 'E'**, for search

24  engines with "labels" including "4760-Nebo, attorney-sex-offender, el-

25  cajon-sex-offender, la-mesa-sex-offender. Rebecca-McMillan, scott-mcmillan-law,

26  www.mcmillanlaw.us."

27  44.  Mr. Chaker also operated a Blogger site at

28  http://mcmillanlawfirm.blogspot.com/.  Plaintiff had not authorized Defendant DARREN

to use the firm's name in this manner.  He published similarly false, scandalous, libelous material on that site.

45.  On or about November 28, 2011, Defendant DARREN Chaker posted on the Blogger site at scott-mcmillan-attorney.blogspot.com, a post entitled "Maura Larkins Linked to Sex Abuse."  Within that post Chaker repeats his false statements about Plaintiff, and also recited a completely fabricated association between Plaintiff  and Ms. Larkins, who is another individual with whom Mr. Chaker has conflict. A true and correct copy of that post is attached hereto as **Exhibit 'G'**.

<div align="center">

**Spoofing Emails**

</div>

46.  On December 3, 2014, Plaintiff received a "spoofed" or bogus email that purported to have been sent from Plaintiff's own e-mail address "scott@mcmillanlaw.us"

a.  The email stated:

"Scott McMillan and family are child molesters per a recent report, http://scott-mcmillan-law.blogspot.com/2014/11/scott-mcmillan-la-mesa.html"

b.  A true and correct copy of the email is attached as **Exhibit 'H.'**

c.  A true and correct copy of the email with the header is attached as **'I'.**

<div align="center">

**Google Places**

</div>

47.  On December 4, 2014, a "Darren C." posted a 2 star review for the McMillan Law Firm, APC on Google places, wherein he stated:

"I wish I knew of his interests in children, http://scott-mcmillan-law.blogspot.com/2014/11/scott-mc."

a.  A screen shot of Plaintiff's administration page for Google Places is attached hereto as **Exhibit 'J'**.

b.  That post was later deleted.   In light of the timing of that e-mail, the use of the name "Darren C.", and that the identical content was posted on his blogspot sites, Defendant DARREN was the poster.

48.  Defendant DARREN. Chaker sent e-mails to many members of the local legal community, accusing Plaintiff of molesting his  daughter.  A copy of one such email

<div align="center">

Complaint

</div>

<div align="right">

23

</div>

dated December 6, 2014 is attached hereto as **Exhibit 'K'**.  That e-mail was sent to

Andrew Griffin, an attorney for an opposing party in a bankruptcy case where Plaintiff

represented a creditor, who in turn, forwarded the e-mail to Plaintiff on December 8,

2014.

49.  On December 22, 2014, at 1:57 a.m., Defendant DARREN sent Plaintiff an e-

mail with the subject line "Pending Paternity Case". A copy of that email is attached

hereto as **Exhibit 'L.'**

50.  On December 23, 2014, at approximately 10:08 a.m., Plaintiff received an e-

mail from Defendant DARREN Chaker entitled "Request to See Son."  A copy of that

email is attached hereto as **Exhibit 'M'.**

**Threats to E-mail Colleagues in the San Diego East County Community**

51.  On December 23, 2014, Plaintiff received an e–mail from Defendant

DARREN where he stated:

> "Mr. McMillan, the reported conduct I have found is very improper and
> disgusting. I have been forced to notify numerous members of the bar about
> my blog concerning your firm, most recently the Foothills Bar Association,
> and will start naming your daughter, I believe a former Ms. El Cajon, as the
> likely victim. I hope you have ceased your conduct and notice to hundreds
> of people has done the public some good.
>
> Dear XXXXXX,
>
> Sex offender. As a member of the bar and likely parent, I would hope notice
> of a report concerning La Mesa Attorney Scott McMillan, who also
> operates McMillan Academy of Law without a single applicant/graduate,
> http://campus.lawdragon.com/schools/mcmillan-academy-of-law/ was
> reported to take part in sexual molestation of a minor. See,
> http://scott-mcmillan-law.blogspot.com/2014/11/scott-mcmillan-la-mesa.ht
> ml
>
> The report provides great detail and hope you pass this email along, as I
> have distributed it to 200 attorneys in San Diego. Scott McMillan is also a
> documented family friend of Kenneth Bourke who was also arrested for
> child molestation – see report -
> http://scott-mcmillan-law.blogspot.com/2014/09/scott-mcmillan-molest-la-
> mesa.html
> Happy Holidays to all.
> Darren Chaker"

a.  A copy of that email is attached hereto as **Exhibit 'N'**.

52.  On or about June 8, 2015, Google removed the scott-mcmillan-attorney.

1   blogspot.com site, which defendants had created without Plaintiffs authorization.

2       53.  On or about June 16, 2015, Google removed the mcmillanlawfirm.

3   blogspot.com site, which defendants had created without Plaintiffs authorization.

4                              **COMPLAINTSBOARD.COM**

5       54.  Since 2011 and through the present, a person that Plaintiff McMillan believes

6   to be Defendant DARREN based on identical content posted on his website and Mr.

7   Chaker's statements above of September 18, 2014 that he is "**able to remove the**

8   **complaintsboard.com posting**", has posted derogatory and defamatory statements about

9   Plaintiff on the Internet at:

10  http://www.complaintsboard.com/complaints/the-mcmillan-law-firm-la-mesa-c571484.ht

11  ml#comments

12      a.  A true and correct copy of that post as published is attached hereto as **Exhibit**

13          **'O.'**

14      b.  The poster is identified as "Tracy Law Houston."  Cynthia Tracy, Attorney at

15          Law, P.C., a family law attorney in Houston, Texas, formerly represented Nicole

16          Mateo in the custody and child support case against Darren Chaker.

17      55.  Despite the removal of the blogspot sites, on August 23, 2015, a poster using

18  the name and search term "scott-mcmillan-la-mesa" posted the following as a comment to

19  the post at http://www. complaintsboard.com/complaints/the-mcmillan-law-firm-la-mesa-

20  c571484.html#comments

21      a.  "I located the police report about Scott McMillan, La Mesa, Attorney reportedly
        molesting children. I also found he operates his own law school out of a small, run
22      down office near the train tracks, but in the same breath says he's a leading law
        firm. With this reputation, I cannot imagine such is true."
23      b.  Attached as an image to the comment, he re-posted his November 27, 2014

24      post, i.e., the content at Exhibit 'B' herein, the repost of which is attached at

25      **Exhibit 'P.'**

26      56.  On September 16, 2015, a poster using the name and search term

27  "mcmillan-law-firm-la-mesa" posted the following as a comment to the post at

28  http://www.complaintsboard.com/complaints/the-mcmillan-law-firm-la-mesa-c571484.ht

---

Complaint                                                              25

ml#comments

a. "Scott McMillan, McMillan Law Firm, sued the hardworking Sheriff over his Facebook Account. The law settled for about nothing. It is unfortunate law enforcement need to pay out money to defend such nuisance lawsuits, when that money should be going to hiring more officers, and buying newer equipment. With about 60 loses in the Court of Appeal docket, astonishing he is still in office."

b. That case – *Karras v. Gore*, U.S. D.C. So. Dist. Cal., 14cv2564-BEN-KSC – was settled for a payment of attorneys fees plus the token $20. Thus, the above statement is false, as the Sheriff paid attorneys fees and agreed to change practices.

c. Attached as an image to the comment, he posted a partial news article, a copy of which is attached as **Exhibit 'Q.'**

57. Also on September 16, 2015, a poster using the name and search term "mcmillan-law-firm-la-mesa" posted the following as a comment to the post at http://www.complaintsboard.com/complaints/the-mcmillan-law-firm-la-mesa-c571484.html#comments

a. "McMillan Academy of Law, run by Scott McMillan appears to have not had a single student go through his law firm, where the class is shared in the same space as the attorney, oh and also Dean McMillan (also an attorney working out of same office. According to LawDragon, no one has ever graduated or even applied to that law school."

b. Attached as an image to the comment, he posted a webpage print-out, a copy of which is attached as **Exhibit 'R.'**

58. Also on September 16, 2015, a poster using the name and search term "mcmillan-law-firm-la-mesa" posted the following as a comment to the post at http://www.complaintsboard.com/complaints/the-mcmillan-law-firm-la-mesa-c571484.html#comments

a. "McMillan sued by Yelp! for posting his own reviews. Read the story in detail, sad set of circumstances, especially when you need to create your own reviews." In truth and in fact, Plaintiffs had not posted their "own reviews." Plaintiffs had represented Julian McMillan, who had been sued by Yelp.

b. Attached as an image to the comment, he posted a news article, a copy of which is attached as **Exhibit 'S.'** Plaintiff did not post his own reviews. Indeed, in that

1    case, Plaintiff was not accused by Yelp of posting comments. Rather, Plaintiff

2    represented another attorney, Julian McMillan, in the case. Chaker edited out the

3    part that would have otherwise explained that Plaintiff was not the Defendant

4    DARREN in that action, but rather just the attorney. Contrary to Defendants'

5    suggestion, Plaintiff was partially successful at the time of the posting of the

6    article. Plaintiff won a motion to change venue, and counsel for Yelp paid

7    Plaintiffs attorneys fees.

8        59.  Most recently, on February 9, 2016, a poster using the name and search term

9    "mcmillan-law-firm" posted the following as a comment to the post at

10   http://www.complaintsboard.com/complaints/the-mcmillan-law-firm-la-mesa-c571484.ht

11   ml#comments

12       a.  "Williams v. The Superior Court of San Diego County/Nordstrom, Inc., Court
         of Appeal Case Number D068765. shows Scott McMillan, McMillan Law Firm in
13       Las Mesa, LOST ANOTHER case. This one where Nordstrom is vigorously
         defending itself against allegations of attorney, law professor, and law school dean
14       (Yes, Scott McMillan is all three of those titles since he runs a law school,
         McMillan Academy of Law, out of two story office near the train tracks. Despite
15       not a single student has graduated, or appears to have attended, no one has taken
         the bar exam either. Nonetheless, this is another example of Scott McMillan losing
16       another case - although he claims to be a "leading" San Diego attorney."

17       b.  Attached as an image to the comment, the docket from , a copy of which is

18       attached as **Exhibit 'T.'**

19       c.  This statement is also false, as the court of appeals allowed the appeal to

20       proceed in light of the law regarding final, appealable orders.

21       d.  Further, the Court entered an order of stipulated reversal of such appeal.

22       60.  On or about March 27, 2016, Plaintiff McMillan identified a post using

23   Plaintiff TMLF's logo and created in a manner that suggested it was posted by Plaintiff or

24   someone else from his  firm.  Plaintiff did not authorize Defendant DARREN or anyone

25   else to use the McMillan Law Firm's logo in this manner.  The latest entry was posted on

26   or about December 17, 2015.  Specifically, a poster using the name and search term

27   "scott-mcmillan-law-firm-la-mesa" setup a bogus page entitled "The McMillan Law

28   Firm Customer Care Service" using The McMillan Law Firm, APC logo at

1   http://www.complaintsboard.com/the-mcmillan-law-firm-b121166

2         a.   A true and correct copy of that page is attached hereto as **Exhibit 'U.'**

3   Notably, the bogus "customer care service" repeats the same false allegations as

4   previously made by Chaker. i.e., that Plaintiff molested his  daughter.

5         b.   On December 8, 2015 – Plaintiff's birthday – Mr. Chaker emailed Plaintiff the

6   following statement:

7   Good afternoon Scott,

8   I have been unable to locate a TM/Copyright for the domain
    mcmillanlaw.us or for your law firm with the USPTO or U.S. Copyright
9   Office. If there is such, kindly advise prior to 7PM today. If I do not receive
    a response, it will be presumed there is no such TM/Copyright. Prior to
10  posting additional material, I will extend this courtesy to you.

11  Also, I have updated the material on
    http://scott-mcmillan-law.blogspot.de/p/scott-mcmillan-attorney-la-mesa.ht
12  ml

13  I have also copied Maura Larkins on this email.

14  Best regards,

15  Darren"

16        c.   A true and correct copy of the email dialog that occurred December 8, 2014, are

17  attached as **Exhibit 'V'.**

18        **d.**   Plaintiffs had not authorized the use of their name, the logo, or creation of a

19  customer care site on Complaintsboard.com.

20        61.  Following Mr. Chaker's posts to complaintsboard.com, individuals solicited

21  Plaintiffs purporting to be able to have the ability to remove the posts.  They wanted to

22  charge Plaintiffs  $4,800 to remove defendants posts.

23                        **PISSEDCONSUMER.COM**

24        62.  Since 2011 and through the present and as late as February, 2016, a person

25  using a pseudonym, that Plaintiff McMillan believe to be Defendant DARREN, or the

26  other defendnats, based on the content and Defendant DARREN's statements above of

27  September 18, 2014 referring to the "pissedconsumer.com" website, has posted

28  derogatory and defamatory statements about Plaintiff on the Internet at the website

Complaint                                                28

domain "PISSEDCONSUMER.COM":

63. A Google search of "scott mcmillan site:pissedconsumer.com" returns some 3200 results. Most of those results appear to have been posted in 2015 and 2016. Plaintiffs believe that defendants have posted all of those entries. They have done so either anonymously or using some variation of the key words: "The Mcmillan Law Firm - La-Mesa-Attorney-Scott-McMillan"

64. Unlike Complaintsboard.com, Pissedconsumer.com does not remove the information posted by persons such as Defendant DARREN. Specifically, the terms of service of Pissedconsumer states:

> "5. Removal of Information
> By posting information on PC, *you understand and agree that the material will not be removed even at your request*. You shall remain solely responsible for the content of your postings on PC."

http://www.pissedconsumer.com/tos.txt.

65. The Pissedconsumer.com post that Chaker started on November 3, 2011, is attached hereto as **Exhibit 'W'**. Within that post he misrepresents Plaintiff's win/loss ratio.

66. On August 23, 2015, Defendant DARREN made the false allegation, accusing Plaintiff of child molestation, a copy is attached hereto as **Exhibit 'X'**.

67. On December 4, 2015, Defendant DARREN posted a review entitled "The Mcmillan Law Firm - Scott McMillan Law Firm - La Mesa - Malpractice" which falsely accuses Plaintiff of malpractice, attached hereto as **Exhibit 'Y.'** Chaker falsely states that an appeal in *Williams v. Nordstrom, Inc.* was to be dismissed, and termed it "malpractice." In fact, the appeal was not dismissed and ultimately resulted in a stipulated order of reversal.

68. On February 11, 2016, Defendant DARREN posted a review "The Mcmillan Law Firm - Scott McMillan Law Firm La Mesa," which is attached hereto as **Exhibit 'Z.'** Chaker made statements that were knowingly false as he stated that the "the Court of Appeal DENIED the petition after forcing the defendant incur huge amounts of attorney fees." In fact, the defendant did not file a response. Chaker had no basis to suggest that

1 attorneys fees were incurred resulting from the filing of the petition.  Chaker further

2 falsely stated Plaintiff's record as "almost 80 under his belt and a hand full of wins."

3 **Current Posts**

4 69.  To date Defendant DARREN continues to post material on his website in a

5 manner that is intended to optimize his websites to respond to search engine indexes with

6 his  name.  Specifically, he continues to use the tags "mcmillan-associates-la-mesa",

7 "scott-mcmillan-la-mesa":

8 70.  On March 29, 2016, Plaintiff accessed

9 http://darren-chaker.blogspot.com/search/label/scott-mcmillan-la-mesa and retrieved the

10 attached article, a true and correct copy of which is attached hereto as **Exhibit 'AA'**

11 which incorporates the use of the tags.

12 71.  On March 29, 2016, Plaintiff accessed http://darrenchaker.us/ and retrieved

13 the attached article bearing a date of December 8, 2015, a true and correct copy is

14 attached hereto as **Exhibit 'BB'**, which incorporates the use of the tags.

15 72.  On March 29, 2016, Plaintiff McMillan accessed http://darrenchaker.org/ and

16 retrieved the attached article bearing a date of January 23, 2016, a true and correct copy is

17 attached hereto as **Exhibit 'CC'**, which incorporates the use of the tags.

18 **Defendant DARREN's Use of Pseudonyms**

19 73.  Plaintiff is informed and believe that Darren Chaker also uses the pseudonym

20 "Luis Perdomo."  On March 29, 2016, Plaintiff accessed

21 https://plus.google.com/1048021677 37415969641/posts/HySqAKY7jYR and retrieved

22 the attached page, a true and correct copy is attached hereto as **Exhibit 'DD'**,

23 incorporating the same allegations and artwork published by Defendant DARREN

24 Darren Chaker.

25 **Defendant DARREN admits that he knows that he is barred**

26 **from posting defamatory material.**

27 74.  On January 22, 2016, Defendant DARREN  Chaker appeared for a judgment

28 debtors exam. He had been previously ordered to produce the names of the domains that

1    he holds.   On the record in the *Chaker v. Mateo* case, he admitted that he had such logins

2    and that his use of those could result in the revocation of his supervised release.

3    [Transcript, p. 9] Defendant DARREN was also ordered to provide the identifying

4    information as to Internet domains that he owns.  A copy of relevant portions of the

5    transcript is attached hereto as **Exhibit 'EE'**.

6         75.  Defendant DARREN did not appear as ordered on March 11, 2016, in the

7    Superior Court to provide the information.  As recited in the transcript of January 22,

8    2016, Defendant DARREN was aware that he was required to appear at the continued

9    examination. [**Exh. EE, page 31**]

10        76. On March 11, 2016 Defendant DARREN failed to appear for his continued

11   judgment debtor's examination.  Judge Taylor issued a bench warrant for his appearance,

12   which remains outstanding.  A copy of that bench warrant is attached hereto as **Exhibit**

13   **'FF'.**

14        77.  On March 11, 2016 the Superior Court in the *Chaker v. Mateo* case has

15   ordered the appointment of a receiver to take possession of Mr. Chaker's personal

16   property, including his domain names for ultimate sale in order to satisfy the judgment.

17   Despite orders to do so, Defendant DARREN has not complied with the orders of the

18   Superior Court.

19        **Defendant DARREN has created false accounts with Plaintiff's name**

20        78.  Defendant DARREN created accounts using Plaintiff's name and the name of

21   the McMillan Law Firm.  One of those accounts is on Slideshare.net, and reflected on

22   **Exhibit 'GG'.**  Plaintiff surmise that he has prepared that account in order to upload his

23   defamatory material that he intends to falsely attribute to him.  Plaintiff believes that

24   Defendant DARREN made that account because it is associated by Slideshare with an

25   account under the name of David Gingras, another attorney who successfully represented

26   a victim of Defendants and whom Chaker has also targeted for harassment.

27        **Defendants have inflicted damage upon both Plaintiffs and their clients.**

28        79.  Attorneys rely upon their reputation in the community and before the courts

1    that they practice in.  Defendant DARREN's outrageous lies which he has published have

2    injured Plaintiffs' practice.  Opposing counsel in other, unrelated cases have mentioned

3    the existence of the posts. Clients have mentioned the existence of the posts and their

4    content.   Plaintiff McMillan believes that jurors that Plaintiff has tried cases in front of

5    have accessed the posts and taken them into account in determining the cases.  Thus,

6    Defendants threats made on September 18, 2014 have borne out. Plaintiffs have invested

7    substantial time in developing Plaintiff McMillan's reputation as a zealous advocate for

8    his  clients, and remaining consistent to the duties of an attorney as set forth in Business

9    and Professions Code section 6068, and particularly that set forth in subsection (h):

10          "Never to reject, for any consideration personal to himself or herself, the

11          cause of the defenseless or the oppressed."

12   (Bus. & Prof. Code 6068(h).)

13          80.  Susan A. has been, prior to representation by Plaintiffs herein, defenseless and

14   oppressed by Defendants.

15          81.  Wendy Mateo was defenseless and was oppressed by Defendants.

16          82.  Plaintiff understood that Defendants could resort to attacks of Plaintiff

17   McMillan's  character when Plaintiff continued to represent Susan A despite Defendants

18   threats to engage in libel against him. Defendants then performed on their threats, and has

19   engaged in the forewarned attacks against Plaintiff –  and later Plaintiff's family members

20   – following January 21, 2014, and September 18, 2014.

21                              **FIRST CLAIM FOR RELIEF**

22             Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1962(c)

23                                  (Against All Defendants)

24          83.   Plaintiffs repeat and reallege the averments contained in paragraphs 1-82 as

25   though fully set forth herein.

26          84.  On July 22, 2013 Defendants DARREN and VANIA used threats and violence

27   in an attempt to intimidate a witness to the Paternity Case.

28          85.  On January 21, 2014, Defendants DARREN and NICOLE  committed

Case 3:16-cv-02186-WQH-MDD   Document 127-2   Filed 08/29/16   PageID.3584   Page 89 of 38
148
Case 3:16-cv-02186-WQH-MDD   Document 127-2   Filed 09/23/22   PageID.5524   Page 112 of
148

1    extortion under 18 U.S.C. § 1961(1), by threatening to reveal alleged reporting

2    discrepancies to tax authorities contained in private and confidential tax information that

3    he had obtained regarding her.  On January 21, 2014, Defendant DARREN was

4    incarcerated outside the State of California, and was unable to send the extortionate letter,

5    which was sent by certified mail, from San Diego.

6        86.   On or about September 14, 2014, while Defendant DARREN was under

7    home release Bureau of Prisons custody, Defendant DARREN committed extortion under

8    18 U.S.C. § 1961(1) by threatening to stalk and defame Plaintiff if he continued to

9    represent Susan A in the Paternity Case consistent with Plaintiff's professional duties

10   owed to his client. Defendant DARREN  was engaged in threatening behavior, i.e, to

11   defame and harass Plaintiff to deprive Plaintiff of his peace of mind, his enjoyment of the

12   proceeds of the goodwill attributable to his name and reputation, if Plaintiff did not

13   consent to Defendant DARREN 's unlawful demands.

14       87.  Defendants are an "enterprise" under U.S.C. § 1961(4).

15       88.  Defendants have engaged in a pattern of racketeering activity as that term is

16   used in U.S.C. § 1961(5).

17       89. Defendants have violated 18 U.S.C. § 1962, which states:

18       "(c) It shall be unlawful for any person employed by or associated with any

19        enterprise engaged in, or the activities of which affect, interstate or foreign

20        commerce, to conduct or participate, directly or indirectly, in the conduct of

21        such enterprise's affairs through a pattern of racketeering activity or

22        collection of unlawful debt."

23       90.  The above conduct caused injury to Plaintiffs' property and business. It made

24   it difficult for Plaintiffs to obtain clients and to recruit employees, the conduct impaired

25   Plaintiffs' reputation in the legal community,  caused lost income that Plaintiffs expected

26   to be paid, and were not, and caused Plaintiff McMillan vexation and diverted his

27   attention from his personal and professional obligations.

28       91.  The above violations were made in furtherance of financial gain.

92. Defendants had a discernable structure apart from the predicate acts, i.e., they are biologically related.

93. The acts of Defendants herein were intended to unlawfully compel the targets of the Defendants to take actions which were against their own interests, in order to avoid the dissemination of information that was false, that was private, and that would stigmatize the Defendants' targets, including Plaintiffs herein.

94. The acts of Defendants as described herein, were willful and malicious in that Defendant DARREN intentionally and deliberately retained monies owed to Plaintiff, and in order to avoid the negative consequences of Plaintiffs' advocacy, Defendants and each of them engaged in extra-judicial conduct intended to dissuade Plaintiff from representing his clients Wendy Mateo and Susan A.

95. As a result of Defendants bad acts and as Defendants' objective in committing such acts, Plaintiffs were damaged including but not limited to damages from losing prospective clients and the revenue expected from them, Plaintiffs' trademarks are impaired as a result, and other damages. Plaintiffs' damages were severe and extensive, resulting in losses to Plaintiffs in an amount according to proof at trial.

96. Plaintiffs requests damages in an amount not less than $2,000,000, in an amount to be trebled and attorneys fees according to 18 U.S.C. § 1964(c).

97. Plaintiff requests injunctive relief to prevent prevent and restrain violations of section 1962 by issuing appropriate orders, including, but not limited to: ordering Defendants divest themselves of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of Defendants, including, but not limited to, prohibiting Defendants from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons, including Plaintiff herein.

98. Plaintiffs requests that the Court revoke Defendant DARREN Chaker's supervised release, and order him to remove the posts, or execute such documents that

would compel the removal of those posts, all of which he has published in contempt of the Court's order for supervised release.

99.  Plaintiffs requests that the Court also issue an order to Darren Chaker requiring him to request the removal of his posts from the Internet forums in a form that may be published to the third parties, i.e., Pissedconsumer.com and Complaintsboard.com, that have published defendants' harrassing and defamatory posts. Plaintiff request that the Court make a finding that such posts are contrary to the conditions of Defendant DARREN's supervised release and thereby unlawful.  With such a finding, and an order that Chaker remove those post, those sites would willingly do so.

100.  Plaintiffs requests that the Court also issue an order with findings such that can be published to those search engines that have indexed the posts, i.e., Google, Yahoo, and Bing, and findings that such posts were placed by Defendant DARREN contrary to the Judgment in this case and the Court's terms of Defendant DARREN 's supervised released.   And that Defendant DARREN be ordered to request the removal of such posts from such search indices. Plaintiff's hope and expectation is that those third parties would be persuaded to remove the posts from the respective index.

**SECOND CLAIM FOR RELIEF**

(Against All Defendants, Racketeer Influenced and Corrupt Organizations Act,

18 U.S.C. § 1962(d))

101.  Plaintiffs repeat and reallege the averments contained in paragraphs 1-82, and 84 through 100 as though fully set forth herein.

102.  Defendants knowingly agreed to facilitate a scheme that included the operation of a RICO enterprise.

103.   The conspiracy was inter-familial.

**THIRD CLAIM FOR RELIEF**

(Civil Extortion - Against Defendants DARREN and NICOLE)

104.  Plaintiffs repeat and reallege the averments contained in paragraphs 1-82, and 84 through 100, and 102 through 103, as though fully set forth herein.

105.  Defendants conduct was unlawful as a matter of law, in that Defendant DARREN had been forbidden from types of expressive conduct by the terms of his Pre-Trial release, the terms of his confinement and Bureau of Prisons regulations, and the terms of his supervised release.  Defendant NICOLE was aware of these restrictions.

106.  Extortion is the obtaining of property from another, with his consent, or the obtaining of an official act of a public officer, induced by a wrongful use of force or fear, or under color of official right. (Penal Code § 518.)

107.  Defendants attempted to obtain property from Plaintiffs, i.e., the right to continue to practice law consistent with the California Business and Professions Code, and the California Rules of Professional Conduct, with respect to the advocacy on behalf of Susan A..

108.  Defendants attempted to obtain property from Plaintiffs, i.e., the right to collect on a debt due and owing by virtue of the fee award in the *Chaker v. Mateo* action.

109.  Defendants attempted to obtain property from Plaintiffs, i.e., the right to continue to collect and publish cases through the website FEARNOTLAW.COM.

110.  Defendants attempted to obtain an official act of a public officer, i.e., a judge, through Plaintiffs' clients acquiesence.

111.  Defendants wrongfully attempted to induce fear as that term is used in Penal Code section 519, which provides in pertinent part under the heading "threats":

"Fear, such as will constitute extortion, may be induced by a threat of any of the following:

1.  To do an unlawful injury to the person or property of the individual threatened or of a third person.

2.  To accuse the individual threatened, or a relative of his or her, or a member of his or her family, of a crime.

3.  To expose, or to impute to him, her, or them a deformity, disgrace, or crime.

4.  To expose a secret affecting him, her, or them.

* * *

(Penal Code § 519)

112. Defendants threats were both express, and were implied by the contents of the various writings and the surrounding circumstances.

113. Defendants transmitted the threats comprising extortion.

114. The Statutes of Limitations regarding the bringing of the present claims have been tolled due to Defendants' absence from the State of California according to California Code of Civil Procedure section 351:

> "If, when the cause of action accrues against a person, he is out of the state, the action may be commenced within the term herein limited, after his return to the state, and if, after the cause of action accrues, he departs from the state, the time of his absence is not part of the time limited for the commencement of the action."

(Cal. Civ. Proc. Code § 351.)

115. As a direct and proximate result of the acts of Defendants as alleged in the Third Cause of Action above, Plaintiffs were injured. Plaintiff McMillan suffered economic damage, expense, and humiliation, including, but not limited to, emotional upset, anxiety, mental suffering, and damage to his reputation. Plaintiff McMillan also suffered loss of time. Plaintiff McMillan is therefore entitled to compensatory damages in an amount which will compensate for him all the detriment proximately caused by Defendants' acts, whether foreseeable or not, according to proof at time of trial, in accordance with Civ. Code § 3333.

116. Plaintiff TMLF was damaged by the loss of goodwill resulting from the false statements published by Defendants' "making good" on the threats. Plaintiff TMLF was damaged by the lost advertising expenses which were negated by the false statements published by defendants.

117. Defendants' conduct was malicious, oppressive and/or fraudulent within the meaning of California Civil Code § 3294, thereby entitling Plaintiffs to an award of punitive damages in an amount according to proof at time of trial.

- o O o -

Complaint                                                                    37

1298

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

1. For an Order enjoining Defendants, their agents, and those acting in concert or conspiracy with them, temporarily during the pendency of this action and permanently thereafter from and further violation of 18 U.S.C. §§ 1961 et seq.;

2. For compensatory damages according to proof;

3. For an award of treble damages pursuant to 18 U.S.C. § 1964;

4. For attorneys' fees pursuant to 18 U.S.C. § 1964 or as otherwise provided by law;

5. For punitive and exemplary damages pursuant to Cal. Civil Code § 3294 or as otherwise provided by law;

6. For an award of costs of suit;

7. For an award of pre-judgment interest and post-judgment interest in the maximum amount permitted by law;

8. For such other and further relief as the Court deems just and proper.

Dated: August 24, 2016                    The McMillan Law Firm, A.P.C.

                                          /s/ Scott A. McMillan

                    BY:    _____

                                          Scott A. McMillan
                                          Attorney, In Propria Persona, and on behalf of
                                          Plaintiff The McMillan Law Firm, A.P.C.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all causes of action so determinable.

Dated: August 24, 2016                    The McMillan Law Firm, A.P.C.

                                          /s/ Scott A. McMillan

                    BY:    _____

                                          Scott A. McMillan
                                          Attorney, In Propria Persona, and on behalf of
                                          Plaintiff The McMillan Law Firm, A.P.C.

Complaint                                                    38

JS 44 (Rev. 07/16)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

SCOTT A. MCMILLAN, an individual, THE MCMILLAN LAW FIRM, APC, a California professional corporation

## DEFENDANTS

DARREN D. CHAKER, NICOLE CHAKER, VANIA CHAKER

**(b)** County of Residence of First Listed Plaintiff    San Diego County, CA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    San Diego County, CA
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Scott A. McMillan, CBN 212506
The McMillan Law Firm, APC, 4670 Nebo Drive, Suite 200, La Mesa, CA 91941, Telephone (619) 464-1500 x 14

Attorneys *(If Known)*

'16CV2186 JM   MDD

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government   Plaintiff

☒ 3   Federal Question    *(U.S. Government Not a Party)*

☐ 2   U.S. Government   Defendant

☐ 4   Diversity    *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☒ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from Another District *(specify)*    ☐ 6 Multidistrict Litigation - Transfer    ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
18 U.S.C. 1961(1) and 1962(c), (d)

Brief description of cause:
Extortion

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $   6,000,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE   Larry A. Burns    DOCKET NUMBER   15cr7012-LAB

DATE
08/24/2016

SIGNATURE OF ATTORNEY OF RECORD
/s/ Scott A. McMillan

**FOR OFFICE USE ONLY**

RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE

Print    Save As...    1300    Reset

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**    **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)**    **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)**    **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**    **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**.** (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.**    **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**    **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.**    **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**    **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.**    **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**    **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

EXHIBIT C



Scott McMillan <scott4670@gmail.com>

---

## Important: We noticed unusual activity in your PayPal account (Ref #PP-003-483-729-067)

---

**service@paypal.com** <service@paypal.com>
To: Scott McMillan <scott4670@gmail.com>

Wed, Oct 22, 2014 at 1:46 AM



Reference #PP-003-483-729-067

 **Account Status Update**
Change your password and security questions

**Response required**
Upon receipt

## Log in to your PayPal account as soon as possible

Dear Scott McMillan,

Recently, there's been activity in your PayPal account that seems unusual compared to your normal account activities. Please log in to PayPal to confirm your identity and update your password and security questions.

To help protect your account, no one can withdraw money or send money. In addition, no one can close your account, send refunds, remove credit cards, remove any bank accounts, add a bank account, add a card, or add money to your account.

### What's going on?

We're concerned that someone is using your PayPal account without your knowledge. Recent activity from your account seems to have occurred from a suspicious location or under circumstances that may be different than usual.

### What to do

Log in to your PayPal account as soon as possible. We may ask you to confirm information you provided when you created your account to make sure you're the *account holder. We'll then ask you to change your password and security questions.*

You should also do the following for your own protection:

- **Check your account details** (address, email, phone, etc.) to make sure they're accurate.
- **Review your account activity** to make sure you recognize the transactions made recently.

Exh C
1 of 2

Case 16-02026-JMC MDD Document 1-2 Filed 08/23/16 PageID.2534 Page 122 of

Gmail - Important: We noticed unusual activity in your PayPal account (Re...    148 ://mail.google.com/mail/u/0/?ui=2&ik=a63ed65a75&view=pt&q=pa...

- **Report any unknown or unauthorized activity.** Go to the Resolution Center and click **Dispute a Transaction.**

**What's next?**

Let's work together to restore your account. After you complete all of the tasks, we should respond within 72 hours.

Thanks for choosing PayPal. If you need help or have any questions, call us at 1-888-221-1161, 4:00 AM to 10:00 PM Pacific Time Monday through Friday, 6:00 AM to 8:00 PM Pacific Time Saturday and Sunday, Please note that hours of operation may vary on holidays.

Sincerely,
PayPal

Help Center | Security Center

This email was sent by an automated system, so if you reply, nobody will see it. To get in touch with us, log in to your account and click "Contact Us" at the bottom of any page.

Copyright © 2014 PayPal, Inc. All rights reserved. PayPal is located at 2211 N. First St., San Jose, CA 95131.

PayPal Email ID PP1779 - 766e109b96947

**Exh C**
**2 of 2**

12/1/2014 3:50 PM

# EXHIBIT D



Scott A McMillan <scott@mcmillanlaw.us>

## Suspicious sign in detected on your Twitter account

**Twitter** <password@twitter.com>                                        Sat, Nov 29, 2014 at 2:15 PM
To: Scott A McMillan <scott@mcmillanlaw.us>



Hi Scott A McMillan,

We noticed that someone recently tried to sign in to your Twitter account (@scott4670) from an unusual device or location.

If this wasn't you, change your password now: https://twitter.com/account/begin_password_reset

If this was you, confirm your identity by using this temporary code:
**rdc2hjxc**

You can also enter this code where you would normally enter your password when you sign in. Once you confirm your identity, you can continue using your current password.

If you're having trouble, you can report a problem.

Thank you,
The Twitter Security Team

For more help, go to the Twitter Help Center.
If you received this message in error and did not sign up for Twitter, click not my account.
Please do not reply to this message; it was sent from an unmonitored email address. This message is a service email related to your use of Twitter.
Twitter, Inc. 1355 Market St., Suite 900 San Francisco, CA 94103

Exh D
1 of 1

# EXHIBIT E

LAWSUIT ABUSE

www.MAOL.com    Scott McMillan Attorney La Mesa

Thursday, November 27, 2014

## Scott McMillan Suspect in Molestation

Scott McMillan – McMillan Law Firm of La Mesa, and who operates the McMillan Academy of Law out of his office without a single graduate passing the bar, can now add alleged sex offenses committed against his daughter. An alarming new report, a public record, was discovered describing sex acts with his daughter. The report states in part,

> MCMILLAN stated he would invite his niece, daughter of SCOTT ANTHONY MCMILLAN, over to perform "sexual favors" for money since "she will end up being a whore anyways and why not train her now" as she "was a perfect age for grooming." MCMILLAN also indicated he and his sons (all three attorneys) would perform legal work for BOURKE as trade for sexual favors with his minor daughter.

This is very concerning due to the prior post that Kenneth Bourke is a documented longtime friend of the McMillan family as seen in my former post, http://scott-mcmillan-law.blogspot.com/2014/09/scott-mcmillan-molest-la-mesa.html

Scott McMillan falsely states he is one of San Diego's "Leading Law Firms" however is not ranked by any legal industry publication, or even a local news paper. One of the specialties of the McMillan Law Firm are appeals, however, the law firm lost virtually every appeal – see http://scott-mcmillan-law.blogspot.com/2011/06/wwwmcmillanlawus-scott-mcmillan-law.html A few more recent losses include:

> **LOSS + McMillan Client to pay costs** in Bridgeman v. Allen et al. Case No. D062183 08/30/2014: Opinion filed. (Signed Published) The judgment is affirmed. Objector and **Respondent is entitled to her costs on appeal.**

> **HUGE LOSS:** Sterling v. Tri-City Healthcare District. D059810. 05/31/2013, "In her cross-appeal, Sterling contends the court erred in denying her attorney fees motion because her successful defense of the petitions vindicated an important right affecting the public interest and conferred a substantial benefit on the general public. We determine the court properly applied applicable law and did not abuse its discretion in **rejecting these arguments.**" Very heavily litigated case with the hopes of attorney's fees. McMillan filed six different appeals in this case. However, despite such efforts, no victory, no money.

> **LOSS:** Morton v. Spotts, Case Number D058640, 05/31/2013. "[Signed Unpublished] The judgment is affirmed."

> **LOSS:** Robbins v. The Superior Court of San Diego County/Roadone West, Inc. Case Number D057434, 06/10/2010, "Order denying petition filed."

> **LOSS:** Bridgeman v. Allen, Case Number D057337, 11/30/2010, "Dismissal order filed."

Further, the Court of Appeal in San Diego found Scott McMillan basically lied to the court and sought to run up his attorney fees, http://scott-mcmillan-law.blogspot.com/2014/09/michelle-volk-scott-mcmillan.html

Posted by Darren C at 11:04 PM

Citizens Against McMillan's Lawsuit Abuse

Darren C

+ Add to circles



478 have me in circles   View all

Blog Archive
- 2015 (1)
- 2014 (7)
  - November (2)
    - Maura Larkins Linked to Sex Abuse
    - Scott McMillan Suspect in Molestation
  - September (5)
- 2011 (3)

Read Terms of Use - First Link Below This Title

By continuing past this page and/or using this site, you agree to abide by the Terms of Use for this site.

Scott McMillan Attorney La Mesa

Exh E
1 of 1



# EXHIBIT G

# EXHIBIT H

The McMillan Law Firm, APC

Scott A McMillan <scott@mcmillanlaw.us>

## http://scott-mcmillan-law.blogspot.com/2014/11/scott-mcmillan-la-mesa.html

**Scott McMillan** <scott@mcmillanlaw.us> Wed, Dec 3, 2014 at 3:23 PM
To: scott@mcmillanlaw.us

Scott McMillan and family are child molesters per a recent report,

http://scott-mcmillan-law.blogspot.com/2014/11/scott-mcmillan-la-mesa.html

Exh H
1 of 1

# EXHIBIT I

Exh I
1 of 1

Delivered-To: scott@scottlinline.us
Received: by 10.27.176.4 with SMTP id z4csp99537lbe;
    Wed, 3 Dec 2014 13:23:07 -0800 (PST)
X-Received: by 10.194.93.244 with SMTP id cw20mr29418926wjb.117.1417645987961;
    Wed, 03 Dec 2014 13:23:07 -0800 (PST)
Return-Path: <anyone@free.hostcodes.ws>
Received: from free.hostcodes.ws ([198.17.140.80])
    by mx.google.com with ESMTPS id ba1si6608564wjb.91.2014.12.03.13.23.07
    for <scott@scottlinline.us>
    (version=TLSv1.2 cipher=ECDHE-RSA-AES128-GCM-SHA256 bits=128/128);
    Wed, 03 Dec 2014 13:23:07 -0800 (PST)
Received-SPF: none (google.com: anyone@free.hostcodes.ws does not designate permitted sender hosts) client-ip=198.17.140.80;
Authentication-Results: mx.google.com;
    spf=none (google.com: anyone@free.hostcodes.ws does not designate permitted sender hosts) smtp.mail=anyone@free.hostcodes.ws
Received: from anyone by free.hostcodes.ws with local (Exim 4.84)
    (envelope-from <anyone@free.hostcodes.ws>)
    id 1Xw6O-000007-Po
    for scott@scottlinline.us; Thu, 04 Dec 2014 00:23:06 +0300
To: scott@scottlinline.us
Subject: http://scott-mcmillan-law.blogspot.com/2014/11/scott-mcmillan-is-mess.html
MIME-Version: 1.0
Content-Type: text/html; charset=utf-8
From: Scott McMillan <scott@scottlinline.us>
Reply-To:
Subject: http://scott-mcmillan-law.blogspot.com/2014/11/scott-mcmillan-is-mess.html
X-Mailer: Anonymous Email : https://anonymousemail.me
Message-Id: <1Xwo-000007-Po@free.hostcodes.ws>
Date: Thu, 04 Dec 2014 00:23:06 +0300
X-AntiAbuse: This header was added to track abuse, please include it with any abuse report
X-AntiAbuse: Primary Hostname - free.hostcodes.ws
X-AntiAbuse: Original Domain - scottlinline.us
X-AntiAbuse: Originator/Caller UID/GID - [503 516] / [47 13]
X-AntiAbuse: Sender Address Domain - free.hostcodes.ws
X-Get-Message-Sender-Via: free.hostcodes.ws: authenticated_id: anyone/only user confirmed/virtual account not confirmed

<p><a href="http://scott-mcmillan-law.blogspot.com/2014/11/scott-mcmillan-is-mess.html">

<p><a href="http://scott-mcmillan-law.blogspot.com/2014/11/scott-mcmillan-is-mess.html</p>

1314

# EXHIBIT J



Exh J
1 of 1

# EXHIBIT K



Scott A McMillan <scott@mcmillanlaw.us>

---

## Fwd: Findlaw FirmSite Message From www.andrewgriffinlawoffice.com : Contact

**Andrew H. Griffin,III** <griffinlaw@me.com>                                    Mon, Dec 8, 2014 at 12:25 PM
To: McMillan Scott <scott@mcmillanlaw.us>

Andrew H. Griffin, ■
Law Offices of Andrew H. Griffin, ■
275 E. Douglas Avenue, Suite 112
El Cajon, California  92020
T: 619.440.6000
F: 619.440.5991
http://www.andrewgriffinlawoffice.com

CONFIDENTIAL INFORMATION: This e-mail transmission contains confidential information and is intended only for the use of
the individual or entity named above. Disclosure of confidential information is prohibited by Federal regulations (42 CFR Part
460).  The information may also be an attorney-client communication and legally privileged under both state and federal law.
This transmission is sent in trust for the sole purpose of the delivery to the intended recipient. If you have received this
transmission in error, you are hereby notified that any use dissemination, distribution or reproduction of this transmission is
STRICTLY PROHIBITED. If you are not the intended recipient, please delete this message and any related attachments from
all drives immediately and advise the individual or entity named above by return e-mail of the error in transmission.

We are a designated debt relief agency under federal law and we provide legal assistance to consumers seeking relief under
the Bankruptcy Code.
Se habla Español

Begin forwarded message:

**Date:** December 6, 2014 at 1:34:02 AM PST
**From:** TLR.FindLaw.FirmSite@thomsonreuters.com
**Reply-To:** john3@aol.com
**To:** griffinlaw@me.com
**Subject: Findlaw FirmSite Message From** www.andrewgriffinlawoffice.com : Contact



**Name:**
John

**E-mail Address:**
john3@aol.com

**State:**
California

**ZIP:**
92020

Exh K
1 of 2

Phone:
6193036660

How would you like to be contacted?
Email

Brief description of your legal issue:
Per the media, alarming report states alarming child molestation allegations against La Mesa attorney Scott McMillan, for specifics, see http://scott-mcmillan-law.blogspot.com/2014/11/scott-mcmillan-la-mesa.html

I believe is the same Scott McMillan, who runs a law school out of his office near the trolley tracks, doesn't have a single graduate, and upsets the bar by posting a blog, http://randatrapp.blogspot.com/

It is sad to see the continued decline of once ethical attorneys.

This email was initiated at the Findlaw FirmSite http://www.andrewgriffinlawoffice.com/Contact.shtml.

The content of this email is provided by and is the responsibility of the person posting the email communication. You acknowledge that any reliance on material in email communications is at your own risk.



Replies to this form will be sent directly to the original sender.

© 2011 FindLaw, a Thomson Reuters business

Exh K
2 of 2

# EXHIBIT L



**Scott A McMillan <scott@mcmillanlaw.us>**

## Pending Paternity Case -

**Darren Chaker** <darrenchaker@gmail.com>                    Mon, Dec 22, 2014 at 1:57 AM
To: Scott A McMillan <scott@mcmillanlaw.us>

Greetings,

As it concerns your desire to move forward with the bond hearing, please advise:

1. Do you oppose your client being present as a witness? Her mother? Will you accept service for each?

2. Based on the second declaration, you now assert a third party male is the real father of Logan.    As such, do you intend to give notice to the potential father and it with the court?

Again, as I reiterated in the certified letter you signed for last week, I am requesting contact with my son. I would like to see him, even Skype, provide him clothes I know he needs, a new tablet computer, and whatever else he needs. Please respond as this is a pressing issue and I have never heard back from you/client to allow me to do so despite my repeated attempts to do so since 7/13.

Kindly respondent by the close of business today.

Oh, and of course, happy holidays...

--
Darren Chaker
1140 Wall Street, #77
La Jolla, CA 92038

Confidentiality Notice: This message, along with any attachments and/or replies thereto, are covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521, and are may be legally privileged. The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, copying, or retransmission of this message is in violation of 18 U.S.C. 2511(1) of the ECPA and is strictly prohibited. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.

Exh L
1 of 1

# EXHIBIT M



Scott A McMillan <scott@mcmillanlaw.us>

## Request to See Son

Darren Chaker <darrenchaker@gmail.com>          Tue, Dec 23, 2014 at 10:08 AM
To: Scott A McMillan <scott@mcmillanlaw.us>

Holiday Greetings,

To clarify my former 12/22 request sent in the early morning hours, but presume it made sense –

As indicated in my certified letter your office signed for a week ago, the certified letter sent to you while I was in custody, and multiple voice mail and email send to you since 7/13/13, I am requesting to:

1. See my son;
2. Skype with my son;
3. Send him Christmas presents;
4. Provide clothing and other support;
5. A new tablet computer; and
6. Any other needs I am informed of my son needs.

Again, as I reiterated in the certified letter you signed for last week, I am requesting contact with my son. I would like to see him, even Skype, provide him clothes I know he needs, a new tablet computer, and whatever else he needs. Please respond as this is a pressing issue and I have never heard back from you/client to allow me to do such despite my repeated attempts to do so since 7/2013.

As the judge said that you are Ms. Adcock, please advise without delay as I intend to be part of my son's life.

--
Darren Chaker
1140 Wall Street, #77
La Jolla, CA 92038

Confidentiality Notice: This message, along with any attachments and/or replies thereto, are covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521, and are may be legally privileged. The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, copying, or retransmission of this message is in violation of 18 U.S.C. 2511(1) of the ECPA and is strictly prohibited. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.

Exh M
1 of 1

# EXHIBIT U



Create an account or Sign in

Business or product name...

SUBMIT A COMPLAINT

Add Contacts

# The McMillan Law Firm Customer Care Service

**The McMillan Law Firm, APC**

4670 Nebo Drive, Suite 200
La Mesa
California
United States – 91941-5230

## Customer Support Phone Numbers

Toll-free:  **1 877 235 2997**   0    0

Phone:    **+1 619 464 1500**   0    0

Web:     www.mcmillanlaw.us

## The McMillan Law Firm Complaints & Reviews

# The McMillan Law Firm - California, La Mesa / Scott McMillan should offer clients an apology and refund money

Sc  scott-mcmillan-law-firm-la-mesa on 2015-12-17

McMillan Law Firm, operated by Scott McMillan and Michelle Volk, 4670 Nebo Dr #200, La Mesa, CA 91941. Scott McMillan purports to be a "leading" San Diego attorney, but

Exh U
1 of 6

1325

appears to not tell people his past with child molestation allegations, or that he is also the Dean of his own law...

United States, California, La Mesa      Lawyers and Attorneys

---

# The-McMillan-Law-Firm / Scott-McMillan-San-Diego

Tr    Tracy Law Houston  on 2011-12-05

Child Molester, see attached report, Ken Bourke - fellow realtor Barbra Bolla - filed a brief admitting La Mesa Attorney Scott McMillan provided legal services in connection with writing his brief on appeal where Ken Bourke is representing himself. This is unlawful/unethical practice...

United States      Lawyers and Attorneys

---

0                              0

## Recently Discussed Complaints

**Mega Pacific Employment Services**
Scam
6          0 mins ago

**Wigs**
Not a legit business
1          2 mins ago

**Nokia Co - Operation United Kingdom**
Winning prize
84          1 hr 19 mins ago

**Buy HGH UK**
Takes Money - Delivers Nothing
1          1 hr 44 mins ago

**Anabolic Steroids**

Exh U
2 of 6

**Scam website**

1        1 hr 45 mins ago

## Consumer Tips & Tricks

 Debt Relief Systems – 5 Easy Types

 What You Need to Know About Prosper.com

 6 Practical Holiday Stress Relief Tips

## Worst rating

1. Orange Cab (-5)

2. Tods (–4)

3. processing service center (-3)

4. Wish.com (-3)

5. First Recovery Associates (-3)

6. Tru Belleza (-3)

7. Institute for Financial Freedom (-3)

8. GlassesUSA.com (-2)

9. Ruby Tuesday (-2)

10. The Center Quality Shoe Repair and Tailor (-2)

## Subjects of Wide Speculation

1. Aliens Space Station (9)
Hard Earned Money Stuck

2. California Psychics (9)
Scam / Fraud

Exh U
3 of 6

**3. East End Ragdolls / Jennifer Riddle** (7)
TOOK MONEY AND RAN!!

**4. NoFlameeCig.com** (7)
Free offer scam

**5. Wish.com** (6)
Fraud

**6. Orange Cab** (6)
Why there is no local cab service in Forest Grove Oregon/Cab did not show up.

**7. Tods** (5)
Shoes suede Wedges

**8. Snapdeal.com** (5)
It's really nightmare for a purchase from Snapdeal.com and Shipment with Bluedart Courier

**9. Stylewe** (4)
The worst website ever!

**10. Hosting Raja** (4)
Hosting Raja hostingraja.in



## Latest News & Stories

 Amazon Launches 69-Cent Music Store

 Apple Expected to Start Production of a White iPhone This Month

 Apple Trying to Push for Repeat Downloads of iTunes Music Purchases

Exh U
4 of 6

## Stay Away

1. **Donnaplay** (8)

2. **Stylewe** (5)

3. **WigSis** (3)

4. **Shoney's** (1)

## Latest Questions

free lotto company winner claim

Where Can I find Investors?

Where did my complaint go?

IndianDating.com

Edit complain

## Videos

**Identity Theft and Credit Card Fraud Protection**

▶ More Videos

## Latest Groups

Homestars Fraud

WeblinkIndia Feedback & Review By Us...

Exh U
5 of 6

**Action against TBW Singapore**

**gonavajotrails**

**Anti - LSBF tution, London, UK**

---

## Today's Mess-Up Photo

two right boot no left.



More Mess-ups

---

Submit Complaint | Consumer Tips & Tricks | News & Stories | Groups | Sitemap | FAQ | View full list of Companies | Updated Complaints | Merged Complaints | Complaints by Countries | Latest Complaints | Terms of Use | Privacy Policy | DMCA Procedures | Investors / Business Offers | Legal Information | Thank you Emails

© 2016 ComplaintsBoard.com    Follow us: Google+
If you have an inquiry, or any constructive thoughts, creative ideas, and reasonable offers, please, contact us